Robert J. Giuffra, Jr. (*pro hac vice*)
giuffrar@sullcrom.com
William B. Monahan (*pro hac vice*)
monahanw@sullcrom.com
Darrell S. Cafasso (*pro hac vice*)
cafassod@sullcrom.com
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel for Defendants FCA US LLC
and Fiat Chrysler Automobiles NV*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br>All Actions | Case No. 3:17-MD-2777-EMC<br><br>**DEFENDANTS FCA US LLC AND FIAT CHRYSLER AUTOMOBILES NV'S INITIAL CONFERENCE STATEMENT SUBMITTED PURSUANT TO PRETRIAL ORDER NO. 1**<br><br>Hearing:  May 24, 2017<br>Time:  10:00 a.m.<br>Courtroom: 5<br><br>The Honorable Edward M. Chen |

  In accordance with Paragraph 3 of the Court's Pretrial Order No. 1 ("PTO-1"; Dkt. No. 6), Defendants FCA US LLC ("FCA US") and Fiat Chrysler Automobiles NV ("FCA NV"; together with FCA US, "FCA"), through their counsel, Sullivan & Cromwell LLP, respectfully submit this statement to advise the Court on the status of all actions pending in this

multidistrict litigation ("MDL") and steps FCA has taken to preserve potentially relevant information.[1]

## BACKGROUND

### 1. FCA

FCA US is a Delaware limited liability company that is wholly owned by FCA NV, a multinational corporation incorporated in the Netherlands and headquartered in London. FCA US designs, engineers, manufactures and/or distributes Chrysler, Dodge, Jeep, Ram, Fiat and Alfa Romeo brand vehicles for sale in the United States. In 2016, FCA US sold 2.2 million vehicles in the United States, and FCA NV's various global subsidiaries sold a total of 4.7 million vehicles worldwide in 2016, making the Company the seventh largest automaker in the world based on total annual vehicle sales. 2016 FCA NV Annual Report at 42-43, *available at* https://www.fcagroup.com/en-US/investor_relations/financial_information_reports/annual_reports/annual_reports/FCA_2016_Annual_Report.pdf.

The actions in this MDL concern a small subset of FCA US's vehicles: in particular, FCA model year ("MY") 2014 to 2016 Ram 1500 and Jeep Grand Cherokee light-duty vehicles equipped with 3.0 liter V6 diesel engines (the "Subject Vehicles"). FCA US sold approximately 104,000 of the Subject Vehicles in the United States, which represented *less than two percent* (104,000/6,603,000 = 1.58%) of FCA US's vehicle sales from 2014 to 2016, and *less than one percent* (104,000/14,200,000 = 0.73%) of FCA's worldwide sales. 2016 FCA NV Annual Report at 42-43. The Subject Vehicles' engines were manufactured by VM Motori S.p.A. ("VM Motori"), which is now an indirect subsidiary of FCA NV,[2] with certain component parts for the engines supplied by Robert Bosch LLC and Robert Bosch GmbH (together, "Bosch").

---

[1] By submitting this statement, FCA does not waive, and expressly preserves, all defenses, including defenses concerning jurisdiction.

[2] FCA Italy S.p.A. ("FCA Italy") (f/k/a Fiat Group Automobiles S.p.A), a wholly-owned subsidiary of FCA NV, acquired a 50% stake in VM Motori in 2010 and the remaining 50% interest in October 2013.

## 2. The Regulatory Regime Governing New Vehicle Emissions

The U.S. Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB") regulate new vehicle emissions in the United States. The federal Clean Air Act ("CAA") vests EPA with substantial regulatory, supervisory and enforcement authority over new motor vehicle emissions. 42 U.S.C. §§ 7521, 7522, 7524; *see generally* U.S. Code, Chapter 85, Subchapter II. Not only does EPA maintain regulations governing vehicle emissions, *see, e.g.*, 40 C.F.R. Part 86, Subpart S, but the agency also has supervisory and enforcement authority by virtue of the statutory requirement that automobile and engine manufacturers obtain a certificate of conformity before vehicles can be sold in the United States. *See* 42 U.S.C. § 7522(a)(1); 40 C.F.R. § 86.1854-12.

Section 209(a) of the CAA provides that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a). At the same time, Section 209(b) permits EPA to authorize CARB to regulate, supervise and enforce California's new motor vehicle emissions standards. 42 U.S.C. § 7543(b). Under its regulations, CARB requires a similar certification demonstrating compliance with California's emissions regulations. *See, e.g.*, Cal. Code Regs. title 13, §§ 1961, 1961.2.

