Elizabeth J. Cabraser (State Bar No. 83151)
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: 415.956.1000
Facsimile: 415.956.1008
Email: ecabraser@lchb.com

*Plaintiffs' Lead Counsel*

*(Plaintiffs' Steering Committee Members
Listed on Signature Page)*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL ACTIONS | MDL 2777 EMC<br><br>**PLAINTIFFS' CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AMENDED CONSOLIDATED CONSUMER CLASS ACTION COMPLAINT**<br><br>Date:   December 19, 2017<br>Time:  11:00 a.m.<br>Courtroom: 5, 17th Floor<br><br>Judge: Hon. Edward Chen |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................. 1

II.     FACTUAL BACKGROUND ................................................................................ 3

III.    APPLICABLE LEGAL STANDARDS ............................................................... 5

        A.      Article III Standing ................................................................................. 5

        B.      Personal Jurisdiction ............................................................................... 5

        C.      Pleading Standards for Non-Fraud Claims ............................................. 6

        D.      Pleading Standards for Fraud Claims...................................................... 6

IV.     PLAINTIFFS' ALLEGATIONS DEMONSTRATE ARTICLE III STANDING. ............ 7

        A.      Plaintiffs' Out-of-Pocket Losses Are a Concrete Injury-in-Fact. .......... 8

        B.      Plaintiffs Have Standing to Pursue Claims Against the Bosch Defendants.......... 12

        C.      The Determination of Standing for Certain State Claims Is Premature............... 13

V.      THE COMPLAINT PUTS THE BOSCH DEFENDANTS ON NOTICE. ...................... 14

VI.     PLAINTIFFS ASSERT STRONG, COGNIZABLE CIVIL RICO CLAIMS................. 16

        A.      Overview of Civil RICO ....................................................................... 16

        B.      Plaintiffs Allege a Recognized RICO Injury. ....................................... 18

                1.      Plaintiffs' Out-of-Pocket Losses Are RICO Injuries. .................. 18

                2.      Overpayment Is a Viable Theory of RICO Injury. ...................... 23

        C.      Plaintiffs' Allegations Demonstrate that Defendants' Fraudulent Scheme
                Proximately Caused Plaintiffs' Injuries. ............................................... 25

                1.      Reliance Is Not Required for RICO Proximate Cause................. 26

                2.      The Bosch Defendants' Game of "Not It" Fails. ........................ 28

        D.      Plaintiffs Describe a Proper RICO Enterprise. ..................................... 30

        E.      Plaintiffs Amply Allege Each Defendant's Conduct of, or Participation in
                the Conduct of, the RICO Enterprise. ................................................... 33

        F.      Plaintiffs Plead Multiple, Ongoing Predicate Acts of Mail and Wire Fraud. ....... 36

                1.      Knowing Participant in a Scheme to Defraud............................. 36

                2.      Intent to Defraud ........................................................................ 38

                3.      Use of the Mails and Wires ........................................................ 40

        G.      Plaintiffs State a RICO Claim Against CEO Marchionne. .................... 42

        H.      Plaintiffs' Allegations Describe All Elements of a RICO Conspiracy. ............... 43

        I.      The Bosch Defendants Are Liable as Primary Violators and Co-
                Conspirators. ......................................................................................... 44

VII.    PLAINTIFFS MAGNUSON-MOSS ACT CLAIMS ARE WELL-PLEADED. ............ 45

VIII.   PLAINTIFFS' STATE CLAIMS ARE NOT PREEMPTED. ................................... 45

        A.      Plaintiffs' State Claims Are Not Expressly Preempted. ....................... 46

**TABLE OF CONTENTS**
(continued)

Page

1.   The Substantive State Laws Under Which Plaintiffs' Claims Are Asserted Are Not Emissions "Standards." .................................................. 47

2.   Defendants' § 209(a) Cases Are Inapposite. ................................................. 49

B.   Plaintiffs' State Claims Are Not Impliedly Preempted. ....................................... 51

C.   Plaintiffs' Warranty Claims Are Not Preempted. ................................................ 52

IX.   PLAINTIFFS PROPERLY PLEAD THEIR STATE LAW CLAIMS ............................ 53

A.   Plaintiffs Can Pursue Their State Consumer Protection Claims in this Court on Behalf of the Proposed Classes. .................................................................. 53

1.   Arguments Regarding Class Action Prohibitions are Premature. ................. 53

2.   Procedural State Prohibitions on Class Actions Do Not Trump Rule 23. ........................................................................................................ 53

3.   The Delaware, Georgia, and Minnesota Plaintiffs Can Seek Injunctive Relief. ............................................................................................................ 55

B.   Plaintiffs Properly Plead Their Fraudulent Concealment Claims. ....................... 56

1.   Fraudulent Concealment Is Alleged with Sufficient Particularity. .............. 56

2.   Defendants Had a Duty to Disclose Material Facts. ................................... 58

3.   Defendants' Intent Is Adequately Alleged. ................................................. 60

4.   Reliance Is Adequately Alleged to the Extent Required. ............................. 61

5.   Plaintiffs Plead Their Concrete Injuries with Particularity. ........................ 61

6.   Plaintiffs Adequately Plead Fraudulent Concealment Against Marchionne. ................................................................................................. 62

C.   Plaintiffs Properly Plead Their State Law Consumer Protection Claims. ............ 62

1.   The Complaint Satisfies All Applicable Pleading Standards. ...................... 62

2.   Plaintiffs Allege Deceit. ............................................................................... 64

3.   Plaintiffs Allege Causation. ......................................................................... 65

4.   Plaintiffs Allege a Concrete Injury. ............................................................ 67

5.   Defendants' Scattershot Arguments Find Nowhere to Land. ...................... 68

X.   THIS COURT MAY EXERCISE JURISDICTION OVER EACH DEFENDANT. ....... 70

A.   The Federal Long-Arm Statute Permits Jurisdiction Over the Foreign Defendants. ......................................................................................................... 71

B.   RICO Also Provides a Basis for Jurisdiction Over the Foreign Defendants. ....... 73

C.   Personal Jurisdiction Under California's Long-Arm Statute. .............................. 74

D.   If the Court Has Any Concerns, Jurisdictional Discovery Is Warranted. ............. 74

XI.   CONCLUSION ................................................................................................... 75

1

## TABLE OF AUTHORITIES

2
**Pages**

3

**CASES**

4

5
*Ace Tree Surgery, Inc. v. Terex Corp.*,
No. 1:16-CV-00775-SCJ. 2017 WL 1836307 (N.D. Ga. Feb. 21, 2017) ....................... 63

6
*Air Prods. & Chems., Inc. v. Wiesemann*,
237 F. Supp. 3d 192 (D. Del. 2017)................................................................. 59

7
*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008)................................................................................ 48

8
*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................ 61

9
*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)................................................................................ 25

10
*Apollo Educ. Grp., Inc. v. Somani*,
No. C-15-1056 EMC, WL 4880646 (N.D. Cal. Aug. 13, 2015)............................... 71, 72

11
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................. 6

12
*Ashlock v. Sunwest Bank of Roswell, N.A.*,
107 N.M. 100 (1988), *overruled on other grounds by Gonzales v. Surgidev*

13
*Corp.*, 120 N.M. 133 (1995) ........................................................................ 64

14
*Aspinall v. Philip Morris Cos., Inc.*,
442 Mass. 381 (2004)................................................................................ 64

15
*Ass'n of Taxicab Operators USA v. City of Dallas*,
720 F.3d 534 (5th Cir. 2013)........................................................................ 47

16
*Ass'n of Taxicab Operators, USA v. City of Dallas*,
866 F. Supp. 2d 595 (N.D. Tex. 2012).............................................................. 51

17
*Associated Inv. Co. P'ship v. Williams Assocs. IV*,
230 Conn. 148 (1994) ............................................................................... 64

18
*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
Civil N. 09-1091 (JNE/JSM), 2010 WL 4193076 (D. Minn. Oct. 7, 2010) .................... 70

19

20
*Baggett v. Hewlett-Packard Co.*,
582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................................ 56

21
*Bailey v. Atl. Auto. Corp.*,
992 F. Supp. 2d 560 (D. Md. 2014) ................................................................ 21

22
*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1988)......................................................................... 6

23
*Barker v. Riverside Cty. Office of Educ.*,
584 F.3d 821 (9th Cir. 2009)...................................................................... 6, 34

24
*Bates v. Dow Agrosciences L.L.C.*,
544 U.S. 431 (2005)...................................................................... 46, 48, 49, 52

25
*Baumer v. Pachl*,
8 F.3d 1341 (9th Cir. 1993).......................................................................... 45

26
*Beck v. Prupis*,
529 U.S. 494 (2000).................................................................................. 17

27
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................. 6

28

# TABLE OF AUTHORITIES
## (continued)

Pages

*Bey v. Shapiro Brown & Alt, LLP,*
   997 F. Supp. 2d 310 (D. Md. 2014) ............................................................... 65

*Birdsong v. Apple, Inc.,*
   590 F.3d 955 (9th Cir. 2009)........................................................................... 12

*Blankenship v. CFMOTO Powersports, Inc.,*
   961 N.E. 2d 750 (Ohio Comm. Ct. 2011) ....................................................... 67

*Bledsoe v. FCA US LLC,*
   No. 4:16-cv-14024-TGB-RSW, Dkt. 46 (E.D. Mich. Oct. 13, 2017).............. 46

*Bly-Magee v. Cal.,*
   236 F.3d 1014 (9th Cir. 2001)..................................................................... 7, 14

*Boyle v. United States,*
   556 U.S. 938 (2009) ...................................................................... 16, 30, 31, 32

*Brayton Purcell LLP v. Recordon & Recordon,*
   606 F.3d 1124 (9th Cir. 2010)............................................................. 70, 72, 74

*Bridge v. Phoenix Bond & Indemnity Co.,*
   553 U.S. 639 (2008) ................................................................................ passim

*Briehl v. GMC,*
   172 F.3d 623 (8th Cir. 1999)........................................................................... 12

*Bruce v. Home Depot, U.S.A., Inc.,*
   308 F. Supp. 2d 72 (D. Conn. 2004) ............................................................... 63

*Bruton v. Berger Prod. Co.,*
   No. 12-CV-02412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ..................... 56

*Bumpers v. Cmty. Bank of N. Va.,*
   367 N.C. 81 (2013) ......................................................................................... 66

*Burns v. MBK P'ship,*
   No. 03-3021-CO, 2003 WL 23979014 (D. Or. Nov. 5, 2003).......................... 19

*Bussian v. DaimlerChrysler Corp.,*
   411 F. Supp. 2d 614 (M.D.N.C. 2006)............................................................. 68

*Butcher's Union Local No. 498 v. SDC Inv., Inc.,*
   788 F.2d 535 (9th Cir. 1986)....................................................................... 73, 74

*Cafasso v. Gen. Dynamics C4 Sys.,*
   637 F.3d 1047 (9th Cir. 2011)....................................................................... 7, 63

*Cannon v. Wells Fargo Bank. N.A.,*
   No. C-12-1376 EMC, 2014 WL 324556 (N.D. Cal. Jan. 29, 2014) ........... 19, 31

*Canyon Cty. v. Syngenta Seeds, Inc.,*
   519 F.3d 969 (9th Cir. 2008)............................................................... 19, 20, 24

*Carriuolo v. GM Co.,*
   823 F.3d 977 (11th Cir. 2016).......................................................................... 10

*Cent. Bank, N.A. v. First Interstate Bank, N.A.,*
   511 U.S. 164 (1994)......................................................................................... 44

*Cessna v. REA Energy Coop., Inc.,*
   No. 3:16-cv-42, 2017 WL 2799325 (W.D. Pa. June 27, 2017) ....................... 64

*Chavez v. Blue Sky Nat. Beverage Co.,*
   340 F. App'x 359 (9th Cir. 2009) .................................................................... 25

*Chern v. Bank of Am.,*
   15 Cal. 3d 866 (1976)...................................................................................... 64

- iv -

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3   *Chow v. Aegis Mortg. Corp.*,
       286 F. Supp. 2d 956 (N.D. Ill. 2003) ............................................................... 64

4   *Church of the Nativity of Our Lord v. WatPro, Inc.*,
       474 N.W.2d 605 (Minn. Ct. App. 1991), *aff'd*, 491 N.W.2d 1 (Minn. 1992) ................... 64

5   *Cipollone v. Liggett Grp.*,
       505 U.S. 504 (1992) ...................................................................................... 52

6

7   *City of Rome v. Glanton*,
       958 F. Supp. 1026 (E.D. Pa. 1997), *aff'd*, 133 F.3d 909 (3d Cir. 1997) ....................... 59

8   *Clark v. Allstate Ins. Co.*,
       No. 13-0271, 2013 WL 1905147 (E.D. Pa. May 7, 2013) .............................................. 63

9   *Clemons v. Nissan N. Am., Inc.*,
       997 N.E.2d 307 (Ill. App. Ct. 2013) .............................................................. 52

10   *Coghlan v. Wellcraft Marine Corp.*,
       240 F.3d 449 (5th Cir. 2001) ......................................................................... 10

11   *CollegeSource, Inc. v. AcademyOne, Inc.*,
       653 F.3d 1066 (9th Cir. 2011) ................................................................... 71, 73

12   *Connick v. Suzuki Motor Co.*,
       174 Ill. 2d 482 (1996) ................................................................................. 66

13   *Contreras v. Toyota Motor Sales U.S.A., Inc.*,
       484 F. App'x 116 (9th Cir. 2012) .................................................................... 12

14   *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*,
       911 F.2d 242 (9th Cir. 1990) ......................................................................... 57

15

16   *Cooper v. Pickett*,
       137 F.3d 616 (9th Cir. 1998) ...................................................................... 7, 56

17   *Copper Sands Homeowners Ass'n, Inc. v. Copper Sands Realty, LLC*,
       No. 2:10-cv-00510-GMN-NJK, 2013 WL 3270430 (D. Nev. June 26, 2013) ............... 66

18   *Corder v. Ford Motor Co.*,
       869 F. Supp. 2d 835 (W.D. Ky. 2012) .............................................................. 66

19   *Counts v. Gen. Motors, LLC*,
       237 F. Supp. 3d 572 (E.D. Mich. 2017) ........................................................... 48

20   *Counts v. Gen. Motors, LLC*,
       No. 16-CV-12541, 2017 WL 1406938 (E.D. Mich. Apr. 20, 2017) ............................ 50

21   *Craig & Bishop, Inc. v. Piles*,
       247 S.W.3d 897 (Ky. 2008) ........................................................................... 69

22   *Curtis Lumber Co. v. La. Pac. Corp.*,
       618 F.3d 762 (8th Cir. 2010) ......................................................................... 64

23   *Daniel v. Ford Motor Co*,
       806 F.3d 1217 (9th Cir. 2015) ....................................................................... 61

24   *Daniel v. Ford Motor Co.*,
       No. 2:11-02890 WBS EFB, 2013 WL 2474934 (E.D. Cal. June 7, 2013) ................... 61

25   *Danvers Motor Co. v. Ford Motor Co.*,
       432 F.3d 286 (3d Cir. 2005) ...................................................................... 8, 10

26

27   *Darisse v. Nest Labs, Inc.*,
       No. 5:14-cv-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ................... 54

28   *Davidson v. Kimberly-Clark Corp.*,
       No. 15-16173, 2017 WL 4700093 (9th Cir. Oct. 20, 2017) ................................... 64

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3    *Davis v. Powertel, Inc.*,
        776 So. 2d 971 (Fla. Dist. Ct. App. 2000) ....................................................... 64
4    *Delahunt v. Cytodyne Techs.*,
        241 F. Supp. 2d 827 (S.D. Ohio 2003) ............................................................ 66
5    *Desertrain v. City of Los Angeles*,
        754 F.3d 1147 (9th Cir. 2014).......................................................................... 43
6    *Diaz v. Gates*,
        420 F.3d 897 (9th Cir. 2005)............................................................................ 21
7
     *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
8        No. 14-cv-02349-TEH, 2015 WL 1548872 (N.D. Cal. Apr. 7, 2015)............. 60
     *Dix v. Am. Bankers Life Assur. Co. of Fla.*,
9        429 Mich. 410 (1987)................................................................................ 64, 66
     *Doe v. Unocal Corp.*,
10       248 F.3d 915 (9th Cir. 2001).............................................................................. 5
11   *Doe v. Unocal Corp.*,
        27 F. Supp. 2d 1174 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915............................ 74
12   *Dornberger v. Metro. Life Ins. Co.*,
        961 F. Supp. 506 (S.D.N.Y. 1997)................................................................... 22
13   *Dufour v. BE LLC*,
        No. C 09-03770 CRB, 2010 WL 2560409 (N.D. Cal. June 22, 2010) ..... 19, 40
14
     *Dyson, Inc. v. Oreck Corp.*,
15       No. 07-9633, 2009 WL 537074 (E.D. La. Mar. 4, 2009) ................................. 57
     *Eames v. Nationwide Mut. Ins. Co.*,
16       Civ. No. 04-1324-JJF-LPS, 2008 WL 4455743 (D. Del. Sept. 30, 2008), *aff'd*,
        346 F. App'x 859 (3d Cir. Sept. 24, 2009) ...................................................... 65
17   *Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
        751 F.3d 990 (9th Cir. 2014)..................................................................... passim
18   *Ehrlich v. BMW of N. Am., LLC*,
        801 F. Supp. 2d 908 (C.D. Cal. 2010) ............................................................. 61
19
     *Elliott Co. v. Montgomery*,
20       Civ. A. No. 6:15-02404, 2016 WL 6301042 (W.D. La. Sept. 28, 2016)......... 68
     *Ellis v. J.P. Morgan Chase & Co.*,
21       950 F. Supp. 2d 1062 (N.D. Cal. 2013) ........................................................... 24
     *Elofson v. McCollum*,
22       No. 15-cv-05761-BLF, 2017 WL 2877099 (N.D. Cal. July 6, 2017)................ 3
     *Engalla v. Permanente Med. Grp., Inc.*,
23       15 Cal. 4th 951 (1997) ..................................................................................... 60
24   *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
        541 U.S. 246 (2004)......................................................................................... 47
25   *Epperson v. Roloff*,
        719 P.2d 799 (Nev. 1986) ................................................................................ 59
26   *Ezfauxdecor, LLC v. Appliance Art Inc.*,
        No. 15-9140, 2017 WL 661576 (D. Kan. Feb. 17, 2017) ................................ 55
27   *Falk v. GMC*,
        496 F. Supp. 2d 1088 (N.D. Cal. 2007) ........................................................... 42
28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3       *Farley v. GameStop Corp.*,
           No. 12-4734 (RBK/JS), 2013 WL 4042434 (D.N.J. Aug. 7, 2013) .................................. 57
4       *Ferrari v. Mercedes-Benz USA, LLC*,
           No. 15-cv-04379-YGR, 2016 WL 7188030 (N.D. Cal. Dec. 12, 2016) .......................... 43
5       *Ferron v. Dish Network, L.L.C.*,
6          195 Ohio App. 3d 686 (2011) ........................................................................................ 63
        *Fichtel v. Bd. of Dirs.*,
7          907 N.E.2d 903 (Ill. App. Ct. 2009) ............................................................................. 60
8       *Fimbel v. DeClark*,
           695 N.E.2d 125 (Ind. Ct. App. 1998) ............................................................................ 60
9       *First Nationwide Bank v. Gelt Funding Corp.*,
           27 F.3d 763 (2d Cir. 1994) .............................................................................................. 22
10      *First Prop. Grp., Ltd. v. Behr Dayton Thermal Prods. LLC*,
           No. 3:08-cv-329, 2011 WL 4073851 (S.D. Ohio Sept. 13, 2011) .................................. 59
11      *Fla. Lime & Avocado Growers, Inc. v. Paul*,
           373 U.S. 132 (1963) ......................................................................................................... 51
12      *Fla. v. Tenet Healthcare Corp.*,
13         420 F. Supp. 2d 1288 (S.D. Fla. 2005) .......................................................................... 63
        *Fleming v. Murphy*,
14         No. W2006-00701-COA-R3-CV, 2007 WL 2050930
           (Tenn. Ct. App. July 19, 2007) ....................................................................................... 66
15      *Focht v. Sol Melia S.A.*,
           No. C-10-0906 EMC, 20102010 WL 3155826 (N.D. Cal. Aug. 9, 2010) ...................... 75
16      *Force v. ITT Hartford Life & Annuity Ins. Co.*,
           4 F. Supp. 2d 843 (D. Minn. 1998) ................................................................................. 55
17      *Fraser Eng'g Co. v. Desmond*,
           524 N.E. 2d 110 (Mass. 1988) ......................................................................................... 66
18      *Freeman v. ABC Legal Servs., Inc.*,
19         877 F. Supp. 2d 919 (N.D. Cal. 2012) ............................................................................. 5
        *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
20         528 U.S. 167 (2000) ........................................................................................................... 5
        *Garvin v. Greenbank*,
21         856 F.2d 1392 (9th Cir. 1988) ......................................................................................... 37
22      *Geib v. Amoco Oil Co.*,
           29 F.3d 1050 (6th Cir. 1994) ........................................................................................... 46
        *Gibson v. Credit Suisse AG*,
23         No. 1:10 CV 001-EJL-REB, 2012 WL 1253007 (D. Idaho Mar. 30, 2012), *on
           reconsideration in part*,  2012 WL 5354559 (D. Idaho Oct. 26, 2012) .......................... 63
24      *Gladstone Realtors v. Bellwood*,
           441 U.S. 91 (1979) ........................................................................................................... 10
25      *Goodwin v. Hole No. 4*,
           No. 2:06-cv-00679, 2006 WL 3327990 (D. Utah Nov. 15, 2006) ................................... 63
26      *Greene v. Bank of Am., N.A.*,
           No. 1:13-cv-00937-JAP/KBM, 2014 WL 11497812 (D.N.M. Jan. 15, 2014) ................ 63
27      *Greene v. Gerber Prods. Co.*,
28         No. 16-cv-1153 (MKB), 2017 WL 3327583 (E.D.N.Y. Aug. 2, 2017) ........................... 63

- vii -

# TABLE OF AUTHORITIES
## (continued)

Pages

*Gregory v. Poulin Auto Sales, Inc.*,
   191 Vt. 611 (2012) ............................................................................................ 64

*Greystone Nev., L.L.C. v. Anthem Highlands Cmty. Ass'n*,
   No. 2:11-cv-01424-RCJ-CWH, 2012 WL 2782603 (D. Nev. July 9, 2012) ................ 63

*Grove Holding Corp. v. First Wis. Nat'l Bank*,
   803 F. Supp. 1486 (E.D. Wis. 1992) .................................................................. 22

*Guiggey v. Bombardier*,
   615 A.2d 1169 (Me. 1992) ................................................................................ 59

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) .......................................................................................... 35

*Hall v. Walter*,
   969 P.2d 224 (Colo. 1998) ............................................................................... 66

*Hamilton v. Ball*,
   7 N.E.3d 1241 (Ohio Ct. App. 2014) ................................................................ 64

*Hansen v. Auto-Owners Ins. Co.*,
   No. 09-cv-02736-MCA-BNB, 2010 WL 749820 (D. Colo. Mar. 4, 2010) ................ 63

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ....................................................................................... 27, 30

*Hess v. Chase Manhattan Bank, USA, N.A.*,
   220 S.W. 3d 758 (Mo. 2007) ............................................................................ 66

*Hinchliffe v. Am. Motors Corp.*,
   184 Conn. 607 (1981) ...................................................................................... 66

*Hines v. Davidowitz*,
   312 U.S. 52 (1941) ........................................................................................... 51

*Hines v. Riverside Chevrolet-Olds*,
   655 So. 2d 909 (Ala. 1994) (overruled on other grounds by *State Farm Fire &
   Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998)) ................................................ 59

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. July 8, 2013) ................................................................. 9

*Hogan v. Md. State Dental Ass'n*,
   843 A.2d 902 (Md. Ct. Spec. App. 2004) ......................................................... 59

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ............................................................................ 71

*Hollon v. Consumer Plumbing Recovery Ctr.*,
   No. Civ.A. 5:05-414-JMH, 2006 WL 839227 (E.D. Ky. Mar. 2, 2006) ................... 63

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ................................................................................... 17, 19

*Horton v. Bank of America, N.A.*,
   189 F. Supp. 3d 1286 (N.D. Okla. 2016) ......................................................... 64

*Howard v. Am. Online, Inc.*,
   208 F.3d 741 (9th Cir. 2000) ............................................................................ 44

*Huch v. Charter Commc'ns, Inc.*,
   290 S.W.3d 721 (Mo. 2009) ............................................................................ 64

*Hudock v. LG Elecs. U.S.A., Inc.*,
   No. 16-1220 (JRT/FLN), 2017 WL 1157098 (D. Minn. Mar. 27, 2017) ................... 13

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3    *Humphrey v. Citibank NA*,
        No. 2:12CV148M-V, 2013 WL 5407195 (N.D. Miss. Sept. 25, 2013) ........................... 70

4    *Hunt v. U.S. Tobacco Co.*,
        538 F. 3d 217 (3rd Cir. 2008) ........................................................................................ 65

5    *Impress Commc'ns v. Unumprovident Corp.*,
        335 F. Supp. 2d 1053 (C.D. Cal. 2003) ......................................................................... 22

6

7    *In re Anthem, Inc. Data Breach Litig.*,
        162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................................... 13

8    *In re Arnette*,
        454 B.R. 663 (Bankr. N.D. Tex. 2011) .......................................................................... 56

9    *In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*,
        155 F. Supp. 2d 1069 (S.D. Ind. 2001) ......................................................................... 21

10   *In re Carrier IQ, Inc., Consumer Privacy Litig.*,
        78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........................................................................... 13

11   *In re Caterpillar, Inc.*,
        MDL No. 2540, 2015 WL 4591236 (D.N.J. July 29, 2015) ......................... 48, 51, 52, 53

12   *In re Countrywide Fin. Corp. Sec. Litig.*,
        588 F. Supp. 2d 1132 (C.D. Cal. 2008) ......................................................................... 11

13   *In re Ford Fusion & C-Max Fuel Econ. Litig.*,
        No. 13-MD-2450 (KMK), 2015 WL 7018369 (S.D.N.Y. Nov. 12, 2015) ..................... 47

14   *In re Gen. Motors Corp.*,
        No. MDL 04-1600, 2005 WL 1924335 (W.D. Okla. Aug. 8, 2005) .............................. 63

15   *In re Gen. Motors LLC Ignition Switch Litig.*,
        No. 14-MD-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ....................... 24

16

17   *In re Glenfed, Inc. Sec. Litig.*,
        42 F.3d 1541 (9th Cir. 1994) .......................................................................................... 57

18   *In re Hydroxycut Mktg. & Sales Practices Litig.*,
        299 F.R.D. 648 (S.D. Cal. 2014) .................................................................................... 54

19   *In re Memorex Sec. Cases*,
        61 F.R.D. 88 (N.D. Cal. 1973) ....................................................................................... 14

20   *In re Mercedes-Benz Tele Aid Contract Litig.*,
        267 F.R.D. 113 (D. N.J. 2010) ....................................................................................... 66

21   *In re Merrill Lynch Ltd. P'ships Litig.*,
        7 F. Supp. 2d 256 (S.D.N.Y. 1997), *aff'd*, 154 F.3d 56 (2d Cir. 1998) ........................ 23

22   *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*,
        190 So. 3d 829 (Miss. 2015), *reh'g denied* (May 26, 2016) .......................................... 64

23   *In re Morning Song Bird Food Litig.*,
        12-cv-1592 JAH (RBB), 2013 WL 12144051 (S.D. Cal. Sept. 30, 2013) ..................... 25

24

25   *In re MyFord Touch Consumer Litig.*,
        46 F. Supp. 3d 936 (N.D. Cal. 2014) ................................................................. 52, 67, 69

26   *In re MyFord Touch Litig.*,
        No. 13-cv-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ....................... 54

27   *In re Optical Disk Drive Antitrust Litig.*,
        No. 3:10-md-2143 RS, 2012 WL 1366718 (N.D. Cal., Apr. 19, 2012) .......................... 54

28   *In re Packaged Ice Antitrust Litig.*,
        779 F. Supp. 2d 642 (E.D. Mich. 2011) ........................................................................ 63

**TABLE OF AUTHORITIES**
**(continued)**

**Pages**

*In re Packaged Seafood Prods. Antitrust Litig.*,
No. 15-MD-2670 JLS (MDD), 2017 WL 35571 (S.D. Cal. Jan. 3, 2017)................. 32, 39
*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014)................................................................ 9, 66
*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996)............................................................................... 39
*In re TFT LCD Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ................................................................. 7
*In re Toyota Motor Corp. Hybrid Brake Mktg.*,
915 F. Supp. 2d 1151 (C.D. Cal. 2013) ................................................................ 12
*In re Toyota Motor Corp.*,
790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................ 67
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)............. passim
*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
No. MDL 2672 CRB (JSC), 2017 WL 3816738 (N.D. Cal. Aug. 31, 2017).................... 49
*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
No. 16-2765 (JLL), 2017 WL 1902160 (D.N.J. May 8, 2017)........................................ 54
*Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*,
162 Wash. 2d 59 (2007)...................................................................................... 64, 66
*Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*,
293 F.3d 912 (5th Cir. 2002)................................................................................. 64
*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
929 A.2d 1076 (N.J. 2007).................................................................................... 66
*Ivar v. Elk River Partners, LLC*,
705 F. Supp. 2d. 1220 (D. Colo. 2010)................................................................... 22
*Jackson v. GMC*,
770 F. Supp. 2d 570 (S.D.N.Y. 2011),
*aff'd sub nom, Butnik v. GMC*, 472 F. App'x 80 (2d Cir. 2012) .......................... 48, 49, 50
*James Wang v. OCZ Tech. Grp., Inc.*,
No. C 11-1415 PSG, 2012 WL 12924975 (N.D. Cal. June 6, 2012)............................... 58
*Jarrett v. Panasonic Corp. of N. Am.*,
8 F. Supp. 3d 1074 (E.D. Ark. 2013)...................................................................... 66
*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*,
644 F.3d 934 (9th Cir. 2011)............................................................................. 47, 51
*Johnson v. Bobcat Co.*,
175 F. Supp. 3d 1130 (D. Minn. 2016).................................................................... 55
*Johnson v. KB Home*,
720 F. Supp. 2d 1109 (D. Ariz. Mar. 30, 2010)........................................................ 28
*Just Film, Inc. v. Merch. Servs.*,
No. C 10-1993 CW, 2012 WL 6087210 (N.D. Cal. Dec. 6, 2012).................................. 28
*K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*,
732 N.W.2d 792 (Wis. 2007)................................................................................. 66
*Kampuries v. Am. Honda Motor Co*,
204 F. Supp. 3d 484 (E.D.N.Y. 2016) ..................................................................... 58

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3 *Kaushal v. State Bank of India,*
   No. 82 C 7414, 1988 WL 116542 (N.D. Ill. Oct. 24, 1988) ............................................ 22

4 *Kearns v. Ford Motor Co.,*
   567 F.3d 1120 (9th Cir. 2009)........................................................................................... 42

5 *Keaton v. G.C. Williams Funeral Home, Inc.,*
   436 S.W.3d 538 (Ky. Ct. App. 2013) ............................................................................... 69

6 *Kelly v. Cape Cod Potato Chip Co.,*
   81 F. Supp. 3d 754 (W.D. Mo. 2015) ............................................................................... 10

7 *Kerrigan v. ViSalus, Inc.,*
   112 F. Supp. 3d 580 (E.D. Mich. 2015)............................................................................ 28

8 *Khaliki v. Helzberg Diamond Shops, Inc.,*
   No. 4:11-cv-00010-NKL, 2011 WL 1326660 (W.D. Mo. Apr. 6, 2011) ......................... 63

9 *Kreidler v. Pixler,*
   No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash. Dec. 7, 2006) ............................... 63

10 *Kwikset Corp. v. Superior Court,*
   51 Cal. 4th 310 (2011) ................................................................................................... 9, 10

