1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                       SAN FRANCISCO DIVISION

11

12  | IN RE CHRYSLER-DODGE-JEEP | No. 3:17-md-02777-EMC |
    | ECODIESEL MARKETING, SALES | |

13  | PRACTICES, AND PRODUCTS | **[PROPOSED] PRETRIAL ORDER NO. _16_** |
    | LIABILITY LITIGATION | **STIPULATION AND ORDER GOVERNING** |

14  | | **THE PRODUCTION OF HARD COPY** |
    | | **DOCUMENTS AND ELECTRONICALLY** |

15  | | **STORED INFORMATION** |

16  | | The Honorable Edward M. Chen |

17

18          WHEREAS, pursuant to Pretrial Order No. ("PTO") 3 (Docket No. 173) and Amended

19  PTO 12 (Docket No. 227) the Plaintiffs' Steering Committee, on behalf of the consumer and

20  reseller dealer class plaintiffs, the United States Department of Justice, on behalf of the United

21  States Environmental Protection Agency ("United States"), and counsel for Defendants FCA US

22  LLC, Fiat Chrysler Automobiles N.V., V.M. Motori S.p.A., V.M. North America, Inc., Sergio

23  Marchionne, Robert Bosch GmbH, and Robert Bosch, LLC (collectively, "Defendants"), (jointly,

24  "the Parties[1]") are required to submit to the Court a joint proposed order governing protocols to

25  be followed regarding electronically stored information ("ESI");

26

27  _____

28  [1] All defined terms herein are the same as those used in Pretrial Order No. 10: "Stipulated Protective Order" (Docket No. 212) ("PTO 10"), unless otherwise noted.

WHEREAS, the Parties mutually seek to reduce the time, expense, and other burdens associated with discovery, and to better define their obligations with respect to such information and materials; and

WHEREAS, the Parties, having met and conferred, submit this *Stipulation and [Proposed] Order Governing the Production of Hard Copy Documents and Electronically Stored Information* (the "Order"), and respectfully request that the Court enter it as an Order;

NOW THEREFORE, it is hereby STIPULATED and ORDERED:

## I.   <u>PURPOSE AND SCOPE</u>

**A.**     **General.**  This Order governs the production of hard copy documents and ESI by the Parties in this Action.  This Order does not supersede prior Pretrial Orders issued in this Action, which will remain in effect except to the extent inconsistent with the provisions herein.

**B.**     **Scope.**  Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of the Party producing Discoverable Information ("Producing Party") or a Party requesting Discoverable Information ("Requesting Party"), or any other Party or Non-Party. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they will control.

**C.**     **Limitations and Non-Waiver.**  The Parties and their attorneys do not intend by this Order to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests.

**D.**     **Variations.**  In light of the varying and disparate data systems and architectures employed by the Parties, variation from this Order may be required.  In the event that any Party identifies a circumstance where application of this Order is not technologically possible or reasonably practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order.  In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

## II.    COOPERATION

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Standing Order on Discovery.

## III.    REGULATORY PRODUCTIONS

In this litigation, Defendants FCA US LLC, Fiat Chrysler Automobiles N.V., V.M. Motori S.p.A., V.M. North America, Inc., and Sergio Marchionne (collectively, "FCA Defendants") are producing to the non-government plaintiffs documents that were previously produced to regulatory entities as part of regulatory processes (the "Reproductions").  Nothing in this order is intended to impose new or additional obligations on the FCA Defendants with respect to the format of the Reproductions or productions of documents that have already been collected and processed, so long as those productions substantially comply with Sections V and VI herein, including the production of native files.  In the event of a conflict about whether such productions substantially comply with Sections V and VI, the Parties will meet and confer in an effort to reach agreement.  In connection with any such obligation to meet and confer, the Parties will discuss any need for changes to the format of productions weighed against the practicality and cost to the Producing Party of implementing such changes.

## IV.    IDENTIFICATION AND COLLECTION PROTOCOL FOR ESI

Except as provided in Section III (Regulatory Productions), for all document productions in connection with this Action:

**A.**    The Parties shall meet and confer in an effort to agree upon the following: (a) custodial and non-custodial sources from which Documents and ESI will be obtained for production; (b) search methodology and search terms, if any, to be applied, or other search, filtering, or classification technologies; (c) location(s) and description(s) of relevant data sources including custodial, non-custodial, and third-party Documents; and (d) applicable timeframe(s) for collection and review of Documents and ESI.

**B.**    In processing ESI, the Parties agree to the following approaches:

1. De-duplication: The Parties will use commercially acceptable methods (e.g., MD5 or SHA-1 hash values) to identify duplicate ESI and globally de-duplicate ESI.  In the case of emails, the hash value must be calculated on the concatenated value of the following fields: to, from, cc, bcc, date sent, email subject, full body of the email; additionally, at a Party's option, the fields upon which hash values may be calculated may also include the "attachment count" field.  Family groups, e.g., an email and its attachments, must be de-duplicated only against other family groups as entities, e.g., using hash values calculated on concatenations of the hash values of all family members, and no document which is not part of a family group shall be de-duplicated against a member of a family group.  The metadata provided by the Parties other than the United States for the produced version of each document withheld as a duplicate must include the following information for each such withheld document: Duplicate Custodians, Duplicate Custodians Directory Path, and Duplicate Custodians Folder Path.  The Defendants will continue to meet and confer with Plaintiffs regarding the inclusion of a Duplicate Custodians File Name field. The metadata provided by the United States for the produced version of each email withheld as a duplicate will include the Duplicate Custodians; the metadata provided by the United States for the produced version of all non-email ESI must include the Duplicate Custodians, Duplicate Custodians File Name, and Duplicate Custodians Directory Path.  The Parties, in each production made pursuant to the Order, must produce overlays updating the foregoing metadata to reflect updates to the designated metadata fields in that production.

