1

Elizabeth J. Cabraser (State Bar No. 83151)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP

2

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339

3

Telephone: 415.956.1000
Facsimile: 415.956.1008

4

Email:  ecabraser@lchb.com

5

*Plaintiffs' Lead Counsel*

6

*(Plaintiffs' Steering Committee Members Listed on
Signature Page)*

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN FRANCISCO DIVISION

11

12

IN RE CHRYSLER-DODGE-JEEP
ECODIESEL MARKETING, SALES
PRACTICES, AND PRODUCTS
LIABILITY LITIGATION

13

14

15

This Document Relates to:

16

ALL ACTIONS

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 17-md-02777 EMC

**PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION**

Date: September 17, 2018
Time: 2:15 p.m.
Courtroom: 5, 17th Floor

The Honorable Edward M. Chen

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 2

STATEMENT OF COMMON FACTS ............................................................................... 4

I.      Defendants' Dirty Diesel Scheme ............................................................................ 4

II.     FCA's Pervasive and Misleading Marketing and Advertising Campaign ............... 7

III.    Defendants' Scheme is Uncovered ......................................................................... 10

APPLICABLE LEGAL STANDARDS ............................................................................ 11

ARGUMENT ..................................................................................................................... 12

I.      The Classes Are Objectively Defined and Can Be Effectively Notified. ............. 12

II.     Rule 23(a)(1)—Numerosity: the Nationwide and State Classes Are Too Numerous
for Individual Joinder. ........................................................................................... 13

III.    Rule 23(a)(3)—Typicality: Plaintiffs' Claims Are Typical of the Claims of All
Class Members. ...................................................................................................... 13

IV.    Rule 23(a)(4)—Adequacy: The Class Representatives and Class Counsel Will
Adequately Protect the Interests of the Class. ...................................................... 14

V.     Rules 23(a)(2) and 23(b)(3)—Commonality and Predominance: Common Answers
to the Common Questions Relating to Defendants' Knowledge and Conduct
Predominate and Drive the Resolution of This Action. ......................................... 16

        A.    Plaintiffs' Nationwide Civil RICO Claims Raise Overwhelmingly
Common Issues. .......................................................................................... 17

              1.    Each Element of Plaintiffs' RICO Claims Will Be Proved by
Evidence Common to the Class. ...................................................... 20

              2.    The Predicate Acts of Mail or Wire Fraud Comprised a Common
Course of Conduct. ......................................................................... 21

              3.    Proximate Causation Presents a Common Question for Classwide
Proof. ............................................................................................... 22

              4.    Plaintiffs Have Proposed an Appropriate Methodology for
Determining Damages Class-Wide. ................................................ 27

        B.    Plaintiffs' Fraud-on-Consumer Claims (Common Law Fraud and Statutory
Consumer Protection Statutes) Raise Predominantly Common Questions
with Common Answers. ............................................................................... 28

              1.    Affirmative Misrepresentation (EcoDiesel Name/Badge) ............. 29

              2.    Fraudulent Concealment/Omission (Fuel Economy/Performance) .......... 34

              3.    "Straight Omission/Concealment" (Selling Vehicles with Hidden
Defeat Devices) .............................................................................. 37

        C.    Plaintiffs' MMWA Claims Raise Predominantly Common Questions With
Common Answers. ....................................................................................... 38

              1.    Implied Warranty ............................................................................ 38

              2.    Express Warranty ............................................................................ 40

        D.    Plaintiffs Will Prove Damages Tied to Their Theories of Liability Using a
Straightforward Methodology Applicable to the Entire Class. ................... 42

- i -

1

**TABLE OF CONTENTS**
**(continued)**

2
Page

3       VI.      Rule 23(b)(3)—Superiority: A Class Action Is Superior to Any Other Available
                 Methods for Fairly and Efficiently Adjudicating the 100,000+ EcoDiesel Claims
4                Presented in This Litigation. ........................................................................................... 45

5       CONCLUSION ................................................................................................................................ 46

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page

## CASES

*Ackerman v. Coca-Cola Co.*,
No. 09 CV 395 DLI RML, 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ............................ 33

*Affiliated Ute Citizens v. United States*,
406 U.S. 128 (1972) .................................................................................................................... 25

*Alires v. McGehee*,
85 P.3d 1191 (Kan. 2004) .......................................................................................................... 29

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ......................................................................................................... 3, 17, 46

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .............................................................................................................. 12, 35

*Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co., Ltd.*,
53 F.Supp.3d 279 (D. Mass. 2014) ......................................................................................... 35

*Anderson v. Kriser*,
266 P.3d 819 (Utah 2011) .......................................................................................................... 35

*Andreason v. Felsted*,
137 P.3d 1 (Utah App. 2006) .................................................................................................... 34

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) .................................................................................................................... 22

*Aspinall v. Philip Morris Cos. Inc.*,
813 N.E.2d 476 (Mass. 2004) ................................................................................................... 33

*Aztec Int'l Foods, Inc. v. Duenas*,
No. CA2012-01-002, 2013 Ohio App. LEXIS 370 (Ohio Ct. App. Feb. 11,
2013) ............................................................................................................................................. 29

*Baker v. Castle & Cooke Homes Haw., Inc.*,
Civ. No. 11-00616 SOM-RLP, 2014 WL 1669131 (D. Haw. Jan. 31, 2014) ...................... 39

*Baker v. Castle & Cooke Homes Haw., Inc.*,
Civ. No. 11-00616 SOM-RLP, 2014 WL 1669158 (D. Haw. Apr. 24, 2014) ..................... 39

*Bank of Am., N.A. v. Narula*,
261 P.3d 898 (Kan. Ct. App. 2011) .......................................................................................... 34

*Bateman v. Am. Multi-Cinema, Inc.*,
623 F.3d 708 (9th Cir. 2010) .................................................................................................... 11

*Benoit v. Perkins*,
104 A. 254 (N.H. 1918) .............................................................................................................. 35

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528 (N.D. Cal. 2015) .............................................................................................. 25

*Binder v. Gillespie*,
184 F.3d 1059 (9th Cir. 1999) .................................................................................................. 25

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .................................................................................................... 11

**TABLE OF AUTHORITIES**
(continued)

Page

*Bohac v. Walsh*,
   223 S.W.3d 858 (Mo. Ct. App. 2007).................................................................. 29, 35

*Braun v. Wal-Mart, Inc.*,
   No. 19-CO-01-9790, 2003 Minn. Dist. LEXIS 3 (D. Minn. Nov. 3, 2003) ........... 32

*Bridge v. Phoenix Bond & Indemnity Co.*,
   553 U.S. 639 (2008)....................................................................................... 22, 23, 27

*Briseno v. ConAgra Foods, Inc.*,
   844 F.3d 1121 (9th Cir. 2017)................................................................................. 13

*Broin v. Philip Morris Cos., Inc.*,
   641 So.2d 888 (Fla. App. 3 Dist. 1994) .................................................................. 31

*Brown v. Ind. Nat'l Bank*,
   476 N.E.2d 888 (Ind. Ct. App. 1985)...................................................................... 34

*Brunson v. La.-Pac. Corp.*,
   266 F.R.D. 112 (D. S.C. 2010) ................................................................................ 39

*Buchanan v. Improved Props., LLC*,
   7 N.E.3d 634 (Ohio Ct. App. 2014) ........................................................................ 35

*Butler v. Sears*,
   702 F.3d 359 (7th Cir. 2012), *cert. granted, judgment vacated* 569 U.S. 1015
   (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013) ...................... 17, 27, 42

*Carlson v. General Motors Corp.*,
   883 F.2d 287 (4th Cir. 1989).................................................................................. 38

*Carr v. Fleet Bank*,
   812 A.2d 14 (Conn. App. Ct. 2002)................................................................... 29, 34

*Carter v. Berger*,
   777 F.2d 1173 (7th Cir. 1985)................................................................................ 27

*Chamberlin v. Ford Motor Co.*,
   402 F.3d 952 (9th Cir. 2005)................................................................................... 39

*Chapman v. Tristar Products, Inc.*,
   No. 1:16-CV-1114, 2017 WL 1433259 (N.D. Ohio Apr. 24, 2017)...................... 39

*Chateau Homes by RJM, Inc. v. Aucoin*,
   97 So. 3d 398 (La. Ct. App. 2012).................................................................... 29, 34

*Chavez v. Blue Sky Natural Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) ............................................................................ 43

*Cheminova Am. Corp. v. Corker*,
   779 So. 2d 1175 (Ala. 2000) ................................................................................... 39

*CIMB Thai Bank PCL v Stanley*,
   No. 653777/2012, 2013 N.Y. Misc. LEXIS 4280 (N.Y. 2013) ............................. 29

*City of Charleston, SC v. Hotels.com, LP*,
   487 F. Supp. 2d 676 (D.S.C. 2007)......................................................................... 34

*Clark v. McDaniel*,
   546 N.W.2d 590 (Iowa 1996) ........................................................................... 29, 34

**TABLE OF AUTHORITIES**
(continued)

Page

*Clemens v. Hair Club for Men, LLC*,
No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016) ................................. 16

*Cleveland v. City of Lead*,
663 N.W.2d 212 (S.D. 2003) ................................................................. 29

*Cobalt Operating, LLC v. James Crystal Enterps., LLC*,
No. Civ.A. 714-VCS, 2007 WL 2142926 (Del.Ch. July 20, 2007) ........................................ 31

*Cohen v. Trump*,
303 F.R.D. 376 (S.D. Cal. 2014) ................................................. 17, 23, 24, 25

*Colby v. Zimmerman*,
No. 220395, 2001 WL 1219414 (Mich. Ct. App. Oct. 12, 2001) ........................................ 29

*Cole v. Hewlett Packard Co.*,
2004 WL 376471 (Kan. App. 2004) ................................................................. 33

*Coleman v. H2S Holdings, LLC*,
230 F. Supp. 3d 1313 (N.D. Ga. 2017) ................................................................. 29

*Connick v. Suzuki Motor Co., Ltd.*,
675 N.E.2d 584 (Ill. 1996) ................................................................. 33, 34

*Cook's Pest Control, Inc. v. Rebar*,
28 So. 3d 716 (Ala. 2009) ................................................................. 29, 34

*Cope v. Metro. Life Ins. Co.*,
696 N.E.2d 1001 (Ohio 1998) ................................................................. 32

*Daisley v. Riggs Bank, N.A.*,
372 F. Supp. 2d 61 (D.D.C. 2005) ................................................................. 29

*Dale v. DaimlerChrysler Corp.*,
204 S.W.3d 151 (Mo. Ct. App. 2006) ................................................................. 39

*Daniel v. Ford Motor Co.*,
806 F.3d 1217 (9th Cir. 2015) ................................................................. 37

*Dantzig v. Sloe*,
684 N.E.2d 715 (Ohio App. 1996) ................................................................. 34

*Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF,
2016 WL 4385849 (N.D. Aug. 15, 2016) ................................................................. 40

*Delahunt v. Cytodyne Techs.*,
241 F. Supp. 2d 827 (S.D. Ohio 2003) ................................................................. 33

*Dzielak v. Whirlpool Corp.*,
Civ. No. 2:12-89 (KM)(JBC), 2017 WL 6513347 (D.N.J. Dec. 20, 2017) ................ 43

*E. River S.S. Corp. v. Transamerica Delaval, Inc.*,
476 U.S. 858 (1986) ................................................................. 38

*Echols v. Beauty Built Homes*,
647 P.2d 629 (Ariz. 1982) ................................................................. 29

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ................................................................. 20

*Elk River Assocs. v. Huskin*,
691 P.2d 1148 (Colo. App. 1984) ................................................................. 31

**TABLE OF AUTHORITIES**
(continued)

Page

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .................................................................................... 12

*Engalla v. Permanente Med. Grp., Inc.*,
  938 P.2d 903 (Cal. 1997) ......................................................................................... 31

*Eoff v. Forrest*,
  789 P.2d 1262 (N.M. 1990) ...................................................................................... 29

*Evans v. Ameriquest Mortg. Co.*,
  No. 233155, 2003 WL 734169 (Mich. App. Mar. 4, 2003) ...................................... 33

*Everett v. Gilliland*,
  141 P.2d 326 (N.M. 1943) ........................................................................................ 35

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) .................................................................................. 14

*Ex parte Household Retail Svs. Inc.*,
  744 So.2d 871 (Ala. 1999) ....................................................................................... 31

*Faherty v. CVS Pharmacy, Inc.*,
  Civ. A. No. 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011) .................. 39

*Farmers Ins. Co. of Wash. v. Vue*,
  151 Wash. App. 1005 (Wash. Ct. App. 2009) ......................................................... 35

*First Ark. Bank & Trust v. Gill Elrod Ragon Owen & Sherman, P.A.*,
  427 S.W.3d 47 (Ark. 2013) ...................................................................................... 29

*Fleming v. Murphy*,
  No. W2006-00701-COA-R3-CV, 2007 WL 2050930 (Tenn. Ct. App. July 19,
  2007) ......................................................................................................................... 34

*Flynn v. FCA US LLC*,
  No. 15-CV-0855-MJR-DGW, 2018 WL 2063871 (S.D. Ill. Jan. 31, 2018) ............ 42

*Follo v. Florindo*,
  970 A.2d 1230 (Vt. 2009) ......................................................................................... 29

*Fortis Ins. Co. v. Kahn*,
  683 S.E.2d 4, 299 Ga.App. 319 (Ga. App. 2009) ................................................... 31

*Fraser Eng'g Co. v. Desmond*,
  524 N.E.2d 110 (Mass. App. Ct. 1988) ................................................................... 33

*Friedman v. 24 Hour Fitness USA, Inc.*,
  No. CV 06-6282 AHM (CTX), 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009) ....... 19, 26

*G & M Farms v. Funk Irr. Co.*,
  808 P.2d 851 (1991) ................................................................................................. 31

*Garner v. Healy*,
  184 F.R.D. 598 (N.D. Ill. 1999) ............................................................................... 23

*GE Life & Annuity Assurance Co. v. Barbour*,
  191 F.Supp.2d 1375 (M.D. Ga. 2002) ..................................................................... 34

*Gebrayel v. Transamerica Title Ins. Co.*,
  888 P.2d 83 (1995) ................................................................................................... 35

**TABLE OF AUTHORITIES**
(continued)

Page

*Gennari v. Weichert Co. Realtors*,
   691 A.2d 350 (1997) ........................................................................................ 29, 33

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ............................................................................................... 15

*Green v. H & R Block*,
   735 A.2d 1039 (1999) ............................................................................................ 35

*Guilfoyle v. Olde Monmouth Stock Transfer Co.*,
   335 P.3d 190 (Nev. 2014) ...................................................................................... 35

*Gutierrez v. Wells Fargo Bank, NA*,
   704 F.3d 712 (9th Cir. 2012) ............................................................................ 36, 37

*Hall v. Walter*,
   969 P.2d 224 (Colo. 1998) ..................................................................................... 33

*Hambrick v. Healthcare Partners Med. Grp., Inc.*,
   238 Cal. App. 4th 124 (2015) ................................................................................ 34

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................................... 14, 16

*Hardin v. KCS Int'l, Inc.*,
   682 S.E.2d 726 (N.C. Ct. App. 2009) .................................................................... 29

*Harnish v. Widener Univ. Sch. of Law*,
   833 F.3d 298 (3d Cir. 2016) ................................................................................... 42

*Harris v. St. Vincent Healthcare*,
   305 P.3d 852 (Mont. 2013) .................................................................................... 35

*Harvey v. Ford Motor Credit Co.*,
   No. 03A01-9807-CV-00235, 1999 WL 486894 (Tenn. App. July 13, 1999) ........ 34

*Hauspie v. Stonington Partners, Inc.*,
   945 A.2d 584 (Del. 2008) ...................................................................................... 29

*Heller Fin. v. INA*,
   573 N.E.2d 8 (Mass. 1991) .................................................................................... 33

*Hellman v. Thiele*,
   413 N.W.2d 321 (N.D. 1987) ................................................................................. 35

*Henderson v. Chase Home Fin., LLC*,
   No. CV 09-2461, 2010 U.S. Dist. LEXIS 47600 (D. Ariz. May 14, 2010) ........... 34

*Hinchliffe v. Am. Motors Corp.*,
   184 Conn. 607, 440 A.2d 810 (1981) .................................................................... 33

*Hobson v. Entergy Ark., Inc.*,
   432 S.W.3d 117 (Ark. Ct. App. 2014) ................................................................... 34

*Holman v. Howard Wilson Chrysler Jeep, Inc.*,
   972 So. 2d 564 (Miss. 2008) ................................................................................. 35

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992) ............................................................................................... 22

*Hoyt Props. v. Prod. Res. Grp., L.L.C.*,
   736 N.W.2d 313 (Minn. 2007) .............................................................................. 29

**TABLE OF AUTHORITIES**
(continued)

Page

*Hubbard v. Bryson*,
474 P.2d 407 (Okla. 1970) .................................................................................. 35

*Hughes v. The Ester C Co.*,
317 F.R.D. 333 (E.D.N.Y. 2016) ....................................................................... 33

*Humphries v. Becker*,
366 P.3d 1088 (Idaho 2016)............................................................................... 34

*Hunter v. Guardian Life Ins. Co. of Am.*,
162 N.C. App. 477 (2004)................................................................................... 35

*Hunter v. McKenzie*,
197 Cal. 176 (1925) ............................................................................................ 24

*In re Anthem, Inc. Data Breach Litig.*,
162 F. Supp. 3d 953 (N.D. Cal. 2016) ............................................................... 42

*In re Celera Corp. Sec. Litig.*,
No. 5:10-CV-02604-EJD, 2014 WL 722408 (N.D. Cal. Feb. 25, 2014) ............... 18

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd* 844 F.3d 1121 (9th Cir. 2017)..................... 40, 43

*In re Dial Complete Mktg. & Sales Practices Litig.*,
312 F.R.D. 36 (D. N.H. 2015)............................................................................. 39

*In re Estate of Kindsfather*,
108 P.3d 487 (Mont. 2005) ................................................................................. 32

*In re Estate of Lecic*,
312 N.W.2d 773 (Wis. 1981) .............................................................................. 35

*In re First Alliance Mortg. Co.*,
471 F.3d 977 (9th Cir. 2006).......................................................................... 18, 20

*In re Hyundai & Kia Fuel Econ. Litig.*,
881 F.3d 679 (9th Cir. 2018), *en banc petition pending* (Mar. 8, 2018)................................ 36

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014)............................................................................... 43

*In re Kirschner Med. Corp. Sec. Litig.*,
139 F.R.D. 74 (D. Md. 1991).............................................................................. 31

*In re Morning Song Bird Food Litig.*,
320 F.R.D. 540 (S.D. Cal. 2017)................................................................. 19, 23, 24

*In re MyFord Touch Consumer Litig.*,
46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................................. 41

*In re Myford Touch Consumer Litig.*,
No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sep. 14, 2016) ................. 36, 39, 42

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
268 F.R.D. 652 (S.D. Cal. 2010)......................................................................... 23

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
No. 3:05-CV-1018-GPC-WVG, 2013 WL 593414 (S.D. Cal. Feb. 14, 2013)..................... 22

*In re Neurontin Mktg. & Sales Practices Litig.*,
712 F.3d 60 (1st Cir. 2013) ................................................................................. 26

**TABLE OF AUTHORITIES**
(continued)

Page

*In re New England Mut. Life Ins. Co. Sales Prac. Litig.*,
183 F.R.D. 33 (D. Mass. 1998) ............................................................................... 32

*In re Providian Fin. Corp. Sec. Litig.*,
No. C 01-03952 CRB, 2004 WL 5684494 (N.D. Cal. Jan. 15, 2004) ................................... 25

*In re Tobacco II Cases*,
46 Cal. 4th 298, 207 P.3d 20 (2009) .......................................................... 30, 36, 37

*In re West Virginia Rezulin Litigation*,
585 S.E.2d 52 (W. Va. 2003) .............................................................................. 34

*In re Zuren Pex Plumbing Prods. Liab. Litig.*,
644 F.3d 604 (8th Cir. 2011) .............................................................................. 39

*Indoor Billboard/Wash., Inc. v. Integra Telcom of Wash., Inc.*,
170 P.3d 10 (Wash. 2007) ................................................................................. 34

*Int'l Fidelity Ins. Co. v. Wilson*,
443 N.E. 2d 1308 (Mass. 1983) ........................................................................... 33

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
929 A.2d 1076 (N.J. 2007) ................................................................................ 33

*Ironshore Specialty Ins. Co. v. 23andMe, Inc.*,
Case No. 14cv3286-BLF, 2015 WL 2265900 (N.D. Cal. May 14, 2015) .............................. 42

*J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*,
89 P.3d 1009 (Nev. 2004) ................................................................................. 29

*Jacobson v. XY, Inc.*,
No. 07-cv-02670, 2009 U.S. Dist. LEXIS 73456 (D. Colo. 2009) ..................................... 29

*Jaress & Leong v. Burt*,
150 F.Supp.2d 1058 (D. Haw. 2001) ...................................................................... 31

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ............................................................................. 16

*Jones v. ConAgra Foods, Inc.*,
No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ................................. 27

*Jordan v. Paul Fin., LLC*,
285 F.R.D. 435 (N.D. Cal. 2012) .......................................................................... 11

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (2017) ...................................................................... 19, 20, 27, 45

*K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*,
732 N.W.2d 792 (Wis. 2007) .............................................................................. 34

*Kaloti Enters. v. Kellogg Sales Co.*,
699 N.W.2d 205 (Wis. 2005) .............................................................................. 30

*Kennedy v. Jackson Nat'l Life Ins. Co.*,
No. C 07-0371 CW, 2010 WL 2524360 (N.D. Cal. June 23, 2010) ................................... 23

*Kinsey v. Preeson*,
746 P.2d 542 (Colo. 1987) ................................................................................ 29

*Knights of Columbus Council 3152 v. KFS Bd, Inc.*,
791 N.W.2d 317 (Neb. 2010) ......................................................................... 29, 35

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    *Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins. Co. Am. Sales Practice*
        *Litig. Agent Actions),*
4        148 F.3d 283 (3d Cir. 1998) ............................................................................. 46

5    *Lacy v. Morrison,*
        906 So. 2d 126 (Miss. Ct. App. 2004) ............................................................ 29

