United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION.

Case No. 17-md-02777-EMC (JSC)

**ORDER RE: ECF NO. 381 DISCOVERY DISPUTES**

Plaintiffs and the Bosch Defendants disagree over (1) whether Bosch must produce communications it has had with domestic and foreign government authorities about Fiat vehicles with alleged defeat devices, and (2) whether the responsive time frame to be applied to Plaintiffs' document requests should reach back to 2006 for certain requests and extend forward to the present instead of stopping at the end of 2015. These two disputes are addressed below.

## BACKGROUND

The private plaintiffs in this multidistrict litigation, who are the Plaintiffs in these disputes, are individuals and companies that bought or leased one or more 2014-2016 diesel engine Jeep Grand Cherokees or Ram 1500s that were marketed as EcoDiesels. These cars were manufactured by Fiat Chrysler. (SAC ¶¶ 1, 258.)

Plaintiffs allege that Bosch GmbH, a German engineering and electronics company, and Bosch LLC, a U.S. subsidiary (referred to collectively as "Bosch"), conspired with Fiat to develop, implement, and conceal eight auxiliary emission control devices ("AECDs") in the class vehicles. (SAC ¶¶ 3, 9, 23-32, 291.) The AECDs are alleged to have activated emission controls during testing, but to have significantly reduced their effectiveness during real-world driving conditions, causing the cars to emit up to 20 times the legal limit of NOx. (SAC ¶¶ 7, 127-28.)

Plaintiffs allege that the AECDs were EPA-prohibited "defeat devices" and that Bosch and Fiat deceived regulators and consumers into believing that the class vehicles were environmentally friendly and compliant with emission standards when they were not. (SAC ¶¶ 6, 132-33.)

With respect to Bosch's role, Plaintiffs allege that the hidden AECDs consisted of software that was added to an electronic engine control unit (an "ECU") in the class vehicles that Bosch manufactured. (SAC ¶¶ 9, 118-29.) This ECU, known as the EDC17, was used to control various systems in the cars, including fuel injection and exhaust treatment. (SAC ¶ 119.) Bosch does not appear to dispute that the EDC17 was used in the class vehicles and that it manufactured the device, but Bosch contends that it was not responsible for modifying the EDC17 in the manner that may have turned it into a defeat device. In other words, Bosch contends that it was only an innocent supplier and that any impermissible modifications to the EDC17 were made by someone else, likely Fiat or Fiat related entities.

In the fall of 2015, the use of emissions-cheating software became front-page news when Volkswagen admitted to using such software in hundreds of thousands of diesel-engine cars that it had sold in the United States. Bosch's EDC17 was used in those cars. (SAC ¶¶ 118, 127.) On the heels of the Volkswagen announcement, the EPA started investigating whether Fiat and other automakers were also using emissions-cheating software. (SAC ¶ 218.) Then in January 2017, the EPA issued a Notice of Violation to Fiat for failing to justify or disclose the hidden AECDs in the class vehicles. (SAC ¶ 230.)

Plaintiffs' suit against Fiat, Fiat related entities, and Bosch followed the EPA's Notice of Violation. Earlier this year, District Judge Chen denied in large part Defendants' motions to dismiss the complaint. (*See* Dkt. No. 290.) The parties are currently engaged in discovery.

**DISCUSSION**

1. <u>Discovery of Communications Between Bosch and Government Authorities</u>

Relevant to Plaintiffs' claims, especially in light of Bosch's innocent-supplier argument, is whether Bosch knew about the hidden AECDs in the class vehicles, and whether Bosch played a role in developing, installing, or concealing them. Unsurprisingly, then, Plaintiffs have asked Bosch to produce a wide range of documents related to its work on the EDC17, as well as

communications that Bosch has had internally and with Fiat about the EDC17 used in the class vehicles and about the hidden AECDs. (*See generally* Dkt. No. 381-1 (Pls.' Requests for Production).)

At issue here, Plaintiffs have also asked Bosch to produce communications it has had with government authorities that are investigating the use of emissions-cheating software in Fiat vehicles. (*See id.*, RFPs 5, 28, and 35.)[1] The communications that Plaintiffs have targeted are relevant to their claims. Plaintiffs have asked for communications that Bosch has had with authorities "concerning suspected or potential emissions cheating" in Fiat vehicles, "concerning the Challenged AECDs and the development of defeat devices in any vehicles sold by Fiat," and concerning "the ECUs in the Class Vehicles." (*Id.*) If Bosch has communicated with government authorities about these topics, those communications may include admissions, denials, or other statements by Bosch that could further Plaintiffs' claims.

