Elizabeth J. Cabraser (State Bar No. 083151)
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email:  ecabraser@lchb.com

*Lead Counsel for Plaintiffs*

Robert J. Giuffra, Jr. (pro hac vice)
William B. Monahan (pro hac vice)
Thomas C. White (pro hac vice)
C. Megan Bradley (pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588
Email:  giuffrar@sullcrom.com
monahanw@sullcrom.com
whitet@sullcrom.com
bradleyc@sullcrom.com

*Counsel for Fiat Chrysler Automobiles N.V., FCA US LLC, V.M. Motori S.p.A., and V.M. North America, Inc.*

Matthew D. Slater (pro hac vice)
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Ave., NW
Washington, DC 20037
(202) 974-1500 (Phone)
(202) 974-1999 (Facsimile)
Email:  mslater@cgsh.com

*Counsel for Defendants Robert Bosch LLC and Robert Bosch GmbH*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Documents Relates to:<br><br>ALL CONSUMER AND RESELLER ACTIONS | Case No. 3:17-md-02777-EMC<br><br>**CONSUMER AND RESELLER DEALERSHIP CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE**<br><br>Hearing: January 23, 2019<br>Time: 10:00 a.m.<br>Courtroom: 5, 17th floor<br>The Honorable Edward Chen |

1

# TABLE OF CONTENTS

2    1.    THE PROPOSED SETTLEMENT ....................................................................... 1

3    2.    DEFINITIONS ..................................................................................................... 2

4    3.    ORDER APPROVING NOTICE......................................................................... 14

5    4.    CLASS MEMBER COMPENSATION AND REMEDIES ........................... 15

6    5.    CLASS CLAIMS PROCESS AND ADMINISTRATION ............................ 24

7    6.    REQUESTS FOR EXCLUSION ....................................................................... 26

8    7.    OBJECTIONS TO THE SETTLEMENT ......................................................... 27

9    8.    DUTIES OF THE NOTICE AND CLAIMS ADMINISTRATOR ............... 29

10   9.    RELEASE AND WAIVER ................................................................................ 31

11   10.   ESCROW ACCOUNT ....................................................................................... 37

12   11.   ATTORNEYS' FEES AND EXPENSES ......................................................... 38

13   12.   PROPOSED SCHEDULE FOR APPROVAL OF SETTLEMENT............... 39

14   13.   AGREEMENT TO COOPERATE TO EFFECTUATE SETTLEMENT ...... 40

15   14.   MODIFICATION OR TERMINATION OF THIS CLASS ACTION
             AGREEMENT ................................................................................................... 41
16
     15.   REPRESENTATIONS AND WARRANTIES ................................................ 44
17
     16.   GENERAL MATTERS AND RESERVATIONS ........................................... 45
18

19

20

21

22

23

24

25

26

27

28

1  **1.     THE PROPOSED SETTLEMENT**

2        On January 12, 2017, the U.S. Environmental Protection Agency and the California Air

3  Resources Board issued notices of violation to Fiat Chrysler Automobiles N.V. and FCA US

4  LLC, alleging that certain Ram and Jeep vehicles with 3.0 liter V6 diesel engines in the United

5  States were equipped with eight Auxiliary Emission Control Devices ("AECDs") that were not

6  disclosed to the EPA and CARB, and that the operation of one or more of the AECDs alone or in

7  combination results in excess emissions of nitrogen oxides ("NOx").  On May 23, 2017, the

8  Department of Justice, on behalf of the EPA, filed a complaint alleging that the undisclosed

9  AECDs, alone or in combination, are "defeat devices" designed to reduce the effectiveness of the

10  vehicles' emissions control systems in violation of the Clean Air Act.

11        Owners, lessees, and dealers also filed lawsuits against Defendants in federal courts across

12  the United States, which were consolidated in the United States District Court for the Northern

13  District of California before the Honorable Edward Chen.  Judge Chen appointed Lead Plaintiffs'

14  Counsel, as well as a committee of plaintiffs' lawyers from law firms across the United States

15  (referred to collectively as the Plaintiffs' Steering Committee), to oversee and conduct the

16  consolidated litigation on behalf of affected owners, lessees, and dealers.

17        After extensive litigation and settlement efforts facilitated by Court-appointed Settlement

18  Master Kenneth Feinberg, the Parties have reached this agreement to resolve consumers' claims

19  arising from the approximately 100,000 affected vehicles in the United States (the "Class Action

20  Agreement" or "Agreement").

21        As detailed below, the Class Action Agreement, if approved by the Court, provides

22  substantial compensation to all Class Members.  Fiat Chrysler has developed, and EPA and

23  CARB have approved, a modification of the emissions control system software calibration that

24  ensures that the vehicles' emissions are in compliance with the emissions standards to which the

25  vehicles were originally certified.  In addition to this software modification, the Class Action

26  Agreement provides Class Members with cash payments, a robust extended warranty, and other

27  non-monetary protections and benefits.

28

## 2.    DEFINITIONS

As used in this Class Action Agreement, including the attached Exhibits, the terms defined herein have the following meanings, unless this Class Action Agreement specifically provides otherwise.

2.1.    "3.0-liter Diesel Matter" means allegations relating to:  (1) the installation or presence of any Defeat Device or other auxiliary emission control device in any Model Year 2014-2016 Ram 1500 or Jeep Grand Cherokee vehicle with a 3.0-liter V6 diesel engine ("Subject Vehicle"); (2) the design, manufacture, assembly, testing, or development of any Defeat Device, auxiliary emission control device, emissions control equipment, electronic control units, or emissions software programs, programing, coding, or calibration used or for use in a Subject Vehicle; (3) the marketing or advertisement of the emissions or environmental characteristics or performance of any Subject Vehicle, including as green, clean, clean diesel, environmentally friendly, and/or compliant with state or federal environmental or emissions standards; (4) the actual or alleged noncompliance of any Subject Vehicle with state or federal environmental or emissions standards or with consumer expectations; (5) the marketing or advertisement of the fuel efficiency, fuel economy, mileage, power, or performance of any Subject Vehicle; (6) any badges or EcoDiesel labels on the Subject Vehicles; and/or (7) the subject matter of the Action, as well as any related events or allegations, with respect to Subject Vehicles.  Without limiting the foregoing, "3.0-liter Diesel Matter" includes allegations that (i) are related to any Subject Vehicle, (ii) relate to conduct by a Released Party that predates the date of this Class Action Settlement, and (iii) formed the factual basis for a claim that was made or could have been made in the Complaint.

2.2.    "Action" means the coordinated class, mass, and individual actions, however named, that are coordinated pursuant to 28 U.S.C. § 1407 in the United States District Court for the Northern District of California in *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*, No. 3:17-md-02777-EMC (N.D. Cal.) (MDL 2777) (the "MDL"), except that the Action does not include actions in the MDL brought by or on behalf of federal government agencies, states, municipalities, or state or municipal agencies under state

1    or local environmental or consumer-protection laws or regulations.

2           2.3.    "Approved Emissions Modification" or "AEM" means the Approved Emissions

3    Modification, as defined in Paragraph 23 of the US-CA Consent Decree, a change to the

4    emissions software of an Eligible Vehicle proposed by Fiat Chrysler and approved by the EPA

5    and CARB that reduces emissions and ensures that an Eligible Vehicle is in compliance with

6    Certified Exhaust Emissions Standards, as set forth in the US-CA Consent Decree.

7           2.4.    "Authorized Dealer" means any authorized Jeep and/or Ram dealer located in the

8    United States and Puerto Rico as evidenced by a current and valid Dealer Sales and Service

9    Agreement.

10          2.5.    "Bosch" means Robert Bosch GmbH and Robert Bosch LLC.

11          2.6.    "Bosch's Lead Counsel" means Matthew D. Slater of Cleary Gottlieb Steen &

12   Hamilton LLP.

13          2.7.    "Canadian Vehicle" means a Subject Vehicle purchased in Canada but

14   subsequently Registered in the United States.  Under the US-CA Consent Decree, Canadian

15   Vehicles are entitled to receive the Approved Emissions Modification.  Under this Class Action

16   Agreement, Canadian Vehicles are not eligible for a Class Member Payment, nor are claims

17   related to them released by this Agreement.

18          2.8.    "CARB" means the California Air Resources Board.

19          2.9.    "Certified Exhaust Emissions Standards" means emissions standards set forth in

20   Paragraph 28 of the US-CA Consent Decree.

21          2.10.   "Claim" means the claim of any Class Member or his, her, or its representative

22   submitted on a Claim Form as provided in this Class Action Agreement.

23          2.11.   "Claimant" means a Class Member who has completed and submitted a Claim

24   Form and all required documentation, as set forth in more detail in Exhibit 4.

25          2.12.   "Claim Form" means the paper or online form used to submit a Claim under this

26   Class Action Agreement.

27          2.13.   "Claim Submission Deadline for Eligible Owners and Eligible Lessees" means the

28   latest date by which an Eligible Owner or Eligible Lessee must submit a Claim to participate in

the Claims Program.  The Claim Submission Deadline for Eligible Owners and Eligible Lessees is 21 months from the Effective Date.

2.14.    "Claim Submission Deadline for Eligible Former Owners and Eligible Former Lessees" means the latest date by which an Eligible Former Owner or Eligible Former Lessee must submit a Claim to participate in the Claims Program.  The Claim Submission Deadline for Eligible Former Owners and Eligible Former Lessees is 90 days from the Effective Date. However, the deadline for Persons who become Eligible Former Owners or Eligible Former Lessees because their Eligible Vehicles are transferred to a third party after January 10, 2019, as a result of a total loss, but before the AEM is performed, is the later of (1) 90 days from the Effective Date, or (2) 60 days after title is transferred (for Eligible Former Owners), or 60 days after surrendering the leased vehicle under the terms of the lease (for Eligible Former Lessees). In no event, however, shall the deadline for such Persons extend beyond the Claim Submission Deadline for Eligible Owners and Eligible Lessees.  The Claim Submission Deadline for Eligible Former Lessees whose leases began on or before January 12, 2017, and who terminate their leases before receiving the AEM is also the later of (1) 90 days from the Effective Date or (2) 60 days after surrendering the leased vehicle under the terms of the lease, but in no event later than the Claim Submission Deadline for Eligible Owners and Eligible Lessees.

2.15.    "Claims Administrator" means the third-party agent agreed to by the Parties and appointed by the Court to oversee the Claims process described in Section 5.  The Parties agree that Angeion Group shall serve as Claims Administrator, subject to approval by the Court.

2.16.    "Claims Period" means the time period during which Class Members may submit a Claim.  The Claims Period begins on the Effective Date.  For Eligible Former Owners and Eligible Former Lessees, the Claims Period shall end on the Claim Submission Deadline for Eligible Former Owners and Eligible Former Lessees.  For Eligible Owners and Eligible Lessees, the Claims Period shall end on the Claims Submission Deadline for Eligible Owners and Eligible Lessees.

2.17.    "Claims Program" means the program through which Class Members may file Claims and, if eligible, obtain benefits under this Class Action Agreement, as described in

Exhibit 4.  For Eligible Former Owners and Eligible Former Lessees, the Claims Period shall end on the Claim Submission Deadline for Eligible Former Owners and Eligible Former Lessees.  For Eligible Owners and Eligible Lessees, the Claims Period shall end on the Claim Submission Deadline for Eligible Owners and Eligible Lessees.

2.18.   "Claims Review Committee" or "CRC" means the committee approved by the Court to resolve disputed Claims.  The Claims Review Committee also will make final decisions regarding whether vehicles are Operable, as defined herein.  The Claims Review Committee will review claims deemed ineligible and appealed by the Claimant, including disputes over the implementation of the Extended Warranty.  The Claims Review Committee will include one representative from Fiat Chrysler and one representative from Class Counsel, as well as a "Neutral," to be agreed upon by both Fiat Chrysler and Class Counsel, who would be called upon only to resolve any disagreements between the Claims Review Committee's other members, should they arise.  In the event that Fiat Chrysler and Class Counsel cannot agree on a "Neutral" representative, they agree to mediate the issue before the Settlement Master.  Subject to Court approval, the Parties may agree to a replacement or successor CRC Neutral at any point.  It is anticipated that the Parties will be able to resolve most issues, but the availability of a neutral third party ensures that disputes can be resolved without Court intervention.  The Class Counsel representative on the Claims Review Committee will have responsibility for handling CRC communication with Claimants and Claimants' counsel with the assistance of the Claims Administrator.  Determinations by the Claims Review Committee will constitute final determinations.  Class Members shall not have any right to appeal a decision of the Claims Review Committee to the Court.

2.19.   "Class" means, for purposes of this Class Action Settlement only, a nationwide class, including Puerto Rico, of all Persons (this includes individuals who are United States citizens, residents, or United States military, or diplomatic personnel that are living or stationed overseas, as well as entities) who (1) on January 12, 2017 owned or leased a Ram 1500 or Jeep Grand Cherokee 3.0-liter diesel vehicle in the United States or its territories (an "Eligible Vehicle," defined more fully in Section 2.35); or who (2) between January 12, 2017 and the

Claim Submission Deadline for Eligible Owners and Eligible Lessees become the owner or lessee of an Eligible Vehicle in the United States or its territories; or who (3) own or lease an Eligible Vehicle in the United States or its territories at the time of participation in the Repair Program. The Class includes automobile dealers who are not Authorized Dealers and who otherwise meet the definition of the Class.  The following entities and individuals are excluded from the Class:

    (a)    Owners or lessees who acquired an Eligible Vehicle after January 12, 2017, and transferred ownership or terminated their lease before April 1, 2019;

    (b)    Owners or lessees who acquired an Eligible Vehicle after January 12, 2017, and transferred ownership or terminated their lease after April 1, 2019, as a result of a total loss, but before the Claim Submission Deadline for Eligible Owners and Eligible Lessees;

    (c)    Owners who acquired an Eligible Vehicle on or before January 12, 2017, and transferred ownership after January 10, 2019, but before April 1, 2019, unless ownership was transferred as a result of a total loss;

    (d)    Lessees who leased their Eligible Vehicles on or before January 12, 2017, acquire ownership after January 10, 2019, and transfer ownership before the AEM is performed on the Eligible Vehicle;

    (e)    Owners whose Eligible Vehicle is not Registered in the United States as of the date the AEM is performed;

    (f)    Defendants' officers, directors and employees; Defendants' affiliates and affiliates' officers, directors and employees; their distributors and distributors' officers, directors and employees; and Authorized Dealers and Authorized Dealers' officers and directors;

    (g)    Judicial officers and their immediate family members and associated court staff assigned to this case; and

    (h)    All those otherwise in the Class who or which timely and properly exclude themselves from the Class as provided in this Class Action Agreement.

    2.20.    "Class Action Agreement" means this Settlement Agreement and the exhibits

attached hereto, including any subsequent amendments or any exhibits to such amendments.  The

Class Action Agreement may alternatively be referred to as the "Agreement" or the "Class Action

Settlement."

2.21.    "Class Counsel" means Lead Plaintiffs' Counsel and the PSC.

2.22.    "Class Member" means a member of the Class.

2.23.    "Class Member Payment" means the monetary compensation that Defendants shall

pay Class Members who do not opt out of the Class and who timely submit a valid and complete

Claim, on the conditions set forth in Section 4 and Exhibit 1.  This includes Owner, Lessee, and

Former Owner Payments, separately or collectively.

2.24.    "Class Notice Program" means the program for distributing information about the

Class Action Settlement to Class Members.

2.25.    "Complaint" means the Second Amended Consolidated Consumer Class Action

Complaint (Dkt. No. 310) filed in the Action on May 16, 2018.

2.26.    "Court" means the United States District Court for the Northern District of

California, San Francisco Division.

2.27.    "Defeat Device" has the same meaning as in 40 C.F.R. § 86.1803-01 or 42 U.S.C.

§ 7522(a)(3)(B).

2.28.    "Defendants" means Fiat Chrysler Automobiles N.V., FCA US LLC, V.M. Motori

S.p.A., V.M. North America, Inc., Sergio Marchionne and his estate, Robert Bosch GmbH, and

Robert Bosch LLC.

2.29.    "DOJ" means the United States Department of Justice.

2.30.    "Effective Date" means the date the Court has entered both the Final Approval

Order and the US-CA Consent Decree.

2.31.    "Eligible Former Lessee" means a Person who leased an Eligible Vehicle as of

January 12, 2017, and who surrendered or surrenders the leased Eligible Vehicle under the terms

of the lease before the Eligible Vehicle receives the AEM.  For the avoidance of doubt, this

includes Eligible Former Lessees whose leases are terminated as a result of a total loss before the

AEM is performed on the Eligible Vehicle.

2.32.   "Eligible Former Owner" means a Person who purchased or otherwise acquired ownership of an Eligible Vehicle on or before January 12, 2017, and then sold or otherwise transferred ownership of such vehicle after that date but on or before January 10, 2019, or a Person who leased an Eligible Vehicle on January 12, 2017 and subsequently acquired ownership of that Eligible Vehicle on or before January 10, 2019, and then sold or otherwise transferred ownership of such vehicle after that date but on or before January 10, 2019.  A Person who purchased or otherwise acquired ownership of an Eligible Vehicle on or before January 12, 2017, but whose vehicle is transferred to a third party after January 10, 2019, as a result of a total loss, but before the Approved Emissions Modification is performed, shall become an Eligible Former Owner.  For avoidance of doubt, a sale or transfer of ownership under this definition includes the transfer of ownership of an Eligible Vehicle to an insurance company.

2.33.   "Eligible Lessee" means (1) a Person who leases an Eligible Vehicle when the AEM is performed, or (2) a Person who owns an Eligible Vehicle that was leased as of January 10, 2019, except that a Person who owns an Eligible Vehicle will not qualify as an Eligible Owner or Eligible Lessee while the Eligible Vehicle is under lease to any third party, including any Eligible Lessee.  An Eligible Lessee ceases to be an Eligible Lessee if he or she surrenders the leased Eligible Vehicle under the terms of the lease or transfers ownership of the Eligible Vehicle to a third party before the AEM is performed, but an Eligible Lessee who leased the Eligible Vehicle on January 12, 2017, and surrenders the Eligible Vehicle before the AEM is performed becomes an Eligible Former Lessee.  An Eligible Lessee who assigns the lease of that Person's Eligible Vehicle to a third party shall cease to be an Eligible Lessee and shall not become an Eligible Former Lessee.  Instead, the third party to whom the lease is assigned shall become the Eligible Lessee of the Eligible Vehicle and shall assume all the rights and responsibilities under this Agreement of the person who assigned the lease.  In exceptional cases, specific arrangements may be made with the leasing company, in consultation with the Claims Administrator, such that, without canceling or terminating the lease, the leasing company may be treated as an Eligible Lessee and obtain an Approved Emissions Modification plus Lessee Payment.

2.34. "Eligible Owner" means the owner or owners of an Eligible Vehicle who acquired or acquire an Eligible Vehicle before the end of the Settlement Benefit Period, except that the owner of an Eligible Vehicle that was leased as of January 10, 2019, shall not be an Eligible Owner, and may instead be an Eligible Lessee based on the terms of that definition.  An Eligible Owner ceases to be an Eligible Owner if he or she transfers ownership of the Eligible Vehicle to a third party after January 10, 2019.

2.35. "Eligible Vehicle" means the Model Year 2014 through 2016 Ram 1500 and Jeep Grand Cherokee vehicles equipped with 3.0-liter V6 diesel engines that (1) are covered, or purported to be covered, by the EPA Test Groups in the table immediately below this Paragraph; and (2) have not been modified pursuant to an Approved Emissions Modification.  Eligible Vehicle excludes (i) any vehicle that was never sold in the United States or its territories and also excludes (ii) any vehicle that is not Registered in the United States or its Territories as of the date the Approved Emissions Modification is performed, unless the vehicle is owned or leased by individuals who are United States military or diplomatic personnel that are living or stationed overseas.  A vehicle must be Operable to be considered an Eligible Vehicle.

**3.0-liter Diesel Eligible Vehicles**

| Model Year | EPA Test Group(s) | Vehicle Make and Model(s) |
|------------|-------------------|---------------------------|
| 2014 | ECRXT03.05PV | FCA Ram 1500 |
| 2014 | ECRXT03.05PV | FCA Jeep Grand Cherokee |
| 2015 | FCRXT03.05PV | FCA Ram 1500 |
| 2015 | FCRXT03.05PV | FCA Jeep Grand Cherokee |
| 2016 | GCRXT03.05PV | FCA Ram 1500 |
| 2016 | GCRXT03.05PV | FCA Jeep Grand Cherokee |

2.36. "EPA" means the United States Environmental Protection Agency.

2.37. "EPA Test Group" means a subdivision of vehicles set forth in the chart that appears in the definition of Eligible Vehicle above.

2.38. "Escrow Account" means the escrow account managed by the Escrow Agent, which shall be the sole escrow account for compensation of Class Members under the Class Action Agreement.

2.39.   "Escrow Agent" means the agreed-upon entity to address and hold for distribution the funds identified in this Class Action Agreement pursuant to the terms of the Escrow Agreement.  That agreed-upon entity is Citi Private Bank.

2.40.   "Escrow Agreement" means the agreement by and among Class Counsel, Fiat Chrysler's Lead Counsel, and Bosch's Lead Counsel with respect to the escrow of the funds to be deposited into the Escrow Account pursuant to this Class Action Agreement.

2.41.   "Extended Warranty" means the warranty described in Section 4.3.1.

2.42.   "Fairness Hearing" means the hearing held by the Court for the purpose of determining whether to approve this Class Action Agreement as fair, reasonable, and adequate.

2.43.   "FCA US" means FCA US LLC.

2.44.   "Fiat Chrysler," "FCA," or "Fiat Chrysler Entities" means Fiat Chrysler Automobiles N.V., FCA US LLC, V.M. Motori S.p.A., and V.M. North America, Inc.

2.45.   "Fiat Chrysler's Lead Counsel" means Robert J. Giuffra, Jr. of Sullivan & Cromwell LLP.

2.46.   "Final Approval Order" means the order that may, at the discretion of the Court, be entered by the Court granting final approval of the Class Action Settlement.

2.47.   "Former Owner Payment" means certain monetary compensation, as set forth in Exhibit 1, that Defendants will pay to Eligible Former Owners of vehicles who do not opt out of the Class and who timely submit a valid and complete Claim, on the conditions set forth in Section 4 and Exhibit 1.

2.48.   "Lead Plaintiffs' Counsel" means Elizabeth Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP, who was appointed by the Court on June 19, 2017.

2.49.   "Lessee Payment" means certain monetary compensation, in an amount set forth in Exhibit 1, that Defendants will pay to Eligible Lessees and Eligible Former Lessees of vehicles who do not opt out of the Class and who timely submit a valid and complete Claim, on conditions set forth in Section 4 and Exhibit 1.

2.50.   "Long Form Notice" means the Long Form Notice substantially in the form attached hereto as Exhibit 3.

1    2.51.   "Notice Administrator" means the agent or administrator agreed to by the Parties

2    and appointed by the Court to implement and consult on the Class Notice Program.  The Parties

3    agree that Angeion Group shall serve as Notice Administrator, subject to approval by the Court.

4    2.52.   "Operable" means that a vehicle can be driven under its own engine power and is

5    in reasonable condition such that it can be driven lawfully and safely on public roads, even if it

6    has a mechanical issue, under a common-sense understanding of what is an acceptable condition

7    for driving.  An otherwise Eligible Vehicle that has been altered with the use of any after-market

8    emissions-related components, parts, and/or software or the removal of any original emissions-

9    related components, parts, and/or software, if such alteration(s) are likely to substantially affect

10   the operation of the vehicle with the Approved Emissions Modification or substantially impede

11   installation of the Approved Emissions Modification, shall not be considered Operable unless and

12   until the owner of such vehicle, at his or her expense, has reversed the alteration(s) such that the

13   Approved Emissions Modification may be installed and not substantially affected.  Nothing in

14   this definition affects FCA US's obligation to perform the AEM on any and all Subject Vehicles

15   for which an AEM is requested, unless FCA US can refuse to perform the AEM under the terms

16   of Paragraph 38.e of the US-CA Consent Decree.  The Claims Review Committee will be the

17   final decision maker on whether a vehicle is Operable but a determination under this Paragraph

18   that a vehicle is Operable or not Operable does not constitute any determination by EPA or

19   CARB as to whether the emissions system of the vehicle has been modified.

20   2.53.   "Opt-Out Deadline" means the last day a Class Member may opt out of the Class

21   Action Agreement, which is April 1, 2019 for all Class Members, except that Persons who

22   purchase or acquire an Eligible Vehicle on or after that date shall have all the rights, privileges,

23   obligations, and responsibilities of Class Members, and shall have 30 days from the date of their

24   purchase or acquisition to opt out of the Class as set forth in Section 6.

25   2.54.   "Order Approving Notice" means the order that may, at the discretion of the Court,

26   be entered by the Court approving notice to the Class and concluding that the Court will likely be

27   able to approve the Class Action Settlement and certify the proposed Class as outlined in Section

28   3 of this Class Action Agreement.

2.55.   "Owner Payment" means certain monetary compensation Defendants will pay to Eligible Owners who do not opt out of the Class and who timely submit a valid and complete Claim, on the conditions set forth in Section 4 and Exhibit 1.

2.56.   "Parties" means the Settlement Class Representatives and Defendants, collectively, as each of those terms is defined in this Class Action Agreement.

2.57.   "Person" or "Persons" includes individuals and entities such as an automobile dealer that is not an Authorized Dealer.

2.58.   "Plaintiffs' Steering Committee" or "PSC" means those counsel appointed to the Plaintiffs' Steering Committee by the Court in this Action on June 19, 2017.  Lead Plaintiffs' Counsel is Chair of the PSC.

2.59.   "Post-Appeal Date" means the latest date on which the Final Approval Order approving this Class Action Agreement becomes final.  For purposes of this Class Action Agreement:

    2.59.1.   if no appeal has been taken from the Final Approval Order, "Post-Appeal Date" means the date on which the time to appeal therefrom has expired; or

    2.59.2.   if any appeal has been taken from the Final Approval Order, "Post-Appeal Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc* and petitions for a writ of *certiorari* or any other form of review, have been fully disposed of in a manner that affirms the Final Approval Order; or

    2.59.3.   if Class Counsel and Defendants agree in writing, the "Post-Appeal Date" can occur on any other earlier agreed date.

2.60.   "Registered" includes vehicles registered with a state Department of Motor Vehicles or equivalent agency, or vehicles owned by a non-Authorized Dealer in the United States or its territories that (a) holds title to the vehicle or (b) holds the vehicle by bill of sale.

2.61.   "Release" means the release and waiver described in Section 9 of this Class Action Agreement and in the Final Approval Order.  In addition, Class Members who participate in the

1    Repair Program will execute a coextensive "Individual Release" as described in Section 9 of this

2    Class Action Agreement, and that Individual Release will remain valid even if the Final Approval

3    Order is later reversed and/or vacated on appeal.

4        2.62.   "Released Party" or "Released Parties" has the definition set forth in Section 9 of

5    this Class Action Agreement.

6        2.63.   "Repair Program" means the recall program specified in Section VI.B of the US-

7    CA Consent Decree to implement the Approved Emissions Modification during the Settlement

8    Benefit Period, pursuant to this Class Action Agreement.

9        2.64.   "Sergio Marchionne" means Sergio Marchionne, his estate and his executors.

10       2.65.   "Settlement Benefit Period" means the time period during which Class Members

11   may obtain benefits under the Class Action Settlement, excluding any benefits available under the

12   warranty provisions provided in the Class Action Settlement, which are identical to the warranty

13   provisions in the US-CA Consent Decree and which shall be available for the duration and under

14   the terms specified in the US-CA Consent Decree and Exhibit 1.  The Settlement Benefit Period

15   shall run from the Effective Date until two years after the Effective Date.

16       2.66.   "Settlement Class Representative" means a Plaintiff who meets the Class

17   definition set forth in Section 2.19 of this Class Action Agreement, and who has agreed to

18   represent the Class for purposes of obtaining approval of, and effectuating, this Class Action

19   Agreement, as listed in the moving papers submitted for the motion for an Order Approving

20   Notice.

21       2.67.   "Settlement Master" means Kenneth Feinberg, who was appointed by the Court to

22   serve as Settlement Master to administer, coordinate, and preside over settlement-related

23   proceedings.

24       2.68.   "Settlement Website" means the public website that provides information and key

25   filings regarding the Class Action Settlement, including FAQs.  Class Members will be able to

26   access a "Claims Portal" on the Settlement Website.  The Settlement Website also will allow

27   Class Members to obtain a description of the Repair Program and to complete and submit an

28   online Claim Form.  The Settlement Website shall be maintained by Fiat Chrysler in consultation

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1    with Lead Plaintiffs' Counsel, Bosch's Lead Counsel, and the Notice and Claims Administrator.

2    Any disputes as to the content and/or form the Settlement Website shall be resolved by the

3    Settlement Master.

4        2.69.   "Short Form Notice" means the Short Form Notice(s) substantially in the form as

5    attached hereto as Exhibit 2.

6        2.70.   "US-CA Consent Decree" means the consent decree lodged with the Court on or

7    about January 10, 2019, as agreed by (1) the United States on behalf of the Environmental

8    Protection Agency; and (2) the People of the State of California, by and through CARB and the

9    Attorney General of California; and (3) Fiat Chrysler Automobiles N.V., FCA US LLC, V.M.

10   Motori S.p.A., and V.M. North America, Inc., resolving certain aspects of the disputes between

11   those parties on the terms described therein.  If the Court approves the consent decree, "US-CA

12   Consent Decree" shall mean the decree as and in the form that it is ultimately approved and

13   entered by the Court.

14       2.71.   Other capitalized terms used in this Class Action Agreement but not defined in this

15   Section shall have the meanings ascribed to them elsewhere in this Class Action Agreement.

16       2.72.   The terms "he or she" and "his or her" include "it" or "its" where applicable.

17   **3.      ORDER APPROVING NOTICE**

18       3.1.    Promptly after this Agreement is signed, but by no later than January 10, 2019, the

19   Parties shall file the Agreement with the Court, together with a Motion to Approve Notice to the

20   Class.  Simultaneously, the Settlement Class Representatives shall move for certification of the

21   Class for settlement purposes only, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ.

22   P.") 23(a), 23(b)(3), and 23(e).  It is expressly agreed that any certification of the Class shall be

23   for settlement purposes only, and Defendants do not waive any arguments that they may have that

24   class certification for any other purpose would be improper.

25       3.2.    The Parties agree to take all actions and steps reasonably necessary to obtain an

26   Approval Order from the Court and to fully implement and effectuate this Class Action

27   Settlement.

28

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

**4.     CLASS MEMBER COMPENSATION AND REMEDIES**

4.1.     **Overview of Benefits.**  The Class Action Agreement provides substantial compensation and remedies to owners and lessees, as detailed in this Section and in Exhibit 1 (Class Member Benefits).  The compensation described in this Section is available only to Class Members who do not opt out.

4.2.     **Approved Emissions Modification Program.**

4.2.1.     **Approved Emissions Modification.**  All owners of Subject Vehicles, including Eligible Owners and Eligible Lessees who own or lease an Eligible Vehicle, are eligible to receive an Approved Emissions Modification, as specified in the US-CA Consent Decree.  Class Members whose Eligible Vehicles are repaired, who submit timely and complete Claims, and who do not exclude themselves from the Class Action Settlement, will also receive an Owner Payment or Lessee Payment, as applicable, described below and in Exhibit 1.

4.2.2.     **Owner Payment**.  Eligible Owners who receive an Approved Emissions Modification are entitled to an Owner Payment.  The Owner Payment will be **$3,075**, unless an Eligible Former Owner or Eligible Former Lessee timely files a valid Claim for that same vehicle, in which case, the Owner Payment will be **$2,460.**   Full details on Owner Payments can be found in paragraph 2 of Exhibit 1.

4.2.3.     **Former Owner Payment**.  Eligible Former Owners will be entitled to a Former Owner Payment.  The Former Owner Payment is **$990**.  Class Members whose Eligible Vehicles (1) are damaged after January 12, 2017 and before January 10, 2019, in a manner that renders them a total loss (*i.e.*, "totaled"), and (2) are transferred to an insurance company or otherwise sold to a junkyard, salvage dealer, or the equivalent, shall be treated as Eligible Former Owners and offered a Former Owner Payment. To obtain a Former Owner Payment, Eligible Former Owners must

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1    complete a claim by the Claim Submission Deadline for Eligible Former
2    Owners and Eligible Former Lessees or, in the event that their Eligible
3    Vehicle is totaled after the Claim Submission Deadline for Eligible
4    Former Owners and Eligible Former Lessees, complete a claim within 60
5    days of the date they transfer title of the Eligible Vehicle (but no later
6    than the Claim Submission Deadline for Eligible Owners and Eligible
7    Lessees).  All disputes concerning whether a claim made under this
8    paragraph is timely will be adjudicated by the CRC.  Full details on
9    Former Owner Payments can be found in paragraph 3 of Exhibit 1.

10    4.2.4.    **Lessee Payment.**  Eligible Lessees who receive an Approved Emissions
11    Modification and Eligible Former Lessees who submit a timely and
12    complete Claim will be entitled to a Lessee Payment.  The Lessee
13    Payment is $**990**.  For the purposes of this paragraph, the lessor of an
14    Eligible Vehicle does not "receive an Approved Emissions Modification"
15    if the Eligible Vehicle is surrendered under the terms of the lease to an
16    Authorized Dealer and an Authorized Dealer then applies the Approved
17    Emissions Modification before another person takes possession of the
18    vehicle.  Full details on Lessee Payments can be found in paragraphs 4
19    and 5 of Exhibit 1.

20    4.2.5.    Notwithstanding any other provision herein, the Parties agree that the
21    Defendants shall not pay to Eligible Owners and Eligible Former Owners
22    and Eligible Lessees and Eligible Former Lessees more than 100% of the
23    maximum amount allocated for any specific Eligible Vehicle under the
24    terms of this Class Action Agreement.  For the avoidance of doubt, the
25    Parties agree that this is a claims-made settlement, meaning that
26    Defendants must make payments only up to the maximum amount for any
27    Eligible Vehicle under the terms of this Class Action Agreement.

28

4.2.6.   In accordance with paragraph 48 of the US-CA Consent Decree, this Section (4.2) is intended to comply with paragraph 37 of the US-CA Consent Decree (Establishment of a Recall Program), and to substitute for those consumer-facing obligations for Fiat Chrysler in paragraph 37 of the US-CA Consent Decree.

4.3.   **Warranty Obligations.**

4.3.1.   <u>Extended Warranty</u>. Fiat Chrysler shall provide an extended warranty for each Eligible Vehicle that receives the Approved Emissions Modification, known as the "Extended Warranty," and provide a copy of the Extended Warranty to each Eligible Owner and Eligible Lessee at the time of the Approved Emissions Modification.  The Extended Warranty under the Class Action Agreement, including all terms described in Section 4.3 of this Agreement and Exhibit 1, is identical to the terms negotiated and agreed to by Fiat Chrysler in paragraph 45 of the US-CA Consent Decree.

4.3.2.   Other Warranty-Related Terms.  The following warranty-related terms below (subparts (a)-(h)) also are provided to Class Members under the Class Action Agreement.  Paragraphs (a) through (i) are identical to the terms agreed to by Fiat Chrysler in paragraph 45 of the US-CA Consent Decree.

(a)   Fiat Chrysler shall not impose on consumers any fees or charges (and must pay any fees or charges imposed on consumers by any Dealer (as defined in paragraph 8(z) of the US-CA Consent Decree) in accordance with the applicable franchise agreements with such Dealers) related to the warranty service.  Fiat Chrysler shall take all measures necessary to reimburse Eligible Owners and Eligible Lessees in the event that the scope of warranty coverage described in this Section, Exhibit 1 hereto, and paragraph 45 of the US-CA Consent Decree, is limited by any service writer's discretion.

1    (b)    <u>Modification of the Extended Warranty</u>.  In addition to the warranty

2    coverage described in Exhibit 1, Fiat Chrysler shall expand the

3    warranty coverage to include additional parts or service associated

4    with the Approved Emissions Modification if alterations or updates

5    are made to the Approved Emissions Modification either in

6    accordance with paragraph 31 of the US-CA Consent Decree or

7    through a modification of the US-CA Consent Decree in

8    accordance with Section XVII (Modification).  Fiat Chrysler

9    reserves the right to invoke Dispute Resolution under Section X

10   (Dispute Resolution) of the US-CA Consent Decree if, after

11   consultation with EPA and CARB, the Parties are unable to agree

12   on the need for or scope of any modification of the Extended

13   Warranty under this Paragraph.  In the event that the Extended

14   Warranty is modified pursuant to this Paragraph, the modified

15   Extended Warranty shall apply to all affected Eligible Vehicles that

16   have received or will receive the Approved Emissions

17   Modification.

18   (c)    <u>Extended Warranty Period</u>.  For all Eligible Vehicles that receive

19   the Approved Emissions Modification on or before the Recall

20   Target Deadline (as defined in paragraph 37 of the US-CA Consent

21   Decree), the Extended Warranty Period (as defined in paragraph 45

22   of the US-CA Consent Decree) shall be the greater of (i) 10 years

23   from the date of initial sale or 120,000 actual miles on the vehicle

24   odometer, whichever comes first; and (ii) 4 years or 48,000 miles,

25   from date and mileage of installing the Approved Emissions

26   Modification on the vehicle, whichever comes first.  For any

27   Eligible Vehicle that receives the Approved Emissions

28   Modification after the Recall Target Deadline, the Extended

- 18 -

1            Warranty Period shall be as described in this Section, but in no

2            event shall the Extended Warranty apply to or provide any coverage

3            for the Eligible Vehicle after May 1, 2029. In the event that an

4            Eligible Vehicle that has received the Approved Emissions

5            Modification is resold, the remaining Extended Warranty Period, if

6            any, is transferable to subsequent purchasers and shall continue

7            through the date or mileage determined in this Paragraph for the

8            benefit of such subsequent purchasers.

9        (d)    <u>Buyback and Lease Termination Remedies</u>.  In addition to any

10       protections provided by applicable law (including those referenced

11       in subparagraph 45.e. of the US-CA Consent Decree), Fiat Chrysler

12       must provide a Buyback or Lease Termination to any Eligible

13       Owner or Eligible Lessee of an Eligible Vehicle that receives the

14       Approved Emissions Modification in the event that, during the 18

15       months or 18,000 miles (whichever comes first) following the

16       completion of the Approved Emissions Modification (the "Remedy

17       Period"), Fiat Chrysler fails to repair or remedy a confirmed failure

18       or malfunction covered by the Extended Warranty and associated

19       with the Approved Emissions Modification (a "Warrantable

20       Failure") after the Eligible Owner or Eligible Lessee physically

21       presents the Eligible Vehicle to a Dealer for repair of the

22       Warrantable Failure; and (1) the Warrantable Failure is unable to be

23       remedied after making four separate service visits to the same

24       Dealer for the same Warrantable Failure during the Remedy Period;

25       or (2) the Eligible Vehicle with the Warrantable Failure is out-of-

26       service due to the Warrantable Failure for a cumulative total of

27       thirty (30) days during the Remedy Period, not including any days

28       when the Dealer returns or otherwise tenders the Eligible Vehicle to

1     the customer while the Dealer awaits necessary parts and such

2     vehicle remains Operable.

3   (e) Preservation of Remedies.  The Extended Warranty shall be subject

4     to any remedies provided by state or federal laws, such as the

5     Magnuson-Moss Warranty Act, that provide consumers with

6     protections, including without limitation "Lemon Law" protections,

7     with respect to warranties.

8   (f) Warranty Database for Consumers.  For ten (10) years following

9     the Effective Date, Fiat Chrysler shall maintain a database by which

10     users, including Eligible Owners, Eligible Lessees, and prospective

11     purchasers, may conduct a free-of-charge search by vehicle VIN to

12     determine whether the vehicle has received an Approved Emissions

13     Modification and whether the Extended Warranty and any

14     additional warranty extension(s) (as described in Paragraphs 45 and

15     86.k. of the US-CA Consent Decree) applies to the specific vehicle.

16     Fiat Chrysler must provide the VINs for all such vehicles to the

17     PSC within fifteen (15) Days of the PSC's request.

18   (g) Warranty Database for Dealers.  For twenty (20) years following

19     the Effective Date, Fiat Chrysler shall maintain a database or other

20     communications system that includes all Subject Vehicles, by

21     which Dealers may search by vehicle VIN to determine whether the

22     Extended Warranty and any additional warranty extension(s) apply

23     to a specific Eligible Vehicle.  Fiat Chrysler shall establish

24     procedures such that the vehicle VIN shall dictate component or

25     system coverage.  Such procedures shall include a feature by which

26     Dealers may enter an identification number or other code for any

27     part pertaining to an Eligible Vehicle and determine whether such

28     part is covered by the Extended Warranty.

1        (h)    <u>Continued Service for Unmodified Vehicles</u>.  For Eligible Owners

2    and Eligible Lessees who decline to receive the Approved

3    Emissions Modification for an Eligible Vehicle, Fiat Chrysler must

4    continue to service such Eligible Vehicle in accordance with

5    existing applicable federal and state law warranty provisions

6    (including any exclusions for modified parts, components, and

7    software), consistent with paragraph 45.h. of the US-CA Consent

8    Decree.

9    4.3.3.    <u>Warranty Disputes</u>.  The Claims Review Committee shall adjudicate

10    disputes regarding any eligibility for Extended Warranty claims in

11    accordance with the US-CA Consent Decree.

12    4.3.4.    In accordance with paragraph 48 of the US-CA Consent Decree, this

13    Section (4.3) is intended to comply with paragraph 45 of the US-CA

14    Consent Decree (Extended Warranty), and to substitute for those

15    consumer-facing obligations for Fiat Chrysler in paragraph 45 of the US-

16    CA Consent Decree.

17    4.4.    **Other Incorporated Warranties.**  The Parties incorporate all warranties and

18    Lemon Law provisions set forth in paragraph 45 of the US-CA Consent Decree as material terms

19    of this Class Action Settlement.

20    4.5.    **Approved Emissions Modification Disclosure.**  As set forth in the US-CA

21    Consent Decree, FCA US shall provide Eligible Owners, Eligible Lessees, and, as applicable,

22    prospective purchasers of Subject Vehicles with a clear and accurate written disclosure as

23    approved in the sole discretion of the EPA and CARB (the "Approved Emissions Modification

24    Disclosure") regarding the impacts of the Approved Emissions Modification on an Eligible

25    Vehicle.  The Approved Emissions Modification Disclosure shall also be made available online

26    by FCA US through the Settlement Website, which will, among other things, display the

27    Approved Emissions Modification Disclosure applicable to a specific vehicle when a user inputs

28    the Vehicle Identification Number ("VIN").  This online access shall continue for a minimum of

1   ten (10) years after the US-CA Consent Decree is entered. As described more fully in the US-CA

2   Consent Decree, the Approved Emissions Modification Disclosure will describe in plain

3   language: (1) the Approved Emissions Modification and related software changes; (2) a clear

4   explanation of each subsequent service action required by the Approved Emissions Modification,

5   if any; (3) any and all reasonably predictable changes resulting from the Approved Emissions

6   Modification, including but not limited to changes to reliability, durability, fuel economy, noise,

7   vibration, vehicle performance, drivability, diesel exhaust fluid ("DEF") consumption, and any

8   other vehicle attributes that may reasonably be important to vehicle owners; (4) a basic summary

9   of how Class Members can obtain the Approved Emissions Modification; (5) system limitations

10   that make identification and repair of any components difficult or even impossible, compromise

11   warranty coverage, or may reduce the effectiveness of inspection and maintenance program

12   vehicle inspections; and (6) any other disclosures required under the terms of the US-CA Consent

13   Decree.

14           4.6.    **No Prohibition on Other Incentives.**  Nothing in this Class Action Agreement is

15   intended to prohibit Fiat Chrysler from offering any consumer any further incentives in addition

16   to those provided herein; however, Fiat Chrysler may not offer Class Members other incentives in

17   lieu of the options contained herein, in whole or in part, or any incentive not to participate in the

18   Repair Program.  Likewise, Fiat Chrysler shall request that Authorized Dealers not offer any

19   incentive not to participate in the Repair Program.

20           4.7.    **Disposition of Returned Vehicles.**  As set forth more fully in paragraph 46 of the

21   US-CA Consent Decree, unmodified Eligible Vehicles returned to Fiat Chrysler must receive the

22   Approved Emissions Modification before they may be resold in the United States.

23           4.8.    **Telephone Call Center.**  FCA US shall establish a telephone call center to address

24   Class Member inquiries.  The Parties will agree as to what information will be provided by the

25   telephone call center to inquiring Class Members.  FCA US shall staff the call center with enough

26   operators to ensure that Class Member hold time will be minimal, and in any event no more than

27   five minutes on average. In accordance with paragraph 48 of the US-CA Consent Decree, this

28   Paragraph (4.8) is intended to comply with paragraph 38.c. of the US-CA Consent Decree (Call

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1  Center and Online Support), and to fulfill those consumer-facing obligations for Fiat Chrysler in

2  paragraph 38.c. of the US-CA Consent Decree.

3        4.9.    **Responsibility for Required Payments by Fiat Chrysler.**  FCA US shall bear

4  the ultimate responsibility for all required payments owed by Fiat Chrysler under this Class

5  Action Agreement on a claims-made basis, as described herein.  Fiat Chrysler's obligations of the

6  Class Action Agreement apply to, and are binding upon, the Fiat Chrysler Entities and any of Fiat

7  Chrysler's successors, assigns, or other entities or persons otherwise bound by law.  FCA US

8  bears the ultimate responsibility for making all payments owed by Fiat Chrysler, including, but

9  not limited to, all costs and warranties associated with the Claims Program.  Further, FCA US

10  shall be jointly and severally responsible to implement all repair requirements described herein.

11  Any legal successor or assign of FCA US shall assume FCA US's liability and remain jointly and

12  severally liable for the payment and other performance obligations herein.  FCA US shall include

13  an agreement to so remain liable in the terms of any sale, acquisition, merger, or other transaction

14  changing the ownership or control of any of its successors or assigns.  No change in the

15  ownership or control of any such entity shall affect the obligations herein of FCA US without

16  modification of the Class Action Agreement.

17        4.10.    **Responsibility for Required Payments by Bosch.** Bosch's obligations under this

18  Class Action Agreement are limited solely to the payment of not more than $27.5 million in

19  accordance with Section 10 of this Class Action Agreement, and such further amount for

20  attorney's fees, if any, as may be ordered as provided under this Class Action Agreement.  Robert

21  Bosch GmbH shall bear the ultimate responsibility for Bosch's payment obligations under this

22  Class Action Agreement. Bosch's obligations under the Class Action Agreement apply to, and are

23  binding upon, Robert Bosch GmbH and Robert Bosch LLC and any successors, assigns, or other

24  entities or persons otherwise bound by law to satisfy their obligations.

25        4.11.    **Tax Implications.**  Class Members should consult their personal tax advisor for

26  assistance regarding any tax ramifications of this Class Action Settlement.  Neither the PSC nor

27  Defendants and their counsel are providing any opinion or advice as to the tax consequences or

28  liabilities of Class Members as a result of any payments or benefits under this Class Action

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1    Settlement.

2        4.12.   **Settlement Value.**  This is a claims-made settlement.  The estimated maximum

3    aggregate value of the monetary component of this Class Action Settlement is $307,460,800, if

4    every Class Member participates in the Settlement by filing a timely and valid Claim.  The

5    estimated per-vehicle cost to Fiat Chrysler of the warranty components of this Class Action

6    Settlement is approximately $1,050.  This Class Action Settlement is specifically designed, in

7    conjunction with the US-CA Consent Decree, to incentivize and to facilitate the achievement of a

8    minimum claims rate of 85%, and the parties are committed to achieving the highest claims rate

9    possible in connection with this Class Action Settlement.

10        4.13.   **Deceased, Divorced, Dissolved, or Bankrupt Claim Members.**  Nothing in the

11   Class Action Agreement shall prevent Class benefits from being provided, upon appropriate

12   proof, to, or for the benefit of, an otherwise eligible Class Member, or that Class Member's estate

13   or legal representative, notwithstanding that Class Member's death, divorce, dissolution, or

14   bankruptcy (whether discharged or ongoing), in accordance with applicable law.

15   **5.      CLASS CLAIMS PROCESS AND ADMINISTRATION**

16        5.1.   **Claims Program.**  As described in detail in Exhibit 4 to this Settlement

17   Agreement, the Claims Program involves multiple steps depending on a Class Member's status.

18   The process for submitting a Claim is designed to be as simple and convenient to Class Members

19   as possible, consistent with the integrity of the Claims Program.

20        5.2.   While the Approved Emission Modification and Extended Warranty are benefits

21   available under the Class Action Settlement and the US-CA Consent Decree, all owners and

22   lessees of Subject Vehicles are entitled to an Approved Emissions Modification starting 15 days

23   after the Effective Date of the US-CA Consent Decree, regardless of whether they participate in

24   this Claims Program.  Under the US-CA Consent Decree, all owners and lessees who receive the

25   Approved Emissions Modification also are entitled to the Extended Warranty, under the terms set

26   forth in paragraph 45 of the US-CA Consent Decree and, for Class Members, the terms set forth

27   in Section 4 of the Class Action Agreement.  Nothing in the Class Action Agreement is intended

28   to impose any requirements or conditions that must be met in order for Class Members to receive

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1   the Approved Emissions Modification or the Extended Warranty.  Nothing in the Class Action

2   Agreement limits Class Members from receiving an Approved Emissions Modification from an

3   Authorized Dealer.  However, the Claims Program described in this Class Action Agreement

4   shall be the exclusive process for submitting a claim for a Class Member Payment, and neither

5   FCA nor any Authorized Dealer shall require or request an Individual Release for an Approved

6   Emissions Modifications performed on an Eligible Vehicle for which no Claim has been

7   submitted pursuant to this Class Action Agreement.

8          5.3.     The Claims Program involves six steps.  At **Step 1**, each Class Member will

9   receive information about the Approved Emissions Modification.  At **Step 2**, the Class Member

10  will submit a Claim Form online or by mail that contains certain information about his or her

11  Eligible Vehicle along with required documentation.  Eligible Former Owners and Eligible

12  Former Lessees must submit a complete and valid Claim within 90 days of the Court's Final

13  Approval Order to receive benefits under this Class Action Agreement.  At **Step 3**, the Class

14  Member's document package and information will be reviewed for completeness and eligibility.

15  At **Step 4**, FCA US will extend an offer if the Class Member is eligible.  At **Step 5** the Class

16  Member may accept the offer.  At **Step 6**, Eligible Owners and Eligible Lessees promptly will

17  receive their Class Member Payments after FCA US receives proof that they have received an

18  Approved Emissions Modification.  For Eligible Former Owners and Eligible Former Lessees,

19  the Class Member will receive their Class Member Payment after they accept the offer.

20         5.4.     **Claim Form Submissions after Completion of Approved Emissions**

21  **Modifications.** An Eligible Owner or Eligible Lessee who receives an Approved Emissions

22  Modification for his or her Eligible Vehicle prior to completing any of the six steps identified in

23  Paragraph 5.3 will still be eligible for the Class Member Payment if that Eligible Owner or

24  Eligible Lessee submits a Claim Form by the Claim Submission Deadline for Eligible Owners

25  and Eligible Lessees and completes the remaining steps in the Claims Program.

26         5.5.     **Loaner Vehicle.**  FCA US will provide a loaner vehicle at no cost to the Eligible

27  Owner/Lessee for any Approved Emissions Modification that is scheduled to take longer than

28  three hours or that is not complete within three hours of the scheduled start of the appointment.

1    Class Members who receive a loaner vehicle under this provision will have 24 hours to return the

2    vehicle from the time Fiat Chrysler notifies them that the Approved Emissions Modification is

3    complete.

4         5.6.    **Claims Administrator.**  Based on information and documents collected from

5    Class Members by FCA US, the Claims Administrator will oversee the implementation and

6    administration of the Claims Program.  The Claims Administrator's duties include, but are not

7    limited to (1) receiving and maintaining on behalf of the Court any Class Member

8    correspondence regarding requests for exclusion and/or objections to the Settlement as well as

9    correspondence sent to the Claims Review Committee; (2) forwarding written inquiries to Class

10   Counsel or its designee for a response, if warranted; and (3) preparing periodic reports on the

11   progress and status of the Claims Program, as set forth in Section 5.7.  All reasonable and

12   necessary costs of claims administration and the fees and costs of the Claims Administrator shall

13   be borne exclusively by FCA US.

14        5.7.    **Reporting.**  The Claims Administrator will prepare periodic reports on the

15   progress and status of the Claims Program, as required by paragraphs 47 and 49 of the US-CA

16   Consent Decree.  The Claims Administrator shall provide reports to the Parties, and, as required

17   by paragraphs 47 and 49 of the US-CA Consent Decree, shall do so on a monthly basis for the

18   first year after the Effective Date and quarterly thereafter, and shall provide a final report within

19   21 days of the final distribution of settlement funds to Class Members.  These reports will include

20   information sufficient to allow the Court and the Parties to assess the Claims Program's progress.

21        5.8.    **The Court's Ongoing and Exclusive Jurisdiction.**  The Court retains the

22   ongoing and exclusive jurisdiction and independent case management authority, as MDL

23   Transferee Judge and under Federal Rule of Civil Procedure 23, regarding the general operation

24   of the Claims Program and those appointed to implement and oversee it.

25   **6.    REQUESTS FOR EXCLUSION**

26        6.1.    **Manner of Opting Out.**  The Class Notice Program will provide instructions

27   regarding the procedures that must be followed to opt out of the Class pursuant to Fed. R. Civ. P.

28   23(c)(2)(B)(v).  The Parties agree that, to opt out validly from the Class, a Class Member must

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

personally sign (electronic signatures, including Docusign, are invalid and will not be considered personal signatures) and send a written request to opt out stating "I wish to exclude myself from the Class in *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, And Products Liability Litigation*, No. 17-md-02777," (or substantially similar clear and unambiguous language) to the Claims Administrator on or before the Opt-Out Deadline (postmarked no later than April 1, 2019), at an address to be provided by Fiat Chrysler.  That written request must include the Class Member's name, address, telephone number, and VIN of the Eligible Vehicle forming the basis of the Class Member's inclusion in the Class, a statement as to whether the Class Member owns/owned or leases/leased the Eligible Vehicle, and the date(s) of the Class Member's ownership or lease of the Eligible Vehicle (i.e., start date and, if applicable, end date of possession).  For any Class Member who no longer owns or leases an Eligible Vehicle, evidence that the vehicle was sold or that the lease expired or was terminated also must be provided to validly opt out of the Class Action Settlement Agreement.  The Parties retain discretion to determine whether any opt-out request substantially complies with the requirements above.  The Claims Administrator will provide copies of all opt-out requests to Lead Plaintiffs' Counsel, Fiat Chrysler's Lead Counsel, and Bosch's Lead Counsel within seven days of the receipt of each such request.  Opt-out requests that are signed by an attorney but not by the Class Member are invalid.

6.2.    **Consequences of Failure to Opt Out in a Timely and Proper Manner.**  All Class Members who do not timely and properly opt out of the Class will in all respects be bound by all terms of this Class Action Agreement and the Final Approval Order upon the Effective Date.

6.3.    **Opting Out and Objecting Are Mutually Exclusive Options.**  Any Class Member who elects to opt out pursuant to this Section may not also object to the Settlement.  Any Class Member who elects to object pursuant to Section 7 herein may not also opt out pursuant to this Section.

7.    **OBJECTIONS TO THE SETTLEMENT**

7.1.    **Manner of Objecting.**  The Class Notice Program will provide instructions

1    regarding the procedures that must be followed to object to the Settlement pursuant to Federal

2    Rule of Civil Procedure 23(e)(5).  Provided that a Class Member has not submitted a written

3    request to opt out, as set forth in Section 6, the Class Member may present written objections, if

4    any, explaining why he or she believes the Class Action Settlement should not be approved by the

5    Court as fair, reasonable, and adequate.  No later than such date as is ordered by the Court, a

6    Class Member who wishes to object to any aspect of the Class Action Settlement must file with

7    the Court, or as the Court otherwise may direct, a written statement of the objection(s).  The

8    written statement of objection(s) must include a detailed statement of the Class Member's

9    objection(s), as well as the specific reasons, if any, for each such objection, including any

10   evidence and legal authority the Class Member wishes to bring to the Court's attention.  That

11   written statement also will contain the Class Member's printed name, address, telephone number,

12   and VIN of the Eligible Vehicle forming the basis of the Class Member's inclusion in the Class,

13   the dates of the Class Member's ownership or lease of the Eligible Vehicle, a statement as to

14   whether the Class Member is an Eligible Owner, Eligible Lessee, Eligible Former Owner, or

15   Eligible Former Lessee, a statement that the Class Member has reviewed the Class definition and

16   has not opted out of the Class, and any other supporting papers, materials, or briefs the Class

17   Member wishes the Court to consider when reviewing the objection.

18         7.2.    **Objecting Through Counsel.**  A Class Member may object on his or her own

19   behalf or through a lawyer hired at that Class Member's own expense, provided the Class

20   Member has not submitted a written request to opt out, as set forth in Section 6.  The objection

21   must state whether it applies only to the objector, to a specific subset of the Class, or to the entire

22   Class, and also state with specificity the grounds for the objection.  Lawyers asserting objections

23   on behalf of Class Members must: (1) file a notice of appearance with the Court by the date set

24   forth in the Order Approving Notice and Class Certification Order, or as the Court otherwise may

25   direct; (2) file a sworn declaration attesting to his or her representation of each Class Member on

26   whose behalf the objection is being filed or file (in camera) a copy of the contract between that

27   lawyer and each such Class Member; and (3) comply with the procedures described in this

28   Section.  Lawyers asserting objections on behalf of Class Members also must file a sworn

1    declaration that specifies the number of times during the prior five-year period they have objected

2    to a class action settlement on their own behalf or on behalf of a class member.

3          7.3.    **Intent to Appear at the Fairness Hearing.**  A Class Member (or counsel

4    individually representing him or her, if any) seeking to make an appearance at the Fairness

5    Hearing must file with the Court, by the date set forth in the Order Approving Notice, a written

6    notice of his or her intent to appear at the Fairness Hearing, in accordance with the requirements

7    set forth in the Order Approving Notice, or by such time and in such manner as the Court may

8    otherwise direct.

9          7.4.    **Consequences of Failure to Object in a Timely and Proper Manner.**  Unless

10   the Court directs otherwise, any Class Member who fails to comply with the provisions of this

11   Section will waive and forfeit any and all rights he, she, or it may have to object to the Class

12   Action Settlement and/or to appear and be heard on said objection at the Fairness Hearing.

13   Failure to object waives a Class Member's right to appeal.

14   **8.       DUTIES OF THE NOTICE AND CLAIMS ADMINISTRATOR**

15         8.1.    The Notice and Claims Administrator shall be responsible for, without limitation:

16   (1) printing, mailing by First-Class U.S. Mail, postage paid, or arranging for the mailing of,

17   and/or e-mailing of, the Short Form Notice (attached as Exhibit 2); (2) updating Class Member

18   address information prior to mailing using the National Change of Address (NCOA) system; (3)

19   handling returned notice-related mail not delivered to Class Members; (4) attempting to obtain

20   updated address information for any Short Form Notices returned without a forwarding address;

21   (5) responding to requests for Long Form Notice packages; (6) establishing a post-office box for

22   the receipt of any correspondence; (7) responding to requests from Class Counsel, Fiat Chrysler's

23   Lead Counsel, or Bosch's Lead Counsel; (8) assisting in the creation of Notice-related content for

24   the Settlement Websites to which Class Members may refer for information about the Action and

25   the Class Action Settlement; (9) otherwise implementing and/or assisting with the dissemination

26   of the notice of the Class Action Settlement; (10) consulting on the Settlement Website during the

27   Settlement Benefit Period; (11) processing and issuing the Class Member Payments from the

28   Escrow Account in accordance with the allocation plan between funds contributed by FCA US

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1   and Bosch; and (12) auditing 10% of submitted Claims, chosen at random.

2       8.2.    The Notice Administrator shall be responsible for arranging for the publication of

3   notice, establishing Internet banner notifications, and for consulting on other aspects of the Class

4   Notice Program including, but not limited to, media outreach, including advertisements, in

5   national newspapers, trade publications, and the Internet. The print advertisements will be

6   substantially similar to the Short Form Notice.

7       8.3.    **Additional Notices.**  At least 180 days prior to the end of the Settlement Benefit

8   Period, FCA US shall send (or cause to be sent) a notice of reminder ("Reminder Notice") to

9   reasonably identifiable Class Members that have not submitted a claim, opted out of the Class

10  Action Settlement, or missed an applicable Claim Submission Deadline.  The Reminder Notice

11  shall inform such Class Members of the deadlines to submit a claim in order to receive benefits

12  pursuant to this Class Action and shall direct them to the Settlement Website.  At least 120 days

13  prior to the end of the Settlement Benefit Period, FCA US shall send (or cause to be sent) to those

14  Class Members who have not yet submitted a claim, opted out pursuant to this Settlement

15  Agreement, or missed an applicable Claim Submission Deadline another Reminder Notice.  The

16  Reminder Notices shall be sent by First Class U.S. Mail, postage paid, or by email.

17      8.4.    All reasonable and necessary costs of the Class Notice Program and the fees and

18  costs of the Notice Administrator shall be borne exclusively by FCA US.

19      8.5.    Within two days of the issuance of the Order Approving Notice, FCA US shall

20  transfer or pay to the Notice Administrator an amount sufficient to cover the initial costs of the

21  Class Notice Program.

22      8.6.    The Notice Administrator may retain one or more persons to assist in the

23  completion of his or her responsibilities.

24      8.7.    At the earliest practicable time, Defendants shall send to each appropriate state and

25  federal official the materials specified in 28 U.S.C. § 1715 and otherwise comply with its terms.

26  The identities of such officials and the content of the materials shall be mutually agreed to by the

27  Parties.

28      8.8.    Not later than ten (10) days before the date of the Fairness Hearing, the Notice

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1    Administrator shall file with the Court a list of those persons who have opted out or excluded

2    themselves from the Settlement.  The Notice Administrator shall file with the Court the details

3    outlining the scope, method and results of the Class Notice Program.

4         8.9.    The Claims Administrator and the Parties shall promptly after receipt provide

5    copies of any requests for exclusion, objections and/or related correspondence to each other.

6         8.10.   In accordance with paragraph 48 of the US-CA Consent Decree, this Section 8 is

7    intended to comply with paragraph 43 of the US-CA Consent Decree  (Notices and Disclosures

8    Regarding Recall Program), and to fulfill the consumer-facing obligations for Fiat Chrysler in

9    paragraph 43 of the US-CA Consent Decree.

10   **9.      RELEASE AND WAIVER**

11        9.1.    The Parties agree to the following release and waiver (as defined above, the

12   Release), which shall take effect upon entry of the Final Approval Order.  The terms of the

13   Release are a material term of the Class Action Agreement and will be reflected in the Final

14   Approval Order.

15        9.2.    **Released Parties.**  Released Parties means any person who, or entity that, is or

16   could be responsible or liable in any way whatsoever, whether directly or indirectly, for the 3.0-

17   liter Diesel Matter.  The Released Parties include, without limitation, (1) Fiat Chrysler

18   Automobiles N.V., FCA US LLC, VM Motori S.p.A, VM Motori North America, Sergio

19   Marchionne and his estate and his executors, Robert Bosch LLC and Robert Bosch GmbH, and

20   any former, present, and future owners, shareholders (direct or indirect), members (direct or

21   indirect), directors, officers, members of management or supervisory boards, employees,

22   attorneys, affiliates, parent companies (direct or indirect), subsidiaries (direct or indirect),

23   predecessors, and successors of any of the foregoing (the "Released Entities"); (2) any and all

24   contractors, subcontractors, joint venture partners, consultants, auditors, and suppliers of the

25   Released Entities; (3) any and all persons and entities indemnified by any Released Entity with

26   respect to the 3.0-liter Diesel Matter; (4) any and all other persons and entities involved in the

27   design, research, development, manufacture, assembly, testing, sale, leasing, repair, warranting,

28   marketing, advertising, public relations, promotion, or distribution of any Eligible Vehicle, even

1    if such persons are not specifically named in this paragraph, including without limitation all

2    Authorized Dealers, as well as non-authorized dealers and sellers; (5) Claims Administrator;

3    (6) Notice Administrator; (7) lenders, creditors, financial institutions, or any other parties that

4    financed any purchase or lease of an Eligible Vehicle; and (8) for each of the foregoing, their

5    respective former, present, and future affiliates, parent companies, subsidiaries, predecessors,

6    successors, shareholders, indemnitors, subrogees, spouses, joint ventures, general or limited

7    partners, attorneys, assigns, principals, officers, directors, members of management or

8    supervisory boards, employees, members, agents, representatives, trustees, insurers, reinsurers,

9    heirs, beneficiaries, wards, estates, executors, administrators, receivers, conservators, personal

10   representatives, divisions, dealers, and suppliers.

11            9.3.    **Class Release.**  In consideration for the Settlement, Class Members, on behalf of

12   themselves and their agents, heirs, executors and administrators, successors, assigns, insurers,

13   attorneys (including any attorney engaged by Class Members who is not Class Counsel),

14   representatives, shareholders, owners associations, and any other legal or natural persons who

15   may claim by, through, or under them (the "Releasing Parties"), fully, finally, irrevocably, and

16   forever release, waive, discharge, relinquish, settle, and acquit any and all claims, demands,

17   actions, or causes of action, whether known or unknown, that they may have, purport to have, or

18   may have hereafter against any Released Party, as defined above, arising out of or in any way

19   related to the 3.0-liter Diesel Matter.  This Release applies to any and all claims, demands,

20   actions, or causes of action of any kind or nature whatsoever, whether in law or in equity,

21   contractual, quasi-contractual or statutory, known or unknown, direct, indirect or consequential,

22   liquidated or unliquidated, past, present or future, foreseen or unforeseen, developed or

23   undeveloped, contingent or non-contingent, suspected or unsuspected, whether or not concealed

24   or hidden, arising from or in any way related to the 3.0-liter Diesel Matter, including without

25   limitation (1) any claims that were or could have been asserted in the Action; and (2) any claims

26   for fines, penalties, economic damages, punitive damages, exemplary damages, liens, injunctive

27   relief, attorneys' fees (except as provided in Section 11 of this Class Action Agreement), expert,

28   consultant, or other litigation fees or costs other than fees and costs awarded by the Court in

connection with this Settlement or to attorneys other than Class Counsel, or any other liabilities, that were or could have been asserted in any civil, administrative, or other proceeding, including arbitration (the "Released Claims").  This Release applies without limitation to any and all such claims, demands, actions, or causes of action regardless of the legal or equitable theory or nature under which they are based or advanced including without limitation legal and/or equitable theories under any federal, state, provincial, local, tribal, administrative, or international law, or statute, ordinance, code, regulation, contract, common law, equity, or any other source, and whether based in strict liability, negligence, gross negligence, punitive damages, nuisance, trespass, breach of warranty, misrepresentation, breach of contract, fraud, or any other legal or equitable theory, whether existing under the laws of the United States, a State, territory, or possession of the United States, or of any other foreign or domestic state, territory, or other legal or governmental body, whether existing now or arising in the future, that arise from or in any way relate to the 3.0-liter Diesel Matter.  Notwithstanding the foregoing, this Agreement does not release any claims for wrongful death or personal injury.

9.4.    **Possible Future Claims.**  For the avoidance of doubt, Class Members expressly understand and acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, related to the 3.0-liter Diesel Matter, the Action and/or the Release herein.  Nevertheless, it is the intention of Class Counsel and the Settlement Class Representatives in executing this Class Action Agreement to fully, finally, irrevocably, and forever release, waive, discharge, relinquish, settle, and acquit all such matters, and all claims relating thereto which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) with respect to the 3.0-liter Diesel Matter.

9.5.    **Release of "Holder Rule" Claims.**  In exchange for the Class Action Settlement compensation and remedies described in Section 4 and Exhibit 1, Class Members shall execute a release releasing their potential claims under the Trade Regulation Rule Concerning the Preservation of Consumers' Claims and Defenses, 16 C.F.R. § 433.2 (the "Holder Rule"), relating to the 3.0-liter Diesel Matter.

9.6.     **Waiver of California Civil Code Section 1542 and Analogous Provisions.**
Settlement Class Representatives expressly understand and acknowledge, and Class Members
will be deemed to understand and acknowledge Section 1542 of the California Civil Code, which
provides:  "**A general release does not extend to claims which the creditor does not know or
suspect to exist in his or her favor at the time of executing the release, which if known by
him or her must have materially affected his or her settlement with the debtor.**"  Each
Settlement Class Representative expressly acknowledges that he, she, or it has been advised by
Class Counsel of the contents and effect of Section 1542 and that he, she, or it has considered the
possibility that the number or magnitude of all claims may not currently be known.  To ensure
that this Release is interpreted fully in accordance with its terms, Class Members expressly waive
and relinquish any and all rights and benefits that they may have under Section 1542 to the extent
that such Section may be applicable to the Release.  Class Members likewise expressly waive and
relinquish any rights or benefits of any law of any state or territory of the United States, federal
law or principle of common law, or of international or foreign law, which is similar, comparable,
analogous, or equivalent to Section 1542 of the California Code to the extent that such laws or
principles may be applicable to the Release.

9.7.     **Individual Release.**  Each Class Member who receives a Class Member Payment
shall be required to execute an Individual Release, in the form attached as Exhibit 5, as a
precondition to receiving such payment.  Consistent with the Release provided in this Agreement,
the Individual Release will provide that the Class Member releases all of the Released Parties
from any and all present and future claims (as described in Section 9) arising out of or related to
the 3.0-liter Diesel Matter.  The Individual Release shall remain effective even if the Final
Approval Order is reversed and/or vacated on appeal, or if this Class Action Agreement is
abrogated or otherwise voided in whole or in part.

9.8.     **Actions or Proceedings Involving Released Claims.**  Class Members who do not
opt out expressly agree that this Release, and the Final Approval Order, is, will be, and may be
raised as a complete defense to, and will preclude, any action or proceeding specified in, or
involving claims encompassed by, this Release.  Class Members who do not opt out shall not now

or hereafter institute, maintain, prosecute, assert, and/or cooperate in the institution,

commencement, filing or prosecution of any suit, action, and/or other proceeding, against the

Released Parties with respect to the claims, causes of action and/or any other matters subject to

this Release.  To the extent that they have initiated, or caused to be initiated, any suit, action, or

proceeding not already encompassed by the Action, Class Members who do not opt out shall

cause such suit, action, or proceeding to be dismissed with prejudice.  If a Class Member who

does not opt out commences, files, initiates, or institutes any new legal action or other proceeding

for any Released Claim against any Released Party in any federal or state court, arbitral tribunal,

or administrative or other forum, (1) such legal action or other proceeding shall be dismissed with

prejudice and at that Class Member's cost; and (2) the respective Released Party shall be entitled

to recover any and all reasonable related costs and expenses from that Class Member arising as a

result of that Class Member's breach of his, her, or its obligations under this Release.  Within five

business days of the Post-Appeal Date, Class Counsel will dismiss the Complaint with prejudice.

9.9.    **Ownership of Released Claims.**  Settlement Class Representatives represent and

warrant that they are the sole and exclusive owners of any and all claims that they personally are

releasing under this Class Action Agreement.  Settlement Class Representatives further

acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold,

transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way

whatsoever pertaining to the 3.0-liter Diesel Matter, including without limitation, any claim for

benefits, proceeds or value under the Action, and that Settlement Class Representatives are not

aware of anyone other than themselves claiming any interest, in whole or in part, in any benefits,

proceeds or values to which Settlement Class Representatives may be entitled as a result of the

3.0-liter Diesel Matter.  Class Members submitting a Claim Form shall represent and warrant

therein that they are the sole and exclusive owner of all claims that they personally are releasing

under the Class Action Agreement and that they have not assigned, pledged, or in any manner

whatsoever, sold, transferred or encumbered any right, title, interest or claim arising out

of or in any way whatsoever pertaining to the Actions, including without limitation, any claim for

benefits, proceeds or value under the Actions, and that such Class Members are not aware of

anyone other than themselves claiming any interest, in whole or in part, in any benefits, proceeds or values to which those Class Members may be entitled as a result of the 3.0-liter Diesel Matter.

9.10.    **Total Satisfaction of Released Claims.**  Any benefits pursuant to the Class Action Agreement are in full, complete, and total satisfaction of all of the Released Claims against the Released Parties.  Such benefits are sufficient and adequate consideration for each and every term of this Release, and this Release shall be irrevocably binding upon Settlement Class Representatives and Class Members who do not opt out of the Class.

9.11.    **Release Not Conditioned on Claim or Payment.**  The Release shall be effective with respect to all Releasing Parties, including all Class Members who do not opt out, regardless of whether those Class Members ultimately submit a Claim under this Class Action Agreement.

9.12.    **Basis for Entering Release.**  Class Counsel acknowledge that they have conducted sufficient independent investigation and discovery to enter into this Class Action Agreement and that they execute this Class Action Agreement freely, voluntarily, and without being pressured or influenced by, or relying on any statements, representations, promises, or inducements made by the Released Parties or any person or entity representing the Released Parties, other than as set forth in this Class Action Agreement.  Settlement Class Representatives acknowledge, agree, and specifically represent and warrant that they have discussed with Class Counsel the terms of this Class Action Agreement and have received legal advice with respect to the advisability of entering into this Class Action Agreement and the Release, and the legal effect of this Class Action Agreement and the Release.  The representations and warranties made throughout the Class Action Agreement shall survive the execution of the Class Action Agreement and shall be binding upon the respective heirs, representatives, successors and assigns of the Parties.

9.13.    **Material Term.**  Settlement Class Representatives and Class Counsel hereby agree and acknowledge that this Section 9 in its entirety was separately bargained for and constitutes a key, material term of the Class Action Agreement that shall be reflected in the Final Approval Order.

9.14.    **Reservation of Claims.**  This Class Action Agreement shall resolve the claims of

1  Class Members who do not opt out only as they relate to the 3.0-liter Diesel Matter.  The Parties

2  reserve all rights to litigate liability and equitable relief of any sort for any subset of vehicles,

3  purchasers, or lessees not expressly covered by this Class Action Agreement.

4      9.15.   **Released Parties' Releases of Settlement Class Representatives, the Class, and**

5  **Counsel.**  Upon the Effective Date, Released Parties absolutely and unconditionally release and

6  forever discharge the Settlement Class Representatives, Class Members, Defendants' counsel and

7  Class Counsel from any and all claims relating to the institution or prosecution of the Action.

8      9.16.   **Jurisdiction.**  The Court shall retain exclusive and continuing jurisdiction over all

9  Parties, the Action, and this Class Action Agreement to resolve any dispute that may arise

10  regarding this Class Action Agreement or in relation to this Action, including any dispute

11  regarding validity, performance, interpretation, administration, enforcement, enforceability, or

12  termination of the Class Action Agreement and no Party shall oppose the reopening and

13  reinstatement of the Action on the MDL Court's active docket for the purposes of effecting this

14  Section.

15  **10.   ESCROW ACCOUNT**

16      10.1.   Within ten business days after the Court enters the Final Approval Order, FCA US

17  and Bosch shall each fund the Escrow Account with their respective "Funding Amount," which

18  funds shall be used, as necessary, to compensate Class Members who submit valid Claims

19  pursuant to this Class Action Agreement.  The initial Funding Amount shall be $45 million from

20  FCA US and $5 million from Bosch.  If and when the funding level of the Escrow Account falls

21  below 15% of the outstanding remaining liability to Class Members under this Class Action

22  Agreement, the Escrow Agent shall notify FCA US and Bosch in writing.  Bosch shall, within ten

23  business days thereafter, and FCA US shall, within seven business days, deposit such funds in the

24  Escrow Account as are necessary to bring the balance of the Escrow Account back to no less than

25  15% of their respective outstanding remaining liabilities to Class Members, provided, however,

26  that Bosch shall in no event be required to deposit more than a total of $27.5 million in the

27  Escrow Account, and provided further that the minimum balance will in no event exceed the

28  remaining maximum compensation due to all Class Members.

10.2.    Within thirty days of the conclusion of the Settlement Benefit Period, any funds in the Escrow Account (if any), including all interest accrued, shall be returned to FCA US and to Bosch pro rata to the amount of their respective deposits in the Escrow Account.

10.3.    In the event that the Class Action Settlement is terminated or invalidated for any reason prior to the conclusion of the Settlement Benefit Period, any funds in the Escrow Account, including all interest accrued, shall be returned to FCA US and to Bosch pro rata to the amount of their respective deposits in the Escrow Account.

## 11.    ATTORNEYS' FEES AND EXPENSES

11.1.    FCA US and Bosch agree to pay reasonable attorneys' fees and expenses to Class Counsel for work performed pursuant to Pretrial Order No. 4: Protocol for Common Benefit Work and Expenses by Class Counsel and other attorneys designated by Class Counsel to perform work in connection with the Action in an amount to be negotiated by the Parties and that must be approved by the Court.  Defendants do not agree to pay fees or expenses for any work that is not performed pursuant to Pretrial Order No. 4 by Class Counsel and other attorneys designated by Class Counsel to perform work in connection with the Action, and this Class Action Agreement expressly releases Defendants from any such payments that otherwise may be due by operation of law or otherwise.  Defendants and Class Counsel represent that they have not discussed the amount of fees and expenses to be paid prior to agreement on the material terms of this Class Action Agreement.  Class Counsel and counsel for FCA US will attempt to negotiate the amount of attorneys' fees and expenses to be paid by FCA US after the execution of this Class Action Agreement.  Class Counsel and counsel for Bosch will also attempt to negotiate the amount of attorneys' fees and expenses to be paid by Bosch after the execution of this Class Action Agreement.  If the Parties reach an agreement about the amount of attorneys' fees and expenses for work performed pursuant to Pretrial Order No. 4, Class Counsel will submit the negotiated amount to the Court for approval, and Defendants will wire to an account specified by Lead Plaintiffs' Counsel all attorneys' fees and expenses approved by the Court within three days of the Court's order approving such fees and expenses.  The Parties may agree upon a reasonable extension to the three-day deadline as necessary.  If the Parties do not reach an agreement as to

1   the amount of attorneys' fees and expenses, the Parties will litigate the fee issues, and each Party

2   will present its respective position to the Court for determination, but the Parties must mediate the

3   all fee issues before the Settlement Master before litigating.  If the Settlement Master fee

4   mediation process does not result in an agreement, the litigation of the fee issues will be subject

5   to the Parties' agreement that:  (1) attorneys' fees and expenses will be paid by FCA US and

6   Bosch in addition to the compensation provided to Class Members under this Class Action

7   Agreement; (2) each Party will be free to argue for what it believes is a reasonable fee; (3) FCA

8   US, Bosch, and Class Counsel will request that the Court issue an Order setting forth the amount

9   to be paid in attorneys' fees and expenses to be paid by FCA US and Bosch in this action, and

10  providing that Class Counsel will not be permitted to seek additional fees and expenses after the

11  Court makes its award; and (4) the Parties shall have the right to appeal the Court's determination

12  as to the amount of attorneys' fees and expenses.  Fiat Chrysler and Bosch reserve all rights to

13  object to an award of attorney's fees and/or expenses beyond what they believe to be reasonable.

14  No attorneys other than Class Counsel or other attorneys authorized by Class Counsel to perform

15  work in connection with this Action shall receive fees or expenses from Defendants under this

16  Class Agreement or any fee-shifting statute.

17          11.2.   **No Credit for Attorneys' Fees or Costs.**  To the extent FCA US elects or is

18  ordered to pay private attorneys' fees or costs, FCA US will not receive credit for such payments

19  against obligations to Class Members under this Class Action Agreement and the Final Approval

20  Order.  Defendants reserve the right to challenge attorneys' fees or costs to the extent the request

21  for an award of fees and costs exceeds the fees and costs that FCA US has agreed to pay.

22  **12.     PROPOSED SCHEDULE FOR APPROVAL OF SETTLEMENT**

23          12.1.   **Order Approving Notice.**  As set forth herein, on January 10, 2019, the Parties

24  shall file with the Court a Motion for an Order Approving Notice.

25          12.2.   **Final Settlement Approval Order and Judgment.**  On or before February 25,

26  2019, or any subsequently mutually agreed upon date, Class Counsel shall file with the Court a

27  motion seeking a Final Judgment Approving and Providing for the Enforcement of the Class

28  Action Settlement.

12.3.    **Proposed Schedule.**  A comprehensive potential schedule for the approval of this Settlement is set forth below, subject, of course, to the views of the Court.  The Parties will use their best efforts to advance the Settlement along the lines outlined in the proposed schedule set forth below, recognizing it is subject to change, as required by Court order and/or agreed to by the Parties.

| Date | Event |
|---|---|
| January 10, 2019 | Settlement Class Representatives file Motion for an Order Approving Notice |
| January 23, 2019 | Hearing on Motion for an Order Approving Notice [Remainder of schedule assumes entry of Order Approving Notice on this date] |
| January 24, 2019 | Class Notice Program begins |
| February 25, 2019 | Motions for Final Approval and Attorneys' Fees and Expenses filed |
| April 1, 2019 | Objection and Opt-Out Deadline |
| April 22, 2019 | Reply Memoranda in Support of Final Approval and Fee/Expense Application filed |
| April 29, 2019 – May 3, 2019 | Final Approval Hearing. While the timing and outcome of every determination is at the Court's discretion, the Parties to this Class Action Agreement request and anticipate that the Court would enter the US-CA Consent Decree at the same time as the Final Approval Order. |
| Effective Date | Claims Period Begins |

## 13.    AGREEMENT TO COOPERATE TO EFFECTUATE SETTLEMENT

13.1.    Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Class Action Agreement. The persons signing this Class Action Agreement on behalf of each Party warrants that he or she is authorized to sign this Class Action Agreement on behalf of that Party.

13.2.    The Parties and their respective counsel will cooperate with each other, act in good faith, and use their best efforts to effect the implementation of the Class Action Agreement and advance the Settlement Claims Program.  In the event the Parties are unable to reach agreement

1    on the form or content of any document needed to implement the Class Action Agreement, or on

2    any supplemental provisions that may become necessary to effectuate the terms of this Class

3    Action Agreement, the Parties may seek the assistance of the Settlement Master or the Court to

4    resolve such disagreement.

5          13.3.   The Parties further agree to make all reasonable efforts to ensure the timely and

6    expeditious administration and implementation of the Class Action Agreement and to minimize

7    the costs and expenses incurred therein.

8    **14.     MODIFICATION OR TERMINATION OF THIS CLASS ACTION AGREEMENT**

9          14.1.   The terms and provisions of this Class Action Agreement may be amended,

10   modified, or expanded by written agreement of the Parties and approval of the Court; provided,

11   however, that after entry of the Final Approval Order, the Parties may by written agreement effect

12   such amendments, modifications, or expansions of this Class Action Agreement and its

13   implementing documents (including all exhibits hereto) without further notice to the Class or

14   approval by the Court if such changes are consistent with the Court's Final Approval Order and

15   do not limit the rights of Class Members under this Class Action Agreement.

16         14.2.   Any unintended conflicts between the Class Action Agreement and the US-CA

17   Consent Decree shall not be held against any of the Parties, but shall instead be resolved by

18   mutual agreement of the Parties, with the aid of the Settlement Master and, if necessary, the

19   Court.

20         14.3.   This Class Action Agreement shall terminate at the discretion of either Defendants

21   or the Settlement Class Representatives, through Class Counsel, if: (1) the Court, or any appellate

22   court(s), rejects, modifies, or denies approval of any portion of this Class Action Agreement or

23   the proposed Settlement that the terminating Party in its (or their) sole judgment and discretion

24   reasonably determine(s) is material, including, without limitation, the terms of relief, the findings,

25   or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or

26   the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely

27   affirm, or alters, narrows or expands, any portion of the Final Approval Order, or any of the

28   Court's findings of fact or conclusions of law, that the terminating Party in its (or their) sole

1    judgment and discretion reasonably determine(s) is material.  The terminating Party must exercise

2    the option to withdraw from and terminate this Class Action Agreement, as provided in this

3    Section 14, by a signed writing served on the other Parties no later than twenty days after

4    receiving notice of the event prompting the termination.  The Parties will be returned to their

5    positions status quo ante.

6         14.4.   If an option to withdraw from and terminate this Class Action Agreement arises

7    under Section 14.3 above, neither Defendants nor Settlement Class Representatives are required

8    for any reason or under any circumstance to exercise that option and any exercise of that option

9    shall be in good faith.

10        14.5.   If, but only if, this Class Action Agreement is terminated pursuant to Section 14.3,

11   above, then:

12              14.5.1.   This Class Action Agreement shall be null and void and shall have no

13                         force or effect, and no Party to this Class Action Agreement shall be

14                         bound by any of its terms, except for the terms of Section 14.3 herein;

15              14.5.2.   The Parties will petition the Court to have any stay orders entered

16                         pursuant to this Class Action Agreement lifted;

17              14.5.3.   All of the provisions of this Class Action Agreement, and all negotiations,

18                         statements, and proceedings relating to it, shall be without prejudice to

19                         the rights of Defendants, Settlement Class Representatives, or any Class

20                         Member, all of whom shall be restored to their respective positions

21                         existing immediately before the execution of this Class Action

22                         Agreement, except that the Parties shall cooperate in requesting that the

23                         Court set a new scheduling order such that no Party's substantive or

24                         procedural rights are prejudiced by the settlement negotiations and

25                         proceedings;

26              14.5.4.   Released Parties expressly and affirmatively reserve all defenses,

27                         arguments, and motions as to all claims that have been or might later be

28

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1          asserted in the Action, including, without limitation, the argument that the

2          Action may not be litigated as a class action;

3     14.5.5.   Settlement Class Representatives and all other Class Members, on behalf

4          of themselves and their heirs, assigns, executors, administrators,

5          predecessors, and successors, expressly and affirmatively reserve and do

6          not waive all motions as to, and arguments in support of, all claims,

7          causes of action or remedies that have been or might later be asserted in

8          the Action including, without limitation, any argument concerning class

9          certification, and treble or other damages;

10    14.5.6.   Defendants expressly and affirmatively reserve and do not waive all

11          motions and positions as to, and arguments in support of, all defenses to

12          the causes of action or remedies that have been sought or might be later

13          asserted in the Action, including without limitation, any argument or

14          position opposing class certification, liability, damages, or injunctive

15          relief;

16    14.5.7.   Neither this Class Action Agreement, the fact of its having been entered

17          into, nor the negotiations leading to it shall be admissible or entered into

18          evidence for any purpose whatsoever;

19    14.5.8.   Any settlement-related order(s) or judgment(s) entered in this Action after

20          the date of execution of this Class Action Agreement shall be deemed

21          vacated and shall be without any force or effect;

22    14.5.9.   FCA US shall bear all reasonable and necessary costs incurred by the

23          Claims Administrator and Notice Administrator in connection with the

24          implementation of this Class Action Settlement up until its termination.

25          Neither the Settlement Class Representatives nor Class Counsel shall be

26          responsible for any such settlement-related costs; and

27

28

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

14.5.10. Within five (5) business days, any funds in the Escrow Account,
including any interest accrued, shall revert to FCA US and to Bosch pro
rata to the amount of their respective deposits in the Escrow Account.

14.6.    Notwithstanding the terms of Sections 14.5.1 through 14.5.10 above, if a Class Member has (1) received compensation under the Class Action Agreement prior to its termination or invalidation and (2) executed an Individual Release, such a Class Member and Defendants shall be bound by the terms of the Individual Release, which terms shall survive termination or invalidation of the Class Action Agreement.

## 15.    REPRESENTATIONS AND WARRANTIES

15.1.    Class Counsel represents that: (1) they are authorized by the Settlement Class Representatives to enter into this Class Action Agreement with respect to the claims asserted in the Action and any other claims covered by the Release; and (2) they are seeking to protect the interests of the Class.

15.2.    Class Counsel further represents that the Settlement Class Representatives: (1) have agreed to serve as representatives of the Class proposed to be certified herein; (2) are willing, able, and ready to perform all of the duties and obligations of representatives of the Class; (3) have read the pleadings in the Action, including the Complaint, or have had the contents of such pleadings described to them; (4) have consulted with Class Counsel about the obligations imposed on representatives of the Class; (5) understand that they are entitled only to the rights and remedies of Class Members under this Class Action Agreement and not to any additional compensation by virtue of their status as Settlement Class Representatives, except that Class Counsel may seek reasonable and appropriate service awards for Settlement Class Representatives up to $4,500 from FCA US and $500 from Bosch, to be paid in addition to Class benefits, subject to Court approval; and (6) shall remain and serve as representatives of the Class until the terms of this Class Action Agreement are effectuated, this Class Action Agreement is terminated in accordance with its terms, or the Court at any time determines that said Settlement Class Representatives cannot represent the Class.  Defendants shall retain the right to object to the payment of any service awards, including the amount thereof (even an amount at or below the

amount set forth above).

15.3.   Fiat Chrysler represents and warrants that the individual(s) executing this Class Action Agreement are authorized to enter into this Class Action Agreement on behalf of Fiat Chrysler.

15.4.   Bosch represents and warrants that the individual(s) executing this Class Action Agreement are authorized to enter into this Class Action Agreement on behalf of Bosch.

15.5.   The Parties acknowledge and agree that no opinion concerning the tax consequences of the proposed Settlement to Class Members is given or will be given by the Parties, nor are any representations or warranties in this regard made by virtue of this Class Action Agreement.  In addition, the Parties acknowledge and agree that no tax ruling from any governmental tax authority in relation to a Class Member's tax consequences will be requested by Defendants.  The Parties further acknowledge and agree that nothing in this Agreement should be relied upon by any Class Member as the provision of tax advice.  Each Class Member's tax consequences or liabilities, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that each Class Member's federal, state, or foreign tax consequences or liabilities may vary depending on the particular circumstances of each individual Class Member.  Class Members shall hold Defendants and their counsel harmless from any federal, state, or foreign tax assessments, interest, and/or penalties that result for any amounts paid or benefits provided under this Agreement, and Defendants shall not be liable for the payment of any additional amounts now or in the future for any amount related to a Class Member's tax consequences.

**16.   GENERAL MATTERS AND RESERVATIONS**

16.1.   This Class Action Agreement will be binding upon, and inure to the benefit of, the successors, transferees, and assigns of Defendants, the Settlement Class Representatives, and Class Members.

16.2.   The Parties agree and acknowledge that (a) no government or governmental entity is a party to the Action or to this Class Action Agreement; (b) each Party is entering into this Class Action Agreement of its own volition, and no Party is entering into this Class Action

1    Agreement at the direction of a government or governmental entity, or otherwise compelled by a

2    government or governmental entity to do so; and (c) this Class Action Agreement is for the

3    purpose of restitution, compensation or/and remediation for harm or damage alleged in the

4    Complaint.

5          16.3.    Fiat Chrysler's obligation to implement the Repair Program described in this Class

6    Action Agreement is and shall be contingent upon each of the following:

7                16.3.1.  Entry by the Court of the Final Approval Order approving the Class

8                         Action Settlement;

9                16.3.2.  The occurrence of the Effective Date; and

10               16.3.3.  The satisfaction of any other conditions set forth in this Class Action

11                        Agreement.

12         16.4.    The Parties and their counsel agree to keep the existence and contents of this Class

13   Action Agreement confidential until the date on which the Motion for an Order Approving Notice

14   is filed; provided, however, that this Section shall not prevent Defendants from disclosing such

15   information, prior to the date on which the Motion for an Order Approving Notice is filed, to state

16   and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or

17   lawyers.  The Parties and their counsel may also disclose the existence and contents of this Class

18   Action Agreement to persons or entities (such as experts, courts, co-counsel, and/or

19   administrators) to whom the Parties agree disclosure must be made in order to effectuate the

20   terms and conditions of this Class Action Agreement.

21         16.5.    Settlement Class Representatives and Class Counsel agree that confidential

22   information made available to them solely through the settlement process was made available on

23   the condition that it not be disclosed to third parties (other than experts or consultants retained by

24   Settlement Class Representatives in connection with the Action).  Nevertheless, nothing

25   contained herein shall prohibit Settlement Class Representatives from seeking certain confidential

26   information pertinent to this Class Action Agreement through informal confirmatory discovery,

27   even if not previously requested through formal discovery.

28         16.6.    Information provided by Defendants, Defendants' counsel, and/or the Settlement

Master to Settlement Class Representatives, Class Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the negotiation and implementation of this Class Action Agreement, includes trade secrets and highly confidential and proprietary business information and shall be deemed "Highly Confidential" pursuant to the protective orders that have been or will be entered in the Action, and shall be subject to all of the provisions thereof.  Any materials inadvertently produced shall, upon any Defendants' request, be promptly returned to the requesting Defendants' counsel, as appropriate, and there shall be no implied or express waiver of any privileges, rights and defenses.

16.7.    This Class Action Agreement, complete with its exhibits and all documents filed with the Court, sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel, Fiat Chrysler's Lead Counsel, and Bosch's Lead Counsel.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings regarding vehicles not expressed in this Class Action Agreement or the documents filed with the Court exist among or between them, and that in deciding to enter into this Class Action Agreement, they have relied solely upon their own judgment and knowledge.  This Class Action Agreement and the accompanying documents filed with the Court supersede any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Class Action Agreement.

16.8.    This Class Action Agreement and any amendments thereto, and any dispute arising out of or related to this Class Action Agreement, shall be governed by and interpreted according to the Federal Rules of Civil Procedure and applicable jurisprudence relating thereto, and the laws of the State of California notwithstanding its conflict of law provisions.

16.9.    Any disagreement and/or action to enforce this Class Action Agreement shall be commenced and maintained only in the United States District Court for the Northern District of California.

16.10.  Whenever this Class Action Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day

1   (excluding Saturdays, Sundays and Federal Holidays) express delivery service as follows:

2       If to Fiat Chrysler, then to:

3           Robert J. Giuffra, Jr.
            SULLIVAN & CROMWELL LLP
4           125 Broad Street
            New York, New York 10004
5           Email:  giuffrar@sullcrom.com

6       If to Bosch, then to:

7           Matthew D. Slater.
            CLEARY GOTTLIEB STEEN & HAMILTON LLP
8           2112 Pennsylvania Ave., NW
            Washington, DC 20037
9           Email:  mslater@cgsh.com

10      If to the Class, then to:

11          Elizabeth J. Cabraser
            LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
12          275 Battery Street, 29th Floor
            San Francisco, CA  94111
13          Email:  ecabraser@lchb.com

14      16.11.  All time periods in this Class Action Agreement shall be computed in calendar

15  days unless otherwise expressly provided.  In computing any period of time in this Class Action

16  Agreement or by order of the Court, the day of the act or event shall not be included.  The last day

17  of the period shall be included, unless it is a Saturday, a Sunday or a Federal Holiday, or, when

18  the act to be done is the filing of a paper in court, a day on which the court is closed, in which

19  case the period shall run until the end of the next day that is not one of the aforementioned days.

20  As used in this Class Action Agreement, "Federal Holiday" includes holidays designated in Fed.

21  R. Civ. P. 6(a) or by the Clerk of the United States District Court for the Northern District of

22  California.

23      16.12.  The Parties reserve the right, subject to the Court's approval, to agree to any

24  reasonable extensions of time that might be necessary to carry out any of the provisions of this

25  Class Action Agreement.

26      16.13.  The Class, Settlement Class Representatives, Class Counsel, Fiat Chrysler, Fiat

27  Chrysler's Lead Counsel, Bosch, and/or Bosch's Lead Counsel shall not be deemed to be the

28  drafter of this Class Action Agreement or of any particular provision, nor shall they argue that

any particular provision should be construed against its drafter.  All Parties agree that this Class

Action Agreement was drafted by counsel for the Parties during extensive arm's-length

negotiations.  No parol or other evidence may be offered to explain, construe, contradict, or

clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this

Class Action Agreement was made or executed.

16.14.  The Parties expressly acknowledge and agree that this Class Action Agreement

and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations,

related notes, and correspondence, constitute an offer of compromise and a compromise within

the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state or

territory.

16.15.  The Settlement Class Representatives expressly affirm that the allegations

contained in the Complaint were made in good faith, but consider it desirable for the Action to be

settled and dismissed as to the Eligible Vehicles only because of the substantial benefits that the

Settlement will provide to Class Members.

16.16.  The Parties agree that the Class Action Agreement was reached voluntarily after

consultation with competent legal counsel.

16.17.  Neither this Class Action Agreement nor the Repair Program, nor any act

performed or document executed pursuant to or in furtherance of this Class Action Agreement or

the Repair Program is or may be deemed to be or may be used or construed as an admission of, or

evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any

Released Parties; or is or may be deemed to be or may be used or construed as an admission of, or

evidence of, any fault or omission of any Released Parties in any civil, criminal, regulatory, or

administrative proceeding in any court, administrative agency or other tribunal.  Nor shall this

Class Action Agreement or the Repair Program be deemed an admission by any Party as to the

merits of any claim or defense.

16.18.  Nothing in this Class Action Agreement changes any rights the Class or any Class

Member or third party may have to challenge or otherwise assert a claim against Fiat Chrysler

arising from (1) a violation by Fiat Chrysler of the Clean Air Act, the California Health and

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1  Safety Code, or applicable regulations thereunder in connection with the certification of the

2  Approved Emissions Modification; or (2) under the Extended Warranty.

3      16.19.  Any of the Released Parties may file this Class Action Agreement and/or the Final

4  Approval Order in any action that may be brought against it in order to support any defense or

5  counterclaim, including without limitation those based on principles of *res judicata*, collateral

6  estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim

7  preclusion or issue preclusion or similar defense or counterclaim.

8      16.20.  The Parties, their successors and assigns, and their counsel undertake to implement

9  the terms of this Class Action Agreement in good faith, and to use good faith in resolving any

10 disputes that may arise in the implementation of the terms of this Class Action Agreement.

11     16.21.  The waiver by one Party of any breach of this Class Action Agreement by another

12 Party shall not be deemed a waiver of any prior or subsequent breach of this Class Action

13 Agreement.

14     16.22.  If one Party to this Class Action Agreement considers another Party to be in

15 breach of its obligations under this Class Action Agreement, that Party must provide the

16 breaching Party with written notice of the alleged breach and provide a reasonable opportunity to

17 cure the breach before taking any action to enforce any rights under this Class Action Agreement.

18     16.23.  The Parties, their successors and assigns, and their counsel agree to cooperate fully

19 with one another in seeking Court approval of this Class Action Agreement and to use their best

20 efforts to implement this Class Action Agreement and the proposed Repair Program.

21     16.24.  This Class Action Agreement may be signed with an electronic or facsimile

22 signature and in counterparts, each of which shall constitute a duplicate original.

23     16.25.  In the event any one or more of the provisions contained in this Class Action

24 Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect,

25 such invalidity, illegality, or unenforceability shall not affect any other provision if Fiat

26 Chrysler's Lead Counsel on behalf of Fiat Chrysler, Bosch's Lead Counsel on behalf of Bosch,

27 and Class Counsel, on behalf of Settlement Class Representatives and Class Members, mutually

28 agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been

1    included in this Class Action Agreement.  Any such agreement shall be reviewed and approved

2    by the Court before it becomes effective.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    LEAD COUNSEL FOR PLAINTIFFS:

2

3

4    Date:  January 10, 2019

5                                              ELIZABETH J. CABRASER
                                               Lieff Cabraser Heimann & Bernstein, LLP
6                                              275 Battery Street, 29th Floor
                                               San Francisco, CA  94111-3339
7                                              ecabraser@lchb.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 52 -

1  COUNSEL FOR FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V., V.M. MOTORI
2  S.P.A., and V.M. NORTH AMERICA, INC.:

3

4

   Date:  January 10, 2019
5
                                    ROBERT J. GIUFFRA, JR.
6                                   WILLIAM B. MONAHAN
                                    THOMAS C. WHITE
7                                   C. MEGAN BRADLEY
                                    Sullivan & Cromwell LLP
8                                   125 Broad Street
                                    New York, New York 10004
9                                   giuffrar@sullcrom.com
                                    monahanw@sullcrom.com
10                                  whitet@sullcrom.com
                                    bradleyc@sullcrom.com
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1

COUNSEL FOR ROBERT BOSCH GMBH AND ROBERT BOSCH LLC:

2

3

4    Date:  January 10, 2019

5                                              Cleary Gottlieb Steen & Hamilton LLP
                                               2112 Pennsylvania Ave., NW
6                                              Washington, DC 20037
                                               mslater@cgsh.com
7

MATTHEW D. SLATER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE
3:17-MD-02777-EMC

1  FOR ROBERT BOSCH GMBH:

2

3  Date: January 10, 2019

SEBASTIAN BIEDENKOPF
4  General Counsel, Robert Bosch GmbH

5  Robert-Bosch-Platz 1
   70839 Gerlingen-Schillerhöhe
6  Germany

7

8

9

10

11  Date: January 10, 2019

MARTIN REUTER
12  Vice President Corporate Legal

13  Robert-Bosch-Platz 1
   70839 Gerlingen-Schillerhöhe
14  Germany

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    FOR ROBERT BOSCH LLC:

2

3    Date: January 16, 2019

4                                              ERIK DYHRKOPP
                                               General Counsel Americas

5
                                               38000 Hills Tech Drive
6                                              Farmington Hills, Michigan 48331

7

8

9

10   Date: January 10, 2019

11                                             MAXIMILIANE STRAUB
                                               Chief Financial Officer & Executive Vice
12                                             President—Finance, Controlling &
                                               Administration
13

14                                             38000 Hills Tech Drive
                                               Farmington Hills. Michigan 48331
15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                               CLASS ACTION SETTLEMENT
                                               AGREEMENT AND RELEASE
                                               MDL 2777 EMC (JSC)

1

**List of Exhibits**

2

| Ex. # | Title |
|-------|-------|
| 1 | Settlement Benefits for Class Members |
| 2 | Short Form Notice |
| 3 | Long Form Notice |
| 4 | Class Claims Program and Administration |
| 5 | Individual Release of Claims |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28