1  Elizabeth J. Cabraser (State Bar No. 083151)
   ecabraser@lchb.com
2  LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
   275 Battery Street, 29th Floor
3  San Francisco, CA  94111-3339
   Telephone:  415.956.1000
4  Facsimile:  415.956.1008

5  *Plaintiffs' Lead Counsel and Chair of the Plaintiffs'*
   *Steering Committee*

6
   *(Plaintiffs' Steering Committee Members Listed on*
7  *Signature Page)*

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  IN RE CHRYSLER-DODGE-JEEP          Case No. 3:17-md-2777-EMC
    ECODIESEL ® MARKETING, SALES
13  PRACTICES, AND PRODUCTS            **MOTION FOR PRELIMINARY**
    LIABILITY LITIGATION              **APPROVAL OF CLASS SETTLEMENT**
14                                    **AND DIRECTION OF NOTICE UNDER**
    This Document Relates to:          **FED. R. CIV. P. 23(e)**
15
    ALL CONSUMER AND RESELLER          Hearing:  January 23, 2019
16  ACTIONS                            Time:  10:00 a.m.
                                       Courtroom:  5, 17th Floor
17
                                       The Honorable Edward M.  Chen
18

19

20

21

22

23

24

25

26

27

28

1673575.8

**TABLE OF CONTENTS**

                                                                                    Page

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     INTRODUCTION: THE PROPOSED SETTLEMENT ......................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY ............................................... 2

       A.     FACTUAL BACKGROUND ....................................................................... 2

       B.     PROCEDURAL BACKGROUND ............................................................... 3

              1.     Litigation Track ................................................................................ 3

              2.     Settlement Track ............................................................................... 5

III.   SUMMARY OF SETTLEMENT TERMS ............................................................ 6

       A.     THE SETTLEMENT CLASS DEFINITION ............................................. 6

       B.     SETTLEMENT CLASS MEMBER BENEFITS ........................................ 7

IV.    LEGAL STANDARD FOR APPROVAL ............................................................. 7

V.     ARGUMENT .......................................................................................................... 8

       A.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................. 8

              1.     The Settlement is the Product of Good Faith, Informed, and Arm's-
                     Length Negotiations. ....................................................................... 8

              2.     Class Representatives and Class Counsel Have and Continue to
                     Zealously Represent the Class. ....................................................... 9

              3.     The Settlement Provides Significant Benefits in Exchange for the
                     Compromise of Strong Claims. ...................................................... 9

                     a.     The Settlement Mitigates the Risks, Expenses, and Delays
                            the Class Would Bear with Continued Litigation. ...................... 10

                     b.     Class Members Are Eligible for Relief Through a
                            Straightforward Claims Process. ............................................... 11

                     c.     Counsel Will Seek Reasonable Attorneys' Fees and Costs. ......... 11

              4.     The Proposed Settlement Treats All Class Members Equitably
                     Relative to One Another. ............................................................... 12

       B.     THE COURT WILL BE ABLE TO CERTIFY THE CLASS FOR
              SETTLEMENT PURPOSES UPON FINAL APPROVAL. ............................. 13

              1.     The Settlement Class Meets the Requirements of Rule 23(a) ................. 13

                     a.     The Class is Sufficiently Numerous. .......................................... 13

                     b.     There Are Common Questions of Law and Fact. ....................... 14

                     c.     The Settlement Class Representatives' Claims Are Typical
                            of Other Class Members' Claims. ............................................. 15

                     d.     The Settlement Class Representatives and Class Counsel
                            Have and Will Protect the Interests of the Settlement Class ......... 16

              2.     The Settlement Class Meets the Requirements of Rule 23(b)(3) ............. 17

                     a.     Common Issues of Law and Fact Predominate. ......................... 17

1

**TABLE OF CONTENTS**
(continued)

2

Page

3

           b.    Class Treatment Is Superior to Other Available Methods for
the Resolution of This Case. ........................................................ 19

4

     3.    The Proposed Settlement Merits Approval Under This District's
Procedural Guidance. .................................................................. 20

5

           a.    The Litigation and Settlement Classes Are Essentially
Identical........................................................................... 20

6

           b.    The Settlement Recovery is a Fair Proxy for the Recovery
Available if Plaintiffs Had Prevailed on Each of Their
Claims. ............................................................................. 20

7

           c.    The Proposed Allocation Plan for the Settlement Fund............... 21

8

           d.    A Substantial Number of Class Members Are Expected and
Incentivized To Participate. .......................................... 21

9

           e.    Reversion ......................................................................... 21

10

           f.    The Settlement Administrator Selection Process and Costs ......... 22

11

           g.    Attorneys' Fees ................................................................. 22

12

           h.    Incentive Awards .............................................................. 22

13

           i.    Notice of Compliance with CAFA................................... 22

14

           j.    Information About Past Distributions in Comparable Class
Settlements. ...................................................................... 23

15

   C.    THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST
PRACTICABLE NOTICE............................................................ 24

16

   D.    THE PROPOSED FINAL APPROVAL HEARING SCHEDULE..................... 25

17

VI.    CONCLUSION................................................................................. 25

18

19

20

21

22

23

24

25

26

27

28

- ii -

1

**TABLE OF AUTHORITIES**

2
**Page**

3  **Cases**

4  *Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)..................................................................13, 18

5  *Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013)..........................................................14

6  *Butler v. Sears, Roebuck & Co.*,
   702 F.3d 359 (7th Cir. 2012)...............................................................17

7  *Clemens v. Hair Club for Men, LLC*,
   No. C 15-01431 WHA, 2016 WL 1461944 (N.D. Cal. Apr. 14, 2016)..............16, 17

8  *Cohen v. Trump*,
   303 F.R.D. 376 (S.D. Cal. 2014)..........................................................14

9  *Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012)..........................................................15, 16

10 *Friedman v. 24 Hour Fitness USA, Inc.*,
   No. CV 06-6282 AHM (CTx), 2009 WL 2711956 (C.D. Cal. Aug. 25, 2009)...........18

11 *Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) .........................................................14

12 *In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)................................................................8

13 *In re First Alliance Mortg. Co.*,
   471 F.3d 977 (9th Cir. 2006)...............................................................18

14 *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July 26, 2016)..............passim

15 *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016),

16   *aff'd sub nom. In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018)...........................................................passim

17 *Jimenez v. Allstate Ins. Co.*,
   765 F.3d 1161 (9th Cir. 2014)..............................................................14

18 *Kim v. Space Pencil, Inc.*,
   No. C 11-03796 LB, 2012 WL 5948951 (N.D. Cal. Nov. 28, 2012).....................10

19 *Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004).............................................................18

20 *Leuthold v. Destination Am., Inc.*,
   224 F.R.D. 462 (N.D. Cal. 2004)..........................................................19

21 *Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173 (9th Cir. 1977)...............................................................9

22 *Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.3d 1338 (9th Cir. 1980) .............................................................24

23 *Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).........................................................................24

24 *Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006)..........................................................14

25 *Palmer v. Stassinos*,
   233 F.R.D. 546 (N.D. Cal. 2006)..........................................................14

26 *Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014)...............................................................15

27 *Pierce v. Rosetta Stone, Ltd.*,
   No. C 11-01283 SBA, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013)...................8

28 *Radcliffe v. Experian Info. Sols., Inc.*,
   715 F.3d 1157 (9th Cir. 2013)..............................................................16

- iii -

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Ries v. Ariz. Beverages USA LLC*,
   287 F.R.D. 523 (N.D. Cal. 2012) ......................................................................... 14

4

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) ............................................................................... 15

5

*Rosales v. El Rancho Farms*,
   No. 1:09-CV-00707-AWI, 2015 WL 4460635 (E.D. Cal. July 21, 2015) ................ 8

6

*Slaven v. BP Am., Inc.*,
   190 F.R.D. 649 (C.D. Cal. 2000) .......................................................................... 13

7

*Smith v. Cardinal Logistics Mgmt.  Corp.*,
   No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept.  5, 2008) ............................. 19

8

*Stockwell v. City & Cty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ............................................................................... 14

9

*Trosper v. Styker Corp.*,
   No. 13-CV-0607-LHK, 2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ............. 16, 19

10

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) .......................................................................................... 17

11

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .............................................................................................. 14

12

*Wolin v. Jaguar Land Rover N.  Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................... 15, 18, 19

13

**Statutes**

14

28 U.S.C. § 1332(d) ................................................................................................... 22
28 U.S.C. § 1712 ....................................................................................................... 23

15

28 U.S.C. § 1713 ....................................................................................................... 23
28 U.S.C. § 1714 ....................................................................................................... 23

16

28 U.S.C. § 1715(b) ................................................................................................... 22

17

**Rules**

18

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 15
Fed. R. Civ. P. 23(a)(4) ............................................................................................. 16
Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 7, 24

19

Fed. R. Civ. P. 23(e)(1) ............................................................................................... 7
Fed. R. Civ. P. 23(e)(1)(B) .......................................................................................... 7

20

Fed. R. Civ. P. 23(e)(2) ........................................................................................... 7, 8
Fed. R. Civ. P. 23(e)(2)(A) .......................................................................................... 9

21

Fed. R. Civ. P. 23(e)(2)(B) .......................................................................................... 8
Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................... 9

22

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................ 12
Fed. R. Civ. P. 23(e)(5) ............................................................................................... 7

23

Fed. R. Civ. P. 23(g) ................................................................................................. 17
Fed. R. Civ. P. 23(h) ................................................................................................. 12

24

**Other Authorities**

25

2 William B. Rubenstein, *et al.*, *Newberg on Class Actions* § 4:49 (5th ed. 2012) ....... 17
7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

26

   *Federal Practice and Procedure* § 1778 (3d ed. 2005) ........................................ 17
Northern District of California Procedural Guidance for Class Action Settlements ... 20, 21, 22, 24

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO ALL THE PARTIES AND COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on January 23, 2019 at 10:00 a.m. or at such other date and time as the Court may set, in Courtroom 5 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Lead Counsel and the Plaintiffs' Steering Committee, on behalf of a proposed Settlement Class of certain owners and lessees of Ram- and Jeep-branded EcoDiesel vehicles defined in the proposed Settlement Agreement, will and hereby do move the Court for an order granting preliminary approval of the Class Action Settlement and directing notice to the Class under Fed. R. Civ. P. 23(e)(1); appointing Settlement Class Counsel and Class Representatives under Fed. R. Civ. P. 23(g)(3); and scheduling a final approval hearing under Fed. R. Civ. P. 23(e)(2).

As discussed in the attached Memorandum of Points and Authorities, the Parties have negotiated a Settlement that provides substantial compensation to consumers for their economic losses, a robust extended warranty, and, in conjunction with the simultaneously submitted US-CA Consent Decree, takes action to mitigate the environmental harms caused by the EcoDiesel Vehicles at the center of this litigation by incentivizing and compensating the Class to bring them in for federal and California-approved and tested repairs to bring them into full emission compliance with federal and state law. The proposed notice program, which includes direct mail and e-mail notice, publication, and extensive multimedia outreach, fulfills the requirements of Rule 23 and due process as the best notice practicable under the circumstances. Plaintiffs thus respectfully request that the Court grant preliminary approval, direct notice to the proposed Class, and schedule a final approval hearing.

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1673575.8

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION: THE PROPOSED SETTLEMENT

Approximately 100,000 2014-2016 EcoDiesel Jeep Grand Cherokees and Ram 1500 trucks were marketed and sold by Fiat Chrysler in the United States. These EcoDiesel models commanded a premium price over their gas counterparts because they promised a package of benefits: traditional diesel performance and fuel economy (mpg) attributes, plus environmentally responsible emissions levels.  These vehicles delivered on the first two benefits, but, unknown to their buyers and lessees, were rigged to cheat on the third.  In actual operation, their emissions were higher than government regulations permitted.  This case and the related proceedings by federal and state regulators were prosecuted, and the resulting class action and government settlements were negotiated, to bring the vehicles into compliance with emissions regulations, to incentivize their owners to bring them in for approved emissions fixes, and to compensate owners and lessees for the lost part of the diesel premium package they paid for but did not receive.

The proposed Settlement provides Class Members with substantial compensation.  Most Class Members—current owners of EcoDiesel Vehicles—will receive $3,075.  All Class Members will receive significant benefits as summarized in this chart:

| Category | Benefits | Class Member Payment |
|---|---|---|
| **Eligible Owner** (acquired vehicle on or before January 12, 2017) | Owner Payment + Approved Emissions Modification + Extended Warranty | **$3,075** |
| **Eligible Owner** (acquired vehicle after January 12, 2017) | Owner Payment + Approved Emissions Modification + Extended Warranty | **$2,460** (if an Eligible Former Owner or Lessee also makes a valid claim for benefits) OR **$3,075** (if no other valid claim for same vehicle) |
| **Eligible Former Owner** | Former Owner Payment | **$990** |

1673575.8

| Eligible Lessee | Lessee Payment + Approved Emissions Modification + Extended Warranty | $990 |
|---|---|---|
| Eligible Former Lessee | Lessee Payment | $990 |

Further, in conjunction with the simultaneously negotiated US-CA Consent Decree, the Class Settlement mitigates environmental harm by offering an Approved Emissions Modification (the "AEM" or "Emissions Fix") designed and tested to bring the Vehicles into compliance with the emissions standards to which they were originally certified, without materially affecting the Vehicles' key attributes and fuel economy.  All Class Members who receive an Emissions Fix will also receive a robust extended warranty for the greater of (i) 10 years from the date of initial sale or 120,000 actual miles on the vehicle odometer, whichever comes first; and (ii) 4 years or 48,000 miles, from date and mileage of installing the Emissions Fix, whichever comes first. None of these benefits will be reduced to pay Class Counsel's attorneys' fees or expenses.

## II.      BACKGROUND AND PROCEDURAL HISTORY

### A.      FACTUAL BACKGROUND

As the operative class complaint alleges, this case involves the misleading marketing and sale of 2014-2016 EcoDiesel Ram 1500 and Jeep Grand Cherokees (the "EcoDiesel Vehicles" or "Vehicles"[1]).  Working together, Defendants[2] designed and programmed hidden software features that significantly reduced the effectiveness of the Vehicles' nitrogen oxide (NOx) reduction technology when operated under everyday driving conditions.  As a result, the Vehicles emit harmful pollutants at illegally high levels, exceeding what a reasonable consumer would expect from an "Eco" vehicle.  *See* Second Amended Complaint ("SAC") Dkt. 310.  Class Members paid a premium for the EcoDiesel option (the "EcoDiesel Premium") for fuel-efficient and powerful vehicles that were environmentally friendly. *See* Dkt. 327 at 43-44.  But they didn't get

---

[1] "Eligible Vehicle" means the EcoDiesel Vehicles that are eligible to participate in the Settlement, as defined in the Settlement.

[2] "Defendants" are Fiat Chrysler Automobiles N.V., FCA US LLC, VM Motori S.p.A., VM North America, Inc. (collectively, "FCA") and Robert Bosch GmbH and Robert Bosch LLC, (together, "Bosch") unless otherwise noted.

1 the whole package.  The proposed Settlement provides it.

2        **B.**    **PROCEDURAL BACKGROUND**

3       On January 12, 2017 the U.S. Environmental Protection Agency ("EPA") and California

4 Air Resources Board ("CARB") issued notices of violation ("NOV") to Fiat Chrysler

5 Automobiles N.V. and FCA US LLC, alleging the EcoDiesels contained undisclosed technology

6 resulting in excess NOx emissions.  The Department of Justice then filed a complaint against

7 FCA on behalf of the EPA for violations of the Clean Air Act, and consumers across the country

8 sued Defendants to vindicate their economic injuries.  On April 5, 2017, the Judicial Panel on

9 Multidistrict Litigation transferred all these federal actions to this Court.  On June 19, 2017, the

10 Court appointed Elizabeth J. Cabraser of Lieff, Cabraser, Heimann & Bernstein, LLP as Lead

11 Counsel as well as a 9-firm Plaintiffs' Steering Committee ("PSC") (together, "Class Counsel")

12 to oversee the litigation on behalf of affected owners, lessees, and dealers.  On July 13, 2017, the

13 Court appointed Kenneth Feinberg as Settlement Master.  In the 18 months that followed, a fully-

14 deployed PSC has worked tirelessly both to prosecute the consumers' claims and to work with the

15 Defendants, the regulators, and the Settlement Master to achieve a global resolution. Lead

16 Counsel created working groups within the PSC to ensure that the prosecution and settlement

17 tracks proceeded in parallel and that the enormous amount of work was completed in the most

18 organized and efficient manner possible.

19           **1.**    **Litigation Track**

20       This case has been intensively litigated from its inception.  The length and detail of the

21 Amended, First Amended, and Second Amended Consolidated Consumer Class Action

22 Complaints reflect the arduous process undertaken by Class Counsel to analyze the multi-party

23 fraud alleged in this case, and to research, develop and assert the various claims and the remedies

24 available to those harmed by Defendants' conduct.  Class Counsel filed a 365-page Complaint

25 asserting claims for violations of The Racketeer Influenced and Corrupt Organizations Act

26 ("RICO"), the Magnuson-Moss Warranty Act ("MMWA"), common law fraud, and consumer

27 protection under all fifty States' and the District of Columbia's applicable statutes.  Those

28 allegations were later detailed and refined in a 375-page Amended Complaint ("FAC").  Rigorous

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1    motion practice ensued.  Both FCA and Bosch moved to dismiss the FAC, which Class Counsel

2    opposed in a consolidated 75-page opposition.  After oral argument, the Court granted in part and

3    denied in part the motions, upholding Plaintiffs' RICO claim and granting leaving to amend to

4    provide clarifying detail on the common law fraud and consumer protection claims.  Plaintiffs

5    then filed their 438-page Second Amended Complaint ("SAC"), and the parties conducted an

6    aggressive second round of dismissal briefing.  All told, the two rounds of motions to dismiss

7    comprised 19 briefs with over 301 pages of briefing argued at three lengthy hearings.

8         The litigation also has included substantial class certification activity.  Plaintiffs moved to

9    certify a nationwide class of owners/lessees of the Vehicles under RICO, the MMWA, and most

10   states' common law fraud and statutory consumer protection claims.  The Parties submitted 780

11   pages of class certification briefing, including 17 highly technical briefs on the class certification

12   liability and damages experts.

13        The Parties have also conducted extensive discovery, including nearly 100 depositions.

14   After the PSC negotiated comprehensive expert, deposition, preservation, confidentiality, and ESI

15   protocols, it served FCA with 37 interrogatories, 130 document requests, and 188 requests for

16   admission, and Bosch with 45 interrogatories, 56 document requests, and 34 requests for

17   admission.  *See* Declaration of Elizabeth J. Cabraser ("Cabraser Decl.") ¶ 4.  In response,

18   Defendants produced over ***5 million*** pages of documents, and the PSC reviewed and analyzed

19   nearly 4 million of them through a massive, around-the-clock effort.  *See* Declaration of Elizabeth

20   Koenig Decl. ¶¶ 4-7.  To effectively analyze these productions, the PSC was required to

21   understand profoundly complicated emissions treatment system technology and the legal

22   complexities of Plaintiffs' claims, and, to master the difficulties and nuances of working with

23   documents written in German and Italian.  The massive research, review, and analysis efforts

24   informed Plaintiffs' strategy for class certification and dispositive motion briefing and for 31

25   affirmative depositions of Defendants' engineers, executives, and experts.  Cabraser Decl. ¶ 4.

26        The Parties litigated multiple discovery disputes, featuring multiple all-day in-person meet

27   and confer sessions and a voluminous exchange of letters. After hearings, Magistrate Judge

28   Corley resolved two of these disputes in Plaintiffs' favor by ordering Bosch to produce contested

1    documents.

2          All the proposed Settlement Class Representatives searched for, and provided documents

3    and information responsive to, Defendants' numerous discovery requests (which totaled

4    approximately 9,000 documents); completed a comprehensive 12-page fact sheet; and sat for

5    deposition, often traveling many hours away from home to do so.  Cabraser Decl. ¶ 12.  In all,

6    Class Counsel defended over 60 Plaintiff depositions in 17 states in approximately three months.

7                    **2.      Settlement Track**

8          Earnest settlement negotiations began shortly after the Court's appointment of Lead

9    Counsel and the Settlement Master in July 2017.  *See* Cabraser Decl. ¶ 6.  Lead Counsel and the

10   PSC's settlement working group engaged in extraordinarily complex arm's-length settlement

11   negotiations with FCA and Bosch in an effort to resolve the consumer claims alongside those

12   brought by the DOJ and CA AG.  *Id*. ¶ 7.  The Parties communicated regularly with the

13   Settlement Master alone and in various combinations, in briefings, meetings, and formal

14   negotiation sessions.  *Id*. ¶ 8.  Throughout the process, the PSC pushed FCA hard on two fronts:

15   (1) to provide significant cash compensation to the class members, and (2) to offer a broad

16   extended warranty to protect them from any future problems caused by the AEM. *Id*. ¶ 7.

17         The parties heeded the Court's direction to move with dispatch, and benefited from the

18   assistance of Settlement Master Feinberg, who played a crucial role in supervising the

19   negotiations and in helping to bridge the parties' differences in order to reach this Settlement.

20   The result of all these meetings and negotiations is a comprehensive settlement, which the parties

21   propose as an excellent, principled, and successful conclusion to this multi-party litigation.

22   Because of the intense and continuous efforts undertaken by counsel, the Settlement Class

23   Representatives, Settlement Master Feinberg, and this Court to move intensive settlement

24   negotiations forward in parallel to the zealous litigation of Plaintiffs' claims, this Settlement

25   comes just two years after news of the EcoDiesel scandal broke, and approximately 18 months

26   after commencement of the MDL.

27

28

- 5 -

1

III.    **SUMMARY OF SETTLEMENT TERMS**

2
        The Settlement provides substantial benefits to current and former Eligible Vehicle[3]

3
owners and lessees by compensating their economic losses and through the additional value and

4
of a robust extended warranty to protect repaired vehicles.  None of these payments or benefits

5
will be reduced by Class Counsel's fees or expenses.

6
        A.      **THE SETTLEMENT CLASS DEFINITION**

7
        The Settlement Class is a nationwide class of all Persons (including United States citizens,

8
residents, or United States military, or diplomatic personnel that are living or stationed overseas,

9
and entities) who (1) on January 12, 2017 owned or leased a Ram 1500 or Jeep Grand Cherokee

10
3.0-liter diesel vehicle in the United States or its territories; or who (2) between January 12, 2017

11
and the Claim Submission Deadline for Eligible Owners and Eligible Lessees become the owner

12
or lessee of an Eligible Vehicle in the United States or its territories; or who (3) own or lease an

13
Eligible Vehicle in the United States or its territories at the time of participation in the Repair

14
Program.  The Class includes automobile dealers who are not FCA Authorized Dealers and who

15
otherwise meet the Class definition.[4]

16
_____

17
[3] All capitalized terms used in this section have the meaning set forth in the Class Action
Agreement.

18
[4] Those excluded from the Class are:

(a)     Owners or lessees who acquired an Eligible Vehicle after January 12, 2017, and
transferred title or terminated their lease before April 1, 2019;

19
20
(b)     Owners or lessees who acquired an Eligible Vehicle after January 12, 2017, and
transferred title or terminated their lease after April 1, 2019, as a result of a total loss, but before
the Claim Submission Deadline for Eligible Owners and Eligible Lessees;

21
22
(c)     Owners who acquired an Eligible Vehicle on or before January 12, 2017, and transferred
title after January 10, 2019, but before April 1, 2019, unless title was transferred as a result of a
total loss;

23
(d)     Lessees who leased their Eligible Vehicles on or before January 12, 2017, acquire
ownership after January 10, 2019, and transfer ownership before the AEM is performed on the
Eligible Vehicle;

24
25
(e)     Owners whose Eligible Vehicle is not Registered in the United States as of the date the
AEM is performed;

26
(f)     Defendants' officers, directors and employees; Defendants' affiliates and affiliates'
officers, directors and employees; their distributors and distributors' officers, directors and
employees; and Authorized Dealers and Authorized Dealers' officers and directors;

27
(g)     Judicial officers and their immediate family members and associated court staff assigned
to this case; and

28
(h)     All those otherwise in the Class who or which timely and properly exclude themselves

*Footnote continued on next page*

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1673575.8

## B. SETTLEMENT CLASS MEMBER BENEFITS

In addition to providing the AEM free of charge, Defendants will pay up to an estimated $307,460,800 in cash compensation to Class Members, if all Class Members participate in the Claims Program. Eligible Owners are eligible to receive the AEM plus a cash payment of $3,075 if no Eligible Former Owner or Former Lessee makes a valid claim on the same vehicle or $2,460 if an Eligible Former Owner or Former Lessee does make a valid claim on the same vehicle. Former Owners, Lessees, and Former Lessees are all eligible to receive $990. These payments "*exceed* the economic harm suffered" under Plaintiffs' EcoDiesel Premium damages theory "in nearly all cases," Declaration of Ted Stockton ("Stockton Decl.") ¶ 46 (emphasis added)—a remarkable result for a compromise of vigorously contested and litigated claims.

FCA will also provide an Extended Warranty for all Vehicles that receive an Emissions Fix, estimated to cost FCA $105,000,000. Plaintiffs' expert calculates the consumer value of the warranty at $239,500,000.[5] *See* Declaration of Kirk Kleckner ("Kleckner Decl.") at ¶¶ 1, 6.

## IV. LEGAL STANDARD FOR APPROVAL

Federal Rules of Civil Procedure 23(e) governs a district court's analysis of the fairness of a proposed class action settlement and creates a multistep process for approval. First, a court must determine that it is likely to (i) approve the proposed settlement as fair, reasonable, and adequate, after considering the factors outlined in Rule 23(e)(2), and (ii) certify the settlement class after the final approval hearing. *See* Fed. R. Civ. P. 23(e)(1)(B); *see also* 2018 Advisory Committee Notes to Rule 23 (standard for directing notice is whether the Court "likely will be able both to approve the settlement proposal under Rule 23(e)(2) and . . . certify the class for purposes of judgment on the proposal"). Second, a court must direct notice to the proposed settlement class, describing the terms of the proposed settlement and the definition of the proposed class, to give them an opportunity to object to or to opt out of the proposed settlement. *See* Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1), (5). Third, after a hearing, the court may

---

*Footnote continued from previous page*
from the Class as provided in this Class Action Agreement.

[5] Class Counsel engaged Mr. Kleckner to independently value the Extended Warranty provisions in the Settlement based on the estimated costs to FCA. FCA has not reviewed or endorsed the retail value calculations conducted by Mr. Kleckner.

1673575.8

1  grant final approval of the proposed settlement on a finding that the settlement is fair, reasonable,

2  and adequate, and certify the settlement class.  Fed. R. Civ. P. 23(e)(2).  In this District, a

3  movant's submission should also include the information called for under the District's recently

4  updated Procedural Guidance for Class Action Settlements.  *See* Procedural Guidance for Class

5  Action Settlements ("Procedural Guidance").

6  **V.      ARGUMENT**

7          The proposed Settlement presents a fair, reasonable, and adequate resolution of this

8  litigation.  Indeed, in securing payments that "*exceed* the economic harm suffered" under

9  Plaintiffs' damages theory "in nearly all cases," the Settlement is an extraordinary result.  All of

10  the relevant factors weigh in favor of preliminary approval, and there can be no doubt that the

11  Agreement was reached in a procedurally fair manner given Settlement Master Feinberg's

12  ongoing guidance and assistance.

13          **A.      THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

14          Rule 23(e)(2) identifies criteria for the Court to use in deciding whether to grant

15  preliminary approval of a proposed class settlement and direct notice to the proposed class.  The

16  Class Settlement proposed here satisfies each one.

17          **1.      The Settlement is the Product of Good Faith, Informed, and Arm's-
                       Length Negotiations.**

18

19          The proposed Settlement Agreement arises out of serious, informed, and non-collusive

20  negotiations facilitated by Court-appointed Settlement Master Feinberg over the course of nearly

21  eighteen months.  *See* Fed. R. Civ. P. 23(e)(2)(B).  A settlement process facilitated by a court-

22  appointed mediator weighs heavily in favor of approval.  *Rosales v. El Rancho Farms*, No. 1:09-

23  CV-00707-AWI, 2015 WL 4460635, at *16 (E.D. Cal. July 21, 2015*), report and*

24  *recommendation adopted*, 2015 WL 13659310 (E.D. Cal. Oct. 2, 2015) ("[T]he 'presence of a

25  neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'") (citation

26  omitted)); *Pierce v. Rosetta Stone, Ltd*., No. C 11-01283 SBA, 2013 WL 5402120, at *5 (N.D.

27  Cal. Sept.  26, 2013) (same).  So too does the participation of government entities in negotiations.

28  *See In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL

1   2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016), *aff'd sub nom. In re*

2   *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597 (9th Cir.

3   2018) (government participation in negotiations weighed "heavily in favor" of approval);

4   *Marshall v. Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) ("The participation of a

5   government agency serves to protect the interests of the class members, particularly absentees,

6   and approval by the agency is an important factor for the court's consideration.") (citation

7   omitted). Both were an integral part of the negotiations here. The procedurally fair manner in

8   which this Settlement was reached weighs strongly in favor of granting preliminary approval.

9   **2.      Class Representatives and Class Counsel Have and Continue to
            Zealously Represent the Class.**

10

11      The Class Representatives and Class Counsel have prosecuted this action on behalf of the

12   Class with vigor and dedication for over a year-and-a-half. *See* Fed. R. Civ. P. 23(e)(2)(A). As

13   detailed above, Class Counsel engaged in significant motion practice and massive offensive

14   discovery efforts to prosecute the Class claims. *See supra*, § II B. 1. Counsel defended against

15   two rounds of motions to dismiss and moved for and extensively litigated class certification and

16   attendant expert issues. *See id.* The Settlement Class Representatives were likewise actively

17   engaged—each produced numerous documents, sat for a lengthy deposition, and regularly

18   communicated with counsel up to and including evaluating and approving the proposed

19   Settlement. *See id*. Each of them was consulted on, and support, the terms of the settlement, and

20   have expressed their continued willingness to protect the Class until the Settlement is approved

21   and its administration completed. *See* Cabraser Decl. ¶ 14.

22   **3.      The Settlement Provides Significant Benefits in Exchange for the
            Compromise of Strong Claims.**

23

24      The Settlement provides substantial Class relief, considering (i) the costs, risks, and delay

25   of trial and appeal; (ii) the effectiveness of the proposed distribution plan; and (iii) the fair terms

26   of the separately-negotiated proposed award of attorney's fees. *See* Fed. R. Civ. P. 23(e)(2)(C).

27   Along with the US-CA consent decree, this comprehensive Class resolution mitigates

28   environmental harms, incentivizes current owners and lessees to effectuate the environmental

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1673575.8

1    goals of all settlements by bringing their vehicles in for the AEM, and compensates the Class for

2    the economic losses suffered in purchasing or leasing them.  All PSC members—an experienced

3    group including preeminent class action litigators, consumer and environmental advocates, trial

4    lawyers, and auto litigation veterans—support this Settlement, acknowledging the uncertainty in

5    whether the Class could achieve a better outcome through further litigation.  Continued litigation,

6    trial, and appeal certainly would not secure the emissions modification program as swiftly as it

7    will take place under current resolution.

8                          a.    **The Settlement Mitigates the Risks, Expenses, and Delays the
9                                Class Would Bear with Continued Litigation.**

10          The Settlement secures significant benefits, even in the face of the inherent uncertainties

11    of litigation.  Compromise in exchange for certain and timely provision of the benefits under the

12    Settlement is an unquestionably reasonable outcome.  *See Nobles v. MBNA Corp.*, No. C 06-3723

13    CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) ("The risks and certainty of recovery in

14    continued litigation are factors for the Court to balance in determining whether the Settlement is

15    fair.") (citing *Kim v. Space Pencil, Inc.*, No. C 11-03796 LB, 2012 WL 5948951, at *5 (N.D. Cal.

16    Nov. 28, 2012) ("The substantial and immediate relief provided to the Class under the Settlement

17    weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial,

18    and appeal, as well as the financial wherewithal of the defendant.")).

19          This is a risky case.  Defendants chose to fight, not concede.  Defendants' motions to

20    dismiss—including a challenge to the RICO claim—remain pending.  The outcome of these

21    motions could have a significant impact on the Class' prospects of a favorable resolution.

22    Plaintiffs' Class Certification motion is also challenged and undecided.  FCA and Bosch dispute

23    Plaintiffs' damages theories and submitted multiple expert declarations to support their argument

24    that damages are not calculable on a classwide basis.  If the Court were to deny class certification,

25    the case would be dead, and the Class Members would receive nothing.  Even if a class were to be

26    certified and upheld on appeal, the Class would face the risk, expense, and delay of trial and

27    potentially lengthy appellate process, likely delaying any recovery for years.[6]

28    _____
      [6] A further consideration is the involvement of foreign defendants including FCA N.V.

*Footnote continued on next page*

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1   Avoiding years of additional litigation in exchange for the immediate economic and

2   environmental certainties of this Settlement is even more compelling because it halts ongoing

3   environmental damage.  Class Member actions under the Settlement will serve as the mechanism

4   to bring the EcoDiesel Vehicles into compliance with the emissions standards to which they were

5   originally certified, reducing further environmental damage and air pollution in the near term.

6   *See Volkswagen*, 2016 WL 6248426, at *12.

7                           **b.      Class Members Are Eligible for Relief Through a
                                      Straightforward Claims Process.**

8

9   The Settlement framework provides an emissions fix, a robust extended warranty, and

10  substantial monetary compensation to the Class Members through a straightforward claims

11  process designed to be as convenient to Class Members as possible.  Each Class Member will

12  receive information about the Emissions Fix through the proposed Notice Program.  Class

13  Members will then submit a simple Claim Form online or by mail that contains basic information

14  and required documentation (e.g., identification, lease, registration).  After a claim is reviewed for

15  completeness and eligibility, FCA will extend an offer to eligible Class Members.  The Class

16  Member may accept the offer and get paid, or if they own or lease an Eligible Vehicle, schedule

17  an appointment to receive an AEM.  The AEM will then be performed, and the Class Member

18  promptly will receive their Class Member Payment.

19                          **c.      Counsel Will Seek Reasonable Attorneys' Fees and Costs.**

20  None of the settlement benefits will be reduced to pay Court-awarded attorneys' fees or

21  costs to Class Counsel.  These will be paid by Defendants in addition to class benefits.  Plaintiffs'

22  success in persuading Defendants to pay fees and costs in addition to Class Benefits has

23  tremendous monetary value to the Class Members, who otherwise would have had to pay such

24  fees and costs themselves out of their Settlement recovery.  The terms of the Settlement

25  Agreement were finalized only yesterday, so the Parties have not yet had the opportunity to

26  *Footnote continued from previous page*
    (Netherlands), Bosch GmbH (Germany), and VM Motori S.p.A. (Italy).  Plaintiffs' allegations

27  against these companies implicate actions taken in Europe.  Additional risks thus arise should
    Plaintiffs have to prove the propriety of the Court's personal jurisdiction over these entities, or

28  that U.S. law extends to reach their extraterritorial conduct.

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

negotiate the amount of attorneys' fees.  Waiting until after the Settlement terms are nailed down

before discussing fees is a practice routinely approved by courts as in the Class' best interest.  *See*

*Volkswagen.*, 2016 WL 6248426, at *23.  Class Counsel will provide information on the amount

of attorneys' fees and costs sought before the preliminary approval hearing, in the class notice,

and in a fee application, so that Class Members will have the opportunity to comment on or object

under Fed. R. Civ. P. 23(h) prior to the final approval hearing.

### 4.     The Proposed Settlement Treats All Class Members Equitably Relative to One Another.

The proposed Settlement fairly and reasonably allocates benefits among Eligible Owners,

Eligible Lessees, Eligible Former Owners, and Eligible Former Lessees, without any unwarranted

preferential treatment of class representatives or segments of the Class.  *See* Fed. R. Civ. P.

23(e)(2)(D). Specifically, Eligible Owners who submit a valid claim will each receive $3,075 in

compensation. An Eligible Owner's compensation will be reduced to $2,460 if an Eligible Former

Owner also submits a valid claim for the same Eligible Vehicle, to allow compensation for the

former owner of the same Vehicle.  Eligible Former Owners, Lessees, and Former Lessees will

each be entitled to $990.  The higher payment to Eligible Owners is designed to incentivize them

to bring in their Vehicles for the emissions modification—which is the primary mechanism to get

these Vehicles fixed and stop their excess emissions.  FCA sold these Vehicles as EcoDiesels, but

it will take the Class to make them so.

Class Counsel intends to apply for service awards for the Settlement Class

Representatives, to be paid by Defendants in addition to the Class compensation.  Service awards

"are fairly typical in class action cases" and "are intended to compensate class representatives for

work done on behalf of the class, to make up for financial or reputational risk undertaken in

bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

A service award is appropriate here and does not constitute preferential treatment.  No

Class Representative was promised, nor conditioned their representation on the expectation of a

service award.  *See* Cabraser Decl. ¶ 15.  The Representatives have each spent between 35 and 50

hours developing the case, conferring with counsel, answering discovery requests, searching for and producing documents, and preparing and testifying at their depositions. *Id.* Given this significant commitment, service awards are particularly appropriate, especially considering that Defendants will pay them in addition to the Class compensation.

### B.   THE COURT WILL BE ABLE TO CERTIFY THE CLASS FOR SETTLEMENT PURPOSES UPON FINAL APPROVAL.

Certification of a settlement class is "a two-step process." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)). First, the Court must find that the proposed settlement class satisfies Rule 23(a)'s four requirements. *Id.* (citing Fed. R. Civ. P. 23(a). Second, the Court must find that "a class action may be maintained under either Rule 23(b)(1), (2), or (3)." *Id.* (citing *Amchem Prods.*, 521 U.S. at 613). Here, the Class readily satisfies all Rule 23(a)(1)-(4) and (b)(3) certification requirements, and certification should be granted for settlement purposes. *See Volkswagen*, 2016 WL 6248426 at *28 (certifying analogous settlement class of owners and lessees of Volkswagen- and Audi-branded "clean diesel" vehicles). When "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 620.

#### 1.   The Settlement Class Meets the Requirements of Rule 23(a).

##### a.   The Class is Sufficiently Numerous.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is generally satisfied when the class exceeds forty members. *See, e.g.*, *Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000). It is undisputed that approximately 100,000 Class Vehicles were sold and leased nationwide and that the Settlement Class—which includes current and former owners and lessees of these Vehicles—includes more than 100,000 members. The large size of the Settlement Class and its geographic dispersal across the United States also renders joinder impracticable. *See*

1   *Palmer v. Stassinos*, 233 F.R.D. 546, 549 (N.D. Cal. 2006) ("Joinder of 1,000 or more co-

2   plaintiffs is clearly impractical.").  Numerosity is satisfied.

3                    **b.       There Are Common Questions of Law and Fact.**

4        "Federal Rule of Civil Procedure 23(a)(2) conditions class certification on demonstrating

5   that members of the proposed class share common 'questions of law or fact.'"  *Stockwell v. City*

6   *& Cty. of San Francisco*, 749 F.3d 1107, 1111 (9th Cir. 2014).  Commonality "does not turn on

7   the number of common questions, but on their relevance to the factual and legal issues at the core

8   of the purported class' claims."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).

9   Indeed, "'[e]ven a single question of law or fact common to the members of the class will satisfy

10  the commonality requirement."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011).

11       Courts routinely find commonality where, as here, the class claims arise from the

12  defendant's uniform course of conduct.  *See, e.g.*, *Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D.

13  Cal. 2014) ("Here, Plaintiff argues his RICO claim raises common questions as to 'Trump's

14  scheme and common course of conduct, which ensnared Plaintiff[] and the other Class Members

15  alike.'  The Court agrees."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D.

16  Cal. 2006) (finding common core of factual and legal issues in "the questions of whether Allianz

17  entered into the alleged conspiracy and whether its actions violated the RICO statute.").[7]

18       Here, the Settlement Class claims are rooted in commons questions of fact as to

19  Defendants' fraudulent scheme to deceive regulators and consumers as to the true nature of

20  EcoDiesel emissions and the hidden technology that made it possible.  *See, e.g.*, SAC at ¶ 325;

21  *see also Volkswagen*, 2016 WL 4010049, at *10 (similar scheme).  These common questions will,

22  in turn, generate common answers "apt to drive the resolution of the litigation" for the Settlement

23  Class as a whole.  *See Dukes*, 564 U.S. at 350.  As the Settlement Class's "injuries derive from

24  _____

25  [7] Likewise, courts routinely find commonality in cases where uniform misrepresentations and
    omissions were employed to deceive the public.  *See Ries v. Ariz. Beverages USA LLC*, 287
    F.R.D. 523, 537 (N.D. Cal. 2012) ("Courts routinely find commonality in false advertising

26  cases."); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 501-02 (S.D. Cal. 2013) (same); *see also Guido v.
    L'Oreal, USA, Inc.*, 284 F.R.D. 468, 478 (C.D. Cal. 2012) (whether misrepresentations "are

27  unlawful, deceptive, unfair, or misleading to reasonable consumers are the type of questions
    tailored to be answered in 'the capacity of a classwide proceeding to generate common answers

28  apt to drive the resolution of the litigation'") (quoting *Dukes*, 564 U.S. at 350).

[D]efendants' alleged 'unitary course of conduct,'" Plaintiffs have "'identified a unifying thread that warrants class treatment.'" *Sykes v. Mel Harris & Assocs. LLC*, 285 F.R.D. 279, 290 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015). Just like *Volkswagen*, "[w]ithout class certification, individual Class Members would be forced to separately litigate the same issues of law and fact which arise from Volkswagen's use of the defeat device and Volkswagen's alleged common course of conduct." 2016 WL 4010049, at *10 (citation omitted).

### c.   The Settlement Class Representatives' Claims Are Typical of Other Class Members' Claims.

Rule 23(a)(3)'s typicality requirement counsels that "'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting Fed. R. Civ. P. 23(a)(3)). "Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020). Typicality "assure[s] that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanlon*, 976 F.2d at 508). Thus, where a plaintiff suffered a similar injury and other class members were injured by the same course of conduct, typicality is satisfied. *See Parsons*, 754 F.3d at 685; *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.").

Here, the same course of conduct that injured the Settlement Class Representatives injured other Settlement Class Members in the same way. The 60 Settlement Class Representatives, like other Settlement Class Members, purchased or leased Eligible Vehicles that emit excessive NOx pollutants without knowing the truth about the Vehicles' emissions, and include both current and former owners and lessees, from 42 states. Like all Class Members, the Settlement Class Representatives have testified that they would not have done so, or would have paid less, had the

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1673575.8

1   truth been disclosed.  And finally, both the Representatives and Class Members will similarly—

2   and equitably—benefit from the relief provided by the Settlement.  The typicality requirements

3   are satisfied.  *See Volkswagen*, 2016 WL 4010049, at *11 (typicality satisfied for comparable

4   settlement class).

5                    **d.      The Settlement Class Representatives and Class Counsel Have
                              and Will Protect the Interests of the Settlement Class.**

6

7          Rule 23(a)(4)'s adequacy requirement is met where, as here, "the representative parties

8   will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "This

9   requirement is rooted in due-process concerns—'absent class members must be afforded adequate

10  representation before entry of a judgment which binds them.'"  *Radcliffe v. Experian Info. Sols.,*

11  *Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020).  Adequacy entails

12  a two-prong inquiry: "'(1) do the named plaintiffs and their counsel have any conflicts of interest

13  with other class members and (2) will the named plaintiffs and their counsel prosecute the action

14  vigorously on behalf of the class?'"  *Evon*, 688 F.3d at 1031 (quoting *Hanlon*, 150 F.3d at 1020).

15  Both prongs are readily satisfied here.

16         The Settlement Class Representatives have no interests antagonistic to Settlement Class

17  Members and will continue to vigorously protect class interests, as they have throughout this

18  litigation.  *See Clemens v. Hair Club for Men, LLC*, No. C 15-01431 WHA, 2016 WL 1461944,

19  at *2-3 (N.D. Cal. Apr. 14, 2016).  Indeed, the Settlement Class Representatives "are entirely

20  aligned [with the Settlement Class] in their interest in proving that [FCA and Bosch] misled them

21  and share the common goal of obtaining redress for their injuries."  *Volkswagen*, 2016 WL

22  4010049, at *11.  The Representatives understand their duties as class representatives, have

23  agreed to consider the interests of absent Settlement Class Members, and have actively

24  participated in this litigation.  *See* Cabraser Decl. ¶ 14. *See, e.g.*, *Trosper v. Styker Corp.*, No. 13-

25  CV-0607-LHK, 2014 WL 4145448, at *29 (N.D. Cal. Aug. 21, 2014) ("All that is necessary is a

26  'rudimentary understanding of the present action and … a demonstrated willingness to assist

27  counsel in the prosecution of the litigation.'").  The proposed Settlement Class Representatives

28  are more than adequate.

1   Rule 23(g) requires this Court to appoint class counsel to represent the Settlement Class.

2   *See* Fed. R. Civ. P. 23(g).  At the outset of the MDL, as part of a competitive application process,

3   the Court chose Lead Counsel and each member of the PSC due to their qualifications,

4   experience, and commitment to the successful prosecution of this case.  The criteria that the Court

5   considered in appointing Lead Counsel and the PSC were substantially similar to the

6   considerations set forth in Rule 23(g).  *See, e.g.*, *Clemens*, 2016 WL 1461944, at *2.  Class

7   Counsel, and their respective law firms, have undertaken an enormous amount of work, effort,

8   and expense in this litigation and demonstrated their willingness to devote whatever resources

9   were necessary to see it through to a successful outcome.  *See* Cabraser Decl. ¶ 5.  This Court

10  found at the outset, and they have demonstrated in action, their ability to represent the interests of

11  the Settlement Class.  *See* Dkt. 173.  They should be appointed as Settlement Class Counsel under

12  Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

### 2.   The Settlement Class Meets the Requirements of Rule 23(b)(3).

13  Rule 23(b)(3)'s requirements are also satisfied.  Here, (i) "questions of law or fact

15  common to class members predominate over any questions affecting only individual members";

16  and (ii) a class action is "superior to other available methods for fairly and efficiently adjudicating

17  the controversy."  Fed. R. Civ. P. 23(b)(3).

### a.   Common Issues of Law and Fact Predominate.

19  "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in

20  the case are more prevalent or important than the non-common, aggregation-defeating, individual

21  issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted)).

22  "When 'one or more of the central issues in the action are common to the class and can be said to

23  predominate, the action may be considered proper under Rule 23(b)(3) even though other

24  important matters will have to be tried separately, such as damages or some affirmative defenses

25  peculiar to some individual class members.'"  *Id.*  (citation omitted).  At its core, "[p]redominance

26  is a question of efficiency."  *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012).

27  Thus, "[w]hen common questions present a significant aspect of the case and they can be resolved

- 17 -

1    for all members of the class in a single adjudication, there is clear justification for handling the

2    dispute on a representative rather than on an individual basis."  *Hanlon*, 150 F.3d at 1022.

3         The Ninth Circuit favors class treatment of fraud claims stemming from a "common

4    course of conduct," like the scheme alleged here.  *See In re First Alliance Mortg. Co.*, 471 F.3d

5    977, 990 (9th Cir. 2006); *Hanlon*, 150 F.3d at 1022-23.  Even outside of the settlement context,

6    predominance is readily met for RICO and consumer claims arising from the defendants'

7    fraudulent scheme or common course of conduct.  *See Amchem Prods.*, 521 U.S. at 625; *Wolin*,

8    617 F.3d at 1173, 1176 (consumer claims based on uniform omissions certifiable where

9    "susceptible to proof by generalized evidence," even if individualized issues remain);

10   *Friedman v. 24 Hour Fitness USA, Inc*., No. CV 06-6282 AHM (CTx), 2009 WL 2711956, at *8

11   (C.D. Cal. Aug. 25, 2009) ("Common issues frequently predominate in RICO actions that allege

12   injury as a result of a single fraudulent scheme."); *see also Klay v. Humana, Inc.*, 382 F.3d 1241,

13   1256-57 (11th Cir. 2004) (affirming certification of RICO claim where "all of the defendants

14   operate nationwide and allegedly conspired to underpay doctors across the nation, so the

15   numerous factual issues relating to the conspiracy are common to all plaintiffs [and the] corporate

16   policies constitute[d] . . . the very heart of the plaintiffs' RICO claims").

17        Here, too, questions of law and fact common to the claims of the Settlement Class

18   Members predominate over any questions affecting only individual members, and the underlying

19   class certification briefs allow this Court to conduct the "thorough predominance analysis" that

20   the Ninth Circuit requires.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod.*

21   *Liab. Litig.*, 895 F.3d 597, 609 n.17 (9th Cir. 2018) (distinguishing *In re Hyundai & Kia Fuel*

22   *Econ. Litig.*, 881 F.3d 679, 690 (9th Cir. 2018), which was later vacated).  As in *Volkswagen*, a

23   uniform scheme to mislead regulators and consumers by concealing the defeat devices in the

24   Class Vehicles is central to the claims asserted in the operative complaint.  *Compare, e.g.*,

25   Dkt. 310 (SAC), at ¶¶ 32, 292, 325, 329, *with Volkswagen*, 2016 WL 4010049, at *12.  Plaintiffs

26   here allege Defendants "perpetrated the same fraud in the same manner against all [Settlement]

27   Class Members."  *Volkswagen*, 2016 WL 4010049, at *12.  Predominance is satisfied.

28

1673575.8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

       **b.**    **Class Treatment Is Superior to Other Available Methods for the Resolution of This Case.**

Superiority asks "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In other words, it "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *Wolin*, 617 F.3d at 1175-76. Under Rule 23(b)(3), "the Court evaluates whether a class action is a superior method of adjudicating plaintiff's claims by evaluating four factors:  '(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.'" *Trosper*, 2014 WL 4145448, at *17 (citation omitted).

Class treatment here is far superior to the litigation of thousands of individual consumer actions.  "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023; *see also Wolin*, 617 F.3d at 1176 ("Forcing individual vehicle owners to litigate their cases, particularly where common issues predominate for the proposed class, is an inferior method of adjudication.").  The damages sought by each Settlement Class Member are small relative to the cost of prosecuting each one's individual claims. *See Smith v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104 SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008) (small interest in individual litigation where damages averaged $25,000-$30,000 per year of work).

Class resolution is superior from an efficiency and resource perspective.  Indeed, "[i]f Class Members were to bring individual lawsuits against [Defendants], each Member would be required to prove the same wrongful conduct to establish liability and thus would offer the same evidence." *Volkswagen*, 2016 WL 4010049, at *12.  With a class of approximately 100,000, "there is the potential for just as many lawsuits with the possibility of inconsistent rulings and results." *Id.*  "Thus, classwide resolution of their claims is clearly favored over other means of

adjudication, and the proposed Settlement resolves Class Members' claims at once." *Id.*[8]

Superiority is met here, and Rule 23(e)(1)(B)(ii) is satisfied.

### 3.   The Proposed Settlement Merits Approval Under This District's Procedural Guidance.

This District recently updated its Procedural Guidance for Class Action Settlements.  Its

provisions are relevant to this Agreement are addressed below.

### a.   The Litigation and Settlement Classes Are Essentially Identical.

Where a litigation class has not been certified, the Guidance instructs a party to explain

differences between the settlement class and claims to be released compared to the class and

claims in the operative complaint.  *See Guidance*, Preliminary Approval (1)(a), (1)(c).  Here, the

proposed Settlement Class is essentially identical to the class in the operative complaint.

Dkt. 310 (SAC) at ¶ 258.  The Settlement Class buttons up the class period, which had been left

open in the SAC, and treats Class Members equitably according to their date of purchase or lease

vis-à-vis the EPA's January 12, 2017 NOV.  Such refinement in the definition of the Settlement

Class from that in the SAC is appropriate to facilitate a principled and equitable Settlement.

Those relatively few people who may have been class members under the previously-proposed

definition but are not members of the proposed Settlement Class are not releasing their claims.

### b.   The Settlement Recovery is a Fair Proxy for the Recovery Available if Plaintiffs Had Prevailed on Each of Their Claims.

The Guidance instructs a party to explain the potential class recovery if plaintiffs had fully

prevailed on each of their claims and the factors bearing on the amount of the compromise.  *See*

Procedural Guidance (1)(e).  In this case, Plaintiffs submitted the reports of experts Colin Weir

and Steven Gaskin that present two methods of calculating overpayment damages—one based on

a conjoint analysis and the other based on the EcoDiesel premium overpayment.  The conjoint

---

[8] Moreover, all private federal actions seeking relief for the Settlement Class are before this Court as part of the MDL.  That the JPML saw fit to consolidate all related federal cases demonstrates that a single proceeding is preferable to a multiplicity of lawsuits.  The government's suit is also pending before this Court, thereby enabling this Court to approve and enforce the provisions of the related settlements as a global resolution to this litigation.  The certification of the Settlement Class completes this advantageous unified jurisdiction.  *See Volkswagen*, 2016 WL 4010049, at *12.

1  model, however, was simply "demonstrative" and was to be altered if, for example, a fix became

2  available, as it now has. *See, e.g.*, Dkt. 421 at 3, 5, 13.  Thus, the damages awards under this

3  Settlement are based on the EcoDiesel premium model, which also accords with the Court's

4  recognition of a premium damages model in its Rule 12 Order.  *See* Dkt. 290 at 8-9, 43.

5       If Plaintiffs had fully prevailed on each their claims, it is possible they would have

6  received treble damages under their civil RICO claim.  18 U.S.C. § 1964(c).  But success on this

7  claim was by no means guaranteed, as this Court had cautioned the parties.  And, as general

8  matter, "courts do not traditionally factor treble damages into the calculus for determining a

9  reasonable settlement value." *Rodriguez*, 563 F.3d at 964.  The Settlement secures compensation

10  that meets or significantly exceeds virtually all Class Members' actual single damages, an

11  excellent result by any measure, and avoid the lengthy delay of litigation and appeal, while also

12  enabling the Eligible Vehicles to be expeditiously fixed.

### c.      The Proposed Allocation Plan for the Settlement Fund.

14       The Procedural Guidance requires an explanation of the proposed allocation for the

15  settlement fund.  *See* Procedural Guidance (1)(f).  As explained above, the settlement provides

16  three possible compensation levels tied to a Class Members' status.  *See* supra, § I. The

17  differences reflect an equitable apportionment based on economic principles, and incentivizes

18  owners to have their vehicles' emissions systems fixed as quickly as possible.

### d.      A Substantial Number of Class Members Are Expected and Incentivized To Participate.

21       The Settlement is designed, in conjunction with the Consent Decree, to incentivize and

22  facilitate a minimum claims rate of 85%, and the parties are committed to achieving the highest

23  claims rate possible. Class Members themselves are financially incentivized to participate in the

24  recall, because the Emissions Fix is a prerequisite to compensation for current keyholders.

25  Because both Class Members and Defendants are financially motivated to achieve a high

26  participation rate, the parties anticipate significant participation.  *See* Procedural Guidance (1)(g).

### e.      Reversion

28       The Settlement is designed as a "claims-made" settlement, meaning Defendants will

1673575.8

1   compensate each valid claim for compensation.  Thus "[i]f every consumer comes in for the

2   settlement …, every penny … gets spent." *Volkswagen*, 2016 WL 6248426, at *22.  FCA has

3   strong incentives to compensate as many Class Members as possible, because any money it could

4   potentially save by not compensating Class Members would be lost, in the form of penalties of

5   more than $6,000 per vehicle, for failing the achieve the 85% participation required by the

6   Consent Decree.  *See* Procedural Guidance (1)(h).

7                       **f.      The Settlement Administrator Selection Process and Costs**

8             The Parties solicited bids from five well-known and experienced notice and settlement

9   administration vendors.  *See* Cabraser Decl. ¶ 9.  After reviewing multiple detailed and

10  competitive bids, the Parties agreed on the Angeion Group to serve as the Settlement Claims and

11  Notice Administrator.  Lead Counsel has selected Angeion as the Settlement Claims and Notice

12  Provider in five cases over the last two years, but has also worked with numerous other

13  Settlement Claims and Notice Administrators over this time period.  *Id.*, ¶ 10.  Angeion estimates

14  that the administrative costs of administering the settlement will be approximately $ 1,500,000.

15  *See* Declaration of Steven Weisbrot ("Weisbrot Decl."),  ¶ 53.  FCA will pay these costs.  *See*

16  Settlement Agreement, § 8.4. *See* Procedural Guidance (2).

17                              **g.      Attorneys' Fees**

18            As detailed above, Class Counsel will seek reasonable attorneys' fees, negotiated

19  separately from the Settlement under the Rule 23(h) procedure, which will not reduce Class

20  Members' recovery in any way.  *See supra*, § V. A. 3. C.  *See* Procedural Guidance (6).

21                              **h.      Incentive Awards**

22            Plaintiffs will seek appropriate service awards for Representatives in light of their

23  commitment and dedication to this litigation.  *See supra*, V. A. 4.

24                         **i.      Notice of Compliance with CAFA.**

25            Pursuant to the Settlement Agreements and as required by CAFA, the settling Defendants

26  will serve notices in accordance with the requirements of 28 U.S.C. § 1715(b) within ten days of

27  the filing of this motion.  This Court has jurisdiction over the instant matter pursuant to 28 U.S.C.

28  § 1332(d) and CAFA, which vest the Court with original jurisdiction over any multi-state class

action where the aggregate amount in controversy exceeds $5 million and where the citizenship of any member of the class of plaintiffs is different from that of any defendant.  Because it does not provide for a recovery of coupons (28 U.S.C. § 1712), do not result in a net loss to any Class Member (28 U.S.C. § 1713), and do not provide for payment of greater sums to some Class Members solely on the basis of geographic proximity to the Court (28 U.S.C. § 1714), the Settlement Agreement is fully complies with CAFA.

**j.      Information About Past Distributions in Comparable Class Settlements.**

The Procedural Guidance requests estimates on the number and percentage of claimants based on recent similar settlements.  This case is unusual in that it aims to halt and mitigate ongoing harm as well as compensate damages.  In that respect, it has similarities to, and differences from, the recent 2.0-liter, 3.0-liter, and Bosch class settlements in the VW "Clean Diesel" MDL.  In the recently completed 2.0-liter settlement, approximately 483,000 class members submitted claims for an overall participation rate of nearly 95%.  *See* 11/27/18 Report of Independent Claims Supervisor, Dkt. 5585, available at cand.uscourts.gov/crb/vwmdl.  The 3.0-liter settlement, not yet complete, but with a class size (80,000 vehicles) most similar to this one, has already seen nearly 70,000 claims, and a participation rate exceeding 85% for each subset of 3.0-liter vehicles.  *See* 12/13/18 Claims Supervisor Report, Dkt. 5715.  The $327.5 Bosch Settlement, which involves neither buybacks or repairs, but simply pays compensation ranging from $175 to $1500 to 2.0- and 3.0-liter owners and lessees, while also not yet completed, reflects similarly high claims and distribution rates.

This case will utilize a similar notice and outreach program, government-approved emissions repairs, substantial compensation, and a simplified administration that does not involve buybacks, enabling the reasonable prediction that the participation rate will be similarly high and that most of the money committed to the consumer settlement will be paid out, and addressing the "reversion" inquiry of the Procedural Guidance.  Class Members are not expected to leave Defendants' money on the table at a rate that would impair the Settlement's fairness, adequacy and reasonableness.  Given the significantly smaller Class size and much simpler administration,

1673575.8

1  notice and administration costs, paid by Defendants in addition to Class benefits, will be less than

2  those for the VW-related settlements.

3  ### C.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE.

4

5  Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court

6  "must direct notice in a reasonable manner to all class members who would be bound by the

7  proposal."  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient

8  detail to alert those with adverse viewpoints to investigate and come forward and be heard.'"

9  *Churchill*, 361 F.3d at 575 (citation omitted).  For a Rule 23(b)(3) Settlement class, the Court must

10  "direct to class members the best notice that is practicable under the circumstances, including

11  individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P.

12  23(c)(2)(B).  The best practicable notice is that which is "reasonably calculated, under all the

13  circumstances, to apprise interested parties of the pendency of the action and afford them an

14  opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S.

15  306, 314 (1950).

16  The proposed notice program meets these standards.  The Parties created this proposed

17  notice program—including both the content and the distribution plan—with the Angeion Group,

18  an experienced firm specializing in comprehensive noticed settlement management in complex

19  class litigation.  The Program includes a Short and Long Form Notice, and a comprehensive

20  Settlement Website (www.EcoDieselSettlement.com), that are clear and complete, and that meet

21  all the requirements of Rule 23 and the Procedural Guidance. *See* Procedural Guidance (3).

22  The Long Form Notice is designed to explain Class Members' rights and obligations

23  under the Settlement in clear terms and in a well-organized and reader-friendly format.  It

24  includes an overview of the litigation; an explanation of the Settlement benefits; contact

25  information for Class Counsel; the address for a comprehensive Settlement Website that will

26  house links to the notice, motions for approval, attorneys' fees, and other important documents;

27  instructions on how to access the case docket; and detailed instructions on how to participate in,

28  object to, or opt out of the Settlement.  The Short Form Notice is in eye-catching "postcard" form

- 24 -

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1   conveying the basic structure of the Settlement and designed to capture Class Members' attention

2   with concise, plain language.  It directs readers to the Settlement Website (where the Long Form

3   Notice is available) for more information.[9]  The principal method of reaching Class Members will

4   be through individual direct mail notice, consisting of postcard notices by U.S. first class mail to

5   all readily identifiable Class Members.  Direct mail notice will be coupled with individual notice

6   by email (designed specifically to avoid spam filters), a robust paid-media campaign including

7   national newspapers and magazines and digital banner advertisement, a toll-free telephone

8   number and a Settlement Website.  Weisbrot Decl. ¶¶ 10-12, 16-43.  This Notice Plan, grounded

9   in individual notice, comports with accepted standards and with this District's Procedural

10   Guidance regarding notice and opt-outs.

11            **D.        THE PROPOSED FINAL APPROVAL HEARING SCHEDULE**

12            The last step in the settlement approval process is the fairness hearing, at which the Court

13   may hear any evidence and argument necessary to evaluate the Settlement and the application for

14   attorneys' fees and costs.  The Parties propose a detailed schedule for final approval and

15   implementation in ¶ 12.3 of the Settlement Agreement, and incorporate it by reference herein.

16   **VI.    CONCLUSION**

17            Plaintiffs respectfully request that the Court (1) determine under Rule 23(e)(1) that it is

18   likely to approve the Settlement and certify the Settlement Class; (2) direct notice to the Class

19   through the proposed notice program; and (3) schedule the final approval hearing under

20   Rule 23(e)(2).

21

22

23

24

25

26

27

28   ---
     [9] These notices cover all of the elements outlined in Rule 23(c)(2)(B).

1673575.8

| | |
|---|---|
| 1 | Dated: January 10, 2019 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |

Dated: January 10, 2019

Respectfully submitted,

LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP

By: */s/ Elizabeth J. Cabraser*
Elizabeth J. Cabraser
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415.956.1000
Facsimile: 415.956.1008
E-mail: *ecabraser@lchb.com*

*Plaintiffs' Lead Counsel*

Roland K. Tellis
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2320
Facsimile: 818.986.9698
Email: *rtellis@baronbudd.com*

W. Daniel ("Dee") Miles, III
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS
& MILES P.C.
218 Commerce Street
Montgomery, AL 36104
Telephone: 800.898.2034
Facsimile: 334.954.7555
Email: *dee.miles@beasleyallen.com*

Lesley E. Weaver
BLEICHMAR FONTI & AULD, LLP
555 12th Street, Suite 1600
Oakland, CA 94607
Telephone: 415.445.4003
Facsimile: 415.445.4020
Email: *lweaver@bfalaw.com*

David S. Casey, Jr.
CASEY GERRY SCHENK FRANCAVILLA
BLATT & PENFIELD LLP
110 Laurel Street
San Diego, CA 92101-1486
Telephone: 619.238.1811
Facsimile: 619.544.9232
Email: *dcasey@cglaw.com*

Steve W. Berman
HAGENS BERMAN
1918 8th Avenue, Suite 3300
Seattle, WA 98101
Telephone: 206.623.7292
Facsimile: 206.623.0594
Email: *steve@hbsslaw.com*

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: 206.623.1900
Facsimile: 206.623.3384
Email: *lsarko@kellerrohrback.com*

Joseph F. Rice
MOTLEY RICE, LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464
Telephone: 843.216.9000
Facsimile: 843.216.9450
Email: *jrice@motleyrice.com*

Rachel L. Jensen
ROBBINS GELLER RUDMAN & DOWD
LLP
655 West Broadway, Suite 1900
San Diego, CA 98101
Telephone: 619.231.1058
Facsimile: 619.231.7423
Email: *rachelj@rgrdlaw.com*

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1673575.8

1
2
3
4

Stacey P. Slaughter
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: 612.349.8500
Facsimile: 612.339.4181
Email: *sslaughter@robinskaplan.com*

5

*Plaintiffs' Steering Committee*

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that, on January 10, 2019, service of this document was accomplished pursuant to the Court's electronic filing procedures by filing this document through the ECF system.

/s/ *Elizabeth J. Cabraser*
Elizabeth J. Cabraser

MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT AND DIRECTION OF NOTICE
CASE NO. 3:17-MD-2777-EMC

1673575.8