UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHRYSLER-DODGE-JEEP ECODIESEL® MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>ALL ACTIONS | Case No. MDL 2777 EMC<br><br>**DECLARATION OF KENNETH R. FEINBERG IN SUPPORT OF THE MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**<br><br>The Honorable Edward M. Chen |

I, KENNETH R. FEINBERG, hereby declare under penalty of perjury as follows:

1. I am the Court-appointed Settlement Master in the above referenced action. I have personal knowledge of the matters stated below.

**I.   BACKGROUND**

2. I have acted as an independent, neutral mediator for more than 30 years, retained by private parties and federal and state courts, to design and administer mediation procedures aimed at resolving thousands of complex disputes. I have acted as a mediator in a wide range of disputes, including mass torts, insurance coverage, contracts, and securities and antitrust litigation. In some of these disputes, I have been retained by the litigants to act as the neutral mediator. In other disputes, I have been appointed by the court to serve as the mediator. *See, e.g., In Re Agent Orange*, 611 F. Supp. 1396 (1985). And, after the September 11 terrorist attacks, I was appointed by the Attorney General of the United States to act as the Special Master/Administrator of The Federal September 11 Victim Compensation Fund of 2001. *See* 49 U.S.C. §40101; 28 C.P.R. §§ 104.2, *et seq.* (2003)

3. I have also been appointed by federal and state judges to act as the independent neutral Distribution Agent in administering class action settlements in complex commercial and

tort cases, including the allocation and distribution of class settlement proceeds to eligible claimants. *See, e.g., Sec. and Exch. Comm'n v. Maurice R. Greenberg and Howard I. Smith*, 09-Civ.-6939 (S.D.N.Y. 2011); *In Re Agent Orange*, 611 F. Supp. 1396 (1985); *United States v. Computer Associates Int'l, Inc.*, 04-cr-837 (E.D.N.Y. 2007); *cf. The Federal September 11 Victim Compensation Fund of 2001*, 49 U.S.C. § 40104; 28 C.P.R. §§ 10-4.2, et seq. (2003); The Gulf Coast Claims Facility[1];1 GM Ignition Compensation Claims Resolution Facility, Final Protocol for Compensation of Certain Death and Physical Injury Claims Pertaining to the GM Ignition Switch Recall (June 30, 2014).

4. My curriculum vitae is incorporated by reference. *See* Dkt. 182-1 (Kenneth Feinberg biography and professional experience).

5. On July 13, 2017, the Court appointed me as Settlement Master "to facilitate settlement discussions among all parties in this multi-district litigation." *See* Dkt. 184, Pretrial Order No. 6: Order Appointing Kenneth Feinberg as Settlement Master ("PTO 6"). That Order established my authority and discretion "to schedule . . . settlement discussions; to decide who shall participate in the discussions, including what party representatives are needed; and to choose where and how the discussions are to occur." PTO 6 at ¶ 3. The Order permitted me to have ex parte communications with any Party[2] (including a party representative), and provided for those communications to remain confidential per the party's request. *Id.* at ¶ 5. It further permitted my communication, with the parties' agreement, of "confidential information" to the Court. *Id.* at ¶ 6.

6. Without breaching or waiving any designation of confidentiality, this declaration describes the serious, informed, and arm's length nature of settlement negotiations in this matter.

7. In the event the proposed Settlement Agreement does not receive the Court's final approval, this declaration and the statements contained herein are without prejudice to the parties' respective positions on the merits of this Action.

---

[1] *See* https://www.whitehouse.gov/blog/2010/06/16/important-step-towards-making-people-gulfcoast-whole-again ("BP and the Administration agreed to appoint Ken Feinberg, who administered the claims process for victims of 9/11, to run the independent claims process").

[2] "Parties" refers to all Plaintiffs and Defendants in this matter, unless otherwise specified.

## II. SETTLEMENT NEGOTIATIONS AND THE PROPOSED AGREEMENT

8. After the Judicial Panel on Multidistrict Litigation transferred certain marketing, sales practices, and products liability lawsuits relating to diesel-powered Jeep Grand Cherokee and Ram 1500 vehicles to this Court for coordinated pretrial proceedings (Dkt. 6) and the Court appointed Lead Counsel and a Plaintiffs' Steering Committee (Dkt. 173), efforts to explore the potential for a comprehensive resolution began quickly. For example, shortly after I was named Settlement Master, I met with Lead Plaintiffs' Counsel and Lead Counsel for Fiat Chrysler and Bosch. For 18 months, from July 2017 through the anticipated filing of the parties' proposed settlement documents with this Court on January 10, 2019, I communicated on a regular basis with the representatives of the MDL parties, including Fiat Chrysler, Bosch, the PSC, the Department of Justice, the Environmental Protection Agency, and the California Air Resources Board. I also met with the MDL parties, alone and in various combinations, in a series of often lengthy briefings, meetings, and negotiation sessions.

9. To assist with the settlement discussions, the parties provided me with information about the litigation, diesel engine and emissions technology, and the underlying claims. I reviewed relevant court filings and became familiar with the nature of the claims through materials and discussions with the parties.

10. The settlement negotiation process included omnibus sessions, meeting with fewer than all parties on particular topics or issues, and meeting or discussions with a single party or expert, in order to discern all parties' views and priorities, to develop and resolve all issues, and to reach a cooperative public/private resolution. This settlement process involved dozens of meetings and in-person conferences at various locations, including San Francisco, New York, and Washington, DC, over an 18-month period. As discussions intensified, they continued, via email correspondence and teleconferences, over evenings and weekends.

11. In addition, I am aware that the parties expended considerable time in discussing, drafting, circulating, and revising the various documents that makeup the resolution before this Court for consideration and approval.

12. This settlement process was iterative and had multiple moving parts and shifting dynamics because it had to address the needs and interests of consumers and state and federal governmental entities. The parties had overlapping claims and authority; no single party could, as a jurisdictional or practical matter, obtain and enforce all the relief sought; and the parties had different priorities and perspectives. This reality, and the nature and scope of the goal to address approximately 100,000 vehicles, complicated and intensified the settlement process, as did the effort to file and coordinate all government and consumer materials in a single comprehensive resolution in one court.

## III. CONCLUSION

13. During the course of the settlement process, I observed extensive preparation, the frank exchange of views, spirited debate, vehement disagreement, thoughtful discussion, attention to detail, and the sharing of extensive data and analyses among all participants. I observed neither bad faith nor collusive behavior from anyone, nor anything less than focused attention and energy toward the resolution of the problems presented in this case. In short and in sum, the resolution before this Court for consideration and approval is the product of good faith, multi-dimensional negotiations among the parties.

14. For the reasons set forth above, I believe the negotiations were serious, informed, and conducted at arm's length.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of January 2019 in Washington, DC.

*Kenneth R. Feinberg*