Kenneth A. Stern
Attorney for All Plaintiffs Rogers, et al
41850 West 11 Mile Road, Suite 121
Novi, Michigan 48375
(248) 347-7300 – Main
(248) 305-3250 - Fax
ken@sternlawonline.com
Michigan Bar No. P30722

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE CHRYSLER-DODGE-JEEP ECODIESEL® MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | **MDL 2777** <br> **CONSUMER AMENDED COMPLAINT** <br> **AND** <br> **RELIANCE UPON JURY TRIAL DEMAND** |
| This Document Relates to: <br><br> ALL ACTIONS <br><br> ANDREW ROGERS, *et al.*, on behalf of themselves and all others similarly situated. <br><br><br> Plaintiffs, <br><br> v. <br><br> FIAT CHRYSLER AUTOMOBILES N.V.; FCA US LLC; SERGIO MARCHIONNE, FORMER CEO OF FCA, FIAT and FIAT SUBSIDIARIES and CHAIRMAN OF FCA and FIAT SUBSIDIARIES, DECEASED, AND HIS SUCCESSOR, MICHAEL MANLEY; VM MOTORI S.p.A.; VM NORTH AMERICA, INC.; ROBERT BOSCH GmbH, and ROBERT BOSCH LLC, <br> Defendants. | **THE HONORABLE EDWARD M. CHEN** |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................ 1

PARTIES ................................................................................. 5

    I.    DEFENDANTS ................................................................ 5
        A. Fiat Chrysler Defendants.................................................. 5
        B. VM Motori Defendants ................................................ 7
        C. Bosch Defendants .................................................... 8

    II.    PLAINTIFFS .................................................................. 10

JURISDICTION AND VENUE ..................................................... 1329

INTRADISTRICT ASSIGNMENT .................................................. 1330

FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS ....................... 1330

    I.    FIAT CHRYSLER SEEKS TO CAPITALIZE ON THE GROW-
        ING U.S. "CLEAN" DIESEL MARKET ....................................... 1330
    II.    DEFENDANTS' DIRTY "ECODIESEL ®" SCHEME ................... 1334
    III.    FCA'S MISLEADING MARKETING ........................................... 1346

        A. Fiat Chrysler Identifies and Combats the "Dirty Diesel" Stigma. 1346
        B. The Eco Diesel Name and Badge Communicate Environ-
          mental Friendliness and Fuel Efficiency ..................................... 1348
        C. FCA Misrepresents the Subject Vehicles to Consumers in a
          Consistent and Pervasive Marketing Campaign ......................... 1353
                1.    Press Releases and Media Communications
                2.    Dealer Training Materials
                3.    Vehicle Brochures
                4.    FCA Websites
                5.    Print Media and Television
         D. The Defendants Knew These Representations Were False
          and Misleading ..................................................................... 1374
                 1.    EGR AECD Strategy: EGR Rate Reduction
                2.    SCR AECD Strategy: Dosing Disablement

IV.   "DIESELGATE" SCANDALIZES THE GLOBAL AUTO
      INDUSTRY ................................................................... 1381

V.    DEFENDANTS ARE CAUGHT CHEATING ................................ 1384
      A. Plaintiffs' Testing Reveals Cheating ........................... 1384
      B. The EPA Issues a Notice of Violation to Fiat and FCA ............. 1386
      C. Bosch Software Documentation Further Verifies the Violations 1387
            1.    AECDs 1 and 2: Reducing or Disabling EGR at
                  Highway Speeds
            2.    AECD 3: EGR Shut-Off for Exhaust Valve Cleaning
            3.    AECD 7: Alternative SCR Dosing Modes
      D. West Virginia University Testing of the Subject Vehicles ......... 1390
      E. European Investigation and Testing ........................... 1391
      F. Joint University of California, San Diego and German Study
            of the Fiat 500X ........................................... 1393

VI.   THE DAMAGE CAUSED BY DEFENDANTS' DIRTY
      DIESEL SCHEME ........................................................ 1394

      ACTION ALLEGATIONS ................................................ 1395
      I       DEFINITIONS ................................................ 1395
      II.     ESTOPPEL ................................................... 1400

CLAIMS FOR RELIEF ........................................................ 1401

      I.      CLAIMS ASSERTED ON BEHALF OF THE NATION-
              WIDE ....................................................... 1401

NATIONWIDE COUNT I RACKETEER INFLUENCED AND
CORRUPT ORGANIZATIONS ACT ("RICO") Violation of 18 U.S.C.
§ 1962(c)-(d)       ........................................................ 1401

              A. Description of the EcoDiesel® RICO Enterprise ............. 1404

                  1.   The Fiat Chrysler Defendants
                  2.   The VM Motori Defendants
                  3.   The Bosch Defendants
              B. The EcoDiesel® RICO Enterprise Sought to Increase
                  Defendants' Profits and Revenues .................................. 1408
              C. Mail and Wire Fraud ....................................... 1412

NATIONWIDE COUNT II FRAUD (Common Law) ................................... 1420
          A. Affirmative Misrepresentation .............................................. 1420
          B. Fraudulent Concealment: Fuel Economy and Per-
              formance Representations ................................................ 1421
          C. Fraudulent Concealment: Installing and Concealing the
              Defeat Devices ................................................................ 1423

NATIONWIDE COUNT III IMPLIED AND WRITTEN WARRANTY
Magnuson – Moss Warranty Act (15 U.S.C. §§ 2301m et seq.) .................... 1425

       1.     Alabama ........................................................................ 1427

              BREACH OF EXPRESS WARRANTY (Ala.Code §§ 7-2A-210

              BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Ala. Code §§ 7-2-314 and 7-2A-212)

       2.     Alaska .......................................................................... 1430

              BREACH OF EXPRESS WARRANTY (Alaska Stat. Ann. §§ 45.02.313 and 45.12.210)

              BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212)

       3.     Arizona ........................................................................ 1434

              BREACH OF EXPRESS WARRANTY (Ariz. Rev. Stat. §§ 47.2313 and 47-2A210)

              BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Ariz. Rev. Stat. §§ 47-2314 and 47-2A212)

       4.     Arkansas ...................................................................... 1437

              BREACH OF EXPRESS WARRANTY (Ark. Code Ann.

§§4-2-313 and 4-2A-210

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Ark. Code Ann. §§ 4-2-314 and
4-2A-212)

5.      California ........................................................... 1440

BREACH OF EXPRESS WARRANTY (Cal. Com. Code
§§ 2313 and 10210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Cal. Com. Code §§ 2341 and
10212)

VIOLATIONS OF SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF
EXPRESS WARRANTIES (Cal. Civ. Code §§ 1791.2
& 1793.2(d))

VIOLATIONS OF SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY (Cal. Civ.
Code §§ 1791.1 and 1792)

BREACH OF EXPRESS CALIFORNIA EMISSIONS
WARRANTIES (Cal. Civ. Code § 1793.2 et. seq.)

6.      Colorado ........................................................... 1449

BREACH OF EXPRESS WARRANTY (Colo. Rev. Stat.
§§ 4-2-313 and 4-2.5-210)

BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (Colo. Rev. Stat. §§ 4-2-313 and
4-2.5-212)

7.      Connecticut ....................................................... 1452

BREACH OF EXPRESS WARRANTY (Conn. Gen. Stat.

Ann. § 42A-2-313)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Conn. Gen. Stat. Ann. § 42A-
2-314)

8.    Delaware ........................................................................ 1455

BREACH OF EXPRESS WARRANTY (6 Del. Code §§
2-313 and 2A-210)

BREACH OF THE IMPLIED WARRANTY OF
MERCHANTABILITY (6 Del. Code §§ 2-314 and
2A-212)

9.    District of Columbia ........................................................ 1458

BREACH OF EXPRESS WARRANTY (D.C. Code §§
28:2-313 and 28:2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (D.C. Code §§ 28:2-314 and
28:2A-212)

10.    Florida ........................................................................... 1461

BREACH OF EXPRESS WARRANTY (Fla. Stat. §§
672.313 and 680.21)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Fla. Stat. §§ 672.314 and 680.212)

11.    Georgia .......................................................................... 1465

BREACH OF EXPRESS WARRANTY (Ga. Code. Ann.
§§ 11-2-313 and 11-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Ga. Code. Ann. §§ 11-2-314 and
11-2A-212)

v

12.     Hawaii .............................................................. 1469

        BREACH OF EXPRESS WARRANTY (Haw. Rev. Stat.
        §§ 490:2-313 and 490:2A-210)

        BREACH OF THE IMPLIED WARRANTY OF
        MERCHANTABILITY (Haw. Rev. Stat. §§ 490:2-314
        and 490:2A-212)

13.     Idaho ............................................................... 1472

        BREACH OF EXPRESS WARRANTY (Idaho Code §§
        28-2-313 and 28-12-210))

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (Idaho Code §§ 28-2-314 and
        28-12-212)

14.     Illinois .............................................................. 1475

        BREACH OF EXPRESS WARRANTY (810 Ill. Comp. Stat.
        §§ 5/2-313 and 5/2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (810 Ill. Comp. Stat. §§ 5/2-314
        and 5/2A-212)

15.     Indiana ............................................................. 1479

        BREACH OF EXPRESS WARRANTY (Ind. Code §§ 26-1-2-
        313 and 26-1-2.1-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (Ind. Code §§ 26-1-2-314 and
        26-1-2.1-212)

16.     Iowa ................................................................. 1482

        BREACH OF EXPRESS WARRANTY (Iowa Code §§

554.2313 and 554.13210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Iowa Code §§ 554.2314 and
554.13212)

17.     Kansas ................................................................... 1484

BREACH OF EXPRESS WARRANTY (Kan. Stat. Ann.
§§ 84-2-314 and 84-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Kan. Stat. Ann. §§ 84-2-314 and
84-2A-212)

18.     Kentucky ................................................................ 1489

BREACH OF EXPRESS WARRANTY (Ky. Rev. Stat.
§§ 335.2-313 and 355.2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Ky. Rev. Stat. §§ 335.2-314 and
355.2A-212)

19.     Louisiana ............................................................... 1492

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY / WARRANTY AGAINST
REDHIBITORY DEFECTS (La. Civ. Code Art. 2520, 2524)

20.     Maine .................................................................... 1493

BREACH OF EXPRESS WARRANTY (Ma. Rev. Stat. Tit.
11 §§ 2-313 and 2-1210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Me. Rev. Stat. Tit. 11 §§ 2-314
and 2-1212

21.     Maryland ............................................................... 1496

vii

BREACH OF EXPRESS WARRANTY (Md. Code, Com. Law §§ 2-313 and 2a210)

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Md. Code Com. Law §§ 2-314 and 2A-212)

22.     Massachusetts ..................................................................... 1499

BREACH OF EXPRESS WARRANTY (Mass. Gen. Laws Ch. 106 §§ 2-313 and 2A-210)

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Mass. Gen. Laws Ch. 106 §§ 2-314 and 2A-212)

23.     Michigan ........................................................................... 1502

BREACH OF EXPRESS WARRANTY (Mich. Comp. Laws §§ 440.2313 and 440.2860)

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Mich. Comp. Laws §§ 440.2314 and 440.2860)

24.     Minnesota .......................................................................... 1505

BREACH OF EXPRESS WARRANTY (Minn. Stat. §§ 336.2-313 and 336.2A-210)

BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (Minn. Stat. §§ 336.2-314 and 336.2A-212)

25.     Mississippi ......................................................................... 1508

BREACH OF EXPRESS WARRANTY (Miss. Code §§ 75-2-313 and 75-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Miss. Code §§ 75-2-314 and
75-2A-212)

26.     Missouri ........................................................................... 1511

BREACH OF EXPRESS WARRANTY (Mo. Stat. §§
400.2-313 and 400.2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Mo. Stat. §§ 400.2-314 and
400.2A-212)

27.     Montana ........................................................................... 1515

BREACH OF EXPRESS WARRANTY (Mont. Code §§
30-2-313 and 30-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Mont. Code §§ 30-2-314 and
30-2A-212)

28.     Nebraska ........................................................................... 1518

BREACH OF EXPRESS WARRANTY (Neb. Rev. St.
U.C.C. §§ 2-313 and 2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY Neb. Rev. St. U.C.C. §§ 2-314 and
2A-212)

29.     Nevada ........................................................................... 1521

BREACH OF EXPRESS WARRANTY (Nev. Rev. Stat.
§§ 104.2313 and 104A.2210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Nev. Rev. Stat. §§ 104.2314 and
104A.2212)

30.     New Hampshire  ................................................ 1524

        BREACH OF EXPRESS WARRANTY (N.H. Rev. Stat.
        §§ 382-A:2-313 and 2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (N.H. Rev. Stat. §§ 382-A:2-314
        and 2A-212)

31.     New Jersey  ...................................................... 1527

        BREACH OF EXPRESS WARRANTY (N.J. Stat. Ann. §
        12A:2-313 and 2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (N.J. Stat. Ann. § 12A:2-314 and
        2A-212)

32.     New Mexico  .................................................... 1530

        BREACH OF EXPRESS WARRANTY (N.M. Stat.
        §§ 55-2-313 and 55-2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (N.M. Stat. §§ 55-2-314 and
        55-2A-212)

33.     New York  ....................................................... 1533

        BREACH OF EXPRESS WARRANTY (N.Y. U.C.C. Law
        §§ 2-313 and 2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (N.Y. U.C.C. Law §§ 2-314 and
        2A-212)

34.     North Carolina  ................................................ 1537

        BEACH OF EXPRESS WARRANTY (N.C. Gen. Stat.

§§ 25-2-313 and 252A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.C. §§ 25-2-314 and 252A-212)

35.　North Dakota ................................................................ 1541

BREACH OF EXPRESS WARRANTY (N.D. Cent. Code
§§ 41-02-30 and 41-02.1-19)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (N.D. Cent. Code §§ 41-02-31 and
41-02.1-21)

36.　Ohio　................................................................ 1544

BREACH OF EXPRESS WARRANTY (Ohio Rev.
Code § 1302.26 et. seq. (U.C.C. §2.313))

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Ohio Rev. Code Ann. §§ 1302.27
and 1310.19)

37.　Oklahoma ................................................................ 1547

BREACH OF EXPRESS WARRANTY (Okla. Stat. Tit.
12A §§ 2-313 and 2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Okla. Stat. Tit. 12A §§ 2-314 and
2A-212)

38.　Oregon ................................................................ 1551

BREACH OF EXPRESS WARRANTY (Or. Rev. Stat.
§§ 72.3130 and 72A.2100)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Or. Rev. Stat. §§72.3140 and
72A.2120)

39.     Pennsylvania ................................................................... 1554

        BREACH OF EXPRESS WARRANTY (13 Pa. Cons.
        Stat. §§2313 and 2A210)

        BREACH OF IMPLIED WARRANTY OF
         MERCHANTABILITY (13 Pa. Cons. Stat. §§ 2314 and
        2A212)

40.     Rhode Island .................................................................... 1558

        BREACH OF EXPRESS WARRANTY (R.I. Gen. Laws
        §§ 6A-2-313 and 6A-2.1-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (R.I. Gen. Laws §§ 6A-2-314 and
        6A-2.1-212)

41.     South Carolina .................................................................. 1561

        BREACH OF EXPRESS WARRANTY (S.C. Code §§
        36-2-313 and 36-2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (S.C. Code §§36-2-314 and
        36-2A-212)

42.     South Dakota ................................................................... 1564

        BREACH OF EXPRESS WARRANTY (S.D. Codified
        Laws §§ 57A-2-313 and 57A-2A-210)

        BREACH OF IMPLIED WARRANTY OF
        MERCHANTABILITY (S.D. Codified Laws §§ 57A-2-314
        and 57A-2A-212)

43.     Tennessee ........................................................................ 1567

        BREACH OF EXPRESS WARRANTY (Tenn. Code §§

47-2-313 and 47-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Tenn. Code §§ 47-2-314 and
47-2A-212)

44.    Texas ................................................................... 1570

BREACH OF EXPRESS WARRANTY (Tex. Bus. & Com.
Code §§ 2.313 and 2A.210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Tex. Bus. & Com. Code §§ 2.314
and 2A.212)

45.    Utah ................................................................... 1576

BREACH OF EXPRESS WARRANTY (Utah Code Ann.
§§ 70A-2-313 and 70A-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Utah Code Ann. §§ 70A-2-314 and
70A-2A-212)

46.    Vermont ................................................................... 1579

BREACH OF EXPRESS WARRANTY (Vt. Stat. Tit. Ann.
9A, §§ 2-313 and 2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Vt. Stat. Ann. Tit. 9A, §§ 2-314
and 2A-212)

47.    Virginia ................................................................... 1582

BREACH OF EXPRESS WARRANTY (Va. Code Ann.
§§ 8.2-313 and 8.2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Va. Code Ann. §§ 8.2-314

xiii

and 8.2A-212)

48.      Washington ....................................................... 1585

BREACH OF EXPRESS WARRANTY (Wash. Rev.
Code §§ 62A.2-313 and 62A.2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Wash. Rev. Code §§ 62A.2-314
and 62A.2A-212)

49.      West Virginia ................................................... 1588

BREACH OF EXPRESS WARRANTY (W.Va. Code
§§ 46-2-313 and 46-2A-210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (W. Va. Code §§ 46-2-314 and
46-2A-212)

50.      Wisconsin ........................................................ 1592

BREACH OF EXPRESS WARRANTY (Wis. Stat. §§
402.313 and 411.210)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Wis. Stat. §§ 402.314 and
411.212)

51.      Wyoming .......................................................... 1595

BREACH OF EXPRESS WARRANTY (Wyo. Stat. §
34.1-2-313)

BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Wyo. Stat. §§ 34.1-2-314 and
34.1-2A-212)

II.    STATE CONSUMER PROTECTION CLAIMS ............................. 1598

VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT (Ala. Code § 8-19-1, et seq.) ......................................... 1598

VIOLATIOIN OF THE ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT (Alaska Stat. Ann. § 45.50.471, et. seq.) ................................................................ 1602

VIOLATIOINS OF CONSUMER FRAUD ACT (Ariz. Rev. Stat. § 44-1521, et. seq.) ....................................................................... 1605

ARKANSAS COUNT I VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT (Ark. Code Ann. § 4-88-101, et. seq.) ....... 1608

VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code § 1750, et. seq.) ........................................... 1611

UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES UNDER THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17200, et. seq.) ................................ 1614

FALSE ADVERTISING UNDER THE CALIFORNIA UNFAIR COMPETITION LAW (Cal. Bus. & Prof. Code § 17500, et. seq.) ...... 1616

FAILURE TO RECALL/RETROFIT UNDER CALIFORNIA LAW VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT (Colo. Rev. Stat. § 6-1-101, et. seq.) ........................................... 1618

VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT......... ...................................................................... 1620

VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT (Conn. Gen. Stat. § 42-110a, et. seq.) .................... 1623

VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT AND DECEPTIVE TRADE PRACTICES ACT (6 Del. Code § 2513, et. seq., and 6 Del. Code § 2531, et. seq.) ............................................ 1626

VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT (D.C. Code § 28-3901, et.seq. ................................... 1629

VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE
PRACTICES ACT (Fla. Stat. § 501.201, et. seq.) ................................ 1632

VIOLATIONS OF GEORGIA'S UNIFORM DECEPTIVE TRADE
PRACTICES ACT (Ga. Code Ann. § 10-1-370, et. seq.) ..................... 1635

VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
(Ga. Code Ann. § 10-1-390, et. seq.) ...................................... 1638

UNFAIR AND DECEPTIVE ACTS IN VIOLATION OF HAWAII
LAW (Haw. Rev. Stat. § 480, et. seq.) ................................... 1641

VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
(Idaho Code § 48-601, et. seq.) ........................................... 1644

VIOLATIONS OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1, et. seq.
and 510/2) ............................................................. 1647

VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES
ACT (Ind. Code § 24-5-0.5-3) ............................................ 1650

VIOLATIONS OF THE PRIVATE RIGHT OF ACTION FOR
CONSUMER FRAUDS ACT (Iowa Code § 714h.1, et. seq.) ............. 1654

VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
(Kan. Stat. Ann. § 50-623, et. seq.) ...................................... 1656

VIOLATIONS OF THE LOUISIANA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW (La. Rec. Stat.
§ 51:1401, et. seq.) ..................................................... 1659

VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT (Me.
Rev. Stat. Ann. Tit. 5 § 205-a, et. seq.) ................................ 1662

VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION
ACT (Md. Code Com. Law § 13-101, et. seq.) ..................... 1665

DECEPTIVE ACTS OR PRACTICES PROHIBITED BY MASSACHUSETTS LAW (Mass. Gen. Laws Ch. 93a, § 1, et. seq.) .. 1668

VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT (Mich. Comp. Laws § 445.903, et. seq.) ..................................... 1671

VIOLATIONS OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (Minn. Stat. § 325f.68, et. seq.) .............. 1675

VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (Minn. Stat. § 325d.43, et. seq.) .............. 1676

VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT (Miss. Code Ann. § 75.24-1, et. seq.) ..................................... 1679

VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT (Mo. Rev. Stat. § 407.010, et. seq.) ....................................... 1682

VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973 (Mont. Code Ann. § 30-14-101, et. seq.) ................................................................. 1685

VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT (Neb. Rev. Stat. § 59-1601, et. seq.) ............................................ 1688

VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT (Nev. Rev. Stat. § 598.0903, et. seq.) ........................................... 1690

VIOLATION OF N.H. CONSUMER PROTECTION ACT (N.H. Rev. Stat. Ann. § 358-a:1, et. seq.) ............................................... 1693

VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J. Stat. Ann. § 56:8-1, et. seq.) ........................................ 1696

VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT (N.M. Stat. Ann. §§ 57-12-1, et. seq.) ................................... 1699

VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (N.Y. Gen. Bus. Law § 349) ................................................ 1701

VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 (N.Y. Gen. Bus. Law § 350) ................................................................ 1705

VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT (N.C. Gen. Stat. §§ 75-1.1, et. seq.) ....................................................................................... 1707

VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT (N.D. Cent. Code § 51-15-02) ...................................................... 1711

VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT (Ohio Rev. Code §§ 1345.01, et. seq.) ......................................... 1713

VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT (Ohio Rev. Code § 4165.01, et. seq.) ........................................... 1716

VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT (Okla. Stat. Tit. 15 § 751, et. seq.) ......................................... 1719

VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (Or. Rev. Stat. §§ 646.605, et. seq.) ...................... 1722

VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 Pa. Stat. Ann. § 201-1, et. seq.) ......................................................... 1724

VIOLATION OF THE RHODE ISLAND DECEPTIVE TRADE PRACTICES ACT (R.I. Gen. Laws § 6-13.1, et. seq.) ......................... 1727

VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT (S.C. Code Ann. § 39-5-10, et. seq.) ...................... 1730

VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT (S.C. Code Ann. § 56-15-10, et. seq.) ........................................... 1733

VIOLATION OF THE SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION LAW (S.D. Codified Laws § 37-24-6) ...................................................... 1735

VIOLATIONS OF TENNESSEE CONSUMER PROTECTION ACT OF 1977 (Tenn. Code Ann. § 47-18-101, et. seq.) ................................ 1738

VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT (Tex. Business & Commercial Code §§ 17.41, et. seq.) ......................................................... 1741

VIOLATIONS OF UTAH CONSUMER SALES PRACTICES ACT (Utah Code Ann. § 13-11-1, et. seq.) ..................................................... 1745

VIOLATION OF UTAH TRUTH IN ADVERTISING LAW (Utah Code Ann. § 13-11a-1, et. seq.) ............................................................. 1747

VIOLATION OF VERMONT CONSUMER PROTECTION ACT (Vt. Stat. Ann. Tit. 9, § 2451, et. seq.) ......................................................... 1750

VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (Va. Code Ann. §§ 59.1-196, et. seq.) .......................................... 1753

VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT (Wash. Rev. Code Ann. §§ 19.86.010, et. seq.) . 1755

VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT (W. Va. Code § 46A-1-101, et. seq.) ........................................... 1758

VIOLATIONS OF THE WISCONSIN DECEPTIVE TRADE PRACTICES ACT (Wis. Stat. § 101.18) .............................................. 1761

VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT (Wyo. Stat. §§ 40-12-101, et. seq.) ................................................. 1764

III.    PRAYER FOR RELIEF ................................................................. 1767

IV.    RELIANCE UPON DEMAND FOR JURY TRIAL ....................... 1769

xix

Plaintiffs herein described bring this action on behalf of themselves and all others similarly situated, against (1) the Defendants collectively referred to as "Fiat Chrysler": FCA US LLC ("FCA"), Fiat Chrysler Automobiles N.V. ("Fiat"), and Sergio Marchionne ("Marchionne"); (2) the Defendants collectively referred to as "VM Motori": VM Motori S.p.A. ("VM Italy") and VM North America, Inc. ("VM America"); and (3) the Defendants collectively referred to as "Bosch": Robert Bosch GmbH ("Bosch GmbH"), and Robert Bosch, LLC ("Bosch LLC"). Plaintiffs allege the following based upon information and belief, the investigation of counsel, and personal knowledge as to the factual allegations pertaining to themselves.

## **INTRODUCTION**

1.      This nationwide action arises out of an international race to the bottom.  Fiat Chrysler, a rival of automaker Volkswagen struggling to compete on the world stage, sought to grab a piece of the U.S. "clean" diesel market with 2014-2016 EcoDiesel® trucks marketed under the Jeep Grand Cherokee and Ram 1500 model names (the "Subject Vehicles"). But like Volkswagen, Fiat Chrysler fought dirty. That is, like Volkswagen did with its "clean diesels," Fiat Chrysler concealed from regulators and consumers alike that the EcoDiesel® trucks were far from "Eco."

2.      As the Environmental Protection Agency ("EPA") has since discovered, Fiat Chrysler, by and through FCA, concealed emission treatment software features in the Subject Vehicle engine's diesel controls on applications for EPA Certificates of Conformity ("COCs") and California Air Resources Board ("CARB") Executive Orders ("EOs"). This hidden software, designed and implemented by Bosch GmbH and Bosch LLC, allowed the Subject Vehicles to "pass" emission testing and obtain COCs and EOs so that Fiat Chrysler could import and sell the

Subject Vehicles in the U.S. and California, respectively. Once on America's roads, however, the emission controls are de-activated or severely restricted such that the Subject Vehicles spew much higher amounts of polluting nitrogen oxides ("NOx") than permitted by law.

3.  On January 12, 2017, the EPA issued a Notice of Violation ("NOV") against Fiat and FCA for failing "to disclose [eight] Auxiliary Emission Control Devices (AECDs)" in the 2014-2016 FCA Ram 1500s and Jeep Grand Cherokees.[1] In the NOV, the EPA explained that, despite having the opportunity to do so, Fiat and FCA failed to refute that the "principal effect of one or more of these AECDs was to bypass, defeat, or render inoperative one or more elements of design installed to comply with emissions standards under the [Clean Air Act]."

4.  The same day, CARB publicly announced that it, too, had notified Fiat and FCA of its violations after detecting the AECDs in their 2014, 2015, and 2016 Jeep Grand Cherokee and Ram 1500 EcoDiesel® vehicles. CARB also said Fiat and FCA failed to disclose the devices, which can significantly increase NOx emissions when activated. "Once again," observed CARB Chair Mary D. Nichols, "a major automaker made the business decision to skirt the rules and got caught."[2]

5.  The U.S. has since sued FCA, Fiat, VM Italy, and VM America for violating the Clean Air Act ("CAA") and applicable regulations, seeking injunctive relief and civil penalties.[3] As the U.S. has found, "one or more of these undisclosed software features, alone or in combination with one or more of the others, bypass, defeat and/or render inoperative the [Subject]

---

[1] EPA's January 12, 2017 Notice of Violation to Fiat Chrysler Automobiles, https://www.epa.gov/sites/production/files/2017-01/documents/fca-caa-nov-2017-01-12.pdf.
[2] EPA News Release, *EPA Notifies Fiat Chrysler of Clean Air Act Violations* (Jan. 12, 2017), https://www.epa.gov/newsreleases/epa-notifies-fiat-chrysler-clean-air-act-violations.
[3] *United States v. Fiat US LLC, et al.*, No. 2:17-cv-11633-JCO-EAS (E.D. Mich. filed May 23, 2017) (Dkt. No. 1). The action has since been transferred to this Court for coordination with this MDL.

1    Vehicles' emission control system, causing the vehicles to emit substantially higher levels of NOx

2    during certain normal real world driving conditions than during federal emission tests."[4]

3         6.      American consumers were caught in the middle of Fiat Chrysler's scheme.

4    Consumers have been wary of diesel engines as a relic of the past: noisy and spewing thick, toxic

5    smoke. This was an understandable concern. A byproduct of diesel combustion is NOx, a pollutant

6    linked with serious health dangers and climate change. Seeking to expand the diesel market in the

7    U.S., large automakers in the late 2000's sought to reimagine diesel for regulators and consumers

8    alike. For its part, Fiat Chrysler touted its "EcoDiesel" technology as the best of both worlds: a

9    "green" alternative to gasoline with reduced emissions coupled with diesel's benefits of greater

10   torque, power, and fuel efficiency. Fiat Chrysler extracted a premium for these "EcoDiesel" trucks,

11   selling them for thousands of dollars more than the cost of otherwise-comparable gasoline trucks.

12        7.      Contrary to its public representations, and concealed from consumers and

13   regulators alike, Fiat Chrysler secretly programmed its EcoDiesel® vehicles with hidden software

14   features that significantly reduced the effectiveness of the NOx reduction technology during real-

15   world driving conditions. As a result, the Subject Vehicles emitted harmful pollutants at levels that

16   were illegally high and far in excess of what a reasonable consumer would expect from an "Eco"

17   vehicle. Plaintiffs confirmed that the Subject Vehicles produced NOx emissions at an average of

18   222 mg/mile in city driving (four times the Federal Test Procedure ("FTP") standard of 50

19   mg/mile) and 353 mg/mile in highway driving (five times higher than the U.S. highway standard

20   of 70 mg/mile). In many instances, NOx values were in excess of 1,600 mg/mile—*more than 20*

21   *times governmental standards*.

22        8.      Compounding this problem is the interplay between performance and emissions in

---

[4] *Id.* at ¶ 2.

1   diesel engines. Fiat Chrysler could not achieve the fuel economy and performance that it promises

2   for the Subject Vehicles without cheating on emissions—a fact that it concealed from consumers

3   around the country.

4         9.      Fiat Chrysler did not act alone. At the heart of the diesel scandal is Bosch.  Bosch

5   GmbH and Bosch LLC, along with CEO Volkmar Denner ("Denner"), were active and knowing

6   participants in the scheme. Bosch designed, created, and tested the electronic diesel control

7   ("EDC") units that allowed Fiat Chrysler to "pass" emission tests for its COC and EO applications.

8   Bosch went so far as to boast that the "2014 Jeep Grand Cherokee features a Bosch emission

9   system compliant with the most stringent emission regulations in the world. From fuel tank to

10   tailpipe, Bosch is pleased to equip this vehicle with top technologies to give consumers a great

11   driving experience requiring fewer stops at the pump."[5] Bosch has since, however, acknowledged

12   its role in the creation of defeat devices in certain Fiat Chrysler diesel vehicles sold in the European

13   Union ("EU"). VM Italy and VM America also knowingly participated in the scheme by designing,

14   manufacturing, and calibrating the "EcoDiesel" engines in the Subject Vehicles.

15         10.     On behalf of themselves, the Nationwide, and the respective State Plaintiffs,

16   Plaintiffs hereby bring this action for violations of the federal Racketeer Influenced and Corrupt

17   Organizations Act (18 U.S.C. § 1961, *et seq.* ("RICO")); the federal Magnuson-Moss Warranty

18   Act (15 U.S.C. § 2301, *et seq.* ("MMWA")); common law fraud; and the consumer laws of all 50

19   states and the District of Columbia.

20         11.     Plaintiffs bring this action individually and on behalf of all other current and former

---

[5] *Bosch Announces Clean Diesel Technology On 2014 Jeep Grand Cherokee*, PRNewswire (Jan.24,2013),http://www.prnewswire.com/news-releases/bosch-announces-clean-diesel technology-on-2014-jeep-grand-cherokee-188243051.html;http://us.bosch-press.com/ tbwebdb/bosch-usa/enUS/PressText.cfm?CFID=61223175&CFTOKEN=a16399a1447f6b98-4B6F7D4B-A8E6-F415F31B16E0E13CB96A&nh=00&Search=0&id =532

owners or lessees of the Subject Vehicles as defined herein. Plaintiffs seek a buyback program for the Subject Vehicles, monetary damages (including treble damages under RICO), pollution mitigation, business reforms, and injunctive and other equitable relief for Defendants' misconduct related to the design, manufacture, marketing, sale, and lease of the Subject Vehicles, as alleged in this Complaint. Plaintiffs are also entitled to a significant award of punitive or exemplary damages, given that Defendants deliberately deceived Plaintiffs, disregarded their rights to make free and informed consumer choices, damaged them economically, and used them as unwitting puppets in a scheme that impaired the public health for the financial betterment of Defendants.

**PARTIES**

**I. DEFENDANTS**

**A.**            **Fiat Chrysler Defendants**

12.    Defendant **FCA US LLC ("FCA")** is a Delaware limited liability company. Defendant Fiat Chrysler Automobiles N.V. ("Fiat" or, together with FCA, "Fiat Chrysler") is FCA's corporate parent. Fiat's predecessor, Fiat S.p.A., began its acquisition of FCA's predecessor, Chrysler Group LLC, in 2009 and completed it in January 2014, at which time Chrysler Group LLC became a wholly-owned indirect subsidiary of Fiat and was renamed FCA US LLC. FCA's principal place of business and headquarters is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326.

13.    FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled motor vehicles. FCA (like its predecessor, Chrysler) is one of the "Big Three" American automakers (with Ford and General Motors). FCA engages in commerce by distributing and selling new and unused passenger cars and motor vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands. Other major divisions of FCA include Mopar, its automotive parts and accessories division,

and SRT, its performance automobile division.

14.    FCA has designed, manufactured, imported, distributed, offered for sale, sold, and leased two models of vehicle for which the EcoDiesel® option is available—the Ram 1500 and the Jeep Grand Cherokee—with the knowledge and intent to market, sell, and lease them in all 50 states, including California. Moreover, FCA and its agents designed, manufactured, marketed, distributed, warranted, sold and leased the Subject Vehicles in California and throughout the United States. Dealers act as FCA's agents in selling automobiles under the Fiat Chrysler name and disseminating vehicle information provided by Fiat Chrysler to customers.

15.    Fiat, the corporate parent of FCA, is a Dutch corporation headquartered in London, United Kingdom. Fiat owns numerous European automotive brands in addition to FCA's American brands, including Maserati, Alfa Romeo, Fiat Automobiles, Fiat Professional, Lancia, and Abarth. As of 2015, Fiat Chrysler is the seventh largest automaker in the world by unit production.

16.    Subject to a reasonable opportunity for further investigation or discovery, Plaintiffs allege that Fiat employees oversaw or were responsible for approving elements of design and/or strategies related to emission compliance for the Subject Vehicles. Fiat also imported into the United States, sold, offered for sale, introduced into commerce, or delivered the Subject Vehicles, with the intent to market or sell them in all fifty states, including California.

17.    Fiat Chrysler developed and disseminated the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials relating to the Subject Vehicles, with the intent that such documents should be purposely distributed throughout all fifty states, including California. Fiat Chrysler is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

18.     Defendant **Sergio Marchionne ("Marchionne")** was the CEO and Chairman of FCA, the CEO of Fiat, and the Chairman and/or CEO of several other Fiat subsidiaries, including FCA Italy S.p.A., the Italian subsidiary of Fiat headquartered in Turin, Italy at the time and, Michael Manley as his successor and current CEO. Since 2004, Mr. Marchionne was the CEO of Fiat S.p.A., the predecessor of Fiat, and thus, oversaw Fiat's acquisition of both VM Motori and Chrysler Group LLC, the transformation to the current corporate structure, and the creation of FCA. Mr. Marchionne made numerous public statements on behalf of Fiat Chrysler concerning the Subject Vehicles, their EcoDiesel® engines, and their emissions and performance characteristics. In addition to managing and controlling FCA, Mr. Marchionne had a home in the United States, regularly transacted business in the United States, and regularly promoted Fiat Chrysler in the United States. Mr. Marchionne has since passed away and his successor is current CEO Michael Manley.

**B.          VM Motori Defendants**

19.     Fiat also owns several auto parts manufacturers, including Defendant **VM Motori S.p.A. ("VM Italy")**, an Italian corporation headquartered in Cento, Italy, which designs and manufactures diesel engines for automobiles, including the Subject Vehicles. Fiat partially acquired VM Italy in early 2011 by purchasing a 50% stake, and took full ownership by acquiring the remaining 50% from General Motors in October 2013.

20.     Defendant VM North America, Inc. ("VM America" or, together with VM Italy, "VM Motori") is or was a Delaware corporation and wholly-owned subsidiary of Fiat. VM America existed, at all relevant times, to support VM Italy customers and activities in North America. VM America's principal place of business is located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. Both VM Italy and VM America conduct business at that address and

1    report to management at both VM Italy and VM America, including while working on the Subject

2    Vehicles.

3           21.    VM Italy transacts business in the United States. VM Italy employees have been

4    physically present in Auburn Hills, Michigan, while working on engine calibration and air

5    emissions issues related to the Subject Vehicles. Some VM America employees working in Auburn

6    Hills are also employees of VM Italy. VM Italy employees in Italy communicated regularly about

7    the Subject Vehicles with the VM America and VM Italy employees located in Auburn Hills. VM

8    Italy also communicated frequently with FCA about the Subject Vehicles.

9           22.    VM Motori designed, manufactured, calibrated, and delivered the EcoDiesel®

10   engine system for inclusion in the Subject Vehicles, knowing and intending that the Subject

11   Vehicles, along with their engine system, would be marketed, distributed, warranted, sold and

12   leased throughout all 50 states, including California.

13   **C.**        **Bosch Defendants**

14          23.    Defendant **Robert Bosch GmbH ("Bosch GmbH")**—a German multinational

15   engineering and electronics company headquartered in Gerlingen, Germany—is the parent

16   company of Defendant **Robert Bosch LLC ("Bosch LLC" or, with Bosch GmbH, "Bosch")**, a

17   Delaware limited liability company with its principal place of business located at 38000 Hills Tech

18   Drive, Farmington Hills, Michigan 48331.

19          24.    Both Bosch GmbH and Bosch LLC operate under the umbrella of the Bosch Group,

20   which encompasses some 340 subsidiaries and companies. Volkmar Denner ("Denner") is the

21   Chairman and CEO of Bosch GmbH and leader of The Bosch Group. Denner has been Chairman

22   and CEO of Bosch since July 2012, after decades of working in Bosch's Engine ECU Development

23   division, managing the development and sale of automotive engine computers, such as the EDC

1    units that were installed in the Subject Vehicles.

2         25.    The Bosch Group is divided into four business sectors: Mobility Solutions

3    (formerly Automotive Technology), Industrial Technology, Consumer Goods, and Energy and

4    Building Technology. Bosch's sectors and divisions are grouped not by location, but by function.

5    In other words, Mobility Solutions includes knowledgeable individuals at both Bosch GmbH and

6    Bosch LLC. Regardless of whether an individual works for Bosch in Germany or the United States,

7    the employee holds him or herself out as working for Bosch. This collective identity is captured

8    by Bosch's mission statement: "We are Bosch," a unifying principle that links each entity and

9    person within the Bosch Group.

10        26.    Mobility Solutions is the largest Bosch Group business sector. In 2014, the first

11   full year of Subject Vehicle sales, it generated sales of €33.3 billion, amounting to 68% of total

12   group sales.

13        27.    The Bosch Group is one of the leading automotive suppliers globally. In 2015,

14   Mobility Solutions generated sales of $9.5 billion in North America alone.

15        28.    Bosch embeds sales and engineering personnel at customer offices and facilities

16   throughout the world, including automakers like Fiat Chrysler, to work directly on the design, sale,

17   calibration, and configuration of the parts it supplies.

18        29.    Bosch operates 70 locations in the United States, with over 31,000 employees. One

19   of these locations is the Bosch LLC Research and Technology Center North America in Palo Alto,

20   California. One of Bosch's research focuses there is application-specific integrated circuit (ASIC)

21   design and MEMS (microelectromechanical-system) technology. These technologies are used in

22   a variety of automotive applications. Bosch LLC also operates Research and Technology Centers

23   in Pittsburgh, Pennsylvania, and Cambridge, Massachusetts.

9

30.     Bosch developed, tested, configured, manufactured, and supplied the EDC Unit 17, which is the EDC system used in the Subject Vehicles, knowing and intending that the Subject Vehicles, along with the device, would be marketed, distributed, warranted, sold and leased throughout all 50 states, including in California. As set forth in detail herein, at all relevant times, Bosch, VM Motori, and Fiat Chrysler worked collaboratively to program the EDC Unit 17 in the Subject Vehicles.

31.     From at least 2005 to 2015, Bosch and its employees were knowing and active participants in the creation, development, marketing, and sale of engine and emission control software designed to evade emission requirements in vehicles sold in the United States.  These vehicles include the Ram 1500 EcoDiesel® and Jeep Grand Cherokee EcoDiesel®, as well as diesels made by other automakers such as Volkswagen, Audi, and Porsche.

32.     Bosch participated not just in the development of these devices, but also in the scheme to prevent U.S. regulators from uncovering their true functionality. Moreover, Bosch's participation was not limited to engineering these devices. In fact, Bosch marketed "clean diesel" technology in the United States. Bosch was therefore a knowing and active participant in the scheme or common course of conduct with Fiat Chrysler and VM Motori and others to defraud regulators and consumers in the United States.

## II.     PLAINTIFFS

33.     For ease of reference, the following chart identifies the representative Plaintiffs and the state(s) in which they reside and purchased their Subject Vehicles:

10

| Plaintiff - First Name | Plaintiff - Last Name | State of Residence | State of Purchase | Model Year | Make/Model |
|---|---|---|---|---|---|
| Michael Barton | Batman | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Andrew | Rogers | CO | CO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Andrew | Rogers | CO | KY | 2014 | Jeep Grand Cherokee EcoDiesel |
| Andrew | Steele | SC | SC | 2015 | Dodge Ram 1500 EcoDiesel |
| Andrew Curtis & Mimi Elizabeth | Reid | SC | OR | 2016 | Jeep Grand Cherokee EcoDiesel |
| Andy | Twork | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Anne | Anderson | MN | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Arnold Construction Co., Inc. | | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Arturo | Nieves | VA | VA | 2014 | Dodge Ram 1500 EcoDiesel |
| Autry | Hall | AL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Bert | Dodge | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Bill | Bilicki | OH | OH | 2015 | Jeep Grand Cherokee EcoDiesel |
| Brad W. | Lines | AZ | NE | 2016 | Dodge Ram 1500 EcoDiesel |
| Brenda | Dokmonovich | NE | NE | 2014 | Dodge Ram 1500 EcoDiesel |
| Brent | Smith | MN | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Brent | Cole | TX | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Brian & Meredith | Quimby | KS | KS | 2014 | Dodge Ram 1500 EcoDiesel |
| Brian & Kim | Way | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Brian | Barker | KS | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Brittney & Chad | Olsen | NE | NE | 2015 | Jeep Grand Cherokee EcoDiesel |
| Bruce | Bolen | KS | CO | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Bruce | Carr | IL | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Bruce | Hassevoort | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Bryan | Thompson | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Camelo | Guzman | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Carl | Davis | VA | VA | 2016 | Dodge Ram 1500 EcoDiesel |
| Casey | Sauerhage | IL | TN | 2016 | Dodge Ram 1500 EcoDiesel |
| Chad | Kaltenbach | SD | SD | 2014 | Dodge Ram 1500 EcoDiesel |
| Chad & Jennifer | Johnson | MN | MN | 2016 | Dodge Ram 1500 EcoDiesel |
| Changping | Wei | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Charles | Foschini | FL | FL | 2014 | Jeep Grand Cherokee EcoDiesel |
| Terrance | Piper | PA | PA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Chris | Samuelson | ND | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Huegerich Farms | | IA | IA | 2014 | Dodge Ram 1500 EcoDiesel |
| Huegerich Farms | | IA | IA | 2016 | Dodge Ram 1500 EcoDiesel |
| Christopher & Michelle | Guggemos | MN | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Christopher | Fehr | SC | SC | 2014 | Dodge Ram 1500 EcoDiesel |
| Clay | Cooper | OK | FL | 2015 | Jeep Grand Cherokee EcoDiesel |
| Heather | Aragon | NM | NM | 2015 | Dodge Ram 1500 EcoDiesel |
| Dan | Healy | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Daniel | McMahon | MD | MD | 2016 | Dodge Ram 1500 EcoDiesel |
| Daniel | Smith | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Danny | Hill | SC | SC | 2014 | Dodge Ram 1500 EcoDiesel |
| Danny | Farrell | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |

12

| | | | | | |
|---|---|---|---|---|---|
| Danny W | Harris II | MI | MI | 2015 | Jeep Grand Cherokee EcoDiesel |
| Dariusz | Kulon | IL | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Samantha Mountford & Darrin | Illges | VA | VA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Samantha Mountford & Darrin | Illges | VA | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Mitchell | VA | VA | 2016 | Dodge Ram 1500 EcoDiesel |
| David | Scales | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Duncan | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Sexton | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| David A | Green | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| David S | Wergen | OR | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Deborah & Calvin | Stafford | TN | TN | 2015 | Jeep Grand Cherokee EcoDiesel |
| Deborah & Calvin | Stafford | TN | TN | 2016 | Dodge Ram 1500 EcoDiesel |
| Debra | Severson | MT | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Dennis | Tubridy | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Derik | Fairchild | FL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Derrick | Sillivan | MT | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Dominick | Bianchi | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Don & Jackie | Walker | OK | OK | 2015 | Jeep Grand Cherokee EcoDiesel |
| Donald | Moore | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Donald E. & Brenda S. | Keith | IL | IL | 2014 | Jeep Grand Cherokee EcoDiesel |
| Donald E. & Brenda S. | Keith | IL | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Donavin | Auld | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |

13

| | | | | | |
|---|---|---|---|---|---|
| Doug | Merrell | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Douglas | Thooft | MN | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Douglas L. | Bay | CO | KS | 2014 | Dodge Ram 1500 EcoDiesel |
| Dozier Holton | Browning, III | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Dustin E. | Grate | NV | NV | 2015 | Jeep Grand Cherokee EcoDiesel |
| Dylan | Dzuck | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Edward | Dampf | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Edward | Carrier | NH | NH | 2015 | Dodge Ram 1500 EcoDiesel |
| Eric | Becker | KS | KS | 2015 | Dodge Ram 1500 EcoDiesel |
| Eric | Busch | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Erica L | Jeansonne | LA | LA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Erick | Lore | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Felix Orlando | Gonzales, Jr. | TX | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Frank & Lisa | Meyers | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Gary | Wainwright | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Gary | Huffman | KY | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| Gary & Lauri | Rowland | WA | WA | 2014 | Dodge Ram 1500 EcoDiesel |
| Gary | Riddle | UT | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Gerry | Tassell | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Greg | Long | KS | NE | 2014 | Dodge Ram 1500 EcoDiesel |
| Gregory | Erwin | OH | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| Henry | Lawson | NY | NJ | 2014 | Dodge Ram 1500 EcoDiesel |
| Jack | London | MA | MA | 2014 | Jeep Grand Cherokee EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Lee Todd & Jackie | Terry | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| James | Steer Jr. | IA | IA | 2014 | Dodge Ram 1500 EcoDiesel |
| James | Lines | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| James | Bell | WI | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| James | Fox | SC | NC | 2014 | Jeep Grand Cherokee EcoDiesel |
| James & Linda | Watkins | ID | KS | 2015 | Dodge Ram 1500 EcoDiesel |
| James | Newell | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| James H. | Chapman | MT | MT | 2015 | Jeep Grand Cherokee EcoDiesel |
| James | Emerson Jr | VA | VA | 2016 | Dodge Ram 1500 EcoDiesel |
| Jared | Korn | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Jason | Downs | SC | SC | 2015 | Dodge Ram 1500 EcoDiesel |
| Jason | Fitzgerald | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Jay | Printup | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeff | Schoonover | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeff | Weier | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeffrey | Bax | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Jeffrey S. & Brandon M. | Woodall | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeffrey A. | Michener | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeremy | Hornack | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| James | Zinda | MT | MT | 2016 | Dodge Ram 1500 EcoDiesel |
| Jimmy & Rene | Flippen | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Joe | Laverdiere | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| John | Donohoe | NE | NE | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| John | Lazore | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| John | Lance | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| John | McGarry | NY | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| John | Neumayer | FL | CT | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jonathan | Proctor | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Jordan | Turske | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Jose | Mejia | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Joseph | McCrumb | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Joseph Hyte | Johnson | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Josh | Turner | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Joyce | Ciccone | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Justin | Davis | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Justin | Mays | KY | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| Ken | Trousdale | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Ken G. | Sharpe | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| Kenneth | Nunez | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Kevin | Morrison | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin | Massey | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Kim | Hall | NC | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| Kimberly C. | Miller | OH | OH | 2015 | Jeep Grand Cherokee EcoDiesel |
| Kimela Anne. | Bryant | SC | SC | 2016 | Dodge Ram 1500 EcoDiesel |
| Kris A. | Shepherd | OR | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Lance | Popwell | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |

16

| | | | | | |
|---|---|---|---|---|---|
| Larry | Sosamon | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Larry | Maxa | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Lennard | Loupe | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Leslie J. | Preston | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Loren | Heideman | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Louie | Romero | NM | NM | 2015 | Jeep Grand Cherokee EcoDiesel |
| Lucas | Lopez | TX | TX | 2015 | Jeep Grand Cherokee EcoDiesel |
| Luke | David | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Marie & Verl | Robbins | UT | UT | 2015 | Jeep Grand Cherokee EcoDiesel |
| Mark | Seghetti d/b/a R&B Outdoors, Inc | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Mark | Deemy | AZ | AZ | 2014 | Jeep Grand Cherokee EcoDiesel |
| Michael | Thomas | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Balzhiser | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | DiVona | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Janssen | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Stuart | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Mike | Stevens | SD | SD | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Kolsch | NV | NV | 2014 | Dodge Ram 1500 EcoDiesel |
| Mike | Mccloskey | WA | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Blizinski | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Doherty | NH | VT | 2014 | Dodge Ram 1500 EcoDiesel |
| Miklos | Toth | NV | ID | 2015 | Dodge Ram 1500 EcoDiesel |

17

| | | | | | |
|---|---|---|---|---|---|
| Monte Paul & Devera Jean | Oberlee | FL | MI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Morgan | Green | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Neil | Durrant | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Paul | Kearney | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Peter | Ammirati | NY | NJ | 2016 | Dodge Ram 1500 EcoDiesel |
| Peter | Vigue | MT | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Randal G. & Virginia K. | Henricks Smith | NV | NV | 2015 | Dodge Ram 1500 EcoDiesel |
| Randall S. | Holdaway | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Randy | Peterson | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Randy | Long | NV | NV | 2014 | Jeep Grand Cherokee EcoDiesel |
| Randy | Sturzenbecher | SD | SD | 2014 | Dodge Ram 1500 EcoDiesel |
| Randy & Angie | Reed | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Ray | Falk | NY | NY | 2014 | Jeep Grand Cherokee EcoDiesel |
| Raymond L | White | KS | NH | 2015 | Dodge Ram 1500 EcoDiesel |
| Alan | Stcyr | VA | VA | 2016 | Dodge Ram 1500 EcoDiesel |
| Rex | Hale | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard | Bradley | TN | TN | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard | Carr | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard A. | Smith | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard A. | Gange | WA | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Theser | OK | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Redman | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert | Kroener | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Robert | Graaf | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Morris | KS | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Roberto | Berenguer-Serrano | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| William | Johnson | SC | SC | 2014 | Dodge Ram 1500 EcoDiesel |
| Ron Hayden & Ashley | Suran | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Ryan | Holker | MN | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Ryan | Scott | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Sara | Batchelor | MO | MO | 2016 | Jeep Grand Cherokee EcoDiesel |
| Scott | Franzel | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Scott | Milne | WA | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott | Fick | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Sean | Conran | CT | CT | 2015 | Dodge Ram 1500 EcoDiesel |
| Sean | Conran | CT | CT | 2015 | Dodge Ram 1500 EcoDiesel |
| Sherri | Collins | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Slade D | Howell | AK | AK | 2015 | Dodge Ram 1500 EcoDiesel |
| Stephen | Swanson | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Steve | Conklin | CO | CO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Steven | Fitzgerald | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Steven | Seaberg | VA | VA | 2014 | Dodge Ram 1500 EcoDiesel |
| Steven | Chauvin | FL | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Teaguer | Terrell | UT | UT | 2014 | Jeep Grand Cherokee EcoDiesel |
| Terri | Turnbull | IA | IA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Thomas W. | Spalding | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Thomas | Kosinski | TN | TN | 2016 | Dodge Ram 1500 EcoDiesel |
| Thomas J. & Gilbert T. | Madonna | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Tim | Byrd | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Tim | Ciampoli | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Timothy P | Woodson | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Todd | Barrios | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Todd | Barrios | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Thomas & Sherri | Catlin | IL | IL | 2015 | Jeep Grand Cherokee EcoDiesel |
| Tommy H | Brown | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Wade J | Lackey | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| William | Padrick Jr. | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| William | Wheeler | NC | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Alan | Wright | TN | TN | 2014 | Dodge Ram 1500 EcoDiesel |
| Amy | Mccarthy | PA | MD | 2015 | Jeep Grand Cherokee EcoDiesel |
| Brandon Alexander | LeBrun | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Meunier | VT | VT | 2015 | Dodge Ram 1500 EcoDiesel |
| Gary Luster & Phyllis Marie | Anderson | FL | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| James | Mikles | AR | OH | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jason | Trotter | OK | OK | 2014 | Jeep Grand Cherokee EcoDiesel |
| John | Stork | OK | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Matthew | Luckett | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Russell and Joella | Tabaka | IL | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Stephen Joseph | Podolak | MD | PA | 2016 | Jeep Grand Cherokee EcoDiesel |

| Tony | Hutchison | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| William | Akins | CO | CO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Andrew | Thomas | NC | NC | 2014 | Jeep Grand Cherokee EcoDiesel |
| Angelo | Huerta | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Bill | Plagianakos | PA | SC | 2015 | Dodge Ram 1500 EcoDiesel |
| Brent | Burton | MT | ND | 2014 | Dodge Ram 1500 EcoDiesel |
| Brent | Burton | MT | ND | 2014 | Dodge Ram 1500 EcoDiesel |
| Brian | Ashworth | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Brian J. | Delaney | NV | NV | 2015 | Dodge Ram 1500 EcoDiesel |
| Brian | Kicak | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Brian | Lewandowski | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Brooks H. | Moore | MO | MO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Carl | Barber | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Chad James | Carter | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Chad | Koep | MN | SD | 2014 | Dodge Ram 1500 EcoDiesel |
| Chad | Koep | MN | SD | 2015 | Dodge Ram 1500 EcoDiesel |
| Charles | Lauziere | NJ | NJ | 2014 | Dodge Ram 1500 EcoDiesel |
| Charles | Piazza | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Chuck | McClaugherty | OR | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Daniel & Traci | Ramsey | KY | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Daniel & Laura | Zamora | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Dean | Allmon | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Derrick | Jack | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Don | Lange | NY | NY | 2015 | Jeep Grand Cherokee EcoDiesel |
| Eric | Vera | NE | NE | 2016 | Dodge Ram 1500 EcoDiesel |
| Gilder L. | Whitlock | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Gordon | Shrader | NE | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Greg | Griebel | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Greg | Shea | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| Gregory B. | Fenstermaker | NY | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Harold Joseph | Piele | NV | NV | 2016 | Dodge Ram 1500 EcoDiesel |
| Janie Kennedy | Pooler | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Jeff | Kays | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Jim | Heiser | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Jody L. & Cindy L. | Danielson | WV | WV | 2014 | Jeep Grand Cherokee EcoDiesel |
| Joe | Elco | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Jon | Elsasser | SD | SD | 2015 | Dodge Ram 1500 EcoDiesel |
| Josh | Francis | IL | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| K.C | Moore | KS | KS | 2014 | Jeep Grand Cherokee EcoDiesel |
| Kenyon | Shephard | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Kurtis J. | Melin | SC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Larry | Brown | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Lauren | Steff | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Laurence | Carroll | MT | MT | 2016 | Jeep Grand Cherokee EcoDiesel |
| Levent | Altunova | MT | MT | 2015 | Dodge Ram 1500 EcoDiesel |
| Levi | Kimsey | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |

22

| Lloyd | Howard | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| Marc | Hopton | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Matt | Buck | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Boales | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Morrison | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Sherfey | VA | VA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Nicky D. | Herrington | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Norbert | Kucharek | NY | NY | 2015 | Jeep Grand Cherokee EcoDiesel |
| Patti & Robert | Fobia | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| Peter | Cacoperdo | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Peter | Cacoperdo | FL | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Ray | Falk | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert | Allen | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert & Carol J. | Anderson | WI | SD | 2014 | Jeep Grand Cherokee EcoDiesel |
| Robert | Peck | NV | NV | 2016 | Jeep Grand Cherokee EcoDiesel |
| Robert | Yakimchick | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert J | Phillips | NV | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Ronald Malcolm | Macdonald | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Samuel D. | Gross | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Timothy | Rosenberg | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Todd | Bierk | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Tony S. | Conley | KY | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| Stephen | Cimilluca | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Donald | Wacek | OR | OR | 2015 | Jeep Grand Cherokee EcoDiesel |
| Marvin | Rambel | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Ernest | Hodgdon | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeffrey | Greenwood | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Jared | Nagel | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Brandon | Crookes | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert | Bell | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Kilo & Natalie | Varble | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Steve | Young d/b/a Wrecker One | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeff & Terri | Robinson | MO | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| Patrick Hair & Angelica | Eller | SC | SC | 2015 | Jeep Grand Cherokee EcoDiesel |
| Harry Arthur | Potter | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Nathan | Baisley | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Ronald Malcolm | MacDonald | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Nick | Butters | UT | UT | 2016 | Dodge Ram 1500 EcoDiesel |
| Geirge S | Leblanc | LA | LA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Roy | McKenney | DE | DE | 2014 | Dodge Ram 1500 EcoDiesel |
| Timothy | Shanks | IA | IA | 2016 | Dodge Ram 1500 EcoDiesel |
| Judy & Roland | Simmons | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Rick | Bunch | NV | NV | 2014 | Dodge Ram 1500 EcoDiesel |
| Richard | Rausch | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Alfred | Herrera | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Nathan Dakota | Hale | TN | TN | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Troy | Zapara | AZ | HI | 2014 | Dodge Ram 1500 EcoDiesel |
| Anthony | Stockdale | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Cody | Langlois | CT | CT | 2014 | Dodge Ram 1500 EcoDiesel |
| Donald & Linda | Lamson | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Noel | Vazquez | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Russell | Grieff | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Blenda | Bowman | TN | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| James Johnson & Michael | Bolton | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Howard James | Garel | UT | CO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jason | VanLoo | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Gerald & Sharon | Parker | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Jimmy | Steen | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Jason | Reigelsperger | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Joey Lea & Mark | McVane | OR | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Jason | Mull | CO | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| John A | Barone | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Steven Phillip & Pamela Fulford | Krol | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Jared Watson & Lisa | Tadd | MT | MT | 2014 | Dodge Ram 1500 EcoDiesel |
| Dean | Beck | NE | NE | 2015 | Dodge Ram 1500 EcoDiesel |
| Alex | Lopez | ID | NV | 2015 | Dodge Ram 1500 EcoDiesel |
| Steven M | Pender | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Meech | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Christopher & Jacob | Brown | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Al | Schellinger | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeffery | Weislocher | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Jorge | Villarreal | CO | CO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jorge | Villarreal | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Angela | Christensen | AK | AK | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert & Reena | Carnes | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Sarah | Miller | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Wasilchuk | NV | NV | 2015 | Dodge Ram 1500 EcoDiesel |
| Janelle & Bryan | Wiggins | FL | FL | 2014 | Jeep Grand Cherokee EcoDiesel |
| Benjamin D. | Crifasi Jr | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Ray | Reynolds | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Allen Keith | Peacock | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Clinton T. | McKinney | ND | ND | 2014 | Dodge Ram 1500 EcoDiesel |
| George | Anthony | PA | PA | 2016 | Jeep Grand Cherokee EcoDiesel |
| Patrick | Diggin | SC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott | Jones | SD | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Elizabeth & Bryce | Godwin | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Larry & Daina | Wilhelm | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Harlan | Latusek | MN | MN | 2014 | Dodge Ram 1500 EcoDiesel |
| Harlan | Latusek | MN | MN | 2016 | Dodge Ram 1500 EcoDiesel |
| Joe | Castro | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Ken | Kroschel | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert W. | Ford | CT | CT | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Thomas Goodyke & Julie Bowers | Goodyke | MI | MI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Rick | Nash | WA | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Healther & Lewis | Cleaver | KY | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| Sergey | Oleynik | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Emile J. | LaPointe | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Brad & Kelli | Erickson | WA | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Gabriel M | Haugland | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Ralph | Coers | WA | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Gary & Tracy | McKeever | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Wendell | Espeland | KS | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Jason & Natalie | Ysker | MN | MN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Anthony | Barbato | NY | MD | 2015 | Jeep Grand Cherokee EcoDiesel |
| Myron & Linda | Billiot | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Ben | Doney | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Thurman & Rose | Dickey | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Angeline & Stephen | Connaghan | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jacob | Herron | NM | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Dion | Kampa | WI | WI | 2016 | Dodge Ram 1500 EcoDiesel |
| Osvaldo | Romero | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Matthew | Deavers | SC | SC | 2016 | Dodge Ram 1500 EcoDiesel |
| Duane | Gleason | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Elie | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Jerry | Martin | KY | KY | 2014 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Billy & Joseph | Welch | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Manuel & Michael | Gonzalez | FL | FL | 2015 | Jeep Grand Cherokee EcoDiesel |
| Christopher | Vigil | TN | TN | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael | Carrano | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| John T. | Nickel | KS | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Susan | Burkland | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Christofer | Askervold | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Gus | Demetriades | NC | NC | 2014 | Jeep Grand Cherokee EcoDiesel |
| Paul Webster | Messner, Jr. | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott | Platko | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Cody P. | Privette | MN | MN | 2014 | Dodge Ram 1500 EcoDiesel |
| Brent | Burton | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Randy | Tomlinson | MT | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Roger | Hinton | KS | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Roger | Hinton | KS | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Gabriel & Audrey | McConnell | IA | IA | 2016 | Dodge Ram 1500 EcoDiesel |
| Kyle Schmitting & Kamile | Kevliciute | NC | NC | 2014 | Jeep Grand Cherokee EcoDiesel |
| William J. | Hoak, III | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott | McCrea | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Carl | Lachance | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Sean | Condry | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Ronda | Stratton | OH | OH | 2015 | Jeep Grand Cherokee EcoDiesel |
| James | Hadley | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Bo-Michael M. | Apele | WA | WA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Bo-Michael M. | Apele | WA | WA | 2014 | Dodge Ram 1500 EcoDiesel |
| John Rory | Carreon | AZ | AZ | 2015 | Jeep Grand Cherokee EcoDiesel |
| Arturo | Torres | NV | NV | 2014 | Jeep Grand Cherokee EcoDiesel |
| Brian | Ellis | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Douglas | Mettenburg | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael Shane | Williams | MD | MD | 2014 | Dodge Ram 1500 EcoDiesel |
| Donald | Scales | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Lucky | Easley | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Erik | Angelo | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| David & Gisela | Martinez | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Brad | Robertson | WA | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Alan | Sjoberg | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Bastian | Schroder | NJ | WI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Bruce & Vickie | Sulc | VA | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Steven James | Rust | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael | Gides | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard | Watters | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Donald | Long | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Timothy | Leathers | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Steven G | Parnitzke | WI | WI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Joseph | Dick-Griffith | FL | TN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Lee & Inna | Halpert | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Derick | Gurney | NY | OR | 2014 | Dodge Ram 1500 EcoDiesel |
| David | Kizzia | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sean | Perryman | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jose | Mercado | NY | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Debra Ann | Guderjahn | MT | ND | 2014 | Dodge Ram 1500 EcoDiesel |
| Tyrone & April | Malambri | NC | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Dean | Kohanyi | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael James | Wolbert | ND | ND | 2016 | Dodge Ram 1500 EcoDiesel |
| Steve E. & Sheryl | Ridenour | OK | OK | 2014 | Jeep Grand Cherokee EcoDiesel |
| Mark | Warren | MO | MO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Ken | Hauck | MO | MO | 2015 | Jeep Grand Cherokee EcoDiesel |
| Kent | Gibbons | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Matthew | Litterell | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Glenn | Stahl | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Coop | CO | CO | 2014 | Dodge Ram 1500 EcoDiesel |
| Larry | Brown | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeff | Mely | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Brett | Wayne | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael & Deborah | Eilert | KS | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Diane & Larry | Wilhelm | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark & Lucretta | Kinder | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Heath | Minyard | AR | AR | 2015 | Dodge Ram 1500 EcoDiesel |
| Nathan | Townsend | TN | TN | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Martin | Mannion | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Lisa Marie | Murphy | MN | NE | 2014 | Dodge Ram 1500 EcoDiesel |
| Clinton | Moxey | NV | NV | 2016 | Dodge Ram 1500 EcoDiesel |
| Marko | Seget | SC | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| William | Coleman | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Donald | Harrell | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Kim | Watson | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Jamie A. | Walker | WI | WI | 2016 | Dodge Ram 1500 EcoDiesel |
| Cale & Jami | Duerstein | WI | TN | 2016 | Dodge Ram 1500 EcoDiesel |
| Kevin | Keefer | VA | VA | 2016 | Jeep Grand Cherokee EcoDiesel |
| Stephanie | Cromley | NJ | NJ | 2014 | Jeep Grand Cherokee EcoDiesel |
| Matthew | Dean | WA | WA | 2014 | Dodge Ram 1500 EcoDiesel |
| Amy & David | Campbell | MN | WI | 2016 | Dodge Ram 1500 EcoDiesel |
| Alvin | McCoy | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Morris | UT | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Morris | UT | UT | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Morris | UT | UT | 2014 | Dodge Ram 1500 EcoDiesel |
| Kevin | Ruehle | NJ | NJ | 2016 | Dodge Ram 1500 EcoDiesel |
| Kevin | Crew | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Corbin | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Mayer | AL | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Southern | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Micah | Hill | AL | GA | 2014 | Dodge Ram 1500 EcoDiesel |

31

| | | | | | |
|---|---|---|---|---|---|
| James | Washington | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Quinn | Breland | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Shelton | AL | TN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Greg | Cain | AL | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Randal | Stephens | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Alonzo Thomas | Stone | FL | AL | 2016 | Dodge Ram 1500 EcoDiesel |
| Tyler | Bridgeman | AL | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Jimmy | Yeager | MS | MS | 2014 | Dodge Ram 1500 EcoDiesel |
| Scott | Langley | MS | MS | 2016 | Dodge Ram 1500 EcoDiesel |
| Chris | Breaux | MS | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Curtis and Debbie | McDaniel | MS | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| Tammy | Frazier | MS | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| Bobby | Wallace | MS | MS | 2014 | Dodge Ram 1500 EcoDiesel |
| Clifton | Bailey | MS | MS | 2016 | Dodge Ram 1500 EcoDiesel |
| Edward | Jones | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Roger T. | Ingram | MS | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| Greg | Gaskins | TN | MS | 2014 | Dodge Ram 1500 EcoDiesel |
| Christopher | Bond | MS | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Beaux | Martin | LA | MS | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jeffrey | Cook | WV | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| Gregory | Burnette, D.O. | WV | WV | 2015 | Jeep Grand Cherokee EcoDiesel |
| Thomas | Taylor | WV | WV | 2014 | Dodge Ram 1500 EcoDiesel |
| Dustin | Louden | WV | WV | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Jerry | Barnett | WV | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Brianna | Clay | WV | WV | 2014 | Dodge Ram 1500 EcoDiesel |
| Roger | Workman | WV | WV | 2014 | Jeep Grand Cherokee EcoDiesel |
| Sage | Seifert | WV | WV | 2015 | Dodge Ram 1500 EcoDiesel |
| Brandon | Saddler | WV | VA | 2014 | Dodge Ram 1500 EcoDiesel |
| Mike | Rumney | WV | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jody L. & Cindy L. | Danielson | WV | WV | 2014 | Jeep Grand Cherokee EcoDiesel |
| Emily K | Blankenship | WV | OH | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jackie Lynn | Clark, Jr. | WV | WV | 2015 | Dodge Ram 1500 EcoDiesel |
| Roy | Jones | WV | WV | 2016 | Dodge Ram 1500 EcoDiesel |
| James | Slone | WV | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Jason | Royer | WY | WY | 2015 | Dodge Ram 1500 EcoDiesel |
| Beverley Gayle | VanArkel | WY | ID | 2015 | Jeep Grand Cherokee EcoDiesel |
| James B. | Valliere | WY | WY | 2015 | Dodge Ram 1500 EcoDiesel |
| Anthony | Knezovich | WY | WY | 2015 | Dodge Ram 1500 EcoDiesel |
| Rick | Stone | WY | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Rick | Stone | WY | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Calvin | Taylor | WY | WY | 2015 | Dodge Ram 1500 EcoDiesel |
| Wayne and Becky | Bennett | WY | WY | 2014 | Dodge Ram 1500 EcoDiesel |
| Allen | Wallis | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Jack | Pudzis | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Roland | Marsh | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Dawn & James | McDonald | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Christopher | Rivera | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Kent | Hall | TN | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| Marcus Aaron | Hemsley | MD | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Richard & Carol | Huff | ID | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Kyle M | Griffey | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Calvin D. | Burrus III | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott | Banks | NV | NV | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael Shaak & Susie | Patterson | ID | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Frank | Fernandez | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Joshua | Wilson | MO | MO | 2014 | Jeep Grand Cherokee EcoDiesel |
| LaVerne | Brace | NY | NY | 2015 | Jeep Grand Cherokee EcoDiesel |
| Dennis | Begin | RI | RI | 2015 | Dodge Ram 1500 EcoDiesel |
| John & Shirley | Hecker | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Donald Raymond | Dixon | IA | IA | 2014 | Dodge Ram 1500 EcoDiesel |
| Ricardo C. & Michelle | Calla | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Travis Ray | Burwell | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| Kasey & Ashley | Knutson | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark Edward | Harrell | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Colton Warren | Shannon | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Steven | Leonard | MN | MN | 2014 | Dodge Ram 1500 EcoDiesel |
| Leslie | Swartz | NE | NE | 2014 | Jeep Grand Cherokee EcoDiesel |
| Nicholas F | Baglio | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Ryan | Allred | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |

34

| | | | | | |
|---|---|---|---|---|---|
| Zachary M | Marsico | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Pat | Breitbach | MT | MT | 2016 | Dodge Ram 1500 EcoDiesel |
| Leslie | Swartz | NE | NE | 2015 | Dodge Ram 1500 EcoDiesel |
| David K. | Schoengart | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| Jason | Sullivan | NC | NH | 2016 | Dodge Ram 1500 EcoDiesel |
| Thang | Nguyen | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Zachary | Gordon | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Joe R. | Jones | AL | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeffrey A | Stracensky | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| David Irwin | Antokal | VA | VA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Terry | Hargis | AZ | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Andrew | Davis | MD | MD | 2014 | Dodge Ram 1500 EcoDiesel |
| Andrew | Davis | MD | MD | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard | Harris | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Batdorff | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Alec | Beard | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Carl Lucci | Wilburn | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Roberts | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Larry | Thompson | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Lawrence | Gonzales | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Dave | Schulien | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Jones | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Edward | Fosnight | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Gary | Tripp | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Gary | Adams | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Gerald | Richmond | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeff & Amy | Vance | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Jeffrey | Irwin | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Joshua | Sigmon | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Kenneth D. | Elliott | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Lucas | Lopez | TX | TX | 2015 | Jeep Grand Cherokee EcoDiesel |
| Manuel | Lopez Garcia | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael Rene | Hollenbaugh | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Randall | Moody | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Reese | Howell | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Pickering | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Sergio | Lopez | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Shawn J. | Austin | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Sherman | Barnett dba Rides Auto Group | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Tim | Fowler | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| William | Gray | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Zachary | Theobald | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Brandon & Haley | Buckmaster | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| David Allen | Bradshaw | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Maggie | Phipps | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |

| Jerry | Fortenberry | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| Jimmy D. | King | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Marcus | Carlock | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| James & Nichole | Potts | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Russell | Cash | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Casey | Barton | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Coleman | Sessums | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Werner | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Gene C. | Brown, Jr. | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Duane | Whitus | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Andrew | Moran | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Scott | Perry | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Bryan | Jones | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Mario | Maltez Jr. | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Saleh | Sal | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| John | Horner | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Benjamin | Tester | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Dwayne | Hunter | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Lemelle | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Cory | Estelle | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Eric | Karcher | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Kenneth Trent | Paris | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| William & Kimberly | Mayes | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |

| Alan | Ostermiller | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| Ruben | Luevanos | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| George | Henry | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Don | Merriman dba Don-Sandy, LLC | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Richard | Holbach | TX | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard | Robinson | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Theodore | Grubbs | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Kimberly H. & David W. | Whittington | AL | AL | 2014 | Dodge Ram 1500 EcoDiesel |
| Dana L. | Gregory | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert Alpers dba | Anything Automotive | IN | IN | 2016 | Dodge Ram 1500 EcoDiesel |
| Brent | Lavender | TX | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Brent | Cole | TX | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Chad | Trahan | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Charles | Suder | IN | IN | 2014 | Dodge Ram 1500 EcoDiesel |
| Danny | Quisenberry | TX | NM | 2015 | Jeep Grand Cherokee EcoDiesel |
| Dustin | Louden | WV | WV | 2016 | Dodge Ram 1500 EcoDiesel |
| Englebert | Cherrington | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Felix Orlando | Gonzales, Jr | TX | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Frank | Deguzman | TX | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Gregory | Burnette, D.O. | WV | WV | 2015 | Jeep Grand Cherokee EcoDiesel |
| Greg | Cain | AL | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Herbert | Likens | IN | IN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jack | London | MA | MA | 2014 | Jeep Grand Cherokee EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Jeffrey | Cook | WV | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| Marcel | Lamoureux | FL | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Randall & Melissa | Westmoreland | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Micah | Hill | AL | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Nicholas | Hess | IN | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Ralph | Nason | ME | ME | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Radel | IN | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Roger | Farrow | MA | MA | 2016 | Dodge Ram 1500 EcoDiesel |
| Edwin B | Brooks Holton | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| John Victor | Lowe | GA | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Stacey & P. Elaine | Wilson | IL | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Adam | Covington | TX | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Brian | Kicak | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Chip | Neer | IN | IN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Christopher | Tucker | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Edward Roland | Hill III | GA | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Emily K | Blankenship | WV | OH | 2014 | Jeep Grand Cherokee EcoDiesel |
| Kevin V. | Anderson | IN | IN | 2014 | Dodge Ram 1500 EcoDiesel |
| Madi & Mark | Lee | IN | IN | 2015 | Jeep Grand Cherokee EcoDiesel |
| Matt | Hersey | GA | SC | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Crisp | IN | IN | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael A. | Scott | GA | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Mike | Shelton | AL | TN | 2014 | Jeep Grand Cherokee EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Sam | Ussery | GA | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Seymour | Bidwell | OK | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jimmy | Schroeger | TX | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Christian | Lizama | FL | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Anthony J. | Eiermann | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Brandon & Katherine | Horton | GA | GA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Gary | Smith | IN | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Mathew | Swanson | GA | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard H & Shelia Renee | McCoy | TX | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Clifton | Bailey | MS | MS | 2016 | Dodge Ram 1500 EcoDiesel |
| Nicholas M. & Dana | Golowich | GA | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Wayne | Guyer | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| John Oliver | Galloway | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Donawerth | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| William | Hunt | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Andrew | Johnson | GA | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Judy & Tom | Crawford | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Cash | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Colt W. | Knight | ME | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| James & Susan | Cherry | IN | IN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Adam | Ausura | VT | MA | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Lemelle | TX | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Vincent | Princeotto | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |

40

| | | | | | |
|---|---|---|---|---|---|
| Beverly Gayle | VanArkel | WY | ID | 2015 | Jeep Grand Cherokee EcoDiesel |
| Tyler | Perkins | FL | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Andrew | Jesse | MA | MA | 2014 | Dodge Ram 1500 EcoDiesel |
| Richard | Carr | GA | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Douglas Owen | Thompson | TX | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jennifer & Richard | Stevens | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Roger | Mack | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Prijatelj, II | IN | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| James | Gisonna | GA | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| Shawn Patrick | McNew | GA | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Maurice | Johnson | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Troy | Atcheson | GA | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Brody | Sheppard | OH | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Larry D | Garrison | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Shawn | Craig | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Pitts Jr | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Nathan | Groom | GA | FL | 2014 | Jeep Grand Cherokee EcoDiesel |
| Duane E. | Morton Sr | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Kent | Jenkins | NV | CA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Mark | Spaugh | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Ricardo Abraham | Soto | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Charles E. & Carol S, | Crozier | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Chris | Dougherty | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Tim & LeAnne | Kindred | WY | ID | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeffrey | Rittenhouse | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Lochland D. | Jeffries | IL | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Melissa | Maldonado | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Van | Smith Jr. | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Vaughan | Wooden | ND | ND | 2015 | Dodge Ram 1500 EcoDiesel |
| Willard & Corina | Ragland | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Jody | Killmer | WA | WA | 2014 | Dodge Ram 1500 EcoDiesel |
| Gregg | Rafalco | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Brian | Steadman | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Mack William & Debra Ann | Nowlin | KS | UT | 2014 | Dodge Ram 1500 EcoDiesel |
| Timothy & Nancy | Schindlbeck | MN | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Justin | Graves | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Willie | Bergeron | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Warren | Gardinier | NV | NV | 2014 | Jeep Grand Cherokee EcoDiesel |
| Shawn C. | Jacobs | WI | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Vince | McBride | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| David A. | Nakkula | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Tamara Kay | Domonoske | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| William | Eason | OK | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Hector | Montano | NV | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Christina | Kennedy | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| David | Waltman | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Timothy | Graham | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Dawn | Noll | PA | PA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Bryan Hastings & Jessica | Bolling | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Garrett | Dantzler | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael | Mavromatis | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Thomas | Newton | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Travis Lee | Campbell | NC | NC | 2014 | Dodge Ram 1500 EcoDiesel |
| Todd | Dombek | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Wade Rodney | Aylett | OR | OR | 2014 | Jeep Grand Cherokee EcoDiesel |
| Todd Dana | Strickland | MI | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Jayne Marie | Edwards | WI | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Matthew Russell | Peters | KS | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Frederick B | May | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Derle | Mork | OK | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Josh & Amber | Gwillim | KS | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Kerrin | Tomek | NC | NC | 2014 | Dodge Ram 1500 EcoDiesel |
| Theo Reginald | Thibodeaux | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Kuhrt | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Judith Mary | Bressler | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Keith | Arnold | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Jamison Stanley & Joli A. | Elder | SC | NC | 2015 | Jeep Grand Cherokee EcoDiesel |
| Patrick & Jill | Kons | MT | MT | 2015 | Dodge Ram 1500 EcoDiesel |
| Timothy Bernard | Graham | WI | WI | 2016 | Dodge Ram 1500 EcoDiesel |

43

| | | | | | |
|---|---|---|---|---|---|
| George & Katie | Kauffman | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Adam Mckean & Elizabeth | Barnes | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Leroy & Shalada | Bengtson | MT | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| James & Tierra | Applegate | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Paul | Gambrill | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Ernest & Selina | Mascarenas | CO | CO | 2015 | Jeep Grand Cherokee EcoDiesel |
| Casamere & William | Creacy | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Lisa S. & Kevin P. | Speyrer | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Thomas | Castle | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Daniel | Martin | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Mario | Toliver | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Robin | Clark | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Kris | Kemper | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael Whitten More d/b/a | Restoration Services Group Inc. | CO | CO | 2014 | Dodge Ram 1500 EcoDiesel |
| Jared & Crystal | Falk | KS | NE | 2014 | Dodge Ram 1500 EcoDiesel |
| Andriy | Kharchenko | NY | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Donald & Kimberly | Schmit | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Keith | Young | MT | MT | 2016 | Dodge Ram 1500 EcoDiesel |
| Bernice & Pete | Greene | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Ernest | Montley | MD | MD | 2015 | Dodge Ram 1500 EcoDiesel |
| Ryan | King | RI | MA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeffrey | Sanders | WA | WA | 2014 | Dodge Ram 1500 EcoDiesel |

| David Gabriel & Juanita Navarro | Flores | IN | IN | 2014 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| Joseph | McGee | TN | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| Jason A | Puckett | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard & Nancy | Payne | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Kristofferson & Lacey | Blain | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Kimberly | Oglesby | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Rayder | Bennett | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Stephen R. | Schmidt | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Ralph | Landi | NY | CO | 2014 | Jeep Grand Cherokee EcoDiesel |
| Andrew | Vanderklok | WA | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Gregory | Clendenin | WV | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Preston & Paula | Nott | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark | Hathaway | MT | ID | 2014 | Dodge Ram 1500 EcoDiesel |
| Alma | Lozana | NY | NJ | 2014 | Dodge Ram 1500 EcoDiesel |
| Frank M. | Collier | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Justin | Goldsmith | WV | WV | 2016 | Dodge Ram 1500 EcoDiesel |
| Jeri Parson d/b/a | Parma Properties | WV | WV | 2015 | Dodge Ram 1500 EcoDiesel |
| Dwayne | Boggs | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Loren K. | Nye | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Derek | Iler | VA | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| Lev | Cooper | ND | ND | 2014 | Dodge Ram 1500 EcoDiesel |
| Charles W. | Menninger III | VA | VA | 2014 | Dodge Ram 1500 EcoDiesel |
| Charles W. | Menninger III | VA | VA | 2014 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Joshua | Herrera | ND | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Joseph | Barksdale | OH | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| David L | Patton | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Kenneth Edward | Fogle Jr | NC | NC | 2016 | Jeep Grand Cherokee EcoDiesel |
| Kimberly S. | Henson | SC | SC | 2015 | Jeep Grand Cherokee EcoDiesel |
| Clinton & Sadie | Etheridge | GA | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| Todd | Vanderheyden | WI | WI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Rebecca M. | Brace | FL | FL | 2016 | Jeep Grand Cherokee EcoDiesel |
| Frank E II & Dolly Rae | Baker | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Thomas A | Edwards | AR | OK | 2014 | Jeep Grand Cherokee EcoDiesel |
| Justin | Clendenin | WV | MD | 2014 | Dodge Ram 1500 EcoDiesel |
| Percy F | Gonzales | AZ | AZ | 2014 | Jeep Grand Cherokee EcoDiesel |
| Dustin R | Downing Jr | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| James | Repp | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Colligon | VA | VA | 2016 | Dodge Ram 1500 EcoDiesel |
| Matthew | Hoser | NJ | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Mason | Lauer | PA | PA | 2015 | Jeep Grand Cherokee EcoDiesel |
| James | Martin | NV | NV | 2015 | Dodge Ram 1500 EcoDiesel |
| Almantas | Stankevicius | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael W | Stinson | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Robbie | Kiss | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Alicia Jean | Hicken | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Julie | Staubach | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |

| Susan & Ethan | Burlingham | NV | NV | 2014 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| Jeffery & Tracie | Quine | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Crystal Lee | Bonotto | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Joseph | Neault Jr. | NJ | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Martin | Zueger | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Patricia | Wilbur | WA | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Cesar H | Nunez | UT | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Harold & Donna | Imke | OK | OK | 2014 | Jeep Grand Cherokee EcoDiesel |
| Santiago & Lorraine | Romero | NM | NM | 2016 | Dodge Ram 1500 EcoDiesel |
| James L. | Jones | KY | KY | 2014 | Dodge Ram 1500 EcoDiesel |
| Jim | Hall | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Steve J | Mast | IL | ND | 2014 | Dodge Ram 1500 EcoDiesel |
| Francis | Lukowski Jr. | AL | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Ricky P. | Poisson | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Jason | Dibben | ID | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Jason | Vermillion | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Tad & Stephnie | Hamil | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Amy | Fernandes | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Brett Keville | Williams | WA | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeffrey | Gebel | MO | MO | 2015 | Jeep Grand Cherokee EcoDiesel |
| Scott W | Toms | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Karpowitz | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Mitchell R | Wellnitz | WI | WI | 2014 | Jeep Grand Cherokee EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Paul | Myers | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Nathen & Rachel | Crittenden | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Tanner | Tibbets | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Sanders | IL | IL | 2014 | Jeep Grand Cherokee EcoDiesel |
| John S. | Fox | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark | Schumaker | TN | TN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Russell | Kious | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Dan Seeland & Naht | Phan | MN | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Thomas Nicholas | Bezick | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| Nathan Strahinic & Stacey | Grafmeyer | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert Patterson | Snyder | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Larry E. & Hazel A. | Heeter | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Louis | Barbato | NY | NY | 2014 | Jeep Grand Cherokee EcoDiesel |
| Randy | Gray | CO | NE | 2014 | Dodge Ram 1500 EcoDiesel |
| Gordon Leroy | Patterson | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeffrey D. | Hoyum | MN | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Leo | Karnowski Jr | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Theodore | Carter | MO | AR | 2014 | Dodge Ram 1500 EcoDiesel |
| Earl H | Hitzman Jr. | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Erich | Hannah | IL | IL | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert | Bank | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Kenneth & Amanda | Hancock | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Daniel & Cynthia | Bonifas | CO | CO | 2014 | Jeep Grand Cherokee EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Mark & Carol | Feld | IA | IA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Terry | Wessel | ME | ME | 2016 | Dodge Ram 1500 EcoDiesel |
| Billie Jo Killion & Anna | Taylor | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Leah & Bobby | Ladley | TN | MS | 2016 | Dodge Ram 1500 EcoDiesel |
| Anthony S. | Antonucci | NH | ME | 2016 | Dodge Ram 1500 EcoDiesel |
| Terry D. & Teresa A. | Thor | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Clarke | Dunlap | CA | CA | 2014 | Dodge Ram 1500 EcoDiesel |
| Albert & Sharon | Overholtzer | CA | CA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jeff | Strong | MS | MS | 2016 | Jeep Grand Cherokee EcoDiesel |
| Robert | Thomas | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Anthony | Mcnamara | CA | CA | 2015 | Dodge Ram 1500 EcoDiesel |
| Gordon Hunter & Shawnda | Bays | IN | IN | 2014 | Dodge Ram 1500 EcoDiesel |
| Gaston Barrett c/o Walton | Stinson | MS | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| William | Cunningham | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Roe | LA | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott L | Norris | WY | WY | 2016 | Jeep Grand Cherokee EcoDiesel |
| Cheryl & Lee | Philley | CA | CA | 2016 | Dodge Ram 1500 EcoDiesel |
| Ryan | King | RI | MA | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Branco | MA | MA | 2016 | Dodge Ram 1500 EcoDiesel |
| Timothy | Isyk | CT | MA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Oron | Tipton | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Rodney | Robinson | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Michelle L. | Labadie | MI | WI | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Edna | Jordan | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Noel | Foley | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Sisson | NE | CO | 2014 | Dodge Ram 1500 EcoDiesel |
| Ryan | Renfro | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Justin Joseph | Manke | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Thomas | Vines | OH | OH | 2014 | Jeep Grand Cherokee EcoDiesel |
| Kevin P | Brinkhoff | FL | FL | 2015 | Jeep Grand Cherokee EcoDiesel |
| Tim | Stewart | AR | AR | 2014 | Dodge Ram 1500 EcoDiesel |
| Troy L & Ruth E | Jeremias | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Stanley & Anita | Collins | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Jocko | Vermillion | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Thomas & Jean | Mikle | WI | MN | 2015 | Dodge Ram 1500 EcoDiesel |
| Troy | Young | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Ashleigh | Webster | NY | NY | 2014 | Jeep Grand Cherokee EcoDiesel |
| Michael | Chandler | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| Bill | Sorensen | UT | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Steven & Jennifer | Weir | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sterling Lee | Whitley Jr. | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| David | Bergeron | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Sherry | Greathouse | UT | UT | 2015 | Dodge Ram 1500 EcoDiesel |
| Amanda & Jeremy | Dwyer | WA | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Chris | Breaux | MS | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Christopher | Fox | NC | TX | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Matthew | Kyle | TX | TX | 2015 | Jeep Grand Cherokee EcoDiesel |
| Robert | Durante | LA | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Casey & Jerri | Wheeler | OK | TX | 2016 | Jeep Grand Cherokee EcoDiesel |
| David | Jarzamski | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Gaersen | Bailey | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Burkhart | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Santiago | Deleon | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Casey | Perry | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Landin | Longtin | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Scott | Reeves | NY | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Edward | Constantinescu | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Christopher | Vigil | TN | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Luke D. | Knighten | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Justin Leasman & Chelsey | Wold | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Joshua | Berna | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | McMichael | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Gunderson | MT | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| William | Ryan | NC | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Christopher | Lewis | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard | Randolph | LA | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| William Thomas | Hunt | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Scott | Johnson | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Andrew | Defayette | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Karen | Gilcrease | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| William Thomas | Hunt | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Lindsay Weaver & Jackie | Graber, Jr. | FL | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Kenneth | Kana | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Patrick | McCraw | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Stephen | Watson | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Jenner | Jones | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Brandon | Redmon | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Brandon | Redmon | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| John | Prinz | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Larry Alan | Powles | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard Eugene | Brown | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Michael & Christina | Potts | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark | Madden | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Tony | Choi | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Joshua | Gillespie | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Eder | Acosta | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Lauren Leigh | Brehm | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Thomas & Tammy | Samford | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Matthew | Reese | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Douglas B. | Mclaughlin | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Regina Patricia | Sanchez | TX | TX | 2015 | Jeep Grand Cherokee EcoDiesel |
| Tomas | Contreras | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Brandon | Coates | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Christopher | Fox | NC | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Johnson | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Lorie | Neal | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| David | Sweet | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Tyler | Milton | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Malissa & Pete | Teriele | CA | CA | 2016 | Dodge Ram 1500 EcoDiesel |
| Lorell D. | Hurley | MA | MA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Robert J. | Dollard | MA | MA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Chester | Johnson | NH | ME | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert & Elva | Magallon | CA | CA | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert S. | McKee | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Stanley E | Lowe | TN | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard | Hocott | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Meienburg | CA | CA | 2015 | Dodge Ram 1500 EcoDiesel |
| Allen Marcus | Hutcheson | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Aaron & Lindsay | Horn | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Brian J | Kellams | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Blake & Susan | Weinstein | CA | CA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Donald | Gilman | GA | GA | 2016 | Dodge Ram 1500 EcoDiesel |
| Gerald | Roux | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Jackson | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Bruce | Ludlow | IN | OH | 2014 | Dodge Ram 1500 EcoDiesel |

53

| | | | | | |
|---|---|---|---|---|---|
| Herman Golden & Cheryl | Morovich | LA | LA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Robert | Sivori | FL | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael | Kasten | WI | MN | 2016 | Dodge Ram 1500 EcoDiesel |
| Ashton & Christina | Pace | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Aston & Christina | Pace | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| John W | Kentzel | MS | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Harold Douglas | Maynard | KY | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Jimmy | Lanz | OR | OR | 2014 | Dodge Ram 1500 EcoDiesel |
| Jimmy | Lanz | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Larry & Dianne | Joachim | WI | WI | 2016 | Dodge Ram 1500 EcoDiesel |
| Chason | Pointer | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Steven | Palmer | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Roger | Parker | TN | TN | 2016 | Dodge Ram 1500 EcoDiesel |
| Shachar | Cohen | CO | MO | 2016 | Jeep Grand Cherokee EcoDiesel |
| John & Susanne | Verretto | AZ | NV | 2014 | Dodge Ram 1500 EcoDiesel |
| Gale & Retha | Powell | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Karen Ann | Corbin | MT | MT | 2015 | Jeep Grand Cherokee EcoDiesel |
| Gonçalo | Duarte | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Adam | Kidd | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| Derek & Frances | Minchey | WY | MY | 2014 | Dodge Ram 1500 EcoDiesel |
| Kyle W | Dreas | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Patricia | Neves | CT | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Moreland | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Salvador | Erivez | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Micheas | Vannes | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Pat | Combs | OH | WV | 2015 | Dodge Ram 1500 EcoDiesel |
| Russell & Linda | Scaggs | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Johnson | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard | Thomasson | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Miranda Tadlock & Adryan | Debey | NE | NE | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeffrey & Keri | Bushaw | NV | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Niles Jeremy | Behler | ID | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Mike | Keenan | NM | NM | 2016 | Dodge Ram 1500 EcoDiesel |
| Mike | Keenan | NM | NM | 2016 | Dodge Ram 1500 EcoDiesel |
| Martin L. | Ward | IL | NJ | 2014 | Dodge Ram 1500 EcoDiesel |
| George A. | Gunther | PA | PA | 2015 | Jeep Grand Cherokee EcoDiesel |
| James & Annette | Jarvis | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Sam | Richey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sam | Rickey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sam | Rickey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sam | Rickey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sam | Rickey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sam | Rickey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Sam | Rickey | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard | Tomlison | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Jesse | Stoddard | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |

| Willard R. & Victoria L. | Hart | NE | NE | 2015 | Dodge Ram 1500 EcoDiesel |
|---|---|---|---|---|---|
| Ron | Dupree | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Jamie L | Day | NY | NY | 2014 | Jeep Grand Cherokee EcoDiesel |
| Christopher M. Forsythe & Linsey M. | Shelton | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Ball | PA | PA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Jason | Johnson | AZ | AZ | 2014 | Jeep Grand Cherokee EcoDiesel |
| Scott | Brophy | VT | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Scott | Brophy | VT | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Roland | Begay | NM | CO | 2014 | Dodge Ram 1500 EcoDiesel |
| Kevin Paul | Hare | LA | LA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jason | Philaja | WI | Wi | 2014 | Jeep Grand Cherokee EcoDiesel |
| Mace | Mcvay | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Sandy & Gina | Badenski | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Kasimir | Kedzierski | IL | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Troudt | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard & Shelly | Green | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin | Stevens | AZ | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Aaron | Mills | WI | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Charlie | Elliot | OK | OK | 2014 | Dodge Ram 1500 EcoDiesel |
| John | Henglefelt | SD | SD | 2016 | Dodge Ram 1500 EcoDiesel |
| Carl | Caughman | AR | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Bruce & JoDawn | Chrz | OK | KS | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Josh | Reid | AZ | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Lawrence | Fox | OH | OH | 2016 | Jeep Grand Cherokee EcoDiesel |
| Charles | Bogy | MT | MT | 2015 | Dodge Ram 1500 EcoDiesel |
| Brian | Carpenter | VT | VT | 2015 | Dodge Ram 1500 EcoDiesel |
| Linda | Lawrence | CA | CA | 2015 | Dodge Ram 1500 EcoDiesel |
| Andrew | Bleier | CA | CA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Mark | Armstrong | CA | CA | 2016 | Dodge Ram 1500 EcoDiesel |
| Billy | Oliver | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Zachary | Oliver | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Dennis Little & | Dianna Wallace | IN | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Darrel C. | Caldwell | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Earl | French | AL | AL | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael H & Naneen | Chace-Ortiz | ME | ME | 2015 | Dodge Ram 1500 EcoDiesel |
| Dan | Gravitt | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Gaston Barrett & Walton | Stinson | MS | MS | 2015 | Dodge Ram 1500 EcoDiesel |
| John D. | Porrazzo | MA | MA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Bobby & Petty | Harris | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Eli | Mcclain | AZ | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Wesley S | Catlin | AK | AK | 2014 | Dodge Ram 1500 EcoDiesel |
| Joseph | Weis | FL | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark & Morgan | Souza | CA | CA | 2014 | Dodge Ram 1500 EcoDiesel |
| David | Ngo | CA | CA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Robert | Smith | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Elizabeth | Roland | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| George | Graham | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| James | Radcliff | MS | MS | 2016 | Dodge Ram 1500 EcoDiesel |
| Richard & Cindy | Simcox | WY | WY | 2016 | Dodge Ram 1500 EcoDiesel |
| Carl | Ehrhart | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Carl | Ehrhart | IN | IN | 2014 | Jeep Grand Cherokee EcoDiesel |
| David | Cich | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Damian L | Sigman | CO | GA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jay | Setchell | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Doug | Conrad | CO | CO | 2015 | Dodge Ram 1500 EcoDiesel |
| Joseph | Newell | SC | SC | 2016 | Dodge Ram 1500 EcoDiesel |
| Nicholas & Samantha | Linde | WY | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Richard A. & Betty L. | Morrow | Al | AL | 2014 | Dodge Ram 1500 EcoDiesel |
| David G | Mosby | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Jose Vicente | Pinto | AL | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Ron | Smith | IN | IN | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Milich | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Williamson | IN | IN | 2014 | Jeep Grand Cherokee EcoDiesel |
| Mike | Turner | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Adam | Bayless | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Ricky | Jensen | CA | CA | 2014 | Dodge Ram 1500 EcoDiesel |
| Frank | Novelli | TX | NM | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael & Vanetta | Mund | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Rickey | Pittman | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Steve | Spidal Jr | AK | AK | 2016 | Dodge Ram 1500 EcoDiesel |
| Marc Daquila & Melodye | Eldeen | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Allen Lewis | Heffelbower | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Jacquelyn | Lowe | MI | MI | 2016 | Jeep Grand Cherokee EcoDiesel |
| William Randolth | Wiggins | NC | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| John | D'amato | NY | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Kurt | Cundiff | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Mark | Schultz | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Laura | Morgan | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert H | Reuter | MA | RI | 2015 | Jeep Grand Cherokee EcoDiesel |
| Robert H | Reuter | MA | MA | 2015 | Dodge Ram 1500 EcoDiesel |
| Alan | Macchi | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Thomas A. | Crenshaw | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Gustavo | Pina | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Christian Parker d/b/a | Line Striping, Inc. | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Christian Parker d/b/a | Line Striping, Inc. | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Christian Parker d/b/a | Line Striping, Inc. | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| John | Guarino Jr | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Gregory | Ray | KS | MI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Chris & Kimberly | Wilkinson | UT | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Sutherland | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Tim | Gorgan | VA | NC | 2016 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Kip | Coleman | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Ben | Korngold | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Everard | Lewis II | WA | WA | 2016 | Dodge Ram 1500 EcoDiesel |
| Chris | Masters | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin | Kerner | ND | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Rebecca | Coburn | NE | NE | 2015 | Dodge Ram 1500 EcoDiesel |
| Reginaldo | Medeiros | NY | NY | 2014 | Jeep Grand Cherokee EcoDiesel |
| Mark A. | Shackelford | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| John | Baker | VA | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Michael | Wahl | PA | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Steve | Paquette | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Jim | Henry | MO | MO | 2016 | Dodge Ram 1500 EcoDiesel |
| Mark & Bertha | Jude | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Montgomery | KS | KS | 2016 | Dodge Ram 1500 EcoDiesel |
| Craig | Stout | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin & Elaine | Collier | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Robert Lloyd | Senter | TN | TN | 2014 | Dodge Ram 1500 EcoDiesel |
| Keith | Kirby | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Claude & Randy | Stone | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Brian Kirimdar d/b/a | Aquafarm Organics | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Donald | Mollett | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Rick | Cruz | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Troy | Cucurullo | MS | MS | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| John | Adams | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Audie | Proctor | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Ricky | Fields | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Frank | Costanzo | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Cluade | Akley | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Kelly Steely d/b/a | Steely Lease Sales | AL | AL | 2014 | Dodge Ram 1500 EcoDiesel |
| David & Amber | Jones | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Carissamae | Frederick | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Ben | Savino | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Ben | Savino | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Ben | Savino | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Blake | Byrne | OK | OK | 2015 | Dodge Ram 1500 EcoDiesel |
| Brad | Hoben | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Brent | Ford | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Cyrus | Garrison | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Daniel | Acker | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Daniel | Welzel | NJ | NJ | 2015 | Dodge Ram 1500 EcoDiesel |
| Derrick | Owens | WI | WI | 2014 | Dodge Ram 1500 EcoDiesel |
| Domenick Thomas | Ruttura | NY | NY | 2016 | Jeep Grand Cherokee EcoDiesel |
| Domenick Thomas | Ruttura | NY | NY | 2015 | Jeep Grand Cherokee EcoDiesel |
| Don | Keeney | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Frances & Carl | Roberts | CO | CO | 2014 | Dodge Ram 1500 EcoDiesel |
| James & Judy | Drury | TN | AZ | 2016 | Dodge Ram 1500 EcoDiesel |

61

| | | | | | |
|---|---|---|---|---|---|
| Jeffrey | Mills | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Jimmy | Haney | MS | MS | 2016 | Dodge Ram 1500 EcoDiesel |
| John | Gonzalez | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Joseph | Donchatz | WV | WV | 2016 | Jeep Grand Cherokee EcoDiesel |
| Justin | Chandler | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Katie | Mantz | NE | NE | 2016 | Dodge Ram 1500 EcoDiesel |
| Keith | Wallum | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Kim | Triplett | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Larry | Rasband | UT | UT | 2015 | Jeep Grand Cherokee EcoDiesel |
| Leslie Charles | Tabor | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Margie & Joshua A. | Toler | WV | WV | 2016 | Jeep Grand Cherokee EcoDiesel |
| Mildred | Fitts | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Nathan & Tracey | Andrews | KS | KS | 2015 | Dodge Ram 1500 EcoDiesel |
| Pete | Pompa | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Richard or Annette | Peterson | AL | AL | 2014 | Dodge Ram 1500 EcoDiesel |
| Richie | Harris | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Rodger | Cassat | WA | WA | 2015 | Dodge Ram 1500 EcoDiesel |
| Ronald Goca & Maryann | Khayami | HI | HI | 2015 | Dodge Ram 1500 EcoDiesel |
| Roxane | Branz | NC | NC | 2016 | Jeep Grand Cherokee EcoDiesel |
| Roy | LeNeave | VA | VA | 2015 | Dodge Ram 1500 EcoDiesel |
| Russell S. & Desiree G. | Lewis | KS | KS | 2014 | Jeep Grand Cherokee EcoDiesel |
| Sandra Lascano & Jaime | Eugenio | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Saska | Voll | MA | MA | 2014 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Scott | Carey | MA | MA | 2016 | Dodge Ram 1500 EcoDiesel |
| Steve | Staley | ID | ID | 2014 | Jeep Grand Cherokee EcoDiesel |
| Terrence | O'Brien | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Thomas | Dluzniewski | MO | MO | 2014 | Dodge Ram 1500 EcoDiesel |
| Todd | Ruttura | NY | NY | 2016 | Jeep Grand Cherokee EcoDiesel |
| Todd | Ruttura | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Todd | Ruttura | NY | CT | 2015 | Jeep Grand Cherokee EcoDiesel |
| Tom & Shawn | Wells | WA | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Travis | Hoyle | TN | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Weldon | Irvin | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| William Alfred | Brown, Jr. | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Wade | Kaseberg | OR | OR | 2016 | Dodge Ram 1500 EcoDiesel |
| Thomas | Pisano | PA | PA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Tim | McGriff | SD | SD | 2016 | Dodge Ram 1500 EcoDiesel |
| Steven Michael | Erickson | IL | IL | 2015 | Dodge Ram 1500 EcoDiesel |
| Scott | Witherow | WA | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Rodney | Parr | WV | NC | 2015 | Dodge Ram 1500 EcoDiesel |
| Raymond | Russell | OK | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Paul Jefferson | Rahaman | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Kenton & Angela | Powell | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin and Danyelle | Ramsey | OR | OR | 2015 | Dodge Ram 1500 EcoDiesel |
| Joseph | Brown | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| James | Forwood | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Jason & Rebecca | Cornetto | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Jeff and Cynthia | Sullens | MD | OR | 2014 | Jeep Grand Cherokee EcoDiesel |
| Gerald | Huiras | PA | VA | 2015 | Jeep Grand Cherokee EcoDiesel |
| Jack | Zhe | NY | VA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jacob | Brown | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Dave | Mikkelson | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Dave | Mikkelson | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Dana Traeger & Susan | McKeown | NE | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Chris | Watkins | MI | MI | 2015 | Dodge Ram 1500 EcoDiesel |
| Christopher | Collins | GA | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Benjamen and Amanda | Brown | SD | SD | 2016 | Dodge Ram 1500 EcoDiesel |
| Bill | Edwards | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| AJ | Himmelsbach | PA | PA | 2016 | Dodge Ram 1500 EcoDiesel |
| Ignatius and Clara | Gladek | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Lois | Clark | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |
| Sharon | Daily | IN | IN | 2016 | Dodge Ram 1500 EcoDiesel |
| John | Brady | AK | AK | 2016 | Dodge Ram 1500 EcoDiesel |
| Jimmie James & Tamara | James | CO | CO | 2016 | Dodge Ram 1500 EcoDiesel |
| Michael | Paul | NM | NM | 2015 | Dodge Ram 1500 EcoDiesel |
| Joseph A | Reynolds | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Michael | Danielson | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |
| Brandis | Hanson | WV | VA | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Nick | Digioia | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Jackie | Brewer | NM | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Brown | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Nick | Digioia | OH | OH | 2016 | Dodge Ram 1500 EcoDiesel |
| Larry | Dygert | OH | OH | 2014 | Dodge Ram 1500 EcoDiesel |
| Kody | Wilhelmi | MI | OH | 2015 | Dodge Ram 1500 EcoDiesel |
| Ariel | Medrano | GA | NC | 2014 | Dodge Ram 1500 EcoDiesel |
| Sergio | Braga | AL | AL | 2014 | Dodge Ram 1500 EcoDiesel |
| Tom | Billing | WI | IL | 2014 | Jeep Grand Cherokee EcoDiesel |
| Ron | Ebann | AZ | AZ | 2014 | Dodge Ram 1500 EcoDiesel |
| Carl | Culbertson | NY | NY | 2014 | Dodge Ram 1500 EcoDiesel |
| Lannis | Allmaras | WA | ID | 2014 | Dodge Ram 1500 EcoDiesel |
| Elizabeth Catherine | Dunlap | FL | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Adrienne Dunford and Jason | Blacker | WA | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Daryl | Stark | KY | KY | 2015 | Dodge Ram 1500 EcoDiesel |
| Bruce | Simpson | IL | IL | 2016 | Dodge Ram 1500 EcoDiesel |
| Kathleen | McCoy | NY | NY | 2015 | Dodge Ram 1500 EcoDiesel |
| Robert | Zielinski | TX | TX | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| James | Dunn | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Carlos | Cantu | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Scott | Harrington | GA | GA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jody Simpson and Leeann | Aills | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Steve and Mallory | Wilson | PA | PA | 2015 | Dodge Ram 1500 EcoDiesel |
| Jim | Leavelle | TX | TX | 2014 | Dodge Ram 1500 EcoDiesel |
| Leya and Kenneth | Bell | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| Daniel | Lopez | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |
| David | Hanson | TX | FL | 2014 | Dodge Ram 1500 EcoDiesel |
| Dan | Sadowski | CT | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| Doug | Pitchford | IL | IL | 2014 | Jeep Grand Cherokee EcoDiesel |
| Kenneth Lynn and Laurie Ann | Drees | IA | NE | 2015 | Dodge Ram 1500 EcoDiesel |
| Patrick | Pursel | AR | AR | 2016 | Dodge Ram 1500 EcoDiesel |
| Robin | Laskody | WA | WA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Michael | Miller | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Nathan | Dawson | AZ | AZ | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin | Cudgma | CT | CT | 2016 | Dodge Ram 1500 EcoDiesel |
| Brian | Brown | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Calvin Ball d/b/a | Tower Construction Co | TN | GA | 2014 | Dodge Ram 1500 EcoDiesel |
| Dale M. & Melody Lynn | Ruzicka | MN | MN | 2016 | Dodge Ram 1500 EcoDiesel |
| Tomas | Jakubcak | CT | CT | 2014 | Dodge Ram 1500 EcoDiesel |
| Tim | Sether | MN | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| Travis & Sara | Rose | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |

| | | | | | |
|---|---|---|---|---|---|
| Kegan | Ashbrook | PA | WI | 2016 | Dodge Ram 1500 EcoDiesel |
| Eugenio & Marsha | Vargas Jr. | FL | FL | 2016 | Dodge Ram 1500 EcoDiesel |
| Lawrence & Susan | Swonger | KS | OK | 2016 | Dodge Ram 1500 EcoDiesel |
| Joe Pat | Hughes | KY | KY | 2016 | Dodge Ram 1500 EcoDiesel |
| David & Jamie | Wright | WI | WI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Gordon Doug | Stephens | LA | LA | 2014 | Dodge Ram 1500 EcoDiesel |
| Marcus | Kruse | MI | MI | 2014 | Dodge Ram 1500 EcoDiesel |
| William D | Ross | AL | AL | 2015 | Dodge Ram 1500 EcoDiesel |
| Jordan | Smith | OR | ID | 2015 | Dodge Ram 1500 EcoDiesel |
| Dawnetta Janene | Holladay | GA | GA | 2014 | Jeep Grand Cherokee EcoDiesel |
| Nicholas | Kein | MN | SD | 2015 | Dodge Ram 1500 EcoDiesel |
| Veryl | Adams | IN | IN | 2014 | Dodge Ram 1500 EcoDiesel |
| Ken | Levene | SD | IA | 2014 | Dodge Ram 1500 EcoDiesel |
| Tylor | Cilione | OR | OR | 2015 | Jeep Grand Cherokee EcoDiesel |
| Spencer | Giardini | WI | IL | 2016 | Jeep Grand Cherokee EcoDiesel |
| Jay E | Fitzgerald | PA | PA | 2014 | Dodge Ram 1500 EcoDiesel |
| Andrew | Bonnett | AZ | AZ | 2016 | Dodge Ram 1500 EcoDiesel |
| Terrie | Peay | TN | TN | 2015 | Dodge Ram 1500 EcoDiesel |
| Roberto | Martinez | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Steve & Jill | Aman | IA | IA | 2015 | Dodge Ram 1500 EcoDiesel |
| William | Jones | CO | SC | 2015 | Jeep Grand Cherokee EcoDiesel |
| Collin | Hale | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| Willie | Sekel | WI | WI | 2015 | Dodge Ram 1500 EcoDiesel |

67

| | | | | | |
|---|---|---|---|---|---|
| Robert | Perron III | MA | CT | 2015 | Dodge Ram 1500 EcoDiesel |
| Kevin | Sanders | LA | AK | 2016 | Dodge Ram 1500 EcoDiesel |
| Ryan | Lahaie | MI | MI | 2016 | Dodge Ram 1500 EcoDiesel |
| Brian | Pieper | MN | MN | 2016 | Dodge Ram 1500 EcoDiesel |
| Robert | Lionel | TX | TX | 2014 | Jeep Grand Cherokee EcoDiesel |
| Michael | Schrader | NY | NY | 2016 | Dodge Ram 1500 EcoDiesel |
| Benjamin F. | Holt Jr. | LA | LA | 2016 | Dodge Ram 1500 EcoDiesel |
| Jeremy Stevens d/b/a | JJ Floring | ID | ID | 2016 | Dodge Ram 1500 EcoDiesel |
| Debra & Ronnie | Creed | NC | NC | 2016 | Dodge Ram 1500 EcoDiesel |
| Thomas | Snyder | WV | WV | 2015 | Dodge Ram 1500 EcoDiesel |
| Brad | Smith | TX | TX | 2016 | Dodge Ram 1500 EcoDiesel |
| William & Marlene | Loewen | FL | FL | 2015 | Dodge Ram 1500 EcoDiesel |
| Paul & Angela | Miller | IL | WI | 2014 | Jeep Grand Cherokee EcoDiesel |
| Jack & Debra | Heylmann | IN | IN | 2015 | Dodge Ram 1500 EcoDiesel |
| Bryan | Emilius | PA | NJ | 2016 | Dodge Ram 1500 EcoDiesel |
| Ruthanna Taylor & Zachary | Buchanan | MO | MO | 2015 | Dodge Ram 1500 EcoDiesel |

34.    Plaintiff, Michael Barton Batman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa, residing in the City of Monticello, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 25, 2017, at Dan Deery Motor Co., an authorized FCA dealer in Waterloo, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

68

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dan Deery Motor Co. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that the Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

35.     Plaintiff, Andrew Rogers (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Colorado Springs, bought a 2014 Jeep Grand Cherokees EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 21, 2014, at Bob Allen Motor Mall, an authorized FCA dealer in Danville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles. When Plaintiff went to Bob Allen Motor Mall to purchase the Subject Vehicle,

the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission

tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

standards; that its emission treatment system was designed to de-activate during real-world driving

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

or would have paid less for it, had Defendants not concealed the unauthorized emission control

devices.

36.     Plaintiff, Andrew Rogers (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Colorado, residing in the City of Colorado Springs, bought a 2014 Jeep Grand

Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

August 11, 2018, at Perkins Motors, an authorized FCA dealer in Colorado Springs, Colorado.

Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Perkins Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

37.     Plaintiff, Andrew Steele (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina, residing in the City of Pawley's Island, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 27, 2015, at Addys Harbor Dodge, an authorized FCA dealer in Myrtle Beach, South Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

1    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

2    Subject Vehicles.  When Plaintiff went to Addys Harbor Dodge to purchase the Subject Vehicle,

3    the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

4    and performance. These representations, along with the advertised fuel economy, were among the

5    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

6    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

7    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

8    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

9    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

10   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

11   standards; that its emission treatment system was designed to de-activate during real-world driving

12   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

13   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

14   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

15   or would have paid less for it, had Defendants not concealed the unauthorized emission control

16   devices.

17        38.     Plaintiff, Andrew Curtis & Mimi Elizabeth Reid (for the purpose of this paragraph,

18   "Plaintiff"), citizens of the State of South Caroling, residing in the City of Simpsonville, bought a

19   2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle")

20   on or about July 15, 2016, at Northwest Jeep, an authorized FCA dealer in Beaverton, Oregon.

21   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

22   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

23   website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Northwest Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

39.     Plaintiff, Andy Twork (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Holton, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Lakeshore Chrysler Jeep Dodge Ram, an authorized FCA dealer in Montague, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

1    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

2    When Plaintiff went to Lakeshore Chrysler Jeep Dodge Ram to lease the Subject Vehicle, the sales

3    associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

4    performance. These representations, along with the advertised fuel economy, were among the

5    primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know

6    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

7    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

8    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

9    tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle,

10   or would have paid less for it, had he/she known that it did not comply with emission standards;

11   that its emission treatment system was designed to de-activate during real-world driving

12   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

13   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

14   proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or

15   would have paid less for it, had Defendants not concealed the unauthorized emission control

16   devices.

17          40.      Plaintiff, Anne Anderson (for the purpose of this paragraph, "Plaintiff"), a citizen

18   of the State of Minnesota, residing in the City of Hinckley, bought a 2015 Dodge Ram 1500

19   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 20, 2015,

20   at Roseville Chrysler Jeep Dodge Ram, an authorized FCA dealer in Roseville, Minnesota.

21   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

22   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

23   website, on which the Subject Vehicles were represented as environmentally friendly, having low

74

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Roseville Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

41.     Plaintiff, Arnold Construction Co., Inc. (for the purpose of this paragraph, "Plaintiff"), a company conducting business in the State of New York, City of Kingston, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 22, 2015, at Sawyer Motors, an authorized FCA dealer in Saugerties, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sawyer Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

42.    Plaintiff, Arturo Nieves (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia, residing in the City of Quantico, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 5, 2015, at Lustine Chrysler Dodge Jeep Ram, an authorized FCA dealer in Woodbridge, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions

and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lustine Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

43.    Plaintiff, Autry Hall (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Brewton, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 29, 2015, at Sandy Sansing, an authorized FCA dealer in Milton, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel

economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sandy Sansing to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

44.     Plaintiff, Bert Dodge (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Stillwater, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014, at Nemer Chrysler Jeep Dodge Ram of Saratoga, an authorized FCA dealer in Saratoga, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

1   Subject Vehicles.  When Plaintiff went to Nemer Chrysler Jeep Dodge Ram of Saratoga to

2   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

3   attributes, including its fuel economy and performance. These representations, along with the

4   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

5   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

6   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

7   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

8   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

9   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

10  known that it did not comply with emission standards; that its emission treatment system was

11  designed to de-activate during real-world driving conditions; and that it could not achieve the

12  advertised towing power, performance, and/or fuel economy without cheating emission tests.

13  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

14  and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

15  not concealed the unauthorized emission control devices.

16          45.     Plaintiff, Bill Bilicki (for the purpose of this paragraph, "Plaintiff"), a citizen of the

17  State of Ohio, residing in the City of Youngstown, bought a 2014 Dodge Ram 1500 EcoDiesel®

18  (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at

19  Columbiana Chrysler Jeep Dodge Ram, an authorized FCA dealer in Columbiana, Ohio. Plaintiff

20  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

21  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

22  website, on which the Subject Vehicles were represented as environmentally friendly, having low

23  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

1    Subject Vehicles.  When Plaintiff went to Columbiana Chrysler Jeep Dodge Ram to purchase the

2    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

3    its fuel economy and performance. These representations, along with the advertised fuel economy,

4    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

5    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

6    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

7    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

8    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

9    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

10   comply with emission standards; that its emission treatment system was designed to de-activate

11   during real-world driving conditions; and that it could not achieve the advertised towing power,

12   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

13   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

14   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

15   unauthorized emission control devices.

16          46.     Plaintiff, Brad W. Lines (for the purpose of this paragraph, "Plaintiff"), a citizen of

17   the State of Arizona, residing in the City of Surprise, bought a 2016 Dodge Ram 1500 EcoDiesel®

18   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 27, 2016, at

19   Maddox Motor Co., an authorized FCA dealer in Sidney, Nebraska. Plaintiff decided to buy the

20   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

21   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

22   Subject Vehicles were represented as environmentally friendly, having low emissions and good

23   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Maddox Motor Co. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

47. Plaintiff, Brenda Dokmonovich (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska, residing in the City of Omaha, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 18, 2015, at Baxter, an authorized FCA dealer in Omaha, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Baxter to purchase the Subject Vehicle, the sales associate touted the Subject

Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had she/he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

48.     Plaintiff, Brent Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Mantorville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2015, at Alma Chrysler, an authorized FCA dealer in Alma, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Alama Chrysler to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

49.     Plaintiff, Brian & Meredith Quimby (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Kansas, residing in the City of Sublette, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 29, 2014, at Marmie Chrysler Dodge Jeep Ram, an authorized FCA dealer in Great Bend, Kansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Marmie Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

50.     Plaintiff, Brian & Kim Way (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Arizona, residing in the City of McCrory, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 12, 2017 at Frank Fletcher Dodge Chrysler Jeep, an authorized FCA dealer in Sherwood, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Frank Fletcher Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

51.     Plaintiff, Brian Barker (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas, residing in the City of Haysville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 9, 2016, at Eddy's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Wichita, Kansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Eddy's Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

52.     Plaintiff, Brittney Olsen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska, residing in the City of Daykin, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 8, 2015, at Performance Dodge, an authorized FCA dealer in Lincoln Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Performance Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

1   These representations, along with the advertised fuel economy, were among the primary reasons

2   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

3   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

4   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

5   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

6   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

7   would have paid less for it, had he/she known that it did not comply with emission standards; that

8   its emission treatment system was designed to de-activate during real-world driving conditions;

9   and that it could not achieve the advertised towing power, performance, and/or fuel economy

10  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

11  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

12  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

13      53.     Plaintiff, Bruce Bolen (for the purpose of this paragraph, "Plaintiff"), a citizen of

14  the State of Kansas, residing in the City of Sharon Springs, bought a 2016 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 30, 2016,

16  at Colorado Spring Dodge, an authorized FCA dealer in Colorado Springs, Colorado. Plaintiff

17  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

19  website, on which the Subject Vehicles were represented as environmentally friendly, having low

20  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21  Subject Vehicles.  When Plaintiff went to Colorado Spring Dodge to purchase the Subject Vehicle,

22  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

23  and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

54.     Plaintiff, Bruce Carr (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Winchester, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Green Dodge, an authorized FCA dealer in Springfield, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Green Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

88

chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

55.     Plaintiff, Bruce Hassevoort (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Holland, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Zeigler Chrysler Dodge Jeep Ram Fiat Alfa Maserati, an authorized FCA dealer in Grandville, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Zeigler Chrysler Dodge Jeep Ram Fiat Alfa Maserati to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

1    Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

2    advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

3    Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

4    unauthorized emission control devices designed to cheat emission tests and to deceive consumers

5    and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

6    for it, had he/she known that it did not comply with emission standards; that its emission treatment

7    system was designed to de-activate during real-world driving conditions; and that it could not

8    achieve the advertised towing power, performance, and/or fuel economy without cheating

9    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

10   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

11   less for it, had Defendants not concealed the unauthorized emission control devices.

12          56.     Plaintiff, Bryan Thompson (for the purpose of this paragraph, "Plaintiff"), a citizen

13   of the State of Michigan, residing in the City of Flushing, bought a 2016 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 10,

15   2017 at Dick Scott, an authorized FCA dealer in Fowlerville, Michigan. Plaintiff decided to buy

16   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18   Subject Vehicles were represented as environmentally friendly, having low emissions and good

19   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20   When Plaintiff went to Dick Scott to purchase the Subject Vehicle, the sales associate touted the

21   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

1   could perform as advertised only by emitting NOx at levels that are greater than advertised and

2   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

3   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

4   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

5   would have paid less for it, had he/she known that it did not comply with emission standards; that

6   its emission treatment system was designed to de-activate during real-world driving conditions;

7   and that it could not achieve the advertised towing power, performance, and/or fuel economy

8   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

9   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

10   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

11   57.   Plaintiff, Camelo Guzman (for the purpose of this paragraph, "Plaintiff"), a citizen

12   of the State of Michigan, residing in the City of Detroit, leased a 2015 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

14   2015, at Snethkamp, an authorized FCA dealer in Redford, Michigan. Plaintiff decided to buy the

15   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

16   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

17   Subject Vehicles were represented as environmentally friendly, having low emissions and good

18   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

19   When Plaintiff went to Snethkamp to lease the Subject Vehicle, the sales associate touted the

20   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

21   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

22   chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle

23   could perform as advertised only by emitting NOx at levels that are greater than advertised and

91

1    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3    deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would

4    have paid less for it, had he/she known that it did not comply with emission standards; that its

5    emission treatment system was designed to de-activate during real-world driving conditions; and

6    that it could not achieve the advertised towing power, performance, and/or fuel economy without

7    cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

8    Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less

9    for it, had Defendants not concealed the unauthorized emission control devices.

10          58.      Plaintiff, Carl Davis (for the purpose of this paragraph, "Plaintiff"), a citizen of the

11    State of Virginia, residing in the City of Brookneal, bought a 2016 Dodge Ram 1500 EcoDiesel®

12    (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at Billy Craft

13    Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lynchburg, Virginia. Plaintiff decided to

14    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

15    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16    Subject Vehicles were represented as environmentally friendly, having low emissions and good

17    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18    When Plaintiff went to Billy Craft Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the

19    sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

20    performance. These representations, along with the advertised fuel economy, were among the

21    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

59.     Plaintiff, Casey Sauerhage (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Sparta, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 25, 2016, at Franklin Chrysler Dodge Jeep Ram, an authorized FCA dealer in Franklin, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Franklin Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

1  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

2  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

3  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

4  standards; that its emission treatment system was designed to de-activate during real-world driving

5  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

6  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

7  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

8  or would have paid less for it, had Defendants not concealed the unauthorized emission control

9  devices.

10        60.      Plaintiff, Chad Kaltenbach (for the purpose of this paragraph, "Plaintiff"), a citizen

11  of the State of South Dakota, residing in the City of Martin, bought a 2014 Dodge Ram 1500

12  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 2, 2017

13  at Aberdeen Chrysler Center, an authorized FCA dealer in Aberdeen, South Dakota. Plaintiff

14  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16  website, on which the Subject Vehicles were represented as environmentally friendly, having low

17  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18  Subject Vehicles.  When Plaintiff went to Aberdeen Chrysler Center to purchase the Subject

19  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

20  economy and performance. These representations, along with the advertised fuel economy, were

21  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

22  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

23  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

94

1    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

2    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

3    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

4    emission standards; that its emission treatment system was designed to de-activate during real-

5    world driving conditions; and that it could not achieve the advertised towing power, performance,

6    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

7    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

8    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

9    control devices.

10        61.    Plaintiff, Chad & Jennifer Johnson (for the purpose of this paragraph, "Plaintiff"),

11   citizens of the State of Minnesota, residing in the City of Winnebago, bought a 2016 Dodge Ram

12   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 23,

13   2018 at Domko, an authorized FCA dealer in Northfield, Minnesota. Plaintiff decided to buy the

14   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

15   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16   Subject Vehicles were represented as environmentally friendly, having low emissions and good

17   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18   When Plaintiff went to Domko to purchase the Subject Vehicle, the sales associate touted the

19   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22   could perform as advertised only by emitting NOx at levels that are greater than advertised and

23   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

62.      Plaintiff, Changping Wei (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Florida, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 26, 2016, at Dayton Andrews Dodge, an authorized FCA dealer in St. Petersburg, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dayton Andrews Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to

96

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

63.     Plaintiff, Charles Foschini (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Miami, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2013, at Gateway Dodge Orlando, an authorized FCA dealer in Orlando, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Gateway Dodge Orlando to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

1    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

2    standards; that its emission treatment system was designed to de-activate during real-world driving

3    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

4    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

5    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

6    or would have paid less for it, had Defendants not concealed the unauthorized emission control

7    devices.

8           64.     Plaintiff, Terrance Piper (for the purpose of this paragraph, "Plaintiff"), a citizen

9    of the State of Pennsylvania, residing in the City of McKeesport bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 14, 2015,

11   at Jim Shorkey Chrysler Dodge Jeep Ram Fait, an authorized FCA dealer in Irwin, Pennsylvania.

12   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Jim Shorkey Chrysler Dodge Jeep Ram Fait to purchase

17   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

18   including its fuel economy and performance. These representations, along with the advertised fuel

19   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

20   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

21   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

22   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

23   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

65.     Plaintiff, Chris Samuelson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Dakota, residing in the City of Washburn, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 22, 2017 at Wickstrom Chrysler Jeep Dodge Ram, an authorized FCA dealer in Barrington, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Wickstrom Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

66.     Plaintiff, Huegerich Farms (for the purpose of this paragraph, "Plaintiff"), doing business in the State of Iowa, in the City of Breda, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 18, 2914 at Wittrock Motor Company, an authorized FCA dealer in Carroll, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Wittrock Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

1    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

2    standards; that its emission treatment system was designed to de-activate during real-world driving

3    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

4    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

5    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

6    or would have paid less for it, had Defendants not concealed the unauthorized emission control

7    devices.

8            67.     Plaintiff, Huegerich Farms (for the purpose of this paragraph, "Plaintiff"), doing

9    business in the State of Iowa, in the City of Breda, bought a 2016 Dodge Ram 1500 EcoDiesel®

10   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 9, 2016, at Team

11   Ford, an authorized FCA dealer in Deniso, Iowa. Plaintiff decided to buy the Subject Vehicle based

12   in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and

13   fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

14   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

15   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

16   Team Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

17   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

18   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

19   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

20   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

21   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

22   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

23   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

101

1    for it, had he/she known that it did not comply with emission standards; that its emission treatment

2    system was designed to de-activate during real-world driving conditions; and that it could not

3    achieve the advertised towing power, performance, and/or fuel economy without cheating

4    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

5    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

6    less for it, had Defendants not concealed the unauthorized emission control devices.

7        68.    Plaintiff, Christopher & Michelle Guggemos (for the purpose of this paragraph,

8    "Plaintiff"), citizens of the State of Minnesota, residing in the City of Litchfield, bought a 2015

9    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

10   about August 3, 2015, at Litchfield Chrysler, an authorized FCA dealer in Litchfield, Minnesota.

11   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Litchfield Chrysler to purchase the Subject Vehicle, the

16   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

17   performance. These representations, along with the advertised fuel economy, were among the

18   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

102

1   standards; that its emission treatment system was designed to de-activate during real-world driving

2   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5   or would have paid less for it, had Defendants not concealed the unauthorized emission control

6   devices.

7        69.    Plaintiff, Christopher Fehr (for the purpose of this paragraph, "Plaintiff"), a citizen

8   of the State of South Carolina, residing in the City of Charleston, bought a 2014 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 14, 2015,

10  at Hendrick Dodge, an authorized FCA dealer in Charleston, South Caroling. Plaintiff decided to

11  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

12  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13  Subject Vehicles were represented as environmentally friendly, having low emissions and good

14  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15  When Plaintiff went to Hendrick Dodge to purchase the Subject Vehicle, the sales associate touted

16  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19  could perform as advertised only by emitting NOx at levels that are greater than advertised and

20  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23  would have paid less for it, had he/she known that it did not comply with emission standards; that

103

its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

70.     Plaintiff, Clay Cooper (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Stroud, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Jacksonville Chrysler Jeep Dodge Ram, an authorized FCA dealer in Jacksonville, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Jacksonville Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate

1    during real-world driving conditions; and that it could not achieve the advertised towing power,

2    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

3    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

4    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

5    unauthorized emission control devices.

6        71.    Plaintiff, Robert J Phillips (for the purpose of this paragraph, "Plaintiff"), a citizen

7    of the State of Nevada, residing in the City of Battle Mountain, bought a 2015 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 28, 2018

9    at Rugged Rentals, an authorized FCA dealer in Layton, Utah. Plaintiff decided to buy the Subject

10   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

11   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

12   Vehicles were represented as environmentally friendly, having low emissions and good fuel

13   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

14   Plaintiff went to Rugged Rentals to purchase the Subject Vehicle, the sales associate touted the

15   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18   could perform as advertised only by emitting NOx at levels that are greater than advertised and

19   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22   would have paid less for it, had he/she known that it did not comply with emission standards; that

23   its emission treatment system was designed to de-activate during real-world driving conditions;

105

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5         72.    Plaintiff, Heather Aragon (for the purpose of this paragraph, "Plaintiff"), a citizen

6    of the State of New Mexico, residing in the City of Farmington, bought a 2015 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 24,

8    2015, at Advantage Dodge Chrysler Jeep, an authorized FCA dealer in Wickenburg, Arizona.

9    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to Advantage Dodge Chrysler Jeep to purchase the Subject

14   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

15   economy and performance. These representations, along with the advertised fuel economy, were

16   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

17   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

18   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

19   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

20   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

21   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

22   emission standards; that its emission treatment system was designed to de-activate during real-

23   world driving conditions; and that it could not achieve the advertised towing power, performance,

106

1   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

2   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

3   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

4   control devices.

5          73.     Plaintiff, Dan Healy (for the purpose of this paragraph, "Plaintiff"), a citizen of the

6   State of Wisconsin, residing in the City of Greenbay, bought a 202015 Dodge Ram 1500

7   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 21,

8   2015, at Gandrud, an authorized FCA dealer in Greenbay, Wisconsin. Plaintiff decided to buy the

9   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11  Subject Vehicles were represented as environmentally friendly, having low emissions and good

12  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13  When Plaintiff went to Gandrud to purchase the Subject Vehicle, the sales associate touted the

14  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

15  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17  could perform as advertised only by emitting NOx at levels that are greater than advertised and

18  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21  would have paid less for it, had he/she known that it did not comply with emission standards; that

22  its emission treatment system was designed to de-activate during real-world driving conditions;

23  and that it could not achieve the advertised towing power, performance, and/or fuel economy

107

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4          74.    Plaintiff, Daniel McMahon (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Maryland, residing in the City of Taneytown, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 16,

7    2016, at Musselmans, an authorized FCA dealer in Catonsville, Maryland. Plaintiff decided to buy

8    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

9    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Musselmans to purchase the Subject Vehicle, the sales associate touted the

13   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

108

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        75.    Plaintiff, Daniel Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Arizona, residing in the City of Glendale, bought a 2016 Dodge Ram 1500 EcoDiesel®

5    (for the purpose of this paragraph, the "Subject Vehicle") on or about November 8, 2016, at Larry

6    H Miller Chrysler Jeep Dodge Ram, an authorized FCA dealer in Surprise, Arizona. Plaintiff

7    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Larry H Miller Chrysler Jeep Dodge Ram to purchase

12   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

13   including its fuel economy and performance. These representations, along with the advertised fuel

14   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

15   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

16   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

17   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

18   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

19   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

20   that it did not comply with emission standards; that its emission treatment system was designed to

21   de-activate during real-world driving conditions; and that it could not achieve the advertised

22   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

23   suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

1   not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

2   concealed the unauthorized emission control devices.

3         76.     Plaintiff, Danny Hill (for the purpose of this paragraph, "Plaintiff"), a citizen of the

4   State of South Carolina, residing in the City of Lake City, bought a 2014 Dodge Ram 1500

5   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016,

6   at Santee Automotive, an authorized FCA dealer in Manning, South Carolina. Plaintiff decided to

7   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9   Subject Vehicles were represented as environmentally friendly, having low emissions and good

10  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11  When Plaintiff went to Santee Automotive to purchase the Subject Vehicle, the sales associate

12  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13  These representations, along with the advertised fuel economy, were among the primary reasons

14  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19  would have paid less for it, had he/she known that it did not comply with emission standards; that

20  its emission treatment system was designed to de-activate during real-world driving conditions;

21  and that it could not achieve the advertised towing power, performance, and/or fuel economy

22  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

110

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2         77.     Plaintiff, Danny Farrell (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of New York, residing in the City of Sound Beach, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15,

5    2015, at Smith Haven Ram, an authorized FCA dealer in St. James, New York. Plaintiff decided

6    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

7    vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

8    which the Subject Vehicles were represented as environmentally friendly, having low emissions

9    and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

10   Vehicles.  When Plaintiff went to Smith Haven Ram to purchase the Subject Vehicle, the sales

11   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

12   performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

111

1   devices.

2        78.     Plaintiff, Danny W. Harris II (for the purpose of this paragraph, "Plaintiff"), a

3   citizen of the State of Michigan, residing in the City of Manchester, bought a 2015 Jeep Grand

4   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June

5   2, 2015, at Cueter Chrysler Jeep Dodge Ram, an authorized FCA dealer in Ypsilanti, Michigan.

6   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to Cueter Chrysler Jeep Dodge Ram to purchase the Subject

11  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12  economy and performance. These representations, along with the advertised fuel economy, were

13  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19  emission standards; that its emission treatment system was designed to de-activate during real-

20  world driving conditions; and that it could not achieve the advertised towing power, performance,

21  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

112

1   control devices.

2         79.   Plaintiff, Dariusz Kulon (for the purpose of this paragraph, "Plaintiff"), a citizen of

3   the State of Illinois, residing in the City of Shorewood, bought a 2016 Dodge Ram 1500

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 29, 2016,

5   at Tyson Ram, an authorized FCA dealer in Shorewood, Illinois. Plaintiff decided to buy the

6   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8   Subject Vehicles were represented as environmentally friendly, having low emissions and good

9   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10  When Plaintiff went to Tyson Ram to purchase the Subject Vehicle, the sales associate touted the

11  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14  could perform as advertised only by emitting NOx at levels that are greater than advertised and

15  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18  would have paid less for it, had he/she known that it did not comply with emission standards; that

19  its emission treatment system was designed to de-activate during real-world driving conditions;

20  and that it could not achieve the advertised towing power, performance, and/or fuel economy

21  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

80.     Plaintiff, Samantha Mountford & Darin Illges (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Virginia, residing in the City of Dumfries, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 8, 2016, at Lustine Chrysler Dodge Jeep Ram, an authorized FCA dealer in Woodbridge, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lustine Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

114

81.     Plaintiff, Samantha Mountford & Darrin Illges (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Virginia, residing in the City of Dumfries, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 10, 2015, at Lustine Chrysler Dodge Jeep Ram, an authorized FCA dealer in Woodbridge, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lustine Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

115

82.     Plaintiff, David Mitchell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia, residing in the City of Chesapeake, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 15, 2016, at Williamsburg Chrysler, an authorized FCA dealer in Williamsburg, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Williamsburg Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

116

83.     Plaintiff, David Scales (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey, residing in the City of Williamstown, leased a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 5, 2015, at Mt. Ephraim Dodge Ram, an authorized FCA dealer in Mt. Ephraim, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mt. Ephraim to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

84.     Plaintiff, David Duncan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina, residing in the City of Salisbury, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 16, 2015, at Hendrix, an authorized FCA dealer in Concord, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Hendrix to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

85.     Plaintiff, David Sexton (for the purpose of this paragraph, "Plaintiff"), a citizen of

118

the State of Missouri, residing in the City of St. Louis, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 3, 2014, at Royalgate Dodge, an authorized FCA dealer in Ellisville, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Royalgate Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

86.     Plaintiff, David Green (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Owensboro, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 20, 2017 at Watermark Ford Nissan, an authorized FCA dealer in Madisonville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Watermark Ford Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

87.     Plaintiff, David S. Wergen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon, residing in the City of Enterprise, bought a 2016 Dodge Ram 1500

1   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15,

2   2017 at Rogers Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lewiston, Idaho. Plaintiff

3   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

4   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

5   website, on which the Subject Vehicles were represented as environmentally friendly, having low

6   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

7   Subject Vehicles.  When Plaintiff went to Rogers Chrysler Dodge Jeep Ram to purchase the

8   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

9   its fuel economy and performance. These representations, along with the advertised fuel economy,

10  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

11  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

12  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

13  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

14  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

15  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

16  comply with emission standards; that its emission treatment system was designed to de-activate

17  during real-world driving conditions; and that it could not achieve the advertised towing power,

18  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

19  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

20  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

21  unauthorized emission control devices.

22       88.     Plaintiff, Deborah & Calvin Stafford (for the purpose of this paragraph,

23  "Plaintiff"), citizens of the State of Tennessee, residing in the City of Lewisburg, bought a 2015

Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 2, 2016, at Chrysler Dodge Jeep Ram of Columbia, an authorized FCA dealer in Columbia, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chrysler Dodge Jeep Ram of Columbia to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

89.    Plaintiff, Deborah & Calvin Stafford (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Tennessee, residing in the City of Lewisburg, bought a 2016

Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 14, 2016, at Chrysler Dodge Jeep Ram of Columbia, an authorized FCA dealer in Columbia, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chrysler Dodge Jeep Ram of Columbia to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

90.     Plaintiff, Debra Severson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Billings, bought a 2015 Dodge Ram 1500

123

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 8, 2015, at Chris Nikel Chrysler Jeep Dodge Ram Fiat, an authorized FCA dealer in Broken Arrow, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chris Nikel Chrysler Jeep Dodge Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

91.     Plaintiff, Dennis Tubridy (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Ransomville, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at Joe Cecconi, an authorized FCA dealer in Niagara Falls, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Joe Cecconi to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

92.     Plaintiff, Derik Fairchild (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Cantonment, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015,

at Chatham Ford, an authorized FCA dealer in Chatom, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chatham Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

93.     Plaintiff, Derrick Sillivan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Roundup, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 15, 2017 at Legacy Chrysler Jeep Dodge Ram, an authorized FCA dealer in Island City, Oregon. Plaintiff

126

1    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3    website, on which the Subject Vehicles were represented as environmentally friendly, having low

4    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5    Subject Vehicles.  When Plaintiff went to Legacy Chrysler Jeep Dodge Ram to purchase the

6    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

7    its fuel economy and performance. These representations, along with the advertised fuel economy,

8    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

9    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

10   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

11   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

12   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

13   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

14   comply with emission standards; that its emission treatment system was designed to de-activate

15   during real-world driving conditions; and that it could not achieve the advertised towing power,

16   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

17   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

18   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

19   unauthorized emission control devices.

20          94.     Plaintiff, Dominick Bianchi (for the purpose of this paragraph, "Plaintiff"), a

21   citizen of the State of Florida residing in the City of Land O Lakes, bought a 2016 Dodge Ram

22   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October

23   10, 2015, at Ferman Chrysler Jeep Dodge, an authorized FCA dealer in Lutz, Florida. Plaintiff

127

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ferman Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

95.     Plaintiff. Don & Jackie Walker (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Oklahoma, residing in the City of Minco, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 27, 2016, at David Stanley Chrysler Dodge Jeep Ram Fiat, an authorized FCA dealer in Midwest, Oklahoma.

128

1    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3    website, on which the Subject Vehicles were represented as environmentally friendly, having low

4    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5    Subject Vehicles.  When Plaintiff went to David Stanley Chrysler Dodge Jeep Ram Fiat to

6    purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

7    attributes, including its fuel economy and performance. These representations, along with the

8    advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

9    the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

10   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

11   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

12   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

13   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

14   known that it did not comply with emission standards; that its emission treatment system was

15   designed to de-activate during real-world driving conditions; and that it could not achieve the

16   advertised towing power, performance, and/or fuel economy without cheating emission tests.

17   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

18   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

19   not concealed the unauthorized emission control devices.

20        96.    Plaintiff, Donald Moore (for the purpose of this paragraph, "Plaintiff"), a citizen of

21   the State of New York, residing in the City of Ogdensburg, bought a 2015 Dodge Ram 1500

22   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 16,

23   2014, at F.X. Caprara Dodge, an authorized FCA dealer in Alexandria Bay, New York. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to F.X. Caprara Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

97.      Plaintiff, Donald E. & Brenda S. Keith (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Illinois, residing in the City of Mapleton, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 27, 2014, at Sam Leman Peoria, an authorized FCA dealer in Peoria, Illinois. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sam Leman Peoria to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

98.     Plaintiff, Donald E. & Brenda S. Keith (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Illinois, residing in the City of Mapleton, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 16, 2016, at Sam Leman Peoria, an authorized FCA dealer in Peoria, Illinois. Plaintiff

1    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3    website, on which the Subject Vehicles were represented as environmentally friendly, having low

4    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5    Subject Vehicles.  When Plaintiff went to Sam Leman Peoria to purchase the Subject Vehicle, the

6    sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

7    performance. These representations, along with the advertised fuel economy, were among the

8    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

9    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

10   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

11   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

12   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

13   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

14   standards; that its emission treatment system was designed to de-activate during real-world driving

15   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

16   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

17   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

18   or would have paid less for it, had Defendants not concealed the unauthorized emission control

19   devices.

20          99.     Plaintiff, Donavin Auld (for the purpose of this paragraph, "Plaintiff"), a citizen of

21   the State of North Carolina, residing in the City of New Bern, bought a 2016 Dodge Ram 1500

22   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 27, 2018

23   at Riverside Chrysler Jeep Dodge, an authorized FCA dealer in New Bern, North Carolina.

132

1    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3    website, on which the Subject Vehicles were represented as environmentally friendly, having low

4    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5    Subject Vehicles.  When Plaintiff went to Riverside Chrysler Jeep Dodge to purchase the Subject

6    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

7    economy and performance. These representations, along with the advertised fuel economy, were

8    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

9    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

10   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

11   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

12   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

13   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

14   emission standards; that its emission treatment system was designed to de-activate during real-

15   world driving conditions; and that it could not achieve the advertised towing power, performance,

16   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

17   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

18   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

19   control devices.

20        100.    Plaintiff, Doug Merrell (for the purpose of this paragraph, "Plaintiff"), a citizen of

21   the State of Arizona, residing in the City of Gilbert, bought a 2015 Dodge Ram 1500 EcoDiesel®

22   (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2015, at Larry

23   H. Miller Dodge Peoria, an authorized FCA dealer in Peoria, Arizona. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Dodge Peoria to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

101.    Plaintiff, Douglas Thooft (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Hastings, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 29, 2016, at Red Wing Automotive Group Inc., an authorized FCA dealer in Red Wing, Minnesota. Plaintiff

1    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3    website, on which the Subject Vehicles were represented as environmentally friendly, having low

4    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5    Subject Vehicles.  When Plaintiff went to Red Wing Automotive Group Inc. to purchase the

6    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

7    its fuel economy and performance. These representations, along with the advertised fuel economy,

8    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

9    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

10   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

11   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

12   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

13   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

14   comply with emission standards; that its emission treatment system was designed to de-activate

15   during real-world driving conditions; and that it could not achieve the advertised towing power,

16   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

17   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

18   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

19   unauthorized emission control devices.

20         102.    Plaintiff, Douglas L. Bay (for the purpose of this paragraph, "Plaintiff"), a citizen

21   of the State of Colorado, residing in the City of La Junta, bought a 2014 Dodge Ram 1500

22   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 26, 2014,

23   at Eddy's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Wichita, Kansas. Plaintiff

135

1   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3   website, on which the Subject Vehicles were represented as environmentally friendly, having low

4   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5   Subject Vehicles.  When Plaintiff went to Eddy's Chrysler Dodge Jeep Ram to purchase the

6   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

7   its fuel economy and performance. These representations, along with the advertised fuel economy,

8   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

9   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

10  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

11  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

12  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

13  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

14  comply with emission standards; that its emission treatment system was designed to de-activate

15  during real-world driving conditions; and that it could not achieve the advertised towing power,

16  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

17  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

18  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

19  unauthorized emission control devices.

20       103.    Plaintiff, Dozier Holton L. Browning, III (for the purpose of this paragraph,

21  "Plaintiff"), a citizen of the State of Florida, residing in the City of Gainesville, bought a 2015

22  Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

23  about July 7, 2016, at Thunder Chrysler Dodge Jeep Ram, an authorized FCA dealer in Bartow,

Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Thunder Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

104.    Plaintiff, Dustin E. Grate (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada, residing in the City of Reno, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 8, 2015, at Lithia Chrysler Jeep of Reno, an authorized FCA dealer in Reno, Nevada. Plaintiff decided to

buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lithia Chrysler Jeep of Reno to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

105.     Plaintiff, Dylan Dzuck (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Olympia, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 7, 2016, at Dylan Dzuck, an authorized FCA dealer in Chehalis, Washington. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dylan Dzuck to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

106.    Plaintiff, Edward Dampf (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Bonfield, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at Tyson Motor Corporation, an authorized FCA dealer in Shorewood, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Tyson Motor Corporation to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

107.    Plaintiff, Edward Carrier (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Hampshire, residing in the City of East Kingston, leased a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 20, 2015, at Foss Motors, an authorized FCA dealer in Exeter, New Hampshire. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Foss Motors to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

108.    Plaintiff, Eric Becker (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas, residing in the City of Handover, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2015, at Davis-Moore Chrysler Dodge Jeep Ram Fiat, an authorized FCA dealer in Wichita, Kansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Davis-Moore Chrysler Dodge Jeep Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

109.    Plaintiff, Eric Busch (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Sullivan, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 3, 2014, at Schicker Chrysler Dodge Jeep Ram, an authorized FCA dealer in Washington, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Schicker Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

110.    Plaintiff, Erica L. Jeansonne (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Marksville, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2016, at Sterling Chrysler Jeep Dodge, an authorized FCA dealer in Opelousas, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

143

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sterling Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

111.    Plaintiff, Erick Lore (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Lindenhurst, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 15, 2017 at Ity Dodge Chrysler Jeep Ram, an authorized FCA dealer in Amityville, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ity Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

112.    Plaintiff, Frank & Lisa Meyers (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Oregon, residing in the City of Wallowa, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 18, 2016, at Smolich Motors, an authorized FCA dealer in Bend, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Smolich Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

113.    Plaintiff, Gary Wainwright (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Bradford, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 30, 2015, at Red River Dodge Chrysler Jeep, an authorized FCA dealer in Heber Springs, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

146

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Red River Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

114.   Plaintiff, Gary Huffman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Lexington, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2014, at Rod Hatfield Chrysler, an authorized FCA dealer in Winchester, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Rod Hatfield Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

115.    Plaintiff, Gary & Lauri Rowland (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Kelso, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 11, 2015, at McCords Chrysler Dodge Jeep, an authorized FCA dealer in Longview, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

148

Subject Vehicles.  When Plaintiff went to McCords Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

116.   Plaintiff, Gary Riddle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Utah, residing in the City of Highland, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 3, 2015, at Gary Riddle, an authorized FCA dealer in American Fork, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

Plaintiff went to Gary Riddle to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

117. Plaintiff, Gerry Tassell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Mchenry, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 30, 2014, at Crystal Lake Dodge, an authorized FCA dealer in Crystal Lake, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Crystal Lake Dodge to purchase the Subject Vehicle, the sales associate

1    touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

2    These representations, along with the advertised fuel economy, were among the primary reasons

3    Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

4    Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

5    and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8    would have paid less for it, had he/she known that it did not comply with emission standards; that

9    its emission treatment system was designed to de-activate during real-world driving conditions;

10   and that it could not achieve the advertised towing power, performance, and/or fuel economy

11   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14        118.    Plaintiff, Greg Long (for the purpose of this paragraph, "Plaintiff"), a citizen of the

15   State of Kansas, residing in the City of Oberlin, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

16   the purpose of this paragraph, the "Subject Vehicle") on or about June 5, 2015, at Deveny Motors,

17   LLC, an authorized FCA dealer in McCook, Nebraska. Plaintiff decided to buy the Subject Vehicle

18   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

19   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

20   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

21   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

22   Deveny Motors, LLC to purchase the Subject Vehicle, the sales associate touted the Subject

23   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

151

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

119.    Plaintiff, Gregory Erwin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Arizona, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 10, 2015, at Superior Chrysler Dodge, an authorized FCA dealer in Ashland, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Superior Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were

among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

120.    Plaintiff, Henry Lawson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Newburgh, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 15, 2014, at Ramsey, an authorized FCA dealer in Ramsey, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ramsey to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

153

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12         121.    Plaintiff, Lee Todd & Jack Terry (for the purpose of this paragraph, "Plaintiff"),

13   citizens of the State of North Carolina, residing in the City of Trinity, bought a 2015 Dodge Ram

14   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February

15   1, 2015, at Kernersville Dodge, an authorized FCA dealer in Kernersville, North Carolina. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Kernersville Dodge to purchase the Subject Vehicle, the

21   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22   performance. These representations, along with the advertised fuel economy, were among the

23   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

1 that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2 than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3 equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4 tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5 Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6 standards; that its emission treatment system was designed to de-activate during real-world driving

7 conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8 economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9 proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10 or would have paid less for it, had Defendants not concealed the unauthorized emission control

11 devices.

12     122.    Plaintiff, James Steer, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen

13 of the State of Iowa, residing in the City of Davenport, bought a 2014 Dodge Ram 1500

14 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 27, 2014,

15 at Browns West Branch, an authorized FCA dealer in West Branch, Iowa. Plaintiff decided to buy

16 the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17 reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18 Subject Vehicles were represented as environmentally friendly, having low emissions and good

19 fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20 When Plaintiff went to Browns West Branch to purchase the Subject Vehicle, the sales associate

21 touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

22 These representations, along with the advertised fuel economy, were among the primary reasons

23 Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

123.    Plaintiff, James Lines (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa, residing in the City of Marble Rock, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 23, 2015, at Mike Molstead Ford, an authorized FCA dealer in Charles City, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mike Molstead Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

124.     Plaintiff, James Bell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Waumakee, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 29, 2018 at Hebert's Town and Country Chrysler Dodge Jeep Ram, an authorized FCA dealer in Shreveport, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Herbert's Town and Country Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

125.     Plaintiff, James Fox (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina, residing in the City of Rock Hill, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2018 at Abernethy Chrysler Doge Jeep Ram, an authorized FCA dealer in Lincolnton, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Abernethy Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

1    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

2    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

3    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

4    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

5    comply with emission standards; that its emission treatment system was designed to de-activate

6    during real-world driving conditions; and that it could not achieve the advertised towing power,

7    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

8    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

9    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

10   unauthorized emission control devices.

11           126.    Plaintiff, James & Linda Watkins (for the purpose of this paragraph, "Plaintiff"),

12   citizens of the State of Idaho, residing in the City of Rupert, bought a 2015 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2017

14   at Victory Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kansas City, Kansas. Plaintiff

15   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

16   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

17   website, on which the Subject Vehicles were represented as environmentally friendly, having low

18   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

19   Subject Vehicles.  When Plaintiff went to Victory Chrysler Dodge Jeep Ram to purchase the

20   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

21   its fuel economy and performance. These representations, along with the advertised fuel economy,

22   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

23   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

127.    Plaintiff, James Newell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Pleasant Hill, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 2, 2016, at State Line Dodge Ram Jeep, an authorized FCA dealer in Kansas City, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to State Line Dodge Ram Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

160

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

128.    Plaintiff, James H. Chapman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Columbia Falls, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 10, 2015, at Don K Jeep, an authorized FCA dealer in Whitefish, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Don K Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

129.    Plaintiff, James Emerson, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia, residing in the City of Blackstone, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 13, 2017 at Strosnider Chevrolet, an authorized FCA dealer in Hopewell, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Strosnider Chevrolet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

162

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

130.     Plaintiff, Jared Korn (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Warrens, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 12, 2015, at Dane County Chrysler Dodge Jeep, an authorized FCA dealer in Stoughton, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dane County Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

163

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

131.    Plaintiff, Jason Downs (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina, residing in the City of Pelion, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 20, 2015, at Lake Keowee Chrysler Dodge Jeep Ram, an authorized FCA dealer in Seneca, South Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lake Keowee Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

132. Plaintiff, Jason Fitzgerald (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Port Barre, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 17, 2016, at Sterling Chrysler Jeep Dodge, an authorized FCA dealer in Opelousas, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Sterling Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

133.    Plaintiff, Jay Printup (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of New York, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 17, 2014, at Rock City Chrysler, an authorized FCA dealer in Salamanca, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Rock City Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

134.    Plaintiff, Jeff Schoonover (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Wellington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 25, 2015, at Fort Collins Dodge Chrysler Jeep, an authorized FCA dealer in Fort Collins, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fort Collins Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

1    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

2    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

3    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

4    emission standards; that its emission treatment system was designed to de-activate during real-

5    world driving conditions; and that it could not achieve the advertised towing power, performance,

6    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

7    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

8    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

9    control devices.

10       135.    Plaintiff, Jeff Weier (for the purpose of this paragraph, "Plaintiff"), a citizen of the

11   State of Wisconsin, residing in the City of Suring, bought a 2014 Dodge Ram 1500 EcoDiesel®

12   (for the purpose of this paragraph, the "Subject Vehicle") on or about August 29, 2014, at Gandrud

13   Motor Company, an authorized FCA dealer in Greenbay, Wisconsin. Plaintiff decided to buy the

14   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

15   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16   Subject Vehicles were represented as environmentally friendly, having low emissions and good

17   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18   When Plaintiff went to Gandrud Motor Company to purchase the Subject Vehicle, the sales

19   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

20   performance. These representations, along with the advertised fuel economy, were among the

21   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

1    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

2    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

3    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

4    standards; that its emission treatment system was designed to de-activate during real-world driving

5    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

6    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

7    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

8    or would have paid less for it, had Defendants not concealed the unauthorized emission control

9    devices.

10        136.    Plaintiff, Jeffrey Bax (for the purpose of this paragraph, "Plaintiff"), a citizen of

11   the State of Missouri, residing in the City of California, bought a 2016 Dodge Ram 1500

12   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15,

13   2016, at Spielers, an authorized FCA dealer in California, Missouri. Plaintiff decided to buy the

14   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

15   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16   Subject Vehicles were represented as environmentally friendly, having low emissions and good

17   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18   When Plaintiff went to Spielers to purchase the Subject Vehicle, the sales associate touted the

19   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22   could perform as advertised only by emitting NOx at levels that are greater than advertised and

23   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

137.    Plaintiff, Jeffrey S. & Brandon M. Woodall (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Davie, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 25, 2015, at Arrigo Dodge Chrysler Jeep Sawgrass, an authorized FCA dealer in Tamarac, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Arrigo Dodge Chrysler Jeep Sawgrass to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

170

designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

138.    Plaintiff, Jeffrey A. Michener (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Harleysville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 28, 2014, at Bergeys, an authorized FCA dealer in Souderton, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bergeys to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

139.    Plaintiff, Jeremy Hornack (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Palm Coast, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2017 at Murray Chrysler Dodge Jeep Ram of Starke, an authorized FCA dealer in Starke, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Murray Chrysler Dodge Jeep Ram of Starke to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

1    would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

2    that it did not comply with emission standards; that its emission treatment system was designed to

3    de-activate during real-world driving conditions; and that it could not achieve the advertised

4    towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

5    suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

6    not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

7    concealed the unauthorized emission control devices.

8         140.    Plaintiff, James Zinda (for the purpose of this paragraph, "Plaintiff"), a citizen of

9    the State of Montana, residing in the City of Wibaux, bought a 2016 Dodge Ram 1500 EcoDiesel®

10   (for the purpose of this paragraph, the "Subject Vehicle") on or about April 10, 2016, at HKT, an

11   authorized FCA dealer in Glendive, Montana. Plaintiff decided to buy the Subject Vehicle based

12   in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and

13   fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

14   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

15   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

16   HKT to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

17   attributes, including its fuel economy and performance. These representations, along with the

18   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

19   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

20   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

21   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

22   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

23   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

141.    Plaintiff, Jimmy & Rene Flippen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Waurika, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 11, 2016, at Byford Chrysler Doge Jeep Ram Duncan, an authorized FCA dealer in Duncan, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Byford Chrysler Doge Jeep Ram Duncan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

1    for it, had he/she known that it did not comply with emission standards; that its emission treatment

2    system was designed to de-activate during real-world driving conditions; and that it could not

3    achieve the advertised towing power, performance, and/or fuel economy without cheating

4    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

5    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

6    less for it, had Defendants not concealed the unauthorized emission control devices.

7            142.    Plaintiff, Joe Laverdiere (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Illinois, residing in the City of Peoria, bought a 2014 Dodge Ram 1500 EcoDiesel®

9    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 13, 2015, at Sam

10   Leman Peoria, an authorized FCA dealer in Peoria, Illinois. Plaintiff decided to buy the Subject

11   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

12   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

13   Vehicles were represented as environmentally friendly, having low emissions and good fuel

14   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

15   Plaintiff went to Sam Leman Peoria to purchase the Subject Vehicle, the sales associate touted the

16   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19   could perform as advertised only by emitting NOx at levels that are greater than advertised and

20   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6         143.    Plaintiff, John Donohoe (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    the State of Nebraska, residing in the City of North Platte, leased a 2016 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016,

9    at Janssen Motors, an authorized FCA dealer in North Platte, Nebraska. Plaintiff decided to buy

10   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

11   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

12   Subject Vehicles were represented as environmentally friendly, having low emissions and good

13   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

14   When Plaintiff went to Janssen Motors to lease the Subject Vehicle, the sales associate touted the

15   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17   chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle

18   could perform as advertised only by emitting NOx at levels that are greater than advertised and

19   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would

22   have paid less for it, had he/she known that it did not comply with emission standards; that its

23   emission treatment system was designed to de-activate during real-world driving conditions; and

1   that it could not achieve the advertised towing power, performance, and/or fuel economy without

2   cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

3   Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less

4   for it, had Defendants not concealed the unauthorized emission control devices.

5          144.    Plaintiff, John Lazore (for the purpose of this paragraph, "Plaintiff"), a citizen of

6   the State of New York, residing in the City of Hogansburg, bought a 2016 Dodge Ram 1500

7   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 3,

8   2015, at Blevins Dodge, an authorized FCA dealer in Massena, New York. Plaintiff decided to

9   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

10  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11  Subject Vehicles were represented as environmentally friendly, having low emissions and good

12  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13  When Plaintiff went to Blevins Dodge to purchase the Subject Vehicle, the sales associate touted

14  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

15  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17  could perform as advertised only by emitting NOx at levels that are greater than advertised and

18  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21  would have paid less for it, had he/she known that it did not comply with emission standards; that

22  its emission treatment system was designed to de-activate during real-world driving conditions;

23  and that it could not achieve the advertised towing power, performance, and/or fuel economy

177

1   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4         145.    Plaintiff, John Lance (for the purpose of this paragraph, "Plaintiff"), a citizen of

5   the State of Oklahoma, residing in the City of Clayton, bought a 2015 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 14,

7   2015, at Seth Wadley Auto Group, an authorized FCA dealer in Pauls Valley, Oklahoma. Plaintiff

8   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Seth Wadley Auto Group to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3   control devices.

4   146.   Plaintiff, John McGarry (for the purpose of this paragraph, "Plaintiff"), a citizen of

5   the State of New York, residing in the City of Highland Lake, leased a 2016 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016,

7   at Milford Chrysler Jeep Dodge, an authorized FCA dealer in Milford, Pennsylvania. Plaintiff

8   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10  website, on which the Subject Vehicles were represented as environmentally friendly, having low

11  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12  Subject Vehicles.  When Plaintiff went to Milford Chrysler Jeep Dodge to lease the Subject

13  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14  economy and performance. These representations, along with the advertised fuel economy, were

15  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did

16  not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that

17  are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the

20  Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21  emission standards; that its emission treatment system was designed to de-activate during real-

22  world driving conditions; and that it could not achieve the advertised towing power, performance,

23  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

179

1  direct and proximate result of Defendants' misconduct, and would not have leased the Subject

2  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3  control devices.

4        147.    Plaintiff, John Neumayer (for the purpose of this paragraph, "Plaintiff"), a citizen

5  of the State of Florida, residing in the City of Lecanto, bought a 2014 Jeep Grand Cherokee

6  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 16,

7  2016, at Acura or Avon, an authorized FCA dealer in Canton, Connecticut. Plaintiff decided to

8  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

10  Subject Vehicles were represented as environmentally friendly, having low emissions and good

11  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12  When Plaintiff went to Acura or Avon to purchase the Subject Vehicle, the sales associate touted

13  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16  could perform as advertised only by emitting NOx at levels that are greater than advertised and

17  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        148.    Plaintiff, Jonathan Proctor (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of the State of Pennsylvania, residing in the City of Irwin, bought a 2014 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 2,

6    2016, at Kenny Ross, an authorized FCA dealer in Adamsburg, Pennsylvania. Plaintiff decided to

7    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9    Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Kenny Ross to purchase the Subject Vehicle, the sales associate touted the

12   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15   could perform as advertised only by emitting NOx at levels that are greater than advertised and

16   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2   149.   Plaintiff, Jordan Turske (for the purpose of this paragraph, "Plaintiff"), a citizen of

3   the State of Ohio, residing in the City of Reynoldsburg, bought a 2016 Dodge Ram 1500

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 30,

5   2016, at Liberty Chrysler, an authorized FCA dealer in Pataskala, Ohio. Plaintiff decided to buy

6   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8   Subject Vehicles were represented as environmentally friendly, having low emissions and good

9   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10  When Plaintiff went to Liberty Chrysler to purchase the Subject Vehicle, the sales associate touted

11  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14  could perform as advertised only by emitting NOx at levels that are greater than advertised and

15  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18  would have paid less for it, had he/she known that it did not comply with emission standards; that

19  its emission treatment system was designed to de-activate during real-world driving conditions;

20  and that it could not achieve the advertised towing power, performance, and/or fuel economy

21  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

182

150.     Plaintiff, Jose Mejia (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina, residing in the City of Durham, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 19, 2017 at Capital Chrysler Jeep Dodge In Garner, an authorized FCA dealer in Garner, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Capital Chrysler Jeep Dodge In Garner to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

151.    Plaintiff, Joseph McCrumb (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Portland, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 15, 2016, at Jim Riehls Friendly Dodge, an authorized FCA dealer in Lapeer, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Jim Riehls Friendly Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

184

152.    Plaintiff, Joseph Hyte Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Vail, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 4, 2014, at Larry H. Miller Dodge Ram, an authorized FCA dealer in Tucson, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

185

153.     Plaintiff, Josh Turner (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Coahoma, leased a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 2, 2015, at McFadden Friendly Motors, an authorized FCA dealer in South Haven, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to McFadden Friendly Motors to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

186

154.     Plaintiff, Justin & Chelsey Leasman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas, residing in the City of Cleveland leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August, 2016, at Mack Haik Dodge, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mack Haik Dodge to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

155.     Plaintiff, Joshua Berna (for the purpose of this paragraph, "Plaintiff"), a citizen of

187

the State of Texas, residing in the City of Burleson, bought a 2015 Dodge Ram 1500 EcoDiesel®
(for the purpose of this paragraph, the "Subject Vehicle") on or about May 3, 2018, at Burleson
Nissan, an authorized FCA dealer in Burleson, Texas. Plaintiff decided to buy the Subject Vehicle
based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions
and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were
represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff
also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to
Franklin Sussex Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject
Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These
representations, along with the advertised fuel economy, were among the primary reasons Plaintiff
chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle
could perform as advertised only by emitting NOx at levels that are greater than advertised and
above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with
undisclosed and unauthorized emission control devices designed to cheat emission tests and to
deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or
would have paid less for it, had he/she known that it did not comply with emission standards; that
its emission treatment system was designed to de-activate during real-world driving conditions;
and that it could not achieve the advertised towing power, performance, and/or fuel economy
without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate
result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would
have paid less for it, had Defendants not concealed the unauthorized emission control devices.

156.    Plaintiff, Joyce Ciccone (for the purpose of this paragraph, "Plaintiff"), a citizen of
the State of New Jersey, residing in the City of Augusta, bought a 2015 Dodge Ram 1500

188

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 15, 2015, at Franklin Sussex Auto Mall, an authorized FCA dealer in Sussex, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Franklin Sussex Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

157.    Plaintiff, Justin Davis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Junction City, bought a 2015 Dodge Ram 1500

1   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 19,

2   2018 at Cowboy Dodge, an authorized FCA dealer in Clinton, Arizona. Plaintiff decided to buy

3   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

4   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

5   Subject Vehicles were represented as environmentally friendly, having low emissions and good

6   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

7   When Plaintiff went to Cowboy Dodge to purchase the Subject Vehicle, the sales associate touted

8   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

9   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

10  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

11  could perform as advertised only by emitting NOx at levels that are greater than advertised and

12  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

13  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

14  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

15  would have paid less for it, had he/she known that it did not comply with emission standards; that

16  its emission treatment system was designed to de-activate during real-world driving conditions;

17  and that it could not achieve the advertised towing power, performance, and/or fuel economy

18  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

19  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

20  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

21          158.    Plaintiff, Justin Mays (for the purpose of this paragraph, "Plaintiff"), a citizen of

22  the State of Kentucky, residing in the City of Pineville, bought a 2014 Dodge Ram 1500

23  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 5, 2016,

at Tim Short Middlesboro, an authorized FCA dealer in Middlesboro, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Tim Short Middlesboro to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

159.    Plaintiff, Ken Trousdale (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Peyton, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 6, 2016,

191

at Colorado Springs Dodge, an authorized FCA dealer in Colorado Springs, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Colorado Springs Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

160.    Plaintiff, Ken G. Sharpe (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Seneca, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 30,

2016, at Donovan & Bauer Auto Group, an authorized FCA dealer in Titusville, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Donovan & Bauer Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

161.    Plaintiff, Kenneth Nunez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Opelousas, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1,

1    2016, at Sterling Chrysler Jeep Dodge Ram, an authorized FCA dealer in Opelousas, Louisiana.

2    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

3    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

4    website, on which the Subject Vehicles were represented as environmentally friendly, having low

5    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

6    Subject Vehicles.  When Plaintiff went to Sterling Chrysler Jeep Dodge Ram to purchase the

7    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

8    its fuel economy and performance. These representations, along with the advertised fuel economy,

9    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

10   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

11   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

12   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

13   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

14   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

15   comply with emission standards; that its emission treatment system was designed to de-activate

16   during real-world driving conditions; and that it could not achieve the advertised towing power,

17   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

18   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

19   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

20   unauthorized emission control devices.

21         162.    Plaintiff, Kevin Morrison (for the purpose of this paragraph, "Plaintiff"), a citizen

22   of the State of Florida, residing in the City of Cape Coral, bought a 2015 Dodge Ram 1500

23   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 14,

2015, at Douglas Jeep Chrysler Dodge Ram, an authorized FCA dealer in Venice, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Douglas Jeep Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

163.    Plaintiff, Kevin Massey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Greenbrier, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 29,

2015, at Red River Dodge Chrysler Jeep, an authorized FCA dealer in Heber Springs, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Red River Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

164.    Plaintiff, Kim Hall (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina, residing in the City of Como, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 6, 2015, at Greenbrier

Dodge, an authorized FCA dealer in Chesapeake, Virginia. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel

economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

Plaintiff went to Greenbrier Dodge to purchase the Subject Vehicle, the sales associate touted the

Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

would have paid less for it, had he/she known that it did not comply with emission standards; that

its emission treatment system was designed to de-activate during real-world driving conditions;

and that it could not achieve the advertised towing power, performance, and/or fuel economy

without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

have paid less for it, had Defendants not concealed the unauthorized emission control devices.

165.    Plaintiff, Kimberly C. Miller (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Ohio, residing in the City of Cincinnati, bought a 2015 Jeep Grand Cherokee

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 23,

2015, at Northgate Chrysler Jeep, an authorized FCA dealer in Cincinnati, Ohio. Plaintiff decided

to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Northgate Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

166.    Plaintiff, Kimela Anne Bryant (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina, residing in the City of Monetta, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 22, 2016, at JT's Chrysler Jeep Dodge, an authorized FCA dealer in Lexington, South Carolina.

Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to JT's Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

167.    Plaintiff, Kris A. Shepherd (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon, residing in the City of Keizer, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 17, 2015, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle

199

based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

168.    Plaintiff, Lance Popwell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Farmerville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2016, at Brennan Dodge, an authorized FCA dealer in Ruston, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Brennan Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

169.    Plaintiff, Larry Sosamon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Saybrook, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 7, 2014, at Shields Auto Center, an authorized FCA dealer in Rantoul, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Shields Auto Center to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

170.    Plaintiff, Larry Maxa (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho, residing in the City of Weiser, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 31, 2016, at Hometown Motors, an authorized FCA dealer in Weiser, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel

economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Hometown Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

171.    Plaintiff, Lennard Loupe (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Reserve, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 31, 2014, at Riverland Chrysler Dodge Jeep, an authorized FCA dealer in Laplace, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

1   Subject Vehicles. When Plaintiff went to Riverland Chrysler Dodge Jeep to purchase the Subject

2   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

3   economy and performance. These representations, along with the advertised fuel economy, were

4   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

5   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

6   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

7   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

8   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

9   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

10  emission standards; that its emission treatment system was designed to de-activate during real-

11  world driving conditions; and that it could not achieve the advertised towing power, performance,

12  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

13  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

14  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

15  control devices.

16      172.    Plaintiff, Leslie J. Preston (for the purpose of this paragraph, "Plaintiff"), a citizen

17  of the State of Colorado, residing in the City of Windsor, bought a 2016 Dodge Ram 1500

18  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 19, 2016,

19  at Fort Collins Dodge Chrysler Jeep, an authorized FCA dealer in Fort Collins, Colorado. Plaintiff

20  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

21  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

22  website, on which the Subject Vehicles were represented as environmentally friendly, having low

23  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

204

1    Subject Vehicles.  When Plaintiff went to Fort Collins Dodge Chrysler Jeep to purchase the Subject

2    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

3    economy and performance. These representations, along with the advertised fuel economy, were

4    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

5    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

6    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

7    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

8    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

9    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

10   emission standards; that its emission treatment system was designed to de-activate during real-

11   world driving conditions; and that it could not achieve the advertised towing power, performance,

12   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

13   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

14   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

15   control devices.

16        173.    Plaintiff, Loren Heideman (for the purpose of this paragraph, "Plaintiff"), a citizen

17   of the State of Oregon, residing in the City of Ione, bought a 2015 Dodge Ram 1500 EcoDiesel®

18   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15, 2016, at Toms

19   Country Dodge, an authorized FCA dealer in Hermiston, Oregon. Plaintiff decided to buy the

20   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

21   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

22   Subject Vehicles were represented as environmentally friendly, having low emissions and good

23   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

205

When Plaintiff went to Toms Country Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

174.    Plaintiff, Louie Romero (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Mexico, residing in the City of Santa Rosa, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 7, 2018 at Mark's Casa Chrysler Jeep, an authorized FCA dealer in Albuquerque, New Mexico. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mark's Casa Chrysler Jeep to purchase the Subject

1   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

2   economy and performance. These representations, along with the advertised fuel economy, were

3   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

4   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

5   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

6   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

7   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

8   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

9   emission standards; that its emission treatment system was designed to de-activate during real-

10   world driving conditions; and that it could not achieve the advertised towing power, performance,

11   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

12   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

13   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

14   control devices.

15         175.    Plaintiff, Luke David (for the purpose of this paragraph, "Plaintiff"), a citizen of

16   the State of Louisiana, residing in the City of Gueydan, bought a 2015 Dodge Ram 1500

17   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015,

18   at Sterling Motors, an authorized FCA dealer in Jennings, Louisiana. Plaintiff decided to buy the

19   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

20   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

21   Subject Vehicles were represented as environmentally friendly, having low emissions and good

22   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

23   When Plaintiff went to Sterling Motors to purchase the Subject Vehicle, the sales associate touted

207

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

176.     Plaintiff, Marie & Verl Robbins (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Utah, residing in the City of Tremonton, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 8, 2014, at Heritage Motor, an authorized FCA dealer in Tremonton, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Heritage Motor to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

177.    Plaintiff, Mark Seghetti, d/b/a R & B Outdoors, Inc. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon, residing in the City of Springfield, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Lithia Chrysler Dodge Jeep Ram Fiat of Eugene, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lithia Chrysler Dodge Jeep Ram Fiat of Eugene to purchase the Subject Vehicle, the sales associate touted the

1   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

2   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

3   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

4   could perform as advertised only by emitting NOx at levels that are greater than advertised and

5   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8   would have paid less for it, had he/she known that it did not comply with emission standards; that

9   its emission treatment system was designed to de-activate during real-world driving conditions;

10  and that it could not achieve the advertised towing power, performance, and/or fuel economy

11  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14      178.   Plaintiff, Mark Deemy (for the purpose of this paragraph, "Plaintiff"), a citizen of

15  the State of Arizona, residing in the City of Surprise, bought a 2014 Jeep Grand Cherokee

16  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 9,

17  2014, at Larry Miller Dodge Chrysler Jeep, an authorized FCA dealer in Surprise, Illinois. Plaintiff

18  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

20  website, on which the Subject Vehicles were represented as environmentally friendly, having low

21  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22  Subject Vehicles.  When Plaintiff went to Larry Miller Dodge Chrysler Jeep to purchase the

23  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

210

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

179.    Plaintiff, Ronald Malcolm Macdonald (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Cross City, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 24, 2016, at Lake City Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lake City, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lake City Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

211

1    attributes, including its fuel economy and performance. These representations, along with the

2    advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

3    the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

4    only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

5    Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

6    emission control devices designed to cheat emission tests and to deceive consumers and regulators.

7    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

8    known that it did not comply with emission standards; that its emission treatment system was

9    designed to de-activate during real-world driving conditions; and that it could not achieve the

10   advertised towing power, performance, and/or fuel economy without cheating emission tests.

11   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

12   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

13   not concealed the unauthorized emission control devices.

14         180.    Plaintiff, Michael Thomas (for the purpose of this paragraph, "Plaintiff"), a citizen

15   of the State of Illinois, residing in the City of Dwight, bought a 2015 Dodge Ram 1500 EcoDiesel®

16   (for the purpose of this paragraph, the "Subject Vehicle") on or about August 20, 2016, Bought it

17   Used from a Private Owner, in Dwight, Illinois. Plaintiff decided to buy the Subject Vehicle based

18   in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and

19   fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

20   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

21   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff decided to

22   Purchase from a Private Owner, the seller touted the Subject Vehicle's EcoDiesel® attributes,

23   including its fuel economy and performance. These representations, along with the advertised fuel

economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

181.    Plaintiff, Michael Balzhiser (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Endicott, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 19, 2016, at Binghamton Chrysler, an authorized FCA dealer in Binghamton, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Binghamton Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

1     primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

2     that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

3     than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

4     equipped with undisclosed and unauthorized emission control devices designed to cheat emission

5     tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

6     Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

7     standards; that its emission treatment system was designed to de-activate during real-world driving

8     conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

9     economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

10    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

11    or would have paid less for it, had Defendants not concealed the unauthorized emission control

12    devices.

13         182.    Plaintiff, Michael Divona (for the purpose of this paragraph, "Plaintiff"), a citizen

14    of the State of Florida, residing in the City of Callahan, bought a 2015 Dodge Ram 1500

15    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 20, 2015,

16    at Murray Dodge Jeep Ram, an authorized FCA dealer in Starke, Florida. Plaintiff decided to buy

17    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19    Subject Vehicles were represented as environmentally friendly, having low emissions and good

20    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21    When Plaintiff went to Murray Dodge Jeep Ram to purchase the Subject Vehicle, the sales

22    associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

23    performance. These representations, along with the advertised fuel economy, were among the

1  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

2  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

3  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

4  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

5  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

6  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

7  standards; that its emission treatment system was designed to de-activate during real-world driving

8  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

9  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

10  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

11  or would have paid less for it, had Defendants not concealed the unauthorized emission control

12  devices.

13  183.    Plaintiff, Michael Janssen (for the purpose of this paragraph, "Plaintiff"), a citizen

14  of the State of Missouri, residing in the City of Hillsboro, bought a 2016 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15, 2016,

16  at Lucas Smith, an authorized FCA dealer in Festus, Missouri. Plaintiff decided to buy the Subject

17  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

18  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

19  Vehicles were represented as environmentally friendly, having low emissions and good fuel

20  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

21  Plaintiff went to Lucas Smith to purchase the Subject Vehicle, the sales associate touted the Subject

22  Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

23  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

215

1  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2  could perform as advertised only by emitting NOx at levels that are greater than advertised and

3  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6  would have paid less for it, had he/she known that it did not comply with emission standards; that

7  its emission treatment system was designed to de-activate during real-world driving conditions;

8  and that it could not achieve the advertised towing power, performance, and/or fuel economy

9  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10 result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11 have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12       184.    Plaintiff, Michael Stuart (for the purpose of this paragraph, "Plaintiff"), a citizen

13 of the State of Missouri, residing in the City of Lampe, bought a 2014 Dodge Ram 1500

14 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 4,

15 2014, at Corwin Ram, an authorized FCA dealer in Springfield, Missouri. Plaintiff decided to buy

16 the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17 reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18 Subject Vehicles were represented as environmentally friendly, having low emissions and good

19 fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20 When Plaintiff went to Corwin Ram to purchase the Subject Vehicle, the sales associate touted the

21 Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22 representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23 chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

1    could perform as advertised only by emitting NOx at levels that are greater than advertised and

2    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

3    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

4    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

5    would have paid less for it, had he/she known that it did not comply with emission standards; that

6    its emission treatment system was designed to de-activate during real-world driving conditions;

7    and that it could not achieve the advertised towing power, performance, and/or fuel economy

8    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

9    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

10   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

11         185.    Plaintiff, Michele Carrano (for the purpose of this paragraph, "Plaintiff"), a citizen

12   of the State of Arizona, residing in the City of Golden Canyon, bought a 2015 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 31, 2015,

14   at Lilliston Dodge, an authorized FCA dealer in Millville, New Jersey. Plaintiff decided to buy the

15   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

16   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

17   Subject Vehicles were represented as environmentally friendly, having low emissions and good

18   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

19   When Plaintiff went to Lilliston Dodge to purchase the Subject Vehicle, the sales associate touted

20   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

21   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

22   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

23   could perform as advertised only by emitting NOx at levels that are greater than advertised and

1    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4    would have paid less for it, had he/she known that it did not comply with emission standards; that

5    its emission treatment system was designed to de-activate during real-world driving conditions;

6    and that it could not achieve the advertised towing power, performance, and/or fuel economy

7    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10          186.    Plaintiff, Mike Stevens (for the purpose of this paragraph, "Plaintiff"), a citizen of

11   the State of South Dakota, residing in the City of Viborg, bought a 2015 Dodge Ram 1500

12   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1,

13   2014, at Billion Auto – Chrysler Jeep Dodge Ram In Sioux Falls, an authorized FCA dealer in

14   Sioux Falls, South Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

15   representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

16   Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

17   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

18   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Billion Auto –

19   Chrysler Jeep Dodge Ram In Sioux Falls to purchase the Subject Vehicle, the sales associate touted

20   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

21   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

22   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

23   could perform as advertised only by emitting NOx at levels that are greater than advertised and

218

1    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4    would have paid less for it, had he/she known that it did not comply with emission standards; that

5    its emission treatment system was designed to de-activate during real-world driving conditions;

6    and that it could not achieve the advertised towing power, performance, and/or fuel economy

7    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10        187.    Plaintiff, Mike Kolsch (for the purpose of this paragraph, "Plaintiff"), a citizen of

11   the State of Nevada, residing in the City of Elko, bought a 2014 Dodge Ram 1500 EcoDiesel®

12   (for the purpose of this paragraph, the "Subject Vehicle") on or about September 15, 2014, at Elko

13   Motor Co., an authorized FCA dealer in Elko, Nevada. Plaintiff decided to buy the Subject Vehicle

14   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

15   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

16   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

17   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Elko

18   Motor Co. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

19   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

20   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

21   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

22   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

23   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

1   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

2   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

3   for it, had he/she known that it did not comply with emission standards; that its emission treatment

4   system was designed to de-activate during real-world driving conditions; and that it could not

5   achieve the advertised towing power, performance, and/or fuel economy without cheating

6   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

7   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

8   less for it, had Defendants not concealed the unauthorized emission control devices.

9        188.    Plaintiff, Mike Mcclowkey (for the purpose of this paragraph, "Plaintiff"), a citizen

10   of the State of Washington, residing in the City of Hoquiam, bought a 2015 Dodge Ram 1500

11   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 20,

12   2016, at Five Star, an authorized FCA dealer in Aberdeen, Washington. Plaintiff decided to buy

13   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

14   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

15   Subject Vehicles were represented as environmentally friendly, having low emissions and good

16   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17   When Plaintiff went to Five Star to purchase the Subject Vehicle, the sales associate touted the

18   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

20   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

21   could perform as advertised only by emitting NOx at levels that are greater than advertised and

22   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

1    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2    would have paid less for it, had he/she known that it did not comply with emission standards; that

3    its emission treatment system was designed to de-activate during real-world driving conditions;

4    and that it could not achieve the advertised towing power, performance, and/or fuel economy

5    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8           189.    Plaintiff, Mike Blizinski (for the purpose of this paragraph, "Plaintiff"), a citizen

9    of the State of New York, residing in the City of Loudonville, bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 11,

11   2015, at Lia Chrysler Dodge Jeep, an authorized FCA dealer in Loudonville, New York. Plaintiff

12   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Lia Chrysler Dodge Jeep to purchase the Subject

17   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

18   economy and performance. These representations, along with the advertised fuel economy, were

19   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

20   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

21   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

22   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

23   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

221

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

190.    Plaintiff, Mike Doherty (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Hampshire, residing in the City of Dublin, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 22, 2014, at Summit Chrysler, an authorized FCA dealer in Brattleboro, Vermont. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Summit Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7         191.    Plaintiff, Miklos Toth (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Nevada, residing in the City of Ely, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

9    the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015, at Dave Smith

10   Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle

11   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

12   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

13   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

14   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

15   Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject

16   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

17   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19   could perform as advertised only by emitting NOx at levels that are greater than advertised and

20   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

192.    Plaintiff, Monte Paul & Devera Jean Oberlee (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Punta Gouda, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 15, 2015, at Son Nester Auto Group, an authorized FCA dealer in Houghton Lake, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Son Nester Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-

1    world driving conditions; and that it could not achieve the advertised towing power, performance,

2    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

3    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

4    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

5    control devices.

6          193.    Plaintiff, Morgan Green (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    the State of Pennsylvania, residing in the City of Scranton, bought a 2015 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 31,

9    2015, at Scranton Dodge Chrysler Jeep Ram, an authorized FCA dealer in Scranton, Pennsylvania.

10   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to Scranton Dodge Chrysler Jeep Ram to purchase the

15   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

16   its fuel economy and performance. These representations, along with the advertised fuel economy,

17   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

18   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

19   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

20   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

21   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

22   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

23   comply with emission standards; that its emission treatment system was designed to de-activate

during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

194.    Plaintiff, Neil Durrant (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho, residing in the City of Kuna, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016, at Peterson Dodge Chrysler Jeep Ram, an authorized FCA dealer in Nampa, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Peter Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving

226

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

195.   Plaintiff, Paul Kearney (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Edmonds, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 5, 2016, at Rairdon Dodge Chrysler Keep of Kirkland, an authorized FCA dealer in Kirkland, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Rairdon Dodge Chrysler Keep of Kirkland to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to

de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

196.    Plaintiff, Peter Ammirati (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Staten Island, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 7, 2016, at Route 18 Chrysler Jeep Dodge Ram, an authorized FCA dealer in New Brunswick, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Route 18 Chrysler Jeep Dodge Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-

world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

197.    Plaintiff, Peter Vigue (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Superior, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 11, 2016, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5          198.    Plaintiff, Randal G. & Virginia K. Henricks Smith (for the purpose of this

6    paragraph, "Plaintiff"), citizens of the State of Nevada, residing in the City of Laughlin, bought a

7    2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on

8    or about May 31, 2018 at Jones Ram/Chrysler, an authorized FCA dealer in Wickenburg, Arizona.

9    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to Jones Ram/Chrysler to purchase the Subject Vehicle,

14   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

15   and performance. These representations, along with the advertised fuel economy, were among the

16   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22   standards; that its emission treatment system was designed to de-activate during real-world driving

23   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

199.    Plaintiff, Randall S. Holdaway (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Lakewood Ranch, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Plaza Chrysler Dodge Jeep Ram, an authorized FCA dealer in Inverness, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Plaza Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance,

1    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

2    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

3    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

4    control devices.

5              200.    Plaintiff, Randy Peterson (for the purpose of this paragraph, "Plaintiff"), a citizen

6    of the State of Illinois, residing in the City of Paris, bought a 2015 Dodge Ram 1500 EcoDiesel®

7    (for the purpose of this paragraph, the "Subject Vehicle") on or about August 3, 2016, at Diepholz

8    Auto Group, an authorized FCA dealer in Paris, Illinois. Plaintiff decided to buy the Subject

9    Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

10   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

11   Vehicles were represented as environmentally friendly, having low emissions and good fuel

12   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

13   Plaintiff went to Diepholz Auto Group to purchase the Subject Vehicle, the sales associate touted

14   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

15   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17   could perform as advertised only by emitting NOx at levels that are greater than advertised and

18   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

232

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4         201.    Plaintiff, Randy Long (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of Nevada, residing in the City of Las Vegas, bought a 2014 Jeep Grand Cherokee

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 28, 2014,

7    at Tobin Dodge, an authorized FCA dealer in Henderson, Nevada. Plaintiff decided to buy the

8    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

9    reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Tobin Dodge to purchase the Subject Vehicle, the sales associate touted

13   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3          202.     Plaintiff, Randy Sturzenbecher (for the purpose of this paragraph, "Plaintiff"), a

4   citizen of the State of South Dakota, residing in the City of Black Hawk, bought a 2014 Dodge

5   Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6   October 11, 2015, from a Private Owner. Plaintiff decided to buy the Subject Vehicle based in part

7   on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

8   efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

9   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

10  also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to the

11  Private Owner to purchase the Subject Vehicle, the owner touted the Subject Vehicle's EcoDiesel®

12  attributes, including its fuel economy and performance. These representations, along with the

13  advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14  the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15  only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16  Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17  emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18  Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19  known that it did not comply with emission standards; that its emission treatment system was

20  designed to de-activate during real-world driving conditions; and that it could not achieve the

21  advertised towing power, performance, and/or fuel economy without cheating emission tests.

22  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23  and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

234

1    not concealed the unauthorized emission control devices.

2        203.    Plaintiffs, Randy and Angie Reed (for the purpose of this paragraph, "Plaintiffs"),

3    are citizens of the State of Oklahoma, residing in the City of Mcloud, bought a 2015 Dodge Ram

4    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1,

5    2016, at AutoMax Dodge Chrysler Jeep Ram, an authorized FCA dealer in Shawnee, Oklahoma.

6    Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the

10   Subject Vehicles.  When Plaintiffs went to AutoMax Dodge Chrysler Jeep Ram to purchase the

11   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12   its fuel economy and performance. These representations, along with the advertised fuel economy,

13   were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase,

14   Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that Subject

16   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17   cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased

18   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19   emission standards; that its emission treatment system was designed to de-activate during real-

20   world driving conditions; and that it could not achieve the advertised towing power, performance,

21   and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as

22   a direct and proximate result of Defendants' misconduct, and would not have purchased the

23   Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized

1    emission control devices.

2        204.    Plaintiff, Ray Falk (for the purpose of this paragraph, "Plaintiff"), a citizen of the

3    State of New York, residing in the City of Beaver Falls, bought a 2014 Jeep Grand Cherokee

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 26,

5    2018 at Gerald A Nortz Inc. Chrysler, Dodge, Jeep, an authorized FCA dealer in Lowville, new

6    York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

7    was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

8    the Jeep website, on which the Subject Vehicles were represented as environmentally friendly,

9    having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

10   about the Subject Vehicles.  When Plaintiff went to Gerald A Nortz Inc. Chrysler, Dodge, Jeep to

11   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

12   attributes, including its fuel economy and performance. These representations, along with the

13   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19   known that it did not comply with emission standards; that its emission treatment system was

20   designed to de-activate during real-world driving conditions; and that it could not achieve the

21   advertised towing power, performance, and/or fuel economy without cheating emission tests.

22   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

1 | not concealed the unauthorized emission control devices.

2 |     205.    Plaintiff, Raymond L. White (for the purpose of this paragraph, "Plaintiff"), a

3 | citizen of the State of Kansas, residing in the City of Garden City, bought a 2015 Dodge Ram 1500

4 | EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 18,

5 | 2018 at Merchants Fleet Management, an authorized FCA dealer in Hooksett, New Hampshire.

6 | Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7 | "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8 | website, on which the Subject Vehicles were represented as environmentally friendly, having low

9 | emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10 | Subject Vehicles.  When Plaintiff went to Merchants Fleet Management to purchase the Subject

11 | Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12 | economy and performance. These representations, along with the advertised fuel economy, were

13 | among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14 | did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15 | that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16 | Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17 | cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18 | the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19 | emission standards; that its emission treatment system was designed to de-activate during real-

20 | world driving conditions; and that it could not achieve the advertised towing power, performance,

21 | and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22 | direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23 | Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

1     control devices.

2        206.    Plaintiff, Alan Stcyr (for the purpose of this paragraph, "Plaintiff"), a citizen of the

3 State of Virginia, residing in the City of Chesapeake, bought a 2016 Dodge Ram 1500 EcoDiesel®

4 (for the purpose of this paragraph, the "Subject Vehicle") on or about November 3, 2017 at Hall

5 Dodge, an authorized FCA dealer in Chesapeake, Virginia. Plaintiff decided to buy the Subject

6 Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

7 emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

8 Vehicles were represented as environmentally friendly, having low emissions and good fuel

9 economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

10 Plaintiff went to Hall Dodge to purchase the Subject Vehicle, the sales associate touted the Subject

11 Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12 representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13 chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14 could perform as advertised only by emitting NOx at levels that are greater than advertised and

15 above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16 undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17 deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18 would have paid less for it, had he/she known that it did not comply with emission standards; that

19 its emission treatment system was designed to de-activate during real-world driving conditions;

20 and that it could not achieve the advertised towing power, performance, and/or fuel economy

21 without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22 result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23 have paid less for it, had Defendants not concealed the unauthorized emission control devices.

207.    Plaintiff, Rex Hale (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Vici, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 12, 2017 at Cummins Chrysler, an authorized FCA dealer in Weatherford, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Cummins Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

208.    Plaintiff, Richard Bradley (for the purpose of this paragraph, "Plaintiff"), a citizen

239

of the State of Tennessee, residing in the City of Lancing, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 18, 2017 at East Tennessee Ford, an authorized FCA dealer in Crossville, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to East Tennessee Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

209. Plaintiff, Richard Carr (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Jacksonville, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 30, 2016, at Daytona Dodge Chrysler Jeep Ram & Fiat, an authorized FCA dealer in Daytona Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Daytona Dodge Chrysler Jeep Ram & Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

210.    Plaintiff Richard A. Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Cecilia, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2015, at Swope Chrysler Dodge Jeep Ram, an authorized FCA dealer in Elizabethtown, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Swope Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

211.    Plaintiff, Richard A. Gange (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Vancouver, bought a 2016 Dodge Ram 1500

242

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 17, 2017 at Ron Tonkin, an authorized FCA dealer in Milwaukie, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ron Tonkin to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

212.    Plaintiff, Robert Theser (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Colcord, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 28, 2016,

at McLarty Daniel Chrysler Dodge Jeep Ram Fiat, an authorized FCA dealer in Springdale, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to McLarty Daniel Chrysler Dodge Jeep am Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

213.    Plaintiff, Robert Redman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio, residing in the City of Eaton, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 7, 2016, at SVG

Chrysler Dodge Jeep Ram, an authorized FCA dealer in Easton, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to SVG Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

214.     Plaintiff, Robert Kroener (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Scottsdale, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 30,

2015, at Earnhardt Chrysler Jeep Dodge Ram, an authorized FCA dealer in Gilbert, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Earnhardt Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

215.   Plaintiff, Robert Graaf (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Clever, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29, 2015, at

Fletcher Automotive, an authorized FCA dealer in Joplin, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Fletcher Automotive to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

216.     Plaintiff, Robert Morris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas, residing in the City of Wichita, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23, 2015, at Van Horn, an authorized FCA dealer in Plymouth, Wisconsin. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Van Horn to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

217.   Plaintiff, Roberto Berenguer-Serrano (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Miami Beach, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 16, 2016, at Aventura CJ. LLC, an authorized FCA dealer in Miami Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

248

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Aventura CJ. LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

218.    Plaintiff, William Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina, residing in the City of Ravenel, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2014, at Rick Hendrick Dodge, an authorized FCA dealer in Charleston, South Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Rick Hendrick Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

219.    Plaintiff, Ron Hayden & Ashley Suran (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Ohio, residing in the City of Seven Hills, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 5, 2018 at North Coast Auto Mall, an authorized FCA dealer in Bedford, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to North Coast Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

220.    Plaintiff, Ryan Holker (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Waverly, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 23, 2015, at Ray Automall, an authorized FCA dealer in Buffalo, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

251

1    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

2    Subject Vehicles were represented as environmentally friendly, having low emissions and good

3    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

4    When Plaintiff went to Ryan Automall to purchase the Subject Vehicle, the sales associate touted

5    the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

6    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

7    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

8    could perform as advertised only by emitting NOx at levels that are greater than advertised and

9    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

10   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

11   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

12   would have paid less for it, had he/she known that it did not comply with emission standards; that

13   its emission treatment system was designed to de-activate during real-world driving conditions;

14   and that it could not achieve the advertised towing power, performance, and/or fuel economy

15   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

16   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

17   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

18          221.    Plaintiff, Ryan Scott (for the purpose of this paragraph, "Plaintiff"), a citizen of the

19   State of Ohio, residing in the City of Chillicothe, bought a 2015 Dodge Ram 1500 EcoDiesel®

20   (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2017 at Ryan

21   Scott, an authorized FCA dealer in Fairborn, Ohio. Plaintiff decided to buy the Subject Vehicle

22   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

23   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ryan Scott to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

222.    Plaintiff, Sara Batchelor (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Saint Charles, leased a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2016, at South County Dodge, an authorized FCA dealer in Saint Louis, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to South County Dodge to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

223.    Plaintiff, Scott Franzel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Sandusky, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2014, at Tubbs Brothers Ford Chrysler Dodge Jeep Ram, an authorized FCA dealer in Sandusky, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

254

about the Subject Vehicles.  When Plaintiff went to Tubbs Brothers Ford Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

224.    Plaintiff, Scott Milne (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Cashmere, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 15, 2014, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

225.    Plaintiff, Scott Fick (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Blandon, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017 at Savage 61, an authorized FCA dealer in Reading, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Savage 61 to purchase the Subject Vehicle, the sales associate touted the

256

Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

226.     Plaintiff, Sean Conran (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut, residing in the City of Southington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Papa's Chrysler Dodge Jeep Ram, an authorized FCA dealer in New Britain, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Papa's Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

227.     Plaintiff, Sean Conran (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut, residing in the City of Southington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2017 at Milford Ford, an authorized FCA dealer in Milford, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Milford Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

258

1   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

2   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

3   could perform as advertised only by emitting NOx at levels that are greater than advertised and

4   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

5   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

6   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

7   would have paid less for it, had he/she known that it did not comply with emission standards; that

8   its emission treatment system was designed to de-activate during real-world driving conditions;

9   and that it could not achieve the advertised towing power, performance, and/or fuel economy

10  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

11  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

12  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

13       228.    Plaintiff, Sherri Collins (for the purpose of this paragraph, "Plaintiff"), a citizen of

14  the State of Florida, residing in the City of Loxahatchee, bought a 2015 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 10,

16  2015, at Napleton, an authorized FCA dealer in Lake Park, Florida. Plaintiff decided to buy the

17  Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19  Subject Vehicles were represented as environmentally friendly, having low emissions and good

20  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21  When Plaintiff went to Napleton to purchase the Subject Vehicle, the sales associate touted the

22  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

23  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2   could perform as advertised only by emitting NOx at levels that are greater than advertised and

3   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6   would have paid less for it, had he/she known that it did not comply with emission standards; that

7   its emission treatment system was designed to de-activate during real-world driving conditions;

8   and that it could not achieve the advertised towing power, performance, and/or fuel economy

9   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12          229.    Plaintiff, Slade D. Howell (for the purpose of this paragraph, "Plaintiff"), a citizen

13  of the State of Alaska residing in the City of Anchorage, bought a 2015 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 22, 2017

15  at Anchorage Chrysler Dodge Jeep Ram, an authorized FCA dealer in Anchorage, Alaska. Plaintiff

16  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiff went to Anchorage Chrysler Dodge Jeep Ram to purchase the

21  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

22  its fuel economy and performance. These representations, along with the advertised fuel economy,

23  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

260

1    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6    comply with emission standards; that its emission treatment system was designed to de-activate

7    during real-world driving conditions; and that it could not achieve the advertised towing power,

8    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11   unauthorized emission control devices.

12          230.    Plaintiff, Stephen Swanson (for the purpose of this paragraph, "Plaintiff"), a citizen

13   of the State of Florida, residing in the City of Cottondale, bought a 2016 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 25, 2016,

15   at Palm Automotive, an authorized FCA dealer in Punta Gorda, Florida. Plaintiff decided to buy

16   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18   Subject Vehicles were represented as environmentally friendly, having low emissions and good

19   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20   When Plaintiff went to Palm Automotive to purchase the Subject Vehicle, the sales associate touted

21   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

261

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

231. Plaintiff, Steve Conklin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Eagle, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 9, 2013, at AutoNation Chrysler Dodge Jeep Ram Southwest, an authorized FCA dealer in Littleton, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to AutoNation Chrysler Dodge Jeep Ram Southwest to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

1   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

2   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

3   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

4   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

5   for it, had he/she known that it did not comply with emission standards; that its emission treatment

6   system was designed to de-activate during real-world driving conditions; and that it could not

7   achieve the advertised towing power, performance, and/or fuel economy without cheating

8   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

9   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

10   less for it, had Defendants not concealed the unauthorized emission control devices.

11        232.   Plaintiff, Steven Fitzgerald (for the purpose of this paragraph, "Plaintiff"), a citizen

12   of the State of Florida, residing in the City of Jacksonville, bought a 2016 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016,

14   at Orange Park Dodge, an authorized FCA dealer in Jacksonville, Florida. Plaintiff decided to buy

15   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

16   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

17   Subject Vehicles were represented as environmentally friendly, having low emissions and good

18   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

19   When Plaintiff went to Orange Park Dodge to purchase the Subject Vehicle, the sales associate

20   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

21   These representations, along with the advertised fuel economy, were among the primary reasons

22   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

23   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

233.    Plaintiff, Steven Seaberg (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia, residing in the City of Glen Allen, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 16, 2015, at Lustine Chrysler Dodge Jeep Ram, an authorized FCA dealer in Woodbridge, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lustine Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

264

1 Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

2 designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

3 purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

4 comply with emission standards; that its emission treatment system was designed to de-activate

5 during real-world driving conditions; and that it could not achieve the advertised towing power,

6 performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

7 concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

8 purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

9 unauthorized emission control devices.

10      234.    Plaintiff, Steven Chauvin (for the purpose of this paragraph, "Plaintiff"), a citizen

11 of the State of Florida, residing in the City of Pensacola, bought a 2014 Dodge Ram 1500

12 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 30,

13 2016, at Rainbow Chrysler Dodge Jeep, an authorized FCA dealer in Covington, Louisiana.

14 Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15 "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16 website, on which the Subject Vehicles were represented as environmentally friendly, having low

17 emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18 Subject Vehicles.  When Plaintiff went to Rainbow Chrysler Dodge Jeep to purchase the Subject

19 Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

20 economy and performance. These representations, along with the advertised fuel economy, were

21 among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

22 did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

23 that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

265

Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

235.    Plaintiff, Teaguer Terrell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Utah, residing in the City of South Jordan, leased a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2014, at LHM Chris Jeep Dodge Ram Sandy, an authorized FCA dealer in Sandy, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to LHM Chris Jeep Dodge Ram Sandy to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

266

1    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

2    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the

3    Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

4    emission standards; that its emission treatment system was designed to de-activate during real-

5    world driving conditions; and that it could not achieve the advertised towing power, performance,

6    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

7    direct and proximate result of Defendants' misconduct, and would not have leased the Subject

8    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

9    control devices.

10    236.    Plaintiff, Terri Turnbull (for the purpose of this paragraph, "Plaintiff"), a citizen of

11    the State of Iowa, residing in the City of Ankeny, bought a 2014 Jeep Grand Cherokee EcoDiesel®

12    (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2014, at Dewey

13    Dodge Chrysler Jeep, an authorized FCA dealer in Ankeny, Iowa. Plaintiff decided to buy the

14    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

15    reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

16    Subject Vehicles were represented as environmentally friendly, having low emissions and good

17    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18    When Plaintiff went to Dewey Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales

19    associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

20    performance. These representations, along with the advertised fuel economy, were among the

21    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

237.    Plaintiff, Thomas W. Spalding (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Phoenix, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 13, 2015, at Larry Miller Ram, an authorized FCA dealer in Peoria, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry Miller Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3  would have paid less for it, had he/she known that it did not comply with emission standards; that

4  its emission treatment system was designed to de-activate during real-world driving conditions;

5  and that it could not achieve the advertised towing power, performance, and/or fuel economy

6  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9        238.    Plaintiff, Thomas Kosinski(for the purpose of this paragraph, "Plaintiff"), a citizen

10  of the State of Tennessee, residing in the City of White Bluff, bought a 2016 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2015,

12  at Rockie Williams Premier Dodge Chrysler Jeep Ram, an authorized FCA dealer in Mt. Juliet,

13  Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

14  that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

15  visiting the Ram website, on which the Subject Vehicles were represented as environmentally

16  friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

17  commercials about the Subject Vehicles.  When Plaintiff went to Rockie Williams Premier Dodge

18  Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

19  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

20  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

21  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

22  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

23  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

269

1   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

2   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

3   for it, had he/she known that it did not comply with emission standards; that its emission treatment

4   system was designed to de-activate during real-world driving conditions; and that it could not

5   achieve the advertised towing power, performance, and/or fuel economy without cheating

6   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

7   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

8   less for it, had Defendants not concealed the unauthorized emission control devices.

9       239.    Plaintiff, Thomas J. & Gilbert T. Madonna (for the purpose of this paragraph,

10  "Plaintiff"), citizens of the State of Pennsylvania, residing in the City of Schwenksville, bought a

11  2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on

12  or about September 6, 2017 at Lansdale Chrysler Dodge Jeep Ram, an authorized FCA dealer in

13  Montgomeryville, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on

14  FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

15  efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

16  represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

17  also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

18  Lansdale Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the

19  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22  could perform as advertised only by emitting NOx at levels that are greater than advertised and

23  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

240.   Plaintiff, Tim Byrd (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Baton Rouge, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23, 2016, at Salsburgy's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Baton Rouge, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Salsburgy's Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

1  emission control devices designed to cheat emission tests and to deceive consumers and regulators.

2  Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

3  known that it did not comply with emission standards; that its emission treatment system was

4  designed to de-activate during real-world driving conditions; and that it could not achieve the

5  advertised towing power, performance, and/or fuel economy without cheating emission tests.

6  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

7  and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

8  not concealed the unauthorized emission control devices.

9  241.    Plaintiff, Tim Clampoli (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Missouri, residing in the City of Saint Louis, bought a 2014 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 17, 2018

12  at Weiss Toyota, an authorized FCA dealer in Saint Louis, Missouri. Plaintiff decided to buy the

13  Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

14  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

15  Subject Vehicles were represented as environmentally friendly, having low emissions and good

16  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17  When Plaintiff went to Weiss Toyota to purchase the Subject Vehicle, the sales associate touted

18  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

20  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

21  could perform as advertised only by emitting NOx at levels that are greater than advertised and

22  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

272

1    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2    would have paid less for it, had he/she known that it did not comply with emission standards; that

3    its emission treatment system was designed to de-activate during real-world driving conditions;

4    and that it could not achieve the advertised towing power, performance, and/or fuel economy

5    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8        242.    Plaintiff, Timothy P. Woodson (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of Oklahoma, residing in the City of Duncan, bought a 2016 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 12,

11   2015, at Byford Dodge, an authorized FCA dealer in Duncan, Oklahoma. Plaintiff decided to buy

12   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

13   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

14   Subject Vehicles were represented as environmentally friendly, having low emissions and good

15   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

16   When Plaintiff went to Byford Dodge to purchase the Subject Vehicle, the sales associate touted

17   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

18   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

19   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

20   could perform as advertised only by emitting NOx at levels that are greater than advertised and

21   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1   would have paid less for it, had he/she known that it did not comply with emission standards; that

2   its emission treatment system was designed to de-activate during real-world driving conditions;

3   and that it could not achieve the advertised towing power, performance, and/or fuel economy

4   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7          243.    Plaintiff, Todd Barrios (for the purpose of this paragraph, "Plaintiff"), a citizen of

8   the State of Louisiana, residing in the City of Houma, bought a 2015 Dodge Ram 1500 EcoDiesel®

9   (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Southland

10  Dodge Chrysler Jeep Ram Fiat, an authorized FCA dealer in Houma, Louisiana. Plaintiff decided

11  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

12  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

13  which the Subject Vehicles were represented as environmentally friendly, having low emissions

14  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

15  Vehicles.  When Plaintiff went to Southland Dodge Chrysler Jeep Ram Fiat to purchase the Subject

16  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17  economy and performance. These representations, along with the advertised fuel economy, were

18  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

274

1    emission standards; that its emission treatment system was designed to de-activate during real-

2    world driving conditions; and that it could not achieve the advertised towing power, performance,

3    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

4    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

5    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

6    control devices.

7         244.    Plaintiff, Todd Barrios (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Louisiana, residing in the City of Houma, bought a 2014 Dodge Ram 1500 EcoDiesel®

9    (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Southland

10   Dodge Chrysler Jeep Ram Fiat, an authorized FCA dealer in Houma, Louisiana. Plaintiff decided

11   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

12   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

13   which the Subject Vehicles were represented as environmentally friendly, having low emissions

14   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

15   Vehicles.  When Plaintiff went to Southland Dodge Chrysler Jeep Ram Fiat to purchase the Subject

16   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17   economy and performance. These representations, along with the advertised fuel economy, were

18   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

1    emission standards; that its emission treatment system was designed to de-activate during real-

2    world driving conditions; and that it could not achieve the advertised towing power, performance,

3    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

4    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

5    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

6    control devices.

7            245.    Plaintiff, Thomas & Sherri Catlin (for the purpose of this paragraph, "Plaintiff"),

8    citizens of the State of Illinois, residing in the City of Marseilles, bought a 2015 Jeep Grand

9    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

10   November 17, 2015, at Dempsy's, an authorized FCA dealer in Plano, Illinois. Plaintiff decided to

11   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

12   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Dempsy's to purchase the Subject Vehicle, the sales associate touted the

16   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19   could perform as advertised only by emitting NOx at levels that are greater than advertised and

20   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

276

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6         246.    Plaintiff, Robert Yakimchick (for the purpose of this paragraph, "Plaintiff"), a

7    citizen of the State of Michigan, residing in the City of Columbus, bought a 2014 Dodge Ram

8    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November

9    1, 2016, at Milosch's Palace Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lake Orion,

10   Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

11   it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

12   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

13   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

14   about the Subject Vehicles.  When Plaintiff went to Milosch's Palace Chrysler Dodge Jeep Ram

15   to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

16   attributes, including its fuel economy and performance. These representations, along with the

17   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

18   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

19   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

20   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

21   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

22   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

23   known that it did not comply with emission standards; that its emission treatment system was

1    designed to de-activate during real-world driving conditions; and that it could not achieve the

2    advertised towing power, performance, and/or fuel economy without cheating emission tests.

3    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

4    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

5    not concealed the unauthorized emission control devices.

6          247.    Plaintiff, Tommy H. Brown (for the purpose of this paragraph, "Plaintiff"), a

7    citizen of the State of Idaho, residing in the City of Pocatello, bought a 2016 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016,

9    at West Motor Ford, Inc., an authorized FCA dealer in Preston, Idaho. Plaintiff decided to buy the

10   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

11   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

12   Subject Vehicles were represented as environmentally friendly, having low emissions and good

13   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

14   When Plaintiff went to West Motor Ford, Inc. to purchase the Subject Vehicle, the sales associate

15   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

16   These representations, along with the advertised fuel economy, were among the primary reasons

17   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

18   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

19   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22   would have paid less for it, had he/she known that it did not comply with emission standards; that

23   its emission treatment system was designed to de-activate during real-world driving conditions;

and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

248.    Plaintiff, Wade J. Lackey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Henryetta, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017 at Mike Bailey Motors Incorporated, an authorized FCA dealer in Henryetta, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mike Bailey Motors Incorporated to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance,

and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

249.    Plaintiff, William Padrick Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Okeechobee, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2017 at Garber Buick GMC, an authorized FCA dealer in Fort Pierce, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Garber Buick GMC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy

280

1   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4          250.    Plaintiff, William Wheeler (for the purpose of this paragraph, "Plaintiff"), a citizen

5   of the State of North Carolina, residing in the City of Waynesville, bought a 2016 Dodge Ram

6   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December

7   14, 2016, at Jerry Ulm Dodge, an authorized FCA dealer in Tampa, Florida. Plaintiff decided to

8   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10  Subject Vehicles were represented as environmentally friendly, having low emissions and good

11  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12  When Plaintiff went to Jerry Ulm Dodge to purchase the Subject Vehicle, the sales associate touted

13  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16  could perform as advertised only by emitting NOx at levels that are greater than advertised and

17  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3          251.    Plaintiff, Alan Wright (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Tennessee, residing in the City of Eads, bought a 2014 Dodge Ram 1500 EcoDiesel®

5    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2013, at

6    Collierville Chrysler Dodge Jeep Ram, an authorized FCA dealer in Collierville, Tennessee.

7    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Collierville Chrysler Dodge Jeep Ram to purchase the

12   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

13   its fuel economy and performance. These representations, along with the advertised fuel economy,

14   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

15   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

16   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

17   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

18   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

19   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

20   comply with emission standards; that its emission treatment system was designed to de-activate

21   during real-world driving conditions; and that it could not achieve the advertised towing power,

22   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

23   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

1    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

2    unauthorized emission control devices.

3    252.    Plaintiff, Amy Mccarthy (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of the State of Pennsylvania, residing in the City of Dallastown, bought a 2015 Jeep Grand

5    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6    August 12, 2016, at Len Stoler Chrysler Dodge Jeep, an authorized FCA dealer in Westminister,

7    Maryland. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

8    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

9    the Jeep website, on which the Subject Vehicles were represented as environmentally friendly,

10   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

11   about the Subject Vehicles.  When Plaintiff went to Len Stoler Chrysler Dodge Jeep to purchase

12   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

13   including its fuel economy and performance. These representations, along with the advertised fuel

14   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

15   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

16   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

17   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

18   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

19   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

20   that it did not comply with emission standards; that its emission treatment system was designed to

21   de-activate during real-world driving conditions; and that it could not achieve the advertised

22   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

23   suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

1    not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

2    concealed the unauthorized emission control devices.

3         253.  Plaintiff, Brandon Alexander LeBrun (for the purpose of this paragraph,

4    "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Campti, bought a 2015 Dodge

5    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6    December 2, 2014, at Shreveport Dodge Dealer, an authorized FCA dealer in Shreveport,

7    Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

8    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

9    the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

10   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

11   about the Subject Vehicles.  When Plaintiff went to Shreveport Dodge Dealer to purchase the

12   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

13   its fuel economy and performance. These representations, along with the advertised fuel economy,

14   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

15   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

16   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

17   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

18   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

19   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

20   comply with emission standards; that its emission treatment system was designed to de-activate

21   during real-world driving conditions; and that it could not achieve the advertised towing power,

22   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

23   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

1    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

2    unauthorized emission control devices.

3        254.    Plaintiff, David Meunier (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of the State of Vermont, residing in the City of Enosburg Falls, bought a 2015 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2015,

6    at Bokan Chrysler Dodge Jeep Ram, an authorized FCA dealer in St Albans City, Vermont.

7    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Bokan Chrysler Dodge Jeep Ram to purchase the Subject

12   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

13   economy and performance. These representations, along with the advertised fuel economy, were

14   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

15   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

16   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

17   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

18   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

19   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

20   emission standards; that its emission treatment system was designed to de-activate during real-

21   world driving conditions; and that it could not achieve the advertised towing power, performance,

22   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

23   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

1    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

2    control devices.

3        255.     Plaintiff, Gary Luster & Phyllis Marie Anderson (for the purpose of this paragraph,

4    "Plaintiff"), citizens of the State of Florida, residing in the City of Avon Park, bought a 2014

5    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

6    about June 21, 2018 at Nicks Motor Sales, an authorized FCA dealer in Kalkaska, Michigan.

7    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11    Subject Vehicles. When Plaintiff went to Nicks Motor Sales to purchase the Subject Vehicle, the

12    sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13    performance. These representations, along with the advertised fuel economy, were among the

14    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20    standards; that its emission treatment system was designed to de-activate during real-world driving

21    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

286

1    or would have paid less for it, had Defendants not concealed the unauthorized emission control

2    devices.

3         256.    Plaintiff, James Mikles (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Arizona, residing in the City of Scranton, bought a 2014 Jeep Grand Cherokee

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 7, 2015,

6    at Medina Auto Mall, an authorized FCA dealer in Medina, Ohio. Plaintiff decided to buy the

7    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

8    reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

9    Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Medina Auto Mall to purchase the Subject Vehicle, the sales associate

12   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13   These representations, along with the advertised fuel economy, were among the primary reasons

14   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2       257.    Plaintiff, Jason Trotter (for the purpose of this paragraph, "Plaintiff"), a citizen of

3   the State of Oklahoma, residing in the City of Sand Springs, bought a 2014 Jeep Grand Cherokee

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2014,

5   at South Pointe Chrysler Jeep Dodge Ram, an authorized FCA dealer in Tulsa, Oklahoma. Plaintiff

6   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to South Pointe Chrysler Jeep Dodge Ram to purchase the

11  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12  its fuel economy and performance. These representations, along with the advertised fuel economy,

13  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19  comply with emission standards; that its emission treatment system was designed to de-activate

20  during real-world driving conditions; and that it could not achieve the advertised towing power,

21  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

1    unauthorized emission control devices.

2        258.    Plaintiff, John Stork (for the purpose of this paragraph, "Plaintiff"), a citizen of the

3    State of Oklahoma, residing in the City of Pocola, bought a 2015 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about November 2, 2017 at Wright

5    County Motors Inc., an authorized FCA dealer in Clarion, Iowa. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Wright County Motors Inc. to purchase the Subject Vehicle, the sales

11   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

12   performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

1    devices.

2         259.    Plaintiff, Matthew Luckett (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Florida, residing in the City of Fort Lauderdale, bought a 2014 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2014,

5    at Napleton Northlake Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lake Park, Florida.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Napleton Northlake Chrysler Dodge Jeep Ram to

11   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

12   attributes, including its fuel economy and performance. These representations, along with the

13   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19   known that it did not comply with emission standards; that its emission treatment system was

20   designed to de-activate during real-world driving conditions; and that it could not achieve the

21   advertised towing power, performance, and/or fuel economy without cheating emission tests.

22   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

290

1    not concealed the unauthorized emission control devices.

2         260.    Plaintiff, Russell and Joella Tabaka (for the purpose of this paragraph, "Plaintiff"),

3    a citizen of the State of Illinois, residing in the City of Volo, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 6, 2016, at

5    Kunes Country Chrysler Dodge Jeep Ram of Woodstock, an authorized FCA dealer in Woodstock,

6    Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

7    was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

8    the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

9    having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

10   about the Subject Vehicles.  When Plaintiff went to Kunes Country Chrysler Dodge Jeep Ram of

11   Woodstock to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

12   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

13   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

14   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

15   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

16   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

17   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

18   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

19   for it, had he/she known that it did not comply with emission standards; that its emission treatment

20   system was designed to de-activate during real-world driving conditions; and that it could not

21   achieve the advertised towing power, performance, and/or fuel economy without cheating

22   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

23   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

291

1   less for it, had Defendants not concealed the unauthorized emission control devices.

2          261.    Plaintiff, Stephen Joseph Podolak (for the purpose of this paragraph, "Plaintiff"),

3   a citizen of the State of Maryland, residing in the City of Elkton, bought a 2016 Jeep Grand

4   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

5   September 24, 2016, at Country Chrysler Dodge Jeep Ram, an authorized FCA dealer in Oxford,

6   Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

7   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

8   visiting the Jeep website, on which the Subject Vehicles were represented as environmentally

9   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

10  commercials about the Subject Vehicles.  When Plaintiff went to Country Chrysler Dodge Jeep

11  Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

12  attributes, including its fuel economy and performance. These representations, along with the

13  advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14  the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15  only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16  Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17  emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18  Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19  known that it did not comply with emission standards; that its emission treatment system was

20  designed to de-activate during real-world driving conditions; and that it could not achieve the

21  advertised towing power, performance, and/or fuel economy without cheating emission tests.

22  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23  and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

1   not concealed the unauthorized emission control devices.

2        262.    Plaintiff, Tony Hutchinson (for the purpose of this paragraph, "Plaintiff"), a citizen

3   of the State of Oklahoma, residing in the City of Ardmore, bought a 2015 Dodge Ram 1500

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016,

5   at Carter County Didge Chrysler Jeep, an authorized FCA dealer in Ardmore, Oklahoma. Plaintiff

6   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to Carter County Dodge Chrysler Jeep to purchase the

11  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12  its fuel economy and performance. These representations, along with the advertised fuel economy,

13  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19  comply with emission standards; that its emission treatment system was designed to de-activate

20  during real-world driving conditions; and that it could not achieve the advertised towing power,

21  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

293

1    unauthorized emission control devices.

2        263.    Plaintiff, William Akins (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Colorado, residing in the City of Elbert, bought a 2014 Jeep Grand Cherokee

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 23,

5    2016, at Carmax, an authorized FCA dealer in Elbert, Colorado. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Carmax to purchase the Subject Vehicle, the sales associate touted the

11   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

264.     Plaintiff, Andrew Thomas (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina, residing in the City of Raleigh, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2017 at Westgate Auto Group, LLC, an authorized FCA dealer in Raleigh, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Westgate Auto Group, LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

295

265.    Plaintiff, Angelo Huerta (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Sand Springs, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 9, 2016, at Bartlesville Chrysler Dodge Ram Jeep, an authorized FCA dealer in Bartlesville, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bartlesville Chrysler Dodge Ram Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

296

266.     Plaintiff, Bill Plagianakos (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Gettysburg, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015, at Addy's Harbor Dodge Ram Fiat, an authorized FCA dealer in Myrtle Beach, South Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Addy's Harbor Dodge Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

297

267.     Plaintiff, Brent Burton (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Colstrip, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Kupper Chevrolet, an authorized FCA dealer in Mandan, North Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Kupper Chevrolet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

268.     Plaintiff, Brent Burton (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Montana, residing in the City of Colstrip, bought a 2014 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 14, 2015, at Kelly Marie Amatna. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Kelly Marie Amatna to purchase the Subject Vehicle, the seller touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

269.     Plaintiff, Brian Ashworth (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Melbourne, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2016, at Schumacher Automotive, an authorized FCA dealer in Delray Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Schumacher Automotive to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

270.     Plaintiff, Brian J. Delaney (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada, residing in the City of Pahrump, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 5, 2015, at Saitta Trudeau Chrysler Jeep Dodge, an authorized FCA dealer in Pahrump, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Saitta Trudeau Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

271.    Plaintiff, Brian Lewandowski (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Cochrane, bought a 2015 Dodge Ram

1    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 28,

2    2016, at Eau Claire Chrysler Dodge Jeep Ram, an authorized FCA dealer in Eau Claire, Wisconsin.

3    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

4    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

5    website, on which the Subject Vehicles were represented as environmentally friendly, having low

6    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

7    Subject Vehicles.  When Plaintiff went to Eau Claire Chrysler Dodge Jeep Ram to purchase the

8    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

9    its fuel economy and performance. These representations, along with the advertised fuel economy,

10   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

11   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

12   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

13   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

14   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

15   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

16   comply with emission standards; that its emission treatment system was designed to de-activate

17   during real-world driving conditions; and that it could not achieve the advertised towing power,

18   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

19   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

20   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

21   unauthorized emission control devices.

22          272.    Plaintiff, Brooks H. Moore (for the purpose of this paragraph, "Plaintiff"), a citizen

23   of the State of Montana, residing in the City of Jackson, bought a 2014 Jeep Grand Cherokee

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 21, 2014, at Morlan Chrysler, an authorized FCA dealer in Cape Giradeau, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Morlan Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

273.     Plaintiff, Carl Barber (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio, residing in the City of Russellville, bought a 2015 Dodge Ram 1500 EcoDiesel®

1   (for the purpose of this paragraph, the "Subject Vehicle") on or about November 22, 2016, at Mt.

2   Orab Auto Mall, an authorized FCA dealer in Mt. Orab, Ohio. Plaintiff decided to buy the Subject

3   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

4   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

5   Vehicles were represented as environmentally friendly, having low emissions and good fuel

6   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

7   Plaintiff went to Mt. Orab Auto Mall to purchase the Subject Vehicle, the sales associate touted

8   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

9   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

10  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

11  could perform as advertised only by emitting NOx at levels that are greater than advertised and

12  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

13  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

14  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

15  would have paid less for it, had he/she known that it did not comply with emission standards; that

16  its emission treatment system was designed to de-activate during real-world driving conditions;

17  and that it could not achieve the advertised towing power, performance, and/or fuel economy

18  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

19  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

20  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

21         274.    Plaintiff, Chad James Carter (for the purpose of this paragraph, "Plaintiff"), a

22  citizen of the State of Iowa, residing in the City of Des Moines, bought a 2015 Dodge Ram 1500

23  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015,

304

at Dewey Dodge Chrysler Jeep, an authorized FCA dealer in Ankeny, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dewey Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

275.    Plaintiff, Chad Koep (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Lakefield, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2014, at Billion

Auto – Chrysler Jeep Dodge Ram in Sioux Falls, an authorized FCA dealer in Sioux Falls, South Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Billion Auto – Chrysler Jeep Dodge Ram in Sioux Falls to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

276.     Plaintiff, Chad Koep (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Lakefield, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 14, 2015, at Billion

Auto – Chrysler Jeep Dodge Ram in Sioux Falls, an authorized FCA dealer in Sioux Falls, South Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Billion Auto – Chrysler Jeep Dodge Ram in Sioux Falls to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

277.    Plaintiff, Charles Lauziere (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey, residing in the City of Washington, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at

1   John Johnson Dodge Chrysler Jeep Ram, an authorized FCA dealer in Washington, New Jersey.

2   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

3   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

4   website, on which the Subject Vehicles were represented as environmentally friendly, having low

5   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

6   Subject Vehicles.  When Plaintiff went to John Johnson Dodge Chrysler Jeep Ram to purchase the

7   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

8   its fuel economy and performance. These representations, along with the advertised fuel economy,

9   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

10  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

11  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

12  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

13  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

14  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

15  comply with emission standards; that its emission treatment system was designed to de-activate

16  during real-world driving conditions; and that it could not achieve the advertised towing power,

17  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

18  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

19  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

20  unauthorized emission control devices.

21       278.    Plaintiff, Charles Piazza (for the purpose of this paragraph, "Plaintiff"), a citizen

22  of the State of Illinois, residing in the City of Hampshire, bought a 2014 Dodge Ram 1500

23  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014,

at Barkau Automotive, an authorized FCA dealer in Stockton, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Barkau Automotive to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

279.    Plaintiff, Chuck McClaugherty (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon, residing in the City of Oregon City, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016, from a "Private Party". Plaintiff decided to buy the Subject Vehicle based in part on FCA's

representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to "Private Party" to purchase the Subject Vehicle, the sales person touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

280.    Plaintiff, Daniel & Traci Ramsey (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Kentucky, residing in the City of Richmond, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 28, 2016, at Jeff Wyler Eastgate, Inc., an authorized FCA dealer in Batavia, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

(i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jeff Wyler Eastgate, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

281.    Plaintiff, Daniel & Laura Zamora (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Oregon, residing in the City of Grants Pass, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Lithia Chrysler Jeep Dodge of Grants Pass, an authorized FCA dealer in Grants Pass, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

311

it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Grants Pass to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

282.    Plaintiff, Dean Allmon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Lake Worth, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 5, 2015, at Arrigo Dodge Chrysler Jeep Ram West Palm Beach, an authorized FCA dealer in West Palm Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Arrigo Dodge Chrysler Jeep Ram West Palm Beach to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

283.    Plaintiff, Derrick Jack (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Springfield, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2017 at Corwin CDJR Fiat, an authorized FCA dealer in Springfield, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

313

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Corwin CDJR Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

284. Plaintiff, Don Lange (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Buffalo, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2015, at Transitown Plaza, an authorized FCA dealer in Williamsville, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

(i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Transitown Plaza to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

285.    Plaintiff, Eric Vera (for the purpose of this paragraph, "Plaintiff"), citizen of the State of Nebraska, residing in the City of Omaha, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Baxter Ford South, an authorized FCA dealer in Omaha, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Baxter Ford South to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

286.    Plaintiff, Gilder L. Whitlock (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Jacksonville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 29, 2015, at Jacksonville CJD, an authorized FCA dealer in Jacksonville, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jacksonville CJD to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

287.    Plaintiff, Gordon Shrader (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska, residing in the City of Fordyce, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 10, 2016, at Airpark Dodge Chrysler Jeep, an authorized FCA dealer in Scottsdale, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles. When Plaintiff went to Airpark Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

288.    Plaintiff, Greg Grievel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Marshfield, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2018 at Village Auto of Pulaski, an authorized FCA dealer in Milltown, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

318

When Plaintiff went to Village Auto of Pulaski to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

289.    Plaintiff, Greg Shea (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Bowling Green, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 12, 2016, at Dona Franklin, an authorized FCA dealer in Somerset, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dona Franklin to purchase the Subject Vehicle, the sales associate touted

319

1    the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

2    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

3    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

4    could perform as advertised only by emitting NOx at levels that are greater than advertised and

5    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8    would have paid less for it, had he/she known that it did not comply with emission standards; that

9    its emission treatment system was designed to de-activate during real-world driving conditions;

10    and that it could not achieve the advertised towing power, performance, and/or fuel economy

11    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14          290.    Plaintiff, Gregory B. Fenstermaker (for the purpose of this paragraph, "Plaintiff"),

15    a citizen of the State of New York, residing in the City of East Amherst, bought a 2015 Dodge

16    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

17    September 23, 2015, at Hondru Dodge, an authorized FCA dealer in Elizabethtown, Pennsylvania.

18    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20    website, on which the Subject Vehicles were represented as environmentally friendly, having low

21    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22    Subject Vehicles.  When Plaintiff went to Hondru Dodge to purchase the Subject Vehicle, the sales

23    associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

291.    Plaintiff, Harold Joseph Piele (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada, residing in the City of Henderson, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 26, 2016, at Towbin Dodge, LLC, an authorized FCA dealer in Henderson, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Towbin Dodge, LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

321

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

292.     Plaintiff, Janie Kennedy Pooler (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Lafayette, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15, 2016, at Acadiana Dodge Chrysler Jeep Ram, Fiat, an authorized FCA dealer in Lafayette, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Acadiana Dodge Chrysler Jeep Ram, Fiat to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

293.    Plaintiff, Jeff Kays (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Wilson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 23, 2015, at Carter County Dodge Chrysler Jeep, an authorized FCA dealer in Ardmore, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Carter County Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

294.     Plaintiff, Jim Heiser (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Kewanee, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Yemm Chevrolet Buick GMC Chrysler Dodge Jeep Ram, an authorized FCA dealer in Galesburg, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Yemm Chevrolet Buick GMC Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

1    attributes, including its fuel economy and performance. These representations, along with the

2    advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

3    the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

4    only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

5    Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

6    emission control devices designed to cheat emission tests and to deceive consumers and regulators.

7    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

8    known that it did not comply with emission standards; that its emission treatment system was

9    designed to de-activate during real-world driving conditions; and that it could not achieve the

10   advertised towing power, performance, and/or fuel economy without cheating emission tests.

11   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

12   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

13   not concealed the unauthorized emission control devices.

14        295.    Plaintiff, Joe Elco (for the purpose of this paragraph, "Plaintiff"), a citizen of the

15   State of New York, residing in the City of Bay Shore, leased a 2015 Dodge Ram 1500 EcoDiesel®

16   (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015, at Atlantic

17   Chrysler Jeep Dodge Ram, an authorized FCA dealer in West Islip, New York. Plaintiff decided

18   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

19   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

20   which the Subject Vehicles were represented as environmentally friendly, having low emissions

21   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

22   Vehicles.  When Plaintiff went to Atlantic Chrysler Jeep Dodge Ram to lease the Subject Vehicle,

23   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

296.    Plaintiff, Jon Elsasser (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Dakota, residing in the City of Winner, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 21, 2015, at Frontier Motors Incorporated, an authorized FCA dealer in Winner, South Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Frontier Motors Incorporated to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

297.    Plaintiff, Josh Francis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Belleville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 6, 2018 at Travers Auto Plex, an authorized FCA dealer in Eureka, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Travers Auto Plex to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

327

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

298.    Plaintiff, K.C. Moore (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas, residing in the City of Lawrence, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 25, 2017 at Laird Noller Ford Topeka, an authorized FCA dealer in Topeka, Kansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Laird Noller Ford Topeka to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

299.    Plaintiff, Kenyon Shephard (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Evergreen, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 22, 2018 at Christopher's Dodge World, an authorized FCA dealer in Golden, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Christopher's Dodge World to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

300. Plaintiff, Kurtis J. Melin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina, residing in the City of Spartanburg, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Steve White Motors, an authorized FCA dealer in Newton, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Steve White Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

330

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

301.     Plaintiff, Larry Brown (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Purdy, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2014, at Fletcher Superstore, an authorized FCA dealer in Joplin, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fletcher Superstore to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

302.    Plaintiff, Lauren Steff (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Machias, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 20, 2018 at Delacy Ford, an authorized FCA dealer in Elma, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Delacy Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

332

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

303.    Plaintiff, Laurence Carroll (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Helena, leased a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Lithia Chrysler Jeep Dodge of Helena, an authorized FCA dealer in Helena, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Helena to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

333

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

304.    Plaintiff, Levent Altunova (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Belgrade, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016, at Billion Dodge Chrysler Jeep, an authorized FCA dealer in Bozeman, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Billion Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

305.    Plaintiff, Levi Kimsey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Ozark, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2018 at Whitson Morgan, an authorized FCA dealer in Clarksville, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Whitson Morgan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

306.    Plaintiff, Lloyd Howard (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Holdenville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 9, 2017 at Landers Chrysler Dodge Jeep Ram of Norman, an authorized FCA dealer in Norman, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Landers Chrysler Dodge Jeep Ram of Norman to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

307.    Plaintiff, Marc Hopton (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio, residing in the City of Vermillion, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 2, 2018 at Slimans Sales & Service, an authorized FCA dealer in Amherst, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Slimans Sales & Service to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

308.   Plaintiff, Matt Buck (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Prophetstown, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 12, 2017 at Kunes Country Chrysler Dodge Jeep Ram of Sterling, an authorized FCA dealer in Sterling, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Kunes Country Chrysler Dodge Jeep Ram of Sterling to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

1    emission control devices designed to cheat emission tests and to deceive consumers and regulators.

2    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

3    known that it did not comply with emission standards; that its emission treatment system was

4    designed to de-activate during real-world driving conditions; and that it could not achieve the

5    advertised towing power, performance, and/or fuel economy without cheating emission tests.

6    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

7    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

8    not concealed the unauthorized emission control devices.

9          309.    Plaintiff, Michael Boales (for the purpose of this paragraph, "Plaintiff"), a citizen

10   of the State of Arizona, residing in the City of Mesa, bought a 2015 Dodge Ram 1500 EcoDiesel®

11   (for the purpose of this paragraph, the "Subject Vehicle") on or about May 16, 2017 at Autonation

12   CDJR, an authorized FCA dealer in Phoenix, Arizona. Plaintiff decided to buy the Subject Vehicle

13   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

14   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

15   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

16   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

17   Autonation CDJR to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

18   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

19   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

20   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

21   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

22   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

23   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

1   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

2   for it, had he/she known that it did not comply with emission standards; that its emission treatment

3   system was designed to de-activate during real-world driving conditions; and that it could not

4   achieve the advertised towing power, performance, and/or fuel economy without cheating

5   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

6   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

7   less for it, had Defendants not concealed the unauthorized emission control devices.

8   310.    Plaintiff, Mike Morrison (for the purpose of this paragraph, "Plaintiff"), a citizen

9   of the State of Ohio, residing in the City of Willoughby, bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 25,

11   2016, at Deacon's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Mayfield, Ohio.

12   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Deacon's Chrysler Dodge Jeep Ram to purchase the

17   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

18   its fuel economy and performance. These representations, along with the advertised fuel economy,

19   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

20   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

21   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

22   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

23   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

1   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

2   comply with emission standards; that its emission treatment system was designed to de-activate

3   during real-world driving conditions; and that it could not achieve the advertised towing power,

4   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

5   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

6   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

7   unauthorized emission control devices.

8       311.   Plaintiff, Michael Sherfey (for the purpose of this paragraph, "Plaintiff"), a citizen

9   of the State of Virginia, residing in the City of Luray, bought a 2014 Jeep Grand Cherokee

10  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 14, 2014,

11  at Dick Meyers Chrysler Jeep Dodge Ram, an authorized FCA dealer in Harrisonburg, Virginia.

12  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

14  website, on which the Subject Vehicles were represented as environmentally friendly, having low

15  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16  Subject Vehicles.  When Plaintiff went to Dick Meyers Chrysler Jeep Dodge Ram to purchase the

17  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

18  its fuel economy and performance. These representations, along with the advertised fuel economy,

19  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

20  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

21  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

22  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

23  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

341

purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

312.     Plaintiff, Nicky Herrington (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Jacksonville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2016, at Jacksonville CDJR, an authorized FCA dealer in Jacksonville, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jacksonville CDJR to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

342

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7          313.    Plaintiff, Norbert Kucharek (for the purpose of this paragraph, "Plaintiff"), a

8    citizen of the State of New York, residing in the City of Staten Island, bought a 2015 Jeep Grand

9    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June

10   1, 2017 at Island Chrysler Dodge Jeep Ram, an authorized FCA dealer in Staten Island, New York.

11   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Island Chrysler Dodge Jeep Ram to purchase the Subject

16   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17   economy and performance. These representations, along with the advertised fuel economy, were

18   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

343

1    emission standards; that its emission treatment system was designed to de-activate during real-

2    world driving conditions; and that it could not achieve the advertised towing power, performance,

3    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

4    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

5    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

6    control devices.

7         314.    Plaintiff, Patti & Robert Fobia (for the purpose of this paragraph, "Plaintiff"),

8    citizens of the State of Pennsylvania, residing in the City of Spring City, leased a 2016 Dodge Ram

9    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1,

10   2016, at Tri County CDJR, an authorized FCA dealer in Limerick, Pennsylvania. Plaintiff decided

11   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

12   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

13   which the Subject Vehicles were represented as environmentally friendly, having low emissions

14   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

15   Vehicles.  When Plaintiff went to Tri County CDJR to lease the Subject Vehicle, the sales associate

16   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17   These representations, along with the advertised fuel economy, were among the primary reasons

18   Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject

19   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would

23   have paid less for it, had he/she known that it did not comply with emission standards; that its

344

1  emission treatment system was designed to de-activate during real-world driving conditions; and

2  that it could not achieve the advertised towing power, performance, and/or fuel economy without

3  cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

4  Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less

5  for it, had Defendants not concealed the unauthorized emission control devices.

6       315.    Plaintiff, Peter Cacoperdo (for the purpose of this paragraph, "Plaintiff"), a citizen

7  of the State of Florida, residing in the City of Port Salerno, bought a 2016 Dodge Ram 1500

8  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 6,

9  2016, at Arrigo Dodge Chrysler Jeep Ram Fiat Ft. Pierce, an authorized FCA dealer in Fort Pierce,

10  Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

11  was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

12  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

13  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

14  about the Subject Vehicles.  When Plaintiff went to Arrigo Dodge Chrysler Jeep Ram Fiat Ft.

15  Pierce to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

16  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

17  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

18  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

19  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

20  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

21  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

22  and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

23  for it, had he/she known that it did not comply with emission standards; that its emission treatment

system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

316.    Plaintiff, Peter Cacoperdo (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Port Salerno, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 13, 2017 at Smith Haven Chrysler Jeep Dodge Ram, an authorized FCA dealer in St. James, new York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Smith Have Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate

346

during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

317.    Plaintiff, Ray Falk (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Beaver Falls, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2015, at Gerald Nortz Inc., an authorized FCA dealer in Lowville, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Gerald Nortz Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

347

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5         318.    Plaintiff, Robert Allen (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Florida, residing in the City of Ocoee, bought a 2015 Dodge Ram 1500 EcoDiesel®

7    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 15, 2015, at

8    Central Florida Chrysler Jeep Dodge Ram, an authorized FCA dealer in Orlando, Florida. Plaintiff

9    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to Central Florida Chrysler Jeep Dodge Ram to purchase

14   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

15   including its fuel economy and performance. These representations, along with the advertised fuel

16   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

17   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

18   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

19   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

20   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

21   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

22   that it did not comply with emission standards; that its emission treatment system was designed to

23   de-activate during real-world driving conditions; and that it could not achieve the advertised

348

towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

319.    Plaintiff, Robert & Carol J. Anderson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Matoon, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2014, at Iverson Chrysler, an authorized FCA dealer in Mitchell, South Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Iverson Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

1   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

3   or would have paid less for it, had Defendants not concealed the unauthorized emission control

4   devices.

5         320.     Plaintiff, Robert Peck (for the purpose of this paragraph, "Plaintiff"), a citizen of

6   the State of Nevada, residing in the City of Dayton, bought a 2016 Jeep Grand Cherokee

7   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 19, 2016,

8   at Lithia Chrysler Jeep of Reno, an authorized FCA dealer in Reno, Nevada. Plaintiff decided to

9   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

10  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

11  Subject Vehicles were represented as environmentally friendly, having low emissions and good

12  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13  When Plaintiff went to Lithia Chrysler Jeep of Reno to purchase the Subject Vehicle, the sales

14  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

15  performance. These representations, along with the advertised fuel economy, were among the

16  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22  standards; that its emission treatment system was designed to de-activate during real-world driving

23  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

350

1   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

3   or would have paid less for it, had Defendants not concealed the unauthorized emission control

4   devices.

5           321.    Plaintiff, Samuel D. Gross (for the purpose of this paragraph, "Plaintiff"), a citizen

6   of the State of Arizona, residing in the City of Mesa, bought a 2016 Dodge Ram 1500 EcoDiesel®

7   (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Heggs

8   Chrysler Dodge Ram, an authorized FCA dealer in Mesa, Arizona. Plaintiff decided to buy the

9   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11  Subject Vehicles were represented as environmentally friendly, having low emissions and good

12  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13  When Plaintiff went to Heggs Chrysler Dodge Ram to purchase the Subject Vehicle, the sales

14  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

15  performance. These representations, along with the advertised fuel economy, were among the

16  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22  standards; that its emission treatment system was designed to de-activate during real-world driving

23  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

351

economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

322. Plaintiff, Judy & Roland Simmons (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Milton bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016, at Sandy Sansing Chrysler Dodge Jeep Ram, an authorized FCA dealer in Milton, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sandy Sansing Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised

1  towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

2  suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

3  not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

4  concealed the unauthorized emission control devices.

5  323.   Plaintiff, Stephen Cimilluca (for the purpose of this paragraph, "Plaintiff"), a

6  citizen of the State of New York, residing in the City of Syracuse, leased a 2016 Dodge Ram 1500

7  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at

8  Nye Chrysler Dodge Jeep Ram, an authorized FCA dealer in Oneida, New York. Plaintiff decided

9  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

10 vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

11 which the Subject Vehicles were represented as environmentally friendly, having low emissions

12 and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

13 Vehicles.  When Plaintiff went to Nye Chrysler Dodge Jeep Ram to lease the Subject Vehicle, the

14 sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

15 performance. These representations, along with the advertised fuel economy, were among the

16 primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know

17 that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18 than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19 equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20 tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle,

21 or would have paid less for it, had he/she known that it did not comply with emission standards;

22 that its emission treatment system was designed to de-activate during real-world driving

23 conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

353

1  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2  proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or

3  would have paid less for it, had Defendants not concealed the unauthorized emission control

4  devices.

5      324.    Plaintiff, Terry Rosenberg (for the purpose of this paragraph, "Plaintiff"), a citizen

6  of the State of New York, residing in the City of Wyoming, bought a 2014 Dodge Ram 1500

7  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016,

8  at McClurg Chrysler Dodge Jeep, an authorized FCA dealer in Perry, New York. Plaintiff decided

9  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

10  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

11  which the Subject Vehicles were represented as environmentally friendly, having low emissions

12  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

13  Vehicles.  When Plaintiff went to McClurg Chrysler Dodge Jeep to purchase the Subject Vehicle,

14  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

15  and performance. These representations, along with the advertised fuel economy, were among the

16  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22  standards; that its emission treatment system was designed to de-activate during real-world driving

23  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

354

economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

325.    Plaintiff, Todd Bierk (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Perryville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at Morlan Chrysler, an authorized FCA dealer in Cape Girardeau, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Morlan Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy

355

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4            326.    Plaintiff, Tony S. Conley (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Kentucky, residing in the City of London, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29,

7    2014, at Tim Short Chrysler of Middlesboro, an authorized FCA dealer in Middlesboro, Kentucky.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Tim Short Chrysler of Middlesboro to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4         327.    Plaintiff, Donald Wacek (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Oregon, residing in the City of Grants Pass, bought a 2015 Jeep Grand Cherokee

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2015,

7    at Lithia Chrysler Jeep Dodge of Grants Pass, an authorized FCA dealer in Grants Pass, Oregon.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Grants Pass to purchase

13   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

14   including its fuel economy and performance. These representations, along with the advertised fuel

15   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

16   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

17   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

18   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

19   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

20   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

21   that it did not comply with emission standards; that its emission treatment system was designed to

22   de-activate during real-world driving conditions; and that it could not achieve the advertised

23   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

357

1    suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

2    not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

3    concealed the unauthorized emission control devices.

4         328.    Plaintiff, Marvin Rambel (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Arizona, residing in the City of Tucson, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016,

7    at Larry H. Miller Dodge Ram Tucson, an authorized FCA dealer in Tucson, Arizona. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Larry H. Miller Dodge Ram Tucson to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

329.    Plaintiff, Ernest Hodgdon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Lady Lake, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Advantage Chrysler Dodge Jeep Ram, an authorized FCA dealer in Mt. Dora, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Advantage Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3   unauthorized emission control devices.

4        330.    Plaintiff, Jeffrey Greenwood (for the purpose of this paragraph, "Plaintiff"), a

5   citizen of the State of Florida, residing in the City of Fort Myers, bought a 2015 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

7   2015, at Galeana Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fort Myers, Florida.

8   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10  website, on which the Subject Vehicles were represented as environmentally friendly, having low

11  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12  Subject Vehicles.  When Plaintiff went to Galeana Chrysler Dodge Jeep Ram to purchase the

13  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14  its fuel economy and performance. These representations, along with the advertised fuel economy,

15  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21  comply with emission standards; that its emission treatment system was designed to de-activate

22  during real-world driving conditions; and that it could not achieve the advertised towing power,

23  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

331.    Plaintiff, Jared Nagel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Westby, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 17, 2016, at Stevens Point Chrysler Dodge Jeep Ram, an authorized FCA dealer in Stevens Point, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Stevens Point Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating

1    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

2    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

3    less for it, had Defendants not concealed the unauthorized emission control devices.

4         332.    Plaintiff, Brandon Crookes (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Florida, residing in the City of Fort Lauderdale, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 30,

7    2014, at Massey Yardley Jeep Chrysler Dodge Ram, an authorized FCA dealer in Plantation,

8    Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

9    was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

10   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

11   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

12   about the Subject Vehicles.  When Plaintiff went to Massey Yardley Jeep Chrysler Dodge Ram to

13   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

14   attributes, including its fuel economy and performance. These representations, along with the

15   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

16   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

17   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

18   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

19   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

20   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

21   known that it did not comply with emission standards; that its emission treatment system was

22   designed to de-activate during real-world driving conditions; and that it could not achieve the

23   advertised towing power, performance, and/or fuel economy without cheating emission tests.

362

1   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

2   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

3   not concealed the unauthorized emission control devices.

4        333.    Plaintiff, Robert Bell (for the purpose of this paragraph, "Plaintiff"), a citizen of

5   the State of Florida, residing in the City of Pensacola, bought a 2016 Dodge Ram 1500 EcoDiesel®

6   (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Hill-

7   Kelly Dodge, an authorized FCA dealer in Pensacola, Florida. Plaintiff decided to buy the Subject

8   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

9   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

10  Vehicles were represented as environmentally friendly, having low emissions and good fuel

11  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

12  Plaintiff went to Hill-Kelly Dodge to purchase the Subject Vehicle, the sales associate touted the

13  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16  could perform as advertised only by emitting NOx at levels that are greater than advertised and

17  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

363

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        334.    Plaintiff, Kilo & Natalie Varble (for the purpose of this paragraph, "Plaintiff"),

4    citizens of the State of Idaho, residing in the City of Coeur D'Alene, bought a 2016 Dodge Ram

5    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 17,

6    2018 at Parker Toyota, an authorized FCA dealer in Coeur D'Alene, Idaho. Plaintiff decided to

7    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9    Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Parker Toyota to purchase the Subject Vehicle, the sales associate touted

12   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15   could perform as advertised only by emitting NOx at levels that are greater than advertised and

16   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

364

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2        335.    Plaintiff, Steve Young d/b/a Wrecker One (for the purpose of this paragraph,

3    "Plaintiff"), doing business in the State of Ohio, residing in the City of Columbus, bought a 2015

4    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

5    about November 25, 2014, at Tri-County Chrysler Dodge Jeep Ram, an authorized FCA dealer in

6    Heath, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

7    that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

8    visiting the Ram website, on which the Subject Vehicles were represented as environmentally

9    friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

10   commercials about the Subject Vehicles.  When Plaintiff went to Tri-County Chrysler Dodge Jeep

11   Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

12   attributes, including its fuel economy and performance. These representations, along with the

13   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19   known that it did not comply with emission standards; that its emission treatment system was

20   designed to de-activate during real-world driving conditions; and that it could not achieve the

21   advertised towing power, performance, and/or fuel economy without cheating emission tests.

22   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

365

1  not concealed the unauthorized emission control devices.

2      336.    Plaintiff, Jeff & Terri Robinson (for the purpose of this paragraph, "Plaintiff"),

3  citizens of the State of Missouri, residing in the City of Doniphan, bought a 2015 Dodge Ram 1500

4  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 8, 2015,

5  at King Cotton Chrysler Dodge Jeep Ram, an authorized FCA dealer in Covington, Tennessee.

6  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8  website, on which the Subject Vehicles were represented as environmentally friendly, having low

9  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to King Cotton Chrysler Dodge Jeep Ram to purchase the

11  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12  its fuel economy and performance. These representations, along with the advertised fuel economy,

13  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19  comply with emission standards; that its emission treatment system was designed to de-activate

20  during real-world driving conditions; and that it could not achieve the advertised towing power,

21  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

1    unauthorized emission control devices.

2        337.    Plaintiff, Patrick Hair & Angelica Eller (for the purpose of this paragraph,

3    "Plaintiff"), citizens of the State of South Carolina, residing in the City of Beaufort, bought a 2015

4    Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

5    about May 23, 2018 at Butler Chrysler Dodge Jeep, an authorized FCA dealer in Beaufort, South

6    Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

7    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

8    the Jeep website, on which the Subject Vehicles were represented as environmentally friendly,

9    having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

10    about the Subject Vehicles.  When Plaintiff went to Butler Chrysler Dodge Jeep to purchase the

11    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12    its fuel economy and performance. These representations, along with the advertised fuel economy,

13    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19    comply with emission standards; that its emission treatment system was designed to de-activate

20    during real-world driving conditions; and that it could not achieve the advertised towing power,

21    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

1 | unauthorized emission control devices.

2 | 338.    Plaintiff, Harry Arthur Potter (for the purpose of this paragraph, "Plaintiff"), a

3 | citizen of the State of North Carolina, residing in the City of Sunbury, bought a 2015 Dodge Ram

4 | 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September

5 | 8, 2017 at Carolina Chrysler Dodge Jeep Ram, an authorized FCA dealer in Elizabeth City, North

6 | Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

7 | it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

8 | the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

9 | having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

10 | about the Subject Vehicles.  When Plaintiff went to Carolina Chrysler Dodge Jeep Ram to purchase

11 | the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

12 | including its fuel economy and performance. These representations, along with the advertised fuel

13 | economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

14 | purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

15 | emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

16 | aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

17 | control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

18 | would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

19 | that it did not comply with emission standards; that its emission treatment system was designed to

20 | de-activate during real-world driving conditions; and that it could not achieve the advertised

21 | towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

22 | suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

23 | not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

368

1    concealed the unauthorized emission control devices.

2        339.   Plaintiff, Nathan Baisley (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Florida, residing in the City of Okeechobee, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2015,

5    at Arrigo Dodge, an authorized FCA dealer in Fort Pierce, Florida. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Arrigo Dodge to purchase the Subject Vehicle, the sales associate touted

11   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1    340.    Plaintiff, Nick Butters (for the purpose of this paragraph, "Plaintiff"), a citizen of

2  the State of Utah, residing in the City of Salt Lake, bought a 2016 Dodge Ram 1500 EcoDiesel®

3  (for the purpose of this paragraph, the "Subject Vehicle") on or about July 13, 2018 at Salt Lake

4  Valley Automotive, an authorized FCA dealer in South Salt Lake, Utah. Plaintiff decided to buy

5  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

6  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

7  Subject Vehicles were represented as environmentally friendly, having low emissions and good

8  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

9  When Plaintiff went to Salt Lake Valley Automotive to purchase the Subject Vehicle, the sales

10  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

11  performance. These representations, along with the advertised fuel economy, were among the

12  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

13  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

14  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

15  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

16  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

17  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

18  standards; that its emission treatment system was designed to de-activate during real-world driving

19  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

20  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

21  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

22  or would have paid less for it, had Defendants not concealed the unauthorized emission control

23  devices.

341.    Plaintiff, George S. Leblanc (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Erath, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 26, 2013, at Acadiana Dodge Chrysler Jeep Ram Fiat, an authorized FCA dealer in Lafayette, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Acadiana Dodge Chrysler Jeep Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

342.     Plaintiff, Roy McKenney (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Delaware, residing in the City of Milford, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 12, 2014, at Holden Dodge Chrysler Jeep Ram, an authorized FCA dealer in Dover, Delaware. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Holden Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

343.     Plaintiff, Timothy Shanks (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa, residing in the City of Roland, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 22, 2016, at Pat Clemons Inc., an authorized FCA dealer in Boone, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Pat Clemons Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

344.     Plaintiff, Rick Bunch (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Nevada, residing in the City of Las Vegas, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, from a private owner in Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to the private owner to purchase the Subject Vehicle, the private owner touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

345.    Plaintiff, Richard Rausch (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa, residing in the City of Waucoma, bought a 2015 Dodge Ram 1500

374

1    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 9, 2015,

2    at Birdnow Motor Trade Oelwein, an authorized FCA dealer in Oelwein, Iowa. Plaintiff decided

3    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

4    vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

5    which the Subject Vehicles were represented as environmentally friendly, having low emissions

6    and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

7    Vehicles.  When Plaintiff went to Birdnow Motor Trade Oelwein to purchase the Subject Vehicle,

8    the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

9    and performance. These representations, along with the advertised fuel economy, were among the

10   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

11   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

12   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

13   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

14   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

15   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

16   standards; that its emission treatment system was designed to de-activate during real-world driving

17   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

18   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

19   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

20   or would have paid less for it, had Defendants not concealed the unauthorized emission control

21   devices.

22            346.    Plaintiff, Alfred Herrera (for the purpose of this paragraph, "Plaintiff"), a citizen

23   of the State of Colorado, residing in the City of Fulton, bought a 2015 Dodge Ram 1500

375

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15, 2015, at Larry H. Miller Chrysler Dodge Jeep Ram, an authorized FCA dealer in Denver, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

347.    Plaintiff, Nathan Dakota Hale (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee, residing in the City of Crossville, bought a 2015 Dodge Ram

1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 18, 2018 at Jason Lewis Chrysler Dodge Jeep Ram, an authorized FCA dealer in Sparta, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jason Lewis Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

348.    Plaintiff, Troy Zapara_ (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Buckeye, bought a 2014 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about June 6, 2015, at Cutter Chrysler Jeep Dodge Of Honolulu, an authorized FCA dealer in Honolulu, Hawaii. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Cutter Chrysler Jeep Dodge of Honolulu to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

349.    Plaintiff, Anthony Stockdale (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Waynesburg, bought a 2014 Dodge

Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 30, 2014, at Ron Lewis Chrysler Dodge Jeep Ram Waynesburg, an authorized FCA dealer in Waynesburg, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ron Lewis Chrysler Dodge Jeep Ram Waynesburg to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

350.    Plaintiff, Cody Langlois (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut, residing in the City of Eastford, bought a 2014 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2017 at Bundy Motors, an authorized FCA dealer in Tolland, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bundy Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

351. Plaintiff, Donald & Linda Lamson (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Washington, residing in the City of Oak Harbor, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February

380

5, 2016, at Oak Harbor Motors, an authorized FCA dealer in Oak Harbor, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Oak harbor Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

352.     Plaintiff, Noel Vazquez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Ault, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 22, 2017 at Larry

H. Miller Nissan, an authorized FCA dealer in Denver, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

353.    Plaintiff, Russell Grieff (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Sidman, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2018 at Royers 322 Motors, an authorized FCA dealer in Dubois, Pennsylvania. Plaintiff decided to buy

the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Royers 322 Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

354.    Plaintiff, Blenda Bowman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee, residing in the City of Gallatin, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2017 at Chris Flatt (private owner), an authorized FCA dealer in Gallatin, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chris Flatt (private owner) to purchase the Subject Vehicle, the seller touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

355.    Plaintiff, James Johnson & Michael Bolton (for the purpose of this paragraph, "Plaintiff"), citizens of the State of New York, residing in the City of Rome, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 29, 2016, at Sun Chevrolet, an authorized FCA dealer in Chittenango, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

1    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

2    website, on which the Subject Vehicles were represented as environmentally friendly, having low

3    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

4    Subject Vehicles. When Plaintiff went to Sun Chevrolet to purchase the Subject Vehicle, the sales

5    associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

6    performance. These representations, along with the advertised fuel economy, were among the

7    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

8    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

9    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

10   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

11   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

12   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

13   standards; that its emission treatment system was designed to de-activate during real-world driving

14   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

15   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

16   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

17   or would have paid less for it, had Defendants not concealed the unauthorized emission control

18   devices.

19        356.    Plaintiff, Howard James Garel (for the purpose of this paragraph, "Plaintiff"), a

20   citizen of the State of Utah, residing in the City of Saint George, bought a 2014 Jeep Grand

21   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

22   February 1, 2016, at O'Meara Ford Service, an authorized FCA dealer in Northglenn, Colorado.

23   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

385

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to O'Meara Ford Service to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

357.    Plaintiff, Jason VanLoo (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Jefferson City, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15, 2016, at Beck Motors, an authorized FCA dealer in Freeburg, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Beck Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

358.    Plaintiff, Gerald & Sharon Parker (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Grand Island, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 15, 2015, at Advantage Dodge Jeep, an authorized FCA dealer in Mount Dora, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Advantage Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

359.    Plaintiff, Jimmy Steen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Dover, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 3, 2016, at Courtesy Chrysler Jeep Dodge Ram Tampa, an authorized FCA dealer in Tampa, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Courtesy Chrysler Jeep Dodge Ram Tampa to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

360.    Plaintiff, Jason Reigelsperger (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio, residing in the City of Bellbrook, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 30, 2016, at Key Chrysler Jeep Dodge Ram – Tobey Auto Group, an authorized FCA dealer in Xenia, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Key Chrysler Jeep Dodge Ram – Tobey Auto Group to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

361. Plaintiff, Joey Lea & Mark McVane (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon, residing in the City of Adams, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 31, 2016, at Dave Smith Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dave Smith Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

362.    Plaintiff, Jason Mull (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Grand Junction, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 12, 2015, at Peterson Chevrolet Buck Cadillac Service, an authorized FCA dealer in Boise, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Peterson Chevrolet Buck Cadillac Service to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

363.    Plaintiff, John A. Barone (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Patterson, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2014, at Meadowland of Carmel, an authorized FCA dealer in Carmel Hamlet, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Meadowland of Carmel to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

364.    Plaintiff, Steve Phillip & Pamela Fulford Krol (for the purpose of this paragraph, "Plaintiff"), citizens of the State of North Carolina, residing in the City of Sneads Ferry, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2018 at Neuwirth Chrysler Plymouth Dodge, an authorized FCA dealer in Wilmington, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

393

Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Neuwirth Chrysler Plymouth Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

365.    Plaintiff, Jared Watson & Lisa Tadd (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Montana, residing in the City of Park City, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 28, 2017 at Rimrock, an authorized FCA dealer in Laurel, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

1    Vehicles were represented as environmentally friendly, having low emissions and good fuel

2    economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

3    Plaintiff went to Rimrock Chevrolet to purchase the Subject Vehicle, the sales associate touted the

4    Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

5    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

6    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

7    could perform as advertised only by emitting NOx at levels that are greater than advertised and

8    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

9    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

10   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

11   would have paid less for it, had he/she known that it did not comply with emission standards; that

12   its emission treatment system was designed to de-activate during real-world driving conditions;

13   and that it could not achieve the advertised towing power, performance, and/or fuel economy

14   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

15   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

16   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

17           366.    Plaintiff, Dean Beck (for the purpose of this paragraph, "Plaintiff"), a citizen of the

18   State of Nebraska, residing in the City of Scribner, bought a 2015 Dodge Ram 1500 EcoDiesel®

19   (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2015, at Gene

20   Steffy Chrysler Jeep Dodge, an authorized FCA dealer in Freemont, Nebraska. Plaintiff decided

21   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

22   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

23   which the Subject Vehicles were represented as environmentally friendly, having low emissions

395

and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Gene Steffy Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

367.    Plaintiff, Alex Lopez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho, residing in the City of Boise, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2015, at Liberty Chrysler Jeep Dodge, an authorized FCA dealer in Winnemucca, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Liberty Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

368. Plaintiff, Steven M. Pender (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Clermont, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 16, 2015, at Greenway Dodge Chrysler Jeep Ram Orlando, an authorized FCA dealer in Orlando, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Greenway Dodge Chrysler Jeep Ram Orlando to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

369.    Plaintiff, John Meech (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Saint Martinville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 9, 2014, at Acadiana Dodge, an authorized FCA dealer in Lafayette, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Acadiana Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

370.    Plaintiff Christopher & Jacob Brown (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Michigan, residing in the City of Pentwater, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 25, 2015, at Shuman Chrysler Dodge Jeep Ram, an authorized FCA dealer in Walled Lake, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

seeing television commercials about the Subject Vehicles.  When Plaintiff went to Shuman Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

371.    Plaintiff, Al Schellinger (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Mayville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at Chuck Van Horn, an authorized FCA dealer in Plymouth, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

1    When Plaintiff went to Chuck Van Horn to purchase the Subject Vehicle, the sales associate touted

2    the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

3    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

4    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

5    could perform as advertised only by emitting NOx at levels that are greater than advertised and

6    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

7    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

8    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

9    would have paid less for it, had he/she known that it did not comply with emission standards; that

10   its emission treatment system was designed to de-activate during real-world driving conditions;

11   and that it could not achieve the advertised towing power, performance, and/or fuel economy

12   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

13   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

14   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

15          372.    Plaintiff, Jeffrey Weislocher (for the purpose of this paragraph, "Plaintiff"), a

16   citizen of the State of Missouri, residing in the City of Steedman, bought a 2014 Dodge Ram 1500

17   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015, at

18   Callaway Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fulton, Missouri. Plaintiff

19   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

20   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

21   website, on which the Subject Vehicles were represented as environmentally friendly, having low

22   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

23   Subject Vehicles.  When Plaintiff went to Callaway Chrysler Jeep Ram to purchase the Subject

401

1   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

2   economy and performance. These representations, along with the advertised fuel economy, were

3   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

4   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

5   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

6   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

7   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

8   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

9   emission standards; that its emission treatment system was designed to de-activate during real-

10  world driving conditions; and that it could not achieve the advertised towing power, performance,

11  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

12  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

13  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

14  control devices.

15      373.    Plaintiff, Jorge Villarreal (for the purpose of this paragraph, "Plaintiff"), a citizen

16  of the State of Colorado, residing in the City of Wheat Ridge, bought a 2014 Jeep Grand Cherokee

17  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2016,

18  at Mountain States Toyota, an authorized FCA dealer in Denver, Colorado. Plaintiff decided to

19  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

20  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

21  Subject Vehicles were represented as environmentally friendly, having low emissions and good

22  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

23  When Plaintiff went to Mountain States Toyota to purchase the Subject Vehicle, the sales associate

402

1    touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

2    These representations, along with the advertised fuel economy, were among the primary reasons

3    Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

4    Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

5    and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8    would have paid less for it, had he/she known that it did not comply with emission standards; that

9    its emission treatment system was designed to de-activate during real-world driving conditions;

10   and that it could not achieve the advertised towing power, performance, and/or fuel economy

11   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14           374.    Plaintiff, Jorge Villarreal (for the purpose of this paragraph, "Plaintiff"), a citizen

15   of the State of Colorado, residing in the City of Wheat Ridge, bought a 2015 Dodge Ram 1500

16   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 11, 2017

17   at Mountain States Toyota, an authorized FCA dealer in Denver, Colorado. Plaintiff decided to

18   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

19   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

20   Subject Vehicles were represented as environmentally friendly, having low emissions and good

21   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

22   When Plaintiff went to Mountain States Toyota to purchase the Subject Vehicle, the sales associate

23   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

403

1   These representations, along with the advertised fuel economy, were among the primary reasons

2   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

3   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

4   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

5   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

6   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

7   would have paid less for it, had he/she known that it did not comply with emission standards; that

8   its emission treatment system was designed to de-activate during real-world driving conditions;

9   and that it could not achieve the advertised towing power, performance, and/or fuel economy

10  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

11  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

12  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

13          375.    Plaintiff, Angela Christensen (for the purpose of this paragraph, "Plaintiff"), a

14  citizen of the State of Alaska, residing in the City of Chugiak, bought a 2014 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

16  2016, from a Private Party, an authorized FCA dealer in Chugiak, Alaska. Plaintiff decided to buy

17  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19  Subject Vehicles were represented as environmentally friendly, having low emissions and good

20  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21  When Plaintiff went to Private Party to purchase the Subject Vehicle, the private party touted the

22  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

23  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2   could perform as advertised only by emitting NOx at levels that are greater than advertised and

3   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6   would have paid less for it, had he/she known that it did not comply with emission standards; that

7   its emission treatment system was designed to de-activate during real-world driving conditions;

8   and that it could not achieve the advertised towing power, performance, and/or fuel economy

9   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12          376.    Plaintiff, Robert & Reena Carnes (for the purpose of this paragraph, "Plaintiff"),

13  citizens of the State of Washington, residing in the City of Puyallup, bought a 2016 Dodge Ram

14  1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15,

15  2018 at Northwest Motorsport, an authorized FCA dealer in Puyallup, Washington. Plaintiff

16  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiff went to Northwest Motorsport to purchase the Subject Vehicle,

21  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

22  and performance. These representations, along with the advertised fuel economy, were among the

23  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

405

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

377.    Plaintiff, Sarah Miller (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of York, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 21, 2015, at Stettler Dodge Chrysler Jeep Ram, an authorized FCA dealer in York, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Stettler Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

1   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

3   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

5   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6   emission standards; that its emission treatment system was designed to de-activate during real-

7   world driving conditions; and that it could not achieve the advertised towing power, performance,

8   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

9   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11  control devices.

12      378.    Plaintiff, Robert Wasilchuk (for the purpose of this paragraph, "Plaintiff"), a

13  citizen of the State of Nevada, residing in the City of Gardnerville, bought a 2015 Dodge Ram

14  1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 20,

15  2015, at Carson City Dodge, an authorized FCA dealer in Carson City, Nevada. Plaintiff decided

16  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

17  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

18  which the Subject Vehicles were represented as environmentally friendly, having low emissions

19  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

20  Vehicles.  When Plaintiff went to Carson City Dodge to purchase the Subject Vehicle, the sales

21  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22  performance. These representations, along with the advertised fuel economy, were among the

23  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

379.    Plaintiff, Janelle & Bryan Wiggins (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Jacksonville, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 14, 2014, at Darcars Jacksonville, an authorized FCA dealer in Jacksonville, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Darcars Jacksonville to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

380.    Plaintiff, Benjamin D. Crifasi, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of East Baton Rouge, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 17, 2016, at Ralph Sellers Chrysler Dodge Jeep Ram, an authorized FCA dealer in Gonzales, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ralph Sellers Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12       381.    Plaintiff, Ray Reynolds (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of North Carolina, residing in the City of Collinsville, bought a 2015 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

15   2015, at Kernersville Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kernersville, North

16   Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

17   it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

18   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

19   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

20   about the Subject Vehicles.  When Plaintiff went to Kernersville Chrysler Dodge Jeep Ram to

21   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

22   attributes, including its fuel economy and performance. These representations, along with the

23   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

410

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

382.    Plaintiff, Allen Keith Peacock (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Auburndale, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 8, 2018 at Dodge Chrysler Jeep of Winter Haven, an authorized FCA dealer in Winter Haven, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dodge Chrysler Jeep of Winter Haven to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff

411

did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

383.    Plaintiff, Clinton T. McKinney (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Dakota, residing in the City of Burlington, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 11, 2018 at Minot Automotive Center, an authorized FCA dealer in Minot, North Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Minot Automotive Center to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

412

1    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

3    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

5    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6    emission standards; that its emission treatment system was designed to de-activate during real-

7    world driving conditions; and that it could not achieve the advertised towing power, performance,

8    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

9    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11   control devices.

12          384.    Plaintiff, Gregory Anthony (for the purpose of this paragraph, "Plaintiff"), a citizen

13   of the State of Pennsylvania, residing in the City of Franksville, bought a 2016 Jeep Grand

14   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July

15   29, 2016, at Bob Weaver Dodge, an authorized FCA dealer in Pottsville, Pennsylvania. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Bob Weaver Dodge to purchase the Subject Vehicle, the

21   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22   performance. These representations, along with the advertised fuel economy, were among the

23   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

1    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6    standards; that its emission treatment system was designed to de-activate during real-world driving

7    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10   or would have paid less for it, had Defendants not concealed the unauthorized emission control

11   devices.

12          385.    Plaintiff, Patrick Diggin (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of South Carolina, residing in the City of Aiken, bought a 2015 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2014,

15   at Bob Richards Chrysler Dodge Jeep Ram, an authorized FCA dealer in Graniteville, North

16   Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

17   it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

18   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

19   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

20   about the Subject Vehicles.  When Plaintiff went to Bob Richards Chrysler Dodge Jeep Ram to

21   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

22   attributes, including its fuel economy and performance. These representations, along with the

23   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

386.     Plaintiff, Scott Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Dakota, residing in the City of Custer, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 6, 2016, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

1   could perform as advertised only by emitting NOx at levels that are greater than advertised and

2   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

3   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

4   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

5   would have paid less for it, had he/she known that it did not comply with emission standards; that

6   its emission treatment system was designed to de-activate during real-world driving conditions;

7   and that it could not achieve the advertised towing power, performance, and/or fuel economy

8   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

9   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

10  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

11          387.    Plaintiff, Elizabeth & Bryce Godwin (for the purpose of this paragraph,

12  "Plaintiff"), citizens of the State of Louisiana, residing in the City of Broussard, leased a 2016

13  Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

14  about April 13, 2016, at Acadiana Dodge Chrysler Jeep Ram, an authorized FCA dealer in

15  Lafayette, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

16  representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

17  Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

18  environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

19  seeing television commercials about the Subject Vehicles. When Plaintiff went to Acadiana Dodge

20  Chrysler Jeep Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's

21  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

22  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

23  Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as

416

1   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

2   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

3   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

4   and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it,

5   had he/she known that it did not comply with emission standards; that its emission treatment

6   system was designed to de-activate during real-world driving conditions; and that it could not

7   achieve the advertised towing power, performance, and/or fuel economy without cheating

8   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

9   Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less

10  for it, had Defendants not concealed the unauthorized emission control devices.

11          388.    Plaintiff, Larry & Daina Wilhelm (for the purpose of this paragraph, "Plaintiff"),

12  citizens of the State of Arizona, residing in the City of Quitman, bought a 2015 Dodge Ram 1500

13  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 14, 2015,

14  at Liberty Chrysler Jeep Dodge Ram, an authorized FCA dealer in Conway, Arizona. Plaintiff

15  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

16  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

17  website, on which the Subject Vehicles were represented as environmentally friendly, having low

18  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

19  Subject Vehicles.  When Plaintiff went to Liberty Chrysler Jeep Dodge Ram to purchase the

20  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

21  its fuel economy and performance. These representations, along with the advertised fuel economy,

22  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

23  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

417

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

389.     Plaintiff, Harlan Latusek (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Wells, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 30, 2014, at Lager's Chrysler World – Chrysler Jeep Dodge Ram, an authorized FCA dealer in Mankato, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lager's Chrysler World – Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

390.    Plaintiff, Harlan Latusek (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Wells, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 3, 2016, at Lager's Chrysler World – Chrysler Jeep Dodge Ram, an authorized FCA dealer in Mankato, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lager's Chrysler World – Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

419

Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

391. Plaintiff, Joe Castro (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Boulder, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 28, 2015, at Boulder Chrysler Dodge Ram, an authorized FCA dealer in Boulder, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Boulder Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

420

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

392.    Plaintiff Ken Kroschel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Longmont, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 6, 2016, at Prestige Chrysler Dodge Jeep Ram, an authorized FCA dealer in Longmont, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Prestige Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

393.   Plaintiff, Robert W. Ford (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut, residing in the City of Mansfield Center, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15, 2016, at Gengras Chrysler Dodge Jeep Ram, an authorized FCA dealer in Hartford, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Gengras Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

1    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

2    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

3    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

4    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

5    comply with emission standards; that its emission treatment system was designed to de-activate

6    during real-world driving conditions; and that it could not achieve the advertised towing power,

7    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

8    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

9    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

10   unauthorized emission control devices.

11        394.    Plaintiff, Thomas Goodyke & Julie Bowers Goodyke (for the purpose of this

12   paragraph, "Plaintiff"), citizens of the State of Michigan, residing in the City of Grand Rapids,

13   bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject

14   Vehicle") on or about December 28, 2016, at Henkel Chrysler Jeep Dodge, an authorized FCA

15   dealer in Springfield, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on

16   FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

17   efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were

18   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

19   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

20   Henkel Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject

21   Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

395.    Plaintiff, Rick Nash (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Monitor, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 13, 2016, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

1    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4    would have paid less for it, had he/she known that it did not comply with emission standards; that

5    its emission treatment system was designed to de-activate during real-world driving conditions;

6    and that it could not achieve the advertised towing power, performance, and/or fuel economy

7    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10           396.    Plaintiff, Heather & Lewis Cleaver (for the purpose of this paragraph, "Plaintiff"),

11   citizens of the State of Kentucky, residing in the City of Owenton, bought a 2014 Dodge Ram

12   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1,

13   2014, at Marshall Chrysler Dodge Jeep Ram, an authorized FCA dealer in Crittenden, Kentucky.

14   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16   website, on which the Subject Vehicles were represented as environmentally friendly, having low

17   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18   Subject Vehicles.  When Plaintiff went to Marshall Chrysler Dodge Jeep Ram to purchase the

19   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

20   its fuel economy and performance. These representations, along with the advertised fuel economy,

21   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

22   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

23   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

397.    Plaintiff, Sergey Oleynik (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Pasco, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 3, 2016, at Dishman Dodge Ram Chrysler Jeep, an authorized FCA dealer in Spokane Valley, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dishman Dodge Ram Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

426

Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

398.    Plaintiff, Emile J. LaPointe (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Belle Chasse, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Southland Dodge Chrysler Jeep Ram Fiat, an authorized FCA dealer in Houma, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Southland Dodge Chrysler Jeep Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

1    aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

2    control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

3    would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

4    that it did not comply with emission standards; that its emission treatment system was designed to

5    de-activate during real-world driving conditions; and that it could not achieve the advertised

6    towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

7    suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

8    not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

9    concealed the unauthorized emission control devices.

10          399.    Plaintiff, Brad & Kelli Erickson (for the purpose of this paragraph, "Plaintiff"),

11   citizens of the State of Washington, residing in the City of South Bend, bought a 2016 Dodge Ram

12   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August

13   28, 2017 at Dick's Country Chrysler Jeep Dodge, an authorized FCA dealer in Hillsboro, Oregon.

14   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16   website, on which the Subject Vehicles were represented as environmentally friendly, having low

17   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18   Subject Vehicles.  When Plaintiff went to Dick's Country Chrysler Jeep Dodge to purchase the

19   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

20   its fuel economy and performance. These representations, along with the advertised fuel economy,

21   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

22   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

23   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

428

1    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

2    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

3    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

4    comply with emission standards; that its emission treatment system was designed to de-activate

5    during real-world driving conditions; and that it could not achieve the advertised towing power,

6    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

7    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

8    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

9    unauthorized emission control devices.

10        400.    Plaintiff, Gabriel Haugland (for the purpose of this paragraph, "Plaintiff"), a citizen

11   of the State of Iowa, residing in the City of Clear Lake, bought a 2015 Dodge Ram 1500

12   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 31, 2018

13   at Dewey Dodge Chrysler Jeep, an authorized FCA dealer in Ankeny, Iowa. Plaintiff decided to

14   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

15   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16   Subject Vehicles were represented as environmentally friendly, having low emissions and good

17   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18   When Plaintiff went to Dewey Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales

19   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

20   performance. These representations, along with the advertised fuel economy, were among the

21   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

401.     Plaintiff, Ralph Coers (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Graham, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2017 at Larson Chrysler Jeep Dodge Ram, an authorized FCA dealer in Puyallup, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larson Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

430

1   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

2   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

3   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

4   comply with emission standards; that its emission treatment system was designed to de-activate

5   during real-world driving conditions; and that it could not achieve the advertised towing power,

6   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

7   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

8   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

9   unauthorized emission control devices.

10      402.    Plaintiff, Gary & Tracy McKeever (for the purpose of this paragraph, "Plaintiff"),

11   citizens of the State of Oklahoma, residing in the City of Kingston, bought a 2016 Dodge Ram

12   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October

13   1, 2016, at Byford Chrysler Dodge Jeep Ram Duncan, an authorized FCA dealer in Duncan,

14   Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

15   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

16   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

17   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

18   commercials about the Subject Vehicles.  When Plaintiff went to Byford Chrysler Dodge Jeep

19   Ram Duncan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

20   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

21   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

22   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

23   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

431

1   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

2   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

3   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

4   for it, had he/she known that it did not comply with emission standards; that its emission treatment

5   system was designed to de-activate during real-world driving conditions; and that it could not

6   achieve the advertised towing power, performance, and/or fuel economy without cheating

7   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

8   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

9   less for it, had Defendants not concealed the unauthorized emission control devices.

10          403.    Plaintiff, Wendell Espeland (for the purpose of this paragraph, "Plaintiff"), a

11  citizen of the State of Kansas, residing in the City of Tonganoxie, bought a 2016 Dodge Ram 1500

12  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 6, 2016,

13  at Victory Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kansas City, Missouri. Plaintiff

14  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16  website, on which the Subject Vehicles were represented as environmentally friendly, having low

17  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18  Subject Vehicles.  When Plaintiff went to Victory Chrysler Dodge Jeep Ram to purchase the

19  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

20  its fuel economy and performance. These representations, along with the advertised fuel economy,

21  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

22  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

23  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

1    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

2    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

3    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

4    comply with emission standards; that its emission treatment system was designed to de-activate

5    during real-world driving conditions; and that it could not achieve the advertised towing power,

6    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

7    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

8    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

9    unauthorized emission control devices.

10         404.    Plaintiff, Jason & Natalie Ysker (for the purpose of this paragraph, "Plaintiff"),

11   citizens of the State of Minnesota, residing in the City of Apple Valley, bought a 2014 Jeep Grand

12   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

13   August 1, 2014, at Coon Rapids Chrysler Dodge Jeep Ram, an authorized FCA dealer in Coon

14   Rapids, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

15   representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

16   Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

17   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

18   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Coon Rapids

19   Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject

20   Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

21   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

22   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

23   could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

405.     Plaintiff, Anthony Barbato (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Islip Terrace, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 10, 2016, at Timonium Chrysler, an authorized FCA dealer in Cockeysville, Maryland. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Timonium Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

1    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

2    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

3    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

4    standards; that its emission treatment system was designed to de-activate during real-world driving

5    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

6    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

7    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

8    or would have paid less for it, had Defendants not concealed the unauthorized emission control

9    devices.

10          406.    Plaintiff, Myron & Linda Billiot (for the purpose of this paragraph, "Plaintiff"),

11   citizens of the State of Louisiana, residing in the City of Raceland, bought a 2015 Dodge Ram

12   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 4,

13   2015, at Southland Dodge, an authorized FCA dealer in Houma, Louisiana. Plaintiff decided to

14   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

15   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16   Subject Vehicles were represented as environmentally friendly, having low emissions and good

17   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18   When Plaintiff went to Southland Dodge to purchase the Subject Vehicle, the sales associate touted

19   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22   could perform as advertised only by emitting NOx at levels that are greater than advertised and

23   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

435

1   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3   would have paid less for it, had he/she known that it did not comply with emission standards; that

4   its emission treatment system was designed to de-activate during real-world driving conditions;

5   and that it could not achieve the advertised towing power, performance, and/or fuel economy

6   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9        407.    Plaintiff Ben Doney (for the purpose of this paragraph, "Plaintiff"), a citizen of the

10  State of Oregon, residing in the City of Warrenton, bought a 2016 Dodge Ram 1500 EcoDiesel®

11  (for the purpose of this paragraph, the "Subject Vehicle") on or about May 15, 2016, at Lums Auto

12  Center, an authorized FCA dealer in Warrenton, Oregon. Plaintiff decided to buy the Subject

13  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

14  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

15  Vehicles were represented as environmentally friendly, having low emissions and good fuel

16  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

17  Plaintiff went to Lums Auto Center to purchase the Subject Vehicle, the sales associate touted the

18  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

20  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

21  could perform as advertised only by emitting NOx at levels that are greater than advertised and

22  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

436

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

408.    Plaintiff, Thurman & Rose Dickey (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Arizona, residing in the City of Winkelman, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 15, 2016, at Hatch Motor Co., Inc., an authorized FCA dealer in Show Low, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Hatch Motor Co. Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

409.    Plaintiff, Angeline & Stephen Connaghan (for the purpose of this paragraph, "Plaintiff"), citizen of the State of Pennsylvania, residing in the City of Harrisburg, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Lancaster Dodge Ram Fiat, an authorized FCA dealer in Lancaster, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lancaster Dodge Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators.

Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

410.    Plaintiff, Jacob Herron (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Mexico, residing in the City of Artesia, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Frontier Motor Company, an authorized FCA dealer in El Reno, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Frontier Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

411.    Plaintiff, Dion Kampa (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Big Bend, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 25, 2016, at Wilde Chrysler Jeep Dodge Ram, an authorized FCA dealer in Waukesha, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Wilde Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

440

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

412.    Plaintiff, Osvaldo Romero (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Miami, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 17, 2015, at Arrigo Dodge Chrysler Jeep Ram West Palm Beach, an authorized FCA dealer in West Palm Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Arrigo Dodge Chrysler Jeep Ram West Palm Beach to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers

1    and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

2    for it, had he/she known that it did not comply with emission standards; that its emission treatment

3    system was designed to de-activate during real-world driving conditions; and that it could not

4    achieve the advertised towing power, performance, and/or fuel economy without cheating

5    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

6    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

7    less for it, had Defendants not concealed the unauthorized emission control devices.

8        413.    Plaintiff, Matthew Deavers (for the purpose of this paragraph, "Plaintiff"), a citizen

9    of the State of South Carolina, residing in the City of Myrtle Beach, bought a 2016 Dodge Ram

10   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 27,

11   2017 at Beach Ford, an authorized FCA dealer in Myrtle Beach, South Carolina. Plaintiff decided

12   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

13   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

14   which the Subject Vehicles were represented as environmentally friendly, having low emissions

15   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

16   Vehicles.  When Plaintiff went to Beach Ford to purchase the Subject Vehicle, the sales associate

17   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

18   These representations, along with the advertised fuel economy, were among the primary reasons

19   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

20   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

21   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

442

1   would have paid less for it, had he/she known that it did not comply with emission standards; that

2   its emission treatment system was designed to de-activate during real-world driving conditions;

3   and that it could not achieve the advertised towing power, performance, and/or fuel economy

4   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7       414.   Plaintiff, Duane Gleason (for the purpose of this paragraph, "Plaintiff"), a citizen

8   of the State of Pennsylvania, residing in the City of Tamaqua, bought a 2015 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

10  2016, at Outten Chrysler Dodge Jeep Ram, an authorized FCA dealer in Hamburg, Pennsylvania.

11  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13  website, on which the Subject Vehicles were represented as environmentally friendly, having low

14  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15  Subject Vehicles. When Plaintiff went to Outten Chrysler Dodge Jeep Ram to purchase the Subject

16  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17  economy and performance. These representations, along with the advertised fuel economy, were

18  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

443

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

415.    Plaintiff, Robert Elie (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Lehigh Acres, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2014, at Galeana Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fort Meyers, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Galeana Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

444

comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

416.    Plaintiff, Jerry Martin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Shelbyville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 14, 2014, at Shelbyville Chrysler Dodge Jeep Ram Products, an authorized FCA dealer in Shelbyville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Shelbyville Chrysler Dodge Jeep Ram Products to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

417.     Plaintiff, Billy & Joseph Welch (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Arkansas, residing in the City of Rogers, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Ryburn Motor Company, an authorized FCA dealer in Monticello, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ryburn Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

418.    Plaintiff, Manuel & Michael Gonzalez (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Pembroke, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 25, 2015, at Massey Yardley Jeep Chrysler Dodge Ram, an authorized FCA dealer in Plantation, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Massey Yardley Jeep Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7         419.     Plaintiff, Christopher Vigil (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Tennessee, residing in the City of Gallatin, bought a 2014 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 28,

10   2016, at Carmax, an authorized FCA dealer in Madison, Tennessee. Plaintiff decided to buy the

11   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Carmax to purchase the Subject Vehicle, the sales associate touted the

16   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19   could perform as advertised only by emitting NOx at levels that are greater than advertised and

20   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6          420.    Plaintiff, John T. Nickel (for the purpose of this paragraph, "Plaintiff"), a citizen

7    of the State of Kansas, residing in the City of Wamego, bought a 2016 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 20, 2016,

9    at Briggs Auto, an authorized FCA dealer in Topeka, Kansas. Plaintiff decided to buy the Subject

10   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

11   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

12   Vehicles were represented as environmentally friendly, having low emissions and good fuel

13   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

14   Plaintiff went to Briggs Auto to purchase the Subject Vehicle, the sales associate touted the Subject

15   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

16   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18   could perform as advertised only by emitting NOx at levels that are greater than advertised and

19   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22   would have paid less for it, had he/she known that it did not comply with emission standards; that

23   its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5        421.    Plaintiff, Susan Burkland (for the purpose of this paragraph, "Plaintiff"), a citizen

6    of the State of Pennsylvania, residing in the City of Shickshinny, bought a 2014 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 30, 2016,

8    at Tunkhannock Auto Mart: Dodge Ram Chrysler Jeep, an authorized FCA dealer in Tunkhannock,

9    Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

10   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

11   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

12   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

13   commercials about the Subject Vehicles.  When Plaintiff went to Tunkhannock to purchase the

14   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

15   its fuel economy and performance. These representations, along with the advertised fuel economy,

16   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

17   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

18   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

19   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

20   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

21   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

22   comply with emission standards; that its emission treatment system was designed to de-activate

23   during real-world driving conditions; and that it could not achieve the advertised towing power,

450

1  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

2  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

3  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

4  unauthorized emission control devices.

5      422.    Plaintiff, Christofer Askervold (for the purpose of this paragraph, "Plaintiff"), a

6  citizen of the State of Florida, residing in the City of Boca Raton, bought a 2015 Dodge Ram 1500

7  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 6,

8  2015, at Napleton's Northlake Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lake Park,

9  Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

10  was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

11  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

12  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

13  about the Subject Vehicles.  When Plaintiff went to Napleton's Northlake Chrysler Dodge Jeep

14  Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

15  attributes, including its fuel economy and performance. These representations, along with the

16  advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

17  the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

18  only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

19  Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

20  emission control devices designed to cheat emission tests and to deceive consumers and regulators.

21  Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

22  known that it did not comply with emission standards; that its emission treatment system was

23  designed to de-activate during real-world driving conditions; and that it could not achieve the

1    advertised towing power, performance, and/or fuel economy without cheating emission tests.

2    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

3    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

4    not concealed the unauthorized emission control devices.

5            423.    Plaintiff, Gus Demetriades (for the purpose of this paragraph, "Plaintiff"), a citizen

6    of the State of North Carolina, residing in the City of Henderson, bought a 2014 Jeep Grand

7    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

8    November 25, 2014, at Lake Norman Chrysler Dodge Jeep Ram, an authorized FCA dealer in

9    Cornelius, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

10   representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

11   Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as

12   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

13   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lake Norman

14   Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject

15   Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18   could perform as advertised only by emitting NOx at levels that are greater than advertised and

19   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22   would have paid less for it, had he/she known that it did not comply with emission standards; that

23   its emission treatment system was designed to de-activate during real-world driving conditions;

452

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5        424.    Plaintiff, Paul Webster Messner, Jr. (for the purpose of this paragraph, "Plaintiff"),

6    a citizen of the State of Michigan, residing in the City of Grand Rapids, bought a 2015 Dodge Ram

7    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October

8    13, 2017 at K & M Wayland Chrysler Dodge Jeep Ram, an authorized FCA dealer in Wayland,

9    Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

10   it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

11   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

12   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

13   about the Subject Vehicles.  When Plaintiff went to K & M Wayland Chrysler Dodge Jeep Ram to

14   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

15   attributes, including its fuel economy and performance. These representations, along with the

16   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

17   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

18   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

19   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

20   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

21   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

22   known that it did not comply with emission standards; that its emission treatment system was

23   designed to de-activate during real-world driving conditions; and that it could not achieve the

advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

425.    Plaintiff, Scott Platko (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon, residing in the City of Platko, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Smolich Motors, an authorized FCA dealer in Bend, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Smolich Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating

454

1    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

2    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

3    less for it, had Defendants not concealed the unauthorized emission control devices.

4          426.    Plaintiff, Cody P. Privette (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Minnesota, residing in the City of Duluth, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 10,

7    2017 at Duluth Dodge, an authorized FCA dealer in Duluth, Minnesota. Plaintiff decided to buy

8    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

9    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Duluth Dodge to purchase the Subject Vehicle, the sales associate touted

13   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

455

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3         427.    Plaintiff, Brent Burton (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Montana, residing in the City of Colstrip, bought a 2015 Dodge Ram 1500 EcoDiesel®

5    (for the purpose of this paragraph, the "Subject Vehicle") on or about March 22, 2017 at Herbert's

6    Town and Country Chrysler Dodge Jeep Ram, an authorized FCA dealer in Shreveport, Louisiana.

7    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Herbert's Town and Country Chrysler Dodge Jeep Ram

12   to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

13   attributes, including its fuel economy and performance. These representations, along with the

14   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

15   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

16   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

17   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

18   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

19   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

20   known that it did not comply with emission standards; that its emission treatment system was

21   designed to de-activate during real-world driving conditions; and that it could not achieve the

22   advertised towing power, performance, and/or fuel economy without cheating emission tests.

23   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

1    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

2    not concealed the unauthorized emission control devices.

3           428.     Plaintiff, Randy Tomlinson (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of the State of Louisiana, residing in the City of Opelousas, bought a 2014 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 20,

6    2016, at Sterling Automotive Group, an authorized FCA dealer in Opelousas, Louisiana. Plaintiff

7    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Sterling Automotive Group to purchase the Subject

12   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

13   economy and performance. These representations, along with the advertised fuel economy, were

14   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

15   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

16   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

17   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

18   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

19   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

20   emission standards; that its emission treatment system was designed to de-activate during real-

21   world driving conditions; and that it could not achieve the advertised towing power, performance,

22   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

23   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

1    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

2    control devices.

3          429.    Plaintiff, Roger Hinton (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Kansas, residing in the City of Hiawatha, bought a 2016 Dodge Ram 1500 EcoDiesel®

5    (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at

6    Gladstone Dodge Chrysler Jeep & Ram, an authorized FCA dealer in Gladston, Missouri. Plaintiff

7    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Gladstone Dodge Chrysler Jeep & Ram to purchase the

12   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

13   its fuel economy and performance. These representations, along with the advertised fuel economy,

14   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

15   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

16   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

17   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

18   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

19   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

20   comply with emission standards; that its emission treatment system was designed to de-activate

21   during real-world driving conditions; and that it could not achieve the advertised towing power,

22   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

23   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

458

1     purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

2     unauthorized emission control devices.

3          430.     Plaintiff, Roger Hinton (for the purpose of this paragraph, "Plaintiff"), a citizen of

4     the State of Kansas, residing in the City of Hiawatha, bought a 2014 Dodge Ram 1500 EcoDiesel®

5     (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2014, at Laukemper

6     Motors, an authorized FCA dealer in Mound City, Missouri. Plaintiff decided to buy the Subject

7     Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

8     emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

9     Vehicles were represented as environmentally friendly, having low emissions and good fuel

10    economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

11    Plaintiff went to Laukemper Motors to purchase the Subject Vehicle, the sales associate touted the

12    Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15    could perform as advertised only by emitting NOx at levels that are greater than advertised and

16    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19    would have paid less for it, had he/she known that it did not comply with emission standards; that

20    its emission treatment system was designed to de-activate during real-world driving conditions;

21    and that it could not achieve the advertised towing power, performance, and/or fuel economy

22    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2         431.    Plaintiff, Gabriel & Audrey McConnell (for the purpose of this paragraph,

3    "Plaintiff"), citizens of the State of Iowa, residing in the City of Eldora, bought a 2016 Dodge Ram

4    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1,

5    2016, at Stew Hansen Dodge Ram Chrysler Jeep, an authorized FCA dealer in Urbandale, Iowa.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Hansen Dodge Ram Chrysler Jeep to purchase the

11   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12   its fuel economy and performance. These representations, along with the advertised fuel economy,

13   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19   comply with emission standards; that its emission treatment system was designed to de-activate

20   during real-world driving conditions; and that it could not achieve the advertised towing power,

21   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

460

1    unauthorized emission control devices.

2         432.    Plaintiff, Kyle Schmitting & Kamile Kevliciute (for the purpose of this paragraph,

3    "Plaintiff"), citizens of the State of North Carolina, residing in the City of Lillington, bought a

4    2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle")

5    on or about February 25, 2017 at Matthews Motor Clayton, an authorized FCA dealer in Clayton,

6    North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

7    that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

8    visiting the Jeep website, on which the Subject Vehicles were represented as environmentally

9    friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

10   commercials about the Subject Vehicles.  When Plaintiff went to Matthews Motors Clayton to

11   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

12   attributes, including its fuel economy and performance. These representations, along with the

13   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19   known that it did not comply with emission standards; that its emission treatment system was

20   designed to de-activate during real-world driving conditions; and that it could not achieve the

21   advertised towing power, performance, and/or fuel economy without cheating emission tests.

22   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

461

1    not concealed the unauthorized emission control devices.

2        433.    Plaintiff, William J. Hoak, III (for the purpose of this paragraph, "Plaintiff"), a

3    citizen of the State of New York, residing in the City of Kenmore, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 2, 2015,

5    at Transitowne Jeep Chrysler Dodge Ram Williamsville, an authorized FCA dealer in

6    Williamsville, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

7    representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

8    Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

9    environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

10   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Transitowne

11   Jeep Chrysler Dodge Ram Williamsville to purchase the Subject Vehicle, the sales associate touted

12   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15   could perform as advertised only by emitting NOx at levels that are greater than advertised and

16   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2        434.    Plaintiff, Scott McCrea (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Ohio, residing in the City of Negley, bought a 2014 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about April 12, 2016, at Salem

5    Chrysler Jeep Dodge, an authorized FCA dealer in Salem, Ohio. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Salem Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales

11   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

12   performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

1   devices.

2      435. Plaintiff, Carl Lachance (for the purpose of this paragraph, "Plaintiff"), a citizen of

3   the State of North Carolina, residing in the City of Mecklenburg, bought a 2015 Dodge Ram 1500

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 31,

5   2015, at Hendrick Chrysler Dodge Jeep Ram of Concord, an authorized FCA dealer in Concord,

6   North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

7   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

8   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

9   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

10   commercials about the Subject Vehicles.  When Plaintiff went to Hendrick Chrysler Dodge Jeep

11   Ram of Concord to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

12   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

13   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

14   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

15   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

16   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

17   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

18   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

19   for it, had he/she known that it did not comply with emission standards; that its emission treatment

20   system was designed to de-activate during real-world driving conditions; and that it could not

21   achieve the advertised towing power, performance, and/or fuel economy without cheating

22   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

23   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

464

1    less for it, had Defendants not concealed the unauthorized emission control devices.

2    436.    Plaintiff, Sean Condry (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Missouri, residing in the City of Lotawana, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 27,

5    2015, at Platte City – Airport Dodge, an authorized FCA dealer in Platte City, Missouri. Plaintiff

6    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Platte City – Airport Dodge to purchase the Subject

11   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12   economy and performance. These representations, along with the advertised fuel economy, were

13   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19   emission standards; that its emission treatment system was designed to de-activate during real-

20   world driving conditions; and that it could not achieve the advertised towing power, performance,

21   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

465

1 | control devices.

2 |    437.  Plaintiff, Ronda Stratton (for the purpose of this paragraph, "Plaintiff"), a citizen

3 | of the State of Ohio, residing in the City of Russellville, bought a 2015 Jeep Grand Cherokee

4 | EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 30,

5 | 2016, at Mt. Orab Chrysler Dodge Jeep Ram, an authorized FCA dealer in Mt Orab, Ohio. Plaintiff

6 | decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7 | "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

8 | website, on which the Subject Vehicles were represented as environmentally friendly, having low

9 | emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10 | Subject Vehicles.  When Plaintiff went to Mt Orab Chrysler Dodge Jeep Ram to purchase the

11 | Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12 | its fuel economy and performance. These representations, along with the advertised fuel economy,

13 | were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14 | Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15 | at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16 | Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17 | designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18 | purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19 | comply with emission standards; that its emission treatment system was designed to de-activate

20 | during real-world driving conditions; and that it could not achieve the advertised towing power,

21 | performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22 | concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23 | purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

1    unauthorized emission control devices.

2        438.    Plaintiff, James Hadley (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Illinois, residing in the City of Washington, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

5    2016, at Sam Leman Morton, an authorized FCA dealer in Morton, Illinois. Plaintiff decided to

6    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

7    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Sam Leman Morton to purchase the Subject Vehicle, the sales associate

11   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

12   These representations, along with the advertised fuel economy, were among the primary reasons

13   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

14   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

15   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

467

1     439.    Plaintiff, Bo-Michael M. Apele (for the purpose of this paragraph, "Plaintiff"), a

2 citizen of the State of Washington, residing in the City of Spokane, bought a 2015 Jeep Grand

3 Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

4 November 8, 2015, at Lithia Chrysler Dodge Jeep Ram Fiat of Spokane, an authorized FCA dealer

5 in Spokane, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

6 representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

7 Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as

8 environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

9 seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler

10 Dodge Jeep Ram Fiat of Spokane to purchase the Subject Vehicle, the sales associate touted the

11 Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12 representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13 chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14 could perform as advertised only by emitting NOx at levels that are greater than advertised and

15 above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16 undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17 deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18 would have paid less for it, had he/she known that it did not comply with emission standards; that

19 its emission treatment system was designed to de-activate during real-world driving conditions;

20 and that it could not achieve the advertised towing power, performance, and/or fuel economy

21 without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22 result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23 have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1    440.    Plaintiff, Bo-Michael M. Apele (for the purpose of this paragraph, "Plaintiff"), a

2    citizen of the State of Washington, residing in the City of Spokane, bought a 2014 Dodge Ram

3    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 26,

4    2017 at Lithia Chrysler Dodge Jeep Ram Fiat of Spokane, an authorized FCA dealer in Spokane,

5    Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

6    that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

7    visiting the Ram website, on which the Subject Vehicles were represented as environmentally

8    friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

9    commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Dodge Jeep Ram

10   Fiat of Spokane to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

11   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

12   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

13   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

14   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

15   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

16   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

17   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

18   for it, had he/she known that it did not comply with emission standards; that its emission treatment

19   system was designed to de-activate during real-world driving conditions; and that it could not

20   achieve the advertised towing power, performance, and/or fuel economy without cheating

21   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

22   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

23   less for it, had Defendants not concealed the unauthorized emission control devices.

469

441.     Plaintiff, John Rory Carreon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Tucson, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 5, 2016, at Jim Click Dodge, an authorized FCA dealer in Tucson, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jim Click Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

442.     Plaintiff, Arturo Torres (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Nevada, residing in the City of Gardnerville, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2014, at Carson City Dodge, an authorized FCA dealer in Carson City, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Carson City Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

443.    Plaintiff, Brian Ellis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina, residing in the City of Harnett, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 16, 2017 at Crossroads Ford of Sanford, an authorized FCA dealer in Sanford, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Crossroads Ford of Sanford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

444.    Plaintiff, Douglas Mettenburg (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arkansas, residing in the City of Rogers, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2016, at McLarty Daniel Chrysler Dodge Jeep Ram Fiat of Springdale, an authorized FCA dealer in Springdale, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to McLarty Daniel Chrysler Dodge Jeep Ram Fiat of Springdale to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

445.    Plaintiff, Michael Shane Williams (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Maryland, residing in the City of Abingdon, bought a 2014 Dodge Ram

1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 8, 2015, at Cook Chrysler Dodge Ram, an authorized FCA dealer in Aberdeen, Maryland. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Cook Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

446.     Plaintiff Donald Scales (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of La Fargeville, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at FX Caprara Chevrolet Buick, an authorized FCA dealer in Pulaski, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to FX Caprara Chevrolet Buick to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

447.    Plaintiff, Lucky Easley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Marion, bought a 2015 Dodge Ram 1500 EcoDiesel®

1    (for the purpose of this paragraph, the "Subject Vehicle") on or about February 16, 2018 at Steve

2    Jones Chrysler Dodge Jeep Ram, an authorized FCA dealer in Owensboro, Kentucky. Plaintiff

3    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

4    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

5    website, on which the Subject Vehicles were represented as environmentally friendly, having low

6    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

7    Subject Vehicles.  When Plaintiff went to Steve Jones Chrysler Dodge Jeep Ram to purchase the

8    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

9    its fuel economy and performance. These representations, along with the advertised fuel economy,

10   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

11   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

12   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

13   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

14   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

15   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

16   comply with emission standards; that its emission treatment system was designed to de-activate

17   during real-world driving conditions; and that it could not achieve the advertised towing power,

18   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

19   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

20   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

21   unauthorized emission control devices.

22        448.    Plaintiff, Erik Angelo (for the purpose of this paragraph, "Plaintiff"), a citizen of

23   the State of Arizona, residing in the City of Phoenix, bought a 2016 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about September 16, 2016, at Larry H. Miller Dodge Ram Avondale, an authorized FCA dealer in Avondale, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larry H. Miller Dodge Ram Avondale to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

449.    Plaintiff, David & Gisela Martinez (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Florida, residing in the City of Orlando, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23, 2014, at Fields Chrysler Jeep Dodge Sanford, an authorized FCA dealer in Sanford, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fields Chrysler Jeep Dodge Sanford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

450.    Plaintiff, Brad Robertson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington, residing in the City of Marysville, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 26, 2017 at Northwest Motorsport, an authorized FCA dealer in Everett, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Northwest Motorsports to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

451.    Plaintiff, Alan Sjoberg (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Henderson, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2014,

1   at Randy Wise Chrysler Dodge Jeep Ram, an authorized FCA dealer in Clip, Michigan. Plaintiff

2   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

3   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

4   website, on which the Subject Vehicles were represented as environmentally friendly, having low

5   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

6   Subject Vehicles.  When Plaintiff went to Randy Wise Chrysler Dodge Jeep Ram to purchase the

7   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

8   its fuel economy and performance. These representations, along with the advertised fuel economy,

9   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

10  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

11  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

12  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

13  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

14  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

15  comply with emission standards; that its emission treatment system was designed to de-activate

16  during real-world driving conditions; and that it could not achieve the advertised towing power,

17  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

18  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

19  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

20  unauthorized emission control devices.

21      452.    Plaintiff, Bastian Schroder (for the purpose of this paragraph, "Plaintiff"), a citizen

22  of the State of New Jersey, residing in the City of Califon, bought a 2014 Jeep Grand Cherokee

23  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015,

at Dane County Auto Sales, Inc., an authorized FCA dealer in Stoughton, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dane County Auto Sales, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

453.    Plaintiff, Bruce & Vickie Sulc (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia, residing in the City of Chesterfield, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November

1, 2016, at Lee Chrysler Dodge Jeep Ram, an authorized FCA dealer in Wilson, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lee Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

454.    Plaintiff, Steven James Rust (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Zachary, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 25,

2016, at Cecil Graves Chevrolet, an authorized FCA dealer in St. Francisville, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Cecil Graves Chevrolet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

455.    Plaintiff, Michael Gides (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Erie, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 29, 2017 at Boulder

Chrysler Dodge Ram, an authorized FCA dealer in Bolder, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Boulder Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

456.    Plaintiff, Richard Watters (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Fenton, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2014,

at LaFontaine Chrysler Dodge Jeep Ram Saline, an authorized FCA dealer in Saline, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to LaFontaine Chrysler Dodge Jeep Ram Saline to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

457.    Plaintiff, Donald Long (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois, residing in the City of Frankfort, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at

485

Mancari's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Oak Lawn, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mancari's Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

458.    Plaintiff, Timothy Leathers (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Cape Coral, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

2017 at Ferman Chrysler Jeep Dodge Ram, an authorized FCA dealer in new Port Richey, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ferman Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

459.    Plaintiff, Steven G. Parnitzke (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of Milwaukee, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July

487

28, 2016, from a Private Party in Madison, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to the Private Party to purchase the Subject Vehicle, whom touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance as per information from the original dealer. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

460.    Plaintiff, Joseph Dick-Griffith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida, residing in the City of Tampa, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2014, at Bob Frensley Chrysler Jeep Dodge, an authorized FCA dealer in Nashville, Tennessee. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bob Frensley Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

461.    Plaintiff, Lee & Inna Halpert (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Pennsylvania, residing in the City of Furlong, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016, at Route 1 Chrysler Dodge Jeep Ram of Lawrenceville, an authorized FCA dealer in

Lawrence Township, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Route 1 Chrysler Dodge Jeep Ram of Lawrenceville to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

462.    Plaintiff, Derick Gurney (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Ballstone Spa, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 10, 2014,

at Verger Chrysler Jeep Dodge, an authorized FCA dealer in Coos Bay, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Verger Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

463.    Plaintiff, David Kizzia (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona, residing in the City of Malvern, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 10, 2016, at Landers

Chrysler Dodge Jeep Ram, an authorized FCA dealer in Benton, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Landers Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

464.    Plaintiff, Sean Perryman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa, residing in the City of Des Moines, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 17, 2017

at Dewey Dodge Chrysler Jeep, an authorized FCA dealer in Ankeny, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dewey Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

465.    Plaintiff, Jose Mercado (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York, residing in the City of Westbury, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017

from private party in Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to private party to purchase the Subject Vehicle, the person touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

466.    Plaintiff, Debra Ann Guderjahn (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana, residing in the City of Westbury, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017 at RZ Motors, an authorized FCA dealer in Hettinger, North Dakota. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to RZ Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

467.    Plaintiff, Tyrone & April Malambri (for the purpose of this paragraph, "Plaintiff"), citizens of the State of North Carolina, residing in the City of North Carolina, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 13, 2018 at Burritt Motors, an authorized FCA dealer in Oswego, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Burritt Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

468.    Plaintiff, Dean Kohanyi (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania, residing in the City of Cranberry Township, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Beaver Country Dodge, an authorized FCA dealer in Bever Falls, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bever Country Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

469.    Plaintiff, Michael James Wolbert (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Dakota, residing in the City of Minot, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 9, 2016, at Minot Automotive Center, an authorized FCA dealer in Minot, North Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

497

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Minot Automotive Center to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

470.    Plaintiff, Steve E. & Sheryl Ridenour (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Oklahoma, residing in the City of Tahlequah, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 8, 2014,   at South Pointe Chrysler Dodge Jeep Ram, an authorized FCA dealer in Tulsa, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

498

representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to South Pointe Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

471.    Plaintiff, Mark Warren (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Blue Springs, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2014,  at Gladstone Dodge, an authorized FCA dealer in Gladstone, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

1    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

2    Subject Vehicles were represented as environmentally friendly, having low emissions and good

3    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

4    When Plaintiff went to Gladstone Dodge to purchase the Subject Vehicle, the sales associate touted

5    the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

6    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

7    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

8    could perform as advertised only by emitting NOx at levels that are greater than advertised and

9    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

10   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

11   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

12   would have paid less for it, had he/she known that it did not comply with emission standards; that

13   its emission treatment system was designed to de-activate during real-world driving conditions;

14   and that it could not achieve the advertised towing power, performance, and/or fuel economy

15   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

16   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

17   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

18         472.    Plaintiff, Ken Hauck (for the purpose of this paragraph, "Plaintiff"), a citizen of the

19   State of Missouri, residing in the City of Imperial, bought a 2015 Jeep Grand Cherokee

20   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015,

21   at Glendale Chrysler Jeep Dodge Ram, an authorized FCA dealer in St. Louis, Missouri. Plaintiff

22   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

23   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Glendale Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

473.    Plaintiff, Kent Gibbons (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa, residing in the City of Des Moines, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 10, 2015, at Granger Motors, an authorized FCA dealer in Granger, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Granger Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

474.    Plaintiff, Matthew Litterell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Yake, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 21, 2016, at Bob Moore Chrysler Dodge Jeep Ram of Tulsa, an authorized FCA dealer in Tulsa, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bob Moore Chrysler Dodge Jeep Ram of Tulsa to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

475.    Plaintiff, Glenn Stahl (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin, residing in the City of South Range, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Stevens Point Chrysler Dodge Jeep Ram, an authorized FCA dealer in Stevens Pointe, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally

friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Stevens Pointe Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

476.    Plaintiff, David Coop (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado, residing in the City of Parker, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 7, 2016, at Street Smart Auto Brokers, an authorized FCA dealer in Colorado Springs, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions

504

and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Street Smart Auto Brokers to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

477.    Plaintiff, Larry Brown (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Purdy, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2014, at Fletcher Superstore, an authorized FCA dealer in Joplin, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Fletcher Superstore to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

478.   Plaintiff, Jeff Mely (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana, residing in the City of Prairieville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 29, 2016, at Ralph Sellers, an authorized FCA dealer in Gonzales, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

Plaintiff went to Ralph Sellers to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

479.    Plaintiff, Brett Wayne (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky, residing in the City of Greenville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Watermark Toyota, an authorized FCA dealer in Madisonville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Watermark Toyota to purchase the Subject Vehicle, the sales associate

507

1    touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

2    These representations, along with the advertised fuel economy, were among the primary reasons

3    Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

4    Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

5    and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8    would have paid less for it, had he/she known that it did not comply with emission standards; that

9    its emission treatment system was designed to de-activate during real-world driving conditions;

10   and that it could not achieve the advertised towing power, performance, and/or fuel economy

11   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14         480.    Plaintiff, Michael & Deborah Eilert (for the purpose of this paragraph, "Plaintiff"),

15   citizens of the State of Kansas, residing in the City of Derby, bought a 2016 Dodge Ram 1500

16   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23,

17   2015, at Davis Moore, an authorized FCA dealer in Wichita, Kansas. Plaintiff decided to buy the

18   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

19   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

20   Subject Vehicles were represented as environmentally friendly, having low emissions and good

21   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

22   When Plaintiff went to David Moore to purchase the Subject Vehicle, the sales associate touted

23   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

481. Plaintiff, Diane & Larry Wilhelm (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Arkansas, residing in the City of Quitman, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 20, 2015, at Superior Automotive Group, an authorized FCA dealer in Conway, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Superior Automotive Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

1   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

2   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

3   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

4   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

5   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

6   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

7   standards; that its emission treatment system was designed to de-activate during real-world driving

8   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

9   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

10  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

11  or would have paid less for it, had Defendants not concealed the unauthorized emission control

12  devices.

13  482.   Plaintiff, Mark & Lucretta Kinder (for the purpose of this paragraph, "Plaintiff"),

14  citizens of the State of Missouri, residing in the City of Beulah, bought a 2015 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 2, 2017

16  at Bayird Dodge Chrysler Jeep Ram of West Plains, an authorized FCA dealer in West Plains,

17  Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

18  it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

19  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

20  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

21  about the Subject Vehicles.  When Plaintiff went to Bayird Dodge Chrysler Jeep Ram of West

22  Plains to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

23  attributes, including its fuel economy and performance. These representations, along with the

510

1    advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

2    the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

3    only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

4    Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

5    emission control devices designed to cheat emission tests and to deceive consumers and regulators.

6    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

7    known that it did not comply with emission standards; that its emission treatment system was

8    designed to de-activate during real-world driving conditions; and that it could not achieve the

9    advertised towing power, performance, and/or fuel economy without cheating emission tests.

10   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

11   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

12   not concealed the unauthorized emission control devices.

13        483.    Plaintiff, Heath Minyard (for the purpose of this paragraph, "Plaintiff"), a citizen

14   of the State of Arizona, residing in the City of Bentonville, bought a 2015 Dodge Ram 1500

15   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1,

16   2018 at Steve Landers Toyota NWA, an authorized FCA dealer in Rogers, Arizona. Plaintiff

17   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

19   website, on which the Subject Vehicles were represented as environmentally friendly, having low

20   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21   Subject Vehicles.  When Plaintiff went to Steve Landers Toyota NWA to purchase the Subject

22   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

23   economy and performance. These representations, along with the advertised fuel economy, were

1 among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

2 did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

3 that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

4 Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

5 cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

6 the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

7 emission standards; that its emission treatment system was designed to de-activate during real-

8 world driving conditions; and that it could not achieve the advertised towing power, performance,

9 and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

10 direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

11 Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

12 control devices.

13   484. Plaintiff, Nathan Townsend (for the purpose of this paragraph, "Plaintiff"), a

14 citizen of the State of Tennessee, residing in the City of Greenbrier, bought a 2015 Dodge Ram

15 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October

16 1, 2016, at Bill Boruff Chrysler Dodge Jeep Ram, an authorized FCA dealer in Sparta, Tennessee.

17 Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18 "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

19 website, on which the Subject Vehicles were represented as environmentally friendly, having low

20 emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21 Subject Vehicles.  When Plaintiff went to Bill Boruff Chrysler Dodge Jeep Ram to purchase the

22 Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

23 its fuel economy and performance. These representations, along with the advertised fuel economy,

1    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

2    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

3    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

4    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

5    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

6    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

7    comply with emission standards; that its emission treatment system was designed to de-activate

8    during real-world driving conditions; and that it could not achieve the advertised towing power,

9    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

10   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

11   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

12   unauthorized emission control devices.

13        485.    Plaintiff, Martin Mannion (for the purpose of this paragraph, "Plaintiff"), a citizen

14   of the State of Florida, residing in the City of Loxahatchee, bought a 2015 Dodge Ram 1500

15   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 5,

16   2016, at Arrigo Dodge Chrysler Jeep, an authorized FCA dealer in West Palm Beach, Florida.

17   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

19   website, on which the Subject Vehicles were represented as environmentally friendly, having low

20   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21   Subject Vehicles.  When Plaintiff went to Arrigo Dodge Chrysler Jeep to purchase the Subject

22   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

23   economy and performance. These representations, along with the advertised fuel economy, were

513

among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

486.    Plaintiff, Lisa Marie Murphy (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota, residing in the City of Mankato, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 21, 2014, at Woodhouse Chrysler Jeep Dodge Ram, an authorized FCA dealer in Blair, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Woodhouse Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy,

were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

487.    Plaintiff, Clinton Moxey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada, residing in the City of Reno, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 7, 2017 at Internet Auto Rent and Sales, an authorized FCA dealer in Reno, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Internet Auto Rent and Sales to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons

515

1   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

2   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

3   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6   would have paid less for it, had he/she known that it did not comply with emission standards; that

7   its emission treatment system was designed to de-activate during real-world driving conditions;

8   and that it could not achieve the advertised towing power, performance, and/or fuel economy

9   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12       488.    Plaintiff, Marko Seget (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of South Carolina, residing in the City of Woodruff, bought a 2015 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

15   2015, at Coppus Motors, an authorized FCA dealer in Tiffin, Ohio. Plaintiff decided to buy the

16   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18   Subject Vehicles were represented as environmentally friendly, having low emissions and good

19   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20   When Plaintiff went to Coppus Motors to purchase the Subject Vehicle, the sales associate touted

21   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

516

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

489.    Plaintiff, William Coleman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan, residing in the City of Belleville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015, at Telegraph Chrysler Dodge Jeep Ram, an authorized FCA dealer in Taylor, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Telegraph Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

517

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

490.   Plaintiff, Donald Harrell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina, residing in the City of Goldsboro, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2017 at Lee Chrysler Dodge, an authorized FCA dealer in Wilson, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lee Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

491.    Plaintiff, Kim Watson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Duncan, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 30, 2016, at Byford Auto Group, an authorized FCA dealer in Duncan, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Byford Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

1    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

2    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

3    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

4    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

5    standards; that its emission treatment system was designed to de-activate during real-world driving

6    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

7    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

8    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

9    or would have paid less for it, had Defendants not concealed the unauthorized emission control

10   devices.

11          492.    Plaintiff, Jamie A. Walker (for the purpose of this paragraph, "Plaintiff"), a citizen

12   of the State of Wisconsin, residing in the City of Milwaukee, bought a 2016 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 13, 2018

14   at Ewald Chrysler Jeep Dodge, an authorized FCA dealer in Franklin, Wisconsin. Plaintiff decided

15   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

16   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

17   which the Subject Vehicles were represented as environmentally friendly, having low emissions

18   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

19   Vehicles.  When Plaintiff went to Ewald Chrysler Jeep Dodge to purchase the Subject Vehicle, the

20   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

21   performance. These representations, along with the advertised fuel economy, were among the

22   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

23   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

493.    Plaintiff, Cale & Jami Duerstein (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Wisconsin, residing in the City of Muskego, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at Franklin Chrysler Dodge Jeep Ram, an authorized FCA dealer in Franklin, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Franklin Chrysler Dodge Jeep Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that

521

are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

494.    Plaintiff, Kevin Keefer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia, residing in the City of Alexandria, leased a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 31, 2016, at Lustine Chrysler Dodge, an authorized FCA dealer in Woodbridge, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lustine Chrysler Dodge to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

495. Plaintiff, Stephanie Cromley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey, residing in the City of Franklinville, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 18, 2014, at Vann Dodge Chrysler, LLC, an authorized FCA dealer in Vineland, new Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Vann Dodge Chrysler, LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

523

1    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

2    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

3    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

4    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

5    comply with emission standards; that its emission treatment system was designed to de-activate

6    during real-world driving conditions; and that it could not achieve the advertised towing power,

7    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

8    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

9    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

10   unauthorized emission control devices.

11          496.    Plaintiff, Matthew Dean (for the purpose of this paragraph, "Plaintiff"), a citizen

12   of the State of Washington, residing in the City of Tacoma, bought a 2014 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017 at

14   Seattle, WA Chrysler Dodge Jeep, an authorized FCA dealer in Seattle, Washington. Plaintiff

15   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

16   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

17   website, on which the Subject Vehicles were represented as environmentally friendly, having low

18   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

19   Subject Vehicles. When Plaintiff went to Seattle, WA Chrysler Dodge Jeep to purchase the Subject

20   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

21   economy and performance. These representations, along with the advertised fuel economy, were

22   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

23   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

497.    Plaintiff, Amy & David Campbell (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Minnesota, residing in the City of Saint Michael, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015 at Bernard's Northtown, an authorized FCA dealer in New Richmond, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bernard's Northtown to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

498.     Plaintiff, Alvin McCoy (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho, residing in the City of Stites, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Kendall Dodge N/K/A Roger's Motors, an authorized FCA dealer in Lewiston, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Kendall Dodge N/K/A Roger's Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

499.    Plaintiff, Robert Morris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Utah, residing in the City of Sandy, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 30, 2015, at Larry H. Miller Chrysler Jeep Dodge Ram, an authorized FCA dealer in West Boutiful, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larry H. Miller Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

500.    Plaintiff, Robert Morris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Utah, residing in the City of Sandy, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 15, 2016, at Larry H. Miller Chrysler Jeep Dodge Ram, an authorized FCA dealer in West Bountiful, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

528

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

501.    Plaintiff, Robert Morris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Utah, residing in the City of Sandy, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 15, 2014, at Larry H. Miller Chrysler Jeep Dodge Ram, an authorized FCA dealer in Bountiful, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larry H. Miller Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

502.    Plaintiff, Kevin Ruehle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of new Jersey, residing in the City of Butler, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016, at Ramsey Chrysler Jeep Dodge Ram, an authorized FCA dealer in Ramsey, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ramsey Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

503.    Plaintiff, Kevin Crew (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Dothan, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2015,  at Dothan Chrysler Dodge Jeep Ram, an authorized FCA dealer in Dothan, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Donthan Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

504.    Plaintiff, John Corbin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Opelika, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 2, 2017 at T R Motor Co., an authorized FCA dealer in Opelina, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to T R Motor Co. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

1    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4    would have paid less for it, had he/she known that it did not comply with emission standards; that

5    its emission treatment system was designed to de-activate during real-world driving conditions;

6    and that it could not achieve the advertised towing power, performance, and/or fuel economy

7    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10        505.    Plaintiff, Robert Mayer (for the purpose of this paragraph, "Plaintiff"), a citizen of

11   the State of Alabama, residing in the City of Springfield, bought a 2015 Dodge Ram 1500

12   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 12, 2015,

13   at Champion Chrysler Dodge Jeep Ram, an authorized FCA dealer in Gulfport, Mississippi.

14   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16   website, on which the Subject Vehicles were represented as environmentally friendly, having low

17   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18   Subject Vehicles.  When Plaintiff went to Champion Chrysler Dodge Jeep Ram to purchase the

19   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

20   its fuel economy and performance. These representations, along with the advertised fuel economy,

21   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

22   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

23   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

506.    Plaintiff, Robert Southern (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Oneonta, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Team One Chrysler Dodge Jeep Ram of Gadsden, an authorized FCA dealer in Gadsden, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Team One Chrysler Dodge Jeep Ram of Gadsden to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

1    Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

2    unauthorized emission control devices designed to cheat emission tests and to deceive consumers

3    and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

4    for it, had he/she known that it did not comply with emission standards; that its emission treatment

5    system was designed to de-activate during real-world driving conditions; and that it could not

6    achieve the advertised towing power, performance, and/or fuel economy without cheating

7    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

8    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

9    less for it, had Defendants not concealed the unauthorized emission control devices.

10          507.    Plaintiff, Micah Hill (for the purpose of this paragraph, "Plaintiff"), a citizen of the

11   State of Alabama, residing in the City of Tuscaloosa, bought a 2014 Dodge Ram 1500 EcoDiesel®

12   (for the purpose of this paragraph, the "Subject Vehicle") on or about October 15, 2016, at Don

13   Jackson, an authorized FCA dealer in Union City, Georgia. Plaintiff decided to buy the Subject

14   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

15   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

16   Vehicles were represented as environmentally friendly, having low emissions and good fuel

17   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

18   Plaintiff went to Don Jackson to purchase the Subject Vehicle, the sales associate touted the

19   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22   could perform as advertised only by emitting NOx at levels that are greater than advertised and

23   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3  would have paid less for it, had he/she known that it did not comply with emission standards; that

4  its emission treatment system was designed to de-activate during real-world driving conditions;

5  and that it could not achieve the advertised towing power, performance, and/or fuel economy

6  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9        508.    Plaintiff, James Washington (for the purpose of this paragraph, "Plaintiff"), a

10  citizen of the State of Alabama, residing in the City of Cottondale, bought a 2015 Dodge Ram

11  1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1,

12  2015, at Academy Chrysler Dodge Jeep Ram, an authorized FCA dealer in Bessemer, Alabama.

13  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

14  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

15  website, on which the Subject Vehicles were represented as environmentally friendly, having low

16  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

17  Subject Vehicles.  When Plaintiff went to Academy Chrysler Dodge Jeep Ram to purchase the

18  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

19  its fuel economy and performance. These representations, along with the advertised fuel economy,

20  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

21  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

22  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

23  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

509.    Plaintiff, Quinn Breland (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Theodore, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2018 at Mullinax Ford of Mobile, an authorized FCA dealer in Mobile, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mullinax Ford of Mobile to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission

1    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

2    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

3    standards; that its emission treatment system was designed to de-activate during real-world driving

4    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

5    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

6    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

7    or would have paid less for it, had Defendants not concealed the unauthorized emission control

8    devices.

9        510.    Plaintiff, Mike Shelton (for the purpose of this paragraph, "Plaintiff"), a citizen of

10   the State of Alabama, residing in the City of Troy, bought a 2014 Jeep Grand Cherokee

11   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 12,

12   2015, at Rocky Williams Premier Budget Cars and Trucks, an authorized FCA dealer in Lebanon,

13   Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

14   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

15   visiting the Jeep website, on which the Subject Vehicles were represented as environmentally

16   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

17   commercials about the Subject Vehicles.  When Plaintiff went to Rocky Williams Premier Budget

18   Cars and Trucks to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

19   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

20   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

21   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

22   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

23   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

538

unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

511. Plaintiff, Greg Cain (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Bessemer, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 17, 2016, at Hendrick Dodge Ram, an authorized FCA dealer in Cary, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Hendrick Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

512.    Plaintiff, Randal Stephens (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama, residing in the City of Waterloo, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016, at University Chrysler Dodge Jeep Ram, an authorized FCA dealer in Florence, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to University Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

1    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

2    comply with emission standards; that its emission treatment system was designed to de-activate

3    during real-world driving conditions; and that it could not achieve the advertised towing power,

4    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

5    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

6    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

7    unauthorized emission control devices.

8        513.    Plaintiff, Alonzo Thomas Stone (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of Florida, residing in the City of Pensacola, bought a 2016 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2016,

11   at Peach Ford, an authorized FCA dealer in Brewton, Alabama. Plaintiff decided to buy the Subject

12   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

13   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

14   Vehicles were represented as environmentally friendly, having low emissions and good fuel

15   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

16   Plaintiff went to Peach Ford to purchase the Subject Vehicle, the sales associate touted the Subject

17   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

18   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

19   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

20   could perform as advertised only by emitting NOx at levels that are greater than advertised and

21   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1   would have paid less for it, had he/she known that it did not comply with emission standards; that

2   its emission treatment system was designed to de-activate during real-world driving conditions;

3   and that it could not achieve the advertised towing power, performance, and/or fuel economy

4   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7        514.    Plaintiff, Tyler Bridgeman (for the purpose of this paragraph, "Plaintiff"), a citizen

8   of the State of Alabama, residing in the City of Haleyville, bought a 2016 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 29, 2018

10   at Williams Subaru of Charlotte, an authorized FCA dealer in Charlotte, North Carolina. Plaintiff

11   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Williams Subaru of Charlotte to purchase the Subject

16   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17   economy and performance. These representations, along with the advertised fuel economy, were

18   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

542

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

515.    Plaintiff, Jimmy Yeager (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi, residing in the City of Cleveland, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2014, at James Ceranti Motors Inc., an authorized FCA dealer in Greenville, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to James Ceranti Motors Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

516.    Plaintiff, Scott Langley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi, residing in the City of Bogue Chitto, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2017 at Rainbow Chrysler Dodge Jeep Ram of McComb, LLC, an authorized FCA dealer in McComb, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Rainbow Chrysler Dodge Jeep Ram McComb, LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

544

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7        517.    Plaintiff, Chris Breaux (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Tennessee, residing in the City of Kiln, bought a 2015 Dodge Ram 1500 EcoDiesel®

9    (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2018 at

10   Autonation Chrysler Dodge Jeep Ram Katy an authorized FCA dealer in Katy, Tennessee. Plaintiff

11   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Autonation Chrysler Dodge Jeep Ram Katy to purchase

16   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

17   including its fuel economy and performance. These representations, along with the advertised fuel

18   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

19   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

20   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

21   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

22   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

23   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

518.    Plaintiffs, Curtis and Debbie McDaniel (for the purpose of this paragraph, "Plaintiffs"), citizens of the State of Mississippi, residing in the City of Gautier, bought a 2015 Dodge Ram1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Champion Chrysler Dodge Jeep Ram, an authorized FCA dealer in Gulfport, Mississippi. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles. When Plaintiffs went to Champion Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were Plaintiffs aware that Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

519.     Plaintiff, Tammy Frazier (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi, residing in the City of Jackson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at Mac Haik Jackson Chrysler Dodge Jeep Ram, an authorized FCA dealer in Jackson, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mac Haik Jackson Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

547

1   that it did not comply with emission standards; that its emission treatment system was designed to

2   de-activate during real-world driving conditions; and that it could not achieve the advertised

3   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

4   suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

5   not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

6   concealed the unauthorized emission control devices.

7           520.    Plaintiff, Bobby Wallace (for the purpose of this paragraph, "Plaintiff"), a citizen

8   of the State of Mississippi, residing in the City of Fulton, bought a 2014 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 16,

10  2017 at Carlock Chrysler Dodge Ram Jeep, an authorized FCA dealer in Saltillo, Mississippi.

11  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13  website, on which the Subject Vehicles were represented as environmentally friendly, having low

14  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15  Subject Vehicles.  When Plaintiff went to Carlock Chrysler Dodge Ram Jeep to purchase the

16  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

17  its fuel economy and performance. These representations, along with the advertised fuel economy,

18  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

19  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

20  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

21  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

22  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

23  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

521.     Plaintiff, Edward Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri, residing in the City of Montgomery, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 23, 2016, at Maczuk Chrysler Inc. d/b/a Scheider Dodge Chrysler Jeep, an authorized FCA dealer in Hermann, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Maczuk Chrysler Inc. d/b/a Scheider Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

522.    Plaintiff, Clifton Bailey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi, residing in the City of Webb, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 19, 2017 at Landers Chrysler Dodge Jeep, LLC, an authorized FCA dealer in Southaven, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Landers Chrysler Dodge Jeep, LLC. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

523.    Plaintiff, Roger T. Ingram (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi, residing in the City of West, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 13, 2015, at Sunset Chrysler, an authorized FCA dealer in Grenada, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Sunset Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

551

1   would have paid less for it, had he/she known that it did not comply with emission standards; that

2   its emission treatment system was designed to de-activate during real-world driving conditions;

3   and that it could not achieve the advertised towing power, performance, and/or fuel economy

4   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7           524.    Plaintiff, Greg Gaskins (for the purpose of this paragraph, "Plaintiff"), a citizen of

8   the State of Tennessee, residing in the City of Newbern, bought a 2014 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1,

10  2018 at Homer – Skelton Ford, an authorized FCA dealer in Olive Branch, Mississippi. Plaintiff

11  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13  website, on which the Subject Vehicles were represented as environmentally friendly, having low

14  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15  Subject Vehicles.  When Plaintiff went to Homer – Skelton Ford to purchase the Subject Vehicle,

16  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

17  and performance. These representations, along with the advertised fuel economy, were among the

18  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1   standards; that its emission treatment system was designed to de-activate during real-world driving

2   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5   or would have paid less for it, had Defendants not concealed the unauthorized emission control

6   devices.

7       525.    Plaintiff, Christopher Bond (for the purpose of this paragraph, "Plaintiff"), a citizen

8   of the State of Mississippi, residing in the City of Lucedale, bought a 2015 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 23, 2018

10  at Hill Kelly Dodge Chrysler Jeep Ram, an authorized FCA dealer in Pensacola, Florida. Plaintiff

11  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13  website, on which the Subject Vehicles were represented as environmentally friendly, having low

14  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15  Subject Vehicles.  When Plaintiff went to Hill Kelly Dodge Chrysler Jeep Ram to purchase the

16  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

17  its fuel economy and performance. These representations, along with the advertised fuel economy,

18  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

19  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

20  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

21  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

22  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

23  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

553

1  comply with emission standards; that its emission treatment system was designed to de-activate

2  during real-world driving conditions; and that it could not achieve the advertised towing power,

3  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

4  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

5  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

6  unauthorized emission control devices.

7       526.    Plaintiff, Beaux Martin (for the purpose of this paragraph, "Plaintiff"), a citizen of

8  the State of Louisiana, residing in the City of Monroe, bought a 2014 Jeep Grand Cherokee

9  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2018

10  at George Carr Buick, an authorized FCA dealer in Vicksburg, Mississippi. Plaintiff decided to

11  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

12  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

13  Subject Vehicles were represented as environmentally friendly, having low emissions and good

14  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15  When Plaintiff went to George Carr Buick to purchase the Subject Vehicle, the sales associate

16  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17  These representations, along with the advertised fuel economy, were among the primary reasons

18  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23  would have paid less for it, had he/she known that it did not comply with emission standards; that

554

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6          527.    Plaintiff, Jeffrey Cook (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    the State of West Virginia, residing in the City of Pinch, bought a 2015 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 16,

9    2015, at Auto World of Big Stone Gap, an authorized FCA dealer in Big Stone Gap, Virginia.

10   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to Auto World of Big Stone Gap to purchase the Subject

15   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

16   economy and performance. These representations, along with the advertised fuel economy, were

17   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

18   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

19   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

20   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

21   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

22   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

23   emission standards; that its emission treatment system was designed to de-activate during real-

555

world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

528.   Plaintiff, Gregory Burnette, D.O. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia, residing in the City of Elkview, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 28, 2015, at Dutch Miller, an authorized FCA dealer in Charleston, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dutch Miller to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving

556

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

529.    Plaintiff, Thomas Taylor (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia, residing in the City of Charleston, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 29. 2014 at Dutch Miller Dodge, an authorized FCA dealer in South Charleston, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dutch Miller Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving

557

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

530.    Plaintiff, Dustin Louden (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia, residing in the City of Clarksburg, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Country Club Chrysler Dodge Jeep Ram, an authorized FCA dealer in Clarksburg, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Country Club Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was

558

1   designed to de-activate during real-world driving conditions; and that it could not achieve the

2   advertised towing power, performance, and/or fuel economy without cheating emission tests.

3   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

4   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

5   not concealed the unauthorized emission control devices.

6        531.    Plaintiff, Jerry Barnett (for the purpose of this paragraph, "Plaintiff"), a citizen of

7   the State of West Virginia, residing in the City of Elkview, bought a 2015 Dodge Ram 1500

8   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 14,

9   2016, at Kindle Chrysler Jeep Dodge, an authorized FCA dealer in Cape May Court House, New

10  Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

11  was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

12  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

13  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

14  about the Subject Vehicles.  When Plaintiff went to Kindle Chrysler Jeep Dodge to purchase the

15  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

16  its fuel economy and performance. These representations, along with the advertised fuel economy,

17  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

18  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

19  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

20  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

21  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

22  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

23  comply with emission standards; that its emission treatment system was designed to de-activate

559

during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

532.     Plaintiff, Brianna Clay (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia, residing in the City of Danese, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 22, 2017 at Sheets Chrysler Jeep Dodge Ram, an authorized FCA dealer in Beckley, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sheets Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-

world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

533.    Plaintiff, Roger Workman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia, residing in the City of West Virginia, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 15, 2015, at Dutch Miller of Charleston, an authorized FCA dealer in Charleston, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dutch Miller of Charleston to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate

561

during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

534.    Plaintiff, Sage Seifert (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia, residing in the City of Fairmont, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 6, 2015, at Earth Dodge, an authorized FCA dealer in White Hall, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Earth Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5         535.    Plaintiff, Brandon Saddler (for the purpose of this paragraph, "Plaintiff"), a citizen

6    of the State of West Virginia, residing in the City of Princeton, bought a 2014 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 4, 2017 at

8    Ramey Chevrolet, an authorized FCA dealer in North Tazewell, Virginia. Plaintiff decided to buy

9    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Ramney Chevrolet to purchase the Subject Vehicle, the sales associate

14   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

15   These representations, along with the advertised fuel economy, were among the primary reasons

16   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

17   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

18   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4          536.    Plaintiff, Mike Rumney (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of West Virginia, residing in the City of Fairmont, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 11, 2018

7    at Jim Shorkey Family Auto Group, an authorized FCA dealer in Irwin, Pennsylvania. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Jim Shorkey Family Auto Group to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4         537.    Plaintiffs, Jody L. & Cindy L. Danielson (for the purpose of this paragraph,

5    "Plaintiffs"), citizens of the State of West Virginia, residing in the City of Saint Mary's, bought a

6    2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle")

7    on or about April 22, 2014, at Astro Buick GMC, an authorized FCA dealer in White Hall, West

8    Virginia. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that

9    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting

10   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

11   having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials

12   about the Subject Vehicles.  When Plaintiffs went to Astro Buick GMC to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiffs

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor were Plaintiffs aware that Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as

565

1   a direct and proximate result of Defendants' misconduct, and would not have purchased the

2   Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized

3   emission control devices.

4      538.   Plaintiff, Emily K. Blankenship (for the purpose of this paragraph, "Plaintiff"), a

5   citizen of the State of West Virginia, residing in the City of Birch River, bought a 2014 Jeep Grand

6   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June

7   3, 2017 at Lambert Buick-GMC, Inc., an authorized FCA dealer in Cuyahoga Falls, Ohio. Plaintiff

8   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

10  website, on which the Subject Vehicles were represented as environmentally friendly, having low

11  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12  Subject Vehicles.  When Plaintiff went to Lambert Buick-GMC, Inc. to purchase the Subject

13  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14  economy and performance. These representations, along with the advertised fuel economy, were

15  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21  emission standards; that its emission treatment system was designed to de-activate during real-

22  world driving conditions; and that it could not achieve the advertised towing power, performance,

23  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4    539.    Plaintiff, Jackie Lynn Clark, Jr. (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of West Virginia, residing in the City of Albright, bought a 2015 Dodge Ram

6    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1,

7    2015, at Urse Chrysler Dodge Jeep, an authorized FCA dealer in White Hall, West Virginia.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Urse Chrysler Dodge Jeep to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

567

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4          540.    Plaintiff, Roy Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the

5    State of West Virginia, residing in the City of Kingwood, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016,

7    at Victory Dodge Jeep Ram, an authorized FCA dealer in Kingwood, West Virginia. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Victory Dodge Jeep Ram to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4          541.    Plaintiff, James Slone (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of West Virginia, residing in the City of Huntington, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 14,

7    2016, at Kernersville Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kernersville, West

8    Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

9    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

10   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

11   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

12   about the Subject Vehicles.  When Plaintiff went to Kernersville Chrysler Dodge Jeep Ram to

13   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

14   attributes, including its fuel economy and performance. These representations, along with the

15   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

16   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

17   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

18   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

19   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

20   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

21   known that it did not comply with emission standards; that its emission treatment system was

22   designed to de-activate during real-world driving conditions; and that it could not achieve the

23   advertised towing power, performance, and/or fuel economy without cheating emission tests.

569

1    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

2    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

3    not concealed the unauthorized emission control devices.

4          542.    Plaintiff, Jason Royer (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of Wyoming, residing in the City of Cheyenne, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29,

7    2014, at Cowboy Dodge, an authorized FCA dealer in Cheyenne, Wyoming. Plaintiff decided to

8    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Cowboy Dodge to purchase the Subject Vehicle, the sales associate touted

13   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        543.     Plaintiff, Beverly Gayle VanArkel (for the purpose of this paragraph, "Plaintiff"),

4   a citizen of the State of Wyoming, residing in the City of Hot Springs, bought a 2015 Jeep Grand

5   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6   September 20. 2015 at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff

7   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

9   website, on which the Subject Vehicles were represented as environmentally friendly, having low

10  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11  Subject Vehicles. When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the

12  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13  performance. These representations, along with the advertised fuel economy, were among the

14  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20  standards; that its emission treatment system was designed to de-activate during real-world driving

21  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

1   or would have paid less for it, had Defendants not concealed the unauthorized emission control

2   devices.

3        544.    Plaintiff, James B. Valliere (for the purpose of this paragraph, "Plaintiff"), a citizen

4   of the State of Wyoming, residing in the City of Rawlins, bought a 2015 Dodge Ram 1500

5   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1,

6   2015, at Dallin Motors, an authorized FCA dealer in Rawlins, Wyoming. Plaintiff decided to buy

7   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

8   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9   Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Dallin Motors to purchase the Subject Vehicle, the sales associate touted

12   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15   could perform as advertised only by emitting NOx at levels that are greater than advertised and

16   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2         545.    Plaintiff, Anthony Knezovich (for the purpose of this paragraph, "Plaintiff"), a

3    citizen of the State of Wyoming, residing in the City of Cheyenne, bought a 2015 Dodge Ram

4    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November

5    3, 2015, at Fremont Motor Casper, an authorized FCA dealer in Casper, Wyoming. Plaintiff

6    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Fremont Motor Casper to purchase the Subject Vehicle,

11   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

12   and performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

573

1    devices.

2        546.    Plaintiff, Rick Stone (for the purpose of this paragraph, "Plaintiff"), a citizen of the

3    State of Wyoming, residing in the City of Lander, bought a 2016 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about April 21, 2017 at Mountain

5    Home Auto Ranch, an authorized FCA dealer in Mountain Home, Idaho. Plaintiff decided to buy

6    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Mountain Home Auto Ranch to purchase the Subject Vehicle, the sales

11   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

12   performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

574

1 devices.

2     547.    Plaintiff, Rick Stone (for the purpose of this paragraph, "Plaintiff"), a citizen of the

3 State of Wyoming, residing in the City of Lander, bought a 2015 Dodge Ram 1500 EcoDiesel®

4 (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2015, at Peterson

5 Dodge Chrysler Jeep Ram, an authorized FCA dealer in Nampa, Idaho. Plaintiff decided to buy

6 the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7 reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8 Subject Vehicles were represented as environmentally friendly, having low emissions and good

9 fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10 When Plaintiff went to Peterson Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the

11 sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

12 performance. These representations, along with the advertised fuel economy, were among the

13 primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14 that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15 than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16 equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17 tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18 Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19 standards; that its emission treatment system was designed to de-activate during real-world driving

20 conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21 economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22 proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23 or would have paid less for it, had Defendants not concealed the unauthorized emission control

1    devices.

2        548.    Plaintiff, Calvin Taylor (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Wyoming, residing in the City of Gillette, bought a 2015 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 28, 2015, at

5    Fremont Motor Casper, an authorized FCA dealer in Casper, Wyoming. Plaintiff decided to buy

6    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Freemont Motor Casper to purchase the Subject Vehicle, the sales associate

11   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

12   These representations, along with the advertised fuel economy, were among the primary reasons

13   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

14   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

15   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

                                                  576

1    549.    Plaintiffs, Wayne and Becky Bennett (for the purpose of this paragraph,

2    "Plaintiffs"), a citizen of the State of Wyoming, residing in the City of Lyman, bought a 2014

3    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

4    about March 1, 2014, at Fremont Motor Rock Springs Inc., an authorized FCA dealer in Rock

5    Springs, Wyoming. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's

6    representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

7    Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as

8    environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall

9    seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Fremont Motor

10   Rock Springs Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

11   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

12   with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject

13   Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform

14   as advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

15   Nor were Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and

16   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

17   and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less

18   for it, had he/she known that it did not comply with emission standards; that its emission treatment

19   system was designed to de-activate during real-world driving conditions; and that it could not

20   achieve the advertised towing power, performance, and/or fuel economy without cheating

21   emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of

22   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

23   less for it, had Defendants not concealed the unauthorized emission control devices.

577

550.    Plaintiff, Allen Wallis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma, residing in the City of Broken Arrow, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 25, 2018 at Henryetta Ford, an authorized FCA dealer in Henryette, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Henryette Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

551.    Plaintiff, Jack Pudzis (for the purpose of this paragraph, "Plaintiff"), a citizen of

578

the State of Illinois, residing in the City of Algonquin, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 17, 2015, at Feeney Dodge Chrysler, an authorized FCA dealer in St. Elgin, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Feeney Dodge Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

552.    Plaintiff, Roland Marsh (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of new Jersey, residing in the City of Mays Landing, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2014, at Cherry Hill Dodge, an authorized FCA dealer in West Cherry Hill, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Cherry Hill Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

553.    Plaintiff, Dawn & James McDonald (for the purpose of this paragraph, "Plaintiff"),

1    citizens of the State of Missouri, residing in the City of Adrian, bought a 2015 Dodge Ram 1500

2    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 4, 2018

3    at Jeremy Franklin Mitsubishi, an authorized FCA dealer in Kansas City, Missouri. Plaintiff

4    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

5    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

6    website, on which the Subject Vehicles were represented as environmentally friendly, having low

7    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

8    Subject Vehicles.  When Plaintiff went to Jeremy Franklin Mitsubishi to purchase the Subject

9    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

10   economy and performance. These representations, along with the advertised fuel economy, were

11   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

12   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

13   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

14   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

15   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

16   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

17   emission standards; that its emission treatment system was designed to de-activate during real-

18   world driving conditions; and that it could not achieve the advertised towing power, performance,

19   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

20   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

21   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

22   control devices.

23        554.    Plaintiff, Christopher Rivera (for the purpose of this paragraph, "Plaintiff"), a

581

citizen of the State of Wisconsin, residing in the City of Broken Arrow, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 22, 2014, at Rudig Jensen Ford Chrysler Dodge Jeep Ram, an authorized FCA dealer in New Lisbon, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Rudig Jensen Ford Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

555.    Plaintiff, Kent Hall (for the purpose of this paragraph, "Plaintiff"), a citizen of the

582

State of Tennessee, residing in the City of Soddy Daisy, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Russell Barnett Chrysler Dodge Jeep Inc., an authorized FCA dealer in Winchester, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Russell Barnett Chrysler Dodge Jeep Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

556.    Plaintiff, Marcus Aaron Hemsley (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Maryland residing in the City of Pomfret, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 16, 2018, at Healey Brothers, an authorized FCA dealer in Beacon, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Healey Brothers to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

557.    Plaintiff, Richard & Carol Huff (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Idaho residing in the City of Rigby, bought a 2014 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Hatch Motors, an authorized FCA dealer in Show Low, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to ** to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

558.    Plaintiff, Kyle M. Griffey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Scottsdale residing in the City of Arizona, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2015,

at Airpark Chrysler Jeep, an authorized FCA dealer in Scottsdale, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Airpark Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

559.    Plaintiff, Calvin Burrus, III (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Buxton, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29, 2015, at Hendrick Dodge, an authorized FCA dealer in Cary, North Carolina. Plaintiff decided to

buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Hendrick Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

560. Plaintiff, Scott Banks (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada residing in the City of Spring Creek, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Elko Motor Company, an authorized FCA dealer in Elko, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Elko Motor to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

561.    Plaintiff, Michael Shaak & Susie Patterson (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Idaho residing in the City of Caldwell, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2018, at Larry H. Miller Subaru Boise, an authorized FCA dealer in Boise, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larry H. Miller Subaru Boise to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

562.    Plaintiff, Frank Fernandez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Johnstown, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 11, 2018, at Finger Lakes Auto Group, LLC, an authorized FCA dealer in Seneca, Falls. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Finger Lakes Auto Group, LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

563.    Plaintiff, Joshua Wilson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Belton, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 12, 2014, at Landmark South Dodge Chrysler Jeep Ram, an authorized FCA dealer in Belton, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Landmark South Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

564.    Plaintiff, LaVerne Brace (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Cattaraugus, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 24, 2015, at Dave Warren Chrysler Dodge Jeep Ram, an authorized FCA dealer in Jamestown, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dave Warren Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

565.    Plaintiff, Dennis Begin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Rhode Island residing in the City of Riverside, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 16, 2015, at Elmwood Dodge, an authorized FCA dealer in East Providence, Rhode Island. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

592

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Elmwood Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

566.     Plaintiff, John & Shirley Hecker (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Ohio residing in the City of New Bloomington, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 31, 2016, at Mathews Dodge Chrysler Jeep Inc., an authorized FCA dealer in Marion, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

593

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mathews Dodge Chrysler Jeep Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

567.    Plaintiff, Donald Raymond Dixon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of Bellevue, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2017, at Turpin Dodge, an authorized FCA dealer in Dubuque, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Turpin Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

568. Plaintiff, Ricardo C. & Michelle Calla (for the purpose of this paragraph, "Plaintiff"), citizens of the State of Pennsylvania residing in the City of Halifax, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 26, 2016, at Forrer Chrysler Dodge Ram Jeep, an authorized FCA dealer in Duncannon, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Forrer Chrysler Dodge Ram Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

569.    Plaintiff, Travis Ray Burwell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Clarksville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 13, 2017, at Ron Lewis Chrysler Dodge Jeep Ram Pleasant Hills, an authorized FCA dealer in Pittsburgh, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ron Lewis Chrysler Dodge Jeep Ram Pleasant Hills to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

570. Plaintiff, Kasey & Ashley Knutson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Larkspur, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 29, 2016, at BerkenKotter Motors, an authorized FCA dealer in Castle Rock, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to BerkenKotter Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

571.     Plaintiff, Mark Edward Harrell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Navarre, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 2, 2017, at Hill Kelly Dodge, Inc., an authorized FCA dealer in Pensacola, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles.  When Plaintiff went to Hill Kelly Dodge, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

572.    Plaintiff, Colton Warren Shannon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Central Point, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 17, 2017, at Lithia Chrysler Jeep Dodge Medford, an authorized FCA dealer in Medford, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

599

Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge Medford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

573.    Plaintiff, Steven Leonard (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota residing in the City of Kasota, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2014, at Lagers Chrysler World, an authorized FCA dealer in Mankato, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles. When Plaintiff went to Lagers Chrysler World to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

574.    Plaintiff, Leslie Swartz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska residing in the City of Fullerton, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 22, 2017, at Car Stop, an authorized FCA dealer in Omaha, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

601

When Plaintiff went to Car Stop to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

575.    Plaintiff, Nicholas F. Baglio (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Monroe, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 21, 2017, at Pioneer Truck Sales, Inc., an authorized FCA dealer in East Avon, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Pioneer Truck Sales, Inc. to purchase the Subject

1    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

2    economy and performance. These representations, along with the advertised fuel economy, were

3    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

4    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

5    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

6    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

7    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

8    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

9    emission standards; that its emission treatment system was designed to de-activate during real-

10   world driving conditions; and that it could not achieve the advertised towing power, performance,

11   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

12   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

13   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

14   control devices.

15        576.    Plaintiff, Ryan Allred (for the purpose of this paragraph, "Plaintiff"), a citizen of

16   the State of Arkansas residing in the City of Searcy, bought a 2016 Dodge Ram 1500 EcoDiesel®

17   (for the purpose of this paragraph, the "Subject Vehicle") on or about October 13, 2018, at Red

18   River Dodge, an authorized FCA dealer in Heber Springs, Arkansas. Plaintiff decided to buy the

19   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

20   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

21   Subject Vehicles were represented as environmentally friendly, having low emissions and good

22   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

23   When Plaintiff went to Red River Dodge to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

577.    Plaintiff, Zachary M. Marsico (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey residing in the City of Absecon, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15, 2018, at David Honda, an authorized FCA dealer in Burlington, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Davis Honda to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

578.    Plaintiff, Pat Breitbach (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana residing in the City of Circle, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Deluxe Motors, an authorized FCA dealer in Miles City, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Deluxe Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12        579.    Plaintiff, Leslie Swartz (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of Nebraska residing in the City of Fullterton, bought a 2015 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 14, 2018,

15   at Harvest Auto & Machinery, an authorized FCA dealer in Wahoo, Nebraska. Plaintiff decided to

16   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

17   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18   Subject Vehicles were represented as environmentally friendly, having low emissions and good

19   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20   When Plaintiff went to Harvest Auto & Machinery to purchase the Subject Vehicle, the sales

21   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22   performance. These representations, along with the advertised fuel economy, were among the

23   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

580.    Plaintiff, David K. Schoengart (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky residing in the City of LaGrange, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2016, at Craig and Landreth Chrysler Dodge Jeep Ram, an authorized FCA dealer in Crestwood, Kentucky Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Craig and Landreth Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

581.     Plaintiff, Jason Sillivan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Fuquay Varina, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 16, 2016, at Allen Mello Dodge, an authorized FCA dealer in Nashua, New Hampshire. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Allen Mello Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

582.    Plaintiff, Thang Nguyen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Surprise, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 12, 2018, at Bill Luke Chrysler Jeep & Dodge Inc., an authorized FCA dealer in Phoenix, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bill Luke Chrysler Jeep & Dodge Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

1   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6   comply with emission standards; that its emission treatment system was designed to de-activate

7   during real-world driving conditions; and that it could not achieve the advertised towing power,

8   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11  unauthorized emission control devices.

12          583.    Plaintiff, Zachary Gordon (for the purpose of this paragraph, "Plaintiff"), a citizen

13  of the State of Ohio residing in the City of Urbana, bought a 2016 Dodge Ram 1500 EcoDiesel®

14  (for the purpose of this paragraph, the "Subject Vehicle") on or about May 14, 2018, at

15  Nissan/North, an authorized FCA dealer in Worthington, Ohio. Plaintiff decided to buy the Subject

16  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

17  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

18  Vehicles were represented as environmentally friendly, having low emissions and good fuel

19  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When

20  Plaintiff went to Nissan/North to purchase the Subject Vehicle, the sales associate touted the

21  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

584.    Plaintiff, Joe R. Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Dothan, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2015, at Cecil Graves GM/Dodge/Chrysler, an authorized FCA dealer in Francisville, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Cecil Graves GM/Dodge/Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

585.    Plaintiff, Jeffrey Stracensky (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Tallmadge, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 17, 2018, at RPM Auto Sales, an authorized FCA dealer in Mogadore, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to RPM Auto Sales to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

586.     Plaintiff, David Irwin Antokal (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia residing in the City of Midlothian, leased a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 21, 2016, at Whitten Brothers, Inc., an authorized FCA dealer in Richmond, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Whitten Brothers, Inc. to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

587.    Plaintiff, Terry Hargis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Gilbert, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2018, at Bill Luke, an authorized FCA dealer in Phoenix, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bill Luke to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

614

1  emission control devices designed to cheat emission tests and to deceive consumers and regulators.

2  Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

3  known that it did not comply with emission standards; that its emission treatment system was

4  designed to de-activate during real-world driving conditions; and that it could not achieve the

5  advertised towing power, performance, and/or fuel economy without cheating emission tests.

6  Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

7  and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

8  not concealed the unauthorized emission control devices.

9  588.   Plaintiff, Andrew Davis (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Maryland residing in the City of Lutherville, bought a 2014 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 21,

12  2014, at Don White's Timonium Chrysler Dodge Jeep Ram, an authorized FCA dealer in

13  Cockeysville, Maryland. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

14  representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

15  Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

16  environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

17  seeing television commercials about the Subject Vehicles.  When Plaintiff went to Don White's

18  Timonium Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted

19  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22  could perform as advertised only by emitting NOx at levels that are greater than advertised and

23  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3    would have paid less for it, had he/she known that it did not comply with emission standards; that

4    its emission treatment system was designed to de-activate during real-world driving conditions;

5    and that it could not achieve the advertised towing power, performance, and/or fuel economy

6    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9           589.    Plaintiff, Andrew Davis (for the purpose of this paragraph, "Plaintiff"), a citizen of

10   the State of Maryland residing in the City of Baltimore, bought a 2016 Dodge Ram 1500

11   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 25, 2016,

12   at Len Stoler Chrysler Dodge and Jeep, an authorized FCA dealer in Westminister, Maryland.

13   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

14   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

15   website, on which the Subject Vehicles were represented as environmentally friendly, having low

16   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

17   Subject Vehicles.  When Plaintiff went to Len Stoler Chrysler Dodge and Jeep to purchase the

18   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

19   its fuel economy and performance. These representations, along with the advertised fuel economy,

20   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

21   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

22   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

23   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

590.     Plaintiff, Richard Harris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arkansas residing in the City of Lonoke, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Red River Dodge Chrysler Jeep, an authorized FCA dealer in Heber Springs, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Red River Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

591.    Plaintiff, Michael Batdorff (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Wonder Lake, bought a 2104 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 15, 2014, at Antioch Chrysler Dodge Jeep Ram, an authorized FCA dealer in Antioch, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Antioch Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

618

1   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

2   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

3   comply with emission standards; that its emission treatment system was designed to de-activate

4   during real-world driving conditions; and that it could not achieve the advertised towing power,

5   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

6   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

7   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

8   unauthorized emission control devices.

9   592.    Plaintiff, Alec Beard (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Texas residing in the City of Canyon Lake, bought a 2015 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 24,

12  2015, at Allen Samuels Dodge, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy

13  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

14  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

15  Subject Vehicles were represented as environmentally friendly, having low emissions and good

16  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17  When Plaintiff went to Allen Samuels Dodge to purchase the Subject Vehicle, the sales associate

18  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

19  These representations, along with the advertised fuel economy, were among the primary reasons

20  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

21  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

22  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

619

1    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2    would have paid less for it, had he/she known that it did not comply with emission standards; that

3    its emission treatment system was designed to de-activate during real-world driving conditions;

4    and that it could not achieve the advertised towing power, performance, and/or fuel economy

5    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8        593.    Plaintiff, Carl Lucci Wilburn  (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of Texas residing in the City of Round Rock, bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 11,

11   2015, at Benny Boyd, an authorized FCA dealer in Cedar Creek, Texas. Plaintiff decided to buy

12   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

13   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

14   Subject Vehicles were represented as environmentally friendly, having low emissions and good

15   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

16   When Plaintiff went to Benny Boyd to purchase the Subject Vehicle, the sales associate touted the

17   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

18   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

19   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

20   could perform as advertised only by emitting NOx at levels that are greater than advertised and

21   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7         594.    Plaintiff, Michael Roberts (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Texas residing in the City of Longview, bought a 2015 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 31,

10   2015, at Patterson Chrysler Jeep Dodge, an authorized FCA dealer in Kilgore, Texas. Plaintiff

11   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Patterson Chrysler Jeep Dodge to purchase the Subject

16   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17   economy and performance. These representations, along with the advertised fuel economy, were

18   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

1    emission standards; that its emission treatment system was designed to de-activate during real-

2    world driving conditions; and that it could not achieve the advertised towing power, performance,

3    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

4    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

5    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

6    control devices.

7            595.    Plaintiff, Larry Thompson (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Texas residing in the City of Richmond, bought a 2015 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 6, 2016, at

10   Gillman Honda Houston, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy

11   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Gilman Honda Houston to purchase the Subject Vehicle, the sales associate

16   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17   These representations, along with the advertised fuel economy, were among the primary reasons

18   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

622

its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

596.    Plaintiff, Lawrence Gonzales (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Aubrey, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015, at Classic Chrysler Jeep Dodge Ram of Denton, an authorized FCA dealer in Denton, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Classic Chrysler Jeep Dodge Ram of Denton to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to

1    de-activate during real-world driving conditions; and that it could not achieve the advertised

2    towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

3    suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

4    not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

5    concealed the unauthorized emission control devices.

6        597.    Plaintiff, Dave Schulien  (for the purpose of this paragraph, "Plaintiff"), a citizen

7    of the State of Texas residing in the City of College Station, bought a 2015 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1,

9    2016, at Lithia Dodge, an authorized FCA dealer in College Station, Texas. Plaintiff decided to

10   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

11   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

12   Subject Vehicles were represented as environmentally friendly, having low emissions and good

13   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

14   When Plaintiff went to Lithia Dodge to purchase the Subject Vehicle, the sales associate touted

15   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18   could perform as advertised only by emitting NOx at levels that are greater than advertised and

19   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22   would have paid less for it, had he/she known that it did not comply with emission standards; that

23   its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5        598.    Plaintiff, David Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Texas residing in the City of Orange, bought a 2015 Dodge Ram 1500 EcoDiesel®

7    (for the purpose of this paragraph, the "Subject Vehicle") on or about November 15, 2015, at Mid

8    County Dodge, an authorized FCA dealer in Port Arthur, Texas. Plaintiff decided to buy the

9    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Mid County Dodge to purchase the Subject Vehicle, the sales associate

14   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

15   These representations, along with the advertised fuel economy, were among the primary reasons

16   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

17   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

18   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

1   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4          599.    Plaintiff, Edward Fosnight (for the purpose of this paragraph, "Plaintiff"), a citizen

5   of the State of Texas residing in the City of Huffman, bought a 2015 Dodge Ram 1500 EcoDiesel®

6   (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2017, at Baytown

7   Nissan, an authorized FCA dealer in Baytown, Texas. Plaintiff decided to buy the Subject Vehicle

8   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

9   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

10  represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

11  also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

12  Baytown Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

13  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

14  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

15  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

16  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

17  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

18  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

19  and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

20  for it, had he/she known that it did not comply with emission standards; that its emission treatment

21  system was designed to de-activate during real-world driving conditions; and that it could not

22  achieve the advertised towing power, performance, and/or fuel economy without cheating

23  emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

1    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

2    less for it, had Defendants not concealed the unauthorized emission control devices.

3        600.    Plaintiff, Gary Tripp (for the purpose of this paragraph, "Plaintiff"), a citizen of the

4    State of Texas residing in the City of Orange, bought a 2016 Dodge Ram 1500 EcoDiesel® (for

5    the purpose of this paragraph, the "Subject Vehicle") on or about December 2, 2016, at Mike Smith

6    Chrysler Jeep Dodge, an authorized FCA dealer in Beaumont, Texas. Plaintiff decided to buy the

7    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

8    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9    Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Mike Smith Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales

12   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13   performance. These representations, along with the advertised fuel economy, were among the

14   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20   standards; that its emission treatment system was designed to de-activate during real-world driving

21   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

627

1    or would have paid less for it, had Defendants not concealed the unauthorized emission control

2    devices.

3        601.    Plaintiff, Gary Adams (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Texas residing in the City of Emory, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

5    the purpose of this paragraph, the "Subject Vehicle") on or about January 18, 2017, at Carvana

6    Houston, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle

7    based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

8    and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

9    represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

10   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

11   Carvana Houston to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

12   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

13   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

14   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

15   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

16   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

17   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

18   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

19   for it, had he/she known that it did not comply with emission standards; that its emission treatment

20   system was designed to de-activate during real-world driving conditions; and that it could not

21   achieve the advertised towing power, performance, and/or fuel economy without cheating

22   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

23   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

628

1    less for it, had Defendants not concealed the unauthorized emission control devices.

2        602.    Plaintiff, Gerald Richmond (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Texas residing in the City of Temple, bought a 2015 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about January 30, 2015, at

5    MacHaik Dodge Chrysler Jeep Ram, an authorized FCA dealer in Temple, Texas. Plaintiff decided

6    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

7    vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

8    which the Subject Vehicles were represented as environmentally friendly, having low emissions

9    and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

10   Vehicles.  When Plaintiff went to MacHaik Dodge Chrysler Jeep Ram to purchase the Subject

11   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12   economy and performance. These representations, along with the advertised fuel economy, were

13   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19   emission standards; that its emission treatment system was designed to de-activate during real-

20   world driving conditions; and that it could not achieve the advertised towing power, performance,

21   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

1  control devices.

2      603.    Plaintiff, Jeff & Amy Vance (for the purpose of this paragraph, "Plaintiff"), a

3  citizen of the State of Texas residing in the City of Willis, bought a 2016 Dodge Ram 1500

4  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 2, 2016,

5  at Auto Nation, an authorized FCA dealer in Spring, Texas. Plaintiff decided to buy the Subject

6  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

7  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

8  Vehicles were represented as environmentally friendly, having low emissions and good fuel

9  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

10  Plaintiff went to Auto Nation to purchase the Subject Vehicle, the sales associate touted the Subject

11  Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14  could perform as advertised only by emitting NOx at levels that are greater than advertised and

15  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18  would have paid less for it, had he/she known that it did not comply with emission standards; that

19  its emission treatment system was designed to de-activate during real-world driving conditions;

20  and that it could not achieve the advertised towing power, performance, and/or fuel economy

21  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

630

604.     Plaintiff, Jeffrey Irwin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Pottsboro, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 28, 2016, at Hoyte Dodge Ram Chrysler Jeep, an authorized FCA dealer in Sheman, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Hoyte Dodge Ram Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

631

605.    Plaintiff, Joshua Sigmon  (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Coahoma, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at All American Chrysler Jeep Dodge Ram, an authorized FCA dealer in Midland, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to All American Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

606.     Plaintiff, Kenneth D. Elliott (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Seguin, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 20, 2016, at Bluebonnet, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bluebonnet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

607.     Plaintiff, Lucas Lopez  (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Texas residing in the City of Alice, bought a 2015 Jeep Grand Cherokee EcoDiesel®
(for the purpose of this paragraph, the "Subject Vehicle") on or about July 11, 2016, at Classic
Chrysler Jeep Dodge Ram of Denton, an authorized FCA dealer in Denton, Texas. Plaintiff decided
to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"
vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on
which the Subject Vehicles were represented as environmentally friendly, having low emissions
and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject
Vehicles.  When Plaintiff went to Classic Chrysler Jeep Dodge Ram of Denton to purchase the
Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including
its fuel economy and performance. These representations, along with the advertised fuel economy,
were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,
Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx
at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her
Subject Vehicle was equipped with undisclosed and unauthorized emission control devices
designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have
purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not
comply with emission standards; that its emission treatment system was designed to de-activate
during real-world driving conditions; and that it could not achieve the advertised towing power,
performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a
concrete injury as a direct and proximate result of Defendants' misconduct, and would not have
purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the
unauthorized emission control devices.

608.    Plaintiff, Manuel Lopez Garcia  (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Texas residing in the City of Katy, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 27, 2017, at South Loop Hyundai, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to ** to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

609.    Plaintiff, Michael Rene Hollenbaugh (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Round Rock, bought a 2015

Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 17, 2015, at Boerne Dodge Chrysler Jeep Ram, an authorized FCA dealer in Boerne, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Boerne Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

610.    Plaintiff, Randall Moody (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Katy, bought a 2015 Dodge Ram 1500 EcoDiesel®

636

(for the purpose of this paragraph, the "Subject Vehicle") on or about November 13, 2014, at Allen Samuels Auto Group, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Allen Samuels Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

611.    Plaintiff, Reese Howell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Blooming Grove, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 28, 2015, at Waxahachie Chrysler Dodge Jeep Ram, an authorized FCA dealer in Waxahachie, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Waxahachie Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

612.    Plaintiff, Robert Pickering (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Silsbee, bought a 2015 Dodge Ram 1500 EcoDiesel®

1   (for the purpose of this paragraph, the "Subject Vehicle") on or about December 26, 2017, at

2   Silsbee Motor Company, an authorized FCA dealer in Silsbee, Texas. Plaintiff decided to buy the

3   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

4   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

5   Subject Vehicles were represented as environmentally friendly, having low emissions and good

6   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

7   When Plaintiff went to Silsbee Motor Company to purchase the Subject Vehicle, the sales associate

8   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

9   These representations, along with the advertised fuel economy, were among the primary reasons

10  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

11  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

12  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

13  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

14  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

15  would have paid less for it, had he/she known that it did not comply with emission standards; that

16  its emission treatment system was designed to de-activate during real-world driving conditions;

17  and that it could not achieve the advertised towing power, performance, and/or fuel economy

18  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

19  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

20  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

21       613.    Plaintiff, Sergio Lopez  (for the purpose of this paragraph, "Plaintiff"), a citizen of

22  the State of Texas residing in the City of Edinburg, bought a 2015 Dodge Ram 1500 EcoDiesel®

23  (for the purpose of this paragraph, the "Subject Vehicle") on or about November 20, 2014, at Ed

Payne Chrysler Dodge Jeep Ram, an authorized FCA dealer in Weslaco, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ed Payne Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

614.    Plaintiff, Shawn J. Austin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Plano, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 15, 2016, at McKinney

Dodge Jeep, an authorized FCA dealer in McKinney, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to McKinney Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

615.    Plaintiff, Sherman Barnett d/b/a Rides Auto Group (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of El Paso, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 26, 2016, at Rides Auto Group, an authorized FCA dealer in El Paso, Texas. Plaintiff

641

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Rides Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

616.     Plaintiff, Tim Fowler  (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Spring, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 24, 2016, at Northwest Chrysler Dodge Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy

the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Northwest Chrysler Dodge Deep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

617.     Plaintiff, William Gray (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Spring, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 28, 2015, at Clear Lake Dodge, an authorized FCA dealer in Webster, Texas. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Clear Lake Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

618.    Plaintiff, Zachary Theobald (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Santa Fe, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 17, 2018, at Ron Carter, an authorized FCA dealer in Dickinson, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ron Carter to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

619.    Plaintiff, Brandon & Haley Buckmaster (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Pearland, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 31, 2016, at Auto Nation Chrysler Dodge Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

645

the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Auto Nation Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

620.    Plaintiff, David Allen Bradshaw (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Trenton, bought a 2015 Doge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 19, 2015 at Hoyte Dodge Ram Chrysler Jeep, an authorized FCA dealer in Sherman, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Hoyte Dodge Ram Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

621.    Plaintiff, Maggie Phipps (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Beeville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 25, 2014, at Port Lavaca Dodge Chrysler Jeep Ram, an authorized FCA dealer in Port Lavaca, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Port Lavaca Dodge Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

622.    Plaintiff, Jerry Fortenberry (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Sweeny, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 4, 2018, at Momentum BMW, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Momentum BMW to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

623.    Plaintiff, Jerry D. King  (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Arlington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Classic Chrysler Dodge Jeep Ram FIAT, an authorized FCA dealer in Arlington, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions

1  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

2  Vehicles.  When Plaintiff went to Classic Chrysler Dodge Jeep Ram FIAT to purchase the Subject

3  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

4  economy and performance. These representations, along with the advertised fuel economy, were

5  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

6  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

7  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

8  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

9  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

10  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

11  emission standards; that its emission treatment system was designed to de-activate during real-

12  world driving conditions; and that it could not achieve the advertised towing power, performance,

13  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

14  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

15  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

16  control devices.

17    624.    Plaintiff, Marcus Carlock (for the purpose of this paragraph, "Plaintiff"), a citizen

18  of the State of Texas residing in the City of Mount Pleasant, bought a 2016 Dodge Ram 1500

19  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1,

20  2017, at Hendrick Volkswagen Frisco, an authorized FCA dealer in Frisco, Texas. Plaintiff decided

21  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

22  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

23  which the Subject Vehicles were represented as environmentally friendly, having low emissions

and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Hendrick Volkswagen Frisco to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

625.    Plaintiff, James & Nichole Potts (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of New Braunfels, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2018, at Bluebonnet Chrysler Dodge, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bluebonnet Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

626.     Plaintiff, Russell Cash (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Killeen, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Dodge Country, an authorized FCA dealer in Killeen, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dodge Country to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

627.    Plaintiff, Casey Barton (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Burleson, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Meador Dodge Chrysler Jeep Ram, an authorized FCA dealer in Fort Worth, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Meador Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

628.    Plaintiff, Coleman Sessums (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Granger, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 5, 2018, at Covert Ford of Hutto, an authorized FCA dealer in Hutto, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

654

1   When Plaintiff went to Covert Ford of Hutto to purchase the Subject Vehicle, the sales associate

2   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

3   These representations, along with the advertised fuel economy, were among the primary reasons

4   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

5   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

6   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

7   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

8   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

9   would have paid less for it, had he/she known that it did not comply with emission standards; that

10  its emission treatment system was designed to de-activate during real-world driving conditions;

11  and that it could not achieve the advertised towing power, performance, and/or fuel economy

12  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

13  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

14  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

15  629.   Plaintiff, Michael Werner (for the purpose of this paragraph, "Plaintiff"), a citizen

16  of the State of Texas residing in the City of Whitesboro, bought a 2014 Dodge Ram 1500

17  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 17, 2014,

18  at Waxahachie Chrysler Dodge Jeep Ram, an authorized FCA dealer in Waxahachie, Texas.

19  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

20  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

21  website, on which the Subject Vehicles were represented as environmentally friendly, having low

22  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

23  Subject Vehicles.  When Plaintiff went to Waxahachie Chrysler Dodge Jeep Ram to purchase the

655

Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

630.    Plaintiff, Gene C. Brown, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Houston, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2016, at Tomball Dodge Chrysler Jeep Ram, an authorized FCA dealer in Tomball, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Tomball Dodge Chrysler Jeep Ram to purchase the

1   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

2   its fuel economy and performance. These representations, along with the advertised fuel economy,

3   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

4   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

5   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

6   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

7   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

8   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

9   comply with emission standards; that its emission treatment system was designed to de-activate

10  during real-world driving conditions; and that it could not achieve the advertised towing power,

11  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

12  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

13  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

14  unauthorized emission control devices.

15      631.    Plaintiff, Duane Whitus (for the purpose of this paragraph, "Plaintiff"), a citizen of

16  the State of Texas residing in the City of Gladewater, bought a 2016 Dodge Ram 1500 EcoDiesel®

17  (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Peters

18  Chevrolet Chrysler Jeep Dodge Ram FIAT, an authorized FCA dealer in Longview, Texas.

19  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

20  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

21  website, on which the Subject Vehicles were represented as environmentally friendly, having low

22  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

23  Subject Vehicles.  When Plaintiff went to Peters Chevrolet Chrysler Jeep Dodge Ram FIAT to

purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®
attributes, including its fuel economy and performance. These representations, along with the
advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At
the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised
only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was
Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized
emission control devices designed to cheat emission tests and to deceive consumers and regulators.
Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she
known that it did not comply with emission standards; that its emission treatment system was
designed to de-activate during real-world driving conditions; and that it could not achieve the
advertised towing power, performance, and/or fuel economy without cheating emission tests.
Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,
and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants
not concealed the unauthorized emission control devices.

632.    Plaintiff, Andrew Moran (for the purpose of this paragraph, "Plaintiff"), a citizen
of the State of Texas residing in the City of Conroe, bought a 2016 Dodge Ram 1500 EcoDiesel®
(for the purpose of this paragraph, the "Subject Vehicle") on or about July 19, 2016, at
DeMontrond Chrysler Dodge Jeep Ram, an authorized FCA dealer in Conroe, Texas. Plaintiff
decided to buy the Subject Vehicle based in part on FCA's representations that it was an
"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram
website, on which the Subject Vehicles were represented as environmentally friendly, having low
emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the
Subject Vehicles.  When Plaintiff went to DeMontrond Chrysler Dodge Jeep Ram to purchase the

Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

633.    Plaintiff, Scott Perry (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Flower Mound, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2016, at Huffines Chrysler Jeep Dodge Ram Piano, an authorized FCA dealer in Piano, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Huffines Chrysler Jeep Dodge Ram Piano to purchase the Subject Vehicle,

the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

634.    Plaintiff, Bryan Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Smithville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2105, at Covert Chrysler Dodge Jeep Ram, an authorized FCA dealer in Austin, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Covert Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales

1    associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

2    performance. These representations, along with the advertised fuel economy, were among the

3    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

4    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

5    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

6    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

7    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

8    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

9    standards; that its emission treatment system was designed to de-activate during real-world driving

10   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

11   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

12   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

13   or would have paid less for it, had Defendants not concealed the unauthorized emission control

14   devices.

15        635.   Plaintiff, Mario Maltez, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen

16   of the State of Texas residing in the City of Cypress, bought a 2015 Dodge Ram 1500 EcoDiesel®

17   (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015, at Auto Nation

18   Chrysler Dodge Jeep Ram, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy the

19   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

20   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

21   Subject Vehicles were represented as environmentally friendly, having low emissions and good

22   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

23   When Plaintiff went to Auto Nation Chrysler Dodge Jeep Ram to purchase the Subject Vehicle,

the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

636.    Plaintiff, Saleh Sal (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Grand Prairie, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2015, at Bonham Chrysler Dodge Jeep Ram, an authorized FCA dealer in Bonham, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bonham Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the

1    sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

2    performance. These representations, along with the advertised fuel economy, were among the

3    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

4    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

5    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

6    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

7    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

8    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

9    standards; that its emission treatment system was designed to de-activate during real-world driving

10   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

11   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

12   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

13   or would have paid less for it, had Defendants not concealed the unauthorized emission control

14   devices.

15          637.    Plaintiff, John Horner (for the purpose of this paragraph, "Plaintiff"), a citizen of

16   the State of Texas residing in the City of Mission, bought a 2014 Dodge Ram 1500 EcoDiesel®

17   (for the purpose of this paragraph, the "Subject Vehicle") on or about October 15, 2014, at Ed

18   Payne Auto, an authorized FCA dealer in Weslaco, Texas. Plaintiff decided to buy the Subject

19   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

20   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

21   Vehicles were represented as environmentally friendly, having low emissions and good fuel

22   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

23   Plaintiff went to Ed Payne Auto to purchase the Subject Vehicle, the sales associate touted the

Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

638.    Plaintiff, Benjamin Tester (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Harker Heights, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 15, 2015, at Mac Haik Dodge Chrysler Jeep Ram, an authorized FCA dealer in Temple, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mac Haik Didge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1    its fuel economy and performance. These representations, along with the advertised fuel economy,

2    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

3    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

4    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

5    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

6    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

7    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

8    comply with emission standards; that its emission treatment system was designed to de-activate

9    during real-world driving conditions; and that it could not achieve the advertised towing power,

10   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

11   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

12   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

13   unauthorized emission control devices.

14           639.    Plaintiff, Dwayne Hunter (for the purpose of this paragraph, "Plaintiff"), a citizen

15   of the State of Texas residing in the City of San Angelo, bought a 2015 Dodge Ram 1500

16   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015,

17   at Classic Chrysler Dodge Jeep Ram FIAT, an authorized FCA dealer in Arlington, Texas. Plaintiff

18   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20   website, on which the Subject Vehicles were represented as environmentally friendly, having low

21   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22   Subject Vehicles.  When Plaintiff went to Classic Chrysler Dodge Jeep Ram FIAT to purchase the

23   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1   its fuel economy and performance. These representations, along with the advertised fuel economy,

2   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

3   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

4   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

5   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

6   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

7   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

8   comply with emission standards; that its emission treatment system was designed to de-activate

9   during real-world driving conditions; and that it could not achieve the advertised towing power,

10  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

11  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

12  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

13  unauthorized emission control devices.

14      640.    Plaintiff, John Lemelle (for the purpose of this paragraph, "Plaintiff"), a citizen of

15  the State of Texas residing in the City of Liberty, bought a 2016 Dodge Ram 1500 EcoDiesel®

16  (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Helfman

17  Dodge Chrysler Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy

18  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

19  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

20  Subject Vehicles were represented as environmentally friendly, having low emissions and good

21  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

22  When Plaintiff went to Helfman Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the

23  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

641.    Plaintiff, Cory Estelle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 15, 2017, at World Car Hyundai North, an authorized FCA dealer in San Antonio, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to World Car Hyundai North to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

642. Plaintiff, Eric Karcher (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Boerne, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2014, at Ingram Park Chrysler Jeep Dodge Ram, an authorized FCA dealer in San Antonio, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ingram Park Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

1    and performance. These representations, along with the advertised fuel economy, were among the

2    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

3    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

4    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

5    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

6    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

7    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

8    standards; that its emission treatment system was designed to de-activate during real-world driving

9    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

10   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

11   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

12   or would have paid less for it, had Defendants not concealed the unauthorized emission control

13   devices.

14        643.    Plaintiff, Kenneth Trent Paris (for the purpose of this paragraph, "Plaintiff"), a

15   citizen of the State of Texas residing in the City of Waco, bought a 2015 Dodge Ram 1500

16   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 12, 2016,

17   at Allen Samuels Dodge Chrysler Jeep, an authorized FCA dealer in Waco, Texas. Plaintiff

18   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20   website, on which the Subject Vehicles were represented as environmentally friendly, having low

21   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22   Subject Vehicles.  When Plaintiff went to ** to purchase the Subject Vehicle, the sales associate

23   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

669

1   These representations, along with the advertised fuel economy, were among the primary reasons

2   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

3   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

4   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

5   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

6   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

7   would have paid less for it, had he/she known that it did not comply with emission standards; that

8   its emission treatment system was designed to de-activate during real-world driving conditions;

9   and that it could not achieve the advertised towing power, performance, and/or fuel economy

10  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

11  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

12  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

13      644.    Plaintiff, William & Kimberly Mayes (for the purpose of this paragraph,

14  "Plaintiff"), a citizen of the State of Texas residing in the City of Abilene, bought a 2016 Dodge

15  Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

16  August 27, 2016, at Star Dodge Chrysler Jeep Ram, an authorized FCA dealer in Abilene, Texas.

17  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

19  website, on which the Subject Vehicles were represented as environmentally friendly, having low

20  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21  Subject Vehicles.  When Plaintiff went to Star Dodge Chrysler Jeep Ram to purchase the Subject

22  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

23  economy and performance. These representations, along with the advertised fuel economy, were

670

1    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

2    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

3    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

4    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

5    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

6    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

7    emission standards; that its emission treatment system was designed to de-activate during real-

8    world driving conditions; and that it could not achieve the advertised towing power, performance,

9    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

10   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

11   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

12   control devices.

13        645.    Plaintiff, Alan Ostermiller (for the purpose of this paragraph, "Plaintiff"), a citizen

14   of the State of Texas residing in the City of Corpus Christi, bought a 2016 Dodge Ram 1500

15   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016,

16   at Port Lavaca Dodge, an authorized FCA dealer in Port Lavaca, Texas. Plaintiff decided to buy

17   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19   Subject Vehicles were represented as environmentally friendly, having low emissions and good

20   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21   When Plaintiff went to Port Lavaca Dodge to purchase the Subject Vehicle, the sales associate

22   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

23   These representations, along with the advertised fuel economy, were among the primary reasons

671

Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

646.    Plaintiff, Ruben Luevanos (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Del Rio, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 19, 2016, at Ingram Park Chrysler Jeep Dodge Ram, an authorized FCA dealer in San Antonio, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ingram Park Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

1    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6    comply with emission standards; that its emission treatment system was designed to de-activate

7    during real-world driving conditions; and that it could not achieve the advertised towing power,

8    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11   unauthorized emission control devices.

12        647.   Plaintiff, George Henry (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of Texas residing in the City of Holliday, bought a 2016 Dodge Ram 1500 EcoDiesel®

14   (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2016, at

15   Patterson Dodge Chrysler Jeep Ram, an authorized FCA dealer in Wichita Falls, Texas. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Patterson Dodge Chrysler Jeep Ram to purchase the

21   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

22   its fuel economy and performance. These representations, along with the advertised fuel economy,

23   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

1    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6    comply with emission standards; that its emission treatment system was designed to de-activate

7    during real-world driving conditions; and that it could not achieve the advertised towing power,

8    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11   unauthorized emission control devices.

12        648.    Plaintiff, Don Merriman d/b/a Don-Sandy, LLC (for the purpose of this paragraph,

13   "Plaintiff"), a citizen of the State of Texas residing in the City of Sherman, bought a 2014 Dodge

14   Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July

15   1, 2014, at Bonham Chrysler Dodge, an authorized FCA dealer in Bonham, Texas. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Bonham Chrysler Dodge to purchase the Subject

21   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22   economy and performance. These representations, along with the advertised fuel economy, were

23   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

649.    Plaintiff, Richard Holbach (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Corpus Christi, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 16, 2016, at Herbert's Town and Country Chrysler Dodge Jeep Ram, an authorized FCA dealer in Shreveport, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Herbert's Town and Country Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

650.    Plaintiff, Richard Robinson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Los Indios, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 14, 2013, at Burns Motors, an authorized FCA dealer in McAllen, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Burns Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

651.    Plaintiff, Theodore Grubbs (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Warsaw, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 16, 2015, at Warsaw Chrysler Dodge Jeep Ram, an authorized FCA dealer in Warsaw, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Warsaw Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

652. Plaintiff, Kimberly H. & David W. Whittington (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Bay Minette, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 23, 2018, at Chuck Steven's Chevrolet, an authorized FCA dealer in Bay Minette, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chuck Steven's Chevrolet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

653.    Plaintiff, Dana L. Gregory (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of LaGrange, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 15, 2016, at Newnan Peachtree Chrysler Dodge Jeep, an authorized FCA dealer in Newnan, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Newnan Peachtree Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

654.    Plaintiff, Robert Alpers d/b/a Anything Automotive (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Hobart, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 31, 2016, at Bosak Motors, an authorized FCA dealer in Merrillville, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bosak Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

655.    Plaintiff, Brent Lavender (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Amarillo, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 3, 2014, at Southpoint Dodge, an authorized FCA dealer in Tulsa, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Southpoint Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

1  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4  would have paid less for it, had he/she known that it did not comply with emission standards; that

5  its emission treatment system was designed to de-activate during real-world driving conditions;

6  and that it could not achieve the advertised towing power, performance, and/or fuel economy

7  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10       656.    Plaintiff, Brent Cole (for the purpose of this paragraph, "Plaintiff"), a citizen of the

11  State of Texas residing in the City of Livingston, bought a 2016 Dodge Ram 1500 EcoDiesel®

12  (for the purpose of this paragraph, the "Subject Vehicle") on or about August 6, 2016, at Briggs

13  Dodge of Lawrence Kansas, an authorized FCA dealer in Lawrence, Kansas. Plaintiff decided to

14  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

15  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ran website, on which the

16  Subject Vehicles were represented as environmentally friendly, having low emissions and good

17  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18  When Plaintiff went to Briggs Dodge of Lawrence Kansas to purchase the Subject Vehicle, the

19  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

20  performance. These representations, along with the advertised fuel economy, were among the

21  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

657.    Plaintiff, Chad Trahan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Hampton, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2016, at Thornton Road Chrysler Dodge Jeep Ram, an authorized FCA dealer in Lithia Springs, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Thornton Road Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

658.    Plaintiff, Charles Suder (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Fort Wayne, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2014, at Charles Suder, an authorized FCA dealer in Fort Wayne, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Charles Suder to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

684

1    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3    would have paid less for it, had he/she known that it did not comply with emission standards; that

4    its emission treatment system was designed to de-activate during real-world driving conditions;

5    and that it could not achieve the advertised towing power, performance, and/or fuel economy

6    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9    659.    Plaintiff, Danny Quisenberry (for the purpose of this paragraph, "Plaintiff"), a

10   citizen of the State of Texas residing in the City of Seminole, bought a 2015 Jeep Grand Cherokee

11   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 28, 2016,

12   at Tate Branch Hobbs, an authorized FCA dealer in Hobbs, New Mexico. Plaintiff decided to buy

13   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

14   reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

15   Subject Vehicles were represented as environmentally friendly, having low emissions and good

16   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17   When Plaintiff went to Tate Branch Hobbs to purchase the Subject Vehicle, the sales associate

18   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

19   These representations, along with the advertised fuel economy, were among the primary reasons

20   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

21   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

22   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

685

1    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2    would have paid less for it, had he/she known that it did not comply with emission standards; that

3    its emission treatment system was designed to de-activate during real-world driving conditions;

4    and that it could not achieve the advertised towing power, performance, and/or fuel economy

5    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8          660.    Plaintiff, Dustin Louden (for the purpose of this paragraph, "Plaintiff"), a citizen

9    of the State of West Virginia residing in the City of Clarksburg, bought a 2016 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1,

11   2016, at Country Club Chrysler Dodge Jeep Ram, an authorized FCA dealer in Clarksburg, West

12   Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

13   it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

14   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

15   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

16   about the Subject Vehicles.  When Plaintiff went to Country Club Chrysler Dodge Jeep Ram to

17   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

18   attributes, including its fuel economy and performance. These representations, along with the

19   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

20   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

21   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

22   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

23   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

661.    Plaintiff, Englebert Cherrington (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Canton, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 8, 2017, at Gunn Motor Company, an authorized FCA dealer in Covington, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Gunn Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

662.    Plaintiff, Felix Orlando Gonzales, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 8, 2017, at Super Cars Direct, an authorized FCA dealer in Kernersville, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Super Cars Direct to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-

world driving conditions; and that it could not achieve the advertised towing power, performance,

and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

control devices.

663.    Plaintiff, Frank Deguzman (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Texas residing in the City of San Antonio, bought a 2014 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 27, 2014,

at Larry H. Miller Dodge Ram Tucson, an authorized FCA dealer in Tucson, Arizona. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Larry H. Miller Doge Ram Tucson to purchase the

Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy,

were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

689

1    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

2    comply with emission standards; that its emission treatment system was designed to de-activate

3    during real-world driving conditions; and that it could not achieve the advertised towing power,

4    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

5    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

6    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

7    unauthorized emission control devices.

8         664.    Plaintiff, Gregory Brunette, D.O. (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of West Virginia residing in the City of Elkview, bought a 2015 Jeep Grand

10   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

11   October 28, 2015, at Dutch Miller, an authorized FCA dealer in Charleston, West Virginia.

12   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Dutch Miller to purchase the Subject Vehicle, the sales

17   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

18   performance. These representations, along with the advertised fuel economy, were among the

19   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

20   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

21   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

22   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

23   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

690

1   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

2   standards; that its emission treatment system was designed to de-activate during real-world driving

3   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

4   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

5   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

6   or would have paid less for it, had Defendants not concealed the unauthorized emission control

7   devices.

8          665.    Plaintiff, Greg Cain (for the purpose of this paragraph, "Plaintiff"), a citizen of the

9   State of Alabama residing in the City of Bessemer, bought a 2016 Dodge Ram 1500 EcoDiesel®

10   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 17, 2016, at

11   Hendrick Dodge Ram, an authorized FCA dealer in Cary, North Carolina. Plaintiff decided to buy

12   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

13   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

14   Subject Vehicles were represented as environmentally friendly, having low emissions and good

15   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

16   When Plaintiff went to Hendrick Dodge Ram to purchase the Subject Vehicle, the sales associate

17   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

18   These representations, along with the advertised fuel economy, were among the primary reasons

19   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

20   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

21   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

691

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7           666.    Plaintiff, Herbert Likens (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Indian residing in the City of Anderson, bought a 2014 Jeep Grand Cherokee

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 12, 2015,

10   at Michigan City Chrysler Dodge Jeep Ram, an authorized FCA dealer in Michigan City, Indiana.

11   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Michigan City Chrysler Dodge Jeep Ram to purchase

16   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

17   including its fuel economy and performance. These representations, along with the advertised fuel

18   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

19   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

20   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

21   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

22   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

23   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

692

that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

667. Plaintiff, Jack London (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Dover, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 19, 2014, at Brigham-Gill, an authorized FCA dealer in Natick, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bringham-Gill to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6        668.    Plaintiff, Jeffrey Cook (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    the State of West Virginia residing in the City of Pinch, bought a 2015 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 16,

9    2015, at Auto World of Big Stone Gap, an authorized FCA dealer in Big Stone Gap, Virginia.

10   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to Auto World Big Stone Gap to purchase the Subject

15   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

16   economy and performance. These representations, along with the advertised fuel economy, were

17   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

18   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

19   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

20   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

21   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

22   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

23   emission standards; that its emission treatment system was designed to de-activate during real-

1   world driving conditions; and that it could not achieve the advertised towing power, performance,

2   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

3   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

4   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

5   control devices.

6       669.    Plaintiff, Marcel Lamoureux (for the purpose of this paragraph, "Plaintiff"), a

7   citizen of the State of Florida residing in the City of Lee, bought a 2016 Dodge Ram 1500

8   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 6, 2016,

9   at Cass Burch Chrysler Dodge Jeep Ram, an authorized FCA dealer in Quitman, Georgia. Plaintiff

10   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to Cass Burch Chrysler Dodge Jeep Ram to purchase the

15   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

16   its fuel economy and performance. These representations, along with the advertised fuel economy,

17   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

18   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

19   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

20   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

21   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

22   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

23   comply with emission standards; that its emission treatment system was designed to de-activate

695

1    during real-world driving conditions; and that it could not achieve the advertised towing power,

2    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

3    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

4    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

5    unauthorized emission control devices.

6        670.    Plaintiff, Randall & Melissa Westmorland (for the purpose of this paragraph,

7    "Plaintiff"), a citizen of the State of Georgia residing in the City of Buchanan, bought a 2014

8    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

9    about March 1, 2017, at James Oneal, an authorized FCA dealer in Bremen, Georgia. Plaintiff

10   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to James Oneal to purchase the Subject Vehicle, the sales

15   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

16   performance. These representations, along with the advertised fuel economy, were among the

17   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

18   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

19   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

20   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

21   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

22   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

23   standards; that its emission treatment system was designed to de-activate during real-world driving

1    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

2    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

3    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

4    or would have paid less for it, had Defendants not concealed the unauthorized emission control

5    devices.

6         671.    Plaintiff, Micah Hill (for the purpose of this paragraph, "Plaintiff"), a citizen of the

7    State of Alabama residing in the City of Tuscaloosa, bought a 2014 Dodge Ram 1500 EcoDiesel®

8    (for the purpose of this paragraph, the "Subject Vehicle") on or about October 15, 2016, at Don

9    Jackson, an authorized FCA dealer in Union City, Georgia. Plaintiff decided to buy the Subject

10   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

11   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

12   Vehicles were represented as environmentally friendly, having low emissions and good fuel

13   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

14   Plaintiff went to Don Jackson to purchase the Subject Vehicle, the sales associate touted the

15   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18   could perform as advertised only by emitting NOx at levels that are greater than advertised and

19   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22   would have paid less for it, had he/she known that it did not comply with emission standards; that

23   its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5         672.    Plaintiff, Nicholas Hess (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Indiana residing in the City of Seymour, bought a 2014 Dodge Ram 1500 EcoDiesel®

7    (for the purpose of this paragraph, the "Subject Vehicle") on or about January 13,2017, at

8    Mancari's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Oak Lawn, Illinois. Plaintiff

9    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to Mancari's Chrysler Dodge Jeep Ram to purchase the

14   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

15   its fuel economy and performance. These representations, along with the advertised fuel economy,

16   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

17   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

18   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

19   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

20   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

21   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

22   comply with emission standards; that its emission treatment system was designed to de-activate

23   during real-world driving conditions; and that it could not achieve the advertised towing power,

698

1    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

2    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

3    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

4    unauthorized emission control devices.

5         673.    Plaintiff, Ralph Nason (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Maine residing in the City of Unity, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

7    the purpose of this paragraph, the "Subject Vehicle") on or about May 11, 2015, at Central Maine

8    Chrysler Dodge Jeep, an authorized FCA dealer in Waterville, Maine. Plaintiff decided to buy the

9    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Central Maine Chrysler Dodge Jeep to purchase the Subject Vehicle, the

14   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

15   performance. These representations, along with the advertised fuel economy, were among the

16   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22   standards; that its emission treatment system was designed to de-activate during real-world driving

23   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

1    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

3    or would have paid less for it, had Defendants not concealed the unauthorized emission control

4    devices.

5         674.    Plaintiff, Robert Radel (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Indiana residing in the City of Peru, bought a 2016 Dodge Ram 1500 EcoDiesel® (for

7    the purpose of this paragraph, the "Subject Vehicle") on or about March 3, 2018, at Findlay, an

8    authorized FCA dealer in Findlay, Ohio. Plaintiff decided to buy the Subject Vehicle based in part

9    on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

10   efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

11   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

12   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

13   Findlay to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

14   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

15   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

16   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

17   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

18   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

19   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

20   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

21   for it, had he/she known that it did not comply with emission standards; that its emission treatment

22   system was designed to de-activate during real-world driving conditions; and that it could not

23   achieve the advertised towing power, performance, and/or fuel economy without cheating

700

1    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

2    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

3    less for it, had Defendants not concealed the unauthorized emission control devices.

4         675.    Plaintiff, Roger Farrow  (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of Massachusetts residing in the City of Somerset, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 14,

7    2016, at Colonial South Chrysler Jeep and Dodge, an authorized FCA dealer in Dartmouth,

8    Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

9    that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

10   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

11   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

12   commercials about the Subject Vehicles.  When Plaintiff went to Colonial South Chrysler Jeep and

13   Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

14   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

15   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

16   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

17   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

18   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

19   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

20   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

21   for it, had he/she known that it did not comply with emission standards; that its emission treatment

22   system was designed to de-activate during real-world driving conditions; and that it could not

23   achieve the advertised towing power, performance, and/or fuel economy without cheating

1    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

2    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

3    less for it, had Defendants not concealed the unauthorized emission control devices.

4          676.    Plaintiff, Edwin B. Brooks Holton (for the purpose of this paragraph, "Plaintiff"),

5    a citizen of the State of Georgia residing in the City of Camilla, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1,

7    2015, at Woody Folsom Chrysler Dodge Jeep, an authorized FCA dealer in Baxley, Georgia.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Woody Folsom Chrysler Dodge Jeep to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

677.    Plaintiff, John Victor (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Harlem, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 17, 2015, at Milton Ruben Chrysler Jeep Dodge, an authorized FCA dealer in Augusta, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Milton Ruben Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

1    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

2    or would have paid less for it, had Defendants not concealed the unauthorized emission control

3    devices.

4        678.    Plaintiff, Stacey & P. Elaine Wilson (for the purpose of this paragraph, "Plaintiff"),

5    a citizen of the State of Illinois residing in the City of Poneto, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2018,

7    at O'Daniel Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fort Wayne, Indiana. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to O'Daniel Chrysler Dodge Jeep Ram to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4         679.    Plaintiff, Adam Covington (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Texas residing in the City of Abilene, bought a 2014 Dodge Ram 1500 EcoDiesel®

6    (for the purpose of this paragraph, the "Subject Vehicle") on or about March 10, 2018, at Doug

7    Gray Chrysler Dodge Jeep Ram, an authorized FCA dealer in Elk City, Oklahoma. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Doug Gary Chrysler Dodge Jeep Ram to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

705

concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

680.    Plaintiff, Brian Kicak (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Newman, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 2, 2015, at Landmark Dodge Chrysler Jeep Ram, an authorized FCA dealer in Marrow, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the RAM website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Landmark Doge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

706

concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

681.    Plaintiff, Chip Neer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Fort Wayne, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at O'Daniel Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fort Wayne, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to O'Daniel Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

707

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4         682.    Plaintiff, Christopher Tucker (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of Georgia residing in the City of Columbus, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23,

7    2015, at Landmark Chrysler Dodge Jeep Ram, an authorized FCA dealer in Chamblee, Georgia.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Landmark Chrysler Dodge Jeep Ram to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

708

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4          683.    Plaintiff, Edward Roland Hill, III (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of Georgia residing in the City of Fitzgerald, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 21, 2017,

7    at Expo Motorcars, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the

8    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

9    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Expo Motorcars to purchase the Subject Vehicle, the sales associate touted

13   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

709

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        684.    Plaintiff, Emily K. Blankenship (for the purpose of this paragraph, "Plaintiff"), a

4    citizen of the State of West Virginia residing in the City of Birch River, bought a 2014 Jeep Grand

5    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June

6    3, 2017, at Lambert Buick-GMC, Inc., an authorized FCA dealer in Cuyahoga Falls, Ohio. Plaintiff

7    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Lambert Buick-GMC, Inc. to purchase the Subject

12   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

13   economy and performance. These representations, along with the advertised fuel economy, were

14   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

15   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

16   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

17   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

18   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

19   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

20   emission standards; that its emission treatment system was designed to de-activate during real-

21   world driving conditions; and that it could not achieve the advertised towing power, performance,

22   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

23   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

1    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

2    control devices.

3        685.    Plaintiff, Kevin V. Anderson (for the purpose of this paragraph, "Plaintiff"), a

4    citizen of the State of Indiana residing in the City of Greenfield, bought a 2014 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 4, 2014,

6    at Ed Martin, an authorized FCA dealer in Anderson, Indiana. Plaintiff decided to buy the Subject

7    Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

8    emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

9    Vehicles were represented as environmentally friendly, having low emissions and good fuel

10   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

11   Plaintiff went to Ed Martin to purchase the Subject Vehicle, the sales associate touted the Subject

12   Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15   could perform as advertised only by emitting NOx at levels that are greater than advertised and

16   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

711

1   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2        686.    Plaintiff, Madi & Mark Lee (for the purpose of this paragraph, "Plaintiff"), a citizen

3   of the State of Indiana residing in the City of Goshen, bought a 2015 Jeep Grand Cherokee

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 19,

5   2017, at Michiana Chrysler Dodge Jeep Ram, an authorized FCA dealer in Mishawake, Indiana.

6   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to Michiana Chrysler Dodge Jeep Ram to purchase the

11  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12  its fuel economy and performance. These representations, along with the advertised fuel economy,

13  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19  comply with emission standards; that its emission treatment system was designed to de-activate

20  during real-world driving conditions; and that it could not achieve the advertised towing power,

21  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

712

1    unauthorized emission control devices.

2         687.    Plaintiff, Matt Hersey (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Georgia residing in the City of Statesboro, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2016,

5    at Rick Hendrick Dodge Chrysler Jeep Ram, an authorized FCA dealer in Charleston, South

6    Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

7    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

8    the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

9    having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

10   about the Subject Vehicles.  When Plaintiff went to Rick Hendrick Dodge Chrysler Jeep Ram to

11   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

12   attributes, including its fuel economy and performance. These representations, along with the

13   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

14   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

15   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

16   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

17   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

18   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

19   known that it did not comply with emission standards; that its emission treatment system was

20   designed to de-activate during real-world driving conditions; and that it could not achieve the

21   advertised towing power, performance, and/or fuel economy without cheating emission tests.

22   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

23   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

713

1   not concealed the unauthorized emission control devices.

2       688.    Plaintiff, Michael Crips (for the purpose of this paragraph, "Plaintiff"), a citizen of

3   the State of Indiana residing in the City of Muncie, bought a 2015 Dodge Ram 1500 EcoDiesel®

4   (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Tom

5   O'Brien Chrysler Jeep Dodge Ram, an authorized FCA dealer in Indianapolis, Indiana. Plaintiff

6   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to O'Brien Chrysler Jeep Dodge Ram to purchase the

11  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12  its fuel economy and performance. These representations, along with the advertised fuel economy,

13  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19  comply with emission standards; that its emission treatment system was designed to de-activate

20  during real-world driving conditions; and that it could not achieve the advertised towing power,

21  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

714

1    unauthorized emission control devices.

2        689.    Plaintiff, Michael A. Scott (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Georgia residing in the City of Musella, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 14,

5    2016, at Jimmy Britt Chrysler Dodge Jeep Ram, an authorized FCA dealer in Dublin, Georgia.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Jimmy Britt Chrysler Dodge Jeep Ram to purchase the

11   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12   its fuel economy and performance. These representations, along with the advertised fuel economy,

13   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19   comply with emission standards; that its emission treatment system was designed to de-activate

20   during real-world driving conditions; and that it could not achieve the advertised towing power,

21   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

715

1  unauthorized emission control devices.

2       690.    Plaintiff, Mike Shelton (for the purpose of this paragraph, "Plaintiff"), a citizen of

3  the State of Alabama residing in the City of Troy, bought a 2014 Jeep Grand Cherokee EcoDiesel®

4  (for the purpose of this paragraph, the "Subject Vehicle") on or about January 12, 2015, at Rocky

5  Williams Premier Budget Cars, an authorized FCA dealer in Lebanon, Tennessee. Plaintiff decided

6  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

7  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on

8  which the Subject Vehicles were represented as environmentally friendly, having low emissions

9  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

10  Vehicles.  When Plaintiff went to Rocky Williams Premier Budget Cars to purchase the Subject

11  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12  economy and performance. These representations, along with the advertised fuel economy, were

13  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19  emission standards; that its emission treatment system was designed to de-activate during real-

20  world driving conditions; and that it could not achieve the advertised towing power, performance,

21  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

716

1    control devices.

2         691.    Plaintiff, Sam Ussery (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Georgia residing in the City of Dublin, bought a 2016 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about January 3, 2017, at Jimmy

5    Britt Dodge Jeep Ram, an authorized FCA dealer in Dublin, Georgia. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Jimmy Britt Dodge Jeep Ram to purchase the Subject Vehicle, the sales

11   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

12   performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

717

1    devices.

2          692.    Plaintiff, Seymour Bidwell (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Oklahoma residing in the City of Canute, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2015,

5    at James O'Neal Chrysler Dodge Jeep Ram, an authorized FCA dealer in Breman, Georgia.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to James O'Neal Chrysler Dodge Jeep Ram to purchase

11   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

12   including its fuel economy and performance. These representations, along with the advertised fuel

13   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

14   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

15   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

16   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

17   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

18   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

19   that it did not comply with emission standards; that its emission treatment system was designed to

20   de-activate during real-world driving conditions; and that it could not achieve the advertised

21   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

22   suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

23   not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

718

1    concealed the unauthorized emission control devices.

2        693.    Plaintiff, Jimmy Schroeger (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Texas residing in the City of Plato, bought a 2015 Dodge Ram 1500 EcoDiesel®

4    (for the purpose of this paragraph, the "Subject Vehicle") on or about April 18, 2017, at Davidson

5    Ford, an authorized FCA dealer in Watertown, New York. Plaintiff decided to buy the Subject

6    Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

7    emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

8    Vehicles were represented as environmentally friendly, having low emissions and good fuel

9    economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

10   Plaintiff went to Davidson Ford to purchase the Subject Vehicle, the sales associate touted the

11   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

719

694.     Plaintiff, Christian Lizama (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Oviedo, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Milton Ruben Chrysler Dodge Jeep Ram, an authorized FCA dealer in Augusta, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Milton Ruben Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

720

695.     Plaintiff, Anthony J. Eiermann (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Snellville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 15, 2015, at Gwinnett Chrysler, an authorized FCA dealer in Stone Mountain, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the RAM website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Gwinnett Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

721

696.     Plaintiff, Brandon & Katherine Laurens (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Laurens, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 11, 2015, at Star Dodge, an authorized FCA dealer in Macon, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Star Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

697.     Plaintiff, Gary Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Indiana residing in the City of Lawrenceburg, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 6, 2016, at Salvage Auction, an authorized FCA dealer in Cincinnati, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Salvage Auction to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

698.    Plaintiff, Matthew Swanson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Ball Ground, bought a 2015 Dodge Ram

1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Auto Nation Chrysler Dodge Jeep Ram, an authorized FCA dealer in Johnson City, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Auto Nation Chrysler Dodge jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

699.    Plaintiff, Richard H. & Shelia Renee McCoy (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Mount Pleasant, bought a 2015

Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 30, 2016, at Oxmoor Chrysler Dodge Jeep Ram, an authorized FCA dealer in Louisville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Oxmoor Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

700.     Plaintiff, Clifton Bailey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi residing in the City of Webb, bought a 2016 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about June 22, 2016, at Cannon Chrysler Dodge Jeep Ram, an authorized FCA dealer in Greenwood, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Cannon Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

701.     Plaintiff, Nicholas M. & Dana Golowich (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Acworth, bought a 2016 Dodge

Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 4, 2018, at Phillips Buick GMC, an authorized FCA dealer in Fruitland Park, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Phillips Buick GMC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

702.    Plaintiff, Wayne Guyer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Tarrytown, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Woody Folsom Chrysler Dodge Jeep Ram, an authorized FCA dealer in Vidalia, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Woody Folsom Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

703.    Plaintiff, John Oliver (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of South Bend, bought a 2015 Dodge Ram 1500

728

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 24, 2014, at Country Auto Center, an authorized FCA dealer in Plymouth, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Country Auto Center to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

704.     Plaintiff, Michael Donawerth (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Guilford, bought a 2015 Dodge Ram 1500

729

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Batesville Chrysler Dodge Jeep Inc., an authorized FCA dealer in Batesville, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Batesville Chrysler Dodge Jeep Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

705.     Plaintiff, William Hunt (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Tifton, bought a 2015 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about March 31, 2018, at Griffin Chrysler Dodge Jeep Ram, an authorized FCA dealer in Tifton, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Griffin Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

706.     Plaintiff, Andrew Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Appling, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 26, 2017, at Clay Cooley Chrysler Jeep Dodge Ram, an authorized FCA dealer in Irving, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Clay Cooley Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

707.    Plaintiff, Judy & Tom Crawford (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Elijay, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 14, 2016, at Jasper Jeep Chrysler Doge Ram, an authorized FCA dealer in Jasper, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jasper Jeep Chrysler Doge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

708.     Plaintiff, Michael Cash (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Rydal, bought a 2014 Dodge Ram 1500 EcoDiesel®

1    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2014, at

2    Landmark Dodge Chrysler Jeep Ram, an authorized FCA dealer in Morrow, Georgia. Plaintiff

3    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

4    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

5    website, on which the Subject Vehicles were represented as environmentally friendly, having low

6    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

7    Subject Vehicles.  When Plaintiff went to Landmark Dodger Chrysler Jeep Ram to purchase the

8    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

9    its fuel economy and performance. These representations, along with the advertised fuel economy,

10   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

11   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

12   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

13   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

14   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

15   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

16   comply with emission standards; that its emission treatment system was designed to de-activate

17   during real-world driving conditions; and that it could not achieve the advertised towing power,

18   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

19   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

20   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

21   unauthorized emission control devices.

22        709.    Plaintiff, Colt W. Knight (for the purpose of this paragraph, "Plaintiff"), a citizen

23   of the State of Maine residing in the City of Garland, bought a 2016 Dodge Ram 1500 EcoDiesel®

1    (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at

2    Kernersville Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kernersville, North Carolina.

3    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

4    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

5    website, on which the Subject Vehicles were represented as environmentally friendly, having low

6    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

7    Subject Vehicles.  When Plaintiff went to Kernersville Chrysler Dodge Jeep Ram to purchase the

8    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

9    its fuel economy and performance. These representations, along with the advertised fuel economy,

10   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

11   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

12   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

13   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

14   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

15   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

16   comply with emission standards; that its emission treatment system was designed to de-activate

17   during real-world driving conditions; and that it could not achieve the advertised towing power,

18   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

19   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

20   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

21   unauthorized emission control devices.

22          710.    Plaintiff, James & Suan Cherry (for the purpose of this paragraph, "Plaintiff"), a

23   citizen of the State of Indiana residing in the City of Greenfield, bought a 2014 Jeep Grand

735

Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 22, 2015, at Ray Skillman, an authorized FCA dealer in Greenwood, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ray Skillman to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

711. Plaintiff, Adam Ausura (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Vermont residing in the City of Proctorsville, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 20, 2015, at Dan's Jeep Chrysler Dodge, Inc., an authorized FCA dealer in Westborough, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dan's Jeep Chrysler Dodge, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

712.    Plaintiff, John Lemelle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Liberty, bought a 2015 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2014, at Ray Brandt Chrysler Dodge Jeep, an authorized FCA dealer in Harvey, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ray Brandt Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

713.    Plaintiff, Vincent Princeotto (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Richmond Hill, bought a 2015 Dodge Ram

1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 30, 2015, at Chrysler Dodge Jeep Ram South Savannah, an authorized FCA dealer in Savannah, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chrysler Dodge Jeep Ram South Savannah to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

714.    Plaintiff, Beverly Gayle VanArkel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wyoming residing in the City of Hot Springs, bought a 2015 Jeep Grand

Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 30, 2015, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

715.    Plaintiff, Tyler Perkins (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Saint Augustine, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 27, 2017, at Finnicum Motor Company, an authorized FCA dealer in Leesburg, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Finnicum Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

716.    Plaintiff, Andrew Jesse (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Wareham, bought a 2014 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 23, 2016, at Central Jeep Chrysler Dodge Ram of Raynham, an authorized FCA dealer in Raynham, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Central jeep Chrysler Dodge Ram of Raynham to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

717.    Plaintiff, Richard Carr (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Keysville, bought a 2016 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at Milton Ruben Chrysler Dodge Jeep Ram, an authorized FCA dealer in August, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Milton Ruben Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

718.    Plaintiff, Douglas Owen Thompson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Kingsville, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 7, 2015, at Ray Brandt Chrysler Dodge Jeep, an authorized FCA dealer in Harvey, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ray Brandt Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

719.     Plaintiff, Jennifer & Richard Stevens (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Milan, bought a 2015 Dodge

Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2015, at Batesville Chrysler Dodge Jeep Inc., an authorized FCA dealer in Batesville, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Batesville Chrysler Dodge Jeep Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

720.     Plaintiff, Roger Mack (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Flowery Branch, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 8, 2018, at Carriage Mitsubishi, an authorized FCA dealer in Gainsville, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Carriage Mitsubishi to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

721.    Plaintiff, Robert Prijatelj, II (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Charlestown, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at

746

Cross Jeep, an authorized FCA dealer in Louisville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Cross Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

722.    Plaintiff, James Gisonna (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Buford, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2015, at Ourisman Chrysler Jeep Dodge of Alexandria, an authorized FCA dealer in Alexandria, Virginia.

Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ourisman Chrysler Jeep Dodge of Alexandria to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

723.    Plaintiff, Shawn Patrick McNew (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Acworth, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 6, 2018, at Ricart, an authorized FCA dealer in Groveport, Ohio. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ricart to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

724.    Plaintiff, Maurice Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Savannah, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2015, at Carl Gregory Chrysler Jeep Dodge Ram of Savannah, an authorized FCA dealer in Savannah, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Carl Gregory Chrysler Jeep Dodge Ram of Savannah to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

725.    Plaintiff, Troy Atcheson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Loganville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2017, from a Private Party, in Loganville, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and

750

fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to a private party in Loganville to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

726.    Plaintiff, Brody Sheppard (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Dresden, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 15, 2014, at Troncalli Chrysler Dodge Jeep, an authorized FCA dealer in Cumming, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Troncalli Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

727.    Plaintiff, Larry Garrison (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Frankfort, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 12, 2015, at Twin City Dodge, Inc., an authorized FCA dealer in Lafayette, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Twin City Dodge, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

728.    Plaintiff, Shawn Craig (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Indianapolis, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2017, at Community Chrysler Dodge Ram of Martinsville Indiana, an authorized FCA dealer in Martinsville, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Community Chrysler Dodge Ram of Martinsville Indiana to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

729.    Plaintiff, Robert Pitts, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Lawrenceville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 2, 2017, at Rick Hendricks Dodge Jeep Ram, an authorized FCA dealer in Duluth, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Rick Hendricks Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

730.    Plaintiff, Nathan Groom (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Saint Marys, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 25, 2014, at Jacksonville Chrysler Jeep Dodge and Ram, an authorized FCA dealer in Jacksonville, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Jacksonville Chrysler Jeep Dodge and Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

731.    Plaintiff, Duane E. Morton, Sr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Forest Park, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 28, 2015, at Landmark Dodger Chrysler Jeep, an authorized FCA dealer in Marrow, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Landmark Dodger Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

732.    Plaintiff, Kent Jenkins (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada residing in the City of Sparks, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 10, 2015, at Elk Grove Dodge Chrysler Jeep, an authorized FCA dealer in Elk Grove, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Elk Grove Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

733.    Plaintiff, Mark Spaugh (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Anderson, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 15, 2018, at Sterling Chrysler Dodge Jeep Ram, an authorized FCA dealer in Navasota, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Sterling Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

734.    Plaintiff, Ricardo Abraham Soto (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Midland, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 21, 2016, at Don Davis Dodge Chrysler Jeep, an authorized FCA dealer in Arlington, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Don Davis Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

735.    Plaintiff, Charles E. & Carol S. Crozier (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Saint Augustine, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 27, 2016, at Atlantic Dodge, an authorized FCA dealer in Saint Augustine, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Atlantic Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

736.    Plaintiff, Chris Dougherty (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of West Des Moines, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Granger Motors, an authorized FCA dealer in Granger, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel

economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Granger Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

737.    Plaintiff, Tim & LeAnne Kindred (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wyoming residing in the City of Powell, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Dave Smith, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

1    Plaintiff went to Dave Smith to purchase the Subject Vehicle, the sales associate touted the Subject

2    Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

3    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

4    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

5    could perform as advertised only by emitting NOx at levels that are greater than advertised and

6    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

7    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

8    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

9    would have paid less for it, had he/she known that it did not comply with emission standards; that

10   its emission treatment system was designed to de-activate during real-world driving conditions;

11   and that it could not achieve the advertised towing power, performance, and/or fuel economy

12   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

13   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

14   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

15          738.   Plaintiff, Jeffrey Rittenhouse (for the purpose of this paragraph, "Plaintiff"), a

16   citizen of the State of Wisconsin residing in the City of Sheboygan, bought a 2014 Dodge Ram

17   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September

18   2, 2014, at 5 Corners Dodge Chrysler Jeep Ram, an authorized FCA dealer in Cedarburg,

19   Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

20   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

21   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

22   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

23   commercials about the Subject Vehicles.  When Plaintiff went to 5 Corners Dodge Chrysler Jeep

Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

attributes, including its fuel economy and performance. These representations, along with the

advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

emission control devices designed to cheat emission tests and to deceive consumers and regulators.

Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

known that it did not comply with emission standards; that its emission treatment system was

designed to de-activate during real-world driving conditions; and that it could not achieve the

advertised towing power, performance, and/or fuel economy without cheating emission tests.

Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

not concealed the unauthorized emission control devices.

739.    Plaintiff, Lochland D. Jeffries (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Illinois residing in the City of Poplar Grove, bought a 2016 Dodge Ram

1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January

13, 2017, at Bob Moore Chrysler Dodge, an authorized FCA dealer in Oklahoma, Oklahoma.

Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Bob Moore Chrysler Dodge to purchase the Subject

Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

740. Plaintiff, Melissa Maldonado (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Crestview, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 27, 2016, at Bob Tyler Toyota, an authorized FCA dealer in Pensacola, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bob Tyler Toyota to purchase the Subject Vehicle, the sales associate

765

1   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

2   These representations, along with the advertised fuel economy, were among the primary reasons

3   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

4   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

5   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8   would have paid less for it, had he/she known that it did not comply with emission standards; that

9   its emission treatment system was designed to de-activate during real-world driving conditions;

10  and that it could not achieve the advertised towing power, performance, and/or fuel economy

11  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14          741.    Plaintiff, Van Smith, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of

15  the State of Michigan residing in the City of Marlette, leased a 2016 Dodge Ram 1500 EcoDiesel®

16  (for the purpose of this paragraph, the "Subject Vehicle") on or about July 27, 2016, at Moore

17  Motor Sales, an authorized FCA dealer in Caro, Michigan. Plaintiff decided to buy the Subject

18  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

19  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

20  Vehicles were represented as environmentally friendly, having low emissions and good fuel

21  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

22  Plaintiff went to Moore Motor Sales to lease the Subject Vehicle, the sales associate touted the

23  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

766

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

742.   Plaintiff, Vaughan Wooden (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Dakota residing in the City of Williston, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2018, at Williston Auto, an authorized FCA dealer in Williston, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Williston Auto to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12          743.   Plaintiff, Willard & Corina Ragland (for the purpose of this paragraph, "Plaintiff"),

13   a citizen of the State of Oklahoma residing in the City of Clayton, bought a 2014 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 23,

15   2016, at Patriot Chrysler Dodge Jeep, an authorized FCA dealer in McAlester, Oklahoma. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Patriot Chrysler Dodge Jeep to purchase the Subject

21   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22   economy and performance. These representations, along with the advertised fuel economy, were

23   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

744.    Plaintiff, Jody Killmer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington residing in the City of Kennewick, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 19, 2015, at Excalibur Auto Group, an authorized FCA dealer in Kennewick, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Excalibur Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

1   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6   standards; that its emission treatment system was designed to de-activate during real-world driving

7   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10  or would have paid less for it, had Defendants not concealed the unauthorized emission control

11  devices.

12      745.    Plaintiff, Greg Rafalco (for the purpose of this paragraph, "Plaintiff"), a citizen of

13  the State of Pennsylvania residing in the City of Sarver, bought a 2015 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015,

15  at #1 Cochran Chrysler Dodge Jeep Ram, an authorized FCA dealer in Natrona Heights,

16  Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

17  that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

18  visiting the Ram website, on which the Subject Vehicles were represented as environmentally

19  friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

20  commercials about the Subject Vehicles.  When Plaintiff went to Cochran Chrysler Dodge Jeep

21  Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

22  attributes, including its fuel economy and performance. These representations, along with the

23  advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

770

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

746.    Plaintiff, Brian Steadman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Genoa City, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2017, at Kunes Country Chrysler Dodge Jeep, an authorized FCA dealer in Elkhorn, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Kunes Country Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

771

1    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6    comply with emission standards; that its emission treatment system was designed to de-activate

7    during real-world driving conditions; and that it could not achieve the advertised towing power,

8    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11   unauthorized emission control devices.

12          747.    Plaintiff, Mack William & Debra Ann Nowlin (for the purpose of this paragraph,

13   "Plaintiff"), a citizen of the State of Kansas residing in the City of Clearwater, bought a 2014

14   Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

15   about June 18, 2014, at Larry H. Miller Chrysler Dodge Bountiful, an authorized FCA dealer in

16   Bountiful, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

17   representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

18   Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

19   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

20   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larry H. Miller

21   Chrysler Dodge Bountiful to purchase the Subject Vehicle, the sales associate touted the Subject

22   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

23   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

772

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12       748.    Plaintiff, Timothy & Nancy Schindbeck (for the purpose of this paragraph,

13   "Plaintiff"), a citizen of the State of Minnesota residing in the City of Squaw Lake, bought a 2015

14   Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

15   about March 14, 2015, at Ziegler Dodge, an authorized FCA dealer in Downers Grove, Illinois.

16   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Ziegler Dodge to purchase the Subject Vehicle, the sales

21   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22   performance. These representations, along with the advertised fuel economy, were among the

23   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

773

that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

749. Plaintiff, Justin Graves (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of St. Louis, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2016, from a Private Party in St. Louis, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to a private party in St. Louis, Missouri to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

750.    Plaintiff, Willie Bergeron (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Eunice, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2017, at Acadiana Dodge Chrysler Jeep Ram, an authorized FCA dealer in Lafayette, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Acadiana Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

751.    Plaintiff, Warren Gardinier (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada residing in the City of Las Vegas, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2017, at Team Ford Lincoln, an authorized FCA dealer in Las Vegas, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Team Ford Lincoln to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

1   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4   would have paid less for it, had he/she known that it did not comply with emission standards; that

5   its emission treatment system was designed to de-activate during real-world driving conditions;

6   and that it could not achieve the advertised towing power, performance, and/or fuel economy

7   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10        752.    Plaintiff, Shawn C. Jacobs (for the purpose of this paragraph, "Plaintiff"), a citizen

11   of the State of Wisconsin residing in the City of Saint Croix, bought a 2015 Dodge Ram 1500

12   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015, at

13   Roseville Chrysler, an authorized FCA dealer in Roseville, Minnesota. Plaintiff decided to buy the

14   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

15   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

16   Subject Vehicles were represented as environmentally friendly, having low emissions and good

17   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

18   When Plaintiff went to Roseville Chrysler to purchase the Subject Vehicle, the sales associate

19   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

20   These representations, along with the advertised fuel economy, were among the primary reasons

21   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

22   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

23   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3  would have paid less for it, had he/she known that it did not comply with emission standards; that

4  its emission treatment system was designed to de-activate during real-world driving conditions;

5  and that it could not achieve the advertised towing power, performance, and/or fuel economy

6  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9          753.    Plaintiff, Vince McBride (for the purpose of this paragraph, "Plaintiff"), a citizen

10  of the State of Oklahoma residing in the City of Norman, bought a 2015 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015,

12  at Bob Moore Ford, an authorized FCA dealer in Oklahoma City, Oklahoma. Plaintiff decided to

13  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

14  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

15  Subject Vehicles were represented as environmentally friendly, having low emissions and good

16  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17  When Plaintiff went to Bob Moore Ford to purchase the Subject Vehicle, the sales associate touted

18  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

20  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

21  could perform as advertised only by emitting NOx at levels that are greater than advertised and

22  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

1    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2    would have paid less for it, had he/she known that it did not comply with emission standards; that

3    its emission treatment system was designed to de-activate during real-world driving conditions;

4    and that it could not achieve the advertised towing power, performance, and/or fuel economy

5    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8        754.    Plaintiff, David A. Nakkula (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of Michigan residing in the City of Troy, bought a 2016 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 13, 2016,

11   at Golling Chrysler Jeep, an authorized FCA dealer in Bloomfield Hills, Michigan. Plaintiff

12   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Golling Chrysler Jeep to purchase the Subject Vehicle,

17   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

18   and performance. These representations, along with the advertised fuel economy, were among the

19   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

20   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

21   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

22   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

23   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

779

1    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

2    standards; that its emission treatment system was designed to de-activate during real-world driving

3    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

4    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

5    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

6    or would have paid less for it, had Defendants not concealed the unauthorized emission control

7    devices.

8        755.    Plaintiff, Tamara Kay Domonoske (for the purpose of this paragraph, "Plaintiff"),

9    a citizen of the State of Iowa residing in the City of Ventura, bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 20, 2015,

11   at Birdnow Motor, an authorized FCA dealer in Oelwein, Iowa. Plaintiff decided to buy the Subject

12   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

13   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

14   Vehicles were represented as environmentally friendly, having low emissions and good fuel

15   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

16   Plaintiff went to Birdnow Motor to purchase the Subject Vehicle, the sales associate touted the

17   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

18   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

19   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

20   could perform as advertised only by emitting NOx at levels that are greater than advertised and

21   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7         756.    Plaintiff, William Eason (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Oklahoma residing in the City of Tulsa, bought a 2016 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 18,

10   2012, at Don Vance Auto Group, an authorized FCA dealer in Marshfield, Missouri. Plaintiff

11   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Don Vance Auto Group to purchase the Subject Vehicle,

16   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

17   and performance. These representations, along with the advertised fuel economy, were among the

18   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7         757.    Plaintiff, Hector Montano (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Nevada residing in the City of Las Vegas, bought a 2014 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014,

10   at Earnhardt Chrysler Jeep Dodge Ram, an authorized FCA dealer in Gilbert, Arizona. Plaintiff

11   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Earnhardt Chrysler Jeep Dodge Ram to purchase the

16   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

17   its fuel economy and performance. These representations, along with the advertised fuel economy,

18   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

19   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

20   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

21   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

22   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

23   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

1   comply with emission standards; that its emission treatment system was designed to de-activate

2   during real-world driving conditions; and that it could not achieve the advertised towing power,

3   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

4   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

5   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

6   unauthorized emission control devices.

7           758.    Plaintiff, Christina Kennedy (for the purpose of this paragraph, "Plaintiff"), a

8   citizen of the State of Florida residing in the City of Parrish, bought a 2014 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2014,

10  at Firkins Chrysler Jeep Dodge, an authorized FCA dealer in Bradenton, Florida. Plaintiff decided

11  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

12  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

13  which the Subject Vehicles were represented as environmentally friendly, having low emissions

14  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

15  Vehicles.  When Plaintiff went to Firkins Chrysler Jeep Dodge to purchase the Subject Vehicle,

16  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

17  and performance. These representations, along with the advertised fuel economy, were among the

18  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7         759.    Plaintiff, David Waltman (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Oklahoma residing in the City of Yukon, bought a 2016 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

10   2015, at Blazer Motors, an authorized FCA dealer in Oklahoma City, Oklahoma. Plaintiff decided

11   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

12   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

13   which the Subject Vehicles were represented as environmentally friendly, having low emissions

14   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

15   Vehicles.  When Plaintiff went to Blazer Motors to purchase the Subject Vehicle, the sales

16   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

17   performance. These representations, along with the advertised fuel economy, were among the

18   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7        760.    Plaintiff, Timothy Graham (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Pennsylvania residing in the City of Kittanning, bought a 2015 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015,

10   at Kuntz Dodge & Chrysler, an authorized FCA dealer in Mahaffey, Pennsylvania. Plaintiff

11   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Kuntz Dodge & Chrysler to purchase the Subject

16   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17   economy and performance. These representations, along with the advertised fuel economy, were

18   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

761.    Plaintiff, Dawn Noll (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Oley, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2015, at Fred Beans Dodge Chrysler Jeep, an authorized FCA dealer in Doylestown, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fred Beans Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

762.    Plaintiff, Bryan Hastings & Jessica Bolling (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Winston Salem, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2018, at Kernersville Chrysler Doge Jeep Ram, an authorized FCA dealer in Kernersville, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Kernersville Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

763.     Plaintiff, Garrett Dantzler (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Blanchard, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2018, at Ferguson Buick GMC, an authorized FCA dealer in Norman, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ferguson Buick GMC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7           764.    Plaintiff, Michael Mavromatis (for the purpose of this paragraph, "Plaintiff"), a

8    citizen of the State of Louisiana residing in the City of Gretna, bought a 2015 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 19,

10   2015, at Premier Chrysler Jeep, Dodge, an authorized FCA dealer in New Orleans, Louisiana.

11   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Premier Chrysler Jeep, Dodge to purchase the Subject

16   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17   economy and performance. These representations, along with the advertised fuel economy, were

18   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

789

1   emission standards; that its emission treatment system was designed to de-activate during real-

2   world driving conditions; and that it could not achieve the advertised towing power, performance,

3   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

4   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

5   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

6   control devices.

7       765.    Plaintiff, Thomas Newton (for the purpose of this paragraph, "Plaintiff"), a citizen

8   of the State of New York residing in the City of Spencertown, bought a 2015 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015, at

10  Armory Chrysler Dodge Jeep Ram FIAT, an authorized FCA dealer in Albany, New York.

11  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13  website, on which the Subject Vehicles were represented as environmentally friendly, having low

14  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15  Subject Vehicles.  When Plaintiff went to Armory Chrysler Dodge Jeep Ram FIAT to purchase

16  the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

17  including its fuel economy and performance. These representations, along with the advertised fuel

18  economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

19  purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

20  emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

21  aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

22  control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

23  would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

790

1  that it did not comply with emission standards; that its emission treatment system was designed to

2  de-activate during real-world driving conditions; and that it could not achieve the advertised

3  towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

4  suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

5  not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

6  concealed the unauthorized emission control devices.

7  766.   Plaintiff, Travis Lee Campbell (for the purpose of this paragraph, "Plaintiff"), a

8  citizen of the State of North Carolina residing in the City of Walnut Cove, bought a 2014 Dodge

9  Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April

10  10, 2014, at North Point Chrysler Jeep Dodge Ram, an authorized FCA dealer in Winston-Salem,

11  North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

12  that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

13  visiting the Ram website, on which the Subject Vehicles were represented as environmentally

14  friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

15  commercials about the Subject Vehicles.  When Plaintiff went to North Point Chrysler Jeep Dodge

16  Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

17  attributes, including its fuel economy and performance. These representations, along with the

18  advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

19  the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

20  only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

21  Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

22  emission control devices designed to cheat emission tests and to deceive consumers and regulators.

23  Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

791

1    known that it did not comply with emission standards; that its emission treatment system was

2    designed to de-activate during real-world driving conditions; and that it could not achieve the

3    advertised towing power, performance, and/or fuel economy without cheating emission tests.

4    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

5    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

6    not concealed the unauthorized emission control devices.

7            767.    Plaintiff, Todd Dombek (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Colorado residing in the City of Avon, bought a 2016 Dodge Ram 1500 EcoDiesel®

9    (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2018, at Groove

10   Silverthorne, an authorized FCA dealer in Silverthorne, Colorado. Plaintiff decided to buy the

11   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Groove Silverthorne to purchase the Subject Vehicle, the sales associate

16   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17   These representations, along with the advertised fuel economy, were among the primary reasons

18   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1   its emission treatment system was designed to de-activate during real-world driving conditions;

2   and that it could not achieve the advertised towing power, performance, and/or fuel economy

3   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6          768.    Plaintiff, Wade Rodney Aylett (for the purpose of this paragraph, "Plaintiff"), a

7   citizen of the State of Oregon residing in the City of Irrigon, bought a 2014 Jeep Grand Cherokee

8   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 17, 2017,

9   at Tom Denchel Fort Country, an authorized FCA dealer in Hermiston, Oregon. Plaintiff decided

10  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

11  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on

12  which the Subject Vehicles were represented as environmentally friendly, having low emissions

13  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

14  Vehicles.  When Plaintiff went to Tom Denchel Fort Country to purchase the Subject Vehicle, the

15  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

16  performance. These representations, along with the advertised fuel economy, were among the

17  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

18  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

19  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

20  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

21  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

22  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

23  standards; that its emission treatment system was designed to de-activate during real-world driving

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

769.    Plaintiff, Todd Dana Strickland (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Hastings, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 19, 2017, at Thayer Honda, an authorized FCA dealer in Bowling Green, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to ** to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

770.     Plaintiff, Jayne Marie Edwards (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Stockholm, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014, at Chrysler Winona, an authorized FCA dealer in Winona, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chrysler Winona to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

1    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

3    or would have paid less for it, had Defendants not concealed the unauthorized emission control

4    devices.

5          771.    Plaintiff, Matthew Russell Peters (for the purpose of this paragraph, "Plaintiff"), a

6    citizen of the State of Kansas residing in the City of Goddard, bought a 2016 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 21, 2016,

8    at Davis-Moore Dodge Jeep Ram, an authorized FCA dealer in Wichita, Kansas. Plaintiff decided

9    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

10   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

11   which the Subject Vehicles were represented as environmentally friendly, having low emissions

12   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

13   Vehicles.  When Plaintiff went to Davis-Moore Dodge Jeep Ram to purchase the Subject Vehicle,

14   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

15   and performance. These representations, along with the advertised fuel economy, were among the

16   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22   standards; that its emission treatment system was designed to de-activate during real-world driving

23   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

796

economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

772.    Plaintiff, Frederick B. May (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Columbus, bought a 2015 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2015, at Friendship Chrysler Dodge Jeep, an authorized FCA dealer in Forest City, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Friendship Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance,

1    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

2    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

3    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

4    control devices.

5       773. Plaintiff, Derle Mork (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Oklahoma residing in the City of Ponca City, bought a 2016 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016,

8    at Zeller Motor Company Incorporated, an authorized FCA dealer in Arkansas City, Kansas.

9    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to Zeller Motor Company Incorporated to purchase the

14   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

15   its fuel economy and performance. These representations, along with the advertised fuel economy,

16   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

17   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

18   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

19   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

20   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

21   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

22   comply with emission standards; that its emission treatment system was designed to de-activate

23   during real-world driving conditions; and that it could not achieve the advertised towing power,

1    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

2    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

3    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

4    unauthorized emission control devices.

5           774.    Plaintiff, Josh & Amber Gwillim (for the purpose of this paragraph, "Plaintiff"), a

6    citizen of the State of Kansas residing in the City of Oswego, bought a 2015 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 21,

8    2015, at David Stanley Norman, an authorized FCA dealer in Norman, Oklahoma. Plaintiff

9    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to David Stanley Norman to purchase the Subject Vehicle,

14   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

15   and performance. These representations, along with the advertised fuel economy, were among the

16   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22   standards; that its emission treatment system was designed to de-activate during real-world driving

23   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

1    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

3    or would have paid less for it, had Defendants not concealed the unauthorized emission control

4    devices.

5         775.    Plaintiff, Kerrin Tomek (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of North Carolina residing in the City of Wake Forrest, bought a 2014 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2017,

8    at Chris Letih Ram, an authorized FCA dealer in Wake Forest, North Carolina. Plaintiff decided

9    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

10   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

11   which the Subject Vehicles were represented as environmentally friendly, having low emissions

12   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

13   Vehicles.  When Plaintiff went to Chris Letih Ram to purchase the Subject Vehicle, the sales

14   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

15   performance. These representations, along with the advertised fuel economy, were among the

16   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22   standards; that its emission treatment system was designed to de-activate during real-world driving

23   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

1    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

2    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

3    or would have paid less for it, had Defendants not concealed the unauthorized emission control

4    devices.

5           776.    Plaintiff, Theo Reginal Thibodeaux (for the purpose of this paragraph, "Plaintiff"),

6    a citizen of the State of Louisiana residing in the City of Rayne, bought a 2015 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 11,

8    2018, at Sterling Automotive Group, an authorized FCA dealer in Opelousas, Louisiana. Plaintiff

9    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

11    website, on which the Subject Vehicles were represented as environmentally friendly, having low

12    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13    Subject Vehicles.  When Plaintiff went to Sterling Automotive Group to purchase the Subject

14    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

15    economy and performance. These representations, along with the advertised fuel economy, were

16    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

17    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

18    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

19    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

20    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

21    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

22    emission standards; that its emission treatment system was designed to de-activate during real-

23    world driving conditions; and that it could not achieve the advertised towing power, performance,

and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

777.     Plaintiff, Michael Kuhrt (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey residing in the City of Kearny, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 6, 2017, at Route 22 Nissan, an authorized FCA dealer in Hillside, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Route 22 Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4         778.    Plaintiff, Judith Mary Bressler (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of Florida residing in the City of Oviedo, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 22,

7    2014, at Titusville Chrysler Dodge Jeep, an authorized FCA dealer in Titusville, Florida. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Titusville Chrysler Dodge Jeep to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3   control devices.

4       779.    Plaintiff, Keith Arnold (for the purpose of this paragraph, "Plaintiff"), a citizen of

5   the State of Michigan residing in the City of Imlay City, bought a 2014 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2014,

7   at Sterling Heights Dodge, an authorized FCA dealer in Sterling Heights, Michigan. Plaintiff

8   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10  website, on which the Subject Vehicles were represented as environmentally friendly, having low

11  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12  Subject Vehicles.  When Plaintiff went to Sterling Heights Dodge to purchase the Subject Vehicle,

13  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

14  and performance. These representations, along with the advertised fuel economy, were among the

15  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

16  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

17  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

18  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

19  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

20  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

21  standards; that its emission treatment system was designed to de-activate during real-world driving

22  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

23  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

804

1    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

2    or would have paid less for it, had Defendants not concealed the unauthorized emission control

3    devices.

4          780.    Plaintiff, Jamison Stanley & Joli A. Elder (for the purpose of this paragraph,

5    "Plaintiff"), a citizen of the State of South Carolina residing in the City of Lancaster, bought a

6    2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle")

7    on or about July 5, 2016, at Indian Trail Jeep Dodge Chrysler, an authorized FCA dealer in

8    Monroe, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

9    representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

10   Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as

11   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

12   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Indian Trail

13   Jeep Dodge Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject

14   Vehicle's  EcoDiesel®  attributes,  including  its  fuel  economy  and  performance.  These

15   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17   could perform as advertised only by emitting NOx at levels that are greater than advertised and

18   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

1   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4       781.   Plaintiff, Patrick & Jill Kons (for the purpose of this paragraph, "Plaintiff"), a

5   citizen of the State of Montana residing in the City of Great Falls, bought a 2015 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015,

7   at Lithia Chrysler Dodge Jeep, an authorized FCA dealer in Great Falls, Montana. Plaintiff decided

8   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

9   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

10  which the Subject Vehicles were represented as environmentally friendly, having low emissions

11  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

12  Vehicles.  When Plaintiff went to Lithia Chrysler Dodge Jeep to purchase the Subject Vehicle, the

13  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

14  performance. These representations, along with the advertised fuel economy, were among the

15  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

16  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

17  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

18  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

19  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

20  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

21  standards; that its emission treatment system was designed to de-activate during real-world driving

22  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

23  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

1    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

2    or would have paid less for it, had Defendants not concealed the unauthorized emission control

3    devices.

4         782.    Plaintiff, Timothy Bernard (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Wisconsin residing in the City of Milwaukee, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2016,

7    at Griffin's Hub Chrysler Jeep Dodge, an authorized FCA dealer in Milwaukee, Wisconsin.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Griffin's Hub Chrysler Jeep Dodge to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

807

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4         783.    Plaintiff, George & Katie Kaufman (for the purpose of this paragraph, "Plaintiff"),

5    a citizen of the State of New Jersey residing in the City of Hazlet, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

7    2015, at Dover Dodge, an authorized FCA dealer in Rockaway, New Jersey. Plaintiff decided to

8    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Dove Dodge to purchase the Subject Vehicle, the sales associate touted the

13   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        784.    Plaintiff, Adam Mckean & Elizabeth Barnes (for the purpose of this paragraph,

4    "Plaintiff"), a citizen of the State of Louisiana residing in the City of Tickfaw, bought a 2015

5    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

6    about December 31, 2017, at Community Motors, an authorized FCA dealer in Hammond,

7    Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

8    it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

9    the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

10   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

11   about the Subject Vehicles.  When Plaintiff went to Community Motors to purchase the Subject

12   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

13   economy and performance. These representations, along with the advertised fuel economy, were

14   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

15   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

16   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

17   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

18   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

19   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

20   emission standards; that its emission treatment system was designed to de-activate during real-

21   world driving conditions; and that it could not achieve the advertised towing power, performance,

22   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

23   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

1   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

2   control devices.

3       785.    Plaintiff, Leroy & Shalada Bengtson (for the purpose of this paragraph,

4   "Plaintiff"), a citizen of the State of Montana residing in the City of Columbia Falls, leased a 2016

5   Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

6   about August 15, 2016, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho.

7   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9   website, on which the Subject Vehicles were represented as environmentally friendly, having low

10  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11  Subject Vehicles.  When Plaintiff went to Dave Smith Motors to lease the Subject Vehicle, the

12  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13  performance. These representations, along with the advertised fuel economy, were among the

14  primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know

15  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18  tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle,

19  or would have paid less for it, had he/she known that it did not comply with emission standards;

20  that its emission treatment system was designed to de-activate during real-world driving

21  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23  proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or

would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

786.    Plaintiff, James & Tierra Applegate (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Applegate, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 12, 2015, at Corwin Dodge Ram FIAT, an authorized FCA dealer in Springfield, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Corwin Dodge Ram FIAT to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

1   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

2   control devices.

3         787.    Plaintiff, Paul Gambrill (for the purpose of this paragraph, "Plaintiff"), a citizen of

4   the State of Ohio residing in the City of Chesterland, bought a 2016 Dodge Ram 1500 EcoDiesel®

5   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 5, 2016, at Ganley

6   Village Chrysler Dodge Jeep, an authorized FCA dealer in Painesville, Ohio. Plaintiff decided to

7   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9   Subject Vehicles were represented as environmentally friendly, having low emissions and good

10  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11  When Plaintiff went to Ganley Village Chrysler Didge Jeep to purchase the Subject Vehicle, the

12  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13  performance. These representations, along with the advertised fuel economy, were among the

14  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20  standards; that its emission treatment system was designed to de-activate during real-world driving

21  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

1  or would have paid less for it, had Defendants not concealed the unauthorized emission control

2  devices.

3  788.  Plaintiff, Ernest & Selina Mascarenas (for the purpose of this paragraph,

4  "Plaintiff"), a citizen of the State of Colorado residing in the City of Pueblo, bought a 2015 Jeep

5  Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6  September 12, 2015, at Auto Nation Chrysler Jeep Arapahoe, an authorized FCA dealer in

7  Englewood, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

8  representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

9  Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as

10  environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

11  seeing television commercials about the Subject Vehicles.  When Plaintiff went to Auto Nation

12  Chrysler Jeep Arapahoe to purchase the Subject Vehicle, the sales associate touted the Subject

13  Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16  could perform as advertised only by emitting NOx at levels that are greater than advertised and

17  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

813

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        789.    Plaintiff, Casamere & William Creacy (for the purpose of this paragraph,

4    "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Cache, bought a 2014 Dodge

5    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6    December 27, 2016, at Toyota of Lawton, an authorized FCA dealer in Lawton, Oklahoma.

7    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Toyota of Lawton to purchase the Subject Vehicle, the

12   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13   performance. These representations, along with the advertised fuel economy, were among the

14   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20   standards; that its emission treatment system was designed to de-activate during real-world driving

21   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

1   or would have paid less for it, had Defendants not concealed the unauthorized emission control

2   devices.

3       790.    Plaintiff, Lisa S. & Kevin P. Speyrer (for the purpose of this paragraph, "Plaintiff"),

4   a citizen of the State of Louisiana residing in the City of Abbeville, bought a 2016 Dodge Ram

5   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 20,

6   2016, at Acadiana Dodge, an authorized FCA dealer in Lafayette, Louisiana. Plaintiff decided to

7   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9   Subject Vehicles were represented as environmentally friendly, having low emissions and good

10  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11  When Plaintiff went to Acadiana Dodge to purchase the Subject Vehicle, the sales associate touted

12  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15  could perform as advertised only by emitting NOx at levels that are greater than advertised and

16  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19  would have paid less for it, had he/she known that it did not comply with emission standards; that

20  its emission treatment system was designed to de-activate during real-world driving conditions;

21  and that it could not achieve the advertised towing power, performance, and/or fuel economy

22  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

815

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2        791.    Plaintiff, Thomas Castle (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of New York residing in the City of Angola, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 10,

5    2014, at Transitowne Jeep Chrysler Dodge Ram, an authorized FCA dealer in Elam, New York.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Transitowne Jeep Chrysler Dodge Ram to purchase the

11   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12   its fuel economy and performance. These representations, along with the advertised fuel economy,

13   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19   comply with emission standards; that its emission treatment system was designed to de-activate

20   during real-world driving conditions; and that it could not achieve the advertised towing power,

21   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

1    unauthorized emission control devices.

2         792.    Plaintiff, Daniel Martin (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Washington residing in the City of Everett, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1,

5    2016, at Rairdon's Chrysler Dodge Jeep Ram, an authorized FCA dealer in Kirkland, Washington.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Rairdon's Chrysler Dodge Jeep Ram to purchase the

11   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

12   its fuel economy and performance. These representations, along with the advertised fuel economy,

13   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

14   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

15   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

16   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

17   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

18   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

19   comply with emission standards; that its emission treatment system was designed to de-activate

20   during real-world driving conditions; and that it could not achieve the advertised towing power,

21   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

22   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

23   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

817

1    unauthorized emission control devices.

2        793.    Plaintiff, Mario Toliver (for the purpose of this paragraph, "Plaintiff"), a citizen of

3    the State of Wisconsin residing in the City of Appleton, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2018,

5    at Mega Motor Works, an authorized FCA dealer in Appleton, Wisconsin. Plaintiff decided to buy

6    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Mega Motor Works to purchase the Subject Vehicle, the sales associate

11   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

12   These representations, along with the advertised fuel economy, were among the primary reasons

13   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

14   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

15   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

794.     Plaintiff, Robin Clark (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Phoenix, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016, at Larry H. Miller Dodge Peoria, an authorized FCA dealer in Peoria, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Dodge Peoria to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

795.     Plaintiff, Kris Kemper (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Broken Arrow, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017, at Chris Nikel Chrysler Jeep Dodge Ram, an authorized FCA dealer in Broken Arrow, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chris Nikel Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

820

796.     Plaintiff, Michael Whittenmore d/b/a Restoration Services Group, Inc.  (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Cascade, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2014, at Colorado Springs Dodge, an authorized FCA dealer in Colorado Springs, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Colorado Springs Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

821

797.     Plaintiff, Jared & Crystal Falk (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas residing in the City of Alma, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 6, 2018, at Dillons Auto, an authorized FCA dealer in Lincoln, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dillons Auto to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

798.     Plaintiff, Andriy Kharchenko (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of New York residing in the City of Hauppauge, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 27, 2015, at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dave Smith Motrs to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

799. Plaintiff, Donald & Kimberly Schmit (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Curtice, bought a 2014 Dodge

Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014, at Rouen Chrysler Dodge Jeep Ram, an authorized FCA dealer in Woodville, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Rouen Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

800.    Plaintiff, Keith Young (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana residing in the City of Fort Benton, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2016, at Yellowstone Country Motors, an authorized FCA dealer in Livingston, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Yellowstone Country Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

801.    Plaintiff, Bernice & Pete Greene (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Dixonville, bought a 2015 Dodge Ram

1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Tri Star Motors, an authorized FCA dealer in Indiana, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Tri Star Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

802.     Plaintiff, Ernest Montley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Maryland residing in the City of Pasadena, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Musselman's Dodge, an authorized FCA dealer in Catonsville, Maryland. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Musselman's Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

803.    Plaintiff, Ryan King (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Rhode Island residing in the City of Tiverton, leased a 2015 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about April 22, 2018, at Colonial South Chrysler Dodge Jeep Ram, an authorized FCA dealer in Dartmouth, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Colonial South Chrysler Dodge Jeep Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

804.    Plaintiff, Jeffrey Sanders (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington residing in the City of Spanaway, bought a 2014 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 20, 2017, at Rainier Dodge, an authorized FCA dealer in Olympia, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Rainier Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

805. Plaintiff, David Gabriel & Juanita Navarro Flores (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Ligonier, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on

829

or about August 12, 2014, at Glenbrook Dodge Fort Wayne, an authorized FCA dealer in Fort Wayne, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Glenbrook Dodge Fort Wayne to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

806.    Plaintiff, Joseph McGee (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Loretto, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 25,

2015, at Sharp Motor Company, an authorized FCA dealer in Pulaski, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Sharp Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

807. Plaintiff, Jason A. Puckett (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Walden, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

2015, at Young's Motors, an authorized FCA dealer in Milton, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Young's Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

808.    Plaintiff, Richard & Nancy Payne (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Clermont, bought a Clermont EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 3, 2015, at Capleton Clermont Chrysler Jeep Dodge, an authorized FCA dealer in Clermont, Florida. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Capleton Clermont Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

809.    Plaintiff, Kristofferson & Lacey Blain (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Choctaw, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2017, at Jim Norton Toyota, an authorized FCA dealer in Oklahoma City, Oklahoma.

Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jim Norton Toyota to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

810.    Plaintiff, Kimberly Oglesby (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Fort Walton Beach, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2018, at Hill Kelly Dodge, an authorized FCA dealer in Pensacola, Florida. Plaintiff decided to

1   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

2   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

3   Subject Vehicles were represented as environmentally friendly, having low emissions and good

4   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

5   When Plaintiff went to Hill Kelly Dodge to purchase the Subject Vehicle, the sales associate touted

6   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

7   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

8   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

9   could perform as advertised only by emitting NOx at levels that are greater than advertised and

10  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

11  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

12  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

13  would have paid less for it, had he/she known that it did not comply with emission standards; that

14  its emission treatment system was designed to de-activate during real-world driving conditions;

15  and that it could not achieve the advertised towing power, performance, and/or fuel economy

16  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

17  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

18  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

19       811.    Plaintiff, Rayder Bennett (for the purpose of this paragraph, "Plaintiff"), a citizen

20  of the State of Missouri residing in the City of Sunrise Beach, bought a 2016 Dodge Ram 1500

21  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 15, 2015,

22  at Sakelaris Chrysler Dodge Jeep Ram, an authorized FCA dealer in Camdenton, Missouri.

23  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sakelaris Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

812.    Plaintiff, Stephen R. Schmidt (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Big Bend, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 22, 2017, at Wilde Chrysler Jeep Dodge Ram, an authorized FCA dealer in Waukesha, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Wilde Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

813.    Plaintiff, Ralph Landi (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of New York City, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2018, at Mercedes Benz of Denver, an authorized FCA dealer in Denver, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

(i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mercedes Benz of Denver to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

814.    Plaintiff, Andrew Vanderklok (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington residing in the City of Snohomish, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 28, 2016, at Harold Ziegler Dodge Ram, an authorized FCA dealer in Kalamazoo, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Harold Ziegler Dodge Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

815. Plaintiff, Gregory Clendenin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia residing in the City of Ashford, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 9, 2018, at Falls City Motor Inc., an authorized FCA dealer in Cuyahoga Falls, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

839

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Falls City Motor Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

816.    Plaintiff, Preston & Paula Nott (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Lake Havasu, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 29, 2017, at Anderson Chrysler Jeep Dodge, an authorized FCA dealer in Lake Havasu, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Anderson Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

817.    Plaintiff, Mark Hathaway (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana residing in the City of Deer Lodge, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at an authorized FCA dealer in Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Idaho to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

818.    Plaintiff, Elma Lozana (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Hempstead, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2014, at Hudson Chrysler Jeep Dodge Ram, an authorized FCA dealer in Jersey City, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Hudson Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

819.     Plaintiff, Frank M. Collier (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Lees Summit, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 7, 2016, at Landmark Dodge, an authorized FCA dealer in Belton, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Landmark Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

820. Plaintiff, Justin Goldsmith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia residing in the City of Weston, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 20, 2018, at H&M Motor Company, an authorized FCA dealer in Weston, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to H&M Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

821.    Plaintiff, Jeri Parson d/b/a Parma Properties (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia residing in the City of Charleston, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2015, at Walker Chrysler Dodge Jeep Ram, an authorized FCA dealer in Hurricane, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Walker Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

822.    Plaintiff, Dwayne Boggs (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Antlers, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2018, at Jay Hodge Dodge, an authorized FCA dealer in Hugo, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jay Hodge Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

823.    Plaintiff, Loren L. Nye (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Mount Pocono, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2017, at Ed Shults Of Warren, Inc., an authorized FCA dealer in Warren, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles. When Plaintiff went to Ed Shults of Warren, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

824.    Plaintiff, Derek Iler (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia residing in the City of Chesapeake, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29, 2017, at Carmax, an authorized FCA dealer in Virginia Beach, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When

Plaintiff went to Carmax to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

825. Plaintiff, Lev Cooper (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nevada residing in the City of Williston, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 25, 2017 in Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Nevada to purchase the Subject Vehicle, the private owner touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

1    performance. These representations, along with the advertised fuel economy, were among the

2    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

3    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

4    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

5    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

6    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

7    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

8    standards; that its emission treatment system was designed to de-activate during real-world driving

9    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

10   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

11   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

12   or would have paid less for it, had Defendants not concealed the unauthorized emission control

13   devices.

14        826.    Plaintiff, Charles W. Menninger, III (vehicle 1) (for the purpose of this paragraph,

15   "Plaintiff"), a citizen of the State of Virginia residing in the City of Front Royal, bought a 2014

16   Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

17   about July 1, 2014, at Marlow Motors, an authorized FCA dealer in Front Royal, Virginia. Plaintiff

18   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20   website, on which the Subject Vehicles were represented as environmentally friendly, having low

21   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22   Subject Vehicles.  When Plaintiff went to Marlow Motors to purchase the Subject Vehicle, the

23   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

850

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

827.    Plaintiff, Charles W. Menninger, III (vehicle 2) (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia residing in the City of Front Royal, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2014, at Marlow Motors, an authorized FCA dealer in Front Royal, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Marlow Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

1  performance. These representations, along with the advertised fuel economy, were among the

2  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

3  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

4  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

5  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

6  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

7  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

8  standards; that its emission treatment system was designed to de-activate during real-world driving

9  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

10  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

11  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

12  or would have paid less for it, had Defendants not concealed the unauthorized emission control

13  devices.

14       828.    Plaintiff, Joshua Herrera (for the purpose of this paragraph, "Plaintiff"), a citizen

15  of the State of North Dakota residing in the City of Williston, bought a 2016 Dodge Ram 1500

16  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 11,

17  2016, at Auto Nation Dodge Ram Arapahoe, an authorized FCA dealer in Centennial, Colorado.

18  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20  website, on which the Subject Vehicles were represented as environmentally friendly, having low

21  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22  Subject Vehicles.  When Plaintiff went to Auto Nation Dodge Ram Arapahoe to purchase the

23  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

852

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

829.    Plaintiff, Joseph Barksdale (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Defiance, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2018, at Henkel Chrysler Jeep Battle Creek, an authorized FCA dealer in Springfield, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Henkel Chrysler Jeep Battle Creek to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

830.    Plaintiff, David L. Patton (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Moberly, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 20, 2015, at Moberly Motors an authorized FCA dealer in Moberly, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Moberly Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

1    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

2    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

3    could perform as advertised only by emitting NOx at levels that are greater than advertised and

4    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

5    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

6    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

7    would have paid less for it, had he/she known that it did not comply with emission standards; that

8    its emission treatment system was designed to de-activate during real-world driving conditions;

9    and that it could not achieve the advertised towing power, performance, and/or fuel economy

10   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

11   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

12   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

13   831.   Plaintiff, Kenneth Edward Fogle, Jr. (for the purpose of this paragraph, "Plaintiff"),

14   a citizen of the State of North Carolina residing in the City of Clayton, bought a 2016 Jeep Grand

15   Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July

16   26, 2018, at Crown Chrysler Dodge Jeep, an authorized FCA dealer in Greensboro, North Carolina.

17   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

19   website, on which the Subject Vehicles were represented as environmentally friendly, having low

20   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21   Subject Vehicles.  When Plaintiff went to Crown Chrysler Dodge Jeep to purchase the Subject

22   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

23   economy and performance. These representations, along with the advertised fuel economy, were

855

1   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

2   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

3   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

4   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

5   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

6   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

7   emission standards; that its emission treatment system was designed to de-activate during real-

8   world driving conditions; and that it could not achieve the advertised towing power, performance,

9   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

10  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

11  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

12  control devices.

13          832.    Plaintiff, Kimberly S. Henson (for the purpose of this paragraph, "Plaintiff"), a

14  citizen of the State of South Carolina residing in the City of Duncan, bought a 2015 Jeep Grand

15  Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May

16  20, 2017, at Kevin Whitaker Chevrolet, an authorized FCA dealer in Greenville, South Carolina.

17  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

18  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

19  website, on which the Subject Vehicles were represented as environmentally friendly, having low

20  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

21  Subject Vehicles.  When Plaintiff went to Kevin Whitaker Chevrolet to purchase the Subject

22  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

23  economy and performance. These representations, along with the advertised fuel economy, were

856

among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

833.    Plaintiff, Clinton & Sadie Etheridge (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Elijay, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 28, 2018, at Carmax, an authorized FCA dealer in Chattanooga, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Carmax to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

857

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12        834.    Plaintiff, Todd Vanderheyden (for the purpose of this paragraph, "Plaintiff"), a

13    citizen of the State of Wisconsin residing in the City of Green Bay, bought a 2014 Jeep Grand

14    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

15    December 26, 2016, at Kolosso Chrysler Jeep Dodge Ram, an authorized FCA dealer in Appleton,

16    Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

17    that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

18    visiting the Jeep website, on which the Subject Vehicles were represented as environmentally

19    friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

20    commercials about the Subject Vehicles.  When Plaintiff went to Kolosso Chrysler Jeep Dodge

21    Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

22    attributes, including its fuel economy and performance. These representations, along with the

23    advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

835.    Plaintiff, Rebecca M. Brace (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Dunnellon, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 12, 2016, at Phillips Chrysler, an authorized FCA dealer in Ocala, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Phillips Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

859

1    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6    standards; that its emission treatment system was designed to de-activate during real-world driving

7    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10   or would have paid less for it, had Defendants not concealed the unauthorized emission control

11   devices.

12           836.    Plaintiff, Frank E., II & Dolly Rae Baker (for the purpose of this paragraph,

13   "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Greensburg, bought a

14   2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on

15   or about June 29, 2015, at Laurel Valley Motors Inc., an authorized FCA dealer in Latrobe,

16   Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

17   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

18   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

19   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

20   commercials about the Subject Vehicles.  When Plaintiff went to Laurel Valley Motors Inc. to

21   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

22   attributes, including its fuel economy and performance. These representations, along with the

23   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

860

1   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

2   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

3   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

4   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

5   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

6   known that it did not comply with emission standards; that its emission treatment system was

7   designed to de-activate during real-world driving conditions; and that it could not achieve the

8   advertised towing power, performance, and/or fuel economy without cheating emission tests.

9   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

10  and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

11  not concealed the unauthorized emission control devices.

12      837.    Plaintiff, Thomas A. Edwards (for the purpose of this paragraph, "Plaintiff"), a

13  citizen of the State of Arizona residing in the City of Bentonville, bought a 2014 Jeep Grand

14  Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April

15  28, 2018, at Roberts Auto Group, an authorized FCA dealer in Pryor, Oklahoma. Plaintiff decided

16  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

17  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on

18  which the Subject Vehicles were represented as environmentally friendly, having low emissions

19  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

20  Vehicles.  When Plaintiff went to Roberts Auto Group to purchase the Subject Vehicle, the sales

21  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22  performance. These representations, along with the advertised fuel economy, were among the

23  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

861

1  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6  standards; that its emission treatment system was designed to de-activate during real-world driving

7  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10  or would have paid less for it, had Defendants not concealed the unauthorized emission control

11  devices.

12       838.     Plaintiff, Justin Clendenin (for the purpose of this paragraph, "Plaintiff"), a citizen

13  of the State of West Virginia residing in the City of Ashford, bought a 2014 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2014,

15  at Darcars of Washington DC, an authorized FCA dealer in Siler Spring, Maryland. Plaintiff

16  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiff went to Darcars of Washington DC to purchase the Subject

21  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22  economy and performance. These representations, along with the advertised fuel economy, were

23  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

839.    Plaintiff, Percy F. Gonzales (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Chandler, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 23, 2017, at Tempe Chrysler Jeep Dodge, an authorized FCA dealer in Tempe, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Tempe Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

1    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

3    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

5    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6    emission standards; that its emission treatment system was designed to de-activate during real-

7    world driving conditions; and that it could not achieve the advertised towing power, performance,

8    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

9    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11   control devices.

12       840.    Plaintiff, Dustin R. Downing, Jr. (for the purpose of this paragraph, "Plaintiff"), a

13   citizen of the State of Pennsylvania residing in the City of Loganton, bought a 2015 Dodge Ram

14   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August

15   26, 2015, at VanCapen Dodge Chrysler, an authorized FCA dealer in Williamsport, Pennsylvania.

16   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to VanCapen Dodge Chrysler to purchase the Subject

21   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22   economy and performance. These representations, along with the advertised fuel economy, were

23   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

1    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

3    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

5    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6    emission standards; that its emission treatment system was designed to de-activate during real-

7    world driving conditions; and that it could not achieve the advertised towing power, performance,

8    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

9    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11   control devices.

12          841.    Plaintiff, James Repp (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of Iowa residing in the City of Adel, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

14   the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2016, at Adel

15   Chrysler, an authorized FCA dealer in Adel, Iowa. Plaintiff decided to buy the Subject Vehicle

16   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

17   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

18   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

19   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Adel

20   Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

21   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

22   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

23   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

1   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

2   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

3   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

4   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

5   for it, had he/she known that it did not comply with emission standards; that its emission treatment

6   system was designed to de-activate during real-world driving conditions; and that it could not

7   achieve the advertised towing power, performance, and/or fuel economy without cheating

8   emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

9   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

10  less for it, had Defendants not concealed the unauthorized emission control devices.

11          842.    Plaintiff, Michael Colligon (for the purpose of this paragraph, "Plaintiff"), a citizen

12  of the State of Virginia residing in the City of Richmond, bought a 2016 Dodge Ram 1500

13  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016,

14  at Whitten Brothers, an authorized FCA dealer in Richmond, Virginia. Plaintiff decided to buy the

15  Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

16  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

17  Subject Vehicles were represented as environmentally friendly, having low emissions and good

18  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

19  When Plaintiff went to Whitten Brothers to purchase the Subject Vehicle, the sales associate touted

20  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

21  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

22  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

23  could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

843. Plaintiff, Matthew Hoser (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey residing in the City of Great Meadows, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 12, 2018, at Star Buick GMC, an authorized FCA dealer in Easton, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Star Buick GMC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3   would have paid less for it, had he/she known that it did not comply with emission standards; that

4   its emission treatment system was designed to de-activate during real-world driving conditions;

5   and that it could not achieve the advertised towing power, performance, and/or fuel economy

6   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9          844.    Plaintiff, Mason Lauer (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Pennsylvania residing in the City of Jersey Shore, bought a 2015 Jeep Grand Cherokee

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2015,

12  at Zimmerman's Motors, an authorized FCA dealer in Sunbury, Pennsylvania. Plaintiff decided to

13  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

14  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

15  Subject Vehicles were represented as environmentally friendly, having low emissions and good

16  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17  When Plaintiff went to Zimmerman's Motors to purchase the Subject Vehicle, the sales associate

18  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

19  These representations, along with the advertised fuel economy, were among the primary reasons

20  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

21  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

22  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

868

1    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2    would have paid less for it, had he/she known that it did not comply with emission standards; that

3    its emission treatment system was designed to de-activate during real-world driving conditions;

4    and that it could not achieve the advertised towing power, performance, and/or fuel economy

5    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8         845.    Plaintiff, James Martin  (for the purpose of this paragraph, "Plaintiff"), a citizen of

9    the State of Nevada residing in the City of Gardnerville, bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

11   2015, at Carson Dodge , an authorized FCA dealer in Carson City, Nevada. Plaintiff decided to

12   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

13   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

14   Subject Vehicles were represented as environmentally friendly, having low emissions and good

15   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

16   When Plaintiff went to Carson Dodge to purchase the Subject Vehicle, the sales associate touted

17   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

18   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

19   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

20   could perform as advertised only by emitting NOx at levels that are greater than advertised and

21   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

869

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7           846.    Plaintiff, Almantas Stankevicius (for the purpose of this paragraph, "Plaintiff"), a

8    citizen of the State of Illinois residing in the City of Lemont, bought a 2015 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 2, 2015,

10   at Harold Zeigler Of Downers Grove, an authorized FCA dealer in Downers Grove, Illinois.

11   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15   Subject Vehicles.  When Plaintiff went to Harold Zeigler Of Downers Grove to purchase the

16   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

17   its fuel economy and performance. These representations, along with the advertised fuel economy,

18   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

19   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

20   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

21   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

22   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

23   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

847.    Plaintiff, Michael W. Stinson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Milwaukee, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 26, 2018, at Wilde Motors Inc, Wilde Chrysler Jeep Dodge Ram, an authorized FCA dealer in Waukesha, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Wilde Motors Inc, Wilde Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1  would have paid less for it, had he/she known that it did not comply with emission standards; that

2  its emission treatment system was designed to de-activate during real-world driving conditions;

3  and that it could not achieve the advertised towing power, performance, and/or fuel economy

4  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7       848.    Plaintiff, Robbie Kiss (for the purpose of this paragraph, "Plaintiff"), a citizen of

8  the State of North Carolina residing in the City of Candler, bought a 2016 Dodge Ram 1500

9  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 5, 2016,

10  at Skyland Dodge, an authorized FCA dealer in Ashville, North Carolina. Plaintiff decided to buy

11  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13  Subject Vehicles were represented as environmentally friendly, having low emissions and good

14  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15  When Plaintiff went to Skyland Dodge to purchase the Subject Vehicle, the sales associate touted

16  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19  could perform as advertised only by emitting NOx at levels that are greater than advertised and

20  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23  would have paid less for it, had he/she known that it did not comply with emission standards; that

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6         849.    Plaintiff, Alicia Jean Hicken (for the purpose of this paragraph, "Plaintiff"), a

7    citizen of the State of Florida residing in the City of Jacksonville, bought a 2016 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 18, 2018,

9    at Keffer Dodge Chrysler Jeep Inc n/k/a David Dodge Chrysler Jeep, an authorized FCA dealer in

10   Yulee, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

11   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

12   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

13   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

14   commercials about the Subject Vehicles.  When Plaintiff went to Keffer Dodge Chrysler Jeep Inc

15   n/k/a David Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the

16   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19   could perform as advertised only by emitting NOx at levels that are greater than advertised and

20   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1   its emission treatment system was designed to de-activate during real-world driving conditions;

2   and that it could not achieve the advertised towing power, performance, and/or fuel economy

3   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6       850.    Plaintiff, Julie Staubach (for the purpose of this paragraph, "Plaintiff"), a citizen of

7   the State of New York residing in the City of Westerlo, bought a 2014 Dodge Ram 1500

8   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 30, 2014,

9   at Armory Garage, an authorized FCA dealer in Albany, New York. Plaintiff decided to buy the

10  Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

11  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

12  Subject Vehicles were represented as environmentally friendly, having low emissions and good

13  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

14  When Plaintiff went to Armory Garage to purchase the Subject Vehicle, the sales associate touted

15  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18  could perform as advertised only by emitting NOx at levels that are greater than advertised and

19  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22  would have paid less for it, had he/she known that it did not comply with emission standards; that

23  its emission treatment system was designed to de-activate during real-world driving conditions;

874

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5        851.    Plaintiff, Susan & Ethan Burlingham (for the purpose of this paragraph,

6    "Plaintiff"), a citizen of the State of Nevada residing in the City of Elko, bought a 2014 Dodge

7    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

8    February 12, 2016, at Elko Moto, an authorized FCA dealer in Elko, Nevada. Plaintiff decided to

9    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

10   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Elko Moto to purchase the Subject Vehicle, the sales associate touted the

14   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

15   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17   could perform as advertised only by emitting NOx at levels that are greater than advertised and

18   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

875

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4          852.    Plaintiff, Jeffrey & Tracie Quine (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of Oklahoma residing in the City of Newalla, bought a 2016 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 26,

7    2016, at Bob Moore Chrysler Dodge Jeep Ram, an authorized FCA dealer in Oklahoma City,

8    Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

9    that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

10   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

11   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

12   commercials about the Subject Vehicles.  When Plaintiff went to Bob Moore Chrysler Dodge Jeep

13   Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

14   attributes, including its fuel economy and performance. These representations, along with the

15   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

16   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

17   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

18   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

19   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

20   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

21   known that it did not comply with emission standards; that its emission treatment system was

22   designed to de-activate during real-world driving conditions; and that it could not achieve the

23   advertised towing power, performance, and/or fuel economy without cheating emission tests.

1    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

2    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

3    not concealed the unauthorized emission control devices.

4         853.    Plaintiff, Crystal Lee Bonotto (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of Oregon residing in the City of Redmond, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 15,

7    2015, at Lithia Chrysler Jeep Dodge, an authorized FCA dealer in Medford, Oregon. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4         854.    Plaintiff, Joseph Neault, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of New Jersey residing in the City of Barnegat, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2017,

7    at East Hills Chrysler Jeep Dodge Ram, an authorized FCA dealer in Greenvale, New York.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to East Hills Chrysler Jeep Dodge Ram to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

878

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4         855.   Plaintiff, Martin Zueger (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of Pennsylvania residing in the City of Perryopolis, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 2, 2016,

7    at Jim Shorkey Chrysler Dodge Jeep Ram, an authorized FCA dealer in Irwin, Pennsylvania.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Shorkey Chrysler Dodge Jeep Ram to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4        856.    Plaintiff, Patricia Wilbur (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Washington residing in the City of Brinnon, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1,

7    2014, at Rainier Dodge, an authorized FCA dealer in Olympia, Washington. Plaintiff decided to

8    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Rainer Dodger to purchase the Subject Vehicle, the sales associate touted

13   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3          857.    Plaintiff, Cesar H. Nunez (for the purpose of this paragraph, "Plaintiff"), a citizen

4   of the State of Utah residing in the City of Salt Lake City, bought a 2015 Dodge Ram 1500

5   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 20,

6   2017, at Car Master Auto Sales, an authorized FCA dealer in Salt Lake City, Utah. Plaintiff decided

7   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

8   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

9   which the Subject Vehicles were represented as environmentally friendly, having low emissions

10  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

11  Vehicles.  When Plaintiff went to Car Master Auto Sales to purchase the Subject Vehicle, the sales

12  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13  performance. These representations, along with the advertised fuel economy, were among the

14  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20  standards; that its emission treatment system was designed to de-activate during real-world driving

21  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

1   or would have paid less for it, had Defendants not concealed the unauthorized emission control

2   devices.

3       858.    Plaintiff, Harold & Donna Imke (for the purpose of this paragraph, "Plaintiff"), a

4   citizen of the State of Oklahoma residing in the City of Vinita, bought a 2014 Jeep Grand Cherokee

5   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 27, 2014,

6   at Hometown Chrysler Jeep Dodge Ram, an authorized FCA dealer in Vinita, Oklahoma. Plaintiff

7   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

9   website, on which the Subject Vehicles were represented as environmentally friendly, having low

10  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11  Subject Vehicles.  When Plaintiff went to Hometown Chrysler Jeep Dodge Ram to purchase the

12  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

13  its fuel economy and performance. These representations, along with the advertised fuel economy,

14  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

15  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

16  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

17  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

18  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

19  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

20  comply with emission standards; that its emission treatment system was designed to de-activate

21  during real-world driving conditions; and that it could not achieve the advertised towing power,

22  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

23  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

1    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

2    unauthorized emission control devices.

3         859.     Plaintiff, Santiago & Lorraine Romero (for the purpose of this paragraph,

4    "Plaintiff"), a citizen of the State of New Mexico residing in the City of Espanola, bought a 2016

5    Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

6    about April 10, 2015, at Chrysler Dodge Jeep Ram FIAT of Santa Fe, an authorized FCA dealer

7    in Santa Fe, New Mexico. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

8    representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

9    Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as

10   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

11   seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chrysler Dodge

12   Jeep Ram FIAT of Santa Fe to purchase the Subject Vehicle, the sales associate touted the Subject

13   Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16   could perform as advertised only by emitting NOx at levels that are greater than advertised and

17   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3         860.    Plaintiff, James L. Jones (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of the State of Kentucky residing in the City of Columbia, bought a 2014 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1,

6    2014, at Don Franklin, an authorized FCA dealer in Campbellsville, Kentucky. Plaintiff decided

7    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

8    vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

9    which the Subject Vehicles were represented as environmentally friendly, having low emissions

10   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

11   Vehicles.  When Plaintiff went to Don Franklin to purchase the Subject Vehicle, the sales associate

12   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13   These representations, along with the advertised fuel economy, were among the primary reasons

14   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

884

1   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2       861.    Plaintiff, Jim Hall (for the purpose of this paragraph, "Plaintiff"), a citizen of the

3   State of Iowa residing in the City of Norwalk, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

4   the purpose of this paragraph, the "Subject Vehicle") on or about February 28, 2015, at Stew

5   Hansen Dodge Ram Chrysler Jeep, an authorized FCA dealer in Urbandale, Iowa. Plaintiff decided

6   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

7   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

8   which the Subject Vehicles were represented as environmentally friendly, having low emissions

9   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

10   Vehicles.  When Plaintiff went to ** to purchase the Subject Vehicle, the sales associate touted the

11   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

885

862.    Plaintiff, Steve J. Mast (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Quincy, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Dakota Chrysler, an authorized FCA dealer in Wahpaton, North Dakota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dakota Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

863.    Plaintiff, Francis Lukowski, Jr. (for the purpose of this paragraph, "Plaintiff"), a

886

citizen of the State of Alabama residing in the City of Dothan, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 27, 2016, at Steve White Dodge Ram, an authorized FCA dealer in Newton, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Steve White Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

864.    Plaintiff, Ricky P. Poisson (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of New York residing in the City of Greenfield Center, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 18, 2014, at Lia Schenectady Chrysler Jeep Dodge, an authorized FCA dealer in Schenectady, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lia Schenectady Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

865. Plaintiff, Jason Dibben (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Idaho residing in the City of Caldwell, bought a 2015 Dodge Ram 1500 EcoDiesel®
(for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2015, at Dennis
Dillon Chrysler Dodge Jeep Ram, an authorized FCA dealer in Caldwell, Idaho. Plaintiff decided
to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"
vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on
which the Subject Vehicles were represented as environmentally friendly, having low emissions
and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject
Vehicles.  When Plaintiff went to Dennis Dillon Chrysler Dodge Jeep Ram to purchase the Subject
Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel
economy and performance. These representations, along with the advertised fuel economy, were
among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff
did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels
that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject
Vehicle was equipped with undisclosed and unauthorized emission control devices designed to
cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased
the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with
emission standards; that its emission treatment system was designed to de-activate during real-
world driving conditions; and that it could not achieve the advertised towing power, performance,
and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a
direct and proximate result of Defendants' misconduct, and would not have purchased the Subject
Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission
control devices.

866.    Plaintiff, Jason Vermillion (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Colorado residing in the City of Matheson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 31, 2015, at Limon Chrysler, an authorized FCA dealer in Limon, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Limon Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

867.    Plaintiff, Tad & Stephnie Hamil (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Yukon, bought a 2014 Dodge Ram 1500

1  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2014,

2  at Jacksons Of Enid, an authorized FCA dealer in Garriott Enid, Oklahoma. Plaintiff decided to

3  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

4  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

5  Subject Vehicles were represented as environmentally friendly, having low emissions and good

6  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

7  When Plaintiff went to Jacksons of Enid to purchase the Subject Vehicle, the sales associate touted

8  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

9  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

10  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

11  could perform as advertised only by emitting NOx at levels that are greater than advertised and

12  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

13  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

14  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

15  would have paid less for it, had he/she known that it did not comply with emission standards; that

16  its emission treatment system was designed to de-activate during real-world driving conditions;

17  and that it could not achieve the advertised towing power, performance, and/or fuel economy

18  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

19  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

20  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

21       868.    Plaintiff, Amy Fernandes (for the purpose of this paragraph, "Plaintiff"), a citizen

22  of the State of New York residing in the City of Bayport, bought a 2015 Dodge Ram 1500

23  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 2,

2018, at JJM Automotive LLC d/b/a Atlantic Chrysler Jeep Dodge Ram, an authorized FCA dealer in West Islip, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to JJM Automotive LLC d/b/a Atlantic Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

869.    Plaintiff, Brett Keville Williams (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington residing in the City of Elk, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 27,

2017, at Lithia Chrysler Dodge Ram FIAT, an authorized FCA dealer in Spokane, Washington. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Dodge Ram FIAT to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

870.    Plaintiff, Jeffrey Gebel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Hillsboro, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2015,

at Auto Plaza Chrysler Jeep Ram, an authorized FCA dealer in De Soto, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Auto Plaza Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

871.    Plaintiff, Scott W. Toms (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of Boone, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 16, 2015, at Deery of

1    Ames Chrysler Dodge Jeep Ram, an authorized FCA dealer in Ames, Iowa. Plaintiff decided to

2    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

3    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

4    Subject Vehicles were represented as environmentally friendly, having low emissions and good

5    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

6    When Plaintiff went to Deery of Ames Chrysler Dodge Jeep Ram to purchase the Subject Vehicle,

7    the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

8    and performance. These representations, along with the advertised fuel economy, were among the

9    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

10   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

11   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

12   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

13   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

14   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

15   standards; that its emission treatment system was designed to de-activate during real-world driving

16   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

17   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

18   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

19   or would have paid less for it, had Defendants not concealed the unauthorized emission control

20   devices.

21        872.    Plaintiff, Mike Karpowitz (for the purpose of this paragraph, "Plaintiff"), a citizen

22   of the State of Idaho residing in the City of Nampa, leased a 2016 Dodge Ram 1500 EcoDiesel®

23   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Peterson

Stampede Ram, an authorized FCA dealer in Nampa, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Peterson Stampede Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

873.    Plaintiff, Mitchell R. Wellnitz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Janesville, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2018, at Van Horn Chrysler Dodge Jeep Ram, an authorized FCA dealer in Stoughton,

Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Van Horn Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

874.    Plaintiff, Paul Myers (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Hudsonville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 26, 2016, at Ed Koehn, an authorized FCA dealer in Greenville, Michigan. Plaintiff decided to buy the

897

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ed Koehn to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

875.    Plaintiff, Nathan & Rachel Crittenden (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Noel, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 17, 2016, at Fletcher Automotive No. 31 LL, an authorized FCA dealer in Pineville, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fletcher Automotive No. 31 LL to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

876.    Plaintiff, Tanner Tibbets (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Glenpool, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2016, at South Point Jeep Chrysler Dodge Ram, an authorized FCA dealer in Tulsa, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

899

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to South Point Jeep Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

877.     Plaintiff, Mike Sanders (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Plano, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2015, at St. Charles Chrysler Dodge Jeep Ram, an authorized FCA dealer in St. Charles, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to St. Charles Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

878.    Plaintiff, John S. Fox (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Geneva, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 12, 2016, at Dupage Chrysler Dodge Jeep Ram, an authorized FCA dealer in Glendale Heights, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dupage Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

879.    Plaintiff, Mark Schumaker (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of La Follette, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 6, 2018, at Lane Cunningham Ford, an authorized FCA dealer in Knoxville, Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lane Cunningham Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

880.    Plaintiff, Russell Kious (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Edmond, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015, at Bob Howard Chrysler Jeep Dodge Ram, an authorized FCA dealer in Oklahoma City, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bob Howard Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

881.    Plaintiff, Dan Seeland & Naht Phan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota residing in the City of Hopkins, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2015, at Dodge of Burnsville, an authorized FCA dealer in Burnsville, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dodge of Burnsville to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

882.    Plaintiff, Thomas Nicholas Bezick (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Levittown, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2016, at Reedman-Toll Autoworld, an authorized FCA dealer in Langhorne, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Reedman-Toll Autoworld to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

883.    Plaintiff, Nathan Strahinic & Stacey Grafmeyer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Parma, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 11, 2017, at Fred Martin Superstore, an authorized FCA dealer in Barberton, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Fred Martin Superstore to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

884.    Plaintiff, Robert Patterson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Middletown, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2018, at Hondru Chrysler Dodge Jeep Ram, an authorized FCA dealer in Elizabethtown, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Hondru Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

885.    Plaintiff, Larry E. & Hazel A. Heeter (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Sheffield, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 4, 2015, at Ed Shults of Warren, an authorized FCA dealer in Warren, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Ed Shults of Warren to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

886.    Plaintiff, Louis Barbato (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Islip Terrace, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 19, 2014, at Smith Haven Chrysler Jeep Dodge, an authorized FCA dealer in St. James, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Smith Haven Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

887.    Plaintiff, Randy Gray (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Eagle, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2015, at Gene Steffy Ford, an authorized FCA dealer in Columbus, Nevada. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Gene Steffy Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

888.    Plaintiff, Gordon Leroy Patterson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of West Palm Beach, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 28, 2015, at Arrigo Dodge Chrysler Jeep, an authorized FCA dealer in West Palm Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Arrigo Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

889.    Plaintiff, Jeffrey D. Hoyum (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota residing in the City of Duluth, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2015, at Duluth Dodge, Inc., an authorized FCA dealer in Duluth, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Duluth Dodge, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

890.    Plaintiff, Leo Karnowski, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Irrigon, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2017, at Tom Denchel Chrysler Dodge Jeep, an authorized FCA dealer in Hermiston, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Tom Denchel Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

891.    Plaintiff, Theodore Carter (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Cassville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31, 2017, at Everette Chrysler Dodge Jeep Ram, an authorized FCA dealer in Compson, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Everette Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

892.    Plaintiff, Earl H. Hitzman, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Saint Amant, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 4, 2015, at All Star Dodge, an authorized FCA dealer in Denham Springs, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

915

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to All Star Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

893.    Plaintiff, Erich Hannah (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Danville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 4, 2015, at Courtesy Motors, an authorized FCA dealer in Danville, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Courtesy Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

894.    Plaintiff, Robert Bank (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Vail, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 17, 2015, at Vista Jeep Chrysler Dodge of Silverthorne, an authorized FCA dealer in Silverthorne, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

917

Subject Vehicles.  When Plaintiff went to Vista Jeep Chrysler Dodge of Silverthorne to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

895.    Plaintiff, Kenneth & Amanda Hancock (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho residing in the City of Nampa, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 24, 2016, at Petersons Stampede, an authorized FCA dealer in Nampa, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles. When Plaintiff went to Petersons Stampede to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

896.     Plaintiff, Daniel & Cynthia Bonifas (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Colorado Springs, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 18, 2014, at Faricy Boys Colorado Springs, an authorized FCA dealer in Colorado Springs, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

about the Subject Vehicles. When Plaintiff went to Faricy Boys Colorado Springs to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

897.    Plaintiff, Mark & Carol Feld (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of Marshalltown, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 9, 2015, at Wes Finch Auto Plaza, an authorized FCA dealer in Grinnell, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles.  When Plaintiff went to Wes Finch Auto Plaza to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

898.     Plaintiff, Terry Wessel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Maine residing in the City of Blue Hill, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 14, 2016, at Darling's Auto Mall, an authorized FCA dealer in Ellsworth, Maine. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

Plaintiff went to Darling's Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

899. Plaintiff, Billie Jo Killion & Ann Taylor (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Pendleton, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 14, 2016, at Champion Chrysler Jeep Dodge, an authorized FCA dealer in Indianapolis, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Champion Chrysler Jeep Dodge to purchase the Subject

1    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

2    economy and performance. These representations, along with the advertised fuel economy, were

3    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

4    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

5    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

6    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

7    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

8    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

9    emission standards; that its emission treatment system was designed to de-activate during real-

10   world driving conditions; and that it could not achieve the advertised towing power, performance,

11   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

12   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

13   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

14   control devices.

15        900.    Plaintiff, Leah & Bobby Ladley (for the purpose of this paragraph, "Plaintiff"), a

16   citizen of the State of Tennessee residing in the City of Oakland, bought a 2016 Dodge Ram 1500

17   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 18,

18   2016, at Landers Chrysler Doge Jeep Ram, an authorized FCA dealer in South Haven, Mississippi.

19   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

20   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

21   website, on which the Subject Vehicles were represented as environmentally friendly, having low

22   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

23   Subject Vehicles.  When Plaintiff went to Landers Chrysler Dodge Jeep Ram to purchase the

923

1    Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

2    its fuel economy and performance. These representations, along with the advertised fuel economy,

3    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

4    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

5    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

6    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

7    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

8    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

9    comply with emission standards; that its emission treatment system was designed to de-activate

10   during real-world driving conditions; and that it could not achieve the advertised towing power,

11   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

12   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

13   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

14   unauthorized emission control devices.

15          901.    Plaintiff, Anthony S. Antonucci (for the purpose of this paragraph, "Plaintiff"), a

16   citizen of the State of New Hampshire residing in the City of Conway, bought a 2016 Dodge Ram

17   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 15,

18   2016, at Macdonald Motors Inc., an authorized FCA dealer in Brighton, Maine. Plaintiff decided

19   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

20   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

21   which the Subject Vehicles were represented as environmentally friendly, having low emissions

22   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

23   Vehicles.  When Plaintiff went to Macdonald Motors Inc. to purchase the Subject Vehicle, the

924

sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

902.     Plaintiff, Terry D. & Teresa A. Thor (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Kokomo, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 27, 2015, at Button Dodge, an authorized FCA dealer in Kokomo, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Button Dodge to purchase the Subject Vehicle, the sales associate touted

1  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

2  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

3  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

4  could perform as advertised only by emitting NOx at levels that are greater than advertised and

5  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8  would have paid less for it, had he/she known that it did not comply with emission standards; that

9  its emission treatment system was designed to de-activate during real-world driving conditions;

10  and that it could not achieve the advertised towing power, performance, and/or fuel economy

11  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14      903.    Plaintiff, Clarke Dunlap (for the purpose of this paragraph, "Plaintiff"), a citizen of

15  the State of California residing in the City of Lake Arrowhead, bought a 2014 Dodge Ram 1500

16  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 28,

17  2015, at Jeep Chrysler Dodge Ram FIAT of Ontario, an authorized FCA dealer in Ontario,

18  California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

19  it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

20  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

21  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

22  about the Subject Vehicles.  When Plaintiff went to Jeep Chrysler Dodge Ram FIAT of Ontario to

23  purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

1   attributes, including its fuel economy and performance. These representations, along with the

2   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

3   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

4   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

5   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

6   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

7   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

8   known that it did not comply with emission standards; that its emission treatment system was

9   designed to de-activate during real-world driving conditions; and that it could not achieve the

10   advertised towing power, performance, and/or fuel economy without cheating emission tests.

11   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

12   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

13   not concealed the unauthorized emission control devices.

14       904.     Plaintiff, Albert & Sharon Overholtzer (for the purpose of this paragraph,

15   "Plaintiff"), a citizen of the State of California residing in the City of Orland, bought a 2015 Dodge

16   Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May

17   1, 2015, at Chuck Paterson Dodge, an authorized FCA dealer in Chico, California. Plaintiff decided

18   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

19   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

20   which the Subject Vehicles were represented as environmentally friendly, having low emissions

21   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

22   Vehicles.  When Plaintiff went to Chuck Patterson Dodge to purchase the Subject Vehicle, the

23   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

1    performance. These representations, along with the advertised fuel economy, were among the

2    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

3    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

4    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

5    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

6    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

7    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

8    standards; that its emission treatment system was designed to de-activate during real-world driving

9    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

10   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

11   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

12   or would have paid less for it, had Defendants not concealed the unauthorized emission control

13   devices.

14          905.    Plaintiff, Jeff Strong (for the purpose of this paragraph, "Plaintiff"), a citizen of the

15   State of Mississippi residing in the City of Gautier, bought a 2015 Jeep Grand Cherokee

16   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 7, 2016,

17   at Bayside Chrysler Dodge Jeep Ram, an authorized FCA dealer in D'Iberville, Mississippi.

18   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20   website, on which the Subject Vehicles were represented as environmentally friendly, having low

21   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22   Subject Vehicles.  When Plaintiff went to Bayside Chrysler Dodge Jeep Ram to purchase the

23   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1   its fuel economy and performance. These representations, along with the advertised fuel economy,

2   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

3   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

4   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

5   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

6   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

7   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

8   comply with emission standards; that its emission treatment system was designed to de-activate

9   during real-world driving conditions; and that it could not achieve the advertised towing power,

10  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

11  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

12  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

13  unauthorized emission control devices.

14       906.     Plaintiff, Robert Thomas (for the purpose of this paragraph, "Plaintiff"), a citizen

15  of the State of Alabama residing in the City of Pelham, bought a 2015 Dodge Ram 1500

16  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 17,

17  2018, at Susan Schein Automotive, an authorized FCA dealer in Pelham, Alabama. Plaintiff

18  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20  website, on which the Subject Vehicles were represented as environmentally friendly, having low

21  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22  Subject Vehicles.  When Plaintiff went to Susan Schein Automotive to purchase the Subject

23  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

1   economy and performance. These representations, along with the advertised fuel economy, were

2   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

3   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

4   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

5   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

6   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

7   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

8   emission standards; that its emission treatment system was designed to de-activate during real-

9   world driving conditions; and that it could not achieve the advertised towing power, performance,

10   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

11   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

12   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

13   control devices.

14        907.    Plaintiff, Anthony McNamara (for the purpose of this paragraph, "Plaintiff"), a

15   citizen of the State of California residing in the City of Huntington Beach, bought a 2015 Dodge

16   Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

17   September 20, 2017, at Tuttle Click Tustin Chrysler, an authorized FCA dealer in Tustin,

18   California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

19   it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

20   the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

21   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

22   about the Subject Vehicles.  When Plaintiff went to Tuttle Click Tustin Chrysler to purchase the

23   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1   its fuel economy and performance. These representations, along with the advertised fuel economy,

2   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

3   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

4   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

5   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

6   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

7   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

8   comply with emission standards; that its emission treatment system was designed to de-activate

9   during real-world driving conditions; and that it could not achieve the advertised towing power,

10   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

11   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

12   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

13   unauthorized emission control devices.

14   908.   Plaintiff, Gordon Hunter & Shawnda Bays (for the purpose of this paragraph,

15   "Plaintiff"), a citizen of the State of Indiana residing in the City of Owensburg, bought a 2014

16   Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

17   about May 3, 2017, at Community Chrysler Jeep Dodge Ram of Bloomington, an authorized FCA

18   dealer in Bloomington, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on

19   FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

20   efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

21   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

22   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

23   Community Chrysler Jeep Dodge Ram of Bloomington to purchase the Subject Vehicle, the sales

associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

909.    Plaintiff, Gaston Barrett c/o Walton Stinson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi residing in the City of Philadelphia, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 2, 2015, at Griffis Motors, Inc., an authorized FCA dealer in Philadelphia, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Griffis Motors, Inc. to purchase

the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

910. Plaintiff, William Cunningham (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Tuscaloosa, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 29, 2016, at Academy Chrysler Dodge Jeep and Ram, an authorized FCA dealer in Bessemer, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Academy Chrysler Doge Jeep and Ram to

purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

911.    Plaintiff, John Roe (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Morgan City, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 11, 2014, at Jeff Wilson Chrysler Dodge Jeep Ram, an authorized FCA dealer in Brookhaven, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Jeff Wilson Chrysler Dodge Jeep

Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

attributes, including its fuel economy and performance. These representations, along with the

advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

emission control devices designed to cheat emission tests and to deceive consumers and regulators.

Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

known that it did not comply with emission standards; that its emission treatment system was

designed to de-activate during real-world driving conditions; and that it could not achieve the

advertised towing power, performance, and/or fuel economy without cheating emission tests.

Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

not concealed the unauthorized emission control devices.

912.    Plaintiff, Scott L. Norris (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Wyoming residing in the City of Evansville, bought a 2016 Jeep Grand Cherokee

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 12, 2018,

at Fremont Motors, an authorized FCA dealer in Casper, Wyoming. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Fremont Motors to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

913.    Plaintiff, Cheryl & Lee Philley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of California residing in the City of Bakersfield, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Haddad Dodge Ram, an authorized FCA dealer in Bakersfield, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Haddad Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

914.    Plaintiff, Michael Branco (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of New Bedford, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 9, 2018, at Central Chrysler Jeep Dodge, an authorized FCA dealer in Raynham, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Central Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

915.    Plaintiff, Timothy Isyk (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut residing in the City of Meriden, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 30, 2015, at Central Chrysler Jeep Dodge, an authorized FCA dealer in Raynham, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Central Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

916.    Plaintiff, Oron Tipton (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Eugene, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Cottage Grove Chrysler Dodge Jeep, an authorized FCA dealer in Cottage Grove, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Cottage Grove Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

939

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

917.    Plaintiff, Rodney Robinson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Bloomfield Hills, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014, at Golling Chrysler, an authorized FCA dealer in Bloomfield Hills, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Golling Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

918. Plaintiff, Michelle L. Labadie (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Gladstone, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 7, 2017, at Chrysler World, an authorized FCA dealer in Abrams, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chrysler World to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12          919.    Plaintiff, Edna Jordon (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of Missouri residing in the City of Desoto, bought a 2014 Dodge Ram 1500 EcoDiesel®

14   (for the purpose of this paragraph, the "Subject Vehicle") on or about July 11, 2016, at Lucas Smith

15   Chrysler Center, an authorized FCA dealer in Festus, Missouri. Plaintiff decided to buy the Subject

16   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

17   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

18   Vehicles were represented as environmentally friendly, having low emissions and good fuel

19   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

20   Plaintiff went to Lucas Smith Chrysler Center to purchase the Subject Vehicle, the sales associate

21   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

22   These representations, along with the advertised fuel economy, were among the primary reasons

23   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

1   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

2   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

3   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

4   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

5   would have paid less for it, had he/she known that it did not comply with emission standards; that

6   its emission treatment system was designed to de-activate during real-world driving conditions;

7   and that it could not achieve the advertised towing power, performance, and/or fuel economy

8   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

9   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

10  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

11        920.    Plaintiff, Noel Foley (for the purpose of this paragraph, "Plaintiff"), a citizen of the

12  State of New York residing in the City of Bronx, bought a 2016 Dodge Ram 1500 EcoDiesel®

13  (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2016, at Riverdale

14  Chrysler Jeep, an authorized FCA dealer in Bronx, New York. Plaintiff decided to buy the Subject

15  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

16  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

17  Vehicles were represented as environmentally friendly, having low emissions and good fuel

18  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

19  Plaintiff went to Riverdale Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted

20  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

21  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

22  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

23  could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

921.    Plaintiff, Robert Sisson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska residing in the City of Oneill, leased a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2014, at Miller Chrysler Dodge Jeep, an authorized FCA dealer in Thornton, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Miller Chrysler Dodge Jeep to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

922.    Plaintiff, Ryan Renfro (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of Polk City, leased a 2015 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 19, 2016, at Dewey Dodge Jeep, an authorized FCA dealer in Ankeny, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dewey Dodge Jeep to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers

1    and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it,

2    had he/she known that it did not comply with emission standards; that its emission treatment

3    system was designed to de-activate during real-world driving conditions; and that it could not

4    achieve the advertised towing power, performance, and/or fuel economy without cheating

5    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

6    Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less

7    for it, had Defendants not concealed the unauthorized emission control devices.

8          923.    Plaintiff, Justin Joseph Manke (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of Wisconsin residing in the City of Ripon, bought a 2014 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016,

11   at Lenz Truck Center, an authorized FCA dealer in Fond Due Lac, Wisconsin. Plaintiff decided to

12   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

13   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

14   Subject Vehicles were represented as environmentally friendly, having low emissions and good

15   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

16   When Plaintiff went to Lenz Truck Center to purchase the Subject Vehicle, the sales associate

17   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

18   These representations, along with the advertised fuel economy, were among the primary reasons

19   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

20   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

21   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7        924.    Plaintiff, Thomas Vines (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Ohio residing in the City of Lancaster, bought a 2014 Jeep Grand Cherokee

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 25,

10   2013, at Bob Boyd Ram Jeep, an authorized FCA dealer in Lancaster, Ohio. Plaintiff decided to

11   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

12   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Bob Boyd Ram Jeep to purchase the Subject Vehicle, the sales associate

16   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17   These representations, along with the advertised fuel economy, were among the primary reasons

18   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

947

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6         925.    Plaintiff, Kevin P. Brinkhoff (for the purpose of this paragraph, "Plaintiff"), a

7    citizen of the State of Florida residing in the City of Naples, bought a 2015 Jeep Grand Cherokee

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 8,

9    2015, at Kolosso Chrysler Jeep Dodge, an authorized FCA dealer in Naples, Florida. Plaintiff

10   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to Kolosso Chrysler Jeep Dodge to purchase the Subject

15   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

16   economy and performance. These representations, along with the advertised fuel economy, were

17   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

18   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

19   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

20   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

21   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

22   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

23   emission standards; that its emission treatment system was designed to de-activate during real-

948

world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

926.    Plaintiff, Tim Stewart (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arkansas residing in the City of Batesville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 18, 2017, at Steve Landers Chrysler Dodge Jeep, an authorized FCA dealer in Little Rock, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Steve Landers Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate

during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

927.    Plaintiff, Troy L. & Ruth E. Jeremias (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Saint James, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 7, 2017, at Don Vance Chrysler Dodge Jeep Ram, an authorized FCA dealer in Marshfield, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Don Vance Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that

950

1  its emission treatment system was designed to de-activate during real-world driving conditions;

2  and that it could not achieve the advertised towing power, performance, and/or fuel economy

3  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6       928.    Plaintiff, Stanley & Anita Collins (for the purpose of this paragraph, "Plaintiff"), a

7  citizen of the State of Oklahoma residing in the City of Sallisaw, bought a 2014 Dodge Ram 1500

8  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 22,

9  2018, at Auto Finders, an authorized FCA dealer in Roland, Oklahoma. Plaintiff decided to buy

10 the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

11 reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

12 Subject Vehicles were represented as environmentally friendly, having low emissions and good

13 fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

14 When Plaintiff went to Auto Finders to purchase the Subject Vehicle, the sales associate touted the

15 Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

16 representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

17 chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

18 could perform as advertised only by emitting NOx at levels that are greater than advertised and

19 above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

20 undisclosed and unauthorized emission control devices designed to cheat emission tests and to

21 deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

22 would have paid less for it, had he/she known that it did not comply with emission standards; that

23 its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5           929.    Plaintiff, Jocko Vermillion (for the purpose of this paragraph, "Plaintiff"), a citizen

6    of the State of Ohio residing in the City of Tallmadge, bought a 2014 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1,

8    2016, at Fred Martin, an authorized FCA dealer in Barberton, Ohio. Plaintiff decided to buy the

9    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Fred Martin to purchase the Subject Vehicle, the sales associate touted the

14   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

15   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17   could perform as advertised only by emitting NOx at levels that are greater than advertised and

18   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

952

without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

930.    Plaintiff, Thomas & Jean Mikle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Rhinelander, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2015, at Wilcox Chrysler Dodge Jeep Ram, an authorized FCA dealer in Forest Lake, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Wilcox Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests.

1    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

2    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

3    not concealed the unauthorized emission control devices.

4         931.    Plaintiff, Troy Young (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of Pennsylvania residing in the City of Belle Vernon, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 26, 2018,

7    at Small Buick GMC Cadillac, an authorized FCA dealer in Greensburg, Pennsylvania. Plaintiff

8    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Small Buick GMC Cadillac to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

954

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4         932.    Plaintiff, Ashleigh Webster (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of New York residing in the City of Ovid, bought a 2014 Jeep Grand Cherokee

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 19,

7    2017, at Friendly Dodge Chrysler Jeep, an authorized FCA dealer in Penn Yan, New York.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Friendly Dodge Chrysler Jeep to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

955

1   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3   control devices.

4       933.    Plaintiff, Michael Chandler (for the purpose of this paragraph, "Plaintiff"), a citizen

5   of the State of Oklahoma residing in the City of Cement, bought a 2014 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2014,

7   at Byford Chrysler Dodge Jeep Ram of Chickasha, an authorized FCA dealer in Chickasha,

8   Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

9   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

10  visiting the Ram website, on which the Subject Vehicles were represented as environmentally

11  friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

12  commercials about the Subject Vehicles.  When Plaintiff went to Byford Chrysler Dodge Jeep

13  Ram of Chickasha to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

14  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

15  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

16  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

17  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

18  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

19  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

20  and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

21  for it, had he/she known that it did not comply with emission standards; that its emission treatment

22  system was designed to de-activate during real-world driving conditions; and that it could not

23  achieve the advertised towing power, performance, and/or fuel economy without cheating

emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

934. Plaintiff, Bill Sorensen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Clifton Springs, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2015, at Stephen Wade Chrysler Jeep Dodge, an authorized FCA dealer in Saint George, Utah. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Stephen Wade Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3    unauthorized emission control devices.

4         935.    Plaintiff, Steven & Jennifer Weir (for the purpose of this paragraph, "Plaintiff"), a

5    citizen of the State of Oregon residing in the City of Junction City, bought a 2016 Dodge Ram

6    1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 29,

7    2018, at Kendall Chevrolet, an authorized FCA dealer in Eugen, Oregon. Plaintiff decided to buy

8    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

9    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Kendall Chevrolet to purchase the Subject Vehicle, the sales associate

13   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

14   These representations, along with the advertised fuel economy, were among the primary reasons

15   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

16   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

17   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20   would have paid less for it, had he/she known that it did not comply with emission standards; that

21   its emission treatment system was designed to de-activate during real-world driving conditions;

22   and that it could not achieve the advertised towing power, performance, and/or fuel economy

23   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        936.    Plaintiff, Sterling Lee Whitley, Jr. (for the purpose of this paragraph, "Plaintiff"),

4    a citizen of the State of Arizona residing in the City of Gilbert, leased a 2016 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 15, 2016,

6    at Tempe Dodge Chrysler Jeep Ram, an authorized FCA dealer in Tempe, Arizona. Plaintiff

7    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Tempe Dodge Chrysler Jeep Ram to lease the Subject

12   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

13   economy and performance. These representations, along with the advertised fuel economy, were

14   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did

15   not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that

16   are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

17   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

18   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the

19   Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

20   emission standards; that its emission treatment system was designed to de-activate during real-

21   world driving conditions; and that it could not achieve the advertised towing power, performance,

22   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

23   direct and proximate result of Defendants' misconduct, and would not have leased the Subject

1    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

2    control devices.

3         937.    Plaintiff, David Bergeron (for the purpose of this paragraph, "Plaintiff"), a citizen

4    of the State of Louisiana residing in the City of Eunice, bought a 2014 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 31,

6    2017, at Sterling Automotive, an authorized FCA dealer in Eunice, Louisiana. Plaintiff decided to

7    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9    Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Sterling Automotive to purchase the Subject Vehicle, the sales associate

12   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13   These representations, along with the advertised fuel economy, were among the primary reasons

14   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2        938.    Plaintiff, Sherry Greathouse (for the purpose of this paragraph, "Plaintiff"), a

3    citizen of the State of Utah residing in the City of Herriman, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2014,

5    at Larry H. Miller Chrysler Jeep Dodge Ram, an authorized FCA dealer in Sandy, Utah. Plaintiff

6    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Larry H. Miller Chrysler Jeep Dodge Ram to purchase

11   the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

12   including its fuel economy and performance. These representations, along with the advertised fuel

13   economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of

14   purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by

15   emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff

16   aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

17   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

18   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

19   that it did not comply with emission standards; that its emission treatment system was designed to

20   de-activate during real-world driving conditions; and that it could not achieve the advertised

21   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

22   suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

23   not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

1   concealed the unauthorized emission control devices.

2       939.    Plaintiff, Amanda Dwyer (for the purpose of this paragraph, "Plaintiff"), a citizen

3   of the State of Washington residing in the City of McChord AFB, bought a 2015 Dodge Ram 1500

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 22, 2016,

5   at always Auto Group, an authorized FCA dealer in Pleasanton, Texas. Plaintiff decided to buy the

6   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8   Subject Vehicles were represented as environmentally friendly, having low emissions and good

9   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Always Auto Group to purchase the Subject Vehicle, the sales associate

11   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

12   These representations, along with the advertised fuel economy, were among the primary reasons

13   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

14   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

15   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

962

940.     Plaintiff, Chris Breaux (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi residing in the City of Kiln, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2018, at AutoNation Chrysler Dodge Jeep Ram, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to AutoNation Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

941.     Plaintiff, Christopher Fox (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Oak Island, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 10 ,2016, at Mac Haik Chrysler Jeep Dodge Ram, an authorized FCA dealer in Temple, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mac Haik Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

942.     Plaintiff, Matthew Kyle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Driftwood, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 23, 2017, at Covert Jeep Austin, an authorized FCA dealer in Austin, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Covert Jeep Austin to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

943.     Plaintiff, Robert Durante (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Louisiana residing in the City of Keithville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 4, 2017, at Greenville Chrysler Dodge Jeep Ram, an authorized FCA dealer in Greenville, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Greenville Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

944.    Plaintiff, Casey & Jerri Wheeler (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Oklahoma residing in the City of Tecumseh, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 30, 2016, at James Hodge Motors, an authorized FCA dealer in Paris, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to James Hodge Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

945.    Plaintiff, David Jarzamski (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Texas residing in the City of Arlington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2015, at Clay Cooley Chrysler Jeep Dodge Ram, an authorized FCA dealer in Irving, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Clay Cooley Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

946.    Plaintiff, Gaersen Bailey (for the purpose of this paragraph, "Plaintiff"), a citizen

968

1    of the State of Texas residing in the City of Kingwood, bought a 2015 Dodge Ram 1500

2    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

3    2016, at Texas Direct Auto, an authorized FCA dealer in Kingwood, Texas. Plaintiff decided to

4    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

5    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

6    Subject Vehicles were represented as environmentally friendly, having low emissions and good

7    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

8    When Plaintiff went to Texas Direct Auto to purchase the Subject Vehicle, the sales associate

9    touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

10   These representations, along with the advertised fuel economy, were among the primary reasons

11   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

12   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

13   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

14   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

15   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

16   would have paid less for it, had he/she known that it did not comply with emission standards; that

17   its emission treatment system was designed to de-activate during real-world driving conditions;

18   and that it could not achieve the advertised towing power, performance, and/or fuel economy

19   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

20   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

21   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

22          947.    Plaintiff, Michael Burkart (for the purpose of this paragraph, "Plaintiff"), a citizen

23   of the State of Texas residing in the City of Bonham, bought a 2015 Dodge Ram 1500 EcoDiesel®

1    (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2014, at Allen

2    Samuels Chrysler Dodge Jeep, an authorized FCA dealer in Fort Worth, Texas. Plaintiff decided

3    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

4    vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

5    which the Subject Vehicles were represented as environmentally friendly, having low emissions

6    and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

7    Vehicles.  When Plaintiff went to Allen Samuels Chrysler Dodge Jeep to purchase the Subject

8    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

9    economy and performance. These representations, along with the advertised fuel economy, were

10   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

11   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

12   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

13   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

14   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

15   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

16   emission standards; that its emission treatment system was designed to de-activate during real-

17   world driving conditions; and that it could not achieve the advertised towing power, performance,

18   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

19   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

20   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

21   control devices.

22          948.    Plaintiff, Santiago Deleon (for the purpose of this paragraph, "Plaintiff"), a citizen

23   of the State of Texas residing in the City of Harlingen, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2016, at Bert Ogden Chrysler Dodge Jeep Ram, an authorized FCA dealer in Harlingen, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bert Ogden Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

949.    Plaintiff, Casey Perry (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Waco, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

the purpose of this paragraph, the "Subject Vehicle") on or about September 5, 2016, at Greenville Chrysler, an authorized FCA dealer in Greenville, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Greenville Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

950.    Plaintiff, Landin Longtin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Cypress, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 30, 2016, at Baytown

972

Ford, an authorized FCA dealer in East Baytown, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Baytown Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

951.    Plaintiff, Scott Reeves (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Victor, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 11, 2017, at Texas Direct Auto, an authorized FCA dealer in Stafford, Texas. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Texas Direct Auto to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

952.    Plaintiff, Edward Constantinescu (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Montgomery, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 29, 2016, at AutoNation Chrysler Dodge Jeep Ram, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was n

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to AutoNation Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

953.    Plaintiff, Christopher Vigil (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Gallatin, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 5, 2018, at Carmax, an authorized FCA dealer in Madison, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Carmax to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

954.    Plaintiff, Luke D. Knighten (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 26, 2016, at Bluebonnet Chrysler Dodge, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bluebonnet Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

955.    Plaintiff, Justin & Chelsey Leasman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Cleveland, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2016, at Mac Haik Chrysler Dodge Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mac Haik Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

956.    Plaintiff, Joshua Berna (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Burleson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 3, 2018, at Burleson Nissan, an authorized FCA dealer in Burleson, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Burleson Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

957.    Plaintiff, Robert McMichael (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 26, 2015, at Ancira Chrysler Jeep Dodge Ram, an authorized FCA dealer in San Antonio, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ancira Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

958.    Plaintiff, Michael Gunderson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana residing in the City of Plentywood, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Dick Poe Dodge Ram, an authorized FCA dealer in El Paso, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions

and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dick Poe Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

959.    Plaintiff, William Ryan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Chapin, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2018, at All Star Ford Kilgore, an authorized FCA dealer in Kilgore, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Allstar Ford Kilgore to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

960.    Plaintiff, Christopher Lewis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Plano, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 7, 2018, at Frisco Chrysler Dodge Jeep Ram, an authorized FCA dealer in Frisco, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles.  When Plaintiff went to Frisco Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

961.    Plaintiff, Richard Randolph (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Slidell, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Bluebonnet Chrysler Dodge, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Bluebonnet Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

962.    Plaintiff, William Thomas (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Sanderson, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 4, 2016, at All American Dodge, an authorized FCA dealer in Odessa, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to All American Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

963.    Plaintiff, Scott Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Stephenville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2014, at Brunner Motors, an authorized FCA dealer in Stephenville, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Brunner Motors to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

964.    Plaintiff, Andrew Defayette (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Knoxville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 3, 2016, at AutoNatioan Chrysler Dodge Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to AutoNation Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

986

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

965.    Plaintiff, Karen Gilcrease (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Zavalla, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 6, 2016, at Southern Chrysler Dodge Jeep, Ltd., an authorized FCA dealer in Lufkin, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Southern Chrysler Dodge Jeep, Ltd. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

1    performance. These representations, along with the advertised fuel economy, were among the

2    primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

3    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

4    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

5    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

6    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

7    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

8    standards; that its emission treatment system was designed to de-activate during real-world driving

9    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

10    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

11    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

12    or would have paid less for it, had Defendants not concealed the unauthorized emission control

13    devices.

14        966.    Plaintiff, William Thomas Hunt (for the purpose of this paragraph, "Plaintiff"), a

15    citizen of the State of Texas residing in the City of Sanderson, bought a 2016 Dodge Ram 1500

16    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 4, 2016,

17    at June 4, 2016, an authorized FCA dealer in Odessa, Texas. Plaintiff decided to buy the Subject

18    Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

19    emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

20    Vehicles were represented as environmentally friendly, having low emissions and good fuel

21    economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

22    Plaintiff went to All American Dodge to purchase the Subject Vehicle, the sales associate touted

23    the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

988

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

967.    Plaintiff, Lindsay Elizabeth Weaver & Jackie Graber, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Crestview, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 25, 2018, at Vernon Auto Group, an authorized FCA dealer in Vernon, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Vernon Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

1   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

2   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

3   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

4   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

5   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

6   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

7   standards; that its emission treatment system was designed to de-activate during real-world driving

8   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

9   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

10  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

11  or would have paid less for it, had Defendants not concealed the unauthorized emission control

12  devices.

13       968.     Plaintiff, Kenneth Kana (for the purpose of this paragraph, "Plaintiff"), a citizen of

14  the State of Texas residing in the City of Katy, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

15  the purpose of this paragraph, the "Subject Vehicle") on or about July 5, 2014, at Northwest

16  Chrysler Jeep Dodge Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy

17  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19  Subject Vehicles were represented as environmentally friendly, having low emissions and good

20  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21  When Plaintiff went to Northwest Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the

22  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

23  performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

969.     Plaintiff, Patrick & Lauren McCraw (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Plano, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 6, 2013, at Huffines Chrysler Jeep Dodge Ram, an authorized FCA dealer in Plano, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Huffines Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy,

1    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

2    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

3    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

4    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

5    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

6    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

7    comply with emission standards; that its emission treatment system was designed to de-activate

8    during real-world driving conditions; and that it could not achieve the advertised towing power,

9    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

10   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

11   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

12   unauthorized emission control devices.

13        970.    Plaintiff, Stephen Watson (for the purpose of this paragraph, "Plaintiff"), a citizen

14   of the State of Texas residing in the City of Aledo, leased a 2016 Dodge Ram 1500EcoDiesel®

15   (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at Huffines

16   Chrysler Dodge Jeep Ram, an authorized FCA dealer in Plano, Texas. Plaintiff decided to buy the

17   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19   Subject Vehicles were represented as environmentally friendly, having low emissions and good

20   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21   When Plaintiff went to Huffines Chrysler Dodge Jeep Ram to lease the Subject Vehicle, the sales

22   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

23   performance. These representations, along with the advertised fuel economy, were among the

992

primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

971. Plaintiff, Jennifer Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Waco, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 8, 2015, at Nyle Maxwell of Austin, an authorized FCA dealer in Austin, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Nyle Maxwell of Austin to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

972.    Plaintiff, Brandon Redmon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Collin, purchased a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015, at a private wholesale dealer, an authorized FCA dealer in Austin, Texas. Plaintiff decided to purchase the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to a private wholesale dealer to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know

1    that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2    than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3    equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4    tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5    Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6    standards; that its emission treatment system was designed to de-activate during real-world driving

7    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10   or would have paid less for it, had Defendants not concealed the unauthorized emission control

11   devices.

12          973.    Plaintiff, Brandon Redmon (for the purpose of this paragraph, "Plaintiff"), a citizen

13   of the State of Texas residing in the City of Celina, leased a 2014 Jeep Grand Cherokee

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

15   2013, at Smart Auto Leasing, an authorized FCA dealer in Irving, Texas. Plaintiff decided to buy

16   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17   reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

18   Subject Vehicles were represented as environmentally friendly, having low emissions and good

19   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20   When Plaintiff went to Smart Auto Leasing to lease the Subject Vehicle, the sales associate touted

21   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23   chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

974.    Plaintiff, John Prinz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Hutto, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 19, 2016, at Roger Beasley Hyundai New Braunfels, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Roger Beasley Hyundai New Braunfels to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

975.    Plaintiff, Larry Alan Powles (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Kerrville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 21, 2016, at Bluebonnet Chrysler Dodge, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bluebonnet Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

1    that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

2    Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

3    cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

4    the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

5    emission standards; that its emission treatment system was designed to de-activate during real-

6    world driving conditions; and that it could not achieve the advertised towing power, performance,

7    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

8    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

9    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

10   control devices.

11          976.   Plaintiff, Richard Eugene Brown (for the purpose of this paragraph, "Plaintiff"), a

12   citizen of the State of Texas residing in the City of Dallas, bought a 2014 Jeep Grand Cherokee

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15,

14   2014, at Richardson Chrysler Jeep, an authorized FCA dealer in Richardson, Texas. Plaintiff

15   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

16   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

17   website, on which the Subject Vehicles were represented as environmentally friendly, having low

18   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

19   Subject Vehicles.  When Plaintiff went to Richard Chrysler Jeep to purchase the Subject Vehicle,

20   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

21   and performance. These representations, along with the advertised fuel economy, were among the

22   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

23   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

977.    Plaintiff, Michael & Christina Potts (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Houston, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2017, at Clearlake Dodge, an authorized FCA dealer in Webster, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Clearlake Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

978.    Plaintiff, Mark Madden (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 17, 2016, at Nyle Maxwell of Taylor, an authorized FCA dealer in Taylor, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Nyle Maxwell of Taylor to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3    would have paid less for it, had he/she known that it did not comply with emission standards; that

4    its emission treatment system was designed to de-activate during real-world driving conditions;

5    and that it could not achieve the advertised towing power, performance, and/or fuel economy

6    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9        979.    Plaintiff, Tony Choi (for the purpose of this paragraph, "Plaintiff"), a citizen of the

10   State of Texas residing in the City of Cypress, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

11   the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at Mortiz Chrysler

12   Jeep Dodge, an authorized FCA dealer in Fort Worth, Texas. Plaintiff decided to buy the Subject

13   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

14   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

15   Vehicles were represented as environmentally friendly, having low emissions and good fuel

16   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

17   Plaintiff went to Mortiz Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate

18   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

19   These representations, along with the advertised fuel economy, were among the primary reasons

20   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

21   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

22   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

1   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2   would have paid less for it, had he/she known that it did not comply with emission standards; that

3   its emission treatment system was designed to de-activate during real-world driving conditions;

4   and that it could not achieve the advertised towing power, performance, and/or fuel economy

5   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8         980.    Plaintiff, Joshua Gillespie (for the purpose of this paragraph, "Plaintiff"), a citizen

9   of the State of Texas residing in the City of Big Lake, bought a 2014 Dodge Ram 1500 EcoDiesel®

10   (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2017, at Jim Bass

11   Ford, an authorized FCA dealer in San Angelo, Texas. Plaintiff decided to buy the Subject Vehicle

12   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

13   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

14   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

15   also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Jim

16   Bass Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

17   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

18   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

19   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

20   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

21   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

22   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

23   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

1  for it, had he/she known that it did not comply with emission standards; that its emission treatment

2  system was designed to de-activate during real-world driving conditions; and that it could not

3  achieve the advertised towing power, performance, and/or fuel economy without cheating

4  emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

5  Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

6  less for it, had Defendants not concealed the unauthorized emission control devices.

7  　　　　981.　　Plaintiff, Eder Acosta (for the purpose of this paragraph, "Plaintiff"), a citizen of

8  the State of Texas residing in the City of San Antonio, bought a 2016 Dodge Ram 1500

9  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

10  2016, at Bluebonnet Chrysler Dodge, an authorized FCA dealer in New Braunfels, Texas. Plaintiff

11  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

13  website, on which the Subject Vehicles were represented as environmentally friendly, having low

14  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

15  Subject Vehicles.  When Plaintiff went to Bluebonnet Chrysler Dodge to purchase the Subject

16  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

17  economy and performance. These representations, along with the advertised fuel economy, were

18  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

19  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

20  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

21  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

22  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

23  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

1    emission standards; that its emission treatment system was designed to de-activate during real-

2    world driving conditions; and that it could not achieve the advertised towing power, performance,

3    and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

4    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

5    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

6    control devices.

7        982.    Plaintiff, Lauren Leigh Brehm (for the purpose of this paragraph, "Plaintiff"), a

8    citizen of the State of Texas residing in the City of San Antonio, bought a 2015 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 26, 2016,

10   at Bluebonnet Dodge, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy

11   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Bluebonnet Dodge to purchase the Subject Vehicle, the sales associate

16   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17   These representations, along with the advertised fuel economy, were among the primary reasons

18   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1   its emission treatment system was designed to de-activate during real-world driving conditions;

2   and that it could not achieve the advertised towing power, performance, and/or fuel economy

3   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6        983.    Plaintiff, Thomas 7 Tammy Samford (for the purpose of this paragraph,

7   "Plaintiff"), a citizen of the State of Texas residing in the City of Waco, bought a 2016 Dodge Ram

8   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January

9   20, 2016, at Bossier Chrysler Jeep Dodge Ram, an authorized FCA dealer in Hillsboro, Texas.

10  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12  website, on which the Subject Vehicles were represented as environmentally friendly, having low

13  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14  Subject Vehicles.  When Plaintiff went to Dossier Chrysler Jeep Dodge Ram to purchase the

15  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

16  its fuel economy and performance. These representations, along with the advertised fuel economy,

17  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

18  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

19  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

20  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

21  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

22  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

23  comply with emission standards; that its emission treatment system was designed to de-activate

during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

984.    Plaintiff, Matthew Reese (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Kilgore, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 5, 2018, at Car Source, an authorized FCA dealer in Tyler, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Car Source to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not

1    achieve the advertised towing power, performance, and/or fuel economy without cheating

2    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

3    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

4    less for it, had Defendants not concealed the unauthorized emission control devices.

5          985.    Plaintiff, Douglas B. Mclaughlin (for the purpose of this paragraph, "Plaintiff"), a

6    citizen of the State of Texas residing in the City of Abilene, bought a 2016 Dodge Ram 1500

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 15, 2018,

8    at Blake Fulenwider Dodge, an authorized FCA dealer in Eastland, Texas. Plaintiff decided to buy

9    the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Blake Fulenwider Dodge to purchase the Subject Vehicle, the sales

14   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

15   performance. These representations, along with the advertised fuel economy, were among the

16   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

17   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

18   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

19   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

20   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

21   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

22   standards; that its emission treatment system was designed to de-activate during real-world driving

23   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

986.    Plaintiff, Regina Patricia Sanchez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Corpus Christi, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 8, 2016, at Grapevine Dodge Chrysler Jeep, an authorized FCA dealer in Grapevine, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Grapevine Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance,

and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

987.     Plaintiff, Thomas Contreras (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 26, 2015, at North Star Dodge Chrysler Jeep, an authorized FCA dealer in San Antonio, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to North Star Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance,

1  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

2  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

3  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

4  control devices.

5       988.    Plaintiff, Brandon Coates (for the purpose of this paragraph, "Plaintiff"), a citizen

6  of the State of Texas residing in the City of Dalhart, bought a 2016 Dodge Ram 1500 EcoDiesel®

7  (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Bonham

8  Dodge, an authorized FCA dealer in Bonham, Texas. Plaintiff decided to buy the Subject Vehicle

9  based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

10  and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

11  represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

12  also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

13  Bonham Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

14  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

15  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

16  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

17  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

18  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

19  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

20  and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

21  for it, had he/she known that it did not comply with emission standards; that its emission treatment

22  system was designed to de-activate during real-world driving conditions; and that it could not

23  achieve the advertised towing power, performance, and/or fuel economy without cheating

1010

emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

989.     Plaintiff, Christopher Fox (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Oak Island, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 10, 2016 at Mac Haik Chrysler Jeep Dodge Ram, an authorized FCA dealer in Temple, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mac Haik Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3  unauthorized emission control devices.

4       990.    Plaintiff, Michael Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen

5  of the State of Texas residing in the City of Lewisville, bought a 2016 Dodge Ram 1500

6  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 10, 2018,

7  at Glen Polk Autoplex Chrysler, an authorized FCA dealer in Gainesville, Texas. Plaintiff decided

8  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

9  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

10  which the Subject Vehicles were represented as environmentally friendly, having low emissions

11  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

12  Vehicles.  When Plaintiff went to Glen Pol Autoplex Chrysler to purchase the Subject Vehicle, the

13  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

14  performance. These representations, along with the advertised fuel economy, were among the

15  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

16  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

17  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

18  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

19  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

20  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

21  standards; that its emission treatment system was designed to de-activate during real-world driving

22  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

23  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

1   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

2   or would have paid less for it, had Defendants not concealed the unauthorized emission control

3   devices.

4         991.    Plaintiff, Lorie Neal (for the purpose of this paragraph, "Plaintiff"), a citizen of the

5   State of Texas residing in the City of Red Oak, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

6   the purpose of this paragraph, the "Subject Vehicle") on or about November 25, 2017, at Meadore

7   Dodge Chrysler Jeep Ram, an authorized FCA dealer in Fort Worth, Texas. Plaintiff decided to

8   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Meadore Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the

13   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

14   performance. These representations, along with the advertised fuel economy, were among the

15   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

16   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

17   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

18   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

19   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

20   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

21   standards; that its emission treatment system was designed to de-activate during real-world driving

22   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

23   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

1  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

2  or would have paid less for it, had Defendants not concealed the unauthorized emission control

3  devices.

4       992.    Plaintiff, David Sweet (for the purpose of this paragraph, "Plaintiff"), a citizen of

5  the State of Texas residing in the City of Montgomery, bought a 2016 Dodge Ram 1500

6  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, at

7  Tomball Dodge, an authorized FCA dealer in Tomball, Texas. Plaintiff decided to buy the Subject

8  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

9  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

10  Vehicles were represented as environmentally friendly, having low emissions and good fuel

11  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

12  Plaintiff went to Tomball Dodge to purchase the Subject Vehicle, the sales associate touted the

13  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16  could perform as advertised only by emitting NOx at levels that are greater than advertised and

17  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1014

1   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        993.     Plaintiff, Tyler Milton (for the purpose of this paragraph, "Plaintiff"), a citizen of

4   the State of Texas residing in the City of Beaumont, bought a 2014 Dodge Ram 1500 EcoDiesel®

5   (for the purpose of this paragraph, the "Subject Vehicle") on or about September 3, 2014, at Mike

6   Smith Auto Group, an authorized FCA dealer in Beaumont, Texas. Plaintiff decided to buy the

7   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

8   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9   Subject Vehicles were represented as environmentally friendly, having low emissions and good

10  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11  When Plaintiff went to Mike Smith Auto Group to purchase the Subject Vehicle, the sales associate

12  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13  These representations, along with the advertised fuel economy, were among the primary reasons

14  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19  would have paid less for it, had he/she known that it did not comply with emission standards; that

20  its emission treatment system was designed to de-activate during real-world driving conditions;

21  and that it could not achieve the advertised towing power, performance, and/or fuel economy

22  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2   994.   Plaintiff, Malissa & Pete Teriele (for the purpose of this paragraph, "Plaintiff"), a

3   citizen of the State of California residing in the City of Oceanside, bought a 2016 Dodge Ram

4   1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November

5   16, 2015, at Bob Baker Automotive, an authorized FCA dealer in Carlsbad, California. Plaintiff

6   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to Bob Baker Automotive to purchase the Subject Vehicle,

11   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

12   and performance. These representations, along with the advertised fuel economy, were among the

13   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

14   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

15   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

16   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

17   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

18   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

19   standards; that its emission treatment system was designed to de-activate during real-world driving

20   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

21   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

22   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

23   or would have paid less for it, had Defendants not concealed the unauthorized emission control

1    devices.

2        995.    Plaintiff, Lorell D. Hurley (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Massachusetts residing in the City of Halifax, leased 2014 Jeep Grand Cherokee

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 30,

5    2013, at K & S Auto Sales Chrysler Jeep, an authorized FCA dealer in Randolph, Massachusetts.

6    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to K & S Auto Sales Chrysler Jeep to leased the Subject

11   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12   economy and performance. These representations, along with the advertised fuel economy, were

13   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did

14   not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that

15   are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the

18   Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19   emission standards; that its emission treatment system was designed to de-activate during real-

20   world driving conditions; and that it could not achieve the advertised towing power, performance,

21   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22   direct and proximate result of Defendants' misconduct, and would not have leased the Subject

23   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

1    control devices.

2        996.    Plaintiff, Robert J. Dollard (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Massachusetts residing in the City of Rowley, bought a 2014 Jeep Grand Cherokee

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 16,

5    2014, at Kelly Jeep, an authorized FCA dealer in Lynnfield, Massachusetts. Plaintiff decided to

6    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

7    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Kelly Jeep to purchase the Subject Vehicle, the sales associate touted the

11   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

997.     Plaintiff, Chester Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Hampshire residing in the City of West Ossipee, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 11, 2017, at Lee Dodge Chrysler Jeep, an authorized FCA dealer in West Brook, Maine. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lee Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1019

998.     Plaintiff, Robert & Elva Magallon (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of California residing in the City of Santa Maria, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Santa Maria Chrysler Jeep Dodge, an authorized FCA dealer in Santa Maria, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Santa Maria Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

999.     Plaintiff, Robert S. McKee (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Athens, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2017, at Elder Chrysler Dodge Jeep, an authorized FCA dealer in Athens, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Elder Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1000.   Plaintiff, Stanley E. Lowe (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Gatlinburg, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 15, 2018, at Robert Loehr Chrysler Dodge Jeep Ram, an authorized FCA dealer in Cartersville, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Robert Loehr Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1001.   Plaintiff, Richard Hocott (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Crown Point, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 11, 2017, at Bosak Motors, an authorized FCA dealer in Merrillville, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bosak Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1002.   Plaintiff, David Meienburg (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of California residing in the City of Del Mar, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 17, 2015, at Bob Baker Chrysler Jeep Dodge Ram, an authorized FCA dealer in Carlsbad, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bob Baker Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1003.   Plaintiff, Allen Marcus Hutcheson (for the purpose of this paragraph, "Plaintiff"),

1024

a citizen of the State of Georgia residing in the City of Sharpsburg, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 26, 2014, at Landmark Dodge Chrysler Jeep, an authorized FCA dealer in Morrow, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Landmark Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1004.   Plaintiff, Aaron & Lindsay Horn (for the purpose of this paragraph, "Plaintiff"), a

1   citizen of the State of Texas residing in the City of Hockley, bought a 2015 Dodge Ram 1500

2   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016,

3   at Planet Ford, an authorized FCA dealer in Spring, Texas. Plaintiff decided to buy the Subject

4   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

5   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

6   Vehicles were represented as environmentally friendly, having low emissions and good fuel

7   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

8   Plaintiff went to Planet Ford to purchase the Subject Vehicle, the sales associate touted the Subject

9   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

10  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

11  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

12  could perform as advertised only by emitting NOx at levels that are greater than advertised and

13  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

14  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

15  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

16  would have paid less for it, had he/she known that it did not comply with emission standards; that

17  its emission treatment system was designed to de-activate during real-world driving conditions;

18  and that it could not achieve the advertised towing power, performance, and/or fuel economy

19  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

20  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

21  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

22       1005.   Plaintiff, Brian J. Kellams (for the purpose of this paragraph, "Plaintiff"), a citizen

23  of the State of Indiana residing in the City of Vincennes, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 5, 2015, at Yochum Chrysler Dodge Jeep Ram, an authorized FCA dealer in Vincennes, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Yochum Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1006.   Plaintiff, Blake & Susan Weinstein (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of California residing in the City of Lake Elsinore, bought a 2014 Jeep Grand

Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 22, 2016, at STG Auto Group, an authorized FCA dealer in Ontario, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to STG Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1007.   Plaintiff, Donald Gilman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Ashburn, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 27, 2016, at Griffen Chrysler Dodge, an authorized FCA dealer in Tifton, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Griffen Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1008.   Plaintiff, Gerald Roux (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Bellville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 21, 2015, at Allan

Samuels Dodge, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Allan Samuel Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1009.   Plaintiff, John Jackson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Kingsville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Nessen Chrysler Doge Jeep Ram, an authorized FCA dealer in Kingsville, Texas. Plaintiff decided to buy

the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Nessen Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1010.   Plaintiff, Bruce Ludlow (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Fairmont, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 31, 2017, at Chevrolet of Wooster, an authorized FCA dealer in Wooster, Ohio. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chevrolet of Wooster to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1011.   Plaintiff, Herman Golden & Cheryl Morovich (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Port Sulphur, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 9, 2016, at North American Auto Group, an authorized FCA dealer in Baton Rouge, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that

it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to North American Auto Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1012.    Plaintiff, Robert Sivori (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Ormond Beach, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2013, at Atlantic Chrysler Jeep, an authorized FCA dealer in West Islip, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Atlantic Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1013.   Plaintiff, Michael Kasten (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Cornell, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 10, 2018, at Forest lake Chrysler Dodge Jeep, an authorized FCA dealer in Forest lake, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Forest Lake Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1014.    Plaintiff, Ashton & Christina Pace (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Damon, bought a two (2) 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about one on December 1, 2017 and the other on November 1, 2017, at Mac Haik Chrysler Dodge Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in

1   part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

2   efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

3   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

4   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mac

5   Haik Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the

6   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

7   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

8   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

9   could perform as advertised only by emitting NOx at levels that are greater than advertised and

10  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

11  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

12  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

13  would have paid less for it, had he/she known that it did not comply with emission standards; that

14  its emission treatment system was designed to de-activate during real-world driving conditions;

15  and that it could not achieve the advertised towing power, performance, and/or fuel economy

16  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

17  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

18  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

19      1015.   Plaintiff, John W. Kentzel (for the purpose of this paragraph, "Plaintiff"), a citizen

20  of the State of Mississippi residing in the City of Biloxi, bought a 2015 Dodge Ram 1500

21  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 13, 2018,

22  at Lakeshore Chrysler Dodge Jeep, an authorized FCA dealer in Slidell, Louisiana. Plaintiff

23  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lake Shore Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1016.    Plaintiff, Harold Douglas Maynard (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky residing in the City of South Williamson, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at North Coast Auto Mall, an authorized FCA dealer in Bedford, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to North Coast Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1017.   Plaintiff, Jimmy Lanz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Sweet Home, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2014, at Lithia Dodge, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lithia Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1018.   Plaintiff, Jimmy Lanz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Sweet Home, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 21, 2016, at Cottage Grove Chrysler Dodge Jeep, an authorized FCA dealer in Cottage Grove, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Cottage Grove Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1019.   Plaintiff, Larry & Dianne Joachim (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of New Richmond, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 27, 2016, at Bernards Northtown Inc., an authorized FCA dealer in New Richmond, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

1040

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bernards Northtown Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1020.    Plaintiff, Chason Pointer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Davisburg, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Al Deeby Chrysler Dodge Jeep Ram, an authorized FCA dealer in Village of Clarkston, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

the Ram] website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Al Deeby Chrysler Dodge Jeep Ram to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1021.    Plaintiff, Steven Palmer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Kansas City, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 10, 2017, at Larry Carmer, private person, in Marshfield, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff purchased the Subject Vehicle, the individual touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1022.   Plaintiff, Roger Parker (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Kingston, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2016, in Tennessee. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

commercials about the Subject Vehicles.  When Plaintiff went to the dealership to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1023.    Plaintiff, Shachar Coleman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Denver, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 2, 2017, at Gladstone Dodge, an authorized FCA dealer in Gladstone, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Gladstone Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1024. Plaintiffs, John & Susanne Verretto (for the purpose of this paragraph, "Plaintiffss"), a citizens of the State of Arizona residing in the City of Cottonwood, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 23, 2014, at Chapman Las Vegas Dodge, an authorized FCA dealer in Las Vegas, Nevada. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Chapman Las Vegas Dodge to purchase the

Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1025.   Plaintiffs, Gale & Retha Powell (for the purpose of this paragraph, "Plaintiffs"), citizens of the State of Oklahoma residing in the City of Cleveland, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2015, at Bob Moore Chrysler Dodge Jeep Ram Of Tulsa, an authorized FCA dealer in Tulsa, Oklahoma. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Bob Moore Chrysler Dodge

Jeep Ram Of Tulsa to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1026. Plaintiff, Karen Ann Corbin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Montana residing in the City of Butte, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 5, 2017, at Mile High CJD, an authorized FCA dealer in Butte, Montana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mile High CJD to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1027.    Plaintiff, Gonçalo Duarte (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey residing in the City of Parsippany, leased a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2015, at DeCozen Chrysler Jeep Dodge RAM, an authorized FCA dealer in Verona, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to DeCozen Chrysler Jeep Dodge RAM to leased the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of lease, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1028.   Plaintiff, Adam Kidd (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky residing in the City of Glencoe, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 23, 2016, at Zimmer Chrysler Dodge Jeep Ram, an authorized FCA dealer in Florence, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Zimmer Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1029.  Plaintiffs, Derek & Frances Minchey (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Wyoming residing in the City of Gillette bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 20, 2018, at White Energy Motors, an authorized FCA dealer in Gillette, Wyoming. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to White Energy Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1030.    Plaintiff, Kyle W Dreas (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Aurora bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 19, 2015, at Brandon Dodge, an authorized FCA dealer in Littleton, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Brandon Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1031.    Plaintiff, Patricia Neves (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut residing in the City of Danbury bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2017, at Paramus Ford, an authorized FCA dealer in Paramus, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Paramus Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2  could perform as advertised only by emitting NOx at levels that are greater than advertised and

3  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6  would have paid less for it, had he/she known that it did not comply with emission standards; that

7  its emission treatment system was designed to de-activate during real-world driving conditions;

8  and that it could not achieve the advertised towing power, performance, and/or fuel economy

9  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10 result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11 have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12      1032.   Plaintiff, Michael Moreland (for the purpose of this paragraph, "Plaintiff"), a

13 citizen of the State of Pennsylvania residing in the City of Muncy Valley, bought a 2016 Dodge

14 Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

15 September 30, 2016, at Hondru Chrysler Dodge Jeep RAM of Elizabethtown, an authorized FCA

16 dealer in Elizabethtown, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part

17 on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

18 efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

19 represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

20 also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

21 Hondru Chrysler Dodge Jeep RAM of Elizabethtown to purchase the Subject Vehicle, the sales

22 associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

23 performance. These representations, along with the advertised fuel economy, were among the

1053

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1033.    Plaintiff, Salvador Erivez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Casa Grande bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1, 2016, at Henry Brown Chrysler Jeep Dodge, an authorized FCA dealer in Casa Grande, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Henry Brown Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy,

1  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

2  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

3  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

4  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

5  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

6  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

7  comply with emission standards; that its emission treatment system was designed to de-activate

8  during real-world driving conditions; and that it could not achieve the advertised towing power,

9  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

10  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

11  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

12  unauthorized emission control devices.

13      1034.   Plaintiff, Micheas Vannes (for the purpose of this paragraph, "Plaintiff"), a citizen

14  of the State of Florida residing in the City of New Port Richey, bought a 2015 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 11,

16  2015, at Ferman Dodge, an authorized FCA dealer in Port Richey, Florida. Plaintiff decided to buy

17  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19  Subject Vehicles were represented as environmentally friendly, having low emissions and good

20  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21  When Plaintiff went to Ferman Dodge to purchase the Subject Vehicle, the sales associate touted

22  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

23  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1055

1    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

2    could perform as advertised only by emitting NOx at levels that are greater than advertised and

3    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12        1035.    Plaintiff, Pat Combs (for the purpose of this paragraph, "Plaintiff"), a citizen of the

13   State of Ohio residing in the City of Proctorville, bought a 2015 Dodge Ram 1500 EcoDiesel®

14   (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2015, at Goldy

15   Chrysler Dodge Jeep Ram, an authorized FCA dealer in Huntington, West Virginia. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Goldy Chrysler Dodge Jeep Ram to purchase the Subject

21   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22   economy and performance. These representations, along with the advertised fuel economy, were

23   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

1  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

3  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

5  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6  emission standards; that its emission treatment system was designed to de-activate during real-

7  world driving conditions; and that it could not achieve the advertised towing power, performance,

8  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

9  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11  control devices.

12      1036.   Plaintiffs, Russell & Linda Scaggs (for the purpose of this paragraph, "Plaintiffs"),

13  are citizens of the State of Kentucky residing in the City of Falmouth, bought a 2016 Dodge Ram

14  1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November

15  11, 2016, at Zimmer Chrysler Dodge Jeep Ram, an authorized FCA dealer in Florence, Kentucky.

16  Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiffs went to Zimmer Chrysler Dodge Jeep Ram to purchase the

21  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

22  its fuel economy and performance. These representations, along with the advertised fuel economy,

23  were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase,

1   Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2   at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that

3   his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4   designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not

5   have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did

6   not comply with emission standards; that its emission treatment system was designed to de-activate

7   during real-world driving conditions; and that it could not achieve the advertised towing power,

8   performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a

9   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11   unauthorized emission control devices.

12      1037.   Plaintiff, Michael Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen

13   of the State of Kentucky residing in the City of Keavy, bought a 2016 Dodge Ram 1500

14   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 23,

15   2016, at Bob Allen Chrysler Plymouth, an authorized FCA dealer in Danville, Kentucky. Plaintiff

16   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18   website, on which the Subject Vehicles were represented as environmentally friendly, having low

19   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20   Subject Vehicles.  When Plaintiff went to Bob Allen Chrysler Plymouth to purchase the Subject

21   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22   economy and performance. These representations, along with the advertised fuel economy, were

23   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

1  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

3  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

5  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6  emission standards; that its emission treatment system was designed to de-activate during real-

7  world driving conditions; and that it could not achieve the advertised towing power, performance,

8  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

9  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11  control devices.

12      1038.   Plaintiff, Richard Thomasson (for the purpose of this paragraph, "Plaintiff"), a

13  citizen of the State of Oklahoma residing in the City of Davis, bought a 2015 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 17,

15  2015, at Carter County Dodge Chrysler Jeep, an authorized FCA dealer in Ardmore, Oklahoma.

16  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiff went to Carter County Dodge Chrysler Jeep to purchase the

21  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

22  its fuel economy and performance. These representations, along with the advertised fuel economy,

23  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

1   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6   comply with emission standards; that its emission treatment system was designed to de-activate

7   during real-world driving conditions; and that it could not achieve the advertised towing power,

8   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11  unauthorized emission control devices.

12      1039.   Plaintiffs, Miranda Tadlock & Adryan Debey (for the purpose of this paragraph,

13  "Plaintiffs"), are citizens of the State of Nebraska residing in the City of Grand Island, bought a

14  2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on

15  or about June 2, 2018, at Dillons Auto, an authorized FCA dealer in Lincoln, Nebraska. Plaintiffs

16  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiffs went to Dillons Auto to purchase the Subject Vehicle, the sales

21  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22  performance. These representations, along with the advertised fuel economy, were among the

23  primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not

know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1040.    Plaintiffs, Jeffrey & Keri Bushaw (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Nevada residing in the City of Las Vegas, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2015, at Larson Chrysler Jeep Dodge & Ram Dealer, an authorized FCA dealer in Puyallup, Washington. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Puyallup to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs

1  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

2  that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject

3  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

4  cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased

5  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

6  emission standards; that its emission treatment system was designed to de-activate during real-

7  world driving conditions; and that it could not achieve the advertised towing power, performance,

8  and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a

9  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

10  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

11  control devices.

12      1041.   Plaintiff, Niles Jeremy Behler (for the purpose of this paragraph, "Plaintiff"), a

13  citizen of the State of Idaho residing in the City of Lewiston, bought a 2015 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 7,

15  2018, at Rogers Jeep Chrysler Dodge Ram, an authorized FCA dealer in Lewiston, Idaho. Plaintiff

16  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiff went to Rogers Jeep Chrysler Dodge Ram to purchase the

21  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

22  its fuel economy and performance. These representations, along with the advertised fuel economy,

23  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

1   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6   comply with emission standards; that its emission treatment system was designed to de-activate

7   during real-world driving conditions; and that it could not achieve the advertised towing power,

8   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11  unauthorized emission control devices.

12       1042.   Plaintiff, Mike Keenan (for the purpose of this paragraph, "Plaintiff"), a citizen of

13  the State of New Mexico residing in the City of Albuquerque, bought two 2016 Dodge Ram 1500

14  EcoDiesels® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 18,

15  2016, at Melloy Dodge, an authorized FCA dealer in Albuquerque, New Mexico. Plaintiff decided

16  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

17  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

18  which the Subject Vehicles were represented as environmentally friendly, having low emissions

19  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

20  Vehicles.  When Plaintiff went to Melloy Dodge to purchase the Subject Vehicle, the sales

21  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

22  performance. These representations, along with the advertised fuel economy, were among the

23  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

1  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

2  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

3  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

5  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6  standards; that its emission treatment system was designed to de-activate during real-world driving

7  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

9  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10  or would have paid less for it, had Defendants not concealed the unauthorized emission control

11  devices.

12      1043.   Plaintiff, Martin L. Ward (for the purpose of this paragraph, "Plaintiff"), a citizen

13  of the State of Illinois residing in the City of Jerseyville, bought a 2014 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 24, 2017,

15  at Import Motors, an authorized FCA dealer in Woodridge, New Jersey. Plaintiff decided to buy

16  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18  Subject Vehicles were represented as environmentally friendly, having low emissions and good

19  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20  When Plaintiff went to Import Motors to purchase the Subject Vehicle, the sales associate touted

21  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

23  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

1064

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1044.   Plaintiff, George A. Gunther (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Downingtown, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 24, 2015, at Jeff D'Ambrosio Chrysler Jeep Dodge, an authorized FCA dealer in Downingtown, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Jeff D'Ambrosio Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1045.   Plaintiffs, James & Annette Jarvis (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Indiana residing in the City of Kokomo, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 14, 2017, at Carmax, an authorized FCA dealer in Indianapolis, Indiana. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles. When Plaintiffs went to Carmax to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than

advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1046.   Plaintiff, Sam Richey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Eugene, bought two 2016 Dodge Ram 1500 EcoDiesels® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 15, 2016, at Lithia Chrysler Jeep Dodge of Eugene, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Eugene to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1047.   Plaintiff, Sam Richey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Eugene, bought two 2016 Dodge Ram 1500 EcoDiesels® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 20, 2016, at Lithia Chrysler Jeep Dodge of Eugene, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Eugene to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1048.   Plaintiff, Sam Richey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Orgeon residing in the City of Eugene, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 21, 2016, at Lithia Chrysler Jeep Dodge of Eugene, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Eugene to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1049.   Plaintiff, Sam Richey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Eugene, bought two 2016 Dodge Ram 1500 EcoDiesels® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 22, 2016, at Lithia Chrysler Jeep Dodge of Eugene, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lithia Chrysler Jeep Dodge of Eugene to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1050.   Plaintiff, Richard Tomlison (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Waverly, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 7, 2015, at Herrnstein, an authorized FCA dealer in Chillicothe, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Herrnstein to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1051.   Plaintiff, Jesse Stoddard (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Sprakers, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 24, 2018, at Carbone Ram, an authorized FCA dealer in Yorkville, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Carbone Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1052.   Plaintiffs, Willard R. & Victoria L. Hart (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Nebraska residing in the City of Sargent, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 25, 2015, at Roy's Grand Dodge, an authorized FCA dealer in Grand Island, Nebraska. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles. When Plaintiffs went to Roy's Grand Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission

1   control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs

2   would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

3   that it did not comply with emission standards; that its emission treatment system was designed to

4   de-activate during real-world driving conditions; and that it could not achieve the advertised

5   towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has

6   suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

7   not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

8   concealed the unauthorized emission control devices.

9       1053.   Plaintiff, Ron Dupree (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Kentucky residing in the City of Shepherdsville, bought a 2015 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 14,

12  2015, at Oxmoor Chrysler Dodge Jeep Ram, an authorized FCA dealer in Louisville, Kentucky.

13  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

14  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

15  website, on which the Subject Vehicles were represented as environmentally friendly, having low

16  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

17  Subject Vehicles.  When Plaintiff went to Oxmoor Chrysler Dodge Jeep Ram to purchase the

18  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

19  its fuel economy and performance. These representations, along with the advertised fuel economy,

20  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

21  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

22  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

23  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1054.   Plaintiff, Jamie L Day (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Bradford, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 19, 2016, at Friendly Dodge Chrysler Jeep Inc, an authorized FCA dealer in Penn Yan, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Friendly Dodge Chrysler Jeep Inc to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

1    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

2    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

3    comply with emission standards; that its emission treatment system was designed to de-activate

4    during real-world driving conditions; and that it could not achieve the advertised towing power,

5    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

6    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

7    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

8    unauthorized emission control devices.

9       1055.    Plaintiffs, Christopher M. Forsythe & Linsey M. Shelton (for the purpose of this

10   paragraph, "Plaintiffs"), are citizens of the State of New York residing in the City of Fairport,

11   bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject

12   Vehicle") on or about November 1, 2014, at Canandaigua Chrysler Dodge Jeep, an authorized

13   FCA dealer in Canandaigua, New York. Plaintiffs decided to buy the Subject Vehicle based in part

14   on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

15   efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were

16   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs

17   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to

18   Canandaigua Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the

19   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

20   representations, along with the advertised fuel economy, were among the primary reasons

21   Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the

22   Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than

23   advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1056.    Plaintiff, John Ball (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Warminster, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 4, 2014, at Fred Beans Chrysler Dodge Jeep, an authorized FCA dealer in Doylestown, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fred Beans Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

1   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

2   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

3   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

4   emission standards; that its emission treatment system was designed to de-activate during real-

5   world driving conditions; and that it could not achieve the advertised towing power, performance,

6   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

7   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

8   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

9   control devices.

10          1057.   Plaintiff, Jason Johnson (for the purpose of this paragraph, "Plaintiff"), a citizen of

11  the State of Arizona residing in the City of Gilbert, bought a 2014 Jeep Grand Cherokee

12  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2014,

13  at Earnhardt Chrysler Jeep Dodge, an authorized FCA dealer in Gilbert, Arizona. Plaintiff decided

14  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

15  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on

16  which the Subject Vehicles were represented as environmentally friendly, having low emissions

17  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

18  Vehicles.  When Plaintiff went to Earnhardt Chrysler Jeep Dodge to purchase the Subject Vehicle,

19  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

20  and performance. These representations, along with the advertised fuel economy, were among the

21  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

1  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

2  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

3  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

4  standards; that its emission treatment system was designed to de-activate during real-world driving

5  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

6  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

7  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

8  or would have paid less for it, had Defendants not concealed the unauthorized emission control

9  devices.

10      1058.   Plaintiff, Scott Brophy (for the purpose of this paragraph, "Plaintiff"), a citizen of

11  the State of Vermont residing in the City of East Arlington, bought a 2014 Dodge Ram 1500

12  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 24, 2014,

13  at Zappone Chrysler Jeep Dodge RAM Granville, an authorized FCA dealer in Granville, New

14  York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

15  was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

16  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

17  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

18  about the Subject Vehicles.  When Plaintiff went to Zappone Chrysler Jeep Dodge RAM Granville

19  to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

20  attributes, including its fuel economy and performance. These representations, along with the

21  advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

22  the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

23  only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1059.   Plaintiff, Scott Brophy (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Vermont residing in the City of East Arlington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29, 2014, at Zappone Chrysler Jeep Dodge RAM Granville, an authorized FCA dealer in Granville, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Zappone Chrysler Jeep Dodge RAM Granville to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1060.   Plaintiff, Roland Begay (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Mexico residing in the City of Crownpoint, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 15, 2016, at New Country Auto Center Cortez, an authorized FCA dealer in Cortez, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to New Country Auto Center Cortez to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1061.   Plaintiff, Kevin Paul Hare (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Lake Charles, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2015, at Mark Dodge, an authorized FCA dealer in Mark Dodge, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mark Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3   would have paid less for it, had he/she known that it did not comply with emission standards; that

4   its emission treatment system was designed to de-activate during real-world driving conditions;

5   and that it could not achieve the advertised towing power, performance, and/or fuel economy

6   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9       1062.   Plaintiff, Jason Philaja (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Wisconson residing in the City of Muskego, bought a 2014 Jeep Grand Cherokee

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 3, 2014, at

12  Havill Chrysler Dodge Jeep Ram (Now Griffin Chrysler Dodge Jeep Ram), an authorized FCA

13  dealer in Jefferson, Wisconson. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

14  representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

15  Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as

16  environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

17  seeing television commercials about the Subject Vehicles.  When Plaintiff went to Havill Chrysler

18  Dodge Jeep Ram (Now Griffin Chrysler Dodge Jeep Ram) to purchase the Subject Vehicle, the

19  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

20  performance. These representations, along with the advertised fuel economy, were among the

21  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

1   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

2   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

3   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

4   standards; that its emission treatment system was designed to de-activate during real-world driving

5   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

6   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

7   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

8   or would have paid less for it, had Defendants not concealed the unauthorized emission control

9   devices.

10      1063.   Plaintiff, Mace Mcvay (for the purpose of this paragraph, "Plaintiff"), a citizen of

11  the State of Oregon residing in the City of Bend, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

12  the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Smolich

13  Motors, an authorized FCA dealer in Bend, Oregon. Plaintiff decided to buy the Subject Vehicle

14  based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

15  and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

16  represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

17  also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

18  Smolich Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

19  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

20  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

21  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

22  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

23  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1064.    Plaintiffs, Sandy & Gina Badenski (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Michigan residing in the City of Sault Sainte Marie, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 22, 2014, at O'Connor's Chrysler-Dodge-Jeep,INC, an authorized FCA dealer in Pickford, Michigan. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to O'Connor's Chrysler-Dodge-Jeep,INC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was

1   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

2   tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject

3   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

4   standards; that its emission treatment system was designed to de-activate during real-world driving

5   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

6   economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and

7   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

8   or would have paid less for it, had Defendants not concealed the unauthorized emission control

9   devices.

10       1065.   Plaintiff, Kasimir Kedzierski (for the purpose of this paragraph, "Plaintiff"), a

11   citizen of the State of Illinois residing in the City of Plainfield, bought a 2016 Dodge Ram 1500

12   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 29, 2017,

13   at Carmax, an authorized FCA dealer in Naperville, Illinois. Plaintiff decided to buy the Subject

14   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

15   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

16   Vehicles were represented as environmentally friendly, having low emissions and good fuel

17   economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

18   Plaintiff went to Carmax to purchase the Subject Vehicle, the sales associate touted the Subject

19   Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These

20   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

21   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

22   could perform as advertised only by emitting NOx at levels that are greater than advertised and

23   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1066.　Plaintiff, Robert Troudt (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Portland, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 12, 2014, at Northwest Jeep Chrysler Dodge Ram, an authorized FCA dealer in Beaverton, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Northwest Jeep Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

1   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

2   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

3   comply with emission standards; that its emission treatment system was designed to de-activate

4   during real-world driving conditions; and that it could not achieve the advertised towing power,

5   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

6   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

7   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

8   unauthorized emission control devices.

9        1067.    Plaintiffs, Richard & Shelly Green (for the purpose of this paragraph, "Plaintiffs"),

10  a citizen of the State of Oklahoma residing in the City of Yukon, bought a 2015 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 25,

12  2018, at Joe Cooper Ford, an authorized FCA dealer in Yukon, Oregon. Plaintiffs decided to buy

13  the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

14  reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the

15  Subject Vehicles were represented as environmentally friendly, having low emissions and good

16  fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.

17  When Plaintiffs went to Joe Cooper Ford to purchase the Subject Vehicle, the sales associate touted

18  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19  representations, along with the advertised fuel economy, were among the primary reasons

20  Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the

21  Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than

22  advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was

23  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

1  tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject

2  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

3  standards; that its emission treatment system was designed to de-activate during real-world driving

4  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

5  economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and

6  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

7  or would have paid less for it, had Defendants not concealed the unauthorized emission control

8  devices.

9      1068.   Plaintiff, Kevin Stevens (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Arizona residing in the City of Glendale, bought a 2014 Dodge Ram 1500 EcoDiesel®

11  (for the purpose of this paragraph, the "Subject Vehicle") on or about September 10, 2014, at Larry

12  Miller Dodge, an authorized FCA dealer in Peoria, Arizona. Plaintiff decided to buy the Subject

13  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

14  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

15  Vehicles were represented as environmentally friendly, having low emissions and good fuel

16  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

17  Plaintiff went to Larry Miller Dodge to purchase the Subject Vehicle, the sales associate touted the

18  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

20  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

21  could perform as advertised only by emitting NOx at levels that are greater than advertised and

22  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

1   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

2   would have paid less for it, had he/she known that it did not comply with emission standards; that

3   its emission treatment system was designed to de-activate during real-world driving conditions;

4   and that it could not achieve the advertised towing power, performance, and/or fuel economy

5   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

6   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

7   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

8        1069.   Plaintiff, Aaron Mills (for the purpose of this paragraph, "Plaintiff"), a citizen of

9   the State of Wisconson residing in the City of Twin Lakes, bought a 2015 Dodge Ram EcoDiesel®

10   (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2017, at Buss Ford,

11   an authorized FCA dealer in Mchenry, Illinois. Plaintiff decided to buy the Subject Vehicle based

12   in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and

13   fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

14   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

15   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Buss

16   Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

17   attributes, including its fuel economy and performance. These representations, along with the

18   advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

19   the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

20   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

21   Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

22   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

23   Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

1   known that it did not comply with emission standards; that its emission treatment system was

2   designed to de-activate during real-world driving conditions; and that it could not achieve the

3   advertised towing power, performance, and/or fuel economy without cheating emission tests.

4   Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

5   and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

6   not concealed the unauthorized emission control devices.

7        1070.    Plaintiff, Charlie Elliot (for the purpose of this paragraph, "Plaintiff"), a citizen of

8   the State of Oklahoma residing in the City of Aline, bought a 2014 Dodge Ram 1500 EcoDiesel®

9   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15, 2015, at

10  Johnsons of Kingfisher, an authorized FCA dealer in Kingfisher, Oklahoma. Plaintiff decided to

11  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

12  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13  Subject Vehicles were represented as environmentally friendly, having low emissions and good

14  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15  When Plaintiff went to Johnsons of Kingfisher to purchase the Subject Vehicle, the sales associate

16  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17  These representations, along with the advertised fuel economy, were among the primary reasons

18  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23  would have paid less for it, had he/she known that it did not comply with emission standards; that

1   its emission treatment system was designed to de-activate during real-world driving conditions;

2   and that it could not achieve the advertised towing power, performance, and/or fuel economy

3   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6          1071.   Plaintiff, John Henglefelt (for the purpose of this paragraph, "Plaintiff"), a citizen

7   of the State of South Dakota residing in the City of Alexandria, bought a 2016 Dodge Ram 1500

8   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 30, 2016,

9   at Iverson Chrysler Center, an authorized FCA dealer in Mitchell, South Dakota. Plaintiff decided

10  to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

11  vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

12  which the Subject Vehicles were represented as environmentally friendly, having low emissions

13  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

14  Vehicles.  When Plaintiff went to Iverson Chrysler Center to purchase the Subject Vehicle, the

15  sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

16  performance. These representations, along with the advertised fuel economy, were among the

17  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

18  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

19  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

20  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

21  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

22  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

23  standards; that its emission treatment system was designed to de-activate during real-world driving

1092

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1072. Plaintiff, Carl Caughman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Hot Springs National Park, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 3, 2017, at Patterson Dodge Ram, an authorized FCA dealer in Marshall, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Patterson Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1073. Plaintiffs, Bruce & JoDawn Chrz (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Oklahoma residing in the City of Quapaw, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 26, 2015, at Jay Hatfield Chrysler Dodge, an authorized FCA dealer in Frontenac, Kansas. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles. When Plaintiffs went to Jay Hatfield Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-

world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1074.   Plaintiff, Josh Reid (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Chandler, leased a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 24, 2017, at Larry H. Miller Chrysler Jeep, an authorized FCA dealer in Avondale, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Larry H. Miller Chrysler Jeep to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have leased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving

1095

conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have leased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1075.    Plaintiff, Lawrence Fox (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Toledo, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 21, 2016, at Yark Chrysler Jeep, an authorized FCA dealer in Toledo, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Yark Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5         1076.   Plaintiff, Charles Bogy (for the purpose of this paragraph, "Plaintiff"), a citizen of

6    the State of Montana residing in the City of Helena, bought a 2015 Dodge Ram 1500 EcoDiesel®

7    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 13, 2018, at

8    Robert Allen Nissan, an authorized FCA dealer in Helena, Montana. Plaintiff decided to buy the

9    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11   Subject Vehicles were represented as environmentally friendly, having low emissions and good

12   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13   When Plaintiff went to Robert Allen Nissan to purchase the Subject Vehicle, the sales associate

14   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

15   These representations, along with the advertised fuel economy, were among the primary reasons

16   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

17   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

18   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21   would have paid less for it, had he/she known that it did not comply with emission standards; that

22   its emission treatment system was designed to de-activate during real-world driving conditions;

23   and that it could not achieve the advertised towing power, performance, and/or fuel economy

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4        1077.   Plaintiff, Brian Carpenter (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Vermont residing in the City of Greensboro Bend, bought a 2015 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 23, 2018,

7    at St.J Auto Chrystler Dodge Jeep Ram, an authorized FCA dealer in St.Johnsbury, Vermont.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to St.J Auto Chrystler Dodge Jeep Ram to purchase the

13   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

14   its fuel economy and performance. These representations, along with the advertised fuel economy,

15   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

16   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

17   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

18   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

19   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

20   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

21   comply with emission standards; that its emission treatment system was designed to de-activate

22   during real-world driving conditions; and that it could not achieve the advertised towing power,

23   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

1   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

2   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

3   unauthorized emission control devices.

4       1078.   Plaintiff, Linda Lawrence (for the purpose of this paragraph, "Plaintiff"), a citizen

5   of the State of California residing in the City of Woodlake, bought a 2015 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 01, 2018,

7   at Lampe Chrysler Dodge, an authorized FCA dealer in Visalia, California. Plaintiff decided to

8   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10  Subject Vehicles were represented as environmentally friendly, having low emissions and good

11  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12  When Plaintiff went to Lampe Chrysler Dodge to purchase the Subject Vehicle, the sales associate

13  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

14  These representations, along with the advertised fuel economy, were among the primary reasons

15  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

16  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

17  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3       1079.   Plaintiff, Charles M. & Mickie L. Wedel (for the purpose of this paragraph,

4   "Plaintiff"), a citizen of the State of California residing in the City of Wasco, bought a 2015 Dodge

5   Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April,

6   30th 2015 at Lampe Dodge an authorized FCA dealer in Visalia, California. Plaintiff decided to

7   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9   Subject Vehicles were represented as environmentally friendly, having low emissions and good

10  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11  When Plaintiff went to Lampe Dodge to purchase the Subject Vehicle, the sales associate touted

12  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15  could perform as advertised only by emitting NOx at levels that are greater than advertised and

16  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19  would have paid less for it, had he/she known that it did not comply with emission standards; that

20  its emission treatment system was designed to de-activate during real-world driving conditions;

21  and that it could not achieve the advertised towing power, performance, and/or fuel economy

22  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2       1080.   Plaintiff, Andrew Bleier (for the purpose of this paragraph, "Plaintiff"), a citizen

3   of the State of California residing in the City of San Diego, bought a 2014 Jeep Grand Cherokee

4   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 4th,

5   2014, at Perry Chrysler Dodge Jeep Ram, an authorized FCA dealer in National City, California.

6   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to Perry Chrysler Dodge Jeep Ram to purchase the Subject

11  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12  economy and performance. These representations, along with the advertised fuel economy, were

13  among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14  did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19  emission standards; that its emission treatment system was designed to de-activate during real-

20  world driving conditions; and that it could not achieve the advertised towing power, performance,

21  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

1    control devices.

2        1081.   Plaintiff, Mark Armstrong (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of California residing in the City of Temecula, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1st,

5    2016, at DCH Chrysler Temecula, an authorized FCA dealer in Temecula, California. Plaintiff

6    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8    website, on which the Subject Vehicles were represented as environmentally friendly, having low

9    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10   Subject Vehicles.  When Plaintiff went to DCH Chrysler Temecula to purchase the Subject

11   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

12   economy and performance. These representations, along with the advertised fuel economy, were

13   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

14   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

15   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

16   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

17   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

18   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

19   emission standards; that its emission treatment system was designed to de-activate during real-

20   world driving conditions; and that it could not achieve the advertised towing power, performance,

21   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

22   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

23   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

1   control devices.

2       1082.   Plaintiff, Billy Oliver (for the purpose of this paragraph, "Plaintiff"), a citizen of

3   the State of Texas residing in the City of Winnie, bought a 2015 Dodge Ram 1500 EcoDiesel®

4   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1st, 2015, at Winnie

5   Dodge, an authorized FCA dealer in Winnie, Texas. Plaintiff decided to buy the Subject Vehicle

6   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

7   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

8   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

9   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

10  Winnie Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

11  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

12  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

13  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

14  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

15  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

16  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

17  and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

18  for it, had he/she known that it did not comply with emission standards; that its emission treatment

19  system was designed to de-activate during real-world driving conditions; and that it could not

20  achieve the advertised towing power, performance, and/or fuel economy without cheating

21  emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

22  Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

23  less for it, had Defendants not concealed the unauthorized emission control devices.

1083.    Plaintiff, Zachary Oliver (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Winnie, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1st, 2015, at Winnie Dodge, an authorized FCA dealer in Winnie, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Winnie Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1084.    Plaintiff, Dennis Little & Diana Wallace (for the purpose of this paragraph,

"Plaintiff"), a citizen of the State of Indiana residing in the City of Anderson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 22nd, 2014, at Dellen Dodge Chrysler Jeep, an authorized FCA dealer in Greenfield, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dellen Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1085.   Plaintiff, Darrel C. Caldwell (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Texas residing in the City of Conroe, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 27th, 2015, at Demontrond Conroe,  an authorized FCA dealer in Conroe, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Demontrond Conroe to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1086.   Plaintiff, Earl French (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Tallassee, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 27th, 2016, at Tallassee Chrysler Dodge Jeep Ram, an authorized FCA dealer in Tallassee, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Tallassee Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1087.   Plaintiff, Michael H & Naneen Chace-Ortiz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Maine residing in the City of West Buxton, bought a 2015

Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 15th, 2015, at Lee Dodge Chrysler Jeep, an authorized FCA dealer in Westbrook, Maine. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Lee Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1088.   Plaintiff, Dan Gravitt (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Sautee Nacoochee, bought a 2015 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1st, 2016, at Jacky Jones Automotive Group, an authorized FCA dealer in Cleveland, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Jacky Jones Automotive Group to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1089.   Plaintiff, Gaston Barrett and Walton Stinson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi residing in the City of Philadelphia, bought a 2015

Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 2nd, 2015, at Griffis Motors, Inc, an authorized FCA dealer in Philadelphia, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Griffis Motors, Inc to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1090.    Plaintiff, John D. Porrazzo (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Revere, bought a 2014 Jeep Grand Cherokee

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 15th, 2013 at Kelly Jeep, an authorized FCA dealer in Lynnfield, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Kelly Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1091.   Plaintiff, Bobby & Petty Harris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Monahans, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 21st,

2017, at Bruner Toyota, an authorized FCA dealer in Early, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bruner Toyota to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1092.   Plaintiff, Eli Mcclain (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Gilbert, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1st, 2017, at Bayway Chevrolet (Pearland Chevrolet) an authorized FCA dealer in Pearland, Texas. Plaintiff decided to

buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bayway Chevrolet (Pearland Chevrolet) to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1093.   Plaintiff, Wesley S Catlin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alaska residing in the City of Kasilof, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1st, 2018, at Kendall Chrysler, an authorized FCA dealer in Soldotna, Alaska. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Kendall Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1094. Plaintiff, Joseph Weis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Pensacola, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 21st, 2015, at Auto Nation, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

1114

and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Auto Nation to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1095.   Plaintiff, Mark & Morgan Souza (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of California residing in the City of Atwater, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 21st, 2018, at Price Ford of Turlock, an authorized FCA dealer in Turlock, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Price Ford of Turlock to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1096.   Plaintiff, David Ngo (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of California residing in the City of Rancho Cucamonga, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1st, 2015, at Chrysler Dodge Jeep of Alhambra, an authorized FCA dealer in Alhambra, California. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Chrysler Dodge Jeep Ram of Alhambra to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1097.    Plaintiff, Robert Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Azle, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1st, 2015, at Moritz Chrysler Jeep Dodge Ram, an authorized FCA dealer in Fort Worth, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Moritz Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1098.    Plaintiff, Elizabeth Roland (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Seabrook, bought a 2015 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1st, 2015, at Ron Carter, an authorized FCA dealer in Dickenson, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

1118

represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ron Carter to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1099.   Plaintiff, George Graham (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Grovetown, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1st, 2015, at Thomson Chrysler Dodge Jeep RAM FIAT, an authorized FCA dealer in Thompson, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Thomson Chrysler Dodge Jeep RAM FIAT to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1100.   Plaintiff, James Radcliff (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi residing in the City of Leakesville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 14th, 2016, at McMullan Equipment Company, an authorized FCA dealer in Hattiesburg, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to McMullan Equipment Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1101.   Plaintiff, Richard & Cindy Simcox (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wyoming residing in the City of Riverton, bought a 2016 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 10th, 2016, at Fremont Motors Casper, an authorized FCA dealer in Casper, Wyoming. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions

and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Fremont Motors Casper to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1102.   Plaintiff, Carl Ehrhart (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Amboy, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1st, 2015, at O'Daniel Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fort Wayne, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to O'Daniel Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1103.   Plaintiff, Carl Ehrhart (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Amboy, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1st, 2016, at O'Daniel Chrysler Dodge Jeep Ram, an authorized FCA dealer in Fort Wayne, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low

1123

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to O'Daniel Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1104.   Plaintiff, David Cich (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Dacula, bought a 2015 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1st, 2015, at Akins Ram, an authorized FCA dealer in Winder, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Akins Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1105.   Plaintiff, Damian L Sigman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Woodland Park, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 31st, 2016, at Parks Motors, an authorized FCA dealer in Augusta, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Parks Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1106.   Plaintiff, Jay Setchell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Canyon Like, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1st, 2014, at Bluebonnet Dodge / Ram, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles. When Plaintiff went to Bluebonnet Dodge / Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1107.    Plaintiff, Doug Conrad (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Craig, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 4th, 2014, at Victory Dodge, Craig, CO, an authorized FCA dealer in Craig, Colorado. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Victory Dodge, Craig, CO to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1108.    Plaintiff, Joseph Newell (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of South Carolina residing in the City of Ninety Six, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 22nd, 2016, at Qualify Dodge, an authorized FCA dealer in Greenwood, South Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles. When Plaintiff went to Qualify Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1109. Plaintiff, Nicholas & Samantha Linde (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wyoming residing in the City of Casper, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 12th, 2017, at Mountain Home Auto Ranch, an authorized FCA dealer in Mountain Home, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

about the Subject Vehicles.  When Plaintiff went to Mountain Home Auto Ranch to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1110.   Plaintiff, Richard A. & Betty L. Morrow (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Gadsden, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 16th, 2014, at Team one Chrysler Dodge Jeep Ram, an authorized FCA dealer in Gadsden, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

1 seeing television commercials about the Subject Vehicles.  When Plaintiff went to Team one
2 Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject
3 Vehicle's EcoDiesel® attributes, including its fuel economy and performance.  These
4 representations, along with the advertised fuel economy, were among the primary reasons Plaintiff
5 chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle
6 could perform as advertised only by emitting NOx at levels that are greater than advertised and
7 above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with
8 undisclosed and unauthorized emission control devices designed to cheat emission tests and to
9 deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or
10 would have paid less for it, had he/she known that it did not comply with emission standards; that
11 its emission treatment system was designed to de-activate during real-world driving conditions;
12 and that it could not achieve the advertised towing power, performance, and/or fuel economy
13 without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate
14 result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would
15 have paid less for it, had Defendants not concealed the unauthorized emission control devices.

16     1111.   Plaintiff, David G Mosby (for the purpose of this paragraph, "Plaintiff"), a citizen
17 of the State of Texas residing in the City of Arlington, bought a 2015 Dodge Ram 1500
18 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 20th,
19 2016, at Bonham Chrysler Dodge Ram, an authorized FCA dealer in Bonham, Texas. Plaintiff
20 decided to buy the Subject Vehicle based in part on FCA's representations that it was an
21 "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram
22 website, on which the Subject Vehicles were represented as environmentally friendly, having low
23 emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Bonham Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1112.   Plaintiff, Jose Vincent Pinto (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Spanish Fort, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 2nd, 2016, at Bonham Chrysler Dodge, an authorized FCA dealer in Bonham, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles.  When Plaintiff went to Bonham Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1113.   Plaintiff, Ron Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Santa Claus, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1st, 2016, at Sternburgh Chrysler Dodge, an authorized FCA dealer in Jasper, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Sternburgh Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1114.   Plaintiff, Michael Milich (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of San Antonio, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 28th, 2015, at Allen Samuels Dodge, an authorized FCA dealer in Katy, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Allen Samuels Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1115.   Plaintiff, David Williamson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Pendleton, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20th, 2016, at Button Motors, an authorized FCA dealer in Kokomo, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting The Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Button Motors to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1116.    Plaintiff, Mike Turner (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Williamson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 30th, 2015, at Ancira Dodge, an authorized FCA dealer in San Antonio, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Ancira Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1117.   Plaintiff, Adam Bayless (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Muscle Shoals, bought a 2015 Dodge Ram EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 26th, 2017, at Dothan Chrysler Dodge Jeep Ram, an authorized FCA dealer in Dothan, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dothan Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy,

1    were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

2    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

3    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

4    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

5    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

6    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

7    comply with emission standards; that its emission treatment system was designed to de-activate

8    during real-world driving conditions; and that it could not achieve the advertised towing power,

9    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

10   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

11   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

12   unauthorized emission control devices.

13          1118.    Plaintiff, Ricky Jensen (for the purpose of this paragraph, "Plaintiff"), a citizen of

14   the State of California residing in the City of Moreno Valley, bought a 2014 Dodge Ram 1500

15   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20th, 2018,

16   at West Covin Nisan, an authorized FCA dealer in West Covin, California. Plaintiff decided to buy

17   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

18   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19   Subject Vehicles were represented as environmentally friendly, having low emissions and good

20   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21   When Plaintiff went to West Covin Nissan to purchase the Subject Vehicle, the sales associate

22   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

23   These representations, along with the advertised fuel economy, were among the primary reasons

1    Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

2    Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

3    and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

4    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

5    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

6    would have paid less for it, had he/she known that it did not comply with emission standards; that

7    its emission treatment system was designed to de-activate during real-world driving conditions;

8    and that it could not achieve the advertised towing power, performance, and/or fuel economy

9    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

10   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

11   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

12       1119.   Plaintiff, Frank Novelli (for the purpose of this paragraph, "Plaintiff"), a citizen of

13   the State of Texas residing in the City of Quitman, bought a 2015 Dodge Ram 1500 EcoDiesel®

14   (for the purpose of this paragraph, the "Subject Vehicle") on or about June 13th, 2015, at Tate

15   Branch Dodge Chrysler Jeep, an authorized FCA dealer in Artesia, New Mexico. Plaintiff decided

16   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

17   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

18   which the Subject Vehicles were represented as environmentally friendly, having low emissions

19   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

20   Vehicles.  When Plaintiff went to Tate Branch Dodge Chrysler Jeep to purchase the Subject

21   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

22   economy and performance. These representations, along with the advertised fuel economy, were

23   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1120. Plaintiff, Michael & Vanetta Mund (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Como, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1st, 2015, at Lone Star Dodge, an authorized FCA dealer in Mineola, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lone Star Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

1140

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1121.   Plaintiff, Rickey Pittman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Elk City, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2017, at Doug Gray Chrysler Dodge Jeep Ram, an authorized FCA dealer in Elk City, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Doug Gray Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1122.   Plaintiff, Steve Spidal, Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alaska residing in the City of Wasilla, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 7, 2018, at Lithia Chrysler Jeep Dodge, an authorized FCA dealer in Anchorage, Alaska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lithia Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

1142

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1123.   Plaintiff, Marc Daquilla & Melodye Eldeen (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Galway, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 6, 2017, at Zappone Chrysler Jeep Dodge Ram, an authorized FCA dealer in Clifton Park, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Zappone Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1124.   Plaintiff, Allen Lewis Heffelbower (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Wagram, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2017, at Leith Honda of Aberdeen, an authorized FCA dealer in Aberdeen, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Leith Honda of Aberdeen to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1125.    Plaintiff, Jacquelyn Lowe (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Algonac, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2017, at Parkway Chrysler Dodge Jeep Ram, an authorized FCA dealer in Clinton Township, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Parkway Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1126.    Plaintiff, William Randolth (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of La Grange, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 4, 2016, at Classic Chrysler Dodge, an authorized FCA dealer in Goldsboro, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Classic Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1127.    Plaintiff, John D'Amato (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Staten Island, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015, at Route 46 Dodge, an authorized FCA dealer in Little Falls, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Route 46 Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

1   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4   would have paid less for it, had he/she known that it did not comply with emission standards; that

5   its emission treatment system was designed to de-activate during real-world driving conditions;

6   and that it could not achieve the advertised towing power, performance, and/or fuel economy

7   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10          1128.    Plaintiff, Kurt Cundiff (for the purpose of this paragraph, "Plaintiff"), a citizen of

11  the State of Oregon residing in the City of Bend, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

12  the purpose of this paragraph, the "Subject Vehicle") on or about November 11, 2015, at Smolich

13  Motors, an authorized FCA dealer in Bend, Oregon. Plaintiff decided to buy the Subject Vehicle

14  based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

15  and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

16  represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

17  also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

18  Smolich Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

19  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

20  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

21  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

22  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

23  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1129.   Plaintiff, Mark Schultz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Butler, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 11, 2017, at Honda North, an authorized FCA dealer in Butler, Pennsylvania. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Honda North to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1130.   Plaintiff, Lora Morgan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Colfax, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 17, 2018, at Kernersville Dodge, an authorized FCA dealer in Kernersville, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Kernersville Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1131.    Plaintiff, Robert H. Reuter (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Attleboro, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Elmwood Chrysler Dodge Jeep Ram, an authorized FCA dealer in East Providence, Rhode Island. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Elmwood Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators.

1    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

2    known that it did not comply with emission standards; that its emission treatment system was

3    designed to de-activate during real-world driving conditions; and that it could not achieve the

4    advertised towing power, performance, and/or fuel economy without cheating emission tests.

5    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

6    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

7    not concealed the unauthorized emission control devices.

8        1132.    Plaintiff, Robert H. Reuter (for the purpose of this paragraph, "Plaintiff"), a citizen

9    of the State of Massachusetts residing in the City of Attleboro, bought a 2015 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 2, 2015,

11   at Planet Chrysler Jeep Dodge Ram, an authorized FCA dealer in Franklin, Massachusetts. Plaintiff

12   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Planet Chrysler Jeep Dodge Ram to purchase the Subject

17   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

18   economy and performance. These representations, along with the advertised fuel economy, were

19   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

20   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

21   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

22   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

23   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

1152

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1133.   Plaintiff, Alan Macchi (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Granite Shoals, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 2, 2014, at Maxwell Super Center, an authorized FCA dealer in Austin, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Maxwell Super Center to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1   would have paid less for it, had he/she known that it did not comply with emission standards; that

2   its emission treatment system was designed to de-activate during real-world driving conditions;

3   and that it could not achieve the advertised towing power, performance, and/or fuel economy

4   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7        1134.    Plaintiff, Thomas A. Crenshaw (for the purpose of this paragraph, "Plaintiff"), a

8   citizen of the State of Alabama residing in the City of Greenville, bought a 2015 Dodge Ram 1500

9   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 25,

10   2016 at Brewbaker Motors, an authorized FCA dealer in Montgomery, Alabama. Plaintiff decided

11   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

12   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

13   which the Subject Vehicles were represented as environmentally friendly, having low emissions

14   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

15   Vehicles.  When Plaintiff went to Brewbaker Motors to purchase the Subject Vehicle, the sales

16   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

17   performance. These representations, along with the advertised fuel economy, were among the

18   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7        1135.    Plaintiff, Gustavo Pina (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Texas residing in the City of Houston, bought a 2015 Dodge Ram 1500 EcoDiesel®

9    (for the purpose of this paragraph, the "Subject Vehicle") on or about July 23, 2016, at Auto Nation

10   Chrysler Dodge Jeep Ram, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy

11   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Auto Nation Chrysler Dodge Jeep Ram to purchase the Subject Vehicle,

16   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

17   and performance. These representations, along with the advertised fuel economy, were among the

18   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

19   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

20   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

21   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

22   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

23   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1155

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7        1136.   Plaintiff, Christian Parker d/b/a Line Striping, Inc. (for the purpose of this

8    paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of De Kalb Junction,

9    bought a three (3) 2015 Dodge Ram 1500s EcoDiesel® (for the purpose of this paragraph, the

10   "Subject Vehicle") on or about one (1) on December 2, 2015 and two (2) on December 31, 2015,

11   at Parkway Chrysler Dodge Jeep Ram, an authorized FCA dealer in Canton, New York. Plaintiff

12   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

13   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

14   website, on which the Subject Vehicles were represented as environmentally friendly, having low

15   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

16   Subject Vehicles.  When Plaintiff went to Parkway Chrysler Dodge Jeep Ram to purchase the

17   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

18   its fuel economy and performance. These representations, along with the advertised fuel economy,

19   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

20   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

21   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

22   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

23   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

1156

1 purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

2 comply with emission standards; that its emission treatment system was designed to de-activate

3 during real-world driving conditions; and that it could not achieve the advertised towing power,

4 performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

5 concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

6 purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

7 unauthorized emission control devices.

8  1137. Plaintiff, John Guarino Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen

9 of the State of Pennsylvania residing in the City of Latrobe, bought a 2014 Dodge Ram 1500

10 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017,

11 at Laurel Valley Motors Inc., an authorized FCA dealer in Latrobe, Pennsylvania. Plaintiff decided

12 to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

13 vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

14 which the Subject Vehicles were represented as environmentally friendly, having low emissions

15 and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

16 Vehicles.  When Plaintiff went to Laurel Valley Motors Inc. to purchase the Subject Vehicle, the

17 sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

18 performance. These representations, along with the advertised fuel economy, were among the

19 primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

20 that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

21 than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

22 equipped with undisclosed and unauthorized emission control devices designed to cheat emission

23 tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1138.   Plaintiff, Gregory Ray (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas residing in the City of McCune, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 7, 2014, at Dick Scott Chrysler Dodge Jeep Ram, an authorized FCA dealer in Plymouth, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dick Scott Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1139.   Plaintiff, Chris & Kimberly Wilkinson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Utah residing in the City of Sandy, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2018, at Dennis Dillon Chrysler Dodge Jeep Ram, an authorized FCA dealer in Caldwell, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Dennis Dillon Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff

1    would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known

2    that it did not comply with emission standards; that its emission treatment system was designed to

3    de-activate during real-world driving conditions; and that it could not achieve the advertised

4    towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has

5    suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would

6    not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not

7    concealed the unauthorized emission control devices.

8        1140.   Plaintiff, Michael Sutherland (for the purpose of this paragraph, "Plaintiff"), a

9    citizen of the State of Michigan residing in the City of Auburn, bought a 2014 Dodge Ram 1500

10   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 12,

11   2016, at Feeney Chrysler, an authorized FCA dealer in Midland, Michigan. Plaintiff decided to

12   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

13   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

14   Subject Vehicles were represented as environmentally friendly, having low emissions and good

15   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

16   When Plaintiff went to Feeney Chrysler to purchase the Subject Vehicle, the sales associate touted

17   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

18   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

19   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

20   could perform as advertised only by emitting NOx at levels that are greater than advertised and

21   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

22   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

23   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1141.   Plaintiff, Tim Gorgan (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia residing in the City of Front Royal, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 31, 2016, at Kernersville Chrysler, an authorized FCA dealer in Kernersville, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Kernersville Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1142.    Plaintiff, Kip Coleman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Bates City, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 11, 2016, at Landmark Dodge Chrysler Jeep, an authorized FCA dealer in Independence, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Landmark Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1143.    Plaintiff, Ben Korngold (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Boca Raton, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 26, 2014, at Eddie Accardi Chrysler, an authorized FCA dealer in Pompano Beach, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Eddie Accardi Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7         1144.   Plaintiff, Everard Lewis, II (for the purpose of this paragraph, "Plaintiff"), a citizen

8    of the State of Washington residing in the City of Bonney Lake, bought a 2016 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 20, 2016,

10   at Dave Smith Motors, an authorized FCA dealer in Kellogg, Washington. Plaintiff decided to buy

11   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

12   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the sales associate

16   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

17   These representations, along with the advertised fuel economy, were among the primary reasons

18   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

19   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

20   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1164

its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1145.   Plaintiff, Chris Masters (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Dexter, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2015, at Harry Blackwell Chrysler, an authorized FCA dealer in Malden, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Harry Blackwell Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving

1    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

2    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

3    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

4    or would have paid less for it, had Defendants not concealed the unauthorized emission control

5    devices.

6         1146.   Plaintiff, Kevin Kerner (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    the State of North Dakota residing in the City of Menoken, bought a 2015 Dodge Ram 1500

8    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 28,

9    2015, at Anderson Dodge Chrysler Jeep, an authorized FCA dealer in Rockford, Illinois. Plaintiff

10   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

11   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

12   website, on which the Subject Vehicles were represented as environmentally friendly, having low

13   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

14   Subject Vehicles.  When Plaintiff went to Anderson Dodge Chrysler Jeep to purchase the Subject

15   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

16   economy and performance. These representations, along with the advertised fuel economy, were

17   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

18   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

19   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

20   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

21   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

22   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

23   emission standards; that its emission treatment system was designed to de-activate during real-

world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1147.   Plaintiff, Rebecca Coburn (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska residing in the City of Atkinson, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 2, 2015, at Columbus Motors, an authorized FCA dealer in Columbus, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Columbus Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

1    and that it could not achieve the advertised towing power, performance, and/or fuel economy

2    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5          1148.    Plaintiff, Reginaldo Medeiros (for the purpose of this paragraph, "Plaintiff"), a

6    citizen of the State of New York residing in the City of Selden, bought a 2014 Jeep Grand Cherokee

7    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 18,

8    2016, at North Shore Chevrolet LLC, an authorized FCA dealer in Saint James, New York.

9    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

10   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

11   website, on which the Subject Vehicles were represented as environmentally friendly, having low

12   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

13   Subject Vehicles.  When Plaintiff went to North Shore Chevrolet LLC to purchase the Subject

14   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

15   economy and performance. These representations, along with the advertised fuel economy, were

16   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

17   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

18   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

19   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

20   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

21   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

22   emission standards; that its emission treatment system was designed to de-activate during real-

23   world driving conditions; and that it could not achieve the advertised towing power, performance,

1168

and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1149.   Plaintiff, Mark A. Shackelford (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of Canal Fulton, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 18, 2016, at Magic City Motorcars, an authorized FCA dealer in Barberton, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Magic City Motorcars to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy

without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1150.    Plaintiff, John Baker (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Virginia residing in the City of Chesapeake, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 7, 2015, at Dayton Andrews, Inc., an authorized FCA dealer in Clearwater, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Dayton Andrews, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        1151.    Plaintiff, Michael Wahl (for the purpose of this paragraph, "Plaintiff"), a citizen of

4    the State of Pennsylvania residing in the City of Mohnton, bought a 2014 Dodge Ram 1500

5    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 20, 2016,

6    at Summit Automotive, an authorized FCA dealer in Fond du lac, Wisconsin. Plaintiff decided to

7    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

8    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

9    Subject Vehicles were represented as environmentally friendly, having low emissions and good

10   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

11   When Plaintiff went to Summit Automotive to purchase the Subject Vehicle, the sales associate

12   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13   These representations, along with the advertised fuel economy, were among the primary reasons

14   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19   would have paid less for it, had he/she known that it did not comply with emission standards; that

20   its emission treatment system was designed to de-activate during real-world driving conditions;

21   and that it could not achieve the advertised towing power, performance, and/or fuel economy

22   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2        1152.    Plaintiff, Steve Paquette (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Michigan residing in the City of Algonac, bought a 2015 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 2, 2015,

5    at Dickhuaere, an authorized FCA dealer in Clay Township, Michigan. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Dickhuaere to purchase the Subject Vehicle, the sales associate touted the

11   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1172

1153.   Plaintiff, Jim Henry (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Saint James, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23, 2017, at Capital Chrysler, an authorized FCA dealer in Jefferson City, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Capital Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1154.   Plaintiff, Mark & Bertha Jude (for the purpose of this paragraph, "Plaintiff"), a

citizen of the State of Kentucky residing in the City of Louisa, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 14, 2016, at Deskins Motors, an authorized FCA dealer in Pikeville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Deskins Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1155.   Plaintiff, Robert Montgomery (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kansas residing in the City of Olathe, bought a 2016 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 25, 2016, at Olathe Dodge, an authorized FCA dealer in Olathe, Kansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Olathe Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1156.   Plaintiff, Craig Stout (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of Washington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 9, 2018, at Capper Auto,

an authorized FCA dealer in Washington, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Capper Auto to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1157.   Plaintiff, Kevin & Elaine (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Corry, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 13, 2014, at Cunningham Chrysler of Edinboro, an authorized FCA dealer in Edinboro, Pennsylvania.

Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Cunningham Chrysler of Edinboro to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1158.   Plaintiff, Robert Lloyd Senter (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Castalian Springs, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015, at Hibbard Toyota, an authorized FCA dealer in Gallatin, Tennessee. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Hibbard Toyota to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1159.   Plaintiff, Keith Kirby (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Liberty, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2017, at Fenton Nissan, an authorized FCA dealer in Summit, Missouri. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fenton Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1160.   Plaintiff, Claude & Randy Stone (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Arbyrd, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 6, 2015, at Harry Blackwell Dodge, an authorized FCA dealer in Dexter, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Harry Blackwell Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1161. Plaintiff, Brian Kirimdar d/b/a Aquafarm Organics (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Tampa, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2018, at Starling Auto Sarasota, an authorized FCA dealer in Sarasota, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Starling Auto Sarasota to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1162.    Plaintiff, Donald Mollett (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Clever, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 17, 2015, at Corwin Dodge, an authorized FCA dealer in Springfield, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

1    emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

2    Vehicles were represented as environmentally friendly, having low emissions and good fuel

3    economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

4    Plaintiff went to Corwin Dodge to purchase the Subject Vehicle, the sales associate touted the

5    Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

6    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

7    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

8    could perform as advertised only by emitting NOx at levels that are greater than advertised and

9    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

10   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

11   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

12   would have paid less for it, had he/she known that it did not comply with emission standards; that

13   its emission treatment system was designed to de-activate during real-world driving conditions;

14   and that it could not achieve the advertised towing power, performance, and/or fuel economy

15   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

16   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

17   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

18        1163.    Plaintiff, Rick Cruz (for the purpose of this paragraph, "Plaintiff"), a citizen of the

19   State of Texas residing in the City of Terrell, bought a 2015 Dodge Ram 1500 EcoDiesel® (for

20   the purpose of this paragraph, the "Subject Vehicle") on or about November 8, 2018, at Town

21   North Nissan, an authorized FCA dealer in Austin, Texas. Plaintiff decided to buy the Subject

22   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

23   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Town North Nissan to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1164.    Plaintiff, Troy Cucurullo (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Bay Saint Louis, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 27, 2018, at Pat Peck Nissan, an authorized FCA dealer in Gulfport, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

1    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

2    When Plaintiff went to Pat Peck Nissan to purchase the Subject Vehicle, the sales associate touted

3    the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

4    representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

5    chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

6    could perform as advertised only by emitting NOx at levels that are greater than advertised and

7    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

8    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

9    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

10    would have paid less for it, had he/she known that it did not comply with emission standards; that

11    its emission treatment system was designed to de-activate during real-world driving conditions;

12    and that it could not achieve the advertised towing power, performance, and/or fuel economy

13    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

14    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

15    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

16        1165.   Plaintiff, John Adams (for the purpose of this paragraph, "Plaintiff"), a citizen of

17    the State of Texas residing in the City of Mansfield, bought a 2015 Dodge Ram 1500 EcoDiesel®

18    (for the purpose of this paragraph, the "Subject Vehicle") on or about September 17, 2015, at

19    Classic Dodge of Arlington, an authorized FCA dealer in Arlington, Texas. Plaintiff decided to

20    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

21    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

22    Subject Vehicles were represented as environmentally friendly, having low emissions and good

23    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Classic Dodge of Arlington to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1166.    Plaintiff, Audie Proctor (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Bay City, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 13, 2016, at Texas Direct Auto, an authorized FCA dealer in Stafford, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Texas Direct Auto to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1167.   Plaintiff, Ricky Fields (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Leander, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 24, 2018, at Nyle Maxwell Supercenter, an authorized FCA dealer in Austin, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Nyle Maxwell Supercenter to purchase the Subject Vehicle, the sales

1  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

2  performance. These representations, along with the advertised fuel economy, were among the

3  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

4  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

5  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

6  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

7  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

8  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

9  standards; that its emission treatment system was designed to de-activate during real-world driving

10 conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

11 economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

12 proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

13 or would have paid less for it, had Defendants not concealed the unauthorized emission control

14 devices.

15      1168.   Plaintiff, Frank Costanzo (for the purpose of this paragraph, "Plaintiff"), a citizen

16 of the State of Texas residing in the City of Orange, bought a 2016 Dodge Ram 1500 EcoDiesel®

17 (for the purpose of this paragraph, the "Subject Vehicle") on or about January 8, 2016, at Boerne

18 Ram, an authorized FCA dealer in New Braunfels, Texas. Plaintiff decided to buy the Subject

19 Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

20 emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

21 Vehicles were represented as environmentally friendly, having low emissions and good fuel

22 economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

23 Plaintiff went to Boerne Ram to purchase the Subject Vehicle, the sales associate touted the Subject

Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1169.   Plaintiff, Claude Akley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Georgia residing in the City of Cedartown, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 29, 2018, at University Chrysler Dodge Jeep Ram, an authorized FCA dealer in Rome, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to University Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1170.   Plaintiff, Kelly Steely d/b/a Steely Lease Sales (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Bessemer, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 25, 2018, at Insurance Auto Auctions, an authorized FCA dealer in Bessemer, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Insurance Auto Auctions to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1   its fuel economy and performance. These representations, along with the advertised fuel economy,

2   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

3   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

4   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

5   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

6   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

7   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

8   comply with emission standards; that its emission treatment system was designed to de-activate

9   during real-world driving conditions; and that it could not achieve the advertised towing power,

10  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

11  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

12  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

13  unauthorized emission control devices.

14      1171.  Plaintiffs, Ignatius and Clara Gladek (for the purpose of this paragraph,

15  "Plaintiffs"), are citizens of the State of Texas residing in the City of Austin, bought a 2015 Dodge

16  Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July

17  23, 2015, at South Point Dodge Chrysler Jeep Ram, an authorized FCA dealer in Austin, Texas.

18  Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram

20  website, on which the Subject Vehicles were represented as environmentally friendly, having low

21  emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the

22  Subject Vehicles.  When Plaintiffs went to South Point Dodge Chrysler Jeep Ram to purchase the

23  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1190

its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1172.   Plaintiff, Lois Clark (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Neenah, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 21, 2014, at Griffin Jefferson Chrysler Dodge Jeep RAM, an authorized FCA dealer in Jefferson, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Griffin Jefferson Chrysler Dodge Jeep RAM to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes,

including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1173.   Plaintiff, John Brady (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alaska residing in the City of Fairbanks, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 29, 2017, at Gene's Chrysler/Dodge, an authorized FCA dealer in Fairbanks, Alaska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Gene's Chrysler/Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1174. Plaintiffs, Jimmie James & Tamara James (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Colorado residing in the City of Dacono, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 12, 2016, at Larry Miller Truck Center, an authorized FCA dealer in Federal Heights, Colorado. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles. When Plaintiffs went to Larry Miller Truck Center to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the

1    advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At

2    the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised

3    only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were

4    Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized

5    emission control devices designed to cheat emission tests and to deceive consumers and regulators.

6    Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they

7    known that it did not comply with emission standards; that its emission treatment system was

8    designed to de-activate during real-world driving conditions; and that it could not achieve the

9    advertised towing power, performance, and/or fuel economy without cheating emission tests.

10   Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants'

11   misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had

12   Defendants not concealed the unauthorized emission control devices.

13        1175.   Plaintiff, Michael Paul (for the purpose of this paragraph, "Plaintiff"), a citizen of

14   the State of New Mexico residing in the City of Albuquerque, bought a 2015 Dodge Ram 1500

15   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 1, 2014,

16   at Melloy Dodge, an authorized FCA dealer in Albuquerque, New Mexico. Plaintiff decided to

17   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

18   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

19   Subject Vehicles were represented as environmentally friendly, having low emissions and good

20   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

21   When Plaintiff went to Melloy Dodge to purchase the Subject Vehicle, the sales associate touted

22   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

23   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1176. Plaintiff, Joseph A. Reynolds (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of La Marque, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 23, 2015, at Bayshore Dodge Ram Jeep Chrysler, an authorized FCA dealer in Baytown, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bayshore Dodge Ram Jeep Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1177.   Plaintiff, Nick DiGioia (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of North Royalton, bought three 2014 Dodge Ram 1500 EcoDiesels® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 16, 2014, at Medina Auto Mall, an authorized FCA dealer in Medina, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Medina Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

1196

1    Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

2    and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

3    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

4    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

5    would have paid less for it, had he/she known that it did not comply with emission standards; that

6    its emission treatment system was designed to de-activate during real-world driving conditions;

7    and that it could not achieve the advertised towing power, performance, and/or fuel economy

8    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

9    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

10   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

11         1178.   Plaintiff, Nick DiGioia (for the purpose of this paragraph, "Plaintiff"), a citizen of

12   the State of Ohio residing in the City of North Royalton, bought a 2014 Dodge Ram 1500

13   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 15,

14   2014, at Medina Auto Mall, an authorized FCA dealer in Medina, Ohio. Plaintiff decided to buy

15   the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

16   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

17   Subject Vehicles were represented as environmentally friendly, having low emissions and good

18   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

19   When Plaintiff went to Medina Auto Mall to purchase the Subject Vehicle, the sales associate

20   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

21   These representations, along with the advertised fuel economy, were among the primary reasons

22   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

23   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

1197

and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1179.    Plaintiff, Nick DiGioia (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Ohio residing in the City of North Royalton, bought three 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 18, 2015, at Medina Auto Mall, an authorized FCA dealer in Medina, Ohio. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Medina Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3  would have paid less for it, had he/she known that it did not comply with emission standards; that

4  its emission treatment system was designed to de-activate during real-world driving conditions;

5  and that it could not achieve the advertised towing power, performance, and/or fuel economy

6  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9        1180.    Plaintiff, Nick DiGioia (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Ohio residing in the City of North Royalton, bought a 2016 Dodge Ram 1500

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 11,

12  2017, at Medina Auto Mall, an authorized FCA dealer in Medina Auto Mall. Plaintiff decided to

13  buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

14  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

15  Subject Vehicles were represented as environmentally friendly, having low emissions and good

16  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

17  When Plaintiff went to Medina Auto Mall to purchase the Subject Vehicle, the sales associate

18  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

19  These representations, along with the advertised fuel economy, were among the primary reasons

20  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

21  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

22  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1181.   Plaintiff, Michael Danielson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Tyler, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 5, 2015, at Allen Samuels, an authorized FCA dealer in Tyler, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Allen Samuels to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1182.   Plaintiff, Brandis Hanson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia residing in the City of Crawley, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 22, 2018, at Wright Way Motors, an authorized FCA dealer in Covington, Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Wright Way Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1183.    Plaintiff, Jackie Brewer (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Mexico residing in the City of Lovington, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2014, at Frontier Dodge Chrysler Jeep, an authorized FCA dealer in Lubbock, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Frontier Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7         1184.    Plaintiff, David Brown (for the purpose of this paragraph, "Plaintiff"), a citizen of

8    the State of Michigan residing in the City of Cheboygan, leased a 2016 Dodge Ram 1500

9    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 7,

10   2016, at Szott M59 Dodge, an authorized FCA dealer in Highland, Michigan. Plaintiff decided to

11   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

12   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

13   Subject Vehicles were represented as environmentally friendly, having low emissions and good

14   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

15   When Plaintiff went to Szott M59 Dodge to purchase the Subject Vehicle, the sales associate touted

16   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

17   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

18   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

19   could perform as advertised only by emitting NOx at levels that are greater than advertised and

20   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

21   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

22   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

23   would have paid less for it, had he/she known that it did not comply with emission standards; that

1    its emission treatment system was designed to de-activate during real-world driving conditions;

2    and that it could not achieve the advertised towing power, performance, and/or fuel economy

3    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6         1185.   Plaintiff, Larry Dygert (for the purpose of this paragraph, "Plaintiff"), a citizen of

7    the State of Ohio residing in the City of Cleveland, bought a 2014 Dodge Ram 1500 EcoDiesel®

8    (for the purpose of this paragraph, the "Subject Vehicle") on or about December 27, 2018, at

9    Spitzer, an authorized FCA dealer in Parma, Ohio. Plaintiff decided to buy the Subject Vehicle

10   based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

11   and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

12   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

13   also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

14   Spitzer to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

15   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

16   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

17   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

18   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

19   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

20   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

21   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

22   for it, had he/she known that it did not comply with emission standards; that its emission treatment

23   system was designed to de-activate during real-world driving conditions; and that it could not

1  achieve the advertised towing power, performance, and/or fuel economy without cheating

2  emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

3  Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

4  less for it, had Defendants not concealed the unauthorized emission control devices.

5       1186.   Plaintiff, Kody Wilhelmi (for the purpose of this paragraph, "Plaintiff"), a citizen

6  of the State of Michigan residing in the City of Grand Blanc, bought a 2015 Dodge Ram 1500

7  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 16, 2016,

8  at North Coast Auto Mall, an authorized FCA dealer in Bedford, Ohio. Plaintiff decided to buy the

9  Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

10  reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11  Subject Vehicles were represented as environmentally friendly, having low emissions and good

12  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13  When Plaintiff went to North Coast Auto Mall to purchase the Subject Vehicle, the sales associate

14  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

15  These representations, along with the advertised fuel economy, were among the primary reasons

16  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

17  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

18  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21  would have paid less for it, had he/she known that it did not comply with emission standards; that

22  its emission treatment system was designed to de-activate during real-world driving conditions;

23  and that it could not achieve the advertised towing power, performance, and/or fuel economy

1205

1    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4         1187.   Plaintiff, Ariel Medrano (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Georgia residing in the City of Marietta, bought a 2014 Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 20,

7    2015, at Hendrick Chrysler Dodge Jeep, an authorized FCA dealer in Concord, North Carolina.

8    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

9    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

10   website, on which the Subject Vehicles were represented as environmentally friendly, having low

11   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

12   Subject Vehicles.  When Plaintiff went to Hendrick Chrysler Dodge Jeep to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1206

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4    1188.   Plaintiff, Ronald Ebann (for the purpose of this paragraph, "Plaintiff"), a citizen of

5    the State of Arizona residing in the City of Ajo, bought a 2014 Dodge Ram 1500 EcoDiesel® (for

6    the purpose of this paragraph, the "Subject Vehicle") on or about June 1, 2014, at Larry Miller

7    Avondale Dodge, an authorized FCA dealer in Avondale, Arizona. Plaintiff decided to buy the

8    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

9    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10   Subject Vehicles were represented as environmentally friendly, having low emissions and good

11   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12   When Plaintiff went to Larry Miller Avondale Dodge to purchase the Subject Vehicle, the sales

13   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

14   performance. These representations, along with the advertised fuel economy, were among the

15   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

16   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

17   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

18   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

19   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

20   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

21   standards; that its emission treatment system was designed to de-activate during real-world driving

22   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

23   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

1   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

2   or would have paid less for it, had Defendants not concealed the unauthorized emission control

3   devices.

4       1189.   Plaintiff, Carl Culbertson (for the purpose of this paragraph, "Plaintiff"), a citizen

5   of the State of New York residing in the City of Black River, bought a 2014 Dodge Ram 1500

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 10, 2016,

7   at FX Crapera, an authorized FCA dealer in Pulaski, New York. Plaintiff decided to buy the Subject

8   Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

9   emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

10  Vehicles were represented as environmentally friendly, having low emissions and good fuel

11  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

12  Plaintiff went to FX Caprera to purchase the Subject Vehicle, the sales associate touted the Subject

13  Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

14  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

15  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

16  could perform as advertised only by emitting NOx at levels that are greater than advertised and

17  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20  would have paid less for it, had he/she known that it did not comply with emission standards; that

21  its emission treatment system was designed to de-activate during real-world driving conditions;

22  and that it could not achieve the advertised towing power, performance, and/or fuel economy

23  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1208

1    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3        1190.    Plaintiff, Lannis Harold Allmaras (for the purpose of this paragraph, "Plaintiff"), a

4    citizen of the State of Washington residing in the City of Battle Ground, bought a 2014 Dodge

5    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6    October 1, 2014 at Dave Smith Motors, an authorized FCA dealer in Kellogg, Idaho. Plaintiff

7    decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

9    website, on which the Subject Vehicles were represented as environmentally friendly, having low

10   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11   Subject Vehicles.  When Plaintiff went to Dave Smith Motors to purchase the Subject Vehicle, the

12   sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

13   performance. These representations, along with the advertised fuel economy, were among the

14   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

15   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

16   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

17   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

18   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

19   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

20   standards; that its emission treatment system was designed to de-activate during real-world driving

21   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

22   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

23   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

1    or would have paid less for it, had Defendants not concealed the unauthorized emission control

2    devices.

3        1191.   Plaintiff, Elizabeth Catherine Dunlap (for the purpose of this paragraph,

4    "Plaintiff"), a citizen of the State of Florida residing in the City of Chipley, bought a 2014 Dodge

5    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

6    September 17, 2016, at Panhandle Automotive Inc, an authorized FCA dealer in Panama City,

7    Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

8    was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

9    the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

10   having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

11   about the Subject Vehicles.  When Plaintiff went to Panhandle Automotive Inc to purchase the

12   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

13   its fuel economy and performance. These representations, along with the advertised fuel economy,

14   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

15   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

16   at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

17   Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

18   designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

19   purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

20   comply with emission standards; that its emission treatment system was designed to de-activate

21   during real-world driving conditions; and that it could not achieve the advertised towing power,

22   performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

23   concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1192.   Plaintiffs, Adrienne Dunford and Jason Blacker (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Washington residing in the City of Battle Ground, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 4, 2016, at Dave Smith Coeur d'Alene, an authorized FCA dealer in Coeur d'Alene, Idaho. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Dave Smith Coeur d'Alene to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of

1   Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

2   less for it, had Defendants not concealed the unauthorized emission control devices.

3       1193.   Plaintiff, Daryl Stark (for the purpose of this paragraph, "Plaintiff"), a citizen of

4   the State of Kentucky residing in the City of Franklin, bought a 2015 Dodge Ram 1500

5   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1,

6   2018, at Jim Johnson, an authorized FCA dealer in Bowling Green, Kentucky]. Plaintiff decided

7   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

8   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

9   which the Subject Vehicles were represented as environmentally friendly, having low emissions

10  and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

11  Vehicles.  When Plaintiff went to Jim Johnson to purchase the Subject Vehicle, the sales associate

12  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

13  These representations, along with the advertised fuel economy, were among the primary reasons

14  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

15  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

16  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19  would have paid less for it, had he/she known that it did not comply with emission standards; that

20  its emission treatment system was designed to de-activate during real-world driving conditions;

21  and that it could not achieve the advertised towing power, performance, and/or fuel economy

22  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2         1194.   Plaintiff, Bruce Simpson (for the purpose of this paragraph, "Plaintiff"), a citizen

3    of the State of Illinois residing in the City of Milledgeville, bought a 2016 Dodge Ram 1500

4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 17, 2016,

5    at Kunes Chrysler, an authorized FCA dealer in Sterling, Illinois. Plaintiff decided to buy the

6    Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

7    reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

8    Subject Vehicles were represented as environmentally friendly, having low emissions and good

9    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

10   When Plaintiff went to Kunes Chrysler to purchase the Subject Vehicle, the sales associate touted

11   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14   could perform as advertised only by emitting NOx at levels that are greater than advertised and

15   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18   would have paid less for it, had he/she known that it did not comply with emission standards; that

19   its emission treatment system was designed to de-activate during real-world driving conditions;

20   and that it could not achieve the advertised towing power, performance, and/or fuel economy

21   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1195.   Plaintiff, Kathleen McCoy (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Wantagh, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 18, 2015, at Security Dodge, an authorized FCA dealer in Amityville, NY]. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Security Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1196.   Plaintiff, Robert Zielinski (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Texas residing in the City of Arlington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 15, 2018, at North Texas Truck Stop 8321, an authorized FCA dealer in Mansfield, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to North Texas Truck Stop 8321 to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1197.   Plaintiff, James Dunn (for the purpose of this paragraph, "Plaintiff"), a citizen of

1   the State of Missouri residing in the City of Hale, bought a 2015 Dodge Ram 1500 EcoDiesel®

2   (for the purpose of this paragraph, the "Subject Vehicle") on or about December 21, 2018, at

3   Woody's Automotive Group, an authorized FCA dealer in Chillicothe, Missouri. Plaintiff decided

4   to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

5   vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

6   which the Subject Vehicles were represented as environmentally friendly, having low emissions

7   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

8   Vehicles.  When Plaintiff went to Woody's Automotive Group to purchase the Subject Vehicle,

9   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

10  and performance. These representations, along with the advertised fuel economy, were among the

11  primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

12  that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

13  than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

14  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

15  tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

16  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

17  standards; that its emission treatment system was designed to de-activate during real-world driving

18  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

19  economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

20  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

21  or would have paid less for it, had Defendants not concealed the unauthorized emission control

22  devices.

23         1198.   Plaintiff, Carlos Cantu (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Texas residing in the City of Houston, bought a 2016 Dodge Ram 1500 EcoDiesel®
(for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016, at AutoNation
Chrysler Dodge Jeep Ram Houston, an authorized FCA dealer in Houston, Texas. Plaintiff decided
to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"
vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on
which the Subject Vehicles were represented as environmentally friendly, having low emissions
and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject
Vehicles.  When Plaintiff went to AutoNation Chrysler Dodge Jeep Ram Houston to purchase the
Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including
its fuel economy and performance. These representations, along with the advertised fuel economy,
were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,
Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx
at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her
Subject Vehicle was equipped with undisclosed and unauthorized emission control devices
designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have
purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not
comply with emission standards; that its emission treatment system was designed to de-activate
during real-world driving conditions; and that it could not achieve the advertised towing power,
performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a
concrete injury as a direct and proximate result of Defendants' misconduct, and would not have
purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the
unauthorized emission control devices.

     1199.   Plaintiff, Scott Harrington (for the purpose of this paragraph, "Plaintiff"), a citizen

of the State of Georgia residing in the City of Powder Springs, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 16, 2015, at Thornton Road Dodge, an authorized FCA dealer in Lithia Springs, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Thornton Road Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1200.   Plaintiffs, Jody Simpson and Leeann Aills (for the purpose of this paragraph,

"Plaintiffs"), are citizens of the State of Texas residing in the City of Shepherd, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 15, 2016 at Platinum Chrysler Dodge Ram Jeep, an authorized FCA dealer in Terrell, Texas. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Platinum Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1201.   Plaintiffs, Steve and Mallory Wilson (for the purpose of this paragraph,

1   "Plaintiffs"), are citizens of the State of Pennsylvania residing in the City of Pulaski, bought a 2015

2   Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or

3   about May 9, 2015 at Ron Lewis Chrysler Dodge Jeep Ram, an authorized FCA dealer in

4   Cranberry Township, Pennsylvania. Plaintiffs decided to buy the Subject Vehicle based in part on

5   FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

6   efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were

7   represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs

8   also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Ron

9   Lewis Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the

10   Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

11   representations, along with the advertised fuel economy, were among the primary reasons

12   Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the

13   Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than

14   advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle was

15   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

16   tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject

17   Vehicle, or would have paid less for it, had they known that it did not comply with emission

18   standards; that its emission treatment system was designed to de-activate during real-world driving

19   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

20   economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and

21   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

22   or would have paid less for it, had Defendants not concealed the unauthorized emission control

23   devices.

1202.   Plaintiff, Jim Leavelle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Corpus Christi, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 25, 2014, at Helfman Dodge, an authorized FCA dealer in Houston, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Helfman Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1203.   Plaintiffs, Leya and Kenneth Bell (for the purpose of this paragraph, "Plaintiffs"),

are citizens of the State of Missouri residing in the City of Alton, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1, 2018 at MDP Motors, an authorized FCA dealer in Rogersville, Missouri. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles. When Plaintiffs went to MDP Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1204.    Plaintiff, Daniel Lopez (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Georgia residing in the City of Forsyth, bought a 2015 Dodge Ram 1500 EcoDiesel®
(for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2016, at Cowboy
Dodge, an authorized FCA dealer in Cheyenne, Wyoming. Plaintiff decided to buy the Subject
Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced
emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject
Vehicles were represented as environmentally friendly, having low emissions and good fuel
economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When
Plaintiff went to Cowboy Dodge to purchase the Subject Vehicle, the sales associate touted the
Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These
representations, along with the advertised fuel economy, were among the primary reasons Plaintiff
chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle
could perform as advertised only by emitting NOx at levels that are greater than advertised and
above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with
undisclosed and unauthorized emission control devices designed to cheat emission tests and to
deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or
would have paid less for it, had he/she known that it did not comply with emission standards; that
its emission treatment system was designed to de-activate during real-world driving conditions;
and that it could not achieve the advertised towing power, performance, and/or fuel economy
without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate
result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would
have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1205.   Plaintiff, David Hanson (for the purpose of this paragraph, "Plaintiff"), a citizen of
the State of Texas residing in the City of Nacogdoches, bought a 2014 Dodge Ram 1500

1223

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 10, 2015, at Firkins, an authorized FCA dealer in Bradenton, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Firkins to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1206.    Plaintiff, Dan Sadowski (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut residing in the City of Shelton, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 3, 2016,

at Suburban Chrysler Dodge Jeep Ram of Troy, an authorized FCA dealer in Troy, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Suburban Chrysler Dodge Jeep Ram of Troy to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1207.   Plaintiff, Dana Pitchford (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Raymond, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 7, 2014,

at Wright Automotive, an authorized FCA dealer in Hillsboro, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Wright Automotive to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1208.    Plaintiffs, Kenneth Lynn and Laurie Ann Drees (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Iowa residing in the City of Vail, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 19, 2015 at Woodhouse Dodge, an authorized FCA dealer in Blair, Nebraska. Plaintiffs

1  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram

3  website, on which the Subject Vehicles were represented as environmentally friendly, having low

4  emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the

5  Subject Vehicles.  When Plaintiffs went to Woodhouse Dodge to purchase the Subject Vehicle,

6  the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

7  and performance. These representations, along with the advertised fuel economy, were among the

8  primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not

9  know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are

10 greater than advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle

11 was equipped with undisclosed and unauthorized emission control devices designed to cheat

12 emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the

13 Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission

14 standards; that its emission treatment system was designed to de-activate during real-world driving

15 conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

16 economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and

17 proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

18 or would have paid less for it, had Defendants not concealed the unauthorized emission control

19 devices.

20      1209.   Plaintiff, Patrick Pursel (for the purpose of this paragraph, "Plaintiff"), a citizen of

21 the State of Arkansas residing in the City of Prairie Grove, bought a 2016 Dodge Ram 1500

22 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 26,

23 2017, at Crain Buick GMC of Springdale, an authorized FCA dealer in Springdale, Arkansas.

1    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

2    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

3    website, on which the Subject Vehicles were represented as environmentally friendly, having low

4    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

5    Subject Vehicles.  When Plaintiff went to Crain Buick GMC of Springdale to purchase the Subject

6    Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

7    economy and performance. These representations, along with the advertised fuel economy, were

8    among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

9    did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

10   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

11   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

12   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

13   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

14   emission standards; that its emission treatment system was designed to de-activate during real-

15   world driving conditions; and that it could not achieve the advertised towing power, performance,

16   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

17   direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

18   Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

19   control devices.

20        1210.   Plaintiff, Robin Laskody (for the purpose of this paragraph, "Plaintiff"), a citizen

21   of the State of Washington residing in the City of Roslyn, bought a 2014 Jeep Grand Cherokee

22   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 18, 2017,

23   at Auto Nation of Bellevue, an authorized FCA dealer in Bellevue, Washington. Plaintiff decided

to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Auto Nation of Bellevue to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1211.   Plaintiff, Michael Miller (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Center, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 26, 2016, at Wright Chrysler Dodge, an authorized FCA dealer in Center, Texas. Plaintiff decided to buy the

Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Wright Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1212.   Plaintiff, Nathan Dawson (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Lake Havasu City, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 9, 2017, at Anderson Chrysler, an authorized FCA dealer in Lake Havasu City, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Anderson Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1213.    Plaintiff, Kevin Cudgma (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut residing in the City of Branford, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2016, at Madison Chrysler, an authorized FCA dealer in Madison, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Madison Chrsyler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1214.    Plaintiff, Brian Brown (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Flower Mound, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 4, 2016, at Bonham Chrysler Jeep, an authorized FCA dealer in Bonham, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Bonham, Texas to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1215.   Plaintiff, Calvin Ball DBA Tower Construction Co (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Chattanooga, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 2, 2014, at Don Jackson Chrysler Dodge Jeep Ram, an authorized FCA dealer in Union City, Georgia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel

efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Don Jackson Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1216.    Plaintiffs, Dale M. & Melody Lynn Ruzicka (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Minnesota residing in the City of Dassel, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 18, 2016 at McKay's Dodge, Chrysler, Jeep, Ram, an authorized FCA dealer in Waite Park, Minnesota. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to McKay's Dodge, Chrysler, Jeep, Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1217.   Plaintiff, Tomas Jakubcak (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Connecticut residing in the City of Danbury, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 16, 2017, at JM Automotive, an authorized FCA dealer in Naugatuck, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to JM Automotive to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1218.    Plaintiff, Tim Sether (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota residing in the City of Stacy, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2017, at Mt. Vernon Inc. Lynch Chevrolet, an authorized FCA dealer in W Mount Vernon, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Mt. Vernon Inc. Lynch Chevrolet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1219.    Plaintiffs, Travis & Sara Rose (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Wisconsin residing in the City of Hatley, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 30, 2018 at SL Motors, an authorized FCA dealer in Pulaski, Wisconsin. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the

Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles. When Plaintiffs went to SL Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1220.   Plaintiff, Kegan Ashbrook (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Windber, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 6, 2017, at Chrysler World, an authorized FCA dealer in Abrams, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good

1238

fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Chrysler World to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1221. Plaintiffs, Eugenio & Marsha Vargas Jr (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Florida residing in the City of Okeechobee, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2017at Arrigo Dodge Chrysler Jeep Ram FIAT Ft. Pierce, an authorized FCA dealer in Ft. Pierce, Florida. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall

seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Arrigo Dodge Chrysler Jeep Ram FIAT Ft. Pierce to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1222.  Plaintiffs, Lawrence & Susan Swonger (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Kansas residing in the City of Kiowa, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 15, 2017 at Johnsons of Kingfisher Inc., an authorized FCA dealer in Kingfisher, Oklahoma. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the

Subject Vehicles.  When Plaintiffs went to Johnsons of Kingfisher Inc. purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1223.   Plaintiff, Joe Pat Hughes (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Kentucky residing in the City of Murray, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 19, 2015, at David Taylor Chrysler Dodge Jeep, an authorized FCA dealer in Murray, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to David Taylor Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1224.  Plaintiff, Marcus Kruse (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Onsted, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 15, 2018, at Lafontaine Chrysler Dodge Ram, an authorized FCA dealer in Clinton, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles. When Plaintiff went to Lafontaine Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1225.   Plaintiff, William D Ross (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Alabama residing in the City of Russellville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 26, 2015, at Champion of Decatur, Inc., an authorized FCA dealer in Decatur, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

When Plaintiff went to Champion of Decatur, Inc. to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1226.   Plaintiff, Jordan Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Medford, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 11, 2016, at Lithia Chevrolet, an authorized FCA dealer in Twin Falls, ID. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

1244

1  Lithia Chevrolet to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

2  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

3  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

4  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

5  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

6  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

7  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

8  and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

9  for it, had he/she known that it did not comply with emission standards; that its emission treatment

10 system was designed to de-activate during real-world driving conditions; and that it could not

11 achieve the advertised towing power, performance, and/or fuel economy without cheating

12 emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

13 Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

14 less for it, had Defendants not concealed the unauthorized emission control devices.

15      1227.   Plaintiff, Dawnetta Janene Holladay (for the purpose of this paragraph, "Plaintiff"),

16 a citizen of the State of Georgia residing in the City of Hull, bought a 2014 Jeep Grand Cherokee

17 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 21, 2014,

18 at Mall of Georgia Jeep, an authorized FCA dealer in Bufford, Georgia. Plaintiff decided to buy

19 the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

20 reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the

21 Subject Vehicles were represented as environmentally friendly, having low emissions and good

22 fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

23 When Plaintiff went to Mall of Georgia Jeep to purchase the Subject Vehicle, the sales associate

1  touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

2  These representations, along with the advertised fuel economy, were among the primary reasons

3  Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

4  Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

5  and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

6  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

7  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

8  would have paid less for it, had he/she known that it did not comply with emission standards; that

9  its emission treatment system was designed to de-activate during real-world driving conditions;

10  and that it could not achieve the advertised towing power, performance, and/or fuel economy

11  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

12  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

13  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

14      1228.   Plaintiff, Nicolas Klein (for the purpose of this paragraph, "Plaintiff"), a citizen of

15  the State of Minnesota residing in the City of Marshall, bought a 2015 Dodge Ram 1500

16  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2018,

17  at Watertown Ford Chrysler, an authorized FCA dealer in Watertown, South Dakota. Plaintiff

18  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

19  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

20  website, on which the Subject Vehicles were represented as environmentally friendly, having low

21  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

22  Subject Vehicles.  When Plaintiff went to Watertown Ford Chrysler to purchase the Subject

23  Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1229.   Plaintiff, Veryl Adams (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Indiana residing in the City of Coatesville, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 3, 2015, at Westgate Chrysler, an authorized FCA dealer in Plainfield, Indiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Westgate Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

1   These representations, along with the advertised fuel economy, were among the primary reasons

2   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

3   Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

4   and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

5   undisclosed and unauthorized emission control devices designed to cheat emission tests and to

6   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

7   would have paid less for it, had he/she known that it did not comply with emission standards; that

8   its emission treatment system was designed to de-activate during real-world driving conditions;

9   and that it could not achieve the advertised towing power, performance, and/or fuel economy

10  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

11  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

12  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

13       1230.   Plaintiff, Ken Levene (for the purpose of this paragraph, "Plaintiff"), a citizen of

14  the State of South Dakota residing in the City of Chancellor, bought a 2014 Dodge Ram 1500

15  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 27, 2015,

16  at Woodhouse, an authorized FCA dealer in Sioux City, Iowa. Plaintiff decided to buy the Subject

17  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

18  emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

19  Vehicles were represented as environmentally friendly, having low emissions and good fuel

20  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

21  Plaintiff went to Woodhouse to purchase the Subject Vehicle, the sales associate touted the Subject

22  Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

23  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

1248

chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1231.   Plaintiff, Tylor Cilione (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oregon residing in the City of Klamath Falls, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 10, 2018, at Lithia Jeep Medford, an authorized FCA dealer in Medford, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lithia Jeep Medford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1232.   Plaintiff, Spencer Giardini (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Lake Geneva, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 4, 2016, at Fields Chrysler Dodge Jeep Ram, an authorized FCA dealer in Glenview, Illionois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Fields Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

1  that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

2  Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

3  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

4  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

5  emission standards; that its emission treatment system was designed to de-activate during real-

6  world driving conditions; and that it could not achieve the advertised towing power, performance,

7  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

8  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

9  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

10  control devices.

11      1233.   Plaintiff, Jay E. Fitzgerald (for the purpose of this paragraph, "Plaintiff"), a citizen

12  of the State of Pennsylvania residing in the City of Utica, bought a 2014 Dodge Ram 1500

13  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 21,

14  2014, at CarRight Chrysler Dodge Jeep RAM, an authorized FCA dealer in Moon, Pennsylvania.

15  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

16  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

17  website, on which the Subject Vehicles were represented as environmentally friendly, having low

18  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

19  Subject Vehicles.  When Plaintiff went to CarRight Chrysler Dodge Jeep RAM to purchase the

20  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

21  its fuel economy and performance. These representations, along with the advertised fuel economy,

22  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

23  Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

1  at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

2  Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

3  designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

4  purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

5  comply with emission standards; that its emission treatment system was designed to de-activate

6  during real-world driving conditions; and that it could not achieve the advertised towing power,

7  performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

8  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

9  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

10  unauthorized emission control devices.

11      1234.  Plaintiffs, David & Jamie Wright (for the purpose of this paragraph, "Plaintiffs"),

12  are citizens of the State of Wisconsin residing in the City of Edgerton, bought a 2014 Jeep Grand

13  Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

14  October 17, 2016, at Van Horn Chrysler Dodge Jeep Ram of Manitowoc, an authorized FCA dealer

15  in Manitowoc, Wisconsin. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's

16  representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

17  Plaintiffs recalls visiting the Jeep website, on which the Subject Vehicles were represented as

18  environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls

19  seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Van Horn

20  Chrysler Dodge Jeep Ram of Manitowoc to purchase the Subject Vehicle, the sales associate touted

21  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

22  representations, along with the advertised fuel economy, were among the primary reasons

23  Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the

1  Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than

2  advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was

3  equipped with undisclosed and unauthorized emission control devices designed to cheat emission

4  tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject

5  Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

6  standards; that its emission treatment system was designed to de-activate during real-world driving

7  conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

8  economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and

9  proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

10  or would have paid less for it, had Defendants not concealed the unauthorized emission control

11  devices.

12      1235.   Plaintiff, Gordon Doug Stephens (for the purpose of this paragraph, "Plaintiff"), a

13  citizen of the State of Lousiana residing in the City of Lafayette, bought a 2014 Dodge Ram 1500

14  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2015,

15  at Acadiana Dodge Chrysler Jeep Ram Fiat, an authorized FCA dealer in Lafayette, Louisiana.

16  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

17  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

18  website, on which the Subject Vehicles were represented as environmentally friendly, having low

19  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

20  Subject Vehicles.  When Plaintiff went to Acadiana Dodge Chrysler Jeep Ram Fiat to purchase the

21  Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

22  its fuel economy and performance. These representations, along with the advertised fuel economy,

23  were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

1    Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

2    at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her

3    Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

4    designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

5    purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

6    comply with emission standards; that its emission treatment system was designed to de-activate

7    during real-world driving conditions; and that it could not achieve the advertised towing power,

8    performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a

9    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

10   purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

11   unauthorized emission control devices.

12       1236.   Plaintiff, Terrie Peay (for the purpose of this paragraph, "Plaintiff"), a citizen of the

13   State of Tennessee residing in the City of Savannah, bought a 2015 Dodge Ram 1500 EcoDiesel®

14   (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1, 2016, at Jones

15   Dodge Chrysler, an authorized FCA dealer in Savannah, Tennesse. Plaintiff decided to buy the

16   Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

17   reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

18   Subject Vehicles were represented as environmentally friendly, having low emissions and good

19   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

20   When Plaintiff went to Jones Dodge Chrysler to purchase the Subject Vehicle, the sales associate

21   touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

22   These representations, along with the advertised fuel economy, were among the primary reasons

23   Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

1254

Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1237.   Plaintiff, Roberto Martinez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Coyanosa, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 31, 2015, at Star Chrysler Dodge Jeep Ram, an authorized FCA dealer in Big Spring, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Star Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1238.   Plaintiff, Steve & Jill Aman (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Iowa residing in the City of Sergeant Bluff, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 2, 2018, at Woodhouse Chrysler Ram Jeep, an authorized FCA dealer in Sioux City, Iowa. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Woodhouse Chrysler Ram Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

1   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

2   equipped with undisclosed and unauthorized emission control devices designed to cheat emission

3   tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

4   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

5   standards; that its emission treatment system was designed to de-activate during real-world driving

6   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

7   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

8   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

9   or would have paid less for it, had Defendants not concealed the unauthorized emission control

10   devices.

11   1239.   Plaintiff, Collin Hale (for the purpose of this paragraph, "Plaintiff"), a citizen of the

12   State of Texas residing in the City of Ben Wheeler, bought a 2016 Dodge Ram 1500 EcoDiesel®

13   (for the purpose of this paragraph, the "Subject Vehicle") on or about November 30, 2016, at

14   Tomball Dodge Chrysler Jeep, an authorized FCA dealer in Tomball, Texas. Plaintiff decided to

15   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

16   (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

17   Subject Vehicles were represented as environmentally friendly, having low emissions and good

18   fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

19   When Plaintiff went to Tomball Dodge Chrysler Jeep to purchase the Subject Vehicle, the sales

20   associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

21   performance. These representations, along with the advertised fuel economy, were among the

22   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

23   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1240.  Plaintiff, Willie Sekel (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Manitowoc, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 20, 2015, at Gandrud Motor Company, an authorized FCA dealer in Green Bay, Wisconsin. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Gandrud Motor Company to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1241.   Plaintiff, Robert Perron III (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Webster, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2015, at Putnam Chrysler Dodge, an authorized FCA dealer in Putnam, Connecticut. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Putnam Chrysler Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

1259

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1242.   Plaintiff, Kevin Sanders (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Haynesville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 10, 2017, at Breedend-C-J Inc, an authorized FCA dealer in Fort Smith, Arkansas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Breedend-C-J Inc to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

1    above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

2    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

3    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

4    would have paid less for it, had he/she known that it did not comply with emission standards; that

5    its emission treatment system was designed to de-activate during real-world driving conditions;

6    and that it could not achieve the advertised towing power, performance, and/or fuel economy

7    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

8    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

9    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

10       1243.  Plaintiff, Ryan Lahaie (for the purpose of this paragraph, "Plaintiff"), a citizen of

11   the State of Michigan residing in the City of Lowell, bought a 2016 Dodge Ram 1500 EcoDiesel®

12   (for the purpose of this paragraph, the "Subject Vehicle") on or about January 8, 2019, at Szott M-

13   59 Dodge Ram, an authorized FCA dealer in Highland Charter Township, Michigan. Plaintiff

14   decided to buy the Subject Vehicle based in part on FCA's representations that it was an

15   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

16   website, on which the Subject Vehicles were represented as environmentally friendly, having low

17   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

18   Subject Vehicles.  When Plaintiff went to Szott M-59 Dodge Ram to purchase the Subject Vehicle,

19   the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy

20   and performance. These representations, along with the advertised fuel economy, were among the

21   primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know

22   that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

23   than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was

equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1244.   Plaintiff, Brian Pieper (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Minnesota residing in the City of Minneapolis, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 20, 2018, at Park Jeep Inc, an authorized FCA dealer in Burnsville, Minnesota. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Park Jeep Inc to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

1  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

2  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

3  would have paid less for it, had he/she known that it did not comply with emission standards; that

4  its emission treatment system was designed to de-activate during real-world driving conditions;

5  and that it could not achieve the advertised towing power, performance, and/or fuel economy

6  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

7  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

8  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

9      1245. Plaintiff, Robert Lionel (for the purpose of this paragraph, "Plaintiff"), a citizen of

10  the State of Texas residing in the City of Princeton, bought a 2014 Jeep Grand Cherokee

11  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014,

12  at Frisco Dodge, an authorized FCA dealer in Frisco, Texas. Plaintiff decided to buy the Subject

13  Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

14  emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject

15  Vehicles were represented as environmentally friendly, having low emissions and good fuel

16  economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When

17  Plaintiff went to Frisco Dodge to purchase the Subject Vehicle, the sales associate touted the

18  Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

19  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

20  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

21  could perform as advertised only by emitting NOx at levels that are greater than advertised and

22  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

23  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1246.   Plaintiff, Michael Schrader (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Syracuse, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 30, 2018, at Bridgeland Auto, an authorized FCA dealer in Bridgeport, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Bridgeland Auto to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1247.   Plaintiff, Andrew Bonnett (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arizona residing in the City of Sedona, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 8, 2016, at Planet Chrysler Dodge Jeep Ram, an authorized FCA dealer in Sedona, Arizona. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Planet Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject

1   Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

2   standards; that its emission treatment system was designed to de-activate during real-world driving

3   conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

4   economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

5   proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

6   or would have paid less for it, had Defendants not concealed the unauthorized emission control

7   devices.

8       1248.   Plaintiff, Sergio Braga (for the purpose of this paragraph, "Plaintiff"), a citizen of

9   the State of Alabama residing in the City of Gulf Shores, bought a 2014 Dodge Ram 1500

10  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 21, 2014,

11  at Jacksonville Chrysler Dodge Jeep Ram Arlington, an authorized FCA dealer in Jacksonville,

12  Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

13  was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

14  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

15  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

16  about the Subject Vehicles.  When Plaintiff went to Jacksonville Chrysler Dodge Jeep Ram

17  Arlington to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

18  EcoDiesel® attributes, including its fuel economy and performance. These representations, along

19  with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

20  Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

21  advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

22  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

23  unauthorized emission control devices designed to cheat emission tests and to deceive consumers

and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1249.   Plaintiff, Tom Billing (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Lake Geneva, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2014, at Fields Chrysler Jeep Dodge RAM, an authorized FCA dealer in Glenview, Illinois. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Fields Chrysler Jeep Dodge RAM to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have

purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1250.   Plaintiff, William Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Pagosa Springs, bought a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 1, 2015, at Spartanburg Chrysler Dodge Jeep Ram an authorized FCA dealer in Spartanburg, South Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Spartanburg Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators.

Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1251.   Plaintiff, Benjamin F. Holt Jr.  (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Dry Prong, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 4, 2016, at Sterling Motors, an authorized FCA dealer in Opelousas, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Sterling Motors to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1252.   Plaintiff, Jeremy Stevens DBA JJ Flooring (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho residing in the City of Nampa, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 27, 2015, at Stampeded Peterson Dodge, an authorized FCA dealer in Nampa, Idaho. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Stampeded Peterson Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1253.   Plaintiffs, Debra & Ronnie Creed (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of North Carolina residing in the City of Pilot Mountain, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 7, 2018 at Kernersville Dodge Chrysler Ram, an authorized FCA dealer in Kernersville, North Carolina. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Kernersville Dodge Chrysler Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor were Plaintiffs aware that their Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject

Vehicle, or would have paid less for it, had they known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1254.   Plaintiff, Thomas Snyder (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of West Virginia residing in the City of Camden, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 14, 2015, at Urse Dodge Chrysler Ram, an authorized FCA dealer in White Hall, West Virginia. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Urse Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1255.   Plaintiff, Brad Smith (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Somerville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 29, 2016, at San Marcos Dodge, an authorized FCA dealer in San Marcos, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to San Marcos Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

1    would have paid less for it, had he/she known that it did not comply with emission standards; that

2    its emission treatment system was designed to de-activate during real-world driving conditions;

3    and that it could not achieve the advertised towing power, performance, and/or fuel economy

4    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

5    result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

6    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

7        1256.   Plaintiffs, William and Marlene Loewen (for the purpose of this paragraph,

8    "Plaintiffs"), a citizen of the State of Florida residing in the City of Milton, bought a 2015 Dodge

9    Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July

10   11, 2015, at Chrysler Dodge Jeep Ram Crestview, an authorized FCA dealer in Crestview, Florida.

11   Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an

12   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram

13   website, on which the Subject Vehicles were represented as environmentally friendly, having low

14   emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the

15   Subject Vehicles.  When Plaintiffs went to Chrysler Dodge Jeep Ram Crestview to purchase the

16   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

17   its fuel economy and performance. These representations, along with the advertised fuel economy,

18   were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase,

19   Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx

20   at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that

21   his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

22   designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not

23   have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did

1    not comply with emission standards; that its emission treatment system was designed to de-activate

2    during real-world driving conditions; and that it could not achieve the advertised towing power,

3    performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a

4    concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

5    purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

6    unauthorized emission control devices.

7         1257.   Plaintiffs, Paul & Angela Miller (for the purpose of this paragraph, "Plaintiffs"), a

8    citizen of the State of Illinois residing in the City of Edwardsville, bought a 2014 Jeep Grand

9    Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

10   February 5, 2016, at First Chrysler of Manitowoc, an authorized FCA dealer in Manitowoc,

11   Wisconsin. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations

12   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall

13   visiting the Jeep website, on which the Subject Vehicles were represented as environmentally

14   friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television

15   commercials about the Subject Vehicles.  When Plaintiffs went to First Chrysler of Manitowoc to

16   purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

17   attributes, including its fuel economy and performance. These representations, along with the

18   advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At

19   the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised

20   only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

21   Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

22   emission control devices designed to cheat emission tests and to deceive consumers and regulators.

23   Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

1275

known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1258.   Plaintiffs, Jack & Debra Heylmann (for the purpose of this paragraph, "Plaintiffs"), a citizen of the State of Indiana residing in the City of Greencastle, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 4, 2016, at York Chrysler Dodge Jeep Ram Fiat, an authorized FCA dealer in Crawfordsville, Indiana. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to York Chrysler Dodge Jeep Ram Fiat to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1259.   Plaintiff, Bryan Emilius (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Pennsylvania residing in the City of Jenkintown, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 23, 2016, at Mt Ephraim Chrysler Dodge Ram, an authorized FCA dealer in Mt Ephraim, New Jersey. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Mt Ephraim Chrysler Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not

comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1260.   Plaintiffs, Ruthanna Taylor & Zachary Buchanan (for the purpose of this paragraph, "Plaintiff"), are citizens of the State of Missouri residing in the City of Kingsville bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 10, 2018 at Max Ford LLC, an authorized FCA dealer in Harrisonville, Missouri]. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Max Ford LLC to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1    standards; that its emission treatment system was designed to de-activate during real-world driving

2    conditions; and that it could not achieve the advertised towing power, performance, and/or fuel

3    economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and

4    proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle,

5    or would have paid less for it, had Defendants not concealed the unauthorized emission control

6    devices.

7        1261.   Plaintiff, Ben Savino (for the purpose of this paragraph, "Plaintiff"), a citizen of the

8    State of New York residing in the City of Mahopac, leased two 2015 Dodge Ram 1500

9    EcoDiesels® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 2, 2015,

10   at Nemer Chrysler Jeep Dodge Ram of Saratoga, an authorized FCA dealer in Saratoga Springs,

11   New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations

12   that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls

13   visiting the Ram website, on which the Subject Vehicles were represented as environmentally

14   friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television

15   commercials about the Subject Vehicles.  When Plaintiff went to Nemer Chrysler Jeep Dodge Ram

16   of Saratoga to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's

17   EcoDiesel® attributes, including its fuel economy and performance. These representations, along

18   with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

19   Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

20   advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

21   Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

22   unauthorized emission control devices designed to cheat emission tests and to deceive consumers

23   and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1262.   Plaintiff, Ben Savino (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Jefferson Valley, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 23, 2016, at Meadowland of Carmel, an authorized FCA dealer in Carmel, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Meadowland of Carmel to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission

1280

standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1263.   Plaintiff, Blake Byrne (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Wyandotte, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") in December 2016. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions;

1281

1  and that it could not achieve the advertised towing power, performance, and/or fuel economy

2  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

3  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

4  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

5      1264.   Plaintiff, Brad Hoben (for the purpose of this paragraph, "Plaintiff"), a citizen of

6  the State of Florida residing in the City of Sanford, bought a 2016 Dodge Ram 1500 EcoDiesel®

7  (for the purpose of this paragraph, the "Subject Vehicle") on or about November 26, 2016, at Fields

8  Ram, an authorized FCA dealer in Sanford, Florida. Plaintiff decided to buy the Subject Vehicle

9  based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions

10 and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were

11 represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff

12 also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to

13 Fields Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's

14 EcoDiesel® attributes, including its fuel economy and performance. These representations, along

15 with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject

16 Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as

17 advertised only by emitting NOx at levels that are greater than advertised and above legal limits.

18 Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and

19 unauthorized emission control devices designed to cheat emission tests and to deceive consumers

20 and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less

21 for it, had he/she known that it did not comply with emission standards; that its emission treatment

22 system was designed to de-activate during real-world driving conditions; and that it could not

23 achieve the advertised towing power, performance, and/or fuel economy without cheating

1282

1    emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of

2    Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid

3    less for it, had Defendants not concealed the unauthorized emission control devices.

4        1265.   Plaintiff, Brent Ford (for the purpose of this paragraph, "Plaintiff"), a citizen of the

5    State of New York residing in the City of Ontario, bought a 2016 Dodge Ram 1500 EcoDiesel®

6    (for the purpose of this paragraph, the "Subject Vehicle") on or about May 28, 2016, at Peake

7    Chrysler Dodge Jeep Ram Fiat, an authorized FCA dealer in Sodus, New York. Plaintiff decided

8    to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel"

9    vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on

10   which the Subject Vehicles were represented as environmentally friendly, having low emissions

11   and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

12   Vehicles.  When Plaintiff went to Peake Chrysler Dodge Jeep Ram Fiat] to purchase the Subject

13   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

14   economy and performance. These representations, along with the advertised fuel economy, were

15   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

16   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

17   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

18   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

19   cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

20   the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

21   emission standards; that its emission treatment system was designed to de-activate during real-

22   world driving conditions; and that it could not achieve the advertised towing power, performance,

23   and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

1    direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

2    Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

3    control devices.

4           1266.   Plaintiff, Cyrus Garrison (for the purpose of this paragraph, "Plaintiff"), a citizen

5    of the State of Missouri residing in the City of Jacksonville, bought a Dodge Ram 1500

6    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 5,

7    2016 at Joe Machens Ford, an authorized FCA dealer in Columbia, Missouri. Plaintiff decided to

8    buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

9    (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

10    Subject Vehicles were represented as environmentally friendly, having low emissions and good

11    fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

12    When Plaintiff went to Joe Machens Ford to purchase the Subject Vehicle, the sales associate

13    touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance.

14    These representations, along with the advertised fuel economy, were among the primary reasons

15    Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject

16    Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised

17    and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

18    undisclosed and unauthorized emission control devices designed to cheat emission tests and to

19    deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

20    would have paid less for it, had he/she known that it did not comply with emission standards; that

21    its emission treatment system was designed to de-activate during real-world driving conditions;

22    and that it could not achieve the advertised towing power, performance, and/or fuel economy

23    without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

1   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

2   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

3       1267.   Plaintiff, Daniel Acker (for the purpose of this paragraph, "Plaintiff"), a citizen of

4   the State of New York residing in the City of Whitesboro, bought a 2014 Dodge Ram 1500

5   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2016.

6   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

7   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

8   website, on which the Subject Vehicles were represented as environmentally friendly, having low

9   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

10  Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted

11  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

12  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

13  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

14  could perform as advertised only by emitting NOx at levels that are greater than advertised and

15  above legal limits.  Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

16  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

17  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

18  would have paid less for it, had he/she known that it did not comply with emission standards; that

19  its emission treatment system was designed to de-activate during real-world driving conditions;

20  and that it could not achieve the advertised towing power, performance, and/or fuel economy

21  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

22  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

23  have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1285

1268.   Plaintiff, Daniel Welzel  (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New Jersey residing in the City of Mantua, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 30, 2015. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1269.   Plaintiff, Derick Owens (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Wisconsin residing in the City of Green Bay, bought a 2014 Dodge Ram 1500

EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2015. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1270.   Plaintiff, Domenick Thomas Ruttura (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of West Babylon, leased a 2015 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about September 7, 2015. Plaintiff decided to buy the Subject Vehicle based in part on FCA's

representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to lease the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1271.   Plaintiff, Domenick Thomas Ruttura (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of West Babylon, leased a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 9, 2016. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient).

1   Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as

2   environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

3   seeing television commercials about the Subject Vehicles.  When Plaintiff went to lease the Subject

4   Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

5   economy and performance. These representations, along with the advertised fuel economy, were

6   among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

7   did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

8   that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

9   Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

10  cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

11  the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

12  emission standards; that its emission treatment system was designed to de-activate during real-

13  world driving conditions; and that it could not achieve the advertised towing power, performance,

14  and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

15  direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

16  Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

17  control devices.

18      1272.  Plaintiff, Don Keeney (for the purpose of this paragraph, "Plaintiff"), a citizen of

19  the State of Missouri residing in the City of Festus, bought a 2014 Dodge Ram 1500 EcoDiesel®

20  (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1, 2015. Plaintiff

21  decided to buy the Subject Vehicle based in part on FCA's representations that it was an

22  "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

23  website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1273. Plaintiff, Frances and Carl Roberts (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Colorado residing in the City of Peyton, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 10, 2014. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to purchase the Subject Vehicle, the sales associate touted

the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1274.   Plaintiffs, James & Judy Drudy (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Tennessee residing in the City of Crossville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 9, 2016, at Henry Brown Chrysler Jeep Dodge, an authorized FCA dealer in Casa Grande, Arizona. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Henry Brown Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

1   its fuel economy and performance. These representations, along with the advertised fuel economy,

2   were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase,

3   Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx

4   at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that

5   his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices

6   designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not

7   have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did

8   not comply with emission standards; that its emission treatment system was designed to de-activate

9   during real-world driving conditions; and that it could not achieve the advertised towing power,

10  performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a

11  concrete injury as a direct and proximate result of Defendants' misconduct, and would not have

12  purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the

13  unauthorized emission control devices.

14      1275.   Plaintiff, Jeffrey Mills (for the purpose of this paragraph, "Plaintiff"), a citizen of

15  the State of New York residing in the City of Barryville, bought a 2016 Dodge Ram 1500

16  EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 25,

17  2016. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it

18  was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting

19  the Ram website, on which the Subject Vehicles were represented as environmentally friendly,

20  having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials

21  about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales

22  associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

23  performance. These representations, along with the advertised fuel economy, were among the

1292

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1276.   Plaintiff, Jimmy Haney (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Mississippi residing in the City of Ruleville, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 18, 2018, at Cannon Chrysler Dodge Jeep Ram, an authorized FCA dealer in Greenwood, Mississippi. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Cannon Chrysler Dodge Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy,

were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1277.   Plaintiff, John Gonzalez (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Fredericksburg, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about March 1, 2017. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1278.   Plaintiff, Justin Chandler (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Raeford, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 2, 2016. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1279.   Plaintiff, Katie Mantz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Nebraska residing in the City of Herman, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 25, 2018, at Woodhouse Ford , an authorized FCA dealer in Blaire, Nebraska. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Woodhouse Ford to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to

deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1280.   Plaintiff, Keith Wallum (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arkansas residing in the City of Hampton bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2015. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that

1   its emission treatment system was designed to de-activate during real-world driving conditions;

2   and that it could not achieve the advertised towing power, performance, and/or fuel economy

3   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

4   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

5   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

6        1281.   Plaintiff, Kim Triplett (for the purpose of this paragraph, "Plaintiff"), a citizen of

7   the State of Missouris residing in the City of Seneca, bought a 2014 Dodge Ram 1500 EcoDiesel®

8   (for the purpose of this paragraph, the "Subject Vehicle") in September 2014. Plaintiff decided to

9   buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle

10  (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the

11  Subject Vehicles were represented as environmentally friendly, having low emissions and good

12  fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.

13  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject

14  Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

15  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

16  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

17  could perform as advertised only by emitting NOx at levels that are greater than advertised and

18  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

19  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

20  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

21  would have paid less for it, had he/she known that it did not comply with emission standards; that

22  its emission treatment system was designed to de-activate during real-world driving conditions;

23  and that it could not achieve the advertised towing power, performance, and/or fuel economy

1   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

2   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

3   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

4        1282.   Plaintiff, Larry Rasband (for the purpose of this paragraph, "Plaintiff"), a citizen of

5   the State of Utah residing in the City of Heber City, bought a 2015 Jeep Grand Cherokee

6   EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 8, 2016.

7   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

8   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

9   website, on which the Subject Vehicles were represented as environmentally friendly, having low

10  emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

11  Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted

12  the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

13  representations, along with the advertised fuel economy, were among the primary reasons Plaintiff

14  chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

15  could perform as advertised only by emitting NOx at levels that are greater than advertised and

16  above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

17  undisclosed and unauthorized emission control devices designed to cheat emission tests and to

18  deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or

19  would have paid less for it, had he/she known that it did not comply with emission standards; that

20  its emission treatment system was designed to de-activate during real-world driving conditions;

21  and that it could not achieve the advertised towing power, performance, and/or fuel economy

22  without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate

23  result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would

1    have paid less for it, had Defendants not concealed the unauthorized emission control devices.

2    1283.   Plaintiff, Leslie Charles tabor (for the purpose of this paragraph, "Plaintiff"), a
3    citizen of the State of Texas residing in the City of El Campo, bought a 2015 Dodge Ram 1500
4    EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 3, 2015.
5    Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an
6    "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram
7    website, on which the Subject Vehicles were represented as environmentally friendly, having low
8    emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the
9    Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted
10   the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These
11   representations, along with the advertised fuel economy, were among the primary reasons Plaintiff
12   chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle
13   could perform as advertised only by emitting NOx at levels that are greater than advertised and
14   above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with
15   undisclosed and unauthorized emission control devices designed to cheat emission tests and to
16   deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or
17   would have paid less for it, had he/she known that it did not comply with emission standards; that
18   its emission treatment system was designed to de-activate during real-world driving conditions;
19   and that it could not achieve the advertised towing power, performance, and/or fuel economy
20   without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate
21   result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would
22   have paid less for it, had Defendants not concealed the unauthorized emission control devices.

23   1284.   Plaintiffs, Margie & Joshua A Toler (for the purpose of this paragraph, "Plaintiffs"),

are citizens of the State of West Virginia residing in the City of Spencer, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 11, 2016 at Chrysler Jeep Dodge Ram, an authorized FCA dealer in Ripley, West Virginia. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recall visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recall seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Chrysler Jeep Dodge Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs have suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1285.   Plaintiff, Mildred Fitts (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Alabama residing in the City of Gadsden, bought a 2015 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about April 12, 2016 at Team One

Chrysler Dodge Jeep Ram of Gadsden, an authorized FCA dealer in Gadsden, Alabama. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an

"EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low

emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

Subject Vehicles.  When Plaintiff went to Team One Chrysler Dodge Jeep Ram of Gadsden to

purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel®

attributes, including its fuel economy and performance. These representations, along with the

advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At

the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

emission control devices designed to cheat emission tests and to deceive consumers and regulators.

Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

known that it did not comply with emission standards; that its emission treatment system was

designed to de-activate during real-world driving conditions; and that it could not achieve the

advertised towing power, performance, and/or fuel economy without cheating emission tests.

Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

not concealed the unauthorized emission control devices.

1286.   Plaintiffs, Nathan & Tracey Andrews (for the purpose of this paragraph,

"Plaintiffs"), are citizens of the State of Kansas residing in the City of Ellis, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 21, 2017, at Marmie Chrysler Dodge Jeep, an authorized FCA dealer in Great Bend, Kansas. Plaintiffs decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiffs recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiffs also recalls seeing television commercials about the Subject Vehicles.  When Plaintiffs went to Marmie Chrysler Dodge Jeep to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiffs chose the Subject Vehicle. At the time of purchase, Plaintiffs did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiffs aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiffs would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiffs has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1287.   Plaintiff, Pete Pompa (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of New York residing in the City of Sherburne, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 1, 2014. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1288.    Plaintiffs, Richard or Annette Peterson (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Alabama residing in the City of Ohatchee, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") in 2014,

at University Chrysler Dodge Jeep Ram Fiat of Anniston, an authorized FCA dealer in Anniston, Alabama. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to University Chrysler Dodge Jeep Ram Fiat of Anniston  to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1289.   Plaintiff, Richie Harris (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Arkansas residing in the City of Ward, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1, 2016. Plaintiff

decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1290.   Plaintiff, Bobby Jennings (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Louisiana residing in the City of Patterson, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") in October 2014, at AJ Dohmann Chrysler Inc, an authorized FCA dealer in Berwick, Louisiana. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e.,

reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to AJ Dohmann Chrysler Inc to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1291.   Plaintiff, Rodger Cassat (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Washington residing in the City of Olympia, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about July 1, 2017. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram

website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1292.   Plaintiffs, Ronald Goca & Maryam Khayami (for the purpose of this paragraph, "Plaintiffs"), are citizens of the State of Hawaii residing in the City of Honolulu, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 18, 2015. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls

seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1293.   Plaintiff, Roxane Branz (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of North Carolina residing in the City of Richlands, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") in 2016, at National Dodge Chrysler Jeep RAM, an authorized FCA dealer in Jacksonville, North Carolina. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject

Vehicles.  When Plaintiff went to National Dodge Chrysler Jeep RAM to purchase the Subject

Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel

economy and performance. These representations, along with the advertised fuel economy, were

among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff

did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject

Vehicle was equipped with undisclosed and unauthorized emission control devices designed to

cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased

the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with

emission standards; that its emission treatment system was designed to de-activate during real-

world driving conditions; and that it could not achieve the advertised towing power, performance,

and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a

direct and proximate result of Defendants' misconduct, and would not have purchased the Subject

Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission

control devices.

1294.   Plaintiff, Roy LaNeave (for the purpose of this paragraph, "Plaintiff"), a citizen of

the State of Virginia residing in the City of Salem, bought a 2015 Dodge Ram 1500 EcoDiesel®

(for the purpose of this paragraph, the "Subject Vehicle") on or about March 14, 2015, at Berglund

Chrysler, an authorized FCA dealer in Roanoke, Virginia. Plaintiff decided to buy the Subject

Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced

emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject

Vehicles were represented as environmentally friendly, having low emissions and good fuel

economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When

1310

Plaintiff went to Berglund Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1295.   Plaintiff, William Alfred Brown Jr. (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Florida residing in the City of Gainesville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 28th, 2015, at Gainesville Chrysler Dodge Jeep, an authorized FCA dealer in Gainesville, Florida. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Gainesville Chrysler Dodge Jeep to purchase the Subject

Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1296.   Plaintiff, Weldon Irvin (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho residing in the City of Meridian, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about June 2nd, 2016.  Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1297.  Plaintiff, Travis Hoyle (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Tennessee residing in the City of Clarksville, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about February 1st, 2018, at Sisk Auto Mall, an authorized FCA dealer in Hopkinsville, Kentucky. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Sisko Auto Mall to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and

performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1298.   Plaintiff, Tom & Shawn Wells (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Moses Lake residing in the City of Washington, bought a 2015 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about August 15th, 2015, at Lithia, an authorized FCA dealer in Eugene, Oregon. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Lithia to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These

representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1299.   Plaintiff, Todd Ruttura (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Farmingdale, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 4th, 2018, at Larchmont Chrysler, an authorized FCA dealer in Larchmont, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larchmont Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1300.   Plaintiff, Todd Ruttura (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Farmingdale, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 29th, 2015, at Larchmont Chrysler, an authorized FCA dealer in Larchmont, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larchmont Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1301.   Plaintiff, Todd Ruttura (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Farmingdale, bought a 2016 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 4th, 2015, at Larchmont Chrysler, an authorized FCA dealer in Larchmont, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Larchmont Chrysler to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1302.  Plaintiff, Thomas Dluzniewski (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Missouri residing in the City of Dexter, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about January 1st, 2017, at Harry Blackwell Dodge Chrysler Jeep Ram, an authorized FCA dealer in Dexter, Missouri. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Harry Blackwell Dodge Chrysler Jeep Ram to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the

advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1303.   Plaintiff, Terrence O'Brien (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Texas residing in the City of Abilene, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about November 1st, 2016, at Vernon Chrysler Jeep Dodge, an authorized FCA dealer in Abilene, Texas. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Vernon Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the

1319

primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1304.   Plaintiff, Steve Stanley (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Idaho residing in the City of Oakley, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 1st, 2014. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle

could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1305.   Plaintiff, Scott Carey (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Marlborough, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 31st, 2015, at Colonial Chrysler Jeep Dodge, an authorized FCA dealer in Hudson, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Colonial Chrysler Jeep Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels

that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1306.   Plaintiff, Saska Voll (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Massachusetts residing in the City of Billerica, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 21st, 2015, at Herb Chambers, an authorized FCA dealer in Danvers, Massachusetts. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Herb Chambers to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater

than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1307. Plaintiff, Sandra Lascano and Jaime Eugenio (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of College Point, bought a 2014 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about October 9th, 2014, at Major World CDJR50-30, an authorized FCA dealer in Long Island, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Major World CDJR 50-30 to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised

1    only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was

2    Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized

3    emission control devices designed to cheat emission tests and to deceive consumers and regulators.

4    Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she

5    known that it did not comply with emission standards; that its emission treatment system was

6    designed to de-activate during real-world driving conditions; and that it could not achieve the

7    advertised towing power, performance, and/or fuel economy without cheating emission tests.

8    Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct,

9    and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants

10   not concealed the unauthorized emission control devices.

11        1308.   Plaintiff, Russell S & Desiree G Lewis (for the purpose of this paragraph,

12   "Plaintiff"), a citizen of the State of Kansas residing in the City of Derby, bought a 2014 Jeep

13   Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about

14   April 10th, 2017, at Davis Moore Automotive Inc, an authorized FCA dealer in Wichita, Kansas.

15   Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an

16   "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep

17   website, on which the Subject Vehicles were represented as environmentally friendly, having low

18   emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the

19   Subject Vehicles.  When Plaintiff went to Davis Moore Automotive Inc Jeep to purchase the

20   Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including

21   its fuel economy and performance. These representations, along with the advertised fuel economy,

22   were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase,

23   Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx

at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1309.   Plaintiff, Nicholas R Montgomery (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Michigan residing in the City of Jeddo, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about April 1st, 2016, at Parkway CDJR, an authorized FCA dealer in Clinton Township, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Parkway CDJR to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and

above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1310.   Plaintiff, Mary Jones (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Illinois residing in the City of Chicago, bought a 2014 Jeep Grand Cherokee EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about May 17th, 2016, at Sherman Dodge, an authorized FCA dealer in Clinton Township, Michigan. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Jeep website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to Sherman Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with

undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1311. Plaintiff, Robert Davis (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of Oklahoma residing in the City of Lexington, bought a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle") on or about December 1, 2016, at David Stanley Dodge, an authorized FCA dealer in Norman, Oklahoma. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles. When Plaintiff went to David Stanley Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission

tests and to deceive consumers and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

1312.   Plaintiff, Jeffery P. Spence (for the purpose of this paragraph, "Plaintiff"), a citizen of the State of New York residing in the City of Yaphank, leased a 2016 Dodge Ram 1500 EcoDiesel® (for the purpose of this paragraph, the "Subject Vehicle" from Riverhead Dodge, an authorized FCA dealer in Riverhead, New York. Plaintiff decided to buy the Subject Vehicle based in part on FCA's representations that it was an "EcoDiesel" vehicle (i.e., reduced emissions and fuel efficient). Plaintiff recalls visiting the Ram website, on which the Subject Vehicles were represented as environmentally friendly, having low emissions and good fuel economy. Plaintiff also recalls seeing television commercials about the Subject Vehicles.  When Plaintiff went to Riverhead Dodge to purchase the Subject Vehicle, the sales associate touted the Subject Vehicle's EcoDiesel® attributes, including its fuel economy and performance. These representations, along with the advertised fuel economy, were among the primary reasons Plaintiff chose the Subject Vehicle. At the time of purchase, Plaintiff did not know that the Subject Vehicle could perform as advertised only by emitting NOx at levels that are greater than advertised and above legal limits. Nor was Plaintiff aware that his/her Subject Vehicle was equipped with undisclosed and unauthorized emission control devices designed to cheat emission tests and to deceive consumers

and regulators. Plaintiff would not have purchased the Subject Vehicle, or would have paid less for it, had he/she known that it did not comply with emission standards; that its emission treatment system was designed to de-activate during real-world driving conditions; and that it could not achieve the advertised towing power, performance, and/or fuel economy without cheating emission tests. Plaintiff has suffered a concrete injury as a direct and proximate result of Defendants' misconduct, and would not have purchased the Subject Vehicle, or would have paid less for it, had Defendants not concealed the unauthorized emission control devices.

## JURISDICTION AND VENUE

1313.   This Court has jurisdiction over the lawsuit because Plaintiffs and FCA are citizens of different states and because the matter in controversy exceeds $75,000.00 pursuant to 28 U.S.C. §1332(a). Declaratory relief is available pursuant to 28 U.S.C. § § 2201 and 2202. The Court had supplemental jurisdiction under U.S.C. § 1367 over Plaintiffs' state law claims because said claims are so related to the claims within the Court's jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution. In addition, subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) and 18 U.S.C. § 1964 (RICO). The Court also has original subject-matter jurisdiction over this action under 28 U.S.C. § 1332(d), because there are numerous Plaintiffs the amount in controversy exceeds $5,000,000, and there is the required diversity of citizenship pursuant to 28 U.S.C. § 1332(d)(2).

1314.   Venue is proper in this district under 28 U.S.C. § 1391(a)(3) because FCA is subject to personal jurisdiction in this district and there is no other district where the suit may be brought. In addition, venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Defendants have marketed, advertised, sold, and leased the Subject Vehicles, and otherwise conducted

extensive business, within this District. In addition, or in the alternative, venue is proper under 28 U.S.C. § 1407(a), which authorizes the Judicial Panel on Multidistrict Litigation to transfer consolidated multidistrict litigation "to any district."

## **INTRADISTRICT ASSIGNMENT**

1315.   This action is properly assigned to the Eastern District of Michigan Southern Division pursuant to Civ. L.R. 3-2 because a substantial part of the events or omissions giving rise to Plaintiffs' claims arose in the counties served by the Eastern District of Michigan. Several named Plaintiffs purchased and maintain their EcoDiesel Vehicles in the counties served by this Division. Moreover, FCA conducts substantial business in the counties served by this Division, has marketed, advertised, sold and leased the EcoDiesel Vehicles in those counties, and has caused harm to Plaintiffs residing in those counties. Furthermore, there is a similarly filed Complaint which was filed with the United States District Court Northern District of California San Francisco Division identified as Case No. 3:17-md-02777 and currently before presiding Judge Edward M. Chen.

## **FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

## **I.    FIAT CHRYSLER SEEKS TO CAPITALIZE ON THE GROWING U.S. "CLEAN" DIESEL MARKET**

1316.   As part of a strategy to expand its North American presence, in 2009, Fiat began its acquisition of one of the "Big 3" U.S. automakers, Chrysler. In November of that year, CEO Marchionne unveiled an ambitious five-year plan to, among other things, roll out "more diesel variants" under the Jeep brand and to give Ram's "Light duty (1500)" pickup truck a

1330

1  "refresh/facelift."6

2      1317.   By 2014, Fiat had become Fiat Chrysler Automobiles, Chrysler had become FCA,

3  and VM Motori, a long-time supplier, was now part of the Fiat Chrysler sprawling family of

4  affiliated companies. In May of that year, Marchionne announced another five-year plan at FCA's

5  headquarters in Auburn Hills, Michigan, to increase Fiat Chrysler's competitiveness against global

6  auto giants, such as Toyota, Volkswagen, and General Motors, by increasing annual sales to seven

7  million vehicles by 2018, up from 4.4 million in 2013.7 Integral to the strategy was the expansion

8  of the "Jeep portfolio" and updates to the "bread-and-butter Ram 1500," including "diesel

9  engines."8

10      1318.       During this same time frame, emission standards in the United States were

11  ratcheting up. In contrast to other global automakers, like Toyota and Ford, which were focusing

12  on developing hybrid and electric cars, Chrysler—now FCA and under the control of Fiat—took

13  another path: "[r]eflecting its ties with Europe-based Fiat, Chrysler appears to be taking yet another

14  route that focuses less on electrification and more heavily on light-duty diesels and compressed

15  natural gas."9

16      1319.   Indeed, as early as July 2010, Chrysler commissioned and presented research to

17  "[i]dentify the trade-offs that consumers make relative to powertrain technologies"—including

18  diesel—and "[i]dentify possible conquest opportunities associated with offering a RAM light- duty

---

6 Todd Lassa, *Fiatopolooza! Chyrsler's Five-Year Plan*, MotorTrend (Nov. 6, 2009), http://www.motortrend.com/ news/Chrysler-five-year-plan/.

7 Jerry Hirsch and David Undercoffler, *Fiat Chrysler Unveils Aggressive Five-Year Plan*, Los Angeles Times (May 6, 2014), http://www.latimes.com/business/la-fi-chrysler-revamp- 20140507-story.html.

8 Christian Seabaugh, *Ram and Ferrari's Place in Fiat Chrysler's Five-Year Plan*, MotorTrend (May 6, 2014), http://www.motortrend.com/news/ram-and-ferraris-place-in-fiat chryslers-five- year-plan/.

9 Drew Winter, *Chrysler Eyes Different Path to Meeting New CAFE Standards*, WardsAuto (Aug. 29, 2012), http://wardsauto.com/technology/chrysler-eyes-different-path-meeting-new-cafe-standards.

1    Diesel engine." FCA-MDL-001184465-524. Among other things, the study "recommend[ed] ...

2    [c]apitalizing on improved fuel economy to increase interest in a Light Duty Diesel engine among

3    L[ight] D[uty] owners." Id.

4    1320.   In December 2010, Chrysler requested a meeting with Bosch and Fiat to discuss

5    "Chrysler's main motivation" of "captur[ing] the developing N[orth] A[merican] diesel market."

6    RBL-MDL2777-PE-300169862-64. Bosch's notes of the meeting indicate that the projected

7    profitability status" for SUVs (and other vehicle segments) was "medium to high (+$300 to

8    14+$800 margin per diesel vehicle)." Id. An additional meeting was planned for December 8, 2010

9    with "Chrysler, VM, [and] Bosch" to "discuss further," and a "Chrysler NA diesel decision

10   meeting with Marchionne" was "scheduled for" December 11, 2010. Id.

11   1321.   In 2012, Marchionne was quoted as saying, "with 2016 'just around the corner' and

12   2025 not far away given the auto industry's long product-development lead times, 'there are big

13   choices to be made[.]'"10 Marchionne explained that "Chrysler, which is starting to share

14   platforms and powertrains with Fiat, wants to leverage the European auto maker's strengths in

15   diesels and CNG-powered vehicles."11 As one commentator put it at the time, "[f]uel-efficient

16   towing remains a strong point of diesels, and Marchionne says he still is optimistic about the

17   potential of light-duty diesels in the U.S. despite significant emissions challenges."12

18

19   1322.   This is further reflected in a March 2013 Chrysler research document entitled

20   "Alternative Powertrain" in which the company sought to better understand the "needs, wants,

21   expectations and functional requirements relative to . . . alternative powertrain technologies such

---

[10] Id.
[11] Id. (emphasis added).
[12] Id.

as hybrids, electric, diesel, and compressed natural gas." FCA-MDL-001239766-774. The research concluded that "consumers want their next vehicle to do everything their current vehicle does, with better fuel economy and no sacrifice in usability," and further noted that "[l]arge segments (Pickups) with a need to tow and haul show most interest in Alternative fuels/technology for internal combustion engines." Id. at 9.

1323.   FCA ultimately decided to push into this market beyond its existing heavy-duty diesel trucks (which use engines from a different supplier, Cummins) and, in 2014, it introduced both the light-duty Ram 1500 "EcoDiesel®" and the Jeep Grand Cherokee "EcoDiesel®." These are the Subject Vehicles at issue here.

1324.   Fiat Chrysler was not alone. Seeing an opportunity for growth in the U.S. market, other major automakers rushed to develop and market "clean diesel" engines. Volkswagen, Mercedes-Benz, Ford, General Motors, and other manufacturers also began selling diesel cars and trucks as a more efficient (and thus environmentally-friendly) alternative to gasoline vehicles with no loss of power or performance: the advertised difference was that new emission control technology could make small diesel engines (long regarded by American consumers as fuel efficient but foul-smelling polluters) powerful and clean in addition to fuel-efficient. The marketing worked, and millions of diesel vehicles were sold and leased in the United States between 2007 and 2016.

1325.   The green bubble for diesel vehicles first popped on September 18, 2015, when the EPA issued a Notice of Violation of the CAA to Volkswagen and Audi for installing illegal "defeat devices" in 2009–2015 2.0-liter diesel vehicles. A defeat device, as defined by the EPA, is any apparatus or technology that unduly reduces the effectiveness of emission control systems under

normal driving conditions. The EPA found that the Volkswagen/Audi defeat device allowed the vehicles to pass emission testing while polluting far in excess of emission standards, revealing the new "clean diesel" technology to be illusory. CARB also announced that it had initiated an enforcement investigation of Volkswagen pertaining to the vehicles at issue in the Notice of Violation. On September 22, 2015, Volkswagen admitted that 11 million diesel cars worldwide were installed with the same defeat device software.13 Volkswagen wasn't alone as, soon after, government agencies began to reveal that other automakers sold dozens of models exceeding allowable emission levels under applicable standards. Nevertheless, the Defendants in this action continued with business as usual, concealing from regulators and consumers their Subject Vehicles' emissions-related behavior and performance.

## II.     DEFENDANTS' DIRTY "ECODIESEL®" SCHEME

1326.   Federal and state emission standards are in place to protect Americans from pollution and certain chemicals known to cause disease in humans. Automobile manufacturers must abide by applicable laws and adhere to EPA rules and regulations (and those of CARB in California and 14 other states that have adopted California's standards). The CAA requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emission standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA-issued COC, and every vehicle sold in the State of California must be covered by a CARB-issued EO.

---

[13] See Nathan Bomey, *Volkswagen Emission Scandal Widens: 11 Million Cars Affected*, USA Today (Sept. 22, 2015), http://www.usatoday.com/story/money/ cars/2015/09/22/volkswagen- emissions-scandal/72605874/.at a higher compression ratio than gasoline engines and because diesel fuel contains more energy than gasoline.

1327.   There is a very good reason that these laws and regulations exist and apply to vehicles with diesel engines: in 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic and about as dangerous as asbestos.

1328.   Diesel engines pose a unique challenge because they have an inherent trade-off between power, fuel efficiency, and emissions: the greater the power and fuel efficiency, the dirtier and more harmful the emissions. Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high temperatures and pressures, which causes the fuel/air mixture to combust. This causes a more powerful compression of the pistons, which can produce greater engine torque (that is, more power). Diesel engines are able to do this both because they operate at a higher compression ratio than gasoline engines and because fuel contains more energy than gasoline.

1329.   But this greater energy and fuel efficiency comes at a cost: diesel produces dirtier and more dangerous emissions. Diesel combustion produces NOx, a variety of nitrogen and oxygen chemical compounds that only form at high temperatures. NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone. Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people respiratory illnesses are at acute risk of health effects from these pollutants.

1330.   Given the risks, minimizing NOx is paramount. But removing these pollutants from untreated exhaust is difficult, and diesel automakers have reacted by trying to remove NOx

from the exhaust using catalysts. Modern turbodiesel engines use ceramic diesel filters to trap particulates before they are emitted. Many also use a technology called "selective catalytic reduction" ("SCR") to reduce NOx emissions. SCR systems inject a measured amount of urea solution into the exhaust stream, which breaks oxides of nitrogen down into to less noxious substances before they are emitted. SCR-equipped vehicles must carry an onboard tank of fluid for this purpose, and injection of the fluid is controlled by the same engine control module that manages the fuel-air mixture and other aspects of engine operation.

1331.    FCA's response to this challenge was the EcoDiesel® engine.  Emission reductions start in the cylinder with advanced fuel injection strategies. After the byproducts of combustion leave the engine, the EcoDiesel® technology treats these emissions using a diesel oxidation catalyst, diesel particulate filter, and SCR.

1332.    The Subject Vehicles use engine management computers to monitor sensors throughout the vehicle and operate nearly all of the vehicle's systems according to sophisticated programming that can sense and vary factors like steering, combustion, and emissions performance for different driving situations. To manage engine and emission controls, the Subject Vehicles use a Bosch EDC system. Bosch GmbH and Bosch LLC designed, tested, customized, manufactured, and sold these EDC systems, including software code, to Fiat Chrysler (along with other automakers including Volkswagen, Mercedes, and General Motors) for use in the Subject Vehicles.

1333.    The system used in the Subject Vehicles is Bosch's EDC Unit 17 (also called "EDC17"). A February 28, 2006, Bosch press release introduced the "New Bosch EDC17 engine management system" as the "brain of diesel injection" which "controls every parameter that is

1336

1   important for effective, low-emission combustion." The EDC17 offered "[e]ffective control of

2   combustion" and a "[c]oncept tailored for all vehicle classes and markets." In the press release,

3   Bosch touted the EDC17 as follows:

4   **EDC17: Ready for future demands**
5   Because the computing power and functional scope of the new EDC17 can be
6   adapted to match particular requirements, it can be used very flexibly in any vehicle
7   segment on all the world's markets. In addition to controlling the precise timing and
8   quantity of injection, exhaust gas recirculation, and manifold pressure regulation, it also
9   offers a large number of options such as the control of particulate filters or systems for
10  reducing nitrogen oxides. The Bosch EDC17 determines the injection parameters for each
11  cylinder, making specific adaptations if necessary. This improves the precision of injection
12  throughout the vehicle's entire service life. The system therefore makes an important
13  contribution to observing future exhaust gas emission limits.[14]

16  1334.  Bosch's EDC Unit 17 controls emissions by periodically reading sensor values,

17  evaluating a control function, and controlling actuators based on the control signal.[15] Sensor

18  readings include crankshaft position, air pressure, air temperature, air mass, fuel temperature, oil

19  temperature, coolant temperature, vehicle speed, exhaust oxygen content, as well as driver inputs

20  such as accelerator pedal position, brake pedal position, cruise control setting, and selected gear.

21  Based on sensor input, EDC17 controls and influences the fuel combustion process including, in

22  particular, fuel injection timing, which affects engine power, fuel consumption, and the

23  composition of the exhaust gas.[16]

24  1335.  In 2010 or 2011, VM Motori announced a new diesel engine: a V6, 3.0-liter

25  displacement engine intended for inclusion in SUVs, trucks, and large sedans. This engine had

26  been under development for use in a General Motors automobile for the European market.[17]

---

[14] *See* Bosch press release, *The brain of diesel injection: New Bosch EDC17 engine management system* (Feb. 28, 2006), http://www.bosch-resse.de/presseforum/details.htm?txtID=2603&locale =en.
[15] Moritz Contag, Guo Li, Andre Pawlowski, Felix Domke, Kirill Levchenko, Thorsten Holz, and Stefan Savage, *How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles* (2017), https://cseweb.ucsd.edu/~klevchen/diesel-sp17.pdf.
[16] *Id.*
[17] Chad Westfall, *An Inside Look At The Ram 1500 3.0L EcoDiesel*, Engine Labs (Jan. 11, 2015), http://www.engine

1337

However, Fiat acquired 50% of VM Italy in 2011, and began working with VM Motori to develop the engine for use in FCA vehicles to be sold in the United States.

1336.   As Ram Trucks' Chief Engineer said at the time, "We were fortunate at this point in time that our partners at Fiat owned half of VM Motori, who makes this diesel engine .... We combined resources and developed them together."[18]

1337.   According to its website, VM Motori is deeply involved in the development and testing of all aspects of the engine: "We take care of the engines and their applications, working together with the Customers to the least detail to ensure a perfect matching between the engine and the machine, supporting our partners from A to Z, from engine- to-machine coupling up to the production."[19]

1338.   In fact, VM Motori boasts of its involvement in: "Calibration development to meet specific vehicle/end user requirements, Exhaust after-treatment system development, [and] Environmental trips (hot/cold climate, high altitude, etc.)."[20] VM Motori also notes that its facilities include: "Rolling dyno for vehicle emission measurement [and] 17 engine test benches for emission/performance development."[21]

1339.   The engine originally was developed for use in Europe, where standards for emission of oxides of nitrogen from diesel vehicles are less stringent than in the United States. Rather than make the engine compliant with U.S. emissions standards, FCA opted to cheat on the emission test.

---

labs.com/engine-tech/an-inside-look-at-the-ram-1500-3-0l-ecodiesel/.
[18] *Id*.
[19] *Research and Development*, VM Motori, http://www.vmmotori.com/r-s/vm-motori/r-s-2.htm.
[20] *Id*.
[21] *Id*.

1340.   In January of 2013, Bosch LLC announced that its "clean diesel" technology, including the EDC Unit 17, would be featured in the new 2014 Jeep Grand Cherokee 3.0-Liter EcoDiesel®.[22] As part of that announcement, Bosch LLC stated: "The 2014 Jeep Grand Cherokee features a Bosch emission system compliant with the most stringent emission regulations in the world. From fuel tank to tailpipe, Bosch is pleased to equip this vehicle with top technologies to give consumers a great driving experience requiring fewer stops at the pump."[23] Bosch LLC also announced that the "clean diesel" system for the Jeep Grand Cherokee would be assembled at Bosch's facility in Kentwood, Michigan.

1341.   In reality, Fiat Chrysler—working with VM Italy and VM America on the design of the EcoDiesel®'s engines and Bosch GmbH and Bosch LLC on the design of the EDC Unit 17—was either unable or unwilling to devise a solution within the constraints of the law. And so, like their rivals at Volkswagen, they devised one outside of it. Instead of cutting their losses on "EcoDiesel," delaying the production of the Subject Vehicles, or coming clean, Fiat Chrysler worked closely with VM Italy and VM America and Bosch GmbH and Bosch LLC to customize the EDC Unit 17 to allow Subject Vehicles to simulate "passing" the EPA and CARB testing. Unlike during testing, the software disables or restricts certain of the emission controls during real-world driving conditions. When the emission controls are de-activated on the road, the Subject Vehicles emit up to 20 times the legal limits of NOx.

1342.   These software controls designed and implemented by Bosch GmbH and Bosch LLC were concealed from regulators on COC and EO applications for the Subject Vehicles, thus deceiving the EPA and CARB into approving the Subject Vehicles for sale throughout the United

---

[22] *Bosch Announces Clean Diesel Technology On 2014 Jeep Grand Cherokee, supra note 5.*
[23] *Id.*

1   States, including California. Of course, consumers, who have no way of discerning that the

2   emission control technology de-activated during real-world driving conditions, were likewise

3   deceived.

4   1343.   Specifically, Bosch GmbH and Bosch LLC worked hand-in-glove with Fiat

5   Chrysler and VM Motori to develop and implement a specific set of software algorithms for

6   implementation in the Subject Vehicles, which enabled FCA to adjust fuel levels, exhaust gas

7   recirculation, air pressure levels, and even urea injection rates.[24]

8   1344.   A study recently published by researchers at the University of California, San

9   Diego, and Ruhr-Universität Bochum in Germany revealed technical documents showing that

10  Bosch code was used in a so-called defeat device for a Fiat vehicle. The study described the

11  software as setting one mode for when a vehicle is being tested for emissions, but then allowing

12  tailpipe pollution to spike in real-world driving conditions.[25] The study described Bosch's role in

13  building the electronic control unit ("ECU") hardware and developing the software running on the

14  ECU and found there was "no evidence that automobile manufacturers write any of the code

15  running on the ECU."[26] To the contrary: "All code we analyzed in this work was documented in

16  documents copyrighted by Bosch and identified automakers as the intended customers."[27] The

17  study concluded: "We find strong evidence that both defeat devices were created by Bosch and

18  then enabled by Volkswagen and Fiat for their respective vehicles."

---

[24] See generally *Engine management*, Bosch Auto Parts, http://de.bosch- automotive.com/en/parts_and_accessories /motor_and_sytems/diesel/engine_management_2/engi ne_control_unit_1/ (describing capabilities of Bosch EDC units).
[25] See Ryan Been, *Study of VW's Cheating on Diesels Examines Role of Bosch Code*, Bloomberg Technology (June 9, 2017), https://www.bloomberg.com/news/articles/2017-06-09/study-of-vw-s-cheating-on-diesels-examines-role-of-bosch-code.
[26] Moritz Contag, *et al.*, *How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles*, *supra* note 15.
[27] *Id.*

1345.   For context, when carmakers test their vehicles against EPA emission standards, they place their cars on dynamometers (essentially large treadmills or "rollers") and then perform a series of specific maneuvers prescribed by federal regulations to simulate driving and test emissions in a controlled environment. Bosch's EDC Unit 17 gave Fiat Chrysler the ability to detect test scenarios by monitoring vehicle speed, acceleration, engine operation, air pressure, and even the position of the steering wheel. For example, given that the steering wheel cannot be turned on a dynamometer, Bosch programmed a sensor which detected whether or not the steering wheel turned. When the EDC Unit 17's detection algorithm detected an emission test was complete, the EDC Unit 17 could de-activate or reduce the emission control systems' performance, causing the Subject Vehicle to spew illegal amounts of NOx emissions when out on the road.

1346.   This workaround was illegal. The CAA expressly prohibits defeat devices, defined as any auxiliary emission control device "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. § 86.1803-01; *see also id.* § 86.1809-10 ("No new light-duty vehicle, light-duty truck, medium-duty passenger vehicle, or complete heavy-duty vehicle shall be equipped with a defeat device."). Moreover, the CAA prohibits the sale of components used as defeat devices, "where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." 42 U.S.C. § 7522(a)(3). Finally, in order to obtain a COC, automakers must submit an application, which lists all auxiliary emission control devices installed in the vehicle, a justification for each, and an explanation of why the control device is not a defeat device.

1347.   As the EPA has now alleged against Fiat, FCA, VM Italy, and VM America, Defendants did not disclose, and affirmatively concealed, the presence of performance-altering

1341

1  software code developed with Bosch GmbH and Bosch LLC from government regulators.  In other
2  words, FCA lied to the government, its customers, its dealers, and the public at large.

3    1348.   Because FCA lied on the COC and EO applications, these COCs and EOs were
4  fraudulently obtained. And because the Subject Vehicles did not conform "in all material respects"
5  to the specifications provided in the COC and EO applications, the Subject Vehicles were never
6  covered by a valid COC or EO, and thus were *never* legal for sale—nor were they EPA and/or
7  CARB compliant, as represented. With the complicity of Bosch and VM Motori, Fiat Chrysler hid
8  these facts from the EPA, CARB, and other regulators, from FCA dealers and consumers, and FCA
9  continued to sell and lease the Subject Vehicles to the driving public, despite their illegality.

10    1349.   Fiat Chrysler's illegal workaround was enabled by a close partnership with Bosch,
11  which enjoyed a sizable portion of its annual revenue from manufacturing parts used in the Subject
12  Vehicles and other "clean" diesel vehicles.[28] Bosch GmbH and Bosch LLC were aware that Fiat
13  Chrysler used its emission control technology as a concealed auxiliary (or defeat) device and is
14  specifically tailored to allow the Subject Vehicles to evade detection.

15    1350.   Bosch GmbH and Bosch LLC worked closely with Fiat Chrysler and VM Motori
16  to create specifications and software code for each Subject Vehicle model. Indeed, customizing a
17  road-ready ECU is an intensive three-to five-year endeavor involving a full-time Bosch presence
18  at an automaker's facility. VM Italy and VM America likewise worked closely with Bosch GmbH,
19  Bosch LLC, and Fiat Chrysler in designing, installing, and calibrating the engines for the Subject
20  Vehicles.

---

[28] Approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch. *See Bosch probes whether its staff helped VW's emissions rigging*, Automotive News (Jan.27, 2016), http://www.autonews.com/article/20160127/COPY01/ 301279955/bosch-probes-whether-its-staff- helped-vws-emissions-rigging.

1351.   All Bosch EDCs, including the EDC17, run on complex, highly proprietary engine management software over which Bosch exerts near-total control. In fact, the software is typically locked to prevent customers, like Fiat Chrysler, from making significant changes on their own. Accordingly, both the design and implementation are interactive processes, requiring Bosch's close collaboration with the automaker from beginning to end.

1352.   Bosch GmbH and Bosch LLC's security measures further confirm that its customers cannot make significant changes to Bosch software without their involvement.  Bosch boasts that its security modules protect vehicle systems against unauthorized access in every operating phase, meaning that no alteration could have been made without either a breach of that security—and no such claims have been advanced—or Bosch's knowing participation.[29]

1353.   Unsurprisingly, then, at least one car company engineer has confirmed that Bosch maintains absolute control over its software as part of its regular business practices:[30]

> *I've had many arguments with Bosch, and they certainly own the dataset software and let their customers tune the curves. Before each dataset is released it goes back to Bosch for its own validation.*
>
> *Bosch is involved in all the development we ever do. They insist on being present at all our physical tests and they log all their own data, so someone somewhere at Bosch will have known what was going on.*
>
> *All software routines have to go through the software verification of Bosch, and they have hundreds of milestones of verification, that's the structure . . . .*
>
> *The car company is never entitled by Bosch to do something on their own.*

1354.   Defendants' work on the EDC17 reflected a highly unusual degree of coordination among them. As they did with Volkswagen, the units required the work of numerous Bosch coders

---

[29] *Reliable Protection for ECUs*, ESCRYPT (May 12, 2016), https://www.escrypt.com/en/news-events/protection-for-ecus.

[30] Michael Taylor, *EPA Investigating Bosch over VW Diesel Cheater Software*, Car and Driver (Nov. 23, 2015), http://blog.caranddriver.com/epa-investigating-bosch-over-vw-diesel-cheater- software/.

1  for a period of more than ten years.[31] Although Bosch publicly introduced the EDC17 in 2006, it

2  had started to develop the engine management system years before.[32]

3      1355.   Bosch was concerned about getting caught in the scheme to enable diesel emissions

4  cheating. As reported in the German newspaper, *Bild am Sonntag*, and a French publication, a

5  Volkswagen internal inquiry found that in 2007, Bosch warned Volkswagen by letter that using

6  the emission-altering software in production vehicles would constitute an "offense."[33] Yet, Bosch

7  concealed the software, and its emission control functions, in various "clean" diesel vehicles,

8  including the Subject Vehicles, from U.S. regulators and consumers.

9      1356.   Bosch LLC worked closely with Bosch GmbH and diesel automakers, both in the

10  United States and in Germany, to ensure that the "clean" diesels, like the Subject Vehicles, passed

11  emission testing. Bosch LLC employees frequently communicated with regulators in the United

12  States and actively worked to ensure that diesel vehicles were approved for sale in the United

13  States. For example, we now know that employees of Bosch LLC and Bosch GmbH provided

14  specific information to regulators in the United States about how Volkswagen's vehicles

15  functioned and unambiguously stated that the vehicles met emission standards. Bosch LLC

16  regularly communicated to its colleagues and clients in Germany about ways to deflect and diffuse

17  questions from regulators in the United States about those vehicles. On information and belief,

18  Bosch LLC also assisted in concealing the true nature of the emission control technology from

19  regulators in the United States with respect to the Subject Vehicles at issue here.

20      1357.   Bosch not only kept this "dirty" secret safe, it went a step further and actively

---

[31] Again, approximately 50,000 of Bosch's 375,000 employees worked in the diesel technology operations branch of Bosch. See *Bosch Probes Whether Its Staff Helped VW's EmissionsRigging*, *supra* note 28.
[32] See *The brain of diesel injection: New Bosch EDC17 engine management system*, *supra* note 14.
[33] *Bosch warned VW about illegal software use in diesel cars, report says*, Automotive News (Sept. 27, 2015), http://www.autonews.com/article/20150927/COPY01/309279989/bosch-warned-vw about-illegal-software-use-in-diesel-cars-report-says; *see also VW Scandal: Company Warned over Test Cheating Years Ago*, BBC (Sept 27, 2015), http://www.bbc.com/news/business-34373637.

lobbied lawmakers to push "clean diesel" in the United States. As early as 2004, Bosch announced a push to convince U.S. automakers that its diesel technology could meet tougher 2007 emission standards in the United States.[34] Bosch engaged in a multi-year, multi-million-dollar effort involving key players from Bosch in both Germany and the United States. In its efforts to promote "clean diesel" technology in the United States, Bosch GmbH acted on behalf of its global group of affiliated companies, including Bosch LLC.

1358.   Bosch's promotion of diesel technology specifically targeted the United States. For example, Bosch put on "California Diesel Days"[35] and "SAE World Congress in Detroit."[36] In 2008, Bosch LLC co-sponsored the "Future Motion Made in Germany-Second Symposium on Modern Drive Technologies" at the German Embassy in Washington, D.C., with the aim of providing a venue for "stakeholders to gain insight into the latest technology trends, and to engage in a vital dialogue with industry leaders and policymakers."[37]

1359.   Bosch LLC hosted multi-day conferences open to regulators and legislators and held private meetings with regulators, in which it proclaimed extensive knowledge of the "clean" diesel technology, including the calibrations necessary for the vehicles to comply with emission regulations.

1360.   In April 2009, for example, Bosch organized and hosted a two-day "California Diesel Days" event in Sacramento, California. Bosch invited a roster of lawmakers, journalists, executives, regulators and non-governmental organizations with the aim of changing perceptions

---

[34] Edmund Chew, *Bosch boosts US diesel lobbying*, Automotive News (Mar. 8, 2004), http://www.autonews.com/article/20040308/SUB/403080876/bosch-boosts-us-diesel-lobbying.

[35] *Bosch drives clean diesel in California*, Bosch, http://www.bosch.us/content/language1/ html/734 _4066.htm?section= 28799C0E86C147799E02226E942307F2.

[36] *See, e.g.*, *Bosch Brings Innovation, Green Technology to SAE 2009 World Congress*, Bosch, http://www.bosch.us/content/language1/html/734_7432.htm?section=CDAF31A 468D9483198ED8577060384B3.

[37] *Bosch: Clean Diesel is Key Part of Future Technology Mix*, Bosch, http://us.bosch-press.com/tbwebdb/bosch-usa/en-US/PressText.cfm?CFID=59743263&CFTOKEN=b0c61c28412924c-BCBB064E-FD22-FC33-50650318 A8803D2B&nh=00&Search=0&id=364.

1  of diesel from "dirty" to "clean." [38] The event featured "clean diesel" vehicles as ambassadors of

2  "clean diesel" technology. The stated goals were to "build support for light-duty diesel as a viable

3  solution for achieving California's petroleum and emission reduction objectives." (*Id.*)

4      1361.  Bosch also joined in events promoting the Subject Vehicles. At one such event

5  hosted by Ram, Jeep and Bosch in Traverse City, Michigan, Bosch made a number of statements

6  regarding the 3.0-liter EcoDiesel V6's performance. It stated that the "Bosch emissions control

7  system helps ensure that virtually no particulates and minimal oxides of nitrogen (NOx) exit the

8  tailpipe" and that a Jeep Grand Cherokee or Ram 1500 diesel's engine provides a fuel economy

9  that is "30% better than a comparable gasoline engine."[39]

10      1362.  In 2009, Bosch also became a founding member of the U.S. Coalition for Advanced

11  Diesel Cars.[40] One of this "advocacy" group's purposes included "promoting the energy efficiency

12  and environmental benefits of advanced clean diesel technology for passenger vehicles in the U.S.

13  marketplace."[41] This group lobbies Congress, U.S. regulators, and CARB in connection with rules

14  affecting "clean diesel" technology.[42]

15               **III.     FCA'S MISLEADING MARKETING**

16            **A.    Fiat Chrysler Identifies and Combats the "Dirty Diesel" Stigma**

17
18      1363.  As described above, Fiat Chrysler, VM Motori, and Bosch began investigating

---

[38] *Bosch drives clean diesel in California*, *supra* note 35; *see also California Diesel Days*, The U.S. Coalition for Advanced Diesel Cars, http://www.californiadieseldays.com/.

[39] Dale Jewett, *EcoDiesel: An Essential Tool for Every Outdoorsman*, Objects in the Mirror…(blog operated by FCA Digital Media) (May 22, 2015), https://blog.fcanorthamerica.com/2015/05/22/ ecodiesel-an-essential-tool-for-every-outdoorsman/.

[40] Chrissie Thompson, *New Coalition Aims To Promote Diesel Cars*, Automotive News (Feb. 2, 2009), http://www.autonews.com/article/20090202/OEM06/302029728/new-coalition-aims-to promote-diesel-cars.

[41] *About the Coalition*, The U.S. Coalition for Advanced Diesel Cars (May 22, 2015), http://clean dieseldelivers.com/about/.

[42] *Id.*; *see also, e.g.*, Letter to Mary T. Nichols & the California Air Resources Board concerning a statement made about diesel technology (Jan. 8, 2016), http://cleandieseldelivers.com/ media/Mary-Nichols-Letter-01082016.pdf.

1   strategies to develop and market diesel vehicles in the North American market in at least July 2010.

2   FCA-MDL-001184465. As early as February 2012, Chrysler had already commissioned and

3   presented research to understand how to market the diesel vehicles to consumers. FCA-DL-

4   001182796-821.

5       1364.   This research confirmed that the Defendants had a significant obstacle to overcome:

6   consumers associated diesel engines with old technology and, more importantly, with "negative

7   images of smog and dirt." *Id.*

8       1365.   This "dirty diesel" stigma was considerable. During Fiat Chrysler's 2012 focus

9   group addressing "diesel perceptions," one consumer noted "[I] can't stand diesel;" another felt

10   "[diesel] has an image problem;" another explained that "when somebody says diesel, I just think

11   of that black smoke;" to another, diesel evoked image of "smoke, exhaust;" another associated

12   diesel with "old images of a truck letting off all of these emissions;" and, summing it up, one focus

13   group participant noted "you just think dirty when you think diesel." FCA-MDL- 001422127.

14       1366.   Unsurprisingly, then, Fiat Chrysler worked hard to rebut the dirty diesel stigma in

15   communications directly with consumers and in training materials for dealers (to help the dealers

16   persuade consumers to purchase the Subject Vehicles). In a Jeep EcoDiesel "Product Brief," for

17   example, Fiat Chrysler noted "[b]uyers can be resistant to consider a diesel purchase due to several

18   perceptions that are no longer true" including that "diesels are filthy . . . [and] too loud and smelly."

19   FCA-MDL-000517246-53. The brief combats these perceptions by stating that "diesel engines are

20   surprisingly responsible in view of ecological concerns." *Id.* It also includes "key messages" for

21   prospective consumers including: "Diesel engines offer clean operation with typically 25% less

22   emissions than a gasoline engine." *Id.* It also notes that the "3.0L EcoDiesel V6 uses Selective

23   Catalyst Reduction (SCR) with DEF to help minimize exhaust emissions" and uses "NOx modules

and sensors . . . to help control tailpipe emissions." *Id.*

1367.   Similarly, a Ram 1500 "Targeted In-Dealership Training" guide notes that the two "most common misconceptions about diesel engines" are that "Diesels are noisy" and "Diesels are dirty." FCA-MDL-000517194-203. As to the latter, the guide instructs dealers that the "Diesel Exhaust Fluid (DEF) and Selective Catalyst Reduction lower the exhaust emissions of diesel engines." *Id.* It later explains that DEF "reduce[s] nitrous oxides coming out of the tailpipe" and "helps to create ***non-harmful*** emissions." *Id.* (emphasis in original). The guide then states that "[o]ur EcoDiesel runs extremely clean for a truck powerplant." *Id*.

1368.   In a "news" document, again presumably targeting Ram and Jeep dealers, Fiat Chrysler explained that "[w]hen pitching the EcoDiesel, it may help you to keep in mind a few advantages to driving a diesel engine." FCA-MDL-000518525. One advantage was that "Diesels Are Getting Greener." *Id.* The document then explained that "[i]n the past, diesels were seen as polluters – a hindrance to environmentally conscious customers. Today's diesels, however, run cleaner than they ever have before. For its part, the ecologically responsible EcoDiesel V6 is the cleanest light-duty engine available." *Id.*

## B.   The EcoDiesel Name and Badge Communicate Environmental Friendliness and Fuel Efficiency

1369.   Fiat Chrysler also understood that a key component of overcoming the diesel stigma, and of marketing the Subject Vehicles' purported environmental friendliness and fuel economy, was the naming and labeling of the diesel technology. As noted above, Fiat Chrysler conducted research in February 2012 to address this very issue. FCA-MDL-001182796-821. That research concluded that the "[b]est names [for Fiat Chrysler's diesel engine] highlight 'green' theme." *Id.* It further concluded that "***[f]uel efficiency and environmental friendliness are important; names connected with these will be most well-received***." *Id.* (emphasis added). An

1348

1   excerpt from the research presentation is shown below:

2



3

4   1370.   The highest-ranked name, in terms of both appeal and preference, was "Eco-Diesel."

5   The research explained that "'Eco' encompasses green, efficient, and economic . . . and is strongly

6   associated with being environmentally friendly." Similarly, the research concluded that the EcoDiesel

7   "[n]ame [i]mplies a variety of positive meanings – green, efficient, economic, etc." Unsurprisingly, the

8   "imagery" most associated with the name "EcoDiesel" was "Environmentally-Friendly" and "Fuel

9   Efficient." *Id.*

10   1371.   Although other potential names (*e.g.*, "Clean Diesel" and "Enviro Diesel") had

11   slightly higher associations with environmental friendliness, "EcoDiesel" communicated the combination

12   of "green" credentials and fuel economy the best. Fiat Chrysler had found its winner.

1349

1    1372.   Fiat Chrysler adopted and trademarked the "EcoDiesel" name and used it in virtually

2    every advertisement for the Subject Vehicles. It also branded every single Subject Vehicle with an

3    EcoDiesel badge. The two versions of the badge, used on Jeep Grand Cherokees and Ram 1500s,

4    respectively, are shown below:





12    1373.   This badging was *extremely important* to Fiat Chrysler. Jim Morrison, then the head

13    of Jeep Brand Product marketing, gave a presentation some 20-30 times in which he explained that

14    "consumers are immediately receptive to the EcoDiesel badging/logo" and "suggest that 'Eco-

15    diesel badging can initially change the impression of diesel vehicles."  FCA- MDL-001166458-

16    533; Morrison Dep. Tr. 131:5-6. As the notes below the slide confirm, "[c]onsumers further believe

17    that **the word 'Eco- Diesel'** *can change the perception of a diesel engine to something denoting*

18    *ecologically conscious and economical to own and operate*." *Id.* (emphasis added). The full slide

19    with notes is shown as follows:

20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18

Also resonating is the EcoDiesel name and badge.

19
20

Consumer research shows that it creates a different attention for diesels by suggesting that it's new and different … a significant departure from the diesel engines they or their parents grew up with.

21
22

Consumers are receptive to the EcoDiesel logo. It looks modern and hints at the technological innovation inherent in this engine.

23
24

Consumers further believe that the word "Eco-Diesel" can change the perception of a diesel engine to something denoting ecologically conscious and economical to own and operate.

25
26
27

The research further indicates that the EcoDiesel name provides us with the opportunity to redefine the diesel market by establishing ourselves as a diesel leader.

28

1374.   Mr. Morrison also confirmed the meaning and importance of the EcoDiesel name and badge in a sworn declaration he submitted in connection with a trademark dispute. There, he declared that "Chrysler decided to combine the terms 'Eco,' 'Diesel,' and '3.0L' ... to refer to the engine because the engine is an economical, fuel-efficient, more environmentally friendly 3.0 liter diesel engine." *Unitek Solvent Services, Inc. v. Chrysler Group*, LLC, No. 1:12-cv-00794, Dkt. 86-35 at ¶ 8 (June 4, 2013). He further explained that "Chrysler [also] based its decision to use the descriptive terms 'eco' and 'ecodiesel' on the fact that numerous third parties in a variety of industries use the term 'eco' to describe ecologically or environmentally friendly products or services that have been developed to reduce carbon emission, energy consumption, or otherwise preserver the environment." *Id.* at ¶ 10.

1375.   Many additional documents confirm that Fiat Chrysler intended the name "EcoDiesel" and the EcoDiesel badge to convey both environmental friendliness and fuel economy. A September 2013 press release, for example, included a heading entitled "**Putting the 'Eco' in EcoDiesel**" under which it claimed that "[t]he new EcoDiesel V6 achieves 50-state emissions compliance for both tier II and BIN 5." FCA-MDL-000519022-24 (emphasis in original). In other words, the "Eco" in EcoDiesel means not just environmental friendliness, generally, but also emissions compliance, specifically.

1376.   A later Ram press release entitled "Ram has 'turned up the ECO' on full-size truck MPGs . . . to 29" further demonstrates that the "Eco" in EcoDiesel also refers to fuel economy. FCA-MDL-001344885-86; FCA-MDL-001401873.

1377.   Again, the EcoDiesel badge was placed prominently on every single Subject Vehicle, and the word "EcoDiesel" was used in virtually every consumer-facing communication.

That word and badge represented to consumers that the Subject Vehicles were environmentally friendly and fuel efficient. Both representations, it turns out, were based on a lie: the Subject Vehicles were not, in fact, environmentally friendly, and could achieve their fuel economy only through concealed emissions apparatuses that caused the vehicles to pollute excessively in real-world driving conditions.

### C.   FCA Misrepresents the Subject Vehicles to Consumers in a Consistent and Pervasive Marketing Campaign

1378.   Fiat Chrysler's misleading representations about the Subject Vehicles, including their purported "green" credentials, superior fuel economy, and other performance characteristics were not limited to EcoDiesel badge. Indeed, FCA engaged in a full court press to market the Subject Vehicles, and to communicate to consumers the purported benefits of the EcoDiesel engine. These communication efforts included, among other things: (1) press releases aimed at generating positive news articles about the EcoDiesel attributes; (2) comprehensive dealer training materials that taught dealers how to sell the Subject Vehicles with false and misleading misrepresentations; (3) vehicle brochures disseminated at dealerships and elsewhere; (4) information and interactive features on FCA's websites and blogs; and (5) print and television marketing.

### 1.   Press Releases and Media Communications

1379.   As early as 2013, FCA began issuing press releases that were sent directly to consumers and were also intended to generate consumer-facing articles and reviews about the EcoDiesel engine. There are many such examples. A representative sampling includes:

a.   A January 2013 press release announcing a "new, clean, 3.0-

1353

liter EcoDiesel V-6 engine" in the Jeep Grand Cherokee. The release touts the "30 mpg highway with driving range of more than 730 miles," and the "class- leading 240 horsepower and massive 420lb.-ft of torque." Notably, it also states that the "Selective Catalytic Reduction (SCR) help[s] the new engine" be "clean" and "50-state legal."  FCA-MDL-001134988-90.

b.    An October 2013 press release notifying the media that the "[n]ew 2014 Jeep Grand Cherokee EcoDiesel wins 'Green' category" of the 2014 Active Lifestyle Vehicle Awards. The release claims the Jeep EcoDiesel includes "clean-diesel technology" and delivers "best-in-class fuel economy and driving range." FCA-MDL-000519206-07.

c.    A February 2014 press release proclaiming that the "2014 Ram 1500 EcoDiesel sets new fuel-economy benchmark of 28 MPG." The release repeatedly touts the EcoDiesel's fuel economy and claims that its SCR and EGR systems—both of which were compromised by the AECDs described herein—"contribute to 50-state compliance with Tier2/Bin 5 emissions regulations." FCA-MDL-001142520-21.

d.    A November 2014 press release announcing that the "Ram 1500 EcoDiesel [was] named 2015 Green Truck of the Year by Green Car Journal." The release states that the "Ram 1500 delivers an outstanding combination of best-in-class fuel efficiency, unsurpassed torque and a surplus of towing capacity." It also quotes the editor of Green Car Journal who noted that "[t]he Ram 1500 EcoDiesel exemplifies what a 'green' truck should be." FCA-MDL-000519290-01.

e.    A January 2015 press release announcing that the "Jeep Grand Cherokee EcoDiesel [was] named 2015 Green SUV of the Year by Green Car Journal." The release again boasts the EcoDiesel's "best-in-class" fuel economy, "untouched" range, "class-leading" horsepower, "massive" torque, and its "clean-diesel technology."  FCA-MDL-001377187-88

f.    A November 2016 press release boasting "best-in-class fuel economy and longest range with exclusive EcoDiesel – 29 mpg and 754 miles with Ram 1500." FCA-MDL-001185732-34.

1380.    Notably, Marchionne himself was asked to approve, and did approve, a draft press release from February 2013 announcing that "Ram [was the] first to build light-duty diesel pickup." The release promoted an "outstanding combination of best-in-class fuel efficiency, best-in-class torque and impressive capability." It also stated that the "EcoDiesel . . . emissions are 60 percent less than those produced by diesel powertrains 25 years ago."  FCA-MDL-001367858-59.

1381.    In some instances, these press releases were sent directly to consumers in "hand raiser" communications, as evidenced by a 2014 email to a prospective customer. That email "thanks [the prospective customer] for asking about the 2014 Ram 1500 EcoDiesel,"—which it

1354

says is "capable, efficient, and easy on the environment"—and links to a Ram "press release for more information."  FCA-MDL-001180641.

1382.   Even when not sent directly to consumers, all the press releases—and the consistent representations about environmental friendliness, fuel economy, and performance contained in them—were intended to, and did in fact, result in significant buzz and media attention for the EcoDiesel vehicles, to which Plaintiffs were exposed. The representations that resulted were false (because the vehicles contained concealed components that compromised the emissions control systems in real-world driving conditions) and deceptive (because the vehicles could not perform as represented without the concealed emission control components).

## 2.   **Dealer Training Materials**

1383.   As noted above, FCA disseminated to its dealers comprehensive training materials to help them communicate the purported EcoDiesel attributes to consumers, and ultimately, to sell more Subject Vehicles. Those materials consistently emphasized the (supposed) environmental friendliness, fuel efficiency, and power of the EcoDiesel engine, among other attributes.

1384.  Ram, for example, held a "targeted in-dealership training" through its dealer-focused "Chrysler Academy" and disseminated an accompanying "participant reference guide." The document explains that the training is "focuse[d] on features of Ram 1500 and will help you sell down your 2014 model year vehicles while it also helps you prepare for the 2015s."  This training document includes an entire section on EcoDiesel, and as discussed above, it addresses the "common misconception" that "[d]iesels are dirty" and instructs that "Diesel Exhaust Fluid (DEF) and Selective Catalyst Reduction lower the exhaust emissions of diesel engines."  Then, answering the question "How clean is the 3.0L EcoDiesel V6?" the guide explains that "[o]ur

EcoDiesel runs extremely clean." It also states that the engine "[c]omplies with all diesel-related emissions standards," and notes that selling points of the diesel include its "Fuel efficiency," "Power (Torque)," and "Quality, Reliability and Durability (QRD)." Finally, the guide includes an "in the media section" highlighting positive reviews and articles.  FCA-MDL-000517194-245.

1385.   Jeep held a similar Chrysler Academy event for dealers and also disseminated an accompanying "product reference guide" with eight pages devoted exclusively to the EcoDiesel engine. FCA-MDL-000518573-620. As with the Ram guide, the Jeep guide addresses the dirty diesel stigma, and offers selling points to rebut it. The guide explains that the EcoDiesel engine exhibits "confident power, surprisingly clean operation" and claims that "it is going to convert a host of new customers to the impressive benefits of pulse-quickening acceleration and efficient and ecological clean diesel operation." It highlights the "clean operation and effective emissions control," specifically noting that the SCR and EGR systems combine to mitigate NOx and produce "clean diesel operation." Finally, as shown below, it includes a "Key messages" section emphasizing the importance of fuel efficiency, "clean operation," and "torque":

**DIRTY POLLUTER? – EXACTLY THE OPPOSITE - CLEANER AND MORE ECOLOGICAL THAN GASOLINE ENGINES**

Today's clean diesel technology is:
- 30% more fuel efficient than its gasoline counterpart
- Produces around 25% less carbon dioxide (CO2)
- Generates over 96% fewer emissions than the diesel engines of 1990s

**Key messages**

1. Today's diesel engines help conserve fossil fuel resources with a **30% reduction in fuel consumption** versus a gasoline engine

2. Diesel engines offer clean operation with typically **25% less emissions** than a gasoline engine

1386.   These themes are echoed almost verbatim in another, 13-page Chrysler Academy "Product Brief" focused exclusively on the EcoDiesel engine. FCA-MDL-001183753-65.   As shown below, that product brief includes almost identical "key messages for your prospects," and notes that the engine is "surprisingly responsible in view of ecological concerns."



Jeep 3.0L ECODIESEL V6 ENGINE PRODUCT BRIEF

## TODAY'S DIESEL TECHNOLOGY

Buyers can be resistant to consider a diesel purchase due to several perceptions that are no longer true with today's modern high-pressure, direct-injection diesel technology.

| OLD THOUGHT | NEW REALITY |
|---|---|
| DIESELS HAVE POOR PERFORMANCE | Actually, today's diesels with modern technology produce high torque for their displacement size compared to gasoline engines. A general industry rule of thumb is that a diesel engine of the same size will generate 50% more torque over its gasoline-powered counterpart. And, since torque is what gets the vehicle moving, diesel vehicles offer outstanding acceleration. Diesel torque output is often especially impressive for the 50-70 mph bursts that many drivers use to pass or enter freeways |

1387.   Yet another Chrysler Academy "Web Launch" training session explains that its purpose was "to help participants" better understand the vehicles and, critically, to "[u]understand elements for effective presentations to shoppers." It includes similar language about fuel economy, power, and environmental friendliness. It also explains that "for buyers who respect the environment, they should know this is a very clean diesel ... very green without question." FCA-MDL-001183766-901.

1388.   These are but a few examples that highlight the comprehensive training that FCA provided for its dealers. The objective of these trainings was to arm the dealers with selling points that they could relay to consumers—and they did just that. For the Subject Vehicles, the consistent

selling point was the no-compromise combination of fuel efficiency, environmental friendliness, and power. This selling point was false (because the vehicles contained concealed components that compromised the emissions control systems in real-world driving conditions) and deceptive (because the vehicles could not perform as represented without the concealed emission control components).

### 3.   <u>Vehicle Brochures</u>

1389.   FCA also communicated directly with consumers through its vehicle brochures, available both online and at the dealerships. These brochures are chock full of representations about the EcoDiesel engine's purported fuel economy, environmental friendliness, and power.

1390.   The brochure for the 2014 Jeep Grand Cherokee, for example, devotes an entire page to the EcoDiesel engine. That page depicts the EcoDiesel badge and also an image of the engine with a green leaf on top. It states that the engine achieves "best-in class: 30 MPG fuel economy[,] 730-mile driving range[,] 420 lb-ft of torque[, and] 7400-lb maximum towing."  The document further claims that "its reduced CO2 emissions display reverence for the environment" and even goes so far as to state that "*[p]roudly, the EcoDiesel meets and even exceeds the low emissions requirements in all 50 states.*" (Emphasis added.) Excerpts from the two-page brochure spread are shown below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17

Thirty miles per gallon? True story. Grand Cherokee's new, available 3.0L EcoDiesel V6 engine delivers best-in-class economies® that treat your fuel budget with respect, while its reduced $CO_2$ emissions display reverence for the environment. Proudly, the EcoDiesel meets and even exceeds the low emissions requirements in all 50 states. Best-in-class fuel economy® arrives with an estimated 22 city/30 hwy mpg,¹ and a driving range of more than 730 highway miles per tank! That's because, compared to gasoline, a gallon of diesel fuel converts to a greater amount of useable energy. So you can leave Detroit, MI, with a full tank and arrive in New York City without ever stopping to refuel. And with its command of 240 hp and a hefty 420 lb-ft of torque, the EcoDiesel provides a surge of towing strength that can haul up to 7,400 lb when properly equipped. Stats so good, they're worth repeating every chance you get.

18   1391.   The 2015 brochure makes similar claims. It again features the EcoDiesel badge and

19   environmental imagery. And it again boasts "best-in-class ... 30 hwy mpg fuel economy" and "a

20   driving range of 730 highway miles." It also states that the vehicles are "clean" and 50-state

21   compliant, and even opens with this environmentally-focused introduction: "Love the planet along

22   with great fuel economy? Then the Jeep Brand's Diesel engine will ring true. It lets you adhere to

23   your principles and get extra points for embracing innovative technology."



1392.   The 2016 brochure also features the EcoDiesel badge, and touts best-in-class fuel economy, range, horsepower, and torque. And it too states that "[t]he EcoDiesel exceeds the low-emissions requirements in all 50-states":



3.0L ECODIESEL V6 ENGINE:  *Best-in-class[1] fuel economy treats your fuel budget with respect, while reduced $CO_2$ emissions display reverence for the environment. The EcoDiesel exceeds the low-emissions requirements in all 50 states. Best-in-class[1] fuel economy arrives with an estimated*

1393.   The Ram 1500 brochures make similar claims. Like the Jeep Brochures, the 2014 Ram 1500 brochure devotes an entire page to the EcoDiesel engine, depicts the EcoDiesel badge, and repeatedly touts the truck's "best-in-class" fuel economy and "impressive" range. It also boasts that the truck is "clean by nature" with "minimal $CO_2$ levels" and a "[t]op-notch DEF system."

1394.   The 2015 brochure also advertises "top-tier mpg ratings," "superb driving range and best-in-class 28 mpg highway," and claims the truck is "clean by nature" with "minimal $CO_2$ levels" and a "zero-hassle DEF system."

1395.   The 2016 brochure boasts "best-in-class 29 mpg highway fuel economy," "up to 754-mile range," "240 horsepower," "420 lb-ft of torque," "minimal $CO_2$ levels" and a "zero-hassle DEF system."

1396.   The brochures are tied together by common themes and sometimes identical language. The key representations made throughout were that the Subject Vehicles delivered a no-compromise combination of fuel efficiency, environmental friendliness, and performance.  Those representations were false (because the vehicles contained concealed components that compromised the emissions control systems in real-world driving conditions) and deceptive (because the vehicles could not perform as represented without the concealed emission control components).

### 4.   FCA Websites

1397.   FCA hosted a number of blogs and websites that promoted the EcoDiesel technology, including the official Ram and Jeep websites, which many named Plaintiffs visited before making their purchase/lease decisions. Both company sites reiterated FCA's consistent messaging for the Subject Vehicles—i.e., that they were clean, fuel efficient, and high performing.



1398.   A February 9, 2014, capture of the Jeep website, for example, includes a diesel tab, under which it displays the EcoDiesel badge and tells viewers to "[f]orget everything you thought

1   you knew about diesel. The all-new jeep EcoDiesel engine offers innovative technology that is
2   efficient, increases range, and improves power – all while leaving little trace of being there."[43]

3     1399.   The Jeep website also includes separate pages featuring its supposed "Best-in-Class
4   maximum towing capacity," "incredible 730-mile highway driving range," and "superior fuel
5   economy." As to fuel economy, the website also includes (and has included since at least 2014) a
6   "savings calculator" that allows consumers to enter their miles driven per day and then calculates
7   their annual fuel savings using "Clean Diesel."[44]

---

[43]Available      at:     http://web.archive.org/web/20140209113901/http://m.jeep.com/en/jeep_capabilities/eco-diesel-
calculator/#introduction (last visited April 19, 2018).
[44] Available at: https://m.jeep.com/en/jeep_capabilities/eco-diesel-calculator/#savings (last visited April 19, 2018).



1
2
3     1400.  Ram's website made similar representations, touting the fuel economy,

4  horsepower, torque, and towing capacity of the EcoDiesel engine, and claiming that it was

5  "[e]quipped with a diesel oxidation catalyst, diesel particulate filter and selective catalyst reduction

6  so it is emissions-compliant in all 50-states."[45]

---

[45]Available at: http://web.archive.org/web/20160316042712/http://www.ramtrucks.com/en/ram_1500/
capability/#link-3 (March 2016 web archive); http://web.archive.org/web/20150215044120/http://www.
ramtrucks.com:80/en/ram_1500/capabil ity/#link-3 (Feb. 2015 web archive); http://web.archive.org/web/
20140214053830 /http://www.ramtrucks.com:80/en/ram_1500/capabil ity/#link-3 (Feb. 2014 web archive)
(all visited last on April 19, 2018).



1401.   Like Jeep, Ram also included a fuel savings calculator, as well as graphics comparing the best-in-class fuel economy to the competition:[46]

---

[46] FCA-MDL-001184455-62; *EcoDiesel – Ram 1500 HFE*, Ram Trucks (FCA), available at https://www.ram trucks.com/en/ecodiesel/ (last accessed July 19, 2017).

1402.   FCA made many similar representations throughout the many websites it operated, including but not limited to the following:

   a.      The EcoDiesel engine is designed for those "who want to drive an efficient, environmentally friendly truck without sacrificing capability or performance."[47]

   b.      The Ram 1500 EcoDiesel is "the NAFTA market's first and only light-duty pickup powered by ***clean diesel*** technology."[48]

   c.      "Thanks to advanced emissions-control technology . . . [EcoDiesel's] exhaust is ultra-clean, making this engine available in all 50 states."(*Id.*)

   d.      "Equipped with a diesel oxidation catalyst, diesel particulate filter and selective catalyst reduction, the EcoDiesel® V6 engine will be emissions-compliant in all 50 states."[49]

   e.      "Chrysler Group engineers adapted the engine—manufactured by Fiat- owned V.M. Motori—to meet the NAFTA region's stringent emissions and on-board diagnostic regulations. The new EcoDiesel® V-6 is Tier 2/Bin 5 compliant."[50]

   f.      The emissions on the EcoDiesel® engine data sheet meet Tier2 Bin5 requirements.[51]

   g.      "[T]he Bosch emissions control system helps ensure that virtually no particulates and minimal oxides of nitrogen (NOx) exit the tailpipe."[52]

1403.   Many named Plaintiffs visited FCA's websites to learn about the Subject Vehicles. On those websites, as in all the other ways FCA communicated to consumers, FCA's message was clear and consistent: the EcoDiesel engine delivers a no-compromise package of fuel economy, range, performance, and environmental-friendliness.  Those representations were false (because

---

[47] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, Ram Zone (Ram trucks blog operated by FCA US LLC) (July 16, 2013),https://blog.ramtrucks.com/features/the-2014-ram-1500-with-ecodiesel-engine-available-soon-at- a-dealer-near-you/.

[48] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*, Chrysler Group LLC (FCA) (Dec. 12, 2013),  http://www.fcanorth america.com/News/ ChryslerDocuments/Chrysler GroupLLC_Sustain2013Dec12.pdf (emphasis added).

[49] *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You*, *supra* note 47.

[50] *Chrysler Group's 3.0-liter EcoDiesel V-6, 500e Battery-Electric Drive System Among Ward's 10 Best Engines for 2014*, *supra* note 48.

[51] *EcoDiesel: An Essential Tool for Every Outdoorsman*, *supra* note 39.

[52] *Id.*, *supra* note 39.

the vehicles contained concealed components that compromised the emissions control systems in real-world driving conditions) and deceptive (because the vehicles could not perform as represented without the concealed emission control components).

### 5. <u>Print Media and Television</u>

1404. FCA reiterated its consistent representations—particularly the fuel economy representations—through print media and television commercials.

1405. The print ad campaign was robust. One FCA-produced document identifies over 250 Ram print ad buys in several dozen publications from June 2014 to October 2016. FCA-MDL-000519349. Another document shows expenditures of almost $300,000 to place Jeep EcoDiesel print ads in a variety of magazines in June through August 2013. FCA-MDL-001360559. Yet another document identifies additional ad buys for 14 newspapers across the country. FCA-MDL-000519351.

1406. Critically, virtually all of the print ads for the Subject Vehicles contain the same or similar relevant representations, including: (1) the word "EcoDiesel" and/or the EcoDiesel badge, and (2) fuel economy claims such as specific MPG ratings, "most fuel efficient," and "best-in- class" fuel economy. Three illustrative examples, one for the Jeep Grand Cherokee Subject Vehicles and two for the Ram 1500 Subject Vehicles, are shown below:





1

2

3



1

2

3

1407.   The television commercial campaign was also extensive, and also conveyed consistent messages. One FCA document shows 17,595 discrete commercial buys between January 2014 and September 2016, including during prominent and widely-viewed programing. FCA-MDL-000519350.

1408.   Some examples of the relevant commercials (a portion of which are not included in the chart described above) include:

a.   A commercial entitled "West" that prominently features the EcoDiesel badge, and promotes the Ram 1500 EcoDiesel's "28 highway MPG" and "9,200 lbs towing."  FCA-MDL-000512961.

b. A commercial entitled "Roar" that prominently features the EcoDiesel badge, and promotes the Ram 1500 EcoDiesel's "28 highway MPG" and "420 lb-ft torque." FCA-MDL-000512962.

c. A commercial entitled "Runaway" that prominently features the EcoDiesel badge and promotes the Jeep Grand Cherokee EcoDiesel's "best-in-class 30 MPG hwy" and "730-mile driving range." FCA-MDL-000518756.   Per the commercial buy document described above, this commercial ran approximately 1,000 times in January 2014.

d. A commercial entitled "Take Every Mile" that features the EcoDiesel badge and promotes the Jeep Grand Cherokee EcoDiesel's "730-mile driving range."  FCA-MDL-000518759. Per the commercial buy document described above, this commercial ran approximately 400 times in two weeks in February 2016.

e. A commercial entitled "The Truth About Diesel" that "bust[s] some myths about diesel engines," including that "all SUVs get bad gas mileage, diesel engines are dirty, and they run sluggish." All three myths were "totally busted," and the video specifically boasts the Jeep Grand Cherokee EcoDiesel's "30 MPG and a 730-mile driving range." It also depicts a man "check[ing] the data" on the emissions from the tailpipe and remarking "Wow, the greenhouse gas emissions are lower than a regular gasoline engine." FCA-MDL-001418576.

1409.   Like the rest of Fiat Chrysler's consumer communications, these commercials represented that the Subject Vehicles were green (both through explicit representations and depictions of the EcoDiesel name and badge) and fuel efficient. These representations were pervasive and consistent. They were also false (because the vehicles contained concealed components that compromised the emissions control systems in real-world driving conditions) and

deceptive (because the vehicles could not perform as represented without the concealed emission control components).

* * *

1410.   The Defendants saw the EcoDiesel technology as a huge opportunity to increase their sales and profits. They understood that to realize this goal, they would have to overcome the "dirty diesel" stigma, and convince consumers that the Subject Vehicles offered a no-compromise package of fuel efficiency, environmental friendliness, and power. Fiat Chrysler's efforts to communicate this message to consumers were far reaching and consistent. They were also false and deceptive.

1411.   Defendants had multiple opportunities, and obligations, throughout their marketing communications to disclose the uniform truth about the Subject Vehicles—namely, that all their emissions, fuel economy, and performance claims were predicated on concealed emissions control components and software that caused the Subject Vehicles to pollute excessively in real-world driving conditions. This uniform omission and unvarying concealment prevented any and all consumers from making a purchase based on all material facts.

**D.**     **The Defendants Knew These Representations Were False and Misleading**

1412.   Unfortunately, the EcoDiesel technology did not work as represented.   In developing the Subject Vehicles, the Defendants came to understand that they could not make the vehicles environmentally friendly or "50-state compliant"—as they represented to consumers through consistent and pervasive communications—and that the vehicles could not achieve the fuel economy and performance that were central to Fiat Chrysler's marketing efforts without installing components and software that de-activated or reduced the emission control system

during real-world driving conditions. The Defendants concealed this fact from regulators and consumers alike, and cheated Plaintiffs of the vehicles they thought they were buying.

1413.   The Defendants' scheme focused on at least two of the emissions control systems in the Subject Vehicles—both of which Fiat Chrysler pitched to consumers as enablers of the Subject Vehicles purported "clean" operation: (1) the Exhaust Gas Recirculation ("EGR") system and (2) the Selective Catalytic Reduction ("SCR") system.

1414.   The EGR system reduces NOx in diesel emissions by lowering the temperature of the exhaust gas exiting the engine. The SCR system takes the NOx leftover from the EGR System and converts it into harmless nitrogen and water. Together, the EGR and SCR systems are vital to mitigating the pollution from the Subject Vehicles' diesel emissions.

1415.   As identified in the EPA's NOV, the Defendants installed a number of undisclosed auxiliary emission control devices ("AECDs") in the Subject Vehicles that compromised the EGR and SCR systems and resulted in substantially increased NOx emissions during real-world driving conditions. As exemplified herein, the Defendants knew that these AECDs were not allowed, but that the Subject Vehicles could not achieve the fuel economy or performance that the Defendants marketed without them.

### 1.    EGR AECD Strategy: EGR Rate Reduction

1416.   Burning diesel fuel creates NOx. The amount of NOx produced by a diesel vehicle is a function of temperature: the hotter the exhaust gas is when it exits the engine, the more NOx generated.

1417.   The EGR system minimizes NOx by lowering the temperature of the engine exhaust

through a recirculation process. The higher the rate of exhaust gas recirculation (the EGR rate), the lower the exhaust gas temperature. The lower the exhaust temperature, the lower the NOx. But, critically, the higher the EGR rate in a vehicle, the worse fuel economy it achieves. Defendants employed the EGR AECDs in the Subject Vehicles to either reduce the EGR rate or shut it off entirely, thereby artificially and secretly increasing the Subject Vehicles' fuel economy and drivability at the expense of increased NOx.

1418.   One of the strategies Defendants used to reduce the EGR rate was through what the EPA has named AECD 5, which detects the engine temperature in the Subject Vehicles and reduces the EGR rate during the vehicles' "warm-up phase" (the phase when the engine is heating up after a cold start). The EPA described AECD 5 as "EGR rate reduction based on engine temperature model." Defendants referred to it as "T_Eng" and various derivatives thereof (e.g., "t_engine" and "tEng").

1419.   VM Motori knew as early as 2010 that T_Eng was an AECD that, if concealed, would be illegal. (FCA-MDL-000456083) In April 2010, a Fiat Chrysler powertrain division employee attempted to assure VM Motori's Controls and Calibration Director, Sergio Pasini, that T_Eng did not employ "cycle detection". FCA-MDL-000452591. "Cycle detection" refers to any mechanism that allows a vehicle to detect when it is undergoing regulatory emissions testing, and modify its emissions accordingly. But Pasini knew better. Just two months later, he told his VM Motori colleagues, "the [EGR] rate will be managed mainly on t_engine which is, no matter what FIAT says, a cycle detection." *Id.* VM Motori regularly admitted that the T_Eng function employed "cycle detection" (12/2011 correspondence—FCA-MDL-000168161); "cycle recognition" (1/2012 correspondence—FCA-MDL-000377513; FCA-MDL-000377513_T001 (English translation)); and "cycle beating" (02/2013 correspondence—FCA-MDL-000430441-44;

1376

1    06/2013—FCA-MDL-000295256). Pasini also understood that this AECD was not being disclosed
2    to the EPA. FCA-MDL-000377499; FCA-MDL-000377499_T001-02 (English translation). In a
3    May 2013 email, for example, Pasini told more than a dozen of his VM Motori colleagues that the
4    T_Eng function was not active during emission testing and "has not been declared to regulators."
5    *Id.*

6        1420.   Fiat Chrysler also knew that T_Eng was at an unacceptable AECD level, and
7    critically, all the Defendants understood that it was necessary to achieve the desired fuel economy.
8    In December 2011, VM Motori identified T_Eng as a "sort of 'cycle detection'" to increase fuel
9    economy (FCA-MDL-000168161) and said Fiat Chrysler gave them approval to use it (FCA-
10   MDL-000377211). In January 2012, FCA Executive Bob Lee connected T_Eng to FCA's
11   objective of achieving greater fuel economy in a presentation entitled "Fuel Economy Status
12   Target." FCA-MDL-000000116. In February 2012, VM Motori directed Bosch to implement
13   T_Eng, and told Bosch that VM Motori would explain to Fiat Chrysler that ***T_Eng was "what you***
14   ***need if you want 30 mpg***." FCA-MDL-000015652 (emphasis added). Fiat Chrysler later explored
15   ideas to replace T_Eng with a different strategy, but it abandoned that process after ***VM Motori***
16   ***informed*** FCA's Diesel Calibration Manager that the "F[uel] E[conomy] impact [of replacing
17   T_Eng] is ***probably around 2 mpg highway***." FCA-MDL-000430044 (emphasis added). In an
18   email sent the next day, VM Motori's Emanuele Palma told colleagues that "***Chrysler knows tEng***
19   ***is the only way to get to 30 mpg, so don't worry about this topic***." *Id.* (emphasis added).

20       1421.   Like VM Motori and Fiat Chrysler, Bosch also knew that T_Eng was an AECD that
21   likely qualified as "defeat device" under applicable regulations. FCA-MDL-000015652. In
22   February 2012, Bosch warned VM Motori that T_Eng is an emissions "defeat device" and that
23   they risked "serious penalties" if regulators found T_Eng to be cycle detection. *Id.* VM Motori

refused to abandon T_Eng, however, and told Bosch "we are working closely with Chrysler [and] the feedback we've had so far about [using T_Eng] is positive." *Id.* The same month, Bosch sought to limit its liability from VM Motori's use of T_Eng, and even considered asking VM Motori to sign a risk release. RBL-MDL2777-PE-300402775-78. Yet, Bosch not only incorporated T_Eng into the emissions software for the Subject Vehicles (FCA-MDL-000351953), Bosch appears to have gone so far as to have advised VM Motori not to disclose T_Eng to regulators, if it planned to use the function (*see, e.g.*, RBL-MDL2777-PE-300530521-23). Of course, this is exactly what they did.

1422.   On December 2, 2015, Morrie Lee of FCA Regulatory Affairs asked FCA Senior Manager Emanuele Palma "[w]hat compelling or driving reason does a[n] [automobile manufacturer] have to reduce EGR operation in the field?" FCA-MDL-000002857.   Palma responded simply: **"Low EGR → low soot, good drivability, F[uel] E[conomy]**." *Id.* (emphasis added). Two days later, Lee told the EPA that Fiat Chrysler's failure to document T_Eng as an AECD was "an oversight of understanding." FCA-MDL-000002011. The documents cited herein show otherwise.

## 2.    SCR AECD Strategy: Dosing Disablement

1423.   The SCR system uses DEF—a solution of urea and water—to convert NOx into harmless nitrogen and water after it exits the EGR system and before it is emitted from the tailpipe. The part of the emissions system where this process occurs is called the SCR catalyst. In theory, the SCR system injects or "doses" measured quantities of DEF into the exhaust stream based on a software program that injects the right amount of DEF to neutralize the amount of NOx being emitted by the engine.

1424.   However, Defendants employed the SCR AECDs to either reduce the DEF dosing amount or shut it down entirely. With the DEF dosing reduced or disabled, the Subject Vehicles emit more NOx.

1425.   Reduced DEF dosing was important to Defendants for at least two reasons.  First, the more DEF the Subject Vehicles consumed, the more frequently consumers would have to refill the DEF tank—an inconvenience that would make the vehicles less marketable. Second, by the time the first Subject Vehicles hit the market, the Defendants realized that the chemicals in the DEF were breaking down the materials in the SCR catalyst and causing these components to fail prematurely, which could be mitigated by reducing DEF dosing (at the expense of increased emissions).

1426.   The Defendants relied heavily on an alternative DEF dosing mode called "online dosing," which limited the injection of DEF into the SCR catalyst, thereby compromising the SCR system. The EPA identified this alternative dosing functionality as AECD 7.[53] Bosch and VM Motori first discussed "online dosing" in March 2011. FCA-MDL-000281212-14.  Both parties acknowledged that, if used, online dosing would have to be disclosed as an AECD.  *Id.* ("online dosing . . . could also be used outside cert cycle [but] needs to be declared at CARB"). Yet, in November 2012, Bosch implemented a software change to prevent online dosing from activating during EGR diagnostic monitoring (RBL-MDL2777-PE-300068645-48), and in February 2013, Kasser Jaffri of FCA's On Board Diagnostic group expressed concern to VM Motori that CARB might see online dosing as "cycle beating" (FCA-MDL-000430441).  Jaffri concluded that, if applied, online dosing would have to be disclosed as an AECD. FCA-MDL-000478134 ("Chrysler

---

[53] Defendants also employed related strategies to reduce DEF dosing, including tying the dosing to SCR adaptation (the process by which the SCR system modifies the dosing rate based on in-use monitoring) (FCA-MDL-000383765), and the load governor (the component that controls the flow of DEF into the SCR catalyst) (FCA-MDL-000750062).

1379

1    will request an AECD for [online dosing]"). It did not do so.

2        1427.   VM Motori then told Fiat Chrysler in March 2013 that it was not going to use the

3    online dosing strategy. FCA-MDL-000433186. They used it anyway. In September 2013, Jaffri

4    reported to FCA Senior Manager Dan Hennessey, head of the On Board Diagnostic group, that

5    online dosing was (1) active in the vehicles; (2) had not been disclosed to CARB or the EPA; and

6    (3) "reduces the conversion efficiency effectiveness," thereby resulting in increased NOx

7    emissions. FCA-MDL-000740696. Understandably, Jaffri observed that this "continues to be an

8    area of concern." *Id.* He also told Hennessy that when online dosing was active, diagnostic

9    monitoring meant to track the performance of the SCR system "cannot be run," because, if active,

10   the diagnostic monitoring would reveal that the SCR system was not functioning.  *Id.*

11       1428.   In September 2014, Fiat Chrysler senior management, including March Shost and

12   Dan Hennessey, received a presentation from Emanuele Palma entitled "WK/DS MY15 DEF

13   dosing strategy." One slide in that presentation labeled "online dosing strategy" noted that Fiat

14   Chrysler's competitors were using online dosing and that Fiat Chrysler could too—but, critically,

15   that the dosing strategy needed "to be agreed with the agencies." FCA-MDL-000417114-25. No

16   such agreement was reached, as Fiat Chrysler never disclosed the functionality.

17       1429.   In July 2015, Fiat Chrysler acknowledged that tests conducted on the Model Year

18   2014 Subject Vehicles showed that the vehicles were not meeting NOx emissions standards

19   because the SCR catalysts—which Bosch provided for the Subject Vehicles (RBL-MDL2777-PE-

20   300160491-504) were failing (FCA-MDL-000713128). In a presentation given that month entitled

21   "SCR Catalyst Responsibility Share," Bosch noted in its "investigation history" chronology that it

22   began to investigate the SCR catalyst as the reason FCA development vehicles were experiencing

1    excess NOx emissions in February 2013. RBL-MDL2777-PE-300166279-362. The investigation

2    chronology further identified a "dosing calibration strategy change" to reduce dosing rates. *Id.*

3    Bosch admitted that VM Motori made the change on Bosch's recommendation. *Id.*

4        1430.   In sum, the Defendants all knew that the Subject Vehicles contained undisclosed

5    apparatuses that reduced or disabled the emissions control systems in real-world driving

6    conditions, and they knew that without those undisclosed apparatuses, the Subject Vehicles could

7    not deliver the fuel economy and performance that Fiat Chrysler promised. Defendants concealed

8    this fact from consumers and regulators and, in so doing, cheated Plaintiffs of the vehicles they

9    thought they were buying.

### IV.   "DIESELGATE" SCANDALIZES THE GLOBAL AUTO INDUSTRY.

12        1431.   The world was shocked to learn that Volkswagen had manufactured over 11 million

13    diesel cars that were on the roads in violation of European emission standards, and over 565,000

14    vehicles operating in the United States in violation of EPA and state emission standards. But

15    Volkswagen was not the only one.

16        1432.   In the wake of the Volkswagen "defeat device" scandal, scientific literature and

17    reports and testing indicate that many other so-called "clean diesel" vehicles emit far more

18    pollution on the road than in lab tests. [54] The EPA has since widened its probe of diesel emissions

---

[54] The EPA's Sept. 18, 2015, Notice of Violation to Volkswagen Group of America, Inc., available at https://www.epa.gov/sites/production/files/2015-10/documents/vw-nov-caa-09-18-15.pdf. As detailed therein, software detects when the vehicle is undergoing official emission testing and turns full emission controls on only during the test. But otherwise, while the vehicle is running, the emission controls are suppressed. This results in cars that meet emission standards in the laboratory or at the state testing station, but during normal operation they emit NOx at up to 40 times the standard allowed under U.S. laws and regulations. Volkswagen has admitted to installing a defeat device in its diesel vehicles.

to include the Subject Vehicles at issue here.

1433.   In May 2015, a study conducted on behalf of the Dutch Ministry of Infrastructure and the Environment found that all sixteen (16) diesel vehicles made by different manufacturers, when tested, emitted significantly more NOx on real-world trips but nevertheless passed laboratory tests. The report concluded that "[i]n most circumstances arising in normal situations on the road, the system scarcely succeeded in any effective reduction of NOx emissions."[55]

1434.   The report further remarked:

It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much]. It demonstrates that the settings of the engine, the EGR [(exhaust gas recirculation)] and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice. In other words: ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions.*** [56]

The lack of any "effective reduction of NOx emissions" is devastating to "clean diesel" advertising, including that for the Subject Vehicles at issue here.

1435.   Other organizations are beginning to take notice of the emission deception.  The Transportation and Environment ("T&E") organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe." T&E stated in September 2015 that real-world emission testing showed drastic differences from laboratory tests, such that models tested emitted more pollutants on the road than in the lab. "For virtually every new model that comes onto the market the gap between test and real-world

---

[55] *Detailed investigations and real-world emission performance of Euro 6 diesel passenger cars*, TNO innovation for life TNO Report, TNO 2015 R10702 (May 18, 2015), http://publications. tno.nl/publication/34616868/a1Ug1a/TNO-2015-R10702.pdf.
[56] *Id.* at 6 (emphasis added).

1  performance leaps," the report asserts.[57]

2      1436.  In a summary report, T&E graphically depicted the widespread failure of most

3  manufacturers to meet emission standards:[58]

[57] *VW's cheating is just the tip of the iceberg*, Transport & Environment (Sept. 21, 2015), http://www.transportenvironment.org/publications/vw%E2%80%99s-cheating-just-tip-iceberg.
[58] *Five facts about diesel the car industry would rather not tell you*, Transport & Environment (Sept. 2015), http://www.transportenvironment.org/sites/te/files/publications/2015_09_Five_facts_about_diesel_FINAL.pdf.

1437.   The T&E report found that the current system for testing cars in a laboratory produces "meaningless results," because manufacturers like Fiat Chrysler can engineer their cars to "pass" the laboratory tests but emit many times as much pollution under normal driving conditions. [59]

1438.   Emissions Analytics is a U.K. company formed to "overcome the challenge of finding accurate fuel consumption and emission figures for road vehicles." With regard to its recent on-road emission testing, the company explains:

> [I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory. Real-world emissions of carbon dioxide are almost one-third above that suggested by official figures. For car buyers, this means that fuel economy on average is one quarter worse than advertised. This matters, even if no illegal activity is found. [60]

## V.    DEFENDANTS ARE CAUGHT CHEATING.

### A.    Testing Reveals Cheating.

1439.   In late 2016 testing was done of the 2015 Ram 1500 pickup using a Portable Emissions Measurement System ("PEMS"). Testing revealed that FIAT Chrysler also cheated in that it had concealed the fact that the Ram 1500 spews more than the legal amount of emissions and fails to meet its own "no NOx" out-of-the-tailpipe promise.

1440.   The applicable standard both at the federal and state level is 50 mg/mile of NOx for "FTP Style" driving: *i.e.*, city driving. Testing was conducted with a PEMS unit to simulate driving conditions under both the FTP certification cycle and the highway certification cycle. The Ram

---

[59] *Id.*
[60] Emissions Analytics Press Release, (Sept. 28, 2015), available at http://www.abvwc.com/ home/emissions-analytics. last accessed July 19, 2017).

1500 emits an average of 159 mg/mile of NOx and a maximum of 1,283 mg/mile on flat roads, and 222 mg/mile of NOx with a maximum of 1,859 mg/mile on hills. For highway driving, the average was 232 mg/mile and a maximum of 1,615 mg/mile, compared to the 70 mg/mile standard. On hills, the numbers are 353 mg/mile and 3,240 mg/mile. Testing also revealed a device triggered by ambient revealed the presence of a device that is triggered when ascending hills, as the emission control system temperature that significantly degrades the performance of the NOx emission reduction system, with ambient threshold temperatures above approximately 95ºF and below 40-50ºF. The resulting NOx emissions increase by a factor of 10 when above or below these threshold temperatures. Testing also appears to be significantly degraded after a short period of steady driving on hills. As a result, NOx emissions increase after about 500-1000 seconds on hills with grades as low as 1%, where emissions are often 10 times the highway standard. For grades as little as 0.4%, emissions were found to be as high as 6 times the highway standard.

1441.   The Ram 1500's emission software is a "Bosch EDC17," as is the Jeep Grand Cherokee's emission software. The same basic emission system is in the Grand Cherokee EcoDiesel® and the engines are identical.

1442.   In separate testing, a 2014 Ram 1500 equipped with an EcoDiesel® engine and featuring SCR NOx after-treatment technology was tested on a chassis dynamometer as well as on the road. In both scenarios, gaseous exhaust emissions, including oxides of nitrogen (NOx), nitrogen oxide (NO), carbon monoxide (CO), carbon dioxide ($CO_2$), and total hydrocarbons (THC) were measured on a continuous basis using a PEMS from Horiba®.

1443.   The tests showed significantly increased NOx emissions during on-road testing as opposed to testing on a chassis dynamometer (*i.e.*, in the laboratory). On the road, over an

1  urban/suburban route, the vehicle produced average NOx emissions that exceeded federal

2  certification standards by approximately 15-19 times. When tested on a highway, the average NOx

3  emissions measured *35 times* the EPA Tier 2 Bin 5 standard.

4

5  **B.    The EPA Issues A Notice of Violation to Fiat and FCA.**

6     1444.   On January 12, 2017, the EPA issued a NOV to Fiat and FCA for failing to justify

7  or disclose defeat devices in model year 2014–2016 Ram 1500 EcoDiesel® and 2014–2016 Jeep

8  Grand Cherokee EcoDiesel® vehicles (the Subject Vehicles at issue here). CARB also issued a

9  Notice of Violation to Fiat and FCA. Since then, the EPA, by and through the Department of

10  Justice, has sued Fiat, FCA, VM Italy, and VM America for violations of the CAA.

11     1445.   The EPA's NOV and lawsuit arose in part from emission testing performed by the

12  EPA at the National Vehicle and Fuel Emissions Laboratory. The EPA performed this testing

13  "using driving cycles and conditions that may reasonably be expected to be encountered in normal

14  operation and use, for the purposes of investigating a potential defeat device."

15     1446.   The EPA identified at least eight AECDs in the Subject Vehicles that were

16  concealed on COC applications:

17

   •   AECD 1 (Full EGR Shut-Off at Highway Speed)

   •   AECD 2 (Reduced EGR with Increasing Vehicle Speed)

   •   AECD 3 (EGR Shut-off for Exhaust Valve Cleaning)

   •   AECD 4 (DEF Dosing Disablement during SCR Adaptation)

   •   AECD 5 (EGR Reduction due to Modeled Engine Temperature)

   •   AECD 6 (SCR Catalyst Warm-Up Disablement)

1386

• AECD 7 (Alternative SCR Dosing Modes)

• AECD 8 (Use of Load Governor to Delay Ammonia Refill of SCR Catalyst)

1447.   The EPA testing found that "some of these AECDs appear to cause the vehicle to perform differently when the vehicle is being tested for compliance with the EPA emission standards using the Federal emission test procedure (e.g., FTP, US06) than in normal operation and use." For example:

a.     AECD 3, when combined with either AECD 7 or AECD 8, disables the EGR system without increasing the effectiveness of SCR system.  Under some normal driving conditions, this disabling reduces the effectiveness of the overall emission control system. The AECD 3 uses a timer to shut off the EGR, which does not appear to the EPA to meet any exceptions to the regulatory definition of "defeat device."

b.     AECD 5 & 6 together reduce the effectiveness of the NOx emission control system, using a timer to discontinue warming of the SCR after-treatment system, which reduces its effectiveness.

c.     AECD 4, particularly when combined with AECD 8, increases emissions of tailpipe NOx during normal vehicle operation and use. The operation of AECD 1, AECD 2, and/or AECD 5 increase the frequency of occurrence of AECD 4.

d.     AECDs 7 & 8 work together to reduce NOx emissions during variable-grade and high-load conditions.

1448.   The EPA further found that Fiat and FCA did not disclose or justify these control devices in their COC applications, as required by EPA regulations, and that Fiat and FCA were therefore in violation of the CAA each time they sold, offered for sale, introduced in commerce, or imported one of the approximately 103,828 Subject Vehicles. The EPA is now seeking injunctive relief and penalties.

## C.    Bosch Software Documentation Further Verifies the Violations

1449.   Researchers have obtained Bosch software documentation describing the functions, modules, structure, variables and calibration parameters believed to be installed in Subject

1387

1    Vehicles. The documentation is over 10,000 pages long and contains hundreds of functions and

2    thousands of variables developed by Bosch that describe the operation of the engine. These

3    parameters and functions correlate with many of the violations alleged by the EPA and CARB.

4    Critically, these functions, designed and implemented by Bosch, have elements that have no

5    legitimate purpose in normal use. At the same time, these same elements, when enabled, allow the

6    functions to reduce the effectiveness of emission controls in real world driving conditions, but not

7    during an emission test cycle.

8         1.    **AECDs 1 and 2: Reducing or Disabling EGR at Highway Speeds**

9         1450.   The function named *"AirCtl_RatDesValCalc"* described in the Bosch

10   documentation as *"Exhaust gas recirculation control - EGR ratio setpoint calculation"* is used to

11   calculate the desired EGR rate. The software documentation contains figures with flow diagrams

12   describing the inputs, outputs, and calculation performed by this software function. Bosch has

13   included vehicle speed as an input used by the EGR control function to modify the EGR rate (and,

14   thus, NOx emission). Vehicle speed is notable because there is no legitimate reason for the EGR

15   rate to depend directly on vehicle speed.

16        1451.   By allowing EGR rate to depend directly on vehicle speed, Bosch provided a means

17   by which Fiat and FCA could reduce the effectiveness of the emission control system under

18   conditions which may reasonably be expected to be encountered in normal vehicle operation and

19   use. This function may be, and is likely to have been, used to implement the undisclosed AECDs

20   1 and 2 identified in the EPA NOV to Fiat and FCA.

21        2.    **AECD 3: EGR Shut-Off for Exhaust Valve Cleaning**

22        1452.   AECD 3 identified in the EPA NOV has also been identified in Bosch's software

1388

documentation in the function named "*AirCtl_Mon*" described in the Bosch documentation as "*Exhaust gas recirculation control – Monitoring and shut-off.*" Bosch described this AECD as ostensibly providing a cleaning mechanism for the engine exhaust valves when the Subject Vehicle is in overrun (*i.e.*, the engine is turning without combustion, such as when the vehicle is going downhill). To accomplish this cleaning, the function created by Bosch closes the EGR valve (turning off EGR), so a "huge gush of clean air" can remove deposits. However, Bosch also programmed a software switch (named "*AirCtl_swtOvrRunOff_C*") that allowed Fiat and FCA to enable exhaust valve cleaning in normal (non-overrun) operation, effectively disabling EGR.

1453. Together with an activation delay added by Bosch—controlled by *AirCtl_tiEngRunDrvCycMin_C*, which is described as *"Calibration time after which exhaust valve cleaning routine can start"*—the *AirCrl_Mon* function can be readily used as a defeat device. To do so, Bosch would calibrate the ECU to enable valve cleaning in outside of overrun (*AirCtl_swtOvrRunOff_C* = TRUE), but only after the duration of a typical emission test cycle (*AirCtl_tiEngRunDrvCycMin_C* = 1800 seconds). This would disable EGR after an emission test cycle, resulting in increased NOx emission. This function may be, and is likely to have been, used to implement undisclosed AECD 3 identified in in the EPA and CARB NOVs.

### 3.   **AECD 7: Alternative SCR Dosing Modes**

1454. Bosch included a timer in another function, without a legitimate purpose. The Bosch function named "*SCRFFC_Main*," described in documentation as "*Calculation of the NH3 precontrol quantity*" has an input variable timer entitled "*CoEng_tiNormal*," which holds the time duration since the engine was started. This variable can be used to reduce SCR efficiency, and, therefore, increase NOx emission, after a certain time has elapsed. In particular, this timer may be set to the duration of a typical emission test cycle. There is no legitimate reason for SCR control

1389

to depend directly on the time duration since engine start. By making SCR control depend directly on time duration since engine start, however, Bosch has provided a means by which Fiat and FCA could reduce the effectiveness of the emission control system in real world driving conditions. This function may be, and is likely to have been, used to implement undisclosed AECD 7 identified in the EPA and CARB NOVs.

### D.   West Virginia University Testing of the Subject Vehicles

1455.   Beginning in 2015, researchers at the West Virginia University Center for Alternative Fuels, Engines, and Emissions—the same researchers instrumental in uncovering Volkswagen's fraud—tested 5 model year 2014 and 2015 vehicles produced by FCA. The test vehicles comprised the Subject Vehicles at issue here: Jeep Grand Cherokees and Ram 1500 diesel vehicles, all equipped with the 3.0L EcoDiesel® engine and featuring SCR NOx after-treatment technology.[61]

1456.   All test vehicles were evaluated on a vehicle chassis dynamometer representing the test conditions for regulatory compliance. Each vehicle was also tested over-the-road using a PEMS device during a variety of driving conditions including urban/suburban and highway driving.

1457.   One of the Jeep Grand Cherokees and one of the Ram 1500 vehicles was tested prior to, as well as after, a mandatory vehicle recall in April 2016 – the "R69 recall" – which included a software "reflash" by FCA that concerned the vehicles' emission control systems.

---

[61] Marc C. Besch, Sri Hari Chalagalla, and Dan Carder, *On-Road & Chassis Dynamometer Testing of Light-Duty Diesel Passenger Cars*, Center for Alternative Fuels, Engines, and Emissions, West Virginia University, available at http://www.cafee.wvu.edu/files/d/c586c1dd-b361-410d-a88d-34e8834eda6/testing-of-light-duty-diesel-passenger-cars.pdf (last accessed July 19, 2017). . .

1458.    Results indicated that both Jeep Grand Cherokee in MY 2014 exhibited significantly increased NOx emissions during on-road operation as compared to the results observed through testing on the chassis dynamometer. For MY 2015, Jeep vehicles produced from 4 to 8 times more NOx emissions during urban/rural on-road operation than the certification standard, while Ram 1500 vehicles emitted approximately 25 times the NOx permitted by EPA Tier2-Bin5 standard for highway driving conditions.

1459.    The researchers noted that for the vehicles tested post-recall using the dynamometer, NOx emissions were similar or slightly lower than that observed for vehicles tested pre-recall. But on-road emissions were still very different from emissions observed through chassis dynamometer testing, even though they were slightly improved from the levels observed during pre-recall testing.

### E.    European Investigation and Testing

1460.    Fiat Chrysler and Bosch have both found themselves in trouble with German regulators in the wake of the Volkswagen scandal.

1461.    German prosecutors have launched an investigation into Bosch, reportedly raiding Bosch's offices in Stuttgart.[62] In April 2016, Bosch GmbH representatives met with Germany's Federal Motor Transport Authority ("KBA") on at least two occasions. In an April 14, 2016, meeting, Bosch admitted there were a number of anomalies in the calibration of its engine control units provided to Fiat Chrysler for diesel vehicles sold in Europe. Bosch confirmed that it had delivered the control units for the vehicles as well as the associated software and that Bosch employees had integrated the emission-related applications into the software. Bosch admitted that

---

[62] *See* Edward Taylor, *Stuttgart prosecutor targets Bosch in Daimler diesel investigation*, Reuters (May 26, 2017), http://www.reuters.com/article/us-daimler-emissions-bosch-idUSKBN18M172.

the software reduced the EGR rate and the regeneration of NSC (NOx storage catalyst) after an elapsed period of driving time or number of cycles. Specifically, 22 minutes after the start of the engine (the estimated duration of emission testing), the software reduced the EGR rate to nearly zero and de-activated NSC regeneration. Another trigger for de-activation of the NSC regeneration occurred after the vehicle had been driven a distance of 100 kilometers. Bosch confirmed that the NOx emissions for the vehicles exceeded the legal limits by a factor of 4-5. The KBA's takeaway from its meetings with Bosch was there is a defeat device in the vehicles and Bosch shared responsibility for the defeat device with Fiat Chrysler. Media reports have confirmed the same.[63]

1462.   After the meeting with Bosch, the KBA performed testing on the Fiat diesel vehicles and confirmed that the emission controls were disabled after 22 minutes of driving time, causing the vehicles to emit more than 10 times the legal limit of NOx. The KBA concluded that the vehicles were designed to cheat on emission tests, which normally run for about 20 minutes.[64] As a result, the KBA's transport minister announced: "We will need to carry out further tests on Fiat models."[65] In August 2016, the German government formally concluded that Fiat vehicles sold in the EU had used defeat devices.

1463.   More recently, a 17-page long-form article published by the German weekly investigative news magazine *Der Spiegel*, on April 20, 2018, details the central role Bosch played in the "diesel scandal." The article reports that prosecutors in Germany are investigating Bosch for

---

[63] Media reports similarly said that Bosch had confirmed to German regulators that certain Fiat vehicles were cheating on emission testing. *See, e.g.*, *Sueddeutsche Zeitung*, Apr. 22, 2016, "Fiat Is Next to be Accused"; *Test of Fiat diesel model shows irregular emissions: Bild am Sonntag*, Reuters (Apr. 24, 2016), http://www.reuters.com/article/us-fiat-emissions-germany-idUSKCN0XL0MT; David Tracy, *Here's How Fiat Might also be Cheating on Emissions Tests:Report,* Jalopnik (Apr. 25, 2016), http://jalopnik.com/heres-how-fiat-might-also-be-cheating-on-emissions-test-1772948181.
[64] *Test of Fiat diesel model shows irregular emissions: Bild am Sonntag*, *supra* note 61.
[65] *Here's How Fiat Might also be Cheating on Emissions Tests: Report*, *supra* note 61.

1    providing and programming illegal software for use in Fiat vehicles, among many others.[66]

2

3        **F.**    **Joint University of California, San Diego and German Study of the**

4                 **Fiat 500X**

5        1464.   The testing of European regulators has been confirmed by independent testing

6    conducted here in the United States. A recent peer-reviewed study by researchers at the University

7    of California, San Diego and Ruhr-Universität Bochum in Germany analyzed firmware in the EDC

8    Unit 17 of the Fiat 500X and found a defeat device affecting the logic governing NOx storage

9    catalyst regeneration.[67] Unlike the Volkswagen defeat device, the researchers found that the

10   mechanism in the Fiat 500X relied on timing, reducing the frequency of NSC approximately 26

11   minutes and 40 seconds after the engine was started. (By reducing the frequency of NOx storage

12   catalyst regeneration, a manufacturer can improve fuel economy and increase the service life of

13   the diesel particulate filter, at the cost of increased NOx emissions.)

14       1465.   According to the study, the conditions used to determine when to regenerate the

15   NSC were duplicated, and each set of conditions could start a regeneration cycle. The researchers

16   obtained Bosch copy-righted documentation for a Fiat vehicle, which described two sets of

17   conditions using the terms "during homologation cycle" and "during real driving." The term

18   "homologation" is commonly used in Europe to describe the process of testing an automobile for

19   regulatory conformance. Bosch's authorship of the document and use of the terms "homologation

20   [testing]" and "real driving" to describe the regeneration conditions demonstrate that it not only

---

[66] Frank Dohmen, et al., *A Sinister Alliance: The automobile supplier Bosch is on its way to taking center stage in the Diesel scandal*, Der Spiegel, Issue 17 (April 20, 2018), https://magazin.spiegel.de/SP/2018/17/156941296/index.html?utm_source=spon&utm_campaign=vorab (paywall, German language).
[67] Moritz Contag, *et al.*, *How They Did It: An Analysis of Emission Defeat Devices in Modern Automobiles*, *supra* note 15.

created the mechanism for Fiat Chrysler but was also aware of the mechanism's intended purpose of circumventing emission testing.

1466.   Together, these facts reveal that Defendants have fraudulently concealed the functions of its emission control technology from regulators and consumers alike. Further, they demonstrate that Fiat Chrysler's claims about its EcoDiesel® Subject Vehicles as "clean diesel" with "ultralow emissions" and "no NOx" emitted through the tailpipe is false or misleading.

## VI.    THE DAMAGE CAUSED BY DEFENDANTS' DIRTY DIESEL SCHEME

1467.   Plaintiffs paid a significant premium for the EcoDiesel features that FCA falsely advertised. Indeed, consumers paid between $3,120 and $5,000 more for the EcoDiesel option than for the comparable gasoline vehicles.[68] In return, FCA promised power, performance, fuel economy, and environmental friendliness (and vehicles that were legal to drive). FCA could not deliver on that promise. Plaintiffs suffered significant harm as a result.

1468.   FCA may not be able to bring the Subject Vehicles into compliance with emissions standards. If that is the case, those vehicles will have to be removed from the road.

1469.   But even if FCA can bring the Subject Vehicles into compliance with emission standards, it will not be able to do so without substantially degrading their performance characteristics, including their horsepower and/or fuel efficiency and/or maintenance requirements. Consequently, Plaintiffs will not possess the vehicles they thought they purchased

---

[68] John Lamm, 2014, *Jeep Grand Cherokee EcoDiesel® V-6, First Drive* Review, Car and Driver (February 2013), http://www.caranddriver.com/reviews/2014-jeep-grand-cherokee-ecodiesel-v-6-    first-drive-review;    Andrew Wendler, 2015, *Ram 1500 EcoDiesel® 4x4, Instrumented Test*, Car and Driver (August 2015), http://www.caranddriver. com/reviews/2015-ram-1500-4x4-ecodiesel- 4x4-test-review.

1   and will not have received the benefit of the bargain. This will also result in a diminution in value

2   of every Subject Vehicle, and it will cause owners and lessees of Subject Vehicles to pay more for

3   the use of their Subject Vehicles.

4       1470.   Assuming, for the sake of argument, that the Subject Vehicles could be brought into

5   compliance with emission standards without any material degradation to performance or

6   maintenance characteristics—and if that were the case, it begs the question as to why FCA cheated

7   in the first place—Plaintiffs would still have been deprived of the benefit of the bargain for all the

8   years they owned and/or leased the Subject Vehicles that could not and did not deliver all of the

9   characteristics for which Plaintiffs paid a premium, and were not compliant with U.S. law.

10      1471.   In sum, had regulators or the public known the true facts, Plaintiffs would not have

11  purchased or leased the Subject Vehicles (in fact, they could not have legally been sold), or would

12  have paid substantially less for them.

13                  **ACTION ALLEGATIONS**
14          **I.      DEFINITIONS**
15

16      1472.   Plaintiffs seek to represent the following Plaintiffs as well as any Plaintiffs that may

17  be added to the complaint at a later date:

18  **Alabama State:**

19      All persons or entities named herein that purchased or leased a Subject Vehicle within
20  Alabama or that purchased or leased a Subject Vehicle and reside in Alabama.
21
22  **Alaska State:**
23
24      All persons or entities named herein that purchased or leased a Subject Vehicle within
25  Alaska or that purchased or leased a Subject Vehicle and reside in Alaska.
26
27  **Arizona State:**

28      All persons or entities named herein that purchased or leased a Subject Vehicle within
29  Arizona or that purchased or leased a Subject Vehicle and reside in Arizona.
30

1395

**Arkansas State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Arkansas or that purchased or leased a Subject Vehicle and reside in Arkansas.

**California State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within California or that purchased or leased a Subject Vehicle and reside in California.

**Colorado State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Colorado or that purchased or leased a Subject Vehicle and reside in Colorado.

**Connecticut State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Connecticut or that purchased or leased a Subject Vehicle and reside in Connecticut.

**Delaware State**:

All persons or entities named herein that purchased or leased a Subject Vehicle within Delaware or that purchased or leased a Subject Vehicle and reside in Delaware.

**District of Columbia:**

All persons or entities named herein that purchased or leased a Subject Vehicle within the District of Columbia or that purchased or leased a Subject Vehicle and reside in the District of Columbia.

**Florida State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Florida or that purchased or leased a Subject Vehicle and reside in Florida.

**Georgia State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Georgia or that purchased or leased a Subject Vehicle and reside in Georgia.

**Hawaii State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Hawaii or that purchased or leased a Subject Vehicle and reside in Hawaii.

**Idaho State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Idaho or that purchased or leased a Subject Vehicle and reside in Idaho.

**Illinois State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Illinois or that purchased or leased a Subject Vehicle and reside in Illinois.

**Indiana State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Indiana or that purchased or leased a Subject Vehicle and reside in Indiana.

**Iowa State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Iowa or that purchased or leased a Subject Vehicle and reside in Iowa.

**Kansas State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Kansas or that purchased or leased a Subject Vehicle and reside in Kansas.

**Louisiana State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Louisiana or that purchased or leased a Subject Vehicle and reside in Louisiana.

**Maine State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Maine or that purchased or leased a Subject Vehicle and reside in Maine.

**Maryland State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Maryland or that purchased or leased a Subject Vehicle and reside in Maryland.

**Massachusetts State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Massachusetts or that purchased or leased a Subject Vehicle and reside in Massachusetts.

**Michigan State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Michigan or that purchased or leased a Subject Vehicle and reside in Michigan.

**Minnesota State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Minnesota or that purchased or leased a Subject Vehicle and reside in Minnesota.

**Mississippi State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Mississippi or that purchased or leased a Subject Vehicle and reside in Mississippi.

**Missouri State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Missouri or that purchased or leased a Subject Vehicle and reside in Missouri.

**Montana State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Montana or that purchased or leased a Subject Vehicle and reside in Montana.

**Nebraska State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Nebraska or that purchased or leased a Subject Vehicle and reside in Nebraska.

**Nevada State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Nevada or that purchased or leased a Subject Vehicle and reside in Nevada.

**New Hampshire State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within New Hampshire or that purchased or leased a Subject Vehicle and reside in within New Hampshire.

**New Jersey State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within New Jersey or that purchased or leased a Subject Vehicle and reside in New Jersey.

**New Mexico State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within New Mexico or that purchased or leased a Subject Vehicle and reside in New Mexico.

**New York State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within New York or that purchased or leased a Subject Vehicle and reside in New York.

**North Carolina State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within North Carolina or that purchased or leased a Subject Vehicle and reside in North Carolina.

**North Dakota State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within North Dakota or that purchased or leased a Subject Vehicle and reside in North Dakota.

**Ohio State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Ohio or that purchased or leased a Subject Vehicle and reside in Ohio.

**Oklahoma State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within

Oklahoma or that purchased or leased a Subject Vehicle and reside in Oklahoma.

**Oregon State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Oregon or that purchased or leased a Subject Vehicle and reside in Oregon.

**Pennsylvania State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Pennsylvania or that purchased or leased a Subject Vehicle and reside in Pennsylvania.

**Rhode Island State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Rhode Island or that purchased or leased a Subject Vehicle and reside in Rhode Island.

**South Carolina State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within South Carolina or that purchased or leased a Subject Vehicle and reside in South Carolina.

**South Dakota State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within South Dakota or that purchased or leased a Subject Vehicle and reside in South Dakota.

**Tennessee State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Tennessee or that purchased or leased a Subject Vehicle and reside in Tennessee.

**Texas State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Texas or that purchased or leased a Subject Vehicle and reside in Texas.

**U.S. Territory:**

All persons or entities named herein that purchased or leased a Subject Vehicle within a U.S. Territory or that purchased or leased a Subject Vehicle and reside in a U.S. Territory.

**Utah State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Utah or that purchased or leased a Subject Vehicle and reside in Utah.

**Vermont State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Vermont or that purchased or leased a Subject Vehicle and reside in Vermont.

**Virginia State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Virginia or that purchased or leased a Subject Vehicle and reside in Virginia.

**Washington State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Washington or that purchased or leased a Subject Vehicle and reside in Washington.

**West Virginia State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within West Virginia or that purchased or leased a Subject Vehicle and reside in West Virginia.

**Wisconsin State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Wisconsin or that purchased or leased a Subject Vehicle and reside in Wisconsin.

**Wyoming State:**

All persons or entities named herein that purchased or leased a Subject Vehicle within Wyoming or that purchased or leased a Subject Vehicle and reside in Wyoming.

## II.     ESTOPPEL

1473.   Defendants were, and are, under a continuous duty to disclose to Plaintiffs the true character, quality, and nature of the Subject Vehicles, including their emission systems and their compliance with applicable federal and state law, particularly given their misleading advertising statements. Instead, Defendants actively concealed the true character, quality, and nature of the Subject Vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, and performance of the Subject Vehicles.

1474.   Plaintiffs reasonably relied upon Defendants' active concealment of these facts that rendered their statements misleading.

1475.   Based on the foregoing, Defendants are estopped from relying on any statutes of limitation in defense of this action.

## CLAIMS FOR RELIEF

### I.       CLAIMS ASSERTED ON BEHALF OF THE NATIONWIDE PLAINTIFFS

**NATIONWIDE COUNT I**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**("RICO") Violation of 18 U.S.C. § 1962(c)-(d)**

1476.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

1477.   Plaintiffs bring this action against Defendants Fiat, FCA, Marchionne, VM Italy, VM America, Bosch GmbH, and Bosch LLC (inclusively, for purpose of this Count, Defendants are referred to as "RICO Defendants").

1478.   Fiat conducts its business—legitimate and illegitimate—through various affiliates and subsidiaries, like FCA, VM Italy, and VM America, each of which is a separate legal entity. The Bosch Group also conducts its business, both legitimate and illegitimate, through hundreds of companies, subsidiaries, and affiliates, including Bosch GmbH and Bosch LLC.[69] At all relevant times, each of the RICO Defendants has been a "person" under 18 U.S.C. § 1961(3) because each was capable of holding "a legal or beneficial interest in property."

1479.   Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).

1480.   Section 1962(d) makes it unlawful for "any person to conspire to violate" Section

---

[69] *See generally* https://www.bosch.com/bosch-group/ (last accessed on July 19, 2017).

1    1962(c), among other provisions. *See* 18 U.S.C. § 1962(d).

2        1481.   As part of a strategy to expand its North American presence, in 2009, Fiat began its

3    acquisition of one of the "Big 3" U.S. automakers, Chrysler. In November of that year, acting CEO

4    Marchionne unveiled an ambitious 5-year plan to, among other things, roll out "more diesel

5    variants" of Jeep and to give Ram "Light duty (1500)" a "refresh/facelift."[70]

6        1482.   By 2014, Fiat had become Fiat Chrysler Automobiles, Chrysler had become FCA,

7    and VM Motori, a longtime supplier, was now part of the Fiat Chrysler sprawling family of

8    affiliated companies. In May of that year, Marchionne announced another five-year plan at the

9    company's Auburn Hills, Michigan, headquarters to increase Fiat Chrysler's competitiveness

10   against global auto behemoths, such as Toyota, Volkswagen, and General Motors, by increasing

11   annual sales to seven million vehicles by 2018, up from 4.4 million in 2013.[71] Integral to the

12   strategy was the expansion of the "Jeep portfolio" and updates to the "bread-and-butter Ram

13   1500," including "diesel engines."[72]

14       1483.   During this same time frame, emission standards in the United States were

15   ratcheting up. In contrast to other global automakers, like Toyota and Ford, which were focusing

16   on developing hybrid and electric cars, Chrysler—now FCA and under the control of Fiat—took

17   another path: "[r]eflecting its ties with Europe-based Fiat, Chrysler appears to be taking yet another

18   route that focuses less on electrification and ***more heavily on light-duty diesels*** and compressed

---

[70] *See* Todd Lassa, *Fiatapolooza! Chrysler's Five-Year Plan*, *supra* note 6.
[71] *See* Jerry Hirsch and David Undercoffler, *Fiat Chrysler Unveils Aggressive Five-Year Plan*, *supra* note 7.
[72] *See* Christian Seabaugh, *Ram and Ferrari's Place in Fiat Chrysler's Five-Year Plan*, *supra* note 8.

1   natural gas."[73] (Emphasis Added). In 2012, Marchionne observed, "with 2016 'just around the

2   corner' and 2025 not far away given the auto industry's long product-development lead times,

3   'there are big choices to be made[.]'"[74] Marchionne explained that "Chrysler, which is starting to

4   share platforms and powertrains with Fiat, wants to leverage the European auto maker's strengths

5   in **diesels** and CNG-powered vehicles."[75] As one commenter put it at the time, "[f]uel-efficient

6   towing remains a strong point of diesels, and Marchionne says he still is optimistic about the

7   potential of light-duty diesels in the U.S. despite significant emissions challenges."[76]

8           1484.   As it turned out, however, Fiat Chrysler was either unable or unwilling to devise a

9   solution within the constraints of the law. And so, like Volkswagen, they devised one outside of it.

10   Instead of cutting their losses, holding up the Subject Vehicle roll outs, or coming clean, they

11   conspired with VM Italy and VM America and Bosch GmbH and Bosch LLC to install customized

12   emission treatment software (EDCs) in the EcoDiesel®'s engine diesel controls so that the Subject

13   Vehicles could "pass" the EPA and CARB testing. The software disabled or restricted certain

14   aspects of the emission controls during real-world driving conditions, causing the Subject Vehicles

15   to spew up to 25 times the legal limits of NOx. These software controls were concealed from

16   regulators on COC and EO applications for the Subject Vehicles by FCA, thus deceiving the EPA

17   and CARB into approving the Subject Vehicles for sale throughout the United States and

18   California.

19           1485.   To accomplish their scheme or common course of conduct, Fiat, FCA, Marchionne,

---

[73] *See* Drew Winter, *Chrysler Eyes Different Path to Meeting New CAFE Standards*, *supra* note.
[74] *Id.*
[75] *Id.*
[76] *Id.*

VM Italy, VM America, Bosch GmbH, Bosch LLC, and Denner, along with others, had to work together to conceal the truth. Each Defendant was employed by or associated with, and conducted or participated in the affairs of, one or several RICO enterprises (defined below and referred to collectively as the "EcoDiesel® RICO Enterprise"). The purpose of the EcoDiesel® RICO Enterprise was to deceive regulators into believing that the Subject Vehicles were eligible for coverage by a COC and/or EO and compliant with emission standards. The motivation was simple: to increase Defendants' revenues and profits and minimize their losses from the design, manufacture, distribution and sale of the Subject Vehicles and their component parts. As a direct and proximate result of their fraudulent scheme and common course of conduct, the RICO Defendants were able to extract over a billion dollars from consumers. As explained below, their years-long misconduct violated Sections 1962(c) and (d).

## A.   Description of the EcoDiesel® RICO Enterprise

1486.   In an effort to expand its market share in the United States and beyond, Fiat, a publicly-traded Italian-controlled, Dutch-registered company headquartered in London, bought then-Chrysler (now FCA), a separate Delaware company, headquartered in Michigan. Fiat uses FCA to design, market, manufacture and sell the Subject Vehicles and other vehicles under the Chrysler, Dodge, Jeep, Ram, and Fiat brands throughout the United States. FCA also submitted the COC and EO applications for the Subject Vehicles. Fiat used VM Italy and VM America to design and manufacture the EcoDiesel® engines for the Subject Vehicles, which were calibrated in Michigan with Bosch's hidden software. Fiat, FCA, VM Italy, and VM America maintained tight control over the design, manufacture, calibration, and testing of the Subject Vehicles. Bosch also participated, either directly or indirectly, in the conduct of the enterprise's affairs by

developing, writing the software code customized for the Subject Vehicles, and concealing the hidden software installed in the Subject Vehicles in order to allow them to "pass" testing but then disable or restrict certain emission controls during real-world driving conditions.

1487.  At all relevant times, the RICO Defendants, along with other individuals and entities, including unknown third parties involved in the design, calibration, manufacture, testing, marketing, and sale of the Subject Vehicles or the emission controls therein, operated an association-in-fact enterprise, which was formed for the purpose of fraudulently obtaining COCs from the EPA (and EOs from CARB) in order to sell the Subject Vehicles throughout the United States (and California), and through which enterprise they conducted a pattern of racketeering activity under 18 U.S.C. § 1961(4). The enterprise is called the "EcoDiesel® RICO Enterprise."

1488.  At all relevant times, the EcoDiesel® RICO Enterprise constituted a single "enterprise" or multiple enterprises within the meaning of 18 U.S.C. § 1961(4), as legal entities, as well as individuals and legal entities associated-in-fact for the common purpose of engaging in RICO Defendants' unlawful profit-making scheme.

1489.  The association-in-fact EcoDiesel® RICO Enterprise consisted of at least the following entities and individuals, and likely others:

## 1.    The Fiat Chrysler Defendants

1490.  Fiat Chrysler is the seventh-largest automaker in the world based on total annual vehicle sales and is an international automotive group. Fiat is listed on the New York Stock Exchange under the symbol "FCAU" and on the Mercato Telematico Azionario under the symbol "FCA."[77] FCA is not publicly traded and thus has no SEC reporting obligations, but it does have

---

[77] *See About Us – FCA US LLC*, available at
http://www.fcanorthamerica.com/company/AboutUs/Pages/ AboutUs.aspx (last accessed on July 17, 2017)

reporting obligations, protections and responsibilities unique to the State of Delaware. FCA is a distinct legal entity, controlled and owned (indirectly) by Defendant Fiat. Marchionne was the CEO and Chairman of Fiat Chrysler and oversaw the board of directors for FCA. Along with other members of Fiat Chrysler's leadership, Marchionne played a pivotal role in the scheme, common course of conduct, and conspiracy. Marchionne set an aggressive plan for Fiat Chrysler to increase the sales and market share of FCA, relying, in part, on incorporating its diesel experience from the European to the U.S. market. FCA's day-to-day operations are managed by employees of both Fiat and FCA. Fiat's Group Executive Committee are based in FCA's Michigan headquarters. Fiat and FCA worked closely with VM Italy and VM America to develop and calibrate the EcoDiesel® engines for the Subject Vehicles and to gather information for submission to regulators in the COC and EO applications by FCA. Each of these Defendants knew or recklessly disregarded that the Subject Vehicles were unable to (and did not) comply with U.S. emission standards and yet concealed this information from regulators.

1491.   Working with other members of the EcoDiesel® RICO Enterprise, Fiat and FCA, with Marchionne at the helm, conspired to install and conceal emission control software in the EcoDiesel® engines to illegally circumvent stringent U.S. emission standards. Employing this technology, Fiat Chrysler fraudulently obtained COCs and EOs for the Subject Vehicles even though they emit unlawful levels of toxic pollutants into the atmosphere during normal operating conditions. Further, they concealed this information from regulators once questions were raised.

## 2.   **The VM Motori Defendants**

1492.   As explained above, Fiat bought 50% of VM Italy in 2011 and the remaining 50% stake from General Motors in 2013. Fiat Chrysler used VM Italy and VM America to design, calibrate, and manufacture the EcoDiesel® engine to be used in the Subject Vehicles. Fiat and

FCA worked with, and oversaw, VM Italy and VM America in the development and calibration of the engines at Michigan headquarters. Employees from VM Italy and VM America worked jointly on the manufacturing and/or assembling of the engines for the Subject Vehicles in the United States. And VM Italy and VM America performed engine calibrations, including calibrations involving the concealed emission control technology, for the Subject Vehicles. For example, VM Motori's Calibration Leader for the Subject Vehicles was based in Michigan and reported to management at both VM Italy and VM America. Finally, VM Italy and VM America provided information to FCA for inclusion in the COC and EO applications. VM Italy and VM America knew or recklessly disregarded that the EcoDiesel® engines in the Subject Vehicles were unable to comply with U.S. emission standards and yet concealed this information from regulators.

### 3.   __The Bosch Defendants__

1493.   As explained above, the Bosch Defendants supplied the emission control technology at issue—EDC Unit 17s—which were installed in the Subject Vehicles. Bosch GmbH is a multinational engineering and electronics company headquartered in Germany, which has hundreds of subsidiaries and companies, including in the United States. It wholly owns Bosch LLC, a Delaware limited liability company headquartered in Farmington Hills, Michigan. Bosch's sectors and divisions are grouped by subject matter, not location. Mobility Solutions is the Bosch sector at issue, particularly its Diesel Services division, and it encompasses employees of both Bosch GmbH and Bosch LLC. These individuals were responsible for the design, manufacture, development, customization, and supply of the EDC units for the Subject Vehicles.

1494.   Denner has been Chairman and CEO of Bosch since July 2012, after decades of working in Bosch's Engine ECU Development division, managing the development and sale of automotive engine computers, such as the EDC units that were installed in the Subject Vehicles.

Denner fostered Bosch's relationship with key corporate partners, such as Fiat, which brought in millions of dollars in annual revenue for Bosch.

1495.   Bosch worked with Fiat and FCA to develop and implement a specific and unique set of software algorithms to surreptitiously evade emission regulations by deactivating certain controls under real-world driving conditions. Bosch was well aware that the EDC Unit 17 would be used for this purpose. Bosch was also critical to the concealment of these software functions in communications with regulators.

### B.    The EcoDiesel® RICO Enterprise Sought to Increase Defendants' Profits and Revenues.

1496.   The EcoDiesel® RICO Enterprise began as early as 2009, when Fiat began to acquire FCA and later VM Motori. On information and belief, Fiat Chrysler and Bosch entered into an agreement to develop and install EDC Unit 17's into over a hundred thousand Subject Vehicles sold in the United States. It was not until September 2015 that the scheme began to unravel, when U.S. regulators uncovered Volkswagen's defeat devices provided by Bosch and questions were raised as to whether other diesel automakers were cheating, too.

1497.   At all relevant times, the EcoDiesel® RICO Enterprise: (a) had an existence separate and distinct from each RICO Defendant; (b) was separate and distinct from the pattern of racketeering in which the RICO Defendants engaged; and (c) was an ongoing and continuing organization consisting of legal entities, including Fiat and FCA, their network of dealerships, Marchionne, VM Italy, VM America, Bosch GmbH, Bosch LLC, Denner, and other entities and individuals associated for the common purpose of designing, calibrating, manufacturing, distributing, testing, marketing, and selling the Subject Vehicles to consumers as the Nationwide Plaintiffs through fraudulent COCs and EOs, false emissions tests, false or misleading sales tactics

and materials, and deriving profits and revenues from those activities. Each member of the EcoDiesel® RICO Enterprise shared in the bounty generated by the enterprise, *i.e.*, by sharing the benefit derived from increased sales revenue generated by the scheme to defraud Plaintiffs nationwide.[78]

1498.    The EcoDiesel® RICO Enterprise functioned by selling vehicles and component parts to the consuming public. Many of these products are legitimate, including vehicles that do not contain concealed AECDs. However, the RICO Defendants and their co-conspirators, through their illegal Enterprise, engaged in a pattern of racketeering activity, which involves a fraudulent scheme to increase revenue for Defendants and the other entities and individuals associated-in-fact with the Enterprise's activities through the illegal scheme to sell the Subject Vehicles.

1499.    The EcoDiesel® RICO Enterprise engaged in, and its activities affected, interstate and foreign commerce, because it involved commercial activities across state boundaries, such as the marketing, promotion, advertisement and sale or lease of the Subject Vehicles throughout the country, and the receipt of monies from the sale of the same.

1500.    Within the EcoDiesel® RICO Enterprise, there was a common communication network by which co-conspirators shared information on a regular basis. The enterprise used this common communication network for the purpose of manufacturing, marketing, testing, and selling the Subject Vehicles to the general public nationwide.

1501.    Each participant in the EcoDiesel® RICO Enterprise had a systematic linkage to each other through corporate ties, contractual relationships, financial ties, and continuing

---

[78] Fiat and FCA sold more Subject Vehicles, and were able to charge consumers a premium price, by advertising the Subject Vehicles as "clean," "environmentally friendly," and "fuel efficient." As a result, VM Motori sold more "EcoDiesel®" engines and Bosch sold more EDC Units to equip the Subject Vehicles.

coordination of activities. Through the EcoDiesel® RICO Enterprise, the RICO Defendants functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purposes of increasing their revenues and market share and minimizing losses.

1502.   The RICO Defendants participated in the operation and management of the EcoDiesel® Enterprise by directing its affairs, as described herein. While the RICO Defendants participated in, and are members of, the enterprise, they have a separate existence from the enterprise, including distinct legal statuses, different offices and roles, bank accounts, officers, directors, employees, individual personhood, reporting requirements, and financial statements.

1503.   Fiat, FCA, and Marchionne exerted substantial control over the EcoDiesel® RICO Enterprise, and participated in the affairs of the Enterprise, by:

A.     installing emission control software that deactivates or restricts one or more of the controls during real-world driving conditions;

B.     concealing these software functions from regulators;

C.     failing to correct or disable the hidden software when warned;

D.     manufacturing, distributing, and selling the Subject Vehicles that emitted greater pollution than allowable under the applicable regulations;

E.     misrepresenting and omitting (or causing such misrepresentations and omissions to be made) vehicle specifications on COC and EO applications;

F.     introducing the Subject Vehicles into the stream of U.S. commerce without a valid EPA COC and/or CARB EO;

G.     concealing the existence of the emission controls and the unlawfully high emissions from regulators and the public;

H.     persisting in the manufacturing, distribution, and sale of the Subject Vehicles even after questions were raised about the emission testing and discrepancies concerning the same; misleading government regulators as to the nature of the emission control technology and the defects in the Subject Vehicles;

I.     misleading the driving public as to the nature of the emission control technology and the defects in the Subject Vehicles;

J.     designing and distributing marketing materials that misrepresented and/or concealed the defect in the vehicles;

K.     otherwise misrepresenting or concealing the defective nature of the Subject Vehicles from the public and regulators;

L.     illegally selling and/or distributing the Subject Vehicles;

M.     collecting revenues and profits from the sale of such products; and/or

N.     ensuring that the other RICO Defendants and unnamed co-conspirators

1410

1  complied with the scheme or common course of conduct.
2

3  1504.  VM Italy and VM America also participated in, operated and/or directed the
4  EcoDiesel RICO Enterprise by developing an engine that emits high levels of toxic pollutants,
5  calibrating the emission controls to deactivate or diminish reporting during real-world driving
6  conditions, and providing false or misleading information for purposes of supplying it to regulators
7  on COC and/or EO applications.

8  1505.  Bosch GmbH, Bosch LLC, and Denner also participated in, operated and/or
9  directed the EcoDiesel® RICO Enterprise. On information and belief, Denner formed a partnership
10  with Fiat to provide engine management and emission control technology for the Subject Vehicles.
11  Bosch GmbH and Bosch LLC participated in the fraudulent scheme by manufacturing, installing,
12  testing, modifying, and supplying the EDC Unit 17 for the Subject Vehicles. Bosch GmbH and
13  Bosch LLC exercised tight control over the coding and other aspects of the software and closely
14  collaborated with Fiat, FCA, VM Italy, and VM America to develop, customize, and calibrate the
15  software for the Subject Vehicles. Additionally, Bosch GmbH and Bosch LLC continuously
16  cooperated with the other RICO Defendants to ensure that the EDC Unit 17 was fully integrated
17  into the Subject Vehicles. Bosch GmbH and Bosch LLC also participated in the affairs of the
18  Enterprise by concealing the software functions from U.S. regulators and actively lobbying
19  regulators on behalf of "clean diesel." Bosch collected millions of dollars in revenues and profits
20  from the hidden software installed in the Subject Vehicles.

21  1506.  Without the RICO Defendants' willing participation, including Bosch GmbH and
22  Bosch LLC's active involvement in developing and supplying the critical emission control
23  software for the Subject Vehicles, the Enterprise's scheme and common course of conduct would

1411

1    have been unsuccessful.

2        1507.   The RICO Defendants directed and controlled the ongoing organization necessary

3    to implement the scheme at meetings and through communications of which Plaintiffs cannot fully

4    know at present, because such information lies in the Defendants' and others' hands. Similarly,

5    because the defendants often refer to themselves as a group (*i.e.*, "Bosch" rather than "Bosch

6    GmbH" and "Bosch LLC"), Plaintiffs cannot fully know the full extent of each individual

7    corporate entity's involvement in the wrongdoing prior to having access to discovery.

8                        **C.     Mail And Wire Fraud**

9

10       1508.   To carry out, or attempt to carry out, the scheme to defraud, the RICO Defendants,

11   each of whom is a person associated-in-fact with the EcoDiesel® RICO Enterprise, did knowingly

12   conduct or participate, directly or indirectly, in the conduct of the affairs of the Enterprise through

13   a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c),

14   and which employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail

15   fraud) and § 1343 (wire fraud).

16       1509.   Specifically, as alleged herein, the RICO Defendants have committed and/or

17   conspired to commit at least two predicate acts of racketeering activity (*i.e.*, violations of 18 U.S.C.

18   §§ 1341 and 1343), within the past ten years. The multiple acts of racketeering activity that the

19   RICO Defendants committed were related to each other, posed a threat of continued racketeering

20   activity, and therefore constitute a "pattern of racketeering activity." The racketeering activity was

21   made possible by the RICO Defendants' regular use of the facilities, services, distribution

22   channels, and employees of the EcoDiesel® RICO Enterprise. The RICO Defendants participated

23   in the scheme to defraud by using mail, telephone and the Internet to transmit mailings and wires

1    in interstate or foreign commerce.

2        1510.   The RICO Defendants used, directed the use of, and/or caused to be used, thousands

3    of interstate mail and wire communications in service of their scheme through virtually uniform

4    misrepresentations, concealments and material omissions.

5        1511.   In devising and executing the illegal scheme, the RICO Defendants devised and

6    knowingly carried out a material scheme and/or artifice to defraud Plaintiffs or to obtain money

7    from Plaintiffs by means of materially false or fraudulent pretenses, representations, promises, or

8    omissions of material facts. For the purpose of executing the illegal scheme, the RICO Defendants

9    committed these racketeering acts, which number in the thousands, intentionally and knowingly

10   with the specific intent to advance the illegal scheme.

11       1512.   The RICO Defendants' predicate acts of racketeering (18 U.S.C. § 1961(1))

12   include, but are not limited to:

13       A.    Mail Fraud: The RICO Defendants violated 18 U.S.C. §1341 by
14   sending or receiving, or by causing to be sent and/or received, materials via U.S.
15   mail or commercial interstate carriers for the purpose of executing the unlawful
16   scheme to design, manufacture, market, and sell the Subject Vehicles by means of
17   false pretenses, misrepresentations, promises, and omissions.

18       B.    Wire Fraud: The RICO Defendants violated 18 U.S.C. §1343 by
19   transmitting and/or receiving, or by causing to be transmitted and/or received,
20   materials by wire for the purpose of executing the unlawful scheme to defraud and
21   obtain money on false pretenses, misrepresentations, promises, and omissions.

22

23       1513.   The RICO Defendants' uses of the mails and wires include, but are not limited to,

24   the transmission, delivery, or shipment of the following by the RICO Defendants or third parties

25   that were foreseeably caused to be sent as a result of Defendants' illegal scheme:

26       A.    the Subject Vehicles themselves;

1413

B.      component parts for the EcoDiesel® engines;

C.      component parts for the Bosch emission control hardware and software;

D.      false or misleading emission test results;

E.      applications for EPA COCs and CARB EOs that concealed AECDs;

F.      fraudulently-obtained EPA COCs and CARB EOs;

G.      vehicle registrations and plates as a result of the fraudulently-obtained EPA COCs and CARB EOs;

H.      documents and communications that facilitated "passing" emission tests;

I.      false or misleading communications intended to prevent regulators and the public from discovering the true nature of the emission controls and/or AECDs;

J.      sales and marketing materials, including advertising, websites, packaging, brochures, and labeling, concealing the true nature of the Subject Vehicles;

K.      documents intended to facilitate the manufacture and sale of the Subject Vehicles, including bills of lading, invoices, shipping records, reports and correspondence;

L.      documents to process and receive payment for the Subject Vehicles by unsuspecting Plaintiffs, including invoices and receipts;

M.      payments to VM Italy and VM America;

N.      payments to Bosch GmbH and Bosch LLC;

O.      millions of dollars in compensation to Marchionne and Denner;

P.      deposits of proceeds; and/or

Q.      other documents and things, including electronic communications.

R.      The RICO Defendants (or their agents), for the purpose of executing the illegal scheme, sent and/or received (or caused to be sent and/or received) by mail or by private or interstate carrier, shipments of the Subject Vehicles and related documents by mail or a private carrier affecting interstate commerce, including the items described above and alleged below:

| **From** | **To** | **Date** | **Description** |
|---|---|---|---|
| FCA | Bosch LLC | January 2013 | Documents related to agreement to purchase Bosch EDC Unit 17 for 2014 Jeep Grand Cherokee. |

| VM Motori | FCA | January 2013 | Documents related to EcoDiesel® engine for 2014 Jeep Grand Cherokee. |
| FCA, Michigan | FCA Dealerships | July 2013 | Marketing Documents for 2014 Ram 1500 Subject Vehicles. |
| EPA | FCA | September 2013 | COC and related documents for 2014 Jeep Grand Cherokee. |
| EPA | FCA | September 2014 | COC and related documents for 2015 Jeep Grand Cherokee. |
| FCA Warren Truck Assembly | Arrigo Dodge dealership, Sunrise, Florida | November 2015 | Shipment of 2016 Ram 1500 Subject Vehicles. |

1514.   The RICO Defendants (or their agents), for the purpose of executing the illegal scheme, transmitted (or caused to be transmitted) in interstate commerce by means of wire communications, certain writings, signs, signals and sounds, including those items described above and alleged below:

| **From** | **To** | **Date** | **Description** |
| --- | --- | --- | --- |

| Bosch LLC | PR Newswire, New York (and media network around United States) | January 2013 | Press release that Bosch's "clean diesel" technology will be featured in 2014 Jeep Grand Cherokee. |
|---|---|---|---|
| FCA, Michigan | Driving Public Throughout All 50 States | July 2013 | Ram Zone Blog: *The 2014 Ram 1500 with EcoDiesel Engine, Available Soon at a Dealer Near You.* |
| Bosch LLC | FCA | October 2013 | Software and calibration documentation for emission control technology. |
| FCA, Michigan | EPA, Michigan and CARB, California | January 2014 | Certification Summery Information Report with emission test results for 2014 Jeep Grand Cherokee and 2014 Ram 1500. |
| FCA, Michigan | EPA, Michigan and CARB, California | January 2015 | Certification Summery Information Report with emission test results for 2015 Jeep Grand Cherokee and 2015 Ram 1500. |
| FCA, Michigan | EPA, Washington, DC | February 2, 2016 | Email correspondence re: FCA lulling press release concerning compliance of diesel vehicles with applicable emission regulations. |
| EPA, Washington DC | FCA, Michigan | November 30, 2016 | Email correspondence re: conference call between EPA officials and Defendant Marchionne. |

1515. The RICO Defendants also used the internet and other electronic facilities to carry out the scheme and conceal their ongoing fraudulent activities. Specifically, FCA, under the direction and control of Fiat and Marchionne, made misrepresentations about the Subject Vehicles on their websites, YouTube, and through ads online, all of which were intended to mislead regulators and the public about the emission standards and other performance metrics.

1516.    The RICO Defendants also communicated by U.S. mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, dealerships and other third-party entities in furtherance of the scheme.

1517.    The mail and wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct to deceive regulators and consumers and lure consumers into purchasing the Subject Vehicles, which Defendants knew or recklessly disregarded as emitting illegal amounts of pollution, despite their advertising campaign that the Subject Vehicles were "clean diesel" or "clean" diesel cars.

1518.    Many of the precise dates of the fraudulent uses of the U.S. mail and interstate wire facilities have been deliberately hidden and cannot be alleged without access to Defendants' books and records. However, Plaintiffs have described the types of, and in some instances, occasions on which the predicate acts of mail and/or wire fraud occurred. These include thousands of communications to perpetuate and maintain the scheme, including the things and documents described in the preceding paragraphs.

1519.    The RICO Defendants have not undertaken the practices described herein in isolation, but as part of a common scheme and conspiracy. In violation of 18 U.S.C. § 1962(d), the RICO Defendants conspired to violate 18 U.S.C. § 1962(c), as described herein. Various other persons, firms and corporations, including third-party entities and individuals not named as defendants in this Complaint, have participated as co-conspirators with the RICO Defendants in these offenses and have performed acts in furtherance of the conspiracy to increase or maintain revenues, increase market share, and/or minimize losses for the Defendants and their unnamed co-conspirators throughout the illegal scheme and common course of conduct.

1520.    To achieve their common goals, the RICO Defendants hid from the general public

the excessive and unlawful emissions of the Subject Vehicles and obfuscated the true nature and level of the emissions even after regulators raised concerns. The RICO Defendants suppressed and/or ignored warnings from third parties, whistleblowers, and governmental entities about the discrepancies in emissions testing and the concealed auxiliary (or defeat) devices present in the Subject Vehicles.

1521.   With knowledge and intent, the RICO Defendants and each member of the conspiracy, with knowledge and intent, have agreed to the overall objectives of the conspiracy, and have participated in the common course of conduct, to commit acts of fraud and indecency in designing, manufacturing, distributing, marketing, testing, and/or selling the Subject Vehicles (and the emission control technology contained therein).

1522.   Indeed, for the conspiracy to succeed, each of the RICO Defendants and their co-conspirators had to agree to implement and use the similar devices and fraudulent tactics. Specifically, the RICO Defendants committed to secrecy about the concealed AECDs in the Subject Vehicles.

1523.   The RICO Defendants knew and intended that government regulators would rely on their material omissions made about the Subject Vehicles to approve them for importation, marketing, and sale in the United States and each state/territory identified herein. The RICO Defendants knew and intended that consumers would purchase the Subject Vehicles and incur costs as a result.  Plaintiffs' reliance on this ongoing concealment is demonstrated by the fact that they purchased illegal and defective vehicles that never should have been introduced into the U.S. stream of commerce.  In addition, the EPA, CARB, and other regulators relied on the misrepresentations and material concealment and omissions made or caused to be made by the RICO Defendants; otherwise, FCA could not have obtained valid COCs and EOs to sell the Subject

1  Vehicles.

2      1524.   As described herein, the RICO Defendants engaged in a pattern of related and

3  continuous predicate acts for years. The predicate acts constituted a variety of unlawful activities,

4  each conducted with the common purpose of obtaining significant monies and revenues from

5  Plaintiffs based on their misrepresentations and omissions, while providing Subject Vehicles that

6  were worth significantly less than the purchase price paid. The predicate acts also had the same or

7  similar results, participants, victims, and methods of commission.  The predicate acts were related

8  and not isolated events.

9      1525.   The predicate acts had the purpose of generating significant revenue and profits for

10 the RICO Defendants at the expense of Plaintiffs. The predicate acts were committed or caused to

11 be committed by the RICO Defendants through their participation in the EcoDiesel® RICO

12 Enterprise and in furtherance of its fraudulent scheme and were interrelated in that they involved

13 obtaining Plaintiffs' funds and avoiding the expenses associated with remediating the Subject

14 Vehicles.

15     1526.   During the design, manufacture, testing, marketing and sale of the Subject Vehicles,

16 the RICO Defendants shared among themselves technical, marketing, and financial information

17 that revealed the existence of the AECDs contained therein. Nevertheless, the RICO Defendants

18 chose and agreed to disseminate information that deliberately misrepresented the Subject Vehicles

19 as legal, "clean," "environmentally friendly," and "fuel efficient" in their concerted efforts to

20 market and sell them to consumers.

21     1527.   By reason of, and as a result of the conduct of the RICO Defendants, and in

22 particular, their pattern of racketeering activity, Plaintiffs have been injured in their business and/or

23 property in multiple ways, including but not limited to:

A.     Purchase or lease of illegal, defective Subject Vehicles;

B.     Overpayment at the time of purchase or lease for Subject Vehicles purportedly having "EcoDiesel" properties and benefits, and meeting applicable federal and state emissions standards, that did not have these properties or meet these standards;

C.     The value of the Subject Vehicles has diminished;

D.     Other, ongoing out-of-pocket and loss-of-use expenses;

E.     Payment for alternative transportation; and

F.     Loss of employment due to lack of transportation.

1528.   The RICO Defendants' violations of 18 U.S.C. § 1962(c) and (d) have directly and proximately caused economic damage to Plaintiffs' business and property, and Plaintiffs are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**NATIONWIDE COUNT II**
**FRAUD**
**(Common Law)**

1529.   Plaintiffs incorporate by reference all preceding allegations as through fully set forth herein.

### A.     <u>Affirmative Misrepresentation</u>

1530.   Plaintiffs assert this affirmative misrepresentation theory of fraud on behalf of themselves and those Nationwide Plaintiffs to be added later, against the Fiat Chrysler and VM Motori Defendants.

1531.   Fiat Chrysler branded each Subject Vehicle with the EcoDiesel badge. Through the badge, Fiat Chrysler communicated to each Plaintiffs that the Subject Vehicles were, among other things, environmentally friendly.

1420

1532.   This was a material fact, as Fiat Chrysler's own research and communications demonstrate. Fiat Chrysler's representations were false because the Subject Vehicles contain undisclosed emission cheating components that cause them to pollute excessively in real-world driving conditions.

1533.   Fiat Chrysler and VM Motori knew the representations were false and intended Plaintiffs to rely on them.

1534.   Each named Plaintiff decided to buy a Subject Vehicle based in part on the representations communicated through the EcoDiesel badge. Because each Subject Vehicle included the badge and each Plaintiff was exposed to it, a "plausible . . . inference of reliance" can be made for all Plaintiffs. Dkt. 290 at 103 (citing *Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009)).

## B. Fraudulent Concealment: Fuel Economy and Performance Representations

1535.   Plaintiffs assert this fraudulent concealment theory on behalf of themselves against all Defendants.

1536.   Again, Fiat Chrysler branded each Subject Vehicle with the EcoDiesel badge, which communicated not only that the Subject Vehicles were environmentally friendly, but also that they were fuel efficient.

1537.   The fuel economy and performance representations were also the centerpiece of Fiat Chrysler's marketing efforts and featured prominently in virtually every advertisement and consumer communication. As detailed above, through dealership training materials leading to representations at the point of sale, vehicle brochures, the manufacturer websites, print advertisements, television advertisements, and other avenues, Fiat Chrysler pervasively and

1   consistently represented that the Subject Vehicles had best-in-class fuel economy and touted their

2   specific MPG and range, as well as their supposedly superior torque and performance.

3       1538.   Defendants concealed and suppressed the fact that the Subject Vehicles could

4   achieve their fuel efficiency and power only through undisclosed cheating components that cause

5   them to pollute excessively. This was a material fact about which the Defendants had knowledge,

6   and that they concealed from Plaintiffs and to mislead them.

7       1539.   Plaintiffs did not know this fact and could not have discovered it through reasonably

8   diligent investigation.

9       1540.   Defendants had a duty to disclose that the emission treatment technology in the

10  Subject Vehicles is de-activated or reduced under real-world driving conditions because (1) the

11  Defendants had exclusive knowledge of the material, suppressed facts; (2) the Defendants took

12  affirmative actions to conceal the material facts, including by not identifying them for the EPA and

13  CARB; and (3) Fiat Chrysler made partial representations about the environmental friendliness,

14  fuel economy, and performance of the Subject Vehicles that were misleading without disclosure

15  of the fact that the Subject Vehicles contained hidden emission cheating components that caused

16  the Subject Vehicles to pollute excessively in real-world driving conditions.

17      1541.   Each named Plaintiff decided to buy a Subject Vehicle based in part on the fuel

18  economy and power representations made through the EcoDiesel badge and other consumer

19  communications to consumers. *See, e.g.*, ¶¶ 34-96. Because each Subject Vehicle included the

20  badge and each Plaintiffs was exposed to it, and because the fuel economy and performance

21  representations were consistent and pervasive, a "plausible . . . inference of reliance" can be made

22  for all Plaintiffs. Dkt. 290 at 103 (citing *Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009)).

**C.**     **Fraudulent Concealment: Installing and Concealing the Defeat Devices**

1542.   Plaintiffs assert this fraudulent concealment theory on behalf of themselves and those Nationwide Plaintiffs to be named later, against all Defendants.

1543.   Each Defendant committed fraud by installing and calibrating emission control devices in the Subject Vehicles, which were unlawfully concealed from regulators and consumers alike. In uniform advertising and materials provided with each Subject Vehicle, the Fiat Chrysler Defendants concealed from Plaintiffs that the emission treatment technology de-activated under real-world driving conditions.

1544.   The Fiat Chrysler Defendants intentionally concealed, suppressed, and failed to disclose the facts that the Subject Vehicles had defective emission controls and/or emitted unlawfully high levels of pollutants such as NOx. These Defendants, along with VM Motori and the Bosch Defendants, knew or should have known the true facts, due to their involvement in the design, installment, and calibration of the emission treatment technology in the Subject Vehicles. And yet, at no time did any of these Defendants reveal the truth to Plaintiffs. To the contrary, each Defendant concealed the truth, intending for Plaintiffs to rely—which they did.

1545.   A reasonable consumer would not have expected that the emission treatment technology in the Subject Vehicles de-activated under real-world driving conditions or that the Subject Vehicle would spew unmitigated NOx during city or highway driving. Plaintiffs did not know of the facts which were concealed from them by Defendants. Moreover, as consumers, Plaintiffs did not, and could not, unravel the deception on their own.

1546.   Defendants had a duty to disclose that the emission treatment technology is de-activated under real-world driving conditions and that the Subject Vehicles spewed unmitigated

1  NOx during real-world conditions. Defendants had such a duty because the true facts were known

2  and/or accessible only to them and because they knew these facts were not known to or reasonably

3  discoverable by Plaintiffs.

4       1547.   Fiat Chrysler and VM Motori also had a duty to disclose the true nature of the

5  emission controls in light of their statements about the qualities of the EcoDiesel® engines and the

6  Subject Vehicles' emissions levels, which were misleading, deceptive, and incomplete without the

7  disclosure of the fact that the emission treatment technology is de-activated under real-world

8  driving conditions and that the Subject Vehicles spewed unmitigated NOx during real-world

9  conditions. Fiat Chrysler held out the Subject Vehicles as ***reduced emission*** diesel vehicles, when

10  in fact, they were ***unlawfully high*** emission vehicles. Having volunteered to provide information

11  to Plaintiffs, Fiat Chrysler and VM Motori had the duty to disclose the whole truth. On information

12  and belief, Fiat Chrysler has still not made full and adequate disclosures and continues to defraud

13  Plaintiffs by concealing material information regarding the emissions qualities of the Subject

14  Vehicles.

15                               * * *

16       1548.   But for Defendants' fraud, Plaintiffs would not have purchased the Subject

17  Vehicles, or would have paid less for them. Plaintiffs have sustained damage because purchased

18  vehicles that were not as represented and because they own Subject Vehicles that should never

19  have been placed in the stream of commerce and are diminished in value as a result of Defendants'

20  fraud. Accordingly, Defendants are liable to Plaintiffs for damages in an amount to be proven at

21  trial.

22       1549.   Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with

1    intent to defraud; in reckless disregard of the rights of Plaintiffs; and to enrich themselves. Their

2    misconduct warrants an assessment of punitive damages in an amount sufficient to deter such

3    conduct in the future, which amount shall be determined according to proof at trial.

**NATIONWIDE COUNT III**
**IMPLIED AND WRITTEN WARRANTY**
**Magnuson – Moss Warranty Act (15 U.S.C. §§ 2301, et seq.**

8    1550.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth

9    herein.

10   1551.   Plaintiffs bring this action on behalf of themselves against FCA US LLC.

11   1552.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by

12   virtue of 28 U.S.C. § 1332 (a)-(d).

13   1553.   Plaintiffs are "consumers" within the meaning of 15 U.S.C. § 2301(3).

14   1554.   FCA is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)

15   and (5), respectively.

16   1555.   The Subject Vehicles are "consumer products" within the meaning of 15 U.S.C.

17   16§ 2301(1).

18   1556.   15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is

19   damaged by the failure of a warrantor to comply with a written or implied warranty.

20   1557.   The amount in controversy of Plaintiffs' individual claims meets or exceeds $25.00

21   in value. In addition, the amount in controversy meets or exceeds $50,000 in value (exclusive of

22   interest and costs) on the basis of all claims to be determined in this lawsuit.

23   1558.   FCA provided Plaintiffs with "written warranties" and "implied warranties," as

24   identified above, which are covered under 15 U.S.C. § 2301(6) and (7), respectively.

25   1559.   The terms of these warranties became part of the basis of the bargain when Plaintiffs

1425

1   purchased their Subject Vehicles.

2      1560.   FCA breached these written and implied warranties as described in detail above.

3   Without limitation, the Subject Vehicles share a common design defect in that they emit more

4   pollutants than: (a) is allowable under the applicable regulations, and (b) was revealed to

5   regulators, consumers, and the driving public.

6      1561.   Plaintiffs have had sufficient direct dealings with either FCA or its agents

7   (including dealerships) to establish privity of contract between FCA, on the one hand, and

8   Plaintiffs.   Nonetheless, privity is not required here because Plaintiffs are intended third-party

9   beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied

10  warranties. The dealers were not intended to be the ultimate consumers of the Subject Vehicles

11  and have no rights under the warranty agreements provided with the Subject Vehicles; the warranty

12  agreements were designed for and intended to benefit consumers only.

13     1562.         Affording FCA a reasonable opportunity to cure its breach of written

14  warranties would be unnecessary and futile. At the time of sale or lease of each Subject Vehicle,

15  FCA knew, or should have known, of its misrepresentations and/or material omissions concerning

16  the Subject Vehicles' inability to perform as warranted, but nonetheless failed to rectify the

17  situation and/or disclose the design defect. Under the circumstances, the remedies available under

18  any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort

19  to an informal dispute resolution procedure and/or afford FCA a reasonable opportunity to cure its

20  breach of warranties is excused and thereby deemed satisfied.

21     1563.   In addition, given the conduct described herein, any attempts by FCA, in its

22  capacity as a warrantor, to limit the implied warranties in a manner that would exclude coverage

23  of the defect is unconscionable and any such effort to disclaim, or otherwise limit, liability for the

1426

defect is null and void.

1564.   As a direct and proximate result of FCA's breach of the written and implied warranties, Plaintiffs have suffered damages.

1565.   Plaintiffs seek all damages permitted by law, including compensation for the monetary difference between the Subject Vehicles as warranted and as sold; compensation for the reduction in resale value; the cost of purchasing, leasing, or renting replacement vehicles, along with all other incidental and consequential damages, statutory attorney fees, and all other relief allowed by law.

1566.   The warranty laws of each state, which are incorporated into this Count, are set forth below.

       1.     **Alabama**

**BREACH OF EXPRESS WARRANTY**
**(Ala. Code §§ 7-2-313 and 7-2A-210)**

1567.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1568.   Plaintiffs, Autry Hall, Kevin Crew, John Corbin, Robert Mayer, Robert Southern, Micah Hill, James Washington, Quinn Breland, Mike Shelton, Greg Cain, Randal Stephens, Tyler Bridgeman, Alonzo Thomas Stone, Kimberly H. and David W. Whittington, Anthony McNamara, John Roe, Earl French, Richard A. & Betty L. Morrow, Adam Bayless, Thomas A. Crenshaw, Kelly Steely d/b/a Steely Lease Sales, Mildred Fitts, Richard & Annette Peterson, William D. Ross , individually and on behalf of Plaintiffs to be named later bring this action on behalf of themselves against Fiat and FCA.

1569.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

1  vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under §

2  7-2-103(1)(d).

3      1570.  With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

4  motor vehicles under Ala. Code. § 7-2A-103(1)(p).

5      1571.  The Subject Vehicles are and were at all relevant times "goods" within the meaning

6  of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

7      1572.  Federal law requires manufacturers of light-duty vehicles to provide two federal

8  emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

9  Performance Warranty applies to repairs that are required during the first two years or 24,000

10  miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

11  major emission control components are covered for the first eight years or 80,000 miles, whichever

12  comes first. These major emission control components subject to the longer warranty include the

13  catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

14  diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

15  or emission related parts which fail to function or function improperly due to a defect in materials

16  or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

17  comes first, or, for the major emission control components, for eight years or 80,000 miles,

18  whichever comes first.

19      1573.  Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

20  basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

21      1574.  However, Fiat and FCA knew or should have known that the warranties were false

22  and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

1428

sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1575.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1576.   Any opportunity to cure the express breach is unnecessary and futile.

1577.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ala. Code §§ 7-2-314 and 7-2A-212)**

1578.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1579.   Plaintiffs, Autry Hall, Kevin Crew, John Corbin, Robert Mayer, Robert Southern, Micah Hill, James Washington, Quinn Breland, Mike Shelton, Greg Cain, Randal Stephens, Tyler Bridgeman, Alonzo Thomas Stone, Kimberly H. and David W. Whittington, Anthony McNamara, John Roe, Earl French, Richard A. & Betty L. Morrow, Adam Bayless, Thomas A. Crenshaw, Kelly Steely d/b/a Steely Lease Sales, Mildred Fitts, Richard & Annette Peterson, William D.

Ross, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1580.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under § 7-2-6103(1)(d).

1581.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Ala. Code. § 7-2A-103(1)(p).

1582.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

1583.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

1584.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1585.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiffs. The amount of damages due will be proven at trial.

## 2.   <u>Alaska</u>

## BREACH OF EXPRESS WARRANTY

**(Alaska Stat. Ann. §§ 45.02.313 and 45.12.210)**

1586.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1587.   Plaintiffs, Slade D. Howell, Angela Christenson, Wesley S Catlin, John Brady, (for purposes of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1588.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and "sellers" of motor vehicles under § 45.02.103(a)(4).

1589.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

1590.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8)).

1591.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1592.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1593.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1594.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1595.   Any opportunity to cure the express breach is unnecessary and futile.

1596.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212)

1597.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1598.   Plaintiffs, Slade D. Howell, Angela Christenson, Wesley S Catlin, John Brady, (for purposes of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1599.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and "sellers" of motor vehicles under § 45.02.103(a)(4).

1600.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

1601.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

1602.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

1603.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1604.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

1433

damage to Plaintiffs. The amount of damages due will be proven at trial.

3.    **Arizona**

**BREACH OF EXPRESS WARRANTY**
**(Ariz. Rev. Stat. §§ 47-2313 and 47-2A210)**

1605.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1606.    Plaintiffs, Brad W. Lines, Dally Eph Yarbrough, Daniel Smith, Doug Merrell, Joseph Hyte Johnson, Mark Deemy, Michele Carrano, Robert Kroener, Thomas W. Spalding, Michael Boales, Samuel D. Gross, Marvin Rambel, Troy Zapara, Thurman & Rose Dickey, John Rory Carreon, Erick Angelo, Richard & Carol Huff, Kyle M. Griffey, Thang Nguyen, Terry Hargis, Frank Deguzman, Hector Montano, Robin Clark, Preston and Paula Nott, Percy F Gonzales, Sterling Lee Whitley Jr., Salvador Erivez, Jason Johnson, Kevin Stevens, Josh Reid, James & Judy Drury, Ronald Ebann, Andrew Bonnett, Nathan Dawson, (for the purpose of this section, "Plaintiff") bring this action on behalf of themselves against Fiat and FCA.

1607.    Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c), and "sellers" of motor vehicles under § 47-2103(A)(4).

1608.    With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

1609.    The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

1610.    Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000

1434

miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1611.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1612.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1613.   Plaintiff reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. however, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiff.

1614.   Any opportunity to cure the express breach is unnecessary and futile.

1615.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ariz. Rev. Stat. §§ 47-2314 and 47-2A212)

1616.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1617.   Plaintiffs, Brad W. Lines, Dally Eph Yarbrough, Daniel Smith, Doug Merrell, Joseph Hyte Johnson, Mark Deemy, Michele Carrano, Robert Kroener, Thomas W. Spalding, Michael Boales, Samuel D. Gross, Marvin Rambel, Troy Zapara, Thurman & Rose Dickey, John Rory Carreon, Erick Angelo, Richard Huff, Kyle M. Griffey, Thang Nguyen, Terry Hargis, Frank Deguzman, Hector Montano, Robin Clark, Preston and Paula Nott, Percy F Gonzales, Sterling Lee Whitley Jr., Salvador Erivez, Jason Johnson, Kevin Stevens, Josh Reid, James & Judy Drury, Ronald Ebann, Andrew Bonnett, Nathan Dawson, (for the purpose of this section, "Plaintiff") bring this action on behalf of themselves against Fiat and FCA.

1618.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. §§ 47-2104(A) and 47-2a103(c), and "sellers" of motor vehicles under 12 § 47-2103(A)(4).

1619.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. § 47-2a103(A)(16).

1620.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. §§ 47-2105(A) and 47-2a103(A)(8).

1621.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. §§ 47-

2314 and 47-2a212.

1622.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1623.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff. The amount of damages due will be proven at trial.

### 4.   Arkansas

### BREACH OF EXPRESS WARRANTY
### (Ark. Code Ann. §§ 4-2-313 and 4-2A-210)

1624.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1625.   Plaintiffs, Brian & Kim Way, Gary Wainwright, Justin Davis, Kevin Massey, James Mikes, Levi Kimsey, Larry & Daina Wilhelm, Billy & Joseph Welch, Douglas Mettenburg, David Kizzia, Heath Minyard, Ryan Allred, Richard Harris, Theodore Carter, Troy L and Ruth E Jeremias, Steve Spidal, Jr., Keith Wallum, Richie Harris, Kevin Sanders, Patrick Pursel, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1626.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

1627.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Ark. Code Ann. § 4-2A-103(1)(p).

1628.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

1437

of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

1629.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1630.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1631.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1632.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs the Subject Vehicles were designed to pollute

at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiff.

1633.   Any opportunity to cure the express breach is unnecessary and futile.

1634.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ark. Code Ann. §§ 4-2-314 and 4-2A-212)

1635.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1636.   Plaintiffs, Brian & Kim Way, Gary Wainwright, Justin Davis, Kevin Massey, James Mikes, Levi Kimsey, Larry & Daina Wilhelm, Billy & Joseph Welch, Douglas Mettenburg, David Kizzia, Heath Minyard, Ryan Allred, Richard Harris, Theodore Carter, Troy L and Ruth E Jeremias, Steve Spidal, Jr., Keith Wallum, Richie Harris, Kevin Sanders, Patrick Pursel, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1637.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

1638.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Ark. Code Ann. § 4-2A-103(1)(p).

1439

1639.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

1640.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code Ann. §§ 4-10 2-314 and 4-2A-212.

1641.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1642.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff. The amount of damages due will be proven at trial.

**5.**   **California**

**BREACH OF EXPRESS WARRANTY**
**(Cal. Com. Code §§ 2313 and 10210)**

1643.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1644.   Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon, David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong, Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1645.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

1646.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

1647.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8)).

1648.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1649.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1650.   However, Fiat and FCA knew or should have known that the warranties were false

and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1651.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1652.   Any opportunity to cure the express breach is unnecessary and futile.

1653.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### (Cal. Com. Code §§ 2314 and 10212)

1654.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1655.   Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon, David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong, Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1656.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

1657.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

1658.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

1659.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

1660.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1661.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

## VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF EXPRESS WARRANTIES
### (Cal. Civ. Code §§ 1791.2 & 1793.2(d))

1662.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1663.   Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon,

David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong, Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1664.   Plaintiffs who purchased or leased the Subject Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

1665.   The Subject Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

1666.   Fiat Chrysler is a "manufacturer[s]" of the Subject Vehicles within the meaning of Cal. Civ. Code § 1791(j).

1667.   Plaintiffs bought/leased new motor vehicles manufactured by Fiat Chrysler.

1668.   Fiat Chrysler made express warranties to Plaintiffs within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2, as described above.

1669.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles,

1   whichever comes first.

2   1670.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

3   basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

4   1671.   However, Fiat and FCA knew or should have known that the warranties were false

5   and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

6   sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

7   to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

8   therefore, knew that the emission systems contained defects.

9   1672.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

10   emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did

11   not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to

12   pollute at higher than legal limits during normal driving, and could not achieve advertised

13   performance and efficiency metrics without this cheating design. This design and the devices that

14   effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

15   product containing defects that were never disclosed to Plaintiffs.

16   1673.   Any opportunity to cure the express breach is unnecessary and futile.

17   1674.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

18   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

19   1675.   Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, CA Plaintiffs seek an order

20   enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and

21   any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

22   **VIOLATIONS OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR**
23   **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
24   **(Cal. Civ. Code §§ 1791.1 and 1792)**
25

1445

1676.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1677.   Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon, David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong, Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1678.   Plaintiffs who purchased or leased the Subject Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

1679.   The Subject Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

1680.   Fiat Chrysler is a "manufacturer" of the Subject Vehicles within the meaning of Cal. Civ. Code § 1791(j).

1681.   Fiat Chrysler impliedly warranted to Plaintiffs that its Subject Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792, however, the Subject Vehicles do not have the quality that a buyer would reasonably expect.

1682.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

A.   Pass without objection in the trade under the contract description.

B.   Are fit for the ordinary purposes for which such goods are used.

C.   Are adequately contained, packaged, and labeled.

D.   Conform to the promises or affirmations of fact made on the container or label.

1683.  The Subject Vehicles would not pass without objection in the automotive trade because of the defects in the Subject Vehicles' "clean" diesel engine system. Because of the defects in the Subject Vehicles' EcoDiesel® engine systems, they are not in merchantable condition and thus not fit for ordinary purposes.

1684.  The Subject Vehicles are not adequately labeled because the labeling fails to disclose the defects in the Subject Vehicles' diesel engine system. The Subject Vehicles do not conform to the promises and affirmations made by Fiat Chrysler.

1685.  Fiat Chrysler's breach of the implied warranty of merchantability caused damage to Plaintiffs who purchased or leased the defective vehicles. The amount of damages due will be proven at trial.

1686.  Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**BREACH OF EXPRESS CALIFORNIA EMISSIONS WARRANTIES**
**(Cal. Civ. Code § 1793.2, *et seq.*)**

1687.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1688.  Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon, David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong, Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs")

bring this action on behalf of themselves against Fiat and FCA.

1689.   Each Subject Vehicle is covered by express California Emissions Warranties as a matter of law. *See* Cal. Health & Safety Code § 43205; Cal. Code Regs. tit. 13, § 2037.

1690.   The express California Emissions Warranties generally provide "that the vehicle or engine is…[d]esigned, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board." This provision applies without any time or mileage limitation.

1691.   The California Emissions Warranties also specifically warrant Plaintiffs against any performance failure of the emissions control system for three years or 50,000 miles, whichever occurs first, and against any defect in any emission-related part for seven years or 70,000 miles, whichever occurs first.

1692.   California law imposes express duties "on the manufacturer of consumer goods sold in this state and for which the manufacturer has made an express warranty." Cal. Civ. Code § 1793.2.

1693.   Among those duties, "[i]f the manufacturer or its representative in this state is unable to service or repair a new motor vehicle…to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle or promptly make restitution to the buyer" at the vehicle owner's option. *See* Cal. Civ. Code § 1793.2(d)(2).

1694.   Plaintiffs are excused from the requirement to "deliver nonconforming goods to the manufacturer's service and repair facility within this state" because Fiat Chrysler is refusing to accept them and delivery of the California Vehicles "cannot reasonably be accomplished." Cal.

Civ. Code § 1793.2(c).

1695.   This complaint is written notice of nonconformity to Defendants and "shall constitute return of the goods." *Id.*

1696.   In addition to all other damages and remedies, Plaintiffs are entitled to "recover a civil penalty of up to two times the amount of damages" for the aforementioned violation. *See* Cal. Civ. Code § 1794(e)(1). Any "third-party dispute resolution process" offered by Defendants does not relieve Defendants from the civil penalty imposed because Defendants are not offering the process to Plaintiffs for resolution of these California Emissions Warranties issues and the process is not "substantially" compliant. *See* Cal. Civ. Code 2 § 1794(e)(2); Cal. Civ. Code § 1793.22(d); 16 C.F.R. § 703.2.

**6.     Colorado**

**BREACH OF EXPRESS WARRANTY**
**(Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)**

1697.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1698.   Plaintiffs, Andrew Rogers, Douglas L. Bay, Jeff Schoonover, Ken Trousdale, Leslie J. Preston, Steve Conklin, William Akins, Kenyon Shephard, Alfred Herrera, Noel Vazquez, Jason Mull, Jorge Villarreal, Jose Castro, Ken Kroschel, Michael Gides, David Coop, Casey & Ashley Knutson, Todd Dombek, Ernest and Selina Mascarenas, Restoration Services Group Inc. Michael Whittenmore, Ralph Landi, Joshua Herrera, Jason Vermillion, Robert Bank, Daniel and Cynthia Bonifas, Ryan Renfro, Kyle W. Dreas, Roland Begay, Doug Conrad, Frances & Carl Roberts, Jimmie James & Tamara James, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1699.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

1700.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

1701.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

1702.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1703.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1704.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

sold and leased to Plaintiffs were designed to deactivate under real- world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1705.  Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1706.  Any opportunity to cure the express breach is unnecessary and futile.

1707.  As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-212)

1708.  Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1709.  Plaintiffs, Andrew Rogers, Douglas L. Bay, Jeff Schoonover, Ken Trousdale, Leslie J. Preston, Steve Conklin, William Akins, Kenyon Shephard, Alfred Herrera, Noel Vazquez, Jason Mull, Jorge Villarreal, Jose Castro, Ken Kroschel, Michael Gides, David Coop, Casey & Ashley Knutson, Todd Dombek, Ernest and Selina Mascarenas, Restoration Services Group Inc. Michael Whittenmore, Ralph Landi, Joshua Herrera, Jason Vermillion, Robert Bank, Daniel and Cynthia Bonifas, Ryan Renfro, Kyle W. Dreas, Roland Begay, Doug Conrad, Frances & Carl Roberts, Jimmie James & Tamara James, (for the purpose of this section, "Plaintiffs") bring this

1  action on behalf of themselves against Fiat and FCA.

2  1710.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

3  under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-

4  2-103(1)(d).

5  1711.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

6  motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

7  1712.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

8  of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

9  1713.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

10  ordinary purpose for which vehicles are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-

11  2-313 and 4-2.5-212.

12  1714.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

13  condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

14  Vehicles were not in merchantable condition because their design violated state and federal laws.

15  The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

16  federal emission standards.

17  1715.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

18  damage to the Plaintiffs. The amount of damages due will be proven at trial.

19      **7.       Connecticut**

20                      **BREACH OF EXPRESS WARRANTY**
21                      **(Conn. Gen. Stat. Ann. § 42A-2-313)**
22

23  1716.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

24  fully set forth herein.

1452

1717.   Plaintiffs, Sean Conran, Cody Langlois, Robert W. Ford, Todd Ruttura, Robert Perron, III, Kevin Cudgma, Tomas Jakubcak, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1718.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

1719.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1720.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1721.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and

to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1722.   Plaintiff reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1723.   Any opportunity to cure the express breach is unnecessary and futile.

1724.   Due to Fiat and FCA's breach of warranty as set forth herein, Plaintiff assert as an additional and/or alternative remedy, as set forth in Conn. Gen. Stat. Ann. § 42a-2-711, for a revocation of acceptance of the goods and for a return to Plaintiff of the purchase price of all Subject Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed under Conn. Gen. Stat. Ann. §§ 42a-2-711 and 42a-2-608.

1725.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(Conn. Gen. Stat. Ann. § 42A-2-314)**

1726.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1727.   Plaintiffs Sean Conran, Cody Langlois, Robert W. Ford, Todd Ruttura, Robert

1454

Perron, III, Kevin Cudgma, Tomas Jakubcak, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1728.  Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Conn. Gen. Stat. Ann. § 42a-2-104(1).

1729.  A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Conn. Gen. Stat. Ann. § 42a-2-314.

1730.  Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1731.  Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff. The amount of damages due will be proven at trial.

### 8.     <u>Delaware</u>

**BREACH OF EXPRESS WARRANTY**
**(6 Del. Code §§ 2-313 and 2A-210)**

1732.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1733.  Plaintiff, Roy McKenney and others to be named at a later date, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1734.  Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-

103(1)(d).

1735.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

1736.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

1737.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1738.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject Vehicles.

1739.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions,

1 and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

2 therefore, knew that the emission systems contained defects.

3   1740.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

4 emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not

5 perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute

6 at higher than legal limits during normal driving, and could not achieve advertised performance

7 and efficiency metrics without this cheating design. This design and the devices that effectuate it

8 are defects. Fiat and FCA therefore breached their express warranty by providing a product

9 containing defects that were never disclosed to the Plaintiffs.

10   1741.   Any opportunity to cure the express breach is unnecessary and futile.

11   1742.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

12 the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at

13 trial.

14   **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
15   **(6 Del. Code §§ 2-314 and 2A-212)**
16

17   1743.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

18 paragraphs as though fully set forth herein.

19   1744.   Plaintiff, Roy McKenney and others to be named at a later date, (for the purpose of

20 this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

21   1745.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

22 under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

23   1746.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

1457

1    motor vehicles under 6 Del. C. § 2A-103(1)(p).

2        1747.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

3    of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

4        1748.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

5    ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314 and

6    2A-212.

7        1749.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

8    condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

9    Vehicles were not in merchantable condition because their design violated state and federal laws.

10   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

11   federal emission standards.

12       1750.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

13   damage to the Plaintiffs. The amount of damages due will be proven at trial.

14       **9.      District of Columbia**

15       **BREACH OF EXPRESS WARRANTY**
16       **(D.C. Code §§ 28:2-313 and 28:2A-210)**

17
18       1751.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

19   fully set forth herein.

20       1752.   This count is brought on behalf of the District of Columbia Plaintiffs against Fiat

21   and FCA.

22       1753.   Fiat and FCA are ad were at all relevant times "merchants: with respect to motor

23   vehicles under D.C. Code §§ 28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles

1   under § 28:2-103(1)(d).

2   1754.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

3   motor vehicles under D.C. Code § 28:2A-103(a)(16).

4   1755.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

5   of D.C. Code §§ 28:2-105(1) and 28:2A-103(a)(8).

6   1756.   Federal law requires manufacturers of light-duty vehicles to provide two federal

7   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

8   Performance Warranty applies to repairs that are required during the first two years or 24,000

9   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

10  major emission control components are covered for the first eight years or 80,000 miles, whichever

11  comes first. These major emission control components subject to the longer warranty include the

12  catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

13  diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

14  or emission related parts which fail to function or function improperly due to a defect in materials

15  or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

16  comes first, or, for the major emission control components, for eight years or 80,000 miles,

17  whichever comes first.

18  1757.   Fiat and FCA provided these warranties to the District of Columbia Plaintiffs.

19  These warranties formed the basis of the bargain that was reached when the District of Columbia

20  Plaintiffs purchased or leased their Subject Vehicles.

21  1758.   However, Fiat and FCA knew or should have known that the warranties were false

22  and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

23  sold and leased to the District of Columbia were designed to deactivate under real-world driving

1459

conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1759.   The District of Columbia Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to the District of Columbia Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to the District of Columbia Plaintiffs.

1760.   Any opportunity to cure the express breach is unnecessary and futile.

1761.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, the District of Columbia Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(D.C. Code §§ 28:2-314 and 28:2A-212)**

1762.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1763.   This count is brought on behalf of the District of Columbia Plaintiffs against Fiat and FCA.

1764.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under D.C. Code §§ 28:2-104(1) and 28:2A-103(a)(20), and "sellers" of motor vehicles under § 28:2-103(1)(d).

1460

1765.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under D.C. Code § 28:2A-103(a)(16).

1766.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of D.C. Code §§ 28:2-105(1) and 28:2A-103(a)(8).

1767.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to D.C. Code §§ 28:2-314 and 28:2A-212.

1768.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1769.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the District of Columbia Plaintiffs. The amount of damages due will be proven at trial.

### 10.   **Florida**

**BREACH OF EXPRESS WARRANTY**
**(Fla. Stat. §§ 672.313 and 680.21)**

1770.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1771.   Plaintiffs, Changping Wei, Derik Fairchild, Dominick Bianchi, Dozier Holton L. Browning, III, Jeffrey S. & Brandon M. Woodall, Jeremey Hornack, John Neumayer, Kevin Morrison, Michael DiVona, Monte Paul & Devera Jean Oberlee, Randall S. Holdaway, Richard Carr, Roberto Berenguer-Serrano, Sherri Collins, Stephen Swanson, Steven Fitzgerald, Steven Chauvin, William Patrick, Jr., Gary Luster & Phyllis Marie Anderson, Matthew Luckett, Brian Ashworth, Dean Allmon, Gilder L. Whitlock, Nicky Herrington, Peter Cacoperdo, Robert Allen,

Ronald Malcolm Macdonald, Ernest Hodgdon, Jeffrey Greenwood, Brandon Crookes, Robert Bell, Nathan Baisley, Judy & Roland Simmons, Gerald & Sharon Parker, Jimmy Steen, Steven M. Pender, Janelle & Bryan Wiggins, Allen Kevin Peacock, Osvaldo Romero, Robert Elie, Manuel & Michael Gonzalez, Christofer, Askervold, David & Giesela Martinez, Timothy Leathers, Joseph Dick-Griffith, Martin Mannion, Alonzo Thomas Stone, Mark Edward Harrell, Nicholas M. and Dana Golowich, Nathan Groom, Charles E. and Carol S. Crozier, Melissa Maldonado, Christina Kennedy, Judith Mary Bressler, Richard and Nancy Payne, Kimberly Oglesby, Rebecca M. Brace, Alicia Jean Hicken, Gordon Leroy Patterson, Tim Stewart, Micheas Vannes, Ben Korngold, John Baker, Brian Kirimdar d/b/a Aquafarm Organics, William Alfred Brown, Jr., Brad Hoben, Elizabeth Catherine Dunlap, Sergio Braga, David Hanson, Eugenio & Marsha Vargas, Jr., William & Marlene Loewen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1772.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

1773.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

1774.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

1775.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1776. Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1777. However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1778. Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1779. Any opportunity to cure the express breach is unnecessary and futile.

1780.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Fla. Stat. §§ 672.314 and 680.212)**

1781.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1782.   Plaintiffs, Changping Wei, Derik Fairchild, Dominick Bianchi, Dozier Holton L. Browning, III, Jeffrey S. & Brandon M. Woodall, Jeremey Hornack, John Neumayer, Kevin Morrison, Michael DiVona, Monte Paul & Devera Jean Oberlee, Randall S. Holdaway, Richard Carr, Roberto Berenguer-Serrano, Sherri Collins, Stephen Swanson, Steven Fitzgerald, Steven Chauvin, William Patrick, Jr., Gary  & Phyllis Marie Luster Anderson, Matthew Luckett, Brian Ashworth, Dean Allmon, Gilder L. Whitlock, Nicky Herrington, Peter Cacoperdo, Robert Allen, Ronald Malcolm Macdonald, Ernest Hodgdon, Jeffrey Greenwood, Brandon Crookes, Robert Bell, Nathan Baisley, Judy & Roland Simmons, Gerald & Sharon Parker, Jimmy Steen, Steven M. Pender, Janelle & Bryan Wiggins, Allen Kevin Peacock, Osvaldo Romero, Robert Elie, Manuel & Michael Gonzalez, Christofer, Askervold, David & Giesela Martinez, Timothy Leathers, Joseph Dick-Griffith, Martin Mannion, Alonzo Thomas Stone, Mark Edward Farrell, Nicholas M. and Dana Golowich, Nathan Groom, Charles E. and Carol S. Crozier, Melissa Maldonado, Christina Kennedy, Judith Mary Bressler, Richard and Nancy Payne, Kimberly Oglesby, Rebecca M. Brace, Alicia Jean Hicken, Gordon Leroy Patterson, Tim Stewart, Micheas Vannes, Ben Korngold, John Baker, Brian Kirimdar d/b/a Aquafarm Organics, William Alfred Brown, Jr., Brad Hoben, Elizabeth Catherine Dunlap, Sergio Braga, David Hanson, Eugenio & Marsha Vargas, Jr., (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1783.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

1784.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

1785.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

1786.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

1787.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1788.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

### 11.   <u>Georgia</u>

**BREACH OF EXPRESS WARRANTY**
**(Ga. Code. Ann. §§ 11-2-313 and 11-2A-210)**

1789.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1790.   Plaintiffs, Dana L. Gregory, Chad Trahan, Englebert Cherrington, Marcel

Lamoureux, Randall and Melissa Westmoreland, Micah Hill, Edwin B. Holton, John Victor Lowe, Brian Kicak, Christopher Tucker, Michael A. Scott, Sam Ussery, Seymour Bidwell, Christian Lizama, Anthony J. Eiermann, Brandon and Katherine Horton, Wayne Guyer, William Hunt, Judy and Tom Crawford, Michael Cash, Vincent Princeotto, Tyler Perkins, Richard Carr, Roger Mack, Maurice Johnson, Brody Sheppard, Robert Pitts Jr, Duane E. Morton Sr, Stanley E Lowe, Allen Marcus Hutcheson, Donald Gilman, Dan Gravitt,  George Graham, David Cich, Damian L. Sigman, Claude Akley, Christopher Collins, Scott Harrington, Calvin Ball d/b/a Tower Construction Co., Dawnetta Janene Holladay, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1791.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles 5 under § 11-2-103(1)(d).

1792.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

1793.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

1794.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the

catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1795.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1796.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1797.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1798.   Any opportunity to cure the express breach is unnecessary and futile.

1799.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

1467

1    Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

2    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
3    **(Ga. Code. Ann. §§ 11-2-314 and 11-2A-212)**
4
5    1800.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

6    paragraphs as though fully set forth herein.

7    1801.   Plaintiffs, Dana L. Gregory, Chad Trahan, Englebert Cherrington, Marcel

8    Lamoureux, Randall and Melissa Westmoreland, Micah Hill, Edwin B. Holton, John Victor Lowe,

9    Brian Kicak, Christopher Tucker, Michael A. Scott, Sam Ussery, Seymour Bidwell, Christian

10   Lizama, Anthony J. Eiermann, Brandon and Katherine Horton, Wayne Guyer, William Hunt, Judy

11   and Tom Crawford, Michael Cash, Vincent Princeotto, Tyler Perkins, Richard Carr, Roger Mack,

12   Maurice Johnson, Brody Sheppard, Robert Pitts Jr, Duane E. Morton Sr, Stanley E Lowe, Allen

13   Marcus Hutcheson, Donald Gilman, Dan Gravitt,  George Graham, David Cich, Damian L.

14   Sigman, Claude Akley, Christopher Collins, Scott Harrington, Calvin Ball d/b/a Tower

15   Construction Co., Dawnetta Janene Holladay, (for the purpose of this section, "Plaintiffs") bring

16   this action on behalf of themselves against Fiat and FCA.

17   1802.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

18   under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under §

19   11-2-103(1)(d).

20   1803.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

21   motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

22   1804.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

23   of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

24   1805.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

25   ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11-

1   2-314 and 11-2A-212.

2   1806.  Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

3   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

4   Vehicles were not in merchantable condition because their design violated state and federal laws.

5   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

6   federal emission standards.

7   1807.  Fiat's and FCA's breaches of the implied warranty of merchantability caused

8   damage to the Plaintiffs. The amount of damages due will be proven at trial.

9       **12.    Hawaii**

10      **BREACH OF EXPRESS WARRANTY**
11      **(Haw. Rev. Stat. §§ 490:2-313 and 490:2A-210)**
12

13      1808.  Plaintiffs reallege and incorporate by reference all preceding allegations as though

14  fully set forth herein.

15      1809.  Plaintiffs, Ronald Goca Maryam Khayami, (for the purpose of this section,

16  "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

17      1810.  Fiat and FCA are and were at all relevant times "merchants" with respect to motor

18  vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and "sellers" of motor

19  vehicles under § 490:2-103(1)(d).

20      1811.  With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

21  motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

22      1812.  The Subject Vehicles are and were at all relevant times "goods" within the meaning

23  of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

24      1813.  Federal law requires manufacturers of light-duty vehicles to provide two federal

25  emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

1469

Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1814.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject Vehicles.

1815.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1816.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it

1   are defects. Fiat and FCA therefore breached their express warranty by providing a product

2   containing defects that were never disclosed to the Plaintiffs.

3        1817.   Any opportunity to cure the express breach is unnecessary and futile.

4        1818.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

5   the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at

6   trial.

7                        **BREACH OF THE IMPLIED**
8                   **WARRANTY OF MERCHANTABILITY**
9                  **(Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212)**
10
11
12       1819.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

13  paragraphs as though fully set forth herein.

14       1820.   Plaintiffs, Ronald Goca Maryam Khayami, (for the purpose of this section,

15  "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

16       1821.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

17  under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and "sellers" of motor vehicles under

18  § 490:2-103(1)(d).

19       1822.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

20  motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

21       1823.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

22  of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

23       1824.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

24  ordinary purpose for which vehicles are used is implied by law pursuant to Haw. Rev. Stat.§§

25  490:2-314 and 490:2A-212.

26       1825.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

                                        1471

1   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

2   Vehicles were not in merchantable condition because their design violated state and federal laws.

3   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

4   federal emission standards.

5       1826.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

6   damage to the Plaintiffs. The amount of damages due will be proven at trial.

7

8       **13.**    <u>**Idaho**</u>

9                     **BREACH OF EXPRESS WARRANTY**
10                    **(Idaho Code §§ 28-2-313 and 28-12-210)**
11
12
13      1827.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

14  fully set forth herein.

15      1828.   Plaintiffs, James & Linda Watkins, Larry Maxa, Neil Durrant, Tommy H. Brown,

16  Kilo & Natalie Varble, Alex Lopes, Alvin McCoy, Michael Shaak & Susie Patterson, Kris A.

17  Shepherd, Beverly Gayle VanArkel, Tim and LeAnne Kindred, Leroy and Shalada Bengtson,

18  Andriy Kharchenko, Mark Hathaway, Jason Dibben, Mike Karpowitz, Kenneth and Amanda

19  Hancock, Dennis and Dianna Wallace Little, Niles Jeremy Behler, Nicholas & Samantha Linde,

20  Chris & Kimberly Wilkinson, Scott Witherow, Steve Staley, Weldon Irvin, Lannis Harold

21  Allmaras, Adrienne Dunford & Jason Blacker, Jeremy Stevens d/b/a JJ Flooring (for the purpose

22  of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

23      1829.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

24  vehicles under Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under

25  § 28-2-103(1)(d).

26      1830.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

1    motor vehicles under Idaho Code § 28-12-103(1)(p).

2        1831.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

3    of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h)).

4        1832.   Federal law requires manufacturers of light-duty vehicles to provide two federal

5    emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

6    Performance Warranty applies to repairs that are required during the first two years or 24,000

7    miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

8    major emission control components are covered for the first eight years or 80,000 miles, whichever

9    comes first. These major emission control components subject to the longer warranty include the

10   catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

11   diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

12   or emission related parts which fail to function or function improperly due to a defect in materials

13   or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

14   comes first, or, for the major emission control components, for eight years or 80,000 miles,

15   whichever comes first.

16       1833.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

17   basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

18       1834.   However, Fiat and FCA knew or should have known that the warranties were false

19   and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

20   sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

21   to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

22   therefore, knew that the emission systems contained defects.

23       1835.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1836.   Any opportunity to cure the express breach is unnecessary and futile.

1837.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Idaho Code §§ 28-2-314 and 28-12-212)

1838.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1839.   Plaintiffs, James & Linda Watkins, Larry Maxa, Neil Durrant, Tommy H. Brown, Kilo & Natalie Varble, Alex Lopes, Alvin McCoy, Michael Shaak& Susie Patterson, Kris A. Shepherd, Beverly Gayle VanArkel, Tim and LeAnne Kindred, Leroy and Shalada Bengtson, Andriy Kharchenko, Mark Hathaway, Jason Dibben, Mike Karpowitz, Kenneth and Amanda Hancock, Dennis and Dianna Wallace Little, Niles Jeremy Behler, Nicholas & Samantha Linde, Chris & Kimberly Wilkinson, Scott Witherow, Steve Staley, Weldon Irvin, Lannis Harold Allmaras, Adrienne Dunford & Jason Blacker, Jeremy Stevens d/b/a JJ Flooring, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1840.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2-

103(1)(d).

1841.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

1842.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

1843.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant Idaho Code §§ 28-2-314 and 28-12-212.

1844.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1845.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

### 14.   Illinois

**BREACH OF EXPRESS WARRANTY**
**(810 Ill. Comp. Stat. §§ 5/2-313 and 5/2A-210)**

1846.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1847.   Plaintiffs, Bruce Carr, Casey Sauerhage, Dariusz Kulon, Donald E. & Brenda S. Keith, Edward Dampf, Gerry Tassell, Joe Laverdiere, Larry Sosamon, Michael Thomas, Randy

1475

Peterson, Russell and Josella Tabaka, Charles Piazza, Jim Heiser, Joseh Francis, Matt Buck, James Hadley, Donald Long, Jack Pudzis, Tom Carlin, Michael Batdroff, Nicholas Hess, Timothy and Nancy Schindlbeck, Almantas Stankevicius, Mike Sanders, John S. Fox, Erich Hannah, Kasimir Kedzierski, Aaron Mills, Kevin Kerner, Steven Michael Erickson, Dana Traeger & Susan McKeown, Tim Billing, Bruce Simpson, Dana Pitchford, Spencer Giardini, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1848.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

1849.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

1850.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h).

1851.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

1  comes first, or, for the major emission control components, for eight years or 80,000 miles,

2  whichever comes first.

3  1852.  Fiat and FCA provided these warranties to Plaintiff. These warranties formed the

4  basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

5  1853.  However, Fiat and FCA knew or should have known that the warranties were false

6  and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

7  sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and

8  to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

9  therefore, knew that the emission systems contained defects.

10  1854.  Plaintiff reasonably relied on Fiat's and FCA's express warranties concerning

11  emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not

12  perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute at

13  higher than legal limits during normal driving, and could not achieve advertised performance and

14  efficiency metrics without this cheating design. This design and the devices that effectuate it are

15  defects. Fiat and FCA therefore breached their express warranty by providing a product containing

16  defects that were never disclosed to Plaintiff.

17  1855.  Any opportunity to cure the express breach is unnecessary and futile.

18  1856.  As a direct and proximate result of Fiat's and FCA's breach of express warranties,

19  Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

20  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
21  **(810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212)**
22
23  1857.  Plaintiffs reallege and incorporate by reference all allegations of the preceding

24  paragraphs as though fully set forth herein.

25  1858.  Plaintiffs, Bruce Carr, Casey Sauerhage, Dariusz Kulon, Donald E. & Brenda S.

1477

Keith, Edward Dampf, Gerry Tassell, Joe Laverdiere, Larry Sosamon, Michael Thomas, Randy Peterson, Russell and Josella Tabaka, Charles Piazza, Jim Heiser, Joseh Francis, Matt Buck, James Hadley, Donald Long, Jack Pudzis, Tom Carlin, Michael Batdroff, Nicholas Hess, Timothy and Nancy Schindlbeck, Almantas Stankevicius, Mike Sanders, John S. Fox, Erich Hannah, Kasimir Kedzierski, Aaron Mills, Kevin Kerner, Steven Michael Erickson, Dana Traeger & Susan McKeown, Tim Billing, Bruce Simpson, Dana Pitchford, Spencer Giardini, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1859.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under 810 Ill. Comp. Stat. §§ 5/2-104(1) and 5/2A-103(3), and "sellers" of motor vehicles under § 5/2-103(1)(d).

1860.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under 810 Ill. Comp. Stat. § 5/2A-103(1)(p).

1861.   The Subject Vehicles are and were at all relevant times "goods" within the meaning 810 Ill. Comp. Stat. §§ 5/2-105(1) and 5/2A-103(1)(h)).

1862.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant 810 Ill. Comp. Stat. §§ 28-2-314 and 28-12-212.

1863.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1864.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

1   damage to the Plaintiff. The amount of damages due will be proven at trial.

2         **15.**       **Indiana**

3                     **BREACH OF EXPRESS WARRANTY**
4                   **(Ind. Code §§ 26-1-2-313 and 26-1-2.1-210)**

6   1865.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

7   fully set forth herein.

8   1866.   Plaintiffs, Theodore Grubbs, Robert Alpers d/b/a Anything Automotive, Charles

9   Suder, Herbert Likens, Stacey and P. Elaine Wilson, Chip Neer, Kevin V. Anderson, Madi and

10  Mark Lee, Michael Crisp, John Oliver Galloway, Michael Donawerth, James and Susan Cherry,

11  Jennifer and Richard Stevens, Larry D Garrison, Shawn Craig, David Gabriel and Juanita Navarro

12  Flores, Leah and Bobby Ladley, Clarke Dunlap, Gaston Barrett c/o Walton Stinson, Richard

13  Hocott, Brian J Kellams, James & Annette Jarvis, Ron Smith, David Williamson, Carl Ehrhart,

14  Sharon Daily, Veryl Adams, Jack & Debra Heylmann, (for the purpose of this section, "Plaintiff")

15  brings this action on behalf of themselves against Fiat and FCA.

16  1867.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

17  vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles

18  under § 26-1-2-103(1)(d).

19  1868.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

20  motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

21  1869.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

22  of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

23  1870.   Federal law requires manufacturers of light-duty vehicles to provide two federal

24  emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

25  Performance Warranty applies to repairs that are required during the first two years or 24,000

miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1871.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1872.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1873.   Plaintiff reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiff.

1874.   Any opportunity to cure the express breach is unnecessary and futile.

1875.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Ind. Code §§ 26-1-2-314 and 26-1-2.1-212)**

1876.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1877.   Plaintiffs, Theodore Grubbs, Robert Alpers d/b/a Anything Automotive, Charles Suder, Herbert Likens, Stacey and P. Elaine Wilson, Chip Neer, Kevin V. Anderson, Madi and Mark Lee, Michael Crisp, John Oliver Galloway, Michael Donawerth, James and Susan Cherry, Jennifer and Richard Stevens, Larry D Garrison, Shawn Craig, David Gabriel and Juanita Navarro Flores, Leah and Bobby Ladley, Clarke Dunlap, Gaston Barrett c/o Walton Stinson, Richard Hocott, Brian J Kellams, James & Annette Jarvis, Ron Smith, David Williamson, Carl Ehrhart, Sharon Daily, Veryl Adams, Jack & Debra Heylmann, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1878.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2-104(1) and 26-1-2.1-103(3), and "sellers" of motor vehicles under 5 § 26-1-2-03(1)(d).

1879.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

1880.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2-105(1) and 26-1-2.1-103(1)(h).

1881.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

1882.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1883.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff. The amount of damages due will be proven at trial.

### 16.   Iowa

**BREACH OF EXPRESS WARRANTY (Iowa Code §§ 554.2313 and 554.13210)**

1884.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1885.   Plaintiffs, Huegerich Farms, James Steer, Jr., James Lines, Terri Turnbull, Chad James Carter, Timothy Shanks, Richard Rausch, Gabrial M. Haugland, Gabrial & Audrey McConnell, Sean Perryman, Kent Gibbons, Donald Raymond Dixon, Chris Dougherty, Tamara Kay Domonoske, James Repp, Jim Hall, Scott W Toms, Mark and Carol Feld, Justin Joseph Manke, Craig Stout, Steve & Jill Aman, Tim Sether, Ken Levene, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1886.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

1887.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

1888.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

1889.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Iowa Code §§ 554.2314 and 554.13212)

1890.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1891.   Plaintiffs, Huegerich Farms, James Steer, Jr., James Lines, Terri Turnbull, Chad

James Carter, Timothy Shanks, Richard Rausch, Gabrial M. Haugland, Gabrial & Audrey McConnell, Sean Perryman, Kent Gibbons, Donald Raymond Dixon, Chris Dougherty, Tamara Kay Domonoske, James Repp, Jim Hall, Scott W Toms, Mark and Carol Feld, Justin Joseph Manke, Craig Stout, Steve & Jill Aman, Tim Sether, Ken Levene, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1892.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

1893.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

1894.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

1895.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code 7 §§ 554.2314 and 554.13212.

1896.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1897.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff. The amount of damages due will be proven at trial.

**17.     Kansas**

**BREACH OF EXPRESS WARRANTY**
**(Kan. Stat. Ann. §§ 84-2-314 and 84-2A-210)**

1898.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1899.   Plaintiffs, Brian & Meredith Quimby, Brian Barker, Bruce Bolen, Eric Becker, Greg Long, Raymond L. White, Robert Morris, Roger Hinton, K.C. Moore, Wendell Espeland, John T. Nickel, Roger Hinton, Michael & Deborah Eilert, Brent Cole, Matthew Russell Peters, Derle Mork, Bruce & JoDawn Chrz, Robert Montgomery, Nathan & Tracey Andrews, Russell S. & Desiree G. Lewis, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1900.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1901.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

1902.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1903.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

1    diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

2    or emission related parts which fail to function or function improperly due to a defect in materials

3    or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

4    comes first, or, for the major emission control components, for eight years or 80,000 miles,

5    whichever comes first.

6         1904.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed

7    the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject

8    Vehicles.

9         1905.   However, Fiat and FCA knew or should have known that the warranties were false

10   and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

11   sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions,

12   and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

13   therefore, knew that the emission systems contained defects.

14        1906.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

15   emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not

16   perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute

17   at higher than legal limits during normal driving and could not achieve advertised performance

18   and efficiency metrics without this cheating design. This design and the devices that effectuate it

19   are defects. Fiat and FCA therefore breached their express warranty by providing a product

20   containing defects that were never disclosed to the Plaintiffs.

21        1907.   Any opportunity to cure the express breach is unnecessary and futile.

22        1908.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

1486

the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

1909.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject Vehicles.

1910.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1911.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to the Plaintiffs.

1912.   Any opportunity to cure the express breach is unnecessary and futile.

1913.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212)**

1914.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1915.   Plaintiffs, Brian & Meredith Quimby, Brian Barker, Bruce Bolen, Eric Becker, Greg Long, Raymond L. White, Robert Morris, Roger Hinton, K.C. Moore, Wendell Espeland, John T. Nickel, Roger Hinton, Michael & Deborah Eilert, Brent Cole, Matthew Russell Peters, Derle Mork, Bruce & JoDawn Chrz, Robert Montgomery, Nathan & Tracey Andrews, Russell S. & Desiree G. Lewis, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1916.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-03(1)(d).

1917.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

1918.   The Subject Vehicles are and were at all relevant times "goods" within the meaning 8 of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1919.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212.

1920.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

1    federal emission standards.

2    1921.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

3    damage to the Plaintiffs. The amount of damages due will be proven at trial.

4    **18.    <u>Kentucky</u>**

5    **BREACH OF EXPRESS WARRANTY**
6    **(KY. REV. STAT. §§ 335.2-313 and 355.2A-210)**
7

8    1922.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

9    fully set forth herein.

10   1923.   Plaintiffs, David A. Green, Gary Huffman, Justin Mays, Richard A. Smith, Daniel

11   & Traci Ramsey, Greg Shea, Tony S. Conley, Heather & Lewis Cleaver, Jerry Martin, Lucky

12   Easley, Brett Wayne, David K. Schoengart, , (for the purpose of this section, "Plaintiff") brings

13   this action on behalf of themselves against Fiat and FCA.

14   1924.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

15   vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles

16   under § 355.2-103(1)(d).

17   1925.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

18   motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

19   1926.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

20   of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

21   1927.   Federal law requires manufacturers of light-duty vehicles to provide two federal

22   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

23   Performance Warranty applies to repairs that are required during the first two years or 24,000

24   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

25   major emission control components are covered for the first eight years or 80,000 miles, whichever

1489

comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1928.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1929.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1930.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiff.

1931.   Any opportunity to cure the express breach is unnecessary and futile.

1932.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

1490

1  Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

2  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
3  **(KY. REV. STAT. §§ 335.2-314 and 355.2A-212)**
4

5  1933.   Plaintiffs reallege and incorporate by reference all allegations of the preceding
6  paragraphs as though fully set forth herein.

7  1934.   Plaintiffs, David A. Green, Gary Huffman, Justin Mays, Richard A. Smith, Daniel
8  & Traci Ramsey, Greg Shea, Tony S. Conley, Heather & Lewis Cleaver, Jerry Martin, Lucky
9  Easley, Brett Wayne, David K. Schoengart, Richard H. and Shelia Renee McCoy, Robert Prijatelj
10 II, James L. Jones, Adam Kidd, Russell & Linda Scaggs, Michael Johnson, Ron Dupree, Mark &
11 Bertha Jude, Bill Edwards, Travis Hoyle, Daryl Stark, Joe Pat Hughes, (for the purpose of this
12 section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

13 1935.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles
14 under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under §
15 355.2-103(1)(d).

16 1936.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of
17 motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

18 1937.   The Subject Vehicles are and were at all relevant times "goods" within the meaning
19 of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

20 1938.   A warranty that the Subject Vehicles were in merchantable condition and fit for the
21 ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-
22 314 and 355.2A-212.

23 1939.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable
24 condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject
25 Vehicles were not in merchantable condition because their design violated state and federal laws.

The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1940.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff. The amount of damages due will be proven at trial.

### 19.   Louisiana

**BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY/ WARRANTY AGAINST
REDHIBITORY DEFECTS
(La. Civ. Code Art. 2520, 2524)**

1941.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1942.   Plaintiffs, Erica L. Jeansonne, Jason Fitzgerald, Kenneth Nunez, Lance Popwell, Lennard Loupe, Luke David, Tim Byrd, Todd Barrios, Brandon Alexander LeBrun, Janie Kennedy Pooler, George S. Leblanc, John Meech, Benjamin D. Crifasi, Jr., Elizabeth & Bryce Godwin, Emile J. LaPointe, Myron & Linda Billiot, Randy Tomlinson, Steven James Rust, Jeff Mely, Beaux Martin, Joe R. Jones, John Lemelle, Douglas Owen Thompson, Willie Bergeron, Michael Mavromatis, Theo Reginald Thibodeaux, Adam Mckean and Elizabeth Barnes, Lisa S. and Kevin P. Speyrer, Earl H Hitzman Jr., David Bergeron, Herman and Cheryl Golden, John W Kentzel, Kevin Paul Hare, Gordon Dough Stephens, Bobby Jennings, Benjamin F. Holt, Jr., (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1943.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles.

1944.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law in the instant transactions.

1945.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

1    condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

2    Vehicles were not in merchantable condition because their design violated state and federal laws.

3    The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

4    federal emission standards.

5        1946.  Fiat's and FCA's breaches of the implied warranty of merchantability caused

6    damage to the Plaintiffs. The amount of damages due will be proven at trial.

7            **20.    <u>Maine</u>**

8            **BREACH OF EXPRESS WARRANTY**
9            **(ME. REV. STAT. TIT. 11 §§ 2-313 and 2-1210)**
10

11       1947.  Plaintiffs reallege and incorporate by reference all preceding allegations as though

12   fully set forth herein.

13       1948.  Plaintiffs, Ralph Nason, Terry Wessel, Billie Jo Killion (Anna Taylor), Terry D.

14   and Teresa A. Thor, Chester Johnson, Michael H and Naneen Chace-Ortiz, (for the purpose of this

15   section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

16       1949.  Fiat and FCA are and were at all relevant times "merchants" with respect to motor

17   vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a "seller" of motor

18   vehicles under § 2-103(1)(d).

19       1950.  With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

20   motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

21       1951.  The Subject Vehicles are and were at all relevant times "goods" within the meaning

22   of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

23       1952.  Federal law requires manufacturers of light-duty vehicles to provide two federal

24   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

25   Performance Warranty applies to repairs that are required during the first two years or 24,000

                                                1493

1    miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

2    major emission control components are covered for the first eight years or 80,000 miles, whichever

3    comes first. These major emission control components subject to the longer warranty include the

4    catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

5    diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

6    or emission related parts which fail to function or function improperly due to a defect in materials

7    or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

8    comes first, or, for the major emission control components, for eight years or 80,000 miles,

9    whichever comes first.

10        1953.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the

11    basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

12        1954.   However, Fiat and FCA knew or should have known that the warranties were false

13    and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

14    sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

15    to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

16    therefore, knew that the emission systems contained defects.

17        1955.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

18    emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not

19    perform as warranted. Unbeknownst to Plaintiffs and the Maine State Plaintiffs, the Subject

20    Vehicles were designed to pollute at higher than legal limits during normal driving, and could not

21    achieve advertised performance and efficiency metrics without this cheating design. This design

22    and the devices that effectuate it are defects. Fiat and FCA therefore breached their express

23    warranty by providing a product containing defects that were never disclosed to Plaintiff.

1956.   Any opportunity to cure the express breach is unnecessary and futile.

1957.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (ME. REV. STAT. TIT. 11 §§ 2-314 and 2-1212)

1958.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1959.   Plaintiffs, Ralph Nason, Terry Wessel, Billie Jo Killion (Anna Taylor), Terry D. and Teresa A. Thor, Chester Johnson, Michael H and Naneen Chace-Ortiz, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1960.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

1961.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

1962.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

1963.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

1964.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

1    condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

2    Vehicles were not in merchantable condition because their design violated state and federal laws.

3    The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

4    federal emission standards.

5         1965.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

6    damage to Plaintiff. The amount of damages due will be proven at trial.

7         **21.** **Maryland**

8         **BREACH OF EXPRESS WARRANTY**
9         **(Md. Code, Com. Law §§ 2-313 and 2a-210)**
10

11        1966.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

12   fully set forth herein.

13        1967.   Plaintiffs, Stephen Joseph Podolak, Daniel McMahon, Michael Shane Williams,

14   Andrew Davis, Ernest Montley, Justin Clendenin, (for the purpose of this section, "Plaintiffs")

15   bring this action on behalf of themselves against Fiat and FCA.

16        1968.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

17   vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-

18   103(1)(d).

19        1969.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

20   motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

21        1970.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

22   of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

1971.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1972.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1973.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1974.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to

pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

1975.   Any opportunity to cure the express breach is unnecessary and futile.

1976.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Md. Code Com. Law §§ 2-314 and 2A-212)**

1977.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

1978.   Plaintiffs, Stephen Joseph Podolak, Daniel McMahon, Michael Shane Williams, Andrew Davis, Ernest Montley, Justin Clendenin, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1979.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Md. Code Com. Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

1980.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Md. Code Com. Law § 2A-103(1)(p).

1981.   The Subject Vehicles are and were at all relevant times "goods" within the meaning 25 of Md. Code Com. Law §§ 2-105(1) and 2a-103(1)(h).

1982.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2a-212.

1983.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

1984.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

### 22.   <u>Massachusetts</u>
### BREACH OF EXPRESS WARRANTY
### (Mass. Gen. Laws Ch. 106 §§ 2-313 and 2A-210)

1985.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1986.   Plaintiffs, Jack London, Roger Farrow, Adam Ausura, Andrew Jesse, Ryan King, Michael Branco, Timothy Isyk, Oron Tipton, Lorell D. Hurley, Robert J. Dollard, John D. Porrazzo. Robert H. Reuter, Saska Voll, Scott Carey, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

1987.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Mass Gen. Laws ch. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1) (d).

1988.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Mass Gen. Laws ch. 106 § 2A-103(1)(p).

1989.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h).

1990.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

1991.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1992.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

1993.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did

1   not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to

2   pollute at higher than legal limits during normal driving and could not achieve advertised

3   performance and efficiency metrics without this cheating design. This design and the devices that

4   effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

5   product containing defects that were never disclosed to Plaintiffs.

6      1994. Any opportunity to cure the express breach is unnecessary and futile.

7      1995. As a direct and proximate result of Fiat's and FCA's breach of express warranties,

8   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

9
10      **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
11       **(Mass. Gen. Laws Ch. 106 §§ 2-314 and 2A-212)**
12
13   1996. Plaintiffs reallege and incorporate by reference all allegations of the preceding

14   paragraphs as though fully set forth herein.

15   1997. Plaintiffs, Jack London, Roger Farrow, Adam Ausura, Andrew Jesse, Ryan King,

16   Michael Branco, Timothy Isyk, Oron Tipton, Lorell D. Hurley, Robert J. Dollard, John D.

17   Porrazzo. Robert H. Reuter, Saska Voll, Scott Carey, (for the purpose of this section, "Plaintiff")

18   brings this action on behalf of themselves against Fiat and FCA.

19   1998. Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

20   under Mass Gen. Laws ch. 106 § 2-104(1) and is a "seller" of motor vehicles under § 2-103(1) (d).

21   1999. With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

22   motor vehicles under Mass Gen. Laws ch. 106 § 2A-103(1)(p).

23   2000. The Subject Vehicles are and were at all relevant times "goods" within the meaning

24   of Mass. Gen. Laws ch. 106 §§ 2-105(1) and 2A-103(1)(h).

25   2001. A warranty that the Subject Vehicles were in merchantable condition and fit for the

1  ordinary purpose for which vehicles are used is implied by law pursuant to Mass. Gen. Laws ch.

2  106 §§ 2-314 and 2A-212.

3      2002.  Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

4  condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

5  Vehicles were not in merchantable condition because their design violated state and federal laws.

6  The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

7  federal emission standards.

8      2003.  Fiat's and FCA's breaches of the implied warranty of merchantability caused

9  damage to the Plaintiff. The amount of damages due will be proven at trial.

10           **23.**   **Michigan**

11  **BREACH OF EXPRESS WARRANTY**
12  **(Mich. Comp. Laws §§ 440.2313 and 440.2860)**
13

14      2004.  Plaintiffs reallege and incorporate by reference all preceding allegations as though

15  fully set forth herein.

16      2005.  Plaintiffs, Andy Twork, Bruce Hassevoort, Bryan Thompson, Camelo Guzman,

17  Danny W. Harris, II., Joseph McCrumb, Josh Turner, Scott Franzel, Robert Yakimchick,

18  Christopher & Jacob Brown, Thomas Goodyke & Julie Bowers Goodyke, Paul Webster Messner,

19  Jr., Alan Sjoberg, Richard Watters, William Coleman, Van Smith Jr., David A. Nakkula, Keith

20  Arnold, Andrew Vanderklok, Joseph Barksdale, Paul Myers, Michelle L. Labadie, Sandy & Gina

21  Badenski, Chason Pointer, Jacquelyn Lowe, Gregory Ray, Michael Sutherland, Steve Paquette,

22  Jacob Brown, Chris Watkins, Ryan Lahaie, David Brown, Dan Sadowski, Marcus Kruse, (for the

23  purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and

24  FCA.

25      2006.  Fiat and FCA are and were at all relevant times "merchants" with respect to motor

1    vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under §

2    440.2103(1)(c).

3         2007.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

4    motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

5         2008.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

6    of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

7         2009.   Federal law requires manufacturers of light-duty vehicles to provide two federal

8    emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

9    Performance Warranty applies to repairs that are required during the first two years or 24,000

10   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

11   major emission control components are covered for the first eight years or 80,000 miles, whichever

12   comes first. These major emission control components subject to the longer warranty include the

13   catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

14   diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

15   or emission related parts which fail to function or function improperly due to a defect in materials

16   or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

17   comes first, or, for the major emission control components, for eight years or 80,000 miles,

18   whichever comes first.

19        2010.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

20   basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

21        2011.   However, Fiat and FCA knew or should have known that the warranties were false

22   and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

23   sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

1    to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

2    therefore, knew that the emission systems contained defects.

3         2012.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

4    emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did

5    not perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute

6    at higher than legal limits during normal driving, and could not achieve advertised performance

7    and efficiency metrics without this cheating design. This design and the devices that effectuate it

8    are defects. Fiat and FCA therefore breached their express warranty by providing a product

9    containing defects that were never disclosed to Plaintiffs.

10        2013.   Any opportunity to cure the express breach is unnecessary and futile.

11        2014.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

12   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.


13   **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
14   **(Mich. Comp. Laws §§ 440.2314 and 440.2860)**
15

16        2015.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

17   paragraphs as though fully set forth herein.

18        2016.   Plaintiffs, Andy Twork, Bruce Hassevoort, Bryan Thompson, Camelo Guzman,

19   Danny W. Harris, II., Joseph McCrumb, Josh Turner, Scott Franzel, Robert Yakimchick,

20   Christopher & Jacob Brown, Thomas Goodyke & Julie Bowers Goodyke, Paul Webster Messner,

21   Jr., Alan Sjoberg, Richard Watters, William Coleman, Van Smith Jr., David A. Nakkula, Keith

22   Arnold, Andrew Vanderklok, Joseph Barksdale, Paul Myers, Michelle L. Labadie, Sandy & Gina

23   Badenski, Chason Pointer, Jacquelyn Lowe, Gregory Ray, Michael Sutherland, Steve Paquette,

24   Jacob Brown, Chris Watkins, Ryan Lahaie, David Brown, Dan Sadowski, Marcus Kruse, (for the

purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2017.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws § 440.2104(1) and "sellers" of motor vehicles under § 440.2103(1)(c).

2018.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

2019.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

2020.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

2021.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2022.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff. The amount of damages due will be proven at trial.

### 24.   **Minnesota**

**BREACH OF EXPRESS WARRANTY**
**(Minn. Stat. §§ 336.2-313 and 336.2A-210)**

2023.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

fully set forth herein.

2024. Plaintiffs, Steven Leonard, Shawn C. Jacobs, Jayne Marie Edwards, Dan Seeland and Naht Phan, Jeffrey D. Hoyum, Michael Kasten, Brian Pieper, Dal & Melody Lynn Ruzicka, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2025. Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2- 103(1)(d).

2026. With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

2027. The Subject Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. § 336.2-105(1) and 336.2A-103(1)(h).

2028. Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2029.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2030.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2031.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2032.   Any opportunity to cure the express breach is unnecessary and futile.

2033.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Minn. Stat. §§ 336.2-314 and 336.2A-212)

2034.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2035.   Plaintiffs, Steven Leonard, Shawn C. Jacobs, Jayne Marie Edwards, Dan Seeland and Naht Phan, Jeffrey D. Hoyum, Michael Kasten, Brian Pieper, Dal & Melody Lynn Ruzicka, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat

and FCA.

2036.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. § 336.2-104(1) and "sellers" of motor vehicles under § 336.2-103(1)(d).

2037.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

2038.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

2039.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

2040.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2041.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiff. The amount of damages due will be proven at trial.

### 25.   <u>Mississippi</u>

**BREACH OF EXPRESS WARRANTY**
**(Miss. Code §§ 75-2-313 and 75-2A-210)**

2042.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2043.   Plaintiffs, Jimmy Yeager, Scott Langley, Curtis & Debbie McDaniel, Tammy Frazier, Bobby Wallace, Clifton Bailey, Roger T. Ingram, Christopher Bond, Clifton Bailey,

1   Anthony S. Antonucci, Robert Thomas, William Cunningham, Scott L Norris, Gaston Barnett c/o

2   Walton Stinson, James Radcliff, Troy Cucrullo, Jimmy Haney, (for the purpose of this section,

3   "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

4       2044.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

5   vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

6       2045.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

7   motor vehicles under Miss. Code § 75-2A-103(1)(p).

8       2046.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

9   of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

10      2047.   Federal law requires manufacturers of light-duty vehicles to provide two federal

11  emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

12  Performance Warranty applies to repairs that are required during the first two years or 24,000

13  miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

14  major emission control components are covered for the first eight years or 80,000 miles, whichever

15  comes first. These major emission control components subject to the longer warranty include the

16  catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

17  diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

18  or emission related parts which fail to function or function improperly due to a defect in materials

19  or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

20  comes first, or, for the major emission control components, for eight years or 80,000 miles,

21  whichever comes first.

22      2048.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the

23  basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

1509

2049.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2050.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2051.   Any opportunity to cure the express breach is unnecessary and futile.

2052.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Miss. Code §§ 75-2-314 and 75-2A-212)

2053.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2054.  Plaintiffs, Jimmy Yeager, Scott Langley, Curtis & Debbie McDaniel, Tammy Frazier, Bobby Wallace, Clifton Bailey, Roger T. Ingram, Christopher Bond, Clifton Bailey, Anthony S. Antonucci, Robert Thomas, William Cunningham, Scott L Norris, Gaston Barnett c/o Walton Stinson, James Radcliff, Troy Cucrullo, Jimmy Haney, (for the purpose of this section,

1   "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2   2055.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

3   under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

4   2056.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

5   motor vehicles under Miss. Code § 75-2A-103(1)(p).

6   2057.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

7   of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

8   2058.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

9   ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2-

10   314 and 75-2A-212.

11   2059.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

12   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

13   Vehicles were not in merchantable condition because their design violated state and federal laws.

14   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

15   federal emission standards.

16   2060.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

17   damage to Plaintiff. The amount of damages due will be proven at trial.

18   **26.   <u>Missouri</u>**

19   **BREACH OF EXPRESS WARRANTY**
20   **(Mo. Stat. §§ 400.2-313 and 400.2A-210)**
21
22   2061.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

23   fully set forth herein.

1511

2062.   Plaintiffs, David Sexton, Eric Busch, James Newell, Jeffrey Bax, Michael Janssen, Michael Stuart, Robert Graaf, Sara Batchelor, Tim Ciampoli, Brooks H. Moore, Berrick Jack, Larry Brown, Todd Bierk, Jeff & Terri Robinson, Jason VanLoo, Jeffrey Weislocher, Sean Condry, Mark Warren, Ken Hauck, Mark Kinder, Dawn & James McDonald, Joshua Wilson, Justin Graves, William Eason, James and Tierra Applegate, Rayder Bennett, Frank M. Collier, David L Patton, Jeffrey Gebel, Nathen and Rachel Crittenden, Noel Foley, Stanley and Anita Collins, Steven Palmer, Shachar Cohen, Kip Coleman, Chris Masters, Jim Henry, Keith Kirby, Claude & Randy Stone, Donald Mollett, Thomas Dluzinewski, Thomas Dluzniewski, Cyrus Garrison, Don Keeney, Kim Triplett, James Dunn, Leya & Kenneth Bell, Ruthanna Taylor & Zachary Buchanan, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2063.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

2064.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

2065.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).5.

2066.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the

1512

catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2067.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2068.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2069.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2070.   Any opportunity to cure the express breach is unnecessary and futile.

2071.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mo. Stat. §§ 400.2-314 and 400.2A-212)

2072.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2073.   Plaintiffs, David Sexton, Eric Busch, James Newell, Jeffrey Bax, Michael Janssen, Michael Stuart, Robert Graaf, Sara Batchelor, Tim Ciampoli, Brooks H. Moore, Berrick Jack, Larry Brown, Todd Bierk, Jeff & Terri Robinson, Jason VanLoo, Jeffrey Weislocher, Sean Condry, Mark Warren, Ken Hauck, Mark Kinder, Dawn & James McDonald, Joshua Wilson, Justin Graves, William Eason, James and Tierra Applegate, Rayder Bennett, Frank M. Collier, David L Patton, Jeffrey Gebel, Nathen and Rachel Crittenden, Noel Foley, Stanley and Anita Collins, Steven Palmer, Shachar Cohen, Kip Coleman, Chris Masters, Jim Henry, Keith Kirby, Claude & Randy Stone, Donald Mollett, Thomas Dluzinewski, Thomas Dluzniewski, Cyrus Garrison, Don Keeney, Kim Triplett, James Dunn, Leya & Kenneth Bell, Ruthanna Taylor & Zachary Buchanan, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2074.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and "sellers" of motor vehicles under § 400.2-103(1)(d).

2075.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Mo. Stat. § 400.2A-103(1)(p).

2076.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).5.

2077.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mo. Stat. § 400.2-314 and Mo. Stat. § 400.2A-212.

1514

2078.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2079.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff. The amount of damages due will be proven at trial.

### 27.   <u>Montana</u>

**BREACH OF EXPRESS WARRANTY**
**(Mont. Code §§ 30-2-313 and 30-2A-210)**

2080.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2081.   Plaintiffs, Debra Severson, Derrick Sillivan, James Chapman, James Zinda, Peter Vigue, Brent Burton, Laurence Carroll, Levent Altunova, Jared Watson & Lisa Tadd, Debra Ann Guderjahn, Pat Breitbach, Patrick and Jill Kons, Keith Young, Karen Ann Corbin, Charles Bogy, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2082.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

2083.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

2084.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).5.

2085.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2086.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

2087.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2088.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs and the Montana State Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not

achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2089.   Any opportunity to cure the express breach is unnecessary and futile.

2090.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Mont. Code §§ 30-2-314 and 30-2A-212)

2091.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2092.   Plaintiffs, Debra Severson, Derrick Sillivan, James Chapman, James Zinda, Peter Vigue, Brent Burton, Laurence Carroll, Levent Altunova, Jared Watson & Lisa Tadd, Debra Ann Guderjahn, Pat Breitbach Patrick and Jill Kons, Keith Young, Karen Ann Corbin, Charles Bogy, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2093.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

2094.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

2095.   The Subject Vehicles are and were at all relevant times "goods" within the meaning 2 of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).5.

2096.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mont. Code §§ 30-2-314 and 30-2A-212.

2097.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2098.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff. The amount of damages due will be proven at trial.

### 28.   Nebraska

### BREACH OF EXPRESS WARRANTY
### (Neb. Rev. St. U.C.C. §§ 2-313 and 2A-210)

2099.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2100.   Plaintiffs, Brenda Dokmonovich, Brittney & Chad Olsen, Dustin E. Grate, John Donohoe, Eric Vera, Gordon Shrader, Dean Beck, Leslie Swartz, Jared and Crystal Falk, Randy Gray, Miranda Tadlock & Adryan Debey, Willard R. & Victoria L. Hart, Rebecca Coburn, Katie Mantz, Kenneth Lynn & Laurie Ann Drees, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2101.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

2102.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

2103.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2104.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2105.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2106.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2107.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised

performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2108.   Any opportunity to cure the express breach is unnecessary and futile.

2109.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212)

2110.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2111.   Plaintiffs, Brenda Dokmonovich, Brittney & Chad Olsen, Dustin E. Grate, John Donohoe, Eric Vera, Gordon Shrader, Dean Beck, Leslie Swartz, Jared and Crystal Falk, Randy Gray, Miranda Tadlock & Adryan Debey, Willard R. & Victoria L. Hart, Rebecca Coburn, Katie Mantz, Kenneth Lynn & Laurie Ann Drees, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2112.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

2113.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

2114.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2115.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

1520

1  ordinary purpose for which vehicles are used is implied by law pursuant to Neb. Rev. St.

2  20U.C.C.§§ 2-314 and 2A-212.

3  2116.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

4  condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

5  Vehicles were not in merchantable condition because their design violated state and federal laws.

6  The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

7  federal emission standards.

8  2117.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

9  damage to Plaintiffs. The amount of damages due will be proven at trial.

10  **29.   Nevada**

11  **BREACH OF EXPRESS WARRANTY**
12  **(Nev. Rev. Stat. §§ 104.2313 and 104A.2210)**

13

14  2118.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

15  fully set forth herein.

16  2119.   Plaintiffs, Mike Kolsch, Miklos Toth, Randal G. & Virginia K. Hendricks Smith,

17  Randy Long, Brian J. Delaney, Harold Joseph Piele, Robert Peck, Robert J. Phillips, Rick Bunch,

18  Robert Wasilchuk, Arturo Torres, Clinton Moxey, Scott Banks, Warren Gardinier, James Martin,

19  Susan and Ethan Burlingham, John & Susanne Verretto, (for the purpose of this section,

20  "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

21  2120.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

22  vehicles under Nev. Rev. Stat. § 104.2104(1) and "sellers" of motor vehicles under §

23  04.2103(1)(c).

1521

2121.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

2122.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

2123.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2124.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

2125.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2126.   Plaintiff reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiff, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiff.

2127.   Any opportunity to cure the express breach is unnecessary and futile.

2128.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Nev. Rev. Stat. §§ 104.2314 and 104A.2212)**

2129.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2130.   Plaintiffs, Mike Kolsch, Miklos Toth, Randal G. & Virginia K. Henricks Smith, Randy Long, Brian J. Delaney, Harold Joseph Piele, Robert Peck, Robert J. Phillips, Rick Bunch, Robert Wasilchuk, Arturo Torres, Clinton Moxey, Scott Banks, Warren Gardinier, James Martin, Susan and Ethan Burlingham, John & Susanne Verretto, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2131.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Nev. Rev. Stat. § 104.2104(1) and "sellers" of motor vehicles under § 104.2103(1)(c).

2132.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

1   motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

2        2133.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

3   of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

4        2134.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

5   ordinary purpose for which vehicles are used is implied by law pursuant to Nev. Rev. Stat. §§

6   104.2314 and 104A.2212.

7        2135.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

8   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

9   Vehicles were not in merchantable condition because their design violated state and federal laws.

10  The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

11  federal emission standards.

12       2136.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

13  damage to the Plaintiff. The amount of damages due will be proven at trial.

14
15       **30.   New Hampshire**
16
17       **BREACH OF EXPRESS WARRANTY**
18       **(N.H. Rev. Stat. §§ 382-A:2-313 and 2A-210)**
19
20       2137.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

21  fully set forth herein.

22       2138.   Plaintiffs, Edward Carrier, Mike Doherty, Jason Sullivan, (for the purpose of this

23  section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

24       2139.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

25  vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382- A:2-

1   103(1)(d).

2       2140.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

3   motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

4       2141.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

5   of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

6       2142.   Federal law requires manufacturers of light-duty vehicles to provide two federal

7   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

8   Performance Warranty applies to repairs that are required during the first two years or 24,000

9   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

10  major emission control components are covered for the first eight years or 80,000 miles, whichever

11  comes first. These major emission control components subject to the longer warranty include the

12  catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

13  diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

14  or emission related parts which fail to function or function improperly due to a defect in materials

15  or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

16  comes first, or, for the major emission control components, for eight years or 80,000 miles,

17  whichever comes first.

18      2143.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed

19  the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject

20  Vehicles.

21      2144.   However, Fiat and FCA knew or should have known that the warranties were false

22  and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

23  sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions,

1  and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

2  therefore, knew that the emission systems contained defects.

3      2145.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

4  emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not

5  perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute

6  at higher than legal limits during normal driving and could not achieve advertised performance

7  and efficiency metrics without this cheating design. This design and the devices that effectuate it

8  are defects. Fiat and FCA therefore breached their express warranty by providing a product

9  containing defects that were never disclosed to the Plaintiffs.

10      2146.   Any opportunity to cure the express breach is unnecessary and futile.

11      2147.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

12  the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at

13  trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212)

18      2148.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

19  paragraphs as though fully set forth herein.

20      2149.   Plaintiffs, Edward Carrier, Mike Doherty, Jason Sullivan, (for the purpose of this

21  section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

22      2150.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

23  under N.H. Rev. Stat. §§ 382-A:2-104(1) and "sellers" of motor vehicles under §§ 382-A:2-

24  103(1)(d).

2151.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under §§ 382-A:2-103(1)(p).

2152.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of §§ 382-A:2-105(1) and §§ 382-A:2-103(1)(h).

2153.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to §§ 382-A:2-314 and §§ 382-A:2A-212.

2154.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standard.

2155.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

31.   **New Jersey**

**BREACH OF EXPRESS WARRANTY**
**(N.J. Stat. Ann. § 12A:2-313 and 2A-210)**

2156.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2157.   Plaintiffs, David Scales, Joyce Ciccone, Charles Lauziere, Michele Carrano, Bastoam Schroeder, Stephanie Cromley, Kevin Ruehle, Roland Marsh, Zachary M. Marsico, Michael Kuhrt, George and Katie Kauffman, Alma Lozana, Gonçalo Duarte, Patricia Neves, Martin L. Ward, John D'Amato, Daniel Welzel, Bryan Emilius, (for the purpose of this section,

1    "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2    2158.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

3    vehicles under N.J. Stat. Ann. § 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

4    2159.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

5    motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(p).

6    2160.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

7    of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

8    2161.   Federal law requires manufacturers of light-duty vehicles to provide two federal

9    emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

10   Performance Warranty applies to repairs that are required during the first two years or 24,000

11   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

12   major emission control components are covered for the first eight years or 80,000 miles, whichever

13   comes first. These major emission control components subject to the longer warranty include the

14   catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

15   diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

16   or emission related parts which fail to function or function improperly due to a defect in materials

17   or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

18   comes first, or, for the major emission control components, for eight years or 80,000 miles,

19   whichever comes first.

20   2162.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

21   basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

22   2163.   However, Fiat and FCA knew or should have known that the warranties were false

23   and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

1528

sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2164.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2165.   Any opportunity to cure the express breach is unnecessary and futile.

2166.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314 and 2A-212)

2167.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2168.   Plaintiffs, David Scales, Joyce Ciccone, Charles Lauziere, Michele Carrano, Bastoam Schroeder, Stephanie Cromley, Kevin Ruehle, Roland Marsh, Zachary M. Marsico, Michael Kuhrt, George and Katie Kauffman, Alma Lozana, Gonçalo Duarte, Patricia Neves, Martin L. Ward, John D'Amato, Daniel Welzel, Bryan Emilius, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2169.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

1    under N.J. Stat. Ann. § 12A:2-104(1) and "sellers" of motor vehicles under 2-103(1)(d).

2    2170.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

3    motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(p).

4    2171.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

5    of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

6    2172.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

7    ordinary purpose for which vehicles are used is implied by law pursuant to N.J. Stat. Ann. §§

8    12A:2-314 and 2A-212.

9    2173.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

10   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

11   Vehicles were not in merchantable condition because their design violated state and federal laws.

12   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

13   federal emission standards.

14   2174.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

15   damage to the Plaintiffs. The amount of damages due will be proven at trial.

16          **32.    New Mexico**

17                **BREACH OF EXPRESS WARRANTY**
18                **(N.M. Stat. §§ 55-2-313 and 55-2A-210)**
19

20   2175.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

21   fully set forth herein.

22   2176.   Plaintiffs, Louie Romero and Jacob Herron, Danny Quisenberry, Santiago and

1530

1   Lorraine Romero, Mike Keenan, Frank Novelli, Michael Paul (for the purpose of this section,

2   "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

3   2177.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

4   vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under §55-2-103(1)(d).

5   2178.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

6   motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

7   2179.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

8   of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

9   2180.   Federal law requires manufacturers of light-duty vehicles to provide two federal

10  emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

11  Performance Warranty applies to repairs that are required during the first two years or 24,000

12  miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

13  major emission control components are covered for the first eight years or 80,000 miles, whichever

14  comes first. These major emission control components subject to the longer warranty include the

15  catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

16  diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

17  or emission related parts which fail to function or function improperly due to a defect in materials

18  or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

19  comes first, or, for the major emission control components, for eight years or 80,000 miles,

20  whichever comes first.

21  2181.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

22  basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

1531

2182.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2183.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2184.   Any opportunity to cure the express breach is unnecessary and futile.

2185.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.M. Stat. §§ 55-2-314 and 55-2A-212)**

2186.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2187.   Plaintiffs, Louie Romero and Jacob Herron, Danny Quisenberry, Santiago and Lorraine Romero, Mike Keenan, Frank Novelli, Michael Paul, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

1    2188.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

2    under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

3    2189.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

4    motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

5    2190.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

6    21of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

7    2191.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

8    ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. §§ 55-2-

9    314 and 55-2A-212.

10   2192.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

11   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

12   Vehicles were not in merchantable condition because their design violated state and federal laws.

13   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

14   federal emission standards.

15   2193.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

16   damage to Plaintiffs. The amount of damages due will be proven at trial.

17            **33.   <u>New York</u>**

18            **BREACH OF EXPRESS WARRANTY**
19            **(N.Y. U.C.C. Law §§ 2-313 and 2A-210)**

20
21   2194.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

22   fully set forth herein.

23   2195.   Plaintiffs, Arnold Construction Co., Inc., Bert Dodge, Danny Farrell, Dennis

24   Tubridy, Donald Moore, Erick Lore, Henry Lawson, Jay Printup, John Lazore, John McGarry,

25   Michael Balzhiser, Mike Blizinski, Peter Ammirati, Ray Falk, Don Lange, Gregory B.

Fenstermaker, Joe Elco, Lauren Steff, Norbert Kucharek, Timothy Rosenberg, Stephen Cimilluca, James Johnson & Michael Bolton, John A. Barone, Anthony Barbato, William J. Hoak, III, Donald Scales, Derick Gurney, Jose Mercado, Marcus Aaron Hemsley, Frank Fernandez, LaVerne Brace, Nocholas F. Baglio, Jimmy Schroeger, Thomas Newton, Thomas Castle, Jason A Puckett, Julie Staubach, Joseph Neault Jr., Ricky P. Poisson, Amy Fernandes, Louis Barbato, Robert Sisson, Ashleigh Webster, Robert Sivori, Jesse Stoddard, Jamie L. Day, Christopher M. Forsythe & Linsey M. Shelton, Scott Brophy, Marc Daquila & Melodye Eldeen, Christian Parker d/b/a Line Striping, Inc. , Reginaldo Medeiros, Paul Jefferson Rahaman, Jason & Rebecca Cornetto, Jason Brown, Ben Savino, Brent Ford, Daniel Acker, Daniel Thomas Ruttura, Jeffrey Mills, Sandra Lascano & Jaime Eugenio, Pete Pompa, Todd Ruttura, Carl Culbertson, Kathleen McCoy, Michael Schrader, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2196.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

2197.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

2198.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

2199.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever

comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2200.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2201.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2202.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2203.   Any opportunity to cure the express breach is unnecessary and futile.

2204.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. Law §§ 2-314 and 2A-212)**

2205.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2206.   Plaintiffs, Arnold Construction Co., Inc., Bert Dodge, Danny Farrell, Dennis Tubridy, Donald Moore, Erick Lore, Henry Lawson, Jay Printup, John Lazore, John McGarry, Michael Balzhiser, Mike Blizinski, Peter Ammirati, Ray Falk, Don Lange, Gregory B. Fenstermaker, Joe Elco, Lauren Steff, Norbert Kucharek, Timothy Rosenberg, Stephen Cimilluca, James Johnson & Michael Bolton, John A. Barone, Anthony Barbato, William J. Hoak, III, Donald Scales, Derick Gurney, Jose Mercado, Marcus Aaron Hemsley, Frank Fernandez, LaVerne Brace, Nocholas F. Baglio, Jimmy Schroeger, Thomas Newton, Thomas Castle, Jason A Puckett, Julie Staubach, Joseph Neault Jr., Ricky P. Poisson, Amy Fernandes, Louis Barbato, Robert Sisson, Ashleigh Webster, Robert Sivori, Jesse Stoddard, Jamie L. Day, Christopher M. Forsythe & Linsey M. Shelton, Scott Brophy, Marc Daquila & Melodye Eldeen, Christian Parker d/b/a Line Striping, Inc. , Reginaldo Medeiros, Paul Jefferson Rahaman, Jason & Rebecca Cornetto, Jason Brown, Ben Savino, Brent Ford, Daniel Acker, Daniel Thomas Ruttura, Jeffrey Mills, Sandra Lascano & Jaime Eugenio, Pete Pompa, Todd Ruttura, Carl Culberston, Kathleen McCoy, Michael Schrader, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2207.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under N.Y. UCC Law § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

2208.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under N.Y. UCC Law § 2A-103(1)(p).

1536

2209.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of N.Y. UCC Law §§ 2-105(1) and 2A-103(1)(h).

2210.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.Y. UCC Law §§ 2-314 and 2A-212.

2211.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2212.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

**34.    North Carolina**

**BREACH OF EXPRESS WARRANTY**
**(N.C. Gen. Stat. §§ 25-2-313 and 252A-210)**

2213.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2214.   Plaintiffs, David Duncan, Donavin Auld, Jack Terry & Lee Todd, Jose Mejia, Kim Hall, William Wheeler, Andrew Thomas, Harry Arthur Potter, Steven Phillip & Pamela Fulford Krol, Ray Reynolds, Gus Demetriades, Kyle Schmitting & Kamile Kevliciute , Carl Lachance, Brian Ellis, Tyrone & April Malambri, Donald Harrell, Calvin D. Burrus, III, Felix Orlando Gonzales, Jr., Greg Cain, Colt W. Knight, Bryan Hastings and Jessica Bolling, Travis Lee Campbell, Frederick B May, Kerrin Tomek, Kenneth Edward Fogle Jr, Robbie Kiss, Francis

1    Lukowski Jr., Jamison Stanley and Joli A. Elder, Allen Lewis Heffelbower, William Wiggins,

2    Laura Morgan, Tim Gorgan, Rodney Parr, Justin Chandler, Roxane Branz, Ariel Medrano, Debra

3    & Ronnie Creed, (for the purpose of this section, "Plaintiffs") bring this action on behalf of

4    themselves against Fiat and FCA.

5        2215.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

6    vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-

7    103(1)(d).

8        2216.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

9    motor vehicles under N.C. Gen. Stat. § 25-2A-103(1)(p).

10       2217.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

11   of N.C. Gen. Stat. § 25-2-105(1) and § 25-2A-103(1)(h).5.

12       2218.   Federal law requires manufacturers of light-duty vehicles to provide two federal

13   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

14   Performance Warranty applies to repairs that are required during the first two years or 24,000

15   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

16   major emission control components are covered for the first eight years or 80,000 miles, whichever

17   comes first. These major emission control components subject to the longer warranty include the

18   catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

19   diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

20   or emission related parts which fail to function or function improperly due to a defect in materials

21   or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

22   comes first, or, for the major emission control components, for eight years or 80,000 miles,

1  whichever comes first.

2  2219.  Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

3  basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

4  2220.  However, Fiat and FCA knew or should have known that the warranties were false

5  and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

6  sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

7  to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

8  therefore, knew that the emission systems contained defects.

9  2221.  Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

10  emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did

11  not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to

12  pollute at higher than legal limits during normal driving and could not achieve advertised

13  performance and efficiency metrics without this cheating design. This design and the devices that

14  effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

15  product containing defects that were never disclosed to Plaintiffs.

16  2222.  Any opportunity to cure the express breach is unnecessary and futile.

17  2223.  As a direct and proximate result of Fiat's and FCA's breach of express warranties,

18  Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

19  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
20  **(N.C. Gen. Stat. §§ 25-2-314 AND 252A-212)**
21
22
23  2224.  Plaintiffs reallege and incorporate by reference all allegations of the preceding

24  paragraphs as though fully set forth herein.

1539

2225.   Plaintiffs, David Duncan, Donavin Auld, Jack Terry & Lee Todd, Jose Mejia, Kim Hall, William Wheeler, Andrew Thomas, Harry Arthur Potter, Steven Phillip & Pamela Fulford Krol, Ray Reynolds, Gus Demetriades, Kyle Schmitting & Kamile Kevliciute, Carl Lachance, Brian Ellis, Tyrone & April Malambri, Donald Harrell, Calvin D. Burrus, III, Felix Orlando Gonzales, Jr., Greg Cain, Colt W. Knight, Bryan Hastings and Jessica Bolling, Travis Lee Campbell, Frederick B May, Kerrin Tomek, Kenneth Edward Fogle Jr, Robbie Kiss, Francis Lukowski Jr., Jamison Stanley and Joli A. Elder, Allen Lewis Heffelbower, William Wiggins, Laura Morgan, Tim Gorgan, Rodney Parr, Justin Chandler, Roxane Branz, Ariel Medrano, Debra & Ronnie Creed, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2226.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under N.C. Gen. Stat. § 25-2-104(1) and "sellers" of motor vehicles under § 25-2-103(1)(d).

2227.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under N.C. Gen. Stat. § 25-2A-103(1)(p).

2228.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. § 25-2-105(1) and § 25-2A-103(1)(h).

2229.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C. Gen. Stat. § 25-2-314 and § 25-2A-212.

2230.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

1   federal emission standards.

2       2231.  Fiat's and FCA's breaches of the implied warranty of merchantability caused

3   damage to the Plaintiffs. The amount of damages due will be proven at trial.

4       **35.**    **North Dakota**

**BREACH OF EXPRESS WARRANTY**
**(N.D. Cent. Code §§ 41-02-30 and 41-02.1-19)**

8       2232.  Plaintiffs reallege and incorporate by reference all preceding allegations as though

9   fully set forth herein.

10       2233.  Plaintiffs, Chris Samuelson, Clinton T. McKinney, Michael James Wolbert,

11   Vaughan Wooden, Lev Cooper, Steve J Mast, (for the purpose of this section, "Plaintiff") brings

12   this action on behalf of themselves against Fiat and FCA.

13       2234.  Fiat and FCA are and were at all relevant times "merchants" with respect to motor

14   vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-

15   03(1)(d).

16       2235.  With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

17   motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

18       2236.  The Subject Vehicles are and were at all relevant times "goods" within the meaning

19   of N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).

20       2237.  Federal law requires manufacturers of light-duty vehicles to provide two federal

21   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

22   Performance Warranty applies to repairs that are required during the first two years or 24,000

23   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

24   major emission control components are covered for the first eight years or 80,000 miles, whichever

25   comes first. These major emission control components subject to the longer warranty include the

catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2238.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

2239.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2240.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2241.   Any opportunity to cure the express breach is unnecessary and futile.

2242.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.D. Cent. Code §§ 41-02-31 and 41-02.1-21)

2243.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2244.   Plaintiffs, Chris Samuelson, Clinton T. McKinney, Michael James Wolbert, Vaughan Wooden, Lev Cooper, Steve J Mast, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2245.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

2246.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

2247.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).

2248.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.D. Cent. Code §§ 41-02-31 and 41-02.1-21.

2249.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2250.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff. The amount of damages due will be proven at trial.

36.   **Ohio**

**BREACH OF EXPRESS WARRANTY**
**(Ohio Rev. Code § 1302.26, *et seq.*) (U.C.C. §2-313))**

2251.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2252.   Plaintiffs, Bill Bilicki, Gregory Erwin, Jordan Turske, Kimberly C. Miller, Robert Redman, Ron Hayden & Ashley Suran, Carl Barber, Marc Hopton, Mike Morrison, Steve Young d/b/a Wrecker One, Jason Reigelsperger, Scott McCrea, Ronda Stratton, Ryan Scott, John & Shirley Hecker, Zachary Gordon, Jeffrey A. Stracensky, Robert Radel, Emily K. Blankenship, Gary Smith, Shawn Patrick McNew, Todd Dana Strickland, Paul Gambrill, Donald and Kimberly Schmit, Gregory Clendenin, Nathan Strahinic and Stacey Grafmeyer, Kevin P Brinkhoff, Thomas and Jean Mikle, Bruce Ludlow, Richard Tomilson, Lawrence Fox, Harold Douglas Maynard, Mark A. Shackelford, Nick DiGioia, Larry Dygert, Kody Willhelmi, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2253.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2254.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

2255.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

2256.   Federal law requires manufacturers of light-duty vehicles to provide two federal

1544

emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2257.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

2258.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2259.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs and the Ohio State Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not

achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2260.   Any opportunity to cure the express breach is unnecessary and futile.

2261.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Ohio Rev. Code Ann. §§ 1302.27 and 1310.19)

2262.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2263.   Plaintiffs, Bill Bilicki, Gregory Erwin, Jordan Turske, Kimberly C. Miller, Robert Redman, Ron Hayden & Ashley Suran, Carl Barber, Marc Hopton, Mike Morrison, Steve Young d/b/a Wrecker One, Jason Reigelsperger, Scott McCrea, Ronda Stratton, Ryan Scott, John & Shirley Hecker, Zachary Gordon, Jeffrey A. Stracensky, Robert Radel, Emily K. Blankenship, Gary Smith, Shawn Patrick McNew, Todd Dana Strickland, Paul Gambrill, Donald and Kimberly Schmit, Gregory Clendenin, Nathan Strahinic and Stacey Grafmeyer, Kevin P Brinkhoff, Thomas and Jean Mikle, Bruce Ludlow, Richard Tomilson, Lawrence Fox, Harold Douglas Maynard, Mark A. Shackelford, Nick DiGioia, Larry Dygert, Kody Willhelmi, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2264.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2265.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

1   motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

2         2266.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

3         of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

4         2267.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

5   ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§

6   1302.27 and 1310.

7         2268.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

8   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

9   Vehicles were not in merchantable condition because their design violated state and federal laws.

10   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

11   federal emission standards.

12         2269.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

13   damage to Plaintiffs. The amount of damages due will be proven at trial.

14
15       **37.**   **Oklahoma**
16   **BREACH OF EXPRESS WARRANTY**
17   **(Okla. Stat. Tit. 12A §§ 2-313 and 2A-210)**
18
19         2270.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

20   fully set forth herein.

21         2271.   Plaintiffs, Clay Cooper, Don & Jackie Walker, Jimmy & Rene Flippen, John Lance,

22   Randy & Angie Reed, Rex Hale, Robert Theser, Timothy P. Woodson, Wade J. Lackey, Jason

23   Trotter, John Stork, Tony Hutchison, Angelo Huerta, Jeff Kays, Lloyd Howard, Gary & Tracy

24   McKeever, Steve E. & Sheryl Ridenour, Matthew Litterell, Kim Watson, Allen Wallis, Brent

25   Lavender, Adam Covington, Troy Atcheson, Lochland D. Jeffries, Willard and Corina Ragland,

26   Vince McBride, David Waltman, Garrett Dantzler, Josh and Amber Gwillim, Casamere and

William Creacy, Kris Kemper, Kristofferson and Lacey Blain, Dwayne Boggs, Thomas A Edwards, Jeffery and Tracie Quine, Harold and Donna Imke, Tad and Stephanie Hamil, Tanner Tibbets, Russell Kious, Jocko Vermillion, Michael Chandler, Gale & Retha Powell, Richard Thomassom, Richard & Shelly Green, Charlie Elliot, Rickey Pittman, Raymond Russell, Blake Byrne, Lawrence & Susan Swonger, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2272.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

2273.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

2274.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

2275.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2276.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2277.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2278.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiff and the Oklahoma State Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2279.   Any opportunity to cure the express breach is unnecessary and futile.

2280.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Okla. Stat. Tit. 12A §§ 2-314 and 2A-212)

2281.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2282.   Plaintiffs, Clay Cooper, Don & Jackie Walker, Jimmy & Rene Flippen, John Lance,

Randy & Angie Reed, Rex Hale, Robert Theser, Timothy P. Woodson, Wade J. Lackey, Jason Trotter, John Stork, Tony Hutchison, Angelo Huerta, Jeff Kays, Lloyd Howard, Gary & Tracy McKeever, Steve E. & Sheryl Ridenour, Matthew Litterell, Kim Watson, Allen Wallis, Brent Lavender, Adam Covington, Troy Atcheson, Lochland D. Jeffries, Willard and Corina Ragland, Vince McBride, David Waltman, Garrett Dantzler, Josh and Amber Gwillim, Casamere and William Creacy, Kris Kemper, Kristofferson and Lacey Blain, Dwayne Boggs, Thomas A Edwards, Jeffery and Tracie Quine, Harold and Donna Imke, Tad and Stephanie Hamil, Tanner Tibbets, Russell Kious, Jocko Vermillion, Michael Chandler, Gale & Retha Powell, Richard Thomassom, Richard & Shelly Green, Charlie Elliot, Rickey Pittman, Raymond Russell, Blake Byrne, Lawrence & Susan Swonger, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2283.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Tit. 12A §§ 2-104(1) and 2-1103(3), and "sellers" of motor vehicles under § 2A-103(1)(t).

2284.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Tit. 12A § 2A-103(1)(p).

2285.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Tit. 12A §§ 2-105(1) and 2A-103(1)(h).

2286.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Okla. Stat. Tit. 12A §§ 2-314 and 2A-212.

2287.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

1    Vehicles were not in merchantable condition because their design violated state and federal laws.

2    The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

3    federal emission standards.

4         2288.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

5    damage to Plaintiffs. The amount of damages due will be proven at trial.

6         **38.   Oregon**

7    **BREACH OF EXPRESS WARRANTY**
8    **(Or. Rev. Stat. §§ 72.3130 and 72A.2100)**
9

10        2289.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

11   fully set forth herein.

12        2290.   Plaintiffs, David S. Wergen, Frank & Lisa Meyers, Kris A. Shepherd, Loren

13   Heideman, Mark Seghetti d/b/a R&B Outdoors, Inc., Chuck McClaugherty, Daniel & Laura

14   Zamora, Donald Wacek, Joey Lea & Mark McVane, Ben Doney, Scot Platko, Colton Warren

15   Shannon, Wade Rodney Aylett, Crystal Lee Bonotto, Leo Karnowski Jr, Rodney Robinson, Steven

16   and Jennifer Weir, Sam Rickey Richey, Mace McVay, Robert Troudt, Jimmy Lanz, Kurt Cundiff,

17   Wade Kaseberg, Jeff & Cynthia Sullens, Kevin & Danyelle Ramsey, Tom & Shawn Wells, Jordan

18   Smith, Tylor Cillione, (for the purpose of this section, "Plaintiffs") bring this action on behalf of

19   themselves against Fiat and FCA.

20        2291.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

21   vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles

22   under § 72.1030(1)(d).

23        2292.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

24   motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

25        2293.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

2294. Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2295. Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2296. However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2297. Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs and the Oregon State Plaintiffs, the Subject

1   Vehicles were designed to pollute at higher than legal limits during normal driving, and could not

2   achieve advertised performance and efficiency metrics without this cheating design. This design

3   and the devices that effectuate it are defects. Fiat and FCA therefore breached their express

4   warranty by providing a product containing defects that were never disclosed to Plaintiffs.

5       2298.   Any opportunity to cure the express breach is unnecessary and futile.

6       2299.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

7   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

8   
9   **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
10  **(Or. Rev. Stat. § 72.3140 and 72A.2120)**

11      2300.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

12  paragraphs as though fully set forth herein.

13      2301.   Plaintiffs, David S. Wergen, Frank & Lisa Meyers, Kris A. Shepherd, Loren

14  Heideman, Mark Seghetti d/b/a R&B Outdoors, Inc., Chuck McClaugherty, Daniel & Laura

15  Zamora, Donald Wacek, Joey Lea & Mark McVane, Ben Doney, Scot Platko, Colton Warren

16  Shannon, Wade Rodney Aylett, Crystal Lee Bonotto, Leo Karnowski Jr, Rodney Robinson, Steven

17  and Jennifer Weir, Sam Rickey Richey, Mace McVay, Robert Troudt, Jimmy Lanz, Kurt Cundiff,

18  Wade Kaseberg, Jeff & Cynthia Sullens, Kevin & Danyelle Ramsey, Tom & Shawn Wells, Jordan

19  Smith, Tylor Cillione, (for the purpose of this section, "Plaintiffs") bring this action on behalf of

20  themselves against Fiat and FCA.

21      2302.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

22  under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under §

23  72.1030(1)(d).

1553

2303.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

2304.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

2305.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Or. Rev. Stat. §§ 72.3140 and 72A-2120.

2306.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2307.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

### 39.   <u>Pennsylvania</u>

**BREACH OF EXPRESS WARRANTY**
**(13 PA. CONS. STAT. §§ 2313 and 2A210)**

2308.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2309.   Plaintiffs, Terrance Piper, Jeffrey A. Michener, Jonathan Proctor, Ken G. Sharpe, Morgan Green, Scott Fick, Thomas J. & Gilbert T. Madonna, Amy McCarthy, Bill Plagianakos, Patti & Robert Fobia, Anthony Stockdale, Russell Grieff, Sarah Miller, George Anthony, Angeline

& Stephen Connaghan, Duane Gleason, Susan Burkland, Lee & Inna Halpert, Dean Kohanyi, Richardo C. Calla, Travis Ray Burwell, Gregg Rafalco, Timothy Graham, Dawn Noll, Bernice and Pete Greene, Loren K. Nye, Frank E II and Dolly Rae Baker, Dustin R Downing Jr, Matthew Hoser, Mason Lauer, Martin Zueger, Thomas Nicholas Bezick, Robert Patterson Snyder, Larry E. and Hazel A. Heeter, Troy Young, Michael Moreland, George A. Gunther, John Ball, Mark Schultz, John Guarino, Jr., Kevin & Elaine Collier, Thomas Pisano, Aj Himmelsbach, Steve & Mallory Wilson, Jay E. Fitzgerald, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2310.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

2311.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

2312.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

2313.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2314.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2315.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2316.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2317.   Any opportunity to cure the express breach is unnecessary and futile.

2318.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314 and 2A212)

2319.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

paragraphs as though fully set forth herein.

2320.   Plaintiffs, Terrance Piper, Jeffrey A. Michener, Jonathan Proctor, Ken G. Sharpe, Morgan Green, Scott Fick, Thomas J. & Gilbert T. Madonna, Amy McCarthy, Bill Plagianakos, Patti & Robert Fobia, Anthony Stockdale, Russell Grieff, Sarah Miller, George Anthony, Angeline & Stephen  Connaghan, Duane Gleason, Susan Burkland, Lee & Inna Halpert, Dean Kohanyi, Ricardo C. & Michelle Calla, Travis Ray Burwell, Gregg Rafalco, Timothy Graham, Dawn Noll, Bernice and Pete Greene, Loren K. Nye, Frank E II and Dolly Rae Baker, Dustin R Downing Jr, Matthew Hoser, Mason Lauer, Martin Zueger, Thomas Nicholas Bezick, Robert Patterson Snyder, Larry E. and Hazel A. Heeter, Troy Young, Michael Moreland, George A. Gunther, John Ball, Mark Schultz, John Guarino, Jr., Kevin & Elaine Collier, Thomas Pisano, Aj Himmelsbach, Steve & Mallory Wilson, Jay E. Fitzgerald, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2321.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" of motor vehicles under § 2103(a).

2322.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

2323.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

2324.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

2325.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

1    Vehicles were not in merchantable condition because their design violated state and federal laws.

2    The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

3    federal emission standards.

4        2326.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

5    damage to the Plaintiffs. The amount of damages due will be proven at trial.

6        40.   **Rhode Island**

7        **BREACH OF EXPRESS WARRANTY**
8        **(R.I. Gen. Laws §§ 6A-2-313 and 6A-2.1-210)**
9

10       2327.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

11   fully set forth herein.

12       2328.   Plaintiffs, Dennis Begin, Robert H. Retuer, (for the purpose of this section,

13   "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

14       2329.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

15   vehicles under R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor

16   vehicles under § 6A-2-103(a)(4).

17       2330.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

18   motor vehicles under R.I. Gen. Laws § 6A-2.1-103(1)(p).

19       2331.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

20   of R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

21       2332.   Federal law requires manufacturers of light-duty vehicles to provide two federal

22   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

23   Performance Warranty applies to repairs that are required during the first two years or 24,000

24   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

25   major emission control components are covered for the first eight years or 80,000 miles, whichever

comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2333.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject Vehicles.

2334.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2335.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to the Plaintiffs.

2336.   Any opportunity to cure the express breach is unnecessary and futile.

2337.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212)

2338.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2339.   Plaintiffs, Dennis Begin, Robert H. Reuter, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2340.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

2341.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under R.I. Gen. Laws § 6A-2.1-103(1)(p).

2342.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

2343.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212.

2344.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2345.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

41.   **South Carolina**

**BREACH OF EXPRESS WARRANTY**
**(S.C. Code §§ 36-2-313 and 36-2A-210)**

2346.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2347.   Plaintiffs, Andrew Steele, Andrew Curtis & Mimi Elizabeth Reid, Christopher Fehr, Danny Hill, James Fox, Jason Downs, Kimela Anne Bryant, Kurtis J. Melin, Patrick Hair & Angelica Eller, Patrick Diggin, Matthew Deavers, Marko Seget, Matt Hersey, Kimberly S. Henson, Joseph Newell, William Jones, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2348.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-2-103(1)(d).

2349.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under S.C. Code § 36-2A-103(1)(p).

2350.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

2351.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000

miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2352.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2353.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2354.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

1562

1   product containing defects that were never disclosed to Plaintiffs.

2   2355.   Any opportunity to cure the express breach is unnecessary and futile.

3   2356.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

4   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(S.C. Code §§ 36-2-314 and 36-2A-212)**

8   2357.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

9   paragraphs as though fully set forth herein.

10   2358.   Plaintiffs, Andrew Steele, Andrew Curtis & Mimi Elizabeth Reid, Christopher

11   Fehr, Danny Hill, James Fox, Jason Downs, Kimela Anne Bryant, Kurtis J. Melin, Patrick Hair &

12   Angelica Eller, Patrick Diggin, Matthew Deavers, Marko Seget, Matt Hersey, Kimberly S.

13   Henson, Joseph Newell, William Jones, (for the purpose of this section, "Plaintiffs") bring this

14   action on behalf of themselves against Fiat and FCA.

15   2359.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

16   under S.C. Code §§ 36-2-104(1) and 36-2A-103(1)(t), and "sellers" of motor vehicles under § 36-

17   2-103(1)(d).

18   2360.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

19   motor vehicles under S.C. Code § 36-2A-103(1)(p).

20   2361.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

21   of S.C. Code §§ 36-2-105(1) and 36-2A-103(1)(h).

22   2362.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

23   ordinary purpose for which vehicles are used is implied by law pursuant to S.C. Code §§ 36-2-

24   314 and 36-2A-212.

2363.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2364.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

42.   **South Dakota**

**BREACH OF EXPRESS WARRANTY**
**(S.D. Codified Laws §§ 57A-2-313 and 57A-2A-210)**

2365.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2366.   Plaintiffs, Chad Kaltenbach, Mike Stevens, Randy Sturzenbecher, Jon Elsasser, Scot Jones, John Henglefelt, Benjamen & Amanda Brown,m Tim McGriff, Nicolas Klein, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2367.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles under § 57A-104(1)(d).

2368.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

2369.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

2370.   Federal law requires manufacturers of light-duty vehicles to provide two federal

emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2371.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2372.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2373.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that

1565

1   effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

2   product containing defects that were never disclosed to Plaintiffs.

3       2374.   Any opportunity to cure the express breach is unnecessary and futile.

4       2375.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

5   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

6   **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
7   (S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212)
8

9       2376.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

10   paragraphs as though fully set forth herein.

11       2377.   Plaintiffs, Chad Kaltenbach, Mike Stevens, Randy Sturzenbecher, Jon Elsasser,

12   Scot Jones, John Henglefelt, Benjamen & Amanda Brown, Tim McGriff, Nicolas Klein, (for the

13   purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and

14   FCA.

15       2378.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

16   under S.D. Codified Laws §§ 57A-104(1) and 57A-2A-103(1)(t), and "sellers" of motor vehicles

17   under § 57A-104(1)(d).

18       2379.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

19   motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

20       2380.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

21   of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

22       2381.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

23   ordinary purpose for which vehicles are used is implied by law pursuant to S.D. Codified Laws §§

24   57A-2-314 and 57A-2A-212.

25       2382.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2383.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

43.   **<u>Tennessee</u>**

**BREACH OF EXPRESS WARRANTY**
**(Tenn. Code §§ 47-2-313 and 47-2A-210)**

2384.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2385.   Plaintiffs, Deborah & Calvin Stafford, Richard Bradley, Thomas Kosinski, Alan Wright, Nathan Dakota Hale, Blenda Bowman, Christopher Vigil, Greg Gaskins, Kent Hall, Nathan Townsend, Mike Shelton, Matthew Swanson, Joseph McGee, Clinton and Sadie Etheridge, Mark Schumaker, Roger Parker, Robert Lloyd Senter, Terrie Peay (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2386.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

2387.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

2388.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

2389.   Federal law requires manufacturers of light-duty vehicles to provide two federal

emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2390.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2391.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2392.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that

1  effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

2  product containing defects that were never disclosed to Plaintiffs.

3  2393.   Any opportunity to cure the express breach is unnecessary and futile.

4  2394.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

5  Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Tenn. Code §§ 47-2-314 and 47-2A-212)**

10  2395.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

11  paragraphs as though fully set forth herein.

12  2396.   Plaintiffs, Deborah & Calvin Stafford, Richard Bradley, Thomas Kosinski, Alan

13  Wright, Nathan Dakota Hale, Blenda Bowman, Christopher Vigil, Greg Gaskins, Kent Hall,

14  Nathan Townsend, Mike Shelton, Matthew Swanson, Joseph McGee, Clinton and Sadie Etheridge,

15  Mark Schumaker, Roger Parker, Robert Lloyd Senter, Terrie Peay (for the purpose of this section,

16  "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

17  2397.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

18  under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under §

19  47-2-103(1)(d).

20  2398.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

21  motor vehicles under Tenn. Code § 47-2A-103(1)(p).

22  2399.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

23  of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

2400.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2-314 and 47-2A-212.

2401.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2402.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

**44.     Texas**

**BREACH OF EXPRESS WARRANTY**
**(Tex. Bus. & Com. Code §§ 2.313 and 2A.210)**

2403.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2404.   Plaintiffs, Alec Beard, Carl Lucci Wilburn, Michael Roberts, Larry Thompson, Lawrence Gonzales, Dave Schulien, David Jones, Edward Fosnight, Gary Tripp, Gary Adams, Gerald Richmond, Jeff Vance, Jeffrey Irwin, Joshua Sigmon, Kenneth D. Elliot, Lucas Lopez, Manuel Lopez Garcia, Michael Rene Hollenbaugh, Randall Moody, Reese Howell, Robert Pickering, Sergio Lopez, Shawn J. Austin, Sherman Barnett d/b/a Rides Auto Group, Tim Fowler, William Gray, Zachary Theobald, Brandon and Haley Buckmaster, David Allen Bradshaw, Maggie Phipps, Jerry Fortenberry, Jimmy D. King, Marcus Carlock, James and Nichole Potts, Russell Cash, Casey Barton, Coleman Sessums, Michael Werner, Gene C. Brown,  Jr., Duane

Whitus, Andrew Moran, Scott Perry, Bryan Jones, Mario Maltez,  Jr., Saleh Sal, John Horner, Benjamin Tester, Dwayne Hunter, John Lemelle, Cory Estelle, Eric Karcher, Kenneth Trent Paris, William and Kimberly Mayes, Alan Ostermiller, Ruben Luevanos, George Henry, Don Merriman d/b/a Don-Sandy,  LLC, Richard Holbach, Richard Robinson, Edward Roland Hill,  III, Andrew Johnson, Mark Spaugh, Ricardo Abraham Soto, Amanda Dwyer, Chris Breaux, Christopher Fox, Matthew Kyle, Robert Durante, Casey Wheeler, David Jarzamski, Gaersen Bailey, Michael Burkhart, Santiago Deleon, Casey Perry, Landin Longtin, Scott Reeves, Edward Constantinescu, Robert Durante, Christopher Vigil, Luke D. Knighten, Justin and Chelsey Leasman, Joshua Berna, Robert McMichael, Michael Gunderson, William Ryan, Christopher Lewis, Richard Randolph, William Thomas Hunt, Scott Johnson, Andrew Defayette, Karen Gilcrease, William Thomas Hunt, Lindsay Elizabeth Weaver, Kenneth Kana, Patrick McCraw, Stephen Watson, Jenner Jones, Brandon Redmon, Brandon Redmon, John Prinz, Larry Alan Powles, Richard Eugene Brown, Michael Potts, Mark Madden, Tony Choi, Joshua Gillespie, Eder Acosta, Lauren Leigh Brehm, Thomas and Tammy Samford, Matthew Reese, Douglas B. Mclaughlin, Regina Patricia Sanchez, Tomas Contreras, Brandon Coates, Christopher Fox, Michael Johnson, Lorie Neal, David Sweet, Tyler Milton, Robert S. McKee, Aaron and Lindsay Horn, Gerald Roux, John Jackson, Ashton and Christina Pace, Ashton and Christina Pace, Billy Oliver, Zachary Oliver, Darrel C. Caldwell, Bobby and Petty Harris, Eli Mcclain, Joseph Weis, Robert Smith, Elizabeth Roland, Carl Caughman, Jay Setchell, David G Mosby, Jose Vicente Pinto, Michael Milich, Mike Tuner, Michael & Vanetta Mund, Alan Macchi, Gustavo Pina, Rick Cruz, John Adams, Audie Proctor, Ricky Fields, Frank Costanzo, James Forwood, Carissamae Frederick, Terrence O'Brien, Leslie Charles Tabor, John Gonzalez, Roberto Martinez, Collin Hale, Ignatius & Clara Gladek, Joseph A. Reynolds, Michael Danielson, Jackie Brewer, Robert Zielinski, Carlos Cantu, Jody Simpson &

Leann Aills, Jim Leavelle, Michael Miller, Brian Brown, Robert Lionel, Brad Smith (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2405. Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

2406. With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

2407. The Subject Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

2408. Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2409. Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

1    basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2        2410.   However, Fiat and FCA knew or should have known that the warranties were false

3    and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

4    sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

5    to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

6    therefore, knew that the emission systems contained defects.

7        2411.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

8    emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not

9    perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at

10   higher than legal limits during normal driving, and could not achieve advertised performance and

11   efficiency metrics without this cheating design. This design and the devices that effectuate it are

12   defects. Fiat and FCA therefore breached their express warranty by providing a product containing

13   defects that were never disclosed to Plaintiffs.

14       2412.   Any opportunity to cure the express breach is unnecessary and futile.

15       2413.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

16   Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

17   <div align="center">**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</div>
18   <div align="center">**(Tex. Bus. & Com. Code §§ 2.314 and 2A.212)**</div>
19
20       2414.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

21   paragraphs as though fully set forth herein.

22       2415.   Plaintiffs, Alec Beard, Carl Lucci Wilburn, Michael Roberts, Larry Thompson,

23   Lawrence Gonzales, Dave Schulien, David Jones, Edward Fosnight, Gary Tripp, Gary Adams,

24   Gerald Richmond, Jeff Vance, Jeffrey Irwin, Joshua Sigmon, Kenneth D. Elliot, Lucas Lopez,

25   Manuel Lopez Garcia, Michael Rene Hollenbaugh, Randall Moody, Reese Howell, Robert

<div align="center">1573</div>

Pickering, Sergio Lopez, Shawn J. Austin, Sherman Barnett d/b/a Rides Auto Group, Tim Fowler, William Gray, Zachary Theobald, Brandon and Haley Buckmaster, David Allen Bradshaw, Maggie Phipps, Jerry Fortenberry, Jimmy D. King, Marcus Carlock, James and Nichole Potts, Russell Cash, Casey Barton, Coleman Sessums, Michael Werner, Gene C. Brown, Jr., Duane Whitus, Andrew Moran, Scott Perry, Bryan Jones, Mario Maltez, Jr., Saleh Sal, John Horner, Benjamin Tester, Dwayne Hunter, John Lemelle, Cory Estelle, Eric Karcher, Kenneth Trent Paris, William and Kimberly Mayes, Alan Ostermiller, Ruben Luevanos, George Henry, Don Merriman d/b/a Don-Sandy, LLC, Richard Holbach, Richard Robinson, Edward Roland Hill, III, Andrew Johnson, Mark Spaugh, Ricardo Abraham Soto, Amanda Dwyer, Chris Breaux, Christopher Fox, Matthew Kyle, Robert Durante, Casey Wheeler, David Jarzamski, Gaersen Bailey, Michael Burkhart, Santiago Deleon, Casey Perry, Landin Longtin, Scott Reeves, Edward Constantinescu, Robert Durante, Christopher Vigil, Luke D. Knighten, Justin and Chelsey Leasman, Joshua Berna, Robert McMichael, Michael Gunderson, William Ryan, Christopher Lewis, Richard Randolph, William Thomas Hunt, Scott Johnson, Andrew Defayette, Karen Gilcrease, William Thomas Hunt, Lindsay Elizabeth Weaver, Kenneth Kana, Patrick McCraw, Stephen Watson, Jenner Jones, Brandon Redmon, Brandon Redmon, John Prinz, Larry Alan Powles, Richard Eugene Brown, Michael Potts, Mark Madden, Tony Choi, Joshua Gillespie, Eder Acosta, Lauren Leigh Brehm, Thomas and Tammy Samford, Matthew Reese, Douglas B. Mclaughlin, Regina Patricia Sanchez, Tomas Contreras, Brandon Coates, Christopher Fox, Michael Johnson, Lorie Neal, David Sweet, Tyler Milton, Robert S. McKee, Aaron and Lindsay Horn, Gerald Roux, John Jackson, Ashton and Christina Pace, Ashton and Christina Pace, Billy Oliver, Zachary Oliver, Darrel C. Caldwell, Bobby and Petty Harris, Eli Mcclain, Joseph Weis, Robert Smith, Elizabeth Roland, Carl Caughman, Jay Setchell, David G Mosby, Jose Vicente Pinto, Michael Milich, Mike Tuner,

1   Michael & Vanetta Mund, Alan Macchi, Gustavo Pina, Rick Cruz, John Adams, Audie Proctor,

2   Ricky Fields, Frank Costanzo, James Forwood, Carissamae Frederick, Terrence O'Brien, Leslie

3   Charles Tabor, John Gonzalez, Roberto Martinez, Collin Hale, Ignatius & Clara Gladek, Joseph

4   A. Reynolds, Michael Danielson, Jackie Brewer, Robert Zielinski, Carlos Cantu, Jody Simpson &

5   Leann Aills, Jim Leavelle, Michael Miller, Brian Brown, Robert Lionel, Robert Smith (for the

6   purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and

7   FCA.

8        2416.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

9   under Tex. Bus. & Com. Code § 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under

10  § 2.103(a)(4).

11       2417.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

12  motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

13       2418.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

14  of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

15       2419.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

16  ordinary purpose for which vehicles are used is implied by law pursuant to Tex. Bus. & Com.

17  Code §§ 2.314 and 2A.212.

18       2420.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

19  condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

20  Vehicles were not in merchantable condition because their design violated state and federal laws

21  The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

22  federal emission standards.

23       2421.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

1575

damage to the Plaintiffs. The amount of damages due will be proven at trial.

### 45.   Utah

**BREACH OF EXPRESS WARRANTY**
**(Utah Code Ann. §§ 70A-2-313 and 70A-2A-210)**

2422.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2423.   Plaintiffs, Marie & Verl Robbins, Teaguer Terrell, Nick Butters, Howard James Garel, Robert Morris, Gary Riddle, Mack William and Debra Ann Nowlin, Cesar H Nunez, Bill Sorensen, Sherry Greathouse, Larry Rasband (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2424.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

2425.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p). 1234. The Subject Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

2426.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever

comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2427.   Fiat and FCA provided these warranties to Plaintiff. These warranties formed the basis of the bargain that was reached when Plaintiff purchased or leased their Subject Vehicles.

2428.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2429.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2430.   Any opportunity to cure the express breach is unnecessary and futile.

1    2431.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

2    Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### (Utah Code Ann. §§ 70A-2-314 and 70A-2A-212)

6    2432.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

7    paragraphs as though fully set forth herein.

8    2433.   Plaintiffs, Marie & Verl Robbins, Teaguer Terrell, Nick Butters, Howard James

9    Garel, Robert Morris, Gary Riddle, Mack William and Debra Ann Nowlin, Cesar H Nunez, Bill

10   Sorensen, Sherry Greathouse, Larry Rasband , (for the purpose of this section, "Plaintiff") brings

11   this action on behalf of themselves against Fiat and FCA.

12   2434.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

13   under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under §

14   70A-2-103(1)(d).

15   2435.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

16   motor vehicles under Utah Code § 70A-2a-103(1)(p).

17   2436.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

18   of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

19   2437.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

20   ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2-

21   314 and 70A-2a-212.

22   2438.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

23   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

24   Vehicles were not in merchantable condition because their design violated state and federal laws.

1   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

2   federal emission standards.

3        2439.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

4   damage to Plaintiff. The amount of damages due will be proven at trial.

5        46.   **<u>Vermont</u>**

6        **BREACH OF EXPRESS WARRANTY**
7        **(Vt. Stat. Tit. Ann. 9A, §§ 2-313 and 2A-210)**
8
9

10       2440.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

11   fully set forth herein.

12       2441.   Plaintiff, David Meunier, Brian Carpenter, (for the purpose of this section,

13   "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

14       2442.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

15   vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under

16   § 2-103(1)(d).

17       2443.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

18   motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

19       2444.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

20   of Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

21       2445.   Federal law requires manufacturers of light-duty vehicles to provide two federal

22   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

23   Performance Warranty applies to repairs that are required during the first two years or 24,000

24   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

25   major emission control components are covered for the first eight years or 80,000 miles, whichever

comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2446.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject Vehicles.

2447.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2448.   The Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to the Plaintiffs.

2449.   Any opportunity to cure the express breach is unnecessary and futile.

1    2450.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

2    the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at

3    trial.

4    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
5    **(Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212)**
6

7    2451.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

8    paragraphs as though fully set forth herein.

9    2452.   Plaintiff, David Meunier, Brian Carpenter, (for the purpose of this section,

10   "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

11   2453.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

12   under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2-

13   103(1)(d).

14   2454.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

15   motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

16   2455.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

17   of Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

18   2456.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

19   ordinary purpose for which vehicles are used is implied by law pursuant to Vt. Stat. Tit. 9A, §§ 2-

20   314 and 2A-212.

21   2457.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

22   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

23   Vehicles were not in merchantable condition because their design violated state and federal laws.

24   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

25   federal emission standards.

1    2458. Fiat's and FCA's breaches of the implied warranty of merchantability caused

2    damage to the Plaintiffs. The amount of damages due will be proven at trial.

3           47.    **Virginia**

4    **BREACH OF EXPRESS WARRANTY**
5    **(Va. Code Ann. §§ 8.2-313 and 8.2A-210)**
6

7    2459. Plaintiffs reallege and incorporate by reference all preceding allegations as though

8    fully set forth herein.

9    2460. Plaintiffs, Arturo Nieves, Carl Davis, Samantha Mountford & Darrin Illges, David

10   Mitchell, James Emerson, Jr., Alan Stcyr, Steven Seaberg, Michael Shergey, Bruce & Vickie Sulc,

11   Kevin Keefer, David Irwin Antokal, Jeffrey Cook, James Gisonna, Derek Iler, Charles W.

12   Menninger III, Michael Colligon, Gerlad Huiras, Jack Zhe, Roy LeNeave, Brandis Hanson, (for

13   the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and

14   FCA.

15   2461. Fiat and FCA are and were at all relevant times "merchants" with respect to motor

16   vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under §

17   8.2-103(1)(d).

18   2462. With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

19   motor vehicles under Va. Code § 8.2A-103(1)(p).

20   2463. The Subject Vehicles are and were at all relevant times "goods" within the meaning

21   of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

22   2464. Federal law requires manufacturers of light-duty vehicles to provide two federal

23   emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

24   Performance Warranty applies to repairs that are required during the first two years or 24,000

25   miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2465.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2466.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2467.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2468.   Any opportunity to cure the express breach is unnecessary and futile.

1    2469.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

2    Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

3                    **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
4                          **(Va. Code Ann. §§ 8.2-314 and 8.2A-212)**
5
6

7    2470.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

8    paragraphs as though fully set forth herein.

9    2471.   Plaintiffs, Arturo Nieves, Carl Davis, Samantha Mountford & Darrin Illges, David

10   Mitchell, James Emerson, Jr., Alan Stcyr, Steven Seaberg, Michael Shergey, Bruce & Vickie Sulc,

11   Kevin Keefer, David Irwin Antokal, Jeffrey Cook, James Gisonna, Derek Iler, Charles W.

12   Menninger III, Michael Colligon, Gerlad Huiras, Jack Zhe, Roy LeNeave, Brandis Hanson, (for

13   the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and

14   FCA.

15   2472.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

16   under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-

17   103(1)(d).

18   2473.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

19   motor vehicles under Va. Code § 8.2A-103(1)(p).

20   2474.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

21   of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

22   2475.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

23   ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-314

1   and 8.2A-212.

2       2476.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

3   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

4   Vehicles were not in merchantable condition because their design violated state and federal laws.

5   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

6   federal emission standards.

7       2477.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

8   damage to Plaintiffs. The amount of damages due will be proven at trial.

9       **48.    Washington**

10      **BREACH OF EXPRESS WARRANTY**
11      **(Wash. Rev. Code §§ 62A.2-313 and 62A.2A-210)**
12

13      2478.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

14  fully set forth herein.

15      2479.   Plaintiffs, Dylan Dzuck, Gary & Lauri Rowland, Mike Mccloskey, Paul Kearney,

16  Richard A. Gange, Scott Milne, Donald & Linda Lamson, Robert & Reena Carnes, Rick Nash,

17  Sergey Oleynik, Brand Erikson, Ralph Coers, Bo-Michael M. Apele, Brad Robertson, Matthew

18  Dean, Jody Killmer, Daniel Martin, Jeffrey Sanders, Patricia Wilbur, Brett Keville Williams,

19  Jeffrey & Keri Bushaw, Everard Lewis II, Rodger Cassat, Robin Laskody, (for the purpose of this

20  section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

21      2480.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

22  vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor

23  vehicles under § 2.103(a)(4).

24      2481.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

1  motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

2      2482.  The Subject Vehicles are and were at all relevant times "goods" within the meaning

3  of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

4      2483.  Federal law requires manufacturers of light-duty vehicles to provide two federal

5  emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The

6  Performance Warranty applies to repairs that are required during the first two years or 24,000

7  miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain

8  major emission control components are covered for the first eight years or 80,000 miles, whichever

9  comes first. These major emission control components subject to the longer warranty include the

10  catalytic converters, the electronic engine control unit (ECU), and the onboard emissions

11  diagnostic device or computer. The Design and Defect Warranty covers repair of emission control

12  or emission related parts which fail to function or function improperly due to a defect in materials

13  or workmanship. This warranty provides protection for two years or 24,000 miles, whichever

14  comes first, or, for the major emission control components, for eight years or 80,000 miles,

15  whichever comes first.

16      2484.  Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the

17  basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

18      2485.  However, Fiat and FCA knew or should have known that the warranties were false

19  and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles

20  sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and

21  to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and

22  therefore, knew that the emission systems contained defects.

23      2486.  Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning

1586

emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2487.   Any opportunity to cure the express breach is unnecessary and futile.

2488.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
#### (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212)

2489.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2490.   Plaintiffs, Dylan Dzuck, Gary & Lauri Rowland, Mike Mccloskey, Paul Kearney, Richard A. Gange, Scott Milne, Donald & Linda Lamson, Robert & Reena Carnes, Rick Nash, Sergey Oleynik, Brand Erikson, Ralph Coers, Bo-Michael M. Apele, Brad Robertson, Matthew Dean, Jody Killmer, Daniel Martin, Jeffrey Sanders, Patricia Wilbur, Brett Keville Williams, Jeffrey & Keri Bushaw, Everard Lewis II, Rodger Cassat, Robin Laskody, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2491.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code § 62A.2-104(1) and 62A.2A-103(1)(t), and "sellers" of motor vehicles under § 2.103(a)(4).

2492.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code § 62A.2A-103(1)(p).

2493.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code §§ 62A.2-105(1) and 62A.2A-103(1)(h).

2494.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212.

2495.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2496.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

49.   **West Virginia**

**BREACH OF EXPRESS WARRANTY**
**(W. Va. Code §§ 46-2-313 and 46-2A-210)**

2497.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2498.   Plaintiffs, Jeffrey Cook, Gregory Burnette, D.O., Thomas Taylor, Dustin Louden, Jerry Barnett, Brianna Clay, Roger Workman, Sage Seifert, Brandon Saddler, Mike Rumney, Jody L. & Cindy L. Danielson, Emily Blankenship, Jackie Lynn Clark, Jr., Roy Jones, James Slone,

Dustin Louden, Gregory Burnette D.O., Justin Goldsmith, Jeri Parson (d/b/a Parma Properties), Pat Combs, Joseph Donchatz, Margie & Joshua A. Toler, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

2499.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

2500.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

2501.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

2502.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2503.   Fiat and FCA provided these warranties to the Plaintiffs. These warranties formed the basis of the bargain that was reached when the Plaintiffs purchased or leased their Subject Vehicles.

2504.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to the Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2505.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to the Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to the Plaintiffs.

2506.   Any opportunity to cure the express breach is unnecessary and futile.

2507.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, the Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (W. Va. Code §§ 46-2-314 and 46-2A-212)

2508.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

1590

1   paragraphs as though fully set forth herein.

2   2509.   Plaintiffs, Jeffrey Cook, Gregory Burnette, D.O., Thomas Taylor, Dustin Louden,

3   Jerry Barnett, Brianna Clay, Roger Workman, Sage Seifert, Brandon Saddler, Mike Rumney, Jody

4   L. & Cindy L. Danielson, Emily Blankenship, Jackie Lynn Clark, Jr., H Roy. Jones, Jr., James

5   Slone, Dustin Louden, Gregory Burnette D.O., Justin Goldsmith, Jeri Parson (d/b/a Parma

6   Properties), Pat Combs, Joseph Donchatz, Margie & Joshua A. Toler, (for the purpose of this

7   section, "Plaintiffs") bring this action on behalf of themselves against Fiat and FCA.

8   2510.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

9   under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under §

10   46-2-103(1)(d).

11   2511.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

12   motor vehicles under W. Va. Code § 46-2A-103(1)(p).

13   2512.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

14   of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

15   2513.   A warranty that the Subject Vehicles were in merchantable condition and fit for the

16   ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2-

17   31 and 46-2A-212.

18   2514.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable

19   condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject

20   Vehicles were not in merchantable condition because their design violated state and federal laws.

21   The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and

1   federal emission standards.

2       2515.   Fiat's and FCA's breaches of the implied warranty of merchantability caused

3   damage to the Plaintiffs. The amount of damages due will be proven at trial.

4       50.   **Wisconsin**

5               **BREACH OF EXPRESS WARRANTY**
6               **(Wis. Stat. §§ 402.313 and 411.210)**
7

8       2516.   Plaintiffs reallege and incorporate by reference all preceding allegations as though

9   fully set forth herein.

10      2517.   Plaintiffs, Michael Barton Batman, Dan Healy James Bell, Jared Korn, Jeff Weier,

11  Brian Lewandowski, Greg Griebel, Robert & Carol J. Anderson, Jared Nagel, Al Schellinger, Dion

12  Kampa, Steve G. Parnitzke, Glenn Stahl, Jamie A. Walker, Cale & Jami Duerstein, Christopher

13  Rivera, Jeffrey Rittenhouse, Brian Steadman, Timothy Bernard Graham, Mario Toliver, Stephen

14  R. Schmidt, Todd Vanderheyden, Michael W Stinson, Mitchell R Wellnitz, Edna Jordan, Thomas

15  Vines, Jason Philaja, Larry & Dianne Joachim, Michael Wahl, Dave Mikkelson, Kenton & Angela

16  Powell, Derick Owens, Willie Sekel, Lois Clark, Travis & Sara Rose, Kegan Ashbrook, David &

17  Jamie Wright, Paul & Angela Miller (for the purpose of this section, "Plaintiffs") bring this action

18  on behalf of themselves against Fiat and FCA.

19      2518.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor

20  vehicles under Wis. Stat. § 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under §

21  402.103(1)(d).

22      2519.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of

23  motor vehicles under Wis. Stat. § 411.103(1)(p).

24      2520.   The Subject Vehicles are and were at all relevant times "goods" within the meaning

25  of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

2521.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2522.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2523.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiffs were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2524.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised

1  performance and efficiency metrics without this cheating design. This design and the devices that

2  effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a

3  product containing defects that were never disclosed to Plaintiffs.

4      2525.   Any opportunity to cure the express breach is unnecessary and futile.

5      2526.   As a direct and proximate result of Fiat's and FCA's breach of express warranties,

6  Plaintiffs suffered significant damages, and seek damages in an amount to be determined at trial.

7  8  9  **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Wis. Stat. §§ 402.314 and 411.212)**

10      2527.   Plaintiffs reallege and incorporate by reference all allegations of the preceding

11  paragraphs as though fully set forth herein.

12      2528.   Plaintiffs, Michael Barton Batman, Dan Healy James Bell, Jared Korn, Jeff Weier,

13  Brian Lewandowski, Greg Griebel, Robert & Carol J. Anderson, Jared Nagel, Al Schellinger, Dion

14  Kampa, Steve G. Parnitzke, Glenn Stahl, Jamie A. Walker, Cale & Jami Duerstein, Christopher

15  Rivera, Jeffrey Rittenhouse, Brian Steadman, Timothy Bernard Graham, Mario Toliver, Stephen

16  R. Schmidt, Todd Vanderheyden, Michael W Stinson, Mitchell R Wellnitz, Edna Jordan, Thomas

17  Vines, Jason Philaja, Larry & Dianne Joachim, Michael Wahl, Dave Mikkelson, Kenton & Angela

18  Powell, Derick Owens, Willie Sekel, Lois Clark, Travis & Sara Rose, Kegan Ashbrook, David &

19  Jamie Wright, Paul & Angela Miller (for the purpose of this section, "Plaintiffs") bring this action

20  on behalf of themselves against Fiat and FCA.

21      2529.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles

22  under Wis. Stat. § 402.104(3) and 411.103(1)(t), and "sellers" of motor vehicles under §

23  402.103(1)(d).

24      2530.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

25  motor vehicles under Wis. Stat. § 411.103(1)(p).

2531.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. §§ 402.105(1)(c) and 411.103(1)(h).

2532.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wis. Stat. §§ 402.314 and 411.212.

2533.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2534.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to the Plaintiffs. The amount of damages due will be proven at trial.

51.   **Wyoming**

**BREACH OF EXPRESS WARRANTY**
**(Wyo. Stat. § 34.1-2-313)**

2535.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2536.   Plaintiffs, Jason Royer, Beverley Gayle VanArkel, James B. Valliere, Anthony Knezovich, Rick Stone, Calvin Taylor, Wayne & Becky Bennett, Cheryl and Lee Philley, Richard & Cindy Simcox, Derek & Frances Minchey, Daniel Lopez, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2537.   Fiat and FCA are and were at all relevant times "merchants" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

2538.   With respect to leases, Fiat and FCA are and were all relevant times "lessors" of motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

2539.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2540.   Federal law requires manufacturers of light-duty vehicles to provide two federal emission control warranties: a "Performance Warranty" and a "Design and Defect Warranty." The Performance Warranty applies to repairs that are required during the first two years or 24,000 miles, whichever occurs first, when a vehicle fails an emissions test. Under this warranty, certain major emission control components are covered for the first eight years or 80,000 miles, whichever comes first. These major emission control components subject to the longer warranty include the catalytic converters, the electronic engine control unit (ECU), and the onboard emissions diagnostic device or computer. The Design and Defect Warranty covers repair of emission control or emission related parts which fail to function or function improperly due to a defect in materials or workmanship. This warranty provides protection for two years or 24,000 miles, whichever comes first, or, for the major emission control components, for eight years or 80,000 miles, whichever comes first.

2541.   Fiat and FCA provided these warranties to Plaintiffs. These warranties formed the basis of the bargain that was reached when Plaintiffs purchased or leased their Subject Vehicles.

2542.   However, Fiat and FCA knew or should have known that the warranties were false and/or misleading. Fiat and FCA were aware that the emissions systems in the Subject Vehicles sold and leased to Plaintiff were designed to deactivate under real-world driving conditions, and to emit oxides of nitrogen within legal limits only when undergoing emissions testing, and therefore, knew that the emission systems contained defects.

2543.   Plaintiffs reasonably relied on Fiat's and FCA's express warranties concerning emissions when purchasing or leasing the Subject Vehicles. However, the Subject Vehicles did not perform as warranted. Unbeknownst to Plaintiffs, the Subject Vehicles were designed to pollute at higher than legal limits during normal driving, and could not achieve advertised performance and efficiency metrics without this cheating design. This design and the devices that effectuate it are defects. Fiat and FCA therefore breached their express warranty by providing a product containing defects that were never disclosed to Plaintiffs.

2544.   Any opportunity to cure the express breach is unnecessary and futile.

2545.   As a direct and proximate result of Fiat's and FCA's breach of express warranties, Plaintiff suffered significant damages, and seek damages in an amount to be determined at trial.

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212)**

2546.   Plaintiffs reallege and incorporate by reference all allegations of the preceding paragraphs as though fully set forth herein.

2547.   Plaintiff, Jason Royer, Beverley Gayle VanArkel, James B. Valliere, Anthony Knezovich, Rick Stone, Calvin Taylor, Wayne & Becky Bennett, Cheryl and Lee Philley, Richard & Cindy Simcox, Derek & Frances Minchey, Daniel Lopez, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

2548.   Fiat and FCA were at all relevant times "merchants" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

2549.   With respect to leases, Fiat and FCA are and were at all relevant times "lessors" of

motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

2550.   The Subject Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

2551.   A warranty that the Subject Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wyo. Stat. §§ 34.1-2-10 314 and 34.1-2. A-212.

2552.   Fiat and FCA sold and/or leased Subject Vehicles that were not in merchantable condition and/or fit for their ordinary purpose in violation of the implied warranty. The Subject Vehicles were not in merchantable condition because their design violated state and federal laws. The Subject Vehicles were not fit for their ordinary purpose as they were built to evade state and federal emission standards.

2553.   Fiat's and FCA's breaches of the implied warranty of merchantability caused damage to Plaintiff. The amount of damages due will be proven at trial.

## II. STATE PLAINTIFFS CONSUMER PROTECTION CLAIMS

### VIOLATION OF ALABAMA DECEPTIVE TRADE PRACTICES ACT (Ala. Code § 8-19-1, *et seq.*)

2554.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2555.   Plaintiffs, Autry Hall, Kevin Crew, John Corbin, Robert Mayer, Robert Southern, Micah Hill, James Washington, Quinn Breland, Mike Shelton, Greg Cain, Randal Stephens, Tyler Bridgeman, Alonzo Thomas Stone, Kimberly H. and David W. Whittington, Anthony McNamara,

John Roe, Earl French, Richard A. & Betty L. Morrow, Adam Bayless, Thomas A. Crenshaw, Kelly Steely d/b/a Steely Lease Sales, Mildred Fitts, Richard & Annette Peterson, William D. Ross, (for the purpose of this section, "Plaintiff") bring this action on behalf of themselves against all Defendants.

2556.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of Ala. Code § 8-19-3(5). Plaintiffs are "consumers" within the meaning of Ala. Code § 8-19-3(2).

2557.   The Subject Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

2558.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of Ala. Code § 8-19-3(8).

2559.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") makes unlawful several specific acts, including:"(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have," "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," and "(27) Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce." Ala. Code § 8-19-5.

2560.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA.

2561.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike.  In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Ala. Code § 8-19-5:

A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.  Representing that the Subject Vehicles have approval, characteristics, uses, benefits, or qualities that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

2562.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2563.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2564.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Alabama DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2565.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2566.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2567.   Pursuant to Ala. Code § 8-19-10, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices and awarding damages, treble damages, and any other just and proper relief available under the Alabama DTPA.

2568.   Per the State Pre-suit requirements notifications have been prepared to FCA US LLC complying with Ala. Code § 8-19-10(e). Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the

1   numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs

2   within a reasonable amount of time after the allegations of Subject Vehicle defects became public.

3   Moreover, Plaintiffs sent a second and third notice letter pursuant to Ala. Code § 8-19-10(e) to all

4   Defendants. Because Defendants failed to remedy their unlawful conduct within the requisite time

5   period, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

**VIOLATION OF THE ALASKA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION ACT
(Alaska Stat. Ann. § 45.50.471, *et seq.*)**

11   2569.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

12   forth herein.

13   2570.   Plaintiffs, Slade D. Howell, Angela Christensen, Wesley S. Catlin, John Brady, (for

14   purposes of this section, "Plaintiffs") bring this action on behalf of themselves against all

15   Defendants.

16   2571.   The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska CPA")

17   declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of

18   trade or commerce unlawful, including: "(4) representing that goods or services have sponsorship,

19   approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a

20   person has a sponsorship, approval, status, affiliation, or connection that the person does not have;"

21   "(6) representing that goods or services are of a particular standard, quality, or grade, or that goods

22   are of a particular style or model, if they are of another;" "(8) advertising goods or services with

23   intent not to sell them as advertised;" or "(12) using or employing deception, fraud, false pretense,

24   false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact

25   with intent that others rely upon the concealment, suppression or omission in connection with the

1602

1  sale or advertisement of goods or services whether or not a person has in fact been misled, deceived

2  or damaged." Alaska Stat. Ann. § 45.50.471.

3      2572.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

4  Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Alaska CPA.

5      2573.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

6  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

7  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

8  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

9  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

10  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

11  the Defendants concealed that the fuel efficiency and performance could be achieved only through

12  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

13  world conditions; and (3) the Defendants developed and installed emission cheating components

14  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

15  concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for

16  sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the

17  following unfair or deceptive acts or practices as defined in Alaska Stat. Ann. § 45.50.471:

18
19  E.  Causing likelihood of confusion or of misunderstanding as to the approval or
certification of the Subject Vehicles;

21
22  F.  Representing that the Subject Vehicles have approval, characteristics, uses, or
benefits that they do not have;

24
25  G.  Representing that the Subject Vehicles are of a particular standard, quality and grade
when they are not;

27
28  H.  Advertising the Subject Vehicles with the intent not to sell or lease them as
advertised;

I.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

J.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2574.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2575.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2576.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Alaska CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2577.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material

1   information.

2   2578.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

3   general public. Defendants' unlawful acts and practices complained of herein affect the public

4   interest.

5
6   **VIOLATIONS OF THE CONSUMER FRAUD ACT**
7   **(Ariz. Rev. Stat. § 44-1521, *et seq.*)**
8

9   2579.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

10   forth herein.

11   2580.   Plaintiffs, Brad W. Lines, Daniel Smith, Doug Merrell, Joseph Hyte Johnson, Mark

12   Deemy, Michele Carrano, Robert Kroener, Thomas Spaulding, Michael Boales, Samuel D. Gross,

13   Marvin Rambel, Troy Zapara, Thurman & Rose Dickey, John Rory Carreon, Erik Angelo, Richard

14   Huff, Kyle M. Griffey, Thang Nguyen, Terry Hargis, Frank Deguzman, Hector Montano, Robin

15   Clark, Preston and Paula Nott, Percy F Gonzales, Sterling Lee Whitley Jr., Salvador Erivez, Jason

16   Johnson, Kevin Stevens, Josh Reid, James & Judy Drury, Ronald Ebann, Andrew Bonnett, Nathan

17   Dawson, (for the purpose of this section, "Plaintiff") bring this action on behalf of themselves

18   against all Defendants.

19   2581.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

20   Plaintiff, and Plaintiffs are "persons" within the meaning of Ariz. Rev. Stat. § 44-1521(6).

21   2582.   The Subject Vehicles are "merchandise" within the meaning of Ariz. Rev. Stat. §

22   44- 1521(5).

23   2583.   The Arizona Consumer Fraud Act ("Arizona CFA") provides that "[t]he act, use or

1   employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation,

2   or concealment, suppression or omission of any material fact with intent that others rely upon such

3   concealment, suppression or omission, in connection with the sale … of any merchandise whether

4   or not any person has in fact been misled, deceived or damaged thereby, is declared to be an

5   unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

6       2584.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

7   Marchionne, through their agents, employees, and/or subsidiaries, violated the Arizona CFA.

8       2585.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

9   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

10  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

11  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

12  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

13  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

14  the Defendants concealed that the fuel efficiency and performance could be achieved only through

15  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

16  world conditions; and (3) the Defendants developed and installed emission cheating components

17  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

18  concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for

19  sale, and selling the defective Subject Vehicles, Defendants engaged in deceptive acts or practices,

20  as outlined in Ariz. Rev. Stat. § 44- 1522(A), including using or employing deception, fraud, false

21  pretense, false promise or misrepresentation, or the concealment, suppression or omission of a

22  material fact with intent that others rely upon such concealment, suppression or omission, in

23  connection with the advertisement and sale/lease of the Subject Vehicles.

1       2586.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

2    emission control system were material to Plaintiff, as Defendants intended. Had they known the

3    truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject

4    Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

5    would have paid significantly less for them.

6       2587.   Plaintiffs had no way of discerning that Defendants' representations were false and

7    misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

8    because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

9    did not, and could not, unravel Defendants' deception on their own.

10       2588.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive

11    practices under the Arizona CFA in the course of their business. Specifically, Defendants owed

12    Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

13    system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff,

14    and/or they made misrepresentations that were rendered misleading because they were

15    contradicted by withheld facts.

16       2589.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

17    result of Defendants' concealment, misrepresentations, and/or failure to disclose material

18    information.

19       2590.   Defendants' violations present a continuing risk to Plaintiff, as well as to the

20    general public. Defendants' unlawful acts and practices complained of herein affect the public

21    interest.

22       2591.   Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or

1    practices and awarding damages and any other just and proper relief available under the Arizona

2    CFA.

**ARKANSAS COUNT I**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICE ACT**
**(Ark. Code Ann. § 4-88-101, *et seq*.)**

2592.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2593.   Plaintiffs, Brian Way, Gary Wainwright, Justin Davis, Kevin Massey, James Mikles, Levi Kimsey, Larry & Daina Wilhelm, Billy & Joseph Welch, Douglas Mettenberg, David Kizzia, health Minyard, Ryan Allred, Richard Harris, Theodore Carter, Troy L and Ruth E Jeremias, Steve Spidal, Jr., Keith Wallum, Richie Harris, Kevin Sanders, Patrick Pursel, (for the purpose of this section, "Plaintiffs") brings this action on behalf of themselves against all Defendants.

2594.   Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of Ark. Code Ann. § 4- 88-102(5).

2595.   The Subject Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-20 102(4).

2596.   The Arkansas Deceptive Trade Practice Act ("Arkansas DTPA") makes unlawful "[d]eceptive and unconscionable trade practices," which include, but are not limited to, a list of enumerated items, including "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]" Ark. Code Ann. § 4-88-107(a)(10). The Arkansas DTPA also prohibits the following when utilized in connection with the sale or advertisement of

any goods: "(1) The act, use, or employment by any person of any deception, fraud, or false pretense; or (2) The concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission." Ark. Code Ann. § 4-88-108.

2597.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Arkansas DTPA.

2598.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Ark. Code Ann. §§ 4-88-107 -108:

K.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

L.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

1609

M. Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

N. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/ lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2599.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2600.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2601.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Arkansas DTPA in the course of their business. Specifically, Defendants owed Plaintiff a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from the Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2602.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material

1610

1   information.

2   2603.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the

3   general public. Defendants' unlawful acts and practices complained of herein affect the public

4   interest.

5   2604.   Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or

6   practices, and awarding damages pursuant to Ark. Code Ann. § 4-88-13(f), and any other just and

7   proper relief available under the Arkansas DTPA.

8
9                       **VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT**
10                                **(Cal. Civ. Code § 1750, *et seq.*)**
11

12   2605.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

13   forth herein.

14   2606.   Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon

15   Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon,

16   David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong,

17   Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs")

18   bring this action on behalf of themselves against all Defendants.

19   2607.   Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and

20   Plaintiffs are "persons" within the meaning of Cal. Civ. Code § 1761(c). Plaintiffs are "consumers"

21   within the meaning of Cal. Civ. Code § 1761(d).

22   2608.   The California Legal Remedies Act ("CLRA") prohibits "unfair or deceptive acts

23   or practices undertaken by any person in a transaction intended to result or which results in the sale

1611

or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770(a).

2609.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the CLRA.

2610.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Cal. Civ. Code § 1770(a):

A.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

C.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

2611.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the

truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2612.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2613.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the California CLRA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2614.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2615.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2616.   Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the CLRA. Under Cal. Civ. Code § 1780(b), Plaintiffs seeks

1  an additional award against Defendants of up to $5,000 for each member who qualifies as a "senior

2  citizen" or "disabled person" under the CLRA. Defendants knew or should have known that their

3  conduct was directed to one or more Plaintiff who is a senior citizens or disabled persons.

4  Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a

5  substantial loss of property set aside for retirement or for personal or family care and maintenance,

6  or assets essential to the health or welfare of the senior citizen or disabled person. One or more

7  Plaintiff who is a senior citizen or disabled person is substantially more vulnerable to Defendants'

8  conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or

9  disability, and each of them suffered substantial physical, emotional, or economic damage

10  resulting from Defendants' conduct.

11      2617.   Plaintiffs, to be named at a later date, will send a notice letter to FCA US LLC

12  complying with Cal. Civ. Code § 1780(b). All Defendants will be provided notice of the issues

13  raised in this count and this Complaint by the governmental investigations, the numerous

14  complaints filed against them, and the many individual notice letters to be sent by Plaintiffs within

15  a reasonable amount of time after the allegations of Subject Vehicle defects became public. Should

16  Defendants fail to remedy their unlawful conduct within the requisite time period, Plaintiffs seek

17  all damages and relief to which Plaintiffs are entitled.

## UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES UNDER THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

22      2618.   Plaintiffs incorporates by reference each preceding paragraph as though fully set

23  forth herein.

24      2619.   Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon

1    Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon,

2    David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong,

3    Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs")

4    bring this action on behalf of themselves against all Defendants.

5        2620.   California's Unfair Competition Law ("UCL"), Business and Professions Code §

6    17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

7        2621.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

8    misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

9    EcoDiesel badge—a material fact that was false because the Defendants developed and installed

10   emission cheating components in the Subject Vehicles that caused them to pollute excessively in

11   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

12   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

13   the Defendants concealed that the fuel efficiency and performance could be achieved only through

14   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

15   world conditions; and (3) the Defendants developed and installed emission cheating components

16   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

17   concealed that fact from regulators and Plaintiffs alike. In so doing, Fiat, FCA, VM Motori, Bosch

18   GmbH, Bosch LLC, and Marchionne have engaged in at least the following unlawful, fraudulent,

19   and unfair business acts and practices in violation of the UCL:

20          D.      By knowingly and intentionally concealing from Plaintiffs that the Subject Vehicles
21                  suffer from a design defect while obtaining money from Plaintiffs;
22
23          E.      By marketing Subject Vehicles as possessing functional and defect-free, "clean"
24                  diesel engine systems; and
25
26          F.      By violating both federal and California laws, including the federal RICO statute

1615

1    and California laws governing vehicle emissions and emission testing requirements.

2

3    2622.  Defendants' cheating scheme and concealment of the true characteristics of the

4    EcoDiesel emission control system were material to Plaintiffs, and Defendants misrepresented,

5    concealed, or failed to disclose the truth with the intention that consumers would rely on the

6    misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs who

7    purchased or leased the Subject Vehicles would not have purchased or leased them at all or—if

8    the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to

9    sell—would have paid significantly less for them.

10    2623.  1908. Plaintiffs suffered ascertainable loss and actual damages as a direct and

11    proximate result of Defendants' misrepresentations and their concealment of and failure to disclose

12    material information. Pursuant to Cal. Bus. & Prof. Code § 17200, Plaintiffs seek an order

13    enjoining Defendants' unfair and/or deceptive acts or practices, any such orders or judgments as

14    may be necessary to restore to Plaintiffs any money acquired by unfair competition, including

15    restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code §§ 17203 and

16    3345, and any other just and proper relief available under the California UCL.

17
18                         **FALSE ADVERTISING UNDER THE CALIFORNIA**
19                              **UNFAIR COMPETITION LAW**
20                         **(Cal. Bus. & Prof. Code § 17500, *et seq.*)**
21

22    2624.  Plaintiffs incorporates by reference all preceding allegations as though fully set

23    forth herein.

24    2625.  Plaintiffs, Kent Jenkins, Albert and Sharon Overholtzer, Jeff Strong, Gordon

25    Hunter and Shawnda Bays, Ryan King, Malissa and Pete Teriele, Robert and Elva Magallon,

David Meienburg, Blake and Susan Weinstein, Linda Lawrence, Andrew Bleier, Mark Armstrong, Mark and Morgan Souza, David Ngo, Ricky Jensen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against FCA, Fiat, Marchionne, Bosch LLC, Bosch GmbH, and VM Motori.

2626.   California Bus. & Prof. Code § 17500 states: "It is unlawful for any person, … corporation …or any employee thereof with intent directly or indirectly to dispose of real or personal property… or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

2627.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike.

1617

2628.   FCA, Fiat, and Marchionne; Bosch LLC and Bosch GmbH; and VM Motori, each made or caused to be made and disseminated throughout California and the United States, through advertising, marketing, and other publications, numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to each Defendant, to be untrue and misleading to consumers, including Plaintiff and the other California State Plaintiffs. Numerous examples of these statements and advertisements appear throughout this Complaint.

2629.   Pursuant to Cal. Bus. & Prof. Code § 17500, Plaintiffs seek an order enjoining Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the UCL.

### FAILURE TO RECALL/RETROFIT UNDER CALIFORNIA LAW
### VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT

2630.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2631.   Plaintiffs, Andrew Rogers, Douglas L. Bay, Jeff Schoonover, Ken Trousdale, Leslie J. Preston, Steve Conklin, William Akins, Kenyon Shephard, Alfred Herrera, Noel Vazquez, Jason Mull, Jorge Villarreal, Joe Castro, Ken Kroschel, Michael Gides, David Coop, Kasey & Ashley Knutson, Todd Dombek, Ernest and Selina Mascarenas, Restoration Services Group Inc. Michael Whittenmore, Ralph Landi, Joshua Herrera, Jason Vermillion, Robert Bank, Daniel and Cynthia Bonifas, Ryan Renfro, Kyle W. Dreas, Roland Begay, Doug Conrad, Frances & Carl

1  Roberts, Jimmie James & Tamara James, (for the purpose of this section, "Plaintiffs") bring this
2  action on behalf of themselves against Fiat and FCA.

3      2632.   Fiat Chrysler manufactured, marketed, distributed, sold, or otherwise placed into
4  the stream of U.S. commerce the Subject Vehicles, as set forth above.

5      2633.   Defendants knew or reasonably should have known that the Subject Vehicles were
6  dangerous when used in a reasonably foreseeable manner and posed an unreasonable risk.

7      2634.   Fiat Chrysler became aware that the Subject Vehicles were dangerous when used
8  in a reasonably foreseeable manner and posed an unreasonable after the Vehicles were sold.

9      2635.   Fiat Chrysler failed to recall the Subject Vehicles in a timely manner or warn of the
10 dangers posed by Subject Vehicles.

11     2636.   A reasonable manufacturer in same or similar circumstances would have timely and
12 properly recalled the Subject Vehicles.

13     2637.   Plaintiffs were harmed by Fiat Chrysler's failure to recall the Subject Vehicles
14 properly and in a timely manner and, as a result, have suffered damages, including their out-of-
15 pocket costs, losses, and inconvenience, and caused by Fiat Chrysler's ongoing failure to properly
16 recall, retrofit, and fully repair the Subject Vehicles.

17     2638.   Even in the event of a recall, Plaintiffs have suffered and continue to damages for
18 each day that a recall is delayed.

19     2639.   Fiat Chrysler's failure to timely recall the Subject Vehicles was a substantial factor
20 in causing the harm to Plaintiffs as alleged herein.

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
**(Colo. Rev. Stat. § 6-1-101, *et seq.*)**

2640.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2641.   Plaintiffs, Andrew Rogers, Douglas L. Bay, Jeff Schoonover, Ken Trousdale, Leslie J. Preston, Steve Conklin, William Akins, Kenyon Shephard, Alfred Herrera, Noel Vazquez, Jason Mull, Jorge Villarreal, Joe Castro, Ken Kroschel, Michael Gides, David Coop, Casey & Ashley Knutson, Todd Dombek, Ernest and Selina Mascarenas, Restoration Services Group Inc. Michael Whittenmore, Ralph Landi, Joshua Herrera, Jason Vermillion, Robert Bank, Daniel and Cynthia Bonifas, Ryan Renfro, Kyle W. Dreas, Roland Begay, Doug Conrad, Frances & Carl Roberts, Jimmie James & Tamara James, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

2642.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq*. Plaintiffs are "consumers" within the meaning of Col. Rev. Stat § 6-1-113(1)(a).

2643.   The Colorado CPA makes unlawful deceptive trade practices in the course of a person's business. Defendants engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Subject Vehicles that had the capacity or tendency to deceive Plaintiffs; (2) representing that the Subject Vehicles are of a particular standard, quality, and grade even though FCA knew or should have known they are not; (3) advertising the Subject Vehicles with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the

1620

Subject Vehicles that was known to FCA at the time of advertisement or sale with the intent to induce Plaintiffs to purchase, lease or retain the Subject Vehicles.

2644.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Colorado CPA.

2645.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Colo. Rev. Stat. § 6-1-105:

G.    Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

H.    Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

I.    Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

J.    Failing to disclose material information concerning the Subject Vehicles known to Defendants at the time of advertisement or sale, with the intention of inducing Plaintiffs to

1
2
purchase or lease the vehicles.

3   2646.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

4   emission control system were material to Plaintiffs, as Defendants intended. Had they known the

5   truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject

6   Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

7   would have paid significantly less for them.

8   2647.   Plaintiffs had no way of discerning that Defendants' representations were false and

9   misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

10   because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

11   did not, and could not, unravel Defendants' deception on their own.

12   2648.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive

13   practices under the Colorado CPA in the course of their business. Specifically, Defendants owed

14   Plaintiffs a duty Defendants owed Plaintiffs a duty to disclose all the material facts concerning the

15   EcoDiesel® emission control system because they possessed exclusive knowledge, they

16   intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered

17   misleading because they were contradicted by withheld facts.

18   2649.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

19   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

20   information.

21   2650.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

22   general public. Defendants' unlawful acts and practices complained of herein affect the public

23   interest.

2651.   Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble or punitive damages, and any other just and proper relief available under the Colorado CPA.

**VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT**
(Conn. Gen. Stat. § 42-110a, *et seq*.)

2652.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2653.   Plaintiffs, Sean Conran, Cody Langlois, Robert W. Ford, Todd Ruttura, Robert Perron, III, Kevin Cudgma, Tomas Jakubcak, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2654.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of Conn. Gen. Stat. § 42-110a(3) of the Connecticut Unfair Trade Practices Act ("Connecticut UTPA"). FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42- 110a(4).

2655.   The Connecticut provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).

2656.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA.

2657.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. See, e.g., ¶¶ 149-216; 337-357. In so doing, and by Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b(a):

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or

misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2658.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2659.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2660.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the Connecticut UTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2661.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2662.   Defendants' violations present a continuing risk to Plaintiff, as well as to the

general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2663. Pursuant to Conn. Gen. Stat. § 42-110g, Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Connecticut UTPA.

**VIOLATIONS OF THE DELAWARE CONSUMER FRAUD ACT AND
DECEPTIVE TRADE PRACTICES ACT**
**(6 Del. Code § 2513, *et seq*., and 6 Del. Code § 2531, *et seq*.)**

2664. 1949. Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2665. 1950. Plaintiffs, Roy McKenney and those to be named at a later date, (for the purpose of this section, "Plaintiff") brings this action on behalf of the Plaintiffs against all Defendants.

2666. 1951. FCA Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of 6 Del. Code § 2511(7) and § 2531(5).

2667. 1952. The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

1626

2668.   1953. In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Delaware CFA.

2669.   1954. As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. See, e.g., ¶¶ 149-216; 337-357. In so doing, and by Defendants engaged in one or more of the following unlawful acts or practices prohibited by 6 Del. Code § 2513(a): using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2670.   1955. Defendants also engaged in one or more of the following deceptive trade practices enumerated by the Delaware Deceptive Trade Practices Act at 6 Del. Code § 2532:

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B. Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E. Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

2671.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to the Plaintiffs, as Defendants intended. Had they known the truth, the Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2672.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2673.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and deceptive practices under the Delaware CFA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from the Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2674.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material

1    information.

2        2675.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the

3    general public. Defendants' unlawful acts and practices complained of herein affect the public

4    interest.

5        2676.   The Plaintiffs seeks an order enjoining Defendants' unfair and/or deceptive acts or

6    practices, and awarding damages, punitive or treble damages, and any other just and proper relief

7    available under the Delaware CFA and DTPA (6 Del. Code §§ 2525 and 2533). See, e.g.,

8    Stephenson v. Capano Dev., Inc., 462 A.2d 1069, 1077 (Del. 1983).

9
10              **VIOLATION OF THE CONSUMER PROTECTION PROCEDURES ACT**
11                           **(D.C. Code § 28-3901, *et seq.*)**

12       2677.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

13   forth herein.

14       2678.   Plaintiffs, to be named at a later date, (for the purpose of this section, "Plaintiff")

15   brings this action on behalf of the District of Columbia Plaintiffs against all Defendants.

16       2679.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

17   and the District of Columbia Plaintiffs are "persons" within the meaning of D.C. Code § 28-

18   3901(a)(1). The District of Columbia Plaintiffs are "consumers" within the meaning of D.C. Code

19   § 28-3901(1)(2).

20       2680.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne

21   are engaged in "trade practices" within the meaning of D.C. Code § 28-3901.

22       2681.   The District of Columbia Consumer Protection Procedures Act ("District of

23   Columbia CPPA") makes unlawful unfair methods of competition and unfair or deceptive acts or

24   practices in the conduct of any trade or commerce. D.C. Code § 28-3901, *et seq.*

25       2682.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

1    Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the District of

2    Columbia CPPA.

3    2683.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

4    misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

5    EcoDiesel badge—a material fact that was false because the Defendants developed and installed

6    emission cheating components in the Subject Vehicles that caused them to pollute excessively in

7    real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

8    pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

9    the Defendants concealed that the fuel efficiency and performance could be achieved only through

10   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

11   world conditions; and (3) the Defendants developed and installed emission cheating components

12   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

13   concealed that fact from regulators and Plaintiffs alike. In so doing, and by Defendants engaged in

14   one or more of the following unfair or deceptive acts or practices as defined in D.C. Code § 28-

15   3901, *et seq.*:

16   A.   Representing that the Subject Vehicles have approval, characteristics, uses, or
17   benefits that they do not have;

19   B.   Representing that the Subject Vehicles are of a particular standard, quality and grade
20   when they are not; and/or

22   C.   Advertising the Subject Vehicles with the intent not to sell or lease them as
23   advertised.

25   2684.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

26   emission control system were material to the District of Columbia Plaintiffs, as Defendants

27   intended. Had they known the truth, the District of Columbia Plaintiffs would not have purchased

28   or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and

1    mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

2        2685.   District of Columbia Plaintiffs had no way of discerning that Defendants'

3    representations were false and misleading, or otherwise learning the facts that Defendants had

4    concealed or failed to disclose, because Defendants' emission control software was extremely

5    sophisticated technology. District of Columbia Plaintiffs did not, and could not, unravel

6    Defendants' deception on their own.

7        2686.   Defendants had an ongoing duty to the District of Columbia Plaintiffs to refrain

8    from unfair and deceptive practices under the District of Columbia CPPA in the course of their

9    business. Specifically, Defendants owed District of Columbia Plaintiffs a duty to disclose all the

10   material facts concerning the EcoDiesel® emission control system because they possessed

11   exclusive knowledge, they intentionally concealed it from the District of Columbia Plaintiffs,

12   and/or they made misrepresentations that were rendered misleading because they were

13   contradicted by withheld facts.

14       2687.   District of Columbia Plaintiffs suffered ascertainable loss and actual damages as a

15   direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to

16   disclose material information.

17       2688.   Defendants' violations present a continuing risk to the District of Columbia

18   Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of

19   herein affect the public interest.

20       2689.   Pursuant to D.C. Code § 28-3901, the District of Columbia Plaintiffs seek an order

21   enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble

22   and/or punitive damages, and any other just and proper relief available under the District of

1631

Columbia CPPA.

## VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE
## TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et seq.*)

2690.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2691.   Plaintiffs, Changping Wei, Derik Fairchild, Dominick Bianchi, Dozier Holton L. Browning, III, Jeffrey S. & Brandon M. Woodall, Jeremey Hornack, John Neumayer, Kevin Morrison, Michael DiVona, Monte Paul & Devera Jean Oberlee, Randall S. Holdaway, Richard Carr, Roberto Berenguer-Serrano, Sherri Collins, Stephen Swanson, Steven Fitzgerald, Steven Chauvin, William Patrick, Jr., Gary  & Phyllis Marie Luster Anderson, Matthew Luckett, Brian Ashworth, Dean Allmon, Gilder L. Whitlock, Nicky Herrington, Peter Cacoperdo, Robert Allen, Ronald Malcolm Macdonald, Ernest Hodgdon, Jeffrey Greenwood, Brandon Crookes, Robert Bell, Nathan Baisley, Judy & Roland Simmons, Gerald & Sharon Parker, Jimmy Steen, Steven M. Pender, Janelle & Bryan Wiggins, Allen Keith Peacock, Osvaldo Romero, Robert Elie, Manuel & Michael Gonzalez, Christofer, Askervold, David Matrinex, Timothy Leathers, Joseph Dick-Griffith, Martin Mannion, Alonzo Thomas Stone, Mark Edward Harrell, Nicholas M. and Dana Golowich, Nathan Groom, Charles E. and Carol S. Crozier, Melissa Maldonado, Christina Kennedy, Judith Mary Bressler, Richard and Nancy Payne, Kimberly Oglesby, Rebecca M. Brace, Alicia Jean Hicken, Gordon Leroy Patterson, Tim Stewart, Micheas Vannes, Ben Korngold, John Baker, Brian Kirimdar d/b/a Aquafarm Organics, William Alfred Brown, Jr., Brad Hoben, Elizabeth Catherine Dunlap, Sergio Braga, David Hanson, Eugenio & Marsha Vargas, Jr., William & Marlene Loewen, (for the purpose of this section, "Plaintiffs") bring this action on behalf of

1632

themselves against all Defendants.

2692.   Plaintiffs are "consumers" within the meaning of Fla. Stat. § 501.203(7).

2693.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of Fla. Stat. § 501.203(8).

2694.   The Florida Unfair and Deceptive Trade Practices Act ("FUDTPA") makes unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …" Fla. Stat. § 501.204(1).

2695.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the FUDTPA.

2696.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by Fla. Stat. § 501.204(1):

1633

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B. Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C. Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D. Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2697.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

2698.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. did not, and could not, unravel Defendants' deception on their own.

2699.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the FUDTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

1634

system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2700.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2701.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2702.   Pursuant to Fla. Stat. §§ 501.2105(1)-(2), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the FUDTPA.

<div align="center">

**VIOLATIONS OF GEORGIA'S UNIFORM
DECEPTIVE TRADE PRACTICES ACT
(Ga. Code Ann. § 10-1-370, *et seq.*)**

</div>

2703.   Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

2704.   Plaintiffs, Dana L. Gregory, Chad Trahan, Englebert Cherrington, Marcel Lamoureux, Randall and Melissa Westmoreland, Micah Hill, Edwin B. Holton, John Victor Lowe, Brian Kicak, Christopher Tucker, Michael A. Scott, Sam Ussery, Seymour Bidwell, Christian Lizama, Anthony J. Eiermann, Brandon and Katherine Horton, Wayne Guyer, William Hunt, Judy and Tom Crawford, Michael Cash, Vincent Princeotto, Tyler Perkins, Richard Carr, Roger Mack, Maurice Johnson, Brody Sheppard, Robert Pitts Jr, Duane E. Morton Sr, Stanley E Lowe, Allen

1   Marcus Hutcheson, Donald Gilman, Dan Gravitt,  George Graham, David Cich, Damian L.

2   Sigman, Claude Akley, Christopher Collins, Scott Harrington, Calvin Ball d/b/a Tower

3   Construction Co., Dawnetta Janene Holladay, (for the purpose of this section, "Plaintiffs") bring

4   this action on behalf of themselves against all Defendants.

5       2705.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

6   and Plaintiffs are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices

7   Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1- 371(5).

8       2706.   The Georgia UDTPA prohibits any "deceptive trade practices," which include

9   misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other

10  conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. 19

11  Ann. § 10-1-372(a).

12      2707.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

13  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

14  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

15  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

16  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

17  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

18  the Defendants concealed that the fuel efficiency and performance could be achieved only through

19  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

20  world conditions; and (3) the Defendants developed and installed emission cheating components

21  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

22  concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. Defendants'

deceptive conduct violates the Georgia UDPTA in at least the following ways:

   A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

   B.   Representing that the Subject Vehicles have characteristics, uses, or benefits that they do not have;

   C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

   D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and

   E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

   2708.   Defendants' cheating scheme and concealment of the true characteristics of the EcoDiesel emission control system were material to Plaintiffs, and Defendants misrepresented, concealed, or failed to disclose the truth with the intention that consumers would rely on the misrepresentations, concealments, and omissions. Had they known the truth, Plaintiffs who purchased or leased the Subject Vehicles would not have purchased or leased them at all or—if the Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

   2709.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and their concealment of and failure to disclose material information.

   2710.   Pursuant to Ga. Code. Ann § 10-1-373, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Georgia UDPTA.

## VIOLATIONS OF GEORGIA'S FAIR BUSINESS PRACTICES ACT
### (Ga. Code Ann. § 10-1-390, *et seq.*)

2711.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2712.   Plaintiffs, Dana L. Gregory, Chad Trahan, Englebert Cherrington, Marcel Lamoureux, Randall and Melissa Westmoreland, Micah Hill, Edwin B. Holton, John Victor Lowe, Brian Kicak, Christopher Tucker, Michael A. Scott, Sam Ussery, Seymour Bidwell, Christian Lizama, Anthony J. Eiermann, Brandon and Katherine Horton, Wayne Guyer, William Hunt, Judy and Tom Crawford, Michael Cash, Vincent Princeotto, Tyler Perkins, Richard Carr, Roger Mack, Maurice Johnson, Brody Sheppard, Robert Pitts Jr, Duane E. Morton Sr, Stanley E Lowe, Allen Marcus Hutcheson, Donald Gilman, Dan Gravitt,  George Graham, David Cich, Damian L. Sigman, Claude Akley, Christopher Collins, Scott Harrington, Calvin Ball d/b/a Tower Construction Co., Dawnetta Janene Holladay (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

2713.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code. Ann. § 10-1-393(a).

2714.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA.

2715.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Ga. Code. Ann. § 10-1-393(b):

A.   Causing confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

2716.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2717.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2718.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Georgia FBPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2719.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2720.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2721.   Pursuant to Ga. Code. Ann. § 10-1-399, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding any other just and proper relief available under the Georgia FBPA.

2722.   Per the State Pre-suit requirements notifications have been prepared to FCA US LLC complying with Ga. Code. Ann. § 10-1-399(b). Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the

1    numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs

2    within a reasonable amount of time after the allegations of Subject Vehicle defects became public.

3    Because Defendants failed to remedy their unlawful conduct within the requisite time period,

4    Plaintiffs seek all damages and relief to which Plaintiff and the Georgia State are entitled.

<div align="center">

**UNFAIR AND DECEPTIVE ACTS IN
VIOLATION OF HAWAII LAW
(Haw. Rev. Stat. § 480, *et seq.*)**

</div>

9    2723.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

10   forth herein.

11   2724.   Plaintiffs, Ronald Goca Maryam Khayami, (for the purpose of this section,

12   "Plaintiffs") bring this action on behalf of the Plaintiffs against all Defendants.

13   2725.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

14   Plaintiffs are "persons" within the meaning of Haw. Rev. Stat. § 480-1. The Plaintiffs are

15   "consumers" within the meaning of Haw. 27 Rev. Stat. § 480-1.

16   2726.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne

17   are engaged in trade or commerce.

18   2727.   The Hawaii Act prohibits "unfair methods of competition and unfair or deceptive

19   acts or practices in the conduct of any trade or commerce.…" Haw. Rev. Stat. § 480-2(a).

20   2728.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

21   Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Hawaii Act.

22   2729.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

23   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

<div align="center">1641</div>

EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of § 480-2(a):

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E. Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2730.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

1    emission control system were material to the Plaintiffs, as Defendants intended. Had they known

2    the truth, the Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject

3    Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

4    would have paid significantly less for them.

5         2731.   Plaintiffs had no way of discerning that Defendants' representations were false and

6    misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

7    because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

8    did not, and could not, unravel Defendants' deception on their own.

9         2732.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and

10   deceptive practices under the Hawaii Act in the course of their business. Specifically, Defendants

11   owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

12   system because they possessed exclusive knowledge, they intentionally concealed it from the

13   Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

14   contradicted by withheld facts.

15        2733.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

16   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

17   information.

18        2734.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the

19   general public. Defendants' unlawful acts and practices complained of herein affect the public

20   interest.

21        2735.   Pursuant to Haw. Rev. Stat. § 480-13, the Plaintiffs seek an order enjoining

22   Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages,

1643

1   and any other just and proper relief available under the Hawaii Act.

2       2736.   Under Haw. Rev. Stat. § 480-13.5, the Plaintiffs seek an additional award against

3   Defendants of up to $10,000 for each Plaintiffs who qualifies as a Hawaiian elder under the Hawaii

4   Act. Defendants knew or should have known that their conduct was directed to one or more

5   Plaintiffs who are elders. Defendants' conduct caused one or more of these elders to suffer a

6   substantial loss of property set aside for retirement or for personal or family care and maintenance,

7   or assets essential to the health or welfare of the elder. One or more Plaintiffs who are elders are

8   substantially more vulnerable to Defendants' conduct because of age, poor health or infirmity,

9   impaired understanding, restricted mobility, or disability, and each of them suffered substantial

10  physical, emotional, or economic damage resulting from Defendants' conduct.

## VIOLATIONS OF THE IDAHO CONSUMER PROTECTION ACT
### (Idaho Code § 48-601, *et seq.*)

13      2737.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

14  forth herein.

15      2738.   Plaintiffs, James & Linda Watkins, Larry Maxa, Neil Durrant, Tommy H. Brown,

16  Kilo & Natalie Varble, Alex Lopez, Alvin McCoy, Michael Shaak & Susie Patterson, Kris A.

17  Shepherd, Beverly Gayle VanArkel, Tim and LeAnne Kindred, Leroy and Shalada Bengtson,

18  Andriy Kharchenko, Mark Hathaway, Jason Dibben, Mike Karpowitz, Kenneth and Amanda

19  Hancock, Dennis and Dianna Wallace Little, Niles Jeremy Behler, Nicholas & Samantha Linde,

20  Chris & Kimberly Wilkinson, Scott Witherow, Steve Staley, Weldon Irvin, Lannis Harold

21  Allmaras, Adrienne Dunford & Jason Blacker, Jeremy Steves d/b/a JJ Flooring, (for the purpose

22  of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

23      2739.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

1   and Plaintiffs are "persons" within the meaning Idaho Code § 48-602(1).

2      2740.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne

3   are engaged in "trade" or "commerce" within the meaning of Idaho Code § 48-602(2).

4      2741.   The Idaho Consumer Credit and Protection Act ("Idaho CPA") makes unlawful

5   misleading, false, or deceptive acts.

6      2742.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

7   Marchionne, through their agents, employees, and/or subsidiaries, violated the Idaho CPA.

8      2743.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

9   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

10  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

11  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

12  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

13  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

14  the Defendants concealed that the fuel efficiency and performance could be achieved only through

15  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

16  world conditions; and (3) the Defendants developed and installed emission cheating components

17  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

18  concealed that fact from regulators and Plaintiffs alike. See, e.g., ¶¶ 149-216; 337-357. In so doing,

19  and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants

20  engaged in one or more of the following unfair or deceptive acts or practices proscribed by Idaho

21  Code § 48-603:

22      A.   Causing likelihood of confusion or of misunderstanding as to the approval or
23          certification of the Subject Vehicles;
24
25      B.   Representing that the Subject Vehicles have approval, characteristics, uses, or

benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

2744.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2745.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2746.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Idaho CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2747.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2748.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2749.   Pursuant Idaho Code § 48-608, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Idaho CPA.

<div align="center">

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND
DECEPTIVE BUSINESS PRACTICES ACT
(815 ILCS 505/1, *et seq.* and 510/2)**

</div>

2750.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2751.   Plaintiffs, Bruce Carr, Casey Sauerhage, Dariusz Kulon, Donald E. & Brenda S. Keith, Edward Dampf, Gerry Tassell, Jose Laverdiere, Larry Sosamon, Michael Thomas, Randy Peterson, Russell and Joella Tabaka, Charles Piazza, Jim Heiser, Joseh Francis, Matt Buck, James Hadley, Donald Long, Jack Pudzis, Thomas & Sherri Catlin, Michael Batdorff, Nicholas Hess, Timothy and Nancy Schindlbeck, Almantas Stankevicius, Mike Sanders, John S. Fox, Erich Hannah, Kasimir Kedzierski, Aaron Mills, Kevin Kerner, Steven Michael Erickson, Dana Traeger & Susan McKeown, Tim Billing, Bruce Simpson, Dana Pitchford, Spencer Giardini, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2752.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning 815 ILCS 505/1(c) and 510/1(5). Plaintiffs are "consumers" within the meaning of 815 ILCS 505/1(e).

2753.   The Illinois Consumer Fraud and Deceptive Practices Act ("Illinois CFA") makes

<div align="center">1647</div>

unlawful "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2. The Illinois CFA further makes unlawful deceptive trade practices undertaken in the course of business. 815 ILCS 510/2.

2754.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Illinois CFA.

2755.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by 815 ILCS 505/2 and 510/2:

> A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

1648

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2756.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2757.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2758.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were

1 │ contradicted by withheld facts.

2 │     2759.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

3 │ result of Defendants' concealment, misrepresentations, and/or failure to disclose material

4 │ information.

5 │     2760.   Defendants' violations present a continuing risk to Plaintiff, as well as to the

6 │ general public. Defendants' unlawful acts and practices complained of herein affect the public

7 │ interest.

8 │     2761.   Pursuant to 815 ILCS 505/10a(a) and 510/3, Plaintiff seek an order enjoining

9 │ Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages,

10 │ and any other just and proper relief available under the Illinois CFA.

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code § 24-5-0.5-3)

15 │     2762.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

16 │ forth herein.

17 │     2763.   Plaintiffs, Theodore Grubbs, Robert Alpers d/b/a Anything Automotive, Charles

18 │ Suder, Herbert Likens, Stacey and P. Elaine Wilson, Chip Neer, Kevin V. Anderson, Madi and

19 │ Mark Lee, Michael Crisp, John Oliver Galloway, Michael Donawerth, James and Susan Cherry,

20 │ Jennifer and Richard Stevens, Larry D Garrison, Shawn Craig, David Gabriel and Juanita Navarro

21 │ Flores, Leah and Bobby Ladley, Clarke Dunlap, Gaston Barrett c/o Walton Stinson, Richard

22 │ Hocott, Brian J Kellams, James & Annette Jarvis, Ron Smith, David Williamson, Carl Ehrhart,

23 │ Sharon Daily, Veryl Adams, Kack & Debra Heylmann, (for the purpose of this section, "Plaintiff")

24 │ brings this action on behalf of themselves against all Defendants.

25 │     2764.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

26 │ and Plaintiffs are "persons" within the meaning of Ind. Code § 24-5-0.5-2(2) and a "supplier"

1  within the meaning of Ind. Code § 24-5-.05-2(a)(3).

2      2765.  Plaintiffs' purchases of the Subject Vehicles are "consumer transactions" within

3  the meaning of Ind. Code § 24-5-.05-2(a)(1).

4      2766.  The Indiana Deceptive Consumer Sales Act ("Indiana DCSA prohibits a person

5  from engaging in a "deceptive act," which includes representing: "(1) That such subject of a

6  consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses,

7  or benefits that they do not have, or that a person has a sponsorship, approval, status, affiliation,

8  or connection it does not have; (2) That such subject of a consumer transaction is of a particular

9  standard, quality, grade, style or model, if it is not and if the supplier knows or should reasonably

10  know that it is not; … (7) That the supplier has a sponsorship, approval or affiliation in such

11  consumer transaction that the supplier does not have, and which the supplier knows or should

12  reasonably know that the supplier does not have; … (c) Any representations on or within a product

13  or its packaging or in advertising or promotional materials which would constitute a deceptive act

14  shall be the deceptive act both of the supplier who places such a representation thereon or therein,

15  or who authored such materials, and such suppliers who shall state orally or in writing that such

16  representation is true if such other supplier shall know or have reason to know that such

17  representation was false." Ind. Code § 24-5-0.5-3.

18      2767.  In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

19  Marchionne, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA.

20      2768.  As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

21  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

22  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

23  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

1651

real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Ind. Code § 24-5-0.5-3:

> A.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

> B.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

> C.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

2769.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2770.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2771.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive

practices under the Indiana DCSA in the course of their business. Specifically, Defendants owed Plaintiff a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2772.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2773.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2774.   Pursuant to Ind. Code § 24-5-0.5-4, Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Indiana DCSA.

2775.   Per the State Pre-suit requirements notifications have been prepared to FCA US LLC complying with Ind. Code § 24-5-0.5-5(a). All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Subject Vehicle defects became public. Because Defendants failed to remedy its unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

**VIOLATIONS OF THE PRIVATE RIGHT OF ACTION
FOR CONSUMER FRAUDS ACT
(Iowa Code § 714h.1, *et seq.*)**

2776.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2777.   Plaintiffs, Huegerich Farms, James Steer, Jr., James Lines, Terri Turnbull, Chad James Carter, Timothy Shanks, Richard Rausch, Gabriel M. Haugland, Gabrial & Audrey McConnell, Sean Perryman, Kent Gibbons, Donald Raymond Dixon, Chris Dougherty, Tamara Kay Domonoske, James Repp, Jim Hall, Scott W Toms, Mark and Carol Feld, Justin Joseph Manke, Craig Stout, Steve & Jill Aman, Tim Sether, Ken Levene, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2778.   Plaintiffs, FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning Iowa Code § 714H.2(7).

2779.   Plaintiffs are "consumers" within the meaning of Iowa Code § 714H.2(3).

2780.   The Iowa Deceptive Consumer Sales Act ("Iowa DCSA") prohibits a person from engaging in a "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3.

2781.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Iowa DCSA.

2782.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

1654

misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants violated Iowa Code § 714H.3 by using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2783.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2784.   Plaintiff had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

1  did not, and could not, unravel Defendants' deception on their own.

2      2785.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive

3  practices under the Iowa DCSA in the course of their business. Specifically, Defendants owed

4  Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

5  system because they possessed exclusive knowledge, they intentionally concealed it from

6  Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

7  contradicted by withheld facts.

8      2786.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

9  result of Defendants' concealment, misrepresentations, and/or failure to disclose material

10 information.

11     2787.   Defendants' violations present a continuing risk to Plaintiff, as well as to the

12 general public. Defendants' unlawful acts and practices complained of herein affect the public

13 interest.

14     2788.   Pursuant to Iowa Code § 714H.5, Plaintiff seek an order enjoining Defendants'

15 unfair and/or deceptive acts or practices, and awarding damages, treble or punitive damages, and

16 any other just and proper relief available under the Iowa DCSA.

17     2789.   Pursuant to Iowa Code § 714H.6, Plaintiffs will provide the Iowa Attorney General

18 with a copy of the within complaint with seven (7) days of its filing.

19
20                   **VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT**
                         **(Kan. Stat. Ann. § 50-623, *et seq*.)**
21
22     2790.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

23 forth herein.

24     2791.   Plaintiffs, Brian & Meredith Quimby Brian Baker, Bruce Bolen, Eric Becker, Greg

25 Long, Raymond White, Robert Morris, Roger Hinton, K.C. Moore, Wendell Espeland, John T.

1    Nickel, Michael & Deborah Eilert, Brent Cole, Matthew Russell Peters, Derle Mork, Bruce &

2    JoDawn Chrz, Robert Montgomery, Nathan & Tracey Andrews, Russell S. & Desiree G. Lewis,

3    (for the purpose of this section, "Plaintiff") brings this action against all Defendants.

4       2792.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

5    Marchionne are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l). The Plaintiffs are

6    "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

7       2793.   The sale of the Subject Vehicles to the Plaintiffs was a "consumer transaction"

8    within the meaning of Kan. Stat. Ann. § 50-624(c).

9       2794.   The Kansas Consumer Credit and Protection Act ("Kansas CPA") states "[n]o

10   supplier shall engage in any deceptive act or practice in connection with a consumer transaction."

11   Kan. Stat. Ann. § 50-626(a).

12      2795.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

13   Marchionne, through their agents, employees, and/or subsidiaries, violated the Kansas CPA.

14      2796.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

15   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

16   EcoDiesel badge—a material fact that was false because the Defendants developed and installed

17   emission cheating components in the Subject Vehicles that caused them to pollute excessively in

18   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

19   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

20   the Defendants concealed that the fuel efficiency and performance could be achieved only through

21   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

22   world conditions; and (3) the Defendants developed and installed emission cheating components

23   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for

sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the

following unfair or deceptive acts or practices as defined in Kan. Stat. Ann. § 50-627(a):

A.   Representing that the Subject Vehicles have approval, characteristics, uses, or
benefits that they do not have;

B.   Representing that the Subject Vehicles are of a particular standard, quality and grade
when they are not;

C.   Exaggerating and providing falsehoods regarding the material facts
concerning the Subject Vehicles; and/or

D.   Failing to state, willfully concealing, suppressing, and/or omitting material facts
relating to the Subject Vehicles.

2797.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

emission control system were material to the Plaintiffs, as Defendants intended. Had they known

the truth, the Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject

Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

would have paid significantly less for them.

2798.   Plaintiffs had no way of discerning that Defendants' representations were false and

misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

did not, and could not, unravel Defendants' deception on their own.

2799.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and

deceptive practices under the Kansas CPA in the course of their business. Specifically, Defendants

owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

system because they possessed exclusive knowledge, they intentionally concealed it from the

Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

contradicted by withheld facts.

2800.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2801.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2802.   Pursuant to Kan. Stat. Ann §§ 50-634 and 50-636, the Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Kansas CPA.

**VIOLATIONS OF THE LOUISIANA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW
(La. Rev. Stat. § 51:1401, *et seq.*)**

2803.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2804.   Plaintiffs, Erica L. Jeansonne, Jason Fitzgerald, Kenneth Nunez, Lance Popwell, Lennard Loupe, Luke David, Tim Byrd, Todd Barrios, Brandon Alexander LeBrun, Janie Kennedy Pooler, George S. Leblanc, John Meech, Benjamin D. Crifasi, Jr., Elizabeth & Bryce Godwin, Emile J. LaPointe, Myron & Linda Billiot, Randy Tomlinson, Steven James Rust, Jeff Mely, Beaux Martin, Joe R. Jones, John Lemelle, Douglas Owen Thompson, Willie Bergeron, Michael Mavromatis, Theo Reginald Thibodeaux, Adam Mckean and Elizabeth Barnes, Lisa S. and Kevin P. Speyrer, Earl H Hitzman Jr., David Bergeron, Herman and Cheryl Golden, John W Kentzel, Kevin Paul Hare, Gordon Dough Stephens, Bobby Jennings, Benjamin F. Holt, Jr., (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

2805.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of La. Rev. Stat. § 51:1402(8). Plaintiffs are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1).

2806.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in "trade" or "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

2807.   The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") makes unlawful "deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A).

2808.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Louisiana CPL.

2809.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in La. Rev. Stat. § 51:1405(A):

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2810.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2811.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2812.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Louisiana CPL in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from

1661

1    Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

2    contradicted by withheld facts.

3         2813.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

4    result of Defendants' concealment, misrepresentations, and/or failure to disclose material

5    information.

6         2814.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

7    general public. Defendants' unlawful acts and practices complained of herein affect the public

8    interest.

9         2815.   Pursuant to La. Rev. Stat. § 51:1409, Plaintiffs seek an order enjoining Defendants'

10   unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other

11   just and proper relief available under the Louisiana CPL.

12                       **VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT**
13                          **(Me. Rev. Stat. Ann. Tit. 5 § 205-a,** *et seq.***)**
14

15        2816.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

16   forth herein.

17        2817.   Plaintiffs, Ralph Nason, Terry Wessel, Billie Jo Killion (Anna Taylor), Terry D.

18   and Teresa A. Thor, Chester Johnson, Michael H and Naneen Chace-Ortiz, (for the purpose of this

19   section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

20        2818.   Plaintiff, FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio

21   Marchionne, and Plaintiffs are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5 § 206(2).

22        2819.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne

23   are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5 § 206(3.

24        2820.   The Maine Unfair Trade Practices Act ("Maine UTPA") makes unlawful "[u]nfair

25   methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce…." Me. Rev. Stat. Ann. Tit. 5 § 207.

2821.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Maine UTPA.

2822.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Me. Rev. Stat. Ann. Tit. 5 § 207:

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2823.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2824.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2825.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Maine UTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2826.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2827.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public

1    interest.

2        2828.   Pursuant to Me. Rev. Stat. Ann. Tit. 5 § 213, Plaintiff seek an order enjoining

3    Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just

4    and proper relief available under the Maine UTPA.

5        2829.   A notice letter was sent to FCA US LLC complying with Me. Rev. Stat. Ann. Tit.

6    5 § 213(1-A). Additionally, all Defendants were provided notice of the issues raised in this count

7    and this Complaint by the governmental investigations, the numerous complaints filed against

8    them, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time

9    after the allegations of Subject Vehicle defects became public. Because Defendants failed to

10   remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and

11   relief to which they are entitled.

12   
13                 **VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
                        **(Md. Code Com. Law § 13-101, *et seq.*)**
14
15       2830.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

16   forth herein.

17       2831.   Plaintiffs, Daniel McMahon, Stephen Joseph Podolak, Michael Shane Williams,

18   Andrew Davis, Ernest Montley, Justin Clendenin, (for the purpose of this section, "Plaintiffs")

19   bring this action on behalf of themselves against all Defendants.

20       2832.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

21   and Plaintiffs are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

22       2833.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person

23   may not engage in any unfair or deceptive trade practice in the sale of any consumer good. Md.

24   Code Com. Law § 13-303.

25       2834.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

1    Marchionne, through their agents, employees, and/or subsidiaries, violated the Maryland CPA.

2         2835.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

3    misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

4    EcoDiesel badge—a material fact that was false because the Defendants developed and installed

5    emission cheating components in the Subject Vehicles that caused them to pollute excessively in

6    real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

7    pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

8    the Defendants concealed that the fuel efficiency and performance could be achieved only through

9    emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

10   world conditions; and (3) the Defendants developed and installed emission cheating components

11   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

12   concealed that fact from regulators and Plaintiffs alike. See, e.g., ¶¶ 149-216; 337-357. In so doing,

13   and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants

14   engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Md.

15   Code Com. Law § 13-303:

16       A.   Representing that the Subject Vehicles have approval, characteristics, uses, or
17            benefits that they do not have;

19       B.   Representing that the Subject Vehicles are of a particular standard, quality and grade
20            when they are not;

22       C.   Advertising the Subject Vehicles with the intent not to sell or lease them as
23            advertised; and/or

25       D.   Using or employing deception, fraud, false pretense, false promise or
26            misrepresentation, or the concealment, suppression or omission of a material fact with
27            intent that others rely upon such concealment, suppression or omission, in connection
28            with the advertisement and sale/lease of the Subject Vehicles, whether or not any person
29            has in fact been misled, deceived or damaged thereby.

31       2836.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

1666

emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

2837.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2838.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Maryland CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2839.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2840.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2841.   Pursuant to Md. Code Com. Law § 13-408, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Maryland CPA.

**DECEPTIVE ACTS OR PRACTICES PROHIBITED**
**BY MASSACHUSETTS LAW**
**(Mass. Gen. Laws Ch. 93a, § 1,** *et seq.***)**

2842.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2843.   Plaintiffs, Jack London, Roger Farrow, Adam Ausura, Andrew Jesse, Ryan King, Michael Branco, Timothy Isyk, Oron Tipton, Lorell D. Hurley, Robert J. Dollard, John D. Porrazzo. Robert H. Reuter, Saska Voll, Scott Carey, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2844.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

2845.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 26 93A, § 1(b).

2846.   The Massachusetts consumer protection law ("Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2.

2847.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act.

2848.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mass. Gen. Laws ch. 93A, § 2:

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2849.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2850.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2851.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed Plaintiff a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2852.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2853.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2854.   Plaintiffs seek an order pursuant to Mass. Gen. Laws ch. 93A § 9 enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Massachusetts Act.

2855.   A notice letter was sent to FCA US LLC pursuant to Mass. Gen. Laws ch. 93A, § 9(3).  Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the

allegations of Subject Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiff are entitled.

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
#### (Mich. Comp. Laws § 445.903, *et seq.*)

2856.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2857.   Plaintiffs, Any Twork, Bruce Hassevoort, Bryan Thompson, Camelo Guzman, Danny W. Harris, II., Joseph McCrumb, Josh Turner, Scott Franzel, Robert Yakimchick, Christopher & Jacob Brown, Thomas Goodyke & Julie Bowers Goodyke, Paul Webster Messner, Jr., Alan Sjoberg, Richard Watters, William Coleman, Van Smith Jr., David A. Nakkula, Keith Arnold, Andrew Vanderklok, Joseph Barksdale, Paul Myers, Michelle L. Labadie, Sandy & Gina Badenski, Chason Pointer, Jacquelyn Lowe, Gregory Ray, Michael Sutherland, Steve Paquette, Jacob Brown, Chris Watkins, Ryan Lahaie, David Brown, Dan Sadowski, Marcus Kruse, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2858.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

2859.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

2860.   The Michigan Consumer Protection Act ("Michigan CPA") makes unlawful "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce ...." Mich. Comp. Laws § 445.903(1).

2861.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Michigan CPA.

2862.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Mich. Comp. Laws § 445.903(1):

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

2863.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2864.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2865.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Michigan CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2866.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2867.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2868.   Pursuant to Mich. Comp. Laws § 445.911, Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Michigan CPA.

**VIOLATIONS OF THE MINNESOTA PREVENTION
OF CONSUMER FRAUD ACT
(Minn. Stat. § 325f.68, *et seq.*)**

2869.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2870.   Plaintiffs, Amy Campbell, Anne Anderson, Brent Smith, Chad & Jennifer Johnson, Christopher & Michelle Guggemos, Douglas Thooft, Ryan Holker, Chad Koep, Harlan Latusek, Jason & Natalie Ysker, Cody P. Privette, Lisa Marie Murphy, Steven Leonard, Shawn C. Jacobs, Jayne Marie Edwards, Dan Seeland and Naht Phan, Jeffrey D. Hoyum, Michael Kasten, Brian Pieper, Dal & Melody Lynn Ruzicka, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2871.   The Subject Vehicles constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

2872.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby …." Minn. Stat. § 325F.69(1).

2873.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA.

2874.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in

real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. See, e.g., ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Minn. Stat. § 325F.69(1): using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2875.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

2876.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2877.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Minnesota CFA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2878.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2879.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2880.   Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Minnesota CFA.

### VIOLATIONS OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (Minn. Stat. § 325d.43, *et seq.*)

2881.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2882.   Plaintiffs, Amy Campbell, Anne Anderson, Brent Smith, Chad & Jennifer Johnson, Christopher & Michelle Guggemos, Douglas Thooft, Ryan Holker, Chad Koep, Harlan Latusek, Jason & Natalie Ysker, Cody P. Privette, Lisa Marie Murphy, Shawn C. Jacobs, Jayne Marie Edwards, Dan Seeland and Naht Phan, Jeffrey D. Hoyum, Michael Kasten, Brian Pieper, Dal & Melody Lynn Ruzicka, (for the purpose of this section, "Plaintiffs") brings this action on behalf of

themselves against all Defendants.

2883.  The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices. Minn. Stat. § 325D.44.

2884.  In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA.

2885.  As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Minn. Stat. § 325D.44:

    A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

    B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

2886.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

2887.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2888.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Minnesota DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2889.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2890.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public

1678

interest.

2891.   Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, and any other just and proper relief available under the Minnesota DTPA.

### VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT
### (Miss. Code. Ann. § 75-24-1, *et seq.*)

2892.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2893.   Plaintiffs, Jimmy Yeager, Scott Langley, Curtis & Debbie McDaniel, Tammy Frazier, Bobby Wallace, Clifton Bailey, Roger T. Ingram, Christopher Bond, Clifton Bailey, Anthony S. Antonucci, Robert Thomas, William Cunningham, Scott L Norris, Gaston Barnett c/o Walton Stinson, James Radcliff, Troy Cucrullo, Jimmy Haney, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2894.   The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." Miss. Code. Ann. § 75-24-5(1).

2895.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Mississippi CPA.

2896.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Miss. Code. Ann. § 75-24-5(1):

    A.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    B.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

    C.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

2897.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2898.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2899.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the Mississippi CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2900.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2901.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2902.   Plaintiffs have made, and continues to make, a reasonable attempt to resolve their claims under the Mississippi CPA through an informal dispute program approved by the Mississippi Attorney General. Miss. Code. Ann. § 75-24-15(2). Plaintiffs have contacted the Office of the Attorney General and followed the procedures prescribed by the Consumer Protection Division. Per the State Pre-suit requirements notifications have been prepared to Defendants a Letter of Complaint (Pre Suite Notice). Defendants did not respond within ten days. Accordingly, Plaintiffs prepared their Complaints to the Mississippi Attorney General. The Office of the Attorney General has three weeks to review the Complaint from the date it was filed, after which time, a mediator will be assigned. If the Attorney General can give formal approval if that mediation fails.

2903.   Plaintiffs seek an order under Miss. Code Ann. § 75-25-9 enjoining Defendants' unfair and/or deceptive acts or practices and awarding damages, including restitution under § 75-24-11, and any other just and proper relief available under the Mississippi CPA.

1681

## VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
### (Mo. Rev. Stat. § 407.010, *et seq.*)

2904.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2905.   Plaintiffs, David Sexton, Eric Busch, James Newell, Jeffrey Bax, Michael Janssen, Michael Stuart, Robert Graaf, Sara Batchelor, Tim Ciampoli, Brooks J. Moore, Berrick Jack, Larry Brown, Todd Bierk, Jeff & Terri Robinson, Jason Vanloo, Jeffery Weislocher, Sean Condry, Mark Warren, Ken Hauck, Mark Kinder, Dawn & James McDonald, Joshua Wilson, Justin Graves, William Eason, James and Tierra Applegate, Rayder Bennett, Frank M. Collier, David L Patton, Jeffrey Gebel, Nathen and Rachel Crittenden, Noel Foley, Stanley and Anita Collins, Steven Palmer, Shachar Cohen, Kip Coleman, Chris Masters, Jim Henry, Keith Kirby, Claude & Randy Stone, Donald Mollett, Thomas Dluzinewski, Thomas Dluzniewski, Cyrus Garrison, Don Keeney, Kim Triplett, James Dunn, Leya & Kenneth Bell, Ruthanna Taylor & Zachary Buchanan, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2906.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

2907.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in "trade" or "commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

2908.   The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise. Mo. Rev. Stat. § 407.020.

2909.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

1682

Marchionne, through their agents, employees, and/or subsidiaries, violated the Missouri MPA.

2910.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in the following unfair or deceptive acts or practices prohibited by Mo. Rev. Stat. § 407.020: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2911.   By failing to disclose these defects or facts about the defects described herein known to it or that were available to Defendants upon reasonable inquiry, Defendants deprived consumers of all material facts about the safety and functionality of their vehicles. By failing to release material facts about the defect, Defendants curtailed or reduced the ability of consumers to take notice of material facts about their vehicle, and/or it affirmatively operated to hide or keep

1683

1   those facts from consumers. 15 Mo. Code of State Reg. § 60-9.110.

2       2912.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

3   emission control system were material to Plaintiff, as Defendants intended. Had they known the

4   truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject

5   Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

6   would have paid significantly less for them.

7       2913.   Plaintiffs had no way of discerning that Defendants' representations were false and

8   misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

9   because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

10  did not, and could not, unravel Defendants' deception on their own.

11      2914.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive

12  practices under the Missouri MPA in the course of their business. Specifically, Defendants owed

13  Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

14  system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff,

15  and/or they made misrepresentations that were rendered misleading because they were

16  contradicted by withheld facts.

17      2915.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

18  result of Defendants' concealment, misrepresentations, and/or failure to disclose material

19  information.

20      2916.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

21  general public. Defendants' unlawful acts and practices complained of herein affect the public

22  interest.

23      2917.   Pursuant to Mo. Rev. Stat. § 407.025, Plaintiff seek an order enjoining Defendants'

1    unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other

2    just and proper relief available under the Missouri MPA.

3    **VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER**
4    **PROTECTION ACT OF 1973**
5    **(Mont. Code Ann. § 30-14-101, *et seq.*)**
6

7        2918.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

8    forth herein.

9        2919.   Plaintiffs, Debra Severeson, Derrick Sillivan, James Chapman, James Zinda, Peter

10   Vigue, Brent Burton, Laurence Carroll, Levent Altunova, Jared Watson & Lisa Tadd, Debra Ann

11   Guderjahn, Pat Breitbach, Patrick and Jill Kons, Keith Young, Karen Ann Corbin, Charles Bogy,

12   (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves and the

13   Montana State against all Defendants.

14       2920.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

15   Plaintiffs are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6). Plaintiffs are

16   "consumers" within the meaning of Mont. Code Ann. § 30-14-102(1).

17       2921.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne

18   are engaged in "trade" or "commerce" within the meaning of Mont. Code Ann. § 30-14-102(8).

19       2922.   The Montana Unfair Trade Practices and Consumer Protection Act ("Montana

20   CPA") makes unlawful any "unfair methods of competition and unfair or deceptive acts or

21   practices in the conduct of any trade or commerce." Mont. Code Ann. § 30-14-103.

22       2923.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

23   Marchionne, through their agents, employees, and/or subsidiaries, violated the Montana CPA.

24       2924.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

25   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

1685

EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Mont. Code Ann. § 30-14-103:

> A. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;
>
> B. Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;
>
> C. Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;
>
> D. Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;
>
> E. Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or
>
> F. Using or employing deception, fraud, false pretense, false promise or is representation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2925. Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the

truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2926.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2927.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the Montana CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2928.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2929.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2930.   Pursuant to Mont. Code Ann. § 30-14-133, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and   any   other   just   and   proper   relief   available   under   the   Montana   CPA.

**VIOLATION OF THE NEBRASKA CONSUMER PROTECTION ACT**
**(Neb. Rev. Stat. § 59-1601, *et seq.*)**

2931.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2932.   Plaintiffs, Brenda Dokmonovich, Brittney & Chad Olsen, Dustin E. Grate, John Donohue, Eric Vera, Gordon Shrader, Dean Beck, Leslie Swartz, Jared and Crystal Falk, Randy Gray, Miranda Tadlock & Adryan Debey, Willard R. & Victoria L. Hart, Rebecca Coburn, Katie Mantz, Kenneth Lynn & Laurie Ann Drees, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

2933.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of Neb. Rev. Stat. § 59-1601(1).

2934.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in "trade" or "commerce" within the meaning of Neb. Rev. Stat. § 59-1601(2).

2935.   The Nebraska Consumer Protection Act ("Nebraska CPA") makes unlawful "unfair or deceptive acts or practices in the conduct of any trade or commerce." Neb. Rev. Stat. § 59-1602.

2936.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Nebraska CPA.

2937.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through

emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by Neb. Rev. Stat. § 59-1602:

    A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

    B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

    D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

    E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby

2938.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

1    would have paid significantly less for them.

2        2939.   Plaintiffs had no way of discerning that Defendants' representations were false and

3    misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

4    because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

5    did not, and could not, unravel Defendants' deception on their own.

6        2940.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive

7    practices under the Nebraska CPA in the course of their business. Specifically, Defendants owed

8    Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

9    system because they possessed exclusive knowledge, they intentionally concealed it from

10   Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

11   contradicted by withheld facts.

12       2941.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

13   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

14   information.

15       2942.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

16   general public. Defendants' unlawful acts and practices complained of herein affect the public

17   interest.

18       2943.   Pursuant to Neb. Rev. Stat. § 59-1609, Plaintiffs seek an order enjoining

19   Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just

20   and proper relief available under the Nebraska CPA.

21
22   **VIOLATION OF THE NEVADA DECEPTIVE TRADE PRACTICES ACT**
     **(Nev. Rev. Stat. § 598.0903, *et seq*.)**
23
24
25       2944.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

1690

forth herein.

2945.   Plaintiffs, Mike Kolsch, Miklos Toth, Randal G. & Virginia K. Hendricks Smith, Randy Long, Brian J. Delaney, Harold Joseph Piele, Robert Peck, Robert J. Phillips, Rick Bunch, Robert Wasilchuk, Arturo Torres, Clinton Moxey, Scott Banks, Warren Gardinier, James Martin, Susan and Ethan Burlingham, John & Susanne Verretto, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

2946.   The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et seq. prohibits deceptive trade practices.

2947.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Nevada DTPA.

2948.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and(3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the

following unfair or deceptive acts or practices as defined in Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

    A.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    B.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

    C.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

    D.  Violating state and federal statutes and regulations relating to the sale of the Subject Vehicles; and/or

    E.  Intending to injure competitors and destroy or substantially lessen competition.

2949.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2950.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2951.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2952.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2953.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2954.   Pursuant to Nev. Rev. Stat. §§ 41.600 and 598.0977, Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Nevada DTPA.

## VIOLATION OF N.H. CONSUMER PROTECTION ACT
### (N.H. Rev. Stat. Ann. § 358-a:1, *et seq.*)

2955.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2956.   Plaintiffs, Edward Carrier, Mike Doherty, Jason Sullivan, (for the purpose of this section, "Plaintiff") brings this action on behalf of the Plaintiffs against all Defendants.

2957.   FCA, Fiat, VM Italy, VM American, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of N.H. Rev. Stat. § 358-A:1.

2958.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in "trade" or "commerce" within the meaning of N.H. Rev. Stat. § 358-A:1.

2959.   The New Hampshire Consumer Protection Act ("New Hampshire CPA") makes

1    unfair or deceptive trade practices unlawful. N.H. Rev. Stat. Ann. § 358-A:2.

2        2960.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

3    Marchionne, through their agents, employees, and/or subsidiaries, violated the New Hampshire

4    CPA.

5        2961.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

6    misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

7    EcoDiesel badge—a material fact that was false because the Defendants developed and installed

8    emission cheating components in the Subject Vehicles that caused them to pollute excessively in

9    real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

10   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

11   the Defendants concealed that the fuel efficiency and performance could be achieved only through

12   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

13   world conditions; and (3) the Defendants developed and installed emission cheating components

14   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

15   concealed that fact from regulators and Plaintiffs alike. *See, e.g.,* ¶¶ 149-216; 337-357. In so doing,

16   and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants

17   engaged in one or more of the following unfair or deceptive acts or practices as defined in N.H.

18   Rev. Stat. § 358-A:2:

19       A.  Representing that the Subject Vehicles have approval, characteristics, uses, or
20           benefits that they do not have;
21
22       B.  Representing that the Subject Vehicles are of a particular standard, quality and grade
23           when they are not;

24
25       C.  Advertising the Subject Vehicles with the intent not to sell or lease them as
26           advertised;
27

1694

D.  Violating state and federal statutes and regulations relating to the sale of the Subject Vehicles; and/or

E.  Intending to injure competitors and destroy or substantially lessen competition.

F.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

2962.  Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to the Plaintiffs, as Defendants intended. Had they known the truth, the Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2963.  Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2964.  Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and deceptive practices under the New Hampshire CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from the Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2965.  Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2966.  Defendants' violations present a continuing risk to the Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public

1  interest.

2  2967.  Pursuant to N.H. Rev. Stat. § 358-A:10, the Plaintiffs seek an order enjoining

3  Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages,

4  and any other just and proper relief available under the New Hampshire CPA.

**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. Stat. Ann. § 56:8-1, *et seq*.)**

9  2968.  Plaintiffs incorporate by reference each preceding paragraph as though fully set

10  forth herein.

11  2969.  Plaintiffs, David Scales, Joyce Cicone, Charles Lauziere, Michele Carrano, Bastian

12  Schroder, Stephanie Cromley, Kevin Ruehle, Roland Marsh, Zachary M. Marsico, Michael Kuhrt,

13  George and Katie Kauffman, Alma Lozana, Gonçalo Duarte, Patricia Neves, Martin L. Ward, John

14  D'Amato, Daniel Welzel, Bryan Emilius, (for the purpose of this section, "Plaintiffs") bring this

15  action on behalf of themselves against all Defendants.

16  2970.  FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

17  and Plaintiffs are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

18  2971.  FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

19  Marchionne are engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-

20  1(c), (e).

21  2972.  The New Jersey Consumer Fraud Act ("New Jersey CFA") makes unlawful "[t]he

22  act, use or employment by any person of any unconscionable commercial practice, deception,

23  fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression,

24  or omission of any material fact with the intent that others rely upon such concealment, suppression

25  or omission, in connection with the sale or advertisement of any merchandise or real estate, or with

1  the subsequent performance of such person as aforesaid, whether or not any person has in fact been

2  misled, deceived or damaged thereby…" N.J. Stat. Ann. § 56:8-2.

3      2973.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

4  Marchionne, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA.

5      2974.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

6  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

7  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

8  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

9  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

10  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

11  the Defendants concealed that the fuel efficiency and performance could be achieved only through

12  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

13  world conditions; and (3) the Defendants developed and installed emission cheating components

14  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

15  concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for

16  sale, and selling the defective Subject Vehicles, Defendants engaged in the following unfair or

17  deceptive acts or practices as prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception,

18  fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or

19  omission of a material fact with intent that others rely upon such concealment, suppression or

20  omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or

21  not any person has in fact been misled, deceived or damaged thereby.

22      2975.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

23  emission control system were material to Plaintiffs, as Defendants intended. Had they known the

1    truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject

2    Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

3    would have paid significantly less for them.

4         2976.   Plaintiffs had no way of discerning that Defendants' representations were false and

5    misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

6    because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

7    did not, and could not, unravel Defendants' deception on their own.

8         2977.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive

9    practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed

10   Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

11   system because they possessed exclusive knowledge, they intentionally concealed it from

12   Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

13   contradicted by withheld facts.

14        2978.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

15   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

16   information.

17        2979.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

18   general public. Defendants' unlawful acts and practices complained of herein affect the public

19   interest.

20        2980.   Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs seek an order enjoining

21   Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages,

22   and any other just and proper relief available under the New Jersey CFA.

23

1

**VIOLATIONS OF THE NEW MEXICO UNFAIR PRACTICES ACT**
**(N.M. Stat. Ann. §§ 57-12-1, *et seq.*)**

2981.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2982.   Plaintiffs, Heather Aragon, Louie Romero, Jacob Herron, Danny Quisenberry, Santiago and Lorraine Romero, Mike Keenan, Frank Novelli, Michael Paul, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

2983.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of N.M. Stat. Ann. § 57-12-2.

2984.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in trade or commerce within the meaning of N.M. Stat. Ann. § 57-12-2.

2985.   The New Mexico Unfair Trade Practices Act ("New Mexico UTPA") makes unlawful "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services … by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person," including but not limited to "failing to state a material fact if doing so deceives or tends to deceive." N.M. Stat. Ann. § 57-12-2(D).

2986.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the New Mexico UTPA.

2987.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed

1699

emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by N.M. Stat. Ann. § 57-12-2(D) and § 57-12-2(E):

    A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

    B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

    D. Using exaggeration as to a material fact and/or failing to state the material facts concerning the Subject Vehicles in a way that tended to deceive; and/or

    E.  Acting in a manner that resulted in a gross disparity between the true value of the Subject Vehicles and the price paid.

2988.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

2989.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2990.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the New Mexico UTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2991.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2992.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

2993.   Pursuant to N.M. Stat. Ann. § 57-12-10, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New Mexico UTPA.

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (N.Y. Gen. Bus. Law § 349)

2994.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

2995.   Plaintiffs, Arnold Construction Co. Inc., Bert Dodge, Danny Farrell, Dennis

Tubridy, Donald Moore, Erick Lore, Henry Lawson, Jay Printup, John Lazore, John McGarry, Michael Balzhiser, Mike Blizinski, Peter Ammirati, Ray Falk, Don Lange, Gregory B. Fenstermaker, Joe Elco, Lauren Steff, Norbert Kucharek, Timothy Rosenberg, Stephen Cimilluca, James Johnson & Michael Bolton, John A. Barone, Anthony Barbato, William J. Hoak, III, Donald Scales, Derick Gurney, Jose Mercao, Marcus Aaron Hemsley, Frank Fernandez, LaVerne Brace, Nicholas F. Baglio, Jimmy Schroeger, Thomas Newton, Thomas Castle, Jason A Puckett, Julie Staubach, Joseph Neault Jr., Ricky P. Poisson, Amy Fernandes, Louis Barbato, Robert Sisson, Ashleigh Webster, Robert Sivori, Jesse Stoddard, Jamie L. Day, Christopher M. Forsythe & Linsey M. Shelton, Scott Brophy, Marc Daquila & Melodye Eldeen, Christian Parker d/b/a Line Striping, Inc. , Reginaldo Medeiros, Paul Jefferson Rahaman, Jason & Rebecca Cornetto, Jason Brown, Ben Savino, Brent Ford, Daniel Acker, Daniel Thomas Ruttura, Jeffrey Mills, Sandra Lascano & Jaime Eugenio, Pete Pompa, Todd Ruttura, Carl Culbertson, Kathleen McCoy, Michael Schrader, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

2996. FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

2997. The New York Deceptive Acts and Practices Act ("NY DAPA") makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus Law § 349.

2998. In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the New York DAPA.

2999. As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as prohibited by N.Y. Gen. Bus. Law § 349:

A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3000.  Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3001.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3002.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3003.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3004.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3005.   Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the New York DAPA.

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. Gen. Bus. Law § 350)**

3006.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3007.   Plaintiffs, Arnold Construction Co. Inc., Bert Dodge, Danny Farrell, Dennis Tubridy, Donald Moore, Erick Lore, Henry Lawson, Jay Printup, John Lazore, John McGarry, Michael Balzhiser, Mike Blizinski, Peter Ammirati, Ray Falk, Don Lange, Gregory B. Fenstermaker, Joe Elco, Lauren Steff, Norbert Kucharek, Timothy Rosenberg, Stephen Cimilluca, James Johnson & Michael Bolton, John A. Barone, Anthony Barbato, William J. Hoak, III, Donald Scales, Derick Gurney, Jose Mercao, Marcus Aaron Hemsley, Frank Fernandez, LaVerne Brace, Nicholas F. Baglio, Jimmy Schroeger, Thomas Newton, Thomas Castle, Jason A Puckett, Julie Staubach, Joseph Neault Jr., Ricky P. Poisson, Amy Fernandes, Louis Barbato, Robert Sisson, Ashleigh Webster, Robert Sivori, Jesse Stoddard, Jamie L. Day, Christopher M. Forsythe & Linsey M. Shelton, Scott Brophy, Marc Daquila & Melodye Eldeen, Christian Parker d/b/a Line Striping, Inc. , Reginaldo Medeiros, Paul Jefferson Rahaman, Jason & Rebecca Cornetto, Jason Brown, Ben Savino, Brent Ford, Daniel Acker, Daniel Thomas Ruttura, Jeffrey Mills, Sandra Lascano & Jaime Eugenio, Pete Pompa, Todd Ruttura, Carl Culbertson, Kathleen McCoy, Michael Schrader, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3008.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in the "conduct of business, trade or commerce," within the meaning of N.Y. Gen. Bus. Law § 350.

3009.   The New York False Advertising Act ("NY FAA") makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350. False

1  advertising includes "advertising, including labeling, of a commodity . . . if such advertising is

2  misleading in a material respect," taking into account "the extent to which the advertising fails to

3  reveal facts material in light of … representations [made] with respect to the commodity …." N.Y.

4  Gen. Bus. Law § 350-a.

5    3010.   Defendants caused to be made or disseminated through New York and the United

6  States, through advertising, marketing, and other publications, statements that were untrue or

7  misleading, and which were known, or which by the exercise of reasonable care should have been

8  known to Defendants, to be untrue and misleading to consumers, including Plaintiffs.

9    3011.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

10  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

11  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

12  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

13  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

14  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

15  the Defendants concealed that the fuel efficiency and performance could be achieved only through

16  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

17  world conditions; and (3) the Defendants developed and installed emission cheating components

18  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

19  concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357.

20    3012.   Defendants violated the NY FAA by: representing that the Subject Vehicles had

21  characteristics, uses, benefits, and qualities which they do not have; representing that the Subject

22  Vehicles are of a particular standard, quality and grade when they are not; advertising Subject

23  Vehicles with the intent not to sell or lease them as advertised; engaging in other conduct creating

1706

1  a likelihood of confusion or of misunderstanding; and employing concealment, suppression, or

2  omission of material facts in connection with the advertisement and sale of the Subject Vehicles.

3  Defendants knew or should have known that their conduct violated the NY FAA.

4  3013.  Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

5  result of Defendants' misrepresentations, deceptions, and their concealment of and failure to

6  disclose material information.

7  3014.  All of the wrongful conduct alleged herein occurred, and continues to occur, in the

8  conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized

9  course of conduct that is still perpetuated and repeated, both in the State of New York and

10  nationwide.

11  3015.  Pursuant to the NY FAA, Plaintiffs seek injunctive relief, as well as monetary relief

12  against Defendants measured as the greater of (a) actual damages in an amount to be determined

13  at trial, and (b) statutory damages in the amount of $500 each for Plaintiffs. Because Defendants'

14  conduct was committed willingly and knowingly, Plaintiffs are entitled to recover three times

15  actual damages, up to $10,000.

**VIOLATIONS OF THE NORTH CAROLINA
UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
(N.C. Gen. Stat. §§ 75-1.1, *et seq.*)**

19  3016.  Plaintiffs incorporate by reference each preceding paragraph as though fully set

20  forth herein.

21  3017.  Plaintiffs, David Duncan, Donavin Auld, Jack Terry & Lee Todd, Jose Mejia, Kim

22  Hall, William Wheeler, Andrew Thomas, Harry Arthur Potter, Steven Phillip & Pamela Fulford

23  Krol, Ray Reynolds, Gus Demetriades, Kyle Schmitting & Kamile Kevliciute, Carl Lachance,

24  Brian Ellis, Tyrone & April Malambri, Donald Harrell, Calvin D. Burrus, III, Felix Orlando

Gonzales, Jr., Greg Cain, Colt W. Knight, Bryan Hastings and Jessica Bolling, Travis Lee Campbell, Frederick B May, Kerrin Tomek, Kenneth Edward Fogle Jr, Robbie Kiss, Francis Lukowski Jr., Jamison Stanley and Joli A. Elder, Allen Lewis Heffelbower, William Wiggins, Laura Morgan, Tim Gorgan, Rodney Parr, Justin Chandler, Roxane Branz, Ariel Medrano, Debra & Ronnie Creed, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3018.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of N.C. Gen. Stat. § 75-1.1, *et seq*.

3019.   FCA's, Fiat's, VM Italy's, VM America's, Bosch GmbH's, Bosch LLC's, and Sergio Marchionne's acts and practices complained of herein were performed in the course of their trade or business and thus occurred in or affected "commerce," as defined in N.C. Gen. Stat. § 75-1.1(b).

3020.   The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") makes unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[,]" and the North Carolina UDTPA provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law. N.C. Gen. Stat. § 75-16.

3021.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the North Carolina UDTPA.

3022.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed

emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by the North Carolina UDTPA:

> A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;
>
> B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;
>
> C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;
>
> D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;
>
> E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or
>
> F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3023.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the

truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3024.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3025.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3026.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3027.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3028.   Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the North Carolina UDTPA.

1710

## VIOLATION OF THE NORTH DAKOTA CONSUMER FRAUD ACT
### (N.D. Cent. Code § 51-15-02)

3029.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3030.   Plaintiffs, Chris Samuelson, Clinton T. McKinney, Michael James Wolbert, Vaughan Wooden, Lev Cooper, Steve J. Mast (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

3031.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

3032.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in the "sale" of "merchandise" within the meaning of N.D. Cent Code 22§§ 51-15-02(3), (5).

3033.   The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…." N.D. Cent. Code § 51-15-02.

3034.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the North Dakota CFA.

3035.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices prohibited by N.D. Cent. Code § 51-15-02: using or employing deception, fraud, false pretense, false promise or misrepresentation, with intent that others rely thereon, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3036.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

3037.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3038.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the North Dakota CFA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

1  system because they possessed exclusive knowledge, they intentionally concealed it from

2  Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

3  contradicted by withheld facts.

4      3039.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

5  result of Defendants' concealment, misrepresentations, and/or failure to disclose material

6  information.

7      3040.   Defendants' violations present a continuing risk to Plaintiff, as well as to the

8  general public. Defendants' unlawful acts and practices complained of herein affect the public

9  interest.

10     3041.   Pursuant to N.D. Cent. Code Ann. §§ 51-15-07 and 51-15-09, Plaintiff seek an

11  order enjoining Defendants' unfair and/or deceptive acts or practices and awarding damages, treble

12  damages, and any other just and proper relief available under the North Dakota CFA.

13
14                    **VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT**
                           **(Ohio Rev. Code §§ 1345.01, *et seq.*)**
15

16     3042.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

17  forth herein.

18     3043.   Plaintiffs, Bill Bilicki, Gregory Erwin, Jordan Turske, Kimberly C. Miller, Robert

19  Redman, Ron Hayden & Ashley Suran, Carl Barber, Marc Hopton, Michael Mossison, Steve

20  Young d/b/a Wrecker One, Jason Reigelsperger, Scot McCrea, Ronda Stratton, Ryan Scott, John

21  & Shirley Hecker, Zachary Gordon, Jeffrey A. Stracensky, Robert Radel, Emily K. Blankenship,

22  Gary Smith, Shawn Patrick McNew, Todd Dana Strickland, Paul Gambrill, Donald and Kimberly

23  Schmit, Gregory Clendenin, Nathan Strahinic and Stacey Grafmeyer, Kevin P Brinkhoff, Thomas

24  and Jean Mikle, Bruce Ludlow, Richard Tomilson, Lawrence Fox, Harold Douglas Maynard, Mark

25  A. Shackelford, Nick DiGioia, Larry Dygert, Kody Willhelmi, (for the purpose of this section,

1    "Plaintiff") brings this action on behalf of themselves against all Defendants.

2        3044.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

3    Plaintiff, and Plaintiffs are "persons" within the meaning of Ohio Rev. Code § 1345.01(B).

4    Defendants are so "supplier[s]" as defined by Ohio Rev. Code 2 § 1345.01(C).

5        3045.   Plaintiff are "consumers" within the meaning of Ohio Rev. Code § 1345.01(D), and

6    their purchase and leases of the Subject Vehicles are "consumer transactions" within the meaning

7    of Ohio Rev. Code § 1345.01(A).

8        3046.   The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits unfair or

9    deceptive acts or practices in connection with a consumer transaction. Ohio Rev. Code § 1345.02.

10       3047.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

11   Marchionne, through their agents, employees, and/or subsidiaries, violated the Ohio CSPA.

12       3048.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

13   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

14   EcoDiesel badge—a material fact that was false because the Defendants developed and installed

15   emission cheating components in the Subject Vehicles that caused them to pollute excessively in

16   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

17   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

18   the Defendants concealed that the fuel efficiency and performance could be achieved only through

19   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

20   world conditions; and (3) the Defendants developed and installed emission cheating components

21   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

22   concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing,

23   and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged

in one or more of the following unfair or deceptive acts or practices as prohibited by Ohio Rev. Code § 1345.02:

    A.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have; and/or

    B.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not.

3049.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3050.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3051.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Ohio CSPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3052.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3053.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3054.   Pursuant to Ohio Rev. Code § 1345.09, Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Ohio CSPA.

## VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
### (Ohio Rev. Code § 4165.01, *et seq.*)

3055.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3056.   Plaintiffs, Bill Bilicki, Gregory Erwin, Jordan Turske, Kimberly C. Miller, Robert Redman, Ron Hayden & Ashley Suran, Carl Barber, Marc Hopton, Michael Mossison, Steve Young d/b/a Wrecker One, Jason Reigelsperger, Scot McCrea, Ronda Stratton, Ryan Scott, John & Shirley Hecker, Zachary Gordon, Jeffrey A. Stracensky, Robert Radel, Emily K. Blankenship, Gary Smith, Shawn Patrick McNew, Todd Dana Strickland, Paul Gambrill, Donald and Kimberly Schmit, Gregory Clendenin, Nathan Strahinic and Stacey Grafmeyer, Kevin P Brinkhoff, Thomas and Jean Mikle, Bruce Ludlow, Richard Tomilson, Lawrence Fox, Harold Douglas Maynard, Mark A. Shackelford, Nick DiGioia, Larry Dygert, Kody Willhelmi, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

3057.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, and Plaintiffs are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

3058.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "the course of [their] business" within the meaning of Ohio Rev. Code

1  § 4165.02(A).

2  3059.   The Ohio Deceptive Trade Practices Act ("Ohio DTPA") makes unlawful deceptive

3  trade practices. Ohio Rev. Code § 4165.02(A).

4  3060.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

5  Marchionne, through their agents, employees, and/or subsidiaries, violated the Ohio DTPA.

6  3061.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

7  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

8  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

9  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

10  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

11  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

12  the Defendants concealed that the fuel efficiency and performance could be achieved only through

13  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

14  World conditions; and (3) the Defendants developed and installed emission cheating components

15  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

16  concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing,

17  and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged

18  in one or more of the following unfair or deceptive acts or practices as defined in Ohio Rev. Code

19  § 4165.02(A):

20  A.  Causing likelihood of confusion or of misunderstanding as to the approval or
21  certification of the Subject Vehicles;

22  B.  Representing that the Subject Vehicles have approval, characteristics, uses, or
23  benefits that they do not have;

24  C.  Representing that the Subject Vehicles are of a particular standard, quality and grade
25  when they are not; and/or

1717

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

3062.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3063.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3064.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and deceptive practices under the Ohio DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3065.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3066.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3067.   Pursuant to Ohio Rev. Code §§ 2727.02 and 4165.03, Plaintiff seek an order

enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive

damages, and any other just and proper relief available under the Ohio DTPA.

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### (Okla. Stat. Tit. 15 § 751, *et seq.*)

3068.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

forth herein.

3069.   Plaintiffs, Clay Cooper, Don & Jackie Walker, Jimmy & Rene Flippen, John Lance,

Randy & Angie Reed, Rex Hale, Robert Theser, Timothy P. Woodson, Wade J. Lackey, Jason

Trotter, John Stork, Tony Hutchinson, Angel Huerta, Jeff Kays, Lloyd Howard, Gary & Tracy

McKeever, Steve E. & Sheryl Ridenour, Matthew Litterell, Kim Watson, Allen Wallis, Brent

Lavender, Adam Covington, Troy Atcheson, Lochland D. Jeffries, Willard and Corina Ragland,

Vince McBride, David Waltman, Garrett Dantzler, Josh and Amber Gwillim, Casamere and

William Creacy, Kris Kemper, Kristofferson and Lacey Blain, Dwayne Boggs, Thomas A

Edwards, Jeffery and Tracie Quine, Harold and Donna Imke, Tad and Stephanie Hamil, Tanner

Tibbets, Russell Kious, Jocko Vermillion, Michael Chandler, Gale & Retha Powell, Richard

Thomassom, Richard & Shelly Green, Charlie Elliot, Rickey Pittman, Raymond Russell, Blake

Byrne, Lawrence & Susan Swonger, (for the purpose of this section, "Plaintiff") brings this action

on behalf of themselves against all Defendants.

3070.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

Plaintiff, and Plaintiffs are "persons" within the meaning of Okla. Stat. Tit. 15 § 752.1.

3071.   At all relevant times, FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch

LLC, and Sergio Marchionne are and were engaged in "the course of business" within the meaning

of Okla. Stat. Tit. 15 § 753.

3072.   The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits numerous

unlawful acts, including misleading representations, false advertisements, and false statements. Okla. Stat. Tit. 15 § 753.

3073.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA.

3074.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Okla. Stat. Tit. 15 § 753:

> A.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;
>
> B.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or
>
> C.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

3075.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

1720

emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3076.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3077.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3078.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3079.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3080.   Pursuant to Okla. Stat. Tit. 15 § 761.1, Plaintiff seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Oklahoma CPA.

**VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**
**(Or. Rev. Stat. §§ 646.605, *et seq.*)**

3081.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3082.   Plaintiffs, David S. Wergen, Frank & Lisa Meyers, Kris A. Shepherd, Loren Heideman, Mark Seghetti d/b/a R&B Outdoors, Inc., Chuck McClaugherty, Daniel & Laura Zamora, Donald Wacek, Joey Lea & Mark McVane, Ben Doney, Scott Platko, Colton Warren Shannon, Wade Rodney Aylett, Crystal Lee Bonotto, Leo Karnowski Jr, Rodney Robinson, Steven and Jennifer Weir, Sam Rickey Richey, Mace McVay, Robert Troudt, Jimmy Lanz, Kurt Cundiff, Wade Kaseberg, Jeff & Cynthia Sullens, Kevin & Danyelle Ramsey, Tom & Shawn Wells, Jordan Smith, Tylor Cillione, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3083.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

3084.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

3085.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of . . . business." Or. Rev. Stat. § Ann. 646.608(1).

3086.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Oregon UTPA.

3087.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed

emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unlawful practices as defined in 21 Or. Rev. Stat. § 646.608(1):

A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

3088.  Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3089.  Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

did not, and could not, unravel Defendants' deception on their own.

3090.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Oregon UTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3091.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3092.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3093.   Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Oregon UTPA.

### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 Pa. Stat. Ann. § 201-1, *et seq.*)

3094.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3095.   Plaintiffs, Terrance Piper, Jeffrey A. Michener, Johnathan Proctor, Ken G. Sharpe, Morgan Green, Scot Fick, Thomas J. & Gilbert T. Madonna, Amy McCarthy, Bill Plagianakos, Patti & Robert Fobia, Anthony Stockdale, Russell Grieff, Sarah Miller, George Anthony, Angeline

& Stephen Connaghan, Duane Gleason, Susan Burkland, Lee & Inna Halpert, Dean Kohanyi, Ricardo C. & Michelle Calla, Travis Ray Burwell, Gregg Rafalco, Timothy Graham, Dawn Noll, Bernice and Pete Greene, Loren K. Nye, Frank E II and Dolly Rae Baker, Dustin R Downing Jr, Matthew Hoser, Mason Lauer, Martin Zueger, Thomas Nicholas Bezick, Robert Patterson Snyder, Larry E. and Hazel A. Heeter, Troy Young, Michael Moreland, George A. Gunther, John Ball, Mark Schultz, John Guarino, Jr., Kevin & Elaine Collier, Thomas Pisano, Aj Himmelsbach, Steve & Mallory Wilson, Jay E. Fitzgerald, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3096.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of 73 Pa. Stat. Ann. § 201-2. (2).

3097.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of 73 Pa. Stat. Ann. § 201-2(3).

3098.   The Pennsylvania Unfair Trade Practices Act ("Pennsylvania UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce …." 73 Pa. Stat. Ann. § 201 3.

3099.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Pennsylvania UTPA.

3100.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in

real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

the Defendants concealed that the fuel efficiency and performance could be achieved only through

emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

world conditions; and (3) the Defendants developed and installed emission cheating components

that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing,

and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged

in one or more of the following unfair or deceptive acts or practices in violation of 73 Pa. Stat.

Ann. § 201-3:

A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3101.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

emission control system were material to Plaintiffs, as Defendants intended. Had they known the

truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject

1    Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

2    would have paid significantly less for them.

3        3102.   Plaintiffs had no way of discerning that Defendants' representations were false and

4    misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

5    because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

6    did not, and could not, unravel Defendants' deception on their own.

7        3103.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive

8    practices under the Pennsylvania UTPA in the course of their business. Specifically, Defendants

9    owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

10   system because they possessed exclusive knowledge, they intentionally concealed it from

11   Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

12   contradicted by withheld facts.

13       3104.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

14   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

15   information.

16       3105.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

17   general public. Defendants' unlawful acts and practices complained of herein affect the public

18   interest.

19       3106.   Pursuant to 73 Pa. Stat. Ann. § 201-9.2(a), Plaintiffs seek an order enjoining

20   Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive and/or

21   treble damages, and any other just and proper relief available under the Pennsylvania UTPA.

22                        **VIOLATION OF THE RHODE ISLAND DECEPTIVE**
23                                 **TRADE PRACTICES ACT**
24                              **(R.I. Gen. Laws § 6-13.1, *et seq*.)**
25
26       3107.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

                                            1727

1   forth herein.

2   3108.   Plaintiffs, Dennis Begin, Robert H. Reuter, (for the purpose of this section,

3   "Plaintiffs") bring this action on behalf of Plaintiffs against all Defendants.

4   3109.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

5   and Plaintiffs are "persons" within the meaning of R.I. Gen. Laws § 6-13.1-1(3).

6   3110.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

7   Marchionne are engaged in "trade" or "commerce" within the meaning of R.I. Gen. Laws § 6-

8   13.1-1(5).

9   3111.   The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") prohibits

10   "unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws §

11   6-13.1-2.

12   3112.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

13   Marchionne, through their agents, employees, and/or subsidiaries, violated the Rhode Island

14   DTPA.

15   3113.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

16   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

17   EcoDiesel badge—a material fact that was false because the Defendants developed and installed

18   emission cheating components in the Subject Vehicles that caused them to pollute excessively in

19   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

20   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

21   the Defendants concealed that the fuel efficiency and performance could be achieved only through

22   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

23   world conditions; and (3) the Defendants developed and installed emission cheating components

1728

that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in R.I. Gen. Laws § 6-13.1-1(6):

A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

3114.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to the Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

3115.   Plaintiffs members had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3116.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and

deceptive practices under the Rhode Island DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from the Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3117.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3118.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3119.   Pursuant to R.I. Gen. Laws § 6-13.1-5.2(a), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Rhode Island DTPA.

### VIOLATIONS OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
**(S.C. Code Ann. § 39-5-10, *et seq*.)**

3120.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3121.   Plaintiffs, William Johnson, Andrew Steele, Andrew Curtis & Mimi Elizabeth Reid, Christopher Fehr, Danny Hill, James Fox, Jason Downs, Kimela Anne Bryant, Kurtis J. Melin, Patrick Hair & Angelica Eller, Patrick Diggin, Matthew Deavers, Marko Seget, Matt Hersey, Kimberly S. Henson, Joseph Newell, William Jones, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3122.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

1    and Plaintiffs are "persons" within the meaning of S.C. Code § 39-5-10(a).

2        3123.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

3    Marchionne are engaged in "trade" or "commerce" within the meaning of S.C. Code § 39-5- 10(b).

4        3124.   The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits

5    "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code § 39-

6    5-20(a).

7        3125.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

8    Marchionne, through their agents, employees, and/or subsidiaries, violated the South Carolina

9    UTPA.

10       3126.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

11   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

12   EcoDiesel badge—a material fact that was false because the Defendants developed and installed

13   emission cheating components in the Subject Vehicles that caused them to pollute excessively in

14   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

15   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

16   the Defendants concealed that the fuel efficiency and performance could be achieved only through

17   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

18   world conditions; and (3) the Defendants developed and installed emission cheating components

19   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

20   concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing,

21   and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged

22   in one or more of the following unfair or deceptive acts or practices in violation of S.C. Code § 39-

23   5-20(a):

A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3127.  Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3128.  Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3129.  Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

1732

1 contradicted by withheld facts.

2     3130.  Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

3 result of Defendants' concealment, misrepresentations, and/or failure to disclose material

4 information.

5     3131.  Defendants' violations present a continuing risk to Plaintiffs, as well as to the

6 general public. Defendants' unlawful acts and practices complained of herein affect the public

7 interest.

8     3132.  Pursuant to S.C. Code § 39-5-140(a), Plaintiffs seek an order enjoining Defendants'

9 unfair and/or deceptive acts or practices, and awarding damages, treble and/or punitive damages,

10 and any other just and proper relief available under the South Carolina UTPA.

## VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT
### (S.C. Code Ann. § 56-15-10, *et seq.*)

15     3133.  Plaintiffs incorporate by reference each preceding paragraph as though fully set

16 forth herein.

17     3134.  Plaintiffs, William Johnson, Andrew Steele, Andrew Curtis & Mimi Elizabeth

18 Reid, Christopher Fehr, Danny Hill, James Fox, Jason Downs, Kimela Anne Bryant, Kurtis J.

19 Melin, Patrick Hair & Angelica Eller, Patrick Diggin, Matthew Deavers, Marko Seget, Matt

20 Hersey, Kimberly S. Henson, Joseph Newell, William Jones, (for the purpose of this section,

21 "Plaintiffs") bring this action on behalf of themselves against FCA, Fiat, VM Italy, and VM

22 America.

23     3135.  FCA, Fiat, VM Italy, and VM America are "manufacturer[s]" as set forth in S.C.

24 Code Ann. § 56-15-10(b), as they were engaged in the business of manufacturing or assembling

25 new and unused motor vehicles. FCA and Fiat are also "distributors" and/or "wholesalers" as set

1  forth in S.C. Code Ann. § 56-15-10(g), (p).

2  3136.   The South Carolina Regulation of Manufacturers, Distributors, and Dealers Act

3  ("Manufacturers Act") prohibits "unfair or deceptive acts or practices" as defined in S.C. Code

4  Ann. § 56-15-40. S.C. Code Ann. § 56-15-30(a). Accordingly, the Manufacturers Act prohibits

5  any manufacturer from engaging in bad faith and unconscionable actions that cause damage to the

6  parties or the public; it also prohibits manufacturers from using false or misleading advertising in

7  connection with their business. S.C. Code Ann. § 56-15-40(1), (3)(d).

8  3137.   FCA, Fiat, VM Italy, and VM America committed unfair or deceptive acts or

9  practices that violated the Manufacturers Act.

10  3138.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

11  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

12  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

13  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

14  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

15  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

16  the Defendants concealed that the fuel efficiency and performance could be achieved only through

17  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

18  world conditions; and (3) the Defendants developed and installed emission cheating components

19  that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

20  concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357.

21  3139.   In so doing, Defendants committed bad faith and unconscionable actions including

22  but not limited to: misrepresenting, concealing, and/or failing to disclose the true emissions and

23  performance characteristics of the Subject Vehicles, and failing to disclose the Subject Vehicles'

1734

1    defective emissions control systems.

2        3140.   Defendants also violated the Manufacturers' Act by using false and misleading

3    advertisements in connection with the sale and lease of Subject Vehicles. As alleged above,

4    Defendants made numerous material statements about the safety, cleanliness, efficiency and

5    reliability of the Subject Vehicles that were either false or misleading. Each of these statements—

6    and the failure to disclose the truth—contributed to the deceptive context of Defendants' unlawful

7    advertising and representations as a whole. Had they known the truth, Plaintiffs would not have

8    purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been

9    disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly

10   less for them.

11       3141.   Pursuant to S.C. Code Ann. § 56-15-110(2), Plaintiff brings this action on behalf

12   of themselves, as the action is one of common or general interest to many persons and the parties

13   are too numerous to bring them all before the court.

14       3142.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

15   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

16   information.

17       3143.   Plaintiffs are entitled to double their actual damages, the cost of the suit, attorney's

18   fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiff also seeks injunctive relief under S.C. Code

19   Ann. § 56-15-110. Plaintiff also seeks treble damages because the Defendants acted maliciously.

## VIOLATION OF THE SOUTH DAKOTA
## DECEPTIVE TRADE PRACTICES AND
## CONSUMER PROTECTION LAW
### (S.D. Codified Laws § 37-24-6)

25       3144.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

26   forth herein.

3145.   Plaintiffs, Chad Kaltenbach, Mike Stevens, Randy Sturzenbecher, Jon Elsasser, Scott Jones, Matt Hersey, Kimberly S. Henson, Joseph Newell, William Jones, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3146.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

3147.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

3148.   The South Dakota Deceptive Trade Practices and Consumer Protection ("South Dakota CPA") prohibits "deceptive acts or practices, which are defined to include "[k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby." S.D. Codified Laws § 37-24-6(1).

3149.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the South Dakota CPA.

3150.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through

emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants used or employed deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles.

3151.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

3152.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3153.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the South Dakota CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

1   contradicted by withheld facts.

2   3154.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

3   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

4   information.

5   3155.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

6   general public. Defendants' unlawful acts and practices complained of herein affect the public

7   interest.

8   3156.   Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs seek an order enjoining

9   Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just

10  and proper relief available under the South Dakota CPA.

11
12  **VIOLATIONS OF TENNESSEE CONSUMER**
13  **PROTECTION ACT OF 1977**
14  **(Tenn. Code Ann. § 47-18-101, *et seq.*)**
15
16  3157.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

17  forth herein.

18  3158.   Plaintiffs, Deborah & Calvin Stafford, Richard Bradley, Thomas Kosinski, Alan

19  Wright, Nathan Hale, Blenda Bowman, Christopher Vigil, Greg Gaskins, Kent Hall, Nathan

20  Townsend, Mike Shelton, Matthew Swanson, Joseph McGee, Clinton and Sadie Etheridge, Mark

21  Schumaker, Roger Parker, Robert Lloyd Senter, Terrie Peay (for the purpose of this section,

22  "Plaintiffs") bring this action on behalf of themselves against all Defendants.

23  3159.   Plaintiffs are "natural persons" and "consumers" within the meaning of Tenn. Code

24  § 47-18-103(2).

25  3160.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

26  Marchionne are engaged in "trade" or "commerce" or "consumer transactions" within the meaning

Tenn. Code § 47-18-103(9).

3161.   The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code § 47-18-104.

3162.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Tennessee CPA.

3163.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Tenn. Code § 47-18-104:

    A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

    B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

1739

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

3164.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3165.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3166.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3167.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3168.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3169.   Pursuant to Tenn. Code §§ 47-18-109, 47-18-109, and 47-18-109(a)(3), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble or punitive damages, and any other just and proper relief available under the Tennessee CPA.

## VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT – CONSUMER PROTECTION ACT
### (Tex. Business & Commercial Code §§ 17.41, *et seq.*)

3170.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3171.   Plaintiffs, Alec Beard, Carl Lucci Wilburn, Michael Roberts, Larry Thompson, Lawrence Gonzales, Dave Schulien, David Jones, Edward Fosnight, Gary Tripp, Gary Adams, Gerald Richmond, Jeff Vance, Jeffrey Irwin, Joshua Sigmon, Kenneth D. Elliot, Lucas Lopez, Manuel Lopez Garcia, Michael Rene Hollenbaugh, Randall Moody, Reese Howell, Robert Pickering, Sergio Lopez, Shawn J. Austin, Sherman Barnett d/b/a Rides Auto Group, Tim Fowler, William Gray, Zachary Theobald, Brandon and Haley Buckmaster, David Allen Bradshaw, Maggie Phipps, Jerry Fortenberry, Jimmy D. King, Marcus Carlock, James and Nichole Potts, Russell Cash, Casey Barton, Coleman Sessums, Michael Werner, Gene C. Brown,  Jr., Duane Whitus, Andrew Moran, Scott Perry, Bryan Jones, Mario Maltez,  Jr., Saleh Sal, John Horner, Benjamin Tester, Dwayne Hunter, John Lemelle, Cory Estelle, Eric Karcher, Kenneth Trent Paris, William and Kimberly Mayes, Alan Ostermiller, Ruben Luevanos, George Henry, Don Merriman d/b/a Don-Sandy,  LLC, Richard Holbach, Richard Robinson, Edward Roland Hill,  III, Andrew Johnson, Mark Spaugh, Ricardo Abraham Soto, Amanda Dwyer, Chris Breaux, Christopher Fox,

Matthew Kyle, Robert Durante, Casey Wheeler, David Jarzamski, Gaersen Bailey, Michael Burkhart, Santiago Deleon, Casey Perry, Landin Longtin, Scott Reeves, Edward Constantinescu, Robert Durante, Christopher Vigil, Luke D. Knighten, Justin and Chelsey Leasman, Joshua Berna, Robert McMichael, Michael Gunderson, William Ryan, Christopher Lewis, Richard Randolph, William Thomas Hunt, Scott Johnson, Andrew Defayette, Karen Gilcrease, William Thomas Hunt, Lindsay Elizabeth Weaver, Kenneth Kana, Patrick McCraw, Stephen Watson, Jenner Jones, Brandon Redmon, Brandon Redmon, John Prinz, Larry Alan Powles, Richard Eugene Brown, Michael Potts, Mark Madden, Tony Choi, Joshua Gillespie, Eder Acosta, Lauren Leigh Brehm, Thomas and Tammy Samford, Matthew Reese, Douglas B. Mclaughlin, Regina Patricia Sanchez, Tomas Contreras, Brandon Coates, Christopher Fox, Michael Johnson, Lorie Neal, David Sweet, Tyler Milton, Robert S. McKee, Aaron and Lindsay Horn, Gerald Roux, John Jackson, Ashton and Christina Pace, Ashton and Christina Pace, Billy Oliver, Zachary Oliver, Darrel C. Caldwell, Bobby and Petty Harris, Eli Mcclain, Joseph Weis, Robert Smith, Elizabeth Roland, Carl Caughman, Jay Setchell, David G Mosby, Jose Vicente Pinto, Michael Milich, Mike Tuner, Michael & Vanetta Mund, Alan Macchi, Gustavo Pina, Rick Cruz, John Adams, Audie Proctor, Ricky Fields, Frank Costanzo, James Forwood, Carissamae Frederick, Terrence O'Brien, Leslie Charles Tabor, John Gonzalez, Roberto Martinez, Collin Hale, Ignatius & Clara Gladek, Joseph A. Reynolds, Michael Danielson, Jackie Brewer, Robert Zielinski, Carlos Cantu, Jody Simpson & Leann Aills, Jim Leavelle, Michael Miller, Brian Brown, Robert Lionel, Brad Smith, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3172.   Plaintiffs are individuals, partnerships, or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), see Tex.

1  Bus. & Com. Code § 17.41, and are therefore "consumers" pursuant to Tex. Bus. & Com. Code §

2  17.45(4).

3  3173.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

4  Marchionne are "person[s]" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

5  3174.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

6  Marchionne are engaged in "trade" or "commerce" or "consumer transactions" within the meaning

7  Tex. Bus. & Com. Code § 17.46(a).

8  3175.   The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA")

9  prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or

10  commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of

11  action," which means "an act or practice which, to a consumer's detriment, takes advantage of the

12  lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."

13  Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

14  3176.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and

15  Marchionne, through their agents, employees, and/or subsidiaries, violated the Texas DTPA.

16  3177.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

17  misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

18  EcoDiesel badge—a material fact that was false because the Defendants developed and installed

19  emission cheating components in the Subject Vehicles that caused them to pollute excessively in

20  real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

21  pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

22  the Defendants concealed that the fuel efficiency and performance could be achieved only through

23  emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Tex. Bus. & Com. Code § 17.46(a):

    A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

    B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

    D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

3178.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

3179.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3180.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Texas DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3181.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3182.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3183.   Pursuant to Tex. Bus. & Com. Code §§ 17.50 and 17.50(b)(1), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Texas DTPA.

3184.   Per the State Pre-suit requirements notifications have been prepared to FCA US LLC complying with Tex. Bus. & Com. Code § 17.505(a). All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Subject Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Plaintiffs are entitled.

## VIOLATION OF UTAH CONSUMER SALES PRACTICES ACT
### (Utah Code Ann. § 13-11-1, *et seq.*)

3185.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3186.   Plaintiffs, Robert J. Phillips, Marie & Verl Robbins, Teaguer Terrell, Nick Butters,

Howard James Garel, Robert Morris, Gary Riddle, Mack William and Debra Ann Nowlin, Cesar H Nunez, Bill Sorensen, Sherry Greathouse, Larry Rasband, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against Fiat and FCA.

3187.   FCA and FIAT are "supplier[s]" within the meaning of Utah Code § 13-11-3(6).

3188.   Plaintiff are "persons" under Utah Code § 13-11-3(5).

3189.   The sales and leases of the Subject Vehicles to the Plaintiffs were "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

3190.   The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

3191.   In connection with a consumer transaction, Fiat and FCA, through their agents, employees, and/or subsidiaries, violated the Utah CSPA.

3192.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, Fiat and FCA engaged in one or more of the following unfair or deceptive acts or practices as defined in Utah Code § 13-11-4:

    A.  Indicating that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    B.  Indicating that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

    C.  Indicating that the Subject Vehicles were supplied in accordance with Defendants' prior representations, although they were not as represented.

3193.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3194.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3195.   Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Utah CSPA.

## VIOLATION OF UTAH TRUTH IN ADVERTISING LAW
### (Utah Code Ann. § 13-11a-1, *et seq.*)

3196.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3197.   Plaintiff, Robert J. Phillips, Marie & Verl Robbins, Teaguer Terrell, Nick Butters, Howard James Garel, Robert Morris, Gary Riddle, Mack William and Debra Ann Nowlin, Cesar H Nunez, Bill Sorensen, Sherry Greathouse, Larry Rasband, (for the purpose of this section,

1   "Plaintiff") brings this action on behalf of themselves against all Defendants.

2   3198.   Plaintiffs, FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and

3   Sergio Marchionne are "person[s]" within the meaning of Utah Code § 13-11a- 1(7).

4   3199.   Utah's Truth In Advertising law makes unlawful any deceptive practice undertaken

5   in the course of a person's business. Utah Code § 13-11a-3.

6   3200.   In the course of their business, FCA, Fiat, VM Italy, VM America, Bosch GmbH,

7   Bosch LLC, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated

8   Utah Truth In Advertising Law.

9   3201.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively

10   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

11   EcoDiesel badge—a material fact that was false because the Defendants developed and installed

12   emission cheating components in the Subject Vehicles that caused them to pollute excessively in

13   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and

14   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

15   the Defendants concealed that the fuel efficiency and performance could be achieved only through

16   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-

17   world conditions; and (3) the Defendants developed and installed emission cheating components

18   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently

19   concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing,

20   and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged

21   in one or more of the following unfair or deceptive acts or practices as defined in Utah Code § 13-

22   11a-3:

23   A.  Causing likelihood of confusion or of misunderstanding as to the approval or
24       certification of the Subject Vehicles;

1748

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised; and/or

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding about the true characteristics of the Subject Vehicles.

3202.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiff, as Defendants intended. Had they known the truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3203.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3204.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3205.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3206.   Defendants' violations present a continuing risk to Plaintiff, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3207.   Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices pursuant to Utah Code Ann. § 13-11a-4, and awarding damages, punitive damages, and any other just and proper relief available under the Utah Truth In Advertising law.

**VIOLATION OF VERMONT CONSUMER PROTECTION ACT**
**(Vt. Stat. Ann. Tit. 9, § 2451 *et seq*.)**

3208.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3209.   Plaintiffs, David Meuier, Brian Carpenter, (for the purpose of this section, "Plaintiff") brings this action on behalf of the Plaintiffs against all Defendants.

3210.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne and Plaintiffs are "persons" within the meaning of Vt. Stat. Tit. 9, § 2451a(a). Plaintiffs are "consumers" within the meaning of Vt. Stat. Tit. 9, § 2451a(a).

3211.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are engaged in "commerce" within the meaning of Vt. Stat. Tit. 9, § 2453(a).

3212.   The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce…." Vt. Stat. Tit. 9, § 2453(a).

3213.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Vermont CPA.

3214.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the

EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of Vt. Stat. Tit. 9, § 2453(a):

    A.  Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

    B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

    C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

    D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

    E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

    3215.  Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

emission control system were material to the Plaintiffs, as Defendants intended. Had they known the truth, the Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3216.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3217.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and deceptive practices under the Vermont CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from the Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3218.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3219.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3220.   Pursuant to Vt. Stat. Tit. 9, § 2461(b), the Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, exemplary damages, and any other just and proper relief available under the Vermont CPA.

## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (Va. Code Ann. §§ 59.1-196, *et seq.*)

3221.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3222.   Plaintiffs, Arturo Nieves, Carl Davis, Samantha Mountford & Darrin Illges, David Mitchell, James Emerson, Jr., Alan Stcyr, Steven Seaberg, Michael Sherfey, Bruce & Vickie Sulc, Kevin Keefer, David Irwin Antokal, Jeffrey Cook, James Gisonna, Derek Iler, Charles W. Menninger III, Michael Colligon, Gerlad Huiras, Jack Zhe, Roy LeNeave, Brandis Hanson, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3223.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of Va. Code § 59.1-198.

3224.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are "supplier[s]" within the meaning of Va. Code § 59.1-198.

3225.   The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

3226.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Virginia CPA.

3227.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Va. Code § 59.1-200(A):

> A.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

> B.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

> C.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

3228.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

3229.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3230.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed

1754

Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3231.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3232.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3233.   Pursuant to Va. Code § 59.1-204(A)–(B), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Virginia CPA.

**VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(Wash. Rev. Code Ann. §§ 19.86.010, et seq.)**

3234.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3235.   Plaintiffs, Dylan Dzuck, Gary & Lauri Rowland, Mike McCloskey, Paul Kearney, Richard A. Gange, Scot Milne, Donald & Linda Lamson, Robert & Reena Carnes, Rick Nash, Sergey Oleynik, Brad & Kelli Erickson, Ralph Coers, Bo-Michael M. Apele, Brad Robertson, Matthew Dean, Jody Killmer, Daniel Martin, Jeffrey Sanders, Patricia Wilbur, Brett Keville Williams, Jeffrey & Keri Bushaw, Everard Lewis II, Rodger Cassat, Robin Laskody, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3236.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, and Plaintiffs are "persons" within the meaning of Wash. Rev. Code §19.86.010(2).

3237.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Marchionne are engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(1).

3238.   The Washington Consumer Protection Act ("Washington CPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.

3239.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Washington CPA.

3240.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.020:

A.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Subject Vehicles;

B.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.   Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.   Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3241.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3242.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3243.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were

1757

1    contradicted by withheld facts.

2         3244.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

3    result of Defendants' concealment, misrepresentations, and/or failure to disclose material

4    information.

5         3245.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the

6    general public. Defendants' unlawful acts and practices complained of herein affect the public

7    interest.

8         3246.   Pursuant to Wash. Rev. Code § 19.86.090, Plaintiffs seek an order enjoining

9    Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble damages, and

10   any other just and proper relief available under the Washington CPA.

11           **VIOLATIONS OF THE CONSUMER CREDIT AND PROTECTION ACT**
12                   (W. Va. Code § 46A-1-101, *et seq.*)

13        3247.   Plaintiffs incorporate by reference each preceding paragraph as though fully set

14   forth herein.

15        3248.   Plaintiffs, Jeffrey Cook, Gregory Burnette, D.O., Thomas Taylor, Dustin Louden,

16   Jerry Barnett, Brianna Clay, Roger Workman, Sage Seifert, Brandon Saddler, Mike Rumney, Jody

17   L. & Cindy L. Danielson, Emily Blankenship, Jackie Lynn Clark, Jr., James Slone, Dustin Louden,

18   Gregory Burnette D.O., Justin Goldsmith, Jeri Parson (d/b/a Parma Properties), Pat Combs, Joseph

19   Donchatz, Margie & Joshua A. Toler, Thomas Synder, (for the purpose of this section, "Plaintiffs")

20   bring this action on behalf of the Plaintiffs against all Defendants.

21        3249.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne,

22   and Plaintiffs are "persons" within the meaning of W. Va. Code § 46A-1-102(31). The Plaintiffs

23   are "consumers" within the meaning of W. Va. Code §§ 46A-6-102(2) and 46A-1-102(12).

24        3250.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio

1758

1    Marchionne are engaged in "trade" or "commerce" within the meaning of W. Va. Code § 46A-6-
2    102(6).

3        3251.   The West Virginia Consumer Credit and Protection Act ("West Virginia CCPA")
4    makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the
5    conduct of any trade or commerce." W. Va. Code § 46A-6-104.

6        3252.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and
7    Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the West
8    Virginia CCPA.

9        3253.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively
10   misrepresented the environmental friendliness and emissions of the Subject Vehicles through the
11   EcoDiesel badge—a material fact that was false because the Defendants developed and installed
12   emission cheating components in the Subject Vehicles that caused them to pollute excessively in
13   real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and
14   pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and
15   the Defendants concealed that the fuel efficiency and performance could be achieved only through
16   emission control devices in the Subject Vehicles that caused them to pollute excessively in real-
17   world conditions; and (3) the Defendants developed and installed emission cheating components
18   that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently
19   concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing,
20   and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged
21   in one or more of the following unfair or deceptive acts or practices as defined in W. Va. Code §
22   46A-6-102(7):

23       A.  Causing likelihood of confusion or of misunderstanding as to the approval or
24           certification of the Subject Vehicles;

1759

B.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

C.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not;

D.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised;

E.  Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

F.  Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Subject Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3254.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to the Plaintiffs, as Defendants intended. Had they known the truth, the Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell— would have paid significantly less for them.

3255.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3256.   Defendants had an ongoing duty to the Plaintiffs to refrain from unfair and deceptive practices under the West Virginia CCPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from the Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

1760

3257.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3258.   Defendants' violations present a continuing risk to the Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3259.   Pursuant to W. Va. Code § 46A-6-106(a), the Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the West Virginia CCPA.

3260.   On November 28, 2017, a notice letter was sent to FCA US LLC complying with W. Va. Code § 46A-6-106(c). A second notice letter was sent to FCA US LLC and Fiat Chrysler complying with W. Va. Code § 46A-6-106(c) on January 17, 2017. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Subject Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which the West Virginia State Plaintiffs are entitled.

**VIOLATIONS OF THE WISCONSIN**
**DECEPTIVE TRADE PRACTICES ACT**
**(Wis. Stat. § 100.18)**

3261.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3262.   Plaintiffs, Michael Barton Batman, Dan Healy, James Bell, Jared Korn, Jeff Weier, Brian Lewandowski, Greg Griebel, Robert & Carol J. Anderson, Jared Nagel, Al Schellinger, Dion

Kampa, Steve G. Parnitzke, Glenn Stahl, Jamie A. Walker, Cale & Jami Duerstein, Christopher Rivera, Jeffrey Rittenhouse, Brian Steadman, Timothy Bernard Graham, Mario Toliver, Stephen R. Schmidt, Todd Vanderheyden, Michael W Stinson, Mitchell R Wellnitz, Edna Jordan, Thomas Vines, Jason Philaja, Larry & Dianne Joachim, Michael Wahl, Dave Mikkelson, Kenton & Angela Powell, Derick Owens, Willie Sekel, Lois Clark, Travis & Sara Rose, Kegan Ashbrook, David & Jamie Wright, Paul & Angela Miller, (for the purpose of this section, "Plaintiffs") bring this action on behalf of themselves against all Defendants.

3263.   Plaintiffs are members of "the public" and Plaintiffs are "persons" within the meaning of Wis. Stat. § 100.18(1).

3264.   FCA, VM Italy, VM America, Bosch GmbH, Bosch LLC, and Sergio Marchionne are a "person, firm, corporation or association" within the meaning of Wis. Stat. § 100.18(1).

3265.   The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") makes unlawful any "representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

3266.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Sergio Marchionne, through their agents, employees, and/or subsidiaries, violated the Wisconsin DTPA.

3267.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and

the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Wis. Stat. § 100.18(1):

A.  Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.  Representing that the Subject Vehicles are of a particular standard, quality and grade when they are not; and/or

C.  Advertising the Subject Vehicles with the intent not to sell or lease them as advertised.

3268.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel® emission control system were material to Plaintiffs, as Defendants intended. Had they known the truth, Plaintiffs would not have purchased or leased the Subject Vehicles, or—if the Subject Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—would have paid significantly less for them.

3269.   Defendants had an ongoing duty to Plaintiffs to refrain from unfair and deceptive practices under the Wisconsin DTPA in the course of their business. Specifically, Defendants owed Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiffs, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3270.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3271.   Plaintiffs had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose, because Defendants' emission control software was extremely sophisticated technology. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3272.   Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

3273.   Pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Wisconsin DTPA.

### VIOLATION OF THE WYOMING CONSUMER PROTECTION ACT
### (Wyo. Stat. §§ 40-12-101, *et seq.*)

3274.   Plaintiffs incorporate by reference each preceding paragraph as though fully set forth herein.

3275.   Plaintiffs, Jason Royer, Beverley Gayle VanArkel, James B. Valliere, Anthony Knezovich, Rick Stone, Calvin C. Taylor, Wayne & Becky Bennett, Cheryl and Lee Philley, Richard & Cindy Simcox, Derek & Frances Minchey, Daniel Lopez, (for the purpose of this section, "Plaintiff") brings this action on behalf of themselves against all Defendants.

3276.   FCA, Fiat, VM Italy, VM America, Bosch GmbH, Bosch LLC, Sergio Marchionne, Plaintiff, members and Plaintiffs are "persons" within the meaning of Wyo. Stat. § 40-12-102(a)(i).

3277.   The Subject Vehicles are "merchandise" pursuant to Wyo. Stat. § 40-12-102(a)(vi).

3278.   Each sale or lease of a Subject Vehicle to a Plaintiff was a "consumer transaction" as defined by Wyo. Stat. § 40-12-102(a)(ii). These consumer transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. § 40-12-105(a).

3279.   The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits deceptive trade practices. Wyo. Stat. § 40-12-105(a).

3280.   In the course of their business, Defendants Fiat Chrysler, VM Motori, Bosch, and Marchionne, through their agents, employees, and/or subsidiaries, violated the Wyoming CPA.

3281.   As detailed in the common law fraud allegations: (1) Fiat Chrysler affirmatively misrepresented the environmental friendliness and emissions of the Subject Vehicles through the EcoDiesel badge—a material fact that was false because the Defendants developed and installed emission cheating components in the Subject Vehicles that caused them to pollute excessively in real-world conditions; (2) Fiat Chrysler touted, through the EcoDiesel badge and uniform and pervasive consumer communications, the Subject Vehicles' fuel efficiency and performance, and the Defendants concealed that the fuel efficiency and performance could be achieved only through emission control devices in the Subject Vehicles that caused them to pollute excessively in real-world conditions; and (3) the Defendants developed and installed emission cheating components that caused the Subject Vehicles to pollute excessively in real-world conditions, and fraudulently concealed that fact from regulators and Plaintiffs alike. *See, e.g.*, ¶¶ 149-216; 337-357. In so doing, and by marketing, offering for sale, and selling the defective Subject Vehicles, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Wyo. Stat. §§ 40-12-105(a):

A.   Representing that the Subject Vehicles have approval, characteristics, uses, or benefits that they do not have;

B.   Representing that the Subject Vehicles are of a particular standard, quality and grade

1    when they are not;

2    C.  Advertising the Subject Vehicles with the intent not to sell or lease them as
3    advertised; and/or

4    D.  Engaging in other conduct which created a likelihood of confusion or of
5    misunderstanding.
6

7    3282.   Defendants' scheme and concealment of the true characteristics of the EcoDiesel®

8    emission control system were material to Plaintiff, as Defendants intended. Had they known the

9    truth, Plaintiff would not have purchased or leased the Subject Vehicles, or—if the Subject

10   Vehicles' true nature had been disclosed and mitigated, and the Vehicles rendered legal to sell—

11   would have paid significantly less for them.

12   3283.   Plaintiffs had no way of discerning that Defendants' representations were false and

13   misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose,

14   because Defendants' emission control software was extremely sophisticated technology. Plaintiffs

15   did not, and could not, unravel Defendants' deception on their own.

16   3284.   Defendants had an ongoing duty to Plaintiff to refrain from unfair and deceptive

17   practices under the Wyoming CPA in the course of their business. Specifically, Defendants owed

18   Plaintiffs a duty to disclose all the material facts concerning the EcoDiesel® emission control

19   system because they possessed exclusive knowledge, they intentionally concealed it from Plaintiff,

20   and/or they made misrepresentations that were rendered misleading because they were

21   contradicted by withheld facts.

22   3285.   Plaintiffs suffered ascertainable loss and actual damages as a direct and proximate

23   result of Defendants' concealment, misrepresentations, and/or failure to disclose material

24   information.

25   3286.   Defendants' violations present a continuing risk to Plaintiff, as well as to the

26   general public. Defendants' unlawful acts and practices complained of herein affect the public

1766

1    interest.

2          3287.   Pursuant to Wyo. Stat. §§ 40-12-108(a) and 40-12-108(b), Plaintiff seek an order

3    enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive

4    damages, and any other just and proper relief available under the Wyoming CPA.

5          3288.   Per the State Pre-suit requirements notifications have been prepared to FCA US

6    LLC complying with Wyo. Stat. § 40-12-109. All Defendants were provided notice of the issues

7    raised in this count and this Complaint by the governmental investigations, the numerous

8    complaints filed against them, and the many individual notice letters sent by Plaintiffs within a

9    reasonable amount of time after the allegations of Subject Vehicle defects became public. Because

10   Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiff seek

11   all damages and relief to which Plaintiffs are entitled.

12   **III.    PRAYER FOR RELIEF**

13
14         WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor

15   and against Defendants, as follows:

16         A.  A declaration that any applicable statutes of limitation are tolled due to the fraudulent
17         concealment alleged in this complaint, and that Defendants are estopped from relying on
18         any statutes of limitations in defense;
19
20         B.  An order enjoining Defendants from continuing the unlawful, deceptive, fraudulent,
21         and unfair business practices alleged in this Complaint;
22
23         C.  Injunctive and equitable relief in the form of a comprehensive program to repair,
24         modify, and/or buy back all Subject Vehicles, and to fully reimburse and make whole all
25         Plaintiffs for all costs and economic losses, and degradation of mileage performance,
26         durability, and reliability that the Subject Vehicles could incur by being brought into
27         compliance with federal and state law;
28
29         D.  Environmental reparations, mitigation, and remediation to offset the harm caused by
30         the Subject Vehicles, based on the mileage driven by all Subject Vehicles and/or other
31         appropriate measures of environmental harm;
32

1767

E.  Costs, restitution, compensatory damages for economic loss and out-of-pocket costs, treble damages under Civil RICO, multiple damages under applicable states' laws, punitive and exemplary damages under applicable law;

F.  As a result of Defendants' conduct, all Plaintiffs have suffered actual damages, including direct, consequential and incidental damages.  All Plaintiffs seek to recover any diminishment in value (the difference at the time and place of acceptance between the value of their vehicles as and when accepted and the value as warranted or represented) and additional damages under available State law for Defendant's knowing and intentional violations;

G.  As a result of Defendants' conduct, all Plaintiffs have suffered actual damages, including direct, consequential and incidental damages in an amount within the jurisdictional limited of this Court.  Moreover, FCA has been unjustly enriched by profiting from their fraudulent and deceptive practices which led to the purchase.  All Plaintiffs seek to recover the fraudulently obtained profits earned by FCA on each sale, and additional damages available under the State laws for FCA's said knowing and intentional violations;

H.  Rescission of all Subject Vehicle purchases or leases, including reimbursement and/or compensation of the full purchase price of all Subject Vehicles, including taxes, licenses, and other fees;

I.  A determination that Defendants are financially responsible for all Plaintiffs notice and administration of Plaintiffs relief;

J.  Any and all applicable statutory and civil penalties;

K.  An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

L.  An award of costs and attorneys' fees;

M.  Leave to amend this Complaint to conform to the evidence produced in discovery and at trial; and

N.  Such other or further relief as the Court may deem appropriate, just, and equitable.

1           **RELIANCE UPON DEMAND FOR JURY TRIAL**

2          The Plaintiffs herein rely upon their previously filed demand for a trial by jury on all Counts

3 and as to all issues.

4 Dated: January 11, 2019                      Respectfully submitted,

5

6                                        STERN LAW, PLLC

7

8                                        /s/ Kenneth A. Stern

9                                      Kenneth A. Stern

10                                    Attorney for All Plaintiffs

11                                    41850 West 11 Mile Road, Suite 121

12                                    Novi, Michigan 48375

13                                    (248) 347-7300 – Main

14                                    (248) 305-3250 - Fax

15                                    ken@sternlawonline.com

16                                    Michigan Bar No. P30722

17