# Exhibit A

At Part _____ of the Supreme Court of the State of New York, in and for the County of _____ at _____ this ___ day of _____, 2019

**PRESENT:**

HON. _____
                           **Justice**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY

THE PEOPLE OF THE STATE OF NEW YORK and
the NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION, by
LETITIA JAMES, Attorney General of
the State of New York,

                                    Plaintiffs,

        -against-

ROBERT BOSCH GmbH and ROBERT BOSCH LLC,

                                    Defendants.

**CIVIL CONSENT ORDER AND <u>JUDGMENT</u>**

**Index No. 900208-19**

WHEREAS, Plaintiffs the People of the State of New York and the New York State Department of Environmental Conservation (together, the "State" or "New York"), by Letitia James, the Attorney General of the State of New York, filed this action in the Supreme Court of the State of New York, Albany County, alleging that Robert Bosch GmbH and Robert Bosch LLC (together, "Bosch") knowingly developed, programmed, or refined emissions control software that its motor vehicle manufacturer clients, Volkswagen (including Volkswagen AG, Audi AG, Volkswagen Group of America, Inc., Audi of America, LLC, Volkswagen Group of America Chattanooga Operations LLC, Dr. Ing. h.c.F. Porsche AG and Porsche Cars North

1

America, Inc.) and Fiat Chrysler (including FCA US LLC, Fiat Chrysler Automobiles N.V., V.M. Motori S.p.A., and V.M. North America, Inc.), implemented with undisclosed auxiliary emission control devices ("AECDs") and/or unlawful "defeat devices" in certain light-duty diesel passenger vehicles they marketed and sold in the U.S. market;

**WHEREAS**, Plaintiffs alleged that the foregoing conduct violated New York General Business Law ("GBL") §§ 349 and 350, which prohibit deceptive acts and practices and false advertising in the conduct of business; Article 19 of the Environmental Conservation Law ("ECL"), which protects New York's air quality from pollution, and its implementing regulations found at 6 NYCRR Parts 200 *et seq.*; and Executive Law § 63(12);

**WHEREAS**, New York, along with the Attorneys General and (where relevant) the various environmental enforcement agencies of 49 other States, Commonwealths, and territories formed the Multistate Working Group to investigate Bosch in connection with the emissions of diesel passenger vehicles sold and offered for sale in the U.S. by various motor vehicle manufacturers;

**WHEREAS**, Bosch has cooperated in the Multistate Working Group's emissions investigation and, since the initiation of the investigation, has implemented substantially enhanced compliance policies and procedures applicable to its Powertrain Solutions Division, that (i) prohibit the development or calibration, or assistance to an OEM, as that term is defined in Section II herein, in the development or calibration, of defeat device software in violation of applicable U.S. state and federal laws; (ii) specify when and how Bosch will evaluate software to determine whether it may operate as a defeat device in violation of applicable state and U.S. laws; and (iii) require Bosch to maintain a record of such evaluations;

**WHEREAS**, Bosch previously reached a class action settlement agreement between Bosch and private class action plaintiffs in the multidistrict litigation styled as *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:15-md-02672-CRB (N.D. Cal.) (MDL 2672), pursuant to which Bosch made available Two Hundred Seventy-Five Million Five Hundred Thousand dollars ($275,500,000) to compensate class members;

**WHEREAS**, Bosch and New York have agreed to resolve the Environmental and UDAP Claims raised by the Covered Conduct, as defined in Section II below, by entering into this Consent Order and Judgment ("Judgment");

**WHEREAS**, concurrently with this Judgment, Bosch is entering into consent judgments with identical injunctive provisions with each member of the Multistate Working Group in their respective U.S. state courts, and as part of the relief provided in these settlements, Bosch will pay Ninety-Eight Million, Seven Hundred and Thirteen Thousand, Three Hundred and Seventy Eight dollars ($98,713,378) to the Multistate Working Group in aggregate, an amount which, according to Bosch, represents disgorgement of multiples of Bosch's profits and more than all of the revenue Bosch realized on the sale of its electronic control units to Volkswagen and Fiat Chrysler for inclusion in the Diesel Vehicles, as defined in Section II below;

**WHEREAS**, Bosch has agreed to pay an additional Five Million dollars ($5,000,000.00) to the National Association of Attorneys General in connection with its settlements with the Multistate Working Group;

**WHEREAS**, New York and Bosch (collectively, the "Parties"), have entered into the Consent & Stipulation, dated January 9, 2019, in which the Parties consent to the entry of this

3

Judgment consistent with the terms and definitions agreed by the Parties and reiterated herein; and

**WHEREAS**, the Parties have consented to entry of this Judgment for the purpose of avoiding prolonged and costly litigation, and in furtherance of the public interest.

**NOW, THEREFORE, IT IS ADJUDGED, ORDERED AND DECREED:**

### I. JURISDICTION AND VENUE

1. Bosch consents to this Court's continuing subject matter and personal jurisdiction solely for the purposes of entry, enforcement and modification of this Judgment and without waiving its right to contest this Court's jurisdiction in other matters. This Court retains jurisdiction of this action for the purposes of enforcing or modifying the terms of this Judgment or granting such further relief as the Court deems just and proper.

2. Bosch consents to venue in this Court solely for the purposes of entry, enforcement and modification of this Judgment and does not waive its right to contest this Court's venue in other matters.

3. Bosch hereby accepts and expressly waives any defect in connection with service of process in this action and further consents to service upon the below-named counsel via email of all process in this action.

### II. DEFINITIONS

4. Capitalized terms used herein shall have the following meanings (in alphabetical order):

    a. **"Attorney General"** means the New York State Attorney General's Office.

    b. **"Auxiliary emission control device"** or **"AECD"** means "any element of design which senses temperature, vehicle speed, engine

4

        RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01.

c.   **"Bosch"** means Robert Bosch GmbH and Robert Bosch LLC, collectively.

d.   **"Covered Conduct"** means any and all acts or omissions, including all communications, occurring up to and including the Effective Date of this Judgment, relating to Bosch's involvement in providing, modifying, developing, calibrating, and/or engineering the emission control systems for the Diesel Vehicles and for its involvement in certifying, promoting, marketing, and/or advertising the Diesel Vehicles.

e.   **"Defeat Device"** means an AECD that reduces the effectiveness of a vehicle's emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless: "(1) Such conditions are substantially included in the Federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles," 40 C.F.R. § 86.1803-01, or "any part or component intended for use with, or as part of, any motor vehicle or motor

5

vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with the Emission Standards for Moving Sources section of the Clean Air Act, and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use," 42 U.S.C. § 7522(a)(3)(B).

f. **"DEC"** means the New York State Department of Environmental Conservation.

g. **"Diesel Products"** means all Bosch emissions-related software or functions, whether operating individually or in combination with other software or functions, offered, sold or incorporated into diesel-powered motor vehicles that are offered, marketed, sold or leased in the United States or its territories.

h. **"Diesel Vehicles"** means those Volkswagen and Fiat Chrysler diesel vehicles listed in Exhibit A that were equipped with a Bosch-supplied electronic diesel control unit and that were sold or offered for sale in, leased or offered for lease in, or introduced or delivered for introduction into commerce in New York.

i. **"Effective Date"** means the date on which this Judgment has been signed by the Parties and entered as an order by the Court.

j. **"Environmental Claims"** means claims New York or DEC asserted or could assert under the Environmental Laws.

6

k.  **"Environmental Laws"** means any potentially applicable laws and regulations regarding air pollution control from motor vehicles including, without limitation, laws, rules, and/or regulations regarding mobile source emissions, certification, reporting of information, inspection and maintenance of vehicles and/or anti-tampering provisions, together with related common law and equitable claims.

l.  **"Knows"** or **"knowingly"** for purposes of Section IV herein, means possessing actual knowledge of relevant information or acting with deliberate ignorance of relevant information.

m.  **"Multistate Aggregate Payment Amount"** refers to the aggregate Ninety-Eight Million, Seven Hundred and Thirteen Thousand, Three Hundred and Seventy Eight dollar ($98,713,378) amount that Bosch has agreed to pay to members of the Multistate Working Group pursuant to the various consent judgments to be filed in the Multistate Working Group's respective U.S. state courts.

n.  **"Multistate Working Group"** means the Attorneys General together with (where relevant) the agencies responsible for enforcing Environmental Laws and UDAP Laws for Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri,

        Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, Wisconsin, and Wyoming.

o. **"OEM"** means an automotive original equipment manufacturer, including, without limitation, Volkswagen and Fiat Chrysler.

p. **"Powertrain Solutions Division"** means the division at Bosch named the "Powertrain Solutions" division, which includes the former Gasoline Systems and Diesel Systems divisions, including their former electromobility activities, including any successor unit that in the future takes on the responsibilities of this division for electronic engine control units.

q. **"Software"** means all emissions-related software prepared by the Powertrain Solutions Division for incorporation into motor vehicles that are offered, marketed, sold or leased in New York.

r. **"UDAP Claims"** means claims or potential claims New York asserted or could assert under UDAP Laws.

s. **"UDAP Laws"** means all potentially applicable state consumer protection and unfair trade and deceptive acts and practices laws, including, without limitation, GBL Article 22-A (§§ 349, 350) and New York Executive Law § 63(12), as well as related common law and equitable claims.

## III. MONETARY RELIEF

5. Without admitting any of the factual or legal allegations in the Complaint, Bosch has agreed to the following relief.

6. Within fifteen (15) business days of entry of this Judgment, Bosch shall pay by wire transfer payable to the State of New York, $ 5,846,122.00 in penalties in accordance with written wiring instructions to be separately provided by the Attorney General to Bosch's counsel within five (5) business days after entry of this Judgment.

7. Within fifteen (15) business days of the date upon which Bosch has made payment to the members of the Multistate Working Group totaling at least half of the Multistate Aggregate Payment Amount, ($49,356,689), Bosch shall pay Five Million dollars ($5,000,000.00) by wire transfer payable to the National Association of Attorneys General ("NAAG Payment"). The NAAG Payment shall be allocated first, to reimburse the costs and expenses incurred in the Multistate Working Group's investigation; and second, to the National Attorneys General Training & Research Institute, known as NAGTRI, which serves as NAAG's research and training arm, in the amount of $2,000,000. Any remaining balance shall be directed to NAAG to advance its mission of facilitating interaction among attorneys general, providing a forum for exchange on subjects of importance to the attorneys general, supporting investigation and enforcement by attorneys general, and fostering local, U.S. state, and federal engagement, cooperation, and communication on legal and law enforcement issues. Bosch shall provide prompt written notice to New York upon making the NAAG Payment.

## IV. INJUNCTIVE RELIEF

Except as otherwise stated herein, Bosch, its officers, agents, employees, and attorneys, and all persons in active concert or participation with them, are hereby permanently enjoined, as follows:

9

8. In its advertising, marketing or promotion to consumers of its Diesel Products, Bosch shall not make any false, misleading or deceptive statements regarding its Diesel Products.

9. Bosch shall not offer, sell or promote Diesel Products or the vehicles in which they are installed when Bosch knows that those Diesel Products contain Defeat Devices in violation of applicable U.S. state and federal laws.

10. Bosch shall not develop, calibrate, or assist an OEM in developing or calibrating any Software feature or function for a Diesel Product when Bosch knows that (a) the Software feature or function, operating alone or in combination with others, operates as a Defeat Device in violation of applicable U.S. state and federal laws; or (b) the OEM intends to use the Software feature or function as a Defeat Device in violation of applicable U.S. state and federal laws.

11. Bosch shall not represent or assist an OEM in representing to any U.S. regulator that a motor vehicle containing a Diesel Product complies with U.S. emissions laws, when Bosch knows that the Diesel Product contains a Defeat Device in violation of applicable U.S. state and federal laws.

12. Bosch shall not knowingly make a materially false statement or conceal a material fact in any document it provides to an OEM, where Bosch knows that the OEM will include such information in a submission to the U.S. Environmental Protection Agency or the California Air Resources Board for purposes of disclosing an AECD.

13. If, following discussions with an OEM pursuant to the policies and procedures in paragraph 14 of this Judgment (the "Policies and Procedures"), Bosch concludes that such OEM has used a Diesel Product in a motor vehicle as a Defeat Device in violation of

applicable U.S. state and federal laws or that an OEM has intentionally failed to disclose an AECD contained in a Diesel Product in violation of applicable U.S. state and federal laws, Bosch shall notify the U.S. Environmental Protection Agency and the California Air Resources Board.

14. To help ensure compliance with its obligations in paragraphs 8 through 13, Bosch shall maintain written Policies and Procedures that:

    a. prohibit the development, calibration, or provision of assistance to an OEM in the development or calibration of any Software feature or function in a Diesel Product in circumstances when Bosch knows that the Software feature or function, operating alone or in combination with any other Software feature or function in a Diesel Product, operates as a Defeat Device in violation of applicable U.S. state and federal laws;

    b. require Bosch to evaluate customer requests made after the Effective Date for new or revised programming of emission-relevant Software features or functions to determine if the OEM intends to use such features or functions, operating alone or in combination with others, as Defeat Devices in violation of applicable U.S. state and federal laws, including, but not limited to, features or functions that may (1) cause a vehicle's emissions control systems to function differently under normal operating conditions than they perform while the vehicle is undergoing regulatory emissions compliance testing, or (2) optimize emission controls solely under conditions that are present

11

during regulatory emissions compliance testing, and to maintain, for a period of five (5) years, a record of any such determinations;

c. require Bosch to inform an OEM if Bosch has a concern that the OEM has requested that Bosch perform work to program, calibrate, or otherwise implement a Defeat Device in any Software feature or function in violation of applicable U.S. state and federal laws for use in a motor vehicle to be sold, leased, marketed or offered for sale in the United States, and to discuss the concern with appropriate parties from the OEM prior to completing work on any such feature or function;

d. require approval by at least two employees with sufficient experience and seniority, in consultation with a compliance representative and/or legal representative and, if necessary, a technical expert, prior to completing work on any feature or function for which Bosch informs an OEM pursuant to paragraph 14(c); and

e. require Bosch to protect from retaliation any employee who reports on any issue relating to compliance with the enjoined conduct set forth in Section IV herein and the Policies and Procedures set forth in paragraphs 14(a) through (c) herein and otherwise prohibiting retaliation or toleration of retaliation in any form against any employee for making such a report.

15. Bosch shall maintain a stand-alone compliance department that reports to the company's management board, and a compliance organization that, among other things, is

responsible for developing and overseeing training of all relevant Bosch personnel on compliance with corporate Policies and Procedures.

16. Bosch shall require all personnel within its Powertrain Solutions Division who are responsible for Software development to attend training on compliance with the Policies and Procedures.

17. Bosch shall ensure that a compliance office and attorneys are responsible for, among other things, providing its Powertrain Solutions Division with guidance on compliance with the Policies and Procedures and that they are readily available to personnel within the Powertrain Solutions Division.

18. Bosch shall, upon request, within one hundred eighty (180) days of the Effective Date of this Judgment, and, upon request, annually thereafter for a period of five (5) years, certify to New York its compliance with the obligations in paragraphs 14 through 17, as well as any material breaches of this Judgment.

## V.   REPORTING AND NOTICES

19. Unless otherwise specified in this Judgment, notices and submissions required by this Judgment shall be sent by United States mail, certified mail return receipt requested or other nationally recognized courier service that provides for tracking services and identification of the person signing for the document. The documents shall be sent to the following addresses:

**For the State:**

Noah Popp
Assistant Attorney General
Consumer Frauds & Protection Bureau
28 Liberty Street,
New York, NY 10005
Noah.Popp@ag.ny.gov

**For Bosch:**

Sebastian Biedenkopf
General Counsel, Robert Bosch GmbH
Robert-Bosch-Platz 1
70839 Gerlingen-Schillerhöhe
Germany
Sebastian.Biedenkopf@de.bosch.com

## VI.  RELEASE

20. Subject to paragraph 22 below, and in consideration of the monetary and non-monetary relief described in Sections III and IV, and upon Bosch's payment of the amount contemplated in paragraphs 6 and 7, the Attorney General releases Bosch, its affiliates and any of Bosch's or its affiliates' former, present or future owners, shareholders, directors, officers, employees, attorneys, parent companies, subsidiaries, predecessors, successors, dealers, agents, assigns and representatives (collectively, the "Released Parties") from all Environmental Claims and UDAP Claims arising from or related to the Covered Conduct, including, without limitation, penalties, fines or other monetary payments.

21. Subject to paragraph 22 below, and in consideration of the monetary and non-monetary relief described in Sections III and IV, and upon Bosch's payment of the amount contemplated in paragraphs 6 and 7, the DEC releases the Released Parties from all Environmental Claims arising from or related to the Covered Conduct, including, without limitation, penalties, fines or other monetary payments.

22. New York reserves, and this Judgment is without prejudice to, all claims, rights, and remedies against the Released Parties, and Bosch reserves, and this Judgment is without prejudice to, all defenses with respect to all matters not expressly released in paragraph 20 and 21 above, including, without limitation:

    a.    any claims arising under New York tax laws;

      b.      any claims arising under New York antitrust laws;

      c.      any claims arising under New York insurance laws;

      d.      any claims arising under New York securities laws;

      e.      any criminal liability;

      f.      any claims related to any OEM other than Volkswagen or Fiat Chrysler;

      g.      any claims unrelated to the Covered Conduct; and

      h.      any action to enforce this Judgment and subsequent, related orders or judgments.

### VII. MISCELLANEOUS

23. The provisions of this Judgment shall be construed in accordance with the laws of New York.

24. This Judgment is made without trial or adjudication of any issue of fact or law.

25. Nothing in this Judgment shall limit or expand the Attorney General or the DEC's right to obtain information, documents or testimony from Bosch pursuant to any state or federal law, regulation or rule concerning the claims not released by this Judgment, concerning potential claims against any person or entity other than Bosch, or to evaluate Bosch's compliance with the obligations set forth in this Judgment.

26. Nothing in this Judgment constitutes an agreement by the Attorney General or the DEC concerning the characterization of the amounts paid hereunder for purposes of any proceeding under the Internal Revenue Code or any U.S. state tax laws. The Judgment takes no position as to the tax consequences of the Judgment with regard to U.S. federal, state, local and foreign taxes.

27. Nothing in this Judgment constitutes or shall be construed as an agreement or concession that knowledge or any other state of mind is a required element of any claim brought by the Attorney General or the DEC against Bosch or any other person or entity.

28. Nothing in this Judgment releases any private rights of action asserted by entities or persons not releasing claims under this Judgment, nor does this Judgment limit any defense available to Bosch in any such action.

29. This Judgment shall be enforceable by the Attorney General and the DEC, acting together or separately.

30. Any failure by any party to this Judgment to insist upon the strict performance by any other party of any of the provisions of this Judgment shall not be deemed a waiver of any of the provisions of this Judgment.

31. This Judgment, which constitutes a continuing obligation, is binding upon the Attorney General, the DEC, Bosch and any of Bosch's respective successors, assigns or other entities or persons otherwise bound by law.

32. The Parties agree not to challenge the entry of the Judgment and waive all rights of appeal.

33. Consent to this Judgment does not constitute an approval by the Attorney General of Bosch's business acts and practices, and Bosch shall not represent this Judgment as such an approval.

34. Bosch shall not take any action or make any statement denying, directly or indirectly, the propriety of the Judgment by expressing the view that the Judgment or its substance is without factual basis. Nonetheless, Bosch's agreement to entry of this Judgment is not an admission of liability or of any facts alleged in the Judgment or in the Complaint. Bosch

16

is entering into this Judgment solely for the purpose of settlement, and nothing contained herein may be taken as or construed to be an admission, concession, finding, or conclusion of any violation of law, rule, or regulation, or of any other matter of fact or law, or of any liability or wrongdoing, all of which Bosch expressly denies.  Further, nothing in this Judgment affects Bosch's right to take or adopt any legal or factual position or defense in any other litigation or proceeding, or to cite or enforce the terms of the Release in Section VI.

35. Nothing in this Judgment shall create or give rise to a private right of action of any kind or create any right in a non-party to enforce any aspect of this Judgment or claim any legal or equitable injury for a violation of this Judgment.  The exclusive right to enforce any violation or breach of this Judgment shall be with the Parties to this Judgment and the Court.

36. Nothing in this Judgment shall relieve Bosch of its obligation to comply with all U.S. federal, state, and local laws and regulations.

37. Nothing in this Judgment shall be construed to waive any claims of sovereign immunity any party may have in any action or proceeding.

38. If any portion of this Judgment is held illegal, invalid, or unenforceable, the remaining terms of this Judgment shall not be affected and shall remain in full force and effect.

39. Bosch shall not participate, directly or indirectly, in any activity or form a separate entity or corporation for the purpose of engaging in acts or practices in whole or in part in the State of New York that are prohibited by this Judgment or for any other purpose that would otherwise circumvent any term of this Judgment.

40. If New York determines that Bosch made any material misrepresentation or omission relevant to the resolution of this investigation, New York retains the right to seek to either modify or set aside this Judgment.

41. Any filing fees or other court costs incurred in connection with this action are to be paid by Bosch.

**IT IS SO ORDERED. JUDGMENT** is hereby entered in accordance with the foregoing.

**ENTER**

_____
JUSTICE, SUPREME COURT