# Exhibit B

At Part _____ of the Supreme
Court of the State of New
York, in and for the County of
_____ at _____
this   day of _____,
2019

**PRESENT:**

HON. _____
                    **Justice**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ALBANY

----

THE PEOPLE OF THE STATE OF NEW YORK and the
NEW YORK STATE DEPARTMENT OF
ENVIRONMENTAL CONSERVATION, by LETITIA
JAMES, Attorney General of the State of New York,

                              Plaintiffs,

                    v.

FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V.,
V.M. MOTORI S.P.A., and V.M. NORTH AMERICA, INC.,

                              Defendants.

----

**CIVIL CONSENT
ORDER AND
JUDGMENT**

Index No. 900207-19

**WHEREAS**, Plaintiffs the People of the State of New York and the New York State

Department of Environmental Conservation (together, the "State"), by Letitia James, the

Attorney General of the State of New York, filed a Complaint in this action alleging that FCA

US LLC, Fiat Chrysler Automobiles N.V., VM Motori S.p.A., and VM North America, Inc.

(hereinafter collectively, the "Defendants") manufactured, marketed, advertised, and/or engaged

in the wholesale distribution of more than 100,000 model year 2014-2016 Ram 1500 trucks and

Jeep Grand Cherokee sport utility vehicles equipped with 3.0-liter V6 diesel engines (sometimes

1

called "EcoDiesel" engines) (the "Diesel Vehicles," as specifically defined below), including more than 3,000 within New York; and that the Diesel Vehicles contained undisclosed software allegedly intended to circumvent federal or state emission standards and concealed this software from the public and state and federal regulators;

WHEREAS, the State alleged that the foregoing conduct violated Article 19 of the Environmental Conservation Law ("ECL"), which protects New York's air quality from pollution, and its implementing regulations found at 6 NYCRR Parts 200 *et seq*., including the "Emission Standards for Motor Vehicles and Motor Vehicle Engines" set forth in 6 NYCRR Part 218; General Business Law ("GBL") §§ 349 and 350; and Executive Law § 63(12);

WHEREAS, the State, along with the Attorneys General of 51 other States, Commonwealths, and territories, as well as several state environmental enforcement agencies, formed the Multistate Working Group to investigate the Defendants in connection with the emission control systems of the Diesel Vehicles and the offer and sale of those vehicles to consumers;

WHEREAS, the State and the Defendants (collectively, the "Parties") have agreed to resolve the Environmental and UDAP Claims raised by the Covered Conduct by entering into this Consent Order and Judgment (hereinafter, the "Judgment");

WHEREAS, each member of the Multistate Working Group and the Defendants are entering into agreements memorializing or implementing a settlement, and as part of the relief provided in these settlements, the Defendants will pay Seventy-Two Million, Five Hundred Thousand Dollars ($72,500,000) to the Multistate Working Group in aggregate;

WHEREAS, the Defendants have agreed to fund a restitution program for current owners and lessees and certain former owners and lessees of the Diesel Vehicles in New York

and throughout the United States as more fully set forth in the MDL Consumer and Reseller Dealership Class Action Settlement Agreement and Release (*In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices and Products Liability Litigation*) Case No. 3:17-md-02777-EMD (N.D. Cal.) (hereinafter "MDL Consumer Settlement Agreement"), pursuant to which eligible class member owners will receive a weighted average of approximately $2,908 per vehicle and eligible class member lessees and former owners will receive $990 per vehicle;

WHEREAS, as more fully set forth in the Department of Justice and California Consent Decree (*In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices and Products Liability Litigation*) Case No. 3:17-md-02777-EMD (N.D. Cal.) (hereinafter "DOJ-CA Consent Decree," as specifically defined below), the Defendants have agreed to offer to owners and lessees of Diesel Vehicles an Approved Emissions Modification that is expected to ensure the vehicles comply with Clean Air Act and California Health and Safety Code emissions requirements through the full useful life of the vehicles and to offer, through May 1, 2029, a comprehensive emissions warranty for Diesel Vehicles that receive the Approved Emissions Modification;

WHEREAS, for the reasons set forth in the contemporaneously filed Consent & Stipulation and for the purpose of avoiding prolonged and costly litigation, and in furtherance of the public interest, the State and the Defendants consent to the entry of this Judgment;

NOW, THEREFORE, IT IS ADJUDGED, ORDERED AND DECREED:

## I. JURISDICTION AND VENUE

1. Defendants consent to this Court's continuing subject matter and personal jurisdiction solely for the purposes of entry, enforcement, and modification of this Judgment and without waiving their right to contest this Court's jurisdiction in other matters. This Court retains jurisdiction of this action for the purposes of enforcing or

modifying the terms of this Judgment, or granting such further relief as the Court deems just and proper.

2.    Defendants consent to venue in this Court solely for the purposes of entry, enforcement, and modification of this Judgment and do not waive their right to contest this Court's venue in other matters.

3.    Defendants hereby accept and expressly waive any defect in connection with service of process in this action issued to each Defendant by the Attorney General and further consent to service upon the below-named counsel via e-mail of all process in this action.

## II. DEFINITIONS

4.    As used herein, the below terms shall have the following meanings (in alphabetical order):

a.    "**Attorney General**" means the New York State Attorney General's Office.

b.    "**Auxiliary Emission Control Device**" or "**AECD**" means "any element of design which senses temperature, vehicle speed, engine RPM, transmission gear, manifold vacuum, or any other parameter for the purpose of activating, modulating, delaying, or deactivating the operation of any part of the emission control system." 40 C.F.R. § 86.1803-01.

c.    "**California Consent Decree**" means the Second California Partial Consent Decree, filed on January 10, 2019 in the U.S. District Court for the Northern District of California (the "Federal Court"), as agreed by (1) the Attorney General of California and the California Air Resources Board on behalf of the People of California; and (2) Defendants, resolving

4

certain aspects of the disputes between those parties on the terms described therein.  If the Federal Court approves the consent decree, "California Consent Decree" shall mean the decree as and in the form that it is ultimately approved and entered by the Federal Court.

d.      **"California UDAP Claims"** means claims or potential claims California asserted or could assert under its consumer protection and unfair trade and deceptive acts and practices laws, as well as common law and equitable claims, arising from or related to the Covered Conduct, including in its sovereign enforcement capacity or as *parens patriae* on behalf of its citizens.

e.      **"California UDAP Payment"** means the amount paid to California and its agencies to resolve the California UDAP Claims and does not include any other amounts paid by Defendants to California, including, without limitation, restitution, payments to resolve environmental claims, attorney fees or costs.

f.      **"CARB"** means the California Air Resources Board.

g.      **"Covered Conduct"** means any and all acts or omissions, including all communications, occurring up to and including the Effective Date of this Judgment, relating to: (i) the design, installation, presence, or failure to disclose any Defeat Device or Undisclosed AECD in any Diesel Vehicle; (ii) the marketing or advertisement of any Diesel Vehicle as green, clean, environmentally friendly (or similar such terms), and/or compliant with state or federal emissions standards, including the marketing or

5

advertisement of any Diesel Vehicle without disclosing the design,

installation or presence of a Defeat Device or Undisclosed AECD; (iii)

any emissions-related conduct in connection with the distribution to,

offering for sale, delivery for sale, sale, or lease of any Diesel Vehicle in

any State; (iv) statements or omissions concerning the Diesel Vehicles'

emissions and/or the Diesel Vehicles' compliance with applicable

emissions standards, including, but not limited to, certifications of

compliance or other similar documents or submissions; (v) conduct

alleged, or any related conduct that could have been alleged, in any

Complaint, Notice of Violation, Executive Order or Notice of Penalty filed

or issued, or that could have been filed or issued, by any state or state

agency, that the Diesel Vehicles contain prohibited Undisclosed AECDs

or Defeat Devices that cause the Diesel Vehicles to emit oxides of

nitrogen ("$NO_x$") in excess of applicable legal standards, or that as a result

of or in connection to any such conduct, Defendants falsely reported the

Diesel Vehicles' emissions of $NO_x$, Defendants tampered with any

emissions control device or element of design related to emissions controls

installed in the Diesel Vehicles, Defendants affixed labels related to

emissions to the Diesel Vehicles that were false, invalid or misleading

and/or Defendants breached their emissions warranties relating to the

Diesel Vehicles; and (vi) the effect of the conduct described in subparts (i)

and (ii) to give rise to violations of laws or regulations governing air

pollution from motor vehicles, including, without limitation, emission

standards, emission control system standards, on-board diagnostics standards, and certification and disclosure requirements.

h.   **"Defeat Device"** means an AECD "that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, unless: (1) Such conditions are substantially included in the federal emission test procedure; (2) The need for the AECD is justified in terms of protecting the vehicle against damage or accident; (3) The AECD does not go beyond the requirements of engine starting; or (4) The AECD applies only for emergency vehicles," 40 C.F.R. § 86.1803-01, or "any part or component intended for use with, or as part of, any motor vehicle or motor vehicle engine, where a principal effect of the part or component is to bypass, defeat, or render inoperative any device or element of design installed on or in a motor vehicle or motor vehicle engine in compliance with [the Emission Standards for Moving Sources section of the Clean Air Act], and where the person knows or should know that such part or component is being offered for sale or installed for such use or put to such use." 42 U.S.C. § 7522(a)(3)(B).

i.   **"DEC"** means the New York State Department of Environmental Conservation.

j.   **"Diesel Vehicle"** means each and every light duty diesel vehicle equipped with a 3.0-liter "EcoDiesel" engine that Defendants or their respective affiliates sold or offered for sale in, leased or offered for lease in, or

introduced or delivered for introduction into commerce in the United
States or its states or territories, or imported into the United States or its
states or territories, and that is or was purported to have been covered by
the following U.S. Environmental Protection Agency ("EPA") Test
Groups:

| Model Year | EPA Test Groups | Vehicle Makes and Models |
|---|---|---|
| 2014 | ECRXT03.05PV | Ram 1500 |
| 2014 | ECRXT03.05PV | Jeep Grand Cherokee |
| 2015 | FCRXT03.05PV | Ram 1500 |
| 2015 | FCRXT03.05PV | Jeep Grand Cherokee |
| 2016 | GCRXT03.05PV | Ram 1500 |
| 2016 | GCRXT03.05PV | Jeep Grand Cherokee |

k.     **"DOJ"** means the United States Department of Justice.

l.     **"DOJ-CA Consent Decree"** means the consent decree, filed on January
10, 2019 in the Federal Court, as agreed by (1) the United States on behalf
of the Environmental Protection Agency, and California; and
(2) Defendants, resolving certain aspects of the disputes between those
parties on the terms described therein.  If the Federal Court approves the
consent decree, "DOJ-CA Consent Decree" shall mean the decree as and
in the form that it is ultimately approved and entered by the Federal Court.

m.     **"Effective Date"** means the date on which this Judgment has been signed
by the Parties and entered as an order by the Court.

n.     **"Environmental Claims"** means claims or potential claims, including for
emissions mitigation or $NO_x$ mitigation, or for any emissions-related
payments, that were brought or could be brought under Environmental

Laws by the State, including in its sovereign enforcement capacity or as *parens patriae* on behalf of its citizens, or by the DEC.

o.   **"Environmental Laws"** means any potentially applicable federal, state and/or local laws, rules, regulations and/or common law or equitable principles or doctrines under which the Environmental Claims may arise including, without limitation, ECL Article 19 and 6 N.Y.C.R.R. Parts 200, *et seq.* and laws, rules and/or regulations regarding air pollution control from motor vehicles, mobile source emissions, certification, reporting of information, inspection and maintenance of vehicles and/or anti-tampering provisions, together with related common law and equitable claims.

p.   **"EPA"** means the United States Environmental Protection Agency.

q.   **"MDL"** means the multidistrict litigation styled as *In re: Chrysler-Dodge-Jeep "Ecodiesel" Marketing, Sales Practices, and Products Liability Litigation*, No. 3:17-md-02777-EMD (N.D. Cal.) (17-MDL-2777).

r.   **"Multistate Working Group"** means the Attorneys General of Alabama, Alaska, Arizona, Arkansas, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Guam, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah,

Vermont, Virginia, Washington, West Virginia, Wisconsin, and
Wyoming.

s.     **"UDAP Claims"** means claims or potential claims the State asserted or
could assert in its sovereign enforcement capacity or as *parens patriae* on
behalf of its citizens under UDAP Laws, as well as common law and
equitable claims, including claims or potential claims that could be
brought for injunctive relief and/or restitution or other monetary payments
to consumers under UDAP Laws.

t.     **"UDAP Laws"** means all potentially applicable consumer protection and
unfair trade and deceptive acts and practices laws, rules and/or regulations,
including, without limitation, the General Business Law (GBL) Article
22A (§§ 349, 350) and New York Executive Law § 63(12), as well as
under federal, state and/or local laws, rules, regulations and/or common
law or equitable principles or doctrines.

u.      **"Undisclosed AECD"** means an AECD that was not disclosed to federal
or state regulators in the course of applying to such regulators for
certification of emission compliance or Executive Order.

### III. EFFECT OF JUDGMENT

5.     This Judgment fully and finally resolves and disposes of the
Environmental Claims and UDAP Claims arising from or related to the Covered
Conduct that were alleged in the Complaint in this matter or that could be brought by
the State in its sovereign enforcement capacity or as *parens patriae* on behalf of the
citizens of the State or by the DEC.

10

6.    The Judgment will, upon its Effective Date, constitute a fully binding and enforceable agreement between the Parties, and the Parties consent to its entry as a final judgment by the Court.

## IV. RELIEF

7.    Without admitting any of the factual or legal allegations in the Complaint, the Defendants have agreed to the following relief.

**Monetary Relief**

8.    Within ten (10) business days of the State providing written notice to Defendants containing (i) a signed certification on State or DEC letterhead that the Judgment is final under the laws of the State of New York such that no further judicial or administrative action is required in order for the Judgment to be final; (ii) a copy of the Judgment entered by the Court and any other documents evidencing the finality of the Parties' settlement; and (iii) signed wire instructions on State or DEC letterhead in a mutually agreed format (collectively, the "Settlement Documents"), Defendants shall pay by wire transfer payable to the State of New York, $4,855,893.00 ("the New York Settlement Amount"), in penalties to the State in accordance with the wire instructions in the Settlement Documents.

9.    The State represents that, of the New York Settlement Amount, $1,916,875.00, or $625 per Diesel Vehicle that the parties stipulate for purposes of this judgment were sold or leased in New York (3,067 vehicles), is on account of New York's release of its UDAP Claims.

10.    If Defendants pay a California UDAP Payment that is greater than $625 per Diesel Vehicle sold or leased in California (as agreed with California in the

11

California Consent Decree), then Defendants shall within thirty (30) business days pay by wire transfer payable to the State of New York an additional amount so as to make the amount paid to New York on account of New York's release of its UDAP Claims equal, on a per Diesel Vehicle basis, to the California UDAP Payment. For the avoidance of doubt, the payment described in this paragraph, if made at all, need not be made until thirty (30) business days after the later of the following dates: (i) the date that New York provides the Settlement Documents; or (ii) the date Defendants make the California UDAP Payment.

**Injunctive Relief**

11. Except as otherwise stated herein, Defendants and their officers and employees are hereby enjoined, as follows:

a.   The Defendants and their affiliates shall not engage in future unfair or deceptive acts or practices under New York law in connection with their dealings with consumers and state regulators, directly or indirectly, by:

i.   Advertising, marketing, offering for sale, selling, offering for lease, leasing, or distributing in New York any vehicle that contains a Defeat Device;

ii.   Misrepresenting to consumers or knowingly assisting others in misrepresenting to consumers that a vehicle complies with United States, State or local emissions standards;

iii.   Making a materially misleading statement or omission to consumers regarding the compliance of a vehicle with any United States or State emissions standard applicable to that vehicle;

    iv.    Misrepresenting to consumers that a vehicle has low $NO_x$ emissions; and

    v.    Misrepresenting to consumers that a vehicle has low emissions, lower emissions than other vehicles, or a specific level(s) of emissions.

12.  Defendants shall not engage in any act or practice prohibited by the DOJ-CA Consent Decree attached hereto as Exhibit A, to the extent enjoined by Section VI (Injunctive Measures) therein.  The making of any determination of whether Defendants have materially violated the terms of the DOJ-CA Consent Decree shall continue to be governed exclusively by the processes, procedures, and mechanisms described in the DOJ-CA Consent Decree.

**Additional Undertakings**

13.  The Defendants shall comply with the Approved Emissions Modification Program (Sec. 4 and related provisions of Secs. 5 & 6), including the Approved Emissions Modification, the Owner Payment, the Former Owner Payment, the Lessee Payment, and the Warranty Obligations provisions, of the MDL Consumer Settlement Agreement, attached hereto as Exhibit B, which provisions will be deemed part of this Judgment.

14.  The Defendants shall implement the Emissions Modification Recall Program (Sec. VI(B)), United States Mitigation Program (Sec. VI(D) ¶¶ 66-68) and California Mitigation Program (Sec. VI(D) ¶ 69) provisions of the DOJ-CA Consent Decree, attached hereto as Exhibit A, which provisions will be deemed part of this Judgment.

## V.  REPORTING AND NOTICES

15.  The Defendants shall produce to the State: (i) any status reports concerning the Recall Program provided to the Department of Justice pursuant to the

DOJ-CA Consent Decree; (ii) annual reports generated by the corporate compliance auditor required under the DOJ-CA Consent Decree; and (iii) as to consumers with an address in the State, any consumer name and address information to be provided by the Defendants to the Notice Administrator under the MDL Consumer Settlement Agreement.  The Defendants shall provide this information to the State contemporaneous with its provision to the DOJ, EPA, CARB, the California Attorney General (the "CAAG"), and the MDL Consumer Settlement Agreement Notice Administrator, as applicable.  All such reports and information shall be submitted to the State's representative listed in paragraph 17 (Notice) or such other person as the State may direct.  The State shall take all reasonable efforts to protect consumer data provided for any purpose related to this Judgment or the other settlement agreements and orders referenced herein.

16.  Defendants shall promptly respond to the State's reasonable inquiries about the status of its consumers' claims submitted under the MDL Consumer Settlement Agreement.  Defendants shall provide the State with contact information for a representative of Defendants for purposes of such inquiries.

17.  Any notices required to be sent to the State or the Defendants under this Judgment shall be sent by United States mail, certified mail return receipt requested, or other nationally recognized courier service that provides for tracking services and identification of the person signing for the document.  Communications enclosing or regarding the Settlement Documents, as set forth in paragraph 8, or providing reporting under paragraph 15, may be sent by e-mail to the addresses provided below. The notices or documents shall be sent to the following addresses:

14

**For the State:**

Noah Popp (Noah.Popp@ag.ny.gov)
Assistant Attorney General
Consumer Frauds & Protection Bureau
28 Liberty Street,
New York, New York 10005

**For the Defendants:**

Christopher J. Pardi (christopher.pardi@fcagroup.com)
FCA US LLC
1000 Chrysler Drive
Auburn Hills, Michigan 48326

David M.J. Rein (reind@sullcrom.com)
William B. Monahan (monahanw@sullcrom.com)
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004

## VI. RELEASE

18.   Subject to paragraph 19 below, in consideration of the monetary and non-monetary relief described in Section IV, and the undertakings to which the Defendants have agreed in the MDL Consumer Settlement Agreement and the DOJ-CA Consent Decree, and upon the Defendants' payment of the amount contemplated in paragraph 8, and upon the Federal Court's approval of the MDL Consumer Settlement Agreement and DOJ-CA Consent Decree:

i.      Except as provided in paragraph 19 below, the State releases the Defendants, their affiliates and any of the Defendants' or their affiliates' former, present or future owners, shareholders, directors, officers, employees, attorneys, parent companies, subsidiaries, predecessors, successors, dealers, agents, assigns and representatives (collectively, the "Released Parties"), from all UDAP Claims arising from or related to the

15

Covered Conduct, including without limitation (i) restitution or other monetary payments or injunctive relief to consumers; and (ii) penalties, fines, restitution or other monetary payments or injunctive relief to the State.

ii. Except as provided in paragraph 19 below, the State releases the Released Parties from all Environmental Claims arising from or related to the Covered Conduct, including, without limitation, injunctive relief, penalties, fines, restitution or other monetary payments.

19. The State reserves, and this Judgment is without prejudice to, all claims, rights, and remedies against Defendants, and Defendants reserve, and this Judgment is without prejudice to, all defenses, with respect to all matters not expressly released in paragraph 18, including, without limitation:

a. any claims arising under state tax laws;

b. any claims for the violation of securities laws;

c. any criminal liability;

d. any civil claims unrelated to the Covered Conduct; and

e. any action to enforce this Judgment and subsequent, related orders or judgments.

20. The claims set forth in the Complaint are resolved in their entirety.

## VII. MISCELLANEOUS

21. The provisions of this Judgment shall be construed in accordance with the laws of New York.

16

22.  This Judgment is made without (i) trial or adjudication of any issue of fact or law; (ii) admission of any issue of fact or law; or (iii) finding of wrongdoing or liability of any kind.

23.  Nothing in this Judgment shall limit or expand the Attorney General's or the DEC's right to obtain information, documents, or testimony from the Defendants pursuant to any state or federal law, regulation, or rule concerning the claims reserved in paragraph 19, or to evaluate the Defendants' compliance with the obligations set forth in this Judgment.

24.  Defendants agree not to deduct the New York Settlement Amount in calculating their state or local income taxes in New York.  Nothing in this Judgment releases any private rights of action asserted by entities or persons not releasing claims under this Judgment, nor does this Judgment limit any defense available to the Defendants in any such action.

25.  This Judgment shall be enforceable by the Attorney General and the DEC, acting together or separately.

26.  The Parties agree that this Judgment does not enforce the laws of other countries, including the emissions laws or regulations of any jurisdiction outside the United States.  Nothing in this Judgment is intended to apply to, or affect, Defendants' obligations under the laws or regulations of any jurisdiction outside the United States. At the same time, the laws and regulations of other countries shall not affect Defendants' obligations under this Judgment.

27.  Nothing in this Judgment constitutes an agreement by the State concerning the characterization of the amounts paid hereunder for purposes of any proceeding

under the Internal Revenue Code or any state tax laws.  The Judgment takes no position with regard to the tax consequences of the Judgment with regard to federal, state, local and foreign taxes.

28.  Nothing in this Judgment shall be construed to waive any claims of sovereign immunity any party may have in any action or proceeding.

29.  Any failure by any party to this Judgment to insist upon the strict performance by any other party of any of the provisions of this Judgment shall not be deemed a waiver of any of the provisions of this Judgment.

30.  Nothing in this Judgment shall constitute an admission or finding of fact or an admission or finding that Defendants have engaged in or are engaged in a violation of law.

31.  This Judgment, which constitutes a continuing obligation, is binding upon the State and Defendants, and any of Defendants' respective successors, assigns, or other entities or persons otherwise bound by law.

32.  Aside from any action stemming from compliance with this Judgment and except in the event of a Court's material modification of this Judgment, the Parties waive all rights of appeal or to re-argue or re-hear any judicial proceedings upon this Judgment, any right they may possess to a jury trial, and any and all challenges in law or equity to the entry of this Judgment.  The Parties will not challenge or appeal (i) the entry of the Judgment, unless the Court materially modifies the terms of the Judgment, or (ii) the Court's jurisdiction to enter and enforce the Judgment.

33.  The terms of this Judgment may be modified only by a subsequent written agreement signed by all Parties.  Where the modification constitutes a material change

to any term of this Judgment, it will be effective only by written approval of all Parties and the approval of the Court.

34.   Consent to this Judgment does not constitute an approval by the Attorney General of the Defendants' business acts and practices, and Defendants shall not represent this Judgment as such an approval.

35.   In entering into this Judgment, Defendants have made no admission of law or fact.  The Defendants shall not take any action or make any statement denying, directly or indirectly, the propriety of this Judgment.  Nothing in this paragraph affects the Defendants' right to take legal or factual positions in defense of litigation or other legal, administrative or regulatory proceedings, or any person's testimonial obligations.

36.   Nothing in this Judgment shall preclude any party from commencing an action to pursue any remedy or sanction that may be available to that party upon its determination that another party has failed to comply with any of the requirements of this Judgment.

37.   Nothing in this Judgment shall create or give rise to a private right of action of any kind or create any right in a non-party to enforce any aspect of this Judgment or claim any legal or equitable injury for a violation of this Judgment.  The exclusive right to enforce any violation or breach of this Judgment shall be with the parties to this Judgment and the Court.

38.   Nothing in this Judgment shall relieve the Defendants of their obligation to comply with all federal, state or local law and regulations.

39.   If any portion of this Judgment is held invalid by operation of law, the remaining terms of this Judgment shall not be affected and shall remain in full force and effect.

40.   This Judgment supersedes all prior communications, discussions or understandings, if any, of the Parties, whether oral or in writing.

41.   Any filing or related court costs imposed shall be paid by the Defendants.

**IT IS SO ORDERED.  JUDGMENT** is hereby entered in accordance with the foregoing.

**ENTER**

_____

JUSTICE, SUPREME COURT