LEIGH P. RENDÉ (PA Bar No. 203452)
JOSEPH W.C. WARREN (DC Bar No. 452913)
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-1461
Email: leigh.rende@usdoj.gov
Email: joseph.warren@usdoj.gov

*Counsel for the United States*

XAVIER BECERRA
Attorney General of California
NICKLAS A. AKERS
Senior Assistant Attorney General
JUDITH A. FIORENTINI (CA Bar No. 201747)
Supervising Deputy Attorney General
JON F. WORM (CA Bar No. 248260)
LAUREL M. CARNES (CA Bar No. 285690)
Deputy Attorneys General
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 738-9325
Email: judith.fiorentini@doj.ca.gov
Email: jon.worm@doj.ca.gov
Email: laurel.carnes@doj.ca.gov

*Counsel for the People of the State of California*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: CHRYSLER-DODGE-JEEP ECODIESEL MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 3:17-md-02777-EMC<br><br>**CONSENT DECREE**<br><br>Hon. Edward M. Chen |

| | |
|---|---|
| UNITED STATES, | |
| Plaintiff, | |
| v. | |
| FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V., V.M. MOTORI S.P.A., and V.M. NORTH AMERICA, INC., | 3:17-cv-3446-EMC |
| Defendants. | |
| PEOPLE OF THE STATE OF CALIFORNIA, | |
| Plaintiff, | |
| v. | |
| FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V., V.M. MOTORI S.P.A., and V.M. NORTH AMERICA, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

BACKGROUND ........................................................................................................1

I.     JURISDICTION AND VENUE ...............................................................3

II.    APPLICABILITY .....................................................................................4

III.   DEFINITIONS ..........................................................................................5

IV.   CIVIL PENALTY ....................................................................................19

V.    APPROVAL OF SUBMISSIONS; U.S./CALIFORNIA DECISION-MAKING ......................20

VI.   INJUNCTIVE MEASURES ....................................................................23

    A.    Modification of Subject Vehicles and Post-Entry Compliance Testing .................................23

    B.    Emissions Modification Recall Program ........................................................58

    C.    Corporate Compliance Requirements ...........................................................79

    D.    Mitigation Program ...............................................................................98

VII.   REPORTING REQUIREMENTS.............................................................102

VIII.  STIPULATED PENALTIES .................................................................105

IX.   FORCE MAJEURE ...............................................................................122

X.    DISPUTE RESOLUTION ......................................................................124

XI.   INFORMATION COLLECTION AND RETENTION AND CBI ........................127

XII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS .................................130

XIII.  COSTS....................................................................................................135

XIV.  NOTICES ..............................................................................................135

XV.   EFFECTIVE DATE ...............................................................................137

XVI.  RETENTION OF JURISDICTION .........................................................137

XVII.  MODIFICATION......................................................................................137

XVIII. TERMINATION.....................................................................................138

XIX.  PUBLIC PARTICIPATION....................................................................139

XX.   SIGNATORIES/SERVICE .....................................................................139

XXI.  INTEGRATION .....................................................................................139

XXII.  26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION....................................140

XXIII. FINAL JUDGMENT.............................................................................140

XXIV. APPENDICES AND DOCUMENTS INCORPORATED BY REFERENCE.........................141

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency, filed a complaint in this action on May 23, 2017, against FCA US LLC ("FCA"), Fiat Chrysler Automobiles N.V., V.M. Motori S.P.A., and V.M. North America, Inc. ("U.S. Complaint") alleging that Defendants violated Sections 203(a)(1) and (a)(2) of the Clean Air Act, 42 U.S.C. §§ 7522(a)(1), (a)(2), and that FCA US LLC, V.M. Motori S.P.A., and V.M. North America, Inc. violated Sections 203(a)(3)(A) and (3)(B) of the Clean Air Act, 42 U.S.C. §§ 7522(a)(3)(A) and (3)(B), with regard to approximately 103,828 model year ("MY") 2014 to 2016 Ram 1500 and MY 2014 to 2016 Jeep Grand Cherokee vehicles equipped with 3.0 liter EcoDiesel engines ("Subject Vehicles"). Defendants have determined that the actual number of Subject Vehicles manufactured is 101,482.

The U.S. Complaint alleges that each Subject Vehicle contains, as part of the electronic control module, certain software functions and calibrations that cause the emission control system of those vehicles to perform differently (i.e., to underperform or shut off) during normal vehicle operation and use than during emissions testing. The U.S. Complaint alleges that these software functions and calibrations are undisclosed "Auxiliary Emission Control Devices" ("AECDs") in violation of the Act and that they are also prohibited Defeat Devices under the Act. The U.S. Complaint also alleges that during normal vehicle operation and use, the Subject Vehicles emit increased levels of NOx. The U.S. Complaint alleges and asserts four claims for relief related to the presence of the Defeat Devices in the Subject Vehicles.

The People of the State of California, by and through the California Air Resources Board ("CARB"), and Xavier Becerra, Attorney General of the State of California, filed a complaint on January 9, 2019, against FCA US LLC, Fiat Chrysler Automobiles N.V., V.M. Motori S.P.A., and V.M. North America, Inc. ("California Complaint") alleging that, in connection with the certification, marketing, distribution, and sale of approximately 14,000 Subject Vehicles in California, Defendants

violated 42 U.S.C. § 7604(a)(1); California Health and Safety Code §§ 43016, 43017, 43151, 43152, 43153, 43154, 43205, 43211, and 43212; 13 C.C.R. §§ 1961, 1961.2, 1965, 1968.2, and 2037, and the 40 C.F.R. sections incorporated therein by reference; and California Business and Professions Code §§ 17200 et seq., 17500 et seq., and 17580.5.

The California Complaint alleges, in relevant part, that each Subject Vehicle contains, as part of the electronic control module, certain software functions and calibrations that cause the emission control system of those vehicles to perform differently (i.e., to underperform or shut off) during normal vehicle operation and use as compared to during emissions testing. The California Complaint alleges that these software functions and calibrations are undisclosed AECDs in violation of California and federal law, and that they are also prohibited Defeat Devices under California and federal law. The California Complaint also alleges that during normal vehicle operation and use, the Subject Vehicles emit increased levels of NOx. The California Complaint seeks, among other things, civil penalties, injunctive relief, mitigation, costs and other equitable relief related to the presence of the Defeat Devices in the Subject Vehicles.

In 2017, EPA and CARB issued a Certificate of Conformity and an Executive Order, respectively, for the EcoDiesel Jeep Grand Cherokees and Ram 1500s for MY 2017. As a result, to remedy the alleged violations in the Subject Vehicles, Defendants proposed to update the software and calibrations in the Subject Vehicles with software and calibrations substantially similar to the MY 2017 certified configuration. Defendants installed a modified MY 2017 configuration, known as the "Final Carryback Configuration," on a number of test vehicles and conducted testing over an eight-month period in accordance with an agreed-upon protocol approved by EPA and CARB in December of 2017. Based upon the results of this testing, as well as independent testing conducted by EPA and CARB at their own facilities, the regulating agencies determined the Final Carryback Configuration, together with

other modifications unique to MY 2014, to be an appropriate repair for the Subject Vehicles, provided that Defendants comply with the terms and conditions set forth in this Consent Decree.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided above and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524, and over the Parties. Venue lies in this District pursuant to 28 U.S.C. § 1407 and the MDL Panel's Transfer Order, dated April 5, 2017, and filed in this MDL action as Dkt. # 90. The Court has supplemental jurisdiction over the California State law claims pursuant to 28 U.S.C. § 1367. For purposes of this Decree, Defendants consent to the Court's jurisdiction over this Decree, over any action to enforce this Consent Decree, and over Defendants, and consent to venue in this judicial district. Defendants reserve the right to challenge and oppose any claims to jurisdiction that do not arise from the Court's jurisdiction over this Consent Decree or an action to enforce this Consent Decree.

2. For purposes of this Consent Decree, Defendants agree that the U.S. Complaint states claims upon which relief may be granted pursuant to Sections 203, 204, and 205 of the Act, 42 U.S.C. §§ 7522, 7523, and 7524, and that the California Complaint states claims upon which relief may be granted pursuant to 42 U.S.C. § 7604(a)(1); California Health and Safety Code §§ 43016, 43017, 43151, 43152, 43153, 43154, 43205, 43211, and 43212; 13 C.C.R. §§ 1961, 1961.2, 1965, 1968.2, and 2037 and the 40 C.F.R. sections incorporated therein by reference; and California Business and Professions Code §§ 17200 et seq., 17500 et seq., and 17580.

## II.    APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States and California, and upon Defendants and any of Defendants' successors, assigns, or other entities or persons otherwise bound by law.

4.      Defendants' obligations to comply with the requirements of this Consent Decree are joint and several.  In the event of the insolvency of any Defendant or the failure by any Defendant to implement any requirement of this Consent Decree, the remaining Defendants shall complete all such requirements.

5.      Defendants shall do all things within their power and authority to ensure that any legal successor or assign of any Defendant shall remain jointly and severally liable for the payment and other performance obligations hereunder.  Defendants shall include an agreement to so remain liable in the terms of any sale, acquisition, merger, or other transaction changing the ownership or control of any of the Defendants, to which any of them is a party, and no change in the ownership or control of any Defendant shall affect the obligations hereunder of any Defendant without modification of the Decree in accordance with Section XVII.

6.      Defendants shall provide a copy of this Consent Decree to the members of their respective Boards of Directors and their executives whose duties might reasonably include compliance with, or oversight over compliance with, any provision of this Decree.  Defendants shall condition any contract providing for work required under this Consent Decree to be performed in conformity with the terms hereof.  Defendants shall also ensure that any contractors, agents, and employees whose duties might reasonably include compliance with any provision of the Decree are made aware of those requirements of the Decree relevant to their performance.

7.     In any action to enforce this Consent Decree, Defendants shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III.     DEFINITIONS

8.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Likewise, except as provided herein, terms that are defined in the California Health and Safety Code or in CARB regulations promulgated pursuant to the California Health and Safety Code shall have the meanings assigned to them in the California Health and Safety Code or such regulations, unless otherwise provided in this Decree.  Where the same term is defined in the Act or its implementing regulations and the California Health and Safety Code or CARB regulations, and such term is not defined in this Decree, the term as defined in federal law shall control, except for any terms defined in 13 C.C.R. § 1968.2, which shall apply to issues concerning On-Board Diagnostics ("OBD") in Section VI.A.  Terms that are defined in this Consent Decree are defined for purposes of this Consent Decree only and are not applicable for any other purpose.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Additional OBD and Inducement Disclosures" means one or more of the following issues, which Defendants shall address after the Effective Date of this Consent Decree by modifying, in accordance with the procedures set forth in this Consent Decree, the operation of the OBD System or inducement procedures in Subject Vehicles updated with the Approved Emissions Modification:

i.     Incorrect release conditions associated with OBD service 01 parameter identification ("PID") $41 (i.e., monitoring status this driving cycle);

ii.     Incorrect alignment of monitors aligned with PID$01 (i.e., monitoring status since last code clear) and PID$41 reporting;

iii.     False detection of a malfunction for the following monitors and diagnostic trouble codes ("DTCs"):

a)     DTC P245B (EGR cooler bypass control circuit range/performance monitoring),

b)     DTC P20C6 (backflow pump heating performance monitoring),

c)     DTC P20EE (SCR catalyst efficiency below threshold bank 1 monitoring),

d)     DTC P0402 (EGR high flow monitoring),

e)     DTC P0299 (turbocharger underboost monitoring),

f)     DTC P0133 (Lambda sensor slow response monitoring),

g)     DTC P2BA9 (poor DEF quality detection during conditions where the SCR temperature is above 330°C),

h)     DTC P050E (cold start emission reduction strategy monitoring), and

i)     DTC U0140 (loss of communication with the Body Control Module);

iv.     Issues with storage of DTCs P20E8 and P20E9 (SCR over/under pressure monitoring) within the inducement array;

v.     Issues with DTC P2BA9 storage location within the inducement array causing vehicles to incorrectly trigger inducement;

vi.     Issues with inability to clear DTC P1D30 (oil viscosity too low) permanent fault codes; and

1              vii.      Issues with DTC P0420 (catalyst system efficiency below threshold) in

detecting an empty DOC catalyst can for 14MY through 16MY Jeep Grand

Cherokee.

b.      "Additional OBD Non-compliances" means the following five OBD non-compliances as described in Defendants' submission to CARB on October 29, 2018: (1) EGR Low Flow Monitoring (DTC P0401); (2) EGR High Flow Monitoring (DTC P0402); (3) Reductant Delivery Performance Monitoring (DTC P20E9), (4) Exhaust Gas Sensor Monitors Test Results Standardization (Mode $06); and (5) Turbocharger Underboost Monitoring (DTC P0299);

c.      "Adjustment Factors" means the factors set forth in Appendix A that are added to Emissions Test Results for the purpose of determining compliance with emissions standards;

d.      "AECD Disclosure Document" means the four documents that Defendants submitted to EPA and CARB on January 7, 2019, for the purpose of listing and describing AECDs in the Subject Vehicles upon installation of the Approved Emissions Modification;

e.      "Aging Test Vehicles" means the vehicles designated for Aging Testing in accordance with the procedures set forth in Paragraph 29;

f.      "Aging Test Vehicle Pool" means the pool of potential Aging Test Vehicles described in Paragraph 29;

g.      "Approved Emissions Modification" has the meaning set forth in Paragraph 23;

h.      "Auxiliary Emission Control Device" or "AECD" has the meaning set forth in 40 C.F.R. § 86.1803-01;

i.      "Backup Vehicle" means a vehicle that is eligible to be used as one of the "Aging Test Vehicles";

j.      "Buyback," for purposes of Paragraph 45.d of this Consent Decree only, means the return of an Eligible Vehicle by an Eligible Owner to Defendants, in exchange for a payment that

equals or exceeds the National Automobile Dealers Association ("NADA") Clean Retail value of the Eligible Vehicle (adjusted for options, mileage, and NADA region in accordance with the then-current NADA guide) at the time the vehicle title is surrendered by the Eligible Owner and the Eligible Vehicle is re-acquired by Defendants pursuant to the requirements of Paragraph 45.d of this Consent Decree;

k. "CA AG" means the California Attorney General's Office and any of its successor departments or agencies;

l. "California" means the People of the State of California, acting by and through the California Attorney General and the California Air Resources Board;

m. "California Complaint" means the complaint filed by California in this action;

n. "Canadian Subject Vehicles" means Subject Vehicles that were originally sold in Canada (and, hence, have a Canadian VIN) but were subsequently registered in the United States;

o. "CARB" means the California Air Resources Board and any of its successor departments or agencies;

p. "Case Tracking System" means FCA's system for managing information related to concerns reported through the Ethics Helpline, or concerns identified by an investigator in the Vehicle Safety and Regulatory Compliance office, and the investigation and closure of such concerns;

q. "Class Action Settlement" means a Consumer Class Action Settlement Agreement and Release filed in this action, *In re Chrysler-Dodge-Jeep "Ecodiesel,"* MDL No. 2777 (N.D. Cal.), by the attorneys representing owners and lessees of Eligible Vehicles on or before the date this Consent Decree is lodged with the Court. If the Court approves a proposed Consumer Class Action Settlement Agreement and Release, "Class Action Settlement" means that agreement as and in the form it is ultimately approved and entered by the Court;

1    r.    "Class Action Settlement Notice" means notice(s) approved by the Court

2 following a preliminary approval hearing in connection with a Class Action Settlement and disseminated

3 to potential settlement class members pursuant to an order of the Court;

4    s.    "Clean Air Act" or "Act" means 42 U.S.C. §§ 7401-7671q;

5    t.    "Code of Conduct" has the meaning set forth in Paragraph 50.b;

6    u.    "Complaints" means the U.S. Complaint and the California Complaint;

7    v.    "Consent Decree" or "Decree" means this Decree, all appendices attached hereto,

8 and all documents incorporated by reference in Section XXIV;

9    w.    "Critical Emissions Controls" means the Exhaust Gas Recirculation ("EGR")

10 System, Selective Catalytic Reduction ("SCR") System, Diesel Oxidation Catalyst ("DOC") System,

11 and Diesel Particulate Filter ("DPF") System in the Subject Vehicles;

12    x.    "Date of Lodging" means the date that the Consent Decree is lodged with the

13 Court;

14    y.    "Day" or "day" means a calendar day unless expressly stated to be a business day.

15 In computing any period of time under this Consent Decree, where the last day would fall on a Saturday,

16 Sunday, or federal holiday, the period shall run until the close of business of the next business day;

17    z.    "Dealer" means any entity or individual authorized by FCA to sell and service

18 Ram and/or Jeep brand vehicles in the United States;

19    aa.    "Defeat Device" has the meaning set forth in 40 C.F.R. § 86.1803-01;

20    bb.    "Defendants" means FCA US LLC, Fiat Chrysler Automobiles N.V., V.M.

21 Motori S.P.A. and V.M. North America, Inc.;

22    cc.    "Diesel Oxidation Catalyst System" or "DOC System" means all hardware,

23 components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design

24

25

that collectively constitute the system for controlling emissions of carbon monoxide and hydrocarbons, together with other pollutants, through a chemical reaction precipitated by an oxidation catalyst;

dd. "Diesel Particulate Filter System" or "DPF System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for controlling emissions of particulate matter by trapping such particulates in a filter and periodically oxidizing them through thermal regeneration of the filter;

ee. "DPF Regeneration Event" refers to a discrete period of time during which an exothermic reaction is achieved across the diesel oxidation catalyst that increases the exhaust gas temperature and oxidizes particulate matter accumulated in the diesel particulate filter in order to restore performance of the diesel particulate filter;

ff. "ECU Data Parameters List" means the document captioned as "List of ECU Data Parameters," which was marked "Final – January 8, 2019" and distributed on the same date by the United States to the Parties;

gg. "Effective Date" has the meaning set forth in Section XV;

hh. "Eligible Lessee" means (i) the current lessee or lessees of an Eligible Vehicle with an active lease issued through a dealer as of the date the Eligible Vehicle receives or is eligible to receive the Approved Emissions Modification; or (ii) solely for purposes of any applicable warranty obligations described in Paragraph 45 (Warranty Obligations), the subsequent lessee or lessees of an Eligible Vehicle that has received the Approved Emissions Modification;

ii. "Eligible Owner" means the (i) owner or owners of an Eligible Vehicle on the day that the Eligible Vehicle receives or is eligible to receive the Approved Emissions Modification or (ii) solely for the purposes of any applicable warranty obligations described in Paragraph 45 (Warranty Obligations), the subsequent owner or owners of an Eligible Vehicle that has received the Approved Emissions Modification;

jj.    "Eligible Vehicle" means any Subject Vehicle that is (i) registered with a state Department of Motor Vehicles or equivalent agency or held by a dealer not affiliated with Defendants and located in the United States as of the Date of Lodging; and (ii) Operable as of the date the vehicle is brought in for the Approved Emissions Modification;

kk.    "Emissions-Related Defect" means a defect in design, materials, or workmanship in a device, system, or assembly in the Subject Vehicles upon installation of the Approved Emissions Modification that affects any parameter or specification enumerated in Appendix VIII to 40 C.F.R. Part 85 or a defect in the design, materials, or workmanship in one or more emissions-related parts, components, systems, software or elements of design in the Subject Vehicles which must function properly to ensure continued compliance with emissions standards;

ll.    "Emissions Test Data" means any and all data from any emissions test performed pursuant to this Consent Decree, including data from any emissions test interrupted, aborted, or deemed invalid for any reason;

mm.    "Emissions Test Results" means the subset of Emissions Test Data generated from a valid emissions test after such data has undergone and satisfied FCA's Internal Quality Control and Quality Assurance Procedures and is determined to be valid data in accordance with the procedures set forth in 40 C.F.R. Part 86, Subpart B;

nn.    "Engine Control Unit" or "ECU" (a/k/a "engine control module" or "ECM") means an electronic hardware device, together with the software and calibrations installed on the device, that is capable of controlling, among other things, the operation of the emission control system in the Subject Vehicles;

oo.    "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

pp.    "Ethics Helpline" has the meaning set forth in Paragraph 50.c;

qq.     "Exhaust Gas Recirculation System" or "EGR System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for limiting the formation of NOx in the combustion chamber by recirculating a portion of engine exhaust gas into the cylinders of the engine;

rr.     "Final Carryback Configuration" means the configuration of software and calibrations for the TCU and ECU, provided by Defendants to EPA and CARB on hard drives (Serial Nos. 102200083050, 102200080017, and 102200083234) on December 19, 2018.  The calibration verification numbers ("CVN") and the calibration identification numbers ("CALID") for the Final Carryback Configuration are attached hereto at Appendix B;

ss.     "Final Carryback Configuration Description Document" means the document submitted by Defendants to EPA and CARB on November 13, 2018, and December 12, 2018, listing and describing all differences between the Final Carryback Configuration and the MY 2017 certified configuration for test group HCRXT03.05PV;

tt.      "First-Tier Customers" means the immediate customers (e.g., retailers and distributors) of the manufacturer(s) of the Improved Catalytic Converters required by the Program;

uu.     "FTP72" means the "Urban Dynamometer Driving Schedule" set forth at 40 C.F.R. Part 86, Appendix I (Dynamometer Schedules);

vv.     "FTP75" means the emissions test cycle described in 40 C.F.R. § 86.135-12 and the procedures set forth at 40 C.F.R. §§ 1066.810-1066.820;

ww.     "Full Useful Life" or "FUL" has the meaning set forth in 40 C.F.R. § 86.1805-12;

xx.     "Highway Fuel Economy Test" or "HWFE" means the emissions test cycle described in 40 C.F.R. § 600.109-08(b) and Appendix I (Highway Fuel Economy Driving Schedule) to Part 600 and the procedure described in 40 C.F.R. § 1066.840;

yy. "Improved Catalytic Converter(s)" has the meaning set forth in Paragraph 66.a;

zz. "Improvement Plan" means the document submitted to California and the Department of Justice ("DOJ"), dated November 30, 2018, which contains descriptions of various actions and improvements that Defendants have implemented or will continue to implement to further Defendants' compliance with environmental laws and regulations concerning vehicle emissions and certification, including each one's intended purpose and an implementation schedule for those that remain to be implemented;

aaa. "Independent Compliance Auditor" means the person or entity that serves to oversee Defendants' compliance with the obligations under Section VI.C (Corporate Compliance) as set forth in Paragraphs 63-65;

bbb. "Internal Quality Control and Quality Assurance Procedures" means the set of procedures described in a spreadsheet that Defendants submitted to EPA and CARB on October 9, 2018, and any subsequent updates to such procedures submitted pursuant to Paragraph 35.c (Update of Internal Quality Control and Quality Assurance Procedures);

ccc. "Invoiced Transaction" has the meaning set forth in Paragraph 67.a;

ddd. "Invoiced Transaction Data" has the meaning set forth in Paragraph 67.a;

eee. "Lease Termination" means, for purposes of Paragraph 45.d of this Consent Decree only, the return of an Eligible Vehicle by an Eligible Lessee to Defendants, at no cost to the Eligible Lessee and with full cancellation of the remaining terms of the lease with no financial or other penalty, under terms specified in Paragraph 45.d;

fff. "Leave No Doubt Campaign" has the meaning set forth in Paragraph 50.d;

ggg. "Materials" means Defendants' Submissions and other documents, certifications, plans, reports, notifications, statements of position, data, or other information or communication required by or submitted concerning this Decree;

hhh.    "MY 2014 Field Fix" means all actions required to replace the selective catalytic reduction catalyst in the MY 2014 Subject Vehicles, as memorialized and described in the service bulletins attached hereto at Appendix C;

iii.    "MY 2016 Ram 1500 Test Vehicle" means the MY 2016 Ram 1500 with VIN 1C6RR7PM2GS186189 that was tested as part of the Test Protocol;

jjj.    "MY 2018 Mileage Accumulation Method" means the method of accumulating miles that CARB approved on September 12, 2017, for certification of the 2018 MY FCA 3.0L diesel vehicles set forth in the FCA 3.0L V6 Gen II Diesel Ram Truck/Grand Cherokee Durability Test Plan Proposal of August 1, 2017 (including modifications on August 3, 2017, August 30, 2017, and September 11, 2017), and which authorized FCA to implement, among other things, a temporary calibration change to ensure that the interval between DPF Regeneration Events did not exceed 250 miles while the vehicle was accumulating miles in accordance with the approved mileage accumulation method;

kkk.    "NOx" means oxides of nitrogen;

lll.    "On-Board Diagnostics System" or "OBD System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for monitoring the Critical Emissions Controls, as well as all other systems and components that must be monitored pursuant to 13 C.C.R. § 1968.2, for the purpose of identifying and detecting malfunctions of such monitored systems and components, and for alerting the driver of such potential malfunctions by illuminating the malfunction indicator light ("MIL");

mmm.   "OBD Demonstration ECU Data Parameters List" means the document captioned as "List of OBD Demonstration ECU Data Parameters," which was marked "Final – January 8, 2019" and distributed on the same date by the United States to the Parties;

nnn. "OBD Summary Table" or "OBD Summary Tables" means one or more of the tables submitted by Defendants to EPA and CARB on November 17, 2018, November 29, 2018, and December 12, 2018, and that describe the OBD System and functionality in the Jeep Grand Cherokee with the 3.45 axle ratio per MY and the Ram 1500 with the 3.55 and 3.92 axle ratios per MY upon modification of the Subject Vehicles with the Approved Emissions Modification;

ooo. "Operable" means that a vehicle can be driven under its own engine power;

ppp. "Original Configuration" means the configuration of software and calibrations in the ECU and TCU of the Subject Vehicles that will be updated and replaced by Final Carryback Configuration in accordance with the terms of the Consent Decree;

qqq. "Owner-Altered Subject Vehicle" means any Subject Vehicle that is associated with the purchase and/or installation of after-market emissions-related components, parts, and/or software, or the removal or alteration of any original emissions-related components, parts, and/or software, including any alteration, installation, or removal likely to reduce the effectiveness of the emission control system. Nothing in this definition or the mere fact that a Subject Vehicle qualifies as an Owner-Altered Subject Vehicle under this definition shall constitute a determination by EPA or CARB that any particular vehicle owner has in fact altered the emission control system;

rrr. "Paragraph" means a portion of this Decree identified by an Arabic numeral;

sss. "Parties" means the United States, California, and Defendants;

ttt. "Personally-Identifiable Information" or "PII" means information that can be used to distinguish or trace an individual's identity, either alone or in combination with other personal or identifying information that is linked or linkable to a specific individual, such as an individual's name and Vehicle Identification Numbers;

uuu. "Plaintiffs" means the United States and California;

vvv.    "Pre-Approved OBD Deficiencies" means the following seventeen deficiencies as described in the conditional approval issued by CARB on July 27, 2017 (Ref. No. E-17-211) for MY 2017 Test Group HCRXT03.05PV for the Ram 1500 and Jeep Grand Cherokee Vehicles: (1) NMHC Converting Catalyst Monitoring; (2) SCR Converting Catalyst Monitoring; (3) Fuel System Pressure Monitoring; (4) Fuel System Quantity Monitoring; (5) Upstream NOx Sensor Monitoring; (6) EGR Low Flow Monitoring; (7) EGR Slow Response Monitoring; (8) EGR Cooler Performance Monitoring; (9) Boost System Overboost Monitoring; (10) Boost System Slow Response Monitoring; (11) Charge Air Cooling Monitoring; (12) EGT Mode 1 CSERS Monitoring; (13) Transmission CSERS Monitoring; (14) SCR Adaption Monitoring; (15) EGR Shut-off for Exhaust Valve Cleaning Monitoring; (16) Fuel-System Timing Demonstration Procedure; and (17) Particulate Matter ("PM") Filtering Performance Demonstration Procedure;

www.    "Prep Cycle" means any type of drive cycle and soak that Defendants may undertake for the purpose of preparing the vehicle for an emissions test, including without limitation the FTP75, US06, SC03, or HWFE emissions tests;

xxx.    "Procured Vehicles" means Subject Vehicles that Defendants procured in accordance with Paragraph 29.a for potential inclusion in the Aging Test Vehicle Pool;

yyy.    "Program" or "Mitigation Program" has the meaning set forth under Section VI.D (Mitigation Program), Paragraph 66;

zzz.    "Recall Report" has the meaning set forth in Paragraph 25.b.i;

aaaa.    "Recall Target Deadline" has the meaning set forth in Paragraph 37;

bbbb.    "Remedy Period" has the meaning set forth in Paragraph 45.d;

cccc.    "Retention Date" has the meaning set forth in Paragraph 63.b;

dddd.    "Road-Load Determination Procedures" has the meaning set forth in 40 C.F.R. § 1066.301;

eeee.  "Root-Cause Evaluation" means an investigation of an issue, as such issue is described in Paragraphs 29.c.vi, and 31.a-31.c of this Consent Decree, that occurs in a Subject Vehicle during implementation of this Consent Decree and which requires investigation pursuant to this Consent Decree.  The purpose of the Root-Cause Evaluation is to identify the reason(s) why the issue occurred.  A Root-Cause Evaluation shall also include an assessment of whether the issue is an Emissions-Related Defect that would likely occur in five or more Subject Vehicles and, if so, shall include the recommended actions to be taken by Defendants, if any, to address such Emissions-Related Defect in Subject Vehicles;

ffff.  "SC03" means the emissions test cycle described in paragraph (h) of Appendix I (Dynamometer Schedules) of 40 C.F.R. Part 86 and the procedures set forth at 40 C.F.R. § 1066.810 and § 1066.835;

gggg.  "Scrapped" means a vehicle that has been rendered permanently inoperable and cannot be driven under its own engine power;

hhhh.  "Section" means a portion of this Decree identified by a Roman numeral;

iiii.  "Selective Catalytic Reduction System" or "SCR System" means all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design that collectively constitute the system for controlling NOx emissions through selective catalytic reduction using a catalyst and an ammonia-based diesel exhaust fluid ("DEF") as the reducing agent, including without limitation all hardware, components, parts, sensors, subassemblies, software, AECDs, calibrations, and other elements of design relating to (1) the DEF storage tank, (2) the DEF injectors, (3) the dosing control unit, and (4) the SCR catalyst assembly;

jjjj.  "Standard Road Cycle" means the mileage accumulation method set forth in Appendix V to 40 C.F.R. Part 86;

kkkk. "Subject Vehicles" means each and every MY 2014 to 2016 Jeep Grand Cherokee and Ram 1500 equipped with a 3.0 liter EcoDiesel engine and sold or offered for sale, or introduced or delivered for introduction into commerce, or registered in the United States or its Territories, or imported into the United States or its Territories, and that was identified by Defendants as covered by one of the following test groups: ECRXT03.05PV, FCRXT03.05PV, or GCRXT03.05PV;

llll. "Submission" means any plan, report, application, or other item that is required to be submitted for approval pursuant to this Consent Decree;

mmmm. "Test Protocol" means the "EPA and CARB Protocol for Assessment of FCA's Proposed Modification of MY 2014-2016 Diesel Jeep Grand Cherokee and Ram 1500 Vehicles," to which the Parties agreed and which is marked "Final December 9, 2017";

nnnn. "Test Protocol Vehicles" means the seven vehicles – four Ram 1500s and three Jeep Grand Cherokees – listed in Attachment 1 of the Test Protocol, as well as the Ram 1500 (VIN 1C6RR7PM2GS186189) added with the agreement of EPA and CARB on February 13, 2018;

oooo. "Thermal Management Strategies" means any method that controls, modulates, or adjusts the temperature of exhaust gases and that, as a result, changes the effectiveness of the DOC System, the DPF System, or the SCR System;

pppp. "Transmission Control Unit" or "TCU" (a/k/a "transmission control module" or "TCM") means the electronic hardware device, together with the software and calibrations installed on the device, that is capable of controlling the operation of the transmission in the Subject Vehicles;

qqqq. "US06" means the emissions test cycle described in paragraph (g) of Appendix I (Dynamometer Schedules) of 40 C.F.R. Part 86 and the procedures set forth at 40 C.F.R. § 1066.810 and § 1066.831;

rrrr. "United States" means the United States of America, acting on behalf of EPA;

ssss.   "U.S. Complaint" means the complaint filed by the United States in this action on May 23, 2017; and

tttt.   "Warrantable Failure" has the meaning set forth in Paragraph 45.d.

## IV.   CIVIL PENALTY

9.      Within 30 days after the Effective Date, Defendants shall pay the total sum of $305 million as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the Date of Lodging.

10.     Of the amount set forth in Paragraph 9, Defendants shall pay $262,300,000, plus the interest due thereon, to the United States by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendants by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of California after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

        Charles Christman, FCA NAFTA Treasurer
        800 Chrysler Drive, CIMS 485-12-78
        Auburn Hills, MI
        48326-2757
        E mail:  Charles.Christman@fcagroup.com
        Phone: 248-512-2312

on behalf of Defendants.  Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices).

11.     At the time of payment, Defendants shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular

mail in accordance with Section XIV; and (iii) to EPA in accordance with Section XIV. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *In re: Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation* and shall reference Civ. No. 3:17-md-02777-EM, the CDCS Number and DJ # 90-5-2-1-11607.

12. Of the amount set forth in Paragraph 9, Defendants shall pay $42,700,000, plus the interest due thereon, to CARB by check, accompanied by a Payment Transmittal Form (which CARB will provide to the addressee listed in Paragraph 10 after the Effective Date), mailed to:

> Air Resources Board, Accounting Branch
> P.O. Box 1436
> Sacramento, CA 95812-1436

or by wire transfer, in which case Defendants shall use the following wire transfer information and send the Payment Transmittal Form to the above address prior to each wire transfer:

> State of California Air Resources Board
> c/o Bank of America, Inter Branch to 0148
> Routing No. 0260-0959-3  Account No. 01482-80005
> Notice of Transfer: Yogeeta Sharma  Fax: (916) 322-9612.

Defendants are responsible for any bank charges incurred for processing wire transfers. Except as otherwise provided by this Consent Decree, penalties paid to CARB shall be deposited into the Air Pollution Control Fund and used by CARB to carry out its duties and functions.

13. Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties), or any recall rate payments made pursuant to Paragraph 41.a, in calculating their federal, state, or local income tax.

## V. APPROVAL OF SUBMISSIONS; U.S./CALIFORNIA DECISION-MAKING

14. For purposes of this Consent Decree, unless otherwise specified in this Consent Decree:

a. With respect to any Submission, other obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants concerning Section VI.A (Modification of Subject Vehicles and Post-Entry Compliance Testing), EPA and CARB, or the United States and

California, as applicable, will issue a joint decision concerning the Submission, other obligation, or force majeure claim;

        b.      With respect to any obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants concerning Section VI.D, the position of EPA or the United States shall control; and

        c.      With respect to any other Submission, obligation that requires approval or other decision by Plaintiffs, or force majeure claim of Defendants under the Consent Decree, the position of EPA or the United States, after consultation with CARB or California, as applicable, shall control.

15.     For purposes of this Section, Section VI.A (Modification of Subject Vehicles and Post-Entry Compliance Testing), Section VIII (Stipulated Penalties), Section IX (Force Majeure), and Section X (Dispute Resolution), in accordance with the decision-making authorities set forth in Paragraph 14, references to "EPA/CARB" mean EPA and CARB jointly, or EPA or CARB, as applicable; references to "the United States/California" mean the United States and California jointly, or the United States or California, as applicable; and references to the United States/CARB mean the United States/CARB jointly, or the United States or CARB, as applicable.

16.     Paragraphs 16-19 govern the review of Submissions required by this Consent Decree. Any additional specific procedures or specifications for the review of certain Submissions set forth elsewhere in the Consent Decree shall also apply to such Submissions or the review of such Submissions. After review of any Submission, EPA/CARB shall in writing: (a) approve the Submission; (b) approve the Submission upon specified conditions; (c) approve part of the Submission and disapprove the remainder; or (d) disapprove the Submission. In the event of an approval upon specified conditions or a disapproval, in full or in part, of any portion of the Submission, if not already provided with the EPA/CARB written decision, upon the request of Defendants, EPA/CARB will provide in writing the reasons for such specified conditions or disapproval.

17.     If the Submission is approved pursuant to Paragraph 16(a), Defendants shall take all actions required by the Submission, in accordance with the schedules and requirements of the Submission, as approved.  If the Submission is conditionally approved or approved only in part pursuant to Paragraph 16(b) or (c), Defendants shall, upon written direction from EPA/CARB, take all actions required by the Submission that EPA/CARB determine(s) are technically severable from any disapproved portions, subject to Defendants' right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

18.     If the Submission is disapproved in whole or in part pursuant to Paragraph 16(c) or (d), Defendants shall, within 30 days or such other time as the Parties agree to in writing, correct all deficiencies and resubmit the Submission, or disapproved portion thereof, for approval, in accordance with Paragraph 16.  If the resubmission is approved in whole or in part, Defendants shall proceed in accordance with Paragraph 17.

19.     If a resubmitted Submission is disapproved in whole or in part, EPA/CARB may again require Defendants to correct any deficiencies in the Submission, in accordance with Paragraph 18; or EPA/CARB may itself/themselves correct any deficiencies, and Defendants shall implement the Submission as modified by EPA/CARB.

20.     Defendants may elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution) concerning any decision of EPA/CARB to disapprove, approve upon specified conditions, or modify a Submission.  If Defendants elect to invoke dispute resolution, they shall do so by delivery of a Notice of Dispute (in accordance with Paragraph 106) within 30 days (or such other time as the Parties agree to in writing) after receipt of the applicable decision.

21.     Any stipulated penalties applicable to the original Submission, as provided in Section VIII (Stipulated Penalties), shall accrue during the 30-day period or other specified period pursuant to Paragraph 18.  Such stipulated penalties shall not be payable unless the resubmission is

untimely or is disapproved in whole or in part; provided that, if the original Submission was so deficient as to constitute a material breach of Defendants' obligations under this Decree, the stipulated penalties applicable to the original Submission shall be due and payable notwithstanding any subsequent resubmission.

## VI.   INJUNCTIVE MEASURES

### A.   Modification of Subject Vehicles and Post-Entry Compliance Testing

22.   Certification of Final Carryback Configuration.

a.   Defendants shall disclose all AECDs in the Final Carryback Configuration by listing and describing them in the AECD Disclosure Document in accordance with 40 C.F.R. § 86.1844-01(d)(11), and, in the event that Defendants identify any AECDs not initially listed in such AECD Disclosure Document, Defendants shall submit to EPA and CARB an update of the AECD Disclosure Document by no later than 180 days from the Effective Date.  Defendants shall not use the update procedure under this Paragraph 22.a to modify the Final Carryback Configuration.  No AECD listed in the AECD Disclosure Document or in the update shall be a Defeat Device.  EPA and CARB will follow their respective regulatory procedures, including those set forth in 40 C.F.R. § 86.1809-01, and may use any screening tests that they deem appropriate to determine whether a Defeat Device exists in the Final Carryback Configuration or in any other modification made to the Subject Vehicles after the Effective Date.

b.   Simultaneously with their execution and delivery of the Consent Decree to the United States and California, Defendants shall execute and deliver an affidavit signed by a corporate official from FCA US LLC certifying in accordance with Paragraph 79 to the following with respect to all Subject Vehicles that receive the Approved Emissions Modification, as defined under Paragraph 23 below:

i.   The Subject Vehicles shall be free of any and all Defeat Devices;

ii.     The AECDs in the AECD Disclosure Document, including those in any update submitted under Paragraph 22.a, shall be described in accordance with the requirements of 40 C.F.R. § 86.1844-01(d)(11);

iii.     The OBD System and functionality in the Subject Vehicles shall be as described in the OBD Summary Table, which complies with the requirements set forth in 13 C.C.R. § 1968.2(i)(2.2); and

iv.     Unless otherwise approved or allowed pursuant to this Consent Decree, the TCU and ECU in the Subject Vehicles shall be identical, in terms of their software and calibrations, to the TCU and ECU on the respective Test Protocol Vehicles modified and tested under the Test Protocol with the Final Carryback Configuration.

23.     Approved Emissions Modification.  Upon the Effective Date of this Consent Decree, Defendants are authorized to make – and shall undertake and complete in accordance with the requirements of the Emissions Modification Recall Program set forth in Section VI.B of this Consent Decree – the following two modifications (collectively "Approved Emissions Modification") upon any Subject Vehicle when (1) such modifications are requested by the  Eligible Owner or Eligible Lessee of such vehicle or (2) Defendants possess and control such vehicle for which there is no Eligible Owner or Eligible Lessee.

a.     Install Final Carryback Configuration.  Defendants shall modify the Subject Vehicle by updating its ECU and TCU with the Final Carryback Configuration; and

b.     Implement MY 2014 Field Fix.  With respect to each Subject Vehicle for MY 2014 that has not received the MY 2014 Field Fix, Defendants shall remove the SCR catalyst and install a new SCR catalyst that complies with the design and performance criteria applicable to the MY 2014 Field Fix.

24. <u>Modifications to Address Unforeseen Technical Problems in the Installation of the Approved Emissions Modification</u>.

a. In the event that, due to an unforeseen technical issue, Defendants determine they cannot install the Approved Emissions Modification on certain Subject Vehicles for reasons other than those described in Paragraph 38.e (Grounds for Refusal to Apply Modifications to an Eligible Subject Vehicle), Defendants shall, within 60 days of learning of such event, provide EPA and CARB for review and approval a proposed plan and schedule for either modifying the Subject Vehicles to accept the Approved Emissions Modification or modifying the Approved Emissions Modification to be able to install it on the Subject Vehicles. The plan shall (i) describe the conditions or circumstances that prevent installation of the Approved Emissions Modification on the Subject Vehicles, (ii) estimate the number of Subject Vehicles likely affected by such conditions or circumstances, (iii) describe any and all modifications necessary to implement the Approved Emissions Modification in such vehicles, including (if necessary) any changes to the ECU or TCU software or to the Final Carryback Configuration, and (iv) describe all changes, if any, to the information described in the AECD Disclosure Document and/or OBD Summary Table. If Defendants subsequently learn new information relevant to the matters discussed in the plan, they shall amend the plan no later than 30 days after the receipt of such information.

b. At the request of EPA or CARB (or both), Defendants shall collect and provide test data or other information that EPA and CARB reasonably require to evaluate the proposed plan and schedule. In the event that EPA and CARB fail to make a determination on the proposed plan within 60 days of its receipt, Defendants may, at their discretion, consider the plan to be denied for the purpose of invoking Dispute Resolution pursuant to Section X. EPA and CARB reserve the right to reject Defendants' determination that Defendants cannot install the Approved Emissions Modification on certain Subject Vehicles for reasons other than those described in Paragraph 38.e (Grounds for Refusal

to Apply Modifications to an Eligible Subject Vehicle), and Defendants reserve the right to challenge such a decision under Section X (Dispute Resolution).

c. Upon receipt of an approved plan and schedule from EPA and CARB, Defendants shall implement the approved plan in accordance with the approved schedule. Except as otherwise provided herein, nothing in this Paragraph waives, modifies, or alters Defendants' rights and obligations under this Consent Decree, including (but not limited to) those rights and obligations set forth in Section IX (Force Majeure).

25. <u>Restriction upon Modifications to Critical Emissions Controls, Thermal Management Strategies, or the OBD System</u>. Except for the modifications under Paragraph 23 (Approved Emissions Modification), Paragraph 24 (Modifications to Address Unforeseen Technical Problems in the Installation of the Approved Emissions Modification), and Paragraph 31.f (Remedial Action), Defendants are enjoined from modifying Critical Emissions Controls, Thermal Management Strategies, or the OBD System of the Subject Vehicles, unless they do so in accordance with this Paragraph or unless such modifications have been reported to and approved by the National Highway Traffic Safety Administration ("NHTSA") either as a safety recall action or a voluntary campaign (each, a "NHTSA Recall"). With respect to modifications of the Critical Emissions Controls, Thermal Management Strategies, or OBD System of the Subject Vehicles made pursuant to a NHTSA Recall, Defendants shall comply with the requirements of Paragraph 25.c, below. The requirements of this Paragraph apply irrespective of whether a modification is undertaken by Defendants voluntarily or pursuant to an order or request by EPA, CARB, or NHTSA. Compliance with this Paragraph 25 shall fulfill Defendants' obligation to submit a voluntary emissions recall report to EPA under 40 C.F.R. § 85.1904(a), as well as fulfill Defendants' obligation to submit a voluntary recall plan or influenced emissions recall plan to CARB under 13 C.C.R. §§ 2113(a) and (b) and 13 C.C.R. §§ 1968.5(c)(1) and (c)(2) with respect to the proposed modification. Except as expressly stated herein, nothing in this Paragraph 25 is intended to

modify, alter, or waive Defendants' obligations under 40 C.F.R. Part 85, Subpart T (Emissions Defect

Reporting Requirements),13 C.C.R. Division 3, Article 2.4 (Procedures for Reporting Failures of

Emissions-Related Components), or any other regulatory requirements applicable to modifications of the

Critical Emissions Controls, Thermal Management Strategies, or OBD System of the Subject Vehicles.

        a.    <u>Modifications relating to the EGR System, SCR System, or Thermal Management Strategies</u>.

        i.    In the event that Defendants propose to modify the EGR System, SCR System, or Thermal Management Strategies in the Subject Vehicles, Defendants shall submit an application for modification ("Application") to both EPA and CARB for review and approval with the certification required pursuant to Paragraph 79.  Each Application shall include (1) a description of the Subject Vehicles that Defendants propose to modify, including the estimated number of such vehicles, (2) a statement setting forth all reasons for the proposed modification, and (3) an engineering evaluation as to (A) whether the proposed modification will result in a reduction in the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use and, if so, the rationale for why it is not a Defeat Device, and (B) whether the proposed modification will result in the Subject Vehicles exceeding an applicable emissions standard or violate other applicable requirements, including those relating to the OBD System.  In addition, irrespective of whether the Application relates to an Emissions-Related Defect, Defendants shall ensure that the Application to EPA complies with the requirements set forth at 40 C.F.R. § 85.1904 and that the Application to CARB complies with the requirements at 13 C.C.R. § 2114.

        ii.    At the request of EPA or CARB (or both), Defendants shall collect and provide test data that EPA and CARB reasonably require to evaluate the Application.

iii. If EPA and CARB determine that the Application satisfies the criteria in Paragraph 25.a.iv, below, they will notify Defendants in writing that the Application is approved. If EPA and CARB determine that the Application fails to satisfy the criteria in Paragraph 25.a.iv, below, then they will notify Defendants in writing that the Application is disapproved, identifying the bases for the disapproval. In the event that EPA and CARB fail to make a determination on the Application within 60 days of its receipt, Defendants may, at their discretion, consider the Application to be denied for the purposes of invoking Dispute Resolution pursuant to Section X of this Consent Decree.

iv. In reviewing the Application, EPA and CARB will consider whether Defendants have demonstrated that the proposed modification complies with applicable emissions standards, OBD requirements, and inducement requirements, and that it contains no Defeat Devices. EPA and CARB will follow their respective regulatory procedures, including those set forth at 40 C.F.R. § 86.1809-01, and may use any screening tests that they deem appropriate to determine whether a Defeat Device exists in the proposed modification that is the subject of the Application.

v. Upon receipt of written approval of the Application by EPA and CARB, Defendants may modify the Subject Vehicles in accordance with the requirements and conditions set forth in such written approval.

b. **Other Modifications of Critical Emissions Controls or the OBD System**.

i. With respect to any modification of Critical Emissions Controls or the OBD System in the Subject Vehicles that does not require an Application under Paragraph 25.a (Modifications Relating to the EGR System, SCR System, or Thermal Management Strategies), Defendants shall submit a recall report ("Recall Report") to both EPA and CARB with the certification required pursuant to Paragraph 79. The Recall Report submitted to EPA shall

comply with 40 C.F.R. § 85.1904, except that (1) Defendants shall submit the Recall Report no later than 30 days before the date that they begin to notify owners or lessees of the recall and modification, and (2) such report shall be submitted even if Defendants anticipate that the recall and modification may involve fewer than 25 Subject Vehicles. The Recall Report submitted to CARB shall comply, as applicable, with all procedures and requirements set forth at 13 C.C.R. § 2114 and 13 C.C.R. § 1968.5(c)(1) (except that Defendants shall submit the Recall Report no later than 30 days before the date that they begin to notify owners or lessees of the modification), and 13 C.C.R. § 1968.5 (d)(1)(A). In the Recall Reports to EPA and CARB, Defendants shall include an explanation as to why the modification does not require an Application under Paragraph 25.a (Modifications Relating to the EGR System, SCR System, or Thermal Management Strategies).

ii.     At the request of EPA or CARB (or both), Defendants shall provide additional information that EPA and CARB reasonably require to evaluate the modification described in the Recall Report.

iii.     Unless EPA or CARB disapprove the proposed modification, Defendants may begin implementation of the modification upon the 31st day (or later) after the submission of the Recall Report. EPA or CARB may take any action authorized under their respective regulations or under the Clean Air Act and comparable California law in the event that they should subsequently determine that the modification described in the Recall Report is non-compliant with regulatory requirements, including (but not limited to) the right to cause the nonconformity to be remedied at no expense to the owner.

c.     <u>Modifications Approved by NHTSA</u>.

i.     Notwithstanding the foregoing provisions in Paragraphs 25.a-25.b above, with respect to any NHTSA Recall that modifies the Critical Emissions Controls, Thermal

Management Strategies, or OBD System, Defendants may implement such modification in accordance with the schedule set forth in the safety recall action or voluntary campaign. On the day of the submittal of the recall report to NHTSA in accordance with 49 C.F.R. § 573 ("Part 573 Report"), Defendants shall also send written notification to EPA and CARB that they are implementing a NHTSA-approved modification and attach a copy of the Part 573 Report to such notification.

        ii.        No later than 30 days after the submittal of the Part 573 Report to EPA and CARB, Defendants shall submit the Application or Recall Report, as applicable, to EPA and CARB in accordance with Paragraphs 25.a-25.b above. In the event that EPA and CARB subsequently notify Defendants that the NHTSA-approved modification is non-compliant with regulatory requirements relating to environmental laws, Defendants shall, within 60 days of such notification, either (a) submit to EPA and CARB for review and approval a proposed plan and schedule for addressing the non-compliances identified by EPA and CARB or (b) challenge the agencies' determination in accordance with Section X (Dispute Resolution) of this Consent Decree. If Defendants believe that the non-compliances cannot be addressed without jeopardizing compliance with NHTSA requirements, Defendants shall set forth all the bases for this belief and submit a proposed plan that provides for "no further action" to be taken to remedy the non-compliances identified by EPA and CARB.

        iii.        Upon receipt of written approval of the proposed plan by EPA and CARB, Defendants shall implement the plan in accordance with the approved schedule or take no further action, if such a plan has been approved by EPA and CARB.

        d.        <u>Modification to Address DPF Regeneration Issue</u>. Defendants shall continue and complete their investigation of test vehicles that were unable to complete emissions testing under the Test Protocol due to the frequency of DPF regenerations. No later than 180 days from the Effective

Date, Defendants shall submit to EPA and CARB a report setting forth their findings regarding these

DPF regeneration occurrences, stating whether the same issue is likely to occur in five or more of the

Subject Vehicles and, if so, what actions, if any, that Defendants propose to prevent these DPF

regenerations.  Defendants shall provide all data, vehicles, and information reasonably requested by

EPA and CARB to evaluate Defendants' report and any conclusions reached by Defendants.  If EPA and

CARB determine that such DPF regenerations are caused by, in whole or in part, a defective component

and/or a problem with emissions-related software or calibrations in the test vehicles, and if the agencies

determine that such defect or problem is likely to occur in a substantial number of Subject Vehicles for

any model within any model year, they may require Defendants to implement an administrative recall

program to address such defect or problem.  Any such modification of the Subject Vehicles to address

such defect or problem must comply with the requirements of this Consent Decree, including this

Paragraph 25.

26. <u>Timing of Modifications other than the Approved Emissions Modification</u>.  Nothing in

this Consent Decree prohibits Defendants from making modifications to the Subject Vehicles

concurrently with implementing the Approved Emissions Modification, provided that such

modifications comply with this Paragraph 26.

a. <u>Modifications Subject to Paragraph 25</u>.  With respect to modifications subject to

Paragraph 25 (Restriction upon Modifications to Critical Emissions Controls, Thermal Management

Strategies, or the OBD System), Defendants may, upon lodging of this Consent Decree with the Court,

commence with the procedures set forth in Paragraphs 25.a-25.c in order to provide notice of – and, if

necessary, to obtain approval for – a modification to Critical Emissions Controls, Thermal Management

Strategies, or the OBD System in the Subject Vehicles.  Subject to Defendants' compliance with

Paragraph 25, Defendants are authorized to make modifications to the Critical Emissions Controls,

Thermal Management Strategies or the OBD System in the Subject Vehicles concurrently with implementing the Approved Emissions Modification.

b. <u>Modifications Subject to Paragraph 24 and Paragraph 31.f</u>. With respect to modifications subject to Paragraph 24 (Modifications to Address Unforeseen Technical Problems in the Installation of the Approved Emissions Modification) or Paragraph 31.f (Remedial Action), Defendants may, at any time after the Effective Date, commence with the procedures under this Consent Decree in order to obtain approval for such modifications. Subject to Defendants' compliance with Paragraphs 24 and 31.f, Defendants are authorized to make such modifications concurrently with implementing the Approved Emissions Modification.

c. <u>Modifications that Are Not Subject to Procedures under this Consent Decree</u>. With respect to Subject Vehicles modifications that are not subject to the requirements of this Consent Decree, Defendants shall comply with all regulatory requirements under the Clean Air Act and comparable California law that are applicable to such modifications. Subject to Defendants' compliance with such requirements, Defendants are authorized to make such modifications concurrently with implementing the Approved Emissions Modification.

27. <u>Prohibition on Sales of Vehicles that Have Not Entered into Commerce</u>. To the extent that any MY 2014-16 Jeep Grand Cherokee or Ram 1500 vehicle equipped with a 3.0 liter EcoDiesel engine has never been introduced into commerce and, therefore, remains the property of one or more Defendants, such vehicle shall not be sold, leased, imported, or otherwise introduced into commerce, unless and until Defendants have installed the Approved Emissions Modification on such vehicle. No vehicle that receives the Approved Emissions Modification under this Paragraph shall count toward meeting the National Recall Target or California Recall Target.

28. <u>Compliance with Emissions Standards</u>. Subject Vehicles updated with the Approved Emissions Modification shall comply with the following emissions standards through their FUL:

a.      Tier 2, Bin 5, as set forth in 40 C.F.R. § 86.1811-04(c)(6);

b.      Tier 2, LDT4, as set forth in 40 C.F.R. § 86.1811-04(f);

c.      Highway NOx exhaust emissions standard, as set forth in 40 C.F.R. § 86.1811-04(j); and

d.      LEV II LEV, as set forth in 13 C.C.R. § 1961.

29.     Aging Testing.  To demonstrate compliance with the emissions standards in Paragraph 28, Defendants shall conduct emissions testing in accordance with this Paragraph on three Subject Vehicles ("Aging Test Vehicles") that have received the Approved Emissions Modification and that have been subsequently aged to 117,000 miles.  One of the Aging Test Vehicles shall be the MY 2016 Ram 1500 Test Vehicle, and the other two Aging Test Vehicles shall be a MY 2014 Jeep Grand Cherokee and a MY 2015 Ram 1500.  Defendants shall purchase the Aging Test Vehicles (not including the MY 2016 Ram 1500 Test Vehicle), as well as purchase a minimum of three other Subject Vehicles to be held in reserve ("Backup Vehicles"), in accordance with the procedures set forth in Paragraph 29.a, below.  All of the Subject Vehicles purchased by Defendants shall be screened in accordance with Paragraphs 29.b-29.c, below.  All Procured Vehicles (as defined, below, under Paragraph 29.a) that meet the screening criteria, together with the MY 2016 Ram 1500 Test Vehicle, shall be included in the pool of vehicles ("Aging Test Vehicle Pool") and eligible for selection as Aging Test Vehicles.  EPA and CARB will review the Aging Test Vehicle Pool and designate those vehicles in the pool that will be the Aging Test Vehicles and those that will be Backup Vehicles following the procedures set forth in Paragraph 29.d, below.  Defendants shall age all of the Aging Test Vehicles, as well as any Backup Vehicles that they may also wish to age, in accordance with Paragraph 29.e, below.  After aging, Defendants shall conduct emissions tests on the Aging Test Vehicles in accordance with Paragraph 29.f, below, to determine whether the vehicles meet the emissions standards referenced in Paragraph 28. Defendants shall complete all emissions testing requirements under this Paragraph and submit the

Emissions Test Results and all other Emissions Test Data to EPA and CARB by no later than 18 months after the Effective Date. In the event that Defendants are required to conduct one or more Root-Cause Evaluations in accordance with Paragraphs 31.a or 31.b, below, Defendants shall complete all such evaluations and submit all reports by the deadlines specified in Paragraphs 31.a or 31.b, below.

a. <u>Procurement of Subject Vehicles for Aging Test Vehicle Pool</u>. Defendants shall purchase a minimum of five Subject Vehicles from individual consumers who advertised their vehicles for sale. Defendants may purchase such vehicles at any time, provided that they acquire at least five vehicles no later than three months after the Effective Date for the sole purpose of conducting aging testing in accordance with this Paragraph 29. Defendants shall ensure that all Subject Vehicles purchased under this subparagraph ("Procured Vehicles") comply with the specifications set forth in the following table:

| Minimum Quantity of Vehicles | Model Year | Model | Mileage at time of purchase | Axle Ratio |
|---|---|---|---|---|
| 2 | 2014 | Jeep Grand Cherokee | Mileage shall be within 10,000 miles (plus or minus) of the average mileage for all MY 2014 Jeep Grand Cherokees on the Date of Lodging, calculated based on Service & Quality Data Feed ("SQDF") data. | 3.45 |
| 2 | 2015 | Ram 1500 | Mileage shall be within 10,000 miles (plus or minus) of the average mileage of all MY 2015 Ram 1500s as of the Date of Lodging, calculated based on SQDF data. | 3.92 |
| 1 | 2016 | Ram 1500 | Mileage shall be within 10,000 miles (plus or minus) of the mileage of the MY 2016 Ram 1500 Test Vehicle as of the Date of Lodging. | 3.55 |

At the time of each purchase, Defendants shall collect any and all service records retained by the seller pertaining to the Procured Vehicle. Likewise, Defendants shall collect any and all service records stored in dealer databases pertaining to the Procured Vehicles. At any time, Defendants may conduct any

routine maintenance covered by the applicable owner's manual to ensure proper functioning of the Procured Vehicles.  If Defendants want to clean, repair, or replace a part or component of the emission control system or the OBD System of a Procured Vehicle and such activity is not routine maintenance covered by the applicable owner's manual, they shall seek and obtain written approval from EPA and CARB before proceeding with such work.  If Defendants want to conduct non-routine maintenance that will not affect or alter the emission control system or OBD System of the Procured Vehicle, they may proceed with such work after providing 72-hour written notice to EPA and CARB.  Defendants shall maintain a log of maintenance performed on all Procured Vehicles.

        b.    <u>Initial Screening of Procured Vehicles</u>.  Within 5 business days of a Procured Vehicle arriving at the emissions test location or any other facility owned or controlled by Defendants or their contractors, Defendants shall conduct, or cause to be conducted, an initial screening of the Procured Vehicle to determine whether it is free of the defects set forth at 40 C.F.R. Part 86, Subpart S, Appendix II (As-Received Testing Vehicle Rejection Criteria).  If the screening reveals one or more of such defects in the Procured Vehicle, Defendants shall immediately reject such vehicle from eligibility for inclusion in the Aging Test Vehicle Pool.  Defendants need not procure an additional Subject Vehicle to replace the rejected vehicle if Defendants already possess two or more potential Aging Test Vehicles (including the MY 2016 Ram 1500 Test Vehicle) that match the model and model year of the rejected vehicle.  Otherwise, if Defendants do not possess two such vehicles, Defendants shall procure, as soon as practicable, a substitute vehicle that is the same model and model year as the rejected vehicle and that meets the specifications set forth in Paragraph 29.a, above, for such model and model year. Defendants shall conduct initial screening of the substitute Procured Vehicle in accordance with this Paragraph 29.b.  Defendants may conduct initial screening on as many Procured Vehicles as they deem appropriate, provided that the Aging Test Vehicle Pool ultimately includes a minimum of five Procured Vehicles at the time Defendants complete all emissions screening under Paragraph 29.c, below.  Within

30 days of completion of all emissions screening pursuant to Paragraph 29.c, Defendants shall submit a report to EPA and CARB that includes a description of each Procured Vehicle that Defendants rejected during the initial screening performed pursuant to this Paragraph 29.b and an explanation as to why the vehicle was rejected.

c.    <u>Emissions Screening of Procured Vehicles</u>.  With respect to Procured Vehicles that meet the initial screening criteria in Paragraph 29.b, above, Defendants shall conduct further screening to determine whether emissions from such vehicles, together with applicable Adjustment Factors, comply with the emissions standards referenced in Paragraph 28.  If a Procured Vehicle has not yet received the Approved Emissions Modification, Defendants shall update the Procured Vehicle with the Approved Emissions Modification and age such vehicle for 1,000 miles using the Standard Road Cycle without waiting for any further approvals from EPA or CARB.  Defendants shall undertake and complete the emissions testing in accordance with Paragraphs 29.c.i to 29.c.iv, below.

i.    <u>Emissions Tests</u>.  Defendants shall conduct FTP75, US06, HWFE, and SC03 emissions tests on each Procured Vehicle that meets the criteria in Paragraph 29.b, above. At the outset of such testing, Defendants shall conduct Road-Load Determination Procedures with respect to each Procured Vehicle for the purpose of determining the appropriate dynamometer settings for emissions testing of the Procured Vehicle.  Defendants shall conduct the emissions tests and measure and calculate emissions results using all applicable testing procedures set forth in 40 C.F.R. Part 86, Subpart B, as well as in 40 C.F.R. Part 1066, except as provided in Paragraph 29.c.ii ("Prep Cycle") and Paragraph 29.c.iii ("DPF Regeneration Events"), below.  Defendants shall provide the Emissions Test Results and all other Emissions Test Data to EPA and CARB in accordance with Paragraph 35 (Information Sharing with EPA and CARB).  Nothing in this Paragraph 29.c.i is intended to require Defendants to comply with procedures set forth in 40 C.F.R. Part 1066 with respect to data validation.

ii.    Prep Cycle.  Defendants shall not force any type of regeneration of the diesel particulate filter during any Prep Cycle for an emissions test.  Defendants shall conduct a single FTP72 drive cycle during which no DPF Regeneration Event occurs as the Prep Cycle for the FTP75 emissions test, and then follow this FTP72 with the applicable soak period required under the regulations before commencing the emissions test.  For the US06, HWFE, and SC03 emissions tests, Defendants may perform any Prep Cycle that Defendants deem appropriate, provided that such Prep Cycle complies with applicable regulatory requirements and with the limitations set forth in this Paragraph 29.c.ii.

iii.    DPF Regeneration Events.  If a DPF Regeneration Event occurs, either during a Prep Cycle or an emissions test, Defendants shall, as needed, perform multiple back-to-back runs of the following drive cycles without any key-off cycle in between the back-to-back runs to allow the DPF Regeneration Event to complete:  FTP72, HWFE, or US06.  Defendants shall invalidate any such emissions test in which a DPF Regeneration Event occurs during the Prep Cycle or the emissions test.

iv.    Application of Adjustment Factors and Submittal of Results.  Defendants shall apply the Adjustment Factors to the Emissions Test Results and provide such results, along with all other Emissions Test Data, to EPA and CARB in accordance with Paragraph 35 (Information Sharing with EPA and CARB), below.

v.    Emissions Screening Criteria.  If the Emissions Test Results for Procured Vehicles, together with the Adjustment Factors, exceed the applicable emissions standards referenced in Paragraph 28, above, Defendants shall reject the Procured Vehicle from eligibility for inclusion in the Aging Test Vehicle Pool.  Defendants need not procure an additional Subject Vehicle to replace the rejected vehicle if Defendants already possess two or more potential Aging Test Vehicles (including the MY 2016 Ram 1500 Test Vehicle) that match the model and

model year of the rejected vehicle.  Otherwise, if Defendants do not possess two such vehicles, Defendants shall procure, as soon as practicable, a substitute vehicle that is the same model and model year as the rejected vehicle and that meets the specifications set forth in Paragraph 29.a, above, for such model and model year.  Defendants shall follow the process set forth in Paragraphs 29.b-29.c for such Procured Vehicles.  Defendants may conduct emissions screening on as many Procured Vehicles as they deem appropriate, provided that the Aging Test Vehicle Pool ultimately includes a minimum of five Procured Vehicles at the time Defendants complete all emissions screening under this Paragraph 29.c.

        vi.        <u>Root-Cause Evaluation of Procured Vehicle That Does Not Meet Emissions Screening Criteria</u>.  If a Subject Vehicle does not meet the emissions screening criteria specified in Paragraph 29.c.v, above, Defendants shall conduct a Root-Cause Evaluation to determine the reason(s) why it did not meet the emissions screening criteria and shall submit a report with their findings to EPA and CARB within 60 days of the vehicle failing to meet the emissions screening criteria, unless EPA and CARB agree in writing to an extension of this deadline.  Defendants shall provide all data, vehicles, and information reasonably requested by EPA and CARB to evaluate the findings in Defendants' Root-Cause Evaluation report and any conclusions Defendants reached regarding the failure.  In the report, Defendants may recommend whether additional data or information is needed in order to evaluate the reason(s) why the Subject Vehicle did not meet the emissions screening criteria.  If EPA and CARB determine that the Subject Vehicle did not meet the emissions screening criteria due to a potential non-conformity unrelated to the Approved Emissions Modification that may exist in other Subject Vehicles, they will follow their regulatory procedures for determining whether to implement a recall under 40 C.F.R. Part 85, Subpart S, and 13 C.C.R. §§ 2113 and 2123 or take other appropriate actions under their respective regulations.  Any administrative action taken by EPA

or CARB to address the potential non-conformity shall not be subject to review under Section X (Dispute Resolution), except to the extent that the administrative action results in (a) a modification to the Subject Vehicles that must comply with the procedures in Paragraph 25 (Restriction upon Modifications to Critical Emissions Controls, Thermal Management Strategies, or the OBD System) or other requirements of this Consent Decree and (b) an action or decision by EPA or CARB under the Consent Decree with respect to any such modification. In any such dispute, Defendants may only challenge the action taken, or decision made, by EPA and CARB under the Consent Decree relating to the modification to the Subject Vehicles.

       d.    <u>Designation of Aging Test Vehicle and Backup Vehicles</u>. Within 30 days of completion of all emissions screening pursuant to Paragraph 29.c, above, Defendants shall submit to EPA and CARB a list and description of all Procured Vehicles in the Aging Test Vehicle Pool. The submittal shall include (1) all services and maintenance records that Defendants collected from sellers and dealer databases, (2) the log of all maintenance performed by Defendants on the Procured Vehicles, (3) a checklist for each Procured Vehicle documenting that it passed the initial screenings conducted under Paragraph 29.a, and (4) the Emissions Test Results from the emissions screening conducted under Paragraph 29.c, above. After receipt of this information, EPA and CARB will select two Procured Vehicles that, together with the MY 2016 Ram 1500 Test Vehicle, shall serve as the Aging Test Vehicles. One of the Aging Test Vehicles selected by EPA and CARB will be a MY 2014 Jeep Grand Cherokee, and the other shall be a MY 2015 Ram 1500. After EPA and CARB select the Aging Test Vehicles, all other Procured Vehicles in the Aging Test Vehicle Pool shall be designated as Backup Vehicles.

       e.    <u>Mileage Accumulation</u>.

           i.    No later than 15 days after EPA's and CARB's designation of the Aging Test Vehicles, Defendants shall commence aging of each Aging Test Vehicle on a dynamometer

or a test track to 117,000 miles using the MY 2018 Mileage Accumulation Method. Defendants, at their option and at any time, may also decide to age Backup Vehicles, in which case Defendants shall employ the same aging method that they use for the Aging Test Vehicles. Defendants, at their discretion, may temporarily suspend aging of any vehicle to conduct interim emissions testing before proceeding to accumulate mileage to 117,000 miles. In the event that Defendants conduct such interim testing, Defendants shall follow the same procedures required under Paragraphs 29.c.i to 29.c.iv, above. Defendants shall provide Emissions Test Results and all other Emissions Test Data from interim testing to EPA and CARB within 15 days of completing such testing in accordance with Paragraph 35 (Information Sharing with EPA and CARB).

        ii.        If, during mileage accumulation conducted pursuant to Paragraph 29.e.i above, an Aging Test Vehicle is unable to complete aging to 117,000 miles, Defendants may replace the Aging Test Vehicle with a comparable Backup Vehicle, provided that Defendants provide EPA and CARB with written notice at least 20 days in advance of making this replacement. Such notice shall set forth all facts and circumstances currently known as to why the Aging Test Vehicle could not complete aging, and provide any and all reasons as to why Defendants believe that the replacement is necessary. If Defendants believe that the Aging Test Vehicle was unable to complete aging to 117,000 miles due to the lack of durability of the emission control system or the Approved Emissions Modification, Defendants shall conduct a Root-Cause Evaluation in accordance with Paragraph 31.a, below.

        iii.        Defendants shall provide all data, vehicles, and information reasonably requested by EPA and CARB to evaluate the circumstances that led to the replacement of any Aging Test Vehicle. Based upon their evaluation of this information, EPA and CARB may (1) accept Defendants' selection of the Backup Vehicle as a replacement for the original Aging

1    Test Vehicle, (2) direct Defendants to resume aging and testing of the original Aging Test

2    Vehicle, (3) require Defendants to conduct a Root-Cause Evaluation of the original Aging Test

3    Vehicle under Paragraph 31.a, below, or (4) undertake some combination of these alternatives.

4            f.      Emissions Testing.  Within 15 days of an Aging Test Vehicle (or a Backup

5    Vehicle that replaces an original Aging Test Vehicle pursuant to Paragraph 29.e) accumulating 117,000

6    miles, Defendants shall commence emissions testing of the vehicle, using the same procedures required

7    under Paragraphs 29.c.i-29.c.iv, above.  Defendants shall provide the Emissions Test Results and all

8    other Emissions Test Data to EPA and CARB in accordance with Paragraph 35 (Information Sharing

9    with EPA and CARB).  An Aging Test Vehicle (or a Backup Vehicle that replaces an original Aging

10   Test Vehicle) will be deemed to have failed emissions testing if any Emissions Test Result, together

11   with the applicable Adjustment Factors, exceeds the relevant FUL emissions standards referenced in

12   Paragraph 28, unless within 30 days of the emissions test Defendants submit a written request to EPA

13   and CARB in accordance with Paragraph 29.g, below, to invalidate the Emissions Test Results

14   ("Invalidation Request").   If Defendants do not submit a timely Invalidation Request, Defendants shall

15   conduct a Root-Cause Evaluation in accordance with Paragraph 31.b, below, to determine the reason(s)

16   why the vehicle failed emissions testing.

17           g.      Invalidation Request.  No later than 30 days after the date of an emissions test that

18   generates Emissions Test Results that, together with applicable Adjustment Factors, would cause an

19   Aging Test Vehicle (or a Backup Vehicle that replaces an original Aging Test Vehicle pursuant to

20   Paragraph 29.e) to be deemed in non-compliance with the emissions standards referenced in Paragraph

21   28, Defendants may submit an Invalidation Request to EPA and CARB if they believe that, due to a

22   technical issue with the generation of data during the emissions test, the Emissions Test Results should

23   be disregarded for the purpose of determining compliance with the emissions standards referenced in

24   Paragraph 28.  As part of the Invalidation Request, Defendants may provide EPA and CARB with

25

supplemental Emissions Test Results and Emissions Test Data from repeat emissions testing using the same vehicle that generated the Emissions Test Results that are the subject of the Invalidation Request. If EPA and CARB grant the Invalidation Request, the vehicle that initially failed emissions testing shall repeat the emissions testing in accordance with Paragraph 29.f, above, except that such re-testing is not necessary if EPA and CARB determine that supplemental Emissions Test Results, together with applicable Adjustment Factors, submitted in support of the Invalidation Request show that the vehicle complies with the emissions standards reference in Paragraph 28.  If EPA and CARB deny the Invalidation Request, they shall jointly issue a written decision setting forth the technical bases for their decision.  For the purpose of determining Defendants' obligation to conduct a Root-Cause Evaluation pursuant to Paragraph 31.b, below, the date that EPA and CARB issue their written decision shall constitute the date that the Aging Test Vehicle (or a Backup Vehicle that replaces an original Aging Test Vehicle pursuant to Paragraph 29.e) failed emissions testing.

30.     In-Use Verification and In-Use Confirmatory Testing.  No later than one year after the Effective Date, Defendants shall, as detailed below, undertake and complete in-use testing to verify that Subject Vehicles that have received the Approved Emissions Modification remain in compliance with the emissions standards referenced in Paragraph 28.  For each year thereafter, for a total period of no more than 5 years from the Effective Date, Defendants shall repeat in-use testing required under this Paragraph, except for Subject Vehicles within a particular model year that are the subject of a determination of non-compliance issued under Paragraph 31.e, below, that requires Defendants to submit a remedial plan, or for which Defendants have submitted a remedial plan pursuant to Paragraph 31.f, below.  In conducting such testing in any given year, Defendants shall comply with the procedures set forth in Paragraphs 30.a-30.d, below.  Nothing herein requires Defendants to test any Subject Vehicle that is beyond FUL.  Defendants shall generate records required under 40 C.F.R. § 86.1847-01

and maintain such records in accordance with Section XI (Information Collection and Retention and CBI).

a. <u>Selection of Vehicles for In-Use Verification Testing</u>. Each year, Defendants shall select no less than seven Subject Vehicles that have been updated with the Approved Emissions Modification for the purpose of conducting in-use verification testing ("IUVT Vehicles"). Defendants shall select two IUVT Vehicles (one Jeep Grand Cherokee and one Ram 1500) from within California following the procedures set forth at 13 C.C.R. § 2137, and they shall select the remaining five IUVT Vehicles randomly from owners and lessees outside of California following the procedures set forth at 40 C.F.R. § 86.1845-04(d) and Appendices I to III of 40 C.F.R. Part 86, Subpart S. Defendants shall select at least two IUVT Vehicles (including one Jeep Grand Cherokee and one Ram 1500) for each model year, inclusive of the IUVT Vehicles selected for the required California testing. Defendants may not exclude Subject Vehicles from being selected as IUVT Vehicles solely based on the lack of maintenance records or a history of multiple owners or repairs. No later than 90 days after the Effective Date, Defendants shall propose, in writing, to EPA and CARB specifications as to mileage, vehicle body types and configurations, and axle ratios that Defendants will use to select IUVT Vehicles for in-use verification testing pursuant to this Consent Decree over the next five years. Such specifications shall be deemed to be approved unless, within 30 days of their receipt, EPA and CARB provide written notice to Defendants of alternative specifications for selecting IUVT Vehicles. Defendants shall comply with the specifications provided by EPA and CARB, unless within 30 days of receipt of such alternative specifications, Defendants invoke dispute resolution under Section X. In no event shall Subject Vehicles with mileage equal to or greater than 119,000 miles, be used for testing under this Paragraph 30.

b. <u>Emissions Tests for In-Use Verification Testing</u>. For each of the IUVT Vehicles selected for in-use verification testing in accordance with Paragraph 30.a, above, Defendants shall

conduct FTP75, US06, and HWFE emissions tests. At the outset of such testing, Defendants shall

conduct Road-Load Determination Procedures with respect to each of the IUVT Vehicles for the

purpose of determining dynamometer settings for emissions testing of each vehicle. Defendants shall

conduct such emissions tests and calculate emissions results following the procedures set forth in

Paragraphs 29.29.c.i-29.c.iv, above. Defendants shall provide the Emissions Test Results and all other

Emissions Test Data to EPA and CARB in accordance with Paragraph 35 (Information Sharing with

EPA and CARB). If, after applying applicable Adjustment Factors, the Emissions Test Results for at

least two of the IUVT Vehicles exceed the emissions standards referenced in Paragraph 28, and if the

average emissions for all vehicles that exceed the emissions standards is 115% of the emissions

standards or greater, then Defendants shall undertake in-use confirmatory testing in accordance with

Paragraph 30.c, below.

       c.     <u>In-Use Confirmatory Testing</u>. Within 20 days of meeting the criteria for in-use

confirmatory testing set forth in Paragraph 30.b, above, Defendants shall submit to EPA and CARB for

review and approval an in-use confirmatory test plan ("IUCP") to test other Subject Vehicles within the

same model year as the IUVT Vehicles that triggered In-Use Confirmatory Testing. Defendants' IUCP

shall comply with the requirements of 40 C.F.R. § 86.1846-01(i) by describing the details of the vehicle

procurement, maintenance, and testing procedures (not otherwise specified by regulation) that

Defendants will use for in-use confirmatory testing. Upon approval of the IUCP, Defendants shall

undertake and complete the plan no later than six months after EPA and CARB approve the IUCP. The

approved IUCP shall only require Defendants to conduct FTP75, US06, and HWFE emissions tests.

       d.     Defendants shall apply the applicable Adjustment Factors to the Emissions Tests

Results conducted in accordance with the IUCP to determine each Subject Vehicle's emissions.

Defendants shall provide the Emissions Test Results and all other Emissions Test Data to EPA and

CARB in accordance with Paragraph 35 (Information Sharing with EPA and CARB). If the Emissions

Tests Results, together with the applicable Adjustment Factors, exceed an emissions standard referenced in Paragraph 28, Defendants shall conduct a Root-Cause Evaluation in accordance with Paragraph 31.c, below.

31. <u>Root-Cause Evaluation and Remedial Procedures for Subject Vehicles</u>.  Based upon the results of aging testing under Paragraph 29 or in-use testing under Paragraph 30, EPA and CARB will follow the procedures in this Paragraph 31 to determine whether Defendants shall undertake additional remedial measures to ensure that the Subject Vehicles comply with the emissions standards referenced in Paragraph 28.  Prior to issuance of such a determination pursuant to Paragraph 31.e, below, EPA and CARB will receive and consider the findings and recommendations of a Root-Cause Evaluation report submitted by Defendants pursuant to Paragraphs 31.a, 31.b, or 31.c, below, unless Defendants fail to submit such report more than 150 days after its applicable deadline.  EPA and CARB may agree, in writing, to extend the deadlines set forth below for the submission of Root-Cause Evaluation reports.

a. <u>Root-Cause Evaluation for Vehicles that are Removed from Mileage Accumulation under Paragraph 29.e</u>.  If an Aging Test Vehicle or Backup Vehicle begins, but cannot complete, mileage accumulation under Paragraph 29.e, and EPA and CARB request that Defendants conduct a Root-Cause Evaluation pursuant to Paragraph 29.e.iii or a Root-Cause Evaluation is otherwise required pursuant to Paragraph 29.e.ii, Defendants shall conduct such Root-Cause Evaluation to determine the reason(s) why the vehicle was unable to complete aging to 117,000 miles.  Defendants shall submit the Root-Cause Evaluation report to EPA and CARB within 60 days of EPA's and CARB's request that Defendants conduct a Root-Cause Evaluation pursuant to Paragraph 29.e.iii, or within 60 days from the date that Defendants replace the Aging Test Vehicle pursuant to Paragraph 29.e.ii.  Defendants shall provide all data, vehicles, and information reasonably requested by EPA and CARB to evaluate Defendants' Root-Cause Evaluation and any conclusions reached by Defendants.  In the report,

1  Defendants may recommend whether additional data or information is needed in order to evaluate the

2  reason(s) why the Subject Vehicle could not complete mileage accumulation.

3         b.     Root-Cause Evaluation for Vehicles that Cannot Meet Emissions Standards after

4  Aging to 117,000 Miles.  If an Aging Test Vehicle or Backup Vehicle that replaces an Aging Test

5  Vehicle fails to meet emissions standards in Paragraph 28 after aging to 117,000 miles, Defendants shall

6  conduct a Root-Cause Evaluation to determine the reason(s) for the failure and shall submit a report of

7  their findings to EPA and CARB within 120 days of the vehicle failing to meet the emissions standards.

8  As part of the Root-Cause Evaluation, Defendants may seek to demonstrate that the failed Aging Test

9  Vehicle or Backup Vehicle does not represent emissions levels and deterioration in actual use for

10  Subject Vehicles of the same model year.  As part of this demonstration, Defendants may age one or

11  more Backup Vehicles in the same model year as the failed Aging Test Vehicle to 117,000 miles using

12  the MY 2018 Mileage Accumulation Method and conduct emissions testing pursuant to Paragraphs

13  29.c.i- 29.c.iv.  Defendants shall provide all data, vehicles, and information reasonably requested by

14  EPA and CARB to evaluate Defendants' Root-Cause Evaluation and any conclusions reached by

15  Defendants.

16         c.     Root-Cause Evaluation for Vehicles that Cannot Meet Emissions Standards

17  During IUCP Testing.  If one or more Subject Vehicles fail to meet emissions standards in Paragraph 28

18  during IUCP testing, Defendants shall conduct a Root-Cause Evaluation to determine the reason(s) for

19  the failure, and shall submit a report of their findings to EPA and CARB within 120 days of the vehicle

20  failing to meet the emissions standards.  As part of the Root-Cause Evaluation, Defendants may seek to

21  demonstrate that the IUCP Vehicle that failed emissions testing does not represent emissions levels and

22  deterioration in actual use for Subject Vehicles of the same model year as the failed IUCP Vehicle.  In

23  the report, Defendants may recommend whether additional data or information is needed in order to

24  evaluate the reason(s) why the Subject Vehicle did not meet the emissions standard.  Defendants shall

25

provide all data, vehicles, and information reasonably requested by EPA and CARB to evaluate

Defendants' Root-Cause Evaluation and any conclusions reached by Defendants.

           d.      <u>EPA's and CARB's Options to Remedy Subject Vehicles that Fail Aging Testing or IUCP Testing</u>.  If Defendants miss the applicable deadline to submit a Root-Cause Evaluation report set forth under Paragraphs 31.a, 31.b, or 31.c, above, and Defendants fail to submit the Root-Cause Evaluation report within 150 days of missing the applicable deadline, EPA and CARB may issue a determination of non-compliance in accordance with Paragraph 31.e, below, without waiting to receive such report from Defendants.  Otherwise, upon receipt of the Root-Cause Evaluation report, EPA and CARB will follow either of the procedures set forth in Paragraphs 31.d.i or 31.d.ii, below, unless the agencies determine that no further action is required.

           i.      If, after considering a Root-Cause Evaluation report submitted under Paragraphs 31.a, 31.b, or 31.c, EPA and CARB determine that one or more Subject Vehicles failed Aging Testing or IUCP testing due, in whole or in part, to (a) the lack of durability of the emission control system as modified by the Approved Emissions Modification or (b) a failure of the Approved Emissions Modification, the agencies may issue a determination of non-compliance and require remedial action in accordance with Paragraphs 31.e and 31.f, below.

           ii.      If, after considering a Root-Cause Evaluation report submitted under Paragraphs 31.a, 31.b, or 31.c, EPA and CARB determine the Subject Vehicle could not meet emissions standards for any reason other than those set forth in Paragraph 31.d.i, above, they will follow their regulatory procedures for determining whether to implement a recall under 40 C.F.R. Part 85, Subpart S, and 13 C.C.R. §§ 2113 and 2123, or take other appropriate actions under their respective regulations.  Any administrative action taken by EPA or CARB as specified in this Paragraph 31.d.ii, shall not be subject to review under Section X (Dispute Resolution), except to the extent that the administrative action results in (a) a modification to the

Subject Vehicles that must comply with the procedures in Paragraph 25 (Restriction upon Modifications to Critical Emissions Controls, Thermal Management Strategies, or the OBD System) or other requirements of this Consent Decree and (b) an action or decision by EPA or CARB under the Consent Decree with respect to any such modification.  In any such dispute, Defendants may only challenge the action taken, or decision made, by EPA and CARB under the Consent Decree relating to the modification to the Subject Vehicles.

e.  <u>Determination of Non-Compliance</u>.  If EPA and CARB issue a determination of non-compliance in accordance with Paragraph 31.d.i, above, they will do so jointly and in writing, setting forth the factual, technical, and legal bases for their determination and addressing the recommendations and findings, if any, in Defendants' Root-Cause Evaluation report(s).  If EPA and CARB determine that the issue that caused the Subject Vehicle to fail Aging Test (under Paragraph 29) or in-use compliance testing (under Paragraph 30) is likely to occur in a substantial number of Subject Vehicles for any model year or is likely to cause certain Subject Vehicles to exceed emissions limits by a substantial margin, they may require Defendants to submit a remedial plan under Paragraph 31.f, below, for all Subject Vehicles within such model year.  Alternatively, if they determine that a remedial plan is not warranted under the circumstances, they may assess a stipulated penalty under Paragraph 86.j (Failure to Comply with Emissions Standards) with respect to the estimated number of vehicles within the model year that either do not comply with the emissions standards referenced in Paragraph 28 or are expected not to comply with such standards upon reaching their FUL.

f.  <u>Remedial Action</u>.  If EPA and CARB issue a determination of non-compliance under Paragraph 31.e, above, and if such determination requires the submittal of a remedial plan, Defendants shall submit such a plan to EPA and CARB for review and approval within 90 days of Defendants' receipt of the determination of non-compliance, unless Defendants challenge the determination of non-compliance under Section X (Dispute Resolution), in which event Defendants

shall submit the proposed remedial plan within 30 days of the final resolution of the dispute in favor of EPA and CARB.  The proposed remedial plan shall set forth the actions and schedule for recalling all Subject Vehicles covered by the determination of non-compliance and for bringing such vehicles into compliance with the emissions standards referenced in Paragraph 28.  The plan submitted to EPA shall comply with the requirements of 40 C.F.R. Part 85, Subpart S, and the plan submitted to CARB shall comply with the influenced recall requirements of 13 C.C.R. § 2114.  With respect to both Submissions, Defendants shall include a discussion of the proposed methods that they will employ for verifying that the approved remedial action will bring the Subject Vehicles into compliance with the emissions standards referenced in Paragraph 28.  Such proposed methods, at a minimum, shall include in-use verification testing and, as appropriate based on the results of the in-use verification testing, in-use compliance testing conducted pursuant to applicable regulations for no more than three years from the date Defendants commence implementation of the remedial action.  Upon approval of such plans, Defendants shall implement the approved remedial action in accordance with the approved schedule.

g.    <u>Extension of Recall Target Deadline</u>.  Simultaneously with their submission of a proposed remedial plan, Defendants shall submit to EPA and CARB for review and approval a proposed plan for achieving the National Recall Target and the California Recall Target in light of the need to recall such Subject Vehicles to bring them into compliance with the emissions standards referenced in Paragraph 28.  The proposed plan shall include (1) a proposed extension of the Recall Target Deadline based upon the National Recall Rate and the California Recall Rate as of the date of submittal of the proposed remedial plan and (2) a proposed modification of the Approved Emissions Modification Disclosure at Appendix D.  If EPA and CARB approve the remedial plan in accordance with Paragraph 31.f, above, they will follow the procedures in Paragraph 42.c for extending the Recall Target Deadline.  The approved extension of the Recall Target Deadline shall be used to determine whether Defendants will be required under Paragraph 41 (Recall Participation Targets) to make payments for

failure to meet the National Recall Target and the California Recall Target within the time limits

specified under this Consent Decree. If EPA and CARB reject the proposed plan for achieving the

National Recall Target and the California Recall Target, they will issue a joint decision, in writing,

setting forth the factual, technical, and legal reasons as to their decision.

h.    Remedy Failure. EPA and CARB may issue a written determination of remedy

failure if (1) Defendants inform EPA and CARB that the Subject Vehicles identified in the

determination of non-compliance cannot be modified so as to meet the emissions standards referenced in

Paragraph 28, (2) Defendants fail to submit a remedial plan after missing the deadline set forth in

Paragraph 31.f by 150 days or more, (3) Defendants propose a remedial plan that does not include a

viable technical solution for achieving compliance with the emissions standards referenced in Paragraph

28, or (4) based on the emissions performance of the Subject Vehicles following implementation of the

approved remedial action specified in Paragraph 31.f, EPA and CARB determine that the remedial

action failed to bring Subject Vehicles into compliance with such emissions standards. The joint

determination shall set forth the factual, technical, and legal bases for the determination of remedy

failure. Upon issuance of the written determination of remedy failure, Defendants shall be subject to

stipulated penalties as set forth in Paragraph 86.j (Failure to Comply with Emissions Standards) with

respect to the Subject Vehicles identified in the determination of non-compliance issued under

Paragraph 31.e, above, and notwithstanding any other provision of this Consent Decree including

Paragraphs 121-122 (concerning the effect of settlement), the United States and California reserve all

equitable rights to address such non-compliance under applicable laws and regulations by instituting

proceedings in this action or in a new action and/or by pursuing administrative remedies. If Defendants

timely invoke dispute resolution under Section X to challenge the determination of remedy failure, the

United States and California may institute civil or administrative proceedings to address non-

compliances with emissions standards only upon final resolution of the dispute in favor of EPA and

CARB.  Likewise, in the event of such a dispute, Defendants shall not be required to pay any stipulated penalties accruing under Paragraphs 86.j and 94 unless and until the final resolution of the dispute in favor of EPA and CARB.

32.     Compliance with OBD Requirements.

a.     Requirements Applicable to Subject Vehicles.  Except for Pre-Approved OBD Deficiencies, Additional OBD Non-Compliances, and the OBD issues identified in the Additional OBD and Inducement Disclosures, the Subject Vehicles that have been modified with the Approved Emissions Modification shall comply with the OBD requirements set forth at 13 C.C.R. § 1968.2.

b.     Alterations to Approved Emissions Modification to Address Issues Identified in Additional OBD and Inducement Disclosures.  No later than 90 days following the Effective Date of this Consent Decree, Defendants shall propose, in accordance with the procedures set forth in this Consent Decree, modifications to address the Additional OBD and Inducement Disclosures.

33.     OBD Testing.  To demonstrate performance of the OBD System in Subject Vehicles that have received the Approved Emissions Modification, within 480 days of the Effective Date, Defendants shall complete the testing set forth in this Paragraph and submit a summary report of such testing and all test results to CARB and EPA.  Defendants shall perform OBD demonstration testing on one MY 2014 Subject Vehicle and one MY 2015 Subject Vehicle.  Defendants may select either a Jeep Grand Cherokee or a Ram 1500 for the MY 2014 vehicle.  Whichever model Defendants select for MY 2014, Defendants must select the other for MY 2015.

a.     OBD Test Vehicles.  To perform the OBD demonstration testing, Defendants shall procure a MY 2014 OBD test vehicle and a MY 2015 OBD test vehicle (referred to herein as an "OBD Test Vehicle"), as well as at least one backup OBD test vehicle for each model year (referred to herein as an "OBD Backup Test Vehicle").  Each OBD Test Vehicle and OBD Backup Test Vehicle shall have between 45,000 and 65,000 miles.  Defendants shall screen procured vehicles for inclusion as

an OBD Test Vehicle and OBD Backup Test Vehicle using the same procedures set forth in Paragraphs 29.b and 29.c.i-29.c.iv (including installation of the Approved Emissions Modification), with the exception that following the initial screening of Procured Vehicles pursuant to Paragraph 29.b, Defendants shall conduct FTP75 emissions testing on the OBD Test Vehicles and OBD Backup Test Vehicles in the as-received configuration. Provided that such vehicles meet the applicable FTP75 emissions standard in the as-received configuration (inclusive of any applicable Adjustment Factors), or otherwise at Defendants' discretion, such vehicles shall be eligible for the OBD demonstration testing specified in this Paragraph 33.a. Upon completing the emissions screening of Procured Vehicles pursuant to Paragraphs 29.c.i-29.c.iv, Defendants shall then age the OBD Test Vehicles to FUL. Defendants need not age an OBD Backup Test Vehicle unless and until Defendants must use the OBD Backup Test Vehicle for the OBD demonstration testing specified in this Paragraph 33.a. To age the vehicles, Defendants shall use a combination of the Standard Road Cycle and the MY 2018 Mileage Accumulation Method, using each method to accumulate 50 percent of the total mileage needed to reach FUL.

b. <u>Required OBD Demonstration Tests</u>. Defendants shall conduct demonstration of the OBD monitors set forth below using the test methods set forth at 13 C.C.R. § 1968.2(h)(5) and the evaluation criteria set forth at 13 C.C.R. § 1968.2(h)(6). Defendants may apply the value used to represent the frequency of regenerations that Defendants developed and applied in conducting OBD demonstrations for the MY 2017 Ram 1500.

i. For the MY 2014 OBD Test Vehicle, Defendants shall conduct the following OBD emissions demonstration tests: Fuel Injector Quantity Low (P026C), NOx Sensor Upstream Offset Low (P1287), SCR Efficiency (P20EE), Air/Fuel Sensor Offset Rich (P2196), Upstream NOx Sensor Stuck Low (P225D), Fuel Injection Timing-Over Advanced (P01D4),

Fuel Injection Timing-Over Retarded (P01CB), and Upstream NOx Sensor Slow Response (P22FA).

ii.      For the MY 2015 OBD Test Vehicle, Defendants shall conduct the following OBD emissions demonstration tests: Fuel Rail Pressure Too High (P0088), Turbo Underboost (P0299), NOx Sensor Downstream Offset Low (P1289), Fuel Injector Quantity Low (P026C), NOx Sensor Upstream Offset Low (P1287), SCR Efficiency (P20EE), Air/Fuel Sensor Offset Rich (P2196), Upstream NOx Sensor Stuck Low (P225D), Fuel Injection Timing-Over Advanced (P01D4), Fuel Injection Timing-Over Retarded (P01CB), and Upstream NOx Sensor Slow Response (P22FA).

iii.      Defendants shall conduct additional OBD emissions demonstration tests on both the MY 2014 OBD Test Vehicle and the MY 2015 OBD Test Vehicle for any monitors that meet the following selection criteria:

a)      For any monitor included among the Pre-Approved OBD Deficiencies for exceeding the applicable OBD emissions threshold, Defendants shall conduct additional OBD emissions demonstration tests if the emissions test results for the OBD emissions demonstration test from the MY 2018 Ram 1500 full OBD emissions demonstration testing is greater than 150 percent of the applicable OBD emissions threshold.

b)      For all other monitors, Defendants shall conduct additional OBD emissions demonstration tests if the emissions test results for the OBD emissions demonstration test from the MY 2018 Ram 1500 full OBD emissions demonstration testing is greater than 80 percent of the applicable OBD emissions threshold.

34.    New OBD Non-Compliances.

a.    For any OBD non-compliance disclosed by Defendants to CARB and EPA, or that CARB and EPA otherwise discover, and that has not been identified as a Pre-Approved OBD Deficiency, an Additional OBD Non-Compliance, or identified among the Additional OBD and Inducement Disclosures, Defendants shall pay a stipulated penalty as set forth in Paragraph 86.k and provide additional time to the Extended Warranty as set forth in Paragraph 86.k.  For any OBD non-compliance that could cause a consumer's vehicle to fail or not complete the Inspection and Maintenance program testing (in accordance with 13 C.C.R. § 1968.5(b)(6)(C)(ii)), in lieu of providing additional time to the Extended Warranty, Defendants shall submit to CARB and EPA for review and approval a remedial plan in accordance with 13 C.C.R. § 1968.5(d) to address the OBD non-compliance that could cause the vehicle to fail the Inspection and Maintenance program, provided that Defendants shall not be subject to the OBD recall provisions if a vehicle fails or is otherwise not able complete the Inspection and Maintenance program because insufficient miles have been accumulated on the vehicle following application of the Approved Emissions Modification to clear any fault codes or Inspection and Maintenance readiness flags.

b.    For any OBD non-compliance for one model in a test group disclosed by Defendants to CARB and EPA, or that CARB and EPA otherwise discover, and that has not been identified as a Pre-Approved OBD Deficiency, an Additional OBD Non-Compliance, or identified among the Additional OBD and Inducement Disclosures, the entire test group is presumed to have that OBD non-compliance (e.g., if the MY 2014 Ram has such an OBD non-compliance, the MY 2014 Jeep Grand Cherokee is also deemed to have the same OBD non-compliance).  However, Defendants may overcome this presumption by demonstrating to CARB and EPA that a particular OBD non-compliance does not apply to both models in a test group before being subject to any recall requirements to address the OBD non-compliance that caused a failure of the Inspection and Maintenance program pursuant to

Paragraph 34.a, stipulated penalties pursuant to Paragraph 86.k, or Extended Warranties pursuant to Paragraph 86.k of this Consent Decree.  CARB and EPA shall issue a joint written decision if they reject Defendants' demonstration, setting forth the factual, technical, and legal bases for such rejection of Defendants' demonstration.

       c.     <u>Penalty Payment to CARB for Additional OBD Non-Compliances</u>.  Defendants shall make one aggregate penalty payment to CARB for each Additional OBD Non-Compliance on each Subject Vehicle in California.  The total penalty due to CARB under this Paragraph is $3,175,200.  Within 30 days of the Effective Date, Defendants shall pay the penalty due under this Paragraph to CARB according to the instructions set forth in Paragraph 96.

    35.    <u>Information Sharing with EPA and CARB</u>.

       a.     <u>Notification of Testing</u>.  Defendants shall notify EPA and CARB 15 days prior to conducting emissions tests in accordance with Paragraphs 29 (Aging Testing) and 30 (In-Use Verification Testing and In-Use Confirmatory Testing), so that the agencies can arrange to observe the testing.

       b.     <u>Notification of Test Failure</u>.  In the event that a Subject Vehicle fails an emissions test, Defendants shall provide written notice to EPA and CARB within 72 hours of such an event.

       c.     <u>Update of Internal Quality Control and Quality Assurance Procedures</u>.  In the event that Defendants update or modify the procedures listed and described in the Internal Quality Control and Quality Assurance Procedures, Defendants shall submit a copy of such changes to EPA and CARB within 30 days of making such changes.

       d.     <u>EPA and CARB Data Portal</u>.  Defendants shall provide EPA and CARB with access to an internet-based portal to download data relating to test vehicles.  Beginning no later than two weeks following the commencement of any emissions testing under this Consent Decree, and continuing every two weeks thereafter until all emissions testing under this Consent Decree has been completed,

Defendants shall provide to the portal updates of Emissions Test Results and all other Emissions Test Data, as well as provide updates of all standardized OBD data collected from testing vehicles both before and after emissions testing. Defendants have no duty to provide updates to the portal during those weeks where no data is available. Data uploaded to the portal shall remain available to EPA and CARB until termination of the Consent Decree.

e. <u>Dynamometer Data Reporting Requirements</u>. Defendants shall provide Emissions Test Results and all other Emissions Test Data in the native format in which it exists as collected by Defendants and, in addition, shall provide the emissions summary report in Excel format. For any test that Defendants believe to be invalid, Defendants shall identify any and all reasons supporting this belief. Likewise, for any interrupted or aborted test, Defendants shall provide any and all reasons why the test was interrupted or aborted. Defendants shall provide the following information with respect to all Emissions Data Results:

i. <u>ECU Data</u>. Defendants shall provide a separate data log file for data collected from the ECU for each emissions test. Defendants shall collect data for all of the parameters set forth in the ECU Data Parameters List from each test vehicle during each test. Defendants shall provide the data in ETAS/INCA data format (i.e., .dat), except in the event that Emissions Test Results, together with the applicable Adjustment Factors in Appendix A, exceed the emissions standards referenced in Paragraph 28, above, in which event Defendants shall provide the data in a spreadsheet (e.g., .xlsx or .ascii) or comma separated values (CSV). In providing data, Defendants shall apply a file-naming convention that identifies the Vehicle Identification Number ("VIN") of the test vehicle, the model year of the test vehicle, the test drive cycle, and date of test cycle;

ii. <u>Continuous Emissions Data</u>. Defendants shall provide all second-by-second raw emissions measurements for NOx, total hydrocarbons ("THC"), carbon monoxide

("CO"), and carbon dioxide ("CO2") for each emissions test performed. Defendants shall provide this raw data in a CSV format that can be imported into a spreadsheet or database. Defendants shall also provide all second-by-second raw emissions measurements for non-methane hydrocarbons ("NMHC") if and when Defendants have commissioned test facilities to conduct this measurement;

iii. <u>Bag Results</u>. Defendants shall provide an emissions test report containing the bag results for the emissions tests performed on a dynamometer, including (but not limited to) the bag results for PM; and

iv. <u>Standardization OBD Data</u>. Defendants shall provide all downloads of all standardized OBD data, in accordance with 13 C.C.R. § 1968.2, of the tested vehicles. This data shall be collected both pre- and post-testing for each emissions test.

f. <u>OBD Data</u>. For OBD testing performed pursuant to Paragraph 33 (OBD Testing), Defendants shall provide test data collection as set forth at 13 C.C.R. § 1968.2(h)(5.3), including all test data as detailed in 13 C.C.R. § 1968.2(h)(5.3.2), and a separate data log file for data collected from the ECU for each test. Defendants shall ensure that data collected from the ECU in the test vehicles includes all of the parameters set forth in the OBD Demonstration ECU Data Parameters List. Defendants shall provide the OBD Demonstration ECU data in ETAS/INCA data format (i.e., .dat), and they shall apply a file-naming convention that identifies the VIN of the test vehicle, the model year of the test vehicle, the test drive cycle, and date of test cycle.

g. <u>Public Data Portal</u>. Defendants shall establish and maintain an internet-based portal to enable the public to download Emissions Test Results generated under Paragraph 29 (Aging Testing) or Paragraph 30 (In-Use Verification and In-Use Confirmatory Testing). Such data shall include continuous emissions data (as described in Paragraph 35.e.ii, above) and bag results (as described in Paragraph 35.e.iii, above). Defendants shall not be required to post any data to the portal

that they claim is confidential business information ("CBI") unless and until EPA issues a determination rejecting such claim and such determination is no longer subject to challenge by Defendants. Data uploaded to the portal shall remain available until termination of the Consent Decree.

36. <u>Reporting Requirements</u>. In accordance with the timing for annual reports required by Paragraph 70.a, Defendants shall send an annual report to EPA and California that includes:

a. A list and descriptions of all modifications to the Subject Vehicles made within the past twelve month period under Paragraphs 24 or 25;

b. A summary of all activities, if any, within the past twelve months relating to aging testing under Paragraph 29, including the procurement and screening of vehicles, mileage accumulation on Aging Test Vehicles and/or Backup Vehicles, emissions testing, and Root-Cause Evaluations;

c. A summary of all activities, if any, within the past twelve months relating to in-use testing under Paragraph 30, including the selection and screening of Subject Vehicles, in-use verification testing of such vehicles, in-use confirmatory testing of such vehicles, emissions testing, and Root-Cause Evaluations;

d. A summary of all activities, if any, within the past twelve months relating to remedial action under Paragraph 31.f, including the submission of a remedial plan or the implementation of an approved remedial plan and schedule; and

e. A summary of all activities, if any, within the past twelve months relating to OBD testing under Paragraph 33, including the disclosure of any new OBD non-compliances as described in Paragraph 34.

**B.** **<u>Emissions Modification Recall Program</u>**

37. <u>Establishment of Recall Program</u>. Defendants shall establish an Emissions Modification Recall Program in accordance with the requirements of this Section VI.B. Under the program, Defendants shall offer and, if accepted, provide the Approved Emissions Modification, together with the

applicable disclosures as described in Paragraph 43.b and applicable warranties as described in

Paragraph 45.a, to Eligible Owners and Eligible Lessees of Subject Vehicles that meet the eligibility

requirements set forth under this Consent Decree (i.e., Eligible Vehicles).  As described in Paragraph 41

(Recall Participation Targets), the Recall Program shall have the goal of implementing the Approved

Emissions Modification on at least 85 percent  of all Subject Vehicles, both in the United States and in

the State of California, by no later than the 2-year anniversary of the Effective Date ("Recall Target

Deadline").

38.  <u>Offer to Modify Subject Vehicles with Approved Emissions Modification</u>.

a.  No later than 15 days after the Effective Date, Defendants shall offer to Eligible

Owners and Eligible Lessees the Approved Emissions Modification, as described in Paragraph 23.

Defendants shall notify Eligible Owners and Eligible Lessees of this offer in accordance with Paragraph

43 (Notices and Disclosures Regarding Recall Program).  For each Eligible Owner and Eligible Lessee

that accepts this offer, Defendants shall provide the Approved Emissions Modification in accordance

with this Paragraph 38.  In addition, Eligible Owners and Eligible Lessees of Subject Vehicles that have

received the Approved Emissions Modification shall receive from Defendants an Extended Warranty in

accordance with Paragraph 45 (Warranty Obligations).

b.  <u>Scheduling</u>.  Defendants shall use commercially reasonable efforts to complete

the Approved Emissions Modification for a given Eligible Vehicle within 15 days of the date on which

an Eligible Owner or Eligible Lessee requests and schedules the modification, either through

Defendants' call center or by contacting a Dealer.  During the period from the Effective Date through

the eighteenth (18th) anniversary of the Effective Date, in no event shall an Eligible Owner or Eligible

Lessee be required to wait more than 75 days for a scheduled appointment to receive the Approved

Emissions Modification after requesting an appointment through Defendants' call center or by

contacting a Dealer.

c.      <u>Call Center and Online Support</u>.  Defendants shall, as part of the Recall Program, provide a toll-free call center staffed during normal business hours and a web page accessible from Defendants' primary consumer website in the United States.  The call center shall respond to consumer questions and concerns about the Approved Emissions Modification, and shall provide assistance in: (1) scheduling appointments at Dealers to receive the Approved Emissions Modification; (2) answering questions regarding the effects of the Approved Emissions Modification on the Subject Vehicles as described in Appendix D (Disclosure); (3) providing information about the Extended Warranty and warranty protections contained in Paragraph 45 (Warranty Obligations); and (4) providing information about any consumer incentives or benefits being offered in connection with the Approved Emissions Modification.  The web page shall provide information specified in clauses (3) and (4) of the preceding sentence.  Such call center and web page shall be maintained by Defendants and operational through the Recall Target Deadline.

d.      <u>No Consideration May Be Required</u>.  In no event shall Defendants request or receive any consideration from Eligible Owners or Eligible Lessees as a condition for Defendants' duty to offer and provide the Approved Emissions Modification and Extended Warranty.  Defendants, their agents, contractors, dealers, successors, or assigns shall provide the Approved Emissions Modification and the Extended Warranty free of charge to all Eligible Owners and Eligible Lessees.  Defendants may not require any release of liability for any legal claims or arbitration of any claim that an Eligible Owner or Eligible Lessee may have against Defendants or any other person solely in exchange for receiving the Approved Emissions Modification or the Extended Warranty.

e.      <u>Grounds for Refusal to Apply the Modification to an Eligible Vehicle</u>.  If an Eligible Vehicle has been altered with the use of any after-market emissions-related components, parts, and/or software or the removal of any original emissions-related components, parts, and/or software, and such alteration(s) are likely to substantially affect the operation of the vehicle with the Approved

Emissions Modification or substantially impede installation of the Approved Emissions Modification, Defendants shall not be required to install the Approved Emissions Modification on the Eligible Vehicle until the owner of such vehicle, at his or her expense, has reversed the alteration(s) such that the Approved Emissions Modification may be installed and not be substantially affected. Defendants may receive half credit toward the National Recall Target and the California Recall Target for such vehicles, but only to the extent that such vehicles meet the definition of Owner-Altered Subject Vehicles and Defendants comply with Paragraph 41.c below.

f.      No Prohibition on Other Incentives.  Nothing in this Consent Decree is intended to prohibit Defendants from offering an Eligible Owner or Eligible Lessee any further incentives or trade-in options from time to time in addition to those contemplated herein; however, Defendants may not offer Eligible Owners or Eligible Lessees other incentives or trade-in options in lieu of the requirements contained herein, in whole or in part.

39.     No End Date for Emissions Modifications Recall.  Except as otherwise provided under this Consent Decree and in Paragraph 38.c, Defendants' duties and responsibilities under Paragraph 38 (Offer to Modify Subject Vehicles with Approved Emissions Modification) to offer and provide the Approved Emissions Modification to Eligible Owners and Lessees shall not terminate, subject to the terms of this Paragraph.  Defendants must continue to provide the Approved Emissions Modification to all Eligible Owners or Eligible Lessees as provided in Paragraphs 38.a and 38.b through the eighteenth (18th) anniversary of the Effective Date.  Following the eighteenth (18th) anniversary of the Effective Date, Defendants must continue to provide the Approved Emissions Modification as provided in Paragraph 38.a where feasible, and must make reasonable efforts to ensure that the Approved Emissions Modification continues to remain available.  Such reasonable efforts shall include, at a minimum: (1) maintaining an inventory of Subject Vehicle-compatible ECUs and TCUs, the electronic file that constitutes the Approved Emissions Modification, and the tools, equipment, and instructions necessary

for installing the Approved Emissions Modification; (2) communicating to Dealers through Defendants' electronic dealer communication system that this Approved Emissions Modification is "open" and that Defendants' retains the electronic file that constitutes the Approved Emissions Modification, along with the tools and instructions required to install the Approved Emissions Modification; and (3) providing the Approved Emissions Modification, whether through a Dealer or otherwise, to Eligible Owners and Eligible Lessees pursuant to this Paragraph 39 for as long as the necessary parts, tools, and equipment referred to in clause (1) above remain in working order and/or are available from third parties.  In accordance with Section XVIII (Termination), the requirements contained in this Paragraph 39 shall continue in full force and effect after Termination of the Consent Decree.  Defendants may move for Termination of the Consent Decree pursuant to the requirements of Section XVIII even though the provisions of this Paragraph 39 remain in full force and effect.

40.  <u>Owner-Altered Subject Vehicle Report</u>.  Defendants shall, no later than 30 days following the Effective Date, submit to EPA and CARB in accordance with the requirements of Section XIV (Notices) an Owner-Altered Subject Vehicle Report that contains a list by VIN of all Subject Vehicles that, based on information obtained by Defendants, meet or are likely to meet the definition of an Owner-Altered Subject Vehicle.  Such list shall identify with specificity: (1) the alterations that are potentially associated with each Owner-Altered Subject Vehicle, including the particular hardware or software changes or modifications (including removal) associated with the vehicle and, if known, the name of the manufacturer or vendor of such hardware or software; (2) the model and model year of the vehicle; and (3) if known, the state in which the vehicle is registered.  Where applicable, the Owner-Altered Subject Vehicle Report shall also describe how, to the best of Defendants' knowledge, the particular hardware or software alteration(s) or removal(s) is likely to reduce the effectiveness of the emission control system if installed on a Subject Vehicle.  The Owner-Altered Subject Vehicle Report shall not contain any PII other than the VINs of the Owner-Altered Subject Vehicles.  For each element

of software, part or component that Defendants contend is likely to reduce the effectiveness of the emission control system if installed on a Subject Vehicle, Defendants shall include with the Owner-Altered Vehicle Report copies of any reasonably available advertisements, product literature, or other material that supports Defendants' contention. Until the Recall Target Deadline, Defendants may supplement the Owner-Altered Subject Vehicle Report or otherwise proffer evidence to claim credit for additional vehicles pursuant to Paragraph 41.

41. <u>Recall Participation Targets</u>. By no later than the Recall Target Deadline, Defendants shall perform the Approved Emissions Modification on at least 85% of those Subject Vehicles that existed and were registered as of October 1, 2018, as defined below ("National Recall Target"). Additionally, by no later than the Recall Target Deadline, Defendants shall perform the Approved Emissions Modification on at least 85% of those Subject Vehicles that existed and were registered in California as of October 1, 2018, as defined below ("California Recall Target"). Defendants shall receive credit toward the National Recall Target (and for California vehicles, the California Recall Target) for: (1) every Approved Emissions Modification of a Subject Vehicle that Defendants execute prior to the Recall Target Deadline; (2) any Subject Vehicle that is scrapped or otherwise permanently removed from commerce between October 1, 2018 and the Recall Target Deadline; and (3) any Owner-Altered Subject Vehicles that qualifies for half credit under Paragraph 41.c below, provided that no Subject Vehicle may be counted more than once. These three enumerated options are the exclusive ways in which Defendants may receive any credit toward the National Recall Target and California Recall Target under this Consent Decree. For purposes of this Paragraph, the total number of Subject Vehicles that existed and were registered as of October 1, 2018 is 100,148, unless the class of vehicles covered by the Related Class Action Settlement does not include any Canadian Subject Vehicles, in which case the number of Subject Vehicles is set at 99,257. For purposes of this Paragraph, the total number of Subject Vehicles registered in California as of October 1, 2018 is 13,325.

a.     If, by the Recall Target Deadline, Defendants fail to achieve the 85% Recall Rate Targets required by this Paragraph 41, Defendants shall make payments as follows:

i.     <u>National Recall Rate Payment</u>.  For failure to reach the National Recall Target, Defendants shall make a payment of $5,500,000 for each 1% that the National Recall Rate falls short of the National Recall Target.  In calculating any payment required under this subparagraph, the National Recall Rate shall be rounded to the nearest half percentage point.

ii.     <u>California Recall Rate Payment</u>.  For failure to reach the California Recall Target, Defendants shall make a payment of $825,000 for each 1% that the California Recall Rate falls short of the California Recall Target.  In calculating any payment required under this subparagraph, the California Recall Rate shall be rounded to the nearest half percentage point.

b.     All payments made pursuant to this Paragraph 41 shall be made in the manner set forth in Section IV (Civil Penalty) and shall be made no later than 30 days following the Recall Target Deadline.  Payments relating to the National Recall Target shall be made to the United States in the manner set forth in Paragraph 10.  Payments relating to the California Recall Target shall be made to CARB in the manner set forth in Paragraph 12.

c.     Defendants may receive credit toward the National Recall Target for up to 6,000 Owner-Altered Subject Vehicles, and may receive credit toward the California Recall Target for up to 900 Owner-Altered Subject Vehicles registered in California, that have not received an Approved Emissions Modification prior to the Recall Target Deadline, provided that Defendants meet the requirements of this Paragraph 41.c with respect to such vehicles.  The credit received for each Owner-Altered Subject Vehicle shall be limited to one half the credit that Defendants may receive for each Subject Vehicle that receives the Approved Emissions Modification (i.e., for 6,000 Owner-Altered Subject Vehicles, Defendants may receive credit for 3,000 vehicles against the National Recall Rate; and for 900 Owner-Altered Subject Vehicles registered in California, a credit of 450 vehicles against the

California Recall Rate).  In order to receive credit toward the Recall Targets for an Owner-Altered

Subject Vehicle, Defendants must:

      i.      Identify the Owner-Altered Subject Vehicle by VIN in a final Owner-
Altered Subject Vehicle Report to EPA and CARB consistent with the requirements of
Paragraph 40 to be submitted upon the expiration of the Recall Target Deadline.  Such report
must state separately for each Owner-Altered Subject Vehicle whether the vehicle is registered in
California.  The report shall not contain any PII other than the VIN.

      ii.      Provide evidence that the Owner-Altered Subject Vehicle has been the
subject of no fewer than three written communications from Defendants to the Eligible Owner or
Eligible Lessee of the vehicle regarding the availability of the Approved Emissions Modification
sent a minimum of 30 days apart, or that the Owner-Altered Subject Vehicle was brought to a
Dealer and did not receive the Approved Emissions Modification; and

      iii.      Confirm that such Owner-Altered Subject Vehicles have not, as of the date
of the Report concerning such Owner Altered Subject Vehicles, received the Approved
Emissions Modification or been scrapped or otherwise permanently removed from commerce.

42.     <u>Adjustments to Recall Program in the Event of Future Remedial Action</u>.

      a.     <u>Amendment of Approved Emissions Modification for Subject Vehicles Repaired
Pursuant to a Remedial Action</u>.  If and when EPA and CARB approve a remedial action under
Paragraph 31.f (Remedial Action), the Approved Emissions Modification ("Original AEM") shall
immediately, and without any further action by the Court, be amended for all Subject Vehicles that are
to be repaired under the approved remedial action ("RA Subject Vehicles").  The amended Approved
Emissions Modification ("Amended AEM") for the RA Subject Vehicles shall replace the Original
AEM or may include the Original AEM as updated and/or supplemented by repairs required by EPA and
CARB under the approved remedial action.  Wherever the term "Approved Emissions Modification"

appears in this Consent Decree, such term as applied to the RA Subject Vehicles means the Amended AEM.  If no remedial action is approved by EPA and CARB under Paragraph 31.f (or no such remedial action is proposed by Defendants), the Original AEM shall remain in effect as the operative Approved Emissions Modification for such vehicles.

      b.   <u>Adjustment of Recall Rates</u>.  Notwithstanding any other Paragraph under this Consent Decree, Defendants shall receive no credit toward the National Recall Target (and for California, the California Recall Target) for RA Subject Vehicles updated with the Original AEM in the event that EPA and CARB approve a remedial action under Paragraph 31.f to repair the RA Subject Vehicles.  Instead, for all such vehicles, Defendants shall receive credit toward the National Recall Target (and for California, the California Recall Target) for every Amended AEM that Defendants install in an RA Subject Vehicle prior to the Recall Target Deadline, as well as any RA Subject Vehicle that is scrapped or otherwise permanently removed from commerce or that qualifies as an Owner-Altered Subject Vehicle under Paragraph 41.c between October 1, 2018 and the Recall Target Deadline, provided that no RA Subject Vehicle may be counted more than once.

      c.   <u>Extension of Time to Meet Recall Targets</u>.  In the event that EPA and CARB approve a remedial action under Paragraph 31.f (Remedial Action), the agencies will extend the Recall Target Deadline set forth in Paragraph 37 for a period of not less than 4 months, and may, in their discretion, extend such deadlines for a longer period to the extent necessary to allow Defendants an appropriate amount of time to install the Amended AEM or Original AEM on Subject Vehicles.  In determining whether to grant an extension beyond 4 months, the agencies may consider, as they deem appropriate, the progress toward the Recall Targets, the number of vehicles that are subject to the remedial action, and the number of vehicles that are not subject to the remedial action.

      i.   If a remedial action is approved by EPA and CARB before the Recall Target Deadline set forth in Paragraph 37, any extension of the Recall Target Deadline allowed

under this Paragraph 42.c and Paragraph 31.g shall apply for all Subject Vehicles and shall not be limited solely to RA Subject Vehicles. In addition, if EPA and CARB approve a remedial action, no payment required under Paragraph 41.a shall be due until 30 days following the extended Recall Target Deadline allowed for under this Paragraph 42.c and Paragraph 31.g.

ii. If a remedial action is approved by EPA and CARB after the Recall Target Deadline set forth in Paragraph 37, EPA and CARB shall establish a new Recall Target Deadline under Paragraph 31.g with respect to the affected RA Subject Vehicles only, and Defendants shall be subject to the Recall Participation Targets in Paragraph 41 for all Subject Vehicles, subject to the requirements of Paragraph 42.b above. If, after the extended Recall Target Deadline for RA Subject Vehicles has passed, Defendants have failed to reach the Recall Participation Targets in Paragraph 41, in determining the amount of any payment owed pursuant to Paragraph 41 and Paragraph 42.b , Defendants shall receive credit for any payments already made under Paragraph 41. However, in no event shall Defendants be entitled to any refund of any payment made under Paragraph 41.a prior to a remedial action approval by EPA and CARB.

iii. As an example to illustrate the operation of Paragraph 42.c.ii above, if Defendants achieve an 82% recall rate nationally for all Subject Vehicles, Defendants would pay, within 30 days following the Recall Target Deadline, $16,500,000 in penalties according to the terms of Paragraph 41. If, sometime later, a remedial action is approved for a portion of Subject Vehicles, those vehicles that received the Original AEM and that are the subject of the remedial action would be subtracted from the 82% recall rate. For purposes of this example, assume this subtraction results in a revised recall rate of 77%). In accordance with Paragraph 42.c.ii, Defendants would be granted an extension of the Recall Target Deadline for RA Subject Vehicles only. If, at the end of this extension, Defendants have achieved a total recall of 80% in accordance with Paragraph 42.b, Defendants would owe an additional $11,000,000 in penalties.

Conversely, if Defendants achieve a total recall of 84% in accordance with Paragraph 42.b, Defendants would owe no additional penalties, but would not be entitled to a refund of any penalties already paid.

43.     Notices and Disclosures Regarding Recall Program.

        a.     Initial Program Notice.  No later 15 days after the Effective Date, Defendants shall send or cause to be sent by First-Class, postage paid U.S. mail to all Eligible Owners and Eligible Lessees known to Defendants notice of the Recall Program and a complete description of Eligible Owners and Eligible Lessees' rights thereunder.  Such notice must satisfy the requirements of Paragraph 43.a.i or 43.a.ii below.

                i.     Class Action Settlement Notice.  Defendants may satisfy their obligation under Paragraph 43 by sending to Eligible Owners and Eligible Lessees a Court-approved Class Action Settlement Notice as part of a Class Action Settlement if such notice is approved by the Court before the Effective Date of this Consent Decree and if EPA, in consultation with CARB, does not require Defendants to distribute an alternative notice pursuant to (ii) below.

                ii.     Alternative Notice.  If Defendants do not send to Eligible Owners and Eligible Lessees a Court-approved Class Action Settlement Notice in accordance with Paragraph 43.a., above, or if Defendants are advised by EPA, in consultation with CARB, at any time before January 22, 2019 that Defendants must submit to the agencies a proposed Recall Program notice different from the Class Action Settlement Notice (including, but not limited to, a proposed Recall Program notice for Eligible Owners or Eligible Lessees of Canadian Subject Vehicles), Defendants shall, no later than February 7, 2019, submit to the United States and California for review and approval a proposed notice together with a proposed plan for disseminating such notice to applicable Eligible Owners and Eligible Lessees.

b.     <u>Modification Disclosure</u>.  Before applying the Approved Emissions Modification to an Eligible Vehicle, Defendants shall provide to the affected Eligible Owner or Eligible Lessee a copy of an Approved Emissions Modification Disclosure ("Disclosure") that contains all information listed in Appendix D and also includes a link to the public website referenced in this Paragraph that contains the same information.  Such disclosure shall be included in the initial program notice described in Paragraph 43.a above.  In addition, an Approved Emissions Modification Disclosure that contains all the information listed in Appendix D shall be made available online on a public website by Defendants within two business days of the Effective Date.

c.     <u>Dealer Notice</u>.  No later than 15 days after the Effective Date, Defendants shall provide to Dealers in the United States a notice describing Dealers' obligations under the Recall Program.  Notices sent to Dealers under this Paragraph shall advise Dealers of their obligations to install the Approved Emissions Modification, disseminate the Modification Disclosure under Paragraph 43.b, and comply with the requirements of Paragraphs 38 above and 45 below.

d.     <u>Subsequent Notices</u>.  Nothing in this Consent Decree shall prevent Defendants from issuing subsequent notices or taking additional measures to inform Eligible Owners or Eligible Lessees of the Recall Program and encouraging prompt participation in the Recall Program, provided, however, that Defendants may not provide any notice or additional information regarding the Recall Program that is inconsistent with or contradictory to the notices required by Paragraph 43, and any notice or additional information must be consistent in all material respects with the Disclosure included as Appendix D, including any subsequent modifications to address unforeseen technical problems made pursuant to Paragraph 24 or any subsequent changes to the Approved Emissions Modification made pursuant to Paragraph 31.  Defendants shall provide a copy of any subsequent consumer notices regarding the Recall Program that they provide to Eligible Owners or Eligible Lessees to EPA, CARB, and CA AG in accordance with Section XIV (Notices) as part of Defendants' reports required by

Paragraph 47 and shall provide any such subsequent consumer notices regarding the Recall Program to CA AG at the time such notices are distributed to affected Eligible Owners or Eligible Lessees.

44.     <u>Vehicle Labeling</u>.  Defendants must permanently affix the labels described in this Paragraph 44 and in the form approved by EPA, in consultation with CARB, to each and every vehicle that receives the Approved Emissions Modification.  Such labels must: (1) not cover any previously affixed labels; (2) inform potential vehicle purchasers and potential lessees that the vehicle has received the Approved Emissions Modification, in accordance with Section VI.A; (3) conform to the requirements of the recall label required under 40 C.F.R. Part 85, Subpart S; and (4) identify any emissions control components installed or modified in accordance with the Approved Emissions Modification.

45.     <u>Warranty Obligations</u>.

a.     <u>Extended Warranty</u>.  Defendants shall provide an extended warranty for each Subject Vehicle that receives the Approved Emissions Modification.  Such warranty, known as the "Extended Warranty," shall be as described in Appendix E and shall cover all components, parts, and associated labor as listed therein.  Defendants shall not impose on consumers any fees or charges (and must pay any fees or charges imposed on consumers by any Dealer in accordance with the applicable franchise agreements with such Dealers) related to the warranty service.  Defendants shall take all measures necessary to reimburse Eligible Owners and Eligible Lessees in the event that the scope of warranty coverage described in this Consent Decree and in Appendix E is limited by any service writer's discretion.  Notwithstanding the foregoing, an Eligible Owner or Eligible Lessee of a Canadian Subject Vehicle shall receive an Extended Warranty for such vehicle only after the vehicle has been registered with FCA US LLC by providing FCA proof of state registration, proof of ownership or lease, and the current mileage/kilometers on the vehicle.

b.      <u>Modification of the Extended Warranty</u>.  In addition to the warranty coverage described in Appendix E, Defendants shall expand the warranty coverage to include additional parts or service associated with the Approved Emissions Modification if alterations or updates are made to the Approved Emissions Modification either in accordance with Paragraph 31 or through a modification of this Consent Decree in accordance with Section XVII (Modification).  Defendants reserve the right to invoke Dispute Resolution under Section X (Dispute Resolution) of this Decree if, after consultation with EPA and CARB, the Parties are unable to agree on the need for or scope of any modification of the Extended Warranty under this Paragraph.  In the event that the Extended Warranty is modified pursuant to this Paragraph, the modified Extended Warranty shall apply to all affected Subject Vehicles that have received or will receive the Approved Emissions Modification.

c.      <u>Extended Warranty Period</u>.  For all Eligible Vehicles that receive the Approved Emissions Modification on or before the Recall Target Deadline, the Extended Warranty Period shall be the greater of: (i) 10 years from the date of initial sale or 120,000 actual miles on the vehicle odometer, whichever comes first; and (ii) 4 years or 48,000 miles, from date and mileage of installing the Approved Emissions Modification on the vehicle, whichever comes first.  For any Subject Vehicle that receives the Approved Emissions Modification after the Recall Target Deadline, the Extended Warranty Period shall be as described in the previous sentence, but in no event shall the Extended Warranty apply to or provide any coverage for the Subject Vehicle after May 1, 2029.  In the event that a Subject Vehicle that has received the Approved Emissions Modification is re-sold, the remaining Extended Warranty Period, if any, is transferable to subsequent purchasers and shall continue through the date or mileage determined in this Paragraph for the benefit of such subsequent purchasers.  The Extended Warranty Period shall continue in full force and effect after Termination of the Consent Decree.  Defendants may move for Termination of the Consent Decree pursuant to the requirements of Consent Decree Section

XVIII (Termination) even though the warranty obligations imposed by the Extended Warranty Period shall remain in full force and effect.

        d.     <u>Buyback and Lease Termination Remedies</u>.  In addition to any protections provided by applicable law (including those referenced in Paragraph 45.e below), Defendants must provide a Buyback or Lease Termination to any Eligible Owner or Eligible Lessee of an Eligible Vehicle that receives the Approved Emissions Modification in the event that, during the 18 months or 18,000 miles (whichever comes first) following the completion of the Approved Emissions Modification (the "Remedy Period"), Defendants fail to repair or remedy a confirmed failure or malfunction covered by the Extended Warranty and associated with the Approved Emissions Modification (a "Warrantable Failure") after the Eligible Owner or Eligible Lessee physically presents the Subject Vehicle to a Dealer for repair of the Warrantable Failure; and (i) the Warrantable Failure is unable to be remedied after making 4 separate service visits to the same Dealer for the same Warrantable Failure during the Remedy Period; or (ii) the Subject Vehicle with the Warrantable Failure is out-of-service due to the Warrantable Failure for a cumulative total of 30 days during the Remedy Period, not including any days when the Dealer returns or otherwise tenders the Subject Vehicle to the customer while the Dealer awaits necessary parts and such vehicle remains Operable.

        e.     <u>Preservation of Remedies</u>.  The Extended Warranty shall be subject to any remedies provided by state or federal laws, such as the Magnuson-Moss Warranty Act, that provide consumers with protections, including without limitation "Lemon Law" protections, with respect to warranties.

        f.     <u>Warranty Database for Consumers</u>.  For 10 years following the Effective Date, Defendants shall maintain a database by which users, including Eligible Owners, Eligible Lessees, and prospective purchasers, may conduct a free-of-charge search by vehicle VIN to determine whether the vehicle has received an Approved Emissions Modification and whether the Extended Warranty and any

Additional Warranty Extension(s) apply to the specific vehicle. Defendants must provide the VINs for all such vehicles to EPA/CARB within 15 days of EPA/CARB's request.

       g.     <u>Warranty Database for Dealers</u>. For 20 years following the Effective Date, Defendants shall maintain a database or other communications system that includes all Subject Vehicles, by which Dealers may search by vehicle VIN to determine whether the Extended Warranty and any Additional Warranty Extensions apply to a specific Subject Vehicle. Defendants shall establish procedures such that the vehicle VIN shall dictate component or system coverage. Such procedures shall include a feature by which Dealers may enter an identification number or other code for any part pertaining to a Subject Vehicle and determine whether such part is covered by the Extended Warranty.

       h.     <u>Continued Service for Unmodified Vehicles</u>. For Eligible Owners and Eligible Lessees who decline to receive the Approved Emissions Modification for an Eligible Vehicle, Defendants must continue to service such Eligible Vehicle in accordance with existing applicable federal and state law warranty provisions (including any exclusions for modified parts, components, and software), provided that if service of the ECU or TCU is needed: (i) in no event may Defendants introduce any configuration of software or calibrations that contains a Defeat Device, and (ii) Defendants may decline to service the ECU or TCU if servicing the ECU or TCU would require Defendants to install or reflash any configuration other than the Approved Emissions Modifications. Such requirements, and the potential effect on Eligible Owners and Eligible Lessees must be clearly described in the Vehicle Recall Program Disclosure Statement required under Paragraph 43.b.

    46.    <u>Export, Sale, and Resale of Subject Vehicles</u>.

       a.     Defendants are hereby permanently enjoined from selling, re-selling, leasing, or re-leasing or causing the sale, resale, lease, or re-lease of any Subject Vehicle that has not received the Approved Emissions Modification.

b.      Defendants may not export or arrange for the export of any Subject Vehicle unless either: (i) the Subject Vehicle has received the Approved Emissions Modification; or (ii) Defendants have received prior written authorization from EPA, in consultation with CARB, to export unmodified vehicles and have identified to EPA and CARB the vehicle(s) to be exported by VIN, the anticipated date of export, and the reason for export.

c.      Defendants, their agents, contractors, Dealers, successors, and assigns are required to install or cause to be installed the Approved Emissions Modification on all unmodified Operable Subject Vehicles that are returned to the custody and control of Dealers or Defendants and that are not owned or leased by Eligible Owners or Eligible Lessees.  This obligation extends without limitation to all Operable Subject Vehicles that return to the custody or control of Dealers following a completed lease term or vehicle trade-in.

d.      Subject to applicable law, Defendants shall use all reasonable efforts to ensure that Dealers do not sell, re-sell, lease, or re-lease any Subject Vehicle unless that vehicle has first received the Approved Emissions Modification.  For all Subject Vehicles that are sold, re-sold, leased, or re-leased by Defendants or Dealers following the Effective Date, Defendants, subject to applicable law, must perform or use all reasonable efforts to cause Dealers to perform the following prior to the sale, resale, lease, or re-lease of the Subject Vehicles:

i.      Execute all emissions-related service actions and repairs required to bring the vehicle into compliance with the terms of this Consent Decree;

ii.      Label the vehicle in accordance with the requirements of Paragraph 44 of the Decree; and

iii.      Make all disclosures to prospective vehicle owners and lessees as required by Paragraph 43.b of this Consent Decree.  All consumers who purchase or lease a Subject

Vehicle from Defendants or a Dealer must be given a written copy of a disclosure that contains the information attached to this Decree as Appendix D.

47. <u>Recall Program Reporting and Monitoring</u>.  Defendants shall provide separate status reports on the Recall Program to EPA, and to CARB and the CA AG as set forth below.  The first and subsequent reports shall be due on a quarterly basis as set forth in Paragraph 70, with the final report due the first quarter following the Recall Target Deadline.  Of the information required below, Defendants shall submit to EPA only the information required by Paragraphs 47.a, 47.d, and 47.e, or as EPA requests below.  Such status reports shall be certified in accordance with the requirements of Section VII (Reporting Requirements) and shall include, at a minimum, the following elements:

a. A review of Defendants' progress toward reaching the Recall Participation Targets required by Paragraph 41;

b. To CARB/CA AG only, each Eligible Vehicle, listed by VIN, model, and year, that has received an Approved Emissions Modification and the date of such modification;

c. To CARB/CA AG only, each Eligible Vehicle, listed by VIN, model, and year, that, based on current information available to Defendants, has been sold, re-sold, exported, rendered inoperable, or destroyed, and the date of such resale, export, rendering, or destruction;

d. A summary showing rates and trends of all warranty claims made and claims honored under Paragraph 45, together with notice of any Eligible Owner or Eligible Lessee who has become eligible for Buyback or Lease Termination under Paragraph 45.d;

e. A report regarding any instances in which an Approved Emissions Modification was not installed or unable to be performed for any reason, including any instances in which an Approved Emissions Modification was not performed for reasons pursuant to Paragraph 38.e;

f.    To CARB/CA AG only, a compilation of all notices regarding the Recall Program widely distributed to Eligible Owners or Eligible Lessees since the last report submitted by Defendants under this Paragraph, including email notices and any updates to the Recall Program web page; and

g.    To CARB/CA AG only, a summary or copy of all bulletins, notices, or other similar communications sent to Dealers regarding the Recall Program, including information regarding Warranty Obligations under Paragraph 45.

h.    Additionally, Defendants shall provide EPA, CARB, and the CA AG with any documents, accounting, or other information reasonably requested by such agency and in the possession of Defendants related to Defendants' compliance with the Recall Program requirements within 30 days of the request by the agencies, or longer with the requesting party's agreement.

48.    <u>Related Class Action Settlement</u>.  Defendants may satisfy all consumer-facing obligations under Paragraphs 37, 38, 43, and 45 of this Consent Decree by fulfilling the parallel obligations under a related Class Action Settlement provided the following requirements are satisfied:

a.    The Class Action Settlement must provide for the establishment, administration, and monitoring of a recall program for all Eligible Vehicles, with such program lasting at least two years from the Effective Date of this Decree;

b.    The United States and California must send notice to Defendants that the Class Action Settlement satisfies the requirements of Paragraphs 37, 38, 43, and 45 of this Consent Decree;

c.    Defendants agree that, to the extent the Class Action Settlement contains terms for warranty coverage that are more favorable to Eligible Owners and Eligible Lessees, the Class Action Settlement's more favorable warranty provisions shall control;

d.    The Class Action Settlement must be filed in this action, I*n re Chrysler-Dodge-Jeep "Ecodiesel,"* MDL No. 2777 (N.D. Cal.), and lodged or filed with this Court no later than January

10, 2019. With the agreement of all parties to this Consent Decree, this deadline may be extended by order of the Court to a date not later than January 31, 2019; and

e. The Class Action Settlement must be entered as a final judgment by this Court without such judgment being delayed, reversed, or vacated by an appellate court. If such judgment is delayed, reversed, or vacated for any reason, Defendants shall abide by all terms of this Consent Decree.

49. <u>Modifications to this Decree Contingent on Related Class Action Settlement</u>. If the United States and California send to Defendants the notice provided for under Paragraph 48.b and the Class Action Settlement is entered as a final judgment pursuant to Paragraph 48.e, the following modified terms of this Consent Decree shall become operative without further amendment to this Decree or action by the Court. All other terms of the Consent Decree shall remain in full force and effect.

a. <u>Recall Program Reporting Obligations</u>. Defendants are relieved of their obligation to make reports to the United States and California regarding the Recall Program, as required by Paragraph 47 (and are likewise relieved of any potential liability for associated applicable stipulated penalties), provided that: (1) the Claims Administrator in the Class Action Settlement is required to make regular reports to the Court regarding Defendants' progress toward the Recall Participation Targets required by Paragraph 41; and (2) Defendants comply with the requirements of this Paragraph 49.a. Defendants are still required to maintain records of all information listed in Paragraphs 47.a through 47.g through the duration of the Recall Program, and such records must be produced to the United States or California upon request. In addition, Defendants must submit a single report in accordance with the notice requirements of Section XIV (Notices) within 30 days following the Recall Target Deadline (or Extended Recall Target Deadline pursuant to Paragraph 42.c, if applicable). Such report must contain an assessment by Defendants as to whether Defendants have met the 85% Recall Targets required by Paragraph 41, both nationally and in California. Such report must also contain a list,

by VIN, of every Subject Vehicle that Defendants assert has received an AEM under the terms of this Consent Decree.

b. <u>Call Center, Online Support, and Notices</u>. Defendants are relieved of their obligation to maintain a call center and online support as required by Paragraph 38.c, and are relieved of their obligation to disseminate an Initial Program Notice under Paragraph 43.a (and are likewise relieved of any potential liability for associated applicable stipulated penalties) to the extent that such duties will be fulfilled by third parties pursuant to the Class Action Settlement.

c. <u>Stipulated Penalty for Failure to Honor Warranties</u>. Defendants shall not be liable for any stipulated penalties under Paragraph 87.j unless and until the Class Action Settlement claims review committee adjudicates a warranty claim dispute and finds in favor of the Eligible Owner or Eligible Lessee, in which case EPA and CARB may assess a stipulated penalty under Paragraph 87.j for failure to honor warranties with regard to the particular Eligible Vehicle at issue.

d. <u>Stipulated Penalty for Failure to Provide Disclosures</u>. Defendants shall not be liable for any stipulated penalties under Paragraph 87.g for failure to provide disclosures to any Eligible Owner or Eligible Lessee who receives such disclosures as part of a Class Action Settlement long form notice.

e. <u>Stipulated Penalty for Failure to Timely Install the Approved Emissions Modification</u>. Defendants shall not be liable for any stipulated penalties under Paragraph 87.b unless and until the Class Action Settlement claims administrator determines that, through the fault of Defendants, an Eligible Owner or Eligible Lessee was required to wait more than 75 days to receive the Approved Emissions Modification after scheduling such modification with Defendants or a Dealer, in which case EPA and CARB may assess a stipulated penalty under Paragraph 87.b for failure to timely install the Approved Emissions Modification.

1    **C.    Corporate Compliance Requirements**

2        50.    Culture of Integrity, Business Ethics, and Compliance.

3            a.    Defendants have developed or revised and are implementing various corporate

4    governance policies and practices in the areas of integrity, business ethics, and compliance.  Their

5    efforts include (1) an updated Code of Conduct; (2) an improved whistleblower system, known as the

6    "Ethics Helpline"; and (3) a "Leave No Doubt" campaign.

7            b.    Code of Conduct.  Defendants issued an updated Code of Conduct, dated

8    February 2018, which requires employees to report violations of law, regulations, or company policy.

9    Defendants shall: continue to implement and maintain their Code of Conduct; require all salaried

10   employees and all new bargaining unit employees to certify they reviewed and understand the Code of

11   Conduct; require all employees covered by project TC1 of the Improvement Plan also to certify they are

12   in compliance with the Code of Conduct; and, at least annually, conduct training related to the Code of

13   Conduct for all salaried employees.

14           c.    Ethics Helpline.  Defendants have implemented an improved whistleblower

15   system, known as the "Ethics Helpline," which allows employees, contractors, suppliers, and dealers to

16   submit anonymously concerns regarding: (1) ethics, and (2) vehicle safety, emissions, and regulatory

17   compliance issues, including vehicle emissions certification.  The Business Practices Office within

18   Internal Audit reviews the ethics concerns raised via the Ethics Helpline, and the results of those

19   investigations are reviewed by the Ethics and Compliance Committee ("ECC").  The Vehicle Safety and

20   Regulatory Compliance ("VSRC") case screener reviews the vehicle safety, emissions, certification, and

21   regulatory compliance concerns raised via the Ethics Helpline, and performs an investigation based on

22   the concern.  The Technical Compliance Committee ("TCC") reviews the investigation results from the

23   VSRC case screener.  The ECC and TCC escalate concerns to the Audit Committee for resolution, or for

24

25

further referral for resolution, if deemed necessary. Defendants shall continue to implement and maintain the Ethics Helpline and its associated procedures.

        d.    <u>Leave No Doubt Campaign</u>. Defendants shall continue to implement and maintain, or refresh annually, their "Leave No Doubt Campaign," which was initiated in October 2017 and is described in the Leave No Doubt Frequently Asked Questions document dated October 2, 2017, or a similar initiative, to encourage employees, contractors, suppliers, and dealers to report issues concerning vehicle safety, emissions, or regulatory compliance through the Ethics Helpline.

        e.    <u>Annual Assessment</u>. Defendants shall annually assess the effectiveness of the Code of Conduct, Ethics Helpline, Leave No Doubt Campaign, associated training, and their other efforts to instill a culture of integrity and compliance. Based on this assessment, Defendants shall develop and implement an action plan to implement improvements or additional measures they determine necessary to improve the culture of integrity and compliance.

        f.    <u>Reporting</u>. In the annual report required pursuant to Paragraph 61, Defendants shall submit:

        i.    A report, with a certification in accordance with Paragraph 79, regarding case tracking of all concerns relating to violations of United States and California environmental protection laws or regulations raised through the Ethics Helpline and stored in the Case Tracking System; and for such concerns raised by any other means, case tracking from the point that the concern is brought to an investigator in the VSRC to be entered into the Case Tracking System for review and resolution;

        ii.    The annual assessment required by Paragraph 50.e; and

        iii.    A summary of training provided pursuant to Paragraph 50.b.

51. <u>Corporate Governance</u>.

a. <u>Corporate Reorganization</u>. Defendants reorganized their corporate structure to ensure that employees involved in certification testing and monitoring for purposes of vehicle certification under the Clean Air Act and California law are organizationally separate from product development. The Corporate Governance and Organization Structure and Capability sections of the Improvement Plan identify these projects, which include, among other things, the establishment of the Vehicle Environmental Compliance Group within the Vehicle Safety and Regulatory Compliance Group, (1) to ensure independent and effective management of all vehicle emissions certification, OBD compliance, and environmental regulatory compliance activities, and (2) to add senior management level oversight to emissions and certification compliance and completion of identified Improvement Plan projects.

b. <u>Implementation</u>. Defendants shall implement and maintain the revised governance structure, including providing personnel performing the certification, testing, and monitoring functions access to technical expertise independent from product development personnel.

52. <u>Technical Training</u>.

a. <u>AECD and Defeat Device Training</u>. Defendants are developing annual enhanced AECD and Defeat Device training for employees and suppliers as provided in project TC1 of the Improvement Plan, including, but not limited to: Powertrain, Product Development, and VSRC employees, to improve comprehension and global awareness of AECD and Defeat Device regulatory provisions. The training content shall require participants to answer questions designed to demonstrate comprehension. After the employees and suppliers have received the initial training, Defendants shall provide annual refresher training. Defendants shall make the initial training available to the required personnel by March 31, 2019, and the required personnel shall complete the initial training by May 31, 2019.

b.     Emissions Certification and Compliance Training.  Defendants are developing enhanced annual Emissions Certification and Compliance Training as provided in project TC3 of the Improvement Plan for all applicable Product Development and VSRC employees to improve and test their knowledge of emissions certification regulations and processes.  The training content shall require participants to answer questions designed to demonstrate comprehension.  After the employees and suppliers have received the initial training, Defendants shall provide annual refresher training.  Defendants shall make the initial training available to the required personnel by October 31, 2019 and the required personnel shall complete the training by January 31, 2020.

c.     Reporting.  In the annual report required pursuant to Paragraph 61, Defendants shall submit a summary of training provided pursuant to Paragraphs 52.a and 52.b.

53.     Risk Assessment.

a.     Defendants shall establish and maintain a Risk Assessment Process, which is led by VSRC, that, at least annually, shall: (1) identify compliance risks relating to emissions and certification processes; (2) assign a risk rating based on probability and significance; (3) link existing policies, processes and controls Defendants rely on to detect and prevent noncompliance ("risk response"); (4) assess residual risk based on the design and operating effectiveness of Defendants' risk response; and (5) develop a plan and reasonable timeline to implement and improve controls to mitigate any unacceptable levels of residual risk.  Within 180 days of the Effective Date, Defendants shall perform their initial Risk Assessment, including developing an improvement plan, if necessary; and annually thereafter, they shall complete a Risk Assessment within 90 days of the next anniversary of the Effective Date.

b.     Reporting.  In the annual report required pursuant to Paragraph 61, Defendants shall submit a summary of the results of the risk assessment performed pursuant to Paragraph 53.a,

including a summary of the plan to improve controls to mitigate any unacceptable levels of residual risk, and a discussion of the measures that Defendants have taken to implement the plan(s).

54. <u>New Product Development and Vendor/Third Party Projects</u>.

a. Defendants are enhancing new product development and vendor/third-party policies, processes, and controls to improve compliance with certification, OBD, and other related regulatory requirements. The New Product Development ("PD") and Vendors/Third-Parties ("TP") sections of the Improvement Plan identify these projects, which include processes relating to emissions robustness, identifying and evaluating AECDs and emissions-related parts, enhanced documentation from suppliers, and other related processes.

b. Defendants shall implement these enhancement projects in accordance with, and within the timeline set forth in, the Improvement Plan, and (except for Improvement Plan project PD 3, which shall be completed by February 28, 2020) no later than August 31, 2019.

55. <u>Certification Processes</u>.

a. Defendants are developing and implementing enhancements to the certification and Executive Order processes to improve compliance with applicable regulatory requirements. The Certification Process section of the Improvement Plan identifies these projects, which include processes and controls for improving AECD, OBD, and emissions-related certification activities and improving communications and data management during the certification process.

b. Defendants shall implement these enhancement projects within the timeline set forth in the Improvement Plan, and no later than December 31, 2019.

56. <u>Post-Certification Processes</u>.

a. Defendants are enhancing their post-certification processes regarding in-use vehicles to improve compliance with regulatory requirements. The Post-Certification Process section of

the Improvement Plan identifies these projects, which include projects improving the evaluation and reporting of field fixes and running changes, warranty, and other in-use vehicle data.

b.      Defendants shall implement these enhancements in accordance with, and within the timeline set forth in, the Improvement Plan, and no later than July 31, 2019.

57.      <u>Modification of Procedures and Projects</u>.  In consultation with DOJ and California, Defendants' (1) may make reasonable revisions to their Code of Conduct, Ethics Helpline, Leave No Doubt Campaign, Corporate Governance structure, and Improvement Plan projects set forth in Paragraphs 54-56, and (2) may add additional projects to the Improvement Plan as appropriate to further compliance.  Where such revisions modify any of the requirements set forth in this Section VI.C, the modification shall be made in accordance with Paragraphs 136-137, concerning non-material modifications.

58.      <u>Internal Audit</u>.

a.      Within 9 months of the Effective Date, Defendants shall complete an internal audit to assess the implementation of internal procedures relating to the corporate compliance requirements of Paragraphs 50-56.  The internal audit shall also assess the effectiveness of the internal procedures that have been implemented as of the time of the audit.  Defendants shall recommend any corrective actions necessary to improve the effectiveness of the procedures.  Defendants shall implement those corrective actions.

b.      Defendants shall submit the results of the audit to DOJ, California, and the Independent Compliance Auditor within 30 days of the audit's completion.

59.      <u>PEMS Testing</u>.

a.      Defendants shall test certain MY 2019, 2020, and 2021 light-duty motor vehicles using portable emissions measurement system ("PEMS") testing.  For MY 2019, Defendants shall test Ram and Jeep brands; for MYs 2020 and 2021, Defendants shall test across all FCA brands.  For each

model year, Defendants shall perform PEMS testing on 33% of Defendants' EPA-certified test groups within that model year ("Test Groups"). For purposes of determining the number of Test Groups comprising 33%, Defendants shall round up or down to the nearest whole Test Group number closest to 33%. EPA, in consultation with CARB, may select the Test Groups for testing under this Paragraph 59.a pursuant to the following schedule: for MY 2019, by no later than February 1, 2019; for MY 2020, by no later than December 31, 2019, or at the annual certification meeting with EPA, whichever is earlier; and for MY 2021, by no later than December 31, 2020, or at the annual certification meeting with EPA, whichever is earlier. If EPA, in consultation with CARB, does not select the Test Groups pursuant to the schedule set forth in this Paragraph 59.a, then Defendants shall select the Test Groups for PEMS testing. Defendants shall select the Test Groups for MY 2019, MY 2020, and MY 2021 that will cover, in the aggregate, the full range of configurations of emission control systems on their light-duty vehicles for those model years, and shall not select a Test Group that was certified using carryover emissions data from another Test Group that has already been tested pursuant to this Paragraph (unless necessary to meet the 33% requirement). All testing under this Paragraph 59.a for MY 2019 shall be completed by December 31, 2019. All testing under this Paragraph 59.a for MYs 2020 and 2021 shall be completed by September 30 of the calendar year for which the applicable model year is named, except that Defendants and the United States, in consultation with CARB, may agree to a later date sufficient to enable Defendants to complete PEMS testing of the selected model year, but in no case later than December 31 of the applicable model year. Defendants may, but are not required to, use the Third-Party Emissions Tester required by Paragraph 59.b to conduct the testing required by this Paragraph 59.a.

        b.      In addition to the requirements of Paragraph 59.a, Defendants shall retain an independent third-party emissions tester ("Third-Party Emissions Tester"). No attorney-client relationship shall exist or be formed between any Defendant and the Third-Party Emissions Tester. For

each MY 2019, 2020, and 2021, Defendants shall ensure that the Third-Party Emissions Tester conducts PEMS testing on a vehicle from each of two Test Groups. Testing under this Paragraph 59.b does not count toward the testing required under Paragraph 59.a. The Test Groups selected for testing under this Paragraph 59.b shall be the Test Groups with the highest projected sales for the model year at the time of certification, or, if applicable, the Test Groups selected by EPA, in consultation with CARB, by letter to Defendants, pursuant to Section XIV (Notices). Any such letters shall be provided no later than June 30 of the year for which the model year is named. Defendants shall ensure that the Third-Party Emissions Tester completes all testing under this Paragraph 59.b by December 31 of the calendar year for which the applicable model year is named.

        c.      Defendants shall satisfy the testing required by Paragraph 59.a as follows, and shall ensure that the Third-Party Emissions Tester satisfies the testing required by Paragraph 59.a and b as follows:

            i.      Test a Test Group by testing one sample vehicle procured at random from the series production vehicles from that selected Test Group;

            ii.      Perform the required third-party PEMS testing on private and public roads in the United States, and perform all PEMS testing under real-world driving conditions over a range of ambient temperatures and pressures (including conditions not represented on the Federal Test Procedure) to measure the $NO_x$, THC, NMHC, CO, and $CO_2$ emissions that are detectable on a serial vehicle via PEMS; and

            iii.      Conduct the required PEMS testing according to test methods recorded before the testing commences. The Third-Party Emissions Tester shall use test methods independently from Defendants.

d.      Within 120 days after the Effective Date, Defendants shall submit to EPA and CARB for review and approval in accordance with Section V (Approval of Submissions) a plan for PEMS testing under this Paragraph.  Such plan shall include:

i.      A list of those Test Groups Defendants will test for MY 2019;

ii.      A written statement of qualifications for the proposed Third-Party Emissions Tester including its name, affiliation, and address, its experience in conducting PEMS testing, and a description of previous contracts or financial relationships of the proposed Third-Party Emissions Tester with Defendants;

iii.      A list of all emissions and vehicle and engine parameters Defendants will measure and record during each PEMS test they perform under this Paragraph;

iv.      A description of the test methods Defendants propose to use including the routes and ambient conditions over which the vehicles shall be tested;

v.      A template for Defendants' summary report as described below; and

vi.      A description of how Defendants intend to satisfy all requirements of this Paragraph.

e.      For each model year, for the PEMS testing required by Paragraph 59.a, Defendants shall provide the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes measuring the vehicle's NOx, THC, NMHC, CO, and CO2 emissions) for all tests Defendants performed under this Paragraph for that model year (Defendants' Summary Report) to EPA and CARB as specified in Section XIV (Notices).  Defendants' Summary Report for MY 2019 shall be due no later than March 1, 2020.  Defendants' Summary Report for MYs 2020 and 2021 shall be due no later than November 30 of the calendar year for which the model year is named, unless Defendants and the United States, in consultation with California, agree to a later date.  Within 21 days following submission of Defendants' Summary Report to EPA and CARB,

Defendants shall post their Summary Report (redacted of any CBI or PII, the disclosure of which is restricted by applicable law, provided that no emissions test methods and results may be claimed as CBI) on the public website required by Paragraph 78.

f.    For each model year for the PEMS testing required by Paragraph 59.b, Defendants shall ensure that the Third-Party Emissions Tester prepares one or more "Third-Party Emissions Tester Summary Reports" including the test data, a detailed statement of all test methods used, and an executive summary of the data and methods (that includes measuring the vehicle's NOx, THC, NMHC, CO, and CO2 emissions) for all testing the Third-Party Emissions Tester performed under this Paragraph for that model year.  Defendants shall provide the Third-Party Emissions Tester Summary Report to EPA and CARB as specified in Section XIV (Notices) by no later than March 1 of the calendar year immediately after the calendar year for which the model year is named.  Within 30 days following submission of the Third-Party Emissions Tester Summary Report to EPA and CARB, Defendants shall post the Third-Party Emissions Tester Summary Report (redacted of any CBI or PII the disclosure of which is restricted by applicable law, provided that no emissions test methods and results may be claimed as CBI) to the public website required by Paragraph 78.

g.    <u>Data Format and Summary</u>.  Defendants shall provide all raw data from the PEMS unit for speed and load in a .dat format and all second-by-second raw data for NOx, THC, NMHC, CO, and CO2 in a CSV format that can be imported into a spreadsheet or database.  In addition, using this data, Defendants shall create and submit a summary file containing calculated average emissions results for NOx, THC, NMHC, CO, and CO2 for each vehicle route.

h.    The Parties agree and acknowledge that neither United States nor California law sets forth a standard by which PEMS testing can be used to determine compliance for purposes of certification under Title II of the Clean Air Act.

60.    Data Collection.

        a.      Within 120 days after the Effective Date and continuing on a quarterly basis thereafter as specified in Paragraph 70.c until the quarterly report due 30 days after the third anniversary of the Effective Date, Defendants shall provide to EPA and California a summary of the top 10 diagnostic trouble codes ("DTCs)" recorded from the Subject Vehicles through the SQDF system, i.e., the ten most frequently occurring DTCs that have resulted in a MIL, reported by model year and vehicle type (Grand Cherokee or Ram).

        b.      Within 120 days after the Effective Date, Defendants shall establish a test fleet comprised of a minimum of 12 customer owned or leased Subject Vehicles instrumented with high speed data recorders.  Commencing on the 30th day after the end of the first full quarter following establishment of this test fleet, and continuing quarterly thereafter as specified in Paragraph 70.c until the quarterly report due 30 days after the third anniversary of the Effective Date, Defendants shall provide to EPA and California a summary of the vehicles' reported regeneration frequency, tailpipe NOx (in grams/mile), and recorded DTCs.  Defendants shall include a minimum of 12 vehicles in this test fleet, and shall seek to include four vehicles from each MY 2014-2016; however, the parties recognize that the exact composition of this fleet may vary as it depends upon consumer willingness to participate and their continued ownership or leasing of Subject Vehicles.

        c.      In transmission of data to EPA and California, Defendants shall take any steps necessary to ensure that no PII is disclosed.

61.    Annual Reporting Requirements for Corporate Compliance Requirements.

        a.      In accordance with the timing for annual reports required by Paragraph 70.a, and until the submission of the final annual report due after completion of implementation of this Section VI.C as set forth in Paragraph 62, Defendants shall send an annual report to DOJ (but not EPA), California, and the Independent Compliance Auditor concerning corporate compliance requirements of

this Section VI.C, that includes: (1) the information required by Paragraphs 50.f, 52.c, and 53.b; and (2) except as provided below, a description of the measures that they have implemented to promote compliance with the requirements of this Section VI.C (except for Paragraphs 63-65), together with an assessment of the effectiveness of those measures in promoting compliance with United States and California environmental law concerning vehicle emissions and certification and any corrective actions Defendants have undertaken to improve their effectiveness. For the first annual report, Defendants do not need to assess the effectiveness of additional measures taken. The information required to be provided in the annual reports pursuant to this Paragraph shall be certified in accordance with Paragraph 79.

b.     Of the reports and other information required by this Section VI.C, Defendants shall submit to EPA only the reports and other information required by Paragraphs 59 and 60.

62.     <u>Implementation Time Frame</u>. Defendants shall continue to implement the ongoing requirements of this Section VI.C for 3 years from the Effective Date, or until August 31, 2022, whichever is later, and shall thereafter continue to comply with Paragraphs 64-65 as necessary until the completion of all requirements therein.

**Independent Compliance Auditor**

63.     <u>Retention of Independent Compliance Auditor</u>. Defendants shall retain, upon approval by the United States, after consultation with California, a person or entity to serve as the Independent Compliance Auditor for the oversight of Defendants' obligations under this Section VI.C (Corporate Compliance Requirements). Defendants shall retain the Auditor for a period of at least 3 years and until the Auditor has submitted the third Final Audit Report under Paragraph 64.d.ii below.

a.     <u>Recommendation of Candidates for the Independent Compliance Auditor</u>. Within 30 days after the Effective Date, Defendants shall submit to the United States and California a list of three candidates for the position of the Independent Compliance Auditor. Defendants shall:

i.      Submit a resume, biographical information, and any relevant material concerning each of the candidate's competence and qualifications to serve as Independent Compliance Auditor;

ii.      Describe any past, present, or future business or financial relationship that the candidate has with Defendants, EPA, or CARB.  A candidate may not be an employee or an agent of Defendants, Defendants' subsidiaries, the United States or California, nor may the candidate be currently engaged in any work for, or in representation of, Defendants;

iii.      Verify that, to Defendants' best knowledge and based on the reasonably available information, either the candidate has no conflicts of interest with regard to this matter or any actual or apparent conflict has been waived by Defendants and the United States, after consultation with California;

iv.      Verify that the candidate has agreed not to be employed by Defendants, or their subsidiaries, for a minimum of 2 years after the termination of their term as the Independent Compliance Auditor; and

v.      Accompany all of the information listed above in Paragraphs 63.a.i through 63.a.iv with a certification in accordance with Paragraph 79.

b.      <u>Selection and Retention of the Independent Compliance Auditor</u>.  After receiving the list of candidates from Defendants, the United States, after consultation with California, will select an Independent Compliance Auditor from among the candidates and notify Defendants of such selection.  Within 30 days after notification by the United States of its selection, or within 45 days of the Effective Date, whichever is later, Defendants shall retain the selected candidate to serve as the Independent Compliance Auditor and shall notify the United States and California of such.  The date of Defendants' retention of the Independent Compliance Auditor is the Retention Date.  If the United

States selects none of the candidates submitted by Defendants, the process under Paragraph 63.a shall be repeated until the Independent Compliance Auditor is selected.

      c.     <u>Vacancy in the Position of the Independent Compliance Auditor</u>.  In the event that the Independent Compliance Auditor, once selected, is unable or unwilling to fulfill its duties as the Independent Compliance Auditor, the processes under Paragraphs 63.a. and b. shall be used to select a new Independent Compliance Auditor.  If this vacancy and re-selection procedure prevents the new Independent Compliance Auditor from meeting the deadlines set forth in Paragraph 64, the Parties will negotiate revised deadlines as non-material modifications in accordance with Paragraphs 136-137  as necessary.

      d.     <u>Replacement of the Independent Compliance Auditor for Good Cause</u>.

      i.     Defendants may replace the Independent Auditor for good cause shown and with the consent of the United States, in consultation with California, such consent not to be unreasonably withheld; provided, however, that Defendants shall first give written notice to the Independent Compliance Auditor, with a copy to the United States and California, outlining their concerns and providing a sufficient process and period of time to attempt to resolve them.  If the concerns are not resolved, Defendants shall notify the United States and California, describing the efforts and the results of those efforts, and requesting the required consent.

      ii.     The United States, in consultation with California, may require Defendants to replace the Internal Compliance Auditor for good cause shown and with the consent of Defendants, such consent not to be unreasonably withheld.  In such case, the United States, in consultation with California, will first give written notice to the Independent Compliance Auditor, with a copy to Defendants, outlining the concerns and providing a process and period of time to attempt to resolve them.  If the concerns are not resolved, United States, in

consultation with California, will notify Defendants, describing the efforts and the results of those efforts, and requesting the required consent.

        iii.      If consent to terminate is granted pursuant to Paragraph 63.d.i or 63.d.ii, the processes under Paragraphs 63.a and 63.b. shall be used to select a new Independent Compliance Auditor. If this termination and re-selection procedure prevents the new Independent Compliance Auditor from meeting the deadlines set forth in Paragraph 64, the Parties will negotiate revised deadlines as non-material modifications in accordance with Paragraphs 136-137 as necessary.

64.    <u>Duties and Access Rights of the Independent Compliance Auditor.</u>

    a.    <u>In General.</u> The Independent Compliance Auditor shall monitor implementation to verify Defendants' compliance with this Section VI.C, and, as part of the annual audits, assess the effectiveness of Defendants' processes and controls in promoting compliance with United States and California environmental law governing vehicle emissions and certification. The Independent Compliance Auditor shall owe a duty to the United States to provide objective and fair assessments of Defendants' compliance with the Consent Decree. The Independent Compliance Auditor shall carry out its duties based on: (1) review of relevant documents and procedures; (2) on-site observation of selected systems and procedures at sample Defendants' sites, including internal controls, record-keeping, and internal audit procedures; (3) meetings and interviews; (4) analyses, studies, and testing of Defendants' compliance program and associated processes; and (5) other reasonable audit procedures as may be necessary to verify Defendants' compliance with Section VI.C (Corporate Compliance Requirements). The Auditor may rely on the product of Defendants' processes, such as the results of studies, reviews, sampling and testing methodologies, audits, and analyses conducted by or on behalf of Defendants, as well as Defendants' internal resources (e.g., legal, compliance, and internal audit), including the internal

audit required by Paragraph 58, which can assist the Auditor in carrying out the audit through increased

efficiency and Defendants-specific expertise.

b.     <u>Audit Plan</u>.  Within 60 days after the Retention Date, the Independent Compliance

Auditor shall develop and submit to DOJ, California, and Defendants for comment a draft audit plan that

includes a checklist of relevant compliance requirements, procedures for the exchange of any documents

and information that the Independent Compliance Auditor needs to perform its duties, and any other

terms that the Independent Compliance Auditor may deem necessary to effectuate its duties.  By 30 days

after the annual anniversary of the Retention Date of each of the next 2 years, the Independent

Compliance Auditor shall develop and submit to DOJ, California, and Defendants for comment a draft

audit plan for its annual audit activities.  The Independent Compliance Auditor shall take into

consideration any comments received from DOJ, California, or Defendants in developing each of the

final audit plans.  Defendants shall provide any such comments to DOJ and California at the same time

it provides them to the Independent Compliance Auditor.

c.     <u>Information and Access Rights Accorded to Independent Compliance Auditor,</u>

<u>and Independent Compliance Auditor Notice of Non-Compliance</u>.  Defendants shall cooperate fully with

the Independent Compliance Auditor in any and all matters relating to the Auditor's duties as set forth in

this Paragraph 64, and the Auditor shall have the authority to take steps necessary to be fully informed

about Defendants' compliance with this Section VI.C.  Defendants shall provide the Independent

Compliance Auditor with information and documents the Auditor needs to fulfill the duties listed in this

Paragraph 64.  Defendants shall designate an environmental compliance representative to liaise directly

with the Independent Compliance Auditor regarding issues of information and access rights.  Defendants

shall facilitate the Independent Compliance Auditor's access to Defendants' documents, databases, and

facilities where compliance testing or certification of Defendants' vehicles occur.  Defendants shall use:

1      i.      best efforts to make their employees, directors, or contractors available;

2  and

3      ii.      all reasonable efforts to make their former employees, directors, or

4  contractors (with knowledge of events occurring after the lodging of and relevant to the Consent

5  Decree) available to answer questions or provide information that the Independent Compliance

6  Auditor may need in the fulfillment of its duties.  In the event that Defendants seek to withhold

7  from the Independent Compliance Auditor access to information, documents, records, facilities,

8  or current or willing and able former employees, directors or contractors of Defendants that may

9  be subject to a claim of attorney-client privilege or to the attorney work product doctrine, or

10  where Defendants reasonably believe production or providing access would otherwise be

11  inconsistent with applicable law, Defendants shall work cooperatively with the Independent

12  Compliance Auditor to resolve the matter to the satisfaction of the Independent Compliance

13  Auditor consistent with applicable law.  If the Independent Compliance Auditor believes

14  Defendants have violated the requirements of this Paragraph 64, the Independent Compliance

15  Auditor shall promptly notify DOJ and California, and the notice shall include a description of

16  the alleged violations and supporting documentation as necessary.

17      d.      Auditor Annual Reports.  Consistent with the Audit Plan developed pursuant to

18  Paragraph 64.b, the Independent Compliance Auditor shall audit Defendants' compliance with their

19  obligations under Section VI.C (Corporate Compliance Requirements) of this Consent Decree, and shall

20  thereafter provide three annual draft and final reports to DOJ and California as follows:

21      i.      Draft Reports.  The first draft annual report is due 30 days after the first

22  anniversary of the Retention Date, and it shall cover the period from the Effective Date through

23  the first anniversary of the Retention Date.  The second draft annual report is due 30 days after

24  the second anniversary of the Retention Date, and it shall cover the period from the day after the

25

first anniversary of the Retention Date through the second anniversary of the Retention Date. The third draft annual report is due 30 days after the third anniversary of the Retention Date, and it shall cover the period from the day after the second anniversary of the Retention Date through the third anniversary of the Retention Date. Among other things, in each draft annual report, the Independent Compliance Auditor shall include (1) as applicable, findings that identify any noncompliance by Defendants with the requirements of Section VI.C (Corporate Compliance Requirements), and recommendations for actions for Defendants to take to achieve compliance; and (2) an assessment of the effectiveness of Defendants' Improvement Plan's measures in promoting compliance with United States and California environmental law concerning vehicle emissions and certification, and any additional recommendations for actions to improve their effectiveness. The Independent Compliance Auditor shall also monitor Defendants' implementation of any action plan submitted pursuant to Paragraph 65, and shall indicate in the second and third draft annual reports the status of any corrective action. The Independent Compliance Auditor shall concurrently provide a copy of each draft annual report to Defendants. Within 30 days after receipt of each draft annual report, Defendants shall provide their comments, if any, to the Independent Compliance Auditor.

ii. <u>Final Reports</u>. The Independent Compliance Auditor may consider and reflect Defendants' comments in its final annual reports to the extent that the Independent Compliance Auditor deems appropriate in the exercise of its independent judgment. The Independent Compliance Auditor shall provide each final annual report to DOJ, California, and Defendants within 60 days after submission of each draft annual report. To the extent the Independent Compliance Auditor makes material changes to the findings or recommendations after providing Defendants a draft report, the Independent Compliance Auditor will provide Defendants advance notice and a reasonable opportunity to comment on the additions or changes

before it issues each final annual report.  All final annual reports from the Independent

Compliance Auditor (redacted of any CBI or PII the disclosure of which is restricted by

applicable law, provided that no emissions test methods and results may be claimed as CBI) shall

be posted by Defendants on the public website required by Paragraph 78 within 21 days after

issuance.

        iii.      After consultation with Defendants, the Independent Compliance Auditor

may extend the time period for the issuance of the draft or final reports with prior written

approval of DOJ, in consultation with California.

      e.      <u>Compensation of the Independent Compliance Auditor</u>.  Defendants shall be

responsible for compensating the Independent Compliance Auditor for the performance of duties in

accordance with the terms agreed upon by Defendants and the selected Independent Compliance

Auditor.  Such terms of agreement shall clarify that the Independent Compliance Auditor is not an

employee or an agent of Defendants, and the Independent Compliance Auditor's work is not subject to

Defendants' assertion of attorney-client or work product privileges.  Upon DOJ's or California's

request, any agreements between Defendants and the Independent Compliance Auditor shall be made

available for DOJ's and California's review.

      65.      <u>Defendants' Response to Independent Compliance Auditor's Report</u>.

      a.      <u>Action Plan</u>.  Within 60 days after receiving any final annual report from the

Independent Compliance Auditor containing a finding of noncompliance, Defendants shall submit to

DOJ and California a response to the Independent Compliance Auditor's findings and recommendations

for corrective action.  Defendants' response shall include, as applicable, an action plan to implement

corrective measures as expeditiously as practicable, or an explanation of why corrective measures are

not being implemented.  After Defendants have completed implementation of the corrective measures, if

any, Defendants shall provide a report to DOJ and California with a certification, in accordance with Paragraph 79, that the work has been completed.

      b.    <u>Annual Meeting</u>.  Within 90 days after receiving each annual report from the Independent Compliance Auditor, Defendants shall meet with DOJ and California, in person or by telephone, to discuss the Independent Compliance Auditor's final annual report and any suggestions, comments, or improvements that Defendants may wish to discuss.

    **D.**    **<u>Mitigation Program</u>**

<b>United States Mitigation Program</b>

66.    <u>Mitigation Program</u>.  When installed catalytic converters fail or are beyond their useful life, and are no longer under warranty, and light duty vehicle owners seek to replace them with aftermarket catalytic converters in states that do not require high-efficiency catalytic converters, the performance criteria for aftermarket catalytic converters in these states are addressed by EPA's 1986 policy, Sale and Use of Aftermarket Catalytic Converters¸ and these catalytic converters are significantly less effective than high-efficiency catalysts, such as those required in California and certain other states.  As further set forth in this Section, Defendants shall mitigate NOx emissions from Subject Vehicles (other than NOx emissions from Subject Vehicles in California), by implementing a program to improve the efficiency of aftermarket catalytic converters installed on light duty vehicles in states nationwide that do not already require high-efficiency catalytic converters ("Program").  Defendants shall ensure that, by no later than July 1, 2020, 200,000 after-market catalytic converters containing improved catalysts are manufactured and shipped to First-Tier Customers who order them.  Defendants shall provide evidence of the manufacture, ordering, and shipment of these catalysts and endeavor to collect and provide reasonably available Invoiced Transaction Data as set forth in Paragraph 67.  Defendants' implementation of this Mitigation Program is intended to fully mitigate the total lifetime

excess NOx emissions from Subject Vehicles in the United States, excluding California, as claimed by the United States.

a.     Defendants shall ensure that the catalyst bricks installed in the aftermarket catalytic converters manufactured for the Program have equivalent washcoats and precious metal loading to, and are of the same construction and similar total surface area and volume as, catalysts required in light duty vehicle catalytic converters that have received an Executive Order ("EO") by CARB pursuant to California Vehicle Code Sections 27156, 38391, and 38395 and Title 13, California Code of Regulations Section 2222(h)(2) ("Improved Catalytic Converters"). The Parties agree that the Improved Catalytic Converters are not legal for sale in states that require CARB-EO or similar high-efficiency catalytic converters.

b.     Defendants, in their sole discretion, shall decide: (1) which manufacturer(s), if any, they will work with, provided that any such manufacturer has a distribution network that is national in scope; and (2) which models of catalytic converters they will manufacture in implementing the Program, provided that such catalytic converters collectively must be capable of being installed in a variety of makes and models of light duty vehicles and not only in Defendants' vehicles. Defendants may use one or more suppliers, contractors, or consultants in planning and implementing the Program, but Defendants remain responsible for ensuring the manufacture and shipment to First-Tier Customers who order them, of the specified number of Improved Catalytic Converters.

c.     In any contract with catalyst manufacturer(s), Defendants shall require each manufacturer to ensure, to the extent feasible, that the Improved Catalytic Converters in the Program, as produced, are not clearly distinguishable from unimproved catalytic converters made or marketed by that manufacturer for installation in the same vehicles.

67.   <u>Reporting Requirements</u>.

a.     Defendants shall enter into a contract with at least one third-party to collect reasonably available information pertaining to Improved Catalytic Converter part numbers that have been reported by geographically-dispersed vehicle repair/service facilities relating to vehicle servicing or repair and/or the sale of the Improved Catalytic Converter part numbers ("Invoiced Transactions"). Under any such contract, the third-party shall endeavor to collect and provide to Defendants the following information, to the extent reasonably available, pertaining to Invoiced Transactions: (1) the part numbers of the Improved Catalytic Converters identified in such Invoiced Transaction, (2) the date of such Invoiced Transaction, and (3) the state of such Invoiced Transaction (collectively, "Invoiced Transaction Data"). Defendants shall not submit to the United States any PII with respect to consumers who purchased the Improved Catalytic Converters.

b.     Defendants shall submit quarterly reports, in accordance with Paragraph 70.c, to the United States that:

i.     Provide information identifying the quantity of each part number of Improved Catalytic Converters manufactured, ordered by First-Tier Customers, and shipped by the manufacturer(s) to First-Tier Customers in accordance with the requirements of Paragraph 66 and the "ship to" state for each such catalytic converter;

ii.     Provide all reasonably available information concerning the sales of the Improved Catalytic Converters by the First-Tier Customers that such First-Tier Customers provide to the Improved Catalytic Converter manufacturer(s);

iii.     Provide Invoiced Transaction Data that Defendants have obtained from the third-party in accordance with Paragraph 67.a; and

iv.     Include a certification in accordance with Paragraph 79 that the Improved Catalytic Converters conform to the technical requirements specified in Paragraph 66.a.

1    c.    Defendants shall continue to implement the Program and submit quarterly reports

2    until evidence is provided that Defendants have manufactured, received orders from First-Tier

3    Customers for, and shipped to First-Tier Customers 200,000 Improved Catalytic Converters, provided

4    that EPA policy or regulations do not change to prohibit the manufacture and sale of the Improved

5    Catalytic Converters.

6    d.    The parties agree that, until termination of the Consent Decree in accordance with

7    Section XVIII, any information submitted under this Section VI.D that provides the identity of any

8    manufacturer of, or part numbers or other identifying information concerning, the Improved Catalytic

9    Converter, as well as all information reported pursuant to Paragraphs 67.a and b, shall be treated as CBI,

10   provided that Defendants follow the procedures set forth in Paragraph 119 and 40 C.F.R. Part 2.

11   Further, Defendants shall take reasonable measures to protect the confidentiality of such information.

12   68.    <u>Additional Certifications</u>.  In the first quarterly report required by Paragraph 67.b,

13   Defendants shall certify in accordance with Paragraph 79 that:

14   a.    They are not required to perform the Program by any federal, state, or local law or

15   regulation or by any agreement, grant, or as injunctive relief awarded in any other action in any forum;

16   b.    The Program is not a project that Defendants were planning or intending to

17   construct, perform, or implement other than in settlement of the claims resolved in the Consent Decree;

18   c.    Defendants have not received and will not receive credit for the Program in any

19   other enforcement action; and

20   d.    Defendants will not receive any reimbursement for any of the costs they expend

21   implementing the Program from any person.

22   **California Mitigation Program**

23   69.    Defendants have entered into a separate agreement with California, which is intended to

24   fully mitigate the total lifetime excess NOx emissions from the Subject Vehicles in California as

25

claimed by California. That agreement is set forth in a separate proposed consent decree between

Defendants and California that has been lodged contemporaneously with this Consent Decree.

## VII. REPORTING REQUIREMENTS

70. <u>Timing of Reports</u>. Unless otherwise specified in this Consent Decree, or the Parties

otherwise agree in writing, Defendants shall submit reports required under this Consent Decree as

follows:

        a.      Annual reports are due one month after the one-year anniversaries of the Effective

Date.

        b.      Semi-annual reports are due one month after each 6-month anniversary of the

Effective Date.

        c.      Quarterly reports are due one month after each 3-month anniversary of the

Effective Date.

        d.      Except as specified elsewhere in the Consent Decree, reporting shall continue

until termination of the Consent Decree in accordance with Section XVIII (Termination).

71. <u>Reporting of Violations</u>.

        a.      Except as otherwise provided in Paragraph 71.c, if Defendants reasonably believe

they have violated, or that they may violate, any requirement of this Consent Decree, Defendants shall

notify EPA, CARB, and the CA AG of such violation and its likely duration, in writing, within 10

business days of the day Defendants first reasonably believe that a violation has occurred or may occur,

with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to

prevent or minimize such violation. If Defendants believe the cause of a violation cannot be fully

explained at the time the report is due, Defendants shall so state in the report. Defendants shall

investigate the cause of the violation and shall then submit an amendment to the report, including a full

explanation of the cause of the violation, within 30 days after the day on which Defendants reasonably

believe they have determined the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendants of their obligation to provide the notice required by Section IX (Force Majeure).

b.       Defendants shall report information about potential violations of Paragraphs 38.b (Scheduling) and 44 (Vehicle Labeling) as provided in this Paragraph 71.b in lieu of complying with Paragraph 71.a. Each report required by Paragraph 47 (Recall Program Reporting and Monitoring) shall include information about potential violations of Paragraphs 38.b and 44 occurring between the date of the prior report and 10 business days prior to the day the report is submitted. If Defendants believe the cause of a violation cannot be fully explained at the time the report is due under Paragraph 47, Defendants shall so state in the report. Defendants shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 days after the day on which Defendants reasonably believe they have determined the cause of the violation.

c.       <u>Semi-Annual Report of Violations</u>. On January 31st and July 31st of each year, Defendants shall submit a summary to the United States and California of any violations of the Decree that occurred during the preceding 6 months (or potentially shorter period for the first semi-annual report), and that are required to be reported pursuant to Paragraph 71.a, including the date of the violation, the date the notice of violation was sent, and a brief description of the violation.

72.       <u>Reporting of Threats</u>. Whenever Defendants reasonably believe any violation of this Consent Decree or any other event affecting Defendants' performance under this Decree may pose an immediate threat to the public health or welfare or the environment, Defendants shall notify EPA and California by email and also California AG by phone (voicemail being sufficient) in accordance with Section XIV (Notices) as soon as possible, but no later than 24 hours after Defendants first reasonably

believe the violation or event may pose an immediate threat to the public health or welfare or the environment. This procedure is in addition to the requirements set forth in Paragraph 71.

73. <u>Reporting Requirements for Section VI.A.</u> Defendants shall comply with the reporting requirements set forth in Paragraph 36.

74. <u>Reporting Requirements for Section VI.B.</u> Defendants shall comply with the reporting requirements set forth in Paragraph 47 or 49.a, as applicable.

75. <u>Reporting Requirements for Section VI.C.</u> Defendants shall comply with the reporting requirements set forth in Paragraph 61.

76. <u>Reporting Requirements for Section VI.D.</u> Defendants shall comply with the reporting requirements set forth in Paragraph 67.

77. Defendants shall submit reports to the persons designated to receive them, and in accordance with the methods and to the addresses required by Section XIV (Notices).

78. All plans, reports, and other information required to be posted to a public web page by this Consent Decree shall be accessible on the public web page that Defendants use to administer the Emissions Modification Recall Program pursuant to Paragraph 38.c, and a link to such web page shall be accessible from Defendants' primary consumer website in the United States.

79. Each report submitted by Defendants under this Section, or required elsewhere to be certified in accordance with this Paragraph, shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of perjury under the laws of the United States of America and the State of California that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, correct, and complete. I have no personal knowledge, information or belief that the information submitted is other than true, correct, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

80. Defendants agree that the certification required by Paragraph 79 is subject to 18 U.S.C. §§ 1001(a) and 1621, and California Penal Code §§ 115, 118, and 132.

81. The certification requirement in Paragraph 79 does not apply to emergency or similar notifications where compliance would be impractical.

82. The reporting requirements of this Consent Decree do not relieve Defendants of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

83. Any information provided pursuant to this Consent Decree may be used by the United States or California in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

84. Defendants shall be liable for stipulated penalties to the United States and California for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

85. Late Payment of Civil Penalty.  If Defendants fail to pay the civil penalties required to be paid under Section IV (Civil Penalty) when due, Defendants shall pay to each Plaintiff for which payment is late stipulated penalties as follows:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $50,000 | 1st through 30th day |
| $100,000 | 31st through 45th day |
| $200,000 | 46th day and beyond |

86. <u>Violations of Section VI.A (Modification of Subject Vehicles and Post-Entry Compliance Testing)</u>.

a. <u>Failure to Comply with Prohibition on Defeat Devices</u>. If Defendants modify, or cause to be modified, a Subject Vehicle after the Effective Date by updating such vehicle with a configuration of software and calibrations that contains a Defeat Device, Defendants must pay a stipulated penalty to the United States and CARB of $20,000,000 for each Defeat Device (but not for each vehicle that contains such Defeat Device).

b. <u>Failure to Disclose AECDs</u>. If the Approved Emissions Modification includes an AECD that Defendants have not listed and described in the AECD Disclosure Document as of the Effective Date, Defendants shall pay the following stipulated penalties, unless Defendants update the AECD Disclosure Document within 180 days of the Effective Date to include such AECD and do so voluntarily before EPA and CARB discover the undisclosed AECD:

i. $1,000,000 for each undisclosed AECD that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use, and

ii. $100,000 for each undisclosed AECD that is wholly emissions neutral or that improves the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use.

c. <u>Failure to Comply with Approved Emissions Modifications</u>. Except as otherwise allowed or approved under this Consent Decree, if Defendants modify, or cause to be modified, a Subject Vehicle after the Effective Date by making changes to the vehicle that do not comply with the Approved Emissions Modification, Defendants must pay a stipulated penalty to EPA and CARB of $5,000 for each nonconformance with the Approved Emissions Modifications and for each Subject Vehicle that contains a nonconformance.

d.     <u>Failure to Comply with OBD Summary Table</u>.  Except as otherwise allowed or approved under this Consent Decree, if Defendants modify, or cause to be modified, a Subject Vehicle after the Effective Date by making changes to the vehicle that do not comply with the OBD System and functionality described in the OBD Summary Table, as required by Paragraph 22.b, Defendants must pay a stipulated penalty to EPA and CARB of $2,500 for each nonconformance with the Summary Table and for each Subject Vehicle updated with the Approved Emissions Modification.

e.     <u>Failure to Comply with Procedures for Post-Entry Modifications relating to Critical Emissions Controls, Thermal Management Strategies, or the OBD System</u>.  If, after implementing the Approved Emissions Modification, Defendants fail to follow the procedures in Paragraph 25 for modifying the Critical Emissions Systems, Thermal Management Strategies, or the OBD Systems in Subject Vehicles updated with the Approved Emissions Modification, Defendants shall pay to the United States and CARB a stipulated penalty of:

i.     $900,000 for each failure to submit an Application in accordance with the requirements in Paragraph 25.a;

ii.     $500,000 for each failure to submit a Recall Report to EPA and CARB in accordance with the requirement of Paragraph 25.b; and

iii.     $30,000 for each failure to provide notice of a NHTSA Recall in accordance with the requirement of Paragraph 25.c.

f.     <u>Failure to Complete Post-Entry Testing Requirements</u>.  If Defendants fail to complete Aging Testing or In-Use Testing in accordance with Paragraphs 29 or 30, Defendants shall pay to the United States and CARB a stipulated penalty for each day of such failure:

| <u>Penalty per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $5,000 | 1st through 14th day |
| $20,000 | 15th through 30th day |
| $50,000 | 31st day and beyond. |

g. **Failure to Submit Root-Cause Evaluation Reports.** If Defendants fail to submit a report concerning Root-Cause Evaluations in accordance with Paragraph 29.c.vi or Paragraph 31.a, 31.b, or 31.c, Defendants shall pay to the United States and CARB a stipulated penalty for each day of such failure:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $15,000 | 31st day and beyond. |

h. **Failure to Comply with OBD Testing.** If Defendants fail to complete OBD Testing in accordance with Paragraph 33, Defendants shall pay to the United States and CARB a stipulated penalty for each day of such failure:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $20,000 | 31st day and beyond. |

i. **Failure to Submit Remedial Plan.** If Defendants fail to submit a remedial plan in accordance with Paragraph 31.f, Defendants shall be subject to the following stipulated penalties:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $20,000 | 31st day and beyond. |

j. **Failure to Comply with Emissions Standards.** If, as determined in accordance with Paragraph 31.e (Determination of Non-Compliance) or Paragraph 31.h (Remedy Failure), Subject Vehicles updated with the Approved Emissions Modification or the Amended Approved Emissions Modification fail to meet one or more emissions standards referenced in Paragraph 28, Defendants shall pay a stipulated penalty equal to the total number of vehicles that exceed such standards multiplied by the applicable "per vehicle" penalty shown in the chart below. For those Subject Vehicles that exceed

more than one emissions standard, the applicable "per vehicle" penalty shall be based upon the exceedance that results in the greatest "per vehicle" penalty. The percentage of the exceedance shall be calculated by: (i) summing the test result with any Applicable Adjustment Factors, (ii) rounding the result to the same number of decimal places as the applicable standard from Paragraph 28, (iii) subtracting the applicable emissions standard from the result, (iv) dividing the result by the applicable standard, and (v) multiplying by 100 and rounding to the nearest percentage point.

| Percentage by Which Subject Vehicles Exceed Emissions Standard | "Per Vehicle" Penalty |
|---|---|
| 1-15% | $25 |
| 16% – 20% | $45 |
| 21% – 30% | $75 |
| 31% to 40% | $105 |
| 41% to 50% | $135 |
| 51% to 60% | $165 |
| 61% to 70% | $195 |
| 71% to 80% | $225 |
| 81% to 90% | $255 |
| 91% to 100% | $285 |
| Greater than 100% | $315 |

k.      Failure to Comply with OBD Requirements. If EPA and CARB determine that one or more Subject Vehicles fail to comply with the OBD requirements under Paragraph 32, and if such failure is not a Pre-Approved OBD Deficiency, an Additional OBD Non-Compliance, or identified in the Additional OBD and Inducement Disclosures, Defendants shall pay to the United States and CARB a stipulated penalty of $5,000,000 for OBD non-compliance. Additionally, for each OBD non-compliance subject to stipulated penalties under this Paragraph, Defendants shall extend the warranty periods in Section VI.B by 6 months and 6,000 miles.

l.      Failure to Pay OBD Penalty. If Defendants fail to pay the penalty required under Paragraph 34.c (Penalty Payment to CARB for Additional OBD Non-Compliances) when due, Defendants shall, in addition to the penalty, pay stipulated penalties directly to CARB as follows:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $4,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $20,000 | 31st day and beyond. |

    m.    <u>Failure to Report Emissions Test Results and Emissions Test Data</u>.  If Defendants fail to submit Emissions Test Results or other Emissions Test Data in accordance with Paragraphs 29 (Aging Testing), 30 (In-Use Verification and In-Use Confirmatory Testing), 31 (Root-Cause Evaluation and Remedial Procedures for Subject Vehicles), 33 (OBD Testing), and 35 (Information Sharing with EPA and CARB), Defendants shall pay to the United States and CARB a stipulated penalty for each day of such failure:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $2,000 | 1st through 14th day |
| $3,000 | 15th through 30th day |
| $10,000 | 31st day and beyond. |

87.    <u>Violations of Section VI.B (Emissions Modification Recall Program)</u>.

    a.    <u>Failure to Establish Recall Program</u>.  If Defendants fail to timely initiate the Emissions Modification Recall Program with respect to all Eligible Owners and Eligible Lessees as required by Paragraph 38.a (that is, if Defendants fail to make the Approved Emissions Modification available to Eligible Owners and Eligible Lessees within 15 days of the Effective Date under Paragraph 38.a, unless such time is extended in writing by EPA/CARB, Defendants shall pay the following Stipulated Penalty for each day the offer is delayed:

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $10,000 | 1st through 14th day |
| $20,000 | 15th through 30th day |
| $35,000 | 31st day and beyond. |

    b.    <u>Failure to Timely Install the Approved Emissions Modification</u>.  For any Eligible Owner or Eligible Lessee who has scheduled the installation of an Approved Emissions Modification at

a Dealer and is required to wait more than 75 days to receive the Approved Emissions Modification in violation of Paragraph 38.b, Defendants shall pay the following Stipulated Penalty for each day thereafter that the Eligible Owner or Eligible Lessee is required to wait to receive the Approved Emissions Modification. Notwithstanding the foregoing, Defendants' liability for stipulated penalties under this Paragraph shall not accrue until and unless there have been 100 instances of action or inaction that would give rise to a stipulated penalty. Once the threshold number of instances is reached, Defendants shall be liable for each and every instance.

| Penalty per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day per affected vehicle |
| $1,000 | 15th through 30th day per affected vehicle |
| $2,000 | 31st day and beyond per affected vehicle, to a cumulative maximum of $100,000 per affected vehicle. |

In assessing stipulated penalties under this Paragraph, any delay in installing the Approved Emissions Modification that is attributable to an Eligible Owner or Eligible Lessee shall not count against the 75-day time requirement in Paragraph 38.b. In no event shall Defendants be required to pay a penalty for a vehicle under this Paragraph 87.b for the same conduct that forms the basis for a Stipulated Penalty demand under Paragraph 87.a.

c. <u>Failure to Establish and Maintain Recall Program Call Center and Online Support</u>. If Defendants fail to timely establish and thereafter maintain a Recall Program Call Center and online support website as required by Paragraph 38.c, Defendants shall pay the following Stipulated Penalty for each day that the call center and/or online support website is not operative.

| Penalty per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 10th day |
| $4,000 | 11th through 30th day |
| $15,000 | 31st day and beyond. |

d.    Unauthorized Waiver or Release or Other Consideration in Exchange for Performing Approved Emissions Modification.  If Defendants require any release of liability for any legal claims that an Eligible Owner or Eligible Lessee may have against Defendants or any other person solely in exchange for receiving the Approved Emissions Modification, or if Defendants require any consideration whatsoever from an Eligible Owner or Eligible Lessee in connection with the installation of the Approved Emissions Modification, in violation of Paragraph 38.d of the Decree, Defendants shall pay a Stipulated Penalty of $7,500 per affected vehicle.

e.    Premature Termination of Recall Program.  If, at any time prior to the 18th anniversary of the Effective Date, Defendants prematurely terminate the Recall Program with respect to any class of Eligible Vehicle or Vehicles, in violation of the requirements of Paragraph 39, Defendants shall pay the following Stipulated Penalty for each day until the Recall Program is reinstated.

| Penalty per Day | Period of Noncompliance |
|---|---|
| $4,000 | 1st through 30th day |
| $10,000 | 31st through 60th day |
| $20,000 | 61st day and beyond. |

f.    Failure to Provide Recall Program Notices.  If Defendants fail to timely provide the notices required by Paragraph 43 regarding the Recall Program to Eligible Owners, Eligible Lessees, and Dealers, in accordance with the requirements of Paragraph 43.a, 43.c, and 43.d, Defendants shall pay the following Stipulated Penalties for each day that the complete and accurate notice is not timely provided.

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th day |
| $5,000 | 15th through 30th day |
| $10,000 | 31st day and beyond. |

g.    Failure to Provide Approved Emissions Modification Disclosures.  If Defendants fail to timely provide a complete and accurate disclosure to Eligible Owners and Eligible Lessees before the installation of the Approved Emissions Modification on the owner or lessee's Eligible Vehicle in

accordance with the requirements of Paragraph 43.b, Defendants shall pay the following Stipulated Penalty for each day that the disclosure is not provided.

| Penalty per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th day per affected vehicle |
| $1,000 | 15th through 30th day per affected vehicle |
| $5,000 | 31st day and beyond per affected vehicle, to a cumulative maximum of $100,000 per affected vehicle. |

      h.    <u>Misleading Notices or Advertisements</u>.  If Defendants provide any materially misleading or inaccurate notice to any Eligible Owner or Eligible Lessee regarding the individual owner or lessee's rights or available remedies under the Recall Program, including, but not limited to, any rights or available remedies under the Warranty provisions set forth in Paragraphs 45.a–45.d, Defendants shall have 30 days to correct such notice after EPA, CARB, or the CA AG advise Defendants that the notice is materially misleading or inaccurate.  If Defendants fail to correct the notice within 30 days, the following stipulated penalty shall apply per day the notice is not corrected:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $10,000 | 1st through 14th day |
| $25,000 | 15th through 30th day |
| $50,000 | 31st day and beyond. |

      i.    <u>Failure to Properly Label Modified Vehicles</u>.  If Defendants fail to affix a label to each and every Eligible Vehicle that receives the Approved Emissions Modification at the time such Approved Emissions Modification is applied to the vehicle and in accordance with the requirements of Paragraph 44, Defendants shall pay a Stipulated Penalty of $1,000 per label per vehicle, provided that no stipulated penalty shall accrue for the first 15 days that the label is not affixed.

      j.    <u>Failure to Honor Warranties</u>.  If Defendants fail to honor or cause any Dealer to fail to honor the Extended Warranty described in Paragraph 45, including (i) the terms of the warranty coverage described in Paragraph 45.a, as well as any modification of the Extended Warranty made pursuant to Paragraph 45.b, (ii) the Extended Warranty period required by Paragraph 45.c, and (iii) the

Buyback and Lease Termination remedies required by Paragraph 45.d, Defendants shall pay a Stipulated Penalty of $20,000 for each vehicle for which the Extended Warranty was not properly honored. In addition, Defendants shall also reimburse the affected Eligible Owner or Eligible Lessee any amount paid by the Eligible Owner or Eligible Lessee to Defendants or a Dealer as a result of the failure to honor the Extended Warranty. Notwithstanding the foregoing, Defendants' liability for stipulated penalties under this Paragraph shall not accrue until and unless there have been 100 instances of action or inaction that would give rise to a stipulated penalty. Once the threshold number of instances is reached, Defendants shall be liable for each and every instance.

        k.    <u>Failure to Maintain a VIN-Searchable Database with the required Emissions Modification Disclosures and Specifying Warranty Coverage</u>. If Defendants fail to maintain an accurate and complete database specifying the warranty coverage for each Subject Vehicle in accordance with the requirements of Paragraphs 45.f and 45.g, Defendants shall pay the following Stipulated Penalties for each day the database is not maintained, and for each covered part omitted:

| <u>Penalty per Day</u> | <u>Period of Noncompliance</u> |
|---|---|
| $2,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $50,000 | 31st day and beyond. |

        l.    <u>Penalties for Export, Sale, or Re-Sale of Unmodified Vehicles</u>. If, after the Effective Date of this Decree, Defendants sell, re-sell, lease, re-lease, export, or cause or arrange for any Dealer or other entity to do any of the preceding for any Subject Vehicle that has not first received the Approved Emissions Modification in violation of the requirements in Paragraph 46, Defendants shall pay a stipulated penalty of $25,000 for each Subject Vehicle that is sold, re-sold, leased, re-leased, or exported. Likewise, if, after the Effective Date of this Decree, Defendants sell or cause or arrange for any Dealer or other entity to sell any Subject Vehicle that has not first received the Approved Emissions Modification in violation of the requirements in Paragraph 27 (Prohibition of Sales of Vehicles that

Have Not Entered into Commerce), Defendants shall pay a stipulated penalty of $25,000 for each sale of a Subject Vehicle.

88.    Violations of Section VI.C (Corporate Compliance Requirements).

a.    Ethics Helpline and Corporate Governance.  Defendants shall pay the stipulated penalties set forth below for each day that the maintenance or implementation of the Ethics Helpline or Corporate Governance projects is not in accordance with the requirements of Paragraph 50.c or 51.a, as applicable.  However, these stipulated penalties shall not accrue if, during the period of noncompliance alleged by the United States: Defendants (1) took reasonable and substantial measures to comply with the obligation; and (2) had an objectively reasonable belief that they had complied with the obligation, which shall be established by a certification pursuant to Paragraph 79 and any other evidence Defendants may submit.  Such certification and evidence shall be submitted by Defendants to the United States within 30 days of receiving the United States' stipulated penalty demand together with a description of the measures Defendants are taking to address the noncompliance identified in the United States' demand.  The United States shall evaluate the evidence submitted by Defendants to determine whether to modify or withdraw the United States' stipulated penalty demand.  If the United States, after reviewing such evidence, elects to impose stipulated penalties on Defendants, Defendants have the right to invoke the Dispute Resolution procedures set forth in Section X (Dispute Resolution).

| Penalty per Day | Period of Noncompliance |
| --- | --- |
| $2,000 | 1st through 14th day |
| $10,000 | 15th through 30th day |
| $50,000 | 31st day and beyond. |

b.    Technical Training.  Defendants shall pay stipulated penalties per day for each day that Defendants fail to meet the deadlines for the training requirements of Paragraphs 52.a and 52.b, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $1,000          | 1st through 14th day     |
|                | $2,500          | 15th through 30th day    |
|                | $10,000         | 31st day and beyond.     |

c.    Risk Assessment.  Defendants shall pay stipulated penalties per day for each day that the risk assessment is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 53, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $1,000          | 1st through 14th day     |
|                | $2,500          | 15th through 30th day    |
|                | $10,000         | 31st day and beyond.     |

d.    Internal Audit.  Defendants shall pay stipulated penalties per day for each day that the internal audit is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 58, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $1,000          | 1st through 14th day     |
|                | $2,500          | 15th through 30th day    |
|                | $10,000         | 31st day and beyond.     |

e.    PEMS Testing.  Defendants shall pay stipulated penalties for each day that the PEMS testing program is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 59, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $2,000          | 1st through 14th day     |
|                | $5,000          | 15th through 30th day    |
|                | $10,000         | 31st day and beyond.     |

f.    Data Collection.  Defendants shall pay stipulated penalties per day for each day that they fail to comply with the requirements concerning the submission of data collected, as forth in Paragraph 60, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $1,000          | 1st through 14th day    |
|                | $2,500          | 15th through 30th day   |
|                | $10,000         | 31st day and beyond.    |

g. <u>Independent Compliance Auditor</u>. Defendants shall pay stipulated penalties per day for each day on which the list of candidates, the retaining of the Independent Compliance Auditor, the posting of the final annual reports on Defendants' website or the response/action plan for proposed corrective measures, is overdue or is otherwise not in accordance with the requirements set forth in Paragraphs 63.a, 63.b, 64.d.ii, or 65.a, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $1,000          | 1st through 14th day    |
|                | $5,000          | 15th through 30th day   |
|                | $10,000         | 31st day and beyond.    |

h. <u>Implementation of Corrective Measures</u>. Defendants shall pay stipulated penalties per day for each day on which the report and certification of implementation of corrective measures is overdue or is otherwise not in accordance with the requirements set forth in Paragraph 65.a, as follows:

|                | Penalty per Day | Period of Noncompliance |
|----------------|-----------------|-------------------------|
|                | $2,000          | 1st through 30th day    |
|                | $10,000         | 31st through 60th day   |
|                | $25,000         | 61st day and beyond.    |

i. <u>Independent Compliance Auditor Information and Access</u>. If the United States believes that Defendants are in violation of the requirements set forth in Paragraph 64.a or 64.c (relating to information and access rights for the Independent Compliance Auditor), the United States may provide notice of such violations pursuant to Section XIV (Notices) to Defendants. Defendants shall have 30 days from receipt of the notice to address the alleged violations or invoke Dispute Resolution pursuant to Section X. If after 30 days following receipt by Defendants of the United States' notice, the

United States believes Defendants are in violation of the requirements set forth in Paragraph 64.a or

64.c, then Defendants shall be subject to stipulated penalties, as follows:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 45th day |
| $5,000 | 46th through 60th day |
| $10,000 | 61st day and beyond. |

89. <u>Violations of Section VI.D (Mitigation Program)</u>.

    a. <u>Failure to meet Catalytic Converter Requirements</u>. Defendants shall be subject to stipulated penalties of:

        i. $400 per catalytic converter if Defendants fail to meet the requirements of Paragraphs 66, 66.a or 66.c to manufacture and ship to First-Tier Customers who order them, 200,000 Improved Catalytic Converters that meet the technical requirements of Paragraph 66.a and, as produced and to the extent feasible, are not clearly distinguishable from unimproved catalytic converters as required by Paragraph 66.c by no later than July 1, 2020, and

        ii. An additional $50 per catalytic converter per month for each month after July 1, 2020, that Defendants continue to fail to meet the requirements of Paragraphs 66, 66.a, or 66.c, to manufacture and ship to First-Tier Customers who order them, 200,000 Improved Catalytic Converters that meet the technical requirements of Paragraph 66.a and, as produced and to the extent feasible, are not clearly distinguishable from unimproved catalytic converters as required by Paragraph 66.c, unless and until the manufacture and sale of the Improved Catalytic Converters becomes prohibited as set forth in Paragraph 67.c.

    b. <u>Failure to Contract for Invoiced Transaction Data</u>. Defendants shall be subject to a stipulated penalty of $5,000,000 if they fail to comply with the requirements in Paragraph 67.a to enter into a contract with at least one third-party to collect sales and installation data as required by Paragraph 67.a.

90. <u>Violations of Section VII (Reporting Requirements)</u>.

    a.    <u>Reporting of Violations</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements of Paragraph 71:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $2,000 | 1st through 14th day |
| $5,000 | 15th through 30th day |
| $10,000 | 31st day and beyond. |

    b.    <u>Compliance Reporting</u>.  The following stipulated penalties shall accrue per violation per day for each violation of the reporting requirements set forth in Paragraph 36 of Section VI.A, Paragraph 47 or 49.a, as applicable, of Section VI.B, Paragraph 61 of Section VI.C, and Paragraph 67 of Section VI.D:

| Penalty per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th day |
| $5,000 | 15th through 30th day |
| $10,000 | 31st day and beyond. |

    c.    <u>Certification Requirements</u>.  For each violation of the certification requirements of Paragraph 79, except for false statements as described in Paragraph 90.d, below, for which the stipulated penalty shall be as provided therein, Defendants shall have a grace period of 15 days to self-correct the violation, after which time, Defendants shall pay a stipulated penalty of $200,000 for each violation.

    d.    <u>False Statements</u>.  Defendants shall pay a stipulated penalty of $1,000,000 for each report or Submission required to be submitted pursuant to this Consent Decree that contains a knowingly false, fictitious, or fraudulent statement or representation of material fact.

91.  Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until

performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

92. The United States, in consultation with CARB, will issue any demand for stipulated penalties. Defendants shall pay any stipulated penalties to the United States/CARB within thirty 30 days of receiving the United States' written demand, unless Defendants invoke the dispute resolution procedures under Section X (Dispute Resolution) within the thirty (30) day period. Defendants shall pay 75 percent of the total stipulated penalty amount due to the United States and 25 percent to CARB, except for (1) Paragraphs 86.d (Failure to Comply with OBD Summary Table), 86.h (Failure to Comply with OBD Testing), 86.k (Failure to Comply with OBD Requirements), 87.g (Failure to Provide AEM Disclosures), 87.j (Failure to Honor Warranties), and 87.k (Failure to Maintain VIN Searchable Database) for which Defendants shall pay 50 percent of the total stipulated penalty amount due to the United States and 50 percent to CARB; (2) Paragraph 86.l (Failure to Pay OBD Penalty) for which Defendants shall pay 100 percent of the total to CARB; and (3) Paragraph 89 (Violations of Section VI.D – Mitigation) for which Defendants shall pay 100 percent of the total to the United States.

93. Either the United States or CARB may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree. However, no action by either the United States or CARB may reduce or waive stipulated penalties due the other.

94. Stipulated penalties continue to accrue as provided in Paragraph 91 during any dispute resolution period, but need not be paid until the following:

a. If the dispute is resolved by agreement of the Parties or by a decision of EPA/CARB that is not appealed to the Court, Defendants shall pay accrued penalties determined to be owing, together with interest as provided in Paragraph 97, to the United States/CARB within 30 days after the effective date of the agreement or the receipt of EPA's/CARB's decision or order.

1       b.      If the dispute is appealed to the Court and the United States/California prevail(s)

in whole or in part, Defendants shall pay all accrued penalties determined by the Court to be owing,

together with interest as provided in Paragraph 97, to the United States/CARB, within 60 days of

receiving the Court's decision or order, except as provided in Paragraph 94.c, below.

       c.      If any Party appeals the District Court's decision, Defendants shall pay all

accrued penalties determined to be owing, together with interest as provided in Paragraph 97, to the

United States/CARB, within 15 days of receiving the final appellate court decision.

95.     Defendants shall pay stipulated penalties owing to the United States in the manner set

forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall

state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are

being paid.

96.     Defendants shall pay stipulated penalties owing to CARB by check, accompanied by a

Payment Transmittal Form (which CARB will provide to the addressee listed in Paragraph 10 after the

Effective Date), with each check mailed to:

Air Resources Board, Accounting Branch
P.O. Box 1436
Sacramento, CA 95812-1436;

or by wire transfer, in which case Defendants shall use the following wire transfer information and send

the Payment Transmittal Form to the above address prior to each wire transfer:

State of California Air Resources Board
c/o Bank of America, Inter Branch to 0148
Routing No. 0260-0959-3  Account No. 01482-80005
Notice of Transfer: Yogeeta Sharma  Fax: (916) 322-9612.

Defendants are responsible for any bank charges incurred for processing wire transfers.  Except as

otherwise provided by this Consent Decree, stipulated penalties paid to CARB shall be deposited into

the Air Pollution Control Fund and used by CARB to carry out its duties and functions.

97.     If Defendants fail to pay stipulated penalties according to the terms of this Consent Decree, Defendants shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due and continuing until payment has been made in full. Nothing in this Paragraph shall be construed to limit the United States or California from seeking any remedy otherwise provided by law for Defendants' failure to pay any stipulated penalties.

98.     The payment of penalties and interest, if any, shall not alter in any way Defendants' obligation to complete the performance of the requirements of this Consent Decree.

99.     <u>Non-Exclusivity of Remedy</u>.  Stipulated penalties are not the United States' or California's exclusive remedy for violations of this Consent Decree, including violations of the Consent Decree that are also violations of law.  Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States and California expressly reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree.  In addition to the remedies specifically reserved and those specifically agreed to elsewhere in this Consent Decree, the United States and California expressly reserve the right to seek any other relief they deem appropriate for Defendants' violation of this Decree or applicable law, including but not limited to an action against Defendants for statutory penalties where applicable, additional injunctive relief, mitigation or offset measures, contempt, and/or criminal sanctions.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree (and payable to the United States or to California, respectively), shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree (to the United States or to California, respectively).

## IX.     <u>FORCE MAJEURE</u>

100.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite

Defendants' best efforts to fulfill the obligation. The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event: (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendants' financial inability to perform any obligation under this Consent Decree.

101.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, for which Defendants intend or may intend to assert a claim of force majeure, whether or not caused by a force majeure event, Defendants shall provide notice to EPA and CARB in accordance with Section XIV (Notices) within 7 days of when Defendants first knew that the event might cause a delay. Within 14 days thereafter, Defendants shall provide in writing to EPA and CARB an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay or the effect of the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendants, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendants shall be deemed to know of any circumstance of which Defendants, any entity controlled by Defendants, or Defendants' contractors knew or should have known.

102.     If EPA/CARB agree (concerning a force majeure claim for requirements of Section VI.A), or if EPA, in consultation with CARB, agrees (concerning a force majeure claim for any other requirements of this Consent Decree) that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA/CARB or EPA, as applicable, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA/CARB or EPA will notify Defendants in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

103.     If EPA/CARB or EPA do(es) not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA/CARB or EPA will notify Defendants in writing of its/their decision.

104.     If Defendants elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's/CARB's or EPA's notice. In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 100 and 101. If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Consent Decree identified to EPA/CARB or EPA and the Court, as applicable.

## X.     DISPUTE RESOLUTION

105.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with

1    respect to this Consent Decree.  Failure by Defendants to seek resolution of a dispute under this Section

2    shall preclude Defendants from raising any such issue as a defense to an action by the United States or

3    California to enforce any obligation of Defendants arising under this Decree.

4        106.   <u>Informal Dispute Resolution</u>.  Any dispute subject to dispute resolution under this

5    Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to

6    have arisen when Defendants send the United States and California a written Notice of Dispute.  Such

7    Notice of Dispute shall state clearly the matter in dispute, including, where applicable, whether the

8    dispute arises from a decision made by EPA and CARB jointly, or EPA or CARB individually.  The

9    period of informal negotiations shall not exceed 30 days after the dispute arises, unless that period is

10   modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the

11   position advanced by the United States/California shall be considered binding unless, within 30 days

12   after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution

13   procedures as set forth below.

14       107.   <u>Formal Dispute Resolution</u>.  Defendants shall invoke formal dispute resolution

15   procedures, within the time period provided in the preceding Paragraph, by serving on the United

16   States/California a written Statement of Position regarding the matter in dispute.  The Statement of

17   Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting

18   Defendants' position and any supporting documentation relied upon by Defendants.

19       108.   The United States/California shall serve its/their Statement of Position within 45 days of

20   receipt of Defendants' Statement of Position.  The United States'/California's Statement of Position

21   shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position

22   and any supporting documentation relied upon by the United States/California.  The United States'

23   Statement of Position shall be binding on Defendants, unless Defendants file a motion for judicial

24   review of the dispute in accordance with the following Paragraph.

25

109. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States/California, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 30 days of receipt of the United States'/California's Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendants' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

110. The United States/California shall respond to Defendants' motion within the time period allowed by the Local Rules of this Court. Defendants may file a reply memorandum to the extent permitted by the Local Rules.

111. <u>Standard of Review</u>.

    a. <u>Disputes Concerning Matters Accorded Record Review</u>. In any dispute arising under Section VI.A brought under Paragraph 109, Defendants shall have the burden of demonstrating, based on the administrative record, that EPA's/CARB's action, determination, or position is arbitrary and capricious or otherwise not in accordance with law based on the administrative record. For purposes of this Paragraph, EPA/CARB will maintain an administrative record of the dispute, which will contain all statements of position, including supporting documentation, submitted pursuant to this Section. Prior to the filing of any motion, the Parties may submit additional materials to be part of the administrative record pursuant to applicable principles of administrative law.

    b. <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 109, Defendants shall bear the burden of demonstrating by a preponderance of the evidence that their actions were in compliance with this Consent Decree.

112. In any disputes brought under this Section, it is hereby expressly acknowledged and agreed that this Consent Decree was jointly drafted in good faith by the United States, California, and

Defendants.  Accordingly, the Parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Consent Decree.

113.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 94.  If Defendants do not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION AND CBI

114.    The United States, California, and their representatives, including attorneys, contractors, and consultants ("Agency Representatives"), shall have the right of entry, upon presentation of credentials, at all reasonable times into any of Defendants' offices, plants, or facilities:

a.    To monitor the progress of activities required under this Consent Decree;

b.    To verify any data or information submitted to the United States or California in accordance with the terms of this Consent Decree;

c.    To inspect records related to this Consent Decree;

d.    To conduct testing related to this Consent Decree, whereupon a representative of Defendant shall be given the opportunity to accompany the Agency Representatives conducting such testing;

e.    To obtain documentary evidence, including photographs and similar data, related to this Consent Decree;

f.    To assess Defendants' compliance with this Consent Decree; and

g.     For other purposes as set forth in 42 U.S.C. § 7542(b) and Cal. Gov't Code § 11180.

115.    Upon request, and for purposes of evaluating compliance with the Consent Decree, Defendants shall promptly provide to EPA and California or their authorized representatives at locations to be designated by EPA and California:

a.     A reasonable number of vehicles, in specified configurations, for emissions testing;

b.     A reasonable number of engine control units for vehicles of specified configurations;

c.     Specified software and related documentation for vehicles of specified configurations;

d.     Reasonable requests for English translations of software documents; or

e.     Other items or information that could be requested pursuant to 42 U.S.C. § 7542(a) or Cal. Gov't Code § 11180.

116.    Until 3 years after the termination of this Consent Decree, Defendants shall retain, and shall instruct their contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) (hereinafter referred to as "Records") in their or their contractors' or agents' possession or control, or that come into their or their contractors' or agents' possession or control, relating to Defendants' performance of their obligations under this Consent Decree (except that Defendants are not required to retain copies or images of military identification cards to the extent that retention of such copies or images would violate applicable law, including 18 U.S.C. § 701).  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United States or California, Defendants shall provide

copies of any Records required to be maintained under this Paragraph. Nothing in this Paragraph shall apply to any documents in the possession, custody, or control of any outside legal counsel retained by Defendants in connection with this Consent Decree or of any contractors or agents retained by such outside legal counsel solely to assist in the legal representation of Defendants.

117. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendants shall notify the United States and California at least 90 days prior to the destruction of any Records subject to the requirements of the preceding Paragraph and, upon request by the United States or California, Defendants shall deliver any such Records to EPA or California.

118. Defendants may assert that certain Records are privileged or protected as provided under federal or California law. If Defendants assert such a privilege or protection, they shall provide the following: (a) the title of the Record; (b) the date of the Record; (c) the name and title of each author of the Record; (d) the name and title of each addressee and recipient; (e) a description of the subject of the Record; and (f) the privilege or protection asserted by Defendants. However, Defendants may make no claim of privilege or protection regarding: (1) any data regarding the Subject Vehicles or compliance with this Consent Decree; or (2) the final version of a portion of any Record that Defendants are required to create or generate pursuant to this Consent Decree.

119. <u>Confidential Business Information</u>. Defendants may assert that Records required to be provided under this Consent Decree are protected as CBI under 40 C.F.R. Part 2. As to any Record that Defendants seek to protect as CBI, Defendants shall follow the procedures set forth in 40 C.F.R. Part 2 or comparable California law. Records that Defendants claim to be CBI and submit to the United States and/or California will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B, or comparable California law, as applicable. If no claim of confidentiality accompanies Records when they are submitted to EPA and/or California, the public may be given access to the Records without further notice to Defendants. If EPA or California has notified Defendants that it has determined that the

1   Records are not entitled to confidential treatment under the standards of 40 C.F.R. Part 2, Subpart B, or

2   comparable California law, as applicable, Defendants may appeal such determination.  If Defendants are

3   unsuccessful in an appeal of this determination or further proceedings regarding the CBI status of these

4   Records, the public may be given access to such Records in accordance with 40 C.F.R. Part 2,

5   Subpart B, or comparable California law, as applicable.

6          120.    This Consent Decree in no way limits or affects any right of entry and inspection, or any

7   right to obtain information, held by the United States or California pursuant to applicable federal or state

8   laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain

9   Records imposed by applicable federal or state laws, regulations, or permits.

10             **XII.    <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>**

11         121.    Upon the Effective Date, and subject to the reservations in Paragraph 123, this Consent

12  Decree shall resolve and settle all of the United States' Clean Air Act civil claims for civil penalties and

13  injunctive relief against Defendants, their successors, and all affiliates, parents, or subsidiaries of

14  Defendants identified in Appendix F, and any present or former directors, officers, or employees of

15  Defendants or their affiliates, parents, or subsidiaries identified in Appendix F, provided that such

16  persons were acting within the scope of their employment, for: (a) the violations alleged in the U.S.

17  Complaint, (b) violations arising from or relating to the Original Configuration of the emission control

18  system for the Subject Vehicles, (c) violations arising from or relating to the adjustment factor for

19  infrequent regeneration of the DPF System in the Subject Vehicles, and (d) violations arising from or

20  relating to Defendants' applications for a certificate of conformity for the Subject Vehicles in MYs 2014

21  to 2016 and any information provided to EPA for the purpose of securing such certificates.

22         122.    Upon the Effective Date, and subject to the reservations in Paragraph 124, this Consent

23  Decree shall resolve and settle California's civil claims, asserted by and through CARB, for injunctive

24  relief pursuant to the Clean Air Act, and for injunctive relief and civil penalties pursuant to California

25

Health and Safety Code §§ 43016, 43017, 43151, 43152, 43153, 43154, 43205, 43211, and 43212; 13 C.C.R. §§ 1961, 1961.2, 1965, 1968.2, and 2037 and the 40 C.F.R. sections incorporated therein by reference, against Defendants, their successors, and all affiliates, parents, or subsidiaries of Defendants identified in Appendix F, and any present or former directors, officers, or employees of Defendants or their affiliates, parents, or subsidiaries identified in Appendix F, provided that such persons were acting within the scope of their employment for: (a) the violations alleged in the California Complaint, (b) violations arising from or relating to the Original Configuration of the emission control system for the Subject Vehicles, (c) violations arising from or relating to the adjustment factor for infrequent regeneration of the DPF System in the Subject Vehicles, and (d) violations arising from or relating to Defendants' applications for an Executive Order for the Subject Vehicles in MYs 2014 to 2016 and any information provided to CARB for the purpose of securing such Executive Orders. In addition, upon the Effective Date, and subject to the reservations in Paragraph 124, this Consent Decree shall resolve and settle California's claims pursuant to California Code of Civil Procedure § 1021.8(a) for costs of investigating and prosecuting Defendants' violations of Health and Safety Code §§ 43016, 43017, and 43154. In addition, upon the Effective Date and subject to the reservations in Paragraph 124, this Consent Decree shall resolve and settle California's claims for costs of litigation pursuant to 42 U.S.C. § 7604(d).

123. The United States reserves, and this Consent Decree is without prejudice to, all claims, rights, and remedies against Defendants with respect to all matters not expressly resolved in Paragraph 121. Notwithstanding any other provision of this Decree, the United States reserves all claims, rights, and remedies against Defendants with respect to:

      a.     Enforcement of the terms of this Consent Decree;

      b.     All rights reserved by Paragraph 99 (Non-Exclusivity of Remedy);

1    c.    Violations relating to the Subject Vehicles that first occur after the Date of

2    Lodging, including, but not limited to, the installation of a Defeat Device in the Subject Vehicles;

3    d.    Emissions-Related Defects in the Subject Vehicles that do not relate to the

4    Approved Emissions Modification;

5    e.    All rights reserved by Paragraph 31.h (Remedy Failure) of Section VI.A with

6    respect to Subject Vehicles updated with the Approved Emissions Modification that fail to meet the

7    emission standards referenced in Paragraph 28 after the completion of testing under Paragraph 29

8    (Aging Testing) or Paragraph 30 (In-Use Verification and In-Use Confirmatory Testing);

9    f.    Any criminal liability; and

10    g.    Any claim(s) of the United States or an agency of the United States, other than

11    EPA, concerning the Subject Vehicles.

12    124.    California reserves, and this Consent Decree is without prejudice to, all claims, rights,

13    and remedies against Defendants with respect to all matters not expressly resolved in Paragraph 122.

14    Notwithstanding any other provision of this Decree, California reserves all claims, rights, and remedies

15    against Defendants with respect to:

16    a.    Enforcement of the terms of this Consent Decree;

17    b.    All rights reserved by Paragraph 99 (Non-Exclusivity of Remedy);

18    c.    Violations relating to the Subject Vehicles that first occur after the Date of

19    Lodging, including, but not limited to, the installation of a Defeat Device in the Subject Vehicles;

20    d.    Emissions-Related Defects in the Subject Vehicles that do not relate to the

21    Approved Emissions Modification;

22    e.    All rights reserved by Paragraph 31.h (Remedy Failure) of Section VI.A of the

23    Consent Decree with respect to Subject Vehicles updated with the Approved Emissions Modification

24

25

1  that fail to meet the emission standards referenced in Paragraph 28 after the completion of testing under

2  Paragraph 29 (Aging Testing) or Paragraph 30 (In-Use Verification and In-Use Confirmatory Testing);

3        f.      Further injunctive relief pursuant to the California Health and Safety Code as

4  alleged in the California Complaint to mitigate the total lifetime excess emissions in California from the

5  Subject Vehicles, which injunctive relief is fully set forth in the First California Partial Consent Decree,

6  lodged simultaneously with this Consent Decree;

7        g.      All claims for relief based on Defendants' violations of California Business and

8  Professions Code sections 17200 et seq., 17500 et seq., and 17580.5 as alleged in the California

9  Complaint, including civil penalties, injunctive relief other the injunctive relief provided for in this

10  Consent Decree, and relief to consumers (including without limitation claims for restitution), which

11  claims are proposed to be released in exchange for the further injunctive relief and monetary relief set

12  forth in the Second California Partial Consent Decree, lodged simultaneously with this Consent Decree;

13        h.      Cost and attorneys' fees other than those released in Paragraph 122 above;

14        i.      Any criminal liability;

15        j.      Any part of any claims for violations of securities laws or the California False

16  Claim Act, California Government Code §§ 12650 et seq.;

17        k.      Any other claims held by any agency or officer of the State of California other

18  than CARB; and

19        l.      Any claims held by individual consumers.

20        125.      This Consent Decree shall not be construed to limit the rights of the United States or

21  California to obtain penalties or injunctive relief under the Act or implementing regulations, or under

22  other federal or state laws, regulations, or permit conditions, except as specifically provided in

23  Paragraphs 121-122.  The United States and California further reserve all legal and equitable remedies to

24  address any imminent and substantial endangerment to the public health or welfare or the environment

25

arising at any of Defendants' facilities, or posed by Defendants' Subject Vehicles, whether related to the

violations addressed in this Consent Decree or otherwise.

126.    In any subsequent administrative or judicial proceeding initiated by the United States or

California for injunctive relief, civil penalties, other appropriate relief relating to Defendants' violations,

Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of

waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other

defenses based upon any contention that the claims raised by the United States or California in the

subsequent proceeding were or should have been brought in the instant case, except with respect to

claims that have been specifically resolved pursuant to Paragraphs 121 and 122.

127.    This Consent Decree is not a permit, or a modification of any permit, under any federal,

State, or local laws or regulations.  Defendants are responsible for achieving and maintaining complete

compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendants'

compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such

laws, regulations, or permits, except as set forth herein.  The United States and California do not, by

their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendants'

compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act,

or with any other provisions of federal, State, or local laws, regulations, or permits.

128.    This Consent Decree does not limit or affect the rights of Defendants or of the United

States or California against any third parties not party to this Consent Decree, nor does it limit the rights

of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by

law.

129.    This Consent Decree shall not be construed to create rights in, or grant any cause of

action to, any third party not party to this Consent Decree.

# XIII. COSTS

130.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and California shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due under this Consent Decree but not paid by Defendants.

# XIV. NOTICES

131.     Unless otherwise specified in this Decree, Materials shall be accompanied by a cover letter and submitted electronically as described below, unless such notices are unable to be uploaded to the CDX electronic system (in the case of EPA) or transmitted by email (in the case of any other party). For all notices to EPA, Defendants shall register for the CDX electronic system and upload such notices at https://cdx.epa.gov/epa_home.asp.  Any notice that cannot be uploaded or transmitted via email shall be provided in writing (and if any attachment is voluminous, it shall be provided on a disk, hard drive, or other equivalent successor technology) to the addresses below:

| | |
|---|---|
| As to the United States: | DOJ at the email, or if necessary, the mail addresses below **and** EPA (via CDX or the mail and/or email address below if CDX is not possible) |
| As to DOJ by email: | eescdcopy.enrd@usdoj.gov Re: DJ # 90-5-2-1-11607 |
| As to DOJ by mail: | EES Case Management Unit Environment and Natural Resources Division U.S. Department of Justice P.O. Box 7611 Washington, DC  20044-7611 Re: DJ # 90-5-2-1-11607 |
| As to EPA by email: | Caballero.Kathryn@epa.gov |
| As to EPA by mail: | Director, Air Enforcement Division 1200 Pennsylvania Avenue NW William J. Clinton South Building MC 2242A Washington, DC 20460 |

| | |
|---|---|
| As to California: | CARB **and** CA AG at the email or mail addresses below, as applicable |
| As to CARB by email: | ellen.peter@arb.ca.gov |
| As to CARB by mail: | Chief Counsel<br>California Air Resources Board<br>Legal Office<br>1001 I Street<br>Sacramento, CA 95814 |
| As to CA AG by email: | judith.fiorentini@doj.ca.gov<br>jon.worm@doj.ca.gov |
| As to CA AG by mail: | Judith Fiorentini<br>Supervising Deputy Attorney General<br>Consumer Law Section<br>California Department of Justice<br>600 West Broadway, Suite 1800<br>San Diego, CA 92101 |
| | Senior Assistant Attorney General<br>Natural Resources Section<br>Office of the Attorney General<br>P.O. Box 944255<br>Sacramento, CA 94244-2550 |
| As to CA AG by phone: | Judith Fiorentini<br>619-738-9343 |
| As to Defendants: | |
| As to one or more of the Defendants by email: | Robert J. Giuffra, Jr.<br>Scott D. Miller<br>Granta Y. Nakayama<br>giuffrar@sullcrom.com<br>millersc@sullcrom.com<br>gnakayama@kslaw.com |

As to one or more of the
Defendants by mail:

Robert J. Giuffra, Jr.
Scott D. Miller
Sullivan & Cromwell LLP
125 Broad Street
New York, NY 10004

Granta Y. Nakayama
King & Spalding LLP
1700 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006

132.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

133.    Materials submitted pursuant to this Section shall be deemed submitted upon uploading electronically, emailing, or mailing as required, except as provided elsewhere in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

134.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.    RETENTION OF JURISDICTION

135.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII.    MODIFICATION

136.    Except as otherwise set forth in Paragraph 57 (Modifications of Procedures and Projects) in Section VI.C (Corporate Compliance Requirements), the terms of this Consent Decree, including any attached appendices and documents incorporated by reference, may be modified only by a subsequent

1 written agreement signed by all the Parties. Where the modification constitutes a material change to this

2 Decree, it shall be effective only upon approval by the Court.

3     137. The United States or California, as applicable, will file any non-material modifications

4 with the Court. Once the non-material modification has been filed, Defendants shall post the filed

5 version (with ECF stamp) on the website required by Paragraph 78.

6     138. Any disputes concerning modification of this Decree shall be resolved pursuant to

7 Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by

8 Paragraph 111, the Party seeking the modification bears the burden of demonstrating that it is entitled to

9 the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

10 **XVIII. <u>TERMINATION</u>**

11     139. After Defendants have completed the requirements of Section VI (Injunctive Measures),

12 except for Paragraphs 39 (No End Date for Emissions Modification Recall) and 45.c (Extended

13 Warranty Period) and associated requirements, have complied with all other requirements of this

14 Consent Decree, and have paid the civil penalty and any accrued stipulated penalties as required by this

15 Consent Decree, Defendants may serve upon the United States and California a Request for

16 Termination, stating that Defendants have satisfied those requirements, together with all necessary

17 supporting documentation.

18     140. Following receipt by the United States and California of Defendants' Request for

19 Termination, the Parties shall confer informally concerning the Request and any disagreement that the

20 Parties may have as to whether Defendants have satisfactorily complied with the requirements for

21 termination of this Consent Decree. If the United States, after consultation with California, agrees that

22 the Decree may be terminated, the United States will file a motion to terminate the Decree, provided,

23 however, that the provisions associated with effectuating and enforcing Paragraphs 39 and 45.c shall

24 continue in full force and effect indefinitely.

25

141.    If the United States, after consultation with California, does not agree that the Decree may be terminated, Defendants may invoke Dispute Resolution under Section X.  However, Defendants shall not seek Dispute Resolution of any dispute regarding termination until 45 days after service of their Request for Termination.

## XIX.    PUBLIC PARTICIPATION

142.    This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  California reserves the right to withdraw or withhold its consent if the United States does so.  Defendants consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendants in writing that it no longer supports entry of the Decree.

## XX.    SIGNATORIES/SERVICE

143.    Each undersigned representative of Defendants and California and the Assistant Attorney General for the Environment and Natural Resources Division of the DOJ certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

144.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  For purposes of this Consent Decree, a signature page that is transmitted electronically (e.g., by facsimile or e-mailed "PDF") shall have the same effect as an original.

## XXI.    INTEGRATION

145.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes

all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXII. 26 U.S.C. § 162(f)(2)(A)(ii) IDENTIFICATION

146. For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Section II (Applicability), Paragraph 6; Section V (Approval of Submissions; U.S./California Decision-Making), Paragraphs 17; Section VI.A (Modification of Subject Vehicles and Post-Entry Compliance Testing, Paragraphs 22-25, 27-30, 31 (except for Paragraphs 31.d, 31.e, and 31.h), 32-33, 35-36; Section VI.B (Emissions Modification Recall Program), Paragraphs 37-41 (except for any payments made pursuant to Paragraph 41), 42-48, 49.a-.49.b; Section VI.C (Corporate Compliance Requirements), Paragraphs 50-65; Section VI.D (Mitigation Program), Paragraphs 66, 67.a-67.c; Section VII (Reporting Requirements), Paragraphs 70-71, 73-79; Section XI (Information Collection and Retention and CBI), Paragraphs 114-117; and related appendices and documents set forth in Section XXIV (Appendices and Documents Incorporated By Reference), is restitution or required to come into compliance with law.

## XXIII. FINAL JUDGMENT

147. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, California, and Defendants. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

# XXIV.  **APPENDICES AND DOCUMENTS INCORPORATED BY REFERENCE**

148.    The following Appendices are attached to and part of this Consent Decree:

      a.      Appendix A is the Adjustment Factors;

      b.      Appendix B is the CVN and CALID for Final Carryback Configuration;

      c.      Appendix C consists of documents related to the MY 2014 Field Fix;

      d.      Appendix D is the Approved Emissions Modification Disclosure;

      e.      Appendix E is the Extended Warranty description; and

      f.      Appendix F is the List of Defendants' affiliates, parents, and subsidiaries for the purposes of Section XII (Effect of Settlement/Reservation of Rights).

149.    The following documents are incorporated into this Consent Decree by reference:

      a.      AECD Disclosure Document;

      b.      Code of Conduct;

      c.      ECU Data Parameters List;

      d.      Final Carryback Configuration;

      e.      Final Carryback Configuration Description Document;

      f.      Improvement Plan;

      g.      MY 2018 Mileage Accumulation Method;

      h.      OBD Demonstration ECU Data Parameters List;

i.    OBD Summary Table; and

j.    Test Protocol.

Dated and entered this 3rd day of ___May___, 2019.

_____

EDWARD M. CHEN
UNITED STATES DISTRICT JUDGE



FOR THE UNITED STATES OF AMERICA:

1/9/19

Date

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JOSEPH W.C. WARREN
LEIGH P. RENDÉ
LESLIE ALLEN
NIGEL COONEY
ANNA GRACE
LAUREN D. GRADY
ANDREW W. KEIR
ZACHARY N. MOOR
EMILY C. POWERS
BRANDON J. ROBERS
JEFFREY A. SPECTOR
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

SUSAN PARKER BODINE
Assistant Administrator
PATRICK D. TRAYLOR
Deputy Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

ROSEMARIE KELLEY  by PAB
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

PHILLIP A. BROOKS
Director, Air Enforcement Division
EVAN BELSER
Chief, Vehicle and Engine Enforcement Branch
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

KATHRYN PIRROTTA CABALLERO
CAITLIN MEISENBACH
Air Enforcement Division, Office of Civil
Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC  20460

FOR THE PEOPLE OF THE STATE OF CALIFORNIA BY AND THROUGH THE CALIFORNIA AIR RESOURCES BOARD AND XAVIER BECERRA, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA:

JUDITH A. FIORENTINI
Supervising Deputy Attorney General
JON F. WORM
LAUREL M. CARNES
Deputy Attorneys General
California Department of Justice
Office of the Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101

*Attorneys for the People of the State of California*

1/9/2019
Date

_Mary D. Nichols_

MARY D. NICHOLS
Chair
California Air Resources Board
1001 I Street
Sacramento, CA 95814

RICHARD W. COREY
Executive Officer
California Air Resources Board
1001 I Street
Sacramento, CA 95814

ELLEN M. PETER
Chief Counsel
D. ARON LIVINGSTON
Assistant Chief Counsel
DIANE KIYOTA
Senior Attorney
California Air Resources Board
1001 I Street
Sacramento, CA 95814

FOR FCA US LLC:

_(signature)_

CHRISTOPHER J. PARDI
NAFTA General Counsel and Secretary


FOR FIAT CHRYSLER AUTOMOBILES N.V.:

_____
GIORGIO FOSSATI
Corporate General Counsel and Secretary


FOR V.M. MOTORI S.P.A.:

_____
GIORGIO FOSSATI
Attorney-in-Fact


FOR V.M. NORTH AMERICA, INC.:

_____
GIORGIO FOSSATI
Attorney-in-Fact

FOR FCA US LLC:

_____
CHRISTOPHER J. PARDI
NAFTA General Counsel and Secretary


FOR FIAT CHRYSLER AUTOMOBILES N.V.:

_____
GIORGIO FOSSATI
Corporate General Counsel and Secretary


FOR V.M. MOTORI S.P.A.:

_____
GIORGIO FOSSATI
Attorney-in-Fact


FOR V.M. NORTH AMERICA, INC.:

_____
GIORGIO FOSSATI
Attorney-in-Fact

COUNSEL FOR FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V., V.M. MOTORI S.P.A., and V.M. NORTH AMERICA, INC.

ROBERT J. GIUFFRA, JR.
SCOTT D. MILLER
C. MEGAN BRADLEY
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
giuffrar@sullcrom.com
millersc@sullcrom.com
bradleyc@sullcrom.com

GRANTA Y. NAKAYAMA
JOSEPH A. EISERT
ILANA S. SALTZBART
King & Spalding LLP
1700 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
gnakayama@kslaw.com
jeisert@kslaw.com
isaltzbart@kslaw.com

COUNSEL FOR FCA US LLC, FIAT CHRYSLER AUTOMOBILES N.V., V.M. MOTORI S.P.A., and V.M. NORTH AMERICA, INC.

ROBERT J. GIUFFRA, JR.
SCOTT D. MILLER
C. MEGAN BRADLEY
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
giuffrar@sullcrom.com
millersc@sullcrom.com
bradleyc@sullcrom.com

GRANTA Y. NAKAYAMA
JOSEPH A. EISERT
ILANA S. SALTZBART
King & Spalding LLP
1700 Pennsylvania Ave., N.W., Suite 200
Washington, DC 20006
gnakayama@kslaw.com
jeisert@kslaw.com
isaltzbart@kslaw.com

# APPENDIX A
# ADJUSTMENT FACTORS

Appendix A

ADJUSTMENT FACTORS

The table below contains the upward adjustment factors to be added to the Emission Test Results for FTP, US06, HWFET, and SC03 emission tests performed pursuant to this Consent Decree. These adjustment factors, submitted by FCA as part of the application for the 2017 MY Certificate of Conformity for the Jeep Grand Cherokee and Ram 1500 motor vehicles, account for the emissions associated with (1) regeneration of the DPF; and (2) AECD #14 SCR Dosing Operation Mode, also known as SCR Adaptation.

| Adjustment Factors as Submitted for 2017 MY Certification Application | | | | | |
|---|---|---|---|---|---|
| Infrequent Regeneration Adjustment Factor (IRAF) | NMHC (Non-methane Hydrocarbons) | CO (Carbon Monoxide) | NOx (Oxides of Nitrogen) | CH4 (Methane) | THC (Total Hydrocarbons) | $N_2O$ (Nitrous Oxide) |
| | **0.001** | **0.01** | **0.006** | **0.0007** | **0.0015** | **0.001** |
| Selective Catalyst Reduction Adjustment Factor (SCRAF) | NMHC (Non-methane Hydrocarbons) | CO (Carbon Monoxide) | NOx (Oxides of Nitrogen) | NMHC + NOx (Non-methane Hydrocarbons + Oxides of Nitrogen) | | |
| | **0.00005** | **0.00045** | **0.001** | **0.001** | | |

**APPENDIX B**
**CVN AND CALID FOR FINAL CARRYBACK**
**CONFIGURATION**

| FILES PROVIDED | | | |
|---|---|---|---|
| MY/VEH/AXLE/MODULE | CALIBRATION FILES | CVN | CALID |
| 2014 MY DS 355_ECM | EAD4JUW295XX005_2BA9_14MY_DS_ECM_355_A&RWD.hex | F9 EE 7E 81 | 12507680DS |
| 2014 MY DS 355_TCM | 14MY_DS_TCM_355_AWD.efd | 01 56 9A 76 29 | RO13SC2F42 |
| 2014 MY DS 355_TCM | 68234054AF_14MY_DS_TCM_355_RWD.efd | 01 EF 2F 33 8F | 68234054AF |
|  |  |  |  |
| 2014 MY DS 392_ECM | EAD4JUW295XX009_2BA9_14MY_DS_ECM_392_A&RWD.hex | B0 4F E6 A7 | 12507680DS |
| 2014 MY DS 392_TCM | 68234058AF_14MY_DS_TCM_392_RWD.efd | 01 DC 2C FD 69 | 68234058AF |
| 2014 MY DS 392_TCM | 68234059AF_14MY_DS_TCM_392_AWD.efd | 01 AA EE 1A FE | 68234059AF |
|  |  |  |  |
| 2014 MY WK 345_ECM | 68307635ZW_14MY_WK_ECM_345_A&RWD.hex | CB E2 10 B0 | 68307635ZW |
| 2014 MY WK 345_TCM | 52108927AI_14MY_WK_TCM_345_AWD.efd | 01 F8 BA B9 B6 | 52108927AI |
| 2014 MY WK 345_TCM | 52108929AI_14MY_WK_TCM_345_RWD.efd | 01 09 95 67 4F | 52108929AI |
|  |  |  |  |
| 2015 MY DS 355_ECM | EADSFST5W295XX00XDDXN_2BA9_15MY_DS_ECM_355_A&RWD.hex | F2 82 F9 81 | 12507680DS |
| 2015 MY DS 355_TCM | 15MY_DS_TCM_355_AWD.efd | 01 1A 2D C0 82 | RP15SC2F33 |
| 2015 MY DS 355_TCM | 68245317AH_15MY_DS_TCM_355_RWD.efd | 01 05 3B F4 FA | 68245317AH |
|  |  |  |  |
| 2015 MY DS 392_ECM | EADSFST5W295XX00XLDXN_2BA9_15MY_DS_ECM_392_A&RWD.hex | 6F CA 4B 35 | 12507680DS |
| 2015 MY DS 392_TCM | 68245318AH_15MY_DS_TCM_392_AWD.efd | 01 08 A0 52 E9 | 68245318AH |
| 2015 MY DS 392_TCM | 68245319AH_15MY_DS_TCM_392_RWD.efd | 01 4D A4 71 46 | 68245319AH |
|  |  |  |  |
| 2015 MY WK 345_ECM | 68294460ZW_15MY_WK_ECM_345_A&RWD.hex | DA 6B B9 3C | 68294460ZW |
| 2015 MY WK 345_TCM | 68245311AI_15MY_WK_TCM_345_RWD.efd | 01 99 A5 32 5C | 68245311AI |
| 2015 MY WK 345_TCM | 68245312AI_15MY_WK_TCM_345_AWD.efd | 01 A6 E6 54 4A | 68245312AI |
|  |  |  |  |
| 2016 MY DS 355_ECM | EADSGST5W295XX00XDDXN_16MY_DS_ECM_355_A&RWD.hex | 3B 4C 5A 06 | 12507680DS |
| 2016 MY DS 355_TCM | 16MY_DS_TCM_355_AWD.efd | 01 0A 0B 29 FA | RQ17SC2F44 |
| 2016 MY DS 355_TCM | 68282283AH_16MY_DS_TCM_355_RWD.efd | 01 54 A9 DE 02 | 68282283AH |
|  |  |  |  |
| 2016 MY DS 392_ECM | EADSGST5W295XX00XLDXN__16MY_DS_ECM_392_A&RWD.hex | B6 C1 C3 0E | 12507680DS |
| 2016 MY DS 392_TCM | 16MY_DS_TCM_392_AWD.efd | 01 C8 5A 0F F3 | RQ17SC2G44 |
| 2016 MY DS 392_TCM | 68282293AI_16MY_DS_TCM_392_RWD.efd | 01 BC E6 6D 05 | 68282293AI |
|  |  |  |  |
| 2016 MY WK 345_ECM | 68290792ZY_16MY_WK_ECM_345_A&RWD.hex | 36 33 D5 86 | 68290792ZY |
| 2016 MY WK 345_TCM | 68260705AI_16MY_WK_TCM_345_RWD.efd | 01 AA E0 93 B2 | 68260705AI |
| 2016 MY WK 345_TCM | 68260706AI_16MY_WK_TCM_345_AWD.efd | 01 73 6B 6F 91 | 68260706AI |
|  |  |  |  |
| A2L for WK & DS all MYs_ECM | W295_VM_CY_customer_patch_mm3.a2l | NA | NA |

| | | | | | 2014-2016 MY 3.0 DIESEL RAM 1500 and JEEP GRAND CHEROKEE VEHICLE CONFIGURATIONS and POWERTRAIN CALIBRATION FILE COMBINATIONS | |
|---|---|---|---|---|---|---|
| # | MY | VEH | AXLE | DRIVE | Engine Cal | Trans Cal |
| 1 | 2014 | DS | 355 | RWD | EAD4JUW295XX005_2BA9_14MY_DS_ECM_355_A&RWD.hex | 68234054AF_14MY_DS_TCM_355_RWD.efd |
| 2 | 2014 | DS | 355 | AWD | EAD4JUW295XX005_2BA9_14MY_DS_ECM_355_A&RWD.hex | 14MY_DS_TCM_355_AWD.efd |
| 3 | 2014 | DS | 392 | RWD | EAD4JUW295XX005_2BA9_14MY_DS_ECM_392_A&RWD.hex | 68234058AF_14MY_DS_TCM_392_RWD.efd |
| 4 | 2014 | DS | 392 | AWD | EAD4JUW295XX005_2BA9_14MY_DS_ECM_392_A&RWD.hex | 68234059AF_14MY_DS_TCM_392_AWD.efd |
| 5 | 2015 | DS | 355 | RWD | EADSFST5W295XX00XDDXN_2BA9_15MY_DS_ECM_355_A&RWD.hex | 68245317AH_15MY_DS_TCM_355_RWD.efd |
| 6 | 2015 | DS | 355 | AWD | EADSFST5W295XX00XDDXN_2BA9_15MY_DS_ECM_355_A&RWD.hex | 15MY_DS_TCM_355_AWD.efd |
| 7 | 2015 | DS | 392 | RWD | EADSFST5W295XX00XLDXN_2BA9_15MY_DS_ECM_392_A&RWD.hex | 68245319AH_15MY_DS_TCM_392_RWD.efd |
| 8 | 2015 | DS | 392 | AWD | EADSFST5W295XX00XLDXN_2BA9_15MY_DS_ECM_392_A&RWD.hex | 68245318AH_15MY_DS_TCM_392_AWD.efd |
| 9 | 2016 | DS | 355 | RWD | EADSGST5W295XX00XDDXN_16MY_DS_ECM_355_A&RWD.hex | 68282283AH_16MY_DS_TCM_355_RWD.efd |
| 10 | 2016 | DS | 355 | AWD | EADSGST5W295XX00XDDXN_16MY_DS_ECM_355_A&RWD.hex | 16MY_DS_TCM_355_AWD.efd |
| 11 | 2016 | DS | 392 | RWD | EADSGST5W295XX00XLDXN__16MY_DS_ECM_392_A&RWD.hex | 68282293AI_16MY_DS_TCM_392_RWD.efd |
| 12 | 2016 | DS | 392 | AWD | EADSGST5W295XX00XLDXN__16MY_DS_ECM_392_A&RWD.hex | 16MY_DS_TCM_392_AWD.efd |
| 13 | 2014 | WK | 345 | RWD | 68307635ZW_14MY_WK_ECM_345_A&RWD.hex | 52108929AI_14MY_WK_TCM_345_RWD.efd |
| 14 | 2014 | WK | 345 | AWD | 68307635ZW_14MY_WK_ECM_345_A&RWD.hex | 52108927AI_14MY_WK_TCM_345_AWD.efd |
| 15 | 2015 | WK | 345 | RWD | 68294460ZW_15MY_WK_ECM_345_A&RWD.hex | 68245311AI_15MY_WK_TCM_345_RWD.efd |
| 16 | 2015 | WK | 345 | AWD | 68294460ZW_15MY_WK_ECM_345_A&RWD.hex | 68245312AI_15MY_WK_TCM_345_AWD.efd |
| 17 | 2016 | WK | 345 | RWD | 68290792ZY_16MY_WK_ECM_345_A&RWD.hex | 68260705AI_16MY_WK_TCM_345_RWD.efd |
| 18 | 2016 | WK | 345 | AWD | 68290792ZY_16MY_WK_ECM_345_A&RWD.hex | 68260706AI_16MY_WK_TCM_345_AWD.efd |

* FCA tools are required to flash Transmission Control Module with the efd files provided

* Hex Files cannot be used to flash Production Engine Control Modules using INCA - These hex files require Open Modules and additionally
        require FCA INCA ProF configurations to flash

**<u>CONSENT DECREE</u>**

**APPENDIX C**

**(Three Documents related to the MY 2014 Field Fix:  C-1 to C-3)**

# APPENDIX C-1
## SERVICE BULLETIN
## RELATED TO REPLACING SCR


This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of FCA US LLC.

**THIS BULLETIN SUPERSEDES SERVICE BULLETIN 18-045-14, DATED NOVEMBER 21, 2014, WHICH SHOULD BE REMOVED FROM YOUR FILES. ALL REVISIONS ARE HIGHLIGHTED WITH \*\*ASTERISKS\*\* AND INCLUDE ADDED RAPID RESPONSE TRANSMITTAL, OVERVIEW, DIAGNOSIS, REPAIR PROCEDURE AND LABOR OPERATION.**

**\*\*THIS SERVICE BULLETIN IS ALSO BEING RELEASED AS RAPID RESPONSE TRANSMITTAL (RRT) 15-093. ALL APPLICABLE SOLD AND UN-SOLD RRT VIN's HAVE BEEN LOADED. TO VERIFY THAT THIS RRT SERVICE ACTION IS APPLICABLE TO THE VEHICLE, USE VIP OR PERFORM A VIN SEARCH IN TECHCONNECT. ALL REPAIRS ARE REIMBURSABLE WITHIN THE PROVISIONS OF WARRANTY.\*\***

**\*\*THE wiTECH SOFTWARE IS REQUIRED TO BE AT THE LATEST RELEASE BEFORE PERFORMING THIS PROCEDURE.\*\***

*SUBJECT:*
P20EE SCR NOX Catalyst Efficiency Below Threshold Bank 1

*OVERVIEW:*
\*\*This bulletin involves replacing the Selective Catalyst Reduction (SCR) Catalyst assembly.\*\*

*MODELS:*

| 2014 | (DS) | Ram 1500 Pickup |
|------|------|-----------------|
| 2014 | (WK) | Jeep Grand Cherokee |

**NOTE: This bulletin applies to vehicles equipped with a 3.0L Diesel Engine (Sales Code EXF).**

*SYMPTOM/CONDITION:*
Customers may experience a Malfunction Indicator Lamp (MIL) illumination. Upon further investigation the Technician may find Diagnostic Trouble Code (DTC) P20EE SCR NOX Catalyst Efficiency Below Threshold Bank 1 set in the Powertrain Control Module (PCM) memory.

*DIAGNOSIS:*
Using a Scan Tool (wiTECH) with the appropriate Diagnostic Procedures available in TechCONNECT, verify all vehicle systems are functioning as designed. If DTCs other than the ones listed above are present record them on the repair order and repair as necessary before proceeding further with this bulletin.

\**If a customer's VIN is listed in VIP or your RRT VIN list, perform the repair. For all other customers that describe the symptom/condition listed above or if the technician finds the DTC, perform the Repair Procedure.\**

*PARTS REQUIRED:*

| Qty. | Part No. | Description |
|------|----------|-------------|
| 1 (AR) | 68243268AB | Converter, SCR Catalyst (WK 4WD only) |
| 1 (AR) | 68243267AB | Converter, SCR Catalyst (WK 2WD only) |
| 1 (AR) | 68263789AB | Converter, SCR Catalyst (DS vehicles with 140 inch wheelbase) |
| 1 (AR) | 68263790AB | Converter, SCR Catalyst (DS vehicles with 149 inch wheelbase) |

*REPAIR PROCEDURE:*

**NOTE: The PCM must be at the latest calibration level before proceeding with this repair.**

1. Following all applicable published service bulletins, verify the PCM software is up to date.
2. \**Replace the SCR catalyst. Refer to detailed service procedures available in DealerCONNECT/TechCONNECT, Service Info Section 11- Exhaust System> Catalyst, Selective Catalytic Reduction (SCR)> Removal/Installation.
3. Did the vehicle have an active or stored P2BA9-00 - NOX Exceedence - Insufficient Reductant Quality and/or a "Service DEF" message displayed on the Electronic Vehicle Information Center (EVIC)?
   a. Yes>>> Repair as necessary following normal warranty repair guidelines. Refer to detailed diagnostic procedures and SCR Healing steps found in DealerCONNECT/TechCONNECT, Service Info Section 28 - DTC-Based Diagnostics> Module, Powertrain Control (PCM), 3.0L Diesel NAFTA> Diagnosis and Testing> P2BA9-00 - NOX Exceedence - Insufficient Reductant Quality.
   b. No>>> The bulletin is now complete. No further action is required.\**

*POLICY:*
Reimbursable within the provisions of the warranty.

**TIME ALLOWANCE:**

| Labor Operation No: | Description | Skill Category | Amount |
|---|---|---|---|
| **11-50-01-9J** | Test DEF System And Replace SCR Catalyst DS Vehicles Only (2 - Skilled) | 10 - Diesel | 1.0 Hrs |
| **11-50-01-9K** | Test DEF System And Replace SCR Catalyst WK Vehicles Only (2 - Skilled) | 10 - Diesel | 0.7 Hrs |

**FAILURE CODE:**

| ZZ | Service Action |
|---|---|

**APPENDIX C-2**
**SERVICE BULLETIN**
**RELATED TO VERIFYING DEF OPERATION AND**
**REPLACING SCR**


This bulletin is supplied as technical information only and is not an authorization for repair. No part of this publication may be reproduced, stored in a retrieval system, or transmitted, in any form or by any means, electronic, mechanical, photocopying, or otherwise, without written permission of Chrysler Group LLC.

**THE wiTECH SOFTWARE LEVEL MUST BE AT RELEASE \*\*15.02\*\* OR HIGHER TO PERFORM THIS PROCEDURE.**

### SUBJECT:
P20EE SCR NOX Catalyst Efficiency Below Threshold Bank 1

### OVERVIEW:
This bulletin involves verifying the proper operation of the Diesel Exhaust Fluid (DEF) system and, if necessary, replacing the Selective Catalyst Reduction (SCR) Catalyst assembly.

### MODELS:

| | | |
|---|---|---|
| 2014 | (DS) | Ram 1500 Pickup |
| 2014 | (WK) | Grand Cherokee |

**NOTE: This bulletin applies to vehicles equipped with a 3.0L diesel engine (sales code EXF).**

### SYMPTOM/CONDITION:
A small number of customers may experience a Malfunction Indicator Lamp (MIL) illumination. Upon further investigation the Technician may find Diagnostic Trouble Code (DTC) P20EE SCR NOX Catalyst Efficiency Below Threshold Bank 1 set in the Powertrain Control Module (PCM) memory..

### DIAGNOSIS:
Using a Scan Tool (wiTECH) with the appropriate Diagnostic Procedures available in TechCONNECT, verify all vehicle systems are functioning as designed. If DTCs other than the ones listed above are present record them on the repair order and repair as necessary before proceeding further with this bulletin.

**PARTS REQUIRED:**

| Qty. | Part No. | Description |
|------|----------|-------------|
| 1 (AR) | 68243268AB | Converter, SCR Catalyst (WK 4WD only) |
| 1 (AR) | 68243267AB | Converter, SCR Catalyst (WK 2WD only) |
| 1 (AR) | 68263789AB | Converter, SCR Catalyst (DS vehicles with 140 inch wheelbase) |
| 1 (AR) | 68263790AB | Converter, SCR Catalyst (DS vehicles with 149 inch wheelbase) |

**REPAIR PROCEDURE:**

**NOTE: The PCM must be at the latest calibration level before proceeding with this repair.**

1. Following all applicable published service bulletins, verify the PCM software is up to date.

**NOTE: Diesel exhaust fluid will form white deposits around leaky fittings.**

2. Raise the vehicle on a suitable hoist and inspect all DEF hoses and hose connections for leaks or restrictions. If found, repair as necessary before continuing with this bulletin.
3. Perform a Diesel Exhaust Fluid Injector Quantity Test by performing the following steps
   a. Remove the DEF Injector from the decomposition tube, leaving the electrical connector plugged in and injector connected to the supply hose.
   b. Place the injector into a suitable container to capture the fluid that is sprayed during the injector quantity test.
   c. Using the wiTECH, perform the "DEF Dosing Injection Quantity" test located in the PCM "System Tests".
   d. Measure the amount of fluid sprayed after the test times out.

**NOTE: The following injector flow specifications may differ slightly from published service information and should be used for this procedure.**

4. Was the amount of fluid captured between 26 ml and 35 ml (1 oz and 1.2 oz)?
   a. Yes>>> Proceed to Step #7.
   b. No>>> This bulletin does not apply. Further diagnosis of the DEF system is required.

**NOTE: DEF fluid dilution or contamination is not covered under normal warranty.**

5. Test and inspect the DEF fluid sample gathered in Step #3 for signs of contamination. Refer to detailed service procedures available in DealerCONNECT/TechCONNECT, Service Info Section 25 - Emissions Control> Diesel Exhaust Fluid Emissions> Diagnosis And Testing> DIAGNOSIS AND TESTING - DIESEL EXHAUST FLUID. If found, repair as necessary following normal warranty repair guidelines regarding.

6. Were there any signs of DEF fluid contamination found?
   a. Yes>>> Repair the source of the contamination as needed per current warranty repair guidelines.
   b. No>>> Proceed to Step #7.
7. Replace the SCR catalyst. Refer to detailed service procedures available in DealerCONNECT/TechCONNECT, Service Info Section 11- Exhaust System> Catalyst, Selective Catalytic Reduction (SCR)> Removal/Installation.
8. Did the vehicle have an active or stored P2BA9-00 - NOX Exceedence - Insufficient Reductant Quality and/or a "Service DEF" message displayed on the Electronic Vehicle Information Center (EVIC)?
   a. Yes>>> Repair as necessary following normal warranty repair guidelines. Refer to detailed diagnostic procedures and SCR Healing steps found in DealerCONNECT/TechCONNECT, Service Info Section 28 - DTC-Based Diagnostics> Module, Powertrain Control (PCM), 3.0L Diesel NAFTA> Diagnosis and Testing> P2BA9-00 - NOX Exceedence - Insufficient Reductant Quality.
   b. No>>> The bulletin is now complete. No further action is required.

***POLICY:***
Reimbursable within the provisions of the warranty.

***TIME ALLOWANCE:***

| Labor Operation No: | Description | Skill Category | Amount |
|---|---|---|---|
| 11-50-01-9F | Test DEF System Only (2 - Skilled) | 10 - Diesel | 0.5 Hrs. |
| 11-50-01-9G | Test DEF System And Replace SCR Catalyst DS Vehicles Only (2 - Skilled) | 10 - Diesel | 1.1 Hrs. |
| 11-50-01-9H | Test DEF System And Replace SCR Catalyst WK Vehicles Only (2 - Skilled) | 10 - Diesel | 0.9 Hrs. |

***FAILURE CODE:***

| ZZ | Service Action |
|---|---|

**APPENDIX C-3**
**DEALER SERVICE INSTRUCTIONS,**
**EMISSIONS RECALL R69, SCR**





Dealer Service Instructions for:

# Emissions Recall R69
# Selective Catalytic Reduction Catalyst

***NOTE: Catylist core return information has been added.***

***Effective immediately all repairs on involved vehicles are to be performed according to this recall. Service Bulletin 18-064-15 is no longer applicable for vehicles involved in this recall. Those vehicles that have already had this repair performed, as determined by our warranty records, have been excluded from this recall.***

## Models

| | | |
|---|---|---|
| **2014** | **(WK)** | **Jeep Grand Cherokee** |
| **2014** | **(DS)** | **RAM Truck (1500 Series)** |

*NOTE: This recall applies only to the above vehicles equipped with a **3.0L diesel engine (sales code EXF)***

**IMPORTANT:** **Some of the involved vehicles may be in Dealer vehicle inventory. Dealers should complete this recall service on these vehicles before retail delivery.** Involved vehicles can be determined by using the VIP inquiry process.

## Subject

The Selective Catalytic Reduction (SCR) catalyst on about 11,400 of the above vehicles is experiencing washcoat degradation, which may lead to the exceedance of exhaust emission standards.

© Copyright 2016, FCA US LLC, All Rights Reserved

Repair

The SCR catalyst must be replaced.

Parts Information

**IMPORTANT: Due to the small number of involved vehicles, no parts will be distributed to involved dealers.   Parts may be ordered as needed to support scheduled repairs.**

| Part Number | Description |
| --- | --- |
| **68243268AB** | **Converter, SCR Catalyst (WK 4WD only)** |
| **68243267AB** | **Converter, SCR Catalyst (WK 2WD only)** |
| **68263789AB** | **Converter, SCR Catalyst (DS vehicles with 140 inch wheelbase)** |
| **68263790AB** | **Converter, SCR Catalyst (DS vehicles with 149 inch wheelbase)** |
| **68160679AB** | **Gasket, SCR Catalyst** |
| **68234976AA** | **Gasket, Diesel Exhaust Fluid (DEF) Injector** |
| **06105052AA** | **Bolt, SCR Catalyst Fastener (Qty. 3)** |
| **06506619AA** | **Nut, SCR Catalyst Fastener (Qty. 3)** |

Parts Return

**The catalyst has a $200.00 core credit. Return the catalyst to the Mopar Core Return Center.**

┌─────────────────┐
│ Special Tools   │
└─────────────────┘

**The following special tools are required to perform this repair:**

➢ NPN                    wiTECH VCI Pod Kit

➢ NPN                    Laptop Computer

➢ NPN                    wiTECH Software

┌─────────────────────┐
│ Service Procedure   │
└─────────────────────┘

## A. Replace The Selective Catalytic Reduction (SCR) catalyst

   **WARNING: If torches are used when servicing the exhaust system, do not allow any flame near the fuel lines or the fuel tank. Failure to follow these instructions may result in possible serious or fatal injury.**

1. Disconnect and isolate the negative battery cable.

2. Raise and support the vehicle using a suitable lift.

➢ For (WK) Jeep Grand Cherokee, continue with **Section B. (WK) Jeep Grand Cherokee.**

➢ For (DS) RAM 1500 Pickup, continue with **Section C. (DS) RAM 1500 Pickup.**



## B. (WK) Jeep Grand Cherokee

1. **If equipped with an underbody splash shield**, remove and save the fasteners and the shield (Figure 1).

   **NOTE: If equipped with a skid plate, removal process is similar.**



**Figure 1 – Engine Closeout Panel**

2. **If equipped with a transmission closeout panel**, remove and save the fasteners and the panel (Figure 2).

   **NOTE: If equipped with a skid plate, removal process is similar.**

3. **If equipped with a transfer case skid plate**, remove and save the fasteners and skid plate.



**Figure 2 – Transmission Closeout Panel**

4. Saturate exhaust system fasteners with MOPAR rust penetrating lubricant or equivalent before proceeding to provide adequate time for lubricant penetration before exhaust component removal. Be sure to saturate the SCR catalyst flange fasteners, Diesel Exhaust Fluid (DEF) injector clamp fastener, and tailpipe to SCR catalyst clamp (Figure 3).





**Figure 3 – Saturate Exhaust Fasteners with Penetrating Lubricant**

---

**Service Procedure (Continued)**

5. Disconnect the green SCR exhaust temperature sensor wire harness connector located between the exhaust particulate filter and the transmission (Figure 4).



**Figure 4 – Exhaust Temperature Sensor**

6. Disconnect the Diesel Exhaust Fluid (DEF) injector wire harness connector (Figure 5).



**Figure 5 – DEF Injector Harness**

---

**Service Procedure (Continued)**

7. Remove and save the heat shielding cover from the DEF fluid supply line fitting (Figure 6).

8. Disconnect the DEF fluid supply line quick connect fitting from the DEF injector (Figure 6).

9. Remove and save the four fasteners from the rear propeller shaft heat shield. Then remove and save the heat shield (Figure 7).



**Figure 6 – DEF Injector Fitting**



**Figure 7 – Rear Propeller Shaft Heat Shield**

10. Remove and save the two nuts from the Oxides of Nitrogen (NOx) sensor module cover. Then remove and save the cover (Figure 8).

    **NOTE: DO NOT disconnect the NOx sensor wire harness connector from the NOx sensor module. ONLY disconnect the vehicle wire harness from the NOx sensor module (Figure 9).**



**Figure 8 – NOx Sensor Module Cover**

11. Disconnect the vehicle wire harness connector from the NOx sensor module. Then remove the module from the module bracket (Figure 9).

12. Remove and save the two nuts from the module bracket. Then remove the bracket from the vehicle frame (Figure 9).



**Figure 9 – NOx Sensor Module**

> Service Procedure (Continued)

13. Disconnect the vehicle wire harness connector from the Particulate Matter (PM) sensor (Figure 10).

    **NOTE: DO NOT disconnect the PM sensor wire harness connector from the PM sensor module.  ONLY disconnect the vehicle wire harness from the PM sensor module (Figure 10).**

14. Remove and save the two nuts from the PM sensor module.  Then remove the PM sensor module from the module bracket (Figure 10).



**Figure 10 – PM Sensor Module**

Service Procedure (Continued)

15. Release the three wire harness retainers that secure the PM sensor and NOx sensor wire harness to the vehicle body (Figure 11).



**Figure 11 – Wire Harness Retainers**

16. Route the PM sensor and NOx sensor modules over to the SCR catalyst and secure the wire harness and modules to the SCR catalyst for removal with SCR catalyst later in the procedure (Figure 12).



**Figure 12 – Wire Harness with Modules**

Service Procedure (Continued)

17.   Loosen the tailpipe clamp (Figure 13).

18.   Release the isolators and ground strap from the tailpipe and resonator assembly hanger rods (Figure 13).

      **NOTE: Assistance with exhaust system component removal is recommended.**

19.   Separate the tailpipe and resonator assembly from the SCR catalyst then remove and save the tailpipe and resonator assembly (Figure 13).



**Figure 13 – Tailpipe and Resonator Assembly**

20. Remove and save the three SCR catalyst flange nuts (Figure 14).

**NOTE: If any of the three particulate filter studs break that secure the SCR catalyst, all three studs must be replaced with the bolts and nuts provided in the parts section of this recall.**

21. Release the isolator from the SCR catalyst hanger rod (Figure 14).

22. Remove the SCR catalyst from the vehicle and place on a suitable bench for sensor transfer (Figure 15).



**Figure 14 – SCR Catalyst Assembly**

Service Procedure (Continued)

23. Use the following procedure to transfer the Particulate Matter (PM) sensor with module from the original SCR catalyst to the **NEW** SCR catalyst (Figure 15).

    **NOTE: DO NOT use a torch as a heat source.**

    a. Use a six sided crowfoot wrench to remove the PM sensor from the SCR catalyst

    b. If the PM sensor fails to loosen, use a torque wrench set to 118 ft. lbs. (160 N·m) and loosen the PM sensor.

    c. If the PM sensor is still not loose after applying 118 ft. lbs. (160 N·m), then use a heat gun to heat the PM sensor boss for 1 minute at 842° F (450° C).

    d. Install the PM sensor into the **NEW** SCR catalyst and tighten to 44 ft. lbs. (60 N·m).


24. Use the following procedure to transfer the NOx sensor with module from the original SCR catalyst to the **NEW** SCR catalyst (Figure 15).

    **NOTE: DO NOT use a torch as a heat source.**

    a. Use a six sided crowfoot wrench to remove the NOx sensor from the SCR catalyst

    b. If the NOx sensor fails to loosen, use a torque wrench set to 118 ft. lbs. (160 N·m) and loosen the PM sensor.

    c. If the NOx sensor is still not loose after applying 118 ft. lbs. (160 N·m), then use a heat gun to heat the PM sensor boss for 1 minute at 842° F (450° C).

    d. Install the NOx sensor into the **NEW** SCR catalyst and tighten to 41 ft. lbs. (55 N·m).

Service Procedure (Continued)

25. Use the following procedure to transfer the exhaust gas temperature sensor from the original SCR catalyst to the **NEW** SCR catalyst (Figure 15).

    **CAUTION: The exhaust gas temperature sensor requires care when removing, handling and installing. The exhaust gas temperature sensor is sensitive to knocks and bending.  Do NOT drop the sensor.  Failure to follow these instructions may result in damage to the exhaust gas temperature sensor.**

    a. Use a six sided crowfoot wrench to remove the exhaust gas temperature sensor from the SCR catalyst.

    b. Install the exhaust gas temperature sensor into the **NEW** SCR catalyst and tighten to 35 ft. lbs. (47 N·m).



**Figure 15 – Selective Catalytic Reduction (SCR) Catalyst Assembly**

| Service Procedure (Continued) |
| --- |

26. Use the following procedure to transfer the DEF injector from the original SCR catalyst to the **NEW** SCR catalyst (Figure 15).

a. Loosen the DEF injector clamp and remove the DEF injector from the SCR catalyst (Figure 16).



b. Inspect the opening of the DEF injector and make sure it is NOT plugged or restricted with buildup of DEF crystals. If the DEF injector opening is plugged or restricted, clean as necessary (Figure 17).

**NOTE: Hot water may be used to dissolve DEF crystal buildup if the DEF injector requires cleaning.**

**Figure 16 – DEF Injector**

c. Remove and discard the DEF injector gasket then install a **NEW** DEF injector gasket (Figure 17).



d. Install the DEF injector onto the SCR catalyst. Tighten the clamp to 44 in. lbs. (5 N·m) (Figure 16).

**Figure 17 – DEF Injector Gasket**

27. Remove and discard the used SCR catalyst gasket (Figure 18).

28. Clean the particulate filter flange gasket sealing surface (Figure 18).

29. Install a **NEW** SCR catalyst gasket (Figure 18).

30. Position the **NEW** SCR catalyst onto the particulate filter flange and install the three flange nuts finger tight (Figure 14).

31. Install the isolator onto the SCR catalyst hanger rod (Figure 14).



**Figure 18 – SCR Catalyst Gasket**

32. Tighten the SCR catalyst flange nuts to 24 ft. lbs. (32 N·m) (Figure 14).

    **NOTE: Assistance with exhaust system component installation is recommended.**

33. Install the tailpipe and resonator assembly to the SCR catalyst (Figure 13).

34. Install the isolators and ground strap onto the tailpipe and resonator assembly hanger rods (Figure 13).

35. Check the exhaust system for proper alignment and for any contact with other vehicle components. A minimum of 1.0 in. (25 mm) is required between the exhaust system and other vehicle components. Make adjustments, if needed to achieve proper exhaust system clearance and alignment.

36. Align the tailpipe clamp and tighten to 46 ft. lbs. (62 N·m) (Figure 13).

37. Route the PM sensor module and NOx sensor module over to the module mounting bracket and secure the wire harness with the three wire harness retainers (Figure 11).

38. Install the PM sensor module to the module mounting bracket and then install the two nuts that secure the module to the bracket. Tighten the nuts to 71 in. lbs. (8 N·m) (Figure 10).

39. Connect the vehicle wire harness connector to the PM sensor (Figure 10).

40. Install the module mounting bracket to the vehicle frame and then install the two nuts that secure the bracket to the frame. Tighten the nuts to 8 ft. lbs. (11 N·m) (Figure 9).

41. Install the NOx module to the module mounting bracket (Figure 9).

42. Connect the vehicle wire harness connector to the NOx module (Figure 9).

43. Install the NOx module cover and then install the two nuts that secure the cover. Tighten the nuts to 71 in. lbs. (8 N·m) (Figure 8).

44. Install the rear propshaft heat shield and then install the four fasteners that secure the heat shield to the vehicle underbody (Figure 7).

45. Connect the DEF supply line to the DEF injector (Figure 6).

46. Install the heat shielding cover over the DEF supply line fitting (Figure 6).

47. Connect the wire harness connector to the DEF injector (Figure 5).

48. Connect the green exhaust temperature sensor wire harness connector located between the exhaust particulate filter and the transmission (Figure 4).

49. If equipped with a transfer case skid plate, install the skid plate and fasteners.

50. If equipped with a transmission closeout panel, install the panel and fasteners (Figure 2).

   **NOTE: If equipped with a transmission skid plate, installation process is similar.**

51. If equipped with an underbody splash shield, install the panel and fasteners (Figure 1).

   **NOTE: If equipped with a underbody skid plate, installation process is similar.**

52. Remove support and lower the vehicle.

53. Connect the negative battery cable to the negative battery post.

54. Use the following procedure to perform the SCR catalyst reset:

   a. Connect the wiTECH scan tool and start a session.

   b. From the "**PCM View**" screen, click on the "**Miscellaneous Functions**" tab.

   c. Perform the **SCR System Catalyst Reset** function.

   d. Using the wiTECH scan tool, clear all Diagnostic Trouble Codes (DTCs).

55. Remove the wiTECH scan tool from the vehicle.

56. Return the vehicle to the customer.

Service Procedure (Continued)

## C. (DS) RAM 1500 Pickup

1. Saturate exhaust system fasteners with MOPAR rust penetrating lubricant or equivalent before proceeding to provide adequate time for lubricant penetration before exhaust component removal. Be sure to saturate the SCR catalyst flange fasteners, Diesel Exhaust Fluid (DEF) injector clamp fastener, muffler to SCR catalyst clamp, and tailpipe(s) to muffler clamp(s) (Figure 19).



**Figure 19 – Saturate Exhaust Fasteners with Penetrating Lubricant**

2. Disconnect the green exhaust temperature sensor wire harness connector located between the exhaust particulate filter and the vehicle frame (Figure 20).



**Figure 20 – Exhaust Temperature Sensor**

3. Disconnect the Diesel Exhaust Fluid (DEF) injector wire harness connector from the DEF injector (Figure 21).



**Figure 21 – DEF Injector Harness**

---

4. Slide the heat shielding cover back and disconnect the DEF fluid supply line quick connect fitting from the DEF injector (Figure 22).



**Figure 22 – DEF Injector Fitting**

5. Remove and save the three nuts from the Oxides of Nitrogen (NOx) and Particulate Matter (PM) sensor module mounting bracket. Then remove the bracket from the crossmember (Figure 23).



**Figure 23 – PM and NOx Sensor Module Bracket on Crossmember**

> Service Procedure (Continued)

6. Release the four NOx sensor and PM sensor wire harness retainers (Figure 24).

   **NOTE: DO NOT disconnect the PM sensor wire harness connector from the PM sensor module. ONLY disconnect the vehicle wire harness from the PM sensor module (Figure 25).**

7. Disconnect the vehicle wire harness connector from the PM sensor module (Figure 25).



**Figure 24 – Wire Harness Retainers**

8. Remove and save the two nuts from the PM sensor module. Then remove the PM sensor module from the module mounting bracket (Figure 25).



**Figure 25 – PM Sensor Module**

9.  Disconnect the vehicle wire harness connector from the NOx sensor (Figure 26).

    **NOTE: DO NOT disconnect the NOx sensor wire harness connector from the NOx sensor module. ONLY disconnect the vehicle wire harness from the NOx sensor module (Figure 26).**

10. Remove and save the two nuts from the NOx sensor module.  Then remove the NOx sensor module from the module mounting bracket (Figure 26).

11. Route the PM sensor and NOx sensor modules over to the SCR catalyst and secure the wire harness and modules to the SCR catalyst for removal with SCR catalyst later in the procedure.



**Figure 26 – NOx Sensor Module**

12.  Loosen the exhaust tailpipe clamp(s) (Figure 27).

13.  Release the isolator(s) from the exhaust tailpipe(s) hanger rod (Figure 27).

14.  Separate the exhaust tailpipe(s) from the muffler.  Then remove and save the tailpipe(s) (Figure 27).



**Figure 27 – Tailpipes (Dual Exhaust Shown Single Exhaust Similar)**

15. Loosen the muffler exhaust clamp nuts (Figure 28).

16. Release the isolators from the muffler hanger rods (Figure 28).

17. Separate the muffler from the SCR catalyst. Then remove and save the muffler (Figure 28).



**Figure 28 – Muffler**

18. Remove and save the two bolts securing the SCR catalyst isolator to the vehicle frame (Figure 29).



**Figure 29 – SCR Catalyst Isolator**

Service Procedure (Continued)

19. Remove and save the three SCR catalyst flange nuts (Figure 30).

   **NOTE: If any of the three particulate filter studs break that secure the SCR catalyst, all three studs must be replaced with the bolts and nuts provided in the parts section of this recall.**



**Figure 30 – SCR Catalyst Flange**

20. Release the isolator from the SCR catalyst hanger rod (Figure 31).

21. Remove the SCR catalyst from the vehicle and place on a suitable bench for transfer of sensors and components (Figure 32).



**Figure 31 – SCR Catalyst Isolators**

22. Use the following procedure to transfer the Particulate Matter (PM) sensor with module from the original SCR catalyst to the **NEW** SCR catalyst (Figure 32).

    **NOTE: DO NOT use a torch as a heat source.**

    a. Use a six sided crowfoot wrench to remove the PM sensor from the SCR catalyst

    b. If the PM sensor fails to loosen, use a torque wrench set to 118 ft. lbs. (160 N·m) and loosen the PM sensor.

    c. If the PM sensor is still not loose after applying 118 ft. lbs. (160 N·m), then use a heat gun to heat the PM sensor boss for 1 minute at 842° F (450° C).

    d. Install the PM sensor into the **NEW** SCR catalyst and tighten to 44 ft. lbs. (60 N·m.).

23. Use the following procedure to transfer the NOx sensor with module from the original SCR catalyst to the **NEW** SCR catalyst (Figure 32).

    **NOTE: DO NOT use a torch as a heat source.**

    a. Use a six sided crowfoot wrench to remove the NOx sensor from the SCR catalyst

    b. If the NOx sensor fails to loosen, use a torque wrench set to 118 ft. lbs. (160 N·m) and loosen the PM sensor.

    c. If the NOx sensor is still not loose after applying 118 ft. lbs. (160 N·m), then use a heat gun to heat the PM sensor boss for 1 minute at 842° F (450° C).

    d. Install the NOx sensor into the **NEW** SCR catalyst and tighten to 41 ft. lbs. (55 N·m).

24. Use the following procedure to transfer the exhaust gas temperature sensor from the original SCR catalyst to the **NEW** SCR catalyst (Figure 32).

    **CAUTION: The exhaust gas temperature sensor requires care when removing, handling and installing. The exhaust gas temperature sensor is sensitive to knocks and bending. Do NOT drop the sensor. Failure to follow these instructions may result in damage to the exhaust gas temperature sensor.**

    a. Use a six sided crowfoot wrench to remove the exhaust gas temperature sensor from the SCR catalyst.

    b. Install the exhaust gas temperature sensor into the **NEW** SCR catalyst and tighten to 35 ft. lbs. (47 N·m).

25. Transfer the isolator to the **NEW** SCR catalyst (Figure 32).



**Figure 32 – Selective Catalytic Reduction (SCR) Catalyst Assembly**

26. Use the following procedure to transfer the DEF injector from the original SCR catalyst to the **NEW** SCR catalyst (Figure 32).

a. Loosen the DEF injector clamp and remove the DEF injector from the SCR catalyst (Figure 33).

   **NOTE: Hot water may be used to dissolve DEF crystal buildup if the DEF injector requires cleaning.**



DEF INJECTOR CLAMP          DEF INJECTOR

**Figure 33 – DEF Injector**

b. Inspect the opening of the DEF injector and make sure it is NOT plugged or restricted with buildup of DEF crystals. If the DEF injector opening is plugged or restricted, clean as necessary (Figure 34).

c. Remove and discard the DEF injector gasket then install a **NEW** DEF injector gasket (Figure 34).



DEF INJECTOR

DEF CRYSTAL BUILDUP          DEF INJECTOR GASKET

**Figure 34 – DEF Injector Gasket**

d. Install the DEF injector onto the SCR catalyst. Tighten the clamp to 44 in. lbs. (5 N·m) (Figure 33).

27. Remove and discard the used SCR catalyst gasket (Figure 35).

28. Clean the particulate filter flange gasket sealing surface (Figure 35).

29. Install a **NEW** SCR catalyst gasket (Figure 35).

30. Position the **NEW** SCR catalyst onto the particulate filter flange and install the three flange nuts finger tight (Figure 30).



**Figure 35 – SCR Catalyst Gasket**

31. Install the isolators onto the SCR catalyst hanger rods (Figure 31).

32. Install the two bolts securing the SCR catalyst isolator to the vehicle frame. Tighten the bolts to 21 ft. lbs. (28 N·m) (Figure 29).

33. Tighten the SCR catalyst flange nuts to 24 ft. lbs. (32 N·m) (Figure 30).

34. Install the muffler with clamps loosely to the SCR catalyst to permit proper alignment of all parts (Figure 28).

35. Install the isolators onto the muffler hanger rods (Figure 28).

36. Tighten the muffler clamp to 41 ft. lbs. (55 N·m) (Figure 28).

37. Install the tailpipe(s) loosely to the muffler to permit proper alignment of all parts (Figure 27).

38. Install the isolator(s) onto the tailpipe hanger rod(s) (Figure 27).

39. Check the exhaust system for proper alignment and for any contact with other vehicle components. A minimum of 1.0 in. (25 mm) is required between the exhaust system and other vehicle components. Make adjustments, if needed to achieve proper exhaust system clearance and alignment.

40. Align the tailpipe clamp and tighten to 41 ft. lbs. (55 N·m) (Figure 27).

41. Route the PM sensor module and NOx sensor module over to the module mounting bracket.

42. Install the NOx module to the top side of the module mounting bracket and then install the two nuts that secure the module to the bracket. Tighten the nuts to 80 in. lbs. (9 N·m) (Figure 26).

43. Connect the vehicle wire harness connector to the NOx module (Figure 26).

44. Install the PM module to the bottom side of the module mounting bracket and then install the two nuts that secure the module to the bracket. Tighten the nuts to 80 in. lbs. (9 N·m) (Figure 25).

45. Connect the vehicle wire harness connector to the PM module (Figure 25).

46. Install the module mounting bracket to the vehicle crossmember and then install the three nuts that secure the bracket to the crossmember. Tighten the nuts to 8 ft. lbs. (11 N·m) (Figure 23).

47. Secure the four NOx sensor and PM sensor wire harness retainers (Figure 24).

48. Connect the DEF fluid supply line quick connect fitting to the DEF injector (Figure 22).

49. Connect the DEF injector wire harness connector to the DEF injector (Figure 21).

50. Connect the green exhaust temperature sensor wire harness connector located between the exhaust particulate filter and the transmission (Figure 20).

> Service Procedure (Continued)

51. Remove support and lower the vehicle.

52. Connect the negative battery cable to the negative battery post.

53. Use the following procedure to perform the SCR catalyst reset:

    a. Connect the wiTECH scan tool and start a session.

    b. From the "**PCM View**" screen, click on the "**Miscellaneous Functions**" tab.

    c. Perform the **SCR System Catalyst Reset** function.

    d. Using the wiTECH scan tool, clear all Diagnostic Trouble Codes (DTCs).

54. Remove the wiTECH scan tool from the vehicle.

55. Return the vehicle to the customer.

## D.  Complete Proof of Correction Form for California Residents:

This recall is subject to the **State of California Registration Renewal/Emissions Recall Enforcement Program**.  Complete a Vehicle Emission Recall Proof of Correction Form **(Form No. 81-016-1053)** and **supply it to vehicle owners residing in the state of California** for proof that this recall has been performed when they renew the vehicle registration.

---
Completion Reporting and Reimbursement
---

Claims for vehicles that have been serviced must be submitted on the DealerCONNECT Claim Entry Screen located on the Service tab. Claims submitted will be used by FCA US LLC to record recall service completions and provide dealer payments.

Use the following labor operation numbers and time allowances:

|  | **Labor Operation Number** | **Time Allowance** |
|---|---|---|
| Replace SCR (WK - Grand Cherokee) | 25-R6-91-82 | 1.2 hours |
| Replace SCR (DS - 1500 Pickup) | 25-R6-91-83 | 1.4 hours |

**Related Operation**

| Replace 3 SCR catalyst flange studs | 25-R6-91-51 | 0.2 hours |
|---|---|---|

**Optional Equipment**

| Transfer Case Skid Plate (WK - Grand Cherokee) | 25-R6-91-61 | 0.2 hours |
|---|---|---|

Add the cost of the recall parts package plus applicable dealer allowance to your claim.

NOTE: See the Warranty Administration Manual, Recall Claim Processing Section, for complete recall claim processing instructions.

---
Dealer Notification
---

To view this notification on DealerCONNECT, select "Global Recall System" on the Service tab, then click on the description of this notification.

## Owner Notification and Service Scheduling

All involved vehicle owners known to FCA US LLC are being notified of the service requirement by first class mail.  They are requested to schedule appointments for this service with their dealers.  A generic copy of the owner letter is attached.

Enclosed with each owner letter is an Owner Notification postcard to allow owners to update our records if applicable.

## Vehicle Lists, Global Recall System, VIP and Dealer Follow Up

All involved vehicles have been entered into the DealerCONNECT Global Recall System (GRS) and Vehicle Information Plus (VIP) for dealer inquiry as needed.

GRS provides involved dealers with an updated VIN list of their incomplete vehicles.  The owner's name, address and phone number are listed if known.  Completed vehicles are removed from GRS within several days of repair claim submission.

To use this system, click on the **"Service"** tab and then click on **"Global Recall System."**  Your dealer's VIN list for each recall displayed can be sorted by: those vehicles that were unsold at recall launch, those with a phone number, city, zip code, or VIN sequence.

**Dealers must perform this repair on all unsold vehicles _before_ retail delivery.** Dealers should also use the VIN list to follow up with all owners to schedule appointments for this repair.

*Recall VIN lists may contain confidential, restricted owner name and address information that was obtained from the Department of Motor Vehicles of various states.  Use of this information is permitted for this recall only and is strictly prohibited from all other use.*

## Additional Information

If you have any questions or need assistance in completing this action, please contact your Service and Parts District Manager.

Customer Services / Field Operations
FCA US LLC



# *IMPORTANT EMISSIONS RECALL* *R69*

This notice applies to your vehicle (VIN: xxxxxxxxxxxxxxxxx).

Dear: (Name)

FCA has determined that certain **2014 Jeep® Grand Cherokee and RAM 1500 Pickup** vehicles equipped with a 3.0L diesel engine may exceed exhaust emissions standards.

| | |
|---|---|
| *The problem is...* | **The selective catalytic reduction (SCR) catalyst on your vehicle is experiencing washcoat degradation, which may lead to the exceedance of exhaust emission standards.** |
| *What your dealer will do...* | **FCA will repair your vehicle free of charge.** To do this, your dealer will replace the SCR catalyst. The work will take about 1½ hours to complete. However, additional time may be necessary depending on service schedules. |
| *What you must do...* | Simply **contact your dealer** right away to schedule a service appointment. Ask the dealer to hold the part for your vehicle. |
| *If you need help...* | If you have questions or concerns which your dealer is unable to resolve, please contact the FCA Group Recall Assistance Center at either **fcarecalls.com** or 1-800-853-1403. |
| *California residents…* | **The State of California requires the completion of emission recall repairs prior to vehicle registration renewal.** Your dealer will provide you with a Vehicle Emission Recall Proof of Correction Form after the recall service is performed. Be sure to save this form since the California Department of Motor Vehicles may require that you supply it as proof that the recall has been performed. |

If you have already experienced this specific condition and have paid to have it repaired, you may visit **www.fcarecallreimbursement.com** to submit your reimbursement request online or you can mail your original receipts and proof of payment to the following address for reimbursement consideration: **FCA Customer Assistance, P.O. Box 21-8004, Auburn Hills, MI 48321-8007, Attention: Recall Reimbursement**. Once we receive and verify the required documents, reimbursement will be sent to you within 60 days. If you've had previous repairs and/or reimbursement you may still need to have the recall repair performed on your vehicle.

In order to ensure your full protection under the emission warranty provisions, it is recommended that you have your vehicle serviced as soon as possible. Failure to do so could legally be determined to be a lack of proper maintenance of your vehicle. Further, without this repair, your vehicle may fail a state or local emission inspection test.

We are sorry for any inconvenience but trust that you understand our interest in clean air. Thank you for your attention to this important matter.

Customer Services / Field Operations
FCA US LLC

# APPENDIX D
# APPROVED EMISSIONS MODIFICATION DISCLOSURE

**Appendix D**

**Approved Emissions Modification Disclosure**

The following statements shall be included in the disclosures required under Paragraph 43.b of the Consent Decree. Any related Class Action Settlement for which the United States and California send the notice specified in Paragraph 48.b must also require that the statements below be included in a class action notice. Defendants are not prohibited by the terms of this Consent Decree or this Appendix from making disclosures other than those listed below, however Defendants and their agents are prohibited from making disclosures or communications to Eligible Owners or Eligible Lessees that are inconsistent with the statements listed below.

Disclosures:

1.　　Nature of the Approved Emissions Modification. The Approved Emissions Modification (AEM) consists of a software reflash that modifies the calibrations in your vehicle's Engine Control Unit (ECU) and Transmission Control Unit (TCU). There are no hardware changes to your vehicle associated with this AEM. However, your authorized Ram or Jeep dealership may make certain hardware changes to your vehicle or may modify your vehicle in accordance with open recall notices at the same time the AEM is installed. You should ask your authorized dealer about these changes to your vehicle, as they are not part of the AEM described in this document.

2.　　Key Vehicle Attributes. This AEM is not expected to change any of your key vehicle attributes, such as reliability, durability, vehicle performance, drivability, engine noise or vibration, or other driving characteristics.

3.　　DEF Consumption. The AEM is not expected to change your Diesel Exhaust Fluid (DEF) tank refill interval. If your previous refill rate coincided with your oil change interval, that should not change with this software update. However, you may notice that under certain conditions your vehicle may use slightly more DEF as compared to prior usage.

4.　　Fuel Economy. Average fuel economy is not expected to change as a result of this AEM. The AEM may, under sustained low speed driving (e.g. under 21 mph) with frequent stops, decrease your fuel economy or, under sustained high speed driving conditions, may increase or decrease your fuel economy. As with all vehicles, however, several factors can affect your actual fuel economy such as: how and where you drive, vehicle condition, maintenance and age, fuel variations, and vehicle variations.

Disclosure Amendments:

The disclosures contained in this document may, upon approval by EPA and CARB, be modified if changes are necessary to account for updates to the AEM with respect to certain vehicles, as contemplated by Consent Decree Paragraph 31.f.

# APPENDIX E
# EXTENDED EMISSION WARRANTY

**Consent Decree Appendix E**
**Extended Emission Warranty**

Subject to standard limitations that must be identified to Eligible Owners and Eligible Lessees, which may set forth exclusions like accident, abuse, neglect, or installation of non-certified parts, and applicable existing warranty provisions that will remain in effect, the Extended Warranty shall cover the cost of all parts and labor needed to repair the items listed below.

- Catalysts
    - Diesel Oxidation Catalyst / Diesel Particulate Filter (DPF) Assembly
    - Selective Catalyst Reduction (SCR) Catalyst
- Diesel Exhaust Fluid (DEF) System
    - DEF Injector
    - DEF Injector Controller
    - DEF Storage Tank
    - DEF Delivery Lines
    - DEF Concentration Sensor (2016 Model Year Ram 1500 and Jeep Grand Cherokee only)
    - DEF Supply Module, Pump, & Temperature Sensor Unit
- Parts of the Fuel System
    - Low Pressure Fuel Pump Module & Level Unit
    - Fuel Injectors
    - Fuel Rail
    - High Pressure Fuel Line
    - High Pressure Injection Pump & Regulator Unit
- Parts of the Exhaust Gas Recirculation (EGR) System
    - EGR Cooler Tubes
    - EGR Cooler
    - EGR Valve
    - EGR Temperature Sensor
    - EGR Cooler bypass actuator
- Other Sensors That Are Covered
    - Oxygen Sensors
    - NOx Sensors
    - Intake Manifold Pressure Sensor
    - Engine Coolant Temperature Sensor
    - Fuel/Water Separator Sensor
    - Intake Swirl Actuator Sensor
    - Engine Camshaft Position Sensor
    - Engine Crankshaft Position Sensor
    - Particulate Matter Sensor
    - Mass Airflow Sensor
    - Boost Pressure Sensor
    - Crankcase Pressure Sensor
    - Exhaust Manifold Pressure Sensor

- o Throttle Valve
- o Exhaust Temperature Sensor
- o DPF Differential Pressure Sensor
- Engine Control Module (Computer)
- Transmission Control Module (Computer)/Valve Body & Solenoids
- Throttle Valve
- Cylinder Head Assembly, Including Valves, Springs, Valve Spring Keepers, Valve Seats, Cam Bearing Caps, and Manifold Studs (Camshaft and other components of the assembly are not covered)
- Engine Thermostat/housing/gasket
- The turbocharger system including all related hoses and pipes, all sensors and actuators.

Additionally, the Extended Warranty shall cover the cost of any OBD Diagnostic Scan for malfunctions that trigger the OBD Malfunction Indicator Light (MIL), regardless of whether the malfunction is attributable to a part that is covered under the Extended Warranty.

# APPENDIX F
# LIST OF DEFENDANTS' AFFILIATES, PARENTS, AND SUBSIDIARIES

# Appendix F

## List of Defendants' Affiliates, Parents, and Subsidiaries

2 H Energy S.A.S.
410, Park Display Inc.
Abarth & C. S.p.A.
AC Austro Car Handelsgesellschaft m.b.h. & Co. OHG
Administracion Magneti Marelli Sistemi Sospensioni Mexicana S.R.L. de C.V.
Afin Bohemia s.r.o.
Afin Bulgaria EAD
Afin Slovakia S.R.O.
Afin Trade Bulgaria Eood
ALFA ROMEO (SHANGHAI) AUTOMOBILES SALES CO. Ltd.
Alfa Romeo S.p.A.
Alfa Romeo U.S.A. S.p.A.
Al-Ghazi Tractors Ltd
ALMACANTAR GROUP S.A.
Almandine I LLC
Altra S.p.A.
Amce-Automotive Manufacturing Co. Ethiopia
Ancom USA Inc.
ANFIA Automotive S.c.r.l.
Arab American Vehicles Company S.A.E.
Astra Veicoli Industriali S.p.A.
Aurigen Capital Limited
Aurigen Europe Holdings B.V.
Aurigen Reinsurance Limited
Aurigen USA Holdings Inc.
Auto Componentistica Mezzogiorno - A.C.M. Melfi Societa Consortile a responsabilita limitata
AUTO TRANSPORT SERVICES LLC
Autodie LLC
AUTOMOTIVE LIGHTING (THAILAND) CO. LTD
Automotive Lighting Brotterode GmbH
Automotive Lighting Italia S.p.A.
Automotive Lighting LLC
Automotive Lighting o.o.o.
Automotive Lighting Rear Lamps France S.a.s.
Automotive Lighting Rear Lamps Mexico S. de r.l. de C.V.
Automotive Lighting Reutlingen GmbH
Automotive Lighting S.R.O.
Automotive Lighting UK Limited
B&W Nest S.r.l.
Banco CNH Industrial Capital S.A.
Banco Fidis S.A.
Bari Servizi Industriali S.c.r.l.
BLI Group, Inc.
Blue Leaf I.P., Inc.
Blue Leaf Insurance Company
C.R.F. Societa Consortile per Azioni
Case Canada Receivables, Inc.

Case Construction Equipment, Inc.
Case Construction Machinery (Shanghai) Co., Ltd
Case Credit Holdings Limited
Case Dealer Holding Company LLC
Case Equipment Holdings Limited
Case Europe S.a.r.l.
Case Harvesting Systems GmbH
Case IH Agricultural Equipment, Inc.
CASE ILE DE FRANCE
Case India Limited
Case International Limited
Case Mexico S.A. de C.V.
Case New Holland Construction Equipment (India) Private Limited
Case New Holland Industrial Inc.
CASE New Holland Machinery Trading (Shanghai) Co. Ltd.
Case Special Excavators N.V.
Case United Kingdom Limited
CF GOMMA DEUTSCHLAND GmbH
CG AU NSC LIMITED
CG EU NSC LIMITED
CG Italia Operations S.p.A.
CG Venezuela UK Holdings Limited
Changchun Magneti Marelli Automotive Lighting System Co. Ltd.
CHANGCHUN MAGNETI MARELLI POWERTRAIN COMPONENTS Co.Ltd.
Chrysler (Hong Kong) Automotive Limited
Chrysler Austria Gesellschaft mbH in liquidazione
Chrysler Belgium Luxembourg NV/SA
Chrysler Deutschland GmbH
Chrysler France S.A.S.
Chrysler Group (China) Sales Limited
Chrysler International GmbH
Chrysler Italia S.r.l.
Chrysler Jeep Ticaret A.S.
Chrysler Mexico Investment Holdings Cooperatie U.A.
Chrysler Netherlands Distribution B.V.
Chrysler Netherlands Holding Cooperatie U.A.
Chrysler Polska Sp.z o.o.
Chrysler South Africa (Pty) Limited
Chrysler UK Limited
Chrysler UK Pension Trustees Limited
CMA Componentes e Modulos Automotivos Industria e Comercio Automotivos Ltda
CMP Componentes e Modulos Plasticos Industria e Comercio Ltda.
CNH (China) Management Co., Ltd.
CNH (Shanghai) Equipment R&D Co., Ltd.
CNH Capital Finance LLC
CNH Capital Operating Lease Equipment Receivables LLC
CNH Capital Receivables LLC
CNH Comercial, SA de C.V.
CNH Componentes, S.A. de C.V.
CNH de Mexico SA de CV
CNH Industrial (India) Private Limited

CNH Industrial (Thailand) Ltd.
CNH Industrial America LLC
CNH Industrial Asian Holding Limited N.V.
CNH Industrial Australia Pty Limited
CNH Industrial Baumaschinen GmbH
CNH Industrial Belgium N.V.
CNH Industrial BM GmbH
CNH Industrial Brasil Ltda.
CNH Industrial Canada, Ltd.
CNH Industrial Capital (India) Private Limited
CNH Industrial Capital (Shanghai) Commercial Factoring Co. Ltd.
CNH Industrial Capital America LLC
CNH INDUSTRIAL CAPITAL ARGENTINA S.A.
CNH Industrial Capital Australia Pty Limited
CNH Industrial Capital Canada Ltd.
CNH Industrial Capital Corretora de Seguros Ltda.
CNH Industrial Capital Europe S.a.S.
CNH Industrial Capital Limited
CNH Industrial Capital LLC
CNH Industrial Capital Russia LLC
CNH Industrial Capital Solutions S.p.A.
CNH Industrial Danmark A/S
CNH Industrial Deutschland GmbH
CNH Industrial Europe Holding S.A.
CNH Industrial Finance Europe S.A.
CNH Industrial Finance France S.A.
CNH Industrial Finance North America, Inc.
CNH Industrial Finance S.p.A.
CNH Industrial Financial Services A/S
CNH Industrial Financial Services S.A.
CNH Industrial France
CNH Industrial Italia s.p.a.
CNH Industrial Korea LLC
CNH Industrial Kutno Polska sp. z o.o.
CNH Industrial Machinery (Harbin) Co. Ltd.
CNH Industrial Maquinaria Spain S.A.
CNH Industrial N.V.
CNH Industrial OLDCO Capital Limited
CNH Industrial Osterreich GmbH
CNH Industrial Polska Sp. z o.o.
CNH Industrial Portugal-Comercio de Tractores e Maquinas Agricolas Ltda
CNH Industrial Russia LLC
CNH Industrial S.A. de C.V.
CNH Industrial Sales and services GmbH
CNH Industrial Services (Thailand) Limited
CNH Industrial Services S.r.l.
CNH Industrial Sweden AB
CNH Industrial U.S. Holdings Inc.
CNH Industrial UK Limited
CNH INDUSTRIAL VENEZUELA, C.A.
CNH Reman LLC

CNH Servicios Comerciales, S.A. de C.V., SOFOM, E.N.R.
CNH Servicios Corporativos S.A. de C.V.
CNH U.K. Limited
CNH Wholesale Receivables LLC
CNHI COMERCIO DE PEÇAS LTDA
CNHI International SA
CNI C.V.
CODEFIS Società consortile per azioni
Cofap Fabricadora de Pecas Ltda
COMAU (KUNSHAN) Automation Co. Ltd.
Comau (Shanghai) Engineering Co. Ltd.
Comau (Shanghai) International Trading Co. Ltd.
COMAU (THAILAND) CO. LTD in liquidazione
Comau Argentina S.A.
Comau Automatizacion S.de R.L. C.V.
Comau Canada Inc.
COMAU Czech s.r.o. in liquidazione
Comau Deutschland GmbH
Comau Do Brasil Facilities Ltda.
Comau do Brasil Industria e Comercio Ltda.
Comau France S.A.S.
Comau Iaisa S.de R.L. de C.V.
Comau India Private Limited
Comau LLC
Comau Mexico S.de R.L. de C.V.
Comau Poland Sp. z o.o. in liquidazione
Comau Robot ve Sistemleri A.S
Comau Romania S.R.L.
Comau Russia OOO
Comau S.p.A
Comau s.p.A.
Comau Service Systems S.L.
Comau Trebol S.de R.L. de C.V.
Comau U.K. Limited
Compania Industrial Frontera S.A. de C.V.
Consorzio ATA - FORMAZIONE
CONSORZIO FCA CNHI ENERGY
Consorzio Fermag in liquidazione
Consorzio Nido Industria Vallesina
Consorzio per la Reindustrializzazione Area di Arese S.r.l. in liquidazione
Consorzio Servizi Balocco
CPK Interior Products Inc.
Deposito Avogadro S.p.A.
DTR VMS Italy S.r.l.
Easy Drive S.r.l.
Effe Grundbesitz GmbH
Employers Health Initiatives L.L.C.
Entitle Direct Group, Inc.
EXOR Capital Limited
EXOR INVESTMENT (UK) LLP
EXOR INVESTMENTS LTD

EXOR N.V.
EXOR NEDERLAND N.V.
EXOR S.A.
EXOR S.N. (USA), LLC
Extended Vehicle Protection LLC
F. Pegaso S.A.
Farm FZCO
Farmpower Pty Limited
FAS FREE ZONE Ltd. Kragujevac
FC RISK MANAGEMENT DAC
FCA (SHANGHAI) AUTO PARTS TRADING CO., LTD.
FCA AD GmbH
FCA ADMINISTRACION INTEGRAL, S.A. DE C.V.
FCA Argentina S.A.
FCA Asia Pacific Investment Co., Ltd.
FCA AUBURN HILLS OWNER LLC
FCA Australia Pty. Ltd.
FCA AUSTRIA GmbH
FCA AUSTRO CAR GmbH
FCA AUTOMOBILES ARGENTINA S.A.
FCA Automotive Finance Co. Ltd.
FCA AUTOMOTIVE SERVICES UK LTD.
FCA Bank Deutschland G.m.b.H.
FCA Bank G.m.b.H.
FCA BANK S.p.A.
FCA Belgium S.A.
FCA Canada Cash Services Inc.
FCA Canada Inc.
FCA CAPITAL DANMARK A/S
FCA CAPITAL DANMARK NS
FCA CAPITAL ESPANA E.F.C. S.A.
FCA CAPITAL FRANCE S.A.
FCA CAPITAL HELLAS S.A.
FCA Capital Nederland B.V.
FCA CAPITAL NORGE AS
FCA CAPITAL PORTUGAL INSTITUIÇÃO FINANCIERA DE CREDITO SA
FCA CAPITAL RE Designated Activity Company
FCA Capital Suisse S.A.
FCA CAPITAL SVERIGE AB
FCA Caribbean LLC
FCA Center Italia S.p.A.
FCA CENTRAL AND EASTERN EUROPE KFT.
FCA Chile Importadora Limitada
FCA Co-Issuer Inc.
FCA Compania Financiera S.A.
FCA Customer Services Centre S.r.l.
FCA DEALER CAPITAL LLC
FCA DEALER SERVICES ESPANA S.A.
FCA DEALER SERVICES PORTUGAL S.A.
FCA DEALER SERVICES UK LTD.
FCA Denmark A/S

FCA DUTCH OPERATING LLC
FCA Engineering India Private Limited
FCA FIAT CHRYSLER AUTOMOVEIS BRASIL LTDA.
FCA Fiat Chrysler Participacoes Brasil Limitada
FCA FINLAND Oy
FCA Fleet & Tenders S.R.L.
FCA FOREIGN SALES COMPANY INC.
FCA Foundation
FCA France S.A.S.
FCA GERMANY AG
FCA GREECE S.A.
FCA Group Marketing S.p.A.
FCA Group Purchasing France S.a.r.l.
FCA Group Purchasing Poland Sp. z o.o.
FCA Group Purchasing S.r.l.
FCA INDIA AUTOMOBILES Private Limited
FCA Information Technology, Excellence and Methods
FCA Information Technology, Excellence and Methods S.p.A.
FCA INSURANCE HELLAS S.A.
FCA INTERMEDIATE MEXICO LLC
FCA INTERNATIONAL OPERATIONS LLC
FCA INTERNATIONAL SERVICES LLC
FCA INVESTMENT HOLDINGS LLC
FCA ITALY HOLDINGS S.p.A.
FCA Italy S.p.A.
FCA JAPAN Ltd.
FCA Korea Limited
FCA LEASING FRANCE SNC
FCA Leasing GmbH
FCA Leasing Polska Sp. z o.o.
FCA Melfi S.r.l.
FCA Mexico, S.A. de C.V.
FCA MID LLC
FCA Middle East FZ-LLC
FCA MINORITY LLC
FCA Motor Village Austria GmbH
FCA MOTOR VILLAGE BELGIUM S.A.
FCA MOTOR VILLAGE FRANCE S.A.S.
FCA MOTOR VILLAGE GERMANY GmbH
FCA MOTOR VILLAGE PORTUGAL S.A.
FCA MOTOR VILLAGE SPAIN, S.L.
FCA MOTOR VILLAGE SWITZERLAND S.A.
FCA Netherlands B.V.
FCA Newco LLC
FCA North America Holdings LLC
FCA NORWAY AS
FCA ONTARIO HOLDINGS Limited
FCA Partecipazioni S.p.A.
FCA PLASTICS SERBIA d.o.o. Kragujevac
FCA POLAND Spólka Akcyjna
FCA PORTUGAL, S.A.

FCA Powertrain Brasil Industria e Comercio de Motores Ltda
FCA POWERTRAIN POLAND Sp. z o.o.
FCA Powertrain Technologies Shanghai R&D Co. Ltd.
FCA Real Estate Germany GmbH
FCA REAL ESTATE SERVICES FRANCE SAS
FCA REAL ESTATE SERVICES LLC
FCA Real Estate Services S.p.A.
FCA REALTY LLC
FCA REAL™ LLC CN C.V.
FCA Rental Locadora de Automoveis Ltda
FCA Russia AO
FCA Russia S.r.l.
FCA S.A. de Ahorro para Fines Determinados
FCA Security Societe consortile per azioni
FCA SERBIA DOO KRAGUJEVAC
FCA Service Contracts LLC
FCA Services Belgium N.V.
FCA Services d.o.o. Kragujevac
FCA Services Germany GmbH
FCA Services Hispano-Lusa S.A.
FCA Services Polska Sp. z o.o.
FCA Services S.p.A.
FCA Services Support Malaysia SDN. BHD.
FCA Services Support Mexico S.A. de C.V.
FCA Services U.S.A., Inc.
FCA Servizi per l'Industria S.c.p.A.
FCA South Africa (Proprietary) Ltd
FCA SWEDEN AB
FCA SWITZERLAND S.A.
FCA TRANSPORT LLC
FCA US Insurance Company
FCA US LLC
FCA Venezuela LLC
FCA VERSICHERUNGSSERVICE GmbH
FCA-Group Bank Polska S.A.
FER MAS Oto Ticaret A.S.
Ferrari (HK) Limited
Ferrari Australasia Pty Limited
Ferrari Auto Securitization Transaction - Lease, LLC
Ferrari Auto Securitization Transaction - Select, LLC
Ferrari Auto Securitization Transaction, LLC
Ferrari Central East Europe GmbH
Ferrari Far East Pte Limited
Ferrari Financial Services GMBH
Ferrari Financial Services Inc.
Ferrari Financial Services S.p.A.
Ferrari Financial Services Titling Trust
Ferrari International Cars Trading (Shanghai) Co. L.t.d.
Ferrari Japan KK
Ferrari Management Consulting (Shanghai) Co. L.t.d.
Ferrari N.V.

Ferrari North America Inc.
Ferrari North Europe Limited
Ferrari S.p.A.
Ferrari South West Europe S.a.r.l.
Fiat (Beijing) Business Co., Ltd.
Fiat Chrysler Automobiles (FCA) Egypt Limited
FIAT CHRYSLER AUTOMOBILES CR s.r.o.
Fiat Chrysler Automobiles Ireland DAC
FIAT CHRYSLER AUTOMOBILES MIDDLE EAST FZE
Fiat Chrysler Automobiles Morocco S.A.
Fiat Chrysler Automobiles N.V.
Fiat Chrysler Automobiles Services UK Limited
Fiat Chrysler Automobiles Spain S.A.
FIAT CHRYSLER AUTOMOBILES SR s.r.o.
FIAT CHRYSLER AUTOMOBILES UK Ltd
Fiat Chrysler Financas Brasil Ltda.
Fiat Chrysler Finance Canada Ltd.
Fiat Chrysler Finance et Services S.A.S.
Fiat Chrysler Finance Europe S.A.
Fiat Chrysler Finance Netherlands B.V.
Fiat Chrysler Finance North America, Inc.
Fiat Chrysler Finance S.p.A.
Fiat Chrysler Finance US Inc.
FIAT CHRYSLER MOTOR VILLAGE Ltd.
Fiat Chrysler Polska Sp. z o.o.
Fiat Chrysler Rimaco Argentina S.A.
Fiat Chrysler Rimaco Brasil Corretagens de Seguros Ltda.
Fiat Chrysler Rimaco S.A.
Fiat Chrysler Rimaco SA
Fiat Chrysler Risk Management S.p.A.
Fiat Chrysler UK LLP
Fiat CIEI S.p.A. in liquidazione
Fiat Common Investment Fund Limited
Fiat Group Automobiles Japan K.K.
Fiat India Automobiles Private Limited
Fiat Motor Sales Ltd
Fiat Powertrain Technologies Management (Shanghai) Co. Ltd.
Fiat Powertrain Technologies of North America, Inc.
Fiat U.S.A. Inc.
Fiatallis North America LLC
Fidis S.p.A.
Flagship Dealer Holding Company, LLC
Flexi-Coil (U.K.) Limited
FMA-Consultoria e Negocios Ltda
FMM Pernambuco Componentes Automotivos Ltda
Fondazione Casa di Enzo Ferrari Museo
FPT – Powertrain Technologies France S.A.
FPT Industrial S.p.A.
FPT Motorenforschung AG
Fundacion Chrysler, I.A.P.
FUNDACION FCA, A.C.

Funfrap-Fundicao Portuguesa S.A.
G.S.A. S.A.
GAC FIAT Chrysler Automobiles Co. Ltd.
GAC FIAT CHRYSLER AUTOMOBILES SALES CO., Ltd.
GESTIN POLSKA Sp. z o.o.
Hangzhou IVECO Automobile Transmission Technology Co., Ltd.
Hefei Magneti Marelli Exhaust Systems Co.Ltd.
Heuliez Bus S.A.S.
HFI Holdings, Inc.
HMC MM Auto Ltd
Hua Dong Teksid Automotive Foundry Co. Ltd.
Hubei Huazhoung Magneti Marelli Automotive Lighting Co. Ltd
IAV-Industrie-Anlagen-Verpachtung GmbH
i-FAST Automotive Logistics S.r.l.
i-FAST Container Logistics S.p.A.
Industrias Magneti Marelli Mexico S.A. de C.V.
Innovazione Automotive e Metalmeccanica Scrl
International Harvester Company
Irisbus Italia S.p.A.
Isvor Fiat India Private Ltd. in liquidazione
Italcar SA
IUVO SRL
IVECO - OTO MELARA Società Consortile a responsabilità limitata
Iveco (China) Commercial Vehicle Sales Co. Ltd
Iveco (Schweiz) AG
Iveco Acentro S.p.A.
Iveco Arac Sanayi VE Ticaret A.S.
Iveco Argentina S.A.
Iveco Austria GmbH
Iveco Bayern GmbH
Iveco Capital Broker de Asigurare – Reasigurare S.r.l.
Iveco Capital Limited
Iveco Capital Russia LLC
Iveco Capital SA in liquidazione
Iveco Capital Services S.A.
Iveco Czech Republic A.S.
Iveco Danmark A/S
Iveco Defence Vehicles SpA
Iveco Espana S.L.
Iveco Est Sas
Iveco Finland OY
Iveco France
Iveco Holdings Limited
Iveco Investitions GmbH
Iveco L.V.I. S.a.s.
Iveco Limited
Iveco Magirus AG
Iveco Magirus Fire Fighting GmbH
Iveco Magyarorszag Kereskedelmi KFT
Iveco Nederland B.V.
Iveco Nord Nutzfahrzeuge GmbH

Iveco Nord S.A.
Iveco Nord-Ost Nutzfahrzeuge GmbH
Iveco Norge A.S.
Iveco Orecchia S.p.A.
Iveco Otomotiv Ticaret A.S.
Iveco Participations s.a.s.
Iveco Pension Trustee Ltd
Iveco Poland Sp. z o.o.
Iveco Portugal-Comercio de Veiculos Industriais S.A.
Iveco Provence s.a.s.
Iveco Retail Limited
Iveco Romania S.r.l.
Iveco S.p.A.
Iveco Slovakia, s.r.o.
Iveco South Africa (Pty) Ltd.
Iveco South Africa Works (Pty) Ltd
Iveco Sud-West Nutzfahrzeuge GmbH
Iveco Sweden A.B.
Iveco Truck Services S.R.L.
Iveco Trucks Australia Limited
Iveco Ukraine LLC
Iveco Venezuela C.A.
Iveco West Nutzfahrzeuge GmbH
IVECO-AMT Ltd.
Iveco-Motor Sich, Inc.
J Medical S.r.l.
J.I. Case Company Limited
Juventus Football Club S.p.A.
Koc Fiat Kredi Tuketici Finansmani A.S.
KOMERSIA AUTO s.r.o.
KOMERSIA WEST s.r.o.
LEASYS FRANCE S.A.S.
LEASYS NEDERLAND B.V.
Leasys S.p.A.
LEASYS UK LTD.
LFR Collections LLC
Lorenz Re Ltd.
MAGIRUS CAMIVA S.a.s. (societè par actions simplifièe)
Magirus GmbH
Magirus Lohr GmbH
Magneti Marelli (China) Co. Ltd.
Magneti Marelli After Market Parts and Services S.p.A.
Magneti Marelli Aftermarket GmbH
Magneti Marelli Aftermarket Sp. z o.o.
Magneti Marelli Argentina S.A.
Magneti Marelli Automotive Cluj S.r.l.
Magneti Marelli Automotive Components (Changsha) Co. Ltd
Magneti Marelli Automotive Components (Guangzhou) Co.,Ltd.
Magneti Marelli Automotive Components (WUHU) Co. Ltd.
Magneti Marelli Automotive d.o.o. Kragujevac
Magneti Marelli Automotive Electronics (Guangzhou) Co. Limited

Magneti Marelli Automotive Lighting (Foshan) Co. Ltd
Magneti Marelli Cofap Fabricadora de Pecas Ltda
Magneti Marelli Componentes Plasticos Ltda
Magneti Marelli Conjuntos de Escape S.A.
Magneti Marelli do Brasil Industria e Comercio Ltda
Magneti Marelli Espana S.A.
Magneti Marelli France S.a.s.
Magneti Marelli GmbH
Magneti Marelli Holding U.S.A. LLC
Magneti Marelli Iberica S.A.
Magneti Marelli India Private Ltd
Magneti Marelli International Trading (Shanghai) Co. LTD
Magneti Marelli Japan K.K..
Magneti Marelli Mako Elektrik Sanayi Ve Ticaret Anonim Sirketi
Magneti Marelli Morocco LLC SARL
Magneti Marelli Motherson Auto System Private Limited
Magneti Marelli Motherson India Holding B.V.
Magneti Marelli Motherson Shock Absorbers (India) Private Limited
Magneti Marelli Motopropulsion France SAS
Magneti Marelli of Tennessee LLC
Magneti Marelli Poland Sp. z o.o.
Magneti Marelli Powertrain (Hefei) Co. Ltd.
Magneti Marelli Powertrain India Private Limited
Magneti Marelli Powertrain Mexico S. de r.l. de c.v.
Magneti Marelli Powertrain Mexico S. de r.l. de c.v. Magneti Marelli S.p.A.
Magneti Marelli Powertrain Slovakia s.r.o.
Magneti Marelli Powertrain U.S.A. LLC
Magneti Marelli Promatcor Sistemi Sospensioni Mexicana S.R.L. de C.V.
Magneti Marelli Repuestos S.A.
Magneti Marelli S.p.A.
Magneti Marelli Sistemas Automotivos Industria e Comercio Ltda
Magneti Marelli Sistemas Electronicos Mexico S.A.
Magneti Marelli SKH Exhaust Systems Private Limited
Magneti Marelli Slovakia s.r.o.
Magneti Marelli South Africa (Proprietary) Limited
Magneti Marelli Suspansiyon Sistemleri Ticaret Limited Sirketi
Magneti Marelli Suspension Systems Bielsko Sp. z.o.o.
Magneti Marelli Talbros Chassis Systems Pvt. Ltd.
Magneti Marelli Toluca Mexico S. de R.L. de CV.
Magneti Marelli Um Electronic Systems Private Limited
Malaysian Automotive Lighting SDN. BHD
Mamda Re
Mars Seal Private Limited
Maserati (China) Cars Trading Co., Ltd.
Maserati (Suisse) S.A.
Maserati Canada Inc.
Maserati Deutschland GmbH
Maserati GB Limited
Maserati Japan KK
Maserati North America, Inc.
Maserati S.p.A.

Maserati West Europe societe par actions simplifiee
Matay Otomotiv Yan Sanay Ve Ticaret A.S.
MBA AG
Mecaner S.A.
Mediterranea de Camiones S.L.
Mercalli ILS Bermuda Feeder Fund Ltd.
Mercalli ILS Feeder Fund LLC
Mercalli ILS Master Fund Ltd.
Mercalli Investment Holding Company Ltd
Mercalli Investment Management Inc.
Mercalli Re Ltd.
MM B.V.
MM I&T Sas
MM S.r.l.
MM Smart me up S.A.S.
MMH Industria e Comercio De Componentes Automotivos Ltda
Mopar (Shanghai) Auto Parts Trading Co., Ltd.
Mugello Circuit S.p.A.
MVPC LLC
Naveco (Nanjing IVECO Motor Co.) Ltd.
Neptunia Assicurazioni Marittime S.A.
New Business 29 S.c.r.l.
New Business 30 S.r.l.
New Business 31 S.p.A.
New Business 33 S.p.A.
New Business 35 s.r.l.
New Business 36 s.r.l.
NEW BUSINESS 37 S.p.A.
NEW BUSINESS 38 S.p.A.
New Holland Construction Machinery S.p.A.
New Holland Credit Company, LLC
New Holland HFT Japan Inc.
New Holland Holding Limited
New Holland Ltd
New Holland Tractor Ltd.
New Industrial Business 2 s.r.l.
Nuova Didactica S.c. a r.l.
O & K - Hilfe GmbH
Officine Brennero S.p.A.
OOO "CABEKO"
OOO Iveco Russia
Orange Grove Re Holdings Limited
Orange Grove Re Ltd.
Otoyol Sanayi A.S. in Liquidazione
Parco Industriale di Chivasso Societa Consortile a responsabilita limitata
Partner Reinsurance Asia Pte ltd. Labuan Branch
Partner Reinsurance Asia PTE. Ltd.
Partner Reinsurance Company Ltd.
Partner Reinsurance Company Ltd. (Canada Life Branch) Insurance
Partner Reinsurance Company Ltd. Third Parties
Partner Reinsurance Company of the U.S.

Partner Reinsurance Company of the U.S. Canada Branch
Partner Reinsurance Europ SE- Escritório de Representação no Brasil Ltda.
Partner Reinsurance Europe SE
Partner Reinsurance Europe SE (Dubai Branch)
Partner Reinsurance Europe SE (Hong Kong Branch)
Partner Reinsurance Europe SE United Kingdom Branch
Partner Reinsurance Europe SE, Dublin, Zurich Branch
Partner Reinsurance Europe SE, Succursale Fracaise
Partner Reinsurance Life Company of Bermuda Ltd.
PartnerRe America Insurance Company
PartnerRe America Services Company S.A. de C.V.
PartnerRe Asset Management Corporation
PartnerRe Capital Investments Corp.
PartnerRe Capital Trust II
PartnerRe Capital Trust III
PartnerRe Connecticut Inc.
PartnerRe Corporate Member 2 Limited
PartnerRe Corporate Member Limited
PartnerRe Finance A LLC
PartnerRe Finance B LLC
PartnerRe Finance C LLC
PartnerRe Finance I Inc.
PartnerRe Finance II Inc
PartnerRe Financing Ltd
PartnerRe Holding Europe Ltd.
PartnerRe Holdings B.V.
PartnerRe Holdings Europe Limited
PartnerRe Holdings Europe Limited, Dublin, Zurich Branch
PartnerRe Holdings SA
PartnerRe Holdings Switzerland GmbH
PartnerRe Insurance Company of New York
PartnerRe Ireland Finance Dac
PartnerRe Ireland Insurance dac
PartnerRe Ireland Insurance dac, United Kingdom Branch
PartnerRe Ireland Insurance Limited
PartnerRe Life Reinsurance Company of America
PartnerRe Life Reinsurance Company of Canada
PartnerRe Ltd
PartnerRe Management Ltd.
PartnerRe Miami Inc.
PartnerRe Principal Finance Inc.
PartnerRe Services Ltd.
PartnerRe Servicios Compañia Limitada
PartnerRe U.S. Corporation
PartnerRe Underwriting Management Ltd
Peninsula Coinvestment II, LLC
Plastic Components and Modules Automotive S.p.A.
Plastic Components and Modules Holding S.p.A.
Plastic Components and Modules Poland S.A.
Plastic Components Fuel Systems Poland Sp. z o.o.
PLASTIFORM PLASTIK SANAY ve TICARET A.S.

Polagris S.A.
PPF Finance LLC
PPF Holdings I Ltd.
PPF Holdings II Ltd.
PPF Holdings III Ltd.
Presidio Excess Insurance Services Inc.
Presidio Reinsurance Corporation
Presidio Reinsurance Group, Inc.
PSMM Campania S.r.l.
PSMM Pernambuco Componentes Automotivos Ltda
Raccoon River Re Ltd
Receivables Credit II Corporation
RosCaseMash
S.A. Iveco Belgium N.V.
Sadi Polska-Agencja Celna Sp. z o.o.
SAIC Fiat Powertrain Hongyan Co. Ltd.
SAIC IVECO Commercial Vehicle Investment Company Limited
SAIC MAGNETI MARELLI Powertrain Co. Ltd
SBH EXTRUSAO DO BRASIL LTDA.
Scuderia Ferrari Club S.c. a r.l.
Seddon Atkinson Vehicles Ltd
SERFIT S.R.L.
Servicios Administrates Corp. IPASA S.A.
Servicios Administrativos Corp. IPASA S.A.
Servizi e Attivita Doganali per I'lndustria S.p.A.
Shanghai New Holland Agricultural Machinery Corporation Limited
Sirio Polska Sp. z o.o.
Sisport S.p.A. - Societa sportiva dilettantistica
Sistemi Comandi Meccanici Otomotiv Sanayi Ve Ticaret A.S.
Sistemi Sospensioni S.p.A.
SKH Magneti Marelli Exhaust Systems Private Limited
Societa di Commercializzazione e Distribuzione Ricambi S.p.A. in liquidazione
Societa Europea Veicoli Leggeri-Sevel S.p.A.
Société Charolaise de Participations S.A.
Société de Diffusion de Vehicules Industriels-SDVI S.A.S.
Soffiaggio Polimeri S.r.l.
Sotra S.A.
Steyr Center Nord GmbH
SYNEXO S.R.L.
Talent Garden Fondazione Agnelli S.r.l.
Tecnologia de Iluminacion Automotriz S.A. de C.V.
Tecnologie per il Calcolo Numerico-Centro Superiore di Trento Formazione S.c. a r.l.
Teksid Aluminum S.r.l.
Teksid do Brasil Ltda
Teksid Hierro de Mexico S.A. de C.V.
Teksid Inc.
Teksid Iron Poland Sp. z o.o.
Teksid S.p.A.
The Economist Newspaper Ltd.
Tobeez F&B Italia S.r.l.
Tofas-Turk Otomobil Fabrikasi A.S.

Transolver Finance Establecimiento Financiero de Credito S.A.
Transolver Service S.A.
Transolver Services S.A.S.
Tridente Real Estate S.r.l.
Trucks & Bus Company
Turk Traktor ve Ziraat Makineleri A.S.
UAB Iveco Capital Baltic
United States Council for Automotive Research LLC
Uzcaseagroleasing LLC
UzCaseMash LLC
UzCaseService LLC
UzCaseTractor LLC
VM Motori S.p.A.
VM North America, Inc.
Welltec International APS
Win Rent S.p.A.
Zhejiang Wanxiang Magneti Marelli Shock Absorbers Co. Ltd.
Zona Franca Alari Sepauto S.A.