Each of the remaining 49 states and the District of Columbia may elect to require that vehicles sold in their states meet either EPA's or CARB's emissions requirements. *See* 42 U.S.C. § 7507 (CAA § 177); U.S. Environmental Protection Agency, Green Vehicle Guide, *available at* https://www.epa.gov/greenvehicles/smog-rating. Thirteen states have opted to apply CARB's emissions standards.[3] *See* U.S. Environmental Protection Agency, Vehicle Emissions California Waivers and Authorizations, *available at* https://www.epa.gov/state-and-local-transportation/vehicle-emissions-california-waivers-and-authorizations.

---

[3] Arizona, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington—the so-called "177 States"—apply CARB's emissions standards.

### 3. EPA's and CARB's Notices of Violation

On January 12, 2017, EPA and CARB sent Notices of Violation ("NOVs") to FCA contending that the Subject Vehicles contained certain auxiliary emission control devices ("AECDs") that FCA did not disclose to EPA and CARB when FCA US applied for its emissions certifications. The NOVs further stated that EPA's and CARB's investigations of the Subject Vehicles were "continuing," including whether those AECDs constituted "defeat devices." (*See* January 12, 2017 EPA Notice of Violation at 2 ("[T]he EPA is continuing its investigation into the operation of the undisclosed AECDs."); January 12, 2017 CARB Notice of Violation at 1 ("CARB is continuing to investigate whether some of these undisclosed AECDs are in fact defeat devices.").)

Under the federal and California emissions regulations, determining whether an AECD constitutes a "defeat device" can involve substantial technical expertise and judgment. *See, e.g.*, 40 C.F.R. § 86.1809-01 (setting forth technical specifications for testing whether a vehicle is equipped with a "defeat device"). A defeat device is an AECD "that reduces the effectiveness of the emission control system" under conditions of "normal vehicle operation and use, unless" certain qualifying exceptions apply. 40 C.F.R. § 86.1803-01. For instance, some AECDs that reduce the effectiveness of the emissions control system are nevertheless permissible because those AECDs "protect[] the vehicle against damage or accident," *id.*, when a vehicle faces operating conditions in which the normal operation of the emissions control system could damage the engine, such as when climbing steep hills or operating in conditions of extreme heat or cold.

Since receiving the NOVs, FCA continues to cooperate with EPA and CARB on their ongoing investigations. Moreover, in seeking its MY 2017 emissions certifications, though not admitting to any of the allegations in the NOVs, FCA US has worked closely with EPA and CARB to develop and implement new software calibrations to address the agencies' concerns as articulated in their NOVs. FCA US is now seeking regulatory certifications to permit the sale of its MY 2017 Jeep Grand Cherokee and Ram 1500 diesel vehicles with these modified calibrations, with testing currently underway by EPA and CARB. If these certifications are

granted, and with the permission of EPA and CARB, FCA US intends to install modified emissions software calibrations in the Subject Vehicles consistent with the MY 2017 calibration through a software reflash at a customer's FCA US dealership, without requiring any changes to the Subject Vehicles' hardware.

### 4. The Pending Actions in This MDL

The 20 actions currently pending in this MDL (the "Actions") all relate to matters raised in the EPA and CARB NOVs. All but one of the Actions were filed in the wake of the NOVs by consumers and, in two cases, automobile dealerships, on behalf of putative nationwide classes and state subclasses in all 50 states and the District of Columbia. The complaints rely primarily on the NOVs to allege that FCA made "deceptive and false" representations when marketing the Subject Vehicles as "clean" and "environmentally friendly."

Plaintiffs also claim that the Subject Vehicles emit Nitrogen Oxides ("NOx") at levels in excess of emissions standards promulgated by EPA and CARB. For example, Plaintiffs allege that (i) the Subject Vehicles are "non-EPA compliant . . . because the NOx reduction system in the . . . Vehicles does not effectively mitigate emissions"; (ii) "the NOx reduction system in the . . . Vehicles turns off or is limited during normal driving conditions"; and (iii) the Subject Vehicles "emitted unlawfully high levels of pollutants." (*E.g.*, Chavez Second Am. Compl. ¶¶ 24, 16, 192, 249.) Moreover, even though EPA's and CARB's investigations are continuing, and the regulators have not concluded that a "defeat device" was installed in any of the Subject Vehicles, Plaintiffs conclusorily claim that the Subject Vehicles "deploy a 'defeat device.'" (*E.g.*, *id.* at 254.)

Each of the Actions asserts that Plaintiffs would not have purchased (or would have paid less for) the Subject Vehicles had they known that those vehicles allegedly did not comply with U.S. emissions standards. (*E.g.*, *id.* ¶¶ 24, 123.) Most of the Actions also rest on similar legal theories of recovery, including under the federal Racketeer Influenced and Corrupt Organizations ("RICO") and Magnuson-Moss Warranty Acts, as well as state law claims for fraudulent concealment, breach of contract, deceptive trade practices and breach of warranty.

1   A number of the Actions reference the widely publicized emissions issues of
2   another vehicle manufacturer, non-party Volkswagen. Of relevance here, by the time the
3   Volkswagen MDL had been formed before Judge Charles R. Breyer, EPA and CARB had
4   specifically determined that "defeat devices" had been included in Volkswagen vehicles and had
5   issued NOVs to that effect. Later, Volkswagen made public admissions about the software in its
6   diesel vehicles, including during congressional testimony by Volkswagen Group of America,
7   Inc.'s then-Chief Executive Officer.[4]

8   By contrast, EPA and CARB are continuing to investigate the Subject Vehicles
9   and have not issued an NOV finding that any of these vehicles included "defeat devices" (as
10  opposed to undisclosed AECDs). Likewise, whether the Subject Vehicles emit excess emissions
11  has not yet been resolved by EPA or CARB, and neither regulator has yet filed a civil action
12  against FCA concerning the Subject Vehicles. Nor has FCA made any admissions about the
13  existence of "defeat devices" in the Subject Vehicles. And, unlike in the Volkswagen diesel
14  litigation, where certain diesel vehicles ultimately required both hardware and software changes
15  to make them compliant with federal and California emissions standards, and certain other
16  Volkswagen vehicles could not be fixed to those standards,[5] FCA US has modified its software
17  calibrations in an effort to expedite its MY 2017 emission certifications. The Company believes
18  these updated software calibrations fully address EPA's and CARB's concerns and can be
19  installed in the Subject Vehicles' engine control module through a simple software reflash.

20  **PROCEDURAL STATUS OF THE ACTIONS**

21  On April 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") issued a
22  Transfer Order in MDL-2777 centralizing the following six cases for pretrial proceedings and

---

[4] On October 8, 2015, Volkswagen admitted to Congress that the company used "a software program that served to defeat the regular emissions testing regime." (Testimony Before the House Comm. on Energy and Commerce Subcomm. on Oversight and Investigations at 1, Oct. 8, 2015.)

[5] *See, e.g.*, U.S. Environmental Protection Agency, Volkswagen Clean Air Act Civil Settlement, *available at* https://www.epa.gov/enforcement/volkswagen-clean-air-act-civil-settlement ("Any approved emissions modification . . . may include both software charges and new hardware.").

-6-

transferring the cases pending outside of this District to this Court pursuant to 28 U.S.C. § 1407 (the "Transfer Order"):[6]

- *Warren* v. *Fiat Chrysler Automobiles N.V.*, No. 17-cv-00059 (N.D. Ala.);
- *Chavez* v. *FCA US LLC*, No. 16-cv-06909 (N.D. Cal.);
- *Fasching* v. *FCA US LLC*, No. 17-cv-00231 (N.D. Cal.);
- *Carpenter* v. *FCA US LLC*, No. 17-cv-00288 (N.D. Cal.);
- *Kitchel* v. *FCA US LLC*, No. 17-cv-00538 (N.D. Cal.); and
- *Sebastian* v. *FCA US LLC*, No. 17-cv-00085 (S.D. Cal.).

Two days later, the JPML issued a Conditional Transfer Order ("CTO") conditionally transferring seven "tag-along" cases to this Court:[7]

- *Stephens* v. *FCA US LLC*, No. 17-cv-00040, (M.D. Ala.);
- *Chatom Motor Co.* v. *FCA US LLC*, No. 17-cv-00120 (S.D. Ala.);
- *Rothe* v. *FCA US LLC*, No. 17-cv-00032 (S.D. Ga.);
- *Rivero* v. *FCA US LLC*, No. 17-cv-00031 (M.D. La.);
- *Kelley* v. *FCA US LLC*, No. 17-cv-10342 (D. Mass.);
- *Marlatt* v. *FCA US LLC*, No. 17-cv-00096 (S.D. Ohio); and
- *Johnson* v. *FCA US LLC*, No. 17-cv-00047 (N.D. W. Va.).

The CTO was finalized on April 17, 2017. Six additional tag-along cases were filed initially in this District and have since been assigned to this Court:

- *Walker* v. *FCA US LLC*, No. 17-cv-00405 (N.D. Cal.);
- *Gaines* v. *FCA US LLC*, No. 17-cv-01051 (N.D. Cal.);
- *Milligan* v. *FCA US LLC*, No. 17-cv-01152 (N.D. Cal.);
- *Zonio* v. *FCA US LLC*, No. 17-cv-01461 (N.D. Cal.);
- *Ramirez* v. *FCA US LLC*, No. 17-cv-01467 (N.D. Cal.); and

---

[6] Transfer Order, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777, 2017 WL 1282901, at *2 (J.P.M.L. Apr. 5, 2017).

[7] Conditional Transfer Order, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777 (J.P.M.L. Apr. 7, 2017) (Dkt. No. 92).

- *Friedenfels* v. *FCA US LLC*, No. 17-cv-01605 (N.D. Cal.).

On May 8, 2017, the JPML issued a CTO conditionally transferring an additional "tag-along" case to this Court, which was finalized on May 16, 2017:[8]

- *Castle Car Co.* v. *Fiat Chrysler Automobile M.V.* [sic], No. 17-cv-00565 (W.D. Pa.).

An additional suit, *Leocadio* v. *FCA US LLC*, No. 17-cv-00797 (C.D. Cal.), was filed in federal court on May 5, 2017. FCA notified the JPML of this case,[9] and the JPML has since issued a CTO on May 11, 2017, which has not yet been finalized.[10]

Moreover, on May 16, 2017, FCA US removed an action to the Western District of Pennsylvania that was initially filed in the Allegheny County Court of Common Pleas, which made allegations concerning a Ram diesel truck essentially identical to those in the Actions before this Court. *Pandolph* v. *FCA US LLC*, No. 17-cv-00640 (W.D. Pa.). FCA notified the JPML that the case was a potential tag-along action on May 17, 2017,[11] but the case has not yet been transferred to this Court.[12]

---

[8] Conditional Transfer Order, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777 (J.P.M.L. May 8, 2017) (Dkt. No. 98).

[9] Notice of Potential Tag-Along, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777 (J.P.M.L. May 9, 2017) (Dkt. No. 100).

[10] Conditional Transfer Order, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777 (J.P.M.L. May 11, 2017) (Dkt. No. 101).

[11] Notice of Potential Tag-Along, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777 (J.P.M.L. May 17, 2017) (Dkt. No. 104).

[12] There is currently one putative securities class action against FCA NV and certain of its senior executives, *Pirnik* v. *Fiat Chrysler Automobiles N.V.*, 15-cv-07199 (S.D.N.Y.), asserting that those executives made misstatements concerning FCA's compliance with vehicle emissions regulations in the United States. The action has been pending since 2015 (and did not concern emissions issues), but on February 22, 2017, Plaintiffs filed an amended complaint that added emissions claims based on the NOVs. Defendants' motion to dismiss the emissions claims is fully briefed. Depending on the outcome of that motion to dismiss, this securities action may be coordinated in this MDL by the JPML. *See* Transfer Order, *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prod. Liab. Litig.*, MDL-2777, 2017 WL 1282901, at *2 n.5 (J.P.M.L. Apr. 5, 2017).

1    Prior to transfer or assignment of the Actions to this Court, most were stayed
2 pending a decision by the JPML on whether to establish an MDL.  *See, e.g.*, Order, *Chavez* v.
3 *FCA US LLC*, No. 16-cv-06909 (N.D. Cal. Feb. 15, 2017) (Dkt. No. 55).  FCA has not filed an
4 answer, dispositive motion or other responsive pleading in any of the Actions, and a consolidated
5 amended complaint has not yet been filed.  FCA US has not been served in *Johnson*, *Castle Car*
6 *Co.* or *Leocadio*, and FCA NV has not been served in any of the Actions except *Fasching* and
7 *Stephens*.[13]

8    On May 10, 2017, pursuant to PTO-1, certain parties filed recommendations to
9 the Court for the appointment of a Special Settlement Master.  FCA recommended the
10 appointment of Kenneth R. Feinberg, Robert S. Mueller, III and Daniel Weinstein, who were
11 each also endorsed by one or more plaintiffs.  Certain plaintiffs also recommended Edward A.
12 Infante, Richard R. Kramer, Layn Phillips and Charles B. Renfrew.  FCA believes that, while a
13 Special Settlement Master should be appointed, settlement discussions at this early stage would
14 be premature and should not occur until, at a minimum, EPA's and CARB's regulatory
15 investigations have concluded.

16 **STATEMENT AS TO PRESERVATION OF POTENTIALLY RELEVANT EVIDENCE**

17    FCA has taken a number of steps to ensure that potentially relevant information in
18 electronic or other forms has been preserved.  For instance, FCA US first issued a legal hold
19 notice relating to the EPA and CARB investigations of the Subject Vehicles on January 15, 2016
20 (the "Investigation Hold").  Since then, FCA US and FCA Italy have periodically updated the
21 Investigation Hold notice to reflect new matters, which currently covers documents in the
22 possession of employees of FCA US and its affiliates related to the development, marketing and
23 sales of the Subject Vehicles, as well as documents related to public statements and
24 representations made by FCA with regard to the Subject Vehicles.  The Investigation Hold
25 currently covers approximately 190 current or former employees of FCA US, FCA NV, FCA

---

[13] In accordance with PTO-1, FCA US served a copy of PTO-1 on counsel for Plaintiffs in all tag-along cases.

Italy and various affiliated entities, including VM Motori. These employees include engineering, emissions certification, emissions testing, manufacturing, quality assurance, marketing, sales, financial and executive personnel, including high-ranking FCA executives.

On December 8, 2016, subsequent to the filing of civil litigation regarding the Subject Vehicles, FCA US issued a separate legal hold notice relating specifically to the civil litigation (the "Litigation Hold"). FCA US has periodically updated the Litigation Hold notice to address new information and filings. The current version of the civil litigation hold applies to substantially the same employees as those described in the Investigation Hold.

In addition to notifying employees of their preservation obligations, FCA has taken separate steps to preserve documents, data and other information potentially relevant to the Actions, including e-mails and other documents of employees who have received the Investigation Hold and the Litigation Hold. These steps have included, among other things, suspending deletion activities and preserving copies of e-mails on FCA's e-mail servers.

**SUMMARY OF NEXT STEPS**

The Court has scheduled a hearing for June 14, 2017 concerning the selection of Lead Counsel and a Steering Committee for the private plaintiffs. As of the time of this filing, 11 attorneys have applied to be Lead Counsel for the private plaintiffs.[14] FCA believes that, after Lead Counsel is selected and a Steering Committee appointed, Lead Counsel then should file a consolidated amended complaint. After receiving this consolidated complaint, FCA will determine how to respond, including whether to file a motion to dismiss all or part of the complaint. During this period, FCA intends to continue to cooperate with the EPA's and CARB's ongoing investigations and to seek agencies' approval of new software calibrations for the Subject Vehicles to address the agencies' concerns as expressed in their NOVs.

---

[14] Applicants to date are: Steve Berman, Elizabeth J. Cabraser, David S. Casey, Jr., Michael E. Heygood, Adam J. Levitt, Lynn Lincoln Sarko, Joseph R. Saveri, Francis O. Scarpulla, Christopher A. Seeger, Lesley E. Weaver and Tina Wolfson.

-10-

Dated:   New York, New York
         May 17, 2017              Respectfully submitted,

                                   */s/ Robert J. Giuffra, Jr.*
                                   Robert J. Giuffra, Jr.
                                   giuffrar@sullcrom.com
                                   William B. Monahan
                                   monahanw@sullcrom.com
                                   Darrell S. Cafasso
                                   cafassod@sullcrom.com
                                   SULLIVAN & CROMWELL LLP
                                   125 Broad Street
                                   New York, New York  10004
                                   Telephone:  (212) 558-4000
                                   Facsimile:  (212) 558-3588

                                   *Counsel for Defendants FCA US LLC and
                                   Fiat Chrysler Automobiles NV*

SULLIVAN & CROMWELL LLP

FCA'S INITIAL CONFERENCE STATEMENT
NO. 3:17-MD-2777-EMC