11 *Lambert* v. *Downtown Garage, Inc.,*
   553 S.E. 2d 714 (Va. 2001)............................................................................................... 68

12 *Lentz v. Pan Am. Corp.,*
   No. 90-2181, 1991 WL 240739 (E.D. Pa. Nov. 12, 1991) ............................................... 22

13 *Lisk v. Lumber One Wood Preserving, LLC,*
   792 F.3d 1331 (11th Cir. 2015)................................................................................... 54, 63

14 *Lohman v. DaimlerChrysler Corp.,*
   166 P.3d 1091 (N.M. 2007) .............................................................................................. 66

15 *Lozano v. AT&T Wireless Servs.,*
   504 F.3d 718 (9th Cir. 2007)............................................................................................... 9

16 *Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)............................................................................................................. 5

17 *Luskin's, Inc. v. Consumer Prot. Div.,*
   353 Md. 335 (1999) ........................................................................................................... 68

18 *M.T. v. Saum,*
   7 F. Supp. 3d 701 (W.D. Ky. 2014) .................................................................................. 64

19 *MacCormack v. Brower,*
   948 A.2d 1259 (Me. 2008)................................................................................................. 64

20 *MacDonald v. Ford Motor Co.,*
   37 F. Supp. 3d 1087 (N.D. Cal. 2014) .............................................................................. 56

21 *Maio v. Aetna, Inc.,*
   221 F.3d 472 (3d Cir. 2000).............................................................................................. 22

22 *Maiz v. Virani,*
   253 F.3d 641 (11th Cir. 2001)........................................................................................... 17

23 *Marrale v. Gwinnett Place Ford,*
   271 Ga. App. 303 (2005) .................................................................................................. 64

24 *Matter of O.A.G.,*
   269 A.D.2d 1 (N.Y. App. Div. 2000)........................................................................... 49, 50

25 *Maya v. Centex Corp.,*
   658 F.3d 1060 (9th Cir. 2011)......................................................................................... 8, 9

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3

*Mayberry v. Bristol-Myers Squibb Co.*,
   Civ. A. No. 07-942 (FLW), 2009 WL 5216968 (D.N.J. Dec. 30, 2009) ........................ 66

4

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) ............................................................... 57

5

*McKie v. Sears Prot. Co.*,
   No. CV 10-1531-PK 2011 WL 1587112 (D. Or. Feb. 22, 2011) .................................... 63

6

*McKinney v. State*,
   693 N.E. 2d 65 (Ind. 1998) ............................................................................. 68

7

*McLaughlin v. Am. Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ....................................................................... 23, 24

8

*McMahon v. Take-Two Interactive Software, Inc.*,
   No. EDCV 13-02032-VAP (SPx), 2014 WL 324008 (C.D. Cal. Jan. 29, 2014),
   *rev'd on other grounds*, 640 F. App'x 669 (9th Cir. 2016) ............................... 14

9

10

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ...................................................................................... 46

11

*Mendoza v. Zirkle Fruit Co.*,
   301 F.3d 1163 (9th Cir. 2002) ......................................................................... 20

12

*Merrick v. Diageo Ams. Supply, Inc.*,
   805 F.3d 685 (6th Cir. 2015) ........................................................................... 46

13

*Metro. Prop. & Cas. Ins. Co. v. Bell*,
   No. 04-5965, 2005 WL 1993446 (6th Cir. Aug. 17, 2005) ........................................ 63

14

*Miller v. Elliott Aviation Aircraft Sales Inc.*,
   No. 4:13–cv-00161-JAJ, 2014 WL 12601040 (S.D. Iowa Mar. 31, 2014) ...................... 63

15

*Miller v. Keyser*,
   90 S.W.3d 712 (Tex. 2002) ............................................................................. 64

16

*Miller v. Yokohama Tire Corp.*,
   358 F.3d 616 (9th Cir. 2004) ........................................................................... 39

17

*Ministry of Health, Province of Ontario, Can. v. Shiley Inc.*,
   858 F. Supp. 1426 (C.D. Cal. 1994) ................................................................... 52

18

19

*Minn. Life Ins. Co. v. Philpot*,
   No. 11CV00812 BTM (POR), 2012 WL 4486311 (S.D. Cal. Sept. 27, 2012) ............... 45

20

*Moore v. Kayport Package Express, Inc.*,
   885 F.2d 531 (9th Cir. 1989) ..................................................................... passim

21

*Moto Tech, LLC v. KTM N. Am., Inc.*,
   No. 1:13-cv-00165-BLW, 2013 WL 6446239 (D. Idaho Dec. 9, 2013) ......................... 69

22

*Murillo v. Kohl's Corp.*,
   197 F. Supp. 3d 1119 (E.D. Wis. 2016) ............................................................. 63

23

*Myre v. Meletio*,
   307 S.W.3d 839 (Tex. App. 2010) .................................................................... 56

24

*Nashef v. AADCO Med., Inc.*,
   947 F. Supp. 2d 413 (D. Vt. 2013) ................................................................... 63

25

*Nigh v. Koons Buick Pontiac GMC, Inc.*,
   143 F. Supp. 2d 535 (E.D. Va. 2001), *aff'd*, 319 F.3d 119 (4th Cir. 2003) ................ 63

26

*Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*,
   558 A.2d 1066 (Del. Super. Ct. 1989)
   *aff'd*, 596 A.2d 1358 (Del. 1991) ..................................................................... 55

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3

*Northrop Corp. v. GMC*,
  807 N.E.2d 70 (Ind. Ct. App. 2004)............................................................. 60

4

*Nygaard v. Sioux Valley Hosps. & Health Sys.*,
  731 N.W. 2d 184 (S.D. 2007) ..................................................................... 66

5

*O'Brien v. Landers*,
  No. 1:10-cv-02765, 2011 WL 221865 (N.D. Ill. Jan. 24, 2011)..................... 68

6

*Odom v. Microsoft Corp.*,
  486 F.3d 541 (9th Cir. 2007)................................................................ 16, 31

7

*Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*,
  298 F.3d 768 (9th Cir. 2002)................................................ 13, 25, 28, 44

8

*Omega Eng'g v. Eastman Kodak Co.*,
  908 F. Supp. 1084 (D. Conn. 1995) ........................................................... 56

9

*Omni USA, Inc. v. Parker-Hannifin Corp.*,
  798 F. Supp. 2d 831 (S.D. Tex. 2011) ........................................................ 63

10

*Oscar v. University Students Co-Operative Association*,
  965 F.2d 783 (9th Cir. 1992)................................................................ 20, 21

11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y. 2d 20 (N.Y. 1995) ......................................................................... 66

12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
  85 N.Y.2d 20 (1995) ................................................................................. 64

13

*Pac. Gas & Elec. Co. v. Howard P. Foley Co.*,
  No. 85-2922 SW, 1993 WL 299219 (N.D. Cal. July 27, 1993)................... 17, 19

14

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983).................................................................................. 51

15

*Padin v. Oyster Point Dodge*,
  397 F. Supp. 2d 712 (E.D. Va. 2005).......................................................... 66

16

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*,
  469 U.S. 189 (1985).................................................................................. 46

17

*Parravano v. Babbitt*,
  861 F. Supp. 914 (N.D. Cal. 1994), *aff'd sub nom*, *Parravano v. Masten*,
  70 F.3d 539 (9th Cir. 1995)......................................................................... 5

18

*Passiglia v. Northwell Health, Inc.*,
  No. 16-CV-3611 (SJF) (ARL), 2017 WL 2062957 (E.D.N.Y. May 12, 2017) ...... 61

19

*Payne v. Dewitt*,
  995 P.2d 1088 (Okla. 1999) ...................................................................... 70

20

*Pebble Beach Co. v. Caddy*,
  453 F.3d 1151 (9th Cir. 2006)................................................................... 71

21

*Pennsylvania Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
  No. 09 C 5619, 2010 WL 1979569 (N.D. Ill. May 17, 2010)....................... 28

22

*Pereira v. United States*,
  347 U.S. 1 (1954) .................................................................................... 40

23

*Petro-Tech, Inc. v. W. Co. of N. Am.*,
  824 F.2d 1349 (3d Cir. 1987)..................................................................... 45

24

*Pillsbury, Madison & Sutro v. Lerner*,
  31 F.3d 924 (9th Cir. 1994)....................................................................... 30

25

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3   *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
        631 F.3d 436 (7th Cir. 2011)................................................................... 63

4   *Pirnik v. Fiat Chrysler Autos.*,
        No. 15-CV-7199 (JMF), 2017 U.S. Dist. LEXIS 120841

5       (S.D.N.Y. Aug. 1, 2017) ......................................................................... 39

6   *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
        227 F.3d 489 (5th Cir. 2000).................................................................... 57

7   *Plascencia v. Lending 1st Mortg.*,
        259 F.R.D. 437 (N.D. Cal. 2009) .............................................................. 67

8   *PNC Bank, Nat. Ass'n v. Wilson*,
        No. CV-14-80-BU-DWM-JCL, 2015 WL 3887602 (D. Mont. June 23, 2015) .............. 63

9   *Potomac Elec. Power Co. v. Elec. Motor & Supply, Inc.*,
        262 F.3d 260 (4th Cir. 2001).................................................................... 20
10
    *Rait v. Sears, Roebuck & Co.*,
11      No. 08-2461 (JLL), 2009 WL 250309 (D.N.J. Feb. 3, 2009) .......................... 63

    *Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*,
12      693 F.3d 48 (1st Cir. 2012) ..................................................................... 59

    *Raup v. Wells Fargo Bank, NA*,
13      No. CV-13-00137-PHX-GMS, 2013 WL 3216175 (D. Ariz. June 25, 2013) ............. 63

    *Raysoni v. Payless Auto Deals, LLC*,
14      296 Ga. 156 (2014) ................................................................................ 66

15  *Regence Grp. v. TIG Specialty Ins. Co.*,
        903 F. Supp. 2d 1152 (D. Or. 2012) ......................................................... 45

16  *Reiter v. Sonotone Corp.*,
        442 U.S. 330 (1979)................................................................................ 18

17  *Remmes v. Int'l Flavors & Fragrances, Inc.*,
        453 F. Supp. 2d 1058 (N.D. Iowa 2006) ................................................... 58

18
    *Reves v. Ernst & Young*,
19      507 U.S. 170 (1993).......................................................................... 33, 35

    *Rikos v. P&G*,
20      782 F. Supp. 2d 522 (S.D. Ohio 2011) ..................................................... 10

21  *RJR Nabisco, Inc. v. European Cmty.*,
        136 S. Ct. 2090 (2016) ........................................................................... 42

22  *Robinson v. Sunshine Homes, Inc.*,
        291 P.3d 628 (Okla. Civ. App. 2010) ....................................................... 70

23  *Rubio v. Capital One Bank*,
        613 F.3d 1195 (9th Cir. 2010)................................................................. 11

24  *Salinas v. United States*,
        522 U.S. 52 (1997)................................................................................. 44

25  *Sanders v. Apple Inc.*,
        672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................... 58

26  *Sanders v. Francis*,
        277 Or. 593 (1977)................................................................................. 66

27  *Scanlan v. Sunbeam Prods., Inc.*,
        690 F. App'x 319 (6th Cir. 2017) ............................................................. 68

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3

*Schmuck v. United States,*
489 U.S. 705 (1989) ................................................................................ 18, 41, 42

4

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004) ........................................................................... 72

5

*Sedima, S.P.R.L. v. Imrex Co.,*
473 U.S. 479 (1985) ...................................................................................... 16, 28

6

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
559 U.S. 393 (2010) ............................................................................................ 53

7

*Shah v. Racetrac Petroleum Co.,*
338 F.3d 557 (6th Cir. 2003) ............................................................................ 64

8

*Siemer v. Assocs. First Capital Corp.,*
No. CV97-281TUCJMRJCC, 2001 WL 35948712 (D. Ariz. Mar. 30, 2001) ................ 66

9

*Smith v. Pfizer Inc.,*
688 F. Supp. 2d 735 (M.D. Tenn. 2010) .................................................. 56, 59

10

*Sosa v. DIRECTV, Inc.,*
437 F.3d 923 (9th Cir. 2006) ........................................................................... 38

11

*Spaulding v. Wells Fargo Bank, N.A.,*
714 F.3d 769 (4th Cir. 2013) ........................................................................... 63

12

*Spokeo, Inc. v. Robins,*
136 S. Ct. 1540 (2016) ........................................................................................ 8

13

*Starr v. Baca,*
652 F.3d 1202 (9th Cir. 2011) ...................................................................... 6, 36

14

*State ex rel. Brady v. Pettinaro Enters.,*
870 A.2d 513 (Del. Ch. 2005) .......................................................................... 55

15

*State ex rel. Brady v. Publishers Clearing House,*
787 A.2d 111 (Del. Ch. 2001) .......................................................................... 63

16

*State ex rel. Horne v. AutoZone, Inc.,*
229 Ariz. 358 (2012) ......................................................................................... 64

17

*State ex rel. Kidwell v. Master Distribs., Inc.,*
101 Idaho 447 (1980) ......................................................................................... 66

18

*State ex rel. Kidwell v. Master Distributors, Inc.,*
101 Idaho 447 (1980) ......................................................................................... 64

19

*State ex rel. Miller v. Pace,*
677 N.W.2d 761 (Iowa 2004) ........................................................................... 64

20

*State ex rel. Miller v. Vertrue, Inc.,*
834 N.W.2d 12 (Iowa 2013) ............................................................................. 66

21

*State v. Weinschenk,*
868 A.2d 200 (Me. 2005) .................................................................................. 66

22

*Stearns v. Ticketmaster Corp.,*
655 F.3d 1013 (9th Cir. 2011) ............................................................................ 9

23

*Steele v. Hospital Corp. of America,*
36 F.3d 69 (9th Cir. 1994) .......................................................................... 20, 21

24

*Stephenson v. Capano Dev., Inc.,*
462 A.2d 1069 (Del. 1983) ............................................................................... 66

25

*Stevenson v. Louis Dreyfus Corp.,*
112 N.M. 97 (1991) ........................................................................................... 68

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3

*Stitt v. Citibank, N.A.,*
   942 F. Supp. 2d 944 (N.D. Cal. 2013) ..................................................... 19, 24

4

*Stolzoff v. Waste Sys. Int'l, Inc.,*
   792 N.E. 2d 1031 (Mass. App. Ct. 2003)....................................................... 59

5

*Strickland v. Kafko Mfg., Inc.,*
   512 So. 2d 714 (Ala. 1987) ........................................................................... 68

6

*Swartz v. KPMG LLP,*
   476 F.3d 756 (9th Cir. 2007)....................................................................... 7, 16

7

*Swierkiewicz v. Sorema N. A.,*
   534 U.S. 506 (2002)........................................................................................ 62

8

*Synopsys, Inc. v. Ubiquiti Networks, Inc.,*
   No. 17-cv-00561-WHO, 2017 WL 3485881 (N.D. Cal. Aug. 15, 2017) ........................ 31

9

*Taylor v. Philip Morris Inc.,*
   No. Civ.A. CV-00-203, 2001 WL 1710710 (Me. Super. Ct. May 29, 2001) ............. 56, 70

10

*Terra Ins. Co. v. N.Y. Life Inv. Mgmt., LLC,*
   No. C 09-01609-WHA, 2009 WL 2365883 (N.D. Cal. July 30, 2009) ............................. 7

11

*Thunander v. Uponor, Inc.,*
   887 F. Supp. 2d 850 (D. Minn. 2012) ............................................................ 63

12

*Tietsworth v. Harley-Davidson, Inc.,*
   677 N.W.2d 233 (Wis. 2004)......................................................................... 62

13

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.,*
   117 F. Supp. 3d 722 (M.D.N.C. 2015)........................................................... 63

14

*Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols., Inc.,*
   823 F. Supp. 2d 1306 (N.D. Ga. 2011) ......................................................... 55

15

*Tri-State Express, Inc. v. Cummins Engine Co.,*
   No. 99-00220 (HHK), 2000 U.S. Dist. LEXIS 23564 (D.D.C. Sept. 11, 2000).............. 23

16

*True v. Am. Honda Motor Co.,*
   520 F. Supp. 2d 1175 (C.D. Cal. 2007) ......................................................... 67

17

*Turner Greenberg Assocs., Inc. v. Pathman,*
   885 So. 2d 1004 (Fla. Dist. Ct. App. 2004) .................................................... 66

18

*U.S. Funding, Inc. of Am. v. Bank of Boston Corp.,*
   551 N.E.2d 922 (Mass. App. Ct. 1990).......................................................... 63

19

*Unigestion Holding, S.A. v. UPM Tech., Inc.,*
   160 F. Supp. 3d 1214 (D. Or. 2016) .............................................................. 59

20

*United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v.
   Amgen, Inc.,*
   400 F. App'x 255 (9th Cir. 2010) .................................................................. 65

21

*United Jersey Bank v. Kensey,*
   704 A.2d 38 (N.J. Super. Ct. App. Div. 1997)................................................ 59

22

*United Mine Workers of Am. v. Pennington,*
   381 U.S. 657 (1965)....................................................................................... 38

23

*United Roasters, Inc. v. Colgate-Palmolive Co.,*
   649 F.2d 985 (4th Cir. 1981).......................................................................... 64

24

*United States v. Buckley,*
   689 F.2d 893 (9th Cir. 1982).......................................................................... 37

25

26

27

28

1

2

**TABLE OF AUTHORITIES**
(continued)

Pages

3

*United States v. Castor*,
558 F.2d 379 (7th Cir. 1977)................................................................. 37

4

*United States v. Christensen*,
801 F.3d 970 (9th Cir. 2015)............................................................ 30, 31

5

6

*United States v. Fernandez*,
388 F.3d 1199 (9th Cir. 2004)........................................................... 33, 35

*United States v. French*,
748 F.3d 922 (9th Cir. 2014)................................................................. 39

7

*United States v. Hernandez*,
No. CR-14-0120 EMC, 2015 WL 4498084 (N.D. Cal. July 23, 2015) ........................... 44

8

*United States v. Lothian*,
976 F.2d 1257 (9th Cir. 1992)............................................................... 40

9

10

*United States v. Love*,
535 F.2d 1152 (9th Cir. 1976)............................................................... 37

*United States v. Stapleton*,
293 F.3d 1111 (9th Cir. 2002)........................................................ 36, 37, 40

11

*V.S.H. Realty, Inc. v. Texaco, Inc.*,
757 F.2d 411 (1st Cir. 1985)................................................................ 59

12

13

*Valdez v. Saxon Mortg. Servs.*,
No. 2:14-cv-03595-CAS(MANx),
2014 WL 7968109 (C.D. Cal. Sept. 29, 2014)............................................... 19

14

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003)........................................................... 57, 63

15

16

*Waldrup v. Countrywide Fin. Corp.*,
No. 2:13-cv-08833-CAS (CWx), 2015 WL 93363 (C.D. Cal. Jan. 5, 2015)................. 7, 14

17

*Wash. Shoe Co. v. A-Z Sporting Goods Inc.*,
704 F.3d 668 (9th Cir. 2012)................................................................ 72

18

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d 406 (9th Cir. 1977)................................................................ 75

19

20

*White v. Pepin*,
561 A.2d 94 (Vt. 1989)..................................................................... 60

*White v. Potocksa*,
589 F. Supp. 2d 631 (E.D. Va. 2008)........................................................ 60

21

*Wiegand v. Walser Auto. Groups, Inc.*,
683 N.W.2d 807 (Minn. 2004)............................................................... 66

22

23

*Williams* v. *Dee Miracle Auto Grp. LLC*,
Civil No. ELH-15-2466, 2016 WL 3411640 (D. Md. June 22, 2016).......................... 22

24

*Wilson v. Parisi*,
549 F. Supp. 2d 637 (M.D. Pa. 2008) ...................................................... 67

25

*WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*,
381 Mont. 333 (2015) ...................................................................... 64

26

*Won Kyung Hwang v. Ohso Clean, Inc.*,
No. C-12-06355 JCS, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013).......................... 56

27

*Wright v. Kia Motors Am. Inc.*,
No. Civ. 06-6212-AA, 2007 WL 316351 (D. Or. Jan. 29, 2007) ............................. 66

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Pages

3    *Wyman v. Terry Schulte Chevrolet, Inc.*,
          584 N.W. 2d 103 (Sup. Ct. S.D. 1998) .......................................................... 70
4    *Young v. Bristol-Myers Squibb Co.*,
          No. 4:16-CV-00108-DMB-JMV, 2017 WL 706320 (N.D. Miss. Feb. 22, 2017) ........... 63
5    *Young v. Century Lincoln-Mercury, Inc.*,
          302 S.C. 320 (S.C. Ct. App. 1989), *aff'd in part, rev'd on other grounds in*
6        *part*, 309 S.C. 263 (1992) .............................................................. 64

7    **STATUTES**

8    18 U.S.C. § 1962(c) ............................................................. 17, 33, 71
9    18 U.S.C. § 1962(d) ................................................................... 17, 71
     18 U.S.C. § 1964(c) .......................................................... 16, 17, 18, 25
10   18 U.S.C. § 1965(b) ....................................................................... 73
11   42 U.S.C. § 7401(b)(1) .................................................................. 49
     42 U.S.C. § 7543(a) ..................................................................... 47
12   42 U.S.C. § 7543(d) ..................................................................... 51
     42 U.S.C. § 7604(e) ..................................................................... 49
13   Ariz. Rev. Stat. Ann. § 44-1522 ........................................................ 65
14   Ark. Code Ann. § 4-88-107(a)(1) ........................................................ 68
     Idaho Code § 48-601 .................................................................... 69
15   Ind. Code § 24-5-0.5-4 ................................................................. 65
16   Iowa Code § 714H.3(1) .................................................................. 68
     Iowa Code § 714H.6(5) .................................................................. 54
17   Iowa Code § 714H.7 ..................................................................... 54
18   Ky. Rev. Stat. Ann. § 355.1-201 ........................................................ 69
     Ky. Rev. Stat. Ann. § 367.220(1) ....................................................... 69
19   Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ........................................... 71
     Me. Rev. Stat. Ann. Tit. 5 § 205-a ..................................................... 65
20   Minn. Stat. Ann. § 325D.45 ............................................................. 68
21   Miss. Code § 75-24-1 ................................................................... 65
     Miss. Code Ann. § 75-24-15(2) .......................................................... 70
22   Mont. Code Ann. §§ 3014-101 ............................................................ 65
     N.C. Gen. Stat. § 75-1.1 ............................................................... 68
23   N.D. Cent. Code § 51-15-02 ......................................................... 64, 68
24   N.M. Stat. Ann. § 57-12-1 .............................................................. 65
     N.Y. Gen. Bus. Law § 349 ............................................................... 64
25   Nev. Rev. Stat. Ann. § 598.0915 ........................................................ 64
     Ohio Rev. Code Ann. § 4165.01 .......................................................... 65
26   Okla. Stat. Tit. 15 § 751 .............................................................. 65
27   Or. Rev. Stat. Ann. § 646.608 .......................................................... 64
     S.C. Code §§ 39-5-10 ................................................................... 65
28   Tex. Bus. & Com. Code § 17.50(a)(1)(B) ................................................. 65

# TABLE OF AUTHORITIES
## (continued)

**Pages**

Utah Code Ann. § 13-11a-1 ........................................................... 65

Vt. Stat. Ann. tit. 9, § 2461(b)...................................................... 66

Wyo. Stat. Ann. § 40-12-108(a)..................................................... 65

## RULES

Fed. R. Civ. P. 15 .......................................................................... 43

Fed. R. Civ. P. 9(b) ............................................................. 7, 39, 40

## TREATISES

*Restatement (Second) of Torts* § 551 ............................................ 59

## OTHER AUTHORITIES

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1298
(3d ed.) ..................................................................................... 35

Gregory P. Joseph, *Civil RICO: A Definitive Guide* (3d ed. 2010) .............................................. 28

*Ninth Cir. Manual of Model Civ. Jury Instrs.* ............................... 31

Rakoff and Goldstein, *RICO: Civil & Criminal Law & Strategy*, § 4.02[3] (2017)............... 17, 19

S. Rep. No. 91-1196........................................................................ 49

Plaintiffs[1] respectfully submit this omnibus opposition to the motions to dismiss the Amended Consolidated Consumer Class Action Complaint ("Complaint"; Dkt. 225) brought by Defendants Fiat Chrysler Automobiles N.V. ("Fiat"), FCA US LLC ("FCA"), Sergio Marchionne ("Marchionne") (together, "Fiat Chrysler"), VM Motori S.p.A. ("VM Italy"), and VM North America, Inc. ("VM America") (together, "VM Motori") (collectively, the "FCA Defendants"), Dkt. 232 ("FCA Mem."); and Defendants Robert Bosch LLC ("Bosch LLC") and Robert Bosch GmbH ("Bosch GmbH") (collectively, the "Bosch Defendants") (all together, "Defendants"),[2] Dkt. 231 ("Bosch Mem.").

## I.      INTRODUCTION

Defendants' motions to dismiss largely rise and inevitably fall on the fiction that Plaintiffs allege a speculative injury.  What remains a matter of speculation, in reality, is whether Defendants may, at some point in the future, find a fix for the illegal emission treatment software that they colluded to install in the 2014-2016 EcoDiesel® Jeep Grand Cherokees and Ram 1500 trucks ("Class Vehicles"), and concealed from regulators and consumers alike.  This future uncertainty as to whether Defendants can ultimately mitigate some of the harm caused by their scheme does not negate the past and present economic harms Plaintiffs suffered and continue to suffer.  Plaintiffs were separated from their hard-earned money at the moment they purchased or leased the Class Vehicles that could not, and would not, have been sold absent the illegal scheme and were not delivered as advertised.  Plaintiffs' alleged damages are existing economic losses flowing from Defendants' alleged misconduct, and those damages satisfy all Article III standing and statutory injury requirements

Further, Plaintiffs' 376-page Complaint alleges their federal and state law claims with more than sufficient detail to put each of the Defendants on notice of the specifics of their alleged misconduct.  Contrary to Defendants' suggestion that this action is a mere regulatory spat, it was the Plaintiffs and the Class members who literally paid the price, and suffered the loss, for the Defendants' scheme.  Plaintiffs' claims for violations of the federal Racketeer Influenced and

---

[1] The "Plaintiffs" are those listed in the Complaint at ¶¶ 34-96.
[2] Capitalized terms shall have the same meaning as in the Complaint, unless otherwise noted.

1   Corrupt Organizations Act ("RICO") are analogous to those claims upheld by a unanimous

2   Supreme Court in *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 647 (2008).  Like the

3   Defendants here, the defendants in *Bridge* contended that fraudulent bids submitted in county tax

4   lien auctions were not actionable by defendants' competitors because the false statements at issue

5   were directed to a governmental entity rather than the plaintiff-competitors.  In decisively

6   rejecting that argument, the *Bridge* Court held unequivocally that *first-person reliance is not*

7   *required for a civil RICO claim.  See id.* at 648.  Thus, and for the many of the same reasons

8   Judge Charles Breyer articulated in a recent order denying Bosch's motion to dismiss a RICO

9   claim brought by Volkswagen franchise dealers in the Volkswagen "Clean Diesel" litigation,

10  Plaintiffs' allegations of RICO misconduct are sufficient against all Defendants here.  *See In re*

11  *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB

12  (JSC), 2017 WL 4890594 (N.D. Cal. Oct. 30, 2017).

13          Plaintiffs also properly and plausibly state their federal Magnuson-Moss Warranty Act

14  ("MMWA") claim, and their state law claims for fraudulent concealment, unfair and deceptive

15  practices, and breach of warranty—none of which Defendants have shown to be preempted.

16  Plaintiffs' state law claims do not rely on proof of a Clean Air Act ("CAA") violation or seek to

17  enforce this regulatory scheme.  Instead, these claims turn on whether the emission controls that

18  Defendants designed and installed in the Class Vehicles are compromised during normal driving

19  such that the actual operations of the vehicles contradict Defendants' EcoDiesel® advertising and

20  marketing campaign—their consumer-directed conduct—and whether these concealed

21  manipulations were contrary to consumers' reasonable expectations about the nature and

22  performance of the "Eco" Class Vehicles they bought or leased.

23          In sum, Defendants' motions rely on a series of straw man arguments, which they

24  construct by mischaracterizing the nature of the claims before knocking them down.  In so doing,

25  Defendants ignore Plaintiffs' core allegations and legal theories, erroneously ratchet up pleading

26  standards, overplay their hand on preemption, and misconstrue the claims.  When the issues are

27  properly framed by the operative law and the facts alleged in the Complaint, it is clear that

28  Plaintiffs have plausibly and sufficiently pled their claims.  As the Complaint's detailed

1  allegations demonstrate, and as shown below, each of Plaintiffs' claims stands against each

2  Defendant.  The Court should deny Defendants' motions in their entirety.

3  **II.      FACTUAL BACKGROUND**[3]

4          It may have seemed implausible just a few years ago that a major automaker and a major

5  parts supplier would have the hubris to cheat emission tests on a national scale, but times have

6  changed.  We now know that defeat devices were the industry's dirty secret lurking behind

7  innovative "clean diesel" vehicles.  *See* ¶ 106-07.[4]  Much like Volkswagen, its competitor Fiat

8  Chrysler sought to increase its North American sales and revenue by grabbing a piece of the

9  lucrative "clean diesel" market with its EcoDiesel® vehicles marketed under the Jeep and Ram

10 brands.  *Id.*; ¶¶ 1, 229.  As with Volkswagen, Fiat Chrysler—also colluding with the same Bosch

11 Defendants—resorted to cheating and concealed from regulators and consumers that its

12 EcoDiesel® vehicles were far from "Eco."  *See id.*

13         The Complaint describes in detail Defendants' scheme to design and install emission

14 treatment software that allowed the Class Vehicles to "pass" emission tests and thus be

15 fraudulently sold in the United States.  ¶¶ 102-90, 230-40.  As the Environmental Protection

16 Agency ("EPA") has revealed, FCA's applications for certificates of conformity ("COCs")—and

17 California Air Resource Board ("CARB") executive orders ("EOs")—concealed eight different

18 auxiliary emission control devices ("AECDs"), which operated together and by themselves as

19 illegal defeat devices.  ¶¶ 2-3, 169-73.  This hidden software ("EDC17" or "EDC 17"), which was

20 designed and implemented by Bosch GmbH and Bosch LLC (*see* Bosch Mem. 5), enabled the

21 Class Vehicles to "pass" the emission tests necessary to obtain the COCs and EOs that Fiat

22 Chrysler needed to sell and lease these Vehicles to Plaintiffs and Class members throughout the

23 United States.  *Id.*  Outside the testing environment, however, the emission controls were

24
_____
[3] Defendants' exhibits and purported "facts" should be disregarded at this stage.  *See, e.g.*, Dkt.
25 233 (Cafasso Decl. and Exhibits thereto submitted with the FCA Defendants' motion); Bosch
Mem. 30 (ignoring allegations of Bosch involvement in calibration, such as ¶ 132).  Their
26 proposed "evidence" falls outside the four corners of the Complaint and is irrelevant to the
Court's jurisdictional analysis.  *Cf. Elofson v. McCollum*, No. 15-cv-05761-BLF, 2017 WL
27 2877099, at *2 (N.D. Cal. July 6, 2017) (finding the documents submitted by defendant were
"irrelevant to the jurisdictional issues raised by McCollum's motion to dismiss").
28 [4] References to "¶" are to the Complaint (Dkt. 225).

1   deactivated or severely restricted, enabling the Class Vehicles to emit much higher amounts of

2   polluting nitrogen oxides ("NO$_X$") during everyday driving.  *Id.*[5]

3        The FCA Defendants did not act alone.  The Complaint alleges that the Bosch Defendants

4   were active and knowing participants in the scheme.  *See, e.g.*, ¶ 9.  Indeed, the scheme could not

5   have succeeded without them.  The Bosch Defendants designed, customized, and tested the

6   EDC17's—the devices installed in the Class Vehicles and employed to simulate "passing"

7   emission tests.  Plaintiffs allege each Bosch entity's role in the development, customization, and

8   calibration of these defeat devices.  *E.g.*, ¶ 250.  The Complaint also provides details from Bosch

9   software documentation describing functions in the Class Vehicles' emission controls that serve

10  no apparent legitimate purpose and that correspond with the undisclosed AECDs at issue in this

11  litigation.  *See* ¶¶ 174-79.

12       Contrary to the Bosch Defendants' suggestion, Bosch did not stand mute in this scheme.

13  As alleged in the Complaint, the Bosch Defendants not only designed, created, and tested the

14  defeat device software functions that were concealed in the COC and EO applications, but they

15  also affirmatively boasted that the "2014 Jeep Grand Cherokee features a Bosch emission system

16  compliant with the most stringent emission regulations in the world.  From fuel tank to tailpipe,

17  Bosch is pleased to equip this vehicle with top technologies to give consumers a great driving

18  experience requiring fewer stops at the pump."  ¶ 9.  The Complaint also alleges that the Bosch

19  Defendants have acknowledged their role in creating cheat devices in Fiat Chrysler diesel

20  vehicles sold in the European Union ("EU").  *See id.*

21       Plaintiffs and Class members around the country were caught in the middle of this scheme

22  when they bought what were marketed as "Eco" vehicles, but were in fact the biggest polluters on

23  the road.  ¶ 6.  Defendants touted "EcoDiesel" as the best of both worlds:  a "green" alternative to

24  gasoline with reduced emissions, coupled with greater torque, power, and fuel efficiency.  *Id.*  All

25  the while, the EDC17 emission controls reduced the effectiveness of the NO$_X$ reduction

26  technology during real-world driving conditions, spewing NO$_X$ far in excess of what a reasonable

---

[5] The fact that the FCA Defendants have since chosen to answer, rather than move to dismiss, the government's claims for CAA violations in this MDL bolsters the plausibility of Plaintiffs' allegations.  *See* Dkt. 230.

consumer expects from an "Eco" vehicle.  ¶ 7.  The data supports this conclusion.  Plaintiffs' on-road testing confirmed that the Class Vehicles produced NO$_X$ over *20 times* the legal limits.  *Id.* But for the Defendants' illegal scheme to fraudulently obtain COCs and EOs through the hidden defeat devices, they could not have sold the Class Vehicles in the first place.  *See, e.g.*, ¶ 270.

The purchase or lease of a vehicle is a major expenditure.  Payment for a vehicle designed and constructed to operate contrary to the representations about its performance is an economic loss at the point of sale.  Each Plaintiff avers that he or she "would not have purchased the Class Vehicle, or would have paid less for it, had he [or she] known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests."  *See, e.g.*, ¶ 35.  This real, economic injury gives Plaintiffs standing to bring their claims.

## III.   APPLICABLE LEGAL STANDARDS

### A.   <u>Article III Standing</u>

Where, as here, a defendant's challenge to subject matter jurisdiction is a facial one, "the Court must accept all allegations of fact in the complaint as true."  *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 922 (N.D. Cal. 2012).  One component of subject matter jurisdiction is Article III standing.  *See Parravano v. Babbitt*, 861 F. Supp. 914, 929 (N.D. Cal. 1994), *aff'd sub nom, Parravano v. Masten*, 70 F.3d 539 (9th Cir. 1995).  Such standing simply requires (1) an injury in fact; (2) a causal connection between injury and the conduct complained of; and (3) redressability of the injury.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . ."  *Id.* at 561; *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169 (2000).  Plaintiffs satisfy the requirements of Article III standing.

### B.   <u>Personal Jurisdiction</u>

To defeat a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff need make only a prima facie showing of jurisdictional facts.  *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).  "That is, the plaintiff need only demonstrate facts that if true would

1    support jurisdiction over the defendant."[6]  *Id.*  In determining whether a plaintiff has satisfied this

2    burden, a "plaintiff's version of the facts is taken as true" where not directly controverted, and

3    "conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's]

4    favor."  *Id.*  Plaintiffs have made a prima facie showing of personal jurisdiction as to each

5    Defendant.

6           **C.      Pleading Standards for Non-Fraud Claims**

7           In considering a motion to dismiss, a court must "accept as true the facts alleged in the

8    complaint," and "draw inferences in the light most favorable to the plaintiff."  *Barker v. Riverside*

9    *Cty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009).  Dismissal is appropriate only where

10   there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

11   cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

12          A complaint "does not need detailed factual allegations" but must plead "enough facts to

13   state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555,

14   570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows

15   the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

16   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court should uphold a claim if the plaintiff

17   provides "enough fact to raise a reasonable expectation that discovery will reveal evidence to

18   support the allegations."  *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011).  Even if the

19   defendants put forward an alternative explanation for their alleged misconduct, the "tie goes to

20   the plaintiffs."  *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 999 n.8

21   (9th Cir. 2014).  Plaintiffs' claims that do not sound in fraud (the warranty claims)—as well as

22   elements not subject to Rule 9(b)'s heightened pleading standards—are plausible and sufficiently

23   alleged.

24          **D.      Pleading Standards for Fraud Claims**

25          Rule 9(b) requires claims sounding in fraud to "be specific enough to give defendants

26   notice of the particular misconduct . . . so that they can defend against the charge and not just

27   _____

28   [6] Here, and throughout, emphasis is supplied, and citations and internal quotation marks are
     omitted, unless otherwise noted.

1   deny that they have done anything wrong." *Bly-Magee v. Cal.*, 236 F.3d 1014, 1019 (9th Cir.

2   2001); *see also Volkswagen*, 2017 WL 4890594, at *11 (citing *Swartz v. KPMG LLP*, 476 F.3d

3   756, 764 (9th Cir. 2007)).  A plaintiff should "identify the who, what, when, where, and how of

4   the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent

5   conduct], and why it is false." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1055 (9th Cir.

6   2011).  But Rule 9(b) does not apply to fraudulent intent:  "In alleging fraud or mistake, a party

7   must state with particularity the circumstances constituting fraud or mistake. *Malice, intent,*

8   *knowledge, and other conditions of a person's mind may be alleged generally*."  Fed. R. Civ. P.

9   9(b).  Moreover, in this Circuit, Rule 9(b) "may be *relaxed* as to matters within the opposing

10  party's knowledge." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989);

11  *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1998) ("[W]e cannot make Rule 9(b) carry

12  more weight than it was meant to bear.").  As the Ninth Circuit observed, "in cases of corporate

13  fraud, plaintiffs will not have personal knowledge of all of the underlying facts," especially which

14  defendant did what. *Moore*, 885 F.2d at 540; *see Waldrup v. Countrywide Fin. Corp.*, No. 2:13-

15  cv-08833-CAS (CWx), 2015 WL 93363, at *8 (C.D. Cal. Jan. 5, 2015) (denying motion to

16  dismiss, despite recognizing that "[a]bsent discovery . . . [the] plaintiff cannot point to the specific

17  fraudulent misrepresentations or omissions allegedly made by the four parent company

18  defendants as part of the alleged scheme") (citing *Terra Ins. Co. v. N.Y. Life Inv. Mgmt., LLC*, No.

19  C 09-01609-WHA, 2009 WL 2365883, at *3 (N.D. Cal. July 30, 2009), and *In re TFT LCD*

20  *Antitrust Litig.*, 586 F. Supp. 2d 1109, 1120 (N.D. Cal. 2008)).  Thus, Rule 9(b) is satisfied where

21  a plaintiff alleges "the misrepresentations themselves with particularity and, where possible, the

22  roles of the individual defendants in the misrepresentations." *Moore*, 885 F.2d at 540.  Those

23  allegations should be "accompanied by a statement of the facts on which the belief is founded."

24  *Id.*  Plaintiffs amply satisfy these pleading standards.

25  **IV.   PLAINTIFFS' ALLEGATIONS DEMONSTRATE ARTICLE III STANDING.**

26          The detailed allegations in the Complaint are more than sufficient to demonstrate

27  Plaintiffs' Article III standing for each of their claims.  As the Third Circuit has quipped: "Injury-

28  in-fact is not Mount Everest." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291, 294 (3d

1   Cir. 2005).  Then-Circuit Judge Alito explained, "[t]he contours of the injury-in-fact requirement,

2   while not precisely defined, are very generous, requiring only that claimant allege some specific,

3   identifiable *trifle* of injury."  *Id.*  Even a "risk of real harm" can satisfy the requirement of a

4   concrete injury, and "the law has long permitted recovery by certain tort victims even if their

5   harms may be difficult to prove or measure."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549

6   (2016).

7       Here, Plaintiffs allege concrete economic losses at the point of sale.  While Plaintiffs are

8   offended by the environmental harms resulting from Defendants' cavalier attitude toward the law

9   and the air we breathe, Plaintiffs' Article III standing stems from their out-of-pocket losses—"a

10  quintessential injury-in-fact."  *Maya v. Centex Corp*., 658 F.3d 1060, 1069 (9th Cir. 2011).

11      **A.    Plaintiffs' Out-of-Pocket Losses Are a Concrete Injury-in-Fact.**

12      Plaintiffs satisfy the injury-in-fact test because they have suffered an economic loss as a

13  direct result of Defendants' misconduct.  *See Maya*, 658 F.3d at 1069-71.  For example, Plaintiffs

14  allege:

15          • "[H]ad regulators or the public known the true facts, Plaintiffs and the Class would
16            not have purchased or leased the Class Vehicles (in fact, they could not have
              legally been sold), or would have paid substantially less for them. (¶ 195);

17          • "Indeed, consumers paid between $3,120 and $5,000 more for the EcoDiesel
18            option than for the comparable gasoline vehicles." (¶ 191);

19          • "Class members will not possess the vehicles they thought they purchased and will
              not have received the benefit of the bargain."  (¶ 193); and

20          • "This will also result in a diminution in value of every Class Vehicle, and it will
21            cause owners and lessees of Class Vehicles to pay more for the use of their Class
              Vehicles." (¶ 193).

22      Moreover, each named Plaintiff avers that he or she "has suffered a concrete injury as a

23  direct and proximate result of Defendants' misconduct, and would not have purchased the Class

24  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

25  control devices."  *See* ¶¶ 34-96.

26      In addition to concealing the defeat devices on COC and EO applications necessary to sell

27  the Class Vehicles in the United States, Defendants omitted this key information when they told

28  consumers that the EcoDiesel® vehicles offered low emissions without sacrificing power.  *See,*

*e.g.*, ¶¶ 145-55.  Omitting and obscuring this key information rendered the Class Vehicles illegal and the advertisements and marketing deceptive and false.  ¶¶ 164-68.  Based on extensive testing, Plaintiffs allege that the emission reduction systems in the Class Vehicles are disabled or substantially reduced during normal driving conditions.  *Id.*  Thus, the Class Vehicles are neither legal nor "Eco."  Each Plaintiff suffered actual economic damage stemming from payment for a Class Vehicle that is illegal and that was not delivered as represented.  This injury is concrete and particularized.

Plaintiffs allege a classic economic injury that gives them standing to bring their claims. *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. July 8, 2013).  "There is no difficulty" finding Article III standing where, as here, Plaintiffs bought a product they otherwise would not have or "paid more for [it] than they otherwise would have paid."  *Id.* at 1104 n.3.  When a defendant "puts out tainted bait and a person sees it and bites, the defendant has caused an injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011).  Accordingly, the Ninth Circuit holds that economic loss due to a fraudulent scheme or false advertising is compensable.[7]

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011), a California case, explains this point perfectly.  There, the plaintiffs alleged that "(1) Kwikset labeled certain locksets with Made in U.S.A. or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise."  *Id.* at 327-28.  Based on these allegations, the court found that the plaintiffs had standing, observing that there were "innumerable ways in which economic injury from unfair competition may be shown," including paying more in a transaction than otherwise would have been paid but-for the misrepresentation.  *Id.* at 323; *see also id.* at 312, 317.  The court also found that the plaintiffs sufficiently alleged both injury and causation by

---

[7] *See Maya*, 658 F.3d at 1069-71 (overpayment caused by a wrongful conduct is "a quintessential injury-in-fact"); *Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 733 (9th Cir. 2007) (injury in fact under UCL and FAL satisfied where the plaintiff alleged that "as a result of the inadequacies of the disclosures, he did not receive the full benefit of his contract"); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 987-88 (S.D. Cal. 2014) (denying motion to dismiss UCL, FAL, and CLRA claims for lack of standing and explaining that *Kwikset*'s "reasoning holds true whether the plaintiff's claim is based on affirmative misrepresentations or omissions").

pleading that they would not have purchased a product but for the misrepresentation. *Id*. at 330. As the court observed:

> Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities they may come to associate with a particular source. . . . An entire body of law, trademark law  . . . exists to protect commercial and consumer interests in accurate label representations as to source, because consumers rely on the accuracy of those representations in making their buying decisions.

*Id*. at 310.  Here, Defendants concealed material facts and made affirmative marketing misrepresentations that mattered when members of the Class chose to purchase or lease (at prices far higher than Kwikset locksets) the Class Vehicles, which were labelled and marketed as environmentally clean "Eco" vehicles.  And, like the plaintiffs in *Kwikset*, Plaintiffs here allege that they would not have purchased their Class Vehicles or would have paid less for them had they known about Defendants' deceptive conduct and the Vehicles' illegality.

*Kwikset* is far from a minority position.  Court after court has recognized that misrepresentations and omissions that cause plaintiffs to overpay for a product or service give rise to real economic losses and unquestionably confer standing.[8]  As these cases indicate, Plaintiffs' entire fraudulently-induced payment for the illegal Class Vehicles that were not delivered as

---

[8] *See, e.g.*, *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 115 (1979) (decline in value of home "as a result of the conduct of another certainly is sufficient under Art. III to allow standing to contest the legality of that conduct"); *Carriuolo v. GM Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016) (false or omitted statement allows the seller "to command a price premium and to overcharge customers systematically;" measure of that premium is the difference in the market value of the vehicle as delivered and the market value in the condition it should have been delivered); *Danvers*, 432 F.3d at 291, 294 (economic harm in the form of damages is a "paradigmatic" form of injury in fact and will generally support standing unless such a theory is "totally fanciful"); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452-53 (5th Cir. 2001) (benefit of the bargain damages recoverable where plaintiffs were promised an all fiberglass boat but received a hybrid wood-fiberglass boat; measure of damage is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered"); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754, 757-59 (W.D. Mo. 2015) (false "all natural" and "no preservatives" claims result in ascertainable loss under the benefit of the bargain rule allowing a purchaser to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented); *Rikos v. P&G*, 782 F. Supp. 2d 522, 530-31 (S.D. Ohio 2011) ("Plaintiff's allegations are straight-forward – he maintains that he purchased Align in reliance on the claims on the label, that the label was false and misleading, and that he should get his money back.  Accordingly, this Court finds that Plaintiff has alleged a sufficient economic injury to confer standing.").

- 10 -

1    promised, and Plaintiffs' *over*payment based on the same fraud, are separate cognizable injuries-

2    in-fact that independently give rise to Article III standing.

3           Defendants ignore these present, concrete economic losses that each Plaintiff alleges (¶¶

4    34-96), and instead focus on allegations of future losses and negative environmental impact

5    caused by the Class Vehicles.  Even if Defendants were correct that such allegations *alone* would

6    not confer standing, those allegations could not be read in isolation from, or to the exclusion of,

7    Plaintiffs' allegations of present injury.  *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp.

8    2d 1132, 1145 (C.D. Cal. 2008) ("A court reads the complaint as a whole . . . rather than isolating

9    allegations and taking them out of context.").  Plaintiffs' allegations regarding the environmental

10   and health effects of increased emissions support the plausibility of their allegations that they

11   either would not have purchased the Class Vehicles because they were not legal for sale, or would

12   not have paid as much for them—that is, they would not have paid the thousands of dollars in

13   EcoDiesel® premium these vehicles commanded in the marketplace—had they known the truth

14   about the hidden emission treatment software, which nullified the purported EcoDiesel® benefits.

15   Defendants' attempt to minimize Plaintiffs' actual and concrete injuries by taking specific

16   allegations out of context falls flat.

17          Defendants specifically attack as "speculative" Plaintiffs' allegation that "FCA may not be

18   able to bring the Class Vehicles into compliance with emission standards," and that even if it can,

19   "it will not be able to do so without degrading [the Class Vehicles'] performance characteristics."

20   ¶¶ 192-93.  But the fact that it is not yet clear what, if anything, Defendants can do to "fix" the

21   Class Vehicles simply reinforces the sufficiency of Plaintiffs' alleged present injuries.  *See Rubio*

22   *v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).  Even if this speculative "fix"

23   materializes, it will not erase the past and present non-performance of the Class Vehicles, and

24   would not undermine Plaintiffs' allegations of past injury based on the fact that the Class

25   Vehicles were not worth what they paid for them at the time of purchase or lease.

26          The cases on which Defendants rely for the contrary argument involve generalized

27   grievances and unmanifested defects that are easily distinguishable from the concrete harms

28   Plaintiffs suffered here.  In *Birdsong v. Apple, Inc.*, for example, the plaintiffs alleged that iPods

1   "have the *capability* of producing unsafe levels of sound"—an allegation the court deemed too

2   hypothetical because if the product was used safely, no injury would occur.  590 F.3d 955, 961

3   (9th Cir. 2009).  Likewise, *Briehl v. GMC*, 172 F.3d 623 (8th Cir. 1999), and *In re Toyota Motor*

4   *Corp. Hybrid Brake Mktg.*, 915 F. Supp. 2d 1151 (C.D. Cal. 2013), are inapposite because they

5   involved alleged product defects that had *not yet manifested*.[9]

6          Again, here, there is no need to hypothesize what future harms might result from the

7   actions Defendants might take: the Class Vehicles are *already* emitting excessive amounts of

8   $NO_X$ and the Plaintiffs *already* paid more than they would have as a result. ¶ 6.  The Class

9   Vehicles are defective, illegal, and materially different from how they were labeled and

10  advertised to consumers and represented on the COC and EO applications.  *See, e.g.*, ¶¶ 130, 145-

11  55, 256.  Plaintiffs lost money as a result, and their allegations of concrete losses are sufficient to

12  satisfy Article III's injury-in-fact requirement.

13      **B.      Plaintiffs Have Standing to Pursue Claims Against the Bosch Defendants.**

14         The Bosch Defendants contend that Plaintiffs lack standing to assert their claims against

15  the Bosch entities because they neither have a contractual relationship with, nor made a statement

16  directly to, Plaintiffs.  Bosch Mem. 11.

17         These arguments are irrelevant to the question of standing.  As explained below in the

18  context of the RICO claims, "[w]hat matters . . . is not whether there is a direct relationship

19  between the plaintiff and defendant, but whether there is a 'sufficiently direct relationship

20  between the defendant's wrongful conduct and the plaintiff's injury.'"  *Volkswagen*, 2017 WL

21  [9]  The Bosch Defendants also cite *Contreras v. Toyota Motor Sales U.S.A., Inc.*, 484 F. App'x

22  116 (9th Cir. 2012) (Unpublished, and marked "not for precedent") (Bosch Mem. 10), but the
    facts of that case are distinguishable in at least two significant ways: (1) unlike here, the alleged

23  defect in *Contreras*—the potential for brake failure—arguably had not manifested in the plaintiffs'
    vehicles and the plaintiffs had not alleged manifestation; and (2) the recall and fix had *already*

24  *been implemented*, and therefore was not speculative.  Furthermore, the Ninth Circuit's
    unpublished decision did not address the merits of the standing theory asserted there, and instead

25  concluded only that the district court properly dismissed the complaint because plaintiffs
    presented no evidence of injury to rebut Toyota's challenge to standing.  Finally, the Ninth

26  Circuit reversed the refusal to grant leave to amend, explaining "it is not inconceivable that
    plaintiffs could have amended their complaint *to establish standing through economic harm at the*

27  *time of purchase* or at the time of resale."  *Id.* at 118.  While the *Contreras* plaintiffs did not
    ultimately replead to establish economic injuries, Plaintiffs here have already alleged adequate

28  injury based on the concealed defect that existed in *all Class Vehicles at the point of sale or lease*
    and the economic injury that resulted from those fraudulent sales and leases.

4890594, at *9 (quoting *Bridge*, 553 U.S. at 657).  Moreover, RICO allows for joint and several

liability, which reflects "the notion that the damage wrought by the conspiracy is not to be judged

by dismembering it and viewing its separate parts, but only by looking at it as a whole." *Oki*

*Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 775 (9th Cir. 2002).

Moreover, Plaintiffs' injuries here are directly traceable to the Bosch Defendants'

participation in the alleged scheme.  Indeed, Plaintiffs allege that the Bosch Defendants were

essential to the scheme: "Without . . . Bosch GmbH and Bosch LLC's active involvement in

developing and supplying the critical emission control software for the Class Vehicles, the

Enterprise's scheme and common course of conduct would have been unsuccessful." ¶ 251.  The

Complaint further states that the Bosch Defendants played a critical role in the alleged

EcoDiesel® RICO Enterprise (the "Enterprise") by, among other things, "developing, writing the

software code customized for the Class Vehicles, and concealing the hidden software installed in

the Class Vehicles in order to allow them to 'pass' testing but then disable or restrict certain

emission controls during real-world driving conditions." ¶ 231.  These allegations give rise to

Article III standing.

**C.      The Determination of Standing for Certain State Claims Is Premature.**

The Complaint includes Plaintiffs who reside in, or purchased/leased their Class Vehicles

in, all but nine states and the District of Columbia.  Defendants contend that Plaintiffs lack

standing to assert claims under the laws of these states.  However, that determination is better

reserved until after class certification.  *See In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d

953, 970-71 (N.D. Cal. 2016); *Hudock v. LG Elecs. U.S.A., Inc.*, No. 16-1220 (JRT/FLN), 2017

WL 1157098, at *2 (D. Minn. Mar. 27, 2017).

For the contrary position, Defendants rely heavily on *In re Carrier IQ, Inc., Consumer*

*Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015).  But there, this Court explained why it is

both permissible and, often, appropriate to defer questions of standing under state laws until after

class certification.  Nevertheless, because, in that case, the number of states without a resident-

named plaintiff far outnumbered the states with a resident-named plaintiff, the Court addressed

the standing question before class certification.  *See id.* at 1074-75.  The facts here are the

1380476.6

PLAINTIFFS' CONSOL. OPP. TO MOTIONS TO DISMISS
AM. CONSOL. CONSUMER CLASS ACTION COMPL.
MDL 2777 EMC

1    opposite and, thus, warrant the opposite conclusion.  The overwhelming majority of putative

2    Class members reside in states in which the named Plaintiffs reside, the federal statutory and the

3    common law claims transcend state boundaries, and the burdens of discovery and class

4    certification will not be substantially lessened by addressing standing before class certification.

5    Thus, the primary rationale in *Carrier IQ* does not apply here, and any inquiry into state-law

6    standing should be deferred until after class certification.[10]

7    **V.    THE COMPLAINT PUTS THE BOSCH DEFENDANTS ON NOTICE.**

8        The Bosch Defendants assert that Plaintiffs' claims "must be dismissed" because the

9    Complaint, at times, refers to Bosch GmbH and Bosch LLC as "Bosch."  *See* Bosch Mem. 15.

10    They do so without a hint of irony, while they themselves adopt a similar shorthand.  *See id.* at 1.

11        As an initial matter, the Bosch Defendants are wrong in asserting that Plaintiffs do not

12    refer to the two entities separately.  In fact, Plaintiffs attribute specific conduct to Bosch GmbH

13    and Bosch LLC dozens of times throughout the Complaint's weightiest factual allegations.  *See,*

14    *e.g.*, ¶¶ 2, 9, 23-25, 114, 122, 123-25, 129-32, 134, 138-41, 186, 229-30, 238-40, 242, 250-51,

15    260.  These allegations go to the heart of the alleged fraud and are sufficient to put each Bosch

16    Defendant on "notice of the particular misconduct . . . so that they can defend against the charge

17    and not just deny that they have done anything wrong."  *Bly-Magee*, 236 F.3d at 1019.  No more

18    is required.

19        Further, as noted above, Rule 9(b) "may be *relaxed* as to matters within the opposing

20    party's knowledge."  *Moore*, 885 F.2d at 540.  That is because, "in cases of corporate fraud,

21    plaintiffs will not have personal knowledge of all of the underlying facts," especially which

22    defendant did what.  *Moore*, 885 F.2d at 540; *see Waldrup*, 2015 WL 3363, at *8.  Thus, Rule 9(b)

23    

_____

24    [10] The Bosch Defendants additionally challenge Plaintiff Chatom Motor Company's ("Chatom")
standing based solely on the date it purchased its Class Vehicle. In essence, Bosch asks the Court

25    to adopt a novel bright-line rule cutting off liability related to any transaction post-dating the
Notice of Violation even though Chatom, an independent dealer (¶ 45), falls squarely within the
putative class definition (¶¶ 196, 197).  This position is not tenable.  Disclosure of fraud does not,

26    as a matter of law, "wash[ ] clean all past misrepresentations," *In re Memorex Sec. Cases*, 61
F.R.D. 88, 93 (N.D. Cal. 1973), and Chatom's claim "does not hinge on whether news and social

27    media coverage gave sufficient notice" of the fraud, *see McMahon v. Take-Two Interactive
Software, Inc.*, No. EDCV 13-02032-VAP (SPx), 2014 WL 324008, at *8 (C.D. Cal. Jan. 29,

28    2014), *rev'd on other grounds*, 640 F. App'x 669 (9th Cir. 2016).

is satisfied where plaintiffs allege "the misrepresentations themselves with particularity and, where possible, the roles of the individual defendants in the misrepresentations." *Moore*, 885 F.2d at 540.  Plaintiffs readily satisfy these pleading standards here, as demonstrated with respect to each of the challenged claims in the sections to follow.

There is good reason, moreover, why the Complaint sometimes refers to Bosch GmbH and Bosch LLC as the collective "Bosch."  As Plaintiffs explained:

> The Bosch Group is divided into four business sectors: Mobility Solutions (formerly Automotive Technology), Industrial Technology, Consumer Goods, and Energy and Building Technology. ***Bosch's sectors and divisions are grouped not by location, but by function***.  In other words, Mobility Solutions includes knowledgeable individuals at both Bosch GmbH and Bosch LLC.  Regardless of whether an individual works for Bosch in Germany or the United States, the employee holds him or herself out as working for Bosch. This collective identity is captured by Bosch's mission statement: "***We are Bosch***," a unifying principle that links each entity and person within the Bosch Group.

¶ 25.  Similarly, Plaintiffs allege that, "because the defendants often refer to themselves as a group (i.e., 'Bosch' rather than 'Bosch GmbH' and 'Bosch LLC'), Plaintiffs cannot fully know the full extent of each individual corporate entity's involvement in the wrongdoing prior to having access to discovery."  ¶ 252.

This is not, as the Bosch Defendants have suggested, an admission that Plaintiffs cannot state their claims without discovery—especially given Plaintiffs' dozens of allegations separately referring to, and detailing the conduct of, each of the Bosch Defendants.  Instead, it reflects *the reality that Bosch itself has projected*.

Judge Breyer recognized this point when, relying on allegations similar to those in the Complaint here, he denied Bosch's motion to dismiss the RICO claim brought by franchise dealers in the Volkswagen "Clean Diesel" litigation.  He observed:

> The Franchise Dealers have made an effort in their Second Amended Complaint to identify which Bosch entity took which alleged actions. But for the most part it is still difficult to determine which entity did what. The Second Amended Complaint has made clear, though, that the reason for this difficulty is not conclusory or vague pleading on the part of the Franchise Dealers; rather, the blur between Bosch GmbH and Bosch LLC is caused by the way in which employees at both entities work together on certain projects, including the EDC17 project.

1  *Volkswagen*, 2017 WL 4890594, at *10.  Judge Breyer then concluded that "[t]hese allegations

2  support a plausible inference that the knowledge of, and action undertaken by, employees of

3  Bosch's Diesel Systems division can be attributed to both Bosch GmbH and Bosch LLC."  *Id.* at

4  11.  Accordingly,

5  
6  
7  
8  
> Treating Bosch GmbH and Bosch LLC as a collective unit does not prejudice the
> Bosch Defendants.  A key justification for requiring plaintiffs to separately plead
> allegations of fraud as to each defendant is notice.  Notice is not a problem here.
> Each Bosch Defendant participated in conducting the affairs of the Diesel Systems
> division, and each Bosch Defendant accordingly is on notice that it may potentially
> be held responsible for the conduct of that division.

9  *Id.* (citing *Swartz*, 476 F.3d at 764).  Here, too, each Bosch Defendant is on notice of the claims.

10  That is enough at this stage.

11  **VI.    PLAINTIFFS ASSERT STRONG, COGNIZABLE CIVIL RICO CLAIMS.**

12  **A.    Overview of Civil RICO**

13  The Supreme Court has repeatedly emphasized the breadth of the RICO statute:

14  
15  
16  
17  
> RICO is to be read broadly.  This is the lesson not only of Congress' self-
> consciously expansive language and overall approach, but also of its express
> admonition that RICO is to be liberally construed to effectuate its remedial
> purpose, Pub. L. 91-452, §904(a), 84 Stat. 947.  The statute's remedial purposes
> are nowhere more evident that in the provisions of a private action for those
> injured by racketeering activity.

18  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497-98 (1985); *Boyle v. United States*, 556 U.S. 938,

19  944 (2009) (RICO is to be "liberally construed to effectuate its remedial purposes").  Similarly,

20  the Ninth Circuit has held that, "[a]s Congress admonished and as the Court repeated in *Sedima*,

21  RICO should be *liberally construed* to effectuate its remedial purposes."  *Odom v. Microsoft*

22  *Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima*, 473 U.S. at 497-98).

23  RICO's broad provision for a private right of action provides that "[a]ny person injured in

24  his business or property by reason of a violation of section 1962 of this chapter may sue

25  therefor . . . and shall recover threefold the damages he sustains and the cost of the suit, including

26  a reasonable attorney's fee."  *Bridge*, 553 U.S. at 647 (quoting 18 U.S.C. § 1964(c)).  To recover

27  under RICO, Plaintiffs must thus show that they have "suffered (1) an injury to 'business or

28

property,' that is (2) 'by reason of' a RICO violation." *Volkswagen*, 2017 WL 4890594, at *4 (quoting 18 U.S.C. § 1964(c)).

As courts have emphasized, "[a] plaintiff injured by civil RICO violations deserves *a complete recovery*[.]" *Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001); *Pac. Gas & Elec. Co. v. Howard P. Foley Co.*, No. 85-2922 SW, 1993 WL 299219, at *2 (N.D. Cal. July 27, 1993) ("A plaintiff prosecuting a civil RICO claim is entitled to *complete recovery* for the harm that proximately results from the predicate acts."). Indeed, RICO provides flexible concepts of causation and damages to ensure a defendant is held liable "for the consequences of that person's own acts." *Bridge*, 553 U.S. at 654 (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). Accordingly, a civil RICO plaintiff may recover all damages that are the "foreseeable and natural consequence[s]" of the scheme. *Id.* at 658. This includes the return of money paid by him or her. *See* Rakoff and Goldstein, *RICO: Civil & Criminal Law & Strategy*, § 4.02[3] (2017).

In this case, Plaintiffs allege violations of 18 U.S.C. §§ 1962(c) and (d). Section 1962(c) "makes it unlawful for any person employed by or associated with an enterprise engaged in or affecting interstate or foreign commerce to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Bridge*, 553 U.S. at 647 (quoting 18 U.S.C. § 1962(c)). To state a RICO claim under this Section, Plaintiffs must plausibly allege that the Defendants "participated, directly or indirectly, in (1) the conduct, (2) of an enterprise that affects interstate commerce, (3) through a pattern, (4) of racketeering activity." *Volkswagen*, 2017 WL 4890594, at *11 (citing *Eclectic Props.*, 751 F.3d at 997). Section 1962(d) authorizes civil suits brought by anyone "injured . . . by reason of a conspiracy[]" to violate any RICO provision, including § 1962(c). *See Beck v. Prupis*, 529 U.S. 494, 500 (2000) (quoting 18 U.S.C. §§ 1962(d), 1964(c) in tandem).

Mail and wire fraud are predicate acts of racketeering activity under RICO and occur "whenever a person, having devised or intending to devise any scheme or artifice to defraud, uses the mail [or interstate wires] for the purpose of executing such scheme or artifice or attempting so to do." *Bridge*, 553 U.S. at 647. "[A]ny mailing [or interstate wire] that is incident to an

1  essential part of the scheme satisfies the mailing [or wiring] element, even if the mailing [or wire]

2  itself contain[s] no false information." *Id.* (quoting *Schmuck v. United States*, 489 U.S. 705, 712

3  (1989)) (alteration in original).

4      Plaintiffs have adequately pled their RICO claims under §§ 1962(c) and (d).

5      **B.**    **Plaintiffs Allege a Recognized RICO Injury.**

6      Defendants' assertion that Plaintiffs do not allege a RICO injury is similar to—and no

7  more persuasive than—their Article III standing argument that the harm alleged is speculative.

8  *See* FCA Mem. 28-31; Bosch Mem. 15-19.  In making this argument, Defendants again ignore

9  Plaintiffs' allegations of concrete financial loss, which constitutes a RICO injury under the very

10  authorities they cite.

11      **1.**    **Plaintiffs' Out-of-Pocket Losses Are RICO Injuries.**

12      Defendants' argument relies on a mischaracterization of the portion of Plaintiffs' alleged

13  injuries that relate to the future diminution in value of the Class Vehicles.  *See* FCA Mem. 29;

14  Bosch Mem. 18.  However, Defendants overlook Plaintiffs' straightforward allegations of the out-

15  of-pocket losses that occurred when they paid for illegal Class Vehicles that weren't delivered as

16  advertised and that the Plaintiffs never could have purchased—nor would they have—absent the

17  fraudulent scheme.  *Compare* FCA Mem. 29, *and* Bosch Mem. 18, *with, e.g.*, ¶ 195.  Defendants

18  may wish that Plaintiffs had not made such allegations so that the Complaint would better fit the

19  cases they cite concerning so-called "speculative" injuries.  But saying it does not make it so.

20      The RICO statute provides: "Any person injured in his business or property by reason of a

21  violation of section 1962" has standing to bring a private cause of action.  *See* 18 U.S.C.

22  § 1964(c).  As the Supreme Court aptly put it: "*Money, of course, is a form of property.*"  *Reiter v.*

23  *Sonotone Corp.*, 442 U.S. 330, 338 (1979).  Indeed, "the word 'property' has a naturally broad

24  and inclusive meaning.  In its dictionary definitions and in common usage property comprehends

25  anything of material value owned or possessed."  *Id.*  Moreover, as explained in a Ninth Circuit

26  case that Defendants themselves cite, "[i]n the ordinary context of a commercial transaction, a

27  consumer who has been overcharged can claim an injury to her property [under RICO], based on

28

PLAINTIFFS' CONSOL. OPP. TO MOTIONS TO DISMISS
AM. CONSOL. CONSUMER CLASS ACTION COMPL.
MDL 2777 EMC

1  a wrongful deprivation of her money." *Canyon Cty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 976
2  (9th Cir. 2008).

3      Furthermore, "[it] is not required . . . for a financial loss to be tangible or concrete."
4  *Volkswagen*, 2017 WL 4890594, at *5.  Civil RICO plaintiffs may recover all damages that are
5  the "foreseeable and natural consequence[s]" of the scheme.  *See Bridge*, 553 U.S. at 658.  As one
6  court in this District observed, "[t]here is no precise formula for determining damages in either
7  antitrust or RICO cases . . . . A plaintiff prosecuting a civil RICO claim is entitled to *complete*
8  *recovery* for the harm that proximately results from the predicate acts."  *Pac. Gas & Elec. Co. v.*
9  *Howard P. Foley Co.*, No. 85-2922 SW, 1993 WL 299219, at *2 (N.D. Cal. July 27, 1993) (citing
10  *Holmes*, 503 U.S. at 266-68).  The expansive scope of remedies available under RICO includes a
11  variety of possible measures, including the return of money paid by plaintiffs as a result of the
12  fraudulent scheme.  *See* Rakoff, *RICO: Civil & Criminal Law & Strategy*, § 4.02 (2017).

13      Here, the primary alleged RICO injury is the deprivation of Plaintiffs' money at the point
14  of sale, calculable down to the dollars and cents spent on "the [p]urchase or lease of illegal,
15  defective Class Vehicles."  *See, e.g.*, ¶ 274(A).  This is money that the Plaintiffs *could not and*
16  *would not have paid* absent Defendants' scheme to conceal the Class Vehicles' illegality from
17  regulators.  *Id.*  This Court has found similar allegations sufficient.  *See Cannon v. Wells Fargo*
18  *Bank. N.A.*, No. C-12-1376 EMC, 2014 WL 324556, at *3 (N.D. Cal. Jan. 29, 2014) (plaintiffs
19  *"would not have paid*, or would have contested, the premiums for the force-placed insurance, if
20  [d]efendants had disclosed that the premiums included unearned kickbacks rather than earned
21  commissions") (Chen, J.).  Other courts agree.[11]

22  ───────────────
[11] *See, e.g.*, *Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 953-54 (N.D. Cal. 2013) (finding RICO
injury when plaintiffs *"would not have paid* the fees but for [d]efendants' deception"); *The Flag*
23  *Co. v. Maynard*, CV 05-1194-HU, 2006 WL 1030173, at *13 (D. Or. Apr. 17, 2006)
("[D]efendant's failure to inform plaintiff of the illegality of the blast faxes appears to have been
24  a substantial factor in plaintiff suffering the alleged concrete financial losses.  Plaintiff alleges
that it *would not have purchased* the services if it had known they were *illegal*."); *see also*
25  *Dufour v. BE LLC*, No. C 09-03770 CRB, 2010 WL 2560409, at *11 (N.D. Cal. June 22, 2010)
("Plaintiffs here allege that they were deprived of their money based upon [d]efendants' conduct,
26  which is sufficient."); *Burns v. MBK P'ship*, No. 03-3021-CO, 2003 WL 23979014, at *18 (D. Or.
Nov. 5, 2003) (plaintiffs "*would not have purchased* properties or constructed homes 'but for'
27  defendants' fraudulent acts"); *see also, e.g.*, *Valdez v. Saxon Mortg. Servs.*, No. 2:14-cv-03595-
CAS(MANx), 2014 WL 7968109, at *15 (C.D. Cal. Sept. 29, 2014) ("Plaintiff alleges that he was
28  charged for kickbacks built into his FPI premiums, by reason of defendants' scheme to defraud.");
*Footnote continued on next page*

1    Plaintiffs need not, as Defendants suggest, establish the precise *amount* of damages to

2  which they are entitled at this stage.  Indeed, the measure of damages will be subject for

3  discovery and expert analysis, as well as RICO's mandatory trebling and pre-judgment interest.

4  What is important at this stage is that the deprivation of Plaintiffs' money is a *type* of damage

5  recoverable under RICO.  *See Volkswagen*, 2017 WL 4890594, at *5 (quoting *Mendoza v. Zirkle*

6  *Fruit Co.*, 301 F.3d 1163, 1168 (9th Cir. 2002)).  As Judge Breyer recently observed:

> [The Ninth Circuit has noted that it] is important to distinguish between
> uncertainty in the fact of damage and in the amount of damage. That wages would
> be lower if, as alleged, the growers relied on a workforce consisting largely of
> undocumented workers, is a claim at least plausible enough to survive a motion to
> dismiss, whatever difficulty might arise in establishing how much lower the wages
> would be.

11  *Id.* (quoting *Mendoza*, 301 F.3d at 1171).  Like the workers in the *Mendoza* case that Judge

12  Breyer quotes, the Volkswagen franchise dealers were entitled "'to make their case through

13  presentation of evidence, including experts who will testify about the . . . market . . . and the

14  effects of the illegal scheme.'"  *Id.* (quoting *Mendoza*, 301 F.3d at 1171); *see also, e.g.*, *Potomac*

15  *Elec. Power Co. v. Elec. Motor & Supply, Inc*., 262 F.3d 260, 265 (4th Cir. 2001) ("[I]t is not

16  appropriate for courts to inquire into whether the service really had value as a precondition to

17  finding that injury to business or property has occurred.").  Here, too, Plaintiffs have "plausibly

18  alleged multiple injuries to their business and property interests, and these injuries are sufficiently

19  concrete to survive a motion to dismiss." *Volkswagen*, 2017 WL 4890594, at *6.

20    Notwithstanding this precedent and Plaintiffs' clear allegations of past and present

21  economic loss, Defendants insist on characterizing Plaintiffs claimed harm as future-contingent,

22  which, Defendants contend, is not a cognizable RICO injury.  In so arguing, Defendants rely on

23  *Oscar v. University Students Co-Operative Association*, 965 F.2d 783, 785-86 (9th Cir. 1992) (en

24  banc) and *Steele v. Hospital Corp. of America*, 36 F.3d 69, 70 (9th Cir. 1994) (FCA Mem. 28;

25  Bosch Mem. 15-16).  However, both of those cases predate the Ninth Circuit's decisions in

---

*Footnote continued from previous page*
*Cf. Canyon Cty.*, 519 F.3d at 976 ("In the ordinary context of a commercial transaction, a
consumer who has been overcharged can claim an injury to her property, based on a wrongful
deprivation of her money.") (cited in FCA Mem. 28).

1   *Mendoza* and *Diaz v. Gates*, 420 F.3d 897, 903 (9th Cir. 2005) (en banc), which clarified the

2   scope of compensable RICO injuries.  *See Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038,

3   1055 (9th Cir. 2008).  Moreover, *Oscar* and *Steele* are readily distinguishable because the

4   plaintiffs in those cases did not allege any out-of-pocket expenditures that resulted from the

5   defendants' fraud.  *Compare Oscar*, 965 F.2d at 786 (plaintiff-renter did not suffer any loss from

6   decrease in value of property), *and Steele*, 36 F.3d at 70 (plaintiff-patients did not pay claims,

7   third-party insurers did), *with* ¶¶ 34-96, 274(A).

8        Defendants' out-of-Circuit defect cases are similarly unpersuasive, in addition to being

9   not binding.  *See* FCA Mem. 28-29; Bosch Mem. 15-19.  As Judge Breyer observed, cases such

10  as *In re Bridgestone/Firestone Inc. v. Wilderness Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069

11  (S.D. Ind. 2001), are "not the law [of] the Ninth Circuit."  *Volkswagen*, 2017 WL 4890594, at *7.

12  Even if it were, *Bridgestone* would not foreclose Plaintiffs' RICO claims.  In *Bridgestone*, the

13  plaintiffs alleged only that the allegedly defective product—there, tires—"***could*** suffer from a

14  tread separation."  *Id.* at 1088.  Thus, the *Bridgestone* court concluded that the plaintiffs had not

15  yet "realized the diminished value *or* experienced product failure" and therefore could show no

16  RICO injury.  *Id.* at 1091.  But, importantly, the court acknowledged "diminished value as a

17  commercial concept" constitutes a RICO injury when "a plaintiff actually realizes a loss

18  occasioned by it."  *Id.* at 1093 n.26.  That is what Plaintiffs allege here.

19       *Bridgestone* and this case are apples and oranges.  Unlike *Bridgestone*, Plaintiffs do not

20  allege the Class Vehicles have a *potential* defect or that their value may drop due to a possibility

21  that a defect will manifest *in the future*.  Plaintiffs have already suffered a loss, ***at the point of***

22  ***sale***, because they bought vehicles with concealed defeat devices that defeated the benefits that

23  were a material feature of the vehicles as advertised.  *See, e.g.*, *Bailey v. Atl. Auto. Corp.*, 992 F.

24  Supp. 2d 560, 580-81 (D. Md. 2014) (distinguishing *Bridgestone* and finding injury where

25  defendant misrepresented a rental car as a consumer vehicle).  Plaintiffs' injuries, therefore, are

26  not "based solely on hypothetical future events" (FCA Mem. 29); rather, Plaintiffs' losses, and

27  the events that caused them, have already occurred.  Consumers paid for one vehicle, but got

28  another.  Consumers who do not get what they pay for suffer economic loss, a RICO injury.

Defendants' citations to *Maio v. Aetna, Inc.*, 221 F.3d 472 (3d Cir. 2000) are equally unpersuasive.  FCA Mem. 29; Bosch Mem. 19.  In that case, Aetna HMO insureds brought a RICO claim alleging defendants' false advertisements caused them to pay "more for their HMO plans than those plans are worth."  *See id.* at 480.  But the *Maio* plaintiffs "[could] not establish that they suffered a tangible economic harm compensable under RICO unless they allege[d] that health care they received under Aetna's plan actually was compromised or diminished."  *Id.* at 488.  In the absence of such harm, "[t]here [was] no factual basis for [plaintiffs'] conclusory allegation[s] that they ha[d] been injured in their property because the health insurance they actually received was inferior and therefore worth less than what they paid for it."  *Id.*  Put differently, the harm "[could not] exist absent proof of some level of inferior treatment under Aetna's HMO plan."  *Id.* at 493.

Like the injury alleged in *Bridgestone*, the claims in *Maio* were speculative because the plaintiffs did not allege any past failure to provide care and, thus, the injury was contingent on the future manifestation of a future broken promise.  Again, no such contingency exists here because the defect devices *already* "compromised" the Class Vehicles.[12]  *Cf. Maio*, 221 F.3d at 488; *see Williams v. Countrywide Fin. Corp.*, No. 2:16-cv-04166-CAS (AGRx), 2017 WL 986517, at *9-10 (C.D. Cal. Mar. 13, 2017) (injury stated for property appraisals misrepresented as compliant with industry standards and law); *Kaushal v. State Bank of India*, No. 82 C 7414, 1988 WL 116542, at *3 (N.D. Ill. Oct. 24, 1988) (injury stated for restaurant due to concealment of its debt); *Grove Holding Corp. v. First Wis. Nat'l Bank*, 803 F. Supp. 1486, 1509 (E.D. Wis. 1992) (injury stated for company purchase as assets and liabilities were misrepresented); *Lentz v. Pan Am. Corp.*, No. 90-2181, 1991 WL 240739 (E.D. Pa. Nov. 12, 1991) (injury stated for plane ticket

---

[12] Defendants' sole in-Circuit case, *Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1065 (C.D. Cal. 2003), is unavailing for the same reason.  There, the plaintiffs failed to allege they received fewer benefits than promised under the allegedly inferior health plan. Likewise, in *Ivar v. Elk River Partners, LLC*, 705 F. Supp. 2d. 1220, 1235 (D. Colo. 2010), cited by the Bosch Defendants, the plaintiffs failed to allege that they tried to sell real property they claimed was worth less than they had paid.  A similar infirmity was present in *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 768-69 (2d Cir. 1994), cited by the FCA Defendants, where the plaintiffs failed to allege fraudulently-induced loans were in default.  One of the Bosch Defendants' cases actually found a RICO injury.  *See Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 522-23 (S.D.N.Y. 1997) (finding injury where plaintiff was fraudulently induced to pay a portion of her premiums toward taxes that were not paid).

- 22 -

1   where plaintiff was not provided services); *In re Merrill Lynch Ltd. P'ships Litig.*, 7 F. Supp. 2d

2   256, 264 (S.D.N.Y. 1997) (injury stated for investments that could not achieve objectives), *aff'd*,

3   154 F.3d 56 (2d Cir. 1998).

4         Even *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008), a case upon which

5   Defendants heavily rely (FCA Mem. 30, Bosch Mem. 16), endorses a finding of injury here.  That

6   court would recognize that Plaintiffs here, like smokers in that case "who would have quit

7   smoking altogether" instead of buying the purportedly-healthier "Lights," "could recover their

8   [out-of-pocket] expenses in purchasing" the products (*i.e.*, Class Vehicles) at issue.  *See*

9   *McLaughlin*, 522 F.3d at 228.

10        Finally, the circumstances here are readily distinguishable from the out-of-Circuit case

11  *Tri-State Express, Inc. v. Cummins Engine Co.*, No. 99-00220 (HHK), 2000 U.S. Dist. LEXIS

12  23564 (D.D.C. Sept. 11, 2000), where the plaintiffs alleged only a "potential for harm" in the

13  future.  *Id.* at *18.  Here, the harm has been, and continues to be, realized with each passing day.

14  Plaintiffs' allegations of lost money (*i.e.*, property) in the amount spent out-of-pocket to purchase

15  or lease the Class Vehicles is sufficient to allege a RICO injury at this stage of the proceedings.

16        Here, contrary to Defendants' suggestion, one need not speculate about whether the

17  scheme caused Plaintiffs' monetary losses.  But for Defendants' fraudulent scheme, Plaintiffs

18  would not have paid for the Class Vehicles, a fact that is confirmed by what happened when the

19  FCA Defendants were caught by the EPA and CARB: the FCA Defendants were prohibited from

20  selling any more Class Vehicles.  ¶¶ 169-73.  The only thing that is speculative here, therefore, is

21  the Defendants' aspiration that a "possible" fix that ***may*** occur in the "future."  Bosch Mem. 18-

22  19.  It would be contrary to both the law and logic to allow such a speculative defense to prevent

23  Plaintiffs from recovering the out-of-pocket losses they have alleged.

24                **2.      Overpayment Is a Viable Theory of RICO Injury.**

25        As explained above, Defendants' fraud made the sale of the EcoDiesel® vehicles (the

26  motivating purpose of Defendants' scheme) possible.  No consumer could have spent a single

27  dime on the Class Vehicles but for Defendants' scheme, and Plaintiffs suffered damage in the

28  amount of ***all*** the money they would not have otherwise spent.  But this is not the only cognizable

1    theory of economic loss that Plaintiffs have alleged.

2          Overpayment is also a recognized RICO injury to the plaintiff's "business or property" in

3    this Circuit.  *See, e.g.*, *Newcal Indus.*, 513 F.3d at 1055 (reversing dismissal of RICO claim

4    alleging, *inter alia*, that plaintiff "paid a fraudulently inflated price to buy out certain accounts

5    that were under flexed IKON contracts"); *Canyon Cty.*, 519 F.3d at 976 ("[A] consumer who has

6    been overcharged can claim an injury to her property, based on a wrongful deprivation of her

7    money."); *Ellis v. J.P. Morgan Chase & Co.*, 950 F. Supp. 2d 1062, 1086-87 (N.D. Cal. 2013)

8    ("Plaintiffs allege they have paid marked-up fees and thus satisfy RICO standing."); *Stitt*, 942 F.

9    Supp. 2d at 954 (denying motion to dismiss on same basis).  Defendants' attempt to avoid this *in-

10   Circuit* authority by citing the distinguishable *out-of-Circuit* cases discussed above fails.  Indeed,

11   these authorities confirm that Plaintiffs allege a compensable injury because they suffered a loss

12   in the amount of "[o]verpayment at the time of purchase or lease for Class Vehicles purportedly

13   having 'EcoDiesel' properties and benefits, and meeting applicable federal and state emissions

14   standards, that did not have these properties or meet these standards."  ¶ 274(B).

15         Defendants nevertheless contend that "benefit-of-the-bargain" damages are not cognizable

16   under "settled law."  FCA Mem. 30.  The "settled law" they cite, however, is comprised of

17   *Oscar*—which is both *unsettled* law (for the reasons stated above) and does not contain the phrase

18   "benefit-of-the-bargain"—and two out-of-Circuit manifest-defect cases.  In those two out-of-

19   Circuit cases, moreover, the courts recognized that "benefit-of-the-bargain" damages *are*

20   *available* in certain circumstances.  *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No.

21   14-MD-2543 (JMF), 2016 WL 3920353, at *17 (S.D.N.Y. July 15, 2016).  In *McLaughlin*, for

22   example, the court noted that, "even if benefit of the bargain damages could be awarded, there is

23   no reasonable means of calculating them in this case."  *See* 522 F.3d at 299.  But, unlike the

24   plaintiffs in *McLaughlin*, Plaintiffs here do not seek damages based on their "expectations" of

25   what the illegal Class Vehicles could be worth if delivered as promised (*i.e.*, if they were actually

26   "Eco"); rather, they seek the difference between what they actually paid and the value of the

27   Class Vehicles they actually received.  *See* ¶ 274(B).

28

- 24 -

More to the point, "benefit-of-the-bargain" damages for Civil RICO violations are available in ***this Circuit***, as the case law confirms.[13]

Finally, the Bosch Defendants incorrectly contend that Plaintiffs' overpayment theory improperly invokes a "fraud on the market" theory.  Bosch Mem. 16-17.  The Complaint never mentions "fraud on the market" because Plaintiffs do not allege dealers would have lowered the price of the Class Vehicles had they known of their illegality.  Rather, Plaintiffs allege that the Class Vehicles *never would have been sold in the first place*. *See, e.g.*, ¶ 270.  Defendants' "fraud-on-the-market" arguments are not relevant to the well-pled allegations in the Complaint.

### C.    Plaintiffs' Allegations Demonstrate that Defendants' Fraudulent Scheme Proximately Caused Plaintiffs' Injuries.

Defendants do not challenge that Plaintiffs have established "but for" causation.  However, each Defendant group argues the Complaint fails to adequately plead proximate causation.  *See* FCA Mem. 31; Bosch Mem. 19.  The errors in their proximate causation arguments come into clear focus when evaluated against prevailing precedent and appropriate legal standards.

RICO provides:  "Any person injured in his business or property *by reason of a violation* of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains."  18 U.S.C. § 1964(c).  Defendants challenge proximate cause, which "is *not* the same thing as the sole cause."  *Oki Semiconductor Co.*, 298 F.3d at 772-73.  "Instead, the proximate cause of an injury is a substantial factor in the sequence of responsible causation."  *Id.*  "'When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.'"  *Volkswagen*, 2017 WL 4890594, at *8 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  "What matters, though, is not whether there is a direct relationship between the plaintiff and defendant, but whether there is a 'sufficiently direct relationship

---

[13] *See, e.g.*, *Williams*, 2017 WL 986517, at *9 (denying dismissal of RICO claim for benefit of bargain when plaintiffs "paid for appraisals conducted in accordance with USPAP standards, along with other state and federal laws, but instead received sham appraisals that did not comply with such standards and laws"); *In re Morning Song Bird Food Litig.*, 12-cv-1592 JAH (RBB), 2013 WL 12144051, at *3 (S.D. Cal. Sept. 30, 2013) ("Ninth Circuit has recognized the 'benefit of the bargain' theory as a viable basis for standing" in case with RICO claims) (citing *Chavez v. Blue Sky Nat. Beverage Co.*, 340 F. App'x 359 (9th Cir. 2009)).

1    between the defendant's wrongful conduct and the plaintiff's injury . . . .'" *Id.* at 9 (quoting

2    *Bridge*, 553 U.S. at 657 (2008)).  As explained below, Plaintiffs' Complaint more than meets

3    these standards.

4                    **1.        Reliance Is Not Required for RICO Proximate Cause.**

5            The FCA Defendants compound the fallacy of their logic about Plaintiffs' injuries by

6    arguing that, because those injuries are "speculative," the Defendants bear no responsibility for

7    such "imagined" harms.  *See* FCA Mem. 31-32.  As explained above, this argument fails because

8    Plaintiffs' RICO damages concern out-of-pocket losses already incurred.  *See* ¶ 274(D).

9            The FCA Defendants continue their pattern of disregarding Plaintiffs' actual allegations

10   by arguing that, to the extent Plaintiffs claim their injuries stem from the advertisements, they fail

11   to adequately plead reliance on any "fraudulent misstatements—and thus fail to allege proximate

12   causation." *See* FCA Mem. 32.  Defendants miss the point.

13           Here, the gravamen of Plaintiffs' RICO claims is that Defendants colluded to install and

14   conceal the illegal defeat devices from regulators so they could obtain COCs and EOs to place the

15   Class Vehicles in the stream of commerce, rather than the affirmative misrepresentations

16   Defendants propagated in sales and marketing materials.  *See, e.g.*, ¶ 230 (by "deceiv[ing]

17   regulators into believing that the Class Vehicles were eligible for coverage by a COC and/or EO

18   and compliant with emission standards," Defendants "extract[ed] over a billion dollars from

19   consumers"); ¶ 232 (RICO enterprise "was formed for the purpose of fraudulently obtaining

20   COCs from EPA (and EOs from CARB) in order to sell the Class Vehicles" to Plaintiffs); ¶ 270

21   (alleging "Defendants knew and intended that government regulators would rely on their material

22   omissions made about the Class Vehicles" and "that consumers would purchase the Class

23   Vehicles and incur costs as a result").  Although the misrepresentations Defendants propagated in

24   sales and marketing materials are an important aspect of Plaintiffs' claims, they do not form the

25   basis of the RICO allegations.

26           To the extent that Defendants acknowledge the above allegations at all, they dismiss them

27   as statements to regulators, rather than to consumers.  *See, e.g.*, FCA Mem. 2.  Unfortunately for

28   the Defendants, such statements to regulators are indeed actionable under the Supreme Court's

Civil RICO jurisprudence.  RICO plaintiffs may recover where, as here, "their injuries result directly from the defendant's fraudulent misrepresentations to a third party."  *Bridge*, 553 U.S. at 653.  In *Bridge*, the defendants colluded to submit fraudulent bids at a county-run tax liens auction.  *Id.* at 642.  Their competitors brought a RICO claim, alleging they obtained fewer liens due to the defendants' misrepresentations to the county.  *Id.*  The defendants argued the plaintiffs failed to show causation because the statements were not made to them.  *Id.* at 648.  A unanimous Supreme Court affirmed the Seventh Circuit's reversal of the district court's dismissal of the RICO claim, holding that first-person reliance is ***not*** an element of a RICO claim, as "a person can be injured by reason of a pattern of mail fraud even if he has not relied on any misrepresentations."  *Id.* at 649.  The Court observed: "This is a case in point.  Accepting their allegations as true, respondents were injured by petitioners' scheme."  *Id.*  That is true "even though they did not rely on petitioners' false attestations of compliance with the county's rules."  *Id.*

> Consistent with the Supreme Court's unanimous opinion in *Bridge*, Plaintiffs allege here:

> The RICO Defendants knew and intended that government regulators would rely on their material omissions made about the Class Vehicles to approve them for importation, marketing, and sale in the United States and each state.  The RICO Defendants knew and intended that consumers would purchase the Class Vehicles and incur costs as a result.  Plaintiffs' reliance on this ongoing concealment is demonstrated by the fact that they purchased illegal and defective vehicles that never should have been introduced into the U.S. stream of commerce.  In addition, the EPA, CARB, and other regulators relied on the misrepresentations and material concealment and omissions made or caused to be made by the RICO Defendants; otherwise, FCA could not have obtained valid COCs and EOs to sell the Class Vehicles.

¶ 270.  In other words, Plaintiffs were ***directly*** harmed by Defendants' concealment of the defeat devices on COC and EO applications needed to approve the sale of the Class Vehicles, without which approval Plaintiffs never could have bought them.  *Id.*  Under *Bridge* and its progeny, this suffices to show proximate causation.[14]

---

[14] *See* 553 U.S. at 649; *cf. Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 12 (2010) (proximate cause turns on "existence of a sufficiently 'direct relationship' between the fraud and the harm"); *see, e.g.*, *Just Film, Inc. v. Merch. Servs.*, No. C 10-1993 CW, 2012 WL 6087210, at *11 (N.D. Cal. Dec. 6, 2012) ("However, Merchant Services Defendants are incorrect when they argue that Plaintiffs must allege that they themselves were aware of, and personally relied upon, the purported misrepresentations."); *Johnson v. KB Home*, 720 F. Supp. 2d 1109, 1119 (D. Ariz. Mar.

*Footnote continued on next page*

- 27 -

1

## 2.  The Bosch Defendants' Game of "Not It" Fails.

2       The Bosch Defendants also try to sidestep responsibility with a game of "not it" by

3   distancing themselves from the actions taken by the FCA Defendants in furtherance of the

4   scheme.  *See* Bosch Mem. 20.  This argument misunderstands the nature of the RICO claims.

5       First, *Bridge* teaches that a defendant need not make a misrepresentation to the plaintiff

6   for RICO liability to attach.  *See* 553 U.S. at 649.  Instead, the relevant inquiry is whether there is

7   a sufficiently direct connection between the ***scheme*** and the injury.  *See id.*  This is necessarily

8   the case as "a knowing participant in a fraudulent scheme may be held liable both for his or her

9   own acts of mail or wire fraud ***and*** be held vicariously liable for the acts of co-schemers."  *United*

10  *States v. Manion*, 339 F.3d 1153, 1156-57 (9th Cir. 2003) (emphasis in original).

11      As a court in this District has found, "to establish standing, [RICO plaintiffs] are not

12  required to show that each individual predicate act caused them an injury, but rather that the

13  pattern of racketeering activity did."  *Just Film, Inc.*, 2012 WL 6087210, at *12 (citing *Sedima*,

14  473 U.S. at 497).  "Instead, the plaintiff must prove only an injury directly resulting from some or

15  all of the activities comprising the violation."  *Id.*; *see also* Gregory P. Joseph, *Civil RICO: A*

16  *Definitive Guide*, 58-59 (3d ed. 2010) ("As long as the pattern of racketeering activity has caused

17  harm to the plaintiff's business or property, the plaintiff has RICO standing.  The plaintiff is not

18  obliged to plead or prove that it has been injured by multiple predicate acts, as long []as it has

19  been injured by at least one predicate act.").

20      These cases show that it is the fraudulent scheme, not a particular bad act of a particular

21  defendant, that is relevant for purposes of testing the directness of the causal relationship, and the

22  Bosch Defendants cite no Ninth Circuit cases to the contrary.[15]  In *Oki Semiconductor*, 298 F.3d

23  *Footnote continued from previous page*

24  30, 2010) (denying motion to dismiss RICO claim based on proximate causation because "*Bridge* does not require plaintiffs to plead reliance").

25  [15] The Bosch Defendants' other cases are both out-of-Circuit and factually distinct.  For example, in *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580 (E.D. Mich. 2015), the plaintiffs failed to adequately allege each defendant participated in the scheme.  *Id.* at 603.  In *Pennsylvania*

26  *Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2010 WL 1979569, at *7-8 (N.D. Ill. May 17, 2010), the plaintiff failed to adequately allege each defendant engaged in the

27  racketeering activity.  *Id.* at *9-10.  Moreover, the court expressly distinguished cases in which plaintiffs also allege a violation of § 1962(d), as Plaintiffs have done here.  *Id.*; *see also* ¶ 265.

28  Thus, even if this Court were to follow these out-of-Circuit cases, they are inapposite as Plaintiffs

*Footnote continued on next page*

1 at 774, for example, the claimed injury could not have been caused by the defendant Wells Fargo

2 because its third-party bank teller did not get involved in the alleged scheme until *after* the

3 robbery.  As such, the plaintiff could not show the bank teller's "money laundering proximately

4 caused the robbery."  *Id.*  In other words, in *Oki Semiconductor*, the sequence of events ruled out

5 causation altogether.

6        Here, in contrast, Plaintiffs allege the Bosch Defendants were involved in the scheme

7 from start to finish.  The Complaint alleges "Bosch GmbH and Bosch LLC exercised tight control

8 over the coding and other aspects of the software and closely collaborated with Fiat, FCA, VM

9 Italy, and VM America to *develop, customize, and calibrate the software* for the Class Vehicles."

10 ¶ 250.  Plaintiffs also allege that Bosch GmbH and Bosch LLC concealed the functions from

11 regulators.  *Id.*  The Complaint paints a portrait of the Bosch Defendants working hand-in-glove

12 with the FCA Defendants to plan, design, and pull off the scheme.  Thus, the Bosch Defendants

13 caused the harm.  Indeed, Judge Breyer recently rejected a bid for dismissal by the Bosch

14 Defendants based on similar allegations in *Volkswagen*, 2017 WL 4890594, at *6.

15        Further, the *Holmes* factors cited by the Bosch Defendants all weigh in Plaintiffs' favor.

16 *See* Bosch Mem. 20.  First, the damages are attributable to the Bosch Defendants' conduct, rather

17 than independent factors.  Indeed, without the Bosch Defendants' participation, the scheme would

18 have failed altogether:  "Without . . . Bosch GmbH and Bosch LLC's active involvement in

19 developing and supplying the critical emission  control software for the Class Vehicles, the

20 Enterprise's scheme and common course of conduct would have been unsuccessful."  ¶ 251.

21        The Bosch Defendants argue that the FCA Defendants' decision to charge a premium was

22 not within its control.  *See* Bosch Mem. 21.  This argument ignores Plaintiffs' primary theory of

23 damages under RICO: the Class Vehicles never could have been bought or leased by Plaintiffs, or

24 sold by the FCA Defendants, absent the fraudulent scheme of which the Bosch Defendants were

25 an integral part. *See, e.g.*, ¶ 274(A).  Even under an overpayment rubric, the relevant inquiry is

26 not the amount of injury due to one Defendant's actions or another's, but rather "whether the

27 *Footnote continued from previous page*
allege the Bosch Defendants' roles in the scheme and racketeering activity and a conspiracy in

28 violation of 18 U.S.C. § 1962(d).

1   alleged **violation** led directly to the plaintiff's injuries." *Anza*, 547 U.S. at 461.  And here, the

2   Bosch Defendants took actions in furtherance of the scheme that violated RICO, regardless of

3   whether they had a hand in setting the price for the Class Vehicles. *See, e.g.*, ¶¶ 250-51.  What's

4   more, the price the FCA Defendants charged for the Class Vehicles was set in furtherance of the

5   same scheme of which the Bosch Defendants were a part.  This fact distinguishes this case from

6   others in which a defendant's actions made it easier for an entirely separate and unaffiliated

7   "fourth party" to cause harm to the plaintiff, as was the case in *Hemi Grp.* 559 U.S. at 985, or an

8   "independent factor" altogether such as the sublease in *Pillsbury, Madison & Sutro v. Lerner*, 31

9   F.3d 924, 930 (9th Cir. 1994).  Instead, Plaintiffs' theory of causation is akin to the plaintiffs'

10  "straightforward" causation theory in *Bridge*, and is actionable under RICO.  *See Hemi Grp.*, 559

11  U.S. at 992.

12       Second, the Bosch Defendants feign concern about apportioning liability among the

13  Defendants.  *See* Bosch Mem. 21.  This is a red herring.  As Judge Breyer held in *Volkswagen*,

14  "[d]ifficulty apportioning damages between defendants . . . is not a factor  . . . in the proximate

15  cause analysis."  2017 WL 4890594, at *9.  Under any fair reading of the Complaint, Plaintiffs

16  have adequately alleged proximate causation against all Defendants.

17       **D.     Plaintiffs Describe a Proper RICO Enterprise.**

18       Defendants narrowly construe the "enterprise" element in a bid to challenge the

19  EcoDiesel® RICO Enterprise.  *See* FCA Mem. 38-39; Bosch Mem. 22.  But the Supreme Court

20  has demystified the term "enterprise" and emphasized its breadth:

21       [RICO] does not specifically define the outer boundaries of the "enterprise"
         concept but states that the term "includes any individual, partnership, corporation,
22       association, or other legal entity, and any union or group of individuals associated
         in fact although not a legal entity."  This enumeration of included enterprises is
23       obviously **broad**, encompassing "any . . . group of individuals associated in fact."
         The term "any" ensures that the definition has a **wide reach, and the very concept
24       of an association in fact is expansive**. In addition, the RICO statute provides that
         its terms are to be "liberally construed to effectuate its remedial purposes."
25

26  *Boyle*, 129 S. Ct. at 2243; *see also United States v. Christensen*, 801 F.3d 970, 985 (9th Cir. 2015)

27  (RICO enterprise includes any "group of persons associated together for a common purpose of

28  engaging in a course of conduct").

- 30 -

As the Ninth Circuit Model Jury Instructions explain, "[n]o particular organizational structure, separate or otherwise, is necessary for an associated-in-fact enterprise." *Ninth Cir. Manual of Model Civ. Jury Instrs.*, No. 8 Civil RICO Cmts. at 112 (updated July 2017); *Volkswagen*, 2017 WL 4890594, at *16 ("RICO's structural requirement requires only a 'relationship among those associated with the enterprise.'") (quoting *Boyle*, 556 U.S. at 948 (neither a "hierarchy, role differentiation [or] a chain of command" is required)).

There are only three elements to proving a RICO enterprise: "(1) a common purpose, (2) an ongoing organization, and (3) a continuing unit." *Christensen*, 801 F.3d at 985; *see Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 WL 3485881, at *12 (N.D. Cal. Aug. 15, 2017). The only element that Defendants meaningfully challenge is the "common purpose."[16] *See* FCA Mem. 39; Bosch Mem. 23. This element means what it says on its face: "a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552.

In *Odom*, the Ninth Circuit found sufficient allegations that Best Buy and Microsoft "had the common purpose of increasing the number of people using Microsoft's Internet Service through fraudulent means." *Id.* Likewise, in *Cannon*, this Court found sufficient allegations that the defendants' common purpose was to increase revenues "by forcing Plaintiffs and members of the Classes to pay artificially inflated premiums for flood and hazard insurance through a scheme that manipulated the premiums to cover kickbacks and expenses associated with monitoring Wells Fargo's entire loan portfolio." 2014 WL 324556, at *3.

Here, the Complaint alleges an association-in-fact Enterprise comprised of Fiat, FCA, Marchionne, VM Italy, VM America, Bosch GmbH, Bosch LLC, and other third parties that shared a common purpose "to deceive regulators into believing that the Class Vehicles were eligible for coverage by a COC and/or EO and compliant with emission standards." ¶ 230. The motivation was simple: "to increase Defendants' revenues and profits and minimize their losses from the design, manufacture, distribution and sale of the Class Vehicles and their component parts." *Id.* And the Complaint describes each Defendant's role in carrying out the scheme's

---

[16] The ongoing organization and continuing unit elements are clearly met as the Complaint alleges agreements among Defendants that span at least three model years. *See, e.g.*, ¶ 230.

- 31 -

1    common purpose.  As in *Volkswagen*, the evidence "used to prove the pattern of racketeering

2    activity and the evidence establishing an enterprise" will coalesce here.  2017 WL 4890594, at

3    *16 (quoting *Boyle*, 556 U.S. at 946).

4         Defendants run from these allegations and attempt to recast their motivations as routine

5    business activities.  *See* FCA Mem. 40; Bosch Mem. 24.  But these arguments are for the jury, as

6    this self-serving explanation does not rebut the relatively-low threshold of plausibility, given what

7    the Complaint alleges about their knowledge (¶¶ 131, 242, 250); the diesel industry practices

8    (¶¶ 156-63); the cheat devices (¶ 115); and the government's suit for violations of the CAA.  *See*

9    ¶¶ 3-5; *see In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017

10   WL 35571, at *11-12 (S.D. Cal. Jan. 3, 2017) (considering government investigation in

11   plausibility analysis).  Even if this Court were to give equal credit to Defendants' explanations,

12   the "tie goes to the plaintiffs."  *See Eclectic Props.*, 751 F.3d at 999 n.8.

13        Further, Defendants wrongly contend that Plaintiffs fail to provide sufficient particulars.

14   In so doing, they fastidiously avoid facing the allegations that Plaintiffs have pled about each of

15   their roles in the Enterprise, broken out at places under separate headings to avoid confusion.  *See*

16   ¶¶ 235-252 & n.82.  These allegations are, of course, in addition to others found throughout the

17   rest of the comprehensive Complaint.

18        The Bosch Defendants' denial of a common purpose with the FCA Defendants is an

19   argument for trial, not the pleading stage.  That is because Plaintiffs' allegations of a common

20   purpose are aligned with binding jurisprudence and provide ample notice of their claims:

21        Fiat and FCA, their network of dealerships, Marchionne, VM Italy, VM America,
      **Bosch GmbH, Bosch LLC**, Denner, and other entities and individuals associated
22    for the ***common purpose of designing, calibrating, manufacturing, distributing,
      testing, marketing, and selling the Class Vehicles*** to consumers in the Nationwide
23    Class through fraudulent COCs and EOs, false emissions tests, false or misleading
      sales tactics and materials, and deriving profits and revenues from those activities.
24    Each member of the EcoDiesel® RICO Enterprise shared in the bounty generated
      by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue
25    generated by the scheme to defraud Class members nationwide.

26   ¶ 242.  Moreover, Plaintiffs allege that "Bosch GmbH and Bosch LLC exercised tight control

27   over the coding and other aspects of the software and closely collaborated with Fiat, FCA, VM

28   Italy, and VM America to develop, customize, and calibrate the software for the Class Vehicles."

¶ 250. Why would the Bosch Defendants do this?  Because they stood to profit handsomely from selling "more EDC Units to equip the Class Vehicles." *Id.* n.82.

Plaintiffs allege that, far from being innocent suppliers:

> Bosch GmbH and Bosch LLC were aware that Fiat Chrysler used its emission control technology as a concealed auxiliary (or defeat) device and, in fact, worked together with Fiat Chrysler and VM Motori to develop and implement software algorithms specifically tailored to allow the Class Vehicles to evade detection.

¶131. In light of these allegations, the Bosch Defendants cannot argue there is no plausible *allegation* of a common purpose shared between them and the FCA Defendants.

### E.    Plaintiffs Amply Allege Each Defendant's Conduct of, or Participation in the Conduct of, the RICO Enterprise.

Defendants challenge Plaintiffs' allegations of their respective roles in the Enterprise, but they frame their arguments in different ways.  The FCA Defendants claim Plaintiffs do not provide sufficient particulars under Rule 9(b) as to their fraudulent intent, but as shown below, that element is not subject to Rule 9(b) standards.  Giving them the benefit of the doubt, the FCA Defendants must be challenging whether allegations of their conduct are sufficiently detailed. *See* FCA Mem. 34.  As shown below—and as is evident by simply perusing the Complaint—they are.  The Bosch Defendants similarly argue that Plaintiffs failed to plausibly allege that either of them conducted the affairs of the Enterprise.  *See* Bosch Mem. 25.  They did.

To state a RICO claim, a defendant must "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs."  18 U.S.C. § 1962(c).  As the Supreme Court has explained, "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase directly or indirectly makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Notably, "[a]n enterprise is operated not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *United States v. Fernandez*, 388 F.3d 1199, 1228 (9th Cir. 2004).

1          Plaintiffs sufficiently allege that each Defendant conducted, or participated in the conduct

2   of, the Enterprise's affairs.  First, Plaintiffs cast Fiat Chrysler as the ringleader of the scheme—

3   with CEO Marchionne at the helm.  *See, e.g.*, ¶226-36, 248.  Fiat Chrysler was struggling to

4   compete on the world stage as a global automaker, and Marchionne saw an opportunity to expand

5   its North American presence through the U.S. "clean" diesel market.  *See, e.g.*, ¶¶ 1, 102-105,

6   226-36.  Once it became clear that "clean" diesel was more fiction than fact, however, Fiat

7   Chrysler, like Volkswagen and others, played dirty to achieve their aggressive targets.  *See, e.g.*,

8   ¶¶ 123, 236.  Fiat Chrysler had FCA submit fraudulent COC and EO applications for the Class

9   Vehicles with other Defendants' input and complicity.  *See, e.g.*, ¶¶ 2, 130.  These COC and EO

10  applications concealed eight (8) AECDs that, in combination or on their own, comprise an illegal

11  defeat device.  *See, e.g.*, ¶¶ 3, 171.  As the Class Vehicles did not conform to the specifications in

12  the applications upon which the EPA and CARB relied, the COCs and EOs were fraudulently

13  obtained.  ¶ 130.  Accordingly, but for Defendants' fraudulent scheme, the Class Vehicles never

14  would have been sold in the first place.  *See* ¶ 173.

15         VM Motori exercised control over the development of the V6 3.0-liter engines that were

16  installed in the Class Vehicles and equipped with the illegal defeat device software programmed

17  into the EDC 17's.  ¶¶ 22, 117, 120, 237, 249.  VM Italy and VM America worked closely with

18  Fiat Chrysler to "customize the EDC 17 to allow Class Vehicles to simulate 'passing' the EPA

19  and CARB testing."  ¶ 123.  VM Italy and VM America also worked with Fiat Chrysler to

20  develop and calibrate the engines at Michigan headquarters," including calibrations involving the

21  concealed emission control technology for the Class Vehicles.  ¶ 237.  Finally, VM Italy and VM

22  America provided false or misleading information for inclusion in the COC and EO applications

23  for the Class Vehicles.  *Id.*

24         Whereas the Bosch Defendants cast themselves as innocent suppliers, the Complaint tells

25  a different story, and it is Plaintiffs' account that this Court must believe at this stage.  *See Barker*,

26  584 F.3d at 824.  Plaintiffs lay out each Bosch entity's participation and control over the

27  development, customization, calibration, and concealment of the defeat devices at issue.  *See, e.g.*,

28  ¶ 138 ("On information and belief, Bosch LLC also assisted in concealing the true nature of the

1  emission control technology from regulators in the United States with respect to the Class

2  Vehicles at issue here."); ¶ 250 ("Bosch GmbH and Bosch LLC also participated in the affairs of

3  the Enterprise by concealing the software functions from U.S. regulators and actively lobbying

4  regulators on behalf of "clean diesel.").  In fact, Plaintiffs provide pages of details from unearthed

5  Bosch software documentation that reveal functions in the Class Vehicles' emission controls with

6  no legitimate purpose that track the concealed defeat devices at issue, including the violations

7  alleged by the government.  *See* ¶¶ 174-79.  And, although it is not necessary to establish RICO

8  liability, the Complaint alleges the Bosch Defendants made misrepresentations about the Class

9  Vehicles.  ¶ 9.

10      Taken as true, the Complaint's factual allegations paint a portrait of the Bosch Defendants

11  doing the bidding of the FCA Defendants to pull off the fraudulent scheme.  This suffices to show

12  that the Bosch Defendants played "***some*** part in directing the enterprise's affairs," even if it is

13  construed as a lower-rung participant.  *Reves*, 507 U.S. at 179; *Fernandez*, 388 F.3d at 1228

14  (lower-rung participants liable under RICO); *see also Volkswagen*, 2017 WL 4890594, at *16-17.

15      The Bosch Defendants nevertheless complain that Plaintiffs' allegations are not

16  sufficiently particular.  While the Bosch Defendants might wish otherwise, Rule 9(b) does not

17  require an epic tome.  *See* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

18  *Procedure* § 1298 (3d ed.) ("[I]t is inappropriate to focus exclusively on the fact that Rule 9(b)

19  requires particularity in pleading the circumstances of fraud. . . . [T]he rule regarding the pleading

20  of fraud does not require absolute particularity or a recital of the evidence, especially when some

21  matters are beyond the knowledge of the pleader and can only be developed through discovery.").

22  Plaintiffs' allegations are sufficient, particularly in light of relaxed pleading standards for

23  corporate fraud.  *See Moore*, 885 F.2d at 540 ("[I]n cases of corporate fraud, plaintiffs will not

24  have personal knowledge of all of the underlying facts.").

25      Finally, even if it is routine business for Bosch to create defeat devices for automakers to

26  evade emission standards, that is no escape from RICO liability.  Indeed, RICO's "expansive"

27  predicate acts apply not only to organized crime but also "legitimate businesses" that engage in

28  corrupt practices.  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236 (1989) (discussing *Sedima* and

1   its rejection of a restrictive interpretation of the RICO statute).  It is plausible to conclude, as in

2   everyday life, that where there is smoke, there is fire.  Plaintiffs' allegations provide "enough fact

3   to raise a reasonable expectation that discovery will reveal evidence to support the allegations."

4   *Starr*, 652 F.3d at 1217.  Any "tie goes to the plaintiffs."  *Eclectic Props.*, 751 F.3d at 999 n.8.

5   Here, it is not even close.  Plaintiffs have adequately alleged each Defendant conducted the

6   Enterprise.

7         **F.**    **Plaintiffs Plead Multiple, Ongoing Predicate Acts of Mail and Wire Fraud.**

8         Defendants wrongly argue that Plaintiffs failed to adequately allege the predicate acts of

9   mail or wire fraud.  *See* FCA Mem. 34; Bosch Mem. 28.  Their arguments are not persuasive.

10        "Mail and wire fraud are identical offenses except for the particular method used to

11  disseminate the fraud."  *Volkswagen*, 2017 WL 4890594, at *11(citing *Eclectic Props.*, 751 F.3d

12  at 997).  The elements of mail and wire fraud are a scheme to defraud, use of mails or wires to

13  further the scheme, and specific intent to defraud.  *Id.*  And Plaintiffs provide ample particulars

14  about the scheme in their thorough and detailed Complaint, including the motive and methods.

15        "The 'scheme to defraud' element of mail and wire fraud is 'treated like conspiracy in

16  several respects.'  As a result, each member of the scheme does not need to make a separate

17  misrepresentation."  *Id.* at 12 (quoting *United States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir.

18  2002)).  In *Volkswagen*, Judge Breyer thus described the analytical factors as requiring that the

19  defendant: (1) was a knowing participant in the scheme; (2) had the intent to defraud; and (3) a

20  co-schemer committed acts of mail and wire fraud during the defendant's participation in the

21  scheme, which acts were within the scope of the scheme.  *See id.*  Each of these elements is met

22  here.

23        **1.**    **Knowing Participant in a Scheme to Defraud**

24        First, Plaintiffs have adequately alleged that each Defendant was a knowing participant in

25  the scheme to defraud.  Importantly, "the intentional devising of a scheme is not an essential

26  element of mail or wire fraud.  [It is only] necessary to show willful participation in a scheme

27  with knowledge of its fraudulent nature and with intent that these illicit objectives be achieved."

28  *Manion*, 339 F.3d at 1156.  Knowledge can manifest in a "reckless indifference" to the truth, *see*

1    *United States v. Love*, 535 F.2d 1152, 1158 (9th Cir. 1976).  Moreover, the fraud "may be

2    effected by half truths, deceitful statements or the concealment of material facts."  *Garvin v.*

3    *Greenbank*, 856 F.2d 1392, 1399 (9th Cir. 1988).

4            The FCA Defendants nitpick Plaintiffs' allegations by claiming the sales of the Class

5    Vehicles were not big enough to motivate them to commit fraud (as if there were a smaller-scale

6    fraud loophole) and that there was no actionable representation in their advertisements thereof.

7    *See* FCA Mem. 17, 36-37.  But, as stated above, Plaintiffs' RICO claims are rooted *not* in

8    affirmative misstatements in the sales and marketing materials, but rather, in the concealment of

9    the defeat devices from regulators to obtain COCs and EOs to permit the sale of Class Vehicles in

10   the United States, and the same concealment from consumers to actually sell those vehicles.  The

11   FCA Defendants fail to refute that this concealment of material facts from regulators and

12   consumers is actionable, and the case law demonstrates that it is.  *See, e.g.*, *Bridge*, 553 U.S. at

13   643 (fake bids submitted to Cook County Treasurer's Office in tax liens auction actionable in

14   RICO claim brought by competitors harmed by scheme); *United States v. Castor*, 558 F.2d 379,

15   383-84 (7th Cir. 1977) (finding scheme to fraudulently obtain liquor store permits was actionable

16   under RICO and rejecting argument that scheme must intend to cause victims to lose money or

17   property) (cited by *United States v. Buckley*, 689 F.2d 893, 898 (9th Cir. 1982)).

18          The Bosch Defendants, for their part, acknowledge in a footnote that, "while 'knowing

19   participants' in a fraudulent scheme can be held liable for their co-schemers' use of the mails or

20   wires, such vicarious liability extends only if the Plaintiffs adequately plead that each Defendant

21   knowingly participated in the scheme to defraud with specific intent to deceive."  Bosch Mem. 29

22   n.9 (citing *United States v. Stapleton*, 293 F.3d 1111, 1116-18 (9th Cir. 2002)).  The Bosch

23   Defendants claim Plaintiffs have failed to make this "showing."  *Id.*  Not so.  Here, as in

24   *Volkswagen*, Plaintiffs plausibly claim that the Bosch Defendants knowingly participated in the

25   scheme by working hand-in-glove with the FCA Defendants to implement the defeat devices that

26   made the scheme possible, by wielding tight control over modifications to the EDC17s, and by

27   promoting "clean diesel" technology in the United States.  *Compare* 2017 WL 4890594, at *13-

28   15, *with* ¶¶ 31-32, 131-44, 250.

PLAINTIFFS' CONSOL. OPP. TO MOTIONS TO DISMISS
AM. CONSOL. CONSUMER CLASS ACTION COMPL.
MDL 2777 EMC

1    This Court should reject the Bosch Defendants' attempts to shield their lobbying activities

2    from consideration through the *Noerr-Pennington* doctrine (Bosch Mem. 32).  *See Volkswagen*,

3    2017 WL 4890594, at *15 n.4.  Plaintiffs are not asserting that Bosch's lobbying activity was

4    unlawful.  Instead, they contend that "Bosch's lobbying activity,"—which was real, and served a

5    purpose—"proves its knowledge of, and intent to participate in, the emissions fraud."  *Id.* (citing

6    *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 n.3 (1965) ("It would of course

7    still be within the province of the trial judge to admit this evidence . . . if it tends reasonably to

8    show the purpose and character of the particular transactions under scrutiny.")).  The Complaint

9    alleges: "Bosch not only kept the dirty secret safe, it went a step further and actively lobbied

10   lawmakers to push 'clean diesel' in the United States."  ¶ 139.

11   As explained above, the scheme focused primarily on concealing the defeat devices from

12   regulators so that they would be duped into approving the Class Vehicles for sale in the United

13   States to unknowing consumers.  This is more than sufficient.  But if the Bosch Defendants

14   demand an allegation of a misrepresentation, the Complaint provides it, too:  "Bosch went so far

15   as to boast that the '2014 Jeep Grand Cherokee features a Bosch emission system ***compliant with***

16   ***the most stringent emission regulations in the world***.  From fuel tank to tailpipe, Bosch is

17   pleased to equip this vehicle with top technologies to give consumers a great driving experience

18   requiring fewer stops at the pump.'"  ¶ 122.[17]  The Complaint's allegations that the Class

19   Vehicles were anything but compliant shows that this representation was false.

20   The Complaint's well-pled allegations plausibly support a claim that each Defendant

21   knowingly participated in this scheme by working to implement the defeat device that made the

22   scheme possible, concealing the defeat devices, and promoting "clean diesel" technology to sell

23   defeat-device equipped vehicles in the United States.  This suffices at the motion to dismiss stage.

24   **2.** **Intent to Defraud**

25   Second, contrary to Defendants' suggestion, Plaintiffs have adequately pled each

26   Defendant's intent to defraud.  *See* FCA Mem. 34; Bosch Mem. 30.  Defendants demand a higher

---

[17] *Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006), is far afield as it concerned a pre-litigation settlement demand not at all relevant to the allegations here.  *See id.* at 940.

pleading standard than is required.  Intent to defraud can be pled generally and inferred from the

scheme itself.  *Volkswagen*, 2017 WL 4890594, at *15 (citing *Eclectic Props.*, 751 F.3d at 997).

Intent "may [also] be established by circumstantial evidence."  *United States v. French*, 748 F.3d

922, 935 (9th Cir. 2014). Notwithstanding this authority, the FCA Defendants suggest *Miller v.*

*Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004), and *In re Stac Elecs. Sec. Litig.*, 89

F.3d 1399, 1404 (9th Cir. 1996), require RICO plaintiffs to plead "intent to defraud" with

particularity to satisfy Rule 9(b).  *See* FCA Mem. 34.  Not so.  *Miller* makes no mention of Rule

9(b), and *Stac* is a securities fraud case that makes no mention of RICO.  *See Miller*, 358 F.3d at

620; *Stac Elecs.*, 89 F.3d at 1404.  Moreover, Rule 9(b) expressly disavows such a requirement:

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake.  *Malice, intent, knowledge, and other conditions of a person's mind may be*

*alleged generally.*"  Fed. R. Civ. P. 9(b) (emphasis added).  Allegations of fraudulent intent,

therefore, must only be plausible, as they are here.  *See Eclectic Props.*, 751 F.3d at 995 n.5.

Plaintiffs allege that Defendants engaged in a scheme to "deceive regulators into believing

that the Class Vehicles were eligible for coverage by a COC and/or EO and compliant with

emission standards."  ¶ 230.  As to each Defendant's intent, the Complaint alleges that each

"knew or recklessly disregarded that the Class Vehicles were unable to (and did not) comply with

U.S. emissions standards and yet concealed this information from regulators."  *See, e.g.*, ¶ 235.

Further, as outlined above, the comprehensive Complaint provides detailed allegations about the

role of each Defendant in the alleged scheme.  Plaintiffs' allegations are not only sufficiently

particular, but they are plausible, too, given that the U.S. government has since sued for the

violations of the CAA, and the FCA Defendants have chosen to ***answer*** the complaint rather than

move to dismiss it.  *See* Dkt. 230; *Packaged Seafood Prods.*, 2017 WL 35571, at *11-12

(considering government investigation in plausibility analysis).

Defendants' citation to *Pirnik v. Fiat Chrysler Autos.*, No. 15-CV-7199 (JMF), 2017 U.S.

Dist. LEXIS 120841 (S.D.N.Y. Aug. 1, 2017), does not help their cause.  *See* FCA Mem. 36;

Bosch Mem. 31.  *Pirnik* is a securities fraud case governed by different legal standards,

specifically, the "Private Securities Litigation Reform Act ('PSLRA'), 15 U.S.C. § 78u-4(b),

1   which requires that scienter—that is, a defendant's intention to deceive, manipulate, or defraud –

2   also be pleaded with  particularity." *Id.* at *4-5.  It should go without saying that the PSLRA's

3   heightened pleading standards for scienter do not apply here, particularly given Rule 9(b)'s

4   explicit disavowal of a heightened pleading standard for state of mind.  *See* Fed. R. Civ. P. 9(b).

5   Far from dooming Plaintiffs' claim, Defendants' failure to appreciate the difference between the

6   governing legal standards between this RICO claim and a securities fraud case dooms their

7   argument.

8   ### 3.   Use of the Mails and Wires

9       Bosch GmbH tries to escape liability by claiming it did not send any of the alleged

10   mailings or wires, and Bosch LLC says the mailings and wires attributable to it did not contain a

11   false statement.  *See* Bosch Mem. 33-34.  Neither argument is persuasive here.

12       A defendant need not lick the stamp or hit "send" to be liable for mail or wire fraud.  As

13   the Ninth Circuit holds, "[t]he defendant need not personally have mailed the letter or made the

14   telephone call; the offense may be established where one acts with the knowledge that the

15   prohibited actions will follow in the ordinary course of business or where the prohibited acts can

16   reasonably be foreseen." *Stapleton*, 293 F.3d at 1117 (quoting *United States v. Lothian*, 976 F.2d

17   1257, 1262 (9th Cir. 1992)); *see also Pereira v. United States*, 347 U.S. 1, 8-9 (1954).  "'Because

18   an essential element of these offenses is a fraudulent scheme, mail and wire fraud are treated like

19   conspiracy in several respects. . . . Just as acts and statements of coconspirators are admissible

20   against other conspirators, so too are the statements and acts of co-participants in a scheme to

21   defraud admissible against other participants.'" *Stapleton*, 293 F.3d at 1117 (quoting *Lothian*,

22   976 F.2d at 1262-63).  Further, "[l]ike co-conspirators, 'knowing participants in the scheme are

23   legally liable' for their co-schemers' use of the mails or wires." *Id.* (quoting *Lothian*, 976 F.2d at

24   1262-63); *Dufour*, 2010 WL 2560409, at *11 ("[I]t is not necessary that all named defendants

25   themselves used the wires.  A knowing participant in a scheme to defraud is vicariously liable for

26   substantive acts of mail fraud or wire fraud committed by co-schemers.").

27       Importantly, "any mailing [or an interstate wire] that is incident to an essential part of the

28   scheme satisfies the mailing [or wiring] element, even if the mailing [or wire] itself contain[s] no

1 false information." *Bridge*, 553 U.S. at 647 (quoting *Schmuck v. United States*, 489 U.S. 705, 712

2 (1989)) (alteration in original).  In other words, the alleged mailing or interstate wire can be

3 "routine and innocent in and of itself."  *Schmuck*, 489 U.S. at 711-12.

4       Here, the scheme was effectuated primarily through concealing the defeat devices from

5 regulators.  Plaintiffs allege that false or misleading COC and EO applications for the Class

6 Vehicles were sent through the mail and interstate wires during Bosch's participation in the

7 scheme and in furtherance of the scheme.  *Compare, e.g.*, ¶¶ 124, 130-31, 258(E), 259-60, *with*

8 *Volkswagen*, 2017 WL 4890594, at *15.  In fact, Plaintiffs allege over a dozen specific mailings

9 and wires that involved or were foreseeable to the Bosch Defendants, including, for example:

| From | To | Date | Description |
|---|---|---|---|
| FCA | Bosch LLC | January 2013 | Documents related to agreement to purchase Bosch EDC Unit 17 for 2014 Jeep Grand Cherokee. |
| FCA, Michigan | FCA Dealerships | July 2013 | Marketing Documents for 2014 Ram 1500 Class Vehicles. |

15 ¶ 259.  These mailings satisfy Rule 9(b), as they include the time, place, content, and parties to

16 the communications.  Further, these mailings were incident to an essential part of the scheme as

17 they relate to the defeat devices that the Bosch Defendants allegedly designed and installed in the

18 Class Vehicles as well as the FCA Defendants' marketing of those Vehicles to Plaintiffs and the

19 Class.  *See, e.g.*, *Schmuck*, 489 U.S. at 712 (registration form mailings incidental to scheme as

20 necessary to passage of title for vehicles, which in turn was essential to used-car dealer's scheme).

21       Similarly, as to the interstate wires, Plaintiffs allege specific communications, such as:

| From | To | Date | Description |
|---|---|---|---|
| Bosch LLC | PR Newswire, New York (and media network around United States) | January 2013 | Press release that Bosch's "clean diesel" technology will be featured in 2014 Jeep Grand Cherokee. |
| FCA, Michigan | EPA, Michigan and CARB, California | January 2015 | Certification Summery Information Report with emission test results for 2015 Jeep Grand Cherokee and 2015 Ram 1500. |

- 41 -

1  ¶ 260.  As with the mailings, these interstate wires involved or were foreseeable to the Bosch

2  Defendants, and they were incident to an essential part of the scheme as concerning the emission

3  treatment software that the Bosch Defendants designed and installed in the Class Vehicles and the

4  false emission tests obtained as a result.  *Cf. Schmuck*, 489 U.S. at 712.  These wire allegations

5  also specify the time, place, content of, and the parties to the communications so as to put

6  Defendants on notice for purposes of Rule 9(b)'s pleading standards.  For all these reasons,

7  Plaintiffs have alleged a pattern of two or more mailings and use of the wires for purposes of

8  satisfying RICO's mail and wire fraud predicates.  *See Volkswagen*, 2017 WL 4890594, at *15.

9        The Bosch Defendants' citation to *Kearns v. Ford Motor Co*., 567 F.3d 1120 (9th Cir.

10  2009), is unpersuasive.  *Kearns* was not a RICO case but a false advertising claim premised on

11  affirmative misrepresentations in Ford's marketing materials.  *Id.* at 1125-26.  Here, as explained

12  above, the *RICO claims* primarily concern Defendants' concealment of material facts, rather than

13  affirmative claims in the advertisements.  Thus, while the Complaint provides sufficient details

14  about the mailings and wires, Rule 9(b) is more relaxed here.  *See Falk v. GMC*, 496 F. Supp. 2d

15  1088, 1098-99 (N.D. Cal. 2007) ("a plaintiff in a fraud by omission suit will not be able to specify

16  the time, place, and specific content of an omission as precisely as would a plaintiff in a false

17  representation claim . . . a fraud by omission claim can succeed without the same level of

18  specificity required by a normal fraud claim").  Under any standard, Plaintiffs here have amply

19  alleged the predicate mailings and use of interstate wires.[18]

20        **G.      Plaintiffs State a RICO Claim Against CEO Marchionne.**

21        The authority the FCA Defendants cite in urging the Court to dismiss the RICO claims

22  against Marchionne does not support that result.  *See* FCA Mem. 40-41.  Unlike *Ferrari v.*

23  ───────────────
[18] The Bosch Defendants argue that the Complaint fails to allege Bosch GmbH's domestic conduct and cite, *inter alia*, the Supreme Court's recent decision in *RJR Nabisco, Inc. v.*

24  *European Cmty.*, 136 S. Ct. 2090 (2016).  Bosch Mem. 34 n.13.  But in *RJR Nabisco*, the Supreme Court held "RICO imposes *no domestic enterprise requirement*," requiring only that the

25  enterprise "engage in, or affect in some significant way, commerce directly involving the United States—*e.g.*, commerce between the United States and a foreign country."  *Id.* at 2105.  As in *RJR*

26  *Nabisco*, Plaintiffs allege that the Bosch Defendants caused to be sent or received *domestic* mailings and wires incident to an essential part of their scheme.  Plaintiffs allege that the mailings

27  and wires included "component parts for the Bosch emission control hardware and software" and "payments to Bosch GmbH and Bosch LLC."  ¶ 258.  Accordingly, like in *Volkswagen*, "[t]here

28  is no issue here involving the extraterritorial reach of RICO."  2017 WL 4890594, at *15 n.6.

1   *Mercedes-Benz USA, LLC*, No. 15-cv-04379-YGR, 2016 WL 7188030, at *3 (N.D. Cal. Dec. 12,

2   2016), for example, in which the "allegations [did] not describe conduct of any of the defendant

3   CEOs," Plaintiffs allege Marchionne played a leading role here.  Not only is he the CEO and

4   Chairman of FCA and the CEO of Fiat, but he also oversaw Fiat's acquisition of both VM Motori

5   and Chrysler Group LLC and spearheaded FCA's creation.  ¶ 18.  It was Marchionne who

6   unveiled plans to roll out "more diesel variants" under the Jeep brand and increase its global

7   competitiveness by expanding the Jeeps and Ram 1500.  ¶¶ 102-07.  It was Marchionne who

8   decided to expand diesels in the United States, despite increasingly stringent emission standards.

9   *See* ¶104.  And with respect to the Class Vehicles, Marchionne made numerous public statements

10  concerning the EcoDiesel® engines, emissions, and performance characteristics that are the

11  subject of Plaintiffs' claims.  *See id.*  Marchionne does not just make a cameo appearance; he is

12  the guiding spirit behind Defendants' alleged scheme.  Plaintiffs have sufficiently alleged

13  Marchionne's role, particularly in light of the relaxed pleading standards for corporate fraud.[19]

14  *See Moore*, 885 F.2d at 540.

15  ### H.    **Plaintiffs' Allegations Describe All Elements of a RICO Conspiracy.**

16          Defendants' attempt to dismiss Plaintiffs' RICO conspiracy claim under § 1962(d) relies

17  on the arguments they advance in the context of § 1962(c).  *See* FCA Mem. 27; Bosch Mem. 34-

18  35.  Plaintiffs' § 1962(c) claims are adequately pled.  The § 1962(d) conspiracy claims are too.

19  *See Volkswagen*, 2017 WL 4890594, at *17 ("The same allegations that demonstrate Bosch's

20  participation in the enterprise support the . . . conspiracy claim. It is plausible that Bosch was

21  aware of the scheme because it exercised near total control over modifications to the EDC 17.

22  And Bosch's intent to participate in the scheme is inferable from its alleged willingness to let

23  Volkswagen use the modified EDC17 in its vehicles for years.").

24          It bears mentioning that, even if the Court finds the Complaint's allegations lacking as to

25  the Bosch Defendants under § 1962(c), they may still be liable under § 1962(d), because the latter

26  section does not require an overt or specific act.  *See Salinas v. United States*, 522 U.S. 52, 63-64

---

27  [19] Nevertheless, if the Court finds the allegations lacking as to him or any defendant, Plaintiffs
    respectfully request leave to amend the Complaint to add more details.  *See* Fed. R. Civ. P. 15;
28  *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014).

1   (1997) ("If conspirators have a plan which calls for some conspirators to perpetrate the crime and

2   others to provide support, the supporters are as guilty as the perpetrators.").  As this Court held,

3   "proof of an agreement the objective of which is a substantive violation of RICO (such as

4   conducting the affairs of an enterprise through a pattern of racketeering) is sufficient to establish a

5   violation of section 1962(d)."  *United States v. Hernandez*, No. CR-14-0120 EMC, 2015 WL

6   4498084, at *5 (N.D. Cal. July 23, 2015) (Chen, J.).  Further, a defendant need not have agreed to

7   commit or facilitate every part of the offense, but only must be "aware of the essential nature and

8   scope of the enterprise and intended to participate in it."  *Howard v. Am. Online, Inc.*, 208 F.3d

9   741, 751 (9th Cir. 2000).  And, finally, the "agreement need not be express as long as its

10  existence can be inferred from words, actions, or interdependence of activities and persons

11  involved."  *Oki Semiconductor*, 298 F.3d at 775.

12      The Complaint alleges that the Bosch Defendants were aware of the alleged scheme and

13  agreed to its common goals.  Indeed, Plaintiffs allege the scheme could not have succeeded

14  without their knowing participation.  ¶¶ 251, 259.  For these reasons, Plaintiffs have adequately

15  stated a claim against the Bosch Defendants for conspirator liability under § 1962(d).

16      **I.      The Bosch Defendants Are Liable as Primary Violators and Co-Conspirators.**

17      Finally, the Bosch Defendants claim that Plaintiffs' RICO claims against them could only

18  be for aiding and abetting the RICO violations of others.  Bosch Mem. 28.  This ignores the vast

19  majority of allegations against them.  Plaintiffs' RICO claims against the Bosch Defendants are

20  primarily for direct liability under § 1962(c) and conspirator liability under § 1962(d).  That is

21  because, even though the Bosch Defendants' liability stems in part from facilitating the

22  concealment, this conduct renders them "indictable as principals" rather than invoking aider-and-

23  abettor liability.  ¶ 266.  In other words, whether aider-and-abettor liability attaches to the Bosch

24  Defendants is immaterial to Plaintiffs' principal theories of liability here.  It is only in the

25  alternative that Plaintiffs seek to hold the Bosch Defendants responsible under a theory of aider-

26  and-abettor liability.  ¶ 254.

27      Moreover, the Ninth Circuit recognizes aiding and abetting liability under RICO.  The

28  Bosch Defendants' lead case, *Cent. Bank, N.A. v. First Interstate Bank, N.A.*, 511 U.S. 164 (1994),

1  dealt with securities fraud, not RICO.  And while the Bosch Defendants cite cases applying

2  *Central Bank* in the RICO context, the Ninth Circuit has found "support among the Circuits for

3  the imposition of aider or abettor liability in the civil RICO context."  *Baumer v. Pachl*, 8 F.3d

4  1341, 1347 (9th Cir. 1993); *see also Petro-Tech, Inc. v. W. Co. of N. Am.*, 824 F.2d 1349, 1357-

5  58 (3d Cir. 1987) ("[I]f all of RICO's other requirements are met, an aider and abettor of two

6  predicate acts can be civilly liable under RICO."); *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d

7  1386, 1410 (11th Cir. 1994) (same).  Even after *Central Bank*, courts in this Circuit have

8  recognized aider-and-abettor liability under RICO.  *See, e.g.*, *Minn. Life Ins. Co. v. Philpot*, No.

9  11CV00812 BTM (POR), 2012 WL 4486311, at *10 (S.D. Cal. Sept. 27, 2012) (finding

10  "[p]laintiff has properly pled its civil RICO claim" against defendants by alleging that defendants

11  "conspired with and aided and abetted" the other defendants); *Regence Grp. v. TIG Specialty Ins.*

12  *Co.*, 903 F. Supp. 2d 1152, 1162 (D. Or. 2012) ("For aiding and abetting, the defendant's

13  knowledge may be shown by circumstantial evidence, or by reckless conduct.").  At this stage,

14  the Court should allow Plaintiffs to proceed with their RICO claims against the Bosch Defendants

15  for primary and co-conspirator liability, without dismissing their alternative allegations of aider-

16  and-abettor liability.[20]

17  **VII.   PLAINTIFFS MAGNUSON-MOSS ACT CLAIMS ARE WELL-PLEADED.**

18       The FCA Defendants seek dismissal of Plaintiffs' Magnuson-Moss Warranty Act claims

19  on the sole ground that those claims are reliant on the state-law warranty claims.  FCA Mem. 49.

20  Plaintiffs' state-law warranty claims are adequately pled, so their Magnuson-Moss claims are too.

21  **VIII.  PLAINTIFFS' STATE CLAIMS ARE NOT PREEMPTED.**

22       In moving to dismiss on preemption grounds, Defendants essentially seek immunity for

23  duping consumers into buying heavily polluting "EcoDiesel®" vehicles.  FCA also attempts to

24  shirk its contractual obligations to its customers.  Under Defendants' proposed rubric, a

25  manufacturer can claim that its vehicles are clean, low emitting, and EPA-compliant, hide the true

---

[20] The Bosch Defendants' argument that that they cannot be held vicariously liable for the
predicate acts of the others falls flat because all three theories of liability stem from their
affirmative acts in furtherance of the conspiracy.  Bosch Mem. 29 n.9.  In any event, Plaintiffs
have sufficiently alleged the Bosch Defendants' "knowing participation" in the conspiracy, which
they acknowledge subjects them to vicarious liability for the acts of its co-conspirators.  *Id.*

1   nature of the emission treatment system, and collect a premium for these so-called features from

2   consumers.  Then, when those claims are alleged to be false and misleading, the manufacturer and

3   supplier can hide behind CAA preemption by speculating that, to prove deception, the court or a

4   jury may need to make a finding that the vehicles violated EPA regulations.  As Judge Terrence

5   Berg noted recently at a hearing on FCA's and Cummins's Motions to Dismiss in another diesel

6   emissions case, "[t]hat seems like fraud to me, it seems like a pretty bad misrepresentation if

7   somebody is selling me something with a device in it that hides what it's really doing.  That

8   sounds crooked."  Hr'g Tr. on Motions to Dismiss, *Bledsoe v. FCA US LLC*, No. 4:16-cv-14024-

9   TGB-RSW, Dkt. 46 at 24 (E.D. Mich. Oct. 13, 2017)).  No statute at issue preempts claims to

10  redress the injuries that the consumers suffered from this fraud.

11          A.       **Plaintiffs' State Claims Are Not Expressly Preempted.**

12          Plaintiffs' state consumer fraud and contract claims are not preempted under any

13  reasonable interpretation of the CAA.  Statutory construction must begin with the language

14  employed by Congress and the assumption that the ordinary meaning of that language accurately

15  expresses the legislative purpose.  *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194

16  (1985); *see also Merrick v. Diageo Ams. Supply, Inc.*, 805 F.3d 685, 690 (6th Cir. 2015) ("A

17  federal statute does not preempt state law if Congress did not intend the statute to do so, and the

18  best evidence of Congress's intent is the statutory text adopted by both Houses of Congress and

19  submitted to the President.").  Any ambiguity in the text of a preemption clause is to be

20  interpreted against preemption.  *Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431, 449 (2005).

21  When Congress acts to preempt state law—especially in areas of longstanding state concern—it

22  treads on the states' customary prerogatives in ways that risk upsetting the traditional federal-state

23  balance of authority.  *See Geib v. Amoco Oil Co.*, 29 F.3d 1050, 1058 (6th Cir. 1994).

24  Consequently, there is a strong presumption against federal preemption of state law that operates

25  with special force in cases "in which Congress has legislated . . . in a field which the States have

26  traditionally occupied."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).  Regulation of false

27  advertising is a traditional state police power, thereby invoking the strong presumption against

28  preemption.  *E.g.*, *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2015

WL 7018369, at *28 (S.D.N.Y. Nov. 12, 2015).  Defendants are unable to overcome this presumption here.

CAA's preemption clause provides that "[n]o State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."  42 U.S.C. § 7543(a).  The FCA and Bosch Defendants' arguments that Plaintiffs' claims are preempted fail because fraud, consumer protection laws, and contract claims are not "standards relating to the control of emissions," and because the Plaintiffs' suit does not "attempt to enforce" emissions-related standards.

1. **The Substantive State Laws Under Which Plaintiffs' Claims Are Asserted Are Not Emissions "Standards."**

The state laws governing Plaintiffs' fraud and consumer protection act claims are not "standards relating to the control of emissions" within the meaning of the CAA.  *See* FCA Mem. 42; Bosch Mem. 35.  The FCA and Bosch Defendants' assertion that the preemption clause of the CAA should be construed broadly—which relies primarily on cases interpreting statutes other than the CAA—is misguided.  In *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253 (2004) ("*EMA*"), the Supreme Court interpreted the scope of the word "standard" in § 7543(a) to refer narrowly to a mandatory, pollution-related obligation that requires that the vehicle "must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-control device, or must have some other design feature related to the control of emissions."  *Id.* at 253.  Subsequent courts have read *EMA* to mean that only "standards" that include command and control sanctions to select a specific design, device, or emission limits are preempted by the CAA.  For example, a requirement that farmers register and pay a fee for diesel engines is not a "standard" as it did not set emission levels nor impose design requirements. *See Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 940 (9th Cir. 2011).  Similarly, a rule prioritizing taxi cabs running on natural gas was not preempted because it did not require an emissions standard, nor did it force the purchase of a particular engine or pollution device.  *See Ass'n of Taxicab Operators USA v. City of Dallas*, 720 F.3d 534, 539-40 (5th Cir. 2013).

The relevant inquiry into whether the underlying state laws supply "standards relating to the control of emissions" calls for an examination of the elements of the statutory or common-law duty at issue, not for speculation as to whether a jury verdict will prompt the manufacturer to change its practices. *See Bates*, 544 U.S. at 434. The elements of consumer protection laws and common-law fraudulent concealment laws at issue here do not attempt to adopt or enforce emissions standards; rather, these statutes and court-created requirements police false statements and concealments voluntarily perpetrated by manufacturers. *In re Caterpillar, Inc.*, MDL No. 2540, 2015 WL 4591236, at *13 n.17 (D.N.J. July 29, 2015) ("The duty not to deceive as embodied by the various state consumer protection laws upon which Plaintiffs rely has nothing to do with emissions control systems."); *see also Altria Grp., Inc. v. Good*, 555 U.S. 70, 81 (2008) (Consumer protection claims are not preempted by Federal Cigarette Labeling and Advertising Act because the duty "codified in that state statute, like [a] duty imposed by the state common-law rule . . . has nothing to do with smoking and health."); *Bates*, 544 U.S. at 444 (Rules that require manufacturers to honor their express warranties or other contractual commitments plainly were not requirements for "labeling or packaging" and therefore were not preempted.).

The weight of authority in this context holds that § 209(a) does not preempt the Plaintiffs' claims. The *Counts* court, for example, held that plaintiffs' claims were not preempted because "Plaintiffs need not make that showing [of non-compliance] to prevail." *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 592 (E.D. Mich. 2017). And a Virginia state court in *In re Volkswagen "Clean Diesel" Litigation* further explained that consumer fraud claims are not preempted where they "ultimately rest on and seek remediation of injuries arising from misrepresentations and concealment of material facts made to (or hidden from) the Plaintiffs about the compliance, efficiency, and technology of their vehicles." No. CL-2016-9916, 2016 WL 5347198, at *5 (Va. Cir. Ct. Aug. 30, 2016). The Virginia state court went on to distinguish consumer fraud claims from the claims in *Jackson v. GMC*, 770 F. Supp. 2d 570 (S.D.N.Y. 2011), *aff'd sub nom*, *Butnik v. GMC*, 472 F. App'x 80 (2d Cir. 2012), and other cases in which the plaintiffs sought to recover either (1) for injuries from the alleged noncompliance itself; or (2) for fraud based on statements or representations made to regulators. *See id.*

Contrary to the Bosch Defendants' "sky-is-falling" argument, courts have explicitly held that permitting precisely these types of claims will not create the "chaotic regulatory scheme" (Bosch Mem. 37) for mobile emissions that the CAA intends to preempt. *Counts*, 237 F. Supp. 3d at 592; *see also* S. Rep. No. 91-1196, at 32 (1970). Indeed, lay jury verdicts are specifically contemplated by the CAA. *See Bates*, 544 U.S. at 452 ("While it is true that properly instructed juries might on occasion reach contrary conclusions on a similar issue . . . there is no reason to think such occurrences would be frequent or that they would result in difficulties beyond those regularly experienced by manufacturers of other products that every day bear the risk of conflicting jury verdicts.").

This conclusion is directly supported by the plain language and legislative history of the CAA, as well as Ninth Circuit precedent. For instance, the stated purpose of the CAA is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Verdicts in lawsuits brought by individuals and classes of individuals further this purpose, which is why Congress enacted the Citizen Suit Savings Clause preserving rights of individuals to sue. 42 U.S.C. § 7604(e) ("Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency).") The 1970 Report of the Senate Committee on Public Works explained that the citizen suit provision of the CAA "would specifically preserve any rights or remedies under any other law. Thus, if damages could be shown, other remedies would remain available." S. Rep. No. 91-1196, at 38 (1970) (cited with approval in *Merrick*, 805 F.3d at 691).

### 2. Defendants' § 209(a) Cases Are Inapposite.

Defendants' reliance on *Matter of O.A.G.*, 269 A.D.2d 1 (N.Y. App. Div. 2000), *Jackson*, 770 F. Supp. 2d 570 and *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 3816738, at *14 (N.D. Cal. Aug. 31, 2017) (regarding claims brought by the State of Wyoming), is misplaced, as none of these cases analyzed fraud or contract claims based on statements made to consumers. In *O.A.G.*, the New

1    York Attorney General was investigating defendants' efforts to circumvent federal emissions

2    standards.  The AG was, therefore, "attempt[ing] to enforce [a] standard relating to the control of

3    emissions from new motor vehicles" as prohibited by § 7543(a).  *Matter of O.A.G.*, 269 A.D.2d at

4    7.  And in *Jackson*, city transit workers—not consumers—brought an action for negligence and

5    strict liability alleging harm from the ingestion of diesel exhaust fumes.  *See* 770 F. Supp. 2d at

6    572.  Likewise in a recent *Volkswagen* decision, Judge Breyer rejected Wyoming's investigation,

7    similar to the investigation attempted in *O.A.G.*, because it was "attempting to hold Volkswagen

8    liable for using a defeat device in its vehicles" as opposed to holding Volkswagen liable for

9    damages caused by the false statements it made to consumers.  *See Volkswagen*, 2017 WL

10   3816738, at *13.  In so holding, Judge Breyer specifically distinguished Wyoming's claims from

11   those made in *Counts*, 237 F. Supp. 3d 572, "where the court held that Section 209(a) did not

12   preempt certain contract, fraudulent concealment, and deceptive advertising claims brought

13   against GM by consumers who alleged that they purchased GM vehicles that contained a defeat

14   device."  *Id.*

15         If this Court were to accept Defendants' arguments, consumers would be unable to hold

16   automakers liable for fraud whenever that fraud related in any way to the vehicles' emissions

17   systems.  That is not the law.  *See Counts v. Gen. Motors, LLC*, No. 16-CV-12541, 2017 WL

18   1406938, at *4 (E.D. Mich. Apr. 20, 2017).  Like Volkswagen and GM, the FCA Defendants

19   promised "clean" diesel vehicles with "advanced emissions-control technology" that ensured

20   "virtually no particulates" and "minimal oxides of nitrogen" would exit the tailpipe.  ¶¶ 148-49.

21   Then, colluding with the Bosch Defendants to conceal the true nature of the Class Vehicles, the

22   FCA Defendants failed to deliver on those promises.  Plaintiffs seek compensation under long-

23   standing statutory and common law protections for duping them into buying or leasing these

24   "EcoDiesel®" vehicles based on false representations and omissions about their ultra-low

25   emissions performance.  Plaintiffs seek to recover money that they would not have spent but for

26   Defendants' alleged deception.  Defendants concealed the emissions violations in their vehicles to

27   offer them for sale in the United States.  They concealed and misrepresented the same defects in

28

1    order to actually sell them to consumers.  The latter claims are not preempted by the statutes that

2    forbade the former conduct.

3        **B.    Plaintiffs' State Claims Are Not Impliedly Preempted.**

4            Implied preemption can occur in two general ways.  First, where Congress evidences an

5    intent to occupy a given field, any state law within that field is preempted.  *See Pac. Gas & Elec.*

6    *Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983).  Second,

7    state law may be preempted where it actually conflicts with federal law, *see Fla. Lime & Avocado*

8    *Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where it presents an obstacle to

9    Congressional objectives.  *See Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  Neither form of

10   implied preemption applies here.

11           The CAA savings clause demonstrates that Congress did not intend to preempt the field of

12   emissions regulation:  "Nothing in this part shall preclude or deny to any State or political

13   subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or

14   movement of registered or licensed motor vehicles."  42 U.S.C. § 7543(d).  This savings clause

15   negates field preemption, and no court has found field preemption under the CAA.  *See*

16   *Caterpillar*, 2015 WL 4591236, at *14 (explaining that no court has held that the CAA preempts

17   the field and that "the savings clause suggests that Congress did not intend to occupy the entire

18   field of motor vehicle regulation"); *Ass'n of Taxicab Operators, USA v. City of Dallas*, 866 F.

19   Supp. 2d 595, 603 (N.D. Tex. 2012) (rejecting field preemption and noting "the strong evidence

20   of Congressional intent to preserve broad State and local authority over use and operation of

21   vehicles"), *aff'd*, 720 F.3d 534; *Jensen Family Farms*, 644 F.3d at 941 (rejecting broad "relating

22   to" preemption under the CAA given the *EMA* court's narrowing of the word "standard").

23           Here again, courts analyzing implied preemption under the CAA in exactly these

24   circumstances hold that there is "no argument, nor . . . any basis to conclude, that a significant

25   federal regulatory goal of the CAA is consumer protection from false advertising claims

26   regarding emissions compliance, vehicle efficiency, or implementation of new emissions

27   technology."  *Volkswagen*, 2016 WL 5347198, at *6.  Similarly, the *Caterpillar* court also

28   rejected the defendant's contention that federal regulation in this area is so extensive that the

1    plaintiffs' consumer protection and fraud claims are impliedly preempted.  2015 WL 4591236, at

2    *14.  Thus, Plaintiffs' fraud and consumer protection claims are not impliedly preempted because

3    they do not interfere with any significant federal regulatory goal within the CAA.

4          Conflict preemption also does not apply.  Plaintiffs' deception claims do not make it

5    impossible for the FCA or Bosch Defendants to comply with both state and federal law when

6    prevailing on those claims will not require the Court to find a violation of the CAA.  *See id.* at

7    *15.  Plaintiffs' claims are not an obstacle to Congressional objectives and will not interfere with

8    the EPA's certification or any recall process under the CAA.  *See id.* at *15 ("[S]peculation

9    regarding duplicative costs from this action and a potential EPA recall of the engines at issue is

10   not a basis for preemption.").

11         **C.     Plaintiffs' Warranty Claims Are Not Preempted.**

12         Plaintiffs' warranty claims also do not attempt to enforce an emissions standard. Instead,

13   they seek to enforce a promise. Express warranties are contractual in nature.  *Clemons v. Nissan N.*

14   *Am., Inc.*, 997 N.E.2d 307, 319 (Ill. App. Ct. 2013).  And a manufacturer's warranty can form "a

15   separate, enforceable contract between the manufacturer and buyer," whether or not it meets UCC

16   requirements.  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 979-80 (N.D. Cal.

17   2014).  Indeed, when analyzing preemption under other statutes, courts have consistently

18   distinguished warranty claims because they are not imposed by a state or any political subdivision

19   thereof, but rather arise from the manufacturer.  *See Cipollone v. Liggett Grp.*, 505 U.S. 504, 526

20   n.23 (1992) (Stevens, J., plurality) (noting that warranty claims traditionally sound in contract,

21   not tort); *see also Ministry of Health, Province of Ontario, Can. v. Shiley Inc.*, 858 F. Supp. 1426,

22   1440 (C.D. Cal. 1994).  Justice Stevens later reiterated this view in *Bates*, noting that "a cause of

23   action on an express warranty asks only that a manufacturer make good on the contractual

24   commitment."  544 U.S. at 444 (finding that express warranty claim and other common law

25   claims "plainly do not qualify as requirements for labeling or packaging" under FIFRA's

26   preemption clause).

27         Similarly, Plaintiffs' claims seeking enforcement of express and implied warranties are

28   hardly comparable to efforts by state and local governments to adopt or enforce emissions

1   standards or to require additional certifications or inspections prior to sale.  *See Caterpillar*, 2015

2   WL 4591236, at *11.  Here, the express and implied warranties were an integral part of the

3   bargain.  It is thus the parties' own agreement, rather than state law, that imposes any

4   requirements on the FCA Defendants regarding these terms.  The FCA Defendants cannot be

5   excused from an alleged failure to comply with its contractual obligations simply because those

6   obligations relate to emissions.

7   **IX.   PLAINTIFFS PROPERLY PLEAD THEIR STATE LAW CLAIMS.**

8       **A.   Plaintiffs Can Pursue Their State Consumer Protection Claims in this Court
             on Behalf of the Proposed Classes.**

9

10          **1.   Arguments Regarding Class Action Prohibitions are Premature.**

11          Defendants ask the Court to dismiss (1) consumer protection claims brought under

12   Alabama, Georgia, Louisiana, Mississippi, Montana, and South Carolina laws because those

     states "prohibit private plaintiffs from bringing class actions under their consumer protection

13   statutes," and (2) consumer protection claims under Colorado and Tennessee laws because those

14   states prohibit class actions for damages.  Both arguments are premature and lack merit.

15          First, it is premature to evaluate class action prohibitions in a motion to dismiss for failure

16   to state a claim. This Court can better address whether Plaintiffs' claims merit class treatment

17   under Rule 23 when Plaintiffs move for class certification.  Second, even if state laws control

18   class actions in federal court, Defendants do not, and cannot, argue that the purported state-law

19   prohibitions on class actions compels dismissal of the these Plaintiffs' *individual* claims.

20          **2.   Procedural State Prohibitions on Class Actions Do Not Trump Rule 23.**

21          Rule 23 governs class actions in federal court so long as applying Rule 23 does not

22   "abridge, enlarge or modify any substantive right." *Shady Grove Orthopedic Assocs., P.A. v.*

23   *Allstate Ins. Co*., 559 U.S. 393, 407 (2010).  In *Shady Grove*, the plaintiff filed a federal class

24   action seeking statutory penalties even though the New York law prohibited class actions.  Noting

25   that state prohibitions against class actions are procedural, the Court held that the "right . . . not to

26   be subjected to aggregated class-action liability in a single suit" is not substantive. *Id.* at 408.

27   Therefore, Rule 23 applied and the class action could proceed in spite of the state statute. *Id.* at

28

1    406.  Following *Shady Grove*, numerous courts have allowed statutory consumer protection

2    claims to proceed as class actions despite state prohibitions.[21]

3         Defendants misconstrue this Court's holding in *In re MyFord Touch Litig.*, No. 13-cv-

4    03072-EMC, 2016 WL 7734558, at *27 (N.D. Cal. Sept. 14, 2016) (Chen, J.) as applying to

5    "Alabama, Georgia, Louisiana, Mississippi, Montana, and South Carolina," (FCA Mem. 56 n.24)

6    but the only state class action bars before the Court in *MyFord* were Colorado and Virginia, and

7    the issue before the Court was class certification, not Rule 12(b)(6) dismissal.  The Court denied

8    certification of the Colorado consumer protection claim but granted certification of the Virginia

9    claim.  *Id.* at *27.  The FCA Defendants also misguidedly rely on another class certification order

10   in *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at *9 (N.D. Cal. Aug.

11   15, 2016).  That order contains no analysis of how a state's class action prohibition could prevent

12   Rule 23 certification, and fails to analyze (or mention) *Shady Grove*.  Because class certification

13   issues are not ripe for determination at this stage, the Court need not entertain any of Defendants'

14   arguments regarding the state-specific class action bars.

15        Defendants' argument regarding Plaintiffs' failure to obtain the Iowa Attorney General's

16   permission also lacks merit.  The ICFA states that "[f]ailure to provide the required mailings to

17   the attorney general *shall not be grounds for dismissal of an action* under this chapter," and

18   explains that the "attorney general shall approve the filing of a class action lawsuit alleging a

19   violation of [the ICFA] unless the attorney general determines that the lawsuit is frivolous."  Iowa

20   Code §§ 714H.6(5), 714H.7.  Defendants' misguided procedural argument holds no weight here.

21

22

23   ───────────────

[21] *See, e.g.*, *In re Hydroxycut Mktg. & Sales Practices Litig.*, 299 F.R.D. 648, 652-54 (S.D. Cal.
24   2014) (class claims under Georgia, Louisiana, Montana, South Carolina, and Tennessee statutes
     proceed despite states' prohibitions); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143
25   RS, 2012 WL 1366718, at *8 (N.D. Cal., Apr. 19, 2012) ("claims under South Carolina law are
     not subject to dismissal notwithstanding a limitation on class actions in the state statute."); *In re*
26   *Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765 (JLL), 2017 WL 1902160, at*24
     (D.N.J. May 8, 2017) (Colorado, Georgia, and South Carolina claims allowed to proceed; "any
27   attacks as to whether class certification is appropriate can be raised at the class certification
     [stage].")); *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331 (11th Cir. 2015) (allowing
28   Alabama class claim).

3. **The Delaware, Georgia, and Minnesota Plaintiffs Can Seek Injunctive Relief.**

Defendants contend that Plaintiffs' Delaware, Georgia, and Minnesota Deceptive Trade Practice Act ("DTPA") claims must be dismissed because: (1) these statutes do not allow private actions for damages; and (2) Plaintiffs lack standing to pursue injunctive relief because their claims "are all based on past conduct." FCA Mem. 57. These arguments ignore Plaintiffs' allegations.

Unlike the plaintiffs in *Tri-State Consumer Ins. Co. v. LexisNexis Risk Sols., Inc.*, 823 F. Supp. 2d 1306 (N.D. Ga. 2011), and *Wehner v. Linvatech Corp.*, No. 06-CV-1709 JMR/FLN, 2008 WL 495525 (D. Minn. Feb. 20, 2008), the Delaware, Minnesota and Georgia Plaintiffs here allege past, present, *and* ongoing future harm, and seek injunctive relief under their respective DTPA statutes. *See, e.g.*, ¶¶ 580, 669, 1081. Plaintiffs allege that they paid a premium for EcoDiesel® Class Vehicles and suffered significant harm as a result. ¶ 191. Plaintiffs also allege that either their Class Vehicles will have to be removed from the road or they will not receive the performance characteristics that were promised. ¶¶ 192-93. Plaintiffs seek "[i]njunctive and equitable relief in the form of a comprehensive program to repair, modify, and/or buy back all Class Vehicles, and to fully reimburse and make whole all Class members for all costs and economic losses, and degradation of mileage, performance, durability, and reliability that the Class Vehicles could incur by being brought into compliance with federal and state law." Compl. at 374 (prayer for relief). Defendants' deceptive conduct warrants injunctive relief under the Delaware, Minnesota, and Georgia DTPAs, because it has caused and continues to cause, Plaintiffs to suffer harm.[22]

---

[22] *See Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066, 1075 (Del. Super. Ct. 1989) (Delaware's DTPA may not allow actual damages, but damages based on other Delaware law for conduct that violates the Delaware DTPA shall be trebled), *aff'd*, 596 A.2d 1358 (Del. 1991); *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513, 536 (Del. Ch. 2005) (injunctive relief claim must be supported by allegations that "create a reasonable apprehension of a future wrong"); *Ezfauxdecor, LLC v. Appliance Art Inc.*, No. 15-9140, 2017 WL 661576, at *4 (D. Kan. Feb. 17, 2017) ("Injunctive relief is limited to cases where a plaintiff can demonstrate that it is likely to be injured by a deceptive trade practice as opposed to a past injury."); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1140 (D. Minn. 2016) ("plaintiff must allege a threat of future harm."); *see also Force v. ITT Hartford Life & Annuity Ins. Co.*, 4 F. Supp. 2d 843, 857 (D. Minn. 1998) ("[T]hat [the Minnesota DTPA] does not

*Footnote continued on next page*

1

### B.   Plaintiffs Properly Plead Their Fraudulent Concealment Claims.

2       Plaintiffs' fraudulent concealment claims are well-pled and recognized in all 50 states.[23]

3   As set forth below, Plaintiffs have alleged their fraudulent concealment claims with particularity,

4   showing that Defendants had a duty to disclose and an intent to commit fraud, that Plaintiffs

5   reasonably relied on Defendants' omissions and misrepresentations, and that they suffered

6   concrete injuries as a result.

7       ### 1.   Fraudulent Concealment Is Alleged with Sufficient Particularity.

8       Defendants concede that California law applies to the fraudulent concealment claims.

9   Bosch Mem. 37; FCA Mem. 52.  Plaintiffs agree.  Moreover, any choice-of-law analysis is

10  premature.  *See*, *e.g.*, *Bruton v. Berger Prod. Co.*, No. 12-CV-02412, 2014 WL 172111, at *13

11  (N.D. Cal. Jan. 15, 2014); *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013

12  WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013).  Nonetheless, Plaintiffs plead fraudulent

13  concealment under the laws of all 50 states with the particularity required by Rule 9(b).

14      Fraudulent concealment claims "can succeed without the same level of specificity

15  required by a normal fraud claim."  *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267

16  (C.D. Cal. 2007); *Cooper*, 137 F.3d at 627.  Plaintiffs alleging fraud by omission need not specify

17  the time, place and specific content of an omission.  Where, as here, plaintiffs allege a "failure to

18  act instead of an affirmative act, [they] cannot point out the specific moment when the

19  Defendants failed to act."  *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal.

20  2014).[24]

21  *Footnote continued from previous page*
    provide for monetary damages is irrelevant to the issue of whether the Plaintiffs have stated a
22  claim upon which relief could be granted.").
    [23] *Omega Eng'g v. Eastman Kodak Co.*, 908 F. Supp. 1084, 1094-95 (D. Conn. 1995)
23  ("fraudulent nondisclosure involves not a statement, but silence"); *Taylor Inv. Corp. v. Weil*, 169
    F. Supp. 2d 1046, 1064 (D. Minn. 2001) ("a misrepresentation that can serve as the basis for a
24  fraud claim may be made by concealing or failing to disclose certain facts"); *Smith v. Pfizer Inc.*,
    688 F. Supp. 2d 735, 752 (M.D. Tenn. 2010) (Tennessee law); *In re Arnette*, 454 B.R. 663, 689
25  (Bankr. N.D. Tex. 2011) ("In Texas, silence may be equivalent to a false representation when the
    circumstances impose a duty to speak . . . ."); *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.
26  2010) ("Fraud by omission is a subcategory of fraud because the omission or non-disclosure may
    be as misleading as a positive misrepresentation of fact.").
27  [24] The "who" is Defendants, the "what" is knowledge of the defeat devices and representations
    and omissions related to them, the "when" is prior to the sale or lease of the Class Vehicles, and
28  the "where" is the channels of information through which Defendants promoted the Class

*Footnote continued on next page*

Here, Plaintiffs plead fraudulent concealment with sufficient specificity.  Plaintiffs detail affirmative misstatements regarding the benefits of the diesel engines in the Class Vehicles and allege that Defendants' concealed the emission defeat devices.  ¶¶ 1-4, 7- 9, 113-15, 119-21, 122-44, 157, 164-90, 231, 240, 282.  The allegations in the Complaint give Defendants "notice of the particular misconduct . . . so that they can defend against the charge" and state "what is false or misleading about the statements and why it is false."  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003); *In re Glenfed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Defendants argue that the performance-based claims are either true or are inactionable puffery, and that the environmental claims are puffery.  FCA Mem. 52; Bosch Mem. 38.  Both arguments fail.  Plaintiffs allege that Defendants made representations' regarding the cleanliness and/or emissions, fuel economy, towing power, performance, and longevity of EcoDiesel® engines—qualities that could not be achieved without defeat devices.  *See* ¶¶ 6, 9, 104-05, 115-16, 122-24, 130, 138-44, 145-150 (cleanliness); ¶¶ 6, 143, 149, 151-53 (fuel economy); ¶¶ 6, 154-55 (towing performance); ¶ 91 (longevity); ¶¶ 8, 34-96, 110-11, 115-16, 155, 157, 164-90, 191-94.  The Ninth Circuit recognizes that "misdescriptions of specific or absolute characteristics of a product are actionable," and not mere puffery.  *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990).  That is precisely what Plaintiffs identify here (*see, e.g.*, ¶¶ 6, 9, 104, 115, 122, 141-43, 147-49, 152-54), and Defendants cannot meaningfully explain how these specific and material statements constitute: "(1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion."  *Dyson, Inc. v. Oreck Corp.*, No. 07-9633, 2009 WL 537074, at *6 (E.D. La. Mar. 4, 2009) (quoting *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495-96 (5th Cir. 2000)).  Defendants' statements were specific, false, and actionable.

---

*Footnote continued from previous page*

Vehicles. *See also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1367 (N.D. Ga. 2013) (plaintiffs adequately allege time and place of each omission by alleging the dates they purchased their vehicles and that the defect should have been disclosed at the time); *Farley v. GameStop Corp.*, No. 12-4734 (RBK/JS), 2013 WL 4042434, at *4 (D.N.J. Aug. 7, 2013) ("knowing omission" where defendants "were aware of material information" not revealed to the plaintiffs).

2. **Defendants Had a Duty to Disclose Material Facts.**

Defendants concede that the majority of states' laws agree with California law regarding the duty to disclose. *See* Bosch Mem. 37; FCA Mem. 53. Under California law, a duty to disclose arises under several circumstances including, as relevant here: (1) the defendant has exclusive knowledge of material facts not known to the plaintiff; (2) the defendant actively conceals a material fact from the plaintiff, or (3) the defendant makes partial representations but also suppresses some material facts. *James Wang v. OCZ Tech. Grp., Inc.*, No. C 11-1415 PSG, 2012 WL 12924975, at *6 (N.D. Cal. June 6, 2012). All three are present here.

First, Defendants had exclusive knowledge of material facts that were not known to the Plaintiffs. ¶¶ 1-4, 7- 9, 113-15, 119-21, 122-44, 157, 164-90, 231, 240, 279, 281. Plaintiffs allege that Defendants were intimately involved in the design, testing, calibration, and implementation of the AECDs and the Class Vehicles, and failed to disclose the AECDs to Plaintiffs and Class members. *Id.* These allegations demonstrate that Defendants knew about the AECDs—knowledge which was in their exclusive possession. Unlike the plaintiffs in *Kampuries v. Am. Honda Motor Co*, 204 F. Supp. 3d 484, 492 (E.D.N.Y. 2016), and *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (s*ee* FCA Mem. 53-54), Plaintiffs have advanced far more than superficial, conclusory allegations.

Second, Defendants intentionally and/or actively concealed the AECDs in the Class Vehicles, as is detailed exhaustively in the Complaint and herein.

Third, the Fiat Chrysler and the VM Motori Defendants owed a duty to disclose the true nature of the emission defeat devices because they made partial representations about the Class Vehicles' emissions, cleaning capabilities, and performance. ¶¶ 1-4, 7- 9, 113-15, 119-21, 122-44, 157, 164-90, 231, 240, 282. But the performance representations could not possibly be true without the undisclosed AECDs activated. ¶¶ 1-2, 4, 8, 34-96, 110-111, 115, 121, 123-24, 127-30, 155, 164-90, 191-94. Each set of factual allegations giving rise to a duty, whether by active concealment, exclusive knowledge, or partial representation, also satisfies what Defendants argue the special pleading requirements of Iowa and Ohio (FCA Mem. 55). *See Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1073 (N.D. Iowa 2006) ("plaintiff . . . has

- 58 -

1   identified with particularity those events which triggered [the] duty to speak"); *First Prop. Grp.,*

2   *Ltd. v. Behr Dayton Thermal Prods. LLC*, No. 3:08-cv-329, 2011 WL 4073851, at *5 (S.D. Ohio

3   Sept. 13, 2011) (defendants knew of contamination and statute required reporting, creating duty

4   to speak).

5          Finally, though a duty to disclose may also arise in the context of a fiduciary relationship,

6   that relationship is not required in, for example, Massachusetts, Maryland, Maine,[25] New Jersey,

7   Nevada, Oregon, Pennsylvania, South Carolina, and Tennessee.  Each of these states—like

8   California—requires disclosure whenever there is active concealment, partial disclosure, or

9   exclusive knowledge.[26]  Similarly, contrary to Defendants' assertions (FCA Mem. 54), arm's

10  length transactions do not defeat Plaintiffs' claims in Alabama, Delaware, Illinois, Indiana,

11  Vermont, or Virginia.[27]

12  [25] Defendants cited *Rared Manchester NH, LLC v. Rite Aid of N.H., Inc.*, 693 F.3d 48, 55 (1st Cir. 2012), for New Hampshire law, but the case concerns Maine law.

13  [26] *See V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 414 (1st Cir. 1985) ("much case law in Massachusetts" imposes a duty to disclose all material facts after partial disclosure); *Stolzoff v.*

14  *Waste Sys. Int'l, Inc.*, 792 N.E. 2d 1031, 1044 (Mass. App. Ct. 2003) ("[w]e have recognized a duty to disclose where . . . (ii) there are matters known to the speaker that he knows to be

15  necessary to prevent his partial or ambiguous statement of facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction); *Hogan v. Md. State*

16  *Dental Ass'n*, 843 A.2d 902, 908 (Md. Ct. Spec. App. 2004) (Absent a duty to disclose, "[o]ne who conceals facts that materially qualify affirmative representations may be liable for fraud.");

17  *Guiggey v. Bombardier*, 615 A.2d 1169 (Me. 1992) (no actionable fraud claim can arise absent an active concealment or a duty arising from a confidential relationship); *United Jersey Bank v.*

18  *Kensey*, 704 A.2d 38 (N.J. Super. Ct. App. Div. 1997) (analyzing the *Restatement (Second) of Torts* § 551; *Epperson v. Roloff*, 719 P.2d 799 (Nev. 1986) (recognizing a duty to disclose when a

19  party makes a misleading representation because it partially conceals information or when the defendant has exclusive knowledge of material facts); *Unigestion Holding, S.A. v. UPM Tech.,*

20  *Inc.*, 160 F. Supp. 3d 1214, 1223-24 (D. Or. 2016) (duty to disclose when one "mak[es] a representation in the nature of a half-truth" or "a third category of fraud recognized under Oregon

21  law, actual concealment"); *City of Rome v. Glanton*, 958 F. Supp. 1026, 1038 (E.D. Pa. 1997) (duty to speak arises "when disclosure is necessary to prevent an ambiguous or partial statement

22  from being misleading; where subsequently acquired knowledge makes a previous representation false; or where the undisclosed fact is basic to the transaction."), *aff'd*, 133 F.3d 909 (3d Cir.

23  1997); *Smith*, 688 F. Supp. 2d at 752 ("each party to a contract is bound to disclose to the other all he may know respecting the subject matter materially affecting a correct view of it").

24  [27] *Hines v. Riverside Chevrolet-Olds*, 655 So. 2d 909, 918 (Ala. 1994) (overruled on other grounds by *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998)) (duty to disclose

25  arises when "the defendant had superior knowledge of the fact not disclosed," where "evidence of particular circumstances creat[es] an inference that the defendant should have disclosed certain

26  material facts" and where the plaintiffs "were members of a group or class of persons who General Motors expected or had special reason to expect would be influenced by its decision not

27  to disclose information"); *Air Prods. & Chems., Inc. v. Wiesemann*, 237 F. Supp. 3d 192, 215-16 (D. Del. 2017) ("fraud by active concealment" claim lies because "[o]nce a party in an arm's

28  length negotiation does speak, it cannot do so partially or obliquely such that the statements

*Footnote continued on next page*

### 3.     Defendants' Intent Is Adequately Alleged.

Plaintiffs adequately allege that the FCA and Bosch Defendants intended to defraud the Plaintiffs and induce reliance. *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972-74 (1997).  Here, unlike the defendants in *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-cv-02349-TEH, 2015 WL 1548872, at *2 (N.D. Cal. Apr. 7, 2015), the Defendants here made specific statements, directed to the Plaintiffs and Class members, about the EcoDiesel® engines in the Class Vehicles.  ¶¶ 6, 9, 104-05, 115-16, 122-24, 130, 138-44, 145-50, 151-55.  Moreover, like the plaintiffs in *Engalla*, Plaintiffs here allege that Defendants made public announcements and claims, in advertising materials and on their website, about the performance of the Class Vehicles.  Defendants' claims were made to induce Plaintiffs and Class members to purchase Class Vehicles.  *Id.*  Furthermore, unlike the statements in *Digby* that were "equivocal and conditional in nature," Defendants' representations were unequivocal and unconditional public statements about the benefits of their emission systems and their ability to pass emission regulations in all 50 states, eliminate particulates and reduce $NO_X$, and deliver specific fuel economy and towing capacity ratings.  *Id.*  Moreover, Plaintiffs allege that the FCA Defendants made misrepresentations about the Class Vehicles and concealed the AECDs to sell the Class Vehicles to Plaintiffs and Class members.  *See, e.g.*, ¶¶ 1-4, 7- 9, 123-44, 157, 164-90.

---

*Footnote continued from previous page*
become misleading"); *Fichtel v. Bd. of Dirs.*, 907 N.E.2d 903, 908-10 (Ill. App. Ct. 2009) ("silence accompanied by deceptive conduct or suppression of material facts results in *active concealment* and it then becomes the duty of a person to speak;" a duty to speak arises where a defendant disclosed a half-truth); *Northrop Corp. v. GMC*, 807 N.E.2d 70 (Ind. Ct. App. 2004) (a duty to disclose may arise when "(1) the material fact is known or accessible only to the defendant" and (2) the defendant knows that the plaintiff is unaware of the fact or cannot reasonably discovery the undisclosed fact."); *Fimbel v. DeClark*, 695 N.E.2d 125, 128 (Ind. Ct. App. 1998) ("One cannot be allowed, under the law, to *partially* disclose the facts as he knows them to be, yet create a false impression in the minder of the hearer by failing to fully reveal the true state of affairs."); *White v. Pepin*, 561 A.2d 94, 96 (Vt. 1989) (recognizing a duty to disclose when one party has "superior knowledge or means of knowledge" and "where nature of misrepresentation or fraudulent concealment itself led party to forbear from making a full inquiry"); *White v. Potocksa*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008) ("A duty may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure)").

1

### 4.    Reliance Is Adequately Alleged to the Extent Required.

2

"Actual reliance is presumed (or at least inferred) when the omission is material." *Ehrlich*

3

*v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 919-20 (C.D. Cal. 2010).  Plaintiffs adequately

4

plead reliance on fraudulent omissions when they describe how the plaintiffs would have been

5

exposed to the omitted material facts.  *Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB,

6

2013 WL 2474934, at *4-5 (E.D. Cal. June 7, 2013); *see also Daniel v. Ford Motor Co*, 806 F.3d

7

1217, 1226-27 (9th Cir. 2015).  And, as the Supreme Court has long recognized, "materiality is

8

judged according to an objective standard."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,

9

568 U.S. 455, 459 (2013).

10

Plaintiffs allege that Defendants made material representations and advertisements

11

including claims about emissions compliance, particulate elimination and $NO_X$ reduction, fuel

12

economy, towing power, performance, and longevity.  ¶¶ 1, 6, 32, 91, 104-06, 115-17, 122-24,

13

130, 138-44, 145-50, 151-55.  And, each Plaintiff specifically alleges the types of material

14

representations and advertising statements he or she relied on, including reduced emissions, fuel

15

economy, low emissions, towing power, and/or performance.  ¶¶ 34-96.  These allegations, and

16

Defendants' uniform advertising and promotional materials, support the inference that Plaintiffs

17

relied on Defendants' material representations and omissions.

18

### 5.    Plaintiffs Plead Their Concrete Injuries with Particularity.

19

Defendants attack Plaintiffs' injury allegations under New York and Wisconsin law, and

20

concede the remainder of states.  *See* FCA Mem. 55.  But Defendants misconstrue *Passiglia v.*

21

*Northwell Health, Inc.*, No. 16-CV-3611 (SJF) (ARL), 2017 WL 2062957, at *8 (E.D.N.Y. May

22

12, 2017).  In *Passiglia*, the plaintiff did not assert compensable out-of-pocket damages.  Unlike

23

*Passiglia*, Plaintiffs here each allege concrete out-of-pocket costs—not damages for what they

24

"might have gained"—including the premium paid for the Class Vehicles and the lost value

25

attributable to Defendants' fraudulent scheme.  ¶¶ 191-95, 283.  Plaintiffs' damages are actual,

26

out-of-pocket costs because Defendants have not, and cannot, fix the Class Vehicles to perform as

27

promised.  *Id.*

28

1    Defendants also misinterpret *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 240

2    (Wis. 2004).  The *Tietsworth* court found that the plaintiffs there could not allege with reasonable

3    certainty that their engines would eventually fail.  677 N.W.2d at 238-40.  Plaintiffs here do not

4    allege a mere defect that may manifest in some vehicles at some point in the future; Plaintiffs

5    allege an actual injury because they bought vehicles that were illegal for sale, involved an actual,

6    uniform defect (the defeat device) when sold, and were uniformly and intrinsically not as

7    advertised.  ¶¶ 191-95, 283.

8              **6.      Plaintiffs Adequately Plead Fraudulent Concealment Against**
         **Marchionne.**
9

10    Plaintiffs sufficiently allege fraudulent concealment against Marchionne because he had a

11   duty to disclose, and Plaintiffs relied to their detriment.  Marchionne had a duty to disclose

12   because his position as the CEO and/or Chairman of the Fiat Chrysler Defendants gave him

13   exclusive and/or superior knowledge regarding the FCA Defendants' EcoDiesel® engines and the

14   Class Vehicles.  ¶¶ 18, 102-04, 230, 235-36, 242, 248, 260-61.  Marchionne's duty to disclose

15   also arises from his partial representations about the Class Vehicles.  *Id.*  These allegations not

16   only demonstrate that Marchionne had exclusive or superior knowledge concerning the Class

17   Vehicles that gave rise to a duty to disclose, but they also demonstrate that he made partial

18   representations about the Class Vehicles.  Marchionne, as the alleged ringleader of Defendants'

19   scheme, intended to defraud and/or induce reliance, and he succeeded.

20         **C.      Plaintiffs Properly Plead Their State Law Consumer Protection Claims.**[28]

21              **1.      The Complaint Satisfies All Applicable Pleading Standards.**

22    Defendants argue that every state consumer protection act ("CPA") requires a plaintiff to

23   meet Rule 9(b) pleading standards.  But many courts adhere to the Supreme Court's admonitions

24   that "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading

25   system," *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002), and Rule 9(b) does not require

26
    _____
    [28] Plaintiffs have alleged violations of all 50 states' and D.C.'s consumer protection laws.  There
27   is a named Plaintiff for each state except Alaska, Delaware, Hawaii, Kansas, Nebraska, New
    Hampshire, Rhode Island, Vermont, West Virginia, and D.C. If the Court is inclined to dismiss
28   these claims, Plaintiffs request that the dismissal be without prejudice with leave to amend.

1  heightened pleading for state CPA claims where the underlying state law does not require it.[29]

2  Nevertheless, as set forth below, Plaintiffs satisfy Rule 9(b) where necessary[30] because Plaintiffs

3  "identify the who, what, when, where, and how of the misconduct charged, as well as what is

4  false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637

5  F.3d at 1055.

6

[29] Numerous states do not require Rule 9(b) pleading: *Lisk*, 792 F.3d at 1334 (Alabama); *Greene
7  v. Gerber Prods. Co.*, No. 16-cv-1153 (MKB), 2017 WL 3327583, at *19 (E.D.N.Y. Aug. 2, 2017)
(New York); *Greene v. Bank of Am., N.A.*, No. 1:13-cv-00937-JAP/KBM, 2014 WL 11497812, at
8  *6 (D.N.M. Jan. 15, 2014) (New Mexico); *Clark v. Allstate Ins. Co.*, No. 13-0271, 2013 WL
1905147 (E.D. Pa. May 7, 2013) (Pennsylvania); *Nashef v. AADCO Med., Inc.*, 947 F. Supp. 2d
9  413, 424 (D. Vt. 2013) (Vermont); *Greystone Nev., L.L.C. v. Anthem Highlands Cmty. Ass'n*, No.
2:11-cv-01424-RCJ-CWH, 2012 WL 2782603, at *7 (D. Nev. July 9, 2012) (Nevada); *McKie v.
10  Sears Prot. Co.*, No. CV 10-1531-PK 2011 WL 1587112, at *3 (D. Or. Feb. 22, 2011) (Oregon);
*Kreidler v. Pixler*, No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash. Dec. 7, 2006)
11  (Washington); *Fla. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005)
(Florida); *Bruce v. Home Depot, U.S.A., Inc.*, 308 F. Supp. 2d 72, 77 (D. Conn. 2004)
12  (Connecticut); *Nigh v. Koons Buick Pontiac GMC, Inc.*, 143 F. Supp. 2d 535, 553 (E.D. Va. 2001)
(Virginia), *aff'd*, 319 F.3d 119 (4th Cir. 2003); *Ferron v. Dish Network, L.L.C.*, 195 Ohio App. 3d
13  686, 694 (2011) (Ohio); *State ex rel. Brady v. Publishers Clearing House*, 787 A.2d 111, 116
(Del. Ch. 2001) (Delaware); *U.S. Funding, Inc. of Am. v. Bank of Boston Corp.*, 551 N.E.2d 922,
14  925 (Mass. App. Ct. 1990) (Massachusetts); *see also In re Gen. Motors Corp.*, No. MDL 04-1600,
2005 WL 1924335, at *3 (W.D. Okla. Aug. 8, 2005) (Oklahoma: unsettled).
15  [30] *Vess*, 317 F.3d 1097 (California statutes do not require showing of fraud, but averments of
fraud must be pled with particularity); *see also Pirelli Armstrong Tire Corp. Retiree Med.
16  Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (Rule 9(b) applies to Illinois
claims); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (Maryland);
17  *Metro. Prop. & Cas. Ins. Co. v. Bell*, No. 04-5965, 2005 WL 1993446 (6th Cir. Aug. 17, 2005)
(Tennessee); *Young v. Bristol-Myers Squibb Co.*, No. 4:16-CV-00108-DMB-JMV, 2017 WL
18  706320, at *15 (N.D. Miss. Feb. 22, 2017) (Mississippi); *Ace Tree Surgery, Inc. v. Terex Corp.*,
No. 1:16-CV-00775-SCJ. 2017 WL 1836307, at *3 (N.D. Ga. Feb. 21, 2017) (both Georgia
19  statutes); *Murillo v. Kohl's Corp.*, 197 F. Supp. 3d 1119, 1130 (E.D. Wis. 2016) (Wisconsin);
*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 731 (M.D.N.C. 2015) (North
20  Carolina); *PNC Bank, Nat. Ass'n v. Wilson*, No. CV-14-80-BU-DWM-JCL, 2015 WL 3887602,
at*7 (D. Mont. June 23, 2015) (Montana); *Miller v. Elliott Aviation Aircraft Sales Inc.*, No. 4:13–
21  cv-00161-JAJ, 2014 WL 12601040, at *13 (S.D. Iowa Mar. 31, 2014) (in Iowa, fraud may be
pled on information and belief); *Raup v. Wells Fargo Bank, NA*, No. CV-13-00137-PHX-GMS,
22  2013 WL 3216175, at *3 (D. Ariz. June 25, 2013) (Arizona); *Thunander v. Uponor, Inc.*, 887 F.
Supp. 2d 850, 874, 876 (D. Minn. 2012) (Indiana and Minnesota); *Gibson v. Credit Suisse AG*,
23  No. 1:10 CV 001-EJL-REB, 2012 WL 1253007, at *2 (D. Idaho Mar. 30, 2012), *on
reconciliation in part*,  2012 WL 5354559 (D. Idaho Oct. 26, 2012) (Idaho); *Khaliki v. Helzberg
24  Diamond Shops, Inc.*, No. 4:11-cv-00010-NKL, 2011 WL 1326660, at *3 (W.D. Mo. Apr. 6,
2011) (Missouri); *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831 (S.D. Tex.
25  2011) (Texas law, for fraud claims); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 666
(E.D. Mich. 2011) (Michigan); *Hansen v. Auto-Owners Ins. Co.*, No. 09-cv-02736-MCA-BNB,
26  2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010) (Colorado); *Rait v. Sears, Roebuck & Co.*, No.
08-2461 (JLL), 2009 WL 250309, at *4 (D.N.J. Feb. 3, 2009) (New Jersey); *Goodwin v. Hole No.
27  4*, No. 2:06-cv-00679, 2006 WL 3327990, at *7 (D. Utah Nov. 15, 2006) (Utah); *Hollon v.
Consumer Plumbing Recovery Ctr.*, No. Civ.A. 5:05-414-JMH, 2006 WL 839227, at *3 (E.D. Ky.
28  Mar. 2, 2006) (Kentucky).

## 2. **Plaintiffs Allege Deceit.**

The key requirement in properly alleging CPA claims is a showing that Defendants'

statements and actions have *the capacity* or *tendency* to deceive, not that those statements or

actions be knowing or intentional.[31]  The Complaint offers more than sufficient allegations of

deceit to survive a Rule 12(b)(6) challenge.  For example, Plaintiffs allege that the Bosch

---

[31] *Davidson v. Kimberly-Clark Corp.*, No. 15-16173, 2017 WL 4700093, at *5 n.2 (9th Cir. Oct. 20, 2017) (For California's consumer protection claims, a plaintiff need only "show that members of the public are likely to be deceived"); *see also* Nev. Rev. Stat. Ann. § 598.0915 (Nevada: knowingly committing listed offense(s)); N.D. Cent. Code § 51-15-02 (North Dakota); Or. Rev. Stat. Ann. § 646.608 (Oregon: causes likelihood of confusion); *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 777 (8th Cir. 2010) (Arkansas); *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 569 (6th Cir. 2003) (Tennessee); *Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002) (Louisiana); *United Roasters, Inc. v. Colgate-Palmolive Co.*, 649 F.2d 985, 991 (4th Cir. 1981) (North Carolina: good faith not a defense); *Cessna v. REA Energy Coop., Inc.*, No. 3:16-cv-42, 2017 WL 2799325, at *8 (W.D. Pa. June 27, 2017) (Pennsylvania: act must be reasonably likely to deceive); *Horton v. Bank of America, N.A.*, 189 F. Supp. 3d 1286, 1291 (N.D. Okla. 2016) (Oklahoma); *M.T. v. Saum*, 7 F. Supp. 3d 701, 705 (W.D. Ky. 2014) (Kentucky: intentional or grossly negligent conduct, and misleading statements/conduct to a reasonably prudent person); *Chow v. Aegis Mortg. Corp.*, 286 F. Supp. 2d 956, 963 (N.D. Ill. 2003) (Illinois); *WLW Realty Partners, LLC v. Cont'l Partners VIII, LLC*, 381 Mont. 333, 343 (2015) (Montana: no intent required, only that statement untrue when made); *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 841 (Miss. 2015), *reh'g denied* (May 26, 2016) (Mississippi: no intent required, likeliness to deceive); *State ex rel. Horne v. AutoZone, Inc.*, 229 Ariz. 358, 361 (2012) (Arizona: deceptive act requires showing only of intent to do the act alleged, but omission requires proof of intent that others rely); *Gregory v. Poulin Auto Sales, Inc.*, 191 Vt. 611, 613 (2012) (Vermont); *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 725 (Mo. 2009) (Missouri: no intent required, must offend public policy or present risk of injury to consumers); *MacCormack v. Brower*, 948 A.2d 1259, 1261 n.2 (Me. 2008) (Maine: no intent required, only statement "likely to mislead consumers acting reasonably under the circumstances"); *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 73-75 (2007) (Washington: no intent required, only capacity to deceive); *Marrale v. Gwinnett Place Ford*, 271 Ga. App. 303, 309 (2005) (Georgia); *State ex rel. Miller v. Pace*, 677 N.W.2d 761, 771 (Iowa 2004) (Iowa); *Aspinall v. Philip Morris Cos., Inc.*, 442 Mass. 381, 394 (2004) (Massachusetts); *Miller v. Keyser*, 90 S.W.3d 712, 716 (Tex. 2002) (Texas); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995) (N.Y. Gen. Bus. Law § 349: no intent required); *Ashlock v. Sunwest Bank of Roswell, N.A.*, 107 N.M. 100, 102 (1988), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 120 N.M. 133 (1995) (New Mexico); *Associated Inv. Co. P'ship v. Williams Assocs. IV*, 230 Conn. 148, 158 (1994) (Connecticut); *Dix v. Am. Bankers Life Assur. Co. of Fla.*, 429 Mich. 410, 418 (1987) (Michigan: pattern of misrepresentation can show intent to deceive); *State ex rel. Kidwell v. Master Distributors, Inc.*, 101 Idaho 447, 453-54 (1980) (Idaho: no intent required, only tendency or capacity to deceive); *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876 (1976) (California: no intent required, only "likely" to deceive); *Hamilton v. Ball*, 7 N.E.3d 1241, 1254 (Ohio Ct. App. 2014) (Ohio: no intent required, only likelihood of misleading consumer); *Davis v. Powertel, Inc.*, 776 So. 2d 971, 974 (Fla. Dist. Ct. App. 2000) (Florida: no intent required, only likeliness to deceive reasonable consumer); *Church of the Nativity of Our Lord v. WatPro, Inc.*, 474 N.W.2d 605, 612 (Minn. Ct. App. 1991), *aff'd*, 491 N.W.2d 1 (Minn. 1992) (Minnesota); *Young v. Century Lincoln-Mercury, Inc.*, 302 S.C. 320, 326 (S.C. Ct. App. 1989), *aff'd in part, rev'd on other grounds in part*, 309 S.C. 263 (1992) (South Carolina: no intent required, only tendency to deceive).

1   Defendants marketed the EDC 17 as "clean diesel" technology compliant with the most stringent

2   emissions regulations in the world, and promised 30% better gas mileage than comparable

3   gasoline engines and superior towing capacity and performance, knowing that they had developed

4   and supplied the cheating software that made these achievements possible.  ¶¶ 9, 115, 122, 125-

5   26, 140, 142-43, 146-47, 154, 164-68.  Plaintiffs also allege that consumers were or could have

6   been deceived by these statements, because Defendants failed to disclose that the Class Vehicles

7   could not achieve advertised fuel economy, performance, or emissions ratings without

8   deactivating or reducing the efficacy of the emissions control system during real-world conditions,

9   that the Class Vehicles, under real-world driving conditions, were not "environmentally friendly,"

10   or that the Class Vehicles could not be repaired to compliance once regulators discovered

11   Defendants' scheme.  ¶¶ 8, 34-96, 110-11, 115-16, 155, 157, 164-90, 191-94.  Not only did these

12   pronouncements and promotions deceive Plaintiffs, they—as Defendants intended—led to

13   Plaintiffs' injuries.

14             **3.**      **Plaintiffs Allege Causation.**

15        Consumer protection statutes generally require a causal link between a defendant's

16   deceitful conduct and a plaintiff's actions or injuries.  However, Defendants' Joint Appendix

17   misstates the requirement that Plaintiffs allege reliance (or lack thereof) of several states.[32]  While

18   a few states impose such a requirement,[33] most jurisdictions do *not* require Plaintiffs to allege

---

19   [32] Plaintiffs meet Arizona and Delaware's standards, which do not require proof of subjective or individual reliance.  ¶¶ 34, 144.  Under Arizona CFA, Ariz. Rev. Stat. Ann. § 44-1522, plaintiff

20   must allege defendant's intent that a consumer rely on its misrepresentations.  Similarly, in Delaware, a plaintiff "must allege at least a negligent misrepresentation or omission of a material

21   fact' with the intent that the plaintiff rely on such omission."  *Eames v. Nationwide Mut. Ins. Co.*, Civ. No. 04-1324-JJF-LPS, 2008 WL 4455743, at *9 (D. Del. Sept. 30, 2008), *aff'd*, 346 F.

22   App'x 859 (3d Cir. Sept. 24, 2009).  Furthermore, Defendants cite *United Food & Commercial Workers Cent. Pa. & Reg'l Health & Welfare Fund v. Amgen, Inc.*, 400 F. App'x 255, 257 (9th

23   Cir. 2010) as proof that nine states' statutes impose a reliance requirement, but this case neither stands for that rule nor discusses any of those states' laws: Maine's UTPA (Me. Rev. Stat. Ann.

24   Tit. 5 § 205-a), Mississippi's CPA (Miss. Code §§ 75-24-1), Montana's UTPCPA (Mont. Code Ann. §§ 3014-101), New Mexico's UPA (N.M. Stat. Ann. §§ 57-12-1), North Dakota's CFA

25   (N.D. Cent. Code § 51-15-02), Ohio's DTPA (Ohio Rev. Code Ann. § 4165.01), Oklahoma's CPA (Okla. Stat. Tit. 15 §751), South Carolina's UTPA (S.C. Code §§ 39-5-10), and Utah's

26   Truth in Advertising Law (Utah Code Ann. § 13-11a-1).

[33] Ind. Code § 24-5-0.5-4 (Indiana: reliance required); Tex. Bus. & Com. Code § 17.50(a)(1)(B)

27   (Texas); Wyo. Stat. Ann. § 40-12-108(a) (Wyoming); *Hunt v. U.S. Tobacco Co.*, 538 F. 3d 217, 227 (3rd Cir. 2008) (Pennsylvania); *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 318

28   (D. Md. 2014) (Maryland); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1084 (E.D.

*Footnote continued on next page*

1   reliance on specific misstatements to establish the necessary causal link.[34]  And Plaintiffs need

2   not plead reliance where they allege fraud by omission, concealment, or failure to disclose

3   material facts, as opposed to affirmative misstatements.[35]  Defendants' deliberate failure to

4   disclose the deceptive means by which they achieved the Class Vehicles' advertised performance,

5   economy, and emissions ratings are at the heart of Plaintiffs' allegations.  ¶ 8.

6       Plaintiffs meet the causation requirement for each state because Plaintiffs allege that

7   Defendants intentionally deceived consumers about the Class Vehicles' performance, capabilities,

---

8   *Footnote continued from previous page*
    Ark. 2013) (Arkansas); *Padin v. Oyster Point Dodge*, 397 F. Supp. 2d 712, 722 (E.D. Va. 2005)

9   (Virginia); *Raysoni v. Payless Auto Deals, LLC*, 296 Ga. 156, 156 (2014) (Georgia: reasonable
    reliance required); *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 89 (2013) (North Carolina:

10  reasonable reliance).
    [34] N.D. Cent. Code § 51-15-02 (North Dakota: intent that consumers rely on misrepresentation);

11  Vt. Stat. Ann. tit. 9, § 2461(b) (Vermont: reliance not required); *Copper Sands Homeowners
    Ass'n, Inc. v. Copper Sands Realty, LLC*, No. 2:10-cv-00510-GMN-NJK, 2013 WL 3270430, at

12  *13 (D. Nev. June 26, 2013) (Nevada: reliance only required for affirmative misrepresentations);
    *Corder v. Ford Motor Co.*, 869 F. Supp. 2d 835, 839 (W.D. Ky. 2012) (Kentucky: no reliance

13  required); *Mayberry v. Bristol-Myers Squibb Co.*, Civ. A. No. 07-942 (FLW), 2009 WL 5216968,
    at *8-9 (D.N.J. Dec. 30, 2009) (Mississippi: reliance is one way to show causation, but not

14  required); *Siemer v. Assocs. First Capital Corp.*, No. CV97-281TUCJMRJCC, 2001 WL
    35948712, at *4 (D. Ariz. Mar. 30, 2001) (D. Ariz. 2001) (proof of purchase satisfies reliance);

15  *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 835 (S.D. Ohio 2003) (Ohio: no reliance
    required); *State ex rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 29-31 (Iowa 2013) (Iowa); *Int'l

16  Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076,
    1086 (N.J. 2007) (New Jersey); *Lohman v. DaimlerChrysler Corp.*, 166 P.3d 1091, 1098 (N.M.

17  2007) (New Mexico); *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W. 3d 758, 774 (Mo.
    2007) (Missouri); *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W. 2d 184, 197 n.13

18  (S.D. 2007) (South Dakota); *State v. Weinschenk*, 868 A.2d 200, 206 (Me. 2005) (Maine); *Indoor
    Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wash. 2d 59, 83 (2007)

19  (Washington); *K&S Tool & Die Corp. v. Perfection Mach. Sales, Inc.*, 732 N.W.2d 792, 802 (Wis.
    2007) (Wisconsin); *Wiegand v. Walser Auto. Groups, Inc.*, 683 N.W.2d 807, 811 (Minn. 2004)

20  (Minnesota: circumstantial evidence sufficient); *Hall v. Walter*, 969 P.2d 224, 321 (Colo. 1998)
    (Colorado); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 501 (1996) (Illinois); *Oswego Laborers'*

21  *Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y. 2d 20 (N.Y. 1995) (New York);
    *Fraser Eng'g Co. v. Desmond*, 524 N.E. 2d 110, 113 (Mass. 1988) (Massachusetts); *Dix v. Am.*

22  *Bankers Life Assur. Co. of Fla.*, 429 Mich. 410, 418 (1987) (Michigan: individual proof
    unnecessary; class action plaintiffs need only show that a reasonable person would rely);

23  *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (Delaware); *Hinchliffe v. Am.
    Motors Corp.*, 184 Conn. 607, 617 (1981) (Connecticut); *State ex rel. Kidwell v. Master Distribs.,*

24  *Inc.*, 101 Idaho 447, 454 (1980) (Idaho); *Sanders v. Francis*, 277 Or. 593, 598 (1977) (Oregon:
    not required for omissions); *Fleming v. Murphy*, No. W2006-00701-COA-R3-CV, 2007 WL

25  2050930, *7 (Tenn. Ct. App. July 19, 2007) (Tennessee); *Turner Greenberg Assocs., Inc. v.
    Pathman*, 885 So. 2d 1004, 1009 (Fla. Dist. Ct. App. 2004) (Florida).

26  [35] *See In re Sony Gaming*, 996 F. Supp. 2d at 991, 1000 (allowing claims under California and
    Missouri laws to proceed based on seller's failure to disclose lax security measures); *In re

27  Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 153-54 (D. N.J. 2010) (applying New
    Jersey law); *Wright v. Kia Motors Am. Inc.*, No. Civ. 06-6212-AA, 2007 WL 316351, *3 (D. Or.

28  Jan. 29, 2007) (Oregon).

---

PLAINTIFFS' CONSOL. OPP. TO MOTIONS TO DISMISS
AM. CONSOL. CONSUMER CLASS ACTION COMPL.
MDL 2777 EMC

1    and environmentally-friendly technology (¶¶ 8, 147, 151); that these misrepresentations were

2    made to consumers via FCA's website, the FCA and Bosch Defendants' marketing materials,

3    public pronouncements by both the FCA and Bosch Defendants, and by the FCA Defendants'

4    EcoDiesel® branding campaign (¶¶ 115, 122, 147, 151); and that Defendants' misrepresentations

5    caused Plaintiffs to overpay for Class Vehicles that also have lower resale value (¶¶ 34-96).

6    These misrepresentations were material, as Defendants "promoted the [EcoDiesel® brand] as a

7    desirable component of a vehicle in the first place," and therefore it is "not . . . surprising for

8    Plaintiffs to consider [misrepresentations about the EcoDiesel® brand] … a material fact."

9    *MyFord Touch*, 46 F. Supp. 3d at 957.[36] As such, Plaintiffs have sufficiently pled a causal link

10   between Defendants' fraudulent conduct and Plaintiffs' injuries.

11                       **4.      Plaintiffs Allege a Concrete Injury.**

12           Plaintiffs sufficiently allege actual, non-speculative injury.[37] Plaintiffs allege that the

13   Class Vehicles decreased in value due to Defendants' omissions and deceptions.  ¶¶ 34-96.

14   Plaintiffs also allege that Defendants made specific representations about the Class Vehicles'

15   emissions compliance, cleanliness, fuel economy, towing capacity and performance (¶¶ 34-96,

16   155), but failed to disclose that those qualities were made possible only by using defeat devices—

17   and that, without cheating, the performance promised was unattainable.  Plaintiffs further allege

18   that Defendants' omissions deceived Plaintiffs into paying a premium for Class Vehicles that

19   were not sold as advertised, and also have suffered diminished value due to Defendants' illicit

20   conduct.  ¶¶ 34-96.

21

22   _____

23   [36] *See also In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011); *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009) (interest rate and negative amortization are material; a presumption of reliance may arise); *Wilson v. Parisi*, 549 F. Supp. 2d 637, 668 (M.D. Pa. 2008); *True v. Am. Honda Motor Co.*, 520 F. Supp. 2d 1175, 1182 (C.D. Cal. 2007) (reliance necessary under Consumer Legal Remedies Act, but presumption of reliance when misrepresentation is material); *Blankenship v. CFMOTO Powersports, Inc.*, 961 N.E. 2d 750, 769 (Ohio Comm. Ct. 2011).

26   [37] Plaintiffs concede that the states Defendants identify, except Maine, require concrete injury allegations. Maine's Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5 § 205-a, allows recovery for "any loss of money or property," which is broad enough to include diminished resale value, should members of the Maine Class later sell their Class Vehicles.  Plaintiffs sufficiently pled "any loss of money or property" under Maine law. ¶ 49.

1

### 5. Defendants' Scattershot Arguments Find Nowhere to Land.

2      Defendants make no effort to connect the law, as they cite it, to the allegations of

3  Plaintiffs' Complaint.  Defendants submitted a combined total 120 pages of briefing, yet resort to

4  conclusory bullet points and string-cites that hardly qualify as legal argument.  FCA Mem. 58-60.

5  Plaintiffs nonetheless address each of Defendants' half-hearted points below.

6      First, Plaintiffs adequately plead scienter where necessary.  Defendants' state-specific

7  scienter arguments belie lower standards in several states than Defendants would have the Court

8  believe.[38]  Plaintiffs allege that Defendants knowingly concealed that the Class Vehicles achieved

9  advertised ratings for performance, fuel economy, and emissions cleanliness only through the use

10 of at least eight undisclosed AECDs, and that as a result, once the undisclosed AECDs were

11 uncovered by regulators, the Class Vehicles could not be repaired to comply with regulators'

12 demands without reducing these advertised qualities.  ¶¶ 7-8, 102-07, 148, 154-55.

13     Second, the economic loss doctrine poses no threat to the North Carolina claims.  The

14 North Carolina economic loss rule does not prohibit claims, like those here, based on harm caused

15 by unfair misrepresentations or omissions in violation of UDPTA, N.C. Gen. Stat. § 75-1.1 *et seq.*;

16 *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006) (holding that the

17 economic loss rule prohibited purchasers of defective products from using tort law to recover

18 purely economic losses).  Plaintiffs' claims are not premised on allegations that the Class

19 Vehicles are unsafe.  ¶¶ 191, 195.  Rather, and as this Court has recognized, Plaintiffs' claims

20

---

[38] *McKinney v. State*, 693 N.E. 2d 65, 68–69 (Ind. 1998) (Indiana: "reasonably should . . . know,"
21 which "is plainly a lesser standard than 'knowingly violate' or 'intend to mislead.'"); Iowa Code
§ 714H.3(1) (Iowa: intent to deceive); N.D. Cent. Code § 51-15-02 (North Dakota: intent to
22 deceive); *Scanlan v. Sunbeam Prods., Inc.*, 690 F. App'x 319, 333 (6th Cir. 2017) (Kentucky:
intentional or grossly negligent conduct); Minn. Stat. Ann. § 325D.45 (knowledge of deception
23 required to recover attorneys' fees in Minnesota); *Elliott Co. v. Montgomery*, Civ. A. No. 6:15-
02404, 2016 WL 6301042, at *5 (W.D. La. Sept. 28, 2016) (Louisiana: defendant's "actions must
24 have been taken with the specific purpose of harming the competition."); *Stevenson v. Louis
Dreyfus Corp.*, 112 N.M. 97, 100-01 (1991) (New Mexico's "'knowingly made' requirement is
25 met if a party was actually aware that the statement was false or misleading when made, or in the
exercise of reasonable diligence should have been aware that the statement was false or
26 misleading"); *see also* Ark. Code Ann. § 4-88-107(a)(1) (Arkansas); *O'Brien v. Landers*, No.
1:10-cv-02765, 2011 WL 221865, at *5 (N.D. Ill. Jan. 24, 2011) (Utah); *Lambert* v. *Downtown
27 Garage, Inc.*, 553 S.E. 2d 714, 718 (Va. 2001) (Virginia); *Luskin's, Inc. v. Consumer Prot. Div.*,
353 Md. 335, 366–67 (1999) (Maryland); *Strickland v. Kafko Mfg., Inc.*, 512 So. 2d 714 (Ala.
28 1987) (Alabama).

may proceed because the North Carolina consumer protection statute "gives rise to a duty independent of the contract and therefore should not be barred by the economic loss rule." *MyFord Touch*, 46 F. Supp. 3d at 967.

Third, Plaintiffs' claims satisfy Idaho and Kentucky's privity requirements because they are based on deceptive practices in commerce.  Idaho law confers standing on those injured by deceptive or unfair practices in commerce, and not injuries due to a "merely a contemplated transaction with no contract."  *Moto Tech, LLC v. KTM N. Am., Inc.*, No. 1:13-cv-00165-BLW, 2013 WL 6446239, at *3-4 (D. Idaho Dec. 9, 2013); *see also* Idaho Code § 48-601.  This rule limits actions stemming from solicitations and instead provides relief for those who have actually exchanged consideration for goods or services, and Defendants cannot ignore the fact that Plaintiffs Burwell and Calhoun met this threshold when they negotiated contracts to purchase Class Vehicles from authorized FCA dealers in Idaho.  ¶¶ 41-42.  Similarly, Kentucky's CPA requires litigants to have "personally purchase[d] goods or services from a merchant."  *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 546 (Ky. Ct. App. 2013); Ky. Rev. Stat. Ann. § 367.220(1).  But, "[n]othing in the KCPA . . . explicitly requires that a binding contract be reached for a purchaser damaged by unlawful trade practices to have a private right of action," if the plaintiff qualifies as a "purchaser" under the UCC as adopted in Kentucky.  *Craig & Bishop, Inc. v. Piles*, 247 S.W.3d 897, 903 (Ky. 2008).  Here, Plaintiff Bali is a "purchaser" because he purchased a Class Vehicle from an authorized FCA dealer in Kentucky, (Ky. Rev. Stat. Ann. § 355.1-201) and thus has standing to pursue a claim under the KCPA.  ¶ 35.

Fourth, Defendants urge the Court to dismiss Plaintiffs' claims for punitive damages under the consumer protection statutes of Maryland, Maine, Minnesota, Nebraska, Oklahoma, South Dakota, and West Virginia.  Plaintiffs agree to dismiss their Nebraska and West Virginia law punitive claims without prejudice, note that they do not plead a claim for punitive damages under Minnesota law, and concede that Maryland, Maine, Minnesota, and South Dakota do not

1   allow for punitive damages.[39]  The Court may strike these requests for punitive damages, but it

2   should not dismiss the substantive claims seeking other relief.

3          Plaintiffs' claim for punitive damages under Oklahoma's CPA survives because Plaintiffs

4   have sufficiently pled that Defendants are "guilty of reckless disregard for the rights of others,

5   or . . . acted intentionally and with malice towards others."  *Robinson v. Sunshine Homes, Inc.*,

6   291 P.3d 628, 638 (Okla. Civ. App. 2010).  Such "[o]ppressive intent may also be inferred from

7   [Defendants'] complete indifference to consequences" or "conscious or reckless disregard of the

8   safety of others."  *Payne v. Dewitt*, 995 P.2d 1088, 1093 n.17 (Okla. 1999).  Plaintiffs allege that

9   Defendants acted intentionally or showed conscious or reckless disregard for the safety of others.

10  ¶¶ 7-8, 125-26, 148, 154-55.  The Class Vehicles emit up to 20 times the legal limits of $NO_X$

11  when operating in real-world driving conditions, harming the public.  ¶¶ 6-8, 111-12, 123, 183.

12  Defendants' deceit shows a clear disregard for the health and safety of all those breathing the air.

13         Finally, Defendants insist that Plaintiffs' claim under the Mississippi CPA should be

14  dismissed because Plaintiffs must first participate in a pre-suit settlement program approved by

15  the Mississippi Attorney General.  Bosch Mem. 40.  Plaintiffs concede this point, but ask this

16  Court for leave to amend on this issue.  *See* Miss. Code Ann. § 75-24-15(2); *Humphrey v.

17  Citibank NA*, No. 2:12CV148M-V, 2013 WL 5407195, at *6 (N.D. Miss. Sept. 25, 2013)

18  (plaintiff must make reasonable attempt to resolve claim through informal process).

19  **X.      THIS COURT MAY EXERCISE JURISDICTION OVER EACH DEFENDANT.**

20         Defendants contend that the court lacks personal jurisdiction over Bosch GmbH, Fiat, and

21  VM Italy (the "Foreign Defendants").  At the motion to dismiss stage, "the plaintiff need only

22  make a prima facie showing of jurisdictional facts."  *Brayton Purcell LLP v. Recordon &

23  Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010).  Uncontroverted allegations in the complaint

24  must be accepted as true, and the court must resolve all factual disputes in favor of the plaintiff.

25  *Id.*  Although Defendants' jurisdictional arguments focus on the lack of contacts between the

---

26  [39] *Williams* v. *Dee Miracle Auto Grp. LLC*, Civil No. ELH-15-2466, 2016 WL 3411640, at *5 n.6
    (D. Md. June 22, 2016); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, Civil N. 09-1091
27  (JNE/JSM), 2010 WL 4193076, at *9 n.6 (D. Minn. Oct. 7, 2010); *Wyman v. Terry Schulte
    Chevrolet, Inc.*, 584 N.W. 2d 103, 107 (Sup. Ct. S.D. 1998); *Taylor v. Philip Morris Inc.*, No.
28  Civ.A. CV-00-203, 2001 WL 1710710, at *7 (Me. Super. Ct. May 29, 2001).

1    Foreign Defendants and California, the extent of those contacts is irrelevant because the Foreign

2    Defendants' alleged contacts with the United States are sufficient to support the Court's exercise

3    of jurisdiction over them under either the federal long-arm statute or RICO.

4         **A.     The Federal Long-Arm Statute Permits Jurisdiction Over the Foreign Defendants.**

5

6         The federal long-arm statute, Fed. R. Civ. P. 4(k)(2), permits a plaintiff to establish

7    personal jurisdiction over a non-U.S. defendant whose alleged unlawful conduct is directed at the

8    United States. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158-59 (9th Cir. 2006). The exercise

9    of jurisdiction under Rule 4(k)(2) is proper if three factors are satisfied: (1) the claim against the

10   defendant arises under federal law, (2) the defendant is not subject to the personal jurisdiction of

11   any state court of general jurisdiction, and (3) the federal court's exercise of personal jurisdiction

12   comports with due process. *Id.* at 1159.

13        The first two requirements clearly are satisfied. Plaintiffs assert claims against all

14   Defendants under two federal statutes: RICO, 18 U.S.C. §§ 1962(c)-(d), and the Magnuson-Moss

15   Warranty Act, 15 U.S.C. § 2301, *et seq.*[40] Further, Fiat and VM Italy have expressly asserted that

16   they are not subject to personal jurisdiction anywhere in the United States. FCA Mem. 50. Courts

17   in this Circuit require a defendant seeking to avoid jurisdiction under Rule 4(k)(2) to name some

18   other state in which the suit could proceed. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485

19   F.3d 450, 461-62 (9th Cir. 2007). None of the Foreign Defendants has identified another state in

20   which this case could proceed.

21        As the first two requirements are satisfied, the only remaining question is whether the

22   exercise of jurisdiction over the Foreign Defendants comports with due process. *See Pebble*

23   *Beach*, 453 F.3d at 1158-59. When due process is analyzed under Rule 4(k)(2), the United States,

24   rather than any particular state, is the forum state. *Id.*; *accord Apollo Educ. Grp., Inc. v. Somani*,

25   No. C-15-1056 EMC, WL 4880646, at *24 (N.D. Cal. Aug. 13, 2015).

26   _____

27   [40] Under the doctrine of pendent jurisdiction, the court also may exercise jurisdiction over
     Plaintiffs' state-law claims because they "arise[] out of a common nucleus of operative facts"
     with the RICO and Magnuson-Moss Act claims. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653

28   F.3d 1066, 1076 (9th Cir. 2011).

Here, the exercise of jurisdiction over the Foreign Defendants is consistent with due process because (1) the Foreign Defendants purposefully directed their activities at the United States,[41] (2) the Plaintiffs' claims arise out of the Foreign Defendants' activities in the United States, and (3) the exercise of jurisdiction is reasonable. *See Brayton Purcell*, 606 F.3d at 1128; *Apollo Educ. Grp.*, 2015WL 4880646, at *4-5.

First, the purposeful direction test is met if the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012). Plaintiffs allege that the Defendants, including the Foreign Defendants, engaged in a conspiracy to market and distribute Class Vehicles with EcoDiesel® engines while concealing from consumers and regulators that the Vehicles failed to meet emissions standards. The Complaint explains, in detail, how "Fiat Chrysler worked closely with VM Italy and VM America and Bosch GmbH and Bosch LLC to customize the EDC Unit 17 to allow Class Vehicles to simulate 'passing' the EPA and CARB testing." ¶ 123. The purpose of customizing the EDC 17 in this manner was to "deceiv[e] the EPA and CARB into approving the Class Vehicles for sale throughout the United States and California." ¶ 124. These actions, and many others alleged in the Complaint, including the marketing and sale of the Class Vehicles through dealerships throughout the country, were unquestionably intentional and aimed at the United States.

The entire conspiracy was aimed at concealing AECDs from U.S. consumers and regulators. Defendants knew and intended that U.S. consumers would pay a premium for vehicles with the so-called EcoDiesel® engines because they were misled to believe that the vehicles offered lower emissions without sacrificing power.

Second, Plaintiffs' claims against the Foreign Defendants arise from the Foreign Defendants' activities directed at the United States. The Foreign Defendants' participation in a conspiracy to circumvent U.S. emissions standards and mislead U.S. consumers into paying a premium for EcoDiesel® vehicles is sufficient to satisfy this element of the due process test. *See*

---

[41]  Purposeful direction, rather than purposeful availment, is the appropriate analytical framework here because Plaintiffs' claims sound in tort rather than contract. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

1   *CollegeSource*, 653 F.3d at 1079 (explaining that the second element of the due process test

2   generally is satisfied if the purposeful direction test is satisfied).

3          Third, this Court's exercise of jurisdiction is reasonable.  Once a plaintiff has made a

4   prima facie showing of sufficient contacts between the defendant and the forum, the burden shifts

5   to the defendant to present a "compelling case" that the exercise of jurisdiction would be

6   unreasonable and therefore violate due process.  *Id.*  The Foreign Defendants have not met that

7   burden here.  Bosch GmbH asserts that any actions it took in furtherance of the alleged

8   conspiracy occurred abroad, that it is under separate investigation by German authorities for the

9   same conduct, and that it would be inconvenient for Bosch GmbH to litigate in a foreign forum.

10  Bosch Mem. 44.  This is far from a "compelling case" in which it would be unfair to exercise

11  jurisdiction over Bosch GmbH or any of the other Foreign Defendants.  *Volkswagen*, 2017 WL

12  4890594, at *17-18 (rejecting the same arguments).  To the contrary, in light of the Defendants'

13  elaborate conspiracy to defraud U.S. consumers and regulators, it would be unfair to deny

14  Plaintiffs the opportunity to pursue their claims against the Foreign Defendants.  And in light of

15  Defendants' efforts to circumvent U.S. regulations, a U.S. court has a strong interest in providing

16  U.S. citizens a forum to assert their claims.

17          **B.        RICO Also Provides a Basis for Jurisdiction Over the Foreign Defendants.**

18          RICO provides an independent basis for the Court's jurisdiction over the Foreign

19  Defendants.  *See* 18 U.S.C. § 1965(b); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d

20  535, 539 (9th Cir. 1986) ("Congress intended the 'ends of justice' provision [of § 1965(b)] to

21  enable plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single

22  trial.").  To demonstrate that a court has jurisdiction over a defendant under § 1965(b), plaintiffs

23  must meet four requirements.  First, they must "allege[] a multidistrict conspiracy that

24  encompasse[s] [the defendants]."  *Butcher's Union*, 788 F.2d at 539.  Plaintiffs have done that

25  here—the RICO conspiracy involves Defendants from a variety of states and countries. Second,

26  "the court [must have] personal jurisdiction over at least one of the participants in the alleged

27  multidistrict conspiracy."  *Id.*  Defendants here do not dispute that the Court has jurisdiction over

28  FCA US LLC and Bosch LLC.  Third, there must be "no other district in which a court will have

1    personal jurisdiction over all of the alleged co-conspirators." *Id.*  Here, no other district court has

2    personal jurisdiction over all of the alleged co-conspirators because the Foreign Defendants—

3    aside from perhaps Marchionne, who has a home in Michigan—are not subject to general

4    jurisdiction in any state.  Fourth, the defendants must be served in the United States.  *See Doe v.*

5    *Unocal Corp.*, 27 F. Supp. 2d 1174, 1184 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915.  The Foreign

6    Defendants have accepted service through their attorneys in the United States.

7           **C.**    **Personal Jurisdiction Under California's Long-Arm Statute.**

8          As the Foreign Defendants are subject to jurisdiction based on the federal long-arm statute

9    and RICO, the Court need not consider whether Plaintiffs have alleged sufficient minimum

10   contacts with California to support the exercise of jurisdiction under Cal. Code Civ. P. § 410.10.[42]

11   If the Court determines that those provisions are inapplicable, a California court's exercise of

12   jurisdiction over the Foreign Defendants is proper if (1) the Foreign Defendants purposefully

13   directed their activities at California, (2) the Plaintiffs' claims arise out of the Foreign Defendants'

14   activities in California, and (3) the exercise of jurisdiction is reasonable.  *See Brayton Purcell*,

15   606 F.3d at 1128.

16         Jurisdiction is proper under California's long-arm statute based on the same conduct that

17   supports the exercise of personal jurisdiction under Rule 4(k)(2).  The Foreign Defendants

18   targeted their conduct not only at the United States as a whole, but also specifically at the state of

19   California.  Because California has its own environmental regulatory body (CARB), the success

20   of Defendants' conspiracy required direct deception of California's state regulators so that

21   EcoDiesel® vehicles could be sold in California.  Consequently, this court has jurisdiction over

22   the Foreign Defendants under Cal. Code Civ. P. § 410.10.

23          **D.**    **If the Court Has Any Concerns, Jurisdictional Discovery Is Warranted.**

24         If the Court concludes that Plaintiffs have not made a prima facie case that personal

25   jurisdiction over the Foreign Defendants is proper, jurisdictional discovery is warranted to permit

26   _____

[42]   The FCA Defendants assert that Plaintiffs must show that each transferor court has personal

27   jurisdiction over the Foreign Defendants. For the reasons explained above, each of the transferor
     courts could exercise personal jurisdiction over the Foreign Defendants based on their minimum

28   contacts with the United States pursuant to Rule 4(k)(2) or 18 U.S.C. § 1965(b).

1  Plaintiffs to develop the factual record regarding the Foreign Defendants' conduct in the United

2  States related to the development, testing, manufacturing, distribution, and promotion of the Class

3  Vehicles as alleged in the Complaint.

4      Jurisdictional discovery ordinarily should be granted "where pertinent facts bearing on the

5  question of jurisdiction are controverted . . . or where a more satisfactory showing of the facts is

6  necessary." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir.

7  1977) (holding that district court abused its discretion in refusing to permit jurisdictional

8  discovery).  To be entitled to jurisdictional discovery, plaintiffs need only show some evidence of

9  a defendant's contacts with the forum.  *See Focht v. Sol Melia S.A.*, No. C-10-0906 EMC,

10  20102010 WL 3155826, at *2 (N.D. Cal. Aug. 9, 2010).  Plaintiffs allege that the Foreign

11  Defendants participated in a conspiracy to deceive U.S. regulators and consumers; if the Court

12  concludes that more specific allegations are required as to each Defendant's conduct, Plaintiffs

13  should have the opportunity to fully develop the record and amend their Complaint.

14  **XI.    CONCLUSION**

15      For all the reasons stated herein as well as at oral argument, Plaintiffs respectfully request

16  that the Court deny Defendants' motions to dismiss in their entirety.  If, however, the Court finds

17  that any of Plaintiffs' claims are deficient in any way, Plaintiffs respectfully seek leave to amend

18  the Complaint.

19  Dated:  November 6, 2017        Respectfully submitted,

20          LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

21          By:  */s/ Elizabeth J. Cabraser*

22          Elizabeth J. Cabraser
        David. S. Stellings

23          Kevin R. Budner
        Phong-Chau G. Nguyen

24          Wilson M. Dunlavey
        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

25          275 Battery Street, 29th Floor
        San Francisco, CA  94111

26          Telephone: 415.956.1000
        Facsimile:  415.956.1008

27          E-mail: *ecabraser@lchb.com*

28          *Plaintiffs' Lead Counsel*

Roland K. Tellis
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2320
Facsimile: 818.986.9698
Email: *trellis@baronbudd.com*

W. Daniel ("Dee") Miles, III
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS
& MILES P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: 800.898.2034
Facsimile: 334.954.7555
Email: *dee.miles@beasleyallen.com*

Lesley E. Weaver
BLEICHMAR FONTI & AULD, LLP
1999 Harrison Street, Suite 670
Oakland, CA 94612
Telephone: 415.445.4003
Facsimile: 415.445.4020
Email:  *lweaver@bfalaw.com*

David S. Casey, Jr.
CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA 92101-1486
Telephone: 619.238.1811
Facsimile: 619.544.9232
Email: *dcasey@cglaw.com*

Steve W. Berman
HAGENS BERMAN
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: 206.623.7292
Facsimile: 206.623.0594
Email: *steve@hbsslaw.com*

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206.623.1900
Facsimile: 206.623.3384
Email:  *lsarko@kellerrohrback.com*

Joseph F. Rice
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: 843.216.9000
Facsimile: 843.216.9450
Email:  *jrice@motleyrice.com*

Rachel L. Jensen
ROBBINS GELLER RUDMAN & DOWD
LLP
655 West Broadway, Suite 1900
San Diego, CA 98101
Telephone: 619.231.1058
Facsimile: 619.231.7423
Email:  *rachelj@rgrdlaw.com*

Stacey P. Slaughter
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612.349.8500
Facsimile: 612.339.4181
Email: *sslaughter@robinskaplan.com*

*Plaintiffs' Steering Committee*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

 I hereby certify that, on November 6, 2017, service of this document was accomplished

3

pursuant to the Court's electronic filing procedures by filing this document through the ECF

4

system.

5

6

       <u>/s/ *Elizabeth J. Cabraser*  </u>
        Elizabeth J. Cabraser

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28