2. De-NISTing:  Electronic files will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.  If a Producing Party proposes to apply additional filters that identify common system files, non-user generated files, and/or zero-byte files (*i.e.* computer files containing no data), the Producing Party will provide details to the Parties regarding the filters, how they work, and what impact (if any) they will

have on the collections or productions.  No later than five (5) days after such disclosure, the Parties will meet and confer in an effort to reach agreement on any additional filters.  In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

3.   Relevant Time Frame/Date: The Parties may limit processing of Documents to that which was created, modified, sent, or received between certain dates as agreed by the Parties, or set forth by the Court.

**C.   Continuing Obligations**.  The Parties will continue to meet and confer regarding any issues as necessary and appropriate, including issues relating to modification of any of the dates and time-frames set forth in this Order.  This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

**D.   Reservation of Rights**.  The Parties retain the right, upon reviewing any productions made by another Party in this Action or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources and custodians be produced.  The Parties will meet and confer regarding such request(s) prior to any search or production related thereto.

**E.   Known Responsive ESI Must Be Produced.**   ESI that is known to a Party to be responsive to a discovery request or relevant to the subject matter of this action may not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Order.

**F.   Unsearchable Documents.**  Documents for which text-based search technologies are fundamentally ineffective, such as images or hard copy documents, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.  The Parties will meet and confer regarding the issue of whether text-based search technologies are fundamentally ineffective for spreadsheets.  Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections.  With agreement of the Receiving Party, a Producing Party, in good faith, may elect to use statistical sampling techniques to determine whether to review

discrete, identified populations of unsearchable documents for responsiveness, confidentiality, privilege, and other protection.  In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

**G.**    **Technologies.**  The Parties will meet and confer to disclose and discuss their use and proposed further use of software or other technologies to exclude or eliminate sources of potentially responsive documents, including keyword or Boolean searching, file type culling, de-duplication, filtering, predictive coding, near de-duplication, e-mail thread suppression, clustering or concept searching, and the validation processes and standards for such uses.  If the Parties are unable to agree on a protocol for the use of such technology after meeting and conferring in good faith, the Parties will notify, and seek resolution from, the Court

**H.**    **Custodian Identified Files**. Discrete folders or collections of Documents that are identified by a custodian as likely to be responsive must be collected without the use of search terms or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping.

**I.**    **Review of Discrete Collections**.  Notwithstanding a Party's awareness that a discrete collection is likely to contain responsive information, a Producing Party may, in good faith, review the contents of any such discrete collection for responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production.

**J.**    **Reassessment**.  After the completion of the search methodology meet and confer sessions, a Producing Party may encounter the need to reassess a search methodology and/or validation process and, in such case, the Producing Party will notify the Requesting Party and the Parties will meet and confer to address any issues in a reasonable and timely manner.

**K.**    **Good faith**.  The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

## V.    <u>PRODUCTION OF HARD COPY DOCUMENTS</u>

Compliance with the procedures set forth below will constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

**A.**     Responsive documents must be produced as single page, Group IV, 300 DPI TIFF format following the same protocols set forth herein if the documents: (i) were originally generated as or converted into ESI but now only exist in physical hard copy format, (ii) are printed ESI that contains new alterations since printed (*i.e.*, handwritten notes), or (iii) originally were generated in hard-copy format.  Each page must be branded with a unique Bates number, which may not be an overlay of the image.  The images must be accompanied by: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; (2) a data load file containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A, (a "Data Load File"), which will include the relative path to the text file for that document on the production media.

**B.**     The Parties will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships (*i.e.*, attachment status).

**C.**     If an original document being produced as an electronic image contains color, the document must be produced in color as a single page, 300 DPI JPG images with JPG compression and a high-quality setting (so as to not degrade the original image), but only to the extent such a requirement to produce color images does not require the Producing Party to re-collect or re-scan documents that already have been collected and scanned.  Notwithstanding the requirements set forth in the preceding sentence, if a Requesting Party has received an image in black and white and believes in good faith that color is important to interpreting the document, upon written request by the Requesting Party, the Producing Party will take good faith measures to produce the image in color.  The Parties will meet and confer concerning any disputes over such requests. The Parties reserve the right to revisit their agreement to this paragraph if Defendants' productions reveal a large number of black and white documents, where color appears to be important in order to interpret or understand the document.

**D.**     Optical Character Recognition ("OCR") text for each document must be provided as a single file and named with the Bates number of the first page of the document to which it corresponds.  The OCR software must be set to the highest quality setting.  Documents containing foreign language text must be OCR'ed using the appropriate settings for that language, (*e.g.*, OCR of German documents must use settings that properly capture umlauts).  Scanned copies of paper documents must be subject to quality control measures to ensure the integrity of the image is preserved for OCR (*e.g.*, pages are not angled or skewed, text is not blurred or obscured, etc.). Settings such as "auto-deskewing" and "auto-rotation" must be used when appropriate during the OCR process to maximize text recognition on any given page.  Documents that are redacted will be re-scanned using OCR software following redaction and only the OCR text of the non-redacted portions will be produced.

**E.**     A delimited text file that contains available fielded data must also be included and at a minimum provide Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Custodian, and Number of Pages.  The delimiters for that file should be:

> Field Separator, ASCII character 20: "¶"
> Quote Character, ASCII character 254 "þ"
> Multi-Entry Delimiter, ASCII character 174: "®"

**F.**     To the extent it exists at the time of production, identification of any objective coding for any hard copy documents must also be provided.

**VI.    PRODUCTION OF ESI**

Compliance with the procedures set forth below will constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E).

**A.     Form of Production.**  Except as otherwise provided in this paragraph, production of all non-redacted ESI, with the exception of Microsoft Excel files and nonprintable files, must include single-page Bates-stamped TIFF images, each accompanied by a load file with fielded data, a .txt file containing extracted text or OCR Text, and an image load file for the TIFFs. Except for the United States, the Parties must produce all non-redacted files in native format.  The

1    United States must produce non-redacted Microsoft PowerPoint, Excel, and Word files and non-

2    printable files in native format.  All images of redacted Microsoft Word documents and

3    PowerPoint presentations must be processed to show and reveal all comments, revision marks,

4    speaker notes, or other user-created data that the source application can display to a user.  Non-

5    redacted Microsoft Excel files and nonprintable files must be produced in native format only,

6    with one page placeholder TIFF image for each file, as set forth in Section VI.D below.  Redacted

7    ESI must be produced as TIFF images, accompanied by a load file with fielded data, a .txt file

8    containing OCR'ed text, and an image load file for the TIFFs.  Except for image files embedded

9    in emails collected after the date of filing of this Order (which must not be produced as separate

10   attachments), any document embedded in a produced document (*e.g.*, an Excel file embedded in a

11   PowerPoint file) must be produced separately as an attachment.  Notwithstanding the forgoing,

12   the production of structured and handheld data as identified and described in Sections VI.O and

13   VI.P must be made in accordance with the agreement of the parties contemplated by those

14   sections.

15        **B.**     **Document Image Format.**  Except as otherwise provided, all non-native black

16   and white images must be produced as single-page, Group IV, 300 DPI TIFFs.  For all

17   productions by the FCA Defendants in *United States v. Fiat Chrysler Automobiles N.V., et. al*,

18   No. 3:17-cv-03446-EMC, if images are provided for an original document that contains color, the

19   images will be provided as single page, 300 DPI JPG images with JPG compression and a high-

20   quality setting (so as to not degrade the original image), but only to the extent such a requirement

21   to produce color images does not require a Producing Party to re-produce the Reproductions,

22   defined in Section III (Regulatory Productions) herein.  Notwithstanding the preceding, if a

23   Requesting Party has received an image in black and white and believes in good faith that color is

24   important to interpreting the document, upon written request by the Requesting Party, the

25   Producing Party will take good faith measures to produce the image in color.  The Parties agree to

26   meet and confer concerning any disputes over such requests.  The Parties reserve the right to

27   revisit their agreement to this paragraph if Defendants' productions reveal a large number of

28

1   black and white documents and color appears to be important in order to interpret or understand

2   the documents.

3      **C.**      E-mail and attachments will be produced according to the specifications in

4   subparagraph VI.A, above.  If the Producing Party redacts any part of the e-mail before producing

5   it, OCR text should be provided in place of extracted text.  E-mail attachments must be processed

6   as though they were separate documents, and the Data Load File must include a field in which the

7   Producing Party identifies, for each e-mail, the Bates range of any attachments.

8      **D.**      Native files will be produced in a separate folder on the production media.  The

9   Data Load File must contain a field that identifies the file path of the native file corresponding to

10  each document.  For each non-redacted Microsoft PowerPoint and Word file, the United States

11  must produce the native file in addition to a Bates-stamped TIFF image.  Defendants and

12  Plaintiffs other than the United States must produce each non-redacted file as a native file in

13  addition to a Bates-stamped TIFF images.  For non-redacted Microsoft Excel files and non-

14  printable files, the TIFF image must be a one page placeholder that shows: (a) the name of the

15  native file, (b) a unique Bates number, and (c) a Confidentiality Designation.

16     **E.**      With the exception of image files embedded in emails and not produced

17  separately, embedded files must be treated as though they were separate files, except that the

18  Bates range of the parent document and the documents embedded therein must be identified in the

19  same manner as the Bates range of an e-mail attachment.

20     **F.**      Before any Party produces any other kind of electronic data, including data from

21  databases, CAD drawings, GIS data, videos, etc., the Parties will meet and confer to determine a

22  reasonably useable form for the production.

23     **G.      Text Files.**  For each document, a single text file must be provided along with the

24  image files and the metadata discussed in Section VI.M.  The text file name must be the same as

25  the Bates number of the first page of the document.  File names may not have any special

26  characters or embedded spaces.  Electronic text must be extracted directly from the native

27  electronic file unless the document requires redaction, is an image file, or is any other native

28  electronic file that does not contain text to extract (*e.g.,* non-searchable PDFs).  In these instances,

1  a text file must be created using OCR and may be produced in lieu of extracted text.  Extracted

2  text must be provided in UTF-8 text format.

3       **H.**     **Redactions.**  In situations where redaction of information is required, such

4  redactions must be made in a way that ensures the integrity of the remaining text is preserved for

5  OCR (*e.g.*, redactions must not obscure non-redacted text).  Any redactions must be clearly

6  visible on the face of the produced document (*e.g.*, the Parties must use black, not white, to make

7  redactions on documents with a white background).  Redactions must be applied as set forth in

8  PTO No. 13.  Notwithstanding the preceding, if a Requesting Party has received a redacted non-

9  native document and believes in good faith that the redacted native file is important to

10  interpreting the document, upon written request by the Requesting Party, the Producing Party will

11  take good faith measures to produce the redacted native file in an acceptable format.  The Parties

12  agree to meet and confer concerning any disputes over such requests.

13       **I.**     **Document Unitization.**  For files produced as TIFF images, each page of a

14  document must be electronically saved as an image file.  If a document consists of more than one

15  page, the unitization of the document and any attachments must be maintained as it existed in the

16  original when creating the image files.  The Parties must produce a unitization file ("load file")

17  for all produced documents in accordance with the following formatting:

18            **OCR and Extracted Text Files (.TXT Files)**:

19            •  Single text file per document containing all of the document's pages

20            •  Filenames should be of the form:

21                 <Bates num>.txt

22                 Where <Bates num> is the BATES number of the first page in the document.

23            •  Text must be encoded in UTF-8.

24

25

26

27

28

**Image Files**:

- Single page per image
- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable
- Filenames should be of the form:

  "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files**:

- "Concordance Default" delimited text file utilizing the following characters:
  - The "comma" delimiter is "¶" (020)
  - The "quote" delimiter is "þ" (254)
  - The "new line" delimiter is "®" (174)
- First line must contain the column/field names (set forth in Paragraph 1(c) herein)
- Every row must have the same number of columns/fields (empty values are acceptable)
- Text must be encoded in UTF-8

The Parties agree to meet and confer to discuss all unitization file/load file specifications, if needed.

**J.     Bates Numbering and Other Unique Identifiers.**  For files produced as TIFF images, each page of a produced document must have a legible, unique page identifier ("Bates Number") electronically burned onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with.  There may be no other legend or stamp placed on the document image unless a document (i) qualifies for confidential treatment pursuant to PTO 10, or any other protective order entered by this Court in this Action, or (ii) has been redacted in accordance with applicable law or other court order (including any protective order), entered by this Court or any other court.  In the case of Confidential or Highly Confidential Information, as defined in PTO 10, or materials redacted in accordance with applicable law or other order (including any protective order) entered by this Court or another court, (1) a designation may be burned onto the document's image at a location that does not obliterate or obscure any non-redacted information from the source document, and (2) for image

1  files, the words "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER (MDL 2777)" or

2  "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER (MDL 2777)" must be

3  branded onto each image (as opposed to an overlay), and must be positioned to avoid obscuring

4  parts of the image that are not blank.  The Parties acknowledge that the withholding of irrelevant

5  or privileged documents could result in gaps in the sequence of Bates numbers.

6      **K.      Production Media.**  Documents must be produced on CD-ROM, DVD, external

7  hard drive (with standard PC-compatible interface), or such other readily accessible computer or

8  electronic media or via sFTP as the Parties may hereafter agree upon (the "Production Media").

9  The Parties must accompany all document productions with a letter identifying the production

10 date and the Bates number range of the materials contained on such Production Media item.

11     **L.      Metadata.**  With each produced ESI file, the Parties must produce each of the

12 applicable metadata fields described in Appendix A (to the extent available and technically

13 achievable).  The metadata must be produced in the following format:  (1) an OpticonTM or

14 IPRO® "cross reference file" which associates each Bates number with its corresponding single-

15 page TIFF image file; and (2) a Data Load File containing Concordance® delimited text that will

16 populate fields in a searchable flat database environment, containing one line for each document

17 and each of the applicable fields as described in Appendix A.  Unless otherwise specified, by

18 producing metadata, each Party affirms that such metadata will come from its records, with the

19 exception of vendor-entered source/Custodian and document/production number fields.  Nothing

20 in this stipulation requires a Party to manually populate a metadata field in Appendix A (other

21 than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that

22 the Parties agree to comply with reasonable requests for metadata that cannot be extracted from a

23 document.  For the avoidance of doubt, nothing in this Order acts as a waiver of any objection

24 that may exist to the production of such data.

25     **M.      Attachments.**  Attachments must be mapped to their parent(s) by the Attachment

26 Range.  If a parent email or one of its attachments is produced, all members of its family, except

27 for privileged documents, and associated text and metadata, must be produced.

28

N. **Structured or Aggregated data – Databases, Enterprise Systems, and Third Party Cloud Systems.** The Parties will meet and confer to address the identification, production, and production format of any responsive data contained in a database, other structured or aggregated data source, or third party cloud-based storage system. Prior to any such meet and confer, the Producing Party(ies) will provide sufficient information to enable the Requesting Party(ies) to evaluate the Producing Party's proposed method and format of production. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

O. **Mobile and Handheld Device Documents and Data.** The Parties will meet and confer to address the preservation, identification, production, and production format of any unique responsive documents and data contained on any mobile or handheld device, including responsive email, documents, application data, text files, voice mail, audio files, other text-based and image-based information and messages contained on such devices. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

P. **Non-English Documents.** The Parties must produce any English translations of Non-English documents made in the normal course of business. The Parties are not required to produce documents translated at the request of counsel. The Parties will meet and confer concerning procedures for using documents translated at the request of counsel in depositions and at trial. In the event that the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

## VII. ENCRYPTION

To maximize the security of information in transit, any media on which Documents are produced may be encrypted by the Producing Party. In such cases, the Producing Party will transmit, under separate cover, the encryption key or password to the Receiving Party or Parties.

## VIII. EXCEPTION FILES

The Parties will use reasonable efforts and standard industry practices to address Documents that present imaging or form production problems (including encrypted and/or protected files identified during the processing of ESI) ("Exception Files"). The Parties will meet

1  and confer regarding procedures that will be used to identify, access, and process Exception Files.

2  In the event that the Parties cannot reach agreement on the handling of Exception Files through

3  the meet and confer process, the matter may be submitted to the Court for determination.

4  **IX.   PROCESSING OF NON-PARTY DOCUMENTS**

5      **A.**     A Party that issues a non-Party subpoena ("Issuing Party") must include a copy of

6  this Order with the subpoena and request that the non-Party produce documents in accordance

7  with the specifications set forth herein.

8      **B.**     The Issuing Party is responsible for producing to all other Parties any document(s)

9  obtained pursuant to a subpoena to any non-Party in the form in which the document(s) was/were

10  produced by the non-Party.  To the extent practical given the data volume, productions by a non-

11  Party should be produced by the Issuing Party to all other Parties within seven (7) calendar days

12  of the non-Party's production to the Issuing Party.

13      **C.**     For the avoidance of doubt, nothing in this Order is intended to or should be

14  interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or non-Parties

15  to object to a subpoena.

16  **X.   USE OF DOCUMENTS DURING LITIGATION**

17      **A.     Preservation Does Not Affect Discoverability or Claims of Privilege.**  Nothing

18  in this Order affects the preservation requirements set forth in PTO 7.  By preserving documents

19  or ESI for the purpose of this litigation, the Parties are not conceding that such material is

20  discoverable, nor are they waiving any claim of privilege.

21      **B.     Other Preservation Obligations Not Affected**.  Nothing in this agreement affects

22  any other obligations of the Parties to preserve documents or information for other purposes, such

23  as pursuant to court order, administrative order, statute, or in response to other anticipated

24  litigation.

25  **XI.   LIMITATIONS ON DISCOVERY**

26      **A.     No Discovery of Material Not Required To Be Preserved**.  Absent a showing of

27  extraordinary circumstances, the Parties may not seek discovery of items that need not be

28  preserved pursuant to the PTO 7.  Any discovery request seeking such information must be

served separately from discovery requests seeking other materials and must include a statement showing good cause for the discovery of such materials, considering the limitation of Federal Rule 26(b)(2)(C).  If any general discovery request is susceptible of a construction that calls for the production of items that need not be preserved pursuant to PTO 7, such items need not be searched for, produced, or identified on a privilege log pursuant to Fed. R. Civ. P. 26(b)(5).

**B.**      **Privileged Materials in the Custody of Counsel**.  The Parties will meet and confer and attempt to reach agreement concerning whether there is a need to collect, search, or produce documents in response to general discovery requests that are in the possession of outside counsel to the Parties.

## XII.   <u>PRIVILEGED INFORMATION AND PREPARATION OF PRIVILEGE LOGS</u>

Documents or Information subject to this Order that are subject to a claim of privilege will be treated in a manner consistent with PTO No. 13, unless otherwise noted.

## XIII.   <u>MISCELLANEOUS PROVISIONS</u>

**A.**      The Parties will make good faith efforts to comply with and resolve any differences concerning compliance with this Order.  No Party may seek relief from the Court concerning compliance with this Order unless it has first conferred with the other Parties.

**B.**      **Third Party Data.**  The Parties will meet and confer before serving any subpoenas in this matter on commercial e-mail providers, such as Google™ or Yahoo™, or any social media companies such as Facebook™ or Twitter™.

**C.**      **Effect of Order.**  The Parties' agreement to this Order is without prejudice to the right of any Party to seek an order from the Court to rescind or amend this Order for good cause shown.  Nothing in this Order abridges the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter.

**D.**      **Additional Requests.**  The Parties reserve the right to propound additional Requests for Production that expressly require the production of certain categories of documents without relying on text-based search or classification technology.

1  **XIV.    INTEGRATION/APPENDICES**

2          The following documents are incorporated herein by reference: "Appendix A" is a table

3  describing the fields to be included in the document productions by each Producing Party and

4  governed by this Order.

5

6          **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

7

8  Dated: November 14, 2017          Respectfully submitted,

9                                    LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

10

11                                   By: /s/ *Elizabeth J. Cabraser*
                                         Elizabeth J. Cabraser
12
                                     275 Battery Street, 29th Floor
13                                   San Francisco, CA  94111-3339
                                     Telephone:  (415) 956-1000
14                                   Facsimile:   (415) 956-1008
                                     ecabraser@lchb.com
15
                                     *Plaintiffs' Lead Counsel and Chair of the Plaintiffs'*
16                                   *Steering Committee*

17

18 Dated:  November 14, 2017         U.S. DEPARTMENT OF JUSTICE

19                                   By: /s/ *Leigh P. Rendé*
                                         Leigh P. Rendé
20
                                     United States Department of Justice
21                                   Environment and Natural Resources Division
                                     Environmental Enforcement Section
22                                   P.O. Box 7611, Ben Franklin Station
                                     Washington, DC 20044-7611
23                                   Telephone:  (202) 514-1461
                                     leigh.rende@usdoj.gov
24
                                     *Government Coordinating Counsel*
25

26

27

28

1460966.3                            - 17 -                          [PROPOSED] PRETRIAL ORDER NO.: __
                                                                     STIPULATED ESI PROTOCOL
                                                                     3:17-MD-02777-EMC

1    Dated:  November 14, 2017          SULLIVAN & CROMWELL LLP

2

3                                        By: */s/ Robert J. Giuffra, Jr.*
                                              Robert J. Giuffra, Jr.

4
                                         Robert J. Giuffra, Jr.
5                                        William B. Monahan
                                         Darrell S. Cafasso
6                                        Sullivan & Cromwell LLP
                                         125 Broad Street
7                                        New York, New York 10004
                                         Telephone:  (212) 558-4000
8                                        Facsimile:   (212) 558-3588
                                         giuffrar@sullcrom.com
9                                        monahanw@sullcrom.com
                                         cafassod@sullcrom.com
10
                                         *Counsel for FCA US LLC, Fiat Chrysler Automobiles N.V.,*
11                                       *V.M. Motori S.p.A., V.M. North America Inc., and Sergio*
                                         *Marchionne*
12

13   Dated:  November 14, 2017          CLEARY GOTTLIEB STEEN & HAMILTON LLP

14                                       By:   */s/ Matthew D. Slater*
                                              Matthew D. Slater
15
                                         Cleary Gottlieb Steen & Hamilton LLP
16                                       2000 Pennsylvania Ave., N.W.
                                         Washington, DC 20006
17                                       Telephone:   (202) 974-1500
                                         Facsimile:    (202) 974-1999
18                                       mslater@cgsh.com

19                                       *Counsel for Robert Bosch GmbH and Robert Bosch LLC*

20

21

22

23

24

25

26

27

28

1

**ATTESTATION (CIVIL LOCAL RULE 5-1(i)(3))**

2

In accordance with Civil Local Rule 5-1(i)(3), I attest the concurrence in the filing of this

3

document has been obtained from the signatories.

4

Dated:  November 14, 2017            _/s/ Elizabeth J. Cabraser_
                                     Elizabeth J. Cabraser

5

6

7

8

9

10

11

12

13

14   **PURSUANT TO STIPULATION, IT IS SO ORDERED**

15

16   Dated: November 17        , 2017        _____
             _____                 HON. EDWARD M. CHEN
17                                           United States District Court Judge

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 14, 2017, a true and correct copy of the foregoing was electronically filed and served electronically via the Court's CM/ECF system, which will automatically serve notice to all registered counsel of record.


By:      /s/ *Elizabeth J. Cabraser*
         Elizabeth J. Cabraser

[PROPOSED] PRETRIAL ORDER NO.: __
STIPULATED ESI PROTOCOL
3:17-MD-02777-EMC

## APPENDIX A

## FIELDS TO EXCHANGE

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| Bates Beg | Text | Bates number for the TIFF image of the first page. | Bates number for the TIFF image of the first page. | Bates number for the TIFF image of the first page, or, if spreadsheets/PowerPoints are not TIFFed, the Bates number of the placeholder page. | Bates number branded onto a .JPG file that has the same resolution as the native image file, or at high resolution. | Bates number for the TIFF image of the first page. |
| Bates End | Text | Bates number for the TIFF image of the last page. | Bates number for the TIFF image of the last page. | Bates number for the TIFF image of the last page or, if spreadsheets/PowerPoints are not TIFFed, the Bates number of the placeholder page. | Bates number branded onto the native image file. | Bates number for the TIFF image of the last page. |
| Page Count | | Number of pages in a document. | Number of pages in a document. | Number of pages in a document. | Number of pages in a document. | Number of pages in a document. |

[1] The Producing Party will produce the fields contained in Appendix A to the extent available and technically achievable and to the extent required by this Order.

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| Attach Beg | Text | Bates number of the first page of the parent document | "Attachments" include all embedded files other than images and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of the parent document is shown | "Attachments" include all embedded files other than images and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of parent document is shown. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of the parent document is shown. | "Attachments" include all documents that were physically attached by clips, staples, or binding. Bates number of the first page of the parent document is shown. |
| Attach End | Text | Bates number of the last page of the last attachment | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the last page of the last attachment is shown | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the last page of the last attachment is shown. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the last page of the last attachment is shown. | "Attachments" include all documents that were physically attached by clips, staples, or binding. Bates number of the first page of the parent document last page of the last attachment is shown. |

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| Attachment Range | Text | Bates number of the first page of the parent document and the last page of the last attachment. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of the parent document and the last page of the last attachment is shown. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of parent document and the last page of the last attachment is shown. | "Attachments" include all embedded files and all documents (including e-mails) to which this file was attached or in which it was embedded. Bates number of the first page of the parent document and the last page of the last attachment is shown. | "Attachments" include all documents that were physically attached by clips, staples, or binding. Bates number of the first page of the parent document and the last page of the last attachment is shown. |
| Attach Count | | Number of attachments to, or documents embedded in, an email or edoc | Number of attachments to, or documents embedded in, an email or edoc. | Number of attachments to, or documents embedded in an email or edoc. | Number of attachments, or documents embedded into an email or edoc. | Number of attachments |
| Attach Title | | Email attachments title list. | <blank> | <blank> | <blank> | <blank> |
| Application | | Type of application used to generate the document. | Type of application used to generate the document. | Type of application used to generate the document. | Type of application used to generate the document. | <blank> |
| Document Category | | The category of document (Email, Email Attachment, or E-Doc). | The category of document (Email, Email Attachment, or E-Doc). | The category of document (Email, Email Attachment, or E-Doc). | The category of document (Email, Email Attachment, or E-Doc). | "Physical" |
| File size | | The size of the file including embedded attachments. | The size of the file including embedded attachments. | The size of the file including embedded attachments. | The size of the file including embedded attachments. | <blank> |

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| Custodian | Text | The name of the person who had primary control over the location from which the document was collected. | The name of the person who had primary control over the location from which the document was collected. | The name of the person who had primary control over the location from which the document was collected. | The name of the person who had primary control over the location from which the document was collected. | The name of the person maintaining the file from which the paper was obtained. |
| Duplicate Custodians | Paragraph | The names of the persons who had primary control over the locations from which the unproduced duplicate copies of the documents were collected. | The names of the persons who had primary control over the locations from which the unproduced duplicate copies of the documents were collected. | The names of the persons who had primary control over the locations from which the unproduced duplicate copies of the documents were collected. | The names of the persons who had primary control over the locations from which the unproduced duplicate copies of the documents were collected. | <blank> |
| Sender Combined | Paragraph | "From" field. | <blank> | <blank> | <blank> | <blank> |
| Addressee Combined | Paragraph | "To" field. | <blank> | <blank> | <blank> | <blank> |
| CC | Paragraph | "CC" field. | <blank> | <blank> | <blank> | <blank> |
| BCC | Paragraph | "BCC" field. | <blank> | <blank> | <blank> | <blank> |
| Email Subject | Paragraph | "Subject" field. | <blank> | <blank> | <blank> | <blank> |
| Email Sent Date[2] | Date | The date and time the message was sent. | <blank> | <blank> | <blank> | <blank> |

---

[2] When a metadata field includes a date, the date shall be provided in the following format:  mm/dd/yyyy.  When a metadata field includes a time, the time shall be provided in the following format: hh:mm:ss AM.  eDiscovery Providers should take into account different geographical expressions of dates (e.g., MM/DD/YY vs DD/MM/YY) to meet these production specifications.

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | **E-mail** | **Word Processing, PDFs, or other file types (e.g., CAD)** | **Spreadsheets and PowerPoints** | **Digital Photos** | **Paper** |
| Message ID | Text | For e-mails in Microsoft Outlook, the "Message ID" field; For e-mail stored in Lotus Notes, the UNID field. | <blank> | <blank> | <blank> | <blank> |
| Email Conversation Index | | ID used to tie together e-mail threads. | <blank> | <blank> | <blank> | <blank> |
| Hash | Paragraph | The hash value calculated using commercially acceptable methods and based on all addresses, sent date/time, subject line, body, attachment names, and optionally attachment count | The hash value calculated using commercially acceptable methods when the file was collected (or, alternatively, when it was processed into the review database). | The hash value calculated using commercially acceptable methods when the file was collected (or, alternatively, when it was processed into the review database). | The hash value calculated using commercially acceptable methods when the file was collected (or, alternatively, when it was processed into the review database). | <blank> |
| File Name | Paragraph | The name of the file. | The name of the file. | The name of the file. | The name of the file. | <blank> |
| Duplicate Custodians File Name (pending further discussion between the Parties)[3] | Paragraph | <blank> | The names of the unproduced duplicate copies of the files. | The names of the unproduced duplicate copies of the files. | The names of the unproduced duplicate copies of the files. | <blank> |

---

[3] Pursuant to the ESI Protocol, the Parties will continue to meet and confer to assess whether it is feasible to provide this field.

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| DocTitle | | Internal file Title property. | Internal file Title property. | Internal file Title property. | Internal file Title property. | <blank> |
| Directory Path[4] | Paragraph | The full directory path, including file name, of the mail file, e.g., PST, from which the email was obtained | The name of the folder from which the file was obtained, including any parent folders. | The name of the folder from which the file was obtained, including any parent folders | The name of the folder from which the file was obtained, including any parent folders. | The title of the folder in which the document was kept, unless folder cover was scanned prior to scanning of folder contents |
| Folder Path | Paragraph | The name of the email folder from which the email was obtained, including any parent email folders[5] | | | | |
| Duplicate Custodians Directory Path | Paragraph | The full directory paths, including file names, of the mail files, e.g., PSTs, from which the unproduced duplicate copies of the emails were obtained | The names of the folders from which the unproduced duplicate copies of the files were obtained, including any parent folders. | The names of the folders from which the unproduced duplicate copies of the files were obtained, including any parent folders | The names of the folders from which the unproduced duplicate copies of the files were obtained, including any parent folders. | <blank> |
| Duplicate Custodians Folder Path | Paragraph | The names of the email folders from which the unproduced duplicate copies of the emails were obtained, including any parent email folders[6] | <blank> | <blank> | <blank> | <blank> |
| Doc extension | | The file extension of a document. | The file extension of a document. | The file extension of a document. | The file extension of a document. | <blank> |

[4] For the Directory Path and Folder Path fields (and Duplicate Custodians Directory Path and Folder Path fields) the FCA defendants will provide a single combined "Path" field, which will contain both the directory path and e-mail folder path information.
[5] Pursuant to the ESI Protocol, the United States need not provide this information.
[6] Pursuant to the ESI Protocol, the United States need not provide this information.

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| File_Path | Paragraph | The path to the native file on the production media (if it is being provided). | The path to the native file on the production media (if it is being provided). | The path to the native file on the production media (if it is being provided).. | The path to the native file on the production media (if it is being provided). | <blank> |
| Text_Path | Paragraph | The path to the extracted text/OCR file on the production media. | The path to the extracted text/OCR file on the production media. | The path to the extracted text/OCR file on the production media. | The path to the extracted text/OCR file on the production media. | The path to the extracted text/OCR file on the production media. |
| Last Modified Date | | <blank> | Internal file property: the most recent date when the e-doc was modified. | Internal file property: the most recent date when the e-doc was modified. | Internal file property: the most recent date when the e-doc was modified. | <blank> |
| Last Modified Time | | <blank> | Internal file property: the most recent time when the e-doc was modified. | Internal file property: the most recent time when the e-doc was modified. | Internal file property: the most recent time when the e-doc was modified. | <blank> |
| Last Modified By | | <blank> | Internal file property: the last person who modified the e-doc. | Internal file property: the last person who modified the e-doc. | Internal file property: the last person who modified the e-doc. | <blank> |
| Author | | <blank> | Internal file property: Person who created the e-doc. | Internal file property: Person who created the e-doc. | Internal file property: Person who created the e-doc. | <blank> |
| Redacted | | Identifies whether the document is redacted. | Identifies whether the document is redacted. | Identifies whether the document is redacted. | Identifies whether the document is redacted. | Identifies whether the document is redacted. |
| Created Date | | <blank> | Internal file property: Date when the e-doc was created. | Internal file property: Date when the e-doc was created. | Internal file property: Date when the e-doc was created. | <blank> |
| Created Time | | <blank> | Internal file property: Time when the e-doc was created. | Internal file property: Time when the e-doc was created. | Internal file property: Time when the e-doc was created. | <blank> |

| Name of Field | Type of field | Contents[1] | | | | |
|---|---|---|---|---|---|---|
| | | E-mail | Word Processing, PDFs, or other file types (e.g., CAD) | Spreadsheets and PowerPoints | Digital Photos | Paper |
| Received Date | | Date when email was received. | <blank> | <blank> | <blank> | <blank> |
| Received Time | | Time when email was received. | <blank> | <blank> | <blank> | <blank> |
| Time Zone Offset | | If time zone is not normalized to UTC, local time relative to UTC (e.g., Eastern time is -4 for part of the year and -5 for part of the year) | If time zone is not normalized to UTC, local time relative to UTC (e.g., Eastern time is -4 for part of the year and -5 for part of the year) | If time zone is not normalized to UTC, local time relative to UTC (e.g., Eastern time is -4 for part of the year and -5 for part of the year) | If time zone is not normalized to UTC, local time relative to UTC (e.g., Eastern time is -4 for part of the year and -5 for part of the year) | <blank> |
| Last Print Date | | <blank> | Internal file property: Last time when the e-doc was printed. | Internal file property: Last time when the e-doc was printed. | Internal file property: Last time when the e-doc was printed. | <blank> |
| Confidentiality Level | Text | Level of confidentiality assigned | Level of confidentiality assigned | Level of confidentiality assigned | Level of confidentiality assigned | Level of confidentiality assigned |
| Producing Party | Text | Agency (US) or Entity (Defendants) from whom email was collected | Agency (US) or Entity (Defendants) from whom documents were collected | Agency (US) or Entity (Defendants) from whom documents were collected | Agency (US) or Entity (Defendants) from whom documents were collected | Agency (US) or Entity (Defendants) from whom documents were collected |