6    *Lavoie v. Safecare Health Serv.,*
        840 P.2d 239 (Wyo. 1992) ............................................................................... 30

7    *Lawson v. Citizens & Southern Nat'l Bank of S.C.,*
        193 S.E.2d 124 (S.C. 1972) ............................................................................. 35

8

9    *Lay v. Pettengill,*
        38 A.3d 1139 (Vt. 2011) .................................................................................. 35

10   *Leeper v. Cook,*
        688 S.W.2d 94 (Tenn. Ct. App. 1985) ............................................................ 35

11   *Leonard v. Sears, Roebuck & Co.,*
        115 F. Supp. 3d 934 (N.D. Ill. 2015) .............................................................. 39

12   *Lettunich v. Key Bank Nat'l Ass'n,*
        141 Idaho 362, 109 P.3d 1104 (2005) ............................................................. 29

13

14   *Leyva v. Medline Indus.,*
        716 F.3d 510 (9th Cir. 2013)...................................................................... 27, 42

15   *Lightle v. State, Real Estate Comm'n,*
        146 P.3d 980 (Alaska 2006) ............................................................................ 29

16   *Livingston v. K–Mart Corp.,*
        32 F.Supp.2d 369 (S.D. W.Va. 1998) ............................................................. 35

17   *Lohman v. Daimler-Chrysler Corp.,*
        166 P.3d 1091 (N.M. App. 2007) .................................................................... 33

18

19   *London v. Green Acres Trust,*
        765 P.2d 538 (Ariz. App. 1986) ...................................................................... 31

20   *Lopez v. Taylor,*
        195 S.W.3d 627 (Tenn. Ct. App. 2005) .......................................................... 29

21   *Loughridge v. Goodyear Tire & Rubber Co.,*
        192 F. Supp. 2d 1175 (D. Colo. 2002) ............................................................ 34

22

23   *Lovejoy v. AT&T Corp.,*
        92 Cal. App. 4th 85  (Ct. App. 2001), *as modified on denial of reh'g* (Oct. 5,
        2001) .................................................................................................................. 29

24   *Maiz v. Virani,*
        253 F.3d 641 (11th Cir. 2001)......................................................................... 27

25   *Mandarin Trading Ltd. v. Wildenstein,*
        919 N.Y.S.2d 465 (N.Y. 2011) ....................................................................... 35

26

27   *Manzo v. Rite Aid Corp.,*
        No. Civ.A. 18451-NC, 2002 WL 31926606 (Del.Ch. Dec. 19, 2002)................... 31

28   *Martin v. ERA Goodfellow Agency, Inc.,*
        423 S.E.2d 379 (W. Va. 1992) ........................................................................ 30

**TABLE OF AUTHORITIES**
(continued)

Page

*Matthews v. Kincaid*,
746 P.2d 470 (Alaska 1987)..................................................................................... 34

*Mazza v. Am. Honda Motor Co, Inc.*,
666 F.3d 581 (9th Cir. 2012)................................................................................... 36

*McKenzie v. Fed. Express Corp.*,
275 F.R.D. 290 (C.D. Cal. 2011) ............................................................................ 22

*McLaughlin v. Williams*,
665 S.E.2d 667 (S.C. Ct. App. 2008)...................................................................... 29

*McLellan v. Raines*,
No. 94,115, 2006 WL 851394 (Kan. App. Feb. 27, 2006) ..................................... 33

*McManus v. Fleetwood Enters., Inc.*,
320 F.3d 545 (5th Cir. 2002).................................................................................... 39

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015).................................................................................. 15

*Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*,
131 S.W.3d 457 (Tenn. Ct. App. 2003) .................................................................. 34

*Metrocall of Del. v. Cont'l Cellular Corp.*,
437 S.E.2d 189 (Va. 1993)....................................................................................... 29

*Motley v. Jaguar Land Rover N.A., LLC*,
No. X03CV084057552S, 2012 WL 5860477 (Sup. Ct. Conn. Nov. 1, 2012)....................... 39

*Mulford v. Altria Group, Inc.*,
242 F.R.D. 615 (D.N.M. 2007) ............................................................................... 33

*Mulligan v. Choice Mortgage Corp.*,
No. CIV. 96-596-B, 1998 WL 544431 (D.N.H. Aug. 11, 1998) ........................... 33

*Nakamura v. Countrywide Home Loans, Inc.*,
225 P.3d 680 (Ct. App. 2010) ................................................................................. 33

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) ...................................................................... 18, 23

*Neuman v. Corn Exch. Nat'l Bank & Trust Co.*,
51 A.2d 759 (Pa. 1947) ........................................................................................... 35

*Newby v. Enron Corp.*,
No. H-01-CV-3624, 2010 U.S. Dist. LEXIS 145220 (S.D. Tex. Jan. 19, 2010)................... 35

*Newton v. Am. Debt Servs., Inc.*,
No. C-11-3228 EMC, 2015 WL 3614197 (N.D. Cal. June 9, 2015) ................ 13, 14

*Nieberding v. Barrette Outdoor Living, Inc.*,
302 F.R.D. 600 (D. Kan. 2014)................................................................................ 39

*Novell v. Miglaccio*,
749 N.W.2d 544 (Wis. 2008) ................................................................................... 34

*Nygaard v. Sioux Valley Hosps. & Health Sys.*,
731 N.W.2d 184 (S.D. 2007) ................................................................................... 34

*O'Connor v. Uber Techs., Inc.*,
No. C-13-3826 EMC, 2015 WL 5138097 (N.D. Cal. Sept. 1, 2015) .................... 45

**TABLE OF AUTHORITIES**
(continued)

Page

*Odom v. Fairbanks Mem'l Hosp.*,
  999 P.2d 123 (Alaska 2000)............................................................... 33

*Oki Semiconductor Co. v. Wells Fargo Bank*,
  298 F.3d 768 (9th Cir. 2002)............................................................. 22

*Oliver v. Funai Corp.*,
  Civ. A. No. 14-CV-04532, 2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21,
  2015) ......................................................................................... 35

*Or. Pub. Emps. Ret. Bd. v. Simat, Helliesen & Eichner*,
  83 P.3d 350 (Or. Ct. App. 2004)......................................................... 29

*Pac. Gas & Elec. Co. v. Howard P. Foley Co.*,
  No. 85-2922 SW, 1993 WL 299219 (N.D. Cal. July 27, 1993)............................ 27

*Palmer v. Stassinos*,
  233 F.R.D. 546 (N.D. Cal. 2006) ........................................................ 13

*Parsons v. Ryan*,
  754 F.3d 657 (9th Cir. 2014)......................................................... 11, 12

*Patch v. Arsenault*,
  653 A.2d 1079 (N.H. 1995) .............................................................. 29

*PBI Bank, Inc. v. Signature Point Condos. LLC*,
  535 S.W.3d 700 (Ky. 2016) ............................................................. 29

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010)............................................................ 26

*Peterson v. Dougherty Dawkins, Inc.*,
  583 N.W.2d 626 (N.D. 1998)............................................................. 32

*Peterson v. H & R Block Tax Servs.*,
  174 F.R.D. 78 (N.D. Ill. 1997)........................................................... 23

*Phillips v. Ford Motor Co.*,
  No. 99-L-1041, 2003 Ill. Cir. LEXIS 20 (Ill. Cir. Ct. Sept. 15, 2003) .................. 31

*Picher v. Roman Catholic Bishop of Portland*,
  82 A.3d 101 (Me. 2013)................................................................. 34

*Pickett v. Holland Am. Line-Westours, Inc.*,
  6 P.3d 63 (Wash.App. Div. 1 2000),
  *rev'd on other grounds*, 35 P.3d 351 (Wash. 2001)...................................... 32

*Pike v. Parallel Film Distribs.*,
  443 P.2d 804 (Wash. 1968)............................................................. 29

*Plascencia v. Lending 1st Mortg.*,
  259 F.R.D. 437 (N.D. Cal. 2009)........................................................ 25

*Porreco v. Porreco*,
  811 A.2d 566 (Pa. 2002) ............................................................... 29

*Prishwalko v. Bob Thomas Ford, Inc.*,
  636 A.2d 1383 (Conn. App. Ct. 1994)................................................... 33

*Pulaski & Middleman, LLC v. Google*,
  802 F.3d 979 (9th Cir. 2015)........................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Pyne v. Jamaica Nutrition Holdings Ltd.*,
   497 A.2d 118 (D.C. Ct. App. 1985) ........................................................................................... 34

*Rand v. Bath Iron Works Corp.*,
   832 A.2d 771 (Me. 2003) ........................................................................................................... 29

*Reed v. Reid*,
   980 N.E.2d 277 (Ind. 2012) ...................................................................................................... 29

*Regions Bank v. Kaplan*,
   258 F. Supp. 3d 1275 (M.D. Fla. 2017) .................................................................................... 34

*Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*,
   707 F.Supp.2d 702 (W.D. Ky. 2010) ........................................................................................ 34

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................................................... 21

*Richey v. Patrick*,
   904 P.2d 798 (Wyo. 1995) ........................................................................................................ 35

*Richfield Bank & Trust Co. v. Sjogren*,
   244 N.W.2d 648 (Minn. 1976) .................................................................................................. 35

*Richie v. Blue Shield of Cal.*,
   No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec. 9, 2014) ........................................ 13

*Rollins, Inc. v. Butland*,
   951 So.2d 860 (Fla.App. 2 Dist. 2006) ..................................................................................... 31

*Romo v. Amedex Ins. Co.*,
   930 So. 2d 643 (Fla. Dist. Ct. App. 2006) ................................................................................ 29

*Sanchez-Knutson v. Ford Motor Co.*,
   310 F.R.D. 529 (S.D. Fla. 2015) ............................................................................................... 43

*Sass v. Andrew*,
   832 A.2d 247 (Md. Ct. Spec. App. 2003) ................................................................................. 29

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ................................................................................................... 21

*Scott v. Am. Tobacco Co., Inc.*,
   949 So.2d 1266 (La. App. 4 Cir. 2007) ..................................................................................... 31

*SEECO, Inc. v. Hales*,
   954 S.W.2d 234 (Ark. 1997) ..................................................................................................... 31

*Shoppe v. Gucci Am., Inc.*,
   14 P.3d 1049 (Haw. 2000) ......................................................................................................... 29

*Skalbania v. Simmons*,
   443 N.E.2d 352 (Ind. Ct. App. 1982) ....................................................................................... 31

*Slater v. Terril Tel. Co.*,
   No. 2-1010 / 02-0813, 2003 Iowa App. LEXIS 87
   (Iowa Ct. App. Jan. 29, 2003), *aff'd* 662 N.W.2d 372 (Iowa Ct. App. Jan. 29,
   2003) .......................................................................................................................................... 31

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .............................................................................................. 13

# TABLE OF AUTHORITIES
### (continued)

Page

*Smith v. Behr Process Corp.*,
113 Wash App. 306 (Wash. Ct. App. 2002) ........................................................ 40

*Smith v. MCI Telecomms. Corp.*,
124 F.R.D. 665 (D.Kan. 1989) ............................................................................. 31

*Smoot v. Physicians Life Ins. Co.*,
87 P.3d 545 (N.M. App. 2003) ............................................................................. 33

*Snyder v. Grand Valley Title Co.*, No. 206616
1999 WL 33453800 (Mich. App. Mar. 5, 1999).................................................. 32

*Soules v. Gen. Motors Corp.*,
402 N.E.2d 599 (Ill. 1980) ................................................................................... 29

*Spalding v. City of Oakland*,
No. C11-2867 TEH, 2012 WL 994644 (N.D. Cal. Mar. 23, 2012) ..................... 17

*Spencer v. Hartford Fin. Servs. Grp., Inc.*,
256 F.R.D. 284 (D. Conn. 2009).......................................................................... 31

*State ex rel. Kidwell v. Master Distribs, Inc.*,
615 P.2d 116 (Idaho 1980).................................................................................... 33

*State v. First Nat. Bank of Anchorage*,
660 P.2d 406 (Alaska 1982).................................................................................. 31

*Stellema v. Vantage Press, Inc.*,
492 N.Y.S.2d 390 (N.Y. 1985) ............................................................................ 32

*Stephenson v. Capano Dev., Inc.*,
462 A.2d 1069 (Del. 1983) ................................................................................... 33

*Stigman v. Nickerson Enters.*,
2000 Mass. App. Div. 223 (Mass. App. Ct. 2000).............................................. 29

*Stockwell v. City & Cty. of San Francisco*,
749 F.3d 1107 (9th Cir. 2014)............................................................................... 16

*Strawn v. Farmers Ins. Co. of Or.*,
228 Or.App. 454, 209 P.3d 357 (Or.App. 2009).................................................. 32

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014)................................................................................. 26

*Sung v. Hamilton*,
710 F. Supp. 2d 1036 (D. Haw. 2010) ................................................................. 34

*Sununu v. Phil. Airlines, Inc.*,
638 F. Supp. 2d 35 (D.D.C. 2009) ....................................................................... 29

*Sykes v. Mel Harris & Assocs. LLC*,
285 F.R.D. 279, *aff'd*, 780 F.3d 70 (2d Cir. 2015) ............................................. 18

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ......................................................................... 39

*Taylor v. Gasor, Inc.*,
607 P.2d 293 (Utah 1980)..................................................................................... 29

*Thacker v. Chesapeake Appalachia, L.L.C.*,
259 F.R.D. 262 (E.D. Ky. 2009)........................................................................... 31

**TABLE OF AUTHORITIES**
(continued)

Page

*Town of Geraldine v. Mont. Mun. Ins. Auth.*,
   198 P.3d 796 (Mont. 2008) ................................................. 29

*Trosper v. Styker Corp.*,
   No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ................................. 15

*Turner Greenberg Assocs. v. Pathman*,
   885 So.2d 1004 (Fla. Dist. Ct. App. 2009) ............................. 33

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ....................................................... 17

*U.S. Fidelity & Guaranty Co. v. Black*,
   313 N.W.2d 77 (Mich. 1981) ................................................ 35

*United States v. Stapleton*,
   293 F.3d 1111 (9th Cir. 2001) ............................................. 21

*Unitek Solvent Services, Inc. v. Chrysler Group*, LLC,
   No. 1:12-cv-00794 (D. Haw. June 4, 2013) ........................... 7, 8

*Va. Oak Venture, LLC v. Fought*,
   448 S.W.3d 179 (Tex. Ct. App. 2014) .................................... 29

*Vichi v. Koninklijke Philips Elecs., N.V.*,
   85 A.3d 725 (Del. Ch. 2014) ................................................ 34

*Waldrup v. Countrywide Fin. Corp.*,
   No. 2:16-cv-04166-CAS (AGRx), 2018 WL 799156 (C.D. Cal. Feb. 6, 2018) .................... 24

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*,
   249 S.W.3d 301 (Tenn. 2008) .............................................. 32

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................ 2, 16, 18

*Webster v. L. Romano Eng'g Corp.*,
   34 P.2d 428 (Wash. 1934) ................................................... 30

*Western Reserve Life Assur. Co. of Ohio v. Caramadre*,
   847 F.Supp.2d 329 (D. R.I. 2012) ......................................... 35

*WFND, LLC v. Fargo Marc*, LLC,
   730 N.W.2d 841 (N.D. 2007) .............................................. 29

*White v. Potocska*,
   589 F. Supp. 2d 631 (E.D. Va. 2008) .................................... 35

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................ 17, 38, 40, 45

*Women's Dev. Corp. v. City of Cent. Falls*,
   764 A.2d 151 (R.I. 2001) ..................................................... 29

*Wynne v. Boone*,
   191 F.2d 220 (D.C. Cir. Apr. 26, 1951) ................................. 31

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180  (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d
   1266 (9th Cir. 2001) .......................................................... 45

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3

### <u>STATUTES</u>

4   13 Pa. Con. Stat. § 2313 .................................................................................................... 41

5   15 U.S.C. § 2310(d)(1) ....................................................................................................... 38

    18 U.S.C. § 1962(c) ...................................................................................................... 20, 21

6   18 U.S.C. § 1962(d) ...................................................................................................... 20, 21

7   18 U.S.C. § 1964(c) ............................................................................................................ 43

8   40 C.F.R. § 85.2103 ............................................................................................................ 40

    40 C.F.R. § 86.1803-01 ................................................................................................ 2, 5, 7

9   40 C.F.R. § 86.1809-10 ........................................................................................................ 2

10  810 Ill. Comp. Stat. 5/2-313 .............................................................................................. 41

11  Ala. Code § 7-2-313 ........................................................................................................... 41

    Alaska Stat. § 45.02.313 .................................................................................................... 41

12  Ariz. Rev. Stat. § 47-2313 .................................................................................................. 41

13  Ark. Code Ann. § 4-2-313 .................................................................................................. 41

14  Cal. Civ. Code § 1791.1 ..................................................................................................... 38

    Cal. Com. Code § 2313 ....................................................................................................... 41

15  Colo. Rev. Stat. § 4-2-313 .................................................................................................. 41

16  Conn. Gen. Stat. § 42a-2-313 ............................................................................................. 41

17  D.C. Code § 28:2-313 ......................................................................................................... 41

    Del. Code Ann. tit. 6, § 2-313 ............................................................................................ 41

18  Fla. Stat. § 672.313 ............................................................................................................ 41

19  Ga. Code Ann. § 11-2-313 .................................................................................................. 41

20  Haw. Rev. Stat. § 490:2-313 .............................................................................................. 41

    Idaho Code § 28-2-313 ....................................................................................................... 41

21  Ind. Code Ann. § 26-1-2-313 ............................................................................................. 41

22  Iowa Code § 554.2313 ........................................................................................................ 41

23  K.R.S. § 355.2-313 ............................................................................................................. 41

    Kan. Stat. Ann. § 84-2-313 ................................................................................................. 41

24  La. Civ. Code art. 2520 ...................................................................................................... 38

25  Mass. Ann. Laws ch. 106, § 2-313 ..................................................................................... 41

26  Md. Code Ann., Com. Law § 2-313 .................................................................................... 41

    Me. Rev. Stat. tit. 11, § 2-313 ............................................................................................ 41

27  Mich. Comp. Laws § 440.2313 ........................................................................................... 41

28  Mich. Comp. Laws Ann. §§ 445.903(1)(s) and (bb) .......................................................... 33

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3     Minn. Stat. § 336.2-313 ................................................................................ 41

4     Miss. Code Ann. § 75-2-313 .......................................................................... 41

      Mo. Rev. Stat. § 400.2-313 ........................................................................... 41

5     Mont. Code Ann. § 30-2-313 ........................................................................ 41

6     N.C. Gen. Stat. § 25-2-313 ........................................................................... 41

7     N.D. Cent. Code § 51-15-01, *et seq.* ............................................................ 33

      N.D. Cent. Code, § 41-02- 30 ....................................................................... 41

8     N.H. Rev. Stat. Ann. § 382-A:2-313 ............................................................. 41

9     N.J. Stat. § 12A:2-313 ................................................................................... 41

10    N.M. Stat. Ann. § 55-2-313 .......................................................................... 41

      N.Y. U.C.C. Law § 2-313 .............................................................................. 41

11    Neb. Rev. Stat. (U.C.C.) § 2-313 .................................................................. 41

12    Neb. Rev. Stat. § 59-1609 ............................................................................. 33

13    Nev. Rev. Stat. § 104.2313 ............................................................................ 41

      NRS 598.0903 ................................................................................................ 33

14    Ohio Rev. Code Ann. § 1302.26 ................................................................... 41

15    Okla. Stat. Ann. tit. 15 § 751, *et seq.* .......................................................... 34

16    Okla. Stat. tit. 12A, § 2-313 .......................................................................... 41

      Or. Rev. Stat. § 72.3130 ................................................................................. 41

17    R.I. Gen. Laws § 6-13.1-1, *et seq.* ............................................................... 34

18    R.I. Gen. Laws § 6A-2-313 ........................................................................... 41

19    S.C. Code Ann. § 35-9-10, *et seq.* ............................................................... 34

      S.C. Code Ann. § 36-2-313 ........................................................................... 41

20    S.D. Codified Laws § 57A2-313 ................................................................... 41

21    Tenn. Code Ann. § 47-2-313 ........................................................................ 41

22    Tex. Bus. & Com. Code § 2.313 ................................................................... 41

      UCC § 2-313 .................................................................................................. 41

23    UCC § 2-314 .................................................................................................. 38

24    UCC § 2A-212 ............................................................................................... 38

25    Utah Code Ann. § 13-11-1, *et seq.* .............................................................. 34

      Utah Code Ann. § 70A-2-313 ....................................................................... 41

26    Va. Code Ann. § 8.2-313 ............................................................................... 41

27    Vt. Stat. Ann. tit. 9 § 2461(b) ....................................................................... 34

28    Vt. Stat. Ann. tit. 9A, § 2-313 ...................................................................... 41

      W. Va. Code § 46-2-313 ................................................................................ 41

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3   W. Va. Code § 46A-6-101, et seq. .................................................................. 34

4   Wash. Rev. Code § 62A.2-313 ....................................................................... 41

    Wis. Stat. § 402.313 ........................................................................................ 41

5   Wyo. Stat. Ann. § 34.1-2-313 ........................................................................ 41

6   **RULES**

7   Fed. R. Civ. P. 23(a) ................................................................................. 12, 14

8   Fed. R. Civ. P. 23(a)(1) .................................................................................. 13

    Fed. R. Civ. P. 23(b) ...................................................................................... 12

9   Fed. R. Civ. P. 23(b)(3) ..................................................................... 17, 42, 45

10  Fed. R. Civ. P. 23(c)(4) .................................................................................. 42

11  **TREATISES & OTHER AUTHORITIES**

12  2 W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)............................ 17

    2 W. Rubenstein, Newberg on Class Actions § 4:90 (5th ed. 2012)............................ 42

13  7AA C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure
14      § 1778 (3d ed. 2005) ................................................................................. 17

    Jed S. Rakoff, RICO: Civil & Criminal Law & Strategy, § 4.02[3] (Supp. 2013) ....................... 27

15  Restatement (Second) of Contracts § 167 .................................................. 31

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## NOTICE OF MOTION AND MOTION

2

TO ALL PARTIES AND COUNSEL OF RECORD:

3         PLEASE TAKE NOTICE that on September 17, 2018, at 2:15 p.m., in Courtroom 5 of the

4    United States District Court for the Northern District of California, located at 450 Golden Gate

5    Avenue, San Francisco, California, Class Counsel, Plaintiffs in the Second Amended

6    Consolidated Consumer Class Action Complaint will and hereby do move the Court for an Order

7    granting certification of a Nationwide Class and State Classes as set forth in the accompanying

8    Memorandum and Points of Authorities.  Movants seek certification of this action as a class

9    action, designation of the named Plaintiffs as class representatives, and appointment of the

10   undersigned counsel as class counsel.  This Motion is made pursuant to Rule 23 of the Federal

11   Rules of Civil Procedure and is based on this Notice of Motion and Motion; the accompanying

12   Memorandum of Points and Authorities; the Declarations of Elizabeth J. Cabraser, Dr. Elisabeth

13   Honka, Dr. Shannon R. Wheatman, Steve Gaskin, and Colin Weir; all exhibits filed in support of

14   this Motion; oral argument of counsel; and any other materials submitted in connection with this

15   Motion.

16

17

18

19

20

21

22

23

24

25

26

27

28

-1-

<u>**MEMORANDUM AND POINTS OF AUTHORITIES**</u>

<u>**INTRODUCTION**</u>

"What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  In this litigation, the most important answers, those that drive its resolution, are the answers to the liability-determinative questions about the Defendants'[1] product, knowledge, and conduct.  These answers are common to the Classes.

This multi-district litigation ("MDL") is about Defendants' nationwide scheme to design, use, and conceal software that de-activated or severely restricted emission controls[2] in over 100,000 "EcoDiesel" Class Vehicles.[3]  These cheat devices caused the Class Vehicles to emit up to 20 times the legal limits of harmful nitrogen oxides ("NOx"), far exceeding the pollutants consumers reasonably expected.  SAC ¶¶ 225-29.[4]  With the active participation of Bosch[5] (which helped design, create, and test the illegal emission control technology) and VM Motori[6] (which designed, manufactured, calibrated, and delivered the "EcoDiesel" engine), Fiat Chrysler[7] tricked regulators at the Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB") into approving the Class Vehicles for sale to Plaintiffs and the Class.  SAC ¶¶ 20-22.  Without this fraud—perpetrated on the regulators but for the purpose of selling and leasing Class Vehicles to consumers—no Class Vehicles would have even been available for sale.

---

[1] "Defendants" are Fiat Chrysler, Bosch, and VM Motori, as defined in notes 5-7, *infra*.

[2] For shorthand, Plaintiffs sometimes refer to these hidden emissions control features as "defeat devices."  Plaintiffs do not suggest that the regulators have concluded that the systems are "defeat devices," as the term is used in 40 C.F.R. § 86.1803-01 and § 86.1809-10, nor is such a conclusion necessary to sustain Plaintiffs' claims.

[3] Unless otherwise indicated, all capitalized terms have the same meanings given in the SAC.

[4] All references to "SAC" are to Plaintiffs' Second Amended Consolidated Consumer Class Action Complaint ("SAC") (Dkt. 310), whose allegations are adopted by reference herein pursuant to Fed. R. Civ. P. 10(c),

[5] "Bosch" and the "Bosch Defendants" refer to Robert Bosch GmbH and Robert Bosch LLC, unless otherwise noted.

[6] "VM Motori" and the "VM Motori Defendants" refer to VM Motori S.p.A. ("VM Italy") and VM North America, Inc. ("VM America"), unless otherwise noted.

[7] "Fiat Chrysler" and "FCA Defendants" refer to FCA US LLC ("FCA"), Fiat Chrysler Automobiles N.V. ("Fiat"), and Sergio Marchionne ("Marchionne"), unless otherwise noted.

1    Fiat Chrysler then launched a widespread marketing and advertising campaign designed to

2    overcome the stigma of "dirty diesel" by promoting the Class Vehicles as environmentally

3    friendly, fuel efficient, and high-performing—not least through an "EcoDiesel" badge placed

4    prominently on every single Class Vehicle.  SAC ¶¶ 149-97.  Every single Class member saw the

5    EcoDiesel badge: the literal brand that Fiat Chrysler carefully selected to distinguish and market

6    its vehicles, and nobody knew that these same vehicles emitted excessive pollutants and failed to

7    meet the emission standards required for their placement on the market.  Plaintiffs were sold,

8    thought they were getting, and paid a premium for an EcoDiesel package deal that purportedly

9    combined low emissions, high mpg, and the performance of a diesel engine.  But the badge lied,

10   and Defendants' conduct was designed to hide the truth from the public and from every buyer and

11   lessor in the Class.  In actual operation, the EcoDiesel vehicles were "dirty" indeed.

12   This conduct gives rise to Plaintiffs' claims under the federal Racketeer Influenced and

13   Corrupt Organizations Act ("RICO"), the federal Magnusson Moss Warranty Act ("MMWA"),

14   common law fraud, and state consumer protection statutes.  The claims are ideally suited for class

15   treatment.  Whether Defendants' fraud is viewed through the lens of Civil RICO, fraudulent

16   misrepresentation, or fraud by concealment, their conduct was uniform in objective and

17   execution.  The common questions of law *and* fact raised by this course of conduct decisively

18   predominate, both in significance and in ability to move the case toward adjudication, over any

19   questions that involve only individual Class members.  The Defendants will likely suggest that

20   these issues should be resolved through tens of thousands of trials, heard by separate juries in all

21   50 states, each of which will have to pretend the issues haven't been decided before.  This would

22   be inefficient, to the say the least, and an unnecessary waste of the courts' and parties' resources.

23   The best, fairest, most consistent—and likely the only practical—way to litigate this case is as a

24   class action.  The Supreme Court has acknowledged that consumer cases are particularly suitable

25   for class treatment, *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), and this fit is

26   enhanced, where, as here, a common scheme deprived all consumers of crucial material facts,

27   precluded informed purchase choices, and subverted consumer decisions and the environment

28   itself simultaneously.  Plaintiffs therefore respectfully request that the Court grant their motion.

**STATEMENT OF COMMON FACTS**

**I.   Defendants' Dirty Diesel Scheme**

Defendants' nationwide scheme and common course of conduct began in 2009 when FCA initiated its acquisition of one of the "Big 3" U.S. automakers, Chrysler, as part of Fiat's strategy to increase its North American presence.  *See* SAC ¶ 102.[8]  Defendant CEO Sergio Marchionne implemented five-year plans in 2009 and 2014 focused on selling Jeep Grand Cherokee and Ram 1500 models with diesel engines.  *See* SAC ¶¶ 103-04.  Fiat had success with diesel engines in Europe, and Mr. Marchionne strategically sought similar success in North America.  SAC ¶ 107.

North America was a different market though, in part due to rigorous emission standards and negative consumer stereotypes about diesels.  Seeking to overcome this stigma and to meet tightening emission standards, automakers like Volkswagen, Mercedes-Benz, and General Motors pioneered a "clean diesel" market in the United States.  *See* SAC ¶ 110.  FCA wanted a piece of this lucrative "clean diesel" market.  Market entry became more realistic after it obtained a 50% stake in VM Motori, a leading supplier of diesel engines, then in the process of developing the engines that are now used in the Class Vehicles.  SAC ¶¶ 102-110, 121.

Ultimately, FCA and VM Motori were unable or unwilling to beat out the competition legally, so they enlisted Bosch's help to do it illegally.  Modern vehicles are equipped with management computers to monitor sensors throughout the vehicle and to operate nearly all of their systems according to sophisticated programming that senses and varies factors like steering, combustion, and emission performance for different driving situations.  SAC ¶ 118.  The computer that manages these systems in the Class Vehicles is an "electronic diesel control" or "EDC."  SAC ¶ 119.  Bosch developed, tested, and manufactured the EDC system used in the Class Vehicles.  It is formally referred to as Electronic Diesel Control Unit 17 (also known as "EDC Unit 17" or "EDC 17").  SAC ¶ 120.

These EDC Units developed by Bosch, enable a Class Vehicle to detect when it is ***not*** undergoing emission testing, and to disable emission controls during those periods, i.e., when the vehicle is being driven outside.  SAC ¶¶ 30-32, 118-120.  FCA collaborated with Bosch and VM

[8] By 2014, Fiat became Fiat Chrysler Automobiles and Chrysler became FCA. SAC ¶ 12.

1    Motori to install these auxiliary emission control devices ("AECDs") in the Class Vehicles, at

2    least eight of which were not disclosed to regulators.  While the technology behind AECDs may

3    be complex, their purpose was simple: activate concealed functionalities that increased NOx

4    emissions on the road, but not in testing conditions.  Such AECDs are illegal defeat devices.  *See*

5    SAC ¶¶ 131-32; 40 C.F.R. § 86.1803-01.  Bosch introduced EDC 17 in 2006, describing it as the

6    "brain of diesel injection" that "controls every parameter that is important for effective, low-

7    emission combustion."  SAC ¶ 119.  Bosch's EDC Unit 17 allowed the Class Vehicles to detect

8    test scenarios by monitoring vehicle speed, acceleration, engine operation, air pressure, and even

9    the position of the steering wheel.  When EDC Unit 17's algorithm determines that the vehicle is

10   not undergoing emission testing, EDC Unit 17 de-activates or reduces the emission control

11   systems' performance on the road, causing the Class Vehicles to emit excessive and illegal

12   amounts of NOx in real-world driving conditions.  SAC ¶¶ 131-32.

13          Bosch exercised near-total control over its software "to prevent customers, like FCA, from

14   making significant changes on their own."  SAC ¶ 137.  Bosch also exercised control through

15   other security measures that "protect[ed] vehicle systems against unauthorized access in every

16   operating phase."  SAC ¶ 138.  "Given this level of control," this Court in its order on defendants'

17   motions to dismiss ("MTD Order") found it "highly plausible that the Bosch Defendants played a

18   role in developing and implementing the AECDs."  Dkt. 290 at 48.  This Court also recognized

19   that "additional support for this conclusion comes from allegations that researchers . . . have

20   analyzed technical documents showing that code written by the Bosch Defendants was used in a

21   defeat device found in the Fiat 500X" and that, "[a]lthough the Fiat 500X is not a Class Vehicle,

22   these allegations show that the Bosch Defendants knew how to develop a defeat device, and were

23   willing to do so."  *Id.*  (internal citations omitted).  Further supporting this conclusion are

24   documents outlined in the SAC, which show that Bosch not only contributed to the development

25   of the AECDs, but also understood that their concealment to the regulators was illegal.  *See, e.g.*,

26   SAC ¶¶ 207, 212.

27          While Bosch largely was responsible for the software that gave the FCA Defendants the

28   tools to evade state and federal emission standards, VM Motori and VM America were also key

                                          -5-

1   as "knowing participants in the scheme to deceive regulators into certifying the Class Vehicles."

2   Dkt. 290 at 49.  FCA owns both VM Italy and VM America.  VM Italy is an auto parts and

3   engine manufacturer, and VM America supports VM Italy customers and activities in North

4   America.  *See* SAC ¶¶ 19-20.  VM Motori designed, calibrated, and manufactured the EcoDiesel

5   engine used in the Class Vehicles.  SAC ¶ 22.  VM Motori's involvement with the EcoDiesel

6   engines required it to work closely with Bosch and FCA "to customize the EDC17 to allow Class

7   Vehicles to simulate 'passing' the EPA and CARB testing."  SAC ¶ 127.  This is entirely

8   "plausible given that, to run effectively, the EcoDiesel engines required a careful balancing

9   between engine performance and emission levels."  Dkt. 290 at 49 (citing FAC ¶¶ 110-113).  "It

10  is therefore plausible that the VM Defendants were responsible not only for the nuts and bolts of

11  the EcoDiesel engine (managing elements such as power and performance), but also for how the

12  EcoDiesel engine generated and treated emissions." *Id.*

13          As detailed in the SAC, "[i]n 2010 or 2011, VM Motori announced a new diesel engine: a

14  V6, 3.0-liter displacement engine intended for inclusion in SUVs, trucks, and large sedans."  SAC

15  ¶ 121.  After Fiat acquired 50% of VM Motori in 2011, it began working with the diesel engine

16  manufacturer to develop this 3.0-liter diesel engine for FCA vehicles to be sold in the United

17  States.  *Id.*  Ram Trucks' Chief Engineer said at the time, "We are fortunate at this point in time

18  that our partners at Fiat owned half of VM Motori, who makes this diesel engine. . . . . We

19  combined resources and developed them together."  SAC ¶ 122.

20          But FCA and VM Motori hit a snag:  the engine was originally developed for use in

21  Europe, where standards for NOx emission from diesel vehicles are less stringent than in the

22  United States.  SAC ¶ 125.  Instead of developing emission-compliant engines for the U.S.

23  market, however, FCA found a way to cheat on emission tests with the help of VM Motori and

24  Bosch.  *Id.*  FCA worked closely with VM Italy and VM America on the design of the (later-

25  named) EcoDiesel's engines and worked with Bosch GmbH and Bosch LLC on the design of the

26  EDC Unit 17 that was installed in the Class Vehicles' engines.  SAC ¶ 127.

27          Before taking the EcoDiesel Class Vehicles to market, FCA was required to have them

28  certified as emissions compliant by federal and state regulators.  This is where the rubber hit the

1    road in Defendants' scheme.  Every vehicle sold in the United States must be covered by an EPA-

2    issued Certificate of Conformity ("COC"), and every vehicle sold in the State of California must

3    be covered by a CARB Executive Order ("EO").  SAC ¶ 112.  To obtain a COC, automakers

4    must submit an application that lists all AECDs installed in the vehicle, justifications for each,

5    and an explanation why it is not a defeat device.  SAC ¶ 132.  The Clean Air Act ("CAA")

6    expressly prohibits defeat devices, defined as any AECD "that reduces the effectiveness of the

7    emission control system under conditions which may reasonably be expected to be encountered in

8    normal vehicle operation and use." 40 C.F.R. § 86.1803-01.

9        FCA was required to disclose the eight (8) AECDs at issue to the EPA and CARB on its

10   COC and EO applications, respectively, and to explain why they were not defeat devices.  FCA

11   decided instead to conceal the eight AECDs altogether.  *See* SAC ¶¶ 230-40.  As this Court

12   found, "these alleged communications [between FCA and the EPA and CARB] were all plausibly

13   'step[s] in the plot' to deceive regulators into certifying the Class Vehicles."  Dkt. 290 at 56.

14   **II.     FCA's Pervasive and Misleading Marketing and Advertising Campaign**

15       Obtaining approval to sell the Class Vehicles was just one step in the plot.  To profit from

16   the scheme, FCA had to overcome negative consumer perception surrounding diesel engines

17   (Exhibit B, Declaration of Dr. Elisabeth Honka ("Honka Decl.") ¶¶ 35-38), while still promoting

18   the benefits of diesel engines, including power.  SAC ¶¶ 149-54.  So FCA undertook market

19   research and launched a comprehensive marketing and advertising campaign, which played an

20   instrumental role in attracting consumers to the Class Vehicles.  *See* Ex. B (Honka Decl.)  ¶¶ 6, 8,

21   12, 15.

22       Starting in February 2012, FCA "engaged a consumer research firm to evaluate

23   nationwide consumer reactions to nine potential engine identifying terms."  *Unitek Solvent*

24   *Services, Inc. v. Chrysler Group*, LLC, No. 1:12-cv-00794, Dkt. 86-35 at ¶ 7 (D. Haw. June 4,

25   2013); SAC ¶ 155.  FCA's study indicated that "green" names like "Eco-Diesel" were the best

26   because they "suggest the diesel is cleaner, more efficient, and better for the environment."  FCA-

27   MDL-001182796-821.  "Eco" "encompasse[d] green, efficient, and economic."  As one

28   participant noted:

1
2

> "Eco" can mean both economic and environmentally-friendly. When I think of diesel I think the SUV would be modern and run both more economically and more environmentally-friendly than a gas guzzling SUV.

3   FCA-MDL-001422127.  This is consistent with another study participant who also agreed that

4   "[EcoDiesel] gives the impression of being environmentally-friendly and economic."  *Id*.; *see*

5   *also* Ex. B (Honka Decl.) ¶¶ 8-10.

6        At the same time, FCA was well aware that "numerous third parties in a variety of

7   industries use the term 'eco' to describe ecologically or environmentally friendly products or

8   services that have been developed to reduce carbon emissions, energy consumption, or otherwise

9   preserve the environment." *Unitek Solvent*, Dkt. 86-35 at ¶ 10.  Moreover, FCA has specifically

10  acknowledged that "the term 'eco' is [also] especially prevalent in the automotive industry" for

11  this purpose as well.  *Id*. ¶ 11 (listing examples of the use of "eco" by a wide variety of

12  automakers).  Accordingly, FCA "decided to combine the terms 'Eco,' 'Diesel,' and '3.0L,' . . . to

13  refer to the engine because the engine is an economical, fuel-efficient, and more environmentally

14  friendly 3.0 liter diesel engine." *Id*. ¶ 8.

15       The FCA Defendants understood the power of the EcoDiesel label and used it

16  aggressively.  Market research confirmed that the "EcoDiesel badging/logo" and the "word 'Eco-

17  Diesel' can change the perception of a diesel engine to something denoting ecologically

18  conscious and economical to own and operate."  SAC ¶ 159 (quoting FCA-MDL-001166458-

19  533).  Put differently, the word EcoDiesel communicated a carefully crafted message of

20  environmental-friendliness, fuel economy, and performance.  Unsurprisingly, then, FCA designed

21  EcoDiesel badges and placed them prominently on every single Class Vehicle, thereby ensuring

22  that all Class members would be exposed to its misleading advertising campaign.

23       Class members did see those badges, and they understood EcoDiesel to mean exactly what

24  FCA intended: environmentally friendly, fuel efficient, and powerful.  Plaintiff Anthony Alley,

25  for example, testified that "the name EcoDiesel" meant "fuel mileage" and "low emissions" and

26  "left you with the feeling that it was going to be good for the environment."  *See* Exhibit A,

27  Declaration of Elizabeth J. Cabraser ("Cabraser Decl."), Attachment 1.  When asked "what was

28  your understanding of EcoDiesel," Aaron Carter responded that "the EcoDiesel, to me, was that

it's a large package that would offer fuel efficiency, improved torque, improved horsepower over the V6 gas motors that were in the Grand Cherokee, with improved emissions as well, reduced emissions." *Id.*, Attachment 3.  Miguel Fragoso explained that the term EcoDiesel meant "it's a clean . . . car that will emit . . . less emissions than a typical diesel" and have "performance and torque, being able to tow, and fuel efficiency, while still being clean." *Id.*, Attachment 5.  Christopher Mattingly noted that the EcoDiesel name was important because it described "a diesel vehicle" that was "friendly for the environment because of the Eco, and then also the Eco was for fuel mileage.  So it was economically and ecologically good and safe, and with the diesel, I have all the power, the benefits, torque, towing capacity, payload, all of that, but it didn't -- without the negatives, none of the terrible emissions. . . ." *Id.*, Attachment 8.  Melvin Phillips testified that EcoDiesel communicated "friendly to the environment,"  "reduced emissions," "better fuel mileage" and "a more powerful engine." *Id.*, Attachment 9.  To Bobby Reichart, the EcoDiesel badge meant "low emissions, good fuel economy, great towing power." *Id.*, Attachment 10.  Kelly Ruiz explained that "EcoDiesel to me, eco stands for economical, ecological so environmentally friendly.  And the diesel itself stands for power.  So for me it's all three." *Id.*, Attachment 11.  And Jake Gunderson stated succinctly that "EcoDiesel means [a] clean, efficient, powerful diesel engine." *Id.*, Attachment 6.  These are but a few examples confirming exactly what FCA's research had already shown.

In its MTD Order, the Court recognized that "it is plausible that a reasonable consumer would understand 'EcoDiesel' to mean environmentally friendly or reduced emissions."  Dkt. 290 at 93.  The Court also found it reasonable to infer "that Defendants marketed the Class Vehicles as 'EcoDiesel' intending and expecting to cash in on the consumer interest in 'green' products."  Dkt. 290 at 94.  Both inferences were reasonable based on the allegations of the First Amended Complaint and have only been strengthened by the additional evidence adduced in the SAC, and by the proposed representative Plaintiffs' own testimony.

But FCA did far more than just deceptively badge its vehicles.  As shown in detail in the SAC, FCA engaged in a comprehensive marketing and advertising campaign, through a variety of media, all with the consistent objective of convincing consumers that the EcoDiesel vehicles were

1  environmentally friendly, fuel efficient, and high performing.  These marketing efforts included,

2  among other things, "press releases aimed at generating positive news articles about the

3  EcoDiesel attributes" (SAC ¶¶ 165-68); "comprehensive dealer training materials that taught

4  dealers how to sell the Class Vehicles with false and misleading misrepresentations" (SAC ¶¶

5  169-74; *see also* Ex. B (Honka Decl.)  ¶¶ 34-37); "vehicle brochures disseminated at dealerships

6  and elsewhere" (SAC ¶¶ 175-82); "information and interactive features on FCA's websites and

7  blogs" (SAC ¶¶ 183-89); and "print and television marketing" (SAC ¶¶ 190-95).  FCA knew the

8  importance of communicating this consistent message across all channels, and it invested heavily

9  in its marketing and advertising campaign.  Ex. B (Honka Decl.)  ¶¶ 16, 19.  For example,

10  between 2014 and 2016, FCA spent, on average, over $450 million annually to advertise the Ram

11  1500 trucks and Jeep Grand Cherokees.  *See id.*

12      The campaign was a huge success (Ex. B (Honka Decl.) ¶ 23), and FCA ultimately sold

13  more than 100,000 Class Vehicles, all based on the promised package of environmental-

14  friendliness, fuel economy, and performance—all badged "EcoDiesel" as a token of this promise.

15  Unfortunately, FCA did not keep that promise.

16  **III.    Defendants' Scheme is Uncovered**

17      As we now know, the "EcoDiesel" vehicles were anything but "Eco."  During the

18  development of the EcoDiesel engines and once the Class Vehicles were put on the market,

19  Defendants acknowledged internally that the engines employed secret AECDs that compromised

20  the vehicles' emission control systems and were not properly disclosed to the EPA and CARB.

21  As early as March 2011, for example, Bosch and VM Motori discussed that "online dosing"

22  (accomplished through AECD #7) may be forbidden during testing and if used, needed to be

23  declared as an AECD.  *See* FCA-MDL-000281212.  Similarly, in February 2012, Bosch warned

24  VM Motori that the T_Eng functionality (AECD #5) was a method of detecting an emissions

25  cycle and warned that, if CARB and EPA found out, there would be "serious penalties."  *See*

26  FCA-MDL-000015652.  These are only a few instances of many where Defendants recognized

27  the illegality of their deceptive scheme, but persisted nevertheless.  *See, e.g.*, SAC ¶¶ 198-216.

28

1    Defendants' deception was no match for regulators reeling from the discovery of

2    Volkswagen's similar scheme, however.  *See In re Volkswagen "Clean Diesel" Marketing, Sales*

3    *Practices & Products Liability Litigation*, MDL No. 2672 (N.D. Cal.).  A week after the EPA

4    issued a Notice of Violation ("NOV") to Volkswagen for defeat devices in 3.0-liter TDI

5    engines—engines similar to the FCA/VM Motori engines at issue here in that they too were 3.0-

6    liter V6 engines originally developed for use in Europe and modified for sale in the United

7    States—EPA announced that it would be conducting additional testing of vehicles "for purposes

8    of investigating a potential defeat device."  SAC ¶¶ 111, 231.

9    On January 12, 2017, the EPA and CARB issued NOVs to FCA finding that it had

10   violated the CAA by failing to disclose eight AECDs in the Class Vehicles.  SAC ¶¶ 231-234.  In

11   its NOV, the EPA alleged that FCA installed and failed to disclose engine management software

12   in the Class Vehicles designed to cloak impermissibly high NOx emissions produced in normal

13   driving conditions for the purpose of cheating emissions tests, thereby misleading the regulatory

14   agencies to sell over 100,000 Class Vehicles to consumers.  *See id.* ¶ 234.

15   The Plaintiffs here—purchasers and lessees who overpaid for the Class Vehicles as a

16   result of Defendants' scheme—now seek to hold Defendants accountable and to obtain redress for

17   the harm they have suffered.

18                            **APPLICABLE LEGAL STANDARDS**

19   This Court has broad discretion to grant class certification pursuant to Rule 23.  *See*

20   *Parsons v. Ryan*, 754 F.3d 657, 673 (9th Cir. 2014); *Bateman v. Am. Multi-Cinema, Inc.*, 623

21   F.3d 708, 712 (9th Cir. 2010).  "In determining the propriety of a class action, the question is not

22   whether the plaintiffs have stated a cause of action or will prevail on the merits, but, rather,

23   whether the requirements of Rule 23 are met.  The Court is obliged to accept as true the

24   substantive allegations made in the complaint."  *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 446-

25   47 (N.D. Cal. 2012); *see Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  In deciding a

26   motion for class certification, courts are to "examine the merits of the underlying claim . . . only

27   inasmuch as it must determine whether common questions exist; not to determine whether class

28   members could actually prevail on the merits of their claims."  *Ellis v. Costco Wholesale Corp.*,

1    657 F.3d 970, 983 n.8 (9th Cir. 2011).  The Court of Appeals "accord[s] the district court

2    noticeably more deference [to grant class certification] than when it reviews a denial of class

3    certification."  *Parsons*, 754 F.3d at 673.

4          Rule 23(a) is satisfied when:

5          (1) the class is so numerous that joinder of all members is impracticable; (2) there
           are questions of law or fact common to the class; (3) the claims or defenses of the
6          representative parties are typical of the claims of the class; and (4) the
           representative parties will fairly and adequately protect the interests of the class.
7

8    In addition to meeting the requirements of Rule 23(a), the proposed class must satisfy the

9    requirements of Rule 23(b)(1), (b)(2), or (b)(3).  Because Plaintiffs here seek certification of a

10   Rule 23(b)(3) class, they must also satisfy the predominance and superiority prongs of the Rule.

11   *See* Fed. R. Civ. P. 23(a)-(b).  Ultimately, "the office of a Rule 23(b)(3) certification ruling is not

12   to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the

13   controversy 'fairly and efficiently.'"  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S.

14   455, 460 (2013).

15                              **ARGUMENT**

16         The Classes here readily meet each of the four requirements of Rule 23(a), as well as the

17   requirements of Rule 23(b)(3).  Indeed, a class action is the only realistic way that the more than

18   100,000 consumers around the country will get their day in court to obtain justice as victims of

19   Defendants' fraud.

20   **I.**   **The Classes Are Objectively Defined and Can Be Effectively Notified.**

21         For their RICO claims, Plaintiffs seek certification of a Nationwide Class defined as:

22         All persons or entities in the United States (including its territories and the District
           of Columbia) that purchased or leased a Class Vehicle.
23

24   For all other claims, Plaintiffs seek certification of State Classes consisting of:

25         All persons or entities that purchased or leased a Class Vehicle within [the state or
           jurisdiction] or that purchased or leased a Class Vehicle and reside in [the state or
26         jurisdiction].

27   These classes are objectively defined, and Class members can be readily identified through

28   FCA's records, Plaintiffs' records, DMV records, and, if necessary, through affidavits.  *See*

1   *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017).

2          As set forth in the accompanying declaration of notice expert Dr. Shannon R. Wheatman,

3   notice here will be accomplished through a combination of direct notice to reasonably identifiable

4   Class members and paid media advertising to reach any unknown Class members.  Ex. E

5   (Wheatman Decl.) ¶ 16.  "This mixture of direct notice and paid media was implemented

6   effectively in the *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products*

7   *Liability Litig.* notice programs, is routine in class action notification programs, and has

8   consistently been upheld by courts as 'the best notice practicable.'"  *Id.*

9   **II.     Rule 23(a)(1)—Numerosity: the Nationwide and State Classes Are Too Numerous for**
        **Individual Joinder.**
10

11         Rule 23(a)(1) requires that "the class is so numerous that joinder of all class members is

12  impracticable."  Fed. R. Civ. P. 23(a)(1).  "A specific minimum number is not necessary, and [a]

13  plaintiff need not state the exact number of potential class members."  *Richie v. Blue Shield of*

14  *Cal.*, No. C-13-2693 EMC, 2014 WL 6982943, at *15 (N.D. Cal. Dec. 9, 2014).

15         Here, the proposed Nationwide Class consists of the owners and lessees of approximately

16  100,000 Class Vehicles, spread out across all fifty states and the District of Columbia.  The

17  proposed State Classes range in size from approximately 100 Class members (the District of

18  Columbia State Class) to more than 14,000 Class members (the California State Class), and the

19  majority of the State Classes include more than 1,000 Class members.  For both the Nationwide

20  and the State Classes, joinder would be impractical and thus the numerosity requirement is

21  satisfied.  *See, e.g.*, *Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000

22  or more co-plaintiffs is clearly impractical.");  *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D.

23  Cal. 2000) (Numerosity is generally satisfied when the class exceeds as few as forty members.).

24  **III.    Rule 23(a)(3)—Typicality: Plaintiffs' Claims Are Typical of the Claims of All Class**
        **Members.**
25

26         The typicality test is satisfied when the actionable conduct is not unique to the named

27  plaintiffs, and it has caused similar injury to other class members.  *Newton v. Am. Debt Servs.,*

28  *Inc.*, No. C-11-3228 EMC, 2015 WL 3614197, at *7 (N.D. Cal. June 9, 2015).  In other words,

"[r]epresentative claims are 'typical' if they are 'reasonably coextensive with those of absent class members; they need not be substantially identical.'"  *Id.*  (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, the Plaintiffs' and Class members' claims arise from the same "actionable conduct": Defendants' scheme to design and install defeat devices in the Class Vehicles, to conceal those defeat devices from the regulators and the public, and to trick consumers into purchasing or leasing the vehicles by deceptively marketing them as "EcoDiesel."  The engine in all the Class Vehicles is the same for all purposes relevant to this litigation.  *See, e.g.*, EPA's Notice of Violation to Fiat Chrysler Automobiles (Jan. 12, 2017)[9] (identifying the same AECDs in all Class Vehicles); Ex. A (Cabraser Decl.), Attachment 12 (Robert Hegbloom Dep. Tr. 56:20-57:4) (agreeing that the engines in the Class Vehicles were "essentially the same"); May 24, 2017, Hr'g Tr. at 15:9-16 (FCA counsel stating: "You have two types of trucks. You have Jeep Grand Cherokees, Ram 1500s. They have the same engine in them . . . ."); August 8, 2017 Hr'g Tr. at 27:1-4 (FCA counsel stating: "[T]he engines and the emissions-control systems on the vehicles are essentially the same 2014 to 2016 . . . .").[10]  This conduct has caused the same type of injury to all Class members: all Plaintiffs and Class members overpaid for their vehicles, and the amount of that overpayment can be calculated using methodologies applicable to the entire Class.  *See* § V.D, *infra*.

**IV.     Rule 23(a)(4)—Adequacy: The Class Representatives and Class Counsel Will Adequately Protect the Interests of the Class.**

The adequacy test of Rule 23(a) asks "'(1) do the named plaintiffs and their counsel have any conflicts of interest with other Class Members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020).  The answers here are "no" and "yes," respectively.

---

[9] Available at https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf

[10] Indeed, it is the similarities of the engines across all Class Vehicles that has allowed the regulators considering a potential repair to test a very small number of vehicles (seven) to represent the entire population of more than 100,000.

1    The interests of the Class Representatives are directly aligned with those of the absent

2    Class members.  All Plaintiffs and Class members share the goal of proving the Defendants'

3    wrongful conduct and obtaining redress for their injuries.  Moreover, all Class Representatives

4    have and will continue to vigorously prosecute the action on behalf of the Classes.  As to the

5    "vigorous representation" prong, "[a]ll that is necessary is a rudimentary understanding of the

6    present action and . . . a demonstrated willingness to assist counsel in the prosecution of the

7    litigation." *Trosper v. Stryker Corp.*, No. 13-CV-0607-LHK, 2014 WL 4145448, at *43 (N.D.

8    Cal. Aug. 21, 2014).  The named Plaintiffs more than satisfy this requirement here.  All of them

9    understand their duties as class representatives, have agreed to consider the interests of absent

10   Class members, and have actively participated in this litigation.  They have, for example,

11   (1) provided their counsel with factual information pertaining to their purchase or lease of a Class

12   Vehicle to assist in drafting the Complaints; (2) completed and verified detailed Plaintiff Fact

13   Sheets; (3) completed and verified comprehensive Requests for Production of Documents;

14   (4) attended or agreed to attend lengthy depositions,[11] many of which have required the Plaintiffs

15   to travel considerable distances and take time away from work and other obligations; and

16   (5) regularly communicated with their counsel regarding various issues pertaining to this case.

17   Such involvement is more than sufficient to meet the adequacy requirement of Rule 23(a)(4).

18       Defendants may argue, as they did in their Motions to Dismiss, that Plaintiffs advance no

19   adequate representatives for the State Classes of the seven states in which no named Plaintiff

20   resides or purchased or leased his or her Class Vehicle.[12]  This argument is unavailing.  As the

21   Ninth Circuit recently recognized, a class is adequately represented if the "named plaintiffs'

22   claims do not "implicate a significantly different set of concerns' than the unnamed plaintiffs'

23   claims." *Melendres v. Arpaio*, 784 F.3d 1254, 1263 (9th Cir. 2015) (quoting *Gratz v. Bollinger*,

24   539 U.S. 244, 265 (2003)).  As shown in the following sections, the common law fraud, statutory

25   consumer protection, and express and implied warranty claims of all states in which no named

26   ---
[11] As of the filing of this Motion, 38 Class Representatives have been deposed, and an additional
27   18 have been scheduled through June 21, 2018.  The parties continue to work together to schedule
     the remaining five depositions in advance of the Defendants' deadline to oppose this Motion.

28   [12] Those states include Delaware, Hawaii, Kansas, New Hampshire, Rhode Island, Vermont, and
     West Virginia.

1    plaintiff resides or purchased/leased a Class Vehicle overlap significantly with the laws of other

2    states with named representatives, who bring substantially similar claims and can adequately

3    represent their interests.

4           Furthermore, Lead Counsel and the PSC have and will continue to adequately represent

5    the Classes.  Each of them participated in a competitive leadership application process, during

6    which they established, and this Court recognized, their qualifications, experience, and

7    commitment to this litigation.  Indeed, the criteria the Court considered in appointing Lead

8    Counsel and the PSC was substantially similar to the considerations set forth in Rule 23(g).

9    *Compare* Dkt. 6 and 173, *with Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016

10   WL 1461944, at *3 (N.D. Cal. Apr. 14, 2016).  Lead Counsel and the PSC are highly qualified

11   lawyers who have experience in successfully prosecuting high-stakes complex cases and

12   consumer class actions.  Further, Lead Counsel and the PSC, and their respective law firms, have

13   already undertaken an enormous amount of work, effort, and expense in this litigation and have

14   demonstrated their willingness to devote whatever resources are necessary to vigorously

15   prosecute this case on behalf of the Classes.

16   **V.    Rules 23(a)(2) and 23(b)(3)—Commonality and Predominance: Common Answers to**

17   **the Common Questions Relating to Defendants' Knowledge and Conduct Predominate and Drive the Resolution of This Action.**

18          "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating

19   that members of the proposed class share common 'questions of law or fact.'" *Stockwell v. City*

20   *& Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).  "The existence of shared legal

21   issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled

22   with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

23   (9th Cir. 1998).  The commonality "analysis does not turn on the number of common questions,

24   but on their relevance to the factual and legal issues at the core of the purported class' claims."

25   *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  Indeed, "'[e]ven a single

26   question of law or fact common to the members of the class will satisfy the commonality

27   requirement."' *Dukes*, 564 U.S. at 369.

28

1    There is "substantial overlap" between the commonality requirement and the Rule

2    23(b)(3) "predominance" inquiry. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

3    1172 (9th Cir. 2010). The latter focuses not simply on whether common questions exist, but on

4    whether they "predominate over any questions affecting only individual members." Fed. R. Civ.

5    P. 23(b)(3). In other words, it "asks whether the common, aggregation-enabling, issues in the

6    case are more prevalent or important than the non-common, aggregation-defeating, individual

7    issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 W.

8    Rubenstein, Newberg on Class Actions § 4:49 at 195-96 (5th ed. 2012)). "When 'one or more of

9    the central issues in the action are common to the class and can be said to predominate, the action

10   may be considered proper under Rule 23(b)(3) even though other important matters will have to

11   be tried separately, such as damages or some affirmative defenses peculiar to some individual

12   class members.'" *Id.* (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice &

13   Procedure § 1778, at 123-24 (3d ed. 2005)). Put differently, "[p]redominance is a question of

14   efficiency." *Butler v. Sears*, 702 F.3d 359, 362 (7th Cir. 2012), *cert. granted, judgment vacated*

15   569 U.S. 1015 (2013), *judgment reinstated*, 727 F.3d 796 (7th Cir. 2013). If, as is frequently the

16   case in consumer cases like this one, it is more efficient to try the same issues of fact and law

17   once, rather than thousands and thousands of times, predominance is "readily met." *See Amchem*

18   *Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

19       **A.    Plaintiffs' Nationwide Civil RICO Claims Raise Overwhelmingly Common**
             **Issues.**
20

21   Courts routinely find that commonality is met in RICO cases. *See, e.g.*, *Cohen v. Trump*,

22   303 F.R.D. 376, 382 (S.D. Cal. 2014) ("Here, Plaintiff argues his RICO claim raises common

23   questions as to 'Trump's scheme and common course of conduct, which ensnared Plaintiff[] and

24   the other Class Members alike.' The Court agrees."); *Spalding v. City of Oakland*, No. C11-2867

25   TEH, 2012 WL 994644, at *3 (N.D. Cal. Mar. 23, 2012) (commonality found where plaintiffs

26   "allege[] a common course of conduct that is amenable to classwide resolution").

27   Here, too, Plaintiffs' RICO claims easily satisfy commonality. As this Court correctly

28   described in its MTD Order:

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:17-MD-02777-EMC

1
2
3
4

> Plaintiffs' RICO claims are predicated on a fraud-on-the-regulators theory. They allege that Defendants formed an enterprise to fraudulently obtain COCs from the EPO and EOs from CARB in order to sell the Class Vehicles throughout the United States and California, even though the Class Vehicles emitted unlawful levels of NOx and contained illegal defeat devices. Plaintiffs contend that they were injured by this enterprise when they purchased the Class Vehicles in the stream of commerce.

5   Dkt. 290 at 24. The Court also upheld Plaintiffs' allegations that they and other Class members

6   suffered a RICO injury in the form of "overpayment at the time of purchase." *See id.* at 32.

7        Given that Plaintiffs allege their and other Class members' injuries derive from

8   Defendants' "'unitary course of conduct,'" they have "'identified a unifying thread that warrants

9   class treatment.'" *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y. 2012)

10  (RICO claim involving false affidavits to obtain fraudulent default judgments), *aff'd*, 780 F.3d 70

11  (2d Cir. 2015); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006)

12  ("The Court finds that the class members' claims derive from a common core of salient facts, and

13  share many common legal issues [*e.g.*,] whether Allianz entered into the alleged conspiracy and

14  whether its actions violated the RICO statute. The commonality requirement of Rule 23(a)(2) is

15  met.").

16       There can be no honest debate that the resolution of questions about Defendants' scheme

17  or common course of conduct will generate common answers "apt to drive the resolution of the

18  litigation" for the Class as a whole. *See Dukes*, 564 U.S. at 350. In contrast, absent certification,

19  each individual Class members would be forced to separately litigate the same issues of law and

20  fact thousands and thousands of time over, even though they all arise from Defendants' alleged

21  scheme to fraudulently obtain COCs and EOs to sell the Class Vehicles to the Class. *See* Dkt.

22  290 at 29; *In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2014 WL 722408, at *3 (N.D.

23  Cal. Feb. 25, 2014) (finding commonality requirement met where plaintiffs raised questions of

24  law or fact that would be addressed by other class members pursuing similar claims).

25  Commonality is readily met with respect to Plaintiffs' RICO claims.

26       Predominance is too. The Ninth Circuit favors class treatment of fraud claims stemming

27  from a "common course of conduct," like the one alleged here. *See In re First Alliance Mortg.*

28  *Co.*, 471 F.3d 977, 990 (9th Cir. 2006); *see also Negrete*, 238 F.R.D. at 492 (common questions

about the "overarching fraudulent scheme" to sell deferred annuities predominated for RICO

claims). Accordingly, courts have found that "[c]ommon issues frequently predominate in RICO

actions that allege injury as a result of a single fraudulent scheme." *Friedman v. 24 Hour Fitness*

*USA, Inc.*, No. CV 06-6282 AHM (CTX), 2009 WL 2711956, at *8 (C.D. Cal. Aug. 25, 2009);

*see, e.g.*, *In re Morning Song Bird Food Litig.*, 320 F.R.D. 540, 556 (S.D. Cal. 2017) (finding

predominance in RICO case where plaintiffs alleged a single scheme to sell bird poison as bird

food). Indeed, the factual and legal issues surrounding Defendants' scheme or common course of

conduct present a significant aspect of this case that will eclipse all others. Plaintiffs' RICO

claims are ideal for class treatment.

　　　　The Ninth Circuit's 2017 *Just Film* decision is instructive. There, the court affirmed

certification of a national RICO class (the "SKS Post-Lease Expiration Class") comprised of

merchants who had leased defendants' point-of-sale credit and debit card processing equipment

(*e.g.*, swipe terminals and pinpads) and alleged a scheme to collect fake back taxes and

administrative fees. *See Just Film, Inc. v. Buono,* 847 F.3d 1108, 1118 (2017). Defendants

argued that the district court had erred in finding predominance as "damages are not capable of

measurement on a classwide basis and because individualized issues regarding [plaintiff]

Campbell's reliance predominate." *Id.* at 1120. The Ninth Circuit disagreed.

　　　　As to damages, the Ninth Circuit reasoned that, "[t]o gain class certification, Plaintiffs

need to be able to allege that their damages arise from a course of conduct that impacted the class.

But they need not show that each members' damages from that conduct are identical." *Id.* Thus,

while

> some individual issues may arise in calculating damages, particularly for class
> members whose funds were never debited from their bank accounts. However,
> Plaintiffs generally will be able to "show that their damages stemmed from the
> [Leasing Defendants'] actions that created the legal liability." That some
> individualized calculations may be necessary does not defeat finding
> predominance."

*Id.* at 1121 (citing *Pulaski & Middleman, LLC v. Google*, 802 F.3d 979, 987-88 (9th Cir. 2015)).

The court concluded: "At this stage, Plaintiffs need only show that such damages can be

determined without excessive difficulty and attributed to their theory of liability, and have

1  proposed as much here." *Id.*

2          The Ninth Circuit also quickly dispatched of defendants' argument that "issues of reliance

3  are highly individualized." *Id.* at 1121.  Whereas defendants had contended that individual

4  questions about whether plaintiff "received and read a Notice of Debt, that she decided to

5  investigate, and that she incurred monetary damage as a result of that decision" would

6  predominate, the district court found otherwise.  *Id.*  Specifically, the district court identified

7  common questions, like "the propriety of Leasing Defendants' simulation to determine whether

8  taxes were due, whether class members' ACH form agreements authorized the deductions after

9  their leases had expired, and whether ACH processors relied on fraudulent misrepresentations by

10  Leasing Defendants when they processed the debits[]," and found those would predominate.  *Id.*

11  Thus, predominance was satisfied. *See id.*  In affirming, the Ninth Circuit reasoned:  "Although

12  there are individualized issues related to Campbell's injury, common questions exist and

13  predominate for the alleged RICO violation.  The district court did not abuse its discretion in so

14  concluding." *Id.* at 1121-22.  Here, too, even if Defendants attempt to argue in their oppositions

15  that there are some individual issues, it is the common questions that will predominate for

16  purposes of Plaintiffs' RICO claims.  *See id.*

17                    **1.      Each Element of Plaintiffs' RICO Claims Will Be Proved by Evidence
                              Common to the Class.**
18

19          As mentioned above, the Ninth Circuit favors class treatment of fraud claims alleging a

20  "common course of conduct."  *First Alliance Mortg.*, 471 F.3d at 990.  That is precisely what is

21  alleged here.  As this Court noted in its MTD Order, the liability elements of a RICO claim under

22  18 U.S.C. § 1962(c) are "(1) the conduct (2) of an enterprise that affects interstate commerce, (3)

23  through a pattern (4) of racketeering activity."  Dkt. 290 at 29 (citing *Eclectic Props. E., LLC v.*

24  *Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014)).  For § 1962(d), plaintiffs must

25  establish defendants conspired to violate § 1962(c).  *See id.* at 30.

26          Every Class member across the country will prove each of these liability elements for

27  §§ 1962(c)  and (d)  with the same evidence, and the answer to each of these questions posed by

28  each of the elements will be the same.  For example, under the first element of § 1962(c), a finder

1   of fact will decide for the entire class whether each Defendant did or did not conduct the affairs of

2   the EcoDiesel RICO Enterprise.  *See* SAC ¶¶ 283-336.  "In order to 'participate, directly or

3   indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those

4   affairs."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Plaintiffs will prove this "conduct"

5   element through common proof of each Defendants' respective role in directing the affairs of the

6   enterprise, whether it be Marchionne setting it into motion, Bosch developing and writing

7   software code to enable the defeat devices, VM incorporating them into the EcoDiesel engines, or

8   the FCA Defendants concealing them from the EPA and CARB on applications and in

9   communications once concerns were raised.  *See* SAC ¶¶ 293-314.

10          The same is true for the remaining three elements of § 1962(c) because the existence or

11   non-existence of the EcoDiesel RICO Enterprise, and the fact and extent of Defendants'

12   racketeering activity will all be proven with the same evidence as to each Class Member.

13   Similarly, with respect to the § 1962(d) claim, either a given defendant conspired to violate

14   § 1962(c)  or it did not.  It is as simple as that.  Both the proof and the answer as to each liability

15   element of the RICO claims will be the same for each Class member.  Thus, the RICO claims will

16   rise and fall on the same proof, whether there is one, 100, or 100,000 plaintiffs.

17                    **2.       The Predicate Acts of Mail or Wire Fraud Comprised a Common
                          Course of Conduct.**

18

19          As this Court set forth in its MTD Order, "the elements of mail and wire fraud [*i.e.*, the

20   racketeering activity] are '(A) the formation of a scheme to defraud, (B) the use of the mails or

21   wires in furtherance of that scheme, and (C) the specific intent to defraud[,]" which includes

22   reckless disregard for the truth.  Dkt. 290 at 51; *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,

23   806 F.2d 1393, 1399-1400 (9th Cir. 1986).  Moreover, the Court noted that the "'scheme to

24   defraud' element is 'treated like conspiracy in several respects.'"  Dkt. 290 at 51 (quoting *United

25   States v. Stapleton*, 293 F.3d 1111, 1117 (9th Cir. 2001)).  "'Like co-conspirators, "knowing

26   participants in the scheme are legally liable" for their co-schemers' use of the mails or wires.'"

27   *Id.* (quoting *Stapleton*, 293 F.3d at 1117).  As such, Plaintiffs will prove at trial that each

28   Defendant (1) was a "knowing participant in a scheme to defraud," (2) "had the intent to

1    defraud," and (3) "a co-schemer committed acts of mail or wire fraud" during that defendant's

2    participation."  Dkt. 290 at 46; *see also id.* at 52-62.

3         It is manifestly clear from the nature of these elements that the proof of the predicate acts

4    will concern the scheme itself and its ***objective*** effects, and thus is susceptible to common proof.

5    Plaintiffs will prove that each Defendant was a knowing participant in a scheme to sell the Class

6    Vehicles with defeat devices, that it acted with intent (including reckless disregard) to defraud,

7    and will prove with common evidence that at least one "co-schemer" used (or caused the use of)

8    the mails or wires in furtherance of the fraudulent scheme.  If Plaintiffs prove the scheme with

9    respect to their individual claims, the claims of ***all*** Class members will be not just substantially

10   advanced; they will be proven.  *See McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 299-300

11   (C.D. Cal. 2011).

12                     **3.    Proximate Causation Presents a Common Question for Classwide**
                            **Proof.**

13

14        As this Court found in its MTD Order, the "'central question' [for proximate causation

15   under RICO] is 'whether the alleged violation led directly to the plaintiff's injuries.'"  Dkt. 290 at

16   41 (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)).  RICO requires only

17   "but for" and proximate causation—*i.e.*, a direct relation between the misconduct and the injury.

18   *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, No. 3:05-CV-1018-GPC-WVG, 2013 WL

19   593414, at *4 (S.D. Cal. Feb. 14, 2013) ("*Nat'l W. Life II*") (denying motion for decertification).

20   Proximate causation under RICO "is a flexible concept that does not lend itself to 'black-letter

21   rule that will dictate the result in every case.'"  *Bridge v. Phoenix Bond & Indemnity Co.*, 553

22   U.S. 639, 654 (2008) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 272 n.20

23   (1992)).  The scheme need not be the injury's "sole cause"; it is sufficient to show defendant's

24   misconduct was "'a substantial factor in the sequence of responsible causation.'"  *Oki*

25   *Semiconductor Co. v. Wells Fargo Bank*, 298 F.3d 768, 773 (9th Cir. 2002).  Importantly, RICO

26   does not require Plaintiffs to prove individual (sometimes referred to as "first-party") reliance.

27   *Bridge*, 553 U.S. at 660 ("RICO's text provides no basis for imposing a first-party reliance

28   requirement.").

1536765.7                                                    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
                                                             CASE NO. 3:17-MD-02777-EMC

1          Here, as the Court recognized, Plaintiffs allege a "fraud on the regulators" theory, which

2    the Court found "plausibly led directly to Plaintiffs' economic injury.  By deceiving regulators,

3    Defendants were able to sell Class Vehicles that emitted NOx at levels up to 20 times legal limits

4    and that contained one or more defeat devices."  Dkt. 290 at 44.  This theory does not require

5    first-party reliance by consumers because Plaintiffs' and other Class members' injury is the direct

6    result of regulators' reliance on Defendants' deception.  *See Bridge*, 553 U.S. at 658.  But for

7    regulators' reliance on Defendants' false or deceptive COC and EO applications, as well as on

8    Defendants' misleading statements once questions were raised, the Class Vehicles never would

9    have been sold to Plaintiffs and other Class members—nor could they have been.  This is

10   sufficient for RICO causation and will be proved by evidence common to all Plaintiffs and Class

11   members.

12         Even if first-party reliance was required in this case (which it is not), reliance may be

13   inferred, as the only logical explanation for Plaintiffs' and Class Members' purchases was that

14   they believed the Class Vehicles were legal and complied with federal and state emission

15   standards.  Courts routinely find that this "common sense" or "logical explanation" for a

16   plaintiff's behavior is an acceptable method of proving causation.  *See, e.g.*, *Trump*, 303 F.R.D. at

17   385 ("Courts have found that reliance can be established on a class-wide basis where the behavior

18   of plaintiffs and class members cannot be explained in any way other than reliance upon the

19   defendant's conduct.");  *Morning Song Bird Food Litig.*, 320 F.R.D. at 555 (finding "reliance can

20   be determined on a class-wide basis" where "a common sense inference can be made that the

21   class members relied upon [d]efendants' misrepresentation");  *In re Nat'l W. Life Ins. Deferred*

22   *Annuities Litig.*, 268 F.R.D. 652, 665-66 (S.D. Cal. 2010) ("*Nat'l Western Life I*");  *Negrete*, 238

23   F.R.D. at 491;  *Kennedy v. Jackson Nat'l Life Ins. Co.*, No. C 07-0371 CW, 2010 WL 2524360, at

24   *8-9 (N.D. Cal. June 23, 2010) (inference of RICO causation where annuities were worth less

25   than represented);  *Garner v. Healy*, 184 F.R.D. 598, 602 (N.D. Ill. 1999) (class-wide proof of

26   RICO causation where car "wax" product was not actually wax);  *Peterson v. H & R Block Tax*

27   *Servs.*, 174 F.R.D. 78, 85 (N.D. Ill. 1997) (class-wide presumption of RICO causation when class

28   paid for services for which they were ineligible).  The actions of the Class members at the time

1   speak louder—and more probatively—then would their after-the-fact words: "I relied."  This has

2   long been accepted as a principle of proof.  *See Hunter v. McKenzie*, 197 Cal. 176, 185 (1925)

3   ("The fact of reliance upon alleged false representations may be inferred from the circumstances

4   attending the transaction which oftentimes afford much stronger and more satisfactory evidence

5   of the inducement which prompted the party defrauded to enter into the contract than his direct

6   testimony to the same effect.").

7       *Waldrup v. Countrywide Fin. Corp.*, No. 2:16-cv-04166-CAS (AGRx), 2018 WL 799156

8   (C.D. Cal. Feb. 6, 2018) is illustrative.  There, Judge Snyder certified a RICO claim alleging an

9   appraisal scheme to flout Uniform Standards of Professional Practice ("USPAP") standards.  The

10   court rejected defendants' argument that no causal link existed between the USPAP violations

11   and overcharge injury.  *Id.* at *11.  The court reasoned:

12       In light of *Bridge* and [other] authorities, the Court finds that the issue of causation
        in this case is susceptible to class-wide proof such that individualized issues of
13       reliance do not predominate.  First, plaintiffs allege and have come forward with
        classwide evidence that defendants operated a fraudulent appraisal scheme that
14       directly caused class members financial injury through the assessment of fees for
        systematically non-USPAP compliant appraisals. . . .  Furthermore, to the extent
15       first-party reliance is required to demonstrate causation under these circumstances,
        class-wide evidence of fee payment supports a common-sense inference that
16       defendants' uniform misrepresentations of USPAP compliance induced the class
        members to make payments and directly caused their injuries.
17

18   *Id.* at *13.

19       Similarly, in *In re Morning Song Bird Food*, Judge Houston certified a RICO claim and

20   several state consumer protection claims for consumers who purchased "bird poison that

21   Defendants' misrepresented as bird food."  320 F.R.D. at 554.  In doing so, the court applied a

22   "common sense" inference of RICO causation:  "The Court finds a common sense inference can

23   be made that the class members relied upon Defendants['] misrepresentation that the product was

24   bird food and not bird poison.  As such, reliance can be determined on a class-wide basis."  *Id.* at

25   555.

26       And in *Trump*, Judge Curiel certified a RICO claim on behalf of former Trump University

27   students, and rejected arguments that reliance would require individualized inquiries:

28

-24-                    PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
                                                                       CASE NO. 3:17-MD-02777-EMC

1

2

> Courts have found that reliance can be established on a class-wide basis where the behavior of plaintiffs and class members cannot be explained in any way other than reliance upon the defendant's conduct. . . .

3

4

5

6

7

> Here, Plaintiff's theory of causation is that people who paid for "Trump University" Live Events "would not have done so if informed they were getting neither Trump nor a university.". . . Plaintiff has introduced evidence that the alleged misrepresentations of a "university" and of Donald Trump['s] participation in the Trump University Live Events were prominently featured in all Trump University marketing materials.  [T]his evidence provides a method for Plaintiff to establish proximate causation on a classwide basis without resort to individualized inquiries, by relying on a common sense inference that consumers are likely to rely on prominently marketed features of a product which they purchase.

8
303 F.R.D. at 385.

9
Moreover, individual reliance is not required in any event because Plaintiffs "primarily

10
allege[] omissions."  *Binder v. Gillespie*, 184 F.3d 1059, 1064 (9th Cir. 1999) (citing *Affiliated*

11
*Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972)); *see also Bias v. Wells Fargo & Co.*,

12
312 F.R.D. 528, 541 (N.D. Cal. 2015) (certifying RICO claim because it was "undisputed that

13
Wells Fargo never disclosed that the BPO charge included a mark-up" and holding that "[w]here,

14
as here, the case primarily involves a failure to disclose (an omission), a presumption of reliance

15
may be invoked") (citing, *inter alia*, *Binder*, 184 F.3d at 1063-64).  Instead, "'[a]ll that is

16
necessary is that the facts withheld be material,' in the sense that a reasonable person 'might have

17
considered them important' in making his or her decision."  *Plascencia v. Lending 1st Mortg.*,

18
259 F.R.D. 437, 447 (N.D. Cal. 2009) (alteration in original).  Here, any consumer purchasing a

19
vehicle would consider the legality of the vehicle to be an important factor.  Regardless,

20
materiality is a fact for the jury.  *See Plascencia*, 259 F.R.D. at 447; *see also In re Providian Fin.*

21
*Corp. Sec. Litig.*, No. C 01-03952 CRB, 2004 WL 5684494, at *5 (N.D. Cal. Jan. 15, 2004)

22
(certifying class and noting that "[t]he fact that [the plaintiff] may be subject to a defense of non-

23
reliance is not a reason to deny class certification unless the facts giving rise to the defense make

24
the plaintiff atypical").

25
The First Circuit said it well in a RICO case involving the off-label promotion of the

26
pharmaceutical Neurontin.  In rejecting defendants' argument that the plaintiff health-benefits-

27
providers had to prove on a prescription-by-prescription basis that the marketing campaign

28
caused them to pay for more prescriptions than they otherwise would have, the court reasoned:

-25-

1
2
3
4
5

> A tort plaintiff need not "prove a series of negatives; he doesn't have to 'offer evidence which positively exclude[s] every other possible cause of the accident.'" *BCS Servs.* [*v. Heartwood 88, LLC*, 637 F.3d 750, 757 (7th Cir. 2011)] (alteration in original) (quoting *Carlson v. Chisholm-Moore Hoist Corp.*, 281 F.2d 766, 770 (2d Cir. 1960)). "Once a plaintiff presents evidence that he suffered the sort of injury that would be the expected consequence of the defendant's wrongful conduct," the burden shifts to the defendant to rebut this causal inference. *Id.* at 758.

6
7
8

*In re Neurontin Mktg. & Sales Practices Litig.*, 712 F.3d 60, 68 (1st Cir. 2013).  Here, too, given that Plaintiffs and Class members paid hundreds of millions of dollars for compliant vehicles but received illegal ones, proximate cause will be simple to resolve on a class-wide basis.

9
10
11
12
13
14
15
16
17
18
19
20

Finally, even if Defendants point to some individualized inquiry about causation, it will not preclude class certification because it is still more efficient to try this as a class action one time instead of thousands of times over.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759-61 (7th Cir. 2014).  "Rule 23(b)(3) class actions are designed to 'cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'"  *Id.* at 759.  "Where there are common issues and the accuracy of the resolution of those issues 'is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings."  *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010).  The legal standard is predominance of common issues, not a complete absence of individual issues.

21
22
23
24
25
26

The bottom line is that the predicate for Plaintiffs' RICO claim turns on Defendants' deception to obtain COC and EOs to sell the Class Vehicles to Plaintiffs and Class members, rather than representations to individual consumers. "Because the injury to class members was inflicted automatically . . . as a result of the [regulators'] reliance on the alleged misrepresentations, the proximate cause requirement is not a barrier to class treatment of [Plaintiffs'] RICO claim."  *Friedman*, 2009 WL 2711956, at *9.

27
28

4.    **Plaintiffs Have Proposed an Appropriate Methodology for Determining Damages Class-Wide.**

'"At class certification, plaintiff must present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.'"  *Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at 19 (N.D. Cal. June 13, 2014) (Breyer, J.); *Just Film*, 847 F.3d at 1121 ("At this stage, [p]laintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability. . .").  The amount of damages, even if it is an individual question, does not defeat class certification.  *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013).  As Judge Posner said:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages.  If the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses, the fact that damages are not identical across all class members should not preclude class certification.

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

Here, Plaintiffs seek to recover the amount they overpaid for their Class Vehicles, which is an appropriate RICO recovery.  *See Maiz v. Virani*, 253 F.3d 641, 664 (11th Cir. 2001) ("A plaintiff injured by civil RICO violations deserves a 'complete recovery.'"); *Carter v. Berger*, 777 F.2d 1173, 1176 (7th Cir. 1985) (holding that, under RICO, "the directly injured party should receive a complete recovery, no matter what"); *Pac. Gas & Elec. Co. v. Howard P. Foley Co.*, No. 85-2922 SW, 1993 WL 299219, at *2 (N.D. Cal. July 27, 1993) ("A plaintiff prosecuting a civil RICO claim is entitled to complete recovery for the harm that proximately results from the predicate acts."); *see also Bridge*, 553 U.S. at 654, 658 (RICO provides flexible concepts of causation and damages to ensure a defendant is held liable and Plaintiffs may recover all damages that are the "foreseeable and natural consequence[s]" of the fraud); Jed S. Rakoff, RICO: Civil & Criminal Law & Strategy, § 4.02[3] (Supp. 2013).  As set forth in the expert reports of Steve Gaskin and Colin Weir (*see* Exs. C ("Gaskin Rep.") and D ("Weir Rep.")), and as described in

1    more detail below, Plaintiffs' overpayment damages can be calculated with a straightforward

2    calculation methodology common to all Class members.

3            In sum, Plaintiffs' RICO claims rise and fall on common facts and law, and they are

4    ideally suited for resolution as a class action.

5            **B.     Plaintiffs' Fraud-on-Consumer Claims (Common Law Fraud and Statutory
                        Consumer Protection Statutes) Raise Predominantly Common Questions with
6                       Common Answers.**

7            Plaintiffs seek to certify State Classes for their common law fraud claims in all states and

8    under the consumer protection laws of all states except Kentucky.  As the Court recognized in its

9    MTD Order (Dkt. 290 at 66-69), and as Plaintiffs further articulated in the SAC (Dkt. 310 at

10   ¶¶ 338-57; *id.* at 289-434), Plaintiffs' fraud-based claims implicate three theories:

11           (1) **Affirmative misrepresentation** based on the EcoDiesel badge on every Class

12   Vehicle.  Plaintiffs alleged and have advanced common evidence to prove that the EcoDiesel

13   name and badge were intended to and did in fact represent to consumers that the Class Vehicles

14   were clean, green, and low-emissions.  *See, e.g.*, SAC ¶¶ 149-63; Ex. B (Honka Decl.) ¶¶ 8-13,

15   29-33, 36-38.  Plaintiffs assert this representation is false because the vehicles emit pollutants

16   such as NOx at up to 20 times the legal limit in real-world driving conditions.

17           (2) **Fraudulent concealment/partial representation** based on both the EcoDiesel badge

18   and consistent, pervasive marketing.  Plaintiffs have alleged and advanced common evidence to

19   prove that the EcoDiesel name and badge were also intended to and did in fact communicate to

20   consumers that the Class Vehicles were fuel efficient and high performing.  *See, e.g.*, SAC

21   ¶¶ 149-63.  Plaintiffs assert that the Defendants fraudulently concealed the fact that the Class

22   Vehicles could achieve the represented fuel economy and performance only by utilizing

23   emissions defeat devices.  *See, e.g.*, SAC ¶ 206.

24           (3) "**[S]traight omission/concealment**" based on Defendants' "fail[ure] to disclose that

25   the vehicles contained defeat devices."  Dkt. 290 at 68-69

26           Each theory is subject to common proof and implicates predominantly common questions

27   of fact and law that justify certification of State Classes.

28

**1.  Affirmative Misrepresentation (EcoDiesel Name/Badge)**

The core elements of an affirmative misrepresentation claim are substantially similar across all states.  They include: (a) a misrepresentation; (b) knowledge of falsity; (c) intent to defraud or induce reliance; (d) justifiable reliance; and (e) resulting damage.[13]

---

[13] <u>State-by-state common law fraud elements</u>: **Alabama**: *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 724-26 (Ala. 2009); **Alaska**: *Lightle v. State, Real Estate Comm'n*, 146 P.3d 980, 983–84 (Alaska 2006); **Arizona**: *Echols v. Beauty Built Homes*, 647 P.2d 629, 631 (Ariz. 1982); **Arkansas**: *First Ark. Bank & Trust v. Gill Elrod Ragon Owen & Sherman, P.A.*, 427 S.W.3d 47 (Ark. 2013); **California**: *Lovejoy v. AT&T Corp.*, 92 Cal. App. 4th 85, 93 (Ct. App. 2001), *as modified on denial of reh'g* (Oct. 5, 2001); **Colorado**: *Jacobson v. XY, Inc.*, No. 07-cv-02670, 2009 U.S. Dist. LEXIS 73456, at \*6-7 (D. Colo. 2009) (citing *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987) as authority regarding the elements of fraud); **Connecticut**: *Carr v. Fleet Bank*, 812 A.2d 14, 16-17 (Conn. App. Ct. 2002); **Delaware**: *Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008); **District of Columbia**: *Sununu v. Phil. Airlines, Inc.*, 638 F. Supp. 2d 35, 41 (D.D.C. 2009) (quoting *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005) as authority regarding the elements of fraud); **Florida**: *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650-51 (Fla. Dist. Ct. App. 2006); **Georgia**: *Coleman v. H2S Holdings, LLC*, 230 F. Supp. 3d 1313, 1321-22 (N.D. Ga. 2017); **Hawaii**: *Shoppe v. Gucci Am., Inc.*, 14 P.3d 1049, 1067 (Haw. 2000); **Idaho**: *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005); **Illinois**: *Soules v. Gen. Motors Corp.*, 402 N.E.2d 599, 601 (Ill. 1980); **Indiana**: *Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012); **Iowa**: *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996); **Kansas**: *Alires v. McGehee*, 85 P.3d 1191, 1195 (Kan. 2004); **Kentucky**: *PBI Bank, Inc. v. Signature Point Condos. LLC*, 535 S.W.3d 700, 714 (Ky. 2016); **Louisiana**: *Chateau Homes by RJM, Inc. v. Aucoin*, 97 So. 3d 398, 404-06 (La. Ct. App. 2012); **Maine**: *Rand v. Bath Iron Works Corp.*, 832 A.2d 771 (Me. 2003); **Maryland**: *Sass v. Andrew*, 832 A.2d 247, 249, 260 (Md. Ct. Spec. App. 2003); **Massachusetts**: *Stigman v. Nickerson Enters.*, 2000 Mass. App. Div. 223, 224-25 (Mass. App. Ct. 2000); **Michigan**: *Colby v. Zimmerman*, No. 220395, 2001 WL 1219414, at \*1 (Mich. Ct. App. Oct. 12, 2001); **Minnesota**: *Hoyt Props. v. Prod. Res. Grp., L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007); **Mississippi**: *Lacy v. Morrison*, 906 So. 2d 126, 129 (Miss. Ct. App. 2004); **Missouri**: *Bohac v. Walsh*, 223 S.W.3d 858, 862-63 (Mo. Ct. App. 2007); **Montana**: *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796, 801 (Mont. 2008); **Nebraska**: *Knights of Columbus Council 3152 v. KFS Bd, Inc.*, 791 N.W.2d 317, 331 (Neb. 2010); **Nevada**: *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004); **New Hampshire**: *Patch v. Arsenault*, 653 A.2d 1079, 1083-84 (N.H. 1995); **New Jersey**: *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (1997); **New Mexico**: *Eoff v. Forrest*, 789 P.2d 1262, 1266 (N.M. 1990); **New York**: *CIMB Thai Bank PCL v Stanley*, No. 653777/2012, 2013 N.Y. Misc. LEXIS 4280, \*9-10 (N.Y. 2013); **North Carolina**: *Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009); **North Dakota**: *WFND, LLC v. Fargo Marc*, LLC, 730 N.W.2d 841, 853 (N.D. 2007); **Ohio**: *Aztec Int'l Foods, Inc. v. Duenas*, No. CA2012-01-002, 2013 Ohio App. LEXIS 370, \*27 n.10, \*29-30 (Ohio Ct. App. Feb. 11, 2013); **Oklahoma**: *Gish v. ECI Servs. of Okla.*, 162 P.3d 223, 228 (Okla. Civ. App. 2006); **Oregon**: *Or. Pub. Emps. Ret. Bd. v. Simat, Helliesen & Eichner*, 83 P.3d 350, 359 (Or. Ct. App. 2004); **Pennsylvania**: *Porreco v. Porreco*, 811 A.2d 566, 570 (Pa. 2002); **Rhode Island**: *Women's Dev. Corp. v. City of Cent. Falls*, 764 A.2d 151, 160-61 (R.I. 2001); **South Carolina**: *McLaughlin v. Williams*, 665 S.E.2d 667, 670-71 (S.C. Ct. App. 2008); **South Dakota**: *Cleveland v. BDL Enters., Inc.*, 663 N.W.2d 212, 219-20 (S.D. 2003); **Tennessee**: *Lopez v. Taylor*, 195 S.W.3d 627, 634 (Tenn. Ct. App. 2005); **Texas**: *Va. Oak Venture, LLC v. Fought*, 448 S.W.3d 179, 186, 189, 191 (Tex. Ct. App. 2014); **Utah**: *Taylor v. Gasor, Inc.*, 607 P.2d 293, 294-95 (Utah 1980);  **Vermont**: *Follo v. Florindo*, 970 A.2d 1230, 1240-41, 1245-49 (Vt. 2009); **Virginia**: *Metrocall of Del. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 193-93 (Va. 1993); **Washington**: *Pike v. Parallel Film Distribs.*, 443 P.2d 804, 807 (Wash. 1968) (citing *Webster v. L. Romano Eng'g Corp.*, 34 P.2d 428, 430

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:17-MD-02777-EMC

1   Each of these elements can be established with proof common to each member of each

2   State Class.  Although individual questions about exposure to the misrepresentation and reliance

3   on it can, under some circumstances, overwhelm the common issues, they do not do so here.  As

4   this Court already concluded:

5       Plaintiffs' affirmative misrepresentation theory is based on the use of the
        "EcoDiesel" logo on Class Vehicles. Because the "EcoDiesel" logo is on the face
6       of each Class Vehicle, there is a plausible assertion of pervasive advertising from
        which an inference of reliance could be made. *See Tobacco II Cases*, 207 P.3d 20,
7       40 (Cal. 2009) (in a tobacco case, stating that, "where, as here, a plaintiff
        alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead
8       with an unrealistic degree of specificity that the plaintiff relied on particular
        advertisements or statements").
9

10  Dkt. 290 at 103 n.18.  This finding was correct.  As further demonstrated in the SAC, the FCA

11  Defendants understood that "fuel efficiency and environmental friendliness [were] important" to

12  its potential customers, and that the name for the diesel technology must "connect[]" with those

13  themes. SAC ¶ 151 (quoting FCA-MDL-001182796-821).  They also knew, based on their own

14  consumer research, that the EcoDiesel "[n]ame [i]mplies a variety of positive meanings – green,

15  efficient, economic, etc." *Id.* ¶ 156 (quoting FCA-MDL-001182796-82).  Indeed, their research

16  further confirmed that the "EcoDiesel badging/logo" and the "word 'Eco-Diesel' can change the

17  perception of a diesel engine to something denoting ecologically conscious and economical to

18  own and operate." *Id.* ¶ 159 (quoting FCAMDL-001166458-533).  Other documents demonstrate

19  that FCA intended the "'Eco' in EcoDiesel" to communicate that the Vehicles were emissions-

20  compliant in all 50 states.  *Id.* ¶ 161 (quoting FCA-MDL-000519022-24).

21   Again, as the Court noted, FCA placed the EcoDiesel badges prominently on every single

22  Class Vehicle.  Thus, as in *In re Tobacco II Cases*, 46 Cal. 4th 298, 207 P.3d 20, 40 (2009),

23  which the Court cited on this issue, class-wide exposure has been established, and reliance can be

24  presumed.  Similar principles apply throughout the country, and thus, individual issues of

25

26

27  (Wash. 1934)); **West Virginia**: *Martin v. ERA Goodfellow Agency, Inc.*, 423 S.E.2d 379, 381 (W.
    Va. 1992);  **Wisconsin**: *Kaloti Enters. v. Kellogg Sales Co.*, 699 N.W.2d 205, 211-13 (Wis. 2005);
28  **Wyoming**: *Lavoie v. Safecare Health Serv.*, 840 P.2d 239, 252 (Wyo. 1992).

1  exposure and reliance will not overwhelm common issues for any of the common law fraud[14] or

2  statutory consumer protection[15] State Classes.  Commonality and predominance are satisfied for

3  both.

4  _____

5  [14] Examples of class-wide or circumstantial proof of reliance—common law: **Alabama**: *Ex parte Household Retail Sers. Inc.*, 744 So.2d 871, 877 (Ala. 1999) (Fraud may be proved by circumstantial evidence, and, absent genuine questions regarding the "degrees of reliance,"

6  individual issues predominate); **Alaska**: *State v. First Nat. Bank of Anchorage*, 660 P.2d 406, 422 n.26 (Alaska 1982) (following California rule providing that "issues of reliance would not

7  preclude certification of an action as a class action because if it was shown that alleged misrepresentations were material, an inference of reliance would arise as to the entire class"—

8  subject to defendant's ability to rebut the presumption); **Arizona**: *London v. Green Acres Trust*, 765 P.2d 538 (Ariz. App. 1986) (granting class certification on state law fraud claim); **Arkansas**:

9  *SEECO, Inc. v. Hales*, 954 S.W.2d 234, 241 (Ark. 1997) (affirming class certification because "[T]he fact that lack of reliance and diligence may be arguments raised by the appellants . . . will

10  not override the common question relating to the allegation of a scheme perpetrated by the appellants"); **California**: *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 919 (Cal. 1997)

11  (citing Restatement (Second) of Contracts § 167) (inference of reliance arises when there is a showing that a misrepresentation is material, as judged by an objective standard); **Colorado**: *Elk*

12  *River Assocs. v. Huskin*, 691 P.2d 1148, 1154 (Colo. App. 1984) (allowing plaintiffs to prove class-wide reliance through circumstantial evidence common to the class); **Connecticut**: *Spencer*

13  *v. Hartford Fin. Servs. Grp., Inc.*, 256 F.R.D. 284 (D. Conn. 2009) (certifying class for common law fraud because reliance could be provide class-wide using common circumstantial evidence);

14  **Delaware**: *Cobalt Operating, LLC v. James Crystal Enters., LLC*, No. Civ.A. 714-VCS, 2007 WL 2142926, *25 n.54 (Del.Ch. July 20, 2007) (fraud may be proved by either direct or

15  circumstantial evidence); *but see Manzo v. Rite Aid Corp.*, No. Civ.A. 18451-NC, 2002 WL 31926606 (Del.Ch. Dec. 19, 2002) (rejecting inference of reliance for class); **District of**

16  **Columbia**: *Wynne v. Boone*, 191 F.2d 220, 222 (D.C. Cir. Apr. 26, 1951) (allowing fraud to be proved by circumstantial evidence); **Florida**: *Broin v. Philip Morris Cos., Inc.*, 641 So.2d 888

17  (Fla. App. 3 Dist. 1994) (certifying class action for common law fraud); *but see Rollins, Inc. v. Butland*, 951 So.2d 860, 877-878 (Fla.App. 2 Dist. 2006) (holding that Florida prohibits class

18  certification of fraud claims—analysis seems to be rooted in Florida's procedural governing class action, which is not applicable in this federal action); **Georgia**: *Fortis Ins. Co. v. Kahn*, 683

19  S.E.2d 4, 299 Ga.App. 319 (Ga. App. 2009) (reliance can be proved class-wide with circumstantial evidence); **Hawaii**: *Jaress & Leong v. Burt*, 150 F.Supp.2d 1058, 1065 (D. Haw.

20  2001) (noting that "the Hawaii Supreme Court would likely follow the California reasoning" on torts); **Idaho**: *G & M Farms v. Funk Irr. Co.*, 808 P.2d 851, 858 (1991) (reliance presumed where

21  misrepresentation or omission is material); **Illinois**: *Phillips v. Ford Motor Co.*, No. 99-L-1041, 2003 Ill. Cir. LEXIS 20, *14-15, 24-25 (Ill. Cir. Ct. Sept. 15, 2003) (certifying common law fraud

22  class and confirming that reliance and proximate cause can be proved on class-wide basis); **Indiana**: *Skalbania v. Simmons*, 443 N.E.2d 352, 358-61 (Ind. Ct. App. 1982) (certifying fraud

23  class and allowing reliance to be proved by common, class-wide proof); **Iowa**: *Slater v. Terril Tel. Co.*, No. 2-1010 / 02-0813, 2003 Iowa App. LEXIS 87 (Iowa Ct. App. Jan. 29, 2003), *aff'd*

24  662 N.W.2d 372 (Iowa Ct. App. Jan. 29, 2003) (granting certification of common law fraud class because reliance could be proved class-wide with common circumstantial evidence); **Kansas**:

25  *Smith v. MCI Telecomms. Corp.*, 124 F.R.D. 665, 669-71 (D.Kan. 1989) (certifying fraud claim and rejecting arguments that reliance required individualized inquiry); **Kentucky**: *Thacker v.*

26  *Chesapeake Appalachia, L.L.C.*, 259 F.R.D. 262, 269 (E.D. Ky. 2009) (certifying fraud class where misrepresentations were "uniform" and "subject to generalized proof"); **Louisiana**: *Scott v.*

27  *Am. Tobacco Co., Inc.*, 949 So.2d 1266 (La. App. 4 Cir. 2007) (approving certification of fraud claims and noting reliance can be provide class-wide through circumstantial evidence);

28  **Maryland**: *In re Kirschner Med. Corp. Sec. Litig.*, 139 F.R.D. 74, 83-84 (D. Md. 1991)(certifying common law fraud claims); **Massachusetts**: *In re New England Mut. Life Ins.*

1

*Co. Sales Prac. Litig.*, 183 F.R.D. 33 (D. Mass. 1998) (certifying class action for common law fraud); **Michigan**: *Snyder v. Grand Valley Title Co.*, No. 206616, 1999 WL 33453800 (Mich. App. Mar. 5, 1999) (certifying fraud class and holding reliance was provable through common, circumstantial evidence); **Minnesota**: *Braun v. Wal-Mart, Inc.*, No. 19-CO-01-9790, 2003 Minn. Dist. LEXIS 3, *29-30, 35 (D. Minn. Nov. 3, 2003) (certifying common law fraud class); **Montana**: *In re Estate of Kindsfather*, 108 P.3d 487, 492 (Mont. 2005) (inference of reliance can be established by circumstantial evidence and materiality of the representation); **Nebraska**: *Four R Cattle Co. v. Mullins*, 570 N.W.2d 813, 816 (Neb. 1997) (allowing fraud to be proved by circumstantial evidence); **Nevada**: *Johnson v. Travelers Ins. Co.*, 515 P.2d 68, 72 (Nev. 1973) (allowing for representative claims when "fraud element existed and pervaded the transaction at the time of the consumer's purchase," as is the case here); **New Hampshire**: *Prive v. New Hampshire-Vermont Health Serv.*, 1998 WL 375294 (N.H. Super. Ct. July 1, 1998); **New Jersey**: *In re Prudential Ins. Co. of Am. SalesPrac. Litig.*, 962 F. Supp. 450, 516-518 (D.N.J. Mar. 17, 1997) (allowing for presumption of reliance for fraudulent omission claims, finding predominance element satisfied, and granting class certification); **New Mexico**: *Berry v. Fed. Kemper Life Assur. Co.*, 99 P.3d 1166, 1186 (N.M. Ct. App. July 23, 2004) (allowing reliance to be presumed when plaintiffs assert an omission/nondisclosure theory); **New York**: *Stellema v. Vantage Press, Inc.*, 492 N.Y.S.2d 390, 393-94 (N.Y. 1985) ("[O]nce it has been determined that the representations alleged, if made, are material and actionable if false, and thus sufficient to warrant certification, the issue of reliance may be presumed."); **North Carolina**: *Pitts v. Am. Sec. Ins. Co.*, 550 S.E.2d 179, 189, 193 (N.C. Ct. App. June 5, 2001) (finding that "the trial court erred by finding a class necessarily did not exist because Plaintiff's claims included a claim for fraud" and remanding "to the trial court for entry of an order allowing Plaintiff's motion for class certification."); **North Dakota**: *Peterson v. Dougherty Dawkins, Inc.*, 583 N.W.2d 626, 630-631 (N.D. 1998) (certifying fraud class and holding that evidence regarding the representations was sufficiently uniform to establish predominance); **Ohio**: *Cope v. Metro. Life Ins. Co.*, 696 N.E.2d 1001 (Ohio 1998) (reversing denial of class certification and holing that the elements of a fraud claim, including reliance, could be inferred on a class-wide basis through circumstantial evidence); **Oklahoma**: *Burgess v. Farmers Ins. Co., Inc.*, 151 P.3d 92, 101, 103 (Okla. 2006) (finding that common issues predominate where "the acts or omissions of Insurer which constitute the alleged breaches of contract, bad faith and/or fraud . . . are the same or similar acts or omissions for each class member" and granting class certification); **Oregon**: *Strawn v. Farmers Ins. Co. of Or.*, 228 Or.App. 454, 209 P.3d 357 (Or.App. 2009) (class action appropriate for fraud claims because reliance can be provide on class-wide basis); **Pennsylvania**: *Strain v. Nutri/Sys., Inc.*, No. 90-2772, 1990 U.S. Dist. LEXIS 17031, *25-26 (E.D. Penn. Dec. 12, 1990) (allowing reliance to be presumed where there is "fixed set of oral and written representations" that the plaintiffs could have relied on); **Rhode Island**: *Fricke v. Fricke*, 491 A.2d 990, 994 (R.I. 1985) (allowing fraud to be proved by circumstantial evidence); **South Carolina**: *Mylin v. Allen-White Pontiac, Inc.*, 314 S.E.2d 354, 357 (S.C. Ct. App. Mar. 26, 1984) (allowing fraud to be proved by circumstantial evidence); **South Dakota**: *First Nat'l Bank v. Anderson*, 291 N.W.2d 444, 446 (S.D. 1980) (allowing fraud to be proved by circumstantial evidence); **Tennessee**: *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008) (class treatment of fraud claims appropriate when there is no material variation among statements made to the class); **Texas**: *In re Mounce*, 390 B.R. 233, 248, 256 (Bkrtcy. W.D. Tex. 2008) (stating that "reliance on a fraudfeasor's misrepresentations may be inferred from circumstantial evidence" and granting class certification for fraud claims.); **Utah**: *Brickyard Homeowners' Ass'n Mgmt. Comm. v. Gibbons Realty Co.*, 668 P.2d 535, 543 (Utah 1983) (to California court precedent as persuasive authority regarding reliance and allowing management committee to pursue claims for owners); **Vermont**: *Progressive Ins. Co. v. Wasoka*, 885 A.2d 1166, 1171 (Vt. 2005) (allowing fraud to be proved by circumstantial evidence); **Virginia**: *French v. Beville*, 62 S.E.2d 883, 889 (Va. 1951) (allowing fraud to be proved by circumstantial evidence); **Washington**: *Pickett v. Holland Am. Line-Westours, Inc.*, 6 P.3d 63 (Wash.App. Div. 1 2000), *rev'd on other grounds*, 35 P.3d 351 (Wash. 2001) (citing with approval Ohio and California case law certifying fraud claims); **West Virginia**: *Tipton v. Sec'y of Educ.*, No. 2:90-0105, 1992 U.S. Dist. LEXIS 22797,

*40-41 (S.D. W. Va. Aug. 28, 1992) (finding class certification inappropriate where there were varying degrees of oral misrepresentation and reliance, and no identical or standardized communications, which is not the case here.); **Wisconsin**: *Barndt v. Frederick*, 47 N.W. 6, 10 (Wis. 1890) (allowing fraud to be proved by circumstantial evidence); **Wyoming**: *Albrecht v. Zwaanshoek Holding En Financiering, B.V.*, 762 P.2d 1174, 1188-89 (Wyo. 1988) (allowing fraud to be proved by circumstantial evidence).

[15] Examples of class-wide or circumstantial proof of reliance—statutory consumer protection claims: **Alaska:** *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 132 (Alaska 2000) (reliance not required: "All that is required is a showing that the acts and practices were capable of being interpreted in a misleading way") (citation omitted); **California**: *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 351 (E.D.N.Y. 2016) (certifying UCL, FAL, and CLRA classes because "[t]hese statutes all permit relief absent individualized proof of reliance where a representation is material" and because materiality is a common question judged "according to an objective standard") (citation omitted); **Colorado:** *Hall v. Walter*, 969 P.2d 224 (Colo. 1998) (causation established where injured party did not rely on deceptive statements); **Connecticut:** *Prishwalko v. Bob Thomas Ford, Inc.*, 636 A.2d 1383, 1388 (Conn. App. Ct. 1994) (consumer need not prove reliance) (*citing Hinchliffe v. Am. Motors Corp.*, 184 Conn. 607, 617, 440 A.2d 810 (1981)); **Delaware:** *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (reliance not required); **Florida:** *Turner Greenberg Assocs. v. Pathman*, 885 So.2d 1004, 1009 (Fla. Dist. Ct. App. 2009) ("reliance by an individual consumer is not necessary"); **Hawaii:** *Nakamura v. Countrywide Home Loans, Inc.*, 225 P.3d 680, 690 (Ct. App. 2010) (upholding certification of class under Hawaii's consumer protection statute and holding "[t]he proof of the essential elements of HRS § 480–2 do not require individual treatment because the dispositive question revolves around [defendant's] alleged deceptive practices and not individual Class member transactions"); **Idaho:** *State ex rel. Kidwell v. Master Distribs, Inc.*, 615 P.2d 116, 122-23 (Idaho 1980) (actual reliance not required to be shown if practice possesses a "tendency or capacity to deceive"); **Illinois:** *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584 (Ill. 1996) (actual reliance by consumer need not be shown); **Kansas:** *McLellan v. Raines*, No. 94,115, 2006 WL 851394 (Kan. App. Feb. 27, 2006) (reliance not required); *Cole v. Hewlett Packard Co.*, 2004 WL 376471 (Kan. App. 2004); **Massachusetts:** *Aspinall v. Philip Morris Cos. Inc.*, 813 N.E.2d 476, 486 (Mass. 2004) (reliance not required); *see also Heller Fin. v. INA*, 573 N.E.2d 8 (Mass. 1991); *Int'l Fidelity Ins. Co. v. Wilson*, 443 N.E. 2d 1308 (Mass. 1983)); **Michigan:** *Evans v. Ameriquest Mortg. Co.*, No. 233155, 2003 WL 734169, at *3 (Mich. App. Mar. 4, 2003) ("only two of the MCPA's thirty-three 'unfair, unconscionable, or deceptive methods, acts or practices' expressly require some form of reasonable reliance by the consumer" (citations omitted) (referencing Mich. Comp. Laws Ann. §§ 445.903(1)(s) and (bb)); **Missouri:** *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 351 (E.D.N.Y. 2016) (certification of Missouri consumer protection class appropriate because reliance could be inferred upon objective showing of materiality); **Nebraska:** *see* Neb. Rev. Stat. § 59-1609 (private cause of action for UDAP violation with no reliance requirement); **Nevada:** *see* NRS 598.0903, *et seq.* (no reliance requirement); **New Hampshire:** *Mulligan v. Choice Mortgage Corp.*, No. CIV. 96-596-B, 1998 WL 544431 (D.N.H. Aug. 11, 1998) (reliance not required) (*citing Fraser Eng'g Co. v. Desmond*, 524 N.E.2d 110, 112 (Mass. App. Ct. 1988)); **New Jersey:** *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 366 (N.J. 1997) (reliance not required); *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 929 A.2d 1076, 1086 (N.J. 2007); **New Mexico:** *Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1098 (N.M. App. 2007) ("claimant need not prove reliance" in order to sustain UDAP claim) (*citing Smoot v. Physicians Life Ins. Co.*, 87 P.3d 545 (N.M. App. 2003)); *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615 (D.N.M. 2007); **New York**: *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *2 (E.D.N.Y. July 18, 2013) (Section 349 of New York's General Business Law "does not require proof that any consumer relied on a misrepresentation," and deceptive acts are "defined objectively.") (citation omitted); **North Dakota:** *see* N.D. Cent. Code § 51-15-01, *et seq.* (no reliance requirement); **Ohio:** *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 835 (S.D. Ohio 2003) ("Unlike a fraud claim, where a plaintiff must allege harm above and beyond the misrepresentation and reliance thereon, a cause of action accrues under the

### 2.    Fraudulent Concealment/Omission (Fuel Economy/Performance)

As this Court recognized in its MTD Order, all relevant jurisdictions provide claims for fraudulent concealment and/or omission.  *See* Dkt. 290 at 95-96 (collecting cases and citing Dkt. 249 at 53 n.23).  The claim requires a showing that the Defendants intentionally concealed a material fact that they had a duty to disclose to Plaintiffs and the other Class members, resulting in damages.[16]

---

Consumer Sales Practices Act as soon as the allegedly unfair or deceptive transaction occurs"); *Dantzig v. Sloe*, 684 N.E.2d 715, 718 (Ohio App. 1996); **Oklahoma:** *see* Okla. Stat. Ann. tit. 15 § 751, *et seq.* (no reliance requirement); **Rhode Island:** *see* R.I. Gen. Laws § 6-13.1-1, *et seq.* (no reliance requirement); **South Carolina:** S.C. Code Ann. § 35-9-10, *et seq.* (no reliance requirement); *City of Charleston, SC v. Hotels.com, LP*, 487 F. Supp. 2d 676 (D.S.C. 2007) (reliance not listed as element of UDAP claim); **South Dakota:** *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 196 (S.D. 2007) (reliance not required); **Tennessee:** *Fleming v. Murphy*, No. W2006-00701-COA-R3-CV, 2007 WL 2050930 (Tenn. Ct. App. July 19, 2007) ("[A]lthough the TCPA does not require reliance, plaintiffs are required to show that the defendant's wrongful conduct proximately caused their injury.") (citing *Messer Griesheim Indus., Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 469 (Tenn. Ct. App. 2003)); *Harvey v. Ford Motor Credit Co.*, No. 03A01-9807-CV-00235, 1999 WL 486894 (Tenn. App. July 13, 1999)); **Utah:** *see* Utah Code Ann. § 13-11-1, *et seq.* (no reliance requirement); *Andreason v. Felsted*, 137 P.3d 1, 4 (Utah App. 2006) (UDAP statute liberally construed); **Vermont:** *see* Vt. Stat. Ann. tit. 9 § 2461(b) (requiring *either* reliance *or* that consumer "sustain damages or injury as a result of" a prohibited practice); **Washington:** *Indoor Billboard/Wash., Inc. v. Integra Telcom of Wash., Inc.*, 170 P.3d 10 (Wash. 2007) (rejecting argument that reliance is required); **West Virginia:** *see* W. Va. Code § 46A-6-101, *et seq.* (no reliance requirement); *In re West Virginia Rezulin Litigation*, 585 S.E.2d 52, 75 (W. Va. 2003) (statutory "ascertainable loss" requirement liberally construed so that consumer meets the requirement by purchasing something "different from or inferior to that for which they bargained"); **Wisconsin:** *Novell v. Migliaccio*, 749 N.W.2d 544, 552 (Wis. 2008) (reliance not required); *K&S Tool & Die Corp. v. Perfection Machinery Sales, Inc.*, 732 N.W.2d 792, 802 (Wis. 2007); *see also* Dkt. 290 at 107 n.21 (collecting authority for Florida, Illinois, Kentucky, Missouri, New Jersey, New York, North Dakota, and Ohio).

[16] State-by-state common law fraudulent omission elements: **Alabama**: *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 724-26 (Ala. 2009); **Alaska**: *Matthews v. Kincaid*, 746 P.2d 470, 471 (Alaska 1987); **Arizona**: *Henderson v. Chase Home Fin., LLC*, No. CV 09-2461, 2010 U.S. Dist. LEXIS 47600, at *5 (D. Ariz. May 14, 2010); **Arkansas**: *Hobson v. Entergy Ark., Inc.*, 432 S.W.3d 117, 125 (Ark. Ct. App. 2014); **California**: *Hambrick v. Healthcare Partners Med. Grp., Inc.*, 238 Cal. App. 4th 124, 162 (2015); **Colorado**: *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1184 (D. Colo. 2002); **Connecticut**: *Carr v. Fleet Bank*, 812 A.2d 14, 16-17 (Conn. App. Ct. 2002); **Delaware**: *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773 (Del. Ch. 2014); **District of Columbia**: *Pyne v. Jamaica Nutrition Holdings Ltd.*, 497 A.2d 118, 131 (D.C. Ct. App. 1985); **Florida**: *Regions Bank v. Kaplan*, 258 F. Supp. 3d 1275, 1292 (M.D. Fla. 2017); **Georgia**: *GE Life & Annuity Assurance Co. v. Barbour*, 191 F.Supp.2d 1375, 1383 (M.D. Ga. 2002); **Hawaii**: *Sung v. Hamilton*, 710 F. Supp. 2d 1036, 1047 (D. Haw. 2010); **Idaho**: *Humphries v. Becker*, 366 P.3d 1088, 1096 (Idaho 2016); **Illinois**: *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996); **Indiana**: *Brown v. Ind. Nat'l Bank*, 476 N.E.2d 888, 891 (Ind. Ct. App. 1985); **Iowa**: *Clark v. McDaniel*, 546 N.W.2d 590, 592 (Iowa 1996); **Kansas**: *Bank of Am., N.A. v. Narula*, 261 P.3d 898, 910-11 (Kan. Ct. App. 2011); **Kentucky**: *Republic Bank & Trust Co. v. Bear, Stearns & Co., Inc.*, 707 F.Supp.2d 702, 710 (W.D. Ky. 2010); **Louisiana**: *Chateau Homes by RJM, Inc. v. Aucoin*, 97 So. 3d 398, 404-06 (La. Ct. App. 2012); **Maine**: *Picher v. Roman Catholic Bishop of Portland*, 82 A.3d 101, 102-3 (Me. 2013); **Maryland**: *Green*

1      The Court already has determined that Plaintiffs have sufficiently pleaded facts giving rise

2 to a duty to disclose to all Class members.  Dkt. 290 at 96-103 (analyzing the various factors

3 establishing a duty to disclose under the relevant jurisdictions).  Whether the evidence—which is

4 common to all Class members—supports those allegations is a question common to each State

5 Class.

6      The same is true of materiality.  *See* Dkt. 290 at 104-05; *Amgen*, 568 U.S. at 459–60

7 ("Because materiality is judged according to an objective standard, the materiality of Amgen's

8 alleged misrepresentations and omissions is a question common to all members of the class . . .

9 The alleged misrepresentations and omissions, whether material or immaterial, would be so

10 equally for all investors composing the class.").  Moreover to the extent that Plaintiffs' fuel

11 economy and performance fraudulent omission theory relies on the EcoDiesel badge—through

12 which FCA represented the Class Vehicles were fuel efficient and high performing, while

13 Defendants concealed that the vehicles could perform as represented only by using defeat

---

15 *v. H & R Block*, 735 A.2d 1039, 1059 (1999); **Massachusetts**: *Amorim Holding Financeria, S.G.P.S., S.A. v. C.P. Baker & Co., Ltd.*, 53 F.Supp.3d 279, 299-300, 300 n.15 (D. Mass. 2014); **Michigan**: *U.S. Fidelity & Guaranty Co. v. Black*, 313 N.W.2d 77, 88 (Mich. 1981); **Minnesota**: *Richfield Bank & Trust Co. v. Sjogren*, 244 N.W.2d 648, 650 (Minn. 1976); **Mississippi**: *Holman v. Howard Wilson Chrysler Jeep, Inc.*, 972 So. 2d 564, 568–69 (Miss. 2008); **Missouri**: *Bohac v. Walsh*, 223 S.W.3d 858, 862-64 (Mo. Ct. App. 2007); **Montana**: *Harris v. St. Vincent Healthcare*, 305 P.3d 852 (Mont. 2013); **Nebraska**: *Knights of Columbus Council 3152 v. KFS Bd, Inc.*, 791 N.W.2d 317, 334 (Neb. 2010); **Nevada**: *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 198 (Nev. 2014); **New Hampshire**: *Benoit v. Perkins*, 104 A. 254, 256 (N.H. 1918); **New Jersey**: *Oliver v. Funai Corp.*, Civ. A. No. 14-CV-04532, 2015 U.S. Dist. LEXIS 169998, at *10 (D.N.J. Dec. 21, 2015); **New Mexico**: *Everett v. Gilliland*, 141 P.2d 326, 330–331 (N.M. 1943); **New York**: *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465 (N.Y. 2011); **North Carolina**: *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 481 (2004); **North Dakota**: *Hellman v. Thiele*, 413 N.W.2d 321, 326 (N.D. 1987); **Ohio**: *Buchanan v. Improved Props., LLC*, 7 N.E.3d 634, 642 (Ohio Ct. App. 2014); **Oklahoma**: *Hubbard v. Bryson*, 474 P.2d 407, 410 (Okla. 1970); **Oregon**: *Gebrayel v. Transamerica Title Ins. Co.*, 888 P.2d 83, 89 (1995); **Pennsylvania**: *Neuman v. Corn Exch. Nat'l Bank & Trust Co.*, 51 A.2d 759, 763-64 (Pa. 1947); **Rhode Island**: *Western Reserve Life Assur. Co. of Ohio v. Caramadre*, 847 F.Supp.2d 329, 338 (D. R.I. 2012); **South Carolina**: *Lawson v. Citizens & Southern Nat'l Bank of S.C.*, 193 S.E.2d 124, 127 (S.C. 1972); **South Dakota**: *Cleveland v. BDL Enters., Inc.*, 663 N.W.2d 212, 217-20, 218 n.1 (S.D. 2003); **Tennessee**: *Leeper v. Cook*, 688 S.W.2d 94, 96 (Tenn. Ct. App. 1985); **Texas**: *Newby v. Enron Corp.*, No. H-01-CV-3624, 2010 U.S. Dist. LEXIS 145220, at *137 (S.D. Tex. Jan. 19, 2010); **Utah**: *Anderson v. Kriser*, 266 P.3d 819, 823-24 (Utah 2011); **Vermont**: *Lay v. Pettengill*, 38 A.3d 1139, 1144 (Vt. 2011); **Virginia**: *White v. Potocska*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008); **Washington**: *Farmers Ins. Co. of Wash. v. Vue*, 151 Wash. App. 1005 (Wash. Ct. App. 2009); **West Virginia**: *Livingston v. K–Mart Corp.*, 32 F.Supp.2d 369, 374 (S.D. W.Va. 1998); **Wisconsin**: *In re Estate of Lecic*, 312 N.W.2d 773, 778-79 (Wis. 1981); **Wyoming**: *Richey v. Patrick*, 904 P.2d 798, 802 (Wyo. 1995).

-35-

1    devices—exposure is established, and reliance can be presumed, for all the reasons stated above.

2    *See In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 7734558 (N.D.

3    Cal. Sep. 14, 2016), at *22 (denying certification of omission-based common law and statutory

4    fraud claims, but distinguishing those facts from  "cases," like this one, "which involve false

5    statements on a package label").

6          The only meaningful question here is whether, *in addition to* the deceptive EcoDiesel

7    badge, Plaintiffs were *also* exposed to the consistent and pervasive fuel economy and

8    performance representations that FCA disseminated through multiple media over a 4-year period.

9    The Court is well-versed in the case law governing this analysis, having analyzed it in depth in

10   the recent *In re MyFord Touch* litigation.  2016 WL 7734558, at *19-23. The facts advanced here,

11   and again, detailed in the SAC, align this case more closely with *In re Tobacco II Cases*, 46 Cal.

12   4th at 328, and *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 729 (9th Cir. 2012), and

13   distinguish it from *In re MyFord Touch*, *Mazza v. Am. Honda Motor Co, Inc.*, 666 F.3d 581 (9th

14   Cir. 2012), and *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 705 (9th Cir. 2018), *en

15   banc petition pending* (Mar. 8, 2018).  *See* SAC ¶¶ 149-97.

16         Of particular note are the Ram and Jeep websites, the vehicle brochures, and the dealer

17   training materials that instructed salespeople how to sell the Class Vehicles.  Both brands'

18   websites unequivocally, prominently, and consistently touted the EcoDiesel vehicles' fuel

19   economy and performance (as well as their environmental friendliness).  SAC ¶¶ 184-87.  As the

20   allegations and testimony of the named Plaintiffs confirms, it is extremely common for

21   consumers to visit manufacturer websites before purchasing vehicles, and even years after the

22   fact, many of them (almost two-thirds of all named Plaintiffs) can recall doing so here.  *See, e.g.*,

23   SAC ¶¶ 34, 40, 42, 45, 47-48, 50, 52, 54-62, 64, 66-67, 69-70, 72-73, 75-76, 78, 82-84, 89-91,

24   93-96; Ex. A (Cabraser Decl.), Attachments 2, 3, 7, 9,11.  Dozens of named Plaintiffs also

25   remember reviewing the FCA-produced vehicle brochures, which again, consistently promoted

26   the Class Vehicles' fuel economy and performance.  *See, e.g.*, SAC ¶¶ 39-40, 44, 47, 56, 58, 61-

27   62, 66, 69, 70, 77-79, 83, 93, 175-82; Ex. A (Cabraser Decl.), Attachments 2, 4, 5, 9.  These

28   brochures were "disseminated nationwide," made available to every single Jeep and Ram

1   dealership across the country, and intended as "resources both for salespeople and consumers."

2   Ex. A (Cabraser Decl.), Attachment 13 (Bruce Velisek Dep. Tr. 104:24-106:15).  Even more

3   (almost 90% of all named Plaintiffs) recall dealership salespeople making representations about

4   the superior fuel economy and performance of the EcoDiesel engines—representations that mirror

5   the "key messages" FCA instructed its dealers to communicate to customers through detailed

6   training materials.  *See, e.g.*, SAC ¶¶ 34-44, 47-49, 52, 54-55, 57-70, 72-81, 83-86, 89-92, 94-96,

7   169-74; Ex. A (Cabraser Decl.), Attachments 4.  Add to this mix FCA's consistent

8   representations about the vehicles' fuel economy and performance in (1) a robust print media

9   campaign with hundreds of placements in magazines and newspapers nationwide (SAC ¶¶ 191-

10   72); (2) a national television campaign including at least five different commercials and tens of

11   thousands of television spots on prominent and widely-viewed programing (SAC ¶¶ 193-95; Ex.

12   B (Honka Decl.) ¶¶ 16-17, 19, 21, 25-28); and (3) a significant internet and social media

13   campaign (Ex. B (Honka Decl.) ¶¶ 14, 16, 19, 20, 23, 25-28, 31), and it becomes clear that these

14   representations were sufficiently pervasive to establish an inference of both exposure and

15   reliance.  *In re Tobacco II Cases*, 46 Cal. 4th at 328; *Gutierrez*, 704 F.3d at 729.[17]

16   Individual issues will not, therefore, overwhelm the common ones, and predominance is

17   satisfied.

18   **3.**   **"Straight Omission/Concealment" (Selling Vehicles with Hidden**
    **Defeat Devices)**
19

20   As the Court recognized, this theory does not rely on any representations at all.  Dkt. 290

21   at 68-69.  Plaintiffs in each State Class will prevail by showing that Defendants intentionally

22   concealed from consumers that the Class Vehicles contained defeat devices and that a reasonable

23   consumer would find that omission material.  *See, e.g.*, Dkt. 290 at 103-05 (citing *Daniel v. Ford*

24   *Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015)).  These are common questions that will

25   predominate the resolution of these claims for each State Class.

26

27

28   _____
[17] *See also* notes 13 and 14, *supra*, citing case law addressing common proof for class-wide
reliance; Dkt. 290 at 104 n.20 (collecting additional authority).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

C.     **Plaintiffs' MMWA Claims Raise Predominantly Common Questions With Common Answers.**

The MMWA provides consumers with a federal cause of action against warrantors for breach of both express and implied warranties. 15 U.S.C. § 2310(d)(1).  The statute federalizes state-law causes of action.  *See, e.g.*, SAC ¶¶ 149-97.

1.     **Implied Warranty**

Plaintiffs seek certification of their implied warranty of merchantability claims under the MMWA based on the laws of the states in which they reside and/or purchased or leased the Class Vehicles. Certification of implied warranty state classes under the MMWA is proper because the common questions of law and fact within each state subclass will drive the resolution of this litigation.  The class members within each state subclass are cohesive, the defect alleged in this case is uniform, and the slight differences in states' implied warranty laws regarding the elements of an implied warranty claim will not overwhelm individual issues or otherwise render the litigation unmanageable.

Forty-nine states and the District of Columbia have adopted Uniform Commercial Code ("UCC") §§ 2-314 and 2A-212 regarding the implied warranty of merchantability. *See E. River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 873 n.7 (1986) (recognizing that "the Uniform Commercial Code . . . has been adopted by 49 states"); *Carlson v. General Motors Corp.*, 883 F.2d 287, 291-92 (4th Cir. 1989) (same).[18]  As the Ninth Circuit has repeatedly held, implied warranty claims are readily certifiable in design defect cases such as this one.  *See, e.g.*, *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010) ("[Plaintiff] alleges breach of implied warranty because the vehicles were defective and not of merchantable quality at the time they left [defendant's] possession. Common issues predominate such as whether [defendant] was aware of the existence of the alleged defect, [and] whether [defendant] had a

---

[18] Louisiana has not adopted UCC 3-214 or 2A-212 but maintains a statutory cause of action prohibiting redhibitory defects.  *See* La. Civ. Code art. 2520.  California has an additional warranty cause of action under the Song-Beverly Act.  Cal. Civ. Code § 1791.1. The redhibitory defect cause of action in Louisiana and the Song-Beverly Act cause of action in California both mirror the UCC warranties.

-38-

1   duty to disclose its knowledge . . . .") (citing *Chamberlin v. Ford Motor Co.*, 402 F.3d 952, 962

2   (9th Cir. 2005)).  Many other courts have reached the same conclusion.[19]

3   _____

[19] *See, e.g.*, *In re MyFord Touch*, 2016 WL 7734558 at *25 (certifying implied warranty claims
4   under California, Massachusetts, New Jersey, North Carolina, Ohio and Virginia law) (Chen, J.);
*Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175 (Ala. 2000) (rejecting argument that variations
5   in the laws of the several states could defeat certification); *In re Dial Complete Mktg. & Sales
Practices Litig.*, 312 F.R.D. 36, 60, 67 (D. N.H. 2015) (holding that "the plaintiffs' implied
6   warranty claim is capable, under Arkansas law, of classwide proof," and that "Louisiana courts
have held that redhibition claims are capable of class wide proof"); *Chapman v. Tristar Products,
7   Inc.*, No. 1:16-CV-1114, 2017 WL 1433259, *9-10 (N.D. Ohio April 24, 2017) (certifying a
Colorado implied warranty class); *Motley v. Jaguar Land Rover N.A., LLC*, No.
8   X03CV084057552S, 2012 WL 5860477, at *8 (Sup. Ct. Conn. Nov. 1, 2012) (holding that
common issues predominated express and implied warranty claims because all plaintiffs received
9   the same allegedly defective product, and all had the same express warranty claim); *Baker v.
Castle & Cooke Homes Haw., Inc.*, Civ. No. 11-00616 SOM-RLP, 2014 WL 1669311 (D. Haw.
10  Jan. 31, 2014) (recommending certification of implied warranty of merchantability claims
because the claims involve a common set of factual and legal issues subject to common proof);
11  *Baker v. Castle & Cooke Homes Haw., Inc.*, Civ. No. 11-00616 SOM-RLP, 2014 WL 1669158
(D. Haw. Apr. 24, 2014); *Leonard v. Sears, Roebuck & Co.*, 115 F. Supp. 3d 934, 934 (N.D. Ill.
12  2015) (certifying claims for breach of implied warranty under Illinois law because, among other
reasons, "[t]here is a single, central, common issue of liability: whether the Sears washing
13  machine was defective.") (citation omitted); *Nieberding v. Barrette Outdoor Living, Inc.*, 302
F.R.D. 600 (D. Kan. 2014) (certifying Kansas implied warranty claims finding that common
14  questions of fact existed regarding the defect at issue and whether the class members gave
reasonable notice through the filing of their complaint); *Faherty v. CVS Pharmacy, Inc.*, Civ. A.
15  No. 09-CV-12102, 2011 WL 810178 (D. Mass. Mar. 9, 2011) (provisionally allowing statewide
certification); *In re Zuren Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 619 (8th Cir. 2011)
16  (affirming the grant of certification on warranty claims and holding that "warranty claims . . .
premised on a universal and inherent product defect . . . may rely on common evidence to
17  establish a prima facie case because there is no similar individual reliance requirement for such
claims" and "given the homeowner claim of a universal defect, the question of 'proximate cause
18  will not involve predominately individual determinations, and resolution of that issue would be
common to the class'") (citation omitted); *Dale v. DaimlerChrysler Corp.*, 204 S.W.3d 151, 176-
19  77 (Mo. Ct. App. 2006) (certifying an implied warranty claim, stating that "the appellant claims
that a class action cannot be maintained because the core question of whether a particular . . .
20  vehicle is not merchantable cannot be made on a class-wide basis. This, of course, goes to the
issue of whether the respondent can make a submissible case at trial . . . as to this particular
21  element. That, however, is not an issue in determining the propriety of a class action") (citation
omitted); *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 485 (C.D. Cal. 2012) (certifying
22  California, New York and Magnuson-Moss warranty claims "because an implied warranty claim
requires an objective standard and because Plaintiffs' theory here is grounded in a defective
23  design common to all Washers, the 'breach of implied warranty claim is therefore susceptible of
common proof.'") (citation omitted); *Brunson v. La. -Pac. Corp.*, 266 F.R.D. 112, 119 (D. S.C.
24  2010) (certifying South Carolina warranty claims and holding the commonality and
predominance were satisfied because "proof of a defect will further advance the breach of
25  warranty claims of the absent class members, as Plaintiffs' theory is that TrimBoard is defective
and completely unsuitable as an exterior trim product contrary to Defendants' warranties");
26  *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 552 (5th Cir. 2002) (finding that the district
court did not abuse its "broad discretion" in certifying the plaintiff's claim for breach of Texas
27  implied warranty of merchantability because "[i]t is undisputed that Fleetwood's Class A motor
homes were equipped with a hitch for towing, and whether or not the alleged towing limitations
28  rendered the motor homes defective is a question for the jury. More importantly, it is a question
whose answer will not vary from plaintiff to plaintiff because the inquiry is focused on '*the time*

Here, as in *Wolin*, the alleged defect is common to all Class Vehicles in all states, and common questions—including whether: (1) the Class Vehicles were "defective and not of merchantable quality"; (2) FCA was "aware of the existence of the alleged defect"; and (3) "had a duty to disclose its knowledge"—will drive the resolution of the claims and predominate over any individual inquiries. *See Wolin*, 617 F.3d at 1173; *see also In re MyFord Touch*, 2016 WL 7734558 at \*25; *Darisse v. Nest Labs, Inc.*, No. 5:14-cv-01363-BLF, 2016 WL 4385849, at \*12 (N.D. Aug. 15, 2016). This conclusion is not undermined by the fact that some have found variations in certain state laws regarding the definitions of merchantability, privity, notice, and causation.[20] Put simply, a difference *among* states' laws does not preclude predominance when a question for any particular State Class can be decided on a class-wide basis. *See In re MyFord Touch*, 2016 WL 7734558 at \*25. For each state, each relevant question—*e.g.*, (1) whether the defect rendered the vehicles unmerchantable, as defined under state law; (2) whether privity is required, and if so, if an exception has been satisfied; (3) and whether the state's pre-suit notice requirement, if any, has been satisfied—will be resolved with a single answer for all members of the State Class. Commonality and predominance are satisfied for each State Class implied warranty claim.

## 2.   Express Warranty

Plaintiffs' express warranty claims are premised on two federal emission control warranties—the "Performance Warranty" and a "Design and Defect Warranty"—provided to all Class members under federal law. 40 C.F.R. § 85.2103. The Performance Warranty covers repairs required when a vehicle fails an emissions test. It applies to all required repairs for the first two years or 24,000 miles and to repairs of major emission control components (including the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer) for the first eight years or 80,000 miles. The Design and Defect

---

*[the goods] left the manufacturer's or seller's possession*'") (emphasis in original); *Smith v. Behr Process Corp.*, 113 Wash App. 306 (Wash. Ct. App. 2002) (affirming certification of implied warranty claims under Washington law).

[20] Courts have held that reliance may be determined class-wide where the materiality of the defendants' representations are judged against a reasonable person standard. *See In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 948, 1018-1022 (C.D. Cal. 2015), *aff'd* 844 F.3d 1121 (9th Cir. 2017).

1    Warranty also applies to any defective emissions control or emissions related part (including the

2    EGR system) for the first two years or 24,000 miles and to defective major emission control

3    components (as listed above) for the first eight years or 80,000 miles.  These warranties apply to

4    both new and used vehicles.

5          Virtually every single jurisdiction has adopted UCC § 2-313,[21] which "provides in

6    relevant part as follows: 'Any affirmation of fact or promise made by the seller to the buyer

7    which relates to the goods and becomes part of the basis of the bargain creates an express

8    warranty that the goods shall conform to the affirmation or promise.'"  *In re MyFord Touch*

9    *Consumer Litig.*, 46 F. Supp. 3d 936, 969 (N.D. Cal. 2014) (quoting UCC § 2–313(1)(a)).  As this

10   Court previously concluded, an express written warranty is presumed to be a "part of the basis of

11   the bargain."  *Id.* at 972-73 (analyzing Comment 3 to UCC § 2–313).

12         Here, the claims of every Class member in each State Class are predicated on the same

13   "affirmation of fact or promise," the Performance and Design and Defect Warranties.  Those are

14   express written warranties that are presumed to form part of the purchase or lease "bargain."  The

15   alleged breach of these warranties—knowingly providing and failing to fix or replace defective

---

[21] *See* Ala. Code § 7-2-313 (**Alabama**); Alaska Stat. § 45.02.313 (**Alaska**); Ariz. Rev. Stat. § 47-2313 (**Arizona**); Ark. Code Ann. § 4-2-313 (**Arkansas**); Cal. Com. Code § 2313 (**California**); Colo. Rev. Stat. § 4-2-313 (**Colorado**); Conn. Gen. Stat. § 42a-2-313 (**Connecticut**); Del. Code Ann. tit. 6, § 2-313 (**Delaware**); D.C. Code § 28:2-313 (D.C.); Fla. Stat. § 672.313 (**Florida**); Ga. Code Ann. § 11-2-313 (**Georgia**); Haw. Rev. Stat. § 490:2-313 (**Hawaii**); Idaho Code § 28-2-313 (**Idaho**); 810 Ill. Comp. Stat. 5/2-313 (**Illinois**); Ind. Code Ann. § 26-1-2-313 (**Indiana**); Iowa Code § 554.2313 (**Iowa**); Kan. Stat. Ann. § 84-2-313 (**Kansas**); K.R.S. § 355.2-313 (**Kentucky**); Me. Rev. Stat. tit. 11, § 2-313 (**Maine**—adopting UCC § 2-313, and adding "ordinary purposes" language for consumer goods to § 2-313(1)(b)); Md. Code Ann., Com. Law § 2-313 (**Maryland**); Mass. Ann. Laws ch. 106, § 2-313 (**Massachusetts**); Mich. Comp. Laws § 440.2313 (**Michigan**—adding an exception clause to (2) and adding § 440.2313b, a warranty extension for repair of goods); Minn. Stat. § 336.2-313 (**Minnesota**); Miss. Code Ann. § 75-2-313 (**Mississippi**); Mo. Rev. Stat. § 400.2-313 (**Missouri**); Mont. Code Ann. § 30-2-313 (**Montana**); Neb. Rev. Stat. (U.C.C.) § 2-313 (**Nebraska**); Nev. Rev. Stat. § 104.2313 (**Nevada**); N.H. Rev. Stat. Ann. § 382-A:2-313 (**New Hampshire**); N.J. Stat. § 12A:2-313 (**New Jersey**); N.M. Stat. Ann. § 55-2-313 (**New Mexico**); N.Y. U.C.C. Law § 2-313 (New York); N.C. Gen. Stat. § 25-2-313 (**North Carolina**); N.D. Cent. Code, § 41-02- 30 (**North Dakota**); Ohio Rev. Code Ann. § 1302.26 (**Ohio**); Okla. Stat. tit. 12A, § 2-313 (**Oklahoma**); Or. Rev. Stat. § 72.3130 (**Oregon**); 13 Pa. Con. Stat. § 2313 (**Pennsylvania**); R.I. Gen. Laws § 6A-2-313 (**Rhode Island**); S.C. Code Ann. § 36-2-313 (**South Carolina**); S.D. Codified Laws § 57A2-313 (**South Dakota**); Tenn. Code Ann. § 47-2-313 (**Tennessee**); Tex. Bus. & Com. Code § 2.313 (**Texas**); Utah Code Ann. § 70A-2-313 (**Utah**); Vt. Stat. Ann. tit. 9A, § 2-313 (**Vermont**); Va. Code Ann. § 8.2-313 (**Virginia**); Wash. Rev. Code § 62A.2-313 (**Washington**); W. Va. Code § 46-2-313 (**West Virginia**); Wis. Stat. § 402.313 (**Wisconsin**); Wyo. Stat. Ann. § 34.1-2-313 (**Wyoming**).

---

1    emissions control systems, including the SCR, EGR system, and ECU, that together result in

2    unreasonable and illegal levels of pollutants—is also the same for all Class members.  This

3    conduct will be proved or disproved with common evidence, and whether it constitutes a breach

4    of each state's warranty law is a question common to each State Class.  *In re MyFord Touch*,

5    2016 WL 7734558, at *26 (certifying two express warranty state classes, and denying

6    certification to several others for failure to provide common theory of damages).  The State Class

7    express warranty claims therefore raise common questions with common answers that will

8    predominate over any individual inquires.

9            **D.      Plaintiffs Will Prove Damages Tied to Their Theories of Liability Using a
             Straightforward Methodology Applicable to the Entire Class.**
10

11           To satisfy Rule 23(b)(3), Plaintiffs must also "establish[] that damages are capable of

12   measurement on a classwide basis," using a model consistent with the asserted theories of

13   liability.  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433 (2013); *see also Leyva v. Medline*

14   *Indus., Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *cf. Butler*, 727 F.3d at 800 (holding that a court

15   may certify liability alone if damages cannot be determined on a class-wide basis).[22]  It is well

16   established that a valid measure of damages in a consumer products case is the measure of

17   damages that would put class members in the position they would have been in had the defendant

18   revealed the true nature of its product prior to purchase; i.e., "overpayment damages."  *Flynn v.*

19   *FCA US LLC*, No. 15-CV-0855-MJR-DGW, 2018 WL 2063871, at *7 (S.D. Ill. Jan. 31, 2018).[23]

20   _____
     [22] Of course, Rule 23(c)(4) enables the court to certify the common questions of law and fact for
21   class treatment even were it to conclude that damages issues may not be certified. 2 W.
     Rubenstein, Newberg on Class Actions § 4:90 (5th ed. 2012).  But the availability of a classwide
22   damages determination here makes Rule 23(b)(3) certification the more efficient and appropriate
     choice.
23   [23] In contract law, this is commonly known as expectation damages, to which some courts refer as
     giving consumers the "benefit of the bargain."  *See, e.g.*, *Ironshore Specialty Ins. Co. v.*
24   *23andMe, Inc.*, Case No. 14cv3286-BLF, 2015 WL 2265900, at *4 (N.D. Cal. May 14, 2015).
     This measure of damages is also a valid measure of damages for claims sounding in fraud
25   because it restores Plaintiffs to the position they would have been in "but for" the fraud.  *See, e.g.*,
     *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 985 (N.D. Cal. 2016).
26
     Courts have sometimes distinguished the type of "market price" damages sought in securities
27   fraud cases from "benefit of the bargain" damages in which consumers claim that they paid
     money for a type of good, service, or feature that they did not receive. *See, e.g.*, *Harnish v.*
28   *Widener Univ. Sch. of Law*, 833 F.3d 298, 308 (3d Cir. 2016).  Within the products context,
     however, this is frequently a distinction without a difference.  *Compare, e.g.*, *Dzielak v.*

1  Plaintiffs are thus entitled to class certification of their damages claims if Plaintiffs can propose a

2  methodology that is able to calculate overpayment damages on a class-wide basis. *Chavez v. Blue*

3  *Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010).

4       In this case, Plaintiffs have submitted expert reports from Steven Gaskin and Colin Weir

5  that together establish at least two reasonable and appropriate methods of calculating

6  overpayment damages on a class-wide basis.[24] Mr. Gaskin conducted an in-depth analysis to

7  evaluate "the difference in the market value of a new class vehicle, at the point of purchase or

8  lease, with an EcoDiesel Engine with cheating software compared to the value of an otherwise

9  identical vehicle with an EcoDiesel Engine without cheating software." Ex. C (Gaskin Rep.) ¶ 12.

10  Mr. Weir used that analysis to calculate a metric of damages "wherein consumers would receive

11  back a portion of the price they paid that reflects the reduction in value of the Vehicles at the

12  point of purchase that is solely attributable to Defendants' conduct of selling Vehicles with the

13  cheating software." Ex. D (Weir Rep.) ¶ 8. This exact analysis has been accepted in a wide

14  range of consumer products class actions. *See, e.g.*, *Sanchez-Knutson v. Ford Motor Co.*, 310

15  F.R.D. 529, 538–39 (S.D. Fla. 2015) (collecting cases accepting Mr. Gaskin's survey testimony in

16  support of class certification); *cf. In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 948 (C.D. Cal.

17  2015) (accepting Mr. Weir's testimony in support of class certification), *aff'd* 844 F.3d 1121 (9th

18  Cir. 2017).

19       Furthermore, as the Court observed in the MTD Order, and as elaborated by Mr. Weir, "an

20  alternative and reasonable method of assessing the amount that Class members overpaid for their

21  vehicles is to calculate the difference between the price of the vehicles with and without the

22  EcoDiesel option (the 'EcoDiesel premium')." Ex. D (Weir Rep.) ¶ 49; *see also, e.g.*, Dkt. 290 at

23  8, 26, 30, 32, 43-44. This is a "straightforward calculation and methodology applicable to the

24  entire Class." Ex. D (Weir Rep.) ¶ 49.

25  *Whirlpool Corp.*, Civ. No. 2:12-89 (KM)(JBC), 2017 WL 6513347, at *10 (D.N.J. Dec. 20, 2017)
   (describing damages from receiving a product that is not as promised as "benefit-of-the-bargain"

26  damages) *with, e.g.*, *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir.
   2014) (Easterbrook, J.) (describing "market price" damages).

27  [24] These methodologies provide actual damages calculation formulas. Actual damages awarded to

28  the Class on its Civil RICO claim would be automatically trebled by statute to effectuate RICO's
   deterrent purposes. 18 U.S.C. § 1964(c).

As Mr. Weir explains, FCA charged a specific, easily-identifiable amount for the EcoDiesel option that is almost identical for all Class members and can be simply calculated for each individual Class member using the same "straightforward" methodology.  FCA produced its standard "order guides" in this litigation that list the MSRP for every model, model year, and trimline of Class Vehicle.  Those guides show that for each model and model year, FCA "offered a base engine for no additional cost, and the EcoDiesel package for an additional, stand-alone price."  Thus, to determine the EcoDiesel premium for any particular model, model year, and trimline, all one has to do is flip to the applicable page in the order guide, find the row for the "3.0-Liter V6 EcoDiesel Engine," and look at the standard upcharge that appears immediately to the right.  That same information is also plainly displayed on every single Monroney label for every single Class Vehicle.  In other words, the price of the EcoDiesel premium was clear not only to FCA and to the dealers, but also to the entire Class.

As Mr. Weir explains, those objective and authoritative sources show that "for each relevant model year of the Jeep Grand Cherokee, the upgrade to the EcoDiesel engine adds $4,500 or $5,000 to the MSRP, depending on the trimline." *Id.* ¶ 50.  With only minor variations, "[f]or the 2014 Ram 1500, the EcoDiesel upgrade adds $4,500, and for the 2015-2016 Ram 1500 it adds $4,770." *Id.*  In sum, the EcoDiesel premium for all Class Vehicles is consistent and easy to calculate.  Moreover, as Mr. Weir makes clear, the same class-wide methodology can be applied to actual "sales data" (as opposed to MSRP) provided by Class members or FCA, and can also be used "to determine the portion of any particular lease price attributable to the EcoDiesel option." *Id.* ¶ 51.

FCA sold the EcoDiesel engine based on the promise that it would deliver a no-compromise package of environmental friendliness, fuel economy, and performance (and, of course, on the promise that the Class Vehicles were legal).  FCA did not deliver the package, and the consumers did not reap the benefit of the diesel premium that they paid.  That premium is a fair, intuitive, and conservative valuation of the amount consumers overpaid for the Class Vehicles, and it can be "feasibly and efficiently be calculated once the common liability questions are adjudicated." *Leyva*, 716 F.3d at 514.

1536765.7

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:17-MD-02777-EMC

1
2

**VI.**    **Rule 23(b)(3)—Superiority: A Class Action Is Superior to Any Other Available Methods for Fairly and Efficiently Adjudicating the 100,000+ EcoDiesel Claims Presented in This Litigation.**

3        "A class action is considered 'superior to other methods of adjudication' if 'classwide

4   litigation of common issues will reduce litigation costs and promote greater efficiency.'"   *In re*

5   *MyFord Touch*, 2016 WL 7734558 at *28 (quoting *Zinser v. Accufix Research Inst., Inc.*, 253

6   F.3d 1180, 1190 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir.

7   2001)).  Superiority is an inherently comparative analysis.  It asks not whether a class action is

8   perfect or free from manageability concerns, but whether it is "superior to other available

9   methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The

10   Ninth Circuit has explained that class actions are typically superior when the "'risks, small

11   recovery, and relatively high costs of litigation' make it unlikely that plaintiffs would individually

12   pursue their claims." *Just Film*, 847 F.3d at 1123 (citation omitted).  Indeed, "[t]hese

13   considerations are at the heart of why the Federal Rules of Civil Procedure allow class actions in

14   cases where Rule 23's requirements are satisfied." *Id.*  Here, the per-vehicle damages are

15   substantial and certainly meaningful to the Class members.  However, the technical nature of the

16   litigation, the need for extensive expert involvement, and the high costs and risks associated with

17   this type of litigation make individual litigation impractical, inefficient, and inferior, because it

18   would impose unnecessary costs on those aggrieved, and thus would deter redress rather than

19   misconduct. *Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases,

20   particularly where common issues predominate for the proposed class, is an inferior method of

21   adjudication.").

22        This is especially true where, as here, there is not "any reason to suspect that this class

23   action will become so unmanageable that it would be more efficient to litigate thousands of

24   separate . . . lawsuits." *O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2015 WL 5138097,

25   at *35 (N.D. Cal. Sept. 1, 2015).  As discussed above, the Classes are objectively defined and can

26   be easily identified and noticed.  Moreover, nothing about this case suggests it will be

27   unmanageable to try as a class action.  The RICO claims involve *only* common questions of fact

28   and law.  The state law claims, through broken into State Classes, are also substantially similar

1   and will all be furthered by common proof of Defendants' conduct.  To the extent some groups of

2   states may impose additional requirements—including, for example, on privity and pre-suit

3   notice—those discrete issues, too, can be resolved in one fell swoop.  Other minor differences,

4   such as varying burdens of proof, can be effectively managed through verdict forms.  In short,

5   this case can be managed and tried efficiently and "a class action would achieve economies of

6   time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated,

7   without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521

8   U.S. at 615 (citation omitted); *see also Krell v. Prudential Ins. Co. of Am. (in Re Prudential Ins.*

9   *Co. Am. Sales Practice Litig. Agent Actions)*, 148 F.3d 283, 314-15 (3d Cir. 1998).

10          Rule 1 of Federal Rules of Civil Procedure, recently amended, sets the tone and defines

11   the interplay of due process and proportionality for the application of all Federal Rules and

12   procedural mechanisms in civil actions: "They should be construed, administered, and employed

13   by the court and the parties to secure the just, speedy, and inexpensive determination of every

14   action and proceeding."  Fed. R. Civ. P. 1.  This places Rule 23(b)(3)'s superiority inquiry in a

15   profound and practical context: which of the mechanisms available under the Civil Rules best

16   secures the just, speedy, and inexpensive determination of the claims asserted in the Second

17   Amended Complaint and centralized in this MDL?   Plaintiffs respectfully submit that the

18   application of Rule 23 to the questions with common answers raised by these proceedings, which

19   encompass both the essential liability determinations and methodologies to determine damages,

20   best secures the public and judicial objectives and the legitimate interests of the parties to

21   effectuate the goals of Rule 1.

22                                          **CONCLUSION**

23          For the foregoing reasons, Plaintiffs respectfully request that the Court certify a

24   Nationwide Class and State Classes, as defined herein, appoint the Plaintiffs named in the SAC to

25   serve as Class Representatives, and appoint Lead Counsel and the PSC to serve as Class Counsel.

26

27

28

1    Dated:  June 6, 2018                          Respectfully submitted,

2                                                  LIEFF CABRASER HEIMANN &
                                                   BERNSTEIN, LLP
3

4                                                  By /s/
5                                                     Elizabeth Cabraser (SBN 083151)
                                                      275 Battery Street, 29th Floor
6                                                     San Francisco, CA 94111-3339
                                                      Telephone: 415.956.1000
7                                                     Facsimile: 415.956.1008
                                                      Email:  ecabraser@lchb.com
8
                                                   *Plaintiffs' Lead Counsel*
9
     Roland K. Tellis                              W. Daniel ("Dee") Miles, III
10   BARON & BUDD, P.C.                            BEASLEY, ALLEN, CROW, METHVIN,
     15910 Ventura Boulevard, Suite 1600           PORTIS & MILES P.C.
11   Encino, CA 91436                              218 Commerce Street
     Telephone: 818.839.2320                       Montgomery, AL 36104
12   Facsimile: 818.986.9698                       Telephone: 800.898.2034
     Email: trellis@baronbudd.com                  Facsimile: 334.954.7555
13                                                 Email: dee.miles@beasleyallen.com

14   Lesley E. Weaver (SBN 191305)                 David S. Casey, Jr.
     BLEICHMAR FONTI & AULD, LLP                   CASEY GERRY SCHENK
15   1999 Harrison Street, Suite 670               FRANCAVILLA BLATT & PENFIELD
     Oakland, CA 94612                             LLP
16   Telephone: 415.445.4003                       110 Laurel Street
     Facsimile: 415.445.4020                       San Diego, CA 92101-1486
17   Email:  lweaver@bfalaw.com                    Telephone: 619.238.1811
                                                   Facsimile: 619.544.9232
18                                                 Email: dcasey@cglaw.com

19   Steve W. Berman                               Lynn Lincoln Sarko
     HAGENS BERMAN                                 KELLER ROHRBACK L.L.P.
20   1918 8th Avenue, Suite 3300                   1201 Third Avenue, Suite 3200
     Seattle, WA 98101                             Seattle, WA 98101
21   Telephone: 206.623.7292                       Telephone: 206.623.1900
     Facsimile: 206.623.0594                       Facsimile: 206.623.3384
22   Email: steve@hbsslaw.com                      Email:  lsarko@kellerrohrback.com

23
     Joseph F. Rice                                Rachel L. Jensen
24   MOTLEY RICE, LLC                              ROBBINS GELLER RUDMAN &
     28 Bridgeside Boulevard                       DOWD LLP
25   Mount Pleasant, SC 29464                      655 West Broadway, Suite 1900
     Telephone: 843.216.9000                       San Diego, CA 98101
26   Facsimile: 843.216.9450                       Telephone: 619.231.1058
     Email:  jrice@motleyrice.com                  Facsimile: 619.231.7423
27                                                 Email:  rachelj@rgrdlaw.com

28

1

Stacey P. Slaughter
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612.349.8500
Facsimile: 612.339.4181
Email: sslaughter@robinskaplan.com

2

3

4

5

*Plaintiffs' Steering Committee*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-48-

1

## **CERTIFICATE OF SERVICE**

2      I HEREBY CERTIFY that on June 6, 2018, a true and correct copy of the foregoing was

3  electronically filed and served electronically via the Court's CM/ECF system, which will

4  automatically serve notice to all registered counsel of record.

5

6                              */s/ Elizabeth J. Cabraser*
                               Elizabeth J. Cabraser

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28