Communications that Bosch has had about these topics with European authorities or in relation to non-class Fiat vehicles are also relevant. If, for example, Bosch has admitted in these other contexts to emissions cheating, that admission may be used to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident under Federal Rule of Evidence 404(b)." *Movie 1 & 2 v. United Artists Commc'ns, Inc.*, 909 F.2d 1245, 1250 (9th Cir. 1990) (internal quotation marks omitted).

Bosch asserts that it will be burdensome to comply with Plaintiffs' requests because the requests are broad enough to include not only communications with government authorities, but also documents that reflect Bosch's internal inquiries related to government investigations. To avoid this burden, the Court at this time will not require Bosch to produce documents that may

---

[1] In the three RFPs at issue, Plaintiffs also asked Bosch to produce documents that it previously produced to government authorities as part of emissions-cheating investigations. But in their letter brief and at a hearing on the dispute, Plaintiffs explained that they are now only seeking to compel Bosch to produce responsive communications with government authorities, not any related document productions. With the requests narrowed in this way, there is no concern that Plaintiffs are seeking "discovery about discovery." *Cf. King Cty. v. Merrill Lynch & Co.*, No. C10-1156-RSM, 2011 WL 3438491, at *2-3 (W.D. Wash. Aug. 5, 2011) (denying plaintiffs' motion to compel defendants to produce all documents they had previously provided to certain government authorities that were investigating the same conduct because the request for "cloned discovery" was overbroad).

otherwise be responsive to the requests at issue but that reflect internal inquiries in anticipation of (or in response to) government investigations into emissions cheating. The Court also will not require Bosch to produce internal documents that memorialize communications with government authorities that may be responsive to Plaintiffs' requests.

The Court instructs Bosch to produce communications that are responsive to RFPs 5, 28, and 35 to the extent the production would be consistent with the terms of this Order.

2. <u>Time Period for Plaintiffs' Document Requests</u>

The parties are also at odds about how far back Bosch needs to search for responsive documents and, moving in the other temporal direction, whether there is a cutoff date past which Bosch does not need to produce responsive documents. Bosch has proposed a time frame of January 1, 2010 up to December 31, 2015. (Dkt. No. 381 at 8.) On the front end, Plaintiffs seek pre-2010 documents (between 2006 and 2009) for RFPs "relating to the planning for, and development of, the EDC17 ultimately installed in the Class Vehicles." (Dkt. No. 381 at 4.) On the back end, Plaintiffs seek communications between Bosch and government authorities up through the present.

Bosch's January 1, 2010 start date is a reasonable initial cutoff. Bosch states that it did not begin working on the class vehicles until late 2010 or early 2011, and Plaintiffs have not disputed this representation. Also, although Plaintiffs allege that Bosch began developing the EDC17's functionalities during the 2006–2009 time period, Plaintiffs do not allege that the EDC17 was designed to be an emissions-cheating device. Instead, post 2009 modifications to the EDC17 after Fiat began working on the class vehicles are what allegedly turned the EDC17 into a defeat device. (*See* SAC ¶¶ 121-29.)

Plaintiffs respond that the 2006–2009 time frame is relevant because when Bosch first developed the EDC17's functionalities, it may have flagged potential misuses of them, perhaps including whether they could be used to create a defeat device. While this is possible, the burden of this discovery outweighs its likely benefit at this time. Rather than having Bosch produce three years' worth of EDC17 related documents that predate its work on the Fiat vehicles at issue, Plaintiffs should instead first review the post January 1, 2010 EDC17 related documents that

4

Bosch produces. To the extent that those documents suggest that there were earlier EDC17 related documents that would be relevant, Plaintiffs should then meet and confer with Bosch to discuss more targeted requests.

On the front end, Bosch argues that a December 31, 2015 cutoff date is reasonable because documents postdating that cutoff are likely to relate to government investigations of the alleged emissions fraud and to be privileged. As noted above, at this time the Court will not require Bosch to produce documents that may otherwise be responsive to Plaintiffs' requests but that reflect internal inquiries in anticipation of (or in response to) government investigations into emissions cheating. With documents of this kind off the table, Bosch's concern about privileged documents is less compelling. As for Bosch's communications with government authorities, those communications are relevant for the reasons already discussed. And because government investigations of Bosch are ongoing, a December 31, 2015 cutoff date would fail to capture more recent (and future) communications that are relevant to Plaintiffs' claims. Bosch is thus instructed to produce responsive communications with government authorities up to the present and on a going-forward basis.

**IT IS SO ORDERED**.

Dated: October